UNTED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| IN RE ANTHEM, INC. DATA BREACH LITIGATION | Case No. 15-MD-02617-LHK |

APPLICATION OF ROBIN GREENWALD FOR
APPOINTMENT OF LEAD PLAINTIFFS' COUNSEL

I. INTRODUCTION

Pursuant to Order Re Preliminary Case Management Conference ("Order") [Rec. Doc. 16], I, Robin Greenwald, a managing attorney in the law firm of Weitz & Luxenberg, respectfully submit this application for Appointment of Lead Plaintiffs' Counsel in MDL 2617.[1] I have extensive knowledge and experience in complex litigation and consumer class actions generally, and data breach in particular. I am also experienced in coordinating multi-district litigations, and have particular skill at coordinating the activities of state and federal regulators, enforcement attorneys and prosecutors with plaintiffs' steering committees. In addition, we have filed two class action lawsuits in this multidistrict litigation,[2] we represent 126 clients across 26 states who have suffered harm as a result of the breach, and we acquired significant expertise through our work with several consultants to date regarding this breach.

---

[1] I am willing to serve in any other capacity as well should the Court decide to appoint both lead counsel and other executive committee members at this time.

[2] *Salerno v. Anthem, Inc.*, No. 2:15-cv-01144 (C.D. Cal.), *transferred and reopened as* 5:15-cv-02814 (N.D. Cal.); *T.C. v. Anthem, Inc.*, No. 5:15-cv-01106 (C.D. Cal.), *transferred and reopened as* 5:15-cv-02651 (N.D. Cal.).

1

My colleagues and I have a proven track record of working collaboratively and efficiently in large, complex cases with other plaintiffs' counsel and with opposing counsel. In addition, we are prepared to dedicate maximum resources to meet the needs of a case of this size and magnitude and to satisfy the deadlines set by the Court for the efficient and effective adjudication of the cases, and to bring the litigation to a just resolution. Prior to transfer of these cases to this Court, we worked collaboratively with several other law firms and opposing counsel to address some of our concerns and to attempt to obtain certain preliminary relief for class members.

II. PERSONAL QUALIFICATION

A. <u>Knowledge and experience in prosecuting complex litigation, including class actions.</u>

For the past 30 years, I have devoted my career to obtaining justice for the public. I began as an Assistant U.S. Attorney for the Eastern District of New York, where I served for 11 years. I then became the Assistant Chief, Environmental Crimes Section, Department of Justice, in charge of Legislation, Policy and Special Litigation, followed by appointment as General Counsel for the Inspector General, U.S. Department of the Interior. In each of these positions, I was engaged in complex litigation, often of first impression. These positions equipped me with in-depth knowledge of enforcement of myriad federal laws and regulatory structures.

At the Department of Justice, I was selected as a member of the first Department of Justice-wide task force organized to address issues involving the government's conversion from paper-based to electronic submissions and storage of data, including the protection of sensitive and password protected data. Because of this assignment,

throughout the remainder of my government career, I was called on often to participate in issues surrounding electronic data integrity in the federal government.

Since 2005, I have led Weitz & Luxenberg's Consumer Protection and Environmental Tort Unit. In my current position, I have held leadership positions in several multi-district litigations. In MDL 1358, before the Honorable Shira Scheindlin in the Southern District of New York, I served as Plaintiffs' Liaison Counsel (which in that litigation was lead litigation counsel). That case involved over 200 suits brought by public water providers and State governments against 50 oil company defendants for contamination of the nation's groundwater. I led all aspects of the litigation: I drafted and argued over a dozen motions to dismiss and/or for summary judgement; identified and retained expert witnesses; took and defended dozens of facts and expert witness depositions; and participated in the selection of test discovery and trial cases. In addition, I was lead counsel in one of four focus cases selected for trial and successfully defeated defendants' interlocutory appeal in the Second Circuit Court of Appeals. My efforts, along with others on the team, resulted in a settlement of approximately 90% of the cases for $423 million.

For the past five years, I have served on the Plaintiffs' Steering Committee for the BP Oil Spill litigation, MDL 2179, before the Honorable Carl Barbier in the Eastern District of Louisiana. I participated in the drafting of the consolidated class action complaints for the various injured plaintiff groups; took dozens of depositions; drafted and argued substantive motions; identified expert witnesses and assisted in report preparation; argued for class certification of the proposed class; was one of two chief negotiators of the Medical Benefits Class Action Settlement; and was trial counsel in the

)
Phase Two Trial. In July 2015, the Court appointed me to the Common Benefit Fee and Cost Committee.

