1  Sherrie R. Savett
   Eric L. Cramer
2  Shanon J. Carson
   Jon J. Lambiras
3  BERGER & MONTAGUE, P.C.
   1622 Locust Street
4  Philadelphia, PA 19103
   Telephone: (215) 875-3000
5  Facsimile: (215) 875-4604
   ssavett@bm.net
6  ecramer@bm.net
   scarson@bm.net
7  jlambiras@bm.net

8

9                  **UNITED STATES DISTRICT COURT**

10               **NORTHERN DISTRICT OF CALIFORNIA**

11                        **SAN JOSE DIVISION**

12  _____  )  Case No. 15-MD-02617-LHK
                                       )
13                                     )
    IN RE ANTHEM, INC. DATA BREACH     )  **MOTION TO APPOINT SHERRIE R.**
14  LITIGATION                         )  **SAVETT OF BERGER & MONTAGUE,**
                                       )  **P.C. AS INTERIM LEAD CLASS**
15  _____  )  **COUNSEL**
                                       )
16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 15-MD-02617-LHK
Mot. to Appoint Sherrie R. Savett of Berger &
Montague, P.C. as Interim Lead Class Counsel

Pursuant to the Court's July 6, 2015 Order ("Order") (Dkt. No. 16), Sherrie R. Savett of Berger & Montague, P.C. ("B&M") respectfully requests appointment as Lead Counsel on behalf of Plaintiffs in this multi-district litigation ("MDL") case pursuant to FED. R. CIV. P. 23(g). B&M is Plaintiffs' counsel in *Christopher Hank Becker and John L. McAffry v. Anthem, Inc*., No. 15-cv-00230 (S.D. Ind.), which was transferred to this Court on June 23, 2015. Ms. Savett is a Managing Shareholder of B&M, having joined the firm in 1975, and is widely known as one of the leading lawyers in the profession. Ms. Savett is joined in this case by a team at B&M consisting of experienced and successful class action attorneys, including those with class action data breach experience.

## INTRODUCTION

We share the Court's view that the leadership structure for this MDL should be lean with an eye toward efficient litigation. In this regard, we believe a leadership structure of three or fewer Co-Lead Counsel firms with the requisite experience and resources should be appointed. As illustrated below, the Court should appoint B&M as one of these firms.

Given the facts of this case, there is no need for the Court to appoint a formal steering committee. Instead, Co-Lead Counsel should be permitted the flexibility, where appropriate, to work with the other plaintiffs' counsel, and should make assignments in an efficient and non-duplicative manner. *See Holland v. Yahoo! Inc*., No. 13-cv-4980, Dkt. No. 29 (N.D. Cal. Jan. 22, 2014) (Koh, J.) (approving two co-lead counsel with authority to "assign[] non-duplicative work to be performed by other Plaintiff's counsel as appropriate"). An example of a discrete task that may be assisted by non-Lead Counsel is with respect to supplying named plaintiffs for the Consolidated Complaint. Here, where there are approximately 200 named plaintiffs in the coordinated cases, it is important to include a collection of the best-suited plaintiffs with representative damages and geographic diversity. B&M will be diligent in monitoring tasks assigned to non-lead firms to ensure that this case is run with the best interests of the class in mind, but with as little waste as possible.

Forty-five years ago, B&M pioneered the use of class actions in this country, first in antitrust and securities cases, and later in other areas including consumer litigation. It is unsurprising, therefore, that B&M was appointed as Co-Lead Counsel in one of the first major data breach class actions, which remains one of the most successful data breach cases prosecuted to date. *See infra*.

**B&M has abundant resources to devote to this case, as necessary, including fifty-five attorneys and a large and experienced professional staff**.  If appointed as Lead Counsel, Ms. Savett will dedicate whatever time is necessary to successfully manage and litigate this case.  Specifically, while she has been appointed many times throughout her legal career as Lead or Co-Lead Counsel, *see* Exhibit 1 (Firm Biography), she currently is not involved in a leadership role with any other MDL litigation.  Thus, she is able to devote a substantial time commitment to this case.  Further, she will oversee the assignment of work to ensure that all tasks are carried out in the most efficient fashion, and she has a broad pool of legal talent at B&M to assist as needed.

