**EDELSON P.C.**
Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Ari J. Scharg
ascharg@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312-589-6370

**EDELSON P.C.**
Samuel Lasser (SBN - 252754)
slasser@edelson.com
1934 Divisadero Street
San Francisco, California 94115
Tel: 415-994-9930

**GRANT & EISENHOFER P.A.**
Adam J. Levitt
alevitt@gelaw.com
Edmund S. Aronowitz
earonowitz@gelaw.com
30 North LaSalle Street, Suite 2350
Chicago, Illinois 60602
Tel: 312-214-0000

*Counsel for Plaintiff Wendy Ross and Proposed Interim Class Counsel for Proposed BCBSA Track*
(Additional Counsel Appear on Signature Block)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE ANTHEM, INC. CUSTOMER DATA SECURITY BREACH LITIGATION | Case No. 15-MD-02617-LHK<br><br>**JAY EDELSON'S AND ADAM J. LEVITT'S APPLICATION FOR DESIGNATION AS INTERIM CLASS COUNSEL FOR THE PROPOSED BLUE CROSS BLUE SHIELD ASSOCIATION COORDINATED LITIGATION TRACK**<br><br>Date:  September 10, 2015<br>Time:  1:30 p.m.<br>Judge:  Lucy H. Koh |

Pursuant to the Court's Order Re Preliminary Case Management Conference (Dkt. 16), the Case Management Order (Dkt. 153), and Federal Rule of Civil Procedure 23(g), Jay Edelson and Adam J. Levitt respectfully seek appointment as Interim Class Counsel specifically with respect to the prosecution of claims against the Blue Cross Blue Shield Association ("BCBSA") and the thirty-six Blue Cross Blue Shield licensees *other than* Defendant Anthem, Inc., for those defendants' own independent failures to require or provide promised data security to their own customers (the proposed "BCBSA Track"). As more fully discussed below, the proposed BCBSA Track is separate and distinct from all of the other centralized actions here because it involves a different class (*i.e.*, non-Anthem customers), pursuing different claims and legal theories against different defendants, and will ultimately require different proof to prevail at class certification and trial. The BCBSA Track thus merits separate, but coordinated, treatment within this litigation in order to protect the interests of Ms. Ross and the other members of that separate and distinct class of insureds of the non-Anthem BCBSA licensees, with Edelson and Levitt leading that separate track.

## I.  INTRODUCTION

Edelson and Levitt are leaders in the field of consumer technology and privacy class actions, have been recognized for their expertise in data security cases by courts throughout the country – including by Judge Ware (ret.), who praised them as "pioneers" in this field – and perhaps most notably, bring a unique perspective to this multidistrict litigation. While virtually all of the other plaintiffs' firms in these cases have filed nearly-identical lawsuits against Anthem—*i.e.*, they all name the same defendant, seek to certify overlapping classes of Anthem policyholders, and seek damages for "data breach" injuries related to identity theft—Edelson and Levitt are pursuing claims, theories, and defendants that others chose to disregard on behalf of a proposed class that others ignored (or didn't realize existed). Indeed, the *Ross* case was filed against BCBSA, Independence Blue Cross ("IBC"), and a defendant class of BCBSA licensees *other than Anthem* (collectively, the "BCBSA Defendants"), and seeks recovery of paid-for data security services that the BCBSA Defendants promised to their customers (the "BCBSA Class"), but failed to deliver.

Aside from the fact that they are the *only* ones to uncover the broader misconduct at issue, Edelson and Levitt are uniquely qualified to lead this multidistrict litigation in the manner requested

herein. Jay Edelson of Edelson PC has successfully litigated and settled some of the highest profile data security cases to date, including the seminal case of *Resnick v. AvMed,* 693 F.3d 1317 (11th Cir. 2012). Edelson is routinely appointed as lead in state and federal courts across the country, and has extensive experience litigating health care data security class actions. Unique to its practice (which focuses on privacy and data security matters), Edelson PC employs full time computer forensic investigators, which enables the firm to perform highly complex in-house analyses of novel and proprietary technologies, including software source code and system architecture. Likewise, should it become necessary, Edelson PC is uniquely qualified to present the privacy and data security claims in this case to a jury—the chair of the firm's Complex Trials Team (Alexander T.H. Nguyen) served as deputy chief of the cybercrime unit for the United States Attorney's Office in the Eastern District of Virginia where he investigated and tried over a dozen computer crime matters, including hacking and cyber intrusions, data breaches, and large-scale identity theft cases.

