EXHIBIT A

## ANTHEM TASK LIST

### Plaintiff Vetting/Communication Tasks

- Draft plaintiff vetting questionnaire

- Draft uniform document preservation letter

- Establish/build client web portal for input of plaintiff information

- Vet and catalog categories of plaintiffs

- Interview all individual plaintiffs represented in action

- Communicate with class representatives and representing firms

- Make final determination of class representatives to be included in the consolidated complaint

### Factual Investigation Tasks

- Review underlying complaints, public news sources, investigative reports, reports to shareholders, SEC filings and other relevant factual sources to prepare master timeline of facts surrounding Anthem breach

- Research corporate and contractual relationships between Anthem, Inc. and affected Blue Cross and Blue Shield plans across the country; investigate relationships of all insurers involved in litigation

- Investigate and catalog numbers of affected individuals by state and insurance plan

- Prepare factual allegations for the consolidated complaint

- Prepare factual information to be used in support of class certification, summary judgment, or motion for preliminary injunction, as needed

### State Law Research/Substantive Briefing Tasks

- Collect existing state-specific research, complete research, and draft state-law memoranda

- Independently research state and federal laws as required and make final determination of all causes of action to be included in consolidated complaint

- Identify statutes that require notice and comply with any notice requirements to defendants or state attorneys general

- Draft consolidated complaint

- Prepare opposition briefing to motions to dismiss and/or motions for summary judgment filed by Anthem

- Prepare other substantive briefing including class certification, preliminary injunctive relief, and/or summary judgment

- Draft motions in limine, pre-trial briefing, and jury instructions

### Case Management Tasks

- Coordinate and confer with opposing counsel regarding protocols to govern discovery including such matters as changes to the limitations on discovery imposed by the rules and other means to most efficiently conduct discovery; preservation of documents; and handling of confidential documents, including the terms of a protective order;

- Prepare joint preliminary report and discovery plan and any other case management items directed by the Court

- Coordinate and confer with opposing counsel to develop ESI protocol, including identification of custodians whose information will be searched and the terms that will be used in such searches

- Coordinate any other production agreements involving ESI

- Assist the Court in coordinating MDL with any related state court actions

- Collect and monitor time and expense records from all counsel

**Damages/Injunctive Relief and Expert Tasks**

- Review and investigate categories of damages suffered by plaintiffs including state tax fraud, federal tax fraud, medical fraud, identity theft, inaccuracies in health records, credit fraud, credit monitoring, and premiums charged

- Identify and contact potential experts for consulting and testifying on damages categories noted above and damages and liability issues including cybersecurity generally and Anthem's cybersecurity before the breach particularly;  health insurance policies for data use and protection;  and identity theft protection and repair

- Draft expert retention agreement

- Work with experts to prepare damages models and craft injunctive relief to address deficiencies in Anthem's existing security protocol and appropriate remediation for loss of the data

- Assist with drafting technical document requests or other discovery

**Discovery Tasks**

- Complete rule 26(a) disclosures of named Plaintiffs

- Draft written discovery to defendants

- Develop document production databases and document review protocols; review documents

- Notice and take 30(b)(6) deposition of Anthem and other Anthem personnel

- Respond and object to discovery served by defendants

- Defend named plaintiff depositions

- Coordinate deposition scheduling for defendants, third parties, and plaintiffs

- Meet and confer regarding responses to written discovery

- Assist in identifying third parties with relevant information; draft and serve subpoenas where necessary or enforce existing subpoenas if appropriate

# EXHIBIT B

**MEMORANDUM**

To:          Anthem Plaintiffs' Counsel
From:        Eve Cervantez and Andy Friedman
Re:          Billing Protocol
Date:        August 14, 2015

      It is important that all plaintiffs' counsel on the *Anthem* case follow the same consistent, standard, and accurate billing practices. Time keeping has both a substantive and procedural component: We should only bill for time that is justifiably billed to the case (and that we would feel comfortable requesting payment from a fee-paying client), and we should document that time accurately and completely so that the Court and/or our clients can understand the work that we have done.

**Avoid Over-staffing and Over-Billing**

    1.    Not everybody needs to be on every call, attend every hearing, or review every document. Although it may be necessary to have more than a minimal number of people on periodic conference calls so that the core group litigating the case is up to speed and can take on new assignments, or to assist with very important briefs such as class certification or summary judgment, with those exceptions, the general rule should be that only 1 or at most 2 attorneys from a given firm work on any particular task, or attend any particular meeting or call, and then only if that firm is assigned to that task/issue. Work will be assigned to specified individuals or firms, and normally firms or attorneys other than Andy or Eve should not be reviewing that work, unless specifically assigned to do so.

    2.    We will not bill the class for more than two attorneys at any particular hearing unless Andy or Eve determine that their presence is necessary (*i.e.* a hearing covering many topics or motions that needs to be split up by topic or task).

    3.    We will not bill the class for more than two attorneys at any deposition.

4.  Only bill for participation in meetings/calls when your participation is necessary and justified.

5.  Do not over-bill for reviewing various documents and filings. If you are reviewing for a reason (i.e. to revise and edit, or to prepare for a hearing, conference call, or deposition), so state. If you are reviewing only to gain general familiarity (i.e. reviewing defendant's reply brief when you will not be arguing at the hearing) please review very quickly, and only bill for the time it takes to gain general familiarity, not to read and analyze the document in depth.  We cannot have everyone on the team reviewing all filings, even to gain general familiarity.  For example, if you are not working on discovery issues, you do not need to review the motion to compel briefs and responses.

6.  Do not bill an inordinate amount of time reviewing/responding to email:  If you send a long substantive response, or send a long substantive email, bill for the time it takes to draft.  If you just glance at an email and delete it, or respond "OK" or "thanks," do not bill for that review. If you must read and respond to several emails throughout the day, it is acceptable to bill .1 or .2 (depending on the amount of time actually spent) for "Review and respond to emails throughout day on…." Or "Exchange emails with co-counsel on [and list all the topics]."

7.  Do not bill for leaving a voicemail.

8.  Do not bill time for communication with administrative staff (except for very lengthy substantive conversations, such as training staff on document review protocols).

9.  Do not bill attorney time for administrative tasks that could be handled by a secretary or paralegal, such as organizing files.

**General Rules to Follow When Billing**

1.  In keeping with the Court's July 16, 2015 Order (Dkt. No. 46), record your time contemporaneously. The best practice is to record time spent on a task immediately after performing it, or no later than the end of the day.  (If you are traveling, email your secretary

or jot it down.)  In accordance with the Court's order, no time should be submitted if it was not recorded within one week of when the work was performed.

2. Bill in .1 increments (6 minutes).  Larger increments, such as .25 (15 minutes), are unacceptable in the Ninth Circuit.  If you or your staff are not used to billing in .1 increments, distribute charts with minute equivalencies for reference.

3. Do not block bill.  Rather than listing a half-dozen events and assigning 1.5 to them collectively, separately designate time for each separate task.  Only very closely related tasks should be billed together.  For example, it is acceptable to have one time entry for "research and draft brief" or one entry for "review email from opposing counsel and respond to same" but it is not acceptable to have one time entry that includes time for both drafting a brief and exchanging email with opposing counsel.  The Ninth Circuit has affirmed district courts' decisions deducting time for block billing.

4. Always include subject matter.  References to "phone call," "review documents," "legal research," "attend meeting," "review email," standing alone, are insufficient.

5. Always list other participants on telephone calls or in meetings, either by title (i.e. "opposing counsel," or, preferably, by name).  If there are large team conference calls or meetings, we can designate one person to list all participants in the billing record, and others can then record "phone call with team."  It may not be possible or desireable to list all recipients of emails, but try to specify the general group (i.e. "exchange email with opposing counsel re…" "exchange email with PSC re:…" or "exchange email with Cervantez re:…")

6. At the end of any call or meeting with somebody, confirm with that person or team the time to be billed.  If it is a team conference call, or other call with a number of participants, the person chairing the meeting, or the chair's designee, should state the amount of time at the end of the call, or send an email out thereafter.  Do this not only for calls and meetings with attorneys from other firms, but also for meetings with attorneys in your own firm.  If you join a

call late, or get off a call early, please state (partial) in your time records, so as to avoid confusion about how long the call or meeting lasted.

7.   Use a consistent naming convention—preferably last names. Using initials or only first names or using a mixture of these makes it confusing to understand the entry and to compare entries between firms.

8.   Use descriptive and detailed summaries. When describing the documents you are working on, instead of writing "review order" or "review stipulation," provide more details by specifying the subject or date of those documents (ex: stipulation to continue rule 16 conference). If you do an in-depth and long review of a document, list why (ex: in preparation for a deposition) or at least list further descriptive words (ex: review and analyze). Similarly, when describing your actions, avoid using phrases like "work on x" or "follow up on y," as these do not make clear what you actually did (instead use words like review, draft, analyze, annotate, research, etc.).

9.   Check spelling and grammar and avoid abbreviations (that may make sense to you alone, or to you and other plaintiffs' counsel, but not to the Court).

## Circulation Of Time Records

1.   We will circulate time and cost records on a monthly basis. This task must be taken seriously.  Firms that do not circulate time and costs on a monthly basis should not expect to be paid at the end.

2.   Prior to circulating time, a senior attorney at each firm should review firm time each month and exercise billing judgment to delete duplicative or inefficient work before sending the bills to Eve for review.

3.   In accordance with the Court's July 16, 2015 order (Dkt. No. 46), Eve will review all billing records each month to ensure compliance with the Court's order requiring that all counsel

maintain contemporaneous billing records of all time spent litigating this case, and to strike any duplicative or inefficient billing.  She will return billing records and will strike duplicative/inefficient billing, and/or send requests for clarification/better statements as necessary.

EXHIBIT C

ALTSHULER BERZON LLP
EVE CERVANTEZ (SBN 164709)
ecervantez@altshulerberzon.com
JONATHAN WEISSGLASS (SBN 185008)
jweissglass@altshulerberzon.com
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

Attorneys for Plaintiff Kathryn Leniski

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| **IN RE ANTHEM, INC. DATA BREACH LITIGATION** | Case No. 15-MD-02617-LHK<br><br>**DECLARATION OF EVE H. CERVANTEZ IN SUPPORT OF MOTION FOR APPOINTMENT OF EVE H. CERVANTEZ AND ANDREW N. FRIEDMAN AS PLAINTIFFS' LEAD COUNSEL AND A STEERING COMMITTEE**<br><br>Date:   September 10, 2015<br>Time:  1:30 p.m.<br>Judge: Lucy H. Koh |

I, Eve H. Cervantez, declare as follows:

1.    I am a partner with Altshuler Berzon LLP, one of the firms serving as counsel for Plaintiff Kathryn Leniski and the proposed class.  I am a member in good standing of the Bar of the State of California, as well as the Northern District of California.  I make these statements based on personal knowledge and would so testify if called as a witness.

2.    This Declaration is submitted in support of Motion for Appointment of Eve H. Cervantez and Andrew N. Friedman as Plaintiffs' Lead Counsel and a Steering Committee.

## REASONS FOR APPOINTMENT AS CO-LEAD COUNSEL

3.    As set forth below in greater detail, I would provide excellent service to the proposed class if appointed co-lead counsel with Andrew Friedman.  For more than 20 years, I have devoted most of my professional practice to the prosecution of complex class actions on behalf of consumers, employees, prisoners, and others in need of protection from large corporations and government agencies that violate the law.  Many of my cases, like this one, involve more than money damages, and require creative and far-reaching injunctive relief to meaningfully resolve the problem.  In addition to crafting innovative settlements, I have successfully obtained court orders for preliminary and permanent injunctive relief on behalf of my clients, as have other attorneys at Altshuler Berzon.

4.    Although I and my firm have long worked to protect consumers' privacy interests, we have not previously filed suits regarding data breaches.  We became involved in this case because of the particularly significant interests implicated by a breach of a health insurer's extremely confidential information.  I propose working with a team of lawyers who have been on the forefront of data breach cases, so as to build upon their expertise and past work, but believe it will be important to look at both the legal and factual issues in this unique case from a new perspective.  I and other Altshuler Berzon attorneys are well accustomed to tackling novel issues of law and fact, at both the trial court and appellate level.

5.    I frequently work on cases with multiple co-counsel, and am well accustomed to holding efficient team conference calls to decide important strategy questions and distribute tasks, following up to hold each firm accountable for its assignments, and, finally, reviewing bills to ensure that the class is not charged for duplicative or inefficient work.

1

DECLARATION OF EVE H. CERVANTEZ IN SUPPORT OF
MOTION FOR APPOINTMENT OF EVE H. CERVANTEZ AND ANDREW N. FRIEDMAN AS PLAINTIFFS'
LEAD COUNSEL AND A STEERING COMMITTEE    Case No. 15-MD-02617-LHK

6.      The vast majority of Altshuler Berzon's clients are hourly fee-paying clients, and I am thus used to keeping my time contemporaneously and to reviewing bills on a monthly basis to excise wasted time.  I am prepared to do the same in this case.  Additionally, as an outgrowth of my and Altshuler Berzon's work in assisting other law firms litigating fee matters, and my work supervising multiple plaintiffs' counsel in class action lawsuits, I drafted a memo, adapted for use in this case, with instructions to counsel on how to bill, and what to bill for (or not).  That memo is attached to our motion as Exhibit B.

7.      Although I had not previously worked with Andrew Friedman until this Court appointed us to temporarily represent Plaintiffs for purposes of the first two case management conferences, I have long worked cooperatively with Cohen Milstein attorneys, including currently on a series of important cases on behalf of fast food workers at McDonald's who challenge the long-standing argument that McDonald's is not liable for labor law violations at its franchised restaurants.

8.      Andrew Friedman and I have already formed a close working relationship, and have worked collaboratively with other Plaintiffs' counsel and Anthem counsel to craft case management conference statements and to solidify a case schedule that will move this case forward expeditiously.

### BACKGROUND AND REPRESENTATIVE CASES

9.      I am a *magna cum laude* 1992 graduate of Harvard Law School, where I served as an editor of the *Harvard Law Review*.  I received my Bachelor of Arts in 1985 with honors from Washington University in St. Louis, Missouri.  Following law school graduation, I clerked for the Honorable Charles A. Legge, United States District Judge, Northern District of California.

10.     I served as a staff attorney at the Prison Law Office from 1993-1995, where I represented prisoners in long-running class action lawsuits seeking injunctive relief to remedy inhumane conditions of confinement.  There I was responsible for one of the first class actions challenging a prison system's violation of the then newly-enacted Americans with Disabilities Act ("ADA").  *See Armstrong v. Wilson*, 124 F.3d 1019 (9th Cir. 1997) (court ordered injunctive relief in certified class action affirmed on appeal).  Ultimately, as the result of our action, the Supreme Court recognized that the ADA covers prisoners.  *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206 (1998) (second chair).  I also worked on ground-breaking challenges to cruel and unusual

2

DECLARATION OF EVE H. CERVANTEZ IN SUPPORT OF
MOTION FOR APPOINTMENT OF EVE H. CERVANTEZ AND ANDREW N. FRIEDMAN AS PLAINTIFFS'
LEAD COUNSEL AND A STEERING COMMITTEE    **Case No. 15-MD-02617-LHK**

punishment in the state's new "super-max" prison at Pelican Bay.  *Madrid v. Gomez*, 889 F.Supp. 1146 (N.D. Cal. 1995) (court ordered injunctive relief following lengthy trial).

11.    I then worked at Howard, Rice, Nemerovski, Canady, Falk & Rabkin, where I was elected a Director, from 1995 to 2000.  There I defended class action lawsuits, including those alleging that insurance companies had misled consumers by advertising "vanishing premiums," and I continued to represent prisoners and other civil rights plaintiffs in class action cases *pro bono*.

12.    I was an associate, and then partner, at Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB") from 2000 through 2007, when I joined Altshuler Berzon ("AB") as a partner.  At LCHB and AB, I focus on representing employees and consumers in class action lawsuits.

13.    At LCHB and AB, I have served as class counsel, plaintiffs' counsel or plaintiffs' co-counsel in many complex class action cases requiring injunctive relief.  For example, on an extremely expedited basis we successfully stopped state budget cuts to home health care services that would have devastated disabled and elderly Medi-Cal recipients.  *Oster v. Lightbourne*, No. 09-cv-04668-CW, 2012 WL 691833 (N.D. Cal. Mar. 2, 2012) (court ordered preliminary injunctive relief in certified class action).  *See also MR. v. Dreyfus*, 697 F.3d 706 (9th Cir. 2011) (preliminary injunctive relief for Medicaid beneficiaries ordered on appeal).  I have also successfully prosecuted many discrimination class action lawsuits calling for creative injunctive relief to prevent discrimination, including *Holloway v. Best Buy* (N.D. Cal, Case No. 05-cv-05056-PJH) (settlement for comprehensive injunctive relief in race and gender discrimination class action); *Curtis-Bauer v. Morgan Stanley & Co., Inc.* (N.D. Cal. Case No. C 06-3903 TEH) (settlement including comprehensive injunctive relief and $16 million monetary relief in race discrimination class action); *Gonzalez v. Abercrombie & Fitch Stores, Inc.* (N.D. Cal. Case No. 03-2817-SI) (settlement of $40 million plus injunctive relief in case alleging race and gender discrimination); and *Satchell v. Federal Express Corp.* (N.D. Cal. Case Nos. C03-2659 SI, C 03-2878-SI) (settlement of $55 million, plus comprehensive injunctive relief, of race and national origin discrimination claims).

14.    Representative consumer class action cases in which I have served as plaintiffs' counsel include *Fanning et al. v. HSBC Card Services, Inc. et al.* (C.D. Cal. Case No. 12-cv-0885 JVS) (ongoing case under California Invasion of Privacy Act for secret recording of telephone

3

1   conversations without consent) and *Dolgin v. HealthNet of California* (Los Angeles Superior Court

2   Case No. BC 263211) (settlement of false advertising claims against insurance company).

3       15.    I have also served as class counsel or plaintiffs' co-counsel in many employment

4   cases, several of which raised novel issues of law, including *Aguiar v. Cintas* (L.A. Superior Court,

5   Case No. BC310696) ($6.5 million settlement of certified class action alleging violations of L.A.'s

6   Living Wage Ordinance after Court of Appeal agreed with our arguments that regulation allegedly

7   implementing new statute was unenforceable as inconsistent with the statute); *Behaein v. Pizza Hut*

8   (L.A. Superior Court, Case No. BC384563) (obtained class certification in expense reimbursement

9   and meal and rest break class action); *Brooks v. U.S. Bank N.A.* (N.D. Cal. Case No. C12-4935

10  EMC) (first class settlement of a suitable seating case; $1.9 million distributed to class members);

11  *Hines v. KFC* (S.D. Cal. Case No. 09-cv-2422-JM(POR)) ($3.55 million settlement of certified meal

12  and rest break class); *In Re: Farmers Insurance Exchange Claims Representatives' Overtime Pay*

13  *Litigation* (D. Or. MDL Case No. 1439) (trial of MDL class action alleging misclassification); *Pryor*

14  *v. OAS* (JAMS) (six-week arbitration trial alleging off-the-clock work by truckers driving outside the

15  wire during the Iraq war); *Rosenburg v. International Business Machines Corp.* (N.D. Cal. Case No.

16  06-cv-0430 PJH) ($65 million settlement of misclassification case); *SEIU Local 24/7 v. PG&E*

17  (obtained seven-figure arbitration award for failure to pay for on-duty meal periods); *Tokoshima v.*

18  *The Pep Boys* (N.D. Cal. Case No. C 12-4810 CRB) ($3.6 million settlement of minimum wage

19  claims); *Williamson v. Microsemi* (N.D. Cal. Case No. C-14-01827 LHK) ($2.35 million settlement

20  for class asserting failure to pay bonuses).

21      16.    I also frequently write and lecture about class action issues.  I have been invited to

22  speak about class actions at the ABA Section of Labor and Employment Law conferences, the

23  Consumer Attorneys of California convention, the National and California Employment Lawyers

24  Association (NELA and CELA) conferences, the State Bar of California Labor and Employment

25  Law Section conferences, and the Bar Association of San Francisco Labor and Employment Section

26  conferences.  Conference papers include "Structuring Class Settlements That Will Get Approved"

27  (Bridgeport, 2014); "Class and Collective Action Certification of Independent Contractor

28  Misclassification Cases" (NELA, March 2013); "Recognizing and Handling Potential Conflicts of

4

1   Interest in the Prosecution and Settlement of Employment Class Action Lawsuits" (NELA, June

2   2010); Co-author with L. Julius M. Turman, "Introduction to Class Actions and Collective Actions"

3   (ABA Section of Labor and Employment Law, August 2008); and "Class Action Trial Plans"

4   (CELA Advanced Wage and Hour Seminar, 2007).

5          17.     I have been named a Northern California "Super Lawyer" in the area of Plaintiffs'

6   side Employment Litigation every year since 2010, and was named one of the top 50 women lawyers

7   in Northern California in 2014.

8                              **ALTSHULER BERZON LLP**

9          18.     Altshuler Berzon specializes in labor and employment, environmental, constitutional,

10  campaign and election, consumer, and civil rights law.  Since its founding, the firm has been on the

11  forefront of protecting workers' and consumers' rights.  The firm has obtained multi-million dollar

12  judgments and settlements, as well as court-ordered and negotiated injunctive relief on behalf of

13  consumers and workers.  The firm also frequently represents consumers and workers on appeal. The

14  firm resume listing representative cases is attached hereto as Exhibit 1.

15         19.     In recent years, Altshuler Berzon attorneys have secured multi-million dollar

16  judgments in class cases, including *Kashmiri v. Regents of the University of California*, 156

17  Cal.App.4th 809 (2007) (affirming summary judgment for class for $33.8 million); and *Luquetta v.*

18  *Regents of the University of California* (San Francisco Superior Court Case No. CGC-05-443007

19  (granting summary judgment for class for more than $48 million), affirmed on appeal.  Altshuler

20  Berzon attorneys have also worked on significant appellate issues in class actions, including in

21  *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004 (2012) (argued California Supreme

22  Court case establishing standards governing meal period and rest break claims).

23         20.     Altshuler Berzon brings a unique perspective to this case in that we have also

24  defended a data breach case, and thus are able to see the issues through defendants' eyes as well.

25         I declare under penalty of perjury under the laws of the United States of America that the

26  foregoing is true and correct.  Executed on August 20, 2015, at San Francisco, California.

27                        _/s/ Eve H. Cervantez_
                          EVE H. CERVANTEZ
28
                                     5

DECLARATION OF EVE H. CERVANTEZ IN SUPPORT OF
MOTION FOR APPOINTMENT OF EVE H. CERVANTEZ AND ANDREW N. FRIEDMAN AS PLAINTIFFS'
LEAD COUNSEL AND A STEERING COMMITTEE    **Case No. 15-MD-02617-LHK**

EXHIBIT 1

**A L T S H U L E R   B E R Z O N** LLP

ATTORNEYS AT LAW

177 POST STREET, SUITE 300

SAN FRANCISCO, CALIFORNIA 94108

(415) 421-7151

FAX (415) 362-8064

www.altshulerberzon.com

STEPHEN P. BERZON
ERIC P. BROWN
HAMILTON CANDEE
EVE H. CERVANTEZ
CONNIE K. CHAN
BARBARA J. CHISHOLM
JEFFREY B. DEMAIN
JAMES M. FINBERG
KRISTIN M. GARCÍA
EILEEN B. GOLDSMITH
SCOTT A. KRONLAND
DANIELLE E. LEONARD
STACEY M. LEYTON
MATTHEW J. MURRAY
PETER D. NUSSBAUM
ZOE PALITZ
P. CASEY PITTS
DANIEL T. PURTELL
MICHAEL RUBIN
PEDER J. THOREEN
JONATHAN WEISSGLASS

FRED H. ALTSHULER
FOUNDING PARTNER EMERITUS

TONY LOPRESTI
FELLOW

August 2015

## FIRM RESUME AND REPRESENTATIVE CASES

Altshuler Berzon LLP is a San Francisco law firm that specializes in labor and employment, environmental, consumer, constitutional, campaign and election, and civil rights law. Although most of our cases are in federal and state courts in California, we appear regularly in courts throughout the country and before the National Labor Relations Board.

In past years, the firm's attorneys have won major victories in the cases described below, following the description of the firm's current docket.

## CURRENT REPRESENTATIVE CLASS AND COMPLEX ACTIONS

Altshuler Berzon LLP's current docket includes the following class and complex matters:

\* *Sanchez/Hughes/Salazar/Ochoa v. McDonald's*: California state law class actions on behalf of restaurant crew members employed by corporate-owned and franchisee-owned McDonald's fast food outlets, alleging numerous violations of California employment law and seeking to prove McDonald's corporate liability on joint employer and other theories.

\* *People v. Atlantic Richfield Co.*: The defense on appeal of trial court order requiring paint manufacturers to contribute over $1 billion to abate hazards caused by deteriorating lead-based paint in private homes.

\* *Keller v. California State University*: A state court class action lawsuit against the California State University alleging the University breached its contracts with thousands of students by imposing last-minute fee increases.

\* *Fanning v. HSBC/Lindgren v. HSBC*: Privacy class actions on behalf of California credit card account holders whose telephone conversations with bank's debt collection and financial fraud personnel were secretly recorded.

\* *Van Zant v. Apple, Inc.*: A false advertising and breach of warranty consumer class action challenging a design defect in the iPhone 3G that limited connectivity speeds.

\* *Friendly House v. Whiting*: A federal court constitutional challenge to Arizona's 2010 law requiring State enforcement of federal immigration law.

\* ***24 Hour Fitness/Litvinov v. United Health Group/Totten v. KBR***: Challenges in the Second Circuit, the Central District of California, and before the National Labor Relations Board, to mandatory employment arbitration agreements prohibiting class collective actions and representative actions, in violation of the right to engage in concerted protected activity guaranteed by the National Labor Relations Act.

\* ***Villareal v. R.J. Reynolds Tobacco Company***: A proposed collective action before the U.S. District Court for the Northern District of Georgia brought against R.J. Reynolds and its two hiring agencies alleging age discrimination against job applicants 40 years of age or older.

\* ***Carrillo v. Schneider Logistics, Inc.***: A federal court class action seeking court approval of a $22.7 million settlement on behalf of low-wage immigrant warehouse workers in California's Inland Empire who contend that Walmart, its warehouse operator, and their labor services contractors are joint employers liable for state and federal wage-and-hour violations, including for imposing unlawful group piece rate scheme, wage fraud, and wrongful mass retaliatory termination.

\* ***Narayan v. EGL, Inc.***: A lawsuit asserting wage and hour claims under the California Labor Code on behalf of delivery truck drivers who were unlawfully treated as independent contractors rather than employees.

\* ***Behaein v. Pizza Hut***: A certified class action lawsuit on behalf of hourly restaurant employees, including drivers, for Pizza Hut's California restaurants alleging that Pizza Hut forces hourly workers to work through meal and rest breaks and fails to reimburse them for their out-of-pocket costs.

\* ***Kilby v. CVS/Henderson v. J.P. Morgan Chase/Brown v. Walmart***: Consolidated Ninth Circuit appeals in class action lawsuits, followed by certification of a statutory construction question to the California Supreme Court, regarding the circumstances under which retail employers must provide their employees with suitable seats under California state law.

\* ***Cancilla v. Ecolab, Inc.***: A federal court collective and class action on behalf of pest elimination service specialists nationwide alleging failure to pay overtime wages and related claims under the Fair Labor Standards Act and state wage and hour law.

\* ***Hamidi v. SEIU Local 1000***: The defense of a California statute requiring state employees who choose not to become members of the union that represents them in collective bargaining to opt out of paying their pro rata portion of certain non-bargaining expenses if they do not wish to pay for such expenses; certified class action.

## REPRESENTATIVE VICTORIES IN CLASS AND COMPLEX CASES

### CONSUMER AND FALSE CLAIMS ACT

\* ***Kashmiri v. Regents***: Won a $33.8 million class-action judgment against the University of California for improperly charging fee increases to tens of thousands of undergraduate, graduate and professional students, and obtained a preliminary injunction prohibiting the University from charging professional students an additional $15 million in fees.

\* ***Luquetta v. Regents***: Won more than $48 million in a class action against the University of California for improperly charging fee increases to almost 3,000 professional students.

\* ***Utility Consumers' Action Network v. Sears/California Federal Bank/Household Credit Service/Texaco Credit Card Services/Capital One/Bank of America***: Obtained settlements in a series of consumer privacy class actions against financial institutions and credit card companies prohibiting unauthorized dissemination of personal account information to third party telemarketers.

\* ***United States ex rel. Hendow v. University of Phoenix***: Won a $78.5 million settlement in a False Claims Act case against a for-profit university that allegedly defrauded the government by falsely certifying its compliance with the Higher Education Act's prohibition against paying commissions to recruiters of new students, which was the second-largest settlement ever of a False Claims Act case in which the U.S. Government declined to intervene.

\* ***Hamilton v. Great Expectations***: Obtained an $8.5 million settlement of a statewide class action against a video dating service that had electronically eavesdropped on confidential membership interviews.

\* ***Garvin v. Utility Consumers' Action Network/Savage v. Utility Consumers' Action Network***: Successful defense on appeal of a $14 million settlement of a state law privacy class action challenging a bank's practice of selling confidential consumer information to third-party marketing companies.

\* ***Ammari Electronics v. Pacific Bell Directory***: Successfully defended on appeal a $17.35 million jury verdict on behalf of small businesses that paid for, but did not receive, best-efforts distribution of Pacific Bell Yellow Page Directories.

\* ***Jensen v. Kaiser Permanente***: Obtained the rescission of a health maintenance organization's cost-cutting policy requiring staff psychiatrists to prescribe psychotropic medications for patients they have not examined.

\* ***In re Sealed Case***: Obtained a $13.2 million settlement of a False Claims Act case and two related wrongful termination cases on behalf of a husband and wife who were terminated after disclosing extensive fraud committed by their government contractor employer.

\* ***Nobles v. MBNA Corp.***: Obtained a settlement of a California consumer class action against a bank that misleadingly offered consumer lines of credit without disclosing hidden costs and credit impacts, resulting in a payment to class members of more than 85% of the claimed losses, with interest.

\* ***Beaver v. Tarsadia Hotels***: Obtained an order on reconsideration resulting in a $130 million judgment for plaintiffs holding that the four-year limitations period of California's Unfair Competition Law applies to conduct that violates the federal Interstate Land Sales Transfer Act, despite the federal statute's shorter limitations period.

## LABOR AND EMPLOYMENT

\* ***UAW v. Johnson Controls*** (Supreme Court): Prohibited employers from adopting "fetal protection" policies that discriminate against female workers in violation of Title VII.

\* ***UAW v. Brock*** (Supreme Court): Compelled the Department of Labor to restore $200 million in wrongfully withheld Trade Act benefits to thousands of unemployed autoworkers and steelworkers.

\* ***Bower v. Bunker Hill Co.***: Restored, after a six-week jury trial, tens of millions of dollars of retiree health insurance benefits that had been terminated following the shutdown of Idaho's largest private employer.

\* ***Golden Gate Restaurant Ass'n v. City and County of San Francisco***: Obtained a Ninth Circuit ruling upholding, against an ERISA preemption challenge, a San Francisco ordinance that requires employers either to provide health benefits to their employees or to pay into a City fund for the same purpose.

\* ***UAW v. Kiddoo***: Required California to resume paying unemployment compensation to almost 400,000 unemployed workers following a budgetary impasse between the Legislature and the Governor.

\* ***Armendariz v. Foundation Health Psychcare Svcs.***: Obtained a California Supreme Court ruling that employers cannot require their employees, as a condition of employment, to resolve employment claims through arbitration, where the arbitration agreement does not provide for specific procedural protections.

\* ***Air Line Pilots Association, International, et al. v. United Airlines, Inc.***: Obtained declaratory and injunctive relief on behalf of United Airlines pilots requiring the airline to comply with California's Kin Care law, which requires employers that offer paid sick leave to allow employees to use up to half of that leave to care for ill relatives.

\* ***Does I, et al. v. The Gap, Inc., et al.***: Negotiated a $20 million settlement and innovative workplace monitoring program in anti-sweatshop class action on behalf of 30,000 Chinese and other foreign workers against Saipan garment factories and retailers for alleged violations of the Racketeer Influenced and Corrupt Organizations Act, the Alien Tort Claims Act, the Fair Labor Standards Act, and federal common law.

\* ***Regents of the University of Wisconsin v. Adidas***: Successful intervention on behalf of an Indonesian labor union, followed by settlement in the Wisconsin state court, of an action brought to hold Adidas responsible under a University licensing agreement for unpaid wages and benefits owed to 2,700 Indonesian garment workers employed by a bankrupt factory that manufactured Adidas apparel.

\* ***Brinker Restaurant Corp. v. Superior Court***: Obtained a unanimous California Supreme Court decision, which ultimately resulted in a $56 million settlement, establishing standards governing meal period and rest break claims, and affirming in part and reversing in part trial court's certification of class of low-wage restaurant workers.

* ***Veliz v. Cintas Corp.***: Obtained a $22.75 million settlement of class actions and individual cases pending in the Ninth Circuit, the Northern District of California, the Judicial Panel on Multidistrict Litigation, and AAA arbitration, each of which challenged a nationwide industrial laundry company's policy of classifying its drivers as exempt from overtime requirements of federal and state wage-and-hour laws.

* ***AFL-CIO v. Employment Development Department***: Compelled California to continue to pay unemployment compensation benefits to hundreds of thousands of claimants per year pending evidentiary hearings on their continued eligibility.

* ***Hawaii State Teachers Assn./United Public Workers v. Lingle***: Enjoined the Governor of Hawaii from unilaterally implementing unpaid furloughs for all state employees of three days per month on the ground that unilateral implementation violated the state constitutional right to collective bargaining.

* ***SEIU-UHW v. Fresno County IHSS Public Authority***: Obtained an injunction requiring Fresno County to maintain the wage and benefit rates paid to providers of in-home support services pending arbitration of the union's grievance regarding the wage and benefit reduction.

* ***Satchell v. FedEx Express***: Obtained a consent decree providing $55 million in monetary relief to two classes of African American and Latino employees of FedEx Express, as well as comprehensive injunctive relief against discriminatory employment practices, including reducing managerial discretion in promotions, compensation and discipline, and prohibiting the use of a promotion test that had an adverse impact on minority employees.

* ***Bright v. 99 Cent Only Stores, Inc./ Home Depot v. Superior Ct.***: Obtained Court of Appeal rulings that California workers have private right of action under the Labor Code for civil PAGA penalties against employers who violate minimum labor conditions standards guaranteed by Industrial Wage Commission wage orders.

* ***Bell v. Farmers Ins. Exchange*** (***Bell III***): Obtained an appellate decision upholding the largest overtime pay jury verdict in history, in class action on behalf of insurance company claims representatives who were misclassified as exempt under California's wage and hour law, and subsequently negotiated a settlement in excess of $200 million for class members.

* ***Amaral v. Cintas Corp.***: Won a $1.6 million summary judgment in a class action challenging a nationwide laundry company's systematic underpayment of its workers, defeating state law preemption and federal due process challenges to a local living wage ordinance.

* ***Ellis v. Costco Wholesale Corp.***: Obtained an $8 million settlement on behalf of a class of women employees who alleged gender discrimination in promotions in violation of Title VII of the 1964 Civil Rights Act, as well as wide-ranging programmatic relief modifying corporate policies to allow women a greater chance of promotions in the future.

* ***AFL-CIO v. Marshall***: Obtained a ruling requiring payment of an additional 26 weeks of extended unemployment compensation benefits, worth billions of dollars, to unemployed workers nationwide.

* ***Rosenburg v. Int'l Business Machines Corp.***: Obtained a $65 million settlement in a class action brought on behalf of IBM information technology specialists for failure to pay overtime compensation.

* ***Cremin v. Merrill Lynch***: Settled a nationwide sex discrimination class action on behalf of women brokers, resulting in establishment of novel claims procedure and agreement by brokerage firm no longer to compel any employees to arbitrate statutory discrimination claims.

* ***Curtis-Bauer v. Morgan Stanley & Co., Inc.***: Obtained a $16 million class-action settlement for African-American and Latino financial advisors and financial advisor trainees requiring Morgan Stanley to change its account distribution procedures to de-emphasize historical factors that have an adverse impact on minorities, to engage in active recruitment of minority financial advisors, to tie manager compensation to diversification efforts, and to provide other non-monetary relief.

* ***Martens v. Smith Barney***: Settled a nationwide sex discrimination class action on behalf of women brokerage employees, resulting in a novel claims procedure allowing for potentially tens of millions of dollars in damages.

* ***Pearson Dental Supplies v. Superior Court***: Obtained a California Supreme Court ruling that requires heightened judicial review of an arbitration award, issued pursuant to a mandatory arbitration agreement, that is challenged on the ground that the arbitrator's legal error deprived the claimant of a hearing on the merits of a fundamental statutory or common law claim.