I also am Plaintiffs' Liaison Counsel in the General Motors LLC Ignition Switch Litigation, MDL 2543, before the Honorable Jesse Furman in the Southern District of New York. My principal role has been coordinating the proceedings in the bankruptcy court. While the case is currently active, my particular role requires only several hours per week on average.

My colleague James Bilsborrow will serve as my second chair if selected for this litigation. Mr. Bilsborrow served as my second chair in the BP Oil Spill MDL litigation, where he was a principal brief writer for the liability trial team and in the Fifth Circuit Court of Appeals. He is also my second chair in the General Motors MDL litigation, where he serves on discovery and bellwether committees. Mr. Bilsborrow was a clerk for the Honorable D. Brooks Smith in the Third Circuit Court of Appeals and the Honorable Christopher C. Conner in the Middle District of Pennsylvania. He is also a member of the American Association for Justice Rule 23 Subcommittee, which drafts analyses of proposed changes to Federal Rule of Civil Procedure 23.

B. <u>Willingness and ability to commit to a time-consuming process.</u>

Given the nature of my 30 years of complex litigation practice, I understand the need to commit myself and the resources of others in my unit fully to this MDL. Indeed, when the Anthem breach first became public, we devoted substantial time and resources to gain an understanding of the extent of the breach and the injuries our clients and class members generally suffered and are continuing to suffer in the breach's aftermath. We also had several discussions with Anthem's counsel about many of these concerns, and

we professionally and cooperatively worked through most of the immediate issues at that time. We are ready to devote whatever resources it takes to secure a remedy for the millions of Anthem policy holders harmed by the breach. My firm and I have the MDL leadership experiences, the resources and the commitment necessary for the litigation of this MDL.

    C.    <u>Ability to work cooperatively with others.</u>

In all of my work, I have distinguished myself as able to work cooperatively and collaboratively with others. From my early days at the Department of Justice, my career has been defined by working with others to successfully prosecute cases and working cooperatively with opposing counsel for the efficient and effective resolution of complex cases. As a federal prosecutor and General Counsel of Department of Interior's Inspector General, my work often involved coordination and cooperation among multiple branches of state, local and federal governments and other prosecutors' offices.

Perhaps nowhere were these skills more in demand than as liaison counsel in MDL 1358, where I coordinated legal strategy, motion practice and brief writing, discovery, trial preparation and monthly court appearances for all plaintiffs. Further, I had nearly daily interaction with defendants' lead counsel and several other defense counsels who led the defense of that action. Those relationships were always courteous and professional, encouraging successful resolution of the MDL. That has defined my relationship with opposing counsel in all of my cases.

This MDL will also necessarily involve some coordination and cooperation between the MDL leadership and government agencies, personnel, and enforcement attorneys who are either impacted by and/or investigating the activities of the defendant.

That was also the case in the BP Oil Spill MDL, and my past experiences as a government prosecutor proved invaluable to that coordination. My years of government service provide me with a unique ability to interact with government agencies, an understanding of prosecutorial concerns and interests, and a special ability to work cooperatively with government attorneys and personnel.

  D. <u>Access to sufficient resources to prosecute the litigation in a timely manner.</u>

Weitz & Luxenberg is AV-rated with its headquarters in New York. The firm has 82 attorneys and 290 support staff. For 35 years, it has represented individuals, groups, communities and classes across the country to obtain redress from corporate malfeasance. Many of the attorneys at the firm are currently in leadership roles in MDLs around the country. The firm has the dedication, human and financial resources, and litigation background and experience to meet the challenges of this MDL. It is accustomed to participating in large, complex MDLs, it has consistently met the financial obligations required of these types of cases and ensures that maximum human resources are devoted to all of its litigations.

Each of the nine attorneys in my unit has extensive experience in complex litigation, and several have experience in data breach and privacy class actions as well. To take but two recent examples, our firm was actively involved in the data breach at Premera Blue Cross, and we were involved early on in the class litigation over vulnerabilities created by the Superfish adware.[3] Our collective experiences in MDLs

---

[3] *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-md-2633-SI (D. Or.); *In re Lenovo Adware Litig.*, No. 15-md-02624 (N.D. Cal.).

generally, especially in ensuring the efficient and effective management of a case of this size and magnitude, make me well suited for the position.