As our biography demonstrates, our law firm exists to serve as Lead Counsel in cases such as *Anthem*.  We work tirelessly to protect the interests of the plaintiffs and class members we represent.  We think outside the box when necessary, and we craft practical solutions to complex problems.  We aim to make life easier for the Court and the parties.  Most of B&M's attorneys have been with us for the majority of their careers, spanning in many instances 30 or 40 years, and they are regularly appointed to lead the largest and most complex cases.  We are committed to the cause of class representation, and we are passionate about bringing meaningful results to the classes we represent.

Our attorneys are repeatedly recognized by federal and state courts, national legal ratings agencies such as Chambers & Partners and Martindale-Hubbell, and legal publications including The National Law Journal, which has named B&M to its "Hot List" of the top plaintiffs' firms in the United States *eleven times between 2003 and 2015*.  Twice, B&M has won Public Justice Foundation's prestigious "Trial Lawyer of the Year" award for taking class action cases to trial and winning significant verdicts.  We are one of the largest and most experienced class action firms in the country. We believe class members would want this Court to appoint a firm with our history, size, record, and commitment to lead this important case.

Importantly, ***we are also experienced in data breach litigation***.  For example, Ms. Savett served as one of three Co-Lead Counsel in *In re TJX Cos. Retail Security Breach Litig.*, MDL No. 1838, No. 07-cv-10162-WGY (D. Mass.).  There, computer hackers stole 45 million credit and debit card numbers, as well as 455,000 driver's license numbers which often matched Social Security numbers.  The breach was then the largest theft of consumer data in U.S. history.  B&M obtained a

settlement valued at approximately **$200 million**, including two years of credit monitoring, cash, vouchers, and injunctive relief which strengthened TJX's security system. In approving the settlement, Judge William Young "praised counsel for its efforts on behalf of the class and the 'excellent settlement' that resulted therefrom." *In re: TJX Cos. Retail Security Breach Litig*., 584 F. Supp. 2d 395, 399 n.6 (D. Mass. 2008).

*We are not afraid to take a case to trial*. In lead roles, B&M is the rare firm that has tried and won class action jury trials, including a **$926 million** judgment that was recently reinstated by the U.S. Court of Appeals for the Tenth Circuit. *Cook v. Rockwell Int'l Corp*., No. 14-1112, 2015 WL 3853593, at *1 (10th Cir. June 23, 2015) (judgment of $177 million in compensatory damages, $200 million in punitive damages, and $549 million in prejudgment interest obtained by B&M on behalf of thousands of property owners whose homes were contaminated by radioactive materials); *see also In re: Melridge Secs. Litig*., No. 87-cv-1426 (D. Ore.) (four month jury trial yielding plaintiffs' verdict of **$88 million***;* subsequently settled for **$58 million**); *In re: Exxon Valdez Oil Spill Litig.*, No. 89-cv-00095 (D. Alaska) (B&M was a principal trial counsel obtaining a **$5 billion** jury award in 1994, later reduced to **$507.5 million** by the U.S. Supreme Court); *Meijer, Inc. et al. v. Abbott Laboratories*, No. 07-cv-05985-CW (N.D. Cal.) (B&M, as co-lead counsel through Eric Cramer, obtained a **$52 million** settlement after four days of trial).

*Finally, as detailed below, we propose and if appointed as Lead Counsel would agree to a conservative attorney fee structure designed to maximize the class members' recovery.* See Section F.

### A.   Ms. Savett Is Highly Qualified To Serve As Lead Counsel

Ms. Savett is a Managing Shareholder of B&M. She concentrates her practice on consumer, securities, and *qui tam* litigation. She has 40 years of experience representing plaintiffs in class actions. Ms. Savett was named a "Pennsylvania Top 50 Female Super Lawyer" from 2004 through 2009 by Philadelphia Magazine and has been named a Super Lawyer every year for more than a decade. She has received countless honors and awards throughout her career. She is active in community affairs, and recently served a three year term as President of The Jewish Federation of Greater Philadelphia.