Similarly, Adam J. Levitt of Grant & Eisenhofer P.A. has extensive experience successfully leading multidistrict consumer protection and technology litigations. Indeed, on the technology front, Levitt was responsible for strategizing, formulating, and filing the very first online privacy class action lawsuits, which have led directly to the present litigation, and has continued to advance the law in that field through the present day. In addition to his many other leadership appointments, Levitt has been appointed as lead or co-lead counsel in several electronic privacy and data breach actions including *In re Sony Gaming Networks and Customer Data Security Breach Litig.*, No. 3:11-md-02258 (S.D. Cal.) and *In re Michaels Stores PIN Pad Litig.*, No. 11-cv-3350 (N.D. Ill.).[1] Levitt brings with him the substantial resources of his firm Grant & Eisenhofer P.A., which has earned a reputation as one of the premier complex litigation firms in the United States.

In light of their experience and expertise, commitment to this litigation, demonstrated ability in

---

[1] Other electronic privacy/data breach class actions where Levitt served as lead or co-lead counsel include *In re RealNetworks, Inc. Privacy Litig.*, No. 00 C 1366 (N.D. Ill.), *In re Amazon.Com, Inc. / Alexa Internet Privacy Litig.*, MDL 1346 (W.D. Wash.), *In re DoubleClick, Inc. Privacy Litig.*, No. 00 Civ. 0641 (S.D.N.Y.), and *Chance v. Avenue A, Inc.*, No. C00-1964 (W.D. Wash.). Levitt is familiar to this Court from his current leadership in *Philips, et al. v. Ford Motor Co.*, No. 14-cv-2989-LHK (N.D. Cal.) and his appointment to the plaintiffs' steering committee in the recently concluded *In re Adobe Sys. Privacy Litig.*, No. 13-cv-5226-LHK (N.D. Cal.).

identifying and advancing the interests of the proposed BCBSA Class in an efficient and collaborative way, Edelson and Levitt should be designated as Interim Class Counsel for the BCBSA Track to lead the prosecution of the claims against the BCBSA Defendants.

## II. BACKGROUND

On May 15, 2015, Ms. Ross commenced her action – *Ross v. Blue Cross Blue Shield Association, et al.*, No. 1:15-cv-2006 (N.D. Ill.) – against the BCBSA Defendants in the U.S. District Court for the Northern District of Illinois (The *Ross* Class Action Complaint is attached as Exhibit 1.) Ms. Ross filed the action individually and on behalf of a class defined as "[a]ll individuals in the United States and its territories (i) who paid money to a member of the Defendant Class in exchange for health care insurance, and (ii) who had their own Sensitive Information, or that of a dependent or domestic partner on the same insurance plan, compromised as a result of the data breach confirmed by non-party Anthem in or around February 2015." (Ex. 1 ¶ 54.) Accordingly, the proposed class in *Ross* includes only those individuals (or their domestic partners) who paid for health insurance from a member of the defendant class (i.e., the 35 other non-Anthem Blue Cross licensees)[2] that had their (or their partner's or a dependent's) sensitive information compromised because the BCBSA Defendants "permitt[ed] Plaintiff Class members' Sensitive Information to enter nonparty Anthem's database even though it was not secure," which was evidenced by the admitted Anthem data breach. (*See id.* ¶ 7.) Significantly, any member, insured, consumer, or employee of Anthem is *excluded* from the proposed class in *Ross*, (*see id.* ¶ 54), and for good reason: the *Ross* case deals with individuals who have no direct contractual relationship with Anthem (i.e., they are neither insured nor employed by Anthem), and who paid money to other Blue Cross licensees to keep their information safe.