* ***Danielli v. Int'l Business Machines Corp.***: Obtained a $7.5 million common-fund settlement in a class action brought on behalf of IBM employees for IBM's failure to pay overtime compensation.

* ***Vendachalam v. Tata International***: In class action, obtained a Ninth Circuit decision that Tata International, India's largest conglomerate, could not force its overseas workers to arbitrate employment disputes before Tata's hand-picked arbitrators in Mumbai.

* ***SEIU Local 24/7 v. Professional Technical Security Services, Inc.***: Obtained a settlement under state wage and hour laws providing payments to hundreds of low-wage workers as reimbursement for uniform cleaning expenses.

* ***Int'l Longshore & Warehouse Union, Local 142 v. Brewer***: Obtained a settlement on behalf of a class of retirees from sugar and pineapple plantations compensating them for the company's termination of their medical plans.

* ***Vega v. Contract Cleaning Maintenance, Inc.***: Obtained class-action settlements on behalf of low-wage janitors and maintenance workers who were misclassified as independent contractors, providing double overtime, reimbursement of allegedly unlawful paycheck deductions, and statutory interest.

* ***Wynne v. McCormick & Schmick's Seafood Restaurants, Inc.***: Obtained a consent decree against a restaurant chain requiring it to implement a series of measures to increase the representation of African-American employees in "front of the house," i.e., server, bartender, and host/hostess, positions.

\* ***Tokoshima v. The Pep Boys – Manny, Moe, & Jack***: Obtained a multi-million dollar settlement compensating employees for minimum wage violations and failure to reimburse them for the cost of tools necessary to perform their jobs.

\* ***Adams v. Inter-Con Security Systems, Inc.***: Obtained a $4 million settlement compensating private security guards who were required to work "off the clock" without pay and requiring the company to pay its employees in the future for the time they spend in mandatory training sessions and pre-shift briefings.

\* ***Martin v. New United Motor Mfg., Inc.***: Obtained a $4.65 million settlement from an automobile manufacturing plant for failure to compensate its employees for donning and doffing protective gear, in violation of federal and state law.

\* ***Patel v. Sugen***: Obtained a nearly $2 million settlement in a class action challenge to a pharmaceutical company's refusal to pay contractually-mandated severance pay and bonuses to employees upon sale of the company, representing complete recovery of all monies owed plus ten percent interest.

\* ***IBEW Locals 595 and 6 v. LIS Electric***: Won a private attorney general action, after a multi-week trial, against a construction contractor and its president for failing to pay workers prevailing wages on public works projects.

\* ***Driscoll v. Oracle***: Negotiated a $12.7 million settlement in nationwide overtime case under the Fair Labor Standards Act and state law on behalf of internet sales representatives.

\* ***SEIU Local 24/7 and Pacific Gas & Electric Company***: Obtained a seven-figure arbitration award for an employer's failure to pay its security guards for on-duty meal periods.

\* ***Holloway v. Best Buy Co., Inc.***: Obtained a consent decree, with a four-year duration, in a federal court class action requiring changes in Best Buy's personnel policies and procedures that will enhance the equal employment opportunities for the thousands of women, African Americans, and Latinos employed by Best Buy nationwide.

\* ***Professional Engineers in California Government, et al. v. Brown, et al.***: Obtained, and successfully defended on appeal, a ruling that the California Governor and Department of Personnel Administration exceeded their authority by unilaterally imposing unpaid furloughs on public employees.

\* ***Kairy v. SuperShuttle Int'l, Inc.***: Successful Ninth Circuit appeal reinstating California employment law claims brought by class of misclassified airport drivers whose employer argued that allowing the claims to proceed in court would impermissibly interfere with the regulatory authority of the California Public Utilities Commission.

\****Green v. Bank of America***: Successful Ninth Circuit appeal from order dismissing California state law "suitable seating" class claims, establishing that the mandatory seating requirement of Industrial Wage Commission wage orders does not require workers to request seating.

* ***Brooks v. U.S. Bank***: Obtained a $1.9 million settlement of a federal court case brought on behalf of a class of 2,600 in-store bankers for violation of California's "suitable seating" law.

* ***Rite-Aid v. Superior Court***: In a case arising under California's "suitable seating" law, obtained an appellate reversal of the trial court's denial of class certification, finding that the trial court erred by deciding threshold merits issues at the class certification stage.

*****Williamson v. Microsemi***: Obtained a $2.35 million settlement, amounting to 113% of targeted bonuses, on behalf of a class of employees and executives of a merged company who failed to receive change-in-ownership/retention bonuses to which they were entitled after the completion of the merger.

* ***Jane Doe v. Reddy***: Obtained an $11 million settlement in a human trafficking case on behalf of young Indian women who were unlawfully brought into the United States and forced to provide sex and free labor.

* ***Anderson v. Regents***: Obtained an $11 million recovery in a Contracts Clause class action challenging the University of California's refusal to fund thousands of university professors' merit salary increases.

### FREE SPEECH

* ***Auvil v. CBS 60 Minutes***: Obtained a dismissal of a class-action product-defamation suit brought by Washington apple growers against the Natural Resources Defense Council for having publicized the public health hazards of the growth regulator Alar.

* ***SEIU v. City of Houston***: After obtaining a preliminary injunction under the First Amendment, obtained on appeal a ruling that three Houston ordinances that restrict the right to protest via parades and public gatherings in public parks, and that restrict the use of sound amplification equipment, violate the First Amendment.

* ***Buyukmihci v. Regents***: Obtained a permanent injunction protecting the free speech rights of a tenured professor of veterinary medicine whom the University of California had tried to fire because of his animal rights views.

* ***Furukawa Farms v. California Rural Legal Assistance***: Successfully defended a statewide poverty law office against a suit brought by agricultural growers to block its advocacy on behalf of farm workers.

* ***Coors v. Wallace***: Defeated an antitrust suit brought by Adolph Coors Company against the organizers of a nationwide consumer boycott of Coors beer.

### CAMPAIGN AND ELECTION

* ***Northeast Ohio Coalition for the Homeless v. Husted/SEIU Local 1 v. Husted***: Struck down Ohio law that would have disqualified, prior to 2012 election, thousands of votes cast by registered voters in the right polling location but the wrong precinct due to poll-worker error.

8

* ***Brunner v. Ohio Republican Party*** (Supreme Court): Helped to defeat the Republican Party's attempt, during the November 2008 election, to require Ohio election officials to turn over the records of newly registered voters whose voter registration and motor vehicle information did not match, which would have enabled the Party to seek disenfranchisement of up to 600,000 new voters.

* ***Curley v. Lake County Bd. of Elections and Registration***: Obtained an injunction requiring election officials to permit early voting in the November 2008 election in predominantly African-American and Latino communities of Gary, Hammond, and East Chicago, Indiana.

* ***Common Cause of Colorado v. Hoffman***: Obtained a stipulation and court order requiring Colorado's Secretary of State to stop the unlawful purging of registered voters prior to the November 2008 election and to count ballots cast by voters who had previously been improperly purged unless there was clear and convincing evidence that they were ineligible to vote.

 * ***State ex rel. Colvin v. Brunner/Project Vote v. Madison County Board of Elections***: Helped to defeat the Ohio Republican Party's efforts, during the November 2008 election, to require voters to wait 30 days after registering to vote before being able to cast an absentee ballot, which would have deprived thousands of voters of their right to vote absentee.

* ***Common Cause v. Jones***: Obtained a court order requiring the replacement of pre-scored punch card voting machines in California prior to the 2004 Presidential election.

* ***Fleischman v. Protect Our City***: Obtained, and successfully defended in the Arizona Supreme Court, an injunction removing an anti-immigrant initiative from the November 2006 Phoenix ballot on the ground that the city law granting initiative supporters the right to supplement signatures after the filing deadline was preempted by state law.

* ***Hawaii State AFL-CIO v. Yoshina***: Overturned on state election law grounds Hawaii's decision to ignore abstentions in determining whether the required percentage of votes was cast in favor of a ballot measure calling for a new state constitutional convention.

* ***Gomez v. City of Escondido***: Obtained a consent decree requiring the City of Escondido to convert to a district-based system for electing the City Council, in place of a longstanding at-large system that had diluted the voting strength of the Latino community and had prevented them from electing candidates of their choosing.

## IMMIGRATION

* ***AFL-CIO v. Chertoff***: Obtained a nation-wide injunction against a Department of Homeland Security regulation that would turn Social Security Administration "no-match" letters into an immigration-enforcement tool without authorization from Congress.

* ***Catholic Social Services/Ayuda/Immigrant Assistance Project v. Reno***: Obtained the right to apply for legalization under the Immigration Reform and Control Act for hundreds of thousands of undocumented aliens who were prevented from applying because of unlawful federal regulations; and negotiated temporary work authorization for approximately three million aliens potentially eligible for legalization under the Act.

\* ***Calif. Rural Legal Assistance v. Legal Services Corp.***: Overturned a regulation prohibiting the provision of federally-funded legal services to a nationwide class of several million aliens who had been legalized through the amnesty process.

\* ***Patel v. Quality Inn South / EEOC v. Tortilleria "La Mejor"***: Through a series of cases, established the eligibility of undocumented immigrant workers for the full remedial protections of the Fair Labor Standards Act and Title VII of the 1964 Civil Rights Act.

## PUBLIC BENEFITS

\* ***Oster v. Wagner***: Obtained an injunction to block implementation of a California statute that would have severely reduced the eligibility of elderly and disabled Californians for in-home support services that enable them to remain in their own homes.

\* ***Dominguez v. Schwarzenegger***: Obtained, and successfully defended on appeal, a preliminary injunction against the implementation of a state statute that would have reduced the wages of providers of in-home support services to elderly and disabled Californians, and blocked Fresno County from reducing the wages of its providers to the minimum wage.

\* ***M.R. v. Dreyfus***: Obtained a Ninth Circuit ruling that plaintiffs challenging a ten percent reduction in hours of Medicaid home care services are entitled to a preliminary injunction under the Americans with Disabilities Act.

EXHIBIT D

COHEN MILSTEIN SELLERS & TOLL PLLC
Andrew N. Friedman (admitted *pro hac vice*)
1100 New York Ave. NW
Suite 500, East Tower
Washington, DC 20005
Telephone:  (202) 408-4600
Facsimile:  (202) 408-4699

Attorney for Plaintiff Nanette Douglass

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

|  |  |
|---|---|
| **IN RE ANTHEM, INC. DATA BREACH LITIGATION** | Case No. 15-MD-02617-LHK<br><br>**DECLARATION OF ANDREW N. FRIEDMAN IN SUPPORT OF MOTION FOR APPOINTMENT OF EVE H. CERVANTEZ AND ANDREW N. FRIEDMAN AS PLAINTIFFS' LEAD COUNSEL AND A STEERING COMMITTEE**<br><br>Date:   September 10, 2015<br>Time:  1:30 p.m.<br>Judge: Lucy H. Koh |

I, Andrew N. Friedman, declare as follows:

1.      I am a partner with Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein"), counsel for Plaintiff Nanette Douglass in these consolidated cases.  I am a member in good standing of the Bar of the District of Columbia and the Bar of the State of New York.  I have personal knowledge of the facts stated herein and, if called upon to do so, could and would testify competently thereto.

2.      I respectfully submit that the breadth of my experience in leading the prosecution of complex class actions over the past 30 years (as described below) and my demonstrated ability to work well with co-counsel, make me well-qualified to serve as Plaintiffs' Co-Lead Counsel in this case.  In virtually every case I have led, there has been multiple co-counsel.  I am adept at organizing and running these cases in an efficient manner so that there is minimal overlap of tasks assigned to the various firms.  In my career, I have had first-hand experience working in virtually every kind of consumer class action, including data breach cases.  Moreover, I have extensive experience in virtually every facet of litigation; from arguing dispositive motions and taking and defending key depositions to settling and trying cases. In addition, Cohen Milstein's historical commitment to protect individuals and small businesses from the misconduct of large corporate interests and to bring sufficient resources to bear to successfully litigate these cases, also supports my selection as one of Plaintiffs' Co-Lead Counsel.

3.      As described in more detail in the attached resume (Exhibit 1), for over 40 years, the Firm has represented individuals, small businesses, institutional investors and employees in many of the major class action cases litigated in the United States for violations of the antitrust, securities fraud, consumer protection, civil & human rights/discrimination, employment, and ERISA laws. While adept at resolving class actions in a manner beneficial to the Class, the Firm is equally comfortable trying these cases where necessary to get the best result for the Class.  Indeed, as noted in the attached resume, over its history, Cohen Milstein has obtained many landmark judgments and settlements for class members.  Cohen Milstein is consistently recognized by its peers and the legal press as one of the top firms representing plaintiffs in complex litigation.

4.      With 80 attorneys in six offices, Cohen Milstein has successfully litigated hundreds of complex class actions.  Because most of the cases undertaken by the Firm are done on a

contingency basis, the Firm has historically advanced millions of dollars in case costs.  With a dedicated IT department, and as a licensed user of a case management system capable of storing and navigating through millions of pieces of data (and with access to other document management systems), the Firm is comfortable in cases where millions of pages of documents are produced.  In short, Cohen Milstein's demonstrated financial wherewithal, support systems and strong personnel make it well-suited to effectively and efficiently litigate this case to conclusion.

5.     I am a *magna cum laude* 1980 graduate of Tufts University.  I graduated from the George Washington University National Law Center with a J.D. in 1983.  After working for the United States Patent and Trademark Office, I joined Cohen Milstein in 1985.

6.     My practice at Cohen Milstein has focused exclusively on class action and complex litigation, focusing mostly on consumer and securities class actions.  I am a Co-Chair of the Consumer Protection & Unsafe Products Practice Group.  I have been instrumental in securing significant recoveries on behalf of millions of consumers for defective products and deceptive services – from automobile defects to deceptive marketing on the internet..  The following cases are illustrative of my work in the Consumer field:

- I was one of the principal counsel in *Snyder v. Nationwide Mutual Insurance Com.* (Sup. Ct., Onondaga Cnty, NY), a class action brought on behalf of  insurance policyholders alleging a scheme related to "vanishing premiums" that resulted in a settlement valued at between $85 million and $103 million.

- As one of two co-lead counsel in a class action against Thomson Consumer Electronics, I reached a court-approved agreement that made up to $100 million available for persons who paid for unreimbursed repairs to televisions.  *Baird v. Thomson Consumer Electronics*, (Madison Cty., Ill.)

- I was part of the plaintiffs' team that secured nationwide benefits (of up to $800 per repair) for GM vehicle purchasers as the result of defective automobile engine coolants.  *In re General Motors Dex-cool Products Liability Litig.* (Jackson Cty., Mo.).

- In *In re Vonage Mktg. And Sales Practies Litig.* (D.N.J.), I acted as co-lead counsel representing telecommunications subscribers alleging deceptive advertising and account

2

1  management practices, resulting in a $4.75 million settlement.

2  •   In *In re iPod Cases* (Cal. Super. Ct., San Mateo County), I represented iPod purchasers who

3  alleged material misrepresentations and omissions about the battery life of the iPods.  I, along

4  with other principal counsel, negotiated a settlement conservatively valued at $15 million,

5  which provided payments, extended warranties, battery replacements and store credits to the

6  class.  Judge Beth L. Freeman praised Plaintiffs' firms as having provided "significant and

7  substantial benefit" for the class and described counsel as "extremely well qualified."

8  •   I was lead counsel in a case in this Court alleging the collection of unauthorized monthly

9  credit and debit charges as the result of  post-transaction marketing and which resulted in a

10  settlement offering most class members virtually 100% cash refunds for those who made

11  claims.  *Ferrington v. McAfee, Inc.* (N.D. Cal.).

12  •   As co-lead counsel in *Keithly v. Intelius, Inc.* (W.D. Wash.) I was able to negotiate two

13  nationwide settlements with Intelius, Inc. relating to negative option programs and improper

14  post-transaction marketing.  The combined settlements made $12 million in cash and a total

15  of $3.5 million in vouchers available to the Class.

16  7.     Most recently, as lead counsel in a major consumer class action against Symantec

17  Corp. and Digital River, Inc., I led a team of attorneys on behalf of a class of millions of consumers

18  who allegedly unnecessarily purchased either Extended Download Insurance or Norton Download

19  Insurance with their Norton software purchases.  *Khoday v Symantec Corp.* (D. Minn.)  After the

20  completion of discovery, the certification of a national class, the denial of defendants' *Daubert*

21  motions and motion for summary judgment, and with one month left before the trial-ready date, the

22  case settled earlier this year on a national basis for $60 million in cash.  The motion for preliminary

23  approval of that settlement is pending.

24  8.     Both the Firm and I have also played significant roles in privacy and data breach

25  cases. Currently, in *In re the Home Depot, Inc. Customer Data Security Breach Litig (Financial*

26  *Institution).*(ND. Ga.), I am a member of the Plaintiffs' Steering Committee and head the Expert

27  Committee.  I have taken the lead in selecting consultants and experts in the fields of cybersecurity,

28  payment processing and damages and have been working with them in discovery.  In that position, I

3

have seen first- hand the complexities involved in efficiently coordinating plaintiffs' counsel and their experts and consultants in one of the largest data breach cases on record.  Other representative cases include:

- *In re Google Inc. Street View Electronic Communications Litigation*, (N.D. Cal.) (The Firm has served as co-lead counsel in this suit on behalf of a nationwide class regarding Google's intentional interception of electronic communications sent over their open, non-secured wireless internet connections through its use of vehicles sent to capture images for its "Street View" technology)

- *In re Heartland Payment Systems, Inc. Securities Litigation*, (D.N.J.) (I served on the Steering Committee on the financial institution side of this data breach case)

- *In Re: Science Applications International Corp. (SAIC) Backup Tape Data Theft Litigation*, (D.D.C.). (I played a significant role in this case related to a data breach of medical records and personal health information belonging to 4.7 million former and active military personnel.  The case was dismissed by the Court on standing grounds.)

- *Nader v. Capital One Bank (USA), N.A.*, (C.D. Cal.).  (I served as one of the principal counsel in this litigation in which the bank covertly recorded outbound customer service calls.  Capital One agreed to a $3 million settlement).

9.      In addition to my work in consumer class actions, I have litigated numerous securities class actions.  In *In re Globalstar Sec. Litig.* (S.D.N.Y.), for example, I served as one of lead trial counsel at the trial of a certified class action.  Near the end of the second week of trial, a cash settlement of $20 million was reached for the benefit of the certified class.  In approving the settlement, Judge P. Kevin Castel was highly complimentary of plaintiffs' counsel, calling me and others "top trial lawyers," "…[who were] exceptionally fine in their presentation of the evidence."

10.      I believe that in our roles as temporary Co-Lead Counsel in this case,  Eve Cervantez and I have worked effectively and cooperatively with all Plaintiffs' counsel and defense counsel.  I expect that we would continue to work in that manner if appointed as Co-Lead Counsel and we are committed to leading this case to a successful conclusion on behalf of the Class.

4

DECLARATION OF ANDREW N. FRIEDMAN IN SUPPORT OF
MOTION FOR APPOINTMENT OF EVE H. CERVANTEZ AND ANDREW N. FRIEDMAN AS PLAINTIFFS'
LEAD COUNSEL AND A STEERING COMMITTEE    Case No. 15-MD-02617-LHK

1   I declare under penalty of perjury under the laws of the United States of America that the

2   foregoing is true and correct. Executed on August 19, 2015, at Washington, D.C.

3

4

5                            /s/ Andrew N. Friedman
                              ANDREW N. FRIEDMAN
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF ANDREW N. FRIEDMAN IN SUPPORT OF
MOTION FOR APPOINTMENT OF EVE H. CERVANTEZ AND ANDREW N. FRIEDMAN AS PLAINTIFFS'
LEAD COUNSEL AND A STEERING COMMITTEE    Case No. 15-MD-02617-LHK

# EXHIBIT 1



**Firm Resume**

# Cohen Milstein Sellers & Toll PLLC

For decades, Cohen Milstein Sellers & Toll PLLC has represented individuals, small businesses, institutional investors, and employees in many of the major class action cases litigated in the United States for violations of the antitrust, securities, consumer protection, civil rights/discrimination, ERISA, employment, and human rights laws. Cohen Milstein is also at the forefront of numerous innovative legal actions that are expanding the quality and availability of legal recourse for aggrieved individuals and businesses both domestic and international.  Over its history, Cohen Milstein has obtained many landmark judgments and settlements for individuals and businesses in the United States and abroad. The firm's most significant past and present cases include:

- In re Urethane Antitrust Litigation (Polyether Polyol Cases) (D. Kan.). Cohen Milstein represents a class of direct purchasers of several types of chemicals who were overcharged as a result of a nationwide price-fixing and market allocation conspiracy.  Cohen Milstein was able to negotiate settlements with certain defendants totaling approximately $139 million, and proceeded to trial against the remaining defendant. Following the trial, the jury returned a verdict in favor of the class that amounted to $400 million, which was trebled to $1.2 billion.

- Countrywide MBS Litigation, (2:10-cv-00302, U.S. District Court in the Central District of California).  In April 2013, Plaintiffs in the landmark mortgage-backed securities (MBS) class action litigation against Countrywide Financial Corporation and others, led by Lead Plaintiff, the Iowa Public Employees' Retirement System (IPERS), agreed to a $500 million settlement. It is the nation's largest MBS-federal securities class action settlement.  If approved, the settlement will bring to a close the consolidated class action lawsuit brought in 2010 by multiple retirement funds against Countrywide and other defendants for securities violations involving the packaging and sale of MBS.  Bank of America acquired Countrywide in 2008.

- Harborview MBS Litigation, (No. 08-5093) U.S. District Court for the Southern District of New York).  In early 2014, Plaintiffs in the mortgage-backed securities (MBS) class action litigation against Royal Bank of Scotland (RBS) and others, led by New Jersey Carpenters Health Fund and the Boilermaker Blacksmith Pension Trust, along with additional class representatives Iowa Public Employees' Retirement System and Midwest Operating Engineers Pension Trust Fund, agreed to a $275 million cash settlement.  The settlement was finally approved by the Court in November 2014 and brings to a close the consolidated class action lawsuit brought in 2008 by the pension funds against RBS and other defendants for securities violations involving the packaging and sale of 14 public offerings of "Harborview" series MBS.

- In Re Electronic Books Antitrust Litigation, (No. 11-md-02293, U.S. District Court for the Southern District of New York). In August 2014, a New York federal judge approved a $400 million antitrust settlement in the hotly contested ebooks price-fixing suit against Apple Inc. Combined with $166 million in previous settlements with five defendant publishing companies, consumers could receive more than $560 million. The settlement resolves damages claims brought by a class of ebook purchasers and attorneys general from 33 U.S. states and territories.

- Keepseagle v. Vilsack, Civil Action No. 1:99CV03119 (D.D.C.).  A class of Native American farmers and ranchers allege that they have been systematically denied the same opportunities to

obtain farm loans and loan servicing that have been routinely afforded white farmers by the USDA. A class was certified in 2001 by Judge Emmet Sullivan, District Judge for the U.S. District Court for the District of Columbia, and the D.C. Circuit declined USDA's request to review that decision. On October 19, 2010, the case reached a historic settlement, with the USDA agreeing to pay $680 million in damages to thousands of Native American farmers and ranchers and forgive up to $80 million worth of outstanding farm loan debt.

- Brannen vs. Ford Motor Corporation, (No. 16-2011-CA-01772-XXXX0MB Div. CV-B). In Brannen vs. Ford Motor, at the conclusion of a lengthy three-week trial, the jury found that the 2005 Ford F-150 was placed on the market with a defectively designed fuel system with a plastic skid plate. Through litigation, the Defendants denied any design defect and refused to acknowledge that the plastic construction led to a catastrophic failure and secondary injuries for Plaintiff Michelle Brannen. Cohen Milstein counsel successfully saw the case to trial and a jury awarded a $4.2 million dollar verdict in favor of Ms. Brannen.

- Salvato vs. Marion County Sheriff's Office, (Civil Action No. 5:12-CV-635-OC-10PRL). In Salvato vs. Marion County Sheriff's Office, a jury of 3 men and 5 women found Sheriff Chris Blair, and Deputies Lauren Miley and Norman Brown of the Marion County Sheriff's Office, responsible for using excessive deadly force that resulted in the wrongful death of Joshua Salvato, an unarmed 21-year-old, who was shot and killed by the deputies nearly two years ago. The verdict was issued after an eight-day trial in the United District Court, Middle District of Florida Ocala Division, under presiding Judge William Terrell Hodges. Cohen Milstein counsel successfully saw the case to trial and the jury returned restitution in the amount of $2.3 million, charging Miley used excessive force and Brown willfully and wantonly acted in bad faith by inflicting conscious pain and suffering on Joshua Salvato before he died.

- In re Vitamins Antitrust Litigation, MDL No. 1285 (D.D.C.). Cohen Milstein served as co-lead counsel for two certified classes of businesses that directly purchased bulk vitamins and were overcharged as a result of a ten year global price-fixing and market allocation conspiracy. Chief Judge Hogan approved four major settlements between certain vitamin defendants and Class Plaintiffs, including a landmark partial settlement of $1.1 billion. In a later trial before Chief Judge Hogan concerning four Class Plaintiffs' remaining unsettled Vitamin B4 (choline chloride) claims, a federal jury in Washington unanimously found Japan's second largest trading company, Mitsui & Co., Ltd., its wholly-owned U.S. subsidiary Mitsui & Co. (U.S.A.), Inc., DuCoa, LP, a choline chloride manufacturer based in Highland, Illinois, and DuCoa's general partner, DCV, Inc. liable for participating in the conspiracy and ordered them to pay $49,539,234, which is trebled to $148,617,702 under the federal antitrust laws. The case was subsequently settled against those defendants.

- In re Parmalat Securities Litigation, No. 04 MD 1653 (S.D.N.Y.). In this securities litigation case, Cohen Milstein has successfully negotiated two partial settlements totaling approximately $90 million. At the second partial settlement hearing, Judge Lewis A. Kaplan remarked that plaintiffs counsel "did a wonderful job here for the class and were in all respects totally professional and totally prepared. I wish I had counsel this good in front of me in every case." Our clients, four large European institutional investors, were appointed as co-lead plaintiffs and we were appointed as co-lead counsel. Most notably, this case allowed us the opportunity to demonstrate our expertise in the bankruptcy area. During the litigation, the company subsequently emerged from bankruptcy and we added "New Parmalat" as a defendant because

of the egregious fraud committed by the now-bankrupt old Parmalat. New Parmalat strenuously objected and Judge Kaplan of the Southern District of New York ruled in the class plaintiffs' favor, a ruling which was affirmed on appeal. This innovative approach of adding New Parmalat enabled the class to obtain an important additional source of compensation, as we subsequently settled with New Parmalat.

- Dukes v. Wal-Mart Stores, Inc., No. C-01-2252 (N.D. Cal.). Cohen Milstein is co-lead counsel in this sex discrimination case. In 2004, the U.S. District Court certified a nationwide class action lawsuit for all female employees of Wal-Mart who worked in U.S. stores anytime after December 26, 1998. This was the largest civil rights class action ever certified against a private employer, including approximately 1.5 million current and former female employees. That ruling was appealed, and while affirmed by the Ninth Circuit, was reversed by the Supreme Court in June 2011. Cohen Milstein argued the case for the plaintiffs-respondents in the Supreme Court. Since then, the *Dukes* action has been amended to address only the Wal-Mart regions that include stores in California, and other regional class cases have been or are soon to be filed. This litigation to resolve the merits of the claims – whether Wal-Mart discriminates against its female retail employees in pay and promotions – continues.

- Rubin v. MF Global, Ltd. (08-CV-02233, S.D.N.Y.). Acting as co-lead counsel in this class action, the Firm represented the Central States, Southeast and Southwest Areas Pension Fund which was one of the co-lead plaintiffs in the case. In September 2010, as a result of Plaintiffs' decision to appeal, the U.S. Second Circuit Court of Appeals vacated in part the lower court's dismissal of the case and remanded the case for further proceedings. In overturning the District Court decision, the Second Circuit issued a decision which differentiated between a forecast or a forward looking statement accompanied by cautionary language -- which the Appellate Court said would be insulated from liability under the bespeaks caution doctrine -- from a factual statement, or non-forward-looking statement, for which liability may exist. Importantly, the Second Circuit accepted Plaintiffs' position that where a statement is mixed, the court can sever the forward-looking aspect of the statement from the non-forward looking aspect. The Court further stated that statements or omissions as to existing operations (and present intentions as to future operations) are not protected by the bespeaks caution doctrine. Mediation followed this decision and resulted in a settlement comprised of $90 million in cash.

- Hughes v. Huron Consulting Group (09-CV-04734, N.D. Ill.). Cohen Milstein represented lead plaintiffs the Public School Teachers' Pension & Retirement Fund of Chicago and the Arkansas Public Employees Retirement System ("APERS") in this case against Huron Consulting Group, founded by former Arthur Anderson personnel following its collapse in the wake of the Enron scandal. In August 2010, the District Court for the Northern District of Illinois denied defendants' motions to dismiss in their entirety and upheld plaintiffs' allegations that defendants intentionally improperly accounted for acquisition-related payments, which allowed plaintiffs to move forward with discovery. The case was settled for $40 million, comprised of $27 million in cash and 474,547 shares in Huron common stock, with an aggregate value at the time of final approval in 2011 of approximately $13 million.

- In re Lucent Technologies Securities Litigation, Civ. Action No. 00-621 (JAP) (D.N.J.). A settlement in this massive securities fraud class action was reached in late March 2003. The class portion of the settlement amounts to over $500 million in cash, stock and warrants and ranks as the second largest securities class action settlement ever completed. Cohen Milstein

represented one of the co-lead plaintiffs in this action, a private mutual fund.

- <u>RehabCare</u>, Civil Action No. 6197 (Delaware Court of Chancery). Cohen Milstein served as co-lead counsel in this shareholder litigation challenging the acquisition of healthcare provider RehabCare Group, Inc. by Kindred Healthcare, Inc.  A settlement was approved in September 2011 and provided for additional disclosures regarding the process leading up to the merger along with a $2.5 million payment for the benefit of the class of RehabCare shareholders.

- <u>Nate Pease, et al. v. Jasper Wyman & Son, Inc., et al.</u>, Civil Action No. 00-015 (Knox County Superior Court, Me.).  In 2004, a state court jury from Maine found three blueberry processing companies liable for participating in a four-year price-fixing and non-solicitation conspiracy that artificially lowered the prices defendants paid to approximately 800 growers for wild blueberries.  The jury ordered defendants Cherryfield Foods, Inc., Jasper Wyman & Son, Inc., and Allen's Blueberry Freezer, Inc. to pay $18.68 million in damages, the amount which the growers would have been paid absent the defendants' conspiracy.  After a mandatory trebling of this damage figure under Maine antitrust law, the total amount of the verdict for the plaintiffs is just over $56 million.  The Firm served as co-lead counsel.

- <u>In re StarLink Corn Products, Liability Litigation</u>, MDL No. 1403. (N.D. Ill.).  Cohen Milstein successfully represented U.S. corn farmers in a national class action against Aventis CropScience USA Holding and Garst Seed Company, the manufacturer and primary distributor of StarLink corn seeds.  StarLink is a genetically modified corn variety that the United States government permitted for sale as animal feed and for industrial purposes, but never approved for human consumption.  However, StarLink was found in corn products sold in grocery stores across the country and was traced to widespread contamination of the U.S. commodity corn supply.  The Firm, as co-lead counsel, achieved a final settlement providing more than $110 million for U.S. corn farmers, which was approved by a federal district court in April 2003.  This settlement was the first successful resolution of tort claims brought by farmers against the manufacturers of genetically modified seeds.

- <u>Snyder v. Nationwide Mutual Insurance Company</u>, No. 97/0633 (Sup. Ct. N.Y. Onondaga Cty.).  Cohen Milstein served as one of plaintiffs' principal counsel in this case on behalf of persons who held life insurance policies issued by Nationwide through its captive agency force.  The action alleged consumer fraud and misrepresentations.  Plaintiffs obtained a settlement valued at more than $85 million.  The judge praised the efforts of Cohen Milstein and its co-counsel for having done "a very, very good job for all the people."  He complimented "not only the manner" in which the result was arrived at, but also the "time … in which it was done."

- <u>Oncology & Radiation Associates, P.A. v. Bristol Myers Squibb Co., et al.</u>, No. 1:01CV02313 (D.D.C.). Cohen Milstein has been co-lead counsel in this case since its inception in 2001.  Plaintiffs alleged that Bristol-Myers Squibb unlawfully monopolized the United States market for paclitaxel, a cancer drug discovered and developed by the United States government, which Bristol sells under the brand name Taxol. Bristol's scheme included a conspiracy with American BioScience, Inc., a generic manufacturer, to block generic competition. Cohen Milstein's investigation and prosecution of this litigation on behalf of direct purchasers of Taxol led to a settlement of $65,815,000 that was finally approved by U.S. District Judge Emmet G. Sullivan on August 14, 2003 and preceded numerous Taxol-related litigations brought by the Federal Trade Commission and State Attorneys General offices.

- <u>Kruman v. Christie's International PLC, et al.</u>, Docket No. 01-7309.  A $40 million settlement on behalf of all persons who bought or sold items through Christie's or Sotheby's auction houses in non-internet actions was approved in this action.  Cohen Milstein served as one of three leading counsel on behalf of foreign plaintiffs.  The Court noted that approval of the settlement was particularly appropriate, given the significant obstacles that faced plaintiffs and plaintiffs' counsel in the litigation.  The settlement marked the first time that claims on behalf of foreign plaintiffs under U.S. antitrust laws have been resolved in a U.S. court, a milestone in U.S. antitrust jurisprudence.

- <u>In re The Exxon Valdez Litigation</u>, No. A89-095 Civ. (D. Ak.).  The firm was selected from dozens of law firms around the country by federal and state judges in Alaska to serve as co-lead counsel for plaintiffs in the largest environmental case in United States history that resulted in a jury verdict of more than $5 billion (reversed and remanded for revised punitive damages award; further proceedings pending).

- <u>Holocaust Litigation</u>.  In the historic Swiss Banks litigation, Cohen Milstein served, *pro bono,* as co-lead counsel for Holocaust survivors against the Swiss banks that collaborated with the Nazi regime during World War II by laundering stolen funds, jewelry and art treasures.  Cohen Milstein obtained a $1.25 billion settlement, leading the presiding judge to call the firm's work "indispensable."  *See In re Holocaust Victim Assets Litig.*, Case No. CV 96-4849 (ERK) (MDG) (Memorandum of Chief Judge Korman dated July 26, 2002).  The Firm was also a lead counsel in litigation by survivors of World War II-era forced and slave labor in litigation against the German companies that profited from using the labor of concentration camp inmates.  This litigation, which resulted in an unprecedented settlement of $5.2 billion, was resolved by multinational negotiations involving the defendants, plaintiffs' counsel, and the governments of several countries for approximately two million claimants.

    Cohen Milstein has contributed over tens of thousands of hours of time to human rights and *pro bono* cases since 1996.  As an example, the Firm represented eight survivors and/or families of the victims of the September 11, 2001 attack on the Pentagon before the Federal compensation fund.  Cohen Milstein has obtained a substantial recovery for each, including the highest recovery to date, $6.8 million, for an injured individual.

- <u>Roberts v. Texaco, Inc.</u>, 94-Civ. 2015 (S.D.N.Y.).  Cohen Milstein represented a class of African-American employees in this landmark litigation that resulted in the then-largest race discrimination settlement in history ($176 million in cash, salary increases and equitable relief).  The Court hailed the work of class counsel for, *inter alia,* "framing an imaginative settlement, that may well have important ameliorative impact not only at Texaco but in the corporate context as a whole …".

- <u>Conanan v. Tanoue</u>, No. 00-CV-3091 (ESH).  Cohen Milstein represented African-American employees at the Federal Deposit Insurance Corporation (FDIC) in this race discrimination suit, which settled for $14 million.   The settlement provides the largest payment made in an employment discrimination class action based on race against a federal agency.

- <u>Trotter v. Perdue Farms, Inc.</u>, Case No. 99-893 (RRM) (JJF) (MPT), D. Del.  This suit on behalf of hourly workers at Perdue's chicken processing facilities – which employ approximately 15,000 people – forced Perdue to pay employees for time spent "donning and

doffing," that is, obtaining, putting on, sanitizing and removing protective equipment that they must use both for their own safety and to comply with USDA regulations for the safety of the food supply.  The suit alleged that Perdue's practice of not counting donning and doffing time as hours worked violated the Fair Labor Standards Act and state law.  In a separate settlement with the Department of Labor, Perdue agreed to change its pay practices.  In addition, Perdue is required to issue retroactive credit under one of its retirement plans for "donning and doffing" work if the credit would improve employees' or former employees' eligibility for pension benefits.  Cohen Milstein was co-lead counsel.