  E.  <u>Specific work related to Anthem litigation to date.</u>

I have been actively involved in the factual and legal issues in the Anthem data breach matter since March 15, 2015. My colleagues and I have counseled dozens of individuals who have experienced identity theft, tax fraud, and intrusions to their privacy, and we have assisted them as they have attempted to protect themselves from further fraud. In the months after the breach, we realized that we were increasingly contacted by parents of minor children whose data had been stolen, and who had been identified as victims of attempted fraud. It is not easy to protect a minor—who has no credit report to freeze—from identity theft, and our clients informed us that the "credit monitoring" services provided by Anthem were opaque and confusing at best. We reached out to two consultants who specialize in identity theft of minors, and we were able to provide our clients with a step-by-step process to ensure that their children's' identities were protected as well as possible under the law. Because we recognized the unique concerns raised by parents of minor children, we filed the only class case comprised solely of minor victims.[4]

In addition, we retained consultants to understand more fully the breadth and extent of the breach, including the risks class members faced in light of their actual or potential identity theft. Our consultants provided us with an in-depth tour of the Internet black market, and we observed as stolen records, including health records, were

---

  [4] *T.C. v. Anthem, Inc.*, No. 5:15-cv-01106 (C.D. Cal.), *transferred and reopened as* 5:15-cv-02651 (N.D. Cal.).

exchanged on underground auction sites. This experience provided first-hand knowledge of the monetary value of patient health records, as well as the ease with which stolen records are sold in bulk.  Through our consultant, we obtained evidence that disproves Anthem's public statements about the theft of class members' data.

In light of their evidence concerning the severity of the breach, coupled with the concerns and uncertainty faced by Anthem policy holders, early on I reached out to Anthem's counsel to ensure Anthem addressed time sensitive issues before transfer of the cases.[5]  Anthem's counsel responded with certain assurances that addressed many of our immediate concerns, and we agreed that further action should await transfer of the cases by the JPML panel.

I appreciate the injuries that policy holders suffered and continue to suffer, understand the need to provide effective protection against identity theft, credit monitoring, and fraud assistance, and have the experience and time to commit to its successful and rapid resolution.

---

[5]  Among the issues we believed were time sensitive and to which we requested Anthem's immediate attention were: (1) implementing measures to prevent further compromise of insureds' information in underground black market trafficking; (2) implementing measures to determine the extent of the breach to both Anthem customers and Anthem employees;  (3) providing fraud protection and recapturing or de-listing information for all customers whose information had been or might have been stolen, traded and/or sold in underground black market; (4) implementing measures to prevent the theft of data belonging to minor children; and (5) ensuring all Anthem policy holders are individually informed in writing about the breach and the steps Anthem is taking to evaluate the nature and extent of the breach.  We also requested that Anthem establish a hot line for policy holders to call with questions or concerns about the breach and provide a third-party service for customers whose data had been compromised.

III.     FEE PROPOSAL

We propose a fee structure based on a lodestar method, with a maximum of 1.5 times the lodestar depending on the outcome of the case. This structure is fair, appropriate and will serve the interest of class members.

IV.     CONCLUSION

The totality of my experiences, as well as those of Mr. Bilsborrow, together with the substantial resources of my firm, makes me well qualified for the demands and challenges of this MDL. I have worked with attorneys from across the country, and guarantee I would work collaboratively and efficiently with any other counsel the Court selects for leadership.[6] My knowledge, experience, and abilities are well suited to the criteria identified by this Court's Order.

Dated:  New York, NY
        August 20, 2015

                                        Respectfully Submitted,

                                        */s/ Robin L. Greenwald*
                                        Robin L. Greenwald, Esq.
                                        WEITZ & LUXENBERG, P.C.
                                        700 Broadway
                                        New York, N.Y. 10003
                                        Phone: 212-558-5802
                                        Facsimile: 212-344-5461
                                        rgreenwald@weitzlux.com

---

[6] To the extent an applicant submits a proposed slate of attorneys to litigate this case, the Manual for Complex Litigation encourages judges to review independently the qualifications of each applicant, and to appoint the team that the Court believes will best prosecute and finance the litigation. *See* Manual for Complex Litigation (Fourth) § 10.224. In addition to this applicant, there are many qualified applicants, including Tina Wolfson and John Yanchunis, both of whom informed me they are submitting applications for leadership and have been collaborative and effective working partners in the past.