In addition to her co-lead counsel role in *TJX*, Ms. Savett has been involved in other data

breach class actions, including serving on the plaintiffs' Executive Committee in *In re Countrywide Fin. Corp. Customer Data Security Breach Litig.*, MDL No. 1998, No. 08-MD-01998-TBR (W.D. Ky.). There, a Countrywide employee was arrested for stealing and selling Countrywide customers' names, Social Security numbers, bank account information, and other sensitive data. The case settled for various benefits including two years of credit monitoring made available to 1.9 million class members, a $6.5 million cash fund to reimburse identity theft and other out-of-pocket losses for 17 million class members, and injunctive relief. *In re Countrywide Fin. Corp. Customer Data Security Breach Litig.*, No. 08-MD-01998-TBR, 2010 WL 3341200, at *9 (W.D. Ky. Aug. 23, 2010).

Ms. Savett also served on the plaintiffs' Steering Committee in *In re: Heartland Payment Systems, Inc. Customer Data Security Breach Litig.*, MDL No. 2046, No. 09-MD-2046 (S.D. Tex.). There, hackers stole millions of credit and debit card numbers from a credit card processing company. The case settled for a cash fund to reimburse identity theft charges and other out-of-pocket costs, and injunctive relief. *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1049 (S.D. Tex. 2012).

Judges have praised Ms. Savett for her work in class actions. For example, Judge Stewart Dalzell of the Eastern District of Pennsylvania stated:

> The quality of lawyering on both sides, but I am going to stress now on the plaintiffs' side, simply has not been exceeded in any case, and we have had some marvelous counsel appear before us and make superb arguments, but they really don't come any better than Mrs. Savett . . . [A]nd the arguments we had on the motion to dismiss [Mrs. Savett argued the motion], both sides were fabulous, but plaintiffs' counsel were as good as they come. (*In re U.S. Bioscience Secs. Litig.*, No. 92-0678, hearing held April 4, 1994 (E.D. Pa.)).

Judge Dalzell further stated in the *Rite Aid* securities class action that settled for $334 million where Ms. Savett served as one of two co-lead counsel:

> This litigation presented layers of factual and legal complexity which assured that, absent a global settlement, these disputes would take on Dickensian dimensions. . . . In short, it would be hard to equal the skill class counsel demonstrated here. . . . [T]hey were at least eighteen months ahead of the United States Department of Justice in ferreting out the conduct that ultimately resulted in the write down of over $1.6 billion in previously reported Rite Aid earnings. (*In re Rite Aid Inc. Secs. Litig.*, 269 F. Supp. 2d 603, 611 (E.D. Pa. 2003)).

Judge Wayne Andersen of the Northern District of Illinois stated in the *Waste Management* securities

class action that settled for $220 million where Ms. Savett served as co-lead counsel:

> [Y]ou have acted the way lawyers at their best ought to act. And I have had a lot of cases . . . in 15 years now as a judge and I cannot recall a significant case where I felt people were better represented than they are here. . . . I would say this has been the best representation that I have seen. (*In re: Waste Management, Inc. Secs. Litig.*, No. 97-C 7709 (N.D. Ill. 1999)).

Judge Michael Baylson of the Eastern District of Pennsylvania stated in the *Cigna* securities class action that settled for $93 million where Ms. Savett served as co-lead counsel:

> The Court is aware of and attests to the skill and efficiency of class counsel: they have been diligent in every respect, and their briefs and arguments before the Court were of the highest quality. The firm of Berger & Montague took the lead in the Court proceedings; its attorneys were well prepared, articulate and persuasive. (*In re: CIGNA Corp. Secs. Litig.*, 2007 U.S. Dist. LEXIS 51089, **17-18 (E.D. Pa. July 13, 2007)).

In this case, Ms. Savett will be assisted by Shanon J. Carson, another Managing Shareholder of B&M. Mr. Carson dedicates his practice to consumer and employment class actions. He has repeatedly been singled out for honors and awards by legal publications. For example, in 2015 he was selected as a Top 100 "Pennsylvania Super Lawyer" and a Top 100 "Philadelphia Super Lawyer" by Thomson Reuters. He has been appointed as lead or co-lead counsel on a regular basis by federal courts across the country. A Western District of New York judge stated the following regarding Mr. Carson:

> In my fifteen years on the bench, no case has been litigated with more skill, tenacity and legal professionalism than this case. The clients, corporate and individual, should be proud of the manner in which their legal interests were brought before and presented to the Court by their lawyers and law firms.