Ms. Ross's action against the BCBSA Defendants concerns their "BlueCard program," which is a major selling point of their health insurance networks. As alleged, the BlueCard program leverages BCBSA Defendants' massive database of consumer information and lets paying customers (like Ms. Ross) travel outside their home insurance area and receive covered health services from other Blue

---

[2] The proposed defendant class in *Ross* is defined as "All independent licensees of the Blue Cross Blue Shield Association, excluding any entity that is a subsidiary or division of Anthem, Inc." (Ex. 1 ¶ 61.)

Cross licensees (including Anthem) from whom they had not purchased health insurance. Despite the potential utility of this program, Ms. Ross alleges that the BCBSA Defendants promised—but failed—to secure and otherwise protect her and other BlueCard customers' personal and sensitive information. (*See* Ex. 1 ¶¶ 20-28.) Ms. Ross thus seeks redress for BCBSA Defendants' failure to provide industry standard security measures and the defendant class' failure to make good on its "represent[ations] that [it] would take affirmative and commercially reasonable measures to protect consumers' Sensitive Information—including information made available to other BCBSA entities through the BlueCard database—and actively prevent disclosure and unauthorized access thereto." (*Id*. ¶¶ 26, 32.)

At their core, these claims against the BCBSA Defendants arise from different facts and different conduct than the claims against Anthem. In fact, the success of the claims in the proposed BCBSA Track are not dependent on Anthem's misconduct, and BCBSA Track discovery – although potentially overlapping for some issues – will be predominately focused on the non-Anthem Blue Cross licensees and BCBSA, as well as the contractual relationship between the BCBSA Defendants and their customers.[3] As such, the BCBSA Track merits separate (but coordinated) treatment and separate leadership, as proposed herein.

On August 14, 2015, following the withdrawal (MDL Dkt. 330) of Ms. Ross' opposition to transfer of her case to this Court, the JPML Clerk entered an Order Lifting Stay of Conditional Transfer Order (MDL Dkt. 331) and formally transferred the *Ross* action to the Northern District of California for inclusion in the coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407 being conducted by this Court. On August 18, 2015, the Clerk of the Northern District of Illinois electronically transmitted the certified record from the *Ross* action to the Northern District of

---

[3] For example, just with respect to the Blue Cross licensees, Ross and the other non-Anthem customers will require a number of discovery items that will not otherwise be sought in this MDL, including: (i) advertisements and contracts between the non-Anthem licensees and their customers that refer or relate to the protection of their sensitive information (e.g., their names, birth dates, social security numbers, medical diagnoses, medical record numbers, etc.), (ii) data security policies and practices that BCBSA requires its non-Anthem licensees to implement, (iii) privacy policies that govern the relationships between the non-Anthem licensees and their customers, (iv) the non-Anthem licensees' data security practices, (v) BCBSA's data security practices with respect to the customer information that the non-Anthem licensees transmitted pursuant to the BlueCard program, and (vi) the non-Anthem licensees' annual budget and actual expenditures spent on protecting their customers' information.

EDELSON AND LEVITT BCBSA TRACK LEADERSHIP APPLICATION, No. 15-MD-02617-LHK
4

California. As such, this Court now has jurisdiction over the *Ross* matter.

As *Ross* is now part of this MDL, Proposed Class Counsel respectfully suggest that, because the claims and facts at issue in her complaint are fundamentally different from those in the other matters pending before this Court as part of this MDL, that this Court's leadership appointment order take into consideration these differences by appointing Edelson and Levitt as Proposed BCBSA Class Counsel in a separate track of litigation against the BCBSA Defendants coordinated within this MDL proceeding. This approach is necessary to protect Ms. Ross's interests, and the interests of the other BCBSA Class members, who, like Ms. Ross, are not Anthem customers, but who nevertheless have their own theories of harm and liability to prosecute against the BCBSA Defendants within this MDL. As Edelson and Levitt have indicated from the outset, they are prepared, willing, and eager to coordinate a BCBSA Defendant litigation track with an Anthem litigation track.[4]