In addition, Cohen Milstein is an innovator in new areas of the law.  Cohen Milstein was in the forefront of filing antitrust claims on behalf of indirect purchasers in 1993 and 1994, when it filed state-court actions in 18 states on behalf of indirect purchasers of infant formula.  This was the first effort to systematically and simultaneously pursue treble damages claims on behalf of indirect-purchasing consumers in all states where antitrust laws permitted such claims.  This approach, and variations of it, has since become the accepted model for pursuing antitrust damages on behalf of indirect-purchasing consumers.  The Firm also has been in the forefront of the development of international antitrust theory and litigation of claims.  As the global economy has produced worldwide conglomerates, so, too, has the nature of antitrust violations changed.  For example, in *Kruman v. Christie's International PLC, et al.* Docket No. 01-7309 and *In re Bulk Vitamins Antitrust Litigation*, MDL 1285 (D.D.C.), both the parties and the anticompetitive actions were played out on a world, rather than domestic, stage.  The firm also represents and won Lead Plaintiff status for domestic and foreign investors in a foreign company's bonds, in a PSLRA litigation being pursued in the United States, *In re Parmalat Securities Litigation*, Master Docket 04 Civ. 0030 (LAK) (S.D.N.Y.).

**Awards & Recognition**

In 2015, Partners Theodore J. Leopold and Leslie M. Kroeger and Of Counsel Attorneys Stephan A. LeClainche and Wallace B. McCall were selected to the 2015 Florida Super Lawyers list and Adam J. Langino was selected to the Florida Rising Stars list.

In 2015, Cohen Milstein attorneys R. Joseph Barton, Andrew Friedman, Agnieszka Fryszman, Karen Handorf, Kit A. Pierson, Julie Reiser, Bruce Rinaldi, Joseph M. Sellers, Linda Singer, Daniel A. Small, Daniel S. Sommers, Steven J. Toll and Christine E. Webber were selected as Washington DC Super Lawyers.

In 2015, Cohen Milstein attorneys Laura Alexander, Monya Bunch, S. Douglas Bunch, Joshua S. Devore, Jeffrey Dubner, Johanna Hickman, Kalpana Kotagal, Emmy Levens, and David Young were selected as Washington DC Rising Stars by Super Lawyers.

In 2015, for the fourth time in five years, Cohen Milstein was selected to the *National Law Journal* **Plaintiffs' Hot List**

In 2015, Cohen Milstein Partner Carol V. Gilden was selected as "Pension Funds Litigation Attorney of the Year in Illinois" for the second year in a row by the Corporate INTL Legal Awards.

In 2014, Cohen Milstein's Antitrust Practice was selected as a Practice Group of the Year by Law360.

In 2014, Cohen Milstein Partner Kit Pierson was selected as an MVP by Law360.

In 2014, Cohen Milstein was named a "**Most Feared Plaintiffs Firm**" by Law360 for the second year in a row.

In 2014, Cohen Milstein was selected as an **Elite Trial Lawyer** firm by the National Law Journal.

Cohen Milstein Partners Steven J. Toll, Joseph M. Sellers, Kit A. Pierson, and Agnieszka M. Fryszman Selected to the **2014 Lawdragon 500**.

Joseph M. Sellers, Theodore J. Leopold, Leslie M. Kroeger, and Wallace B. McCall Make "**Best Lawyers**' List" for 2015.

Released in 2014, the 2013 SCAS 50 Report on Total Securities Class Action Settlements once again ranked Cohen Milstein as a top firm.

In 2014, Theodore J. Leopold, a partner at Cohen Milstein, was been selected to the Top 100 Miami Florida Super Lawyers list.  Partner Leslie M. Kroeger and Of Counsel Attorney Wallace B. McCall were selected to the **2014 Florida Super Lawyers** list and Diana L. Martin was selected to the **Florida Rising Stars** list.

In 2014, Cohen Milstein attorneys Leslie M. Kroeger and Adam J. Langino were both recognized in the 2014 edition of **Florida Trend's Florida Legal Elite™**.  Kroeger is recognized as Legal Elite and Langino is listed as an Up-and-Comer.

In 2014, Cohen Milstein was selected to the selected to the **National Law Journal's Midsize Hot List**.

In 2014, Cohen Milstein was recognized as a **"Highly Recommended Washington, DC Litigation Firm"** by Benchmark Plaintiff: The Definitive Guide to America's Leading Plaintiff Firms and Attorneys.

In 2014, Cohen Milstein was ranked as a **Leading Plaintiff Class Action Antitrust Firm in the United States by the Legal 500** for the sixth year in a row.

In 2014, Partner Richard Koffman was named, for the fourth consecutive year, in the Legal 500 United States **"Leading Lawyers"** list under the category of "Litigation - Mass Tort and Class Action: Plaintiff Representation - Antitrust".

In 2014, Cohen Milstein attorneys Christopher Cormier, Agnieszka Fryszman, Julie Goldsmith Reiser, Joseph Sellers, Daniel Sommers, and Steven Toll were recognized **as Local Litigation Stars** by Benchmark Plaintiff: The Definitive Guide to America's Leading Plaintiff Firms and Attorneys.

In 2014, Cohen Milstein attorneys R. Joseph Barton, Andrew Friedman, Agnieszka Fryszman, Karen Handorf, Kit A. Pierson, Julie Reiser, Bruce Rinaldi, Joseph M. Sellers, Linda Singer, Daniel A. Small, Daniel S. Sommers, Steven J. Toll and Christine E. Webber were selected as **Washington DC Super Lawyers**.

In 2014, Cohen Milstein attorneys Laura Alexander, Monya Bunch, S. Douglas Bunch, Joshua S. Devore, Jeffrey Dubner, Johanna Hickman, Joshua Kolsky, Kalpana Kotagal, Emmy Levens, Michelle Yau and David Young were selected as **Washington DC Rising Stars** by Super Lawyers.

In 2014, Cohen Milstein Partner Carol V. Gilden was selected as the Illinois Pension Fund Attorney of the Year.

In 2014, Theodore J. Leopold, a partner at Cohen Milstein, was been selected to the Top 100 Miami Florida Super Lawyers list.  Partner Leslie M. Kroeger and Of Counsel Attorney Wallace B. McCall were selected to the 2014 Florida Super Lawyers list and Diana L. Martin was selected to the Florida Rising Stars list.

In 2014, Cohen Milstein attorneys Leslie M. Kroeger and Adam J. Langino were both recognized in the 2014 edition of Florida Trend's Florida Legal Elite™.  Kroeger is recognized as Legal Elite and Langino is listed as an Up-and-Comer.

In 2014, Best Lawyers named Cohen Milstein Partner Joseph Sellers D.C. Litigation - Labor & Employment Lawyer of the Year.

In 2013, for the third-year in a row, Cohen Milstein was selected to the *National Law Journal* **Plaintiffs' Hot List**.

In 2013, Cohen Milstein was named a **"Most Feared Plaintiffs Firm"** by Law360.

In 2013, Cohen Milstein was ranked as a Leading Plaintiff Class Action Antitrust Firm in the United States by the Legal 500 for the fifth year in a row.

In 2013, Cohen Milstein attorneys Joseph Barton, Andrew Friedman, Agnieszka Fryszman, Karen Handorf, Kit A. Pierson, Julie G. Reiser, Joseph M. Sellers, Daniel A. Small, Daniel S. Sommers, Steven J. Toll, and Christine E. Webber were selected as **Washington DC Super Lawyers**.

In 2013, Cohen Milstein attorneys Joshua Devore and Michelle Yau were selected as **Washington DC Rising Stars** by Super Lawyers.

In 2013, Cohen Milstein Partner Carol V. Gilden was selected as a **2013 Illinois Super Lawyer**. She has been selected every year since 2005.

In 2012, for the second-year in a row, Cohen Milstein was selected to the *National Law Journal* **Plaintiffs' Hot List**.

In 2012, Cohen Milstein was the recipient of the Judith M. Conti Pro Bono Law Firm of the Year Award from the Employment Justice Center.

In 2012, Cohen Milstein was recognized as a "Highly Recommended Washington, DC Litigation Firm" by Benchmark Plaintiff: The Definitive Guide to America's Leading Plaintiff Firms and Attorneys.

In 2012, Cohen Milstein was ranked as a top firm by the 2011 SCAS Report on Total Securities Class Action Settlements.

In 2012, Cohen Milstein was ranked as a Leading Plaintiff Class Action Antitrust Firm in the United States by the Legal 500 for the fourth year in a row.

In 2012, Partner Joseph M. Sellers was selected as a **Washington DC Super Lawyer**.  Mr. Sellers was also selected for this prestigious award in 2007, 2008, 2009, 2010, and 2012.

In 2012, Partner Steven J. Toll was selected as a **Washington DC Super Lawyer**.  Mr. Toll was also selected for this prestigious award in 2007, 2009, 2010, and 2011.

In 2012, Partner Daniel S. Sommers was selected as a **Washington DC Super Lawyer**.  Mr. Sommers was also selected for this prestigious award in 2011.

In 2012, Partner Christine E. Webber was selected as a **Washington DC Super Lawyer**.  Ms. Webber was also selected for this prestigious award in 2007.

In 2012, Partner Agnieszka M. Fryszman was selected as a **Washington DC Super Lawyer**.

In 2012, Partner Kit A. Pierson was selected as a **Washington DC Super Lawyer**.

In 2012, Partner Carol V. Gilden was selected as an **Illinois Super Lawyer**.  Ms. Gilden was also selected for this prestigious award in 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

In 2011, Cohen Milstein was selected to the *National Law Journal* **Plaintiffs' Hot List**.

In 2011, Partner Joseph M. Sellers was selected as a **"Visionary"** by The *National Law Journal*.

In 2011, Partner J. Douglas Richards, Of Counsel Joel Laitman, and Of Counsel Christoper Lometti were selected as **New York - Metro Super Lawyers**.

In 2011, Partner Joseph M. Sellers and the *Keepseagle v. Vilsack* team were selected as a finalist for the **2011 Trial Lawyer of the Year Award** from the Public Justice Foundation.

In 2011, **Cohen Milstein was ranked as a Leading Plaintiff Class Action Antitrust Firm in the United States** by the Legal 500 for the third year in a row.

In 2011, Partners Steven Toll, Joseph Sellers, and Daniel Sommers were selected as **Washington DC Super Lawyers**.  Partner J. Douglas Richards, Of Counsel Joel Laitman and Christoper Lometti were selected as **New York - Metro Super Lawyers**.  Partner Carol Gilden was selected as an **Illinois Super Lawyer**.

In 2011, Cohen Milstein was a recipient of The *National Law Journal's* **Pro Bono Award**.  The Firm was named one of the "six firms that best reflect the pro bono tradition."

In 2010, Partner Joseph M. Sellers was selected as one of "**The Decade's Most Influential Lawyers**" by *The National Law Journal*.

In 2010, Partner Steven J. Toll was named one of Law360's "**Most Admired Attorneys**".

In 2010, Partner Andrew N. Friedman was selected as a **Washington DC Super Lawyer**.

In 2010, Partner Linda Singer was selected as one of "**Washington's Most Influential Women Lawyers**" by *The National Law Journal*.

In 2010, Partner Agnieszka M. Fryszman was selected as a finalist for the **Trial Lawyer of the Year Award** from the Public Justice Foundation.

In 2010, Partners Joseph M. Sellers and Agnieszka M. Fryszman were both selected as one of the **Lawdragon 500 Leading Lawyers in America**.

In 2010, Cohen Milstein was once again ranked as a **Leading Plaintiff Class Action Antitrust Firm in the United States** by the Legal 500.

In 2009, Partner Steven J. Toll was named a **Top Attorney in Corporate Litigation for Securities Litigation** by Super Lawyers.

In 2009, Partners Joseph M. Sellers and Christine E. Webber were named as **Top Washington Lawyers** by the Washingtonian Magazine.

In 2009, Cohen Milstein was recognized as **one of the top 50 law offices in Washington D.C. for diversity efforts**.

In 2009, Cohen Milstein was nominated for the prestigious **Class Action Law Firm of the Year** award by Global Pensions magazine for the third year in a row.

Cohen Milstein ranked as a **2009 Leading Plaintiff Class Action Antitrust Firm in the United States** by *The Legal500*.

The **2008 SCAS Report on Total Securities Class Action Settlements** ranked Cohen Milstein as a top firm for the second year in a row.

In 2008, Cohen Milstein was nominated for the prestigious **Class Action Law Firm of the Year** award by Global Pensions magazine for the second year in a row.

In 2008, Managing Partner Steven J. Toll was named one of Lawdragon's **100 Lawyers You Need to Know in Securities Litigation.**

In 2008, Steven J. Toll and Joseph M. Sellers were both named as one of Lawdragon's "**500 Leading Lawyers in America**."

**500 Leading Plaintiffs' Lawyers in America**
Lawdragon
January-February, 2007

**Top Antitrust Plaintiffs' Firm**
Competition Law 360
February 14, 2007
Cohen Milstein named #1

Joseph M. Sellers was selected by his peers to be included in the 2007 edition of **The Best Lawyers in America**® in the specialty of Civil Rights Law.

**Beacon of Justice Award -** For Cohen Milstein's work on the Guantanamo cases.
From the National Legal Aid and Defender Association
Summer 2007

**Fierce Sister Award -** For Cohen Milstein's work on the comfort woman case.
Summer 2007

**The Plaintiffs' Hotlist**
The National Law Journal
October 9, 2006

**Runner up for Matter of the Year**
Global Competition Review
February, 2005
On Empagran matter, praised for ingenuity in how the case was prosecuted

EXHIBIT E

1   Stephen R. Basser
    BARRACK, RODOS & BACINE
2   600 West Broadway, Suite 900
    San Diego, CA  92101
3   Telephone:  (619) 230-0800
    Facsimile:   (619) 230-1874
4

5   Attorney for Plaintiff
    *Jennifer deVito Jigarjian*
6

7

8                    UNITED STATES DISTRICT COURT
9                   NORTHERN DISTRICT OF CALIFORNIA
                           SAN JOSE DIVISION
10

11
    **IN RE ANTHEM, INC. DATA BREACH**        Case No. 15-MD-02617-LHK
12  **LITIGATION**
                                               **DECLARATION OF STEPHEN R. BASSER IN**
13                                             **SUPPORT OF MOTION FOR APPOINTMENT**
                                               **OF EVE H. CERVANTEZ AND ANDREW N.**
14                                             **FRIEDMAN AS PLAINTIFFS' LEAD**
                                               **COUNSEL AND A STEERING COMMITTEE**
15
                                               Date:   September 10, 2015
16                                             Time:   1:30 p.m.
                                               Judge: Lucy H. Koh
17

18

19

20

21

22

23

24

25

26

27

28

---

**Declaration of Stephen R. Basser in Support of Motion for Appointment of Eve H. Cervantez and Andrew N. Friedman as Plaintiffs' Lead Counsel and a Steering Committee**

Case No. 15-MD-02617-LHK

I, Stephen R. Basser, declare and state as follows:

1.      I am competent to make this declaration and will so testify to the matters stated herein if called upon to do so.  I submit this declaration in support of the appointment of Eve H. Cervantez and Andrew N. Friedman as co-lead counsel and the appointment of a Steering Committee as assembled, identified and requested by them, including myself as a member of the Plaintiffs' Steering Committee

2.      I am a partner in the law firm of Barrack, Rodos & Bacine ("Barrack" or "the Firm"), and the head of Barrack's San Diego, California office, which was established over thirty years ago. I am an honors graduate of American University, Washington D.C. (1973) and graduated *cum laude* from Temple University School of Law (J.D. 1976), after which I practiced with a large, major law firm in Philadelphia.  I was admitted to the bar of the Supreme Court of Pennsylvania in 1976 and, in 1985, to the bar of the Supreme Court of California upon relocating that year to California.  I am a member of the bars of a number of federal circuit courts of appeal, including the Ninth Circuit, and several district courts, including the Northern District of California.

3.      The hacking into and breach of Anthem's data system raises numerous important issues affecting millions of consumers, including elders, pensioners, Government personnel and even minors, from diverse backgrounds and implicates a broad spectrum of interests and concerns. The Barrack firm recognizes that this potential "mega – case" shall require focused and disciplined attention, an enduring commitment of time, energy and financial resources, massive document review, the engagement of liability and damages experts in various disciplines, numerous depositions in various locals throughout the Nation, and intensive motion practice, potentially including summary judgment motions and, importantly, a motion for injunctive relief. Absent an amicable resolution securing, among other things, meaningful cyber-security best practices by Anthem in the best interests of achieving cyber-security on behalf of all class members, this case

1

1   shall proceed to a prolonged trial requiring seasoned litigators, stamina, unwavering tenacity and

2   great expense.

3       4.      The Barrack firm is absolutely committed to providing whatever financial resources,

4   labor and personnel are required of us by lead counsel consistent with the extraordinary demands of

5   this case.  We are passionately committed to helping lead counsel achieve cyber-security best

6   practices which will likely provide a template for other healthcare insurers and possibly other

7   publically traded companies.  We recognize the profound implications of cyber-vulnerability that

8   exists within corporate America, potentially affecting adversely all consumers, our economy and our

9   Nation as a whole.

10      5.      The Barrack law firm's extensive experience prosecuting complex, large federal

11  securities, antitrust and consumer matters compliments the team that has been assembled by Ms.

12  Cervantez and Mr. Friedman, the proposed lead counsel in this case. The Barrack firm will lend

13  fresh perspectives and voices to the nascent, developing field of cyber-security/data breach litigation

14  respecting which the *Anthem* matter is one of only a few cases thus far involving healthcare insurers.

15      6.      Barrack is a national twenty-five attorney law firm with offices in California,

16  Pennsylvania, New Jersey, New York, and Michigan.  The Firm has represented many large public

17  pension and retirement funds including, among others, CalPERS.  The Firm has been extensively

18  involved since 1976 in litigating nationwide, complex and mega-class actions, successfully

19  recovering billions of dollars for aggrieved class members, including several class actions that alone

20  have secured recoveries approaching or in excess of $1 billion.  The mega-class action settlements

21  approaching or in excess of $1 billion in which the Firm was a lead or co-lead counsel include

22  actions involving large corporate defendants such as *WorldCom* ($6.19 billion), *Cendant* ($3.32

23  billion), *McKesson HBOC* ($1.04 billion), and *AIG* ($970.5 million).  The Firm has also recovered in

24  excess of $100 million ("mega-cases") as a co-lead or sole lead counsel in numerous other class

2

actions throughout the United States.  The Firm has an extensive class action jury trial record of achievement in the most complex and sophisticated class actions.  *See* Barrack, Rodos & Bacine "Representative Case Listings and Summary," Exhibit 1 attached hereto and www.barrack.com.  It is a time-honored mantra of Barrack to work professionally, civilly and cooperatively with others.

7.      I have personally served as a lead or co-lead attorney in the prosecution of numerous complex class actions against various publicly traded companies doing business in the medical or healthcare related industry, including *ProCyte*, *Orthologic Corporation*, *SafeSkin Corp.*, *Scios Nova*, *Simulation Sciences*, *FPA Medical Management, Pacificare Health Systems, Chiron* and *McKesson HBOC* and other publicly traded companies including, among others, *3 Com Corp., Informix Corporation, Samsonite Corp., Peoplesoft, Inc., Adobe, ValueClick, OmniVision, Applied Micro-Circuits Corp., Apollo Group, Inc.,* and *Hewlett-Packard*.

8.      I was the lead and first chair trial attorney in *In re Apollo Group, Inc. Securities Litigation,* Master File No. CV-04-2147 PHX- JAT before the Honorable James A. Teilborg in the District of Arizona, which was tried to a federal jury, securing a unanimous verdict for the full amount of damages requested, ultimately recovering $145 million for the shareholder class in 2012, after an extensive process to the very doorstep to the United States Supreme Court – the largest jury verdict recovery distributed to class members in the history of securities class action litigation under the Private Securities Litigation Reform Act of 1995.  Judge Teilborg applauded trial counsel, commenting that they:

> "brought to this Courtroom just extraordinary talent and preparation…. *** likewise, for the **professionalism and the civility** that you – and **the integrity** that you have all **demonstrated and exuded** throughout the handling of this case, it has just, I think, been very, **very refreshing and rewarding to see that***** [W]hat I have seen has just been **truly exemplary**".

3

9.      Among other notable cases, I served with my Firm as a co-lead counsel in *In re McKesson HBOC Securities Litigation,* Master File No. cv-99-20743-RMW (N.D. Cal.), which settled for a total of $1.05 billion from all defendants; the largest federal securities class action settlement in the history of the Northern District of California.  I was the sole lead attorney and chair of the executive committee personally appointed by the Court in *In re Chiron Shareholder Deal Litigation,* Case No. RG05-230567, (California Superior Court for Alameda County), in which our team of attorneys secured a settlement for class members valued in excess of $880 million and was applauded by Judge Robert Freedman for "**exemplary lawyering**."

10.      I possess extensive experience litigating consumer class actions pursuing the rights of the elderly.  I served as a co-lead counsel or plaintiffs co-counsel in actions against notable national insurance companies in complex class actions against *Allianz, National Western, Midland, American Equity, AIG, Fidelity, Guarantee Insurance Company, Jackson National* and *Conseco*, asserting claims under California's consumer protection and elder abuse statutes, and under RICO, for targeting senior citizens in the sale of deferred annuity products.  The settlement benefits our team achieved for class members in these so-called "Senior Annuity" cases are valued between $552 million and $1.273 billion collectively.  *See* Ex. 1.

11.      My Firm and I have engaged in many cases requiring the collection and review of massive volumes of documents by teams of attorneys.  For example, in the *Pfizer* derivative shareholder action, arising from the damages claimed to be caused by the implantation of the Bjork-Shiley heart valve, my firm participated in and oversaw, as a co-lead attorney, the review and coding of a massive document production by Pfizer of over seven million pages of documents.  In numerous other complex class actions, my Firm, as a lead or co-lead counsel, assisted in the review of productions exceeding one million pages of documents.  Since 1976, I have retained, developed, deposed and opposed scores of experts covering a variety of medical, scientific, engineering,

4

1   econometric, actuarial, aviation, accounting and other disciplines.  I have taken the depositions of

2   chief executive officers, presidents, chairmen of the board, other high ranking corporate officers,

3   division heads and board members in a number of cases against publicly traded companies.

4       12.     I have personally prepared a robust complaint that was filed in this action by plaintiff

5   Jennifer deVito Jigargian on behalf of all class members, have argued passionately before the

6   Judicial Panel at the MDL hearing in this matter on May 28, 2015, noting the need for "meaningful

7   resolution," and have been spearheading the assembly of experts to assist and consult with us and in

8   identifying and vetting potential experts to testify at trial.  I will work collegially, professionally,

9   civilly and cooperatively in this important matter and respectfully request the honor and opportunity

10  to do so.

11      I declare under penalty of perjury under the laws of the United States of America that the

12  foregoing is true and correct.  Executed this 20th day of August, 2015 at San Diego, California.

13

14

15      _____/s/ STEPHEN R. BASSER_____
                  STEPHEN R. BASSER

16

17

18

19

20

21

22

23

24

25

26

27

28

**Declaration of Stephen R. Basser in Support of Motion for Appointment of Eve H. Cervantez and Andrew N.
Friedman as Plaintiffs' Lead Counsel and a Steering Committee**
Case No. 15-MD-02617-LHK

# EXHIBIT 1



# Representative Case Listings and Summary

One America Plaza
600 West Broadway
Suite 900
San Diego, CA  92101
Telephone:  (619) 230-0800
Facsimile:  (619) 230-1874

3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
Telephone:  (215) 963-0600
Facsimile:  (215) 963-0838

425 Park Avenue
Suite 3100
New York, NY 10022
Telephone:  (212) 688-0782
Facsimile:  (212) 688-0783

100 Four Falls Corporate Center
Suite 210
West Conshohocken, PA  19428
Telephone:  (610) 940-9567
Facsimile:  (610) 940-1925

One Gateway Center
Suite 2600
Newark, NJ  07102
Telephone:  (973) 297-1484
Facsimile:  (973) 297-1485

N. Washington Square
Suite 240
Lansing, MI 48933
Phone: (517) 485-3960
Fax: (517) 485-3962

*www.barrack.com*

Exhibit 1

**Barrack, Rodos & Bacine** ("BR&B") has been extensively involved for almost forty years in nationwide, complex, mega-class action litigation seeking to recover economic damages for aggrieved individuals and class members, successfully recovering billions of dollars, including numerous actions that alone have secured recoveries in excess of $1 billion dollars. The Firm has held significant leadership positions in scores of these complex litigations, having been appointed by courts as lead counsel in nationwide class actions throughout the United States.

**A Longstanding History of Achievement in Complex Class Actions**

BR&B has a longstanding record of achievement in prosecuting through trial verdict and appeals or amicably resolving mega-class actions and complex class action cases seeking to recover economic damages. BR&B has secured several of the largest class action recoveries in United States history.  Among its many notable cases and recoveries in areas of federal securities, antitrust, and consumer law are the following:

1.     *In re WorldCom, Inc. Securities Litigation*, Master File No. 02 Civ. 3288 (DLC) (S.D.N.Y.). BR&B, as co-lead counsel for lead plaintiff New York State Common Retirement Fund ("NYSCRF"), litigated this complex action against officers and directors of WorldCom, a firm that issued research reports on WorldCom, numerous underwriting firms, and the company's outside auditor, Arthur Andersen LLP, recovering **more than $6.1 billion** for class members, the largest securities class action recovery in the Southern District of New York and in the Second Circuit.

2.     *In re Cendant Corporation Litigation*, Civil Action No. 98-1664 (WHW) (D.N.J.). BR&B, as co-lead counsel, represented lead plaintiffs NYSCRF, the California Public Employees' Retirement System ("CalPERS") and the New York City Pension Funds in this securities fraud

class action.  The litigation was resolved in March 2000 through settlements with Cendant and Ernst & Young LLP for **more than $3.18 billion**.  The settlement with Cendant also entitled the class to one-half of any net proceeds that Cendant might recover from its ongoing litigation against E&Y as well as highly significant corporate governance reforms. Through the later resolution of the litigation between Cendant and E&Y, the class received an additional $132 million, bringing the total recovery to **more than $3.3 billion**, the largest securities class action recovery in the District of New Jersey and in the Third Circuit.

3.      *In re McKesson HBOC, Inc. Securities Litigation*, Master File No. CV-99-20743 RMW (N.D. Cal.). BR&B, as co-lead counsel, represented the NYSCRF as sole lead plaintiff. BR&B vigorously prosecuted this securities fraud action against the company, its management, HBOC, Inc.'s former auditor, Arthur Andersen LLP, and Bear Stearns & Co., Inc., and recovered **$1.0425 billion** for the class, the largest securities class action recovery in the Northern District of California and in the Ninth Circuit.

4.      *In re Vitamins Antitrust Litigation*, MDL No. 1285 (D.D.C.). BR&B served as a member of the Executive Committee in this international price-fixing action. The recover in this case exceeded **$1 billion.**

5.      *In re The Pepsi Bottling Group, Inc. Shareholder Litigation*, Consolidated C.A. No. 4526-VCS (Del Ch.).  BR&B, as a co-lead counsel, achieved a settlement after litigation and through negotiations of special committees, under which PepsiCo agreed to a significantly higher acquisition price that provided Pepsi Bottling Group shareholders as a group with **$1.022 billion more in value**, and other terms including deletion of

cross-conditionality provision for related deals, reductions in the merger agreement' termination fees and termination tail periods, and additional disclosures in the final proxy statement.  At the final settlement hearing, the court credited the litigation as a causal factor that prompted PepsiCo to increase the amount offered for the acquisition.

6.     *In re American International Group, Inc. 2008 Securities Litigation*, Case No. 08-cv-4772-LTS-DCF (S.D.N.Y.).  BR&B served as a co-lead counsel representing the Michigan Employers Retirement Systems. After more than six years of intensive litigation, including the completion of all fact discovery and full briefing, an evidentiary hearing, and oral argument on lead plaintiff's motion for class certification, the parties reached settlements totaling **$970.5 million**, which the court approved on March 20, 2015.  The recovery is among the largest achieved in a securities fraud class action stemming from the 2008 financial crisis, and also appears to be the largest securities class action settlement in the absence of a criminal indictment, an SEC enforcement action or a restatement of a company's financial statements.

7.     *In re Chiron Shareholder Deal Litigation*, Case No. RG 05-230567 (Alameda Cty. Superior Ct).  BR&B, served as lead counsel and chair of plaintiff counsels' Executive Committee, overseeing over 15 other firms in this class action litigation contesting the proposed acquisition of Chiron Corp. by Novartis AG in 2005.  As a result of plaintiffs' expedited prosecution of the case, including extensive discovery and injunction motion practice, Novartis increased the offering price from its initial offer of $40 per share to the final price of $48, a benefit to the class of **approximately $880 million.**

8. "Senior Annuity" Cases brought against numerous insurance companies targeting senior citizens in the sale of deferred annuity products and asserting claims for elders arising under California consumer protection statues, elder abuse statutes and RICO in which BR&B served as a co-lead counsel or participated in the prosecution group, that achieved settlements valued in the aggregate between **$552 million** and **$1.273 billion**, including the following:

- *Negrete. et al. v. Allianz Life Insurance Company of North America,* Case No. 05-cv-06838-CAS-MAN (C.D. Cal.), resulted in a claims-made settlement valued between $251 million and $971 million;

- *In re American Equity Annuity Practices and Sales Litigation,* Case No. 2:05-cv-06735-CAS-MAN (C.D. Cal.), resulted in a settlement valued at approximately $129 million;

- *Rand v. American National Insurance Co*., Case No. 3:09-cv-0639- WDB (N.D. Cal.), resulted in a settlement valued at more than $9 million;

- *Negrete, et al. v. Fidelity and Guaranty Life Insurance Company,* Case No. 2:05-cv-06837-CAS-MAN (C.D. Cal), resulted in a settlement valued at approximately $52.7 million;

- *Meadows v. Jackson National Life Insurance Co.,* Case No. 4:12- cv-1380-CW (N.D. Cal), resulted in a settlement valued at more than $11.2 million;

- *Midland National Life Insurance Co Annuity Sales Practices Litigation,* Case No. 2:07-ml-01825-CAS-MAN (C.D. Cal.), resulted in a settlement valued at $79.5 million; and

- *In re National Western Life Insurance Deferred Annuities Litigation,* Case No. 05-cv-1018-AJB (WVG), resulted in a settlement valued at more than $21 million.

9.     *In re Merrill Lynch & Co., Inc. Securities, Derivative & ERISA Litigation*, Master File No. 07-cv-9633 (S.D.N.Y.).  BR&B, as co-lead counsel for sole lead plaintiff the State Teachers Retirement System of Ohio, recovered **$475 million** for the class.

10.     *Dennis Rice v. Lafarge North America, Inc., et al*., Civil No. 268974-V (Montgomery Cty. Cir. Ct., Maryland). BR&B, as co-lead counsel, represented lead plaintiff the City of Philadelphia Board of Pensions and Retirement in this class action litigation contesting the buy-out of Lafarge North America by majority owner Lafarge S.A. After extensive discovery and injunction practice, Lafarge SA agreed to increase its tender offer price from its initial offer of $75 per share to the final price of $85.50, a benefit to the class of **approximately $388 million**.

11.     *In re DaimlerChrysler AG Securities Litigation*, Master File No. 00-993 (JJF) (D. Del.). BR&B, as co-lead counsel, recovered **$300 million** for the class, after the court had certified the class after extensive motion practice and decided one of three fully briefed summary judgment motions.

12.     *In re 3Com Securities Litigation*, Master File No. C 97-21083-EAI (JW) (N.D. Cal.). This case, in which BR&B served as co–lead counsel, produced a recovery of **$259 million** after hard–fought litigation, including extensive discovery efforts, including numerous overseas depositions.

13.     *In re Nationwide Financial Services Litigation*, Case No. 2:08-CV-00249 (S.D. Ohio).  BR&B, as co-lead counsel, represented lead plaintiff the International Brotherhood of Electrical Workers Local 98

Pension Fund in this class action litigation contesting the buy-out of
Nationwide Financial Services, Inc. by its majority owner Nationwide
Mutual Insurance Company and certain affiliates in 2008.  After extensive
negotiations, Nationwide Mutual agreed to increase its tender offer price
from its initial offer of $47.20 per share to the final price of $52.25 per
share, a benefit to the class of approximately **$232.8 million** (a 10.7%
increase), and further agreed to additional disclosures in the final proxy
statement that the Court found provided the class "with material information
about NFS's financial projections and valuation, as well as additional details
of the merger process, …, all of which enabled Class members to make a
more informed decision about whether they were receiving fair value for
their shares."

14.    *In re The Mills Corporation Securities Litigation*, Civil Action
No. 1:06-cv-00077 (LO/TRJ) (E.D. Va.).  BR&B served as co-lead counsel,
representing a class of investors in Mills securities.  The case settled in 2009
for **$202.75 million**, plus interest, from the following groups of defendants:
(i) the company paid $165 million, plus interest; (ii) Mills' former auditor,
Ernst & Young LLP, paid $29.75 million; and (iii)  a joint venture partner of
Mills, the KanAm Group, paid $8 million. The recovery resulted in the
largest securities law class action recovery ever achieved in a case pending
in the U.S. District Court for the Eastern District of Virginia.  In granting
approval of the settlements, Judge Liam O'Grady stated lead counsel had
shown themselves to be "very experienced and skilled in the field of
securities litigation," and that the result provided a benefit "beyond the
confines of this particular class."

15.    *In re Schering–Plough Corporation Securities Litigation*,
Master File No. 01-CV-0829 (KSH/MF) (D.N.J.).  BR&B, as sole lead

counsel for lead plaintiff the Florida State Board of Administration, recovered **$165 million** after 8 years of hard-fought litigation. The settlement, approved in December 2009, was described by the court as the product of "hard work and good judgment in ultimately achieving a negotiated resolution of substantial value to the class."

16.     *In re Apollo Group, Inc. Securities Litigation*, Master File No. CV-04-2147-PHX-JAT (D. Ariz.). BR&B, as sole lead counsel, recovered **$145 million** after achieving a unanimous jury verdict in favor of the class and successfully retaining the jury verdict in its entirety through appeals, as more fully discussed below.

17.     *In re Sunbeam Securities Litigation*, Case No. 98-8258-Civ-Middlebrooks (S.D. Fla.). BR&B, serving as co–lead counsel, recovered **more than $140 million** for the class.

18.     *In re Graphite Electrodes Antitrust Litigation*, Master File No. 97-CV-4182(CRW) (E.D. Pa.). BR&B served as co-lead counsel for the class in this international price-fixing case recovering in excess of **$133 million.**

19.     *In re Informix Corporation Securities Litigation*, Master File No. C-97-1289 CRB (N.D. Cal.). This case, in which BR&B, served as co–lead counsel, was resolved during the discovery phase by a settlement valued at **$132 million.**

20.     *Rieff v. Evans (Allied Mutual Insurance Company Demutualization Litigation)*, Civil Action No. CE 35780 (Polk Cty., Iowa, District Ct.). BR&B was co-lead counsel for a class of individual mutual insurance company policyholders (as owners of the mutual, similar to shareholder-owners of a stock company) in an action against management for, among other things, conversion of the value of their ownership interests

in the mutual under a theory of de facto demutualization, which theory was upheld by the Iowa Supreme Court in 2001. The case resolved in 2005 for **approximately $130 million.**

21. *In re Flat Glass Antitrust Litigation*, Master Docket Misc. No. 97–550, MDL No. 1200, (W.D. Pa.). BR&B, co-lead counsel for the class, recovered **more than $120 million** in this price-fixing case;

22. *In re Automotive Refinishing Paint Antitrust Litigation*, 2:10–MD-01426-RBS (E.D. Pa.). BR&B served as co-lead counsel for the class in this price-fixing litigation recovering **more than $105 million.**

23. *Rubin v. MF Global, Ltd., et al.,* Case No. 08 Civ. 2233 (VM) (S.D.N.Y.) brought under the Securities Act of 1933.  BR&B, serving as co-lead counsel representing lead plaintiff The Iowa Public Employees Retirement System, secured a settlement in the amount of **$90 million**.  The settlement was secured after the action was remanded to the district court by the United Stated Court of Appeals, which vacated the district court's dismissal of the complaint.  BR&B was able to protect the settlement notwithstanding MF Global's subsequent bankruptcy filing.

24. *In re Applied Micro Circuits Corp. Securities Litigation,* Lead Case No. 01-CV-0649-K (AJB), BR&B served as the sole lead counsel representing lead plaintiff The Florida State Board of Administration and secured a settlement recovery of **$60 million**, one of the largest recoveries in a securities class action in the Southern District of California since passage of the PSLRA.

**Extensive Class Action Trial Experience**

BR&B has extensive jury trial experience in complex nationwide class actions:

- *In re Apollo Group, Inc. Securities Litigation*, Master File No. CV-04-2147-PHX-JAT (D. Ariz.), in which BR&B's trial team lead by partner Stephen R. Basser obtained a unanimous jury verdict for the full amount of damages per share requested after a trial extending over 3 months. After an arduous post-trial verdict and motion and appeal process through the Ninth Circuit and to the United States Supreme Court, BR&B, as sole lead counsel, recovered $145 million for class members.  The Apollo jury verdict and recovery for class members currently stands as the largest post-jury verdict recovery in the history of securities class action litigation under the Private Securities Litigation Reform Act of 1995.