> . . . [T]he Court would be remiss if it did not commend class counsel and all those who worked for firms representing the thousands of current and former employees of Kodak for the outstanding job they did in representing the interests of their clients. For the last several years, lead counsel responsibilities were shared by Shanon Carson and [one other co-lead counsel]. Their legal work in an extraordinarily complex case was exemplary, their tireless commitment to seeking justice for their clients was unparalleled and their conduct as officers of the court was beyond reproach. (*Davis v. Eastman Kodak Co.*, 758 F. Supp. 2d 190, 192, 203 (W.D.N.Y. 2010)).

Ms. Savett also will draw on the talents and experience of Eric Cramer, another Managing Shareholder of B&M. Mr. Cramer has a national practice in the field of complex litigation, and has repeatedly been deemed one of the "Best Lawyers in America," including having been selected in 2014 by Philadelphia Magazine as one of the top 100 lawyers in Philadelphia. He also has repeatedly been selected by Chambers & Partners as one of Pennsylvania's top tier antitrust lawyers, and more recently

1    was selected as a top tier antitrust lawyer nationally.  Chambers & Partners has observed that he is

2    "really a tremendous advocate in the courtroom, with a very good mind and presence."

3        **B.        B&M Has Extensive Knowledge And Experience In Prosecuting Class Actions**

4            In addition to the *TJX*, *Countrywide*, and *Heartland* data breach cases, B&M has secured

5    substantial settlements in numerous consumer class actions in recent years.  *See, e.g.*, *In re Pet Foods*

6    *Product Liab. Litig.*, MDL No. 1850, No. 07-cv-02867 (D.N.J.) (Ms. Savett was co-lead counsel in a

7    consumer class action involving contaminated pet food; a *$24 million* settlement was reached

8    providing class members up to 100% of their economic damages); *Casey v. Citibank, N.A.*, No. 12-cv-

9    820 (N.D.N.Y.) (Mr. Carson was co-lead counsel on behalf of a nationwide class of borrowers

10   concerning lender-placed insurance; a settlement valued at more than *$122 million* was reached); *In*

11   *Re: CertainTeed Fiber Cement Siding Litig.*, MDL No. 2270, No. 11-md-02270 (E.D. Pa.) (Mr. Carson

12   was co-lead counsel on behalf of a nationwide class of consumers who purchased defective siding; a

13   cash settlement of *$103.9 million* was reached).  These are just a sampling of our successes in recent

14   consumer class actions.  *See* Ex. 1 at 2-3.

15           B&M's successful representation as lead or co-lead counsel in large antitrust class actions

16   further supports its appointment here.  *See, e.g.*, *In re Payment Card Interchange Fee & Merchant*

17   *Discount Antitrust Litig.*, MDL No. 1720, No. 05-md-01720 (E.D.N.Y.) (B&M, as co-lead counsel,

18   recently obtained a *$7.25 billion* settlement -- the largest antitrust settlement in history, revised to $5.7

19   billion after opt-outs); *Marchbanks Truck Service Inc., et al. v. Comdata Network, Inc.*, No. 07-cv-

20   01078 (E.D. Pa.) (*$130 million* settlement); *Meijer, Inc. et al. v. Abbott Laboratories*, No. 07-cv-

21   05985-CW (N.D. Cal.) (B&M, as co-lead counsel, obtained a *$52 million* settlement after four days of

22   trial); *In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, No. 01-md-01409 (S.D.N.Y.)

23   (*$336 million* settlement); *In re High Fructose Corn Syrup Antitrust Litig.*, MDL No. 1087, No. 95-cv-

24   01477 (C.D. Ill.) (B&M, as co-lead counsel, reached a *$531 million* settlement on the eve of trial); *In*

25   *re Brand Name Prescription Drugs Antitrust Litig.*, MDL No. 997, No. 94-cv-897 (N.D. Ill.) (*$717*

26   *million* settlement).  Also, B&M through Eric Cramer is among only four firms serving as Class

27   Counsel in a case pending in this Court that has settled for *$415 million*, subject to final approval.  *In*

28   *re: High Tech Employee Antitrust Litig.*, No. 11-cv-02509-LHK (N.D. Cal.) (Koh, J.).