## III. THE STANDARDS FOR APPOINTING INTERIM CLASS COUNSEL

Rule 23(g)(3) authorizes the Court to designate interim counsel for a proposed class prior to certification. Where, as here, multiple related cases are pending, "the selection and activity of class counsel are often critically important to the successful handling of the class action." Fed. R. Civ. P. 23(g) (Notes of the Advisory Committee). "Early organization of the counsel who have filed the various cases transferred or consolidated for pretrial purposes is a critical case-management task." Manual for Complex Litigation (Fourth) §22.62. In selecting interim class counsel, Rule 23(g)(2) requires the appointment of counsel "best able to represent the interests of the class." In making this determination, Courts typically consider the criteria listed in Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). Indeed, this Court has listed the chief criteria for appointment as lead plaintiffs' counsel as: (i) knowledge and experience in prosecuting complex litigation, including class actions; (ii) willingness and ability to commit to a time-consuming process; (iii) ability to work cooperatively with others; and (iv) access to sufficient resources to prosecute the litigation in a timely manner. (*See* Dkt. 16.)

As detailed below, Edelson and Levitt readily satisfy these criteria: they have diligently

---

[4] In the event that the Court is disinclined to create the requested BCBSA litigation track, Edelson and Levitt respectfully request that the Court appoint them as Interim Class Counsel within the overall case leadership structure to ensure zealous prosecution of all claims against all defendants in this MDL.

identified and investigated the claims and potential defenses at issue in the litigation track they seek to lead, and have successfully led (and presently lead) other multidistrict litigation and consumer privacy and technology cases. They have also demonstrated their ability to efficiently advance the interests of the proposed BCBSA Class by, among other things, meeting in person with counsel for BCBSA and IBC to discuss their views of the case, the issues raised by their claims, and the exchange of early discovery.

### IV.  EDELSON AND LEVITT HAVE SUBSTANTIAL KNOWLEDGE AND EXPERIENCE IN CASES OF SIMILAR SIZE, SCOPE, AND SUBJECT MATTER

In selecting interim class counsel, courts place great emphasis on proposed lead counsel's experience with and knowledge of the applicable law. Fed. R. Civ. P. 23(g)(1)(A)(ii), (iii). In this regard, Edelson and Levitt are the attorneys best-suited for their requested leadership appointment – having litigated claims very similar to those asserted here and having served in leadership roles in other consolidated and/or multidistrict complex class actions.

#### A.  Jay Edelson, Edelson PC

Amongst the Plaintiffs' counsel involved in this MDL litigation, Edelson has—by a wide margin—the most experience litigating data security and privacy class actions. *See, e.g., In re Netflix Privacy Litig.*, No. 11-cv-00379, Dkt. 59 (N.D. Cal. Aug. 12, 2011) (appointing Edelson as sole lead counsel due, in part, to his firm's "significant and particularly specialized expertise in electronic privacy litigation and class actions"). Such experience will prove critical here in advancing the interests of the BCBSA Class and coordinating that facet of this MDL with the Anthem claims.

First, Edelson has successfully litigated and settled some of the most high profile data security cases in the country. This includes the seminal case of *Resnick v. AvMed*—the healthcare data breach case that arguably set the bar for every data breach lawsuit to follow, including this one. There, Edelson and his firm represented a class of consumers affected by a massive data breach, and pursued class claims to recover both (1) damages relating to identity theft (the typical claims sought by every data breach class action), as well as (2) damages stemming from the class's "overpayment" for data protection services that the defendant-insurer failed to deliver—a unique theory that would allow class members to recover a portion of their paid insurance premiums, regardless of whether or not they

6

suffered actual identity theft. Even though the district court dismissed all of the classes' claims twice over, the *AvMed* litigation produced two, first-of-their-kind results:

(1) a landmark appellate decision, where the United States Court of Appeals for the Eleventh Circuit held that the plaintiffs successfully pleaded a separate and viable unjust enrichment theory, allowing *all* class members that paid money for health insurance to pursue money damages against the defendant. *See AvMed*, 693 F.3d at 1328; and