- *In re WorldCom, Inc. Securities Litigation*, Master File No. 02-Civ-3288(DLC) (S.D.N.Y.), in which BR&B, as co-lead counsel, went to trial against the remaining defendant, Arthur Andersen LLP, after reaching settlements totaling over $6.1 billion with WorldCom's outside directors, the underwriters of two large public debt offerings, and entities affiliated with Citigroup, which served as an advisor to the company, issued research reports and also underwrote one of the offerings.  After nearly five weeks of trial, including cross-examination of Andersen's primary auditors and presentation of other fact and expert testimony, and within days of when closing arguments were to take place, the parties reached a $65 million settlement of the claims of the certified class against Andersen.

- *Equity Asset Investment Trust, et al. v. John G. Daugman, et al.* (Del. Chancery Ct.) (fast-track trial under Delaware law involving election of directors that led to favorable settlement for common stockholders of Iridian Technologies, Inc.);

- *Uniondale Beer Co., Inc. v. Anheuser-Busch, Inc., et al.*, Civil Action No. CV 86-2400(TCP) (E.D. N.Y.) (antitrust class action trial).

- *Gutierrez v. Charles J. Givens Organization, et al.*, Case No. 667169 (Superior Court of California, County of San Diego).  BR&B as co-lead counsel in this action arising under the California's Unfair Competition Law secured a jury verdict in excess of $14 million for the plaintiff consumer class.

- *In re Control Data Corporation Securities Litigation*, 933 F.2d 616 (8th Cir. 1991) (describing evidence presented by BR&B during three week trial and reversing directed verdict that district judge had entered at the close of the plaintiffs' case in favor of defendants).

- *Gould v. Marlon*, CV-86-968-LDG (D. Nev.) (jury verdict for plaintiff class after weeks of trial).

- *Herskowitz v. Nutri/System,Inc.,* 857 F.2d 179 (3rd Cir. 1988) (describing evidence presented by BR&B and other co-lead counsel at trial).

- *Betanzos v. Huntsinger*, CV-82-5383 RMT (C.D. Cal.) (jury verdict for plaintiff class).

**Significant Judicial Accolades**

Barrack Rodos & Bacine has received numerous judicial accolades respecting its litigation achievements and professionalism including, for example:

In ***In re Automotive Refinishing Paint Antitrust Litigation****,* MDL No. 1426 – RBS (E.D. Pa.), Barrack, Rodos & Bacine, co-lead counsel for a Class of direct purchasers of automotive refinishing paint, achieved settlements with five defendants in excess of $100 million.  After reaching a settlement with the last two defendants remaining in the litigation, the Court stated, ***"I want to commend counsel on both sides of this litigation.  I think that the representation on both sides of this litigation is as good as I've***

*ever seen in my entire professional career.  Counsel worked together in this case.  They frankly made the job of this Court very easy and I commend all of you for what you've done in this litigation."*

In ***In re Apollo Group Inc. Securities Litigation***, Master File No. CV-04-2147 PHX-JAT (D. Ariz.), Barrack, Rodos & Bacine was lead counsel for the class that secured a jury verdict for the full amount per share requested.  BR&B partner Stephen R. Basser headed the Firm's litigation and trial team.  Judge Teilborg commented that trial counsel ***"brought to this courtroom just extraordinary talent and preparation....  The technical preparation, the preparation for your examination and cross-examination of witnesses has been evident in every single instance.  The preparation for evidentiary objections and responses to those objections have been thorough and foresighted.  The arguments that have been made in every instance have been well-prepared and well-presented throughout the case. ***  Likewise, for the professionalism and the civility that you -- and the integrity that you have all demonstrated and exuded throughout the handling of this case, it has just, I think, been very, very refreshing and rewarding to see that. *** [W]hat I have seen has just been truly exemplary."***

In ***In re WorldCom, Inc. Securities Litigation***, No. 02 Civ. 3288 (DLC) (S.D.N.Y.), Barrack, Rodos & Bacine was co-lead counsel for the Class and achieved settlements in excess of $6.13 billion.  After a partial settlement with one group of defendants for in excess of $2.56 billion, the Court stated that ***"the settlement amount ... is so large that it is of historic proportions."***  The Court found that ***"Lead Counsel has performed its work at every juncture with integrity and competence.  It has worked as hard as a litigation of this importance demands, which for some of the attorneys,***

*including the senior attorneys from Lead Counsel on whose shoulders the principal responsibility for this litigation rests, has meant an onerous work schedule for over two years."*   The Court further found that *"the quality of the representation given by Lead Counsel is unsurpassed in this Court's experience with plaintiffs' counsel in securities litigation. Lead Counsel has been energetic and creative. Its skill has matched that of able and well-funded defense counsel. It has behaved professionally and has taken care not to burden the Court or other parties with needless disputes. Its negotiations with the Citigroup Defendants have resulted in a settlement of historic proportions. It has cooperated with other counsel in ways that redound to the benefit of the class and those investors who have opted out of the class. The submissions of Lead Counsel to the Court have been written with care and have repeatedly been of great assistance."*  The Court also found that *"In sum, the quality of representation that Lead Counsel has provided to the class has been superb".*   In approving the final settlements totaling $3.5 billion, in an opinion and order dated September 20, 2005, the Court stated *"The impressive extent and superior quality of Lead Counsel's efforts as of May 2004 were described in detail in the Opinion approving the Citigroup Settlement. … At the conclusion of this litigation, more than ever, it remains true that 'the quality of representation that Lead Counsel has provided to the class has been superb.' … At trial against Andersen, the quality of Lead Counsel's representation remained first-rate. .. The size of the recovery achieved for the class – which has been praised even by several objectors – could not have been achieved without the unwavering commitment of Lead Counsel to this litigation."*

The Court also found that ***"Despite the existence of these risks, Lead Counsel obtained remarkable settlements for the Class while facing formidable opposing counsel from some of the best defense firms in the country;"*** and ***"If the Lead Plaintiff had been represented by less tenacious and competent counsel, it is by no means clear that it would have achieved the success it did here on behalf of the Class."***
***"It is only the size of the Citigroup and Underwriters' Settlements that make this recovery so historic, and it is likely that less able plaintiffs' counsel would have achieved far less."***

In ***In re Cendant Corporation Litigation***, No. 98-CV-1664 (WHW) (D.N.J. December 7, 1999), Barrack, Rodos & Bacine was co-lead counsel for the Class and achieved settlements with defendants in excess of **$3.18 billion**, more than three times larger than the next highest recovery ever achieved in a securities law class action suit by that time.  The *Cendant* settlement included what was, at the time, the largest amount by far ever paid in a securities class action by an issuing company (which, nearly ten years later, remains the second largest ever paid) and what was, and remains, the largest amount ever paid in a securities class action by an auditor.  The *Cendant* settlement further included extensive corporate governance reforms, and a contingency recovery of one-half the net recovery that Cendant and certain of its affiliated individuals may recover in on-going proceedings against CUC's former auditor.  The *Cendant*  Court stated that ***"we have all been favored with counsel of the highest competence and integrity and fortunately savvy in the ways of the law and the market."*** The Court found that the ***"standing, experience and expertise of counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposed counsel were and are high in this***

*action*.*"*  The Court further found that the result of lead counsel's efforts were *"excellent settlements of uncommon amount engineered by highly skilled counsel with reasonable cost to the class.*

In *In re Chiron Shareholders Deal Litigation*, Case No. RG05-230567 (Superior Court of California, County of Alameda), BR&B was lead counsel for the class and chair of the Executive Committee, overseeing more than 15 other plaintiffs' firms.  The hard-fought expedited litigation, including the production and expedited review of over 1 million pages of documents, depositions of high ranking corporate officers and intensive motion practice, including a motion for injunctive relief, produced a benefit to the Class of approximately $880 million.  The trial Court applauded the **"exemplary lawyering"** exhibited "under great time constraints."

In *Payne v. Micro Warehouse, Inc.*, No. 3:96CV1920(DJS) (D. Conn. Sept. 30, 1999), where Barrack, Rodos & Bacine was co-lead counsel for the shareholder class, the Court noted *"the exceptional results achieved by plaintiffs' counsel,"* who *"were required to develop and litigate this complex case solely through their own efforts,"* and concluded that *"the benefit conveyed to the class plaintiffs amply supports the conclusion that the plaintiffs' counsels' work was exceptional."*

And in *In re The Mills Corporation Securities Litigation*, Civil Action No. 1:06-cv-00077 (LO/TRJ) (E.D. Va.), in which BR&B, as co-lead counsel, achieved the largest securities law class action recovery ($2.2,75 million) ever obtained in a case pending in the U.S. District Court for the Eastern District of Virginia, Judge Liam O'Grady recognized the significant amount of work lead counsel undertook in developing and prosecuting the case, stating that "[e]ven a cursory review of the docket sheet indicates the extent to which Class Counsel has developed this case. Lead Plaintiffs

ultimately filed three complaints, overcoming motions to dismiss and pursuing the action through to class certification against three groups of sophisticated defendants over the course of three years."  Judge O'Grady further stated that lead counsel had shown themselves to be "***very experienced and skilled in the field of securities litigation***," and that ***the result provided a benefit "beyond the confines of this particular class***."

EXHIBIT F

Eric H. Gibbs (State Bar No. 178658)
David M. Berger (State Bar No. 277526)
Linh G. Vuong (State Bar No. 286837)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
ehg@girardgibbs.com
dmb@girardgibbs.com
lgv@girardgibbs.com

Attorneys for Plaintiff Aswad Hood

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

|  |  |
|---|---|
| **IN RE ANTHEM, INC. DATA BREACH LITIGATION** | Case No. 15-MD-02617-LHK<br><br>**DECLARATION OF ERIC H. GIBBS IN SUPPORT OF MOTION FOR APPOINTMENT OF EVE H. CERVANTEZ AND ANDREW N. FRIEDMAN AS PLAINTIFFS' LEAD COUNSEL AND A STEERING COMMITTEE**<br><br>Date:   September 10, 2015<br>Time:  1:30 p.m.<br>Judge: Lucy H. Koh |

I, Eric H. Gibbs, declare as follows:

1.      I am a partner of Girard Gibbs LLP, counsel for Plaintiff Aswad Hood.  I submit this declaration in support of Plaintiffs' motion to appoint Eve Cervantez and Andrew Freidman as Co-Lead counsel and in support of my appointment as a member of the Plaintiffs' Steering Committee. Should the Court decline to approve the proposal in its entirety, Girard Gibbs is prepared to serve in such other leadership capacity as the Court may find appropriate.

2.      In the wake of large, widely publicized data breaches in the latter half of 2013 that revealed a surprising history of shoddy data protection practices by multinational corporations, Girard Gibbs chose to expand its commitment to protecting consumers' privacy interests and fostering the development of consumer-friendly data breach and privacy jurisprudence.

3.      In February 2014, I presented to the American Association of Justice's Section and Litigation Group Coordination Committee, requesting approval to form a litigation group focused on protecting the rights of consumers in data breach and privacy litigation.  My request was approved, and in July 2014, I co-founded (with Norm Siegel of Stueve Siegel Hanson) AAJ's Consumer Data Breach and Privacy Litigation Group.  In July 2015, Mr. Siegel and I were reelected to serve as co-chairs for an additional year.  Among other things, the Group presents seminars, webinars, and papers devoted to best practices in data breach and privacy litigation.  In addition to co-chairing the Litigation Group, I have devoted my and my firm's time to other speaking engagements and bar activities related to data breach and privacy litigation.

4.      In addition to cultivating best practices amongst the data breach and privacy bar, Girard Gibbs took on leadership roles in cases that allowed us to tackle what we believed was a growing body of erroneous jurisprudence, namely, a wave of opinions that had dismissed data breach cases for lack of standing based on the Supreme Court's opinion in *Clapper v. Amnesty International USA*, 133 S. Ct. 1138 (2013).

5.      To that end, we sought and were appointed sole lead counsel in *In re Adobe Systems, Inc. Privacy Litigation*, N.D. Cal. Case No. 5:13-cv-05226-LHK, which gave us the control we needed to plead and brief standing in the context of a data breach class action.  In September 2014, this Court denied Adobe's motion to dismiss for lack of standing, ruling that *Clapper* did not alter

DECLARATION OF ERIC H. GIBBS IN SUPPORT OF MOTION FOR APPOINTMENT OF EVE H. CERVANTEZ AND ANDREW N. FRIEDMAN AS PLAINTIFFS' LEAD COUNSEL AND A STEERING COMMITTEE
**Case No. 15-MD-02617-LHK**

existing standing jurisprudence.  *Adobe* appears to have been a watershed opinion, and has been directly or indirectly followed by a number of district courts, including in at least two other significant matters in which we serve a leadership role:  *In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154 (D. Minn. 2014),[1] and *Corona, et al. v. Sony Pictures Entm't Inc.*, No. 2:14-cv-09646, 2015 WL 3916744 (C.D. Cal. June 15, 2015).[2]  Recently, in reversing a motion to dismiss on standing, the Seventh Circuit Court of Appeals quoted this Court's *Adobe* opinion extensively and followed its reasoning.  *See Remijas v. Neiman Marcus Grp., LLC*, No. 14-3122, 2015 WL 4394814 (7th Cir. July 20, 2015).

6.      As part of our commitment to protect consumers' privacy interests and to develop positive data breach and privacy jurisprudence, we also agreed to represent non-Yahoo Mail subscribers alleging that Yahoo's harvesting of email content violates state and federal wiretap laws.  *In re Yahoo! Mail Litig.,* No. 5:13-cv-4980-LHK (N.D. Cal.).  On May 26, 2015, this Court granted the Yahoo plaintiffs' motion for certification of a Rule 23(b)(2) class, and on August 11, 2015, the Ninth Circuit denied Yahoo's petition for review of that decision.  *See In re Yahoo! Mail Litig.*, 7 F. Supp. 3d 1016 (N.D. Cal. 2014), ECF No. 106.  Other data breach/privacy cases in which Girard Gibbs serves in a Court-appointed leadership role are *In re The Home Depot, Inc., Customer Data Security Breach Litigation*, Case No. 1:14-md-02583-TWT (N.D. Ga.) and *In re Lenovo Adware Litigation*, Case No. 15-md-02624 (N.D. Cal.).

7.      Girard Gibbs has a history of successfully representing consumers, like those affected by the Anthem data breach, who have been injured in healthcare-related privacy breaches.  For instance, in *Smith v. Regents of the Univ. of California, San Francisco*, No. RG-08-410004 (Cal. Sup. Ct., Alameda Cnty.), we filed suit on behalf of a patient who alleged that UCSF had illegally disclosed his and other patients' medical data.  After certifying what I believe to have been the first

---

[1]  On November 10, 2015, the Court will hear plaintiffs' motion for final approval of a proposed class settlement providing class members with cash recoveries under a simplified claim procedure.  *Id.*, ECF No. 364.

[2]  The Court in the Sony case has implemented an accelerated pretrial preparation schedule, and the parties have advanced from the filing of a consolidated complaint through motions to dismiss and briefing on plaintiffs' motion for class certification in approximately five months.  *See id.*, ECF Nos. 43, 97, 109.

DECLARATION OF ERIC H. GIBBS IN SUPPORT OF MOTION FOR APPOINTMENT OF EVE H. CERVANTEZ AND ANDREW N. FRIEDMAN AS PLAINTIFFS' LEAD COUNSEL AND A STEERING COMMITTEE
**Case No. 15-MD-02617-LHK**

litigation class under California's Confidentiality of Medical Information Act, the court approved a stipulated permanent injunction that stopped UCSF from engaging in the conduct plaintiff complained of and required UCSF to institute updated privacy procedures and training for staff.  The court found that "plaintiff Smith ha[d] achieved a substantial benefit to the entire class and the public at large."  In another healthcare-related data breach filed in both federal and state court, *Whitaker v. Health Net of California, Inc.*, No. 2:11-cv-00910 (E.D. Cal.), and *Shurtleff v. Health Net of California, Inc.*, No. 34-2012-00121600 (Cal. Sup. Ct., Sacramento Cnty.), I served as co-lead counsel in a class action against a large HMO that lost medical and other personal information for 2.2 million subscribers in a 2011 data breach.  In 2014, the court approved a settlement that provided credit monitoring, established a $2 million fund for identity theft losses, and required Health Net to improve its security protocols.

8.  Girard Gibbs also has a history of delivering superior results to class members in a variety of other types of complex litigation.  For instance, recently in an MDL where the court was unexpectedly presented with a proposed settlement that two parties negotiated before lead counsel had been appointed, Judge Wu of the Central District of California appointed me to act as a liaison between the Court, the settling parties, and the remaining non-settling plaintiffs.  I was tasked with ensuring that the early settlement could be vetted by dozens of law firms and the Court.  In the course of approving a revised settlement, Judge Wu noted that my firm and I had "efficiently managed the requests from well over 20 different law firms and effectively represented the interests of Non-Settling Plaintiffs throughout this litigation.  This included actively participating in revisions to the proposed settlement in a manner that addressed many weaknesses in the original proposed settlement."  Civil Minutes at 8, *In Re: Hyundai & Kia Fuel Econ. Litig.*, No. 2:13-ml-02424, ECF No. 437 (C.D. Cal. Mar. 19, 2015).  Other examples where courts have expressly recognized our work include:

- *Sugarman v. Ducati N. America*, No. CV-10-05246 (N.D. Cal.).  Judge Jeremy Fogel "recognize[d] that class counsel assumed substantial risks and burdens in this litigation.  Representation was professional and competent; in the Court's opinion, counsel obtained an excellent result for the class."

3

- *Billitteri v. Secs. Am., Inc.*, No. 3:09-cv-01568-F (N.D. Tex.).  Judge W. Royal Ferguson wrote: "Class counsel in this case possess great competence and experience, and the result reached in this case perfectly justifies their abilities.  The Court has been extremely impressed with the conduct, skill, and accomplishment of class counsel throughout this litigation."  2011 WL 3585983, at *8 (N.D. Tex. Aug. 4, 2011).

- *Parkinson v. Hyundai Motor Am.*, No. 8:06-cv-0345 (C.D. Cal.).  Judge Alicemarie Stotler wrote, "Perhaps the best barometer of … the benefit obtained for the class … is the perception of class members themselves.  Counsel submitted dozens of letters from class members sharing their joy, appreciation, and relief that someone finally did something to help them."

9.    As cases like these illustrate, Girard Gibbs has a proven track record of successfully guiding the prosecution of complex litigation through discovery, class certification, and trial, and working efficiently and professionally with co-counsel and opposing counsel in doing so.  We take great pride in our ability to work well with other firms and believe it is a major reason why we have been selected to serve as part of 31 MDL leadership teams to date—as lead or co-lead counsel in 16 MDLs and as liaison counsel or a member of an executive or steering committee in 15 others.[3]

10.    As a 20-lawyer national litigation firm, Girard Gibbs has access to the resources needed to prosecute this litigation in a timely manner.  The firm has demonstrated its ability to efficiently prosecute class actions in a variety of contexts, and has been distinguished as a Tier 1 law firm for plaintiffs' class action and mass tort litigation in the 2013-2015 "Best Law Firms" lists published by the *U.S. News & World Report*.  Girard Gibbs has also been named to the *National Law Journal's* elite "Plaintiffs' Hot List," a selection of top U.S. plaintiffs' firms recognized for wins in high-profile cases, and many of the firm's attorneys have been consistently selected as Northern California Super Lawyers and Rising Stars.

11.    Girard Gibbs also has access to the financial resources needed to prosecute this matter effectively and has demonstrated the willingness to vigorously commit those resources to advance

---

[3] Girard Gibbs's firm resume is attached as **Exhibit 1.**

4

the claims of proposed class members.  *See e.g.,* Order of Final Approval and Judgment at 7-8, *Skold v. Intel Corp.*, No. 1-05-CV-039231, Doc. 589 (Cal. Super. Ct., Santa Clara Cnty. Jan. 22, 2015) (Judge Peter Kirwan wrote: "It is abundantly clear that Class Counsel invested an incredible amount of time and costs in a case which lasted approximately 10 years with no guarantee that they would prevail …. Simply put, Class Counsel earned their fees in this case.").  Girard Gibbs is committed to providing the same tenacity, expertise, and resources to prosecuting this matter.  As the responsible partner, I appreciate the significance and importance of the case, appreciate the opportunity to contribute to and influence the litigation, and am willing and able to personally commit the time necessary to assist in its prosecution.

12.    I am prepared to work at the direction of Ms. Cervantez and Mr. Friedman, who I believe will ensure the class receives representation of the highest quality, with the efficiencies the Court and legal system demand.  I also believe the structure they are proposing—co-lead plaintiffs' counsel and a steering committee—is warranted.  To prevent further dissemination of class members' social security and protected health information, I believe it is imperative that lead counsel and the Court promptly determine whether Anthem has patched its security holes, retired its bungled security practices, and started to deploy industry-standard data and privacy protections. This will require expediting discovery, and may require Plaintiffs to seek early injunctive relief. Concurrent with early discovery, Plaintiffs must rapidly interview large numbers of victims from across the country, prepare the pleadings, and brief the motions to dismiss and any related motions. Additionally, based on the interviews and investigation that I and others have conducted to date, this case will require Plaintiffs to quickly vet economists and other experts early in the litigation, develop econometrically rigorous damages models, and creatively and adroitly advocate for certification of a Rule 23(b)(3) class.

13.    For these reasons, I believe this case differs from *Adobe*.  There, I didn't need to call much upon the executive committee because we didn't need to interview hundreds of class members or untangle a complicated web of affiliated entities and information-sharing arrangements, and because the Court sequenced the pleadings, motion practice, discovery, and class certification briefing.  And discovery and informal interviews with economists revealed that damages models

DECLARATION OF ERIC H. GIBBS IN SUPPORT OF MOTION FOR APPOINTMENT OF EVE H. CERVANTEZ AND ANDREW N. FRIEDMAN AS PLAINTIFFS' LEAD COUNSEL AND A STEERING COMMITTEE
**Case No. 15-MD-02617-LHK**

weren't necessary or cost-effective, and that a Rule 23(b)(3) class wouldn't have been a superior litigation approach.  Finally, when we embarked upon resolution, we ultimately determined we could meaningfully resolve the case without invoking class certification proceedings at all.  The sequencing and the facts peculiar to *Adobe* effectively allowed a single firm to handle the majority of the litigation.  In my opinion, *Anthem* presents a much different challenge.  For the Plaintiffs and absent class members to receive the best representation possible on an aggressive timeline, lead counsel must be able to call on the expertise and resources of a steering committee with the skills to work cooperatively, efficiently, and simultaneously on multiple fronts.  I believe Ms. Cervantez and Mr. Friedman are more than qualified and capable of occupying such a critical role, support their appointment, and support the appointment of a steering committee.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 20th, 2015, at Oakland, California.


_____
/s/ Eric H. Gibbs
ERIC H. GIBBS

EXHIBIT 1

# GIRARD GIBBS
## L L P

# Firm Resume

Girard Gibbs is a national litigation firm representing plaintiffs in class and collective actions in state and federal courts, and in arbitration matters worldwide. The firm serves individuals, institutions and business clients in cases involving consumer protection, securities, antitrust, personal injury, whistleblower laws, and employment laws.

Our clients range from individual consumers and small businesses to Fortune 100 corporations and public pension funds. In addition to English, our attorneys are proficient in French, Spanish, German, and Korean, and we are prepared to assist non-U.S. clients in finding solutions to legal issues within the U.S. and across international borders.

We have recovered over a billion dollars on behalf of our clients in class actions and non-class cases. In addition to litigation, our firm also provides consulting and strategic counseling services to institutional clients and professionals in securities litigation, corporate governance and international business matters. We are committed to achieving favorable results for all of our clients in the most expeditious and economical manner possible.

Girard Gibbs has been distinguished as a Tier 1 law firm for plaintiffs' mass tort and class-action litigation in the "Best Law Firms" list in the survey published in the U.S. News & World Report's Money Issue. And *The National Law Journal (NLJ)* has named Girard Gibbs to its elite "Plaintiffs' Hot List," a selection of top U.S. plaintiffs' firms recognized for wins in high-profile cases.

Thirteen of the firm's attorneys have been selected as Northern California Super Lawyers and Rising Stars. Three of the firm's senior attorneys, Daniel Girard, Eric Gibbs, and Michael Danko, have additionally been recognized among the "Top 100 Super Lawyers" in Northern California, and were selected by their peers for inclusion in *The Best Lawyers in America* 2012-2015. *Best Lawyers* also designated Mr. Girard as the 2013 "Lawyer of the Year" in San Francisco for class action litigation. Mr. Girard and Mr. Gibbs have both earned *AV-Preeminent* ratings from Martindale-Hubbell, recognizing them in the highest class of attorneys for professional ethics and legal skills, and were featured in the 2012 edition of San Francisco's Top *AV-Preeminent* Rated Lawyers.

## ATTORNEYS

**Partners**

*Daniel Girard*     p. 2
*Eric Gibbs*        p. 4
*Dena Sharp*        p. 5
*Amanda Steiner*    p. 6

**Associates**

*Scott Grzenczyk*
*Elizabeth Kramer*
*Valerie Li*
*Adam Polk*
*Ashley Tveit*
*Linh Vuong*

**Of Counsel**

*David Berger*
*Michael Danko*
*A.J. De Bartolomeo*
*Dylan Hughes*
*Steve Lopez*
*Phyra McCandless*
*Kristine Meredith*
*Geoffrey Munroe*
*Andre Mura*
*Michael Schrag*
*David Stein*
*Amy Zeman*

## SIGNIFICANT RECOVERIES

*False Advertising*        p. 7
*Defective Products*       p. 8
*Other Consumer*           p. 10
*Data Breach/Privacy*      p. 12
*Securities & Financial*   p. 13
*Mass Tort*                p. 15
*Employment*               p. 15
*Antitrust*                p. 15
*Government Reform*        p. 16

# Partners

**Daniel Girard** serves as the firm's managing partner and coordinates the prosecution of various consumer protection, securities, and antitrust legal matters handled by the firm.



He has successfully represented investors and consumers in a series of precedent-setting cases. Some of the cases in which Mr. Girard served as lead counsel include *Billitteri v. Securities America, Inc.*, ($150 million settlement), *In re American Express Financial Advisors Securities Litigation*, ($100 million settlement), *In re Prison Realty Securities Litigation*, ($104 million settlement), *In re i2 Technologies Securities Litigation*, ($88 million settlement), and *In re MCI Non-Subscriber Rates Litigation*, ($90 million). He served as a member of the executive committee charged with managing *In re Lehman Brothers Holdings Securities and ERISA Litigation*, multidistrict proceedings arising out of the collapse of Lehman Brothers Holdings, Inc., the largest bankruptcy in United States history. The Lehman litigation resulted in recoveries of over $735 million. Mr. Girard also served as lead counsel in related litigation on behalf of Lehman noteholders

He served as a member of the Executive Committee in the *Natural Gas Antitrust Cases I, II, III and IV* antitrust litigation against numerous natural gas companies for manipulating the market for natural gas in California. The *Natural Gas* litigation resulted in total settlements of nearly $160 million. Mr. Girard served as lead counsel in the *In re H&R Block Express IRA Litigation*, which resulted in a $19.5 million settlement for low-income consumers. Mr. Girard also represented the California State Teachers Retirement System in litigation in a non-class securities action against Qwest Communications, Inc. and outside auditor Arthur Andersen, resulting in a recovery of $45 million for CalSTRS.

Mr. Girard currently serves as co-lead counsel in *In re Wal-Mart Stores Derivative Litigation*, representing CalSTRS in derivative litigation arising out of alleged violations of the Foreign Corrupt Practices Act. He also serves as co-lead counsel in *In re Peregrine Financial Group Customer Litigation*, representing customers of a failed futures commission merchant. He is also on the Consumer Cases Steering Committee in *In re: Target Corporation Customer Data Security Breach Litigation* and *In re: The Home Depot, Inc. Customer Data Security Breach Litigation*, where he represents customers concerning the data security breaches at retailers Target and Home Depot. He serves as lead counsel in the Sony Pictures Entertainment data breach case. Mr. Girard also serves as counsel to several public and private institutional investors in securities litigation matters both domestically and abroad, and assists in the prosecution of several international arbitration proceedings on behalf of European clients.

Mr. Girard was appointed by the late Chief Justice Rehnquist to serve on the United States Judicial Conference Committee on Civil Rules in 2004, and was reappointed by Chief Justice John Roberts to a second three-year term on the Committee in 2007. As a member of the Civil Rules Advisory Committee's Discovery Subcommittee, he participated in the Committee's drafting of amendments governing electronic discovery, summary judgment and expert discovery. He is also a

member of the American Law Institute, and serves on the Advisory Board of the Institute for the Advancement of the American Legal System, a national, non-partisan organization dedicated to improving the process and culture of the civil justice system.

Mr. Girard is the co-author of *Limiting Evasive Discovery: A Proposal for Three Cost-Saving Amendments to the Federal Rules*, 87 DENV. U. L. REV. 473 (2010) and *Managez efficacement vos litiges d'affaires*, Extrait du magazine, Décideurs N°121, November 2010. Other published articles include: *Stop Judicial Bailouts*, The National Law Journal, December 1, 2008, and *Billions to Answer For*, Legal Times, September 15, 2008. He is a frequent speaker on issues of electronic discovery, class actions and financial fraud, and his speaking engagements in the last five years include the following presentations: *Moderator and Panelist on panels addressing proposed Rule 23 amendments,* Class Action Settlement Conference, Duke Law Center for Judicial Studies, July 2015; *Panelist on Role of Consumer Class Actions in the Herbal Supplements Industry*, HarrisMartin's MDL Conference: Herbal Supplements Litigation, May 27, 2015; *Panelist on Transferee Judge Case Management;* Multidistrict Litigation Institute, Duke Law Center for Judicial Studies, April 9-10 2015; *Roundtable Participant on Settlement Class Actions,* George Washington University Law School, April 8, 2015; *Lessons from Recent Data Breach Litigation*, Western Trial Lawyers, February 26, 2015; *Speaker in Privacy & Cybersecurity Webinar*, State Bar of California, February 24, 2015; *Panelist on Preservation Issues,* Proportionality Discovery Conference, Duke Law Center for Judicial Studies, November 13-14, 2015; *Roundtable Participant on Public and Private Enforcement after Halliburton, ATP and Boilermakers*, Duke Law Center for Judicial Studies, September 26, 2014; *Co-panelist on Consolidation and Coordination in Generic Drug Cases*, HarrisMartin's Antitrust Pay for Delay Conference, September 22, 2014; *Guest Lecturer on Civil Litigation Seminar*, UC Berkeley, Hastings School of Law, September 18, 2014; *Panel Moderator on Selection and Appointment of Plaintiff's Steering Committee*, MDL Best Practices, Duke Law Center for Judicial Studies, September 11-12, 2014; *Panel on Shareholder Class Action Lawsuits under the New Companies Act*, Joint Conference of the Society of Indian Law Firms and the American Bar Association, Delhi, India, February 14-15, 2015; *Panelist on Symposium on Class Actions*, University of Michigan Law School Journal of Law Reform, March 2013; *Co-taught Seminar on Class Actions and Complex Litigation*, Duke University Law School, January 2013; *Recent Developments in U.S. Arbitration Law,* Conference on Business Law in Africa, Abidjan, Côte d'Ivoire, October 2012; *Bringing and Trying a Securities Class Action Case*, American Association for Justice 2012 Annual Convention, July 2012; *Panel on Class Actions,* U.S. Judicial Conference Standing Committee on Rules of Practice and Procedure, Phoenix, January 2012*; Panel on Paths to (Mass) Justice,* Conference on Globalization of Class Actions and Mass Litigation, The Hague, December 2011; *Contentieux et Arbitrage International: les bons réflexes à acquérir (Litigation and International Arbitration: acquiring the right reflexes)*, Paris, France, March 2011; *Panel on Proposals for Rule Amendments and Preservation Obligations*, United States Judicial Conference Advisory Committee on Rules of Practice and Procedure, January 2011; *Panel on Dispositive Motions*, 2010 United States Judicial Conference Advisory Committee on Civil Rules, Litigation Conference, Duke Law School, May, 2010; *Iqbal/Twombly Fallout: Are General Federal Rules Passé?*, ABA, Section of Litigation Annual Conference, April 22, 2010.

Mr. Girard is a member of the Business Law Section of the American Bar Association. He is past Chair of the Business Law Section's Subcommittee on Class Actions, Co-Chair of the Business and Corporate Litigation Committee's Task Force on Litigation Reform and Rule Revision, and Vice-Chair of the Business and Corporate Litigation Committee. He has served as a guest lecturer on class actions and complex litigation at the UC Davis School of Law, UC Berkeley (Boalt Hall), UC Hastings College of the Law, and Stanford Law School.

*Best Lawyers* selected Mr. Girard for inclusion in *The Best Lawyers in America* (2012-2013) for his work in class action and securities litigation, and also named him the 2013 "Lawyer of the Year" in San Francisco for Mass Tort Litigation/Class Actions - Plaintiffs. Mr. Girard has been consistently honored as a Northern California Super Lawyer (2007-2015), and has also earned the distinction of being included in the "Top 100 Super Lawyers" in Northern California. He has been named among the highest class of attorneys for professional ethics and legal skills with an *AV-Preeminent* rating by Martindale Hubbell, and was featured in the 2012 edition of San Francisco's Top AV-Preeminent Rated Lawyers.

He served as a member of the Board of Trustees of St. Matthew's Episcopal Day School in San Mateo, California from 2003-2008, including three years as board chair from 2005-2008. He served as a volunteer conservation easement monitor for the Peninsula Open Space Trust from 1991 to 2010.

Mr. Girard is a 1984 graduate of the School of Law, University of California at Davis, where he served as an editor of the Law Review. He received his undergraduate degree from Cornell University in 1979. Mr. Girard is a member of the California Bar.

**Eric Gibbs** specializes in the prosecution of consumer protection, whistleblower, antitrust, and mass tort actions. Mr. Gibbs has served as court-appointed lead counsel, class counsel and liaison counsel in numerous class actions, collective actions, and mass torts throughout the United States.



Mr. Gibbs has successfully prosecuted more than 75 class action matters. Recent cases in which Mr. Gibbs was appointed by courts to serve the interests of the class include *In re Chase Bank U.S.A., N.A. "Check Loan" Contract Litigation*—multidistrict litigation that alleged Chase Bank wronged consumers by offering long-term fixed-rate loans, only to later more-than-double the required loan payments. He led settlement negotiations in the case, which resulted in a $100 million settlement with Chase eight weeks prior to trial. *See also In Re Mercedes-Benz Tele Aid Contract Litig.* (certified nationwide class and then negotiated a class settlement providing cash reimbursements to the class); *Parkinson v. Hyundai Motor Am.* (achieved nationwide class certification followed by a settlement that provided cash reimbursements for repairs and related expenses to consumers); *Skold v. Intel Corp.* (ten years of litigation led to a nationwide litigation class certified followed by a settlement, in which Judge Peter Kirwan wrote: "It is abundantly clear that Class Counsel invested an incredible amount of time and costs in a case which lasted approximately 10 years with no guarantee that they would prevail.... Simply put, Class Counsel earned their fees in this case.").

Mr. Gibbs has lectured on consumer class actions, including as a featured speaker addressing *Strategic Considerations Under CAFA following Supreme Court's Rulings in* Shady Grove *and* Purdue at the Bridgeport 9th Annual Class Action Litigation Conference; *Current Issues Arising in Attorney Fee Negotiations, Including Best Practices* at the 2010 AAJ Annual Convention; *Dealing With Objectors* at the Consumer Attorneys of California 3rd Annual Class Action Seminar; *What is a Class Action?* at the CAOC Annual Ski Seminar; *After the Class Action Fairness Act* at CAOC's 1st Annual Class Action Seminar; *Class Certification In Consumer Cases* for the Litigation Section of the Barristers Club of the San Francisco Bar Association; and *Successfully Obtaining Attorneys' Fees Under Fee-Shifting Statutes* for the Consumer Rights Section of the Barristers Club of the San Francisco Bar Association. Mr. Gibbs

is the co-author of *Consumer Class Actions in the Wake of* Daugherty v. American Honda Motor Company, CAOC's Forum Magazine, January/February 2009.

Mr. Gibbs has been selected by his peers for inclusion in *The Best Lawyers in America* (2012-2015) for his work in Mass Tort Litigation/Class Actions, and honored as a Northern California Super Lawyer (2010-2015). He also earned the distinction of being included among the "Top 100 Super Lawyers" in Northern California. With an *AV-Preeminent* rating from Martindale-Hubbell, Mr. Gibbs has been named among the highest class of attorneys for professional ethics and legal skills, and was featured in the 2012 edition of San Francisco's *Top AV-Preeminent Rated Lawyers*.