Likewise, B&M's successful representation as lead or co-lead counsel in many large scale securities class actions supports its appointment as Lead Counsel here.[1]

## C.   B&M Is Willing And Able To Commit To A Time-Consuming Process

B&M's track record of large class action settlements and jury trial experience illustrates our willingness and ability to commit to a time-consuming process.  B&M is similarly willing and able to commit to a time-consuming process going forward here.

## D.   B&M Has The Ability To Work Cooperatively With Others – Both Plaintiff And Defense Firms

B&M has excellent working relationships with many of the plaintiff-oriented firms involved in this case, including temporary class counsel Cohen Milstein Sellers & Toll ("CM") and Altshuler Berzon LLP.[2]  B&M has worked cooperatively on countless occasions with many other firms that are seeking leadership roles here.  We maintain excellent relationships with these firms, yet *we have not made any promises to any firm about assigning work if we are appointed Lead Counsel*.  We do not believe a bloated structure is necessary in this case.  We are willing and able to work cooperatively with any other firms the Court appoints as Co-Lead Counsel.

---

[1]  *See, e.g.*, *In re MF Global Ltd. Holdings Investment Litig.*, No. 11-cv-7866 (S.D.N.Y.) (former customers recovered 100% of their $1.6 billion in net equity claims); *In re Merrill Lynch & Co., Inc. Secs. Litig.*, MDL No. 1933, No. 07-cv-09633 (S.D.N.Y.) (*$475 million* settlement); *In re Rite Aid Corp. Secs. Litig.*, MDL No. 1360, No. 99-cv-1349 (E.D. Pa.) (*$334 million* settlement); *In re Waste Management, Inc. Secs. Litig.*, No. 97-cv-7709 (N.D. Ill.) (*$220 million* settlement); *In re Ikon Office Solutions, Inc. Secs. Litig.*, MDL No. 1318, No. 99-cv-5759 (E.D. Pa.) (*$111 million* settlement); *In the Matter of the Philadelphia Stock Exchange, Inc.*, 945 A.2d 1123 (Del. 2008) (*$99 million* settlement); *In re Fleming Cos. Secs. Litig.*, MDL No. 1530, No. 03-md-01530 (E.D. Tex.) (*$94 million* settlement); *In re Cigna Corp. Secs. Litig.*, No. 02-cv-8088 (E.D. Pa.) (*$93 million* settlement); and *Oppenheimer Rochester Funds Group Sec. Litig.*, MDL No. 2063, No. 09-md-02063 (D. Colo.) (*$89.5 million* settlement).  Ms. Savett led many of these cases for B&M.

[2]  *See, e.g.*, *In re: Domestic Drywall Antitrust Litig.*, No. 13-md-2437 (E.D. Pa.) (B&M and CM are currently co-lead counsel in this antitrust class action); *In re: Pre-Filled Propane Tank Antitrust Litig.*, No. 14-cv-02567-MD (W.D. Mo.) (same); *Cung Le v. Zuffa, LLC, d/b/a Ultimate Fighting Championship*, No. 14-cv-05484-EJD, Dkt. #58 (N.D. Cal.) (B&M and CM filed a joint motion for appointment as co-lead counsel in an antitrust class action; decision pending); *In re: Global Tel*Link Corp. ICS Litig.*, No. 14-cv-5275 (W.D. Ark.) (B&M and CM are co-lead counsel in a pending consumer class action); *City of Chicago v. Hotels.com et al.*, No. 05-L-051003 (Cir. Ct. Cook Cty., Ill.) (B&M and CM are co-counsel in a non-class case seeking recovery of unpaid hotel occupancy taxes); *In re: Oppenheimer Rochester Funds Group Secs. Litig.*, No. 09-md-02063-JLK (D. Colo.) (B&M and CM were co-lead counsel in a securities class action that reached various settlements in 2014); *In re Kay Jewelers Secs. Litig.*, No. 90-cv-1663 (E.D. Va.) (Ms. Savett and Steven Toll of CM were co-lead counsel and started trial as co-trial counsel before the case settled); *Villarreal v. R.J. Reynolds Tobacco Co.*, 12-cv-00138-RWS (N.D. Ga.) (B&M and Altshuler Berzon LLP are currently co-counsel in a pending age discrimination action).