(2) a class settlement where—for the first time ever—data breach victims who paid for promised, but un-received, data protection received monetary payments, regardless of whether they suffered identity theft. *Resnick v. AvMed*, No. 10-cv-24513, Dkts. 82, 91.[5]

Further, Edelson and the lawyers of Edelson PC are, to date, the *only* attorneys in the country to have successfully negotiated settlements of this kind—i.e., where nearly *all* members of a putative data breach class (not just those with identity theft) are eligible to recover monetary settlement payments.[6] This includes not only *AvMed,* but also the class settlement that they reached in *In re: LinkedIn User Privacy Litig.*—a class action concerning a 2012 data breach at LinkedIn. *See* No. 5:12-cv-03088, Dkt. 136 (N.D. Cal.) (approving class settlement based on allegations that users paid for—but did not receive—data security, under which class members received up to $50 without any showing of identity theft or other injuries beyond overpayment). Simply put, Edelson has obtained the most decisive court decisions—and negotiated the most influential settlements—for consumers in data security class actions. *See, e.g., Dunstan v. comScore*, No. 11-cv-5807, Dkts. 186, 369 (N.D. Ill. 2014) (in case accusing an analytics company of unlawful data collection practices, Edelson secured adversarial

---

[5] In an article titled "AvMed's $3M Pact Blazes New Path for Data Breach Settlements," Edelson's settlement was described as "a groundbreaking pact . . . likely to serve as a template for other plaintiffs in class actions over data breaches." *See* Grande, Allison, available at http://www.law360.com/articles/484008/avmed-s-3m-pact-blazes-new-path-for-data-breach-plaintiffs (last visited Aug. 19, 2015). (The Law360 article is attached hereto as Exhibit 2.)

[6] A perfect example of this is the recently publicized settlement of the consumer class's claims in the *In re: Target Corp. Customer Security Breach Litig.*, MDL No. 14-2522 (D. Minn.). Even though the *Target* case—like the centralized actions—initially proceeded on the *AvMed* framework by seeking to recover both identity theft *and* overpayment damages on an unjust enrichment theory, the settlement does not compensate overpayment damages. This is true even though, in the proposed settlement, *all* persons affected by the Target breach (including those who *only* have damages by way of the unjust enrichment theory) would release their claims. *See* Malcom, H. and Weise, E., "Few Target victims to benefit from settlement," http://www.usatoday.com/story/money/ 2015/03/19/target-breach-settlement-details/25012949/ (last visited Aug. 19, 2015).

certification of largest ever privacy class and ultimately negotiated a $14 million settlement, which resulted in claiming class members receiving approximately $500 each); *see also* Edelson PC Law Firm Resume, attached hereto as Exhibit 3.

Beyond his demonstrated expertise with the claims at issue, Edelson has been appointed by state and federal courts throughout the country to serve as lead or co-lead class counsel in highly complex cases, including in many high-profile MDLs. *See* Ex. 3.[7] Edelson's leadership experience will be an asset to the BCBSA Class, and will aid in the organized and efficient litigation of these actions.

### B. Adam J. Levitt, Grant & Eisenhofer P.A.

Adam Levitt, a partner at Grant & Eisenhofer and head of the firm's Consumer Protection Group, has one of the premier plaintiffs' practices in the United States. Levitt has extensive experience leading nationwide class action lawsuits, including a substantial track record in data breach and privacy litigation, serving as lead or co-lead counsel in each of the several seminal electronic privacy actions already mentioned. (*See* fn. 1, *supra*.) Moreover, Levitt recently served as co-lead counsel in *In re Sony Gaming Networks and Customer Data Security Breach Litig.*, No. 3:11-md-02258 (S.D. Cal.), involving the 2011 attack on Sony's customer database networks resulting in the breach of millions of subscribers' personal and financial information, and also served as co-lead counsel in the successfully resolved *In re Michaels Stores PIN Pad Litigation*, No. 11-cv-3350 (N.D. Ill.), involving a widespread security breach of retail payment terminals.[8] Levitt has also lectured on electronic privacy litigation issues, being the sole plaintiffs' lawyer invited to address the International Association of Privacy Professionals at its "Privacy Litigation: The Evolution in Theories and Outcomes" conference.