Mr. Gibbs is a member of the Board of Governors of the Consumer Attorneys of California, the Board of Governors of the American Association for Justice, the co-chair of AAJ's Consumer Privacy and Data Breach Litigation Group, and is the former co-chair and editor of the Quarterly Newsletter for the Class Action Litigation Group of AAJ. He is also a member of the American Bar Association, the National Association of Consumer Advocates, the Alameda County Bar Association, and the San Francisco Trial Lawyers Association.

Mr. Gibbs is a 1995 graduate of the Seattle University School of Law. He received his undergraduate degree from San Francisco State University in 1991. Before entering private practice, he worked for two years as a law clerk for the Consumer Protection Division of the Washington Attorney General's Office. He is a member of the California Bar.

**Dena Sharp** has dedicated her practice to representing plaintiffs in complex litigation throughout the United States.  She specializes in the day-to-day case management of multifaceted, high-profile cases, and has developed expertise directing complex electronic discovery projects in lawsuits including *In re Lehman Brothers Holdings Securities and ERISA Litigation*, *In re SLM Corporation Securities Litigation*, *Billitteri v. Securities America, Inc.*, *In re Oppenheimer Rochester Funds Group Securities Litigation*, and *In re Nexium Antitrust Litigation*.



Ms. Sharp is an active member of The Sedona Conference Working Group on Electronic Document Retention and Production, the leading think tank on e-discovery.  She has contributed to the federal rule-making process by assisting in drafting proposed revisions to the Federal Rules of Civil Procedure, which have been presented to the United States Judicial Conference Advisory Committee on Civil Rules.  Ms. Sharp is also a member of the American Bar Association, where she has served as Vice-Chair of the Young Lawyers Division Litigation Committee, and the Federal Bar Association.

Ms. Sharp has been selected every year since 2009 as a Rising Star by Northern California Super Lawyers, recognizing her as one of the best young attorneys practicing in Northern California.  She speaks frequently on discovery issues around the country and has served on the faculty of The Sedona Conference Institute, a continuing legal education program featuring federal and state court judges, seasoned litigators, and in-house counsel.  She is the co-author of "*Four Views of Consumer Fraud*," CAOC's Forum Magazine, May/June 2012, among other articles.

Ms. Sharp is a 2006 graduate, *cum laude*, of the University of California, Hastings College of Law, where she was a member of the Thurston Society and was the recipient of the Best Oral Advocate

Award.  She was also the recipient of the Witkin award in her Legal Writing and Criminal Law courses. She received her undergraduate degree in history, *magna cum laude*, from Brown University in 1997. Ms. Sharp was a summer 2005 extern for the Honorable Phyllis J. Hamilton of the United States District Court, Northern District of California.  Ms. Sharp also served as a spring 2005 extern for the Honorable John E. Munter, San Francisco Superior Court. She is fluent in Spanish and German, and is admitted to the California Bar.  She is also admitted to practice before the United States District Courts for the Northern, Central, Eastern and Southern Districts of California and the District of Colorado.

**Amanda M. Steiner** has more than fifteen years of experience in class action and complex civil litigation. She represents plaintiffs in high-profile and complex securities, antitrust and consumer class actions in federal and state courts throughout the United States. She has been instrumental in achieving recoveries on behalf of class members in *Billitteri v. Securities America, Inc.,* ($150 million settlement on behalf Provident Royalties and Medical Capital investors) and *In re Lehman Brothers Equity/Debt Securities Litigation* ($120 million settlement on behalf of retail investors in Lehman structured products sold by UBS Financial Services, Inc.). She specializes in legal writing at the trial court and appellate levels, and has served as the lead brief writer for many of the firm's successful securities and consumer cases,  including *Billitteri*, *Lehman*, *In re SLM Corporation Securities Litigation*, *Smith v. The Regents of the University of California*, and *In re H&R Block Express IRA Litigation*.

Ms. Steiner was selected for inclusion in Northern California Super Lawyers in 2012 and 2013, and was named to the Top 50 Women Lawyers of Northern California in 2013.  She is a member of the Legal Writing Institute and the American Bar Association's Appellate Practice Committee, and is a Fellow of the American Bar Foundation.

Before joining Girard Gibbs, Ms. Steiner handled a variety of class action and complex litigation matters, including cases involving defective products, employment disputes, real estate development, construction and environmental issues, commercial and residential real estate contracts, and lender-related disputes.  She served as an extern for U.S. District Court Judge Marilyn Hall Patel, and worked as a law clerk for the Criminal Division of the U.S. Attorney's Office, the Alameda County District Attorney, and the Hopi Appellate Court Clinic and Tribal Law Project.

Ms. Steiner is a 1997 graduate of the University of California, Berkeley, School of Law (Boalt Hall), where she served as an Associate Editor for the Berkeley Journal of Employment and Labor Law and Articles Editor for the Berkeley Women's Law Journal.  She received her undergraduate degree, cum laude, from Carleton College in 1991.  She is admitted to practice in California, New York, and Washington.

## SIGNIFICANT RECOVERIES

Some of the cases in which the firm has had a leadership role are described below:

# False Advertising & Deceptive Marketing

*In re Hyundai and Kia Horsepower Litigation*, No. 02-CC-00287 (Cal. Super. Ct. Orange Cty.).  Girard Gibbs served as lead counsel in this coordinated nationwide class action against Hyundai for falsely advertising the horsepower ratings of more than 1 million vehicles over a ten year period.  The case was aggressively litigated on both sides over several years.  In all, over 850,000 Hyundai owners received notice of the settlement, which provided cash and other benefits, and which was had an estimated value of as much as $125 million.

*In re Chase Bank USA, N.A. "Check Loan" Contract Litigation*, No. 09-2032 (N.D. Cal.). Girard Gibbs and several other firms led this nationwide class action lawsuit alleging deceptive marketing and loan practices by Chase Bank USA, N.A. After a nationwide class was certified, U.S. District Court Judge Maxine M. Chesney granted final approval of a $100 million settlement on behalf of Chase cardholders.

*Hyundai and Kia Fuel Economy Litigation*, No. 2:13-md-2424 (C.D. Cal.). In a lawsuit alleging false advertising of vehicle fuel efficiency, the court appointed Eric Gibbs as liaison counsel. The firm regularly reported to the Court, coordinated a wide-ranging discovery process, and advanced the view of plaintiffs seeking relief under the laws of over twenty states. Ultimately Mr. Gibbs helped negotiate a revised nationwide class action settlement with an estimated value of up to $120 million. The Honorable George H. Wu wrote that Mr. Gibbs had "efficiently managed the requests from well over 20 different law firms and effectively represented the interests of Non-Settling Plaintiffs throughout this litigation. This included actively participating in revisions to the proposed settlement in a manner that addressed many weaknesses in the original proposed settlement."

*In re Providian Credit Card Cases*, JCCP No. 4085 (Cal. Super. Ct. San Francisco Cty).  Girard Gibbs served as court-appointed co-lead counsel in this nationwide class action suit brought on behalf of Providian credit card holders. The lawsuit alleged that Providian engaged in unlawful, unfair and fraudulent business practices in connection with the marketing and fee assessments for its credit cards.  The Honorable Stuart Pollack approved a $105 million settlement, plus injunctive relief—one of the largest class action recoveries in the United States arising out of consumer credit card litigation.

*In re MCI Non-Subscriber Telephone Rates Litigation*, MDL No. 1275 (S.D. Ill.). This class action lawsuit was brought on behalf of MCI subscribers charged various rates and surcharges instead of the lower rates MCI had advertised. Ten cases were consolidated for pretrial proceedings before the Honorable David R. Herndon, U.S. District Judge for the Southern District of Illinois. Judge Herndon appointed Girard Gibbs as co-lead counsel for the consolidated actions. On March 29, 2001, Judge Herndon granted final approval of a settlement for over $90 million in cash.

*Skold v. Intel Corp.*, No. 1-05-cv-039231 (Cal. Super. Ct. Santa Clara Cty.)  Girard Gibbs represented Intel consumers through a decade of hard-fought litigation, ultimately certifying a nationwide class under an innovative "price inflation" theory and negotiating a settlement that provided refunds and $4 million in cy pres donations. In approving the settlement, Judge Peter Kirwan wrote: "It is abundantly clear that Class Counsel invested an incredible amount of time and costs in a case which

lasted approximately 10 years with no guarantee that they would prevail…. Simply put, Class Counsel earned their fees in this case."

**Steff v. United Online, Inc.**, No. BC265953, (Cal. Super. Ct. Los Angeles Cty.). This nationwide class action suit was brought against NetZero, Inc. and its parent, United Online, Inc., by former NetZero customers.  Plaintiffs alleged that defendants falsely advertised their internet service as unlimited and guaranteed for a specific period of time. The Honorable Victoria G. Chaney of the Los Angeles Superior Court granted final approval of a settlement that provided full refunds to customers whose services were cancelled and which placed restrictions on Defendants' advertising.

**Stoddard v. Advanta Corp.**, No. 97C-08-206-VAB (Del. Superior Ct.).  This nationwide class action lawsuit was brought on behalf of cardholders who were promised a fixed APR for life in connection with balance transfers, but whose APR was then raised pursuant to a notice of change in terms.  The Honorable Vincent A. Bifferato appointed the firm as co-lead counsel and approved a $7.25 million settlement.

**Khaliki v. Helzberg's Diamond Shops, Inc.**, No. 11-cv-00010 (W.D. Mo.). Girard Gibbs and co-counsel represented consumers who alleged deceptive marketing in connection with the sale of princess-cut diamonds. The firms achieved a positive settlement, which the court approved, recognizing "that Class Counsel provided excellent representation" and achieved "a favorable result relatively early in the case, which benefits the Class while preserving judicial resources." The court went on to recognize that "Class Counsel faced considerable risk in pursuing this litigation on a contingent basis, and obtained a favorable result for the class given the legal and factual complexities and challenges presented."

**In re: Tyson Foods Inc., Chicken Raised Without Antibiotics Consumer Litigation**, No. 08-cv-1982 (D. Md.). Girard Gibbs served as Class Counsel on behalf of consumers who purchased chicken products that were alleged to have been misleadingly labeled as "raised without antibiotics." After discovery, counsel negotiated a $5 million settlement that required Tyson to pay cash to class members and make a substantial cy pres contribution to food banks.

## Defective Products

**In re iPod Cases**, JCCP No. 4355 (Cal. Super. Ct. San Mateo Cty). Girard Gibbs, as court appointed co-lead counsel, negotiated a settlement that provided warranty extensions, battery replacements, cash payments, and store credits for class members who experienced battery failure.  In approving the settlement, the Hon. Beth L. Freeman said that the class was represented by "extremely well qualified" counsel who negotiated a "significant and substantial benefit" for the class members.

**Sugarman v. Ducati North America, Inc.**, No. 10-cv-05246 (N.D. Cal.). Girard Gibbs served as class counsel on behalf of Ducati motorcycle owners who the fuel tanks on their motorcycles degraded and deformed due to incompatibility with the motorcycles' fuel. In January 2012, the Court approved a settlement that provided an extended warranty and repairs, writing, "The Court recognizes that class counsel assumed substantial risks and burdens in this litigation. Representation was professional and competent; in the Court's opinion, counsel obtained an excellent result for the class."

**Parkinson v. Hyundai Motor America**, No. 06-cv-00345 (C.D. Cal.). Girard Gibbs served as class counsel in this class action featuring allegations that the flywheel and clutch system in certain Hyundai vehicles was defective. After achieving nationwide class certification, Girard Gibbs negotiated a settlement that provided for reimbursements to class members for their repairs, depending on their

vehicle's mileage at time of repair, from 50% to 100% reimbursement. The settlement also provided full reimbursement for rental vehicle expenses for class members who rented a vehicle while flywheel or clutch repairs were being performed. After the settlement was approved, the court wrote, "Perhaps the best barometer of … the benefit obtained for the class … is the perception of class members themselves. Counsel submitted dozens of letters from class members sharing their joy, appreciation, and relief that someone finally did something to help them."

*In Re Medtronic, Inc. Implantable Defibrillators Product Liability Litigation*, No. 05-md-1726 (D. Minn.). Girard Gibbs served on the discovery and law committees and provided legal, discovery, and investigative support in this lawsuit, following a February 2005 recall of certain models of Medtronic implantable cardioverter defibrillator devices. Approximately 2,000 individual cases were filed around the country and consolidated in an MDL proceeding in District Court in Minnesota. The cases were settled in 2007 for $75 million.

*Browne v. Am. Honda Motor Co., Inc.,* No. 09-cv-06750 (C.D. Cal.). Girard Gibbs and co-counsel served as class counsel, representing plaintiffs who alleged that about 750,000 Honda Accord and Acura TSX vehicles were sold with brake pads that wore out prematurely. Girard Gibbs negotiated a settlement in which improved brake pads were made available and class members who had them installed could be reimbursed. The settlement received final court approval in July 2010 and provided an estimated value of approximately $25 million.

*In Re General Motors Dex-Cool Cases.*, No. HG03093843 (Cal. Super Ct. Alameda Cty). In these class action lawsuits filed throughout the country, plaintiffs alleged that General Motors' Dex-Cool engine coolant damaged certain vehicles' engines, and that in other vehicles, Dex-Cool formed a rusty sludge that caused vehicles to overheat. After consumer classes were certified in both Missouri and California, General Motors agreed to cash payments to class members nationwide. On October 27, 2008, the California court granted final approval to the settlement.

*Roy v. Hyundai Motor America*, No. 05-cv-483 (C.D. Cal.). Girard Gibbs served as court appointed co-lead counsel in this nationwide class action suit brought on behalf of Hyundai Elantra owners and lessees, alleging that an air bag system in vehicles was defective. Girard Gibbs helped negotiate a settlement whereby Hyundai agreed to repair the air bag systems, provide reimbursement for transportation expenses, and administer an alternative dispute resolution program for trade-ins and buy-backs. In approving the settlement, the Honorable Alicemarie H. Stotler presiding, described the settlement as "pragmatic" and a "win-win" for all involved.

*Velasco v. Chrysler Group LLC*, No. 13-cv-08080 (C.D. Cal.). In this class action, consumers alleged they were sold and leased vehicles with defective power control modules that caused vehicle stalling. Girard Gibbs attorneys and their co-counsel defeated the majority of Chrysler's motion to dismiss and engaged in extensive deposition and document discovery. In 2015, the parties reached a settlement contingent on Chrysler initiating a recall of hundreds of thousands of vehicles, reimbursing owners for past repairs, and extending its warranty for the repairs conducted through the recall. (The settlement has received preliminary court approval; a final approval hearing will be held in early 2016.)

# Other Consumer Protection Recoveries

*Mitchell v. American Fair Credit Association*, No. 785811-2 (Cal. Super. Ct. Alameda Cty); *Mitchell v. Bankfirst, N.A.*, No. 97-cv-1421 (N.D. Cal.). This class action lawsuit was brought on behalf of California members of the American Fair Credit Association (AFCA). Plaintiffs alleged that AFCA operated an illegal credit repair scheme. The Honorable James Richman certified the class and appointed the firm as class counsel. In February 2003, Judge Ronald Sabraw of the Alameda County Superior Court and Judge Maxine Chesney of the U.S. District Court for the Northern District of California granted final approval of settlements valued at over $40 million.

*In Re Mercedes-Benz Tele Aid Contract Litigation*, MDL No. 1914, No. 07-cv-2720 (D.N.J.). Girard Gibbs and co-counsel served as co-lead class counsel on behalf of consumers who were not told their vehicles' navigation systems were on the verge of becoming obsolete. Counsel successfully certified a nationwide litigation class, before negotiating a settlement valued between approximately $25 million and $50 million. In approving the settlement, the court acknowledged that the case "involved years of difficult and hard-fought litigation by able counsel on both sides" and that "the attorneys who handled the case were particularly skilled by virtue of their ability and experience."

*In re America Online Spin-Off Accounts Litigation*, No. 04-md-1581 (C.D. Cal.). Girard Gibbs served as court-appointed co-lead counsel in this nationwide class action suit brought on behalf of America Online subscribers who were billed for a second account without their knowledge, authorization or consent. The litigation settled for $25 million and changes in AOL's billing and account practices.

*In re LookSmart Litigation*, No. 02-407778 (Cal. Super. Ct. S.F. Cty). This nationwide class action suit was brought against LookSmart, Ltd. on behalf of LookSmart's customers who paid an advertised "one time payment" to have their web sites listed in LookSmart's directory, only to be later charged additional payments to continue service. Plaintiffs' claims included breach of contract and violation of California's consumer protection laws. On October 31, 2003, the Honorable Ronald M. Quidachay granted final approval of a nationwide class action settlement providing cash and benefits valued at approximately $20 million.

*In re America Online, Inc. Version 5.0 Software Litigation*, MDL No. 1341 (S.D. Fla.).  Girard Gibbs served as co-lead counsel in this MDL proceeding, which centralized 45 class actions.  The action involved alleged violations of state consumer protection statutes, the Computer Fraud and Abuse Act, and federal antitrust laws based on AOL's distribution of its Version 5.0 software upgrade.  The Honorable Alan S. Gold granted final approval to a $15.5 million cash settlement on August 1, 2002.

*In re PayPal Litigation*, No. 02-cv-1227 (N.D.Cal. 2002). Girard Gibbs served as co-lead counsel in this nationwide class action alleging violations of California consumer protection statutes and the Electronic Funds Transfer Act (EFTA). The plaintiffs alleged that PayPal unlawfully restricted access to consumers' PayPal accounts. On September 24, 2004, Judge Fogel granted final approval to a settlement valued at $14.35 million in cash and returned funds, plus injunctive relief to ensure compliance with the EFTA.

*Powers Law Offices, P.C. v. Cable & Wireless USA, Inc.*, No. 99-cv-12007 (D. Mass 1999). In this class action brought on behalf of cable and wireless subscribers overcharged for recurring and incorrect fees, Girard Gibbs prosecuted the case from 1999 through 2005. On October 27, 2005, Judge

Harrington granted final approval of the $8 million settlement and the bankruptcy court approved the 30% distribution from the unsecured creditors' fund of the bankruptcy liquidation proceeds.

*Lehman v. Blue Shield of California*, No. CGC-03-419349 (Cal. Super. Ct. S.F. Cty.). In this class action lawsuit alleging that Blue Shield engaged in unlawful, unfair and fraudulent business practices when it modified the risk tier structure of its individual and family health care plans, a $6.5 million settlement was negotiated on behalf of former and current Blue Shield subscribers residing in California. The Honorable James L. Warren granted final approval of the settlement in March 2006.

*Telestar v. MCI, Inc.*, No. 05-cv-10672 (S.D.N.Y). This class action was brought on behalf of MCI commercial subscribers who were charged both interstate and intrastate fees for the same frame relay on prorate line service during the same billing period. On April 17, 2008, the Honorable John G. Koeltl granted final approval of a settlement for over $2.8 million in cash.

*Wixon v. Wyndham Resort Development Corp.*, No. 07-cv-02361 (N.D. Cal.). Girard Gibbs served as class and derivative counsel in this litigation brought against a timeshare developer and the directors of a timeshare corporation for violations of California state law. Plaintiffs alleged that the defendants violated their fiduciary duties as directors by taking actions for the financial benefit of the timeshare developer to the detriment of the owners of timeshare interests. On September 14, 2010, Judge White granted approval of a settlement of the plaintiffs' derivative claims.

*Berrien, et al. v. New Raintree Resorts, LLC, et al.*, No. 10-cv-03125 (N.D. Cal.). Girard Gibbs filed this class action on behalf of timeshare owners, challenging the imposition of unauthorized special assessment fees. On November 15, 2011, the Parties reached a proposed settlement of the claims asserted by the Plaintiffs on behalf of all class members who were charged the special assessment. On March 13, 2012, the Court issued its Final Class Action Settlement Approval Order and Judgment, approving the proposed settlement.

*Benedict, et al. v. Diamond Resorts Corporation, et al.*, No. 12-cv-00183 (D. Hawaii). Girard Gibbs filed this class action on behalf of timeshare owners, challenging the imposition of an unauthorized special assessment fee. On November 6, 2012, the parties reached a proposed settlement of the claims asserted by the plaintiffs on behalf of all class members who were charged the special assessment. On June 6, 2013, the Court approved the settlement.

*Allen Lund Co., Inc. v. AT&T Corp.*, No. 98-cv-1500 (C.D. Cal.). This class action lawsuit was brought on behalf of small businesses whose long-distance service was switched to Business Discount Plan, Inc. Girard Gibbs was appointed class counsel by the Honorable Dean D. Pregerson. The settlement, providing for full cash refunds and free long-distance telephone service, was approved in December 1999.

*Mackouse v. The Good Guys - California, Inc.*, No. 2002-049656 (Cal. Super Ct. Alameda Cty). This nationwide class action lawsuit was brought against The Good Guys and its affiliates alleging violations of the Song-Beverly Warranty Act and other California consumer statutes. The Plaintiff alleged that The Good Guys failed to honor its service contracts, which were offered for sale to customers and designed to protect a customer's purchase after the manufacturer's warranty expired. In May 9, 2003, the Honorable Ronald M. Sabraw granted final approval of a settlement that provides cash refunds or services at the customer's election.

*Mager v. First Bank of Marin*, No. 00-cv-1524 (D. Nev.). This nationwide class action was brought on behalf of people who were enrolled in First Bank of Marin's credit card program. In May 2002, the Judge Pro of the U.S. District Court for the District of Nevada approved a settlement providing for cash and non-cash benefits to class members.

# Data Breach and Privacy Related Recoveries

*In re Adobe Systems Inc. Privacy Litig.*, No. 13-cv-05226 (N.D. Cal.). In this nationwide class action stemming from a 2013 data breach, attorneys from Girard Gibbs served as lead counsel on behalf of the millions of potentially affected consumers. Counsel achieved a landmark ruling on Article III standing (which has since been relied upon by the Seventh Circuit Court of Appeals and other courts) and then went on to negotiate a settlement requiring Adobe to provide enhanced security relief— including the implementation and maintenance of enhanced intrusion detection, network segmentation, and encryption.

*Whitaker v. Health Net of Cal., Inc., et al.*, No. 2:11-cv-00910 (E.D. Cal.) and *Shurtleff v. Health Net of Cal., Inc.*, No. 34-2012-00121600 (Cal. Super Ct. Sacramento Cty). Girard Gibbs served as co-lead counsel in this patient privacy case. On June 24, 2014, the court granted final approval of a settlement that provided class members with credit monitoring, established a $2 million fund to reimburse consumers for related identity theft incidents, and instituted material upgrades to and monitoring of Health Net's information security protocols.

*Smith v. Regents of the University of California, San Francisco*, No. RG-08-410004 (Cal. Super Ct. Alameda Cty). Girard Gibbs represented a patient who alleged that UCSF's disclosure of its patients' medical data to outside vendors violated California medical privacy law. The firm succeeded in negotiating improvements to UCSF's privacy procedures on behalf of a certified class of patients of the UCSF medical center. In approving the stipulated permanent injunction, Judge Stephen Brick found that "plaintiff Smith has achieved a substantial benefit to the entire class and the public at large."

*In re Countrywide Financial Corp. Customer Data Security Breach Litigation*, No. 3:08-md-01988 (W.D. Ky.). Girard Gibbs served as a member of the executive committee representing a class of millions of customers and potential customers of Countrywide whose personal information was stolen by a former Countrywide employee and then sold to other mortgage lenders. The class settlement provided for free credit monitoring, reimbursement of out-of-pocket expenses incurred as a result of the theft, and reimbursement of up to $50,000 per class member for identity theft losses.

*In re Sony BMG CD Technologies Litigation*, No.1:05-cv-09575 (S.D.N.Y.). Girard Gibbs served as co-lead counsel in this class action for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* on behalf of millions of consumers who purchased SONY BMG music compact discs encoded with digital rights management software which limited CD functionality and acted as spyware on the users' computers. Judge Naomi Reice Buchwald granted approval to a settlement that provided for a nationwide recall of certain CDs, the dissemination of software utilities to remove the offending DRM, cash and other compensation for consumers, and injunctive relief governing Sony BMG's use of DRM.

# Securities and Financial Recoveries

*In re Digex, Inc. Shareholder Litigation*, Consol. Case No. 18336 (Del. Ch. Ct. 2000). Girard Gibbs represented the Kansas Public Employees Retirement System, one of two institutional lead plaintiffs in this lawsuit, in which minority shareholders of Digex, Inc. sued to enjoin MCI WorldCom's planned acquisition of a controlling interest in Digex through a merger with Intermedia Communications, Inc. In a settlement approved by Delaware Chancery Court on April 6, 2000, a fund consisting of $165 million in MCI WorldCom stock and $15 million in cash was secured for Digex shareholders, as well as non-cash benefits valued at $450 million.

*Billiteri v. Securities America, Inc.*, No. 3:09-cv-01568 (N.D. Tex.). Girard Gibbs served as lead counsel for investors in a failed investment scheme and coordinated settlement negotiations with bankruptcy trustees and competing plaintiff groups, resulting in global $150 million settlement. In approving the settlement, Judge W. Royal Furgeson of the Northern District of Texas wrote: "Class counsel in this case possess great competence and experience, and the result reached in this case perfectly justifies their abilities. The Court has been extremely impressed with the conduct, skill, and accomplishment of class counsel throughout this litigation." 2011 WL 3585983, at *8 (N.D. Tex. Aug. 4, 2011).

*In re Lehman Brothers Equity/Debt Securities Litigation*, No. 08-cv-5523 (S.D.N.Y.). Girard Gibbs was appointed class counsel for a certified class of retail investors in structured products sold by UBS Financial Services, Inc., following the collapse of Lehman Brothers Holdings, Inc., the largest bankruptcy in United States history. The plaintiffs alleged that UBS misrepresented Lehman's financial condition and failed to disclose that the "principal protection" feature of many of the notes depended upon Lehman's solvency. Girard Gibbs negotiated a settlement that established a $120 million fund to resolve the claims.

*In re Prison Realty Securities Litigation*, No. 99-cv-0452 (M.D. Tenn.). Girard Gibbs served as co-lead counsel in this securities class action brought against a real estate investment trust and its officers and directors relating to a merger between Corrections Corporation of America and CCA Prison Realty Trust. On February 13, 2001, the Court granted final approval to a settlement for over $120 million in cash and stock.

*In re American Express Financial Advisors Securities Litigation*, No. 04-cv-01773 (S.D.N.Y.). Girard Gibbs served as co-lead counsel in this class action, brought on behalf of individuals who bought financial plans and invested in mutual funds from American Express Financial Advisors. The case alleged that American Express steered its clients into underperforming "shelf space funds" to reap kickbacks and other financial benefits. On July 13, 2007, the Court granted final approval to a cash settlement of $100 million in addition to other relief.

*Scheiner v. i2 Technologies, Inc., et al.*, No. 3:01-cv-418 (N.D. Tex.). Girard Gibbs represented lead plaintiff, the Kansas Public Employees Retirement System, and served as co-lead counsel on behalf of investors in i2 Technologies. The Honorable Barefoot Sanders approved cash settlements for $88 million from the company, its officers and its former auditor, Arthur Andersen LLP. As part of the settlement, i2 agreed to institute significant corporate governance reforms.

*In re Peregrine Financial Group Customer Litigation*, No. 12-cv-5546 (N.D. Ill.). Girard Gibbs served as co-lead counsel for futures and commodities investors who alleged they lost millions of dollars in the collapse of Peregrine Financial Group, Inc. The case resulted in settlements with JPMorgan Chase

& Co. and U.S. Bank N.A., totaling approximately $60 million. (The latter settlement recently received preliminary court approval; a final approval hearing has been set for later in 2015.)

*CalSTRS v. Qwest Communications, et al.*, No. 415546 (Cal. Super. Ct. S.F. Cty.). Girard Gibbs represented the California State Teachers Retirement System in this opt-out securities fraud case against Qwest Communications, Inc. and certain of its officers and directors, as well as its outside auditor Arthur Andersen. The case resulted in a precedent-setting $45 million settlement for California school teachers.

*In re SLM Corp. Securities Litigation*, No. 08-cv-1029 (S.D.N.Y.). Girard Gibbs served as lead counsel representing investors of SLM Corporation in litigation alleging that Sallie Mae, the leading provider of student loans in the U.S., misled the public about its financial performance in order to inflate the company's stock price. After achieving nationwide class certification, Girard Gibbs negotiated a settlement that established a $35 million fund to resolve investors' claims.

*In re Winstar Communications Securities Litigation*, No. 01-cv-11522 (S.D.N.Y). Girard Gibbs represented Allianz of America, Inc., Fireman's Fund and other large private institutional investors against Grant Thornton and other defendants arising out of plaintiffs' investments in Winstar Communications, Inc. The firm achieved a settlement on the eve of trial that provided a recovery rate more than 30 times higher than what class members received in a related class action. The recovery (after attorney fees) returned a remarkable 78.5% of the losses plaintiffs may have recovered at trial.

*In re Total Renal Care Securities Litigation*, No. 99-cv-01750 (C.D. Cal.). This securities fraud action arose out of restatement of earnings by a healthcare provider, brought under the PSLRA by the Louisiana Teachers' Retirement System and the Louisiana School Employees' Retirement System. The case settled for $25 million and issuer's commitment to adopt comprehensive corporate governance reforms.  Girard Gibbs served as liaison counsel.

*In re Oxford Tax Exempt Fund Securities Litigation*, No. 95-cv-3643 (D. Md.). Girard Gibbs served as co-lead counsel in this class and derivative litigation brought on behalf of a real estate limited partnership with assets of over $200 million. Settlement providing for exempt issuance of securities under section 3(a)(10) of Securities Act of 1933, public listing of units, and additional settlement benefits valued at over $10 million approved January 31, 1997.

*Calliott v. HFS, Inc.*, No. 97-cv-0924 (N.D. Tex.). Girard Gibbs intervened on behalf of an institutional client in this securities class action arising out of bankruptcy of Amre, Inc., a seller of home remodeling and repair services. Girard Gibbs was designated lead plaintiff's counsel under the Private Securities Litigation Reform Act. Settlements for $7.3 million were approved August 1999 and December 2000.

*In re Towers Financial Corporation Noteholders Litigation*, MDL No. 994 (S.D.N.Y.). This class action was brought against promoters and professionals associated with a failed investment scheme described by the SEC as the then "largest Ponzi scheme in U.S. history." The case resulted in $6 million in partial settlements, and a $250 million judgment entered against four senior Towers executives. Girard Gibbs served as liaison counsel and as a plaintiffs' executive committee member. *See In re Towers Financial Corporation Noteholders Litigation*, 177 F.R.D. 167 (S.D.N.Y. 1997) ("class counsel—particularly Plaintiffs' Liaison counsel, Daniel Girard—has represented the plaintiffs diligently and ably in the several years that this litigation has been before me").

# Mass Tort

*In re Actos Pioglitazone-Products Liability Litigation*, MDL No. 6:11-md-2299 (W.D. La.). Girard Gibbs lawyers were among those court-appointed to the Plaintiffs Steering Committee and also served on the Daubert and Legal Briefing Committees, in litigation that resulted in a $2.37 billion settlement.

*In re Yasmin and Yaz (Drospirenone) Marketing, Sales, Practices and Products Liability Litigation*, MDL No. 2385, No. 3:09-md-02100 (S.D. Ill.). Girard Gibbs attorneys were appointed to the Plaintiffs Steering Committee and served as Co-Chair of the Plaintiffs' Law and Briefing Committee, in litigation ultimately resulting in settlements worth approximately $1.6 billion.

*In re Pradaxa (Dabigatran Etexilate) Products Liability Litigation*, MDL No. 2385, No. 3:12-md-02385 (S.D. Ill.). Girard Gibbs lawyers were appointed by the court to the Plaintiffs Steering Committee in mass tort litigation that resulted in settlements worth approximately $650 million.

*In re: Sulzer Hip Prosthesis And Knew Prosthesis Liability Litigation*, MDL No. 1401 (N.D. Ohio); Cal. JCCP No. 4165 (Cal. Super. Court, Alameda Cty). Mr. Schrag helped recover over $10 million on behalf of his clients in this multidistrict litigation.

# Employment

*Mitchell v. Acosta Sales, LLC*, No. 11-1796 (C.D. Cal. 2011). Girard Gibbs and co-counsel served as class counsel representing Acosta employees who alleged that they were required to work off-the-clock and were not reimbursed for required employment expenses. Girard Gibbs helped negotiate a $9.9 million settlement for merchandiser employees who were not paid for all the hours they worked. The Court granted final approval of the settlement in September 2013.

*Rubaker v. Spansion, LLC*, No. 09-842 (N.D. Cal. 2009). Girard Gibbs and co-counsel filed a class action lawsuit on behalf of former Spansion employees that alleged that the company had failed to provide terminated employees from California and Texas with advance notice of the layoff, as required by the Workers Adjustment and Retraining Notification Act (WARN Act). The bankruptcy court approved the class action settlement negotiated by Girard Gibbs and co-counsel in 2010. The settlement was valued at $8.6 million and resulted in cash payments to the former employees.

# Antitrust

*In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL 1827 (N.D. Cal.). Girard Gibbs serves as liaison counsel in this multi-district antitrust litigation against numerous TFT-LCD (Flat Panel) manufacturers alleging a conspiracy to fix prices, which has achieved settlements of more than $400 million to date.

*In re Natural Gas Antitrust Cases I, II, III and IV*, JCCP No. 4221 (Cal. Super. Ct. San Diego Cty). Girard Gibbs served in a leadership capacity in this coordinated antitrust litigation against numerous natural gas companies for manipulating the California natural gas market, which has achieved settlements of nearly $160 million.

# Government Reform

     ***Paeste v. Government of Guam***, No. 1:11-cv-0008 (D. Guam). Girard Gibbs and co-counsel served as Class Counsel in litigation alleging the Government of Guam had a longstanding practice of delaying tax refunds for years on end. After certifying a litigation class, Plaintiffs prevailed on both of their claims at the summary judgment stage, and obtained a permanent injunction reforming the government's administration of tax refunds.

     ***Ho v. San Francisco Unified School District***, No. 94-cv-2418 (N.D. Cal.). This civil rights action was brought on behalf of a certified class of San Francisco public school students of Chinese descent to terminate racial and ethnic quotas imposed under 1983 desegregation consent decree. *See Ho v. San Francisco Unified Sch. Dist.*, 965 F. Supp. 1316 (N.D. Cal. 1997), *aff'd* 147 F.3d 854 (9th Cir. 1998); *see also* 143 Cong. Rec. S6097, 6099 (1997) (statement of United States Senator Hatch referring to testimony of class representative before Senate Judiciary Committee).

EXHIBIT G

Jason S. Hartley (CA Bar No. 192514)
STUEVE SIEGEL HANSON LLP
550 West C Street, Suite 1750
San Diego, CA 92101
Phone: (619) 400-5822
Fax: (619) 400-5832
hartley@stuevesiegel.com

Norman E. Siegel (MO Bar No. 44378)
Barrett J. Vahle (MO Bar No. 56674)
J. Austin Moore (MO Bar No. 64040)
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
siegel@stuevesiegel.com
vahle@stuevesiegel.com
moore@stuevesiegel.com

ATTORNEYS FOR PLAINTIFFS MARINA GIL,
KELLEN EDWARDS and GEORGE NICOUD

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| **IN RE: ANTHEM, INC. DATA BREACH LITIGATION** | Case No. 15-MD-02617-LHK<br><br>**DECLARATION OF NORMAN E. SIEGEL IN SUPPORT OF MOTION FOR APPOINTMENT OF EVE H. CERVANTEZ AND ANDREW N. FRIEDMAN AS PLAINTIFFS' LEAD COUNSEL AND APPOINTMENT OF NORMAN E. SIEGEL TO PLAINTIFFS' STEERING COMMITTEE**<br><br>Date:   September 10, 2015<br>Time:  1:30 p.m.<br>Judge: Lucy H. Koh |

I, Norman E. Siegel, declare pursuant to 28 U.S.C. § 1746 as follows:

1.      I am a founding partner in Stueve Siegel Hanson LLP. I am a member in good standing of the State Bar of Missouri and I am counsel of record for Marina Gil, Kellen Edwards and George Nicoud in the actions centralized before this Court. I respectfully submit this declaration in support of Plaintiffs' motion to appoint Eve Cervantez and Andrew Freidman as Co-Lead counsel and in support of my appointment as a member of the Plaintiffs' Steering Committee or other leadership position as the Court deems appropriate.

2.      I am a 1990 graduate of Tufts University and a 1993 graduate of Washington University School of Law in St. Louis where I was Articles Editor of the *Journal of Urban and Contemporary Law*. After graduating law school I worked as an Assistant Missouri Attorney General before entering private practice at Sonnenschein Nath & Rosenthal (now Dentons) where I was elected partner in 1999. In 2001, I amicably left Sonnenschein and founded Stueve Siegel Hanson. I have an AV® rating, and have been recognized by my peers as a Super Lawyer, in Best Lawyers in America, and as one of the 500 leading plaintiff's lawyers in America by *Lawdragon* magazine.