Just as important, B&M has also worked cooperatively with Anthem and its lead defense counsel here, Hogan Lovells US LLP. Specifically, B&M was Co-Lead Class Counsel for policyholder-owners who sued Anthem in connection with its demutualization from a member-owned insurer to a public insurance company. *Ormond v. Anthem, Inc.*, No. 05-cv-1908 (S.D. Ind.). The case settled in 2012 for ***$90 million*** on the eve of trial. Thus, B&M not only has a demonstrated track record of success, but specifically against Anthem, which clearly recognized B&M's abilities in reaching that settlement.

### E.     B&M Has Access To Sufficient Resources To Prosecute This Litigation In A Timely Manner

As noted above, B&M has sufficient personnel resources to lead a case of this size. We also have adequate monetary resources to fund the litigation, including what we expect will be significant costs for discovery and expert witnesses.

An additional benefit to the class that should not be overlooked is B&M's high quality in-house document hosting and review system, which is far less expensive than third party services and will result in material cost savings for the class. *See In re: Gold Fixing Antitrust and Commodity Exchange Act Litig.*, No. 14-cv-02213-VEC, Dkt. #23 (S.D.N.Y. July 22, 2014) (appointing B&M as co-lead counsel, and acknowledging B&M's "in-house document hosting and review capabilities, which will result in additional savings for the putative class").

### F.     B&M's Fee Proposal Is Conservative Relative To Other Data Breach Cases

We anticipate seeking benefits for the class including: (i) credit monitoring and identity theft insurance beyond the two-year period Anthem has already offered; (ii) a cash fund to reimburse out-of-pocket losses; (iii) a cash fund to reimburse overpayment of insurance premiums where a portion of the premiums was intended to – but did not – fund adequate data security (*Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1328 (11th Cir. 2012)); and (iv) injunctive relief via improved data security. These benefits are consistent with other data breach class action settlements.[3] Credit monitoring for more than two

---

[3] Specifically, we reviewed settlements in all data breach class actions of which we are aware where attorneys' fees greater than $1 million were approved. A chart of the cases, seven in total, is attached hereto as Exhibit 2. Settlement benefits in these cases generally consisted of: (i) credit monitoring services; (ii) a monetary fund to reimburse identity theft losses and/or other out-of-pocket costs; and/or (iii) injunctive relief via enhanced data security.

years is important because the risk of identity theft extends for many years after a criminal data breach.

We propose and, if appointed as Lead Counsel, would agree to the following attorneys' fee structure for these potential benefits:

- 2% of the value of credit monitoring actually distributed to class members;
- 10% of any common fund established to reimburse out-of-pocket losses, insurance premium overpayments, or other monetary losses; and
- A lodestar cross-check with a maximum multiplier of 1.5. **_In no event will our aggregate fee request be greater than 1.5 times lodestar_**.

We propose that this structure be used as a baseline for evaluating any requested fee, and that the Court would then have discretion to award a higher or lower fee than the base calculation. The Court could consider factors such as, *e.g.*, the existence and value of any injunctive relief; the stage of the proceedings at which the case was resolved; and any other factors the Court deems relevant.

Alternatively, given the difficulty of valuing credit monitoring and injunctive relief, the Court may wish to employ a primarily lodestar-based approach. In such an event, our fee request would not exceed a 1.5 multiplier, and could be considerably less.