---

[7] *See also In re Advocate Data Breach Litig.*, No. 2013-CH-20390 (Cook County, Illinois) (appointing Edelson co-lead of nine consolidated healthcare data breach class actions); *In re LinkedIn User Privacy Litig.*, No. 12-cv-3088, Dkt. 40 (appointing Edelson as lead counsel of four consolidated data breach cases, and finding that his firm is "experienced in class action litigation and, in particular, in class action litigation involving technology and privacy . . . [and had] taken a leadership role among counsel for the other plaintiffs"); *In re Netflix Privacy Litig.*, No. 11- cv-00379-EJD, Dkt. 59 (N.D. Cal.) (appointing Edelson as lead counsel of six consolidated class actions, and holding that his firm's "significant and particularly specialized expertise in electronic privacy litigation and class actions, renders them superior to represent the putative class.").

[8] Levitt also recently served as an Executive Committee member in the successfully concluded *In re Adobe Sys. Privacy Litig.*, No. 13-cv-5226-LHK (N.D. Cal.) data breach case before this Court.

In addition to his Internet privacy/data breach litigation experience, Levitt has led more than fifteen MDL litigations, resulting in more than $1 billion in recoveries for his clients, class members, and individual litigants. *See, e.g., In re Genetically Modified Rice Litig.*, MDL No. 1811 (E.D. Mo.) (aggregate settlements in excess of $900 million); *In re Imprelis Herbicide Marketing, Sales Practices, and Products Liability Litig.*, MDL No. 2284 (E.D. Pa.) (settlement valued in excess of $500 million); *In re StarLink Corn Products Liability Litig.*, MDL No. 1403 (N.D. Ill.) ($110 million settlement). He presently leads cases across the United States, including the *Philips et al. v. Ford Motor Co.*, No. 14-cv-2989, before this Court. Finally, Levitt is an elected member of the American Law Institute (ALI), President of the Class Action Trial Lawyers division of National Trial Lawyers, has been recognized as one of the 500 Leading Lawyers in America by Lawdragon, has published articles on a wide variety of litigation and technology-related topics, and speaks at and chairs litigation conferences nationwide.

Levitt's law firm, Grant & Eisenhofer P.A. ("G&E"), has earned a reputation as one of the premier complex litigation firms in the country. Ranked for an eleventh consecutive year as a Top Firm by Chambers and Partners UK in Chambers USA Guide 2014 and a member of the *National Law Journal*'s Hot List Hall of Fame, G&E was named to the *National Law Journal*'s 2014 inaugural list of "Elite Trial Lawyers: The 50 Leading Plaintiffs Firm in America," as well as to Law360's 2013 list of "Most Feared Plaintiffs Firms." As set forth in its attached firm resume (Exhibit 4), G&E has extensive experience litigating complex, high-stakes class and other representative actions. Indeed, G&E has obtained recoveries in the last seven years totaling over $12.5 billion in cases where it has served as lead or co-lead counsel. In addition to the $3.2 billion settlement in *In re Tyco Int'l Secs. Litig.*, Case No. 02-md-01335 (D.N.H.), G&E has secured multi-hundred million dollar recoveries in shareholder class actions against companies such as General Motors, Daimler Chrysler, and Royal Dutch Shell. Through the course of litigating these cases, G&E has repeatedly demonstrated its ability to work with co-counsel to aggressively, efficiently, and successfully prosecute claims on behalf of its clients.