3.      Stueve Siegel Hanson is an AV® rated law firm with 31 lawyers and approximately 20 support staff in its offices in Kansas City, San Diego, and New York. The firm has been designated as a "Tier 1" firm in Commercial Litigation and Class Actions by *U.S. News* and is made up almost entirely of lawyers who formerly practiced at large law firms and as former government lawyers and state and federal law clerks. The firm has a nationwide practice that focuses on complex commercial and class action litigation and trials involving a wide range of business torts, antitrust, consumer fraud, environmental contamination, data breach and privacy issues, and securities violations. The firm has represented hundreds of thousands of individuals in class and collective actions, but has also represented large businesses and governmental entities including the Kansas Public Employees Retirement System, the National Credit Union Administration, Seaboard Corporation and Associated Wholesale Grocers, Inc.

Substantially more information regarding the firm is contained in my firm resume (attached as Exhibit 1) and available at www.stuevesiegel.com.

4.      Since the revelation of the Target data breach in late 2013, much of my practice has been dedicated to representing victims of data breaches. I co-founded with Eric Gibbs the American Association for Justice's Consumer Privacy and Data Breach Litigation Group and currently serve as the group's Co-Chair. I am a nationally published author on emerging issues impacting data breach cases,[1] and I regularly speak on data breach litigation issues[2].

5.      I have been selected to serve in leadership roles in multi-district litigation throughout the country.[3] As directly relevant to the Anthem Data Breach Litigation, I was appointed to represent consumer victims in *In Re: Target Corporation Customer Data Security Breach Litigation*, MDL No. 2522 (Doc. 74), before the Hon. Paul A. Magnuson (D. Minn.) and was recently appointed to represent consumers as Co-Lead Counsel in *In Re: The Home Depot, Inc., Customer Data Security Breach Litigation*, MDL No. 2583 (Doc 60), before the Hon. Thomas W. Thrash (N.D. Ga.). Along with the *Anthem* case, *Target* and *Home Depot* are among the largest data breach cases filed to date as measured by the number of victims.

6.      In both *Target* and *Home Depot*, my firm took the lead in creating a proprietary database and handling intake and vetting of more than 1,000 plaintiffs for consideration as class representatives in the consolidated proceedings. I also personally participated in securing industry experts, promulgating third-party discovery, and establishing ESI protocols and confidentially guidelines. My firm also handled the response to large portions of the motion to

---

[1] *See Securing Data Breach Claims, Trial Magazine,* April 2014 (available at http://goo.gl/sQ2Oe5).

[2] *See, e.g.,* recorded interview available on the Lexology blog at http://goo.gl/rLxcHR.

[3] Recent appointments include: *In Re: Pre-Filled Propane Tank Antitrust Litigation*, No. 14-md-0567 (W.D. Mo.); *In Re: Simply Orange Juice Mktg. and Sales Practices Litig.*, MDL No. 2361 (W.D. Mo.); *In Re: Peregrine Financial Group Customer Litig.*, No. 12-cv-5546 (N.D. Ill.); *In Re: H&R Block, Inc., Express IRA Mktg. Litig.*, No. 4:06-MD-01786 RED (W.D. Mo.); *In Re: Pre-Filled Propane Tank Mktg. and Sales Practices Litig.*, No. 4:09-MD-02086 (W.D. Mo.).

2

DECLARATION OF NORMAN E. SIEGEL IN SUPPORT OF MOTION FOR APPOINTMENT OF
EVE H. CERVANTEZ AND ANDREW N. FRIEDMAN AS PLAINTIFFS' LEAD COUNSEL AND APPOINTMENT OF
NORMAN E. SIEGEL TO PLAINTIFFS' STEERING COMMITTEE      **Case No. 15-MD-02617-LHK**

dismiss in *Target*, which resulted in a favorable ruling,[4] and took the lead in drafting the consolidated complaint and opposing the motion to dismiss in *Home Depot* (the *Home Depot* motion is pending), which included conducting a comprehensive review of applicable laws in all 50 states. I also played a direct role in negotiating and crafting a class settlement in *Target*, which included significant monetary and injunctive relief to the class.[5]

7.      My firm and I are willing and able to commit to this litigation, however long it takes to resolve. Although the firm is committed to efficient resolution in all cases, it is not unusual for Stueve Siegel Hanson to invest thousands of hours in its cases in pursuit of justice for its clients. Just in the past few years the firm has spent nearly 30,000 hours litigating a complex, multi-party antitrust suit on behalf of grocers and wholesalers against egg producers and industry trade groups; nearly 25,000 hours litigating a consumer class case for economic damages against a pharmaceutical company; and over 15,000 hours litigating a multi-district collective action under 29 U.S.C. § 216(b) against a national bank. Regarding the latter case, the MDL court observed that "[t]he number of hours spent on the litigation by plaintiffs' counsel— all of whom are highly skilled and experienced in the subject area—verifies the significant time and labor required by this MDL."[6]

8.      I have tried numerous trials to verdict, and have secured multiple jury awards in excess of $1 million. The firm has also taken several collective actions to trial[7] and recently successfully tried a certified class action to a successful jury verdict, which was affirmed on appeal.[8] Courts have found that "the experience, reputation, and ability of class counsel is

---

[4] *See In Re: Target Corp. Data Breach Litig.*, 66 F. Supp. 3d 1154 (D. Minn. 2014).

[5] *In Re: Target Corporation Customer Data Security Breach Litigation* (Doc. 358-1).

[6] *In Re: Bank of America Wage And Hour Employment Practices Litig.*, No. 10-MD-2138, Dkt. No. 653, at 7 (D. Kan. Dec. 13, 2013).

[7] *Sanchez, et al., v. Echosphere LLC, et al.*, No. 71 160 00443 09 (AAA); *De La Cruz, et al. v. Masco Retail Cabinet Grp., LLC*, No. 11 152 01156 08 (AAA).

[8] *Adelina Garcia, et al. v. Tyson Foods, Inc.*, No. 06-2198-JWL (D. Kan.), *aff'd* 770 F.3d 1300 (10th Cir. 2014).

1   outstanding," and have found Stueve Siegel Hanson attorneys to be "extremely knowledgeable,"[9]

2   "highly experienced," "highly capable," and to enjoy "an excellent reputation."[10]

3       9.      Stueve Siegel Hanson has ample human, financial, and other resources to advance

4   the litigation in a timely and efficient manner. In addition to the firm's well-credentialed trial

5   attorneys, Stueve Siegel Hanson employs two full-time information-technology specialists

6   (between them with over 55 years of experience) and a dedicated e-discovery attorney. Stueve

7   Siegel Hanson has a sophisticated, onsite, enterprise-level document management and e-

8   discovery system, and has invested in technology and software comparable to or more advanced

9   than that of most large national law firms. The firm regularly handles cases where millions of

10  documents are exchanged. And the firm is no stranger to advancing significant costs to prosecute

11  a case. In just the last few years, the firm has advanced millions of dollars in litigation costs in

12  the prosecution of large class or multi-party cases, on a pure contingency basis. The firm has

13  never sought funding or financing from a litigation funding company.

14      10.     As a result of my directly relevant experience in *Target* and *Home Depot*, the

15  resources my firm can bring to bear on this case, and considering the factors set forth by this

16  Court and contained in Fed.R.Civ.P. 23(g), I believe I am well suited to serve in a leadership role

17  in this case. At the request of Ms. Cervantez and Mr. Friedman, my firm has already initiated the

18  process of compiling and vetting potential plaintiffs to serve as class representatives thereby

19  ensuring that an Amended Complaint can be filed consistent with the proposed schedule.

20  Moreover, my relationship with industry experts, understanding of the relevant legal issues and

21  sharing of work product (including, for example, the extensive 50-state law research my firm

22

23  [9] *Berry v. Volkswagen Grp. of Am., Inc.*, 397 S.W.3d 425, 437 (Mo. 2013) (quoting trial court).

24  [10] *Bruner v. Sprint/United Mgmt.*, Nos. 07-2164-KHV, 08-2133-KHV, 08-2149-KHV, 2009 WL

25  2058762, at *7-8 (D. Kan. July 14, 2009); *see also Parkinson v. Hyundai Motor Am.*, 796 F.
    Supp. 2d 1160, 1175 (C.D. Cal. 2010) ("counsel was skilled at navigating the complexities of the
    case [a nationwide consumer class action]."); *Roy v. Hyundai Motor Am., Inc.*, No. 05-00483,

26  Dkt. No. 87, at 2 (C.D. Cal. Apr. 10, 2006) ("Plaintiff's counsel skillfully presented Class
    members' claims while opposed by a large and sophisticated company represented by

27  experienced litigators.").

28

4

DECLARATION OF NORMAN E. SIEGEL IN SUPPORT OF MOTION FOR APPOINTMENT OF
EVE H. CERVANTEZ AND ANDREW N. FRIEDMAN AS PLAINTIFFS' LEAD COUNSEL AND APPOINTMENT OF
NORMAN E. SIEGEL TO PLAINTIFFS' STEERING COMMITTEE     **Case No. 15-MD-02617-LHK**

recently conducted in *Target* and *Home Depot*) will create synergies and efficiencies for the proposed leadership team here.

11. My firm has also undertaken substantial work identifying, investigating, and prosecuting potential claims in this action. Prior to consolidation, my firm interviewed dozens of potential plaintiffs, examined various potential causes of action, and ultimately filed class action lawsuits in California. Stueve Siegel Hanson currently represents 24 Anthem victims in 11 states and continues to vet claims on behalf of scores of Anthem customers that have contacted the firm in the last several weeks.

12. I will personally act as the lead attorney for Stueve Siegel Hanson in this case. Other lawyers and staff at Stueve Siegel, including attorneys Barrett Vahle and Austin Moore, have worked extensively in the data breach field including on both the *Target* and *Home Depot* matters. My firm and I are dedicated to working cooperatively with the proposed Co-Lead Counsel and all counsel in this litigation. In nearly 15 years of litigating MDLs and class actions, Stueve Siegel Hanson has never had to burden a court with a disagreement among co-counsel. The firm prizes its working relationships with co-counsel and has a proud history of cooperatively litigating cases in the spirit of Fed. R. Civ. P. 1 and the guidelines set forth in the Manual for Complex Litigation.

Under penalty of perjury pursuant to 28 U.S.C. § 1746, I declare the foregoing is true and correct.

Dated:  August 20, 2015 in Kansas City, Missouri

_____/s/ Norman E. Siegel_____
Norman E. Siegel

EXHIBIT 1

# Stueve · Siegel · Hanson

**LLP**



## Representing Corporate and Individual Plaintiffs Nationwide in Complex Litigation

**Kansas City**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
(816) 714-7100

**San Diego**
550 West C Street, Suite 1750
San Diego, California 92101
(619) 400-5822

**New York**
1359 Broadway, Suite 2001
New York, New York 10018
(212) 999-7370

www.stuevesiegel.com

### FIRM OVERVIEW

Stueve Siegel Hanson LLP was founded in 2001 by lawyers who formerly practiced at large national law firms. The Firm now boasts more than thirty lawyers between its offices in Kansas City, San Diego and New York. The Firm is rated AV, and its lawyers have accumulated numerous local, regional, and national awards for their successes and dedication to the practice. Many of our lawyers formerly served as government lawyers or law clerks including several who served on the Eighth Circuit Court of Appeals, the Tenth Circuit Court of Appeals and federal district courts in Missouri and Kansas. Stueve Siegel Hanson represents plaintiffs and defendants in complex business, class action, securities, wage and hour, environmental, data breach and product liability litigation and trials.

Since opening our doors in 2001, Stueve Siegel Hanson has obtained substantial results in a wide range of complex commercial, class, and collective actions while serving as lead or co-lead counsel.

### Class and Collective Actions

- Obtaining up to $220 million in damages for all Missouri residents who purchased the prescription pain reliever Vioxx before it was removed from the market;

- Obtaining over $75 million in relief for purchasers of Hyundai vehicles for Hyundai's overstatement of horsepower in vehicles;

- Obtaining a $73 million settlement for unpaid overtime on behalf of Bank of America employees;

- Obtaining $53.5 million in settlements between a class of direct purchasers of automotive lighting products and several manufacturers accused of participating in a wide-ranging price fixing scheme;

- Obtaining over $44 million in restitution and $7.9 million in cash for dentists against Align Technology, Inc. in a nationwide deceptive trade practices case;

- Obtaining $39.5 million in settlements from three refiners on behalf of adjacent home owners who were living above a large plume of gasoline leaked from the refineries and connecting pipelines;

- Obtaining $35 million in relief for consumer fraud and antitrust claims brought on behalf of retail customers of pre-filled propane tanks;

- Obtaining $33 million in relief for owners of Mitsubishi and Chrysler owners related to defective wheel rims;



- Obtaining $33 million in nationwide class action alleging price fixing for certain polyurethanes in Urethanes antitrust case;

- Obtaining $29.5 million in settlements for overdraft fees charged to customers from UMB Bank, Bank of Oklahoma and Intrust Bank;

- Obtaining $25.4 million for purchasers of H&R Block's Express IRA product related to allegedly false representations made during the sales presentation;

- Obtaining $10 million and extensive injunctive relief on behalf of victims of the Target data breach;

- Obtaining a $7.7 million nationwide settlement after the Court certified a nationwide class of cable & wireless customers who had been overcharged PICC fees; and

- Obtaining $7.2 million in relief for Sprint customers affected by Sprint's practice of improperly charging "casual caller" rates.

### Data Breach Actions

Stueve Siegel Hanson has been at the forefront of the emerging area of privacy and data breach actions. Partner Norman Siegel has been appointed to lead two of the largest data breach cases to date – *In re Target Corporation Customer Data Security Breach Litigation*, MDL No. 2522, before the Hon. Paul A. Magnuson (D. Minn.) and *In Re: The Home Depot, Inc., Customer Data Security Breach Litigation*, MDL No. 2583, before the Hon. Thomas W. Thrash (N.D. Ga.). The firm also represents clients in *In Re: Lenovo Adware Litigation*, MDL No. 2624 and *In Re: United States Office of Personnel Management Cyber-Security Incidents*, MDL No. 2664.

In *Target*, the firm helped secure the largest data breach settlement on record – $10 million for victims of the breach in addition to substantial injunctive relief requiring Target to maintain state-of-the-art systems to protect customers' data.

Mr. Siegel co-founded the American Association for Justice's Consumer Privacy and Data Breach Litigation Group and currently serves as the group's Co-Chair.

### Securities Actions

Stueve Siegel Hanson has obtained substantial results in a wide range of class and individual securities cases, including cases involving misrepresentations, suitability, and non-disclosure. Lawyers at the firm have prosecuted securities claims in a variety of state and federal courts and before the Securities and Exchange Commission, the Financial Industry Regulatory Authority (FINRA), and state regulatory agencies.

**Stueve · Siegel · Hanson**
LLP

The firm has acted as lead counsel in a number of cases alleging violations of the securities laws. Stueve Siegel Hanson is currently liaison counsel on behalf of a nationwide class asserting federal securities claims against Sprint Nextel. Stueve Siegel Hanson represented investors in connection with the collapse of the $330 billion auction rate securities market, including being named as lead class counsel in PSLRA cases against JP Morgan, Oppenheimer, E*Trade, UBS, Wachovia and Deutsche Bank – all pending in the United States District Court for the Southern District of New York. Stueve Siegel Hanson was also appointed as co-lead counsel in litigation against H&R Block in connection with the sale of its Express IRA product.

In addition to leadership roles in class cases, Stueve Siegel Hanson has litigated a variety of unique securities claims on behalf of clients that do not fit the typical mold. The firm's recent litigation against Brown Brothers Harriman and George K. Baum brought together over a dozen rural telephone companies to redress their failed investment in the $600 million Crossroads Wireless project. In those cases, the firm elected to pursue a strategy under state securities law, rather than the Security Exchange Acts.

Stueve Siegel is currently and has historically represented states and other governmental entities. The firm understands the dynamics in representing governmental interests as many of our lawyers have worked in government before going into private practice. After returning to private practice, the attorneys at Stueve Siegel Hanson continue to be "go to" lawyers for public entities in the region. Below is a snapshot of myriad cases where the firm has represented governmental agencies in securities-related actions.

**National Credit Union Administration:** Stueve Siegel Hanson currently represents the National Credit Union Administration, which is the federal agency that regulates credit unions. On behalf of NCUA, Stueve Siegel Hanson is prosecuting securities actions against Defendants including RBS Securities, Inc., Credit Suisse, Morgan Stanley, UBS and Wachovia, alleging federal securities causes of action related to the misleading sale of mortgage-backed securities to federal credit unions. Similar lawsuits against JP Morgan, Bear Stearns and Washington Mutual were recently settled.

**KPERS:** In September 2009, following a competitive RFP process, Stueve Siegel was the only local law firm selected by the Kansas Public Employees Retirement System ("KPERS") Board of Directors to provide KPERS with securities monitoring and contingency litigation services. With its co-counsel, Stueve Siegel currently is pursuing high-stakes litigation on behalf of the pension fund.

**Kansas City Public School Retirement System:** Stueve Siegel was recently retained by the Kansas City Public School Retirement System to provide it with securities monitoring and contingency litigation services.

**Jackson County, Missouri:** In addition to its work in Kansas, Stueve Siegel is litigation counsel for Jackson County, Missouri, in the county's class-action case against Mortgage Electronic Registration Systems, Inc. ("MERS") and its affiliated members.



In addition to this direct experience, Stueve Siegel frequently litigates cases involving interaction and coordination with federal and state agencies, the Securities and Exchange Commission and federal and state labor departments. The firm has worked alongside attorneys general from several states, including coordinating with the office of then-New York Attorney General Andrew Cuomo and Mississippi Attorney General Jim Hood.

### Antitrust Litigation

Since its founding more than a decade ago, antitrust and unfair competition litigation has been a core practice area for Stueve Siegel Hanson. Our attorneys have and continue to represent clients on a broad range of antitrust law claims including:

- Price fixing
- Supply fixing
- Bid-rigging
- Monopolization
- Conspiracy to restrain trade
- Attempts to boycott
- Tying arrangements and
- Franchise, licensing and intellectual property claims involving antitrust issues

Stueve Siegel Hanson spends a significant amount of time investigating potential antitrust claims and advising clients on antitrust issues. These antitrust investigations have included work on behalf of individuals, small companies and some of the country's largest corporations.  Prior to undertaking the substantial time involved in an antitrust lawsuit, we want to ensure that our client fully understands the unique risks and costs associated with prosecuting an antitrust claim. It is not unusual that we work with our clients for many weeks and months to develop the factual bases needed for a complaint to successfully survive the inevitable motion to dismiss.

We pride ourselves on the thoroughness of our investigations. We believe that such investigations are essential to a client making a fully-informed decision on whether to proceed with a state or federal antitrust claim or whether there are other, more efficient ways to accomplish the client's end goals.

While Stueve Siegel has significant experience in class action antitrust cases, one of the most unique aspects about Stueve Siegel is its lengthy history of prosecuting antitrust litigation on behalf of individuals or companies.

For example, in 2008, Stueve Siegel settled multi-million dollar antitrust claims brought on behalf of Heartland Spine & Specialty Hospital, a physician-owned hospital, against the largest managed care organizations (MCOs) and hospitals in the Kansas City area. The lawsuit alleged that the dominant hospital systems conspired amongst themselves and with the dominant MCOs to prevent Heartland from obtaining in-network provider

**Stueve · Siegel · Hanson**

LLP

contracts.  This was one of the largest antitrust cases ever filed in the United States District Court for the District of Kansas and ultimately involved approximately 100 depositions and millions of pages of documents—all handled in-house by Stueve Siegel's lawyers and staff. The lawsuit settled with all Defendants after the District Court denied defendants' summary judgment motions.

Below is a brief sample of Stueve Siegel's current and recently resolved individual antitrust and unfair competitive cases, including:

- *Associated Wholesale Grocers, Inc., et al. v. United Egg Producers, et al.* — confidential settlements resolved litigation on behalf of Associated Wholesale Grocers, Inc., a multi-billion dollar grocery wholesaler, and local grocery stores in an antitrust lawsuit filed in Kansas state court against twenty egg producers and egg industry trade groups for artificial inflation of egg prices and supply fixing;

- *Associated Wholesale Grocers, Inc., v. United Potato Growers of America, Inc., et al.* — representing Associated Wholesale Grocers, Inc. in an individual antitrust suit against the country's largest potato growers and shippers alleging that these defendants fixed the price of fresh and processed potatoes;

- *Radon Sport, Inc. v. Sports Car Club of America et al.* — represented Radon Sport, Inc. in an antitrust action against several race cars manufacturers and the industry's sanctioning body. The plaintiff alleged that the defendants had engaged in a long-running conspiracy to prevent them from entering the market for Formula Continental race cars;

- *Seaboard Corporation v. Marsh Inc. & American International Group* — represented Seaboard, a Fortune 500 Company, in litigation filed in Kansas state court involving anticompetitive bid-rigging conduct between Seaboard's insurance broker and insurance companies. A confidential settlement was reached in 2012;

- *Formula One Licensing B.V. v. Purple Interactive Limited* — represented a London, England based defendant who countersued the sponsors of the licensing for Formula One in the Northern District of California for violating Sections 1 and 2 of the Sherman Act. The antitrust claims involved conspiracy in restraint of trade and illegal monopolization claims, all related to the operation, management, and internet presence of the Formula One World Championship. During the course of the litigation, Stueve Siegel deposed the key executives of Formula One Racing, including Bernie Ecclestone, the founder of Formula One.  After successfully defeating a motion to dismiss and partial summary judgment motion, the case resulted in a confidential settlement only a few weeks from trial;

**Stueve · Siegel · Hanson**
LLP

- *Global Jet v. Flight Safety International* — prosecuted a Sherman Act Section 1 claim alleging conspiracy to restrain trade against a Berkshire Hathaway subsidiary in the Federal District Court for the Eastern District New York. The case resulted in a confidential settlement;

- *United States v. Smigel* — Stueve Siegel obtained a not guilty verdict in the United States District Court for the Southern District of Texas for the president of a metal building insulation company accused of criminal violations of the federal antitrust laws.  The not guilty verdict came after a seven week jury trial and involved more than 50 government and defense witnesses; and

- *American Central v. Union Pacific Resources* — Stueve Siegel secured a favorable arbitration decision and trial court judgment in favor of Duke Energy Corporation in an antitrust case involving the natural gas gathering, processing and liquids pipeline industries.

Stueve Siegel's current and recently resolved class action antitrust and unfair competition cases include:

- *In re: Aftermarket Automotive Lighting Products Antitrust Litigation* — appointed as Lead Counsel in a nationwide price fixing conspiracy class action in the United States District Court for the Central District of California. Settlements obtained for the Class total more than $53 million;

- *In re: Aftermarket Automotive Sheet Metal Parts Antitrust Litigation* — appointed as Lead Counsel in a nationwide price fixing conspiracy class action in the United States District Court for the Eastern District of Wisconsin;

- *In re Visa/MC Interchange Fee Antitrust Litigation* — serve on the Executive Committee for plaintiff merchants in this nationwide class action against Visa and MasterCard for conspiring to fix the interchange fee charged to merchants;

- *In re Korean Air Passenger Surcharge Antitrust Litigation* — serve as plaintiffs' counsel in this nationwide class action against airlines that conspired to fix certain surcharges to passengers;

- *In re: Pre-Filled Propane Tank Marketing & Sales Practices Litigation* — appointed as Lead Counsel for multidistrict antitrust litigation in the United States District Court for the Western District of Missouri alleging Ferrellgas and AmeriGas conspired to reduce the fill levels of retail propane tanks. Stueve Siegel negotiated a $9 million class settlement with AmeriGas and a $25 million settlement with Ferrellgas;

- *Leiszler v. Align Technology, Inc.* — appointed as Lead Counsel in a nationwide unfair competition class action representing more than 22,000



Stueve · Siegel · Hanson
LLP

dentists against Invisalign in the United States District Court for the Northern District of California. The settlement in this lawsuit gave a 100% recovery to the class, with a value of more than $50 million in cash and non-cash relief; and

- *In re Urethanes Antitrust Litigation* — served as co-lead counsel for this nationwide class action alleging price fixing for certain polyurethanes. The case settled for over $33 million after four years of litigation.

Success in prosecuting an antitrust case stems directly from the quality of the attorneys prosecuting these cases. Our attorneys are repeatedly recognized by their peers for their excellence in publications including *Best Lawyers in America*, *Super Lawyers*, *Benchmark Plaintiffs*, and *Lawdragon Magazine*.

Our attorneys also uniquely bring extensive experience working with governmental agencies. Norman Siegel, one of Stueve Siegel's founding partners, worked as an Assistant Attorney General for the State of Missouri under then Attorney General Jay Nixon, now Missouri Governor Jay Nixon.

Former Kansas Attorney General Steve Six joined Stueve Siegel's litigation team after finishing his term as the 43rd Attorney General for the State of Kansas. In his role as the Kansas Attorney General, Steve was directly involved in investigative efforts into the potential impacts of two mergers: the merger between JBS and National Beef; and Verizon's acquisition of Alltel.  In investigating the impact these mergers would have on Kansas, Steve worked directly with the Antitrust Division of the Department of Justice in filing suit to block or modify both of the mergers.

### Commercial Litigation

In addition to the cases discussed above, Stueve Siegel Hanson has a strong history of representing individuals and companies in commercial litigation in courts throughout the country, including:

- *Seaboard Corporation et al. v. Grindrod Limited et al.* - A confidential settlement was reached in this suit alleging fraud, breach of fiduciary duties, misappropriation of corporate opportunities, tortious interference and civil conspiracy.

- Overlap, Inc. Software Litigation - Multiple confidential settlements for our client, a computer software developer, for claims alleging breach of software license, fraud and negligent misrepresentation.

- *Kansas State University:* Stueve Siegel has represented Kansas State University in multi-million dollar contract litigation brought by the University against its former head football coach. The firm previously represented Kansas State University in

**Stueve · Siegel · Hanson**
LLP

connection with a dispute with a global energy company's performance under a complex energy agreement.

### A TRIAL FIRM

Stueve Siegel Hanson prides itself in obtaining substantial results at trial. Some of our recent courtroom victories include:

- An arbitration award in a $70 million bet the company Fraud and Deceptive Trade Practices Act case for a family-owned franchiser headquartered in Phoenix, Arizona;

- A $24 million jury verdict on behalf of independent contractor agents against State Farm in a breach of contract and tortious interference case;

- A $7.1 million jury verdict against one of the country's largest securities brokers, A.G. Edwards & Sons, in a breach of contract and fraud case;

- A $3.5 million jury verdict and attorneys' fee award against the world's largest manufacturer of recreational boats in a fraud and breach of contract case;

- A $1.6 million jury verdict against a major paint and coating supplier in a negligent misrepresentation case;

- A $1.5 million award after trial of a fraudulent transfer claim on behalf of a bankruptcy trustee;

- A jury verdict in favor of workers at a Tyson Foods meatpacking facility in Holcomb, Kansas for violation of federal and state labor and wage laws;

- Multiple arbitration awards in favor of thousands of employees in arbitrations of wage and hour claims;

- A $660,000 verdict in a fraud and breach of contract claim and a verdict in favor of our client in a breach of fiduciary counterclaim;

- A defense verdict for a client defending a multi-million dollar tort claim; and

- A defense verdict in a high-profile white collar criminal price fixing case following an eight week trial.

**Stueve · Siegel · Hanson**

LLP

## REPRESENTATIVE CASES

### Consumer Fraud

*Plubell v. Merck & Co.*, Case No. 04-CV-235817, Circuit Court of Jackson County, Missouri at Independence (consumer fraud class action alleging unlawful and unfair business practices under the Missouri Merchandising Practices Act; up to $220 million settlement approved).

*Powers Law Offices, P.C. v. Cable and Wireless USA, Inc.*, Case No. 99-CV-12007 EFH, United State District Court for the District of Massachusetts (consumer fraud case alleging Cable & Wireless overcharged PICC fees; $7.7 million settlement approved).

*Sadowski v. General Motors Corp.*, Case No. HG03091369, Superior Court for Alameda County, California (consumer protection case alleging that Dex-Cool degraded certain vehicles' intake manifold gaskets and other engine salability components, and that in certain other vehicles, Dex-Cool formed a rusty sludge, clogging the vehicles' cooling systems and causing vehicles to overheat; substantial monetary settlement approved in March 2008).

*In Re: H&R Block, Inc. Express IRA Marketing Litigation*, Case No. 4:06-md-01786-RED, United States District Court for the Western District of Missouri (consumer protection case alleging H&R Block improperly marketed and sold its Express IRA product; $25.4 million class settlement approved May 2010).

*Hyundai Horsepower Litigation*, Case No. 02CC00303, Superior Court for Orange County, California (consumer claims alleging Hyundai overstated horsepower ratings in more than 1 million vehicles sold in the United States over a 10 year period; settlement approved valued at between $75-$125 million).

*Parkinson v. Hyundai Motor America*, Case No. 8:06-cv-345-AHS, United States District Court for the Central District of California (consumer protection case alleging Hyundai knowingly sold vehicles with defective flywheel systems; class settlement for reimbursement of repair expenses approved in April 2010).

*Tadken v. Mitsubishi Motor Sales of America, Daily v. Daimler Chrysler Motors Corp.*, Case No. 03CC00484, Circuit Court of Jackson County, Missouri (consumer protection case alleging Mitsubishi and Chrysler sold defective 17 inch rims installed on approximately 350,000 Daimler/Chrysler Avenger and Sebring Coupes and Mitsubishi Eclipse and Eclipse Spyder vehicles; approved settlement valued at $33 million).

*Cromwell v. Sprint Communications Co., LP*, Case No. 99-2125, United States District Court for the District of Kansas (consumer fraud case alleging Sprint improperly charged casual caller rates for "direct-dialed" long-distance calls; $7.2 million settlement approved).

*In re: Underfilled Propane Tank Litigation*, Case No. 4:09-md-02086-GAF, United States District Court for the Western District of Missouri (MDL consumer protection case alleging Ferrellgas and AmeriGas conspired to reduce the fill levels of retail propane tanks; $35 million in settlements approved).

**Stueve · Siegel · Hanson**
LLP

*Lewin v. Volkswagen of America, Inc.,* Case No. L-3562-02, Superior Court of New Jersey, Atlantic County (consumer case against Volkswagen for defective window regulators installed on nearly 1 million vehicles; the value of the settlement including the replacement costs and extended warranty could exceed $50 million).

*Eaton, et. al v. Bank of Oklahoma, N.A.,* Case No. CJ-2010-05209, in the District Court in and For Tulsa County State of Oklahoma (case based on Bank of Oklahoma's alleged unfair and deceptive overdraft fee practices; $19 million settlement).

*Allen et al. v. UMB Bank, N.A.,* Case No. 1016-CV34791, in the Circuit Court of Jackson County, Missouri at Kansas City (case based on UMB's alleged unfair and deceptive overdraft fee practices; $7.8 million settlement).

*Molina et al. v. Intrust Bank, N.A.,* Case No. 10-CV-3686, in the Eighteenth Judicial District, District Court, Sedgwick County, Kansas (case based on Intrust Bank's alleged unfair and deceptive overdraft fee practices; $2.75 million settlement).

## Environmental

*Henry, et al., v. The Dow Chemical Co.,* Case No. 03-47775-NZ, in the Circuit Court for Saginaw County, Michigan (environmental litigation case alleging Dow Chemical contaminated the Tittabawassee River in Saginaw County, Michigan lowering property values and interfering with the use and enjoyment of property; case pending).

*Hopkins v. Premcor, et al.,* Case No. 03-L-1053, Circuit Court of Madison County, Illinois (environmental class action litigation alleging several refiners caused a four-million-gallon underground gasoline plume in Hartford, Illinois; $39.5 million settlement approved).

## Unpaid Wages/FLSA

*Wass et al. v. NPC International, Inc.,* Case No. 09-CV-2254, United States District Court District of Kansas (class action representing pizza delivery drivers in violation of minimum wage laws; confidential settlement).

*Sanchez et al. v. Echosphere LLC, et al.,* Case No. 4:09-cv-00329, United States District Court Northern District of Oklahoma (collective action arbitration on behalf of customer service representatives for unpaid wages and overtime worked at call centers; arbitration win).

*In re: Bank of America Wage and Hour Employment Practices Litigation,* MDL No. 2138, United States District Court for the District of Kansas (lead counsel in nationwide MDL wage and hour case alleging that Bank of America failed to pay for all time worked and to comply with state law; $73 million settlement reached in 2014).

*Qualls v. Sanofi-Aventis*, Case No. 06-0435-CV-W-REL, United States District Court for the Western District of Missouri (FLSA case alleging Sanofi-Aventis failed to pay manufacturing and packaging operators for work duties pre- and post-shift; confidential settlement reached in 2006).



*Carson v. Bank of Blue Valley, Inc.*, Case No. 04-2507-CM, United States District Court District of Kansas (FLSA case seeking unpaid overtime pay on behalf of loan originators; settlement of more than $1 million reached in November 2005).

*McLean v. CenturyTel, et al.,* Case No. 3:08CV0865, United States District Court for the Western District of Louisiana (FLSA case alleging CenturyTel denied wages and overtime pay to its telephone-dedicated employees working in its call center facilities; confidential settlement reached in July 2009).

*West v. First Franklin Financial Corp.*, Case No.  06-2064-KHV/JPO, United States District Court District of Kansas (FLSA and California Rule 23 case against First Franklin Corporation on behalf of loan account managers for unpaid wages; settlement of $7.7 million reached in 2007).

*Carrell, et al. v. Gateway, Inc.,* Case No. 02-964-CV-W-DW, United States District Court for the Western District of Missouri (FLSA case against Gateway Computer that alleged Gateway failed to pay overtime to certain call center employees; confidential settlement).

*Stefaniak, et al. v. HSBC Bank USA Inc.,* Case No. 05 CV 6528, United States District Court for the Southern District of New York (FLSA and New York state law Rule 23 case alleging HSBC Bank was not compensating workers for the full amount of time spent on the job; $2.9 million settlement approved in July 2008).

*Teeter v. NCR Corporation*, Case No. EDCV08-D0297, United States District Court for the Central District of California (FLSA and California Rule 23 case for NCR's failure to accurately record all time worked and failure to pay earned wages and provide uninterrupted meal breaks to its customer engineers; settlement was reached in February 2009).

*Perry v. National City,* Case No. 05-cv-891-DRH, United States District Court for the Southern District of Illinois (FLSA case representing current and former loan officers employed by National City Bank for unpaid overtime wages; settlement reached for $27.5 million in 2007).

*Brown, et al. v. National Bank of Kansas City,* Case No. 04-2510-CM/JPO, United States District Court District of Kansas (FLSA case representing loan originators employed by National Bank of Kansas City for unpaid overtime; confidential settlement approved in January 2006).

*Davis, et al. v. Novastar Mortgage, Inc.* Case No. 04-0956-CV-W-FJG, United States District Court for the Western District of Missouri (FLSA case against NovaStar Mortgage Company on behalf of loan officers for unpaid wages; court-approved settlement was reached in 2006).

*Johns v. Panera Bread Company et al.*, Case No.4:08CV1105 (JCH), United States District Court for the Eastern District of Missouri Eastern Division (FLSA case alleged Panera failed to pay its managerial employees for all overtime worked; settlement reached in February 2009).

*Horn, et al. v. Principal Financial Group, et al.*, Case No. 2:05-cv-2032 KHV-DJW, United States District Court District of Kansas (FLSA collection action against the Principal Residential



Stueve · Siegel · Hanson
LLP

Mortgage that alleged the bank failed to pay overtime to mortgage loan originators; a confidential settlement was reached in 2005).

*Garner v. Regis Corporation*, Case No. 03-5037-CV-SW-SWH, United States District Court for the Western District of Missouri (FLSA case on behalf of approximately 1,300 current and former salon managers and stylists in a certified wage and hour collective action against Regis Corporation; Court-approved confidential settlement was reached in June 2006).

*Bruner, et al. v. Sprint Nextel Corporation et al.,* Case No. 07-cv-2164 KHV, United States District Court District of Kansas (FLSA collective action against Sprint seeking unpaid wages and overtime on behalf of call center representatives; settlement approved in 2009).

*Hernandez, et al. v. Texas Capital Bank, N.A.,* Case No. 07-00726-CV-W-ODS, United States District Court for the Western District of Missouri (FLSA case against Texas Capital Bank on behalf of loan officers and branch managers to recover unpaid wages and overtime pay; case was settled in 2008).

*Wells Fargo Overtime Litigation*. As lead counsel, represented a class of loan originator plaintiffs in multidistrict wage and hour litigation consolidated in the Northern District of California. *In Re Wells Fargo Home Mortgage Overtime Litigation*, Case No. 06-1770-MHP (settled for $7.2 million in 2011). Also, lead counsel in separate multi-district wage and hour litigation pending in the Northern District of California involving a putative class of Wells Fargo loan processors. *In Re Wells Fargo Loan Processor Overtime Pay Litigation*, Case No. 1841 (MHP).