Our proposed fee of 2% of the value of credit monitoring actually distributed to the class is extremely conservative relative to other data breach cases. Specifically, credit monitoring was provided as a settlement benefit in four of the seven prior data breach settlements we analyzed. *See* Ex. 2. Two of those cases analyzed attorneys' fees based on the value of credit monitoring *actually distributed* to the class. The fee awards were 50% and 53% of the credit monitoring distributed. *See* Ex. 2 (*Countrywide*, *Certegy*). Two of the cases analyzed attorneys' fees based on the value of credit monitoring *offered* to the class. The fee awards were 3.7% and 7.5% of the credit monitoring offered. *See* Ex. 2 (*TJX*, *Michael's*). We feel the first approach better aligns class counsel's interests with the interests of the class. To illustrate our proposed fee calculation, if 5% of the 80 million class members sign up for one year of credit monitoring, the retail value of the distributed credit monitoring would be $718 million, and the corresponding fee award would be $14 million.[4]

---

[4]  Anthem's current credit monitoring offer consists of the "AllClear Pro" product provided by AllClear ID. *See* https://anthem.allclearid.com/faq.html (last visited July 27, 2015). The retail cost of AllClear Pro is $14.95 per month or $179 per year, and no discounts are available for long-term purchases. *See* https://www.allclearid.com/plans/pro-plan/ (last visited July 27, 2015). Anthem likely receives a bulk discount from AllClear ID, but the amount of any discount is unknown. The aggregate value of a 5% claims rate would be approximately $718 million per year, calculated as follows: $14.95

1    Our proposed fee of 10% of the common fund is also conservative relative to other data breach

2    cases.  *See* Ex. 2 (*Veteran's Affairs*, *Countrywide*).  Our 10% proposal is also lower than percentages

3    commonly approved in consumer cases in this District.

4    Our maximum lodestar multiplier of 1.5 is less than the multiplier used in several of the prior

5    data breach cases we analyzed.[5]  *See* Ex. 2 (*TJX*, *Veteran's Affairs*, *Certegy*).  The 1.5 lodestar

6    multiplier would serve as a cap on any aggregate fee request.

7    ### G.    Other Considerations

8    The Court noted in its July 16, 2015 Order (Dkt. No. 46) that it will "designate one lead

9    counsel to review all billing records each month" to ensure compliance with the Court's directives

10   regarding contemporaneous and non-duplicative billing.  B&M would be happy to serve in that role.

11   B&M partner Jon Lambiras, who is working with Ms. Savett in this litigation, is also a Certified Public

12   Accountant and Certified Fraud Examiner.  He is therefore uniquely qualified for this task, which

13   requires detailed analysis of voluminous data.  Mr. Lambiras would be pleased to provide the Court

14   with a monthly or quarterly report, or such other reports as the Court may request.

15   ## CONCLUSION

16   As set forth herein, B&M is uniquely qualified to serve as Lead or Co-Lead Counsel and would

17   be honored and privileged to serve in this role.  Alternatively, should the Court appoint a steering

18   committee to support Lead Counsel, and should the Court not select B&M as Lead Counsel, B&M

19   respectfully requests appointment to the steering committee if the Court adopts that model.

20

21   Dated: August 20, 2015                      Respectfully submitted,

22                                                _/s  Sherrie Savett_____
                                                 Sherrie R. Savett

23                                               Eric L. Cramer

24                                               Shanon J. Carson
                                                 Jon J. Lambiras

25                                               BERGER & MONTAGUE, P.C.

---

26   x 12 months x 80 million class members x 5% claims rate = approximately $718 million.  A
     corresponding 2% attorneys' fee award would total $14.36 million ($718 million x 2% = $14.36
     million).

27

28   [5]  Hourly rates for Ms. Savett and Mr. Carson are $925 and $750, respectively.  The rate for partner
     Jon Lambiras, who will have a central role in the litigation, is $575.  Hourly rates for B&M's
     associates range from $400 to $550, and rates for paralegals range from $225 to $310.

1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
ssavett@bm.net
ecramer@bm.net
scarson@bm.net
jlambiras@bm.net

*Counsel for Plaintiffs Christopher Hank
Becker and John L. McAffry*

kal7021307

**CERTIFICATE OF SERVICE**

I hereby certify that on August 20, 2015, I caused to be filed the foregoing Motion to Appoint Sherrie R. Savett of Berger & Montague, P.C. as Interim Lead Class Counsel.  This document is being filed electronically using the Court's electronic case filing (ECF) system, which will automatically send a notice of electronic filing to the email addresses of all counsel of record.

Dated: August 20, 2015                                    /s  Sherrie R. Savett
                                                                    Sherrie R. Savett