### V. EDELSON AND LEVITT ARE COMMITTED, WILL WORK COOPERATIVELY, AND HAVE MORE THAN SUFFICIENT RESOURCES TO LITIGATE THIS CASE

Edelson and Levitt, as Proposed BCBSA Class Counsel, have already devoted significant personnel and financial resources to representing the interests of the BCBSA Class here and will

continue to devote the necessary resources to effectively represent and advance that Class's interests as the litigation proceeds. For his part, Edelson employs not only a team of attorneys (and support staff), but also full-time, in-house digital forensic investigators who assisted with the *Ross* investigation and will remain actively involved in ongoing information gathering and analysis. Likewise, G&E has over 65 attorneys working in three offices with dedicated in-house litigation support and research teams. Given their substantial experience investigating and litigating complex technology, privacy, and data security class actions, Edelson and Levitt unquestionably have the resources needed to lead the BCBSA Track – not to mention the entirety of this litigation, had they applied to lead it.

Moreover, with respect to working cooperatively, Edelson and Levitt—jointly and separately—have successful led cases involving, and otherwise worked with, many of the firms involved in this litigation, and look forward to efficiently litigating this MDL with all appointed counsel, as well as with any others that share in their unified vision of the case.[9] Edelson and Levitt are also working closely with David S. Senoff of Caroselli Beachler McTiernan & Coleman, LLC. Senoff specializes in litigating individual and class claims against the Blue Cross and Blue Shield Plans and has a highly specialized understanding of the facts at issue in the proposed BCBSA Track, including the inner workings of the BlueCard program. *See* Exhibit 5.

Finally, and pursuant to the Court's request in its July 6 Order, Edelson and Levitt propose the adoption of the [Proposed] *Order Adopting Guidelines to Limit Costs and Expenses, Including Attorneys' Fees*, attached hereto as Exhibit 6.

## IV. CONCLUSION

For all of the foregoing reasons, Ms. Ross respectfully requests that the Court enter an order, pursuant to Fed. R. Civ. P. 23(g), appointing Jay Edelson and Adam Levitt as Interim Class Counsel for a separate, but coordinated, litigation track against the Blue Cross Blue Shield Association and a proposed defendant class of non-Anthem Blue Cross Blue Shield Licensees.

---

[9] *See, e.g., In re Kentucky Fried Chicken Coupon Marketing & Sales Practices Litig.*, No. 09-cv-7670, MDL 2103 (N.D. Ill. Nov. 30, 2011) (recognizing Edelson PC's representation of its clients was "consistent with the highest standards of the profession" and "a model of what the profession should be and what the profession should do on behalf of people who have claims of this nature so as to have them resolved in a just, fair, and reasonable way.")

| | |
|---|---|
| Dated:  August 20, 2015 | Respectfully submitted, |
| | /s/ Adam J. Levitt |
| | Adam J. Levitt<br>alevitt@gelaw.com<br>Edmund S. Aronowitz<br>earonowitz@gelaw.com<br>**GRANT & EISENHOFER P.A.**<br>30 North LaSalle Street, Suite 2350<br>Chicago, Illinois 60602<br>Tel: 312-214-0000 |
| | /s/ Jay Edelson |
| | Jay Edelson<br>jedelson@edelson.com<br>Rafey S. Balabanian<br>rbalabanian@edelson.com<br>Ari J. Scharg<br>ascharg@edelson.com<br>Benjamin S. Thomassen<br>bthomassen@edelson.com<br>**EDELSON PC**<br>350 North LaSalle Street, Suite 1300<br>Chicago, Illinois 60654<br>Tel: 312-589-6370 |
| | Samuel Lasser (SBN - 252754)<br>slasser@edelson.com<br>**EDELSON PC**<br>1934 Divisadero Street<br>San Francisco, California 94115<br>Tel: 415-994-9930 |
| | *Counsel for Plaintiff Wendy Ross and Proposed Interim Class Counsel for Proposed BCBSA Track* |
| | David S. Senoff<br>dsenoff@cbmclaw.com<br>**CAROSELLI BEACHLER MCTIERNAN & CONBOY**<br>1845 Walnut Street, Fifteenth Floor<br>Philadelphia, Pennsylvania 19103<br>Tel: 215-609-1350 |
| | *Additional Counsel for Plaintiff Wendy Ross* |

**CERTIFICATE OF SERVICE**

I hereby certify that on August 20, 2015, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

By: /s/Adam J. Levitt