We are proud of our successes and our focus on results. Our mission is the same whether our clients are a class of employees or consumers, or Fortune 100 companies. More information about our commitment to results can be found on our website: *www.stuevesiegel.com.*



**Stueve · Siegel · Hanson**

LLP



The Right Contingency.

EXHIBIT H

1   Michael W. Sobol (State Bar No. 194857)
    msobol@lchb.com
2   Nicole D. Sugnet (State Bar No. 246255)
    nsugnet@lchb.com
3   RoseMarie Maliekel (State Bar No. 276036)
    rmaliekel@lchb.com
4   LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
    275 Battery Street, 29th Floor
5   San Francisco, CA  94111-3339
    Telephone:  (415) 956-1000
6   Facsimile:   (415) 956-1008

7   *Attorneys for Plaintiff Laura Fowles and the Proposed Class*

8

9

10

11                  UNITED STATES DISTRICT COURT

12                NORTHERN DISTRICT OF CALIFORNIA

13                       SAN JOSE DIVISION

14

15   IN RE ANTHEM, INC. DATA BREACH        Case No. 15-MD-02617-LHK
     LITIGATION
16                                         **DECLARATION OF MICHAEL W.
                          .                SOBOL IN SUPPORT OF MOTION FOR
17                                         APPOINTMENT OF EVE H. CERVANTEZ
                                           AND ANDREW N. FRIEDMAN AS
18                                         PLAINTIFFS' LEAD COUNSEL AND A
                                           STEERING COMMITTEE**
19
                                           Date: September 10, 2015
20                                         Time: 1:30 p.m.
                                           Judge: Honorable Lucy H. Koh
21                                         Courtroom: 8, 4th Floor

22                                         [Fed. R. Civ. P. 23(g)]

23

24

25

26

27

28

1268678.1

I, Michael W. Sobol, declare as follows:

1.     I am a member in good standing of the California State Bar and a partner in the law firm of Lieff Cabraser Heimann & Bernstein, LLP ("LCHB"), counsel for the plaintiff Laura Fowles in *Fowles v. Anthem, Inc.*, Case No. 15-cv-02249.  I am submitting this declaration in support of the Motion for Appointment of Eve H. Cervantez and Andrew N. Friedman as Plaintiffs' Lead Counsel and a Steering Committee.  I have personal knowledge of the matters set forth herein, and could and would testify competently thereto if called upon to do so.

2.     I am a 1989 graduate of Boston University School of Law.  I practiced law in Massachusetts from 1989 to 1997.  From 1995 through 1997, I was a Lecturer in Law at Boston University School of Law.  In 1997, I left my position as partner in the Boston firm of Shafner, Gilleran & Mortensen, P.C. to move to San Francisco, where I joined LCHB.  Since joining LCHB in 1997, I have almost exclusively represented plaintiffs in consumer protection and privacy class actions.  I have been a partner with LCHB since 1999.   I am in my thirteenth year as chair of LCHB's consumer practice group.  I have served as plaintiffs' class counsel in numerous nationwide class action cases, serving as lead counsel in numerous cases.  My detailed biography is available at http://www.lieffcabraser.com/Attorneys/Michael-W-Sobol.shtml.

## I.     Demonstrated Leadership in Multi-District Litigation

3.     I have substantial experience serving in court-appointed leadership roles in multi-district litigation throughout the country.  A more detailed resume listing my and my firm's experience in multi-district and other complex litigation may be found at http://www.lchbdocs.com/pdf/firm-resume.pdf.  By way of example only, multi-district litigation in which I played a key role includes the following:

- I served on the Plaintiffs' Executive Committee in *In re Checking Account Overdraft Litigation*, MDL 2036 (S.D. Fla.), a multi-district proceeding involving more than two dozen banks and allegations of unfair practices and false representations in connection with the banks' imposition of overdraft fees.  Class settlements totaling over a billion dollar have been approved by the court to date.  In 2012, I was named as a finalist for Trial Lawyer of the Year by Public Justice for my work in this litigation.  The same year, I was named a finalist by the

1   Consumer Attorneys of California ("CAOC") for the Consumer Attorney of the Year award for

2   my work in the *Yourke v. Bank of America*, a case that was a part of the MDL which resulted in a

3   settlement of $410 million.

4   •   I served as Plaintiffs' Liaison Counsel and on the Plaintiffs' Executive Committee

5   in *In re Chase Bank USA, N.A. "Check Loan" Contract Litigation*, MDL No. 2032 (N.D. Cal.), a

6   nationwide Multi-District class action alleging that Chase breached its good faith obligation to

7   credit cardholders by modifying the terms of their long-term fixed rate loans.  In November 2012,

8   the court granted final approval to a $100 million nationwide settlement that provides direct

9   payments to approximately one million cardholders and important injunctive relief.  In 2013, I

10   was named a finalist for CAOC's Consumer Attorney of the Year award for my efforts in this

11   litigation.

12   **II.    Expertise in Data Breach and Privacy Cases**

13   4.    As the chair of my firm's consumer protection practice group, I have developed an

14   expertise in privacy cases, including data breach cases.  For example, I currently play or have

15   played leadership roles in the following privacy cases:

16   •   *Corona v. Sony Pictures Entertainment, Inc.*, No. 14-cv-9600 (C.D. Cal.).  LCHB

17   was appointed Interim Co-Lead Class Counsel in a class action arising out of a breach of Sony's

18   computer networks.  The breach was unprecedented in that highly-sensitive and personally

19   identifiable information of thousands of Sony employees was stolen and made public, exposing

20   class members to long-term risk of identity theft and credit fraud.  The Plaintiffs successfully

21   defeated Sony's motion to dismiss and recently filed their motion for class certification.

22   •   *Campbell v. Facebook*, No. 13-cv-5996 (N.D. Cal.).  LCHB was appointed Co-

23   Lead Counsel and Plaintiffs' Liaison Counsel in a nationwide class action lawsuit alleging that

24   Facebook intercepts private data in users' personal and private e-mail messages on the social

25   network and profits by sharing that information with third parties.  Among other work, I took the

26   lead on drafting Plaintiffs' successful opposition to Facebook's motion to dismiss.

27   •   *In re Google Inc. Street View Electronic Communications Litigation*, No. 10-md-

28   2184 (N.D. Cal.).  Elizabeth Cabraser of my firm was appointed Liaison Counsel in a class action

SOBOL DECL. ISO MOT. FOR APPOINTMENT OF EVE
H. CERVANTEZ AND ANDREW N. FRIEDMAN AS
PLAINTIFFS' LEAD COUNSEL
**CASE NO. 5:15-MD-02617-LHK**

in which I am heavily involved, alleging that Google intentionally equipped its Google Maps "Street View" vehicles with Wi-Fi antennas and software that collected personal, private data being transmitted over private Wi-Fi networks located in homes within range of the vehicles' receptors.  LCHB took the lead on briefing and arguing Google's appeal of the court's denial of its motion to dismiss and, on September 10, 2013, the Ninth Circuit Court of Appeals agreed with plaintiffs that Google's actions are not exempt from the Wiretap Act.

• *Perkins v. LinkedIn Corporation*, No. 13-04303-HRL (N.D. Cal.).  LCHB represents plaintiffs in a class action alleging that LinkedIn improperly harvested and used consumers' email addresses and other data for commercial purposes.  Among other things, I played a lead role in negotiating a settlement and oversaw the drafting of Plaintiffs' pending motion for preliminary approval of a settlement, which was filed on June 11, 2015.  The proposed settlement includes a non-reversionary settlement fund of $13 million or more, depending on the number of claims, with guaranteed pro rata class member payments of at least $10 each.  It also includes significant business practice changes.

• *Shurtleff v. Health Net of Cal., Inc.*, No. 34-2012-00121600-CU-CL (Sacramento Cnty. Superior Court).  LCHB, along with co-counsel, represented plaintiffs in a patient privacy class action in which the defendant had lost service drives containing highly sensitive personal information of its patients and employees.  A class settlement resulted in significant monetary relief and important data security improvements.

5.     Through these and other cases, I have developed a solid knowledge of the applicable law as well as the unique issues involved in litigating privacy and data breach cases, such as the hurdles that are often involved in establishing standing and proving damages.

III.   **Experience Successfully Taking Complex Class Actions to Trial**

6.     I have experience in trying class actions to a favorable verdict.  For example, I served as co-lead class counsel and trial counsel in *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA (N.D. Cal.), a class action alleging unfair practices and false representations by Wells Fargo in connection with its imposition of overdraft charges.  In 2010, plaintiffs obtained a bench trial judgment of $203 million on behalf of a California class.  Judge Alsup noted that

1  LCHB "performed at a superior level as class trial counsel" and that LCHB's trial performance

2  "ranks as one of the best this judge has seen in sixteen years on the bench."  *Gutierrez v. Wells*

3  *Fargo Bank, N.A.*, No. C 07-05923 WHA, 2015 WL 2438274, at *1, 7 (N.D. Cal. May 21, 2015).

4  In 2013, the court reinstated the full judgment following an appeal, and in 2014 the reinstated

5  judgment was affirmed by the Ninth Circuit.  In 2011, I was named a finalist of CAOC's

6  Consumer Attorney of the Year award for my work in this case.

7  **IV.    Access to Resources Necessary to Efficiently and Timely Prosecute this MDL**

8  7.    Due in large part to LCHB's size and past successes, LCHB is fortunate to have

9  resources that many other firms do not have.  For example, LCHB has in-house litigation support

10  specialists responsible primarily for: (a) preparing and conducting trial presentations and similar

11  in-court technical productions; (b) creating, managing, and searching case-specific document and

12  information databases (*e.g.,* Summation); and (c) performing certain case-specific data analyses

13  (*e.g.,* for use in evaluating damages).  Because the personnel who make up LCHB's litigation

14  support group have extensive training and experience performing these specific and technical

15  tasks, it is more efficient and cost-effective, and in my judgment ultimately results in better work

16  product, for this sort of work to be assigned to these personnel as opposed to paralegals with other

17  areas of specialization who normally perform less technical work.  It is also less costly then

18  contracting such work out to third parties.

19  8.    As an example of the work our litigation support team has provided us with in

20  other MDLs and would likely be beneficial here, in *In re: General Motors LLC Ignition Switch*

21  *Litigation*, 14-md-02543 (S.D.N.Y.), LCHB's litigation support team created a database that

22  keeps track of and organizes the monthly time and expenses submissions from all counsel

23  involved in the MDL.  The database has several advantages, including that the monthly

24  submissions are imported automatically and no manual input is required.  In addition, many

25  different types of time and expense reports can easily and quickly be generated from the database.

26  Reports can be generated for a particular time range, a particular firm, a particular case, a

27  particular timekeeper, a type of timekeeper (*e.g.*, paralegal or attorney), by type of work done

28  (*e.g.*, expert work), or for some combination of the above.  For instance, LCHB could create a

report showing that X firm performed X hours of deposition work between January 1, 2015 and March 1, 2015.  Such timekeeping management has greatly helped in preventing duplicative work and ensuring efficiency, and will be particularly useful in this litigation to ensure that any requested attorneys' fees are reasonable.

9.     LCHB also has access to and experience in using cutting-edge technology.  For example, I have used and my staff has trained co-counsel to use predictive coding software in cases involving large volumes—millions of pages—of documents.  Predictive coding software vastly reduces the time attorneys spend reviewing documents.  It does so by (a) ensuring that the most probative documents to the claims and defenses of the case are reviewed first; (b) allowing closely related documents to be reviewed in conjunction with one another; and (c) reducing or eliminating the need to review irrelevant documents.  Such technology has enabled LCHB to prosecute complex cases on an expedited schedule and to keep costs down, and will likely be helpful to save costs and efficiently adjudicate in this MDL.

10.     LCHB also has the financial resources necessary to litigate complex MDLs such as this one.  LCHB has repeatedly contributed substantial sums in up-front assessments to fund the work of MDLs.  For example, in *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2151 (C.D. Cal.), LCHB expended well over $5 million to fund the litigation before settlements were reached.  We make such commitments with an experienced understanding of the risks and uncertainties of such litigation.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 20th day of August, 2015 at San Francisco, California.

_____
Michael W. Sobol

1268678.1

- 5 -

SOBOL DECL. ISO MOT. FOR APPOINTMENT OF EVE
H. CERVANTEZ AND ANDREW N. FRIEDMAN AS
PLAINTIFFS' LEAD COUNSEL
**CASE NO. 5:15-MD-02617-LHK**

EXHIBIT I

1  J. Gerard Stranch, IV
   TN Bar No. 23045
2  Branstetter, Stranch & Jennings, PLLC
   223 Rosa L. Parks Avenue, Suite 200
3  Nashville, Tennessee 37203
   Telephone: (615) 254-8801
4  Facsimile: (615) 255-5419
   Email: gstranch@bsjfirm.com
5          mikes@bsjfirm.com

6  *Attorney for Plaintiff Cynthia Fessia and
   Kathryn Leniski*

7

8

9

10                          UNITED STATES DISTRICT COURT
                           NORTHERN DISTRICT OF CALIFORNIA
11                               SAN JOSE DIVISION

12

13                                          Case No. 15-MD-02617-LHK
14
   **IN RE ANTHEM, INC. DATA**              **DECLARATION OF J. GERARD**
15 **BREACH LITIGATION**                    **STRANCH, IV, IN SUPPORT OF MOTION FOR APPOINTMENT OF**
                                            **EVE H. CERVANTEZ AND ANDREW N.**
16                                          **FRIEDMAN AS PLAINTIFFS' LEAD COUNSEL**
                                            **AND A STEERING COMMITTEE**
17
18                                          Date:   September 10, 2015
                                            Time:   1:30 p.m.
19                                          Judge: Lucy H. Koh

20         I, J. Gerard Stranch, IV, hereby declare, under penalty of perjury on the date and at the location

21 identified below as follows:

22         1.      I am an attorney admitted to practice law in the State of Tennessee and a member of

23 Branstetter, Stranch & Jennings, PLLC.  I am counsel to Plaintiffs Cynthia Fessia and Kathryn Leniski

24 ("Plaintiffs") in the above-captioned action, and have been admitted Pro Hac Vice to Practice in the

25 Northern District of California on their behalf. As such, I have personal knowledge of the facts set

26

27

28

1    forth herein.  I make this declaration in support of the Motion for Appointment of Eve H. Cervantez

2    and Andrew N. Friedman as Plaintiffs' Lead Counsel and a Steering Committee.

3         2.    Attached hereto as Exhibit 1 is a true and correct copy of the firm resume of Branstetter,

4    Stranch & Jennings, PLLC.

5         3.    Branstetter, Stranch & Jennings, PLLC has extensive experience advising Taft-Hartley

6    health and welfare funds and JATC apprenticeship funds on data security issues.  The firm's

7    representation of health and welfare funds with respect to privacy and similar internal matters reflects a

8    decades-long relationship with dozens of funds representing tens of thousands of employees.  Funds

9    necessarily must maintain members' confidential information, and the legal obligations surrounding

10   that obligation have become a significant area of focus for sophisticated funds.  I, as well as other

11   Branstetter attorneys are therefore in a position to bring significant knowledge of best practices in the

12   area of data security to bear in this litigation.  I have specifically advised health and welfare funds with

13   respect to HIPAA and similar privacy laws and the proper identification of the information that must

14   be maintained on "secure" systems and whether the steps they are taking are sufficient to meet their

15   legal obligations to protect the data.  I have also worked directly with vendors to health and welfare

16   funds to ensure that they properly handle sensitive information, and have created questionnaires for

17   funds to use to properly vet vendors before providing them access to sensitive information.

18        4.    I also run the firm's Class Action, Complex Litigation and Mass Tort practice group.  I

19   have won numerous honors for my work throughout the United States, including being listed as a Mid-

20   South Rising Star every year since 2009 by Super Lawyers and being named to the Top 40 Under 40

21   by the National Trial Lawyers Association since 2011.  I was a founding member of the National Trial

22   Lawyers' Class Action Trial Lawyers Association, for which I currently serve on the Executive

23   Committee.  Since 2012, I have been an adjunct professor at Vanderbilt University Law School, where

24   I have taught a class on the practice of civil litigation.  As an adjunct professor, I lecture on data

25   security from a law firm perspective, annually performing research to maintain my understanding of

26

27

28

DECLARATION OF J. GERARD STRANCH, IV IN SUPPORT OF
MOTION FOR APPOINTMENT OF EVE H. CERVANTEZ AND ANDREW N. FRIEDMAN
AS PLAINTIFFS' LEAD COUNSEL AND A STEERING COMMITTEE   **Case No. 15-MD-02617-LHK**

1  best practices.  As part of that process, I specifically cover the proper maintenance of systems to

2  safeguard confidential client information.

3      5.      I have extensive experience with complex litigation throughout the United States and

4  will be in a position to effectively address the unique tasks that such litigation entails, such as the

5  management of complex electronic discovery and the review of million-plus page document

6  productions.  One recent representative example of such litigation is *Klein v. Bain Capital Partners,*

7  *LLC*, No. 1:07-cv-12388-EFH (D. Mass.), an antitrust class action against some of the nation's largest

8  private equity firms, which settled earlier this year for $590.5 million.  I served on the Executive

9  Committee in that case and routinely serve in that role or as lead counsel for plaintiffs in complex class

10 cases, and have in that capacity recovered hundreds of millions of dollars for class members.  In *In Re:*

11 *Alpha Corp. Securities Litigation*, Civil No. 03-cv-2007-900485.00, I was co-lead counsel and we

12 resolved the state law securities case for $161 million.  In *In Re: Omnivision Technologies, Inc.*

13 *Securities Litigation*, Civil No. 5:11-cv-05235 (N.D. Cal.), I was co-lead counsel in securities litigation

14 alleging material misstatements in communications with investors related to Omnivision's supplier

15 contract with Apple, Inc.  This case settled on a class basis for $12.5 million.  In *In re: Morgan Keegan*

16 *Closed-End Fund Litigation*, Civil No. 2:07-cv-02830 (W.D. Tenn.), I served as Liason counsel in this

17 securities fraud action that was resolved for $62 million.  In *Lankford v. Dow Chemical et.al.*, No. 04-

18 1517 (Davidson Circuit, Tennessee) (Judge Shipley), I was lead counsel in a consumer and indirect

19 purchaser class action filed on behalf of Tennessee purchasers of products containing neoprene against

20 Dow Chemical Company, E.I. du Pont de Nemours and DuPont Dow Elastomers LLC alleging

21 violation of the Tennessee Consumer Protection Act and the Tennessee Trades Act.  A multi-state

22 settlement was reached that was valued at $4.2 million.  In *Clarke v. City of Franklin*, Civil No. 40851

23 (Williamson County Chancery Court, Tenn.), I am lead counsel in a case challenging the City's lien

24 program for certain sewer improvements.  After the class was certified, we prevailed on a partial

25 motion for summary judgment on all liability matters.  In *Robertson v. DSE, Inc.*, Civil No. 8:13-cv-

26 01931 (M.D. Fla.), I was lead counsel in a WARN act claim with an entity that had ceased business

27

28

and resolved the case for over $1 million for the class members.  I have also handled significant election law matters, including successfully defending *Liberty Legal v. Democratic National Committee* Civil No. 2:12-CV-02143(W.D. Tenn.), which challenged President Obama's ability to appear on the Tennessee Ballot as a presidential candidate.

6.      Examples of other cases that the Firm has handled include:

• *In re Nortel Networks Corp. "ERISA" Litigation*, No. 3:03-MD-1537 (M.D. Tenn.) (Nixon).  Co-lead counsel in a 401k/ESOP class action suit brought on behalf of pension plan participants against fiduciaries of Nortel Network Corp. for violation of duties owed under ERISA.  Court approved a settlement that provided a minimum recovery of $21.5 Million plus access to additional monies held by others.

• *In re: Qwest Savings and Investment Plan ERISA Litigation*, No. 02-RB-464, (D. Colo.) (Blackburn).  Co-lead counsel in a 401k/ESOP class action suit brought on behalf of pension plan participants against fiduciaries at Qwest Communications and the Trustee, Bankers Trust/Deutsche Bank, for violation of duties owed under ERISA.  A settlement was reached which provided a $33 million cash payment from Qwest Communications to the Plan for participants, a $4.5 million cash payment from Bankers Trust/Deutsche Bank to the Plan for participants, a $20 million guarantee from Qwest Communications from a parallel securities action with the opportunity of more cash from the parallel securities action, and an undetermined amount of cash from a distribution through the U.S. Securities and Exchange Commission Fair Fund established pursuant to Section 308 of the Sarbanes-Oxley Act of 2002, 15 U.S.C. §§7201 et seq.

• *Sherwood et al. v. Microsoft Corporation*, No. 99-C-3562 (Davidson Circuit, Tennessee) (Judge Kurtz).  Lead counsel in a consumer and indirect purchaser Tennessee class action against Microsoft Corporation alleging violation of the Tennessee Consumer Protection Act and the Tennessee Trades Act.  Settlement was reached that was valued at $64 million.

- *Ewing v. Neuhoff*, (Law and Equity Court, Montgomery County, Tennessee) (Judge Boles).  Lead counsel in a class action that resulted in a successful jury verdict against directors of Frosty Morn, Inc. for unlawful activities in running the corporation that directly impacted employee benefit plans.  Employees received 100% of their losses.  This is believed to be the first class action lawsuit tried after the Tennessee rules were amended to allow class actions.

- *Heilman et al. v. Perfection Corporation, et al.*, Civ. No. 99-0679-CD-W-6 (W.D. Missouri).  The firm served on Executive Committee in a nation-wide consumer class action composed of all persons throughout the United States who owned or purchased a hot water heater manufactured by defendants with a defective dip tube.  Settlement reached involved 100% recovery of damages for a possible 14.2 million hot water heaters and any other property damages caused by a defective hot water heater.

7.     These are merely representative examples, which demonstrate my and the firm's capacity for successfully managing every aspect of a complex case of the sort that is before this Court.  In this case, the firm is prepared to immediately commence written discovery and has the resources to expeditiously process what will doubtless be millions of documents relating to the Anthem data breach.  The firm also has significant expertise in the area of high level organizational security practices.  Michael Stewart has served as an intelligence officer with the United States Army and in that capacity developed significant knowledge regarding the proper handling of secure information.  As an intelligence officer, Mr. Stewart retained a Top Secret clearance and worked extensively within the community of specialists tasked with handling sensitive information within the military.  Mr. Stewart, in addition to having extensive experience handling multi-state complex consumer cases, is uniquely qualified to address the significant ramifications that the Anthem data breach will have for individuals in sensitive positions within government and private industry.  Past data breaches have given rise to well documented incidents in which innocent consumers saw clearances and associated employment

-5-

opportunities eliminated because of the misuse of their confidential information.  The threat of similar incidents will be an issue in this litigation, and the firm will be well positioned to research and evaluate the significant damage caused by the Anthem data breach to individuals in sensitive jobs.

I certify that the foregoing statements made by me are true pursuant to 28 U.S. Code § 1746 and that I executed this declaration in Nashville, Tennessee on August 19, 2015.


By:_____/s/ J. Gerard Stranch, IV
J. Gerard Stranch, IV

DECLARATION OF J. GERARD STRANCH, IV IN SUPPORT OF
MOTION FOR APPOINTMENT OF EVE H. CERVANTEZ AND ANDREW N. FRIEDMAN
AS PLAINTIFFS' LEAD COUNSEL AND A STEERING COMMITTEE  Case No. 15-MD-02617-LHK

EXHIBIT 1



227 Second Avenue North
Nashville, Tennessee  37201-1631
615-254-8801
Fax: 615-255-5419

## Firm Profile:

Branstetter, Stranch & Jennings, PLLC has been providing diverse legal services to its clients for over sixty years. Originally founded as Crownover, Branstetter & Folk, and now Branstetter, Stranch & Jennings, PLLC, the firm is listed in the Bar Register of Preeminent Lawyers. Currently comprised of seven (7) Members, five (5) Associates and one (1) of Counsel, the firm is dedicated to providing a full range of legal services to its diverse clientele. In addition to providing quality legal services, the firm is proud of the professional and civic leadership that its members have provided both locally and nationally. Our former Managing Partner, Jane Branstetter Stranch, was nominated by President Obama to the United States Court of Appeals for the Sixth Circuit, and now serves as judge on that court following her confirmation by the U.S. Senate.

## Year Established:
1952

## Statement of Practice:

General Litigation Practice in State, Federal and Appellate Courts; Class Actions and Complex Litigation; Mass Tort; Antitrust Law; Securities Law; Shareholder Derivative Law; Consumer Protection; Labor and Employment Law; ERISA and Pension Law; Commercial Litigation; Utility Law; Municipal Law; Personal Injury; Workers' Compensation; and, Social Security Claims.

## Noteworthy Cases:

**Branstetter, Stranch & Jennings, PLLC** has been involved in a number of class actions, shareholder derivative, securities, and other complex cases both in Tennessee courts and federal courts throughout the nation.  The firm's efforts have produced significant monetary recovery and/or benefits for plaintiffs from many jurisdictions. While the firm has also defended numerous such actions, the following is a list of notable complex litigation cases that the firm is currently prosecuting, or has prosecuted to a successful conclusion:

## ERISA AND RELATED CASES (401K, ESOP, TRUST LAW)

- Ewing et al. v. Neuhoff, et al. (Law and Equity Court, Montgomery County, Tennessee) (Judge Boles).

1

Lead counsel in a class action that resulted in a successful jury verdict against directors of Frosty Morn, Inc. for unlawful activities in running the corporation that directly impacted employee benefit plans. Employees received 100% of their losses.

- <u>In re Providian Financial Corp. ERISA Litigation</u>, No. C 01-5027 (N.D. C.A.) (Breyer). Co-lead counsel in a 401k/ESOP class action suit brought on behalf of the pension plan against fiduciaries of Providian Financial Corp. for violation of duties owed under ERISA. Settlement reached that provided an $8.6 million cash payment to the Plan for participants, lifted company stock sales restrictions in the Plan valued between $3.66 million and $5.85 million, and allowed the Plan to recover in a parallel securities action.

- <u>In re Montana Power ERISA Litigation</u>, No. 4:02-0099 (D. Mont.) (Haddon). Co-lead counsel in a 401k/ESOP class action suit brought on behalf of pension plan participants against fiduciaries of Montana Power, Touch America and Northwestern Energy and against the Trustee, Northern Trust, for violation of duties owed under ERISA. Settlement was reached that provided a minimum recovery of $4.9 million plus access to additional monies held by others.

- <u>In re Nortel Networks Corp. "ERISA" Litigation</u>, No. 3:03-MD-1537 (M.D. Tenn.) (Nixon). Co-lead counsel in a 401k/ESOP class action suit brought on behalf of pension plan participants against fiduciaries of Nortel Network Corp. for violation of duties owed under ERISA. Court approved a settlement that provided a minimum recovery of $21.5 Million plus access to additional monies held by others.

- <u>In re: Qwest Savings and Investment Plan ERISA Litigation,</u> No. 02-RB-464, (D. Colo.) (Blackburn). Co-lead counsel in a 401k/ESOP class action suit brought on behalf of pension plan participants against fiduciaries at Qwest Communications and the Trustee, Bankers Trust/Deutsche Bank, for violation of duties owed under ERISA. A settlement was reached which provided a $33 million cash payment from Qwest Communications to the Plan for participants, a $4.5 million cash payment from Bankers Trust/Deutsche Bank to the Plan for participants, a $20 million guarantee from Qwest Communications from a parallel securities action with the opportunity of more cash from the parallel securities action, and an undetermined amount of cash from a distribution through the U.S. Securities and Exchange Commission Fair Fund established pursuant to Section 308 of the Sarbanes-Oxley Act of 2002, 15 U.S.C. §§7201 *et seq.*

- <u>In re Global Crossing Ltd. ERISA Litigation</u>, No. 02 Civ. 7453 (S.D. N.Y.) (Lynch). One of several counsel in a 401k/ESOP class action suit brought on behalf of pension plan participants against fiduciaries at Global Crossing for violation of duties owed under ERISA. Settlement reached that provided a $79 million cash payment to the Plan for participants and allowed Plan to recover in parallel securities action.

- <u>In re Xcel Energy, Inc. ERISA Litigation</u> Civ. 02-2677 (D. Minn.) (Doty). Co-lead counsel in a 401k/ESOP class action suit brought on behalf of the pension plan against fiduciaries of Providian Financial Corp. for violation of duties owed under ERISA. Settlement reached that provided an $8.6 million cash payment to the Plan for participants, lifted stock restrictions in the Plan with a value between $38 million and $94 million, and allowed the Plan to recover in parallel securities action.

# ANTITRUST CASES

- <u>Plumbers & Pipefitters Local 572 Health & Welfare Fund et al. v. Bristol-Myers Squibb Co.</u>, No. 00-C-2524, (Davidson Circuit, Tennessee) (Judge Shipley).  Lead counsel in action against Bristol-Myers alleging violations of the Tennessee Consumer Protection Act and the Tennessee Trades Practice Act and other theories as a result of anti-competitive, unfair and deceptive acts and practices regarding Bristol-Myers' marketing and selling of the drug Taxol.  A global settlement was reached in conjunction with a multi-state indirect companion case in the District of Columbia.

- <u>In re: Columbia/HCA Healthcare Corporation Billing Practices Litigation</u>, No. 3-98-MDL-1227 (M. D. Tenn.) (Higgins).  The firm served as liaison counsel in a multi-district litigation brought on behalf of all third-party payers against Columbia Health Care Corporation/HCA Healthcare Corporation alleging over-billing for services.  Settlement was reached on a cash payment, modifications in billing documents and admission practices.

- <u>Sherwood et al. v. Microsoft Corporation</u>, No. 99-C-3562 (Davidson Circuit, Tennessee) (Judge Kurtz).  Lead counsel in a consumer and indirect purchaser Tennessee class action against Microsoft Corporation alleging violation of the Tennessee Consumer Protection Act and the Tennessee Trades Act.  Settlement was reached that was valued at $64 million.

- <u>Lankford v. Dow Chemical et al.,</u> No. 04-1517 (Davidson Circuit, Tennessee) (Judge Shipley).  Lead counsel in a consumer and indirect purchaser class action filed on behalf of Tennessee purchasers of products containing neoprene against Dow Chemical Company, E.I. du Pont de Nemours and DuPont Dow Elastomers LLC alleging violation of the Tennessee Consumer Protection Act and the Tennessee Trades Act.  A multi-state settlement was reached that was valued at $4.2 million.

- <u>In re: Pharmaceutical Industry Average Wholeseale Price Litig</u>., MDL No. 1456, No. 01-cv-12257-PBS (D. Mass).  Counsel in a consolidated nationwide class action against pharmaceutical manufacturers, alleging that defendants published fictional Average Wholesale Prices which artificially inflated the prescription drug prices charged to the Firm's clients and other third-party payors throughout the nation.  The case was ultimately settled with various defendants for approximately $350 million.

- <u>In re: Wellbutrin XL Antitrust Litigation</u>, No. 08-2433 (E.D. Penn.) (Judge McLaughlin).  Branstetter, Stranch & Jennings serves as Co-Lead counsel in an antitrust class action against pharmaceutical companies GlaxoSmithkline and Biovail on behalf of third-party payors alleging that defendants violated Tennessee, California, Florida, Wisconsin, and Nevada laws by colluding to illegally suppress a cheaper generic form of the blockbuster drug Wellbutrin XL from reaching the market.  Through the efforts of the Firm and other co-lead counsel, plaintiffs were able to achieve certification of a class of indirect purchasers.  A Settlement was reached with Biovail and the litigation continues against GSK.

- <u>In re: Prograf Antitrust Litigation</u>, No. 11621 (D. Mass) (J. Zobel).  Serving in the role of Co-Lead Counsel, Branstetter, Stranch & Jennings represents a putative class of indirect purchaser plaintiffs in a nationwide antitrust action against Astellas Pharma, Inc., alleging that defendant illegally delayed entry of generic Prograf into the marketplace by filing a sham Citizen Petition with the Food and Drug Administration.  Achieved partial class certification and withstood motions for summary judgment. The case is set for trial in January, 2015.

3

- In re: Effexor Antitrust Litigation, No. 3:11-cv-5661 (D.N.J.) (J. Pisano).   Branstetter, Stranch & Jenning's client serves on the Executive Committee overseeing this end payor antitrust class action against defendants Wyeth Pharmaceuticals, the manufacturer of antidepressant medication Effexor XR, and Teva Pharmaceuticals. This lawsuit alleges Defendant Wyeth unlawfully procured the patents underling Effexor XR, filed sham litigation against generic competitors, and then entered into anti-competitive settlement agreement with Teva in order to delay the arrival of generic forms of Effexor XR, causing plaintiffs to pay supracompetitive prices for Effexor XR, when they could have paid for far cheaper generics.

- In re: Metroprolol Succinate End-Payor Antitrust Litigation, No. 06-71 (GMS) (D. Del.) (Judge Sleet). Counsel in an antitrust class action on behalf of end-payors against manufacturers of the brand-name drug Toprol XL.  The case was resolved through a settlement totaling $11 million.

- In re: Skelaxin (Metaxalone) Antitrust Litigation, No. 1:12-cv-194 (E.D. Tenn.) (J. Collier).  The Firm was appointed Lead Counsel in an antitrust class action on behalf of end-payors regarding monopoly practices which prevented the sale of generic Skelaxin, a muscle-relaxant prescription drug.  The case against defendant Mutual Pharmaceuticals, Inc. was settled on a class basis for a sum total of $9 million, and has been preliminarily approved. The lawsuit against defendant King Pharmaceuticals, Inc. was settled on a non-class basis on behalf of the named plaintiffs.

- Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Limited Company et al. (Doryx Indirect Purchaser Antitrust Action), No. 2:12-cv-03824 (E.D. Penn.) (J. Diamond).  The Firm served as counsel in an antitrust class action on behalf of indirect purchasers regarding antitrust conduct committed by the manufacturer of brand drug Doryx.  The case was settled on a class basis and is in the preliminary approval phase.

- Dahl v. Bain Capital Partners, LLC, No. 07-cv-1238 (D. Mass) (J. Young). The Firm served on the Executive Committee in this Federal antitrust case challenging bid rigging and market allocation in the private equity/leveraged-buyout industry. The parties reached a $590.5 million settlement approximately two months before trial.

## SECURITIES AND SHAREHOLDER DERIVATIVE CASES

- In re: Omnivision Technologies, Inc. Securities Litigation, Civil No. 5:11-cv-05235 (N.D. Cal.).  Co-Lead counsel in securities litigation alleging material misstatements in communications with investors related to Omnivision's supplier contract with Apple, Inc.  The case was ultimately settled on a class basis, and is in the preliminary approval phase.

- Arlow, et al., v. Miller Energy Resources, Inc., Civil No. 3:11-CV-386 (E.D. Tenn.) (Judge Varland). Liason counsel in securities litigation alleging fraudulent accounting practices that overvalued assets and inflated stock prices.  The case was ultimately settled for $2.9 million.  The case is in the preliminary approval phase.

- Austin v. Walton et al. (Wal-Mart Mexico Bribery Shareholder Derivative Action), Case No. CV-12-201 (Pope County Circuit Court, Arkansas) (J. Pearson). The firm is lead counsel in the Arkansas State court shareholder derivative action seeking relief on behalf of retailer Wal-Mart, Inc. against its board of directors regarding the massive bribery scandal involving its Mexican subsidiary, Wal-Mex. The case was removed to the Eastern District of Arkansas before Judge Moody, where a motion to

remand is pending.

- <u>In re: Regions Morgan Keegan Securities, Derivative & ERISA Litigation, Closed-End Fund Litigation</u>, Civil No. 07-cv-02830 (W.D. Tenn.) (Judge Mays). Liason counsel for lead plaintiffs in securities litigation alleging fraud in the marketing and selling of corporate bonds and preferred stocks by failing to disclose investments in asset backed securities and mortgage-backed securities.  The parties settled the case for $62 million.

- <u>In re: King Pharmaceuticals, Inc. Derivative Litigation,</u> Civil. No. B0019077 (M) (Sullivan Chancery, Tennessee) (Judge McLellan).  Lead counsel in a shareholder derivative action against the Board of Directors and certain officers at King Pharmaceuticals alleging various breaches of fiduciary duty, abuse of control, unjust enrichment and waste of corporate assets.  The parties settled the case for substantial and material revisions to the Company's corporate governance practices.

- <u>Carolinas Electrical Workers Retirement Fund v. Kramer et al.</u>, Civ. No. H-01-1176 (S. D. TX).  Co-lead counsel in a shareholder derivative suit brought on behalf of American General Corporation alleging that the then directors of the corporation breached its then fiduciary duties in connection with a purposed merger with Prudential Insurance Company.  The case was successfully resolved when the merger was cancelled.  American General later merged with AIG.

- <u>Holle v. Prison Realty, Inc.</u>, Case No. 99-1719-III, (Davidson County Chancery) (Chancellor Lyle).  Shareholder class action on behalf of shareholders of Prison Realty Trust against its board of directors for breaches of fiduciary duties and self-dealings.  Settlement was reached in conjunction with a global settlement of a securities case in federal court.

- <u>Brand et al. v. Welch et al.</u>, Case No. 00C-3066 (Davidson County Circuit) (Judge Gayden).  Counsel in a shareholder action alleging breaches of fiduciary duties in connection with the merger between Quorum Corporation and Triad.  A settlement was reached in which shareholders received greater value for their stock than offered in the original merger.

- <u>Dollar General Derivative Litigation (Dixon et al v.  Turner, et al)</u>, Case No. 01C-1322 (Davidson County Circuit, Tennessee) (Judge Shipley).  Lead counsel in a shareholder derivative action against directors of Dollar General Corporation alleging breaches of fiduciary duties, waste of corporate assets, unjust enrichment, and gross mismanagement. Settlement of the case included $31.5 million cash payment to the corporation and significant corporate governance changes.  The settlement is the largest derivative settlement in Tennessee history.

- <u>Benkler v. Miller et al.</u>, Case No. 00C-2630 (Davidson County, Tennessee) (Judge Soloman).  Counsel in a shareholder derivative action against directors of Sirrom Capital Corporation alleging breaches of fiduciary duties in connection with merger between Sirrom Capital Corporation and Finova Financial.  A global settlement was reached in conjunction with securities cases that were filed or transferred to Arizona.

- <u>Central Laborers' Pension Fund v. Chellegren,</u> Civ. No. 02-CI-02174 (Kenton Circuit, Kentucky).  Settlement in a shareholder derivative action against the Board of Directors and certain officers at Ashland, Inc. relating to accounting practices which harmed the company.  The settlement resulted with a cash payment and significant corporate governance changes.

- <u>Clayton Homes Derivative Litigation,</u> Case No. E-19723 (Blount Circuit, Tennessee) (Young). Lead

counsel in a shareholder derivative action originally against the Board of Directors and certain officers at Clayton Homes for breaches of fiduciary duties and corporate waste.  During the litigation, Clayton Homes was purchased by Berkshire Hathaway.  Settlement was reached with shareholders obtaining additional money for their shares of Clayton Homes in the purchase

- <u>National Commerce Financial Shareholder Litigation,</u> CT-002672-04 (Shelby Circuit, Tennessee).  Counsel in a shareholder action contesting the value of National Commerce stock in its merger with SunTrust.  Settlement was reached.

- <u>Accredo Health Derivative Ligation</u>, Case No. CT-002203-03 (Shelby Circuit, Tennessee) (Judge Fields).  Co-lead counsel in a shareholder derivative action against the Board of Directors and certain officers at Accredo Health alleging various breaches of fiduciary duty, abuse of control, and waste of corporate assets.  Accredo merged during the litigation.  Settlement was reached.

- <u>Provident Financial Derivative Litigation</u>, No. C-1-08-168 (S.D. Ohio).  Counsel in a shareholder derivative action against the Board of Directors and certain officers at Provident Financial alleging various breaches of fiduciary duty, abuse of control, and waste of corporate assets.  Settlement was reached.

- <u>In re: Worldcom Securities Litigation</u>, No. 03-27211 (Davidson Chancery, Tennessee) (Judge McCoy).  Co-lead counsel in a securities action by the Tennessee Consolidated Retirement System against the banks that underwrote Worldcom bonds during a period of time in which Worldcom was manipulating its accounting.  Settlement was reached that provided a recovery to the retirement system of $7 million.

- <u>In re: Unumprovident Derivative Litigation</u>, No. 1:02CV-386 (E.D. Tenn.) (Judge Collier). Co-lead counsel in a shareholder derivative action against the Board of Directors and certain officers of UnumProvident alleging various breaches of fiduciary duty, abuse of control, and waste of corporate assets.  A settlement of this case that involves a payment of $30 million to the company plus significant corporate governance changes has been approved by the court.

- <u>In re: AFC Enterprises Derivative Litigation</u>, Civil No. 1:03-CV-2095TWT (N.D. Ga.) (Thrasher).  One of three lead counsel in a shareholder derivative action against the Board of Directors and certain officers at AFC Enterprises alleging various breaches of fiduciary duty, abuse of control, and waste of corporate assets resulting from improper accounting practices and insider trading.  Settlement was reached which provided for corporate governance changes.

- <u>In re: Dynegy, Inc., Derivative Litigation</u>, Civil No. 2002-25250 (Harris County, Texas) (Jamison).  Co-lead counsel in a shareholder derivative action against the Board of Directors and certain officers at Dynegy, Inc. alleging various breaches of fiduciary duty, abuse of control, and waste of corporate assets.  Settlement was reached with significant corporate changes and resignation of key corporate officers and certain directors.

- <u>In re: Direct General Corporation Derivative Litigation,</u> Civil No. 3:05-CV-00158 (M.D. Tenn.)(Campbell).  Co-lead counsel in litigation against the Board of Directors and certain officers of Direct General Corporation alleging various breaches of fiduciary duty resulting from financial manipulations, insider selling, and misconduct in connection with a proposed private-equity sale of the company.  The parties ultimately reached a settlement for additional material disclosures in the proxy materials and a substantial payment to shareholders if the company is sold by the acquiring entity for

more than the merger consideration within nine months of the consummation of the private-equity sale.

- In re: Caremark RX, Inc. Stock Option Litigation, Civil No. 06-C-1329 (Davidson County, Tennessee). Co-lead counsel in litigation against the board of directors of Caremark RX, Inc. alleging breach of fiduciary duties resulting from the Board's attempt to merge the company with CVS Corporation, Inc. and extinguish their liability for improperly backdating stock option grants to certain Board members and high-ranking officers at the Company. A settlement was reached that provided for corporate governance reforms concerning the granting of options, additional disclosures to voting shareholders prior to the merger vote, and recognition that the case indirectly resulted in additional compensation to shareholders.

- In re: HCA Inc. Shareholder Litigation, Civil No. 3:05-CV-0968 (Middle District of Tennessee)(J. Haynes). Co-lead counsel representing shareholders of Hospital Corporation of America (HCA) Inc., alleging that the company's board of directors breached their fiduciary duties by approving a private-equity buyout of the company at an unfair price via an unfair process. A settlement was reached with provided for enhanced appraisal rights for shareholders, reduced termination fee, a "majority of the minority" provision, and additional material disclosures in the proxy materials.

- Fisk v. Alfa Corporation, Civil No. 03-CV-2007-900485.00 (Montgomery County, Alabama). Co-lead counsel representing shareholders of Alfa Corporation, alleging that the company's board of directors breached their fiduciary duties by engaging in self-dealing and approving a sale of the company to private interests for grossly inadequate consideration. A settlement was reached that resulted in an approximate additional $161 million being paid to the shareholder class.

## CONSUMER PROTECTION ACTIONS

- Heilman et al. v. Perfection Corporation, et al., Civ. No. 99-0679-CD-W-6 (W.D. Missouri). The firm served on Executive Committee in a nation-wide consumer class action composed of all persons throughout the United States who owned or purchased a hot water heater manufactured by defendants with a defective dip tube. Settlement reached involved 100% recovery of damages for a possible 14.2 million hot water heaters and any other property damages caused by a defective hot water heater.

- Drummond et al. v. C.E.C. Electrical Contractors, Inc., 98-1811-III (Davidson Chancery, Tennessee) (Chancellor Lyle). Lead counsel in a class action settlement by employees against their employer for wages and benefits due from a school construction contract between their employer and the Metropolitan-Davidson County Board of Education. Settlement reached in which employees received 100% of their wages and benefits.

- Cox v. Shell Oil et al., Civ. No. 18844 (Weakley Chancery, Tennessee)(Judge Malon). Intervened in consumer class action composed of all persons throughout the United States, who owned or purchased polybutylene piping systems used in residential constructions or mobile homes that were defective. A global settlement was reached that resolved two competing lawsuits that was valued at $1 billion.

- Davidson v. Bridgestone/Firestone, Inc and Ford Motor Co No. 00-C2298 (Davidson Circuit,

Tennessee) (Soloman/Brothers).  Lead counsel in a consumer action filed on behalf of a nationwide class of consumers against Bridgestone/Firestone, Inc and Ford Motor Co. that was certified as a nationwide class action concerning defective tires.  Settlement was reached in conjunction with a companion case in Texas.  Settlement was valued at $34.4 million.

## WARN ACT CLAIMS

- <u>Kizer v. Summit Partners</u>, Case No. 1:1-CV-38 (E.D. Tenn.) Counsel in class actions on behalf of employees of a closed Summit Partners facility located in Chattanooga, Tennessee in 2011.  Case was successfully settled for $275,000.

- <u>Owens v. Carrier Corp.</u>, Case No. 2:08-2331-SHM P (W.D. Tenn.) Lead Counsel in class action on behalf of former Carrier Corp. employees at plant in Collierville, Tennessee that closed in 2008.  Case was successfully settled on behalf of former employees for $2.1 million after Lead Counsel successfully obtained class certification over plaintiffs' WARN Act claims.

- <u>In re Sofa Express Inc.</u>, Case No. 07-924 (Bank. M.D. Tenn.) Lead counsel in class action on behalf of former Sofa Express, Inc. employees at a distribution center and headquarters in Groveport, Ohio in 2007.  Case was successfully settled on behalf of former employees for $398,000.

- <u>Robertson et. al v. DSE Inc.</u>, Case No. 8:13-cv-1931-T-AEP (M.D. Fla.). Lead counsel in class action on behalf of former DSE Inc. employees at manufacturing facilities in in Florida and South Carolina. Case successfully settled on behalf of former employees for over $1 million.

EXHIBIT J

1   Lynn A. Toops
    COHEN & MALAD, LLP
2   One Indiana Square, Suite 1400
    Indianapolis, IN 46204
3   Telephone: (317) 636-6481
    Facsimile: (317) 636-2593
4   ltoops@cohenandmalad.com

5   Attorney for Plaintiff Karen Meadows

6

7

8

9

10

11                  **UNITED STATES DISTRICT COURT**
                   **NORTHERN DISTRICT OF CALIFORNIA**
12                       **SAN JOSE DIVISION**

13

14                                      │ Case No. 15-MD-02617-LHK
                                        │
15  **IN RE ANTHEM, INC. DATA**         │ **DECLARATION OF LYNN A. TOOPS IN**
    **BREACH LITIGATION**               │ **SUPPORT OF MOTION FOR APPOINTMENT OF**
16                                      │ **EVE H. CERVANTEZ AND ANDREW N.**
                                        │ **FRIEDMAN AS PLAINTIFFS' LEAD COUNSEL**
17                                      │ **AND A STEERING COMMITTEE**

18                                      │ Date:   September 10, 2015
                                        │ Time:  1:30 p.m.
19                                      │ Judge: Lucy H. Koh

20

21

22

23

24

25

26

27

28

────────────────────────────────────────────────────────
                DECLARATION OF LYNN A. TOOPS IN SUPPORT OF
MOTION FOR APPOINTMENT OF EVE H. CERVANTEZ AND ANDREW N. FRIEDMAN AS PLAINTIFFS'
    LEAD COUNSEL AND A STEERING COMMITTEE   **Case No. 15-MD-02617-LHK**

1    I, Lynn A. Toops, declare as follows:

2        1.    I represent Plaintiff Karen Meadows in the underlying action *Meadows v. Anthem,*

3    *Inc.*, No. 1:15-cv-00163-JMS-TAB (S.D. Ind.) that was filed on February 5, 2015. I am submitting

4    this declaration in support of the appointment of Eve H. Cervantez and Andrew N. Friedman as

5    Plaintiffs' Lead Counsel and in support of the appointment of myself to the Plaintiffs' Steering

6    Committee.

7        2.    I am a lawyer with the law firm of Cohen & Malad, LLP and have been practicing for

8    nine years. I am an integral part of Cohen & Malad, LLP's class action practice team and have been

9    named an Indiana "Super Lawyer" in the area of class actions every year since 2011. My firm,

10   founded in 1968, enjoys an excellent reputation as one of Indiana's leading class action law firms.

11   *See, e.g., In re Iowa Ready-Mix Concrete Antitrust Litig.*, No. C 10-4038-MWB (N.D. Iowa Nov. 9,

12   2011) (commenting that "fabulous results" were achieved for the class with "incredible efficiency"

13   by Cohen & Malad, LLP). A true and accurate copy of the Cohen & Malad, LLP Resume is attached

14   as Exhibit 1.

15       3.    I am uniquely qualified to serve on the Plaintiffs' Steering Committee in this

16   litigation because (i) my firm represents over 60 clients across 25 states, the vast majority of whom

17   suffered some form of identity theft following the breach and could potentially serve as class

18   representatives in a consolidated complaint; (ii) I personally have had extensive contacts with, and

19   my firm maintains communications with, hundreds of other potential class representatives located

20   across the country and oversee a database of those individuals; (iii) my firm is located within three

21   blocks of Anthem's headquarters, where the most significant documents are located and the most

22   significant deponents reside, thus providing for the efficient conduct of discovery; (iv) my firm filed

23   one of the first cases against Anthem on February 5, 2015, and our involvement from the very

24   beginning has provided us with unique knowledge of the harm suffered by the class members

25   because we have counseled numerous victims of identity theft following the breach and consulted

26   with experts in this field, thereby gaining contacts and information about the breach that will benefit

27   the proposed class; (v) my firm reached out to consultants and developed a damages theory

28   applicable to the insurance industry based on the monies paid by the class members to Anthem; (vi) I

1   personally have been featured on national and local media as a resource for the public about the

2   Anthem data breach; and (vii) my firm of 23 lawyers has the time and resources to devote to this

3   important litigation.

4        4.     I have successfully litigated numerous class action cases to resolution. Recent

5   representative cases include *Moss v. Indiana Department of Child Services*, No. 46D02-1406-PL-

6   1025 (LaPorte Superior Court) (obtained over $15 million settlement for class of nearly 2,000

7   families that adopted special needs children from foster care and who were denied adoption subsidy

8   payments by the Indiana Department of Child Services) and *Warren v. Town of Speedway*, No. 1:13-

9   cv-01049-JMS-DKL (S.D. Ind.) (after being appointed class counsel and achieving certification of a

10  litigation class of taxi drivers whose licenses were improperly confiscated by law enforcement,

11  obtained cash settlement providing for the drivers' lost income).

12       5.     I also recently worked on the Cohen & Malad, LLP team that achieved an over $30

13  million settlement against the Indiana Department of Motor Vehicles for overcharging drivers for

14  operators' licenses, which provided either credits or refund checks to over 4 million drivers in

15  amounts that equaled the agreed overcharge amounts. *Raab v. R. Scott Waddell et al.*, No. 49D12-

16  1303-PL-008769 (Marion Superior Court). I also recently represented the plaintiff in a class action

17  on behalf of Indiana residents who had prepaid for cemetery goods and services and whose money

18  was looted from trusts which resulted in a multi-million dollar replenishment of the trust funds,

19  *Goldberg v. Farno*, 953 N.E.2d 1244 (Ind. Ct. App. 2011).

20       6.     I was also recently appointed class counsel and, after achieving certification of a

21  litigation class, obtained a multi-million dollar judgment for a class of independent owner-operator

22  truck drivers who were denied fuel discounts by a trucking company. *Wilmoth v. Celadon Trucking*

23  *Services, Inc.,* No. 46D07-1310-PL-036806 (Marion Superior Court).

24       7.     My work also includes representation of data breach victims in cases such as *In re:*

25  *Science Applications International Corp. (SAIC) Backup Tape Data Theft Litigation* (D.D.C.), where

26  I provided extensive research on various states' data breach laws, worked on a consolidated

27  complaint, and briefed a motion to dismiss; and *Young v. Medical Informatics Engineering, Inc.*, No.

28  1:15-cv-00197-WCL-SLC (N.D. Ind.), where my firm recently filed the first case in a data breach

2

involving social security numbers and personal health information of 4 million individuals.

8.     I earned my doctorate of jurisprudence *summa cum laude* from the Indiana University Robert H. McKinney School of Law in 2006 where I served on the *Indiana International & Comparative Law Review* and was chosen to represent the school in the American Bar Association National Appellate Advocacy Competition. I was also appointed to the Order of the Barristers and was named Assistant Chief Justice of the Honorable Robert H. Staton Intramural Moot Court Competition.

9.     I have also been appointed by the United States District Court for the Southern District of Indiana as pro bono counsel in prisoner civil rights litigation.

10.     Cohen & Malad, LLP has the experience and resources to litigate this case well. Members of my firm frequently serve in leadership and plaintiff steering committees, including *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*; *In re Prempro Prods. Liab. Litig.*; and *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.* Cohen & Malad, LLP has served as national coordinating counsel in pain pump litigation as well as lead counsel in medical malpractice mass tort matters; in antitrust matters, *In re Ready-Mixed Concrete Antitrust Litig.,* No. 1:05-cv-979-SEB-JMS (S.D. Ind.) (settlements provided for a recovery of $59 million, which allowed for a net distribution to class members of approximately 100% of their actual damages); *In re Iowa Ready-Mix Concrete Antitrust Litig.*, No. C 10-4038-MWB (settlement totaled $18.5 million, which allowed for a net distribution to class members of approximately 100% of their actual damages); and in consumer matters, *In re Indiana Construction Industry Trust,* (Marion Superior Court) (action against an insolvent health benefits provider where Cohen & Malad, LLP recovered approximately $24 million for enrollees, providing nearly 100% recovery to victims); *Price v. BP Prods. N. Am., Inc.,* No.1: 12-cv-06799 (N.D. Ill.) (action on behalf of motorists that purchased contaminated gasoline recalled by BP where a settlement of $7 million was achieved); among dozens of other matters.

11.     Cohen & Malad, LLP is also committed to achieving social justice, with it being selected as one of ten firms from the U.S. to serve on the executive committee in the prosecution of a world-wide class action against three major Swiss banks to recover assets from the Nazi era. This

3

litigation resulted in a $1.25 billion settlement in favor of Holocaust survivors.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 20, 2015, in Indianapolis, Indiana.

*/s/ Lynn A. Toops*
Lynn A. Toops

DECLARATION OF LYNN A. TOOPS IN SUPPORT OF
MOTION FOR APPOINTMENT OF EVE H. CERVANTEZ AND ANDREW N. FRIEDMAN AS PLAINTIFFS'
LEAD COUNSEL AND A STEERING COMMITTEE    Case No. 15-MD-02617-LHK

EXHIBIT 1

# COHEN & MALAD, LLP

### ATTORNEYS

One Indiana Square
Suite 1400
Indianapolis, IN 46204
Phone 317-636-6481

cohenandmalad.com

**Introduction**

Cohen & Malad, LLP is a litigation firm founded in 1968 in part by former Indiana
Attorney General John J. Dillon, former U.S. Attorney for the Southern District of
Indiana Virginia Dill McCarty, and Louis F. Cohen. Our staff of 23 highly skilled
attorneys serves clients across multiple practice areas including: class action, mass torts
and individual personal injuries, business litigation, family law, appellate law, and
commercial, real estate, and business services.

Cohen & Malad, LLP enjoys an excellent reputation as one of Indiana's leading class
action law firms. Over the last 25 years, the firm has served as class counsel in
numerous local, statewide, nationwide, and international class actions.

The firm has successfully litigated and resolved a wide range of class action matters,
serving on the executive committee in the historic litigation brought against Swiss
banks on behalf of Holocaust survivors, *In re Holocaust Victim Assets Litigation*, as well as
in recent antitrust actions involving the ready mixed concrete industry in Indiana and
in Iowa, *In re Ready-Mixed Concrete Antitrust Litigation*, and *In re Iowa Ready-Mix Concrete
Antitrust Litigation*. The firm also has extensive experience with class action litigation
against Indiana state agencies, *Raab v. R. Scott Waddell, in his official capacity as
Commissioner of The Indiana Bureau of Motor Vehicles et al.*, and *Moss v. Mary Beth
Bonaventura, in her official capacity as Director of the Department of Child Services et al.*

Cohen & Malad, LLP possesses extensive resources, in part through its established
relationships with many of the country's leading class action law firms, to vigorously
prosecute class action cases of any scale.

1

**Consumer Protection Cases**

- ***Raab v. R. Scott Waddell, in his official capacity as Commissioner of The Indiana Bureau of Motor Vehicles et al.,*** Marion County Indiana, Superior Court.
  Action on behalf of Indiana drivers who had been systematically overcharged by the Indiana Bureau of Motor Vehicles for driver's licenses. Achieved a $30 million recovery providing either credits or refund checks to over 4 million drivers in amounts that equaled the agreed overcharge amounts.

- ***Moss v. Mary Beth Bonaventura, in her official capacity as Director of The Indiana Department of Child Services, et al.,*** LaPorte County Indiana, Superior Court.
  Action on behalf of Indiana families that adopted special needs children from out of DCS foster care and who were denied an adoption subsidy payment. Achieved settlement over $15 million providing checks to benefit over 1,880 special needs children, with the average settlement check near $5,000 and a substantial number exceeding $10,000.

- ***Edwards v. Geneva-Roth Capital, Inc.,*** Marion County Indiana, Circuit Court.
  Action on behalf of victims of an online payday lender that charged interest rates often exceeding 1000% APR. Achieved settlement over $1 million providing checks for over 6,000 individuals, with the average settlement check near $200 and a substantial number exceeding $1,000.

- ***Price v. BP Products North America Inc.,*** U.S. District Court, Northern District of Illinois.
  Action on behalf of motorists that purchased contaminated gasoline recalled by BP. Achieved settlement of $7 million.

- ***Landes v. Eads,*** Marion County Indiana, Circuit Court.
  Settlement on behalf of class of over 1,000 elderly individuals who were sold inappropriate estate planning documents by non-lawyers.

- ***Fritzinger v. Angie's List, Inc.,*** U.S. District Court, Southern District of Indiana.
  Nationwide settlement on behalf of class of Angie's List subscribers whose memberships were auto-renewed at higher prices.

- ***Swift et al. v. DirectBuy et al.,*** U.S. District Court, Northern District of Indiana.
  Nationwide settlement providing for cash payments to purchasers of membership clubs.

2

- **Selburg v. Virtuoso Sourcing Group, LLC,** U.S. District Court, Southern District of Indiana.
  Action on behalf of individuals that received a debt collection letter that violated the Fair Debt Collections Practices Act. Achieved settlement that provided settlement checks for class members.

- **Wilmoth et al. v. Celadon Trucking Services,** Marion County Indiana, Superior Court.
  Appointed class counsel and obtained judgment for $3.8 million plus prejudgment interest in favor of nationwide class of long distance drivers who had compensation improperly withheld by Celadon for fuel purchases from Pilot Flying J.

- **Walker v. Trailer Transit,** Marion County Indiana, Superior Court.
  Appointed class counsel on behalf of long distance drivers claiming that Trailer Transit withheld more from their compensation than what Trailer Transit was legally entitled to.

- **Sam v. Elizabeth L. White, in her capacity as Clerk of the Marion Circuit Court,** Marion County Indiana, Superior Court.
  Action involving overcharges for administrative fees on bonds managed by the Clerk's office. Achieved settlement providing refunds of up to $1,000 for individual class members

- **Means v. River Valley Financial Bank, et al.,** Marion County Indiana, Superior Court.
  Action involving prepaid burial goods and services in Madison, Indiana. Cemetery owners and banks who served as the trustees for the prepaid burial funds violated the Indiana Pre-Need Act and other legal duties, which resulted in insufficient funds to provide class members' burial goods and services at death. Settlements valued at $4 million were achieved to ensure that thousands of class members' final wishes will be honored.

- **Meadows v. Sandpoint Capital, LLC,** and **Edwards v. Apex 1 Processing, Inc.,** Marion County Indiana, Circuit Court.
  Class actions brought against internet-based payday lenders. Settlements provided reimbursement for fees and expenses that exceeded amounts permitted by the Indiana payday loan act.

- **King v. Amacor,** Madison County Indiana, Circuit Court.
  Class counsel on behalf of thousands of residents who were forced to evacuate their

3

homes as a result of a magnesium fire that broke out in 2005 at the AMACOR magnesium recycling plant, the world's largest magnesium recycling facility. Settlement achieved to provide environmental remediation clean-up of the debris and direct cash payment to residents who were forced to evacuate their homes on the night of the fire.

- ***Colon v. Trinity Homes, LLC and Beazer Homes Investment Corp,*** Hamilton County Indiana, Superior Court.
  Class counsel in statewide settlement providing for remediation of mold and moisture problems in over 2,000 homes. Settlement valued at over $30 million.

- ***Whiteman v. Time Warner Entertainment Company, L.P.,*** Marion County, Indiana, Superior Court.
  Successfully appealed to the Indiana Supreme Court challenging the application of the voluntary payment doctrine for class of cable subscribers. Following this victory, Cohen & Malad, LLP negotiated a multi-million dollar settlement for class members.

- ***Hecht v. Comcast of Indianapolis,*** Marion County Indiana, Circuit Court.
  Represented a class of Comcast cable subscribers challenging arbitrarily-determined late fees as unlawful liquidated damages. Obtained a multi-million dollar settlement on the eve of trial.

- ***General Repair Servs. of Central Ind., Inc. v. Soff-Cut Int'l, Inc.,*** Marion County Indiana, Superior Court.
  Served as class counsel for a nationwide class under the federal Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227. Following certification, the parties entered into nationwide settlement providing class members with benefits worth over $1.5 million.

- ***Turner v. Louisiana Pacific Corporation and C.P. Morgan Communities, LP,*** Hamilton County, Indiana Superior Court.
  Appointed Lead Counsel in state-wide class action challenging defective exterior siding products.  After class certification, parties reached settlement that provided for cash payments to homeowners based on amount of siding and damage to homes.

- ***Littell et al. v. Tele-Communications, Inc. (AT&T) et al.,*** Morgan County, Indiana, Superior Court.
  Lead counsel in nationwide class action challenging late fee charges imposed by cable television companies. The total value of the nationwide settlement exceeded $106 million.

- ***Bridgestone/Firestone, Inc., ATX, ATX II and Wilderness Tires Products Liability***

4

*Litigation,* U.S. District Court, Southern District of Indiana.
Court-appointed Liaison Counsel and Executive Committee Member in
consolidated litigation involving international distribution of defective tires.

- *Tuck v. Whirlpool et al.,* Marion County, Indiana, Circuit Court.
  Appointed Class Counsel in nationwide class action regarding defective microwave
  hoods. Settlement achieved in excess of $7 million.

- *Hackbarth et al. v. Carnival Cruise Lines,* Circuit Court of Dade County, Florida.
  Class Counsel in nationwide action challenging cruise lines' billing practices.
  Settlement valued at approximately $20 million.

- *Sherwood v. Coca-Cola Bottling,* Marion County, Indiana, Superior Court.
  Class Counsel in contaminated product class action. Settlement achieved on behalf
  of the class.

- *David Campbell v. Macey & Chern,* U.S. District Court, Southern District of Indiana.
  Class Counsel in action challenging improper billing and collection of attorneys' fees
  from Chapter 7 bankruptcy debtors.  Common fund settlement provided for refunds
  in the hundreds of dollars to individual bankruptcy debtors.

- *Wittry v. Merrill Lynch Credit Corp.,* Case No. 49D05-0304-PL-000716, Marion
  County, Indiana, Superior Court.
  Counsel for class in action challenging documentation fees charged in connection
  with mortgages closed in Indiana.  Settlement achieved through direct payments to
  class members.

- *Kamala M. Thomason v. Aman Collection Services, Inc.,* U.S. District Court,
  Northern District of Indiana.
  Class Counsel in a case involving the Fair Debt Collection Practices Act, 15 U.S.C. §
  1692 *et seq*.  Monetary settlement along with an injunction against illegal practice,
  and *cy pres* award to Legal Services Organization of Indiana.

- *Baker v. Hubler Ford Center, Inc. d/b/a Hubler Ford Lincoln Mercury,* Shelby
  County, Indiana, Circuit Court.
  Appointed Class Counsel in case alleging forgery, fraud, constructive fraud and
  Consumer Protection Act violations by car dealership in connection with the sale
  and lease of automobiles.  Settlement provided each class member with $5,000 to
  $8,000 in benefits.

- *Kenro, Inc. v. APO Health, Inc.,* Marion County Indiana, Superior Court.
  Appointed Class Counsel in case alleging violations of the Federal Telephone
  Consumer Protection Act (TCPA), 47 U.S.C. § 227. Settlement negotiated to create a

5

common fund of $4.5 million and provide benefits to class members of up to $500 for each unsolicited fax advertisement received.

- *James H. Young v. Core Funding Group, LLC,* Marion County Indiana, Superior Court.
  Appointed Class Counsel in case alleging violations of the Federal Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227.  Successfully defended class certification and $250,000 judgment on appeal.

- *Shilesh Chaturvedi v. JTH Tax, Inc. d/b/a Liberty Tax Service,* Court of Common Pleas, Allegheny County, Pennsylvania.
  Class Counsel in case involving Federal Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227.  Settlement valued at $45 million.

- *Kenro, Inc. and Gold Seal Termite and Pest Control Company v. PrimeTV, LLC, and DirecTV, Inc.,* Marion County Indiana, Superior Court.
  Class Counsel in case involving the federal Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227. Following certification, the parties entered into nationwide settlement providing class members with benefits worth in excess of $500 million.

- *JRA Corporation, d/b/a A & A Tire & Service v. Yellow Page Publishers, Inc. d/b/a Smart Pages,* Marion County Indiana, Superior Court.
  Appointed Class Counsel under Ind. Trial Rule 23(B)(1) and (B)(2) in action alleging breach of contract, unjust enrichment and fraud for defendant's failure to fully distribute "yellow page" directories.

**Human Rights Cases**

- *In re Holocaust Victim Assets Litigation,* U.S. District Court, Eastern District of New York.
  Selected as one of ten firms from the U.S. to serve on the Executive Committee in the prosecution of a world-wide class action against three major Swiss banks to recover assets from the Nazi era. This litigation resulted in a $1.25 billion settlement in favor of Holocaust survivors.

- *Kor v. Bayer AG,* U.S. District Court, Southern District of Indiana.
   Action against an international pharmaceutical company for participating in medical experiments on concentration camp inmates during World War II. This action was resolved as part of a $5 billion settlement negotiated under the auspices of the governments of the U.S. and Germany and led to the creation of the *Foundation for Remembrance, Responsibility and the Future.*

6

- ***Vogel v. Degussa AG,*** U.S. District Court, District of New Jersey.
  Action against a German industrial enterprise for enslaving concentration camp inmates during World War II for commercial benefit. This action also was resolved in connection with the settlement which created the *Foundation for Remembrance, Responsibility and the Future*.

- Cohen & Malad, LLP also actively participated in other cases litigated in federal and state courts in New Jersey, New York and California involving, *inter alia*, slave and forced labor, and claims against major German corporations and financial institutions based upon their wrongdoing during the Nazi era, which were resolved through the *Foundation.*

**Health Care / Insurance Cases**

- ***In re Indiana Construction Industry Trust***, Marion County, Indiana, Circuit Court.
  Lead Counsel in action against an insolvent health benefits provider from Indiana and surrounding states. Recovered approximately $24 million for enrollees, providing nearly 100% recovery to victims.

- ***Davis v. National Foundation Life Insurance Co.***, Jay County, Indiana, Circuit Court.
  Class Counsel in action involving insureds who were denied health insurance benefits as a result of National Foundations' inclusion and enforcement of pre-existing condition exclusionary riders in violation of Indiana law. Settlement provided over 85% recovery of the wrongfully denied benefits.

- ***Griffin v. Indiana Comprehensive Health Insurance Assn.,*** Marion County, Indiana, Superior Court.
  Class Counsel in action that obtained a rollback on artificially inflated health insurance premiums for high-risk consumers.

- ***Lawson v. American Community Mutual Insurance Co.***, U.S. District Court, Southern District of Indiana.
  Class counsel in action challenging denial of claims for diabetes-related health care service and supplies.  Settlement achieved on behalf of the class.

- ***James C. Sell et al. v. CIGNA Corp. et al.,*** U.S. District Court, District of Arizona.
  Co-lead counsel in action challenging non-disclosure of discounts on healthcare charges which forced insureds to pay excessive co-payments.  Settlement achieved on behalf of the class.

- ***Woolbert v. Sandoz Pharmaceuticals, Inc.***

7

Class Counsel in action alleging defendant unlawfully tied prescription drug issuance to a costly and unnecessary blood test. Settlement in conjunction with action brought by attorneys general.

- *Follett v. Freedom Life Insurance Company*, Vigo County, Indiana, Superior Court. Statewide class action challenging denial of health insurance benefits based on pre-existing exclusions.  Settlement provided for over 85% recovery of the wrongfully denied benefits.

**Other Class Action Cases**

- *Warren v. Town of Speedway et al.,* U.S. District Court, Southern District of Indiana. Achieved settlement for cash payments to taxi operators who had their licenses improperly seized by Town of Speedway employees on Indianapolis 500 race day.

- *Roquil, Inc. v. The Indiana State Lottery Commission et al.,* U.S. District Court, Southern District of Indiana.
  Class Counsel in a case where the State Lottery Commission was permanently enjoined from arranging secret, one-sided lottery game incentives. Action resulted in amendment of the Commission's administrative rules.

- *Stephens v. American Cyanamid Company,* Parke County, Indiana, Circuit Court. Lead Counsel in multi-state class action involving thousands of farmers who suffered losses as a result of a herbicide.  Case settled following Indiana Court of Appeals decision upholding class certification.

- *In re: The Chubb Corporation Drought Litigation,* U.S. District Court, Southern District of Ohio.
  Liaison counsel on behalf of thousands of farmers throughout the Midwest. Settlement of over $40 million.

- *Beacon Development, Inc. v. City of Indianapolis*, Marion County Superior Court. Class Counsel in action on behalf of local developers who were wrongly charged for the installation of sewer facilities. Settlement allowed the class to recover 100% of damages.

**Antitrust Cases**

- *In re Bromine Antitrust Litigation*, U.S. District Court, Southern District of Indiana. Liaison Counsel for the class in price-fixing issue. Settlement valued at $9.175 million.

- *In re Ready-Mixed Concrete Antitrust Litigation*, U.S. District Court, Southern District of Indiana.
  Co-Lead Counsel in a consolidated class action alleging a price-fixing conspiracy among all of the major Ready-Mixed Concrete suppliers in the Indianapolis area. The total settlements provided for a recovery of $59 million, which allowed for a net distribution to class members of approximately 100% of their actual damages.

- *In re Iowa Ready-Mix Concrete Antitrust Litigation*, U.S. District Court, District of Iowa.
  Co-lead counsel in class action alleging a price-fixing conspiracy among major suppliers of Ready-Mixed Concrete in northwest Iowa and the surrounding states. Settlement totaled $18.5 million, which allowed for a net distribution to class members of approximately 100% of their actual damages.

**Securities Fraud Cases**

- *Grant et al. v. Arthur Andersen et al.,* Maricopa County Arizona, Superior Court.
  Lead counsel in class action arising from the collapse of the Baptist Foundation of Arizona, involving losses of approximately $560,000,000.00.  Settlement achieved for $237 million.

- *In re: Brightpoint Securities Litigation*, U.S. District Court, Southern District of Indiana.
  Class Counsel in securities fraud action that resulted in a $5.25 million settlement for shareholders.

- *City of Austin Police Retirement System v. ITT Educational Services, Inc., et al*, U.S. District Court, Southern District of Indiana.
  Co-lead counsel in action alleging misrepresentations by defendant and certain principals concerning enrollment and graduate placement, and a failure to disclose multiple federal investigations into defendant's operations and records.

- *Beeson and Gregory v. PBC et al.,* U.S. District Court, Southern District of Indiana.
  Class Counsel in a nationwide class action with ancillary proceedings in the District of Connecticut, and the Southern District of Florida.  Multi-million dollar settlement that returned 100% of losses to investors.

- *In re: Prudential Energy Income Securities Litigation,* U.S. District Court, Eastern District of Louisiana.
  Counsel for objectors opposing a $37 million class action settlement. Objection successfully led to an improved $120 million settlement for 130,000 class members.

9

- ***In re: PSI Merger Shareholder Litigation,*** U.S. District Court, Southern District of Indiana.
  Obtained an injunction to require proper disclosure to shareholders in merger of Public Service Indiana Energy, Inc. and Cincinnati Gas & Electric.

- ***Dudley v. Ski World, Inc.,*** U.S. District Court, Southern District of Indiana.
  Class counsel for over 5,000 investors in Ski World stock.  Multi-million dollar settlement.

- ***Stein v. Marshall,*** U.S. District Court, District of Arizona.
  Class Counsel Committee member in action involving the initial public offering of Residential Resources, Inc. Nationwide settlement achieved on behalf of investors.

- ***Dominijanni v. Omni Capital Group, Ltd. et al.,*** U.S. District Court, Southern District of Florida.
  Co-lead counsel in securities fraud class action.  Nationwide settlement on behalf of investors.