1  Tina Wolfson, SBN 174806
   twolfson@ahdootwolfson.com
2  Robert Ahdoot, SBN 172098
   rahdoot@ahdootwolfson.com
3  Theodore W. Maya, SBN 223242
4  tmaya@ahdootwolfson.com
   Bradley K. King, SBN 274399
5  bking@ahdootwolfson.com
   **AHDOOT & WOLFSON, PC**
6  1016 Palm Avenue
7  West Hollywood, California 90069
   Tel: (310) 474-9111; Fax:  (310) 474-8585
8
   Counsel for Plaintiffs Samantha Kirby,
9  Colleen Lesher, and Vince Kandis

10 [Additional counsel on signature page]

11

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14

15 | IN RE ANTHEM, INC. DATA BREACH LITIGATION | Case No. 5:15-md-02617-LHK |
   |---|---|
   | | **JOINT MOTION FOR APPOINTMENT OF TINA WOLFSON AS LEAD COUNSEL** |
   | | Hon. Lucy H. Koh, Presiding |
   | | Date: September 10, 2015<br>Time: 1:30 p.m.<br>Courtroom: 8 |

Pursuant to the Order Re Preliminary Case Management Conference (Dkt. 16) and Federal Rule of Civil Procedure 23(g), a large number of law firms and plaintiffs[1] jointly request the appointment of Tina Wolfson of Ahdoot & Wolfson, PC ("Wolfson") as Lead Class Counsel in this proceeding.

I.   INTRODUCTION

The putative class actions centralized in this Court arise from a protracted health care data breach that Defendants did not detect for several weeks. On February 4, 2015, Anthem announced that its IT database had been accessed without authorization and that hackers had obtained highly sensitive personal, medical, and financial information of more than 80 million individuals. The information was not encrypted, and the fact that malware lingered on Anthem's system for at least several weeks, undetected, indicates that Anthem failed to comply with the Payment Card Industry Data Security Standard.

Wolfson seeks to prosecute the claims of the putative class members through traditional common law theories, and the goal is to recover, for all class members, (1) out-of-pocket expenses relating to actual identity theft, (2) the cost associated with protecting oneself against future identity theft, and (3) "overpayment" for the data protection services that the class paid for, and that Defendants promised, but never delivered.

While several plaintiffs' counsel now seek appointment, Wolfson, whose firm filed the very first of these cases (*Kirby v. Anthem, Inc., et al.*, Case No. 5:15-cv-02636-LHK), brings a unique perspective to this litigation.

---

[1] The firms supporting this application are: Ahdoot & Wolfson, PC (*Kirby v. Anthem, Inc., et al.*, Case No. 5:15-cv-02636-LHK; *Lesher, et al. v. Anthem, Inc., et al.*, Case No. 5:15-cv-02836-LHK); Casey Gerry Schenk Francavilla Blatt & Penfield LLP (*Meer, et al. v. Anthem, Inc., et al.*, No. 5:15-cv-02821-LHK); Lite DePalma Greenberg, LLC (*Sojourner v. Anthem, Inc.*, No. 5:15-cv-00637-LHK); Chimicles & Tikellis LLP (*Keyser v. Anthem, Inc.*, No. 5:15-cv-02644-LHK); Cafferty Clobes Meriwether & Sprengel LLP (*Harker v. Anthem, Inc.*, No. 5:15-cv-02841-LHK); Siprut PC (*Lesher, et al. v. Anthem, Inc., et al.*, Case No. 5:15-cv-02836-LHK); Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L. (*McKinley, et al. v. Anthem, Inc., et al.*, No. 5:15-cv-02650-LHK; *Maric v. Anthem, Inc, et al.*, No. 5:15-cv-02866-LHK); The Law Offices of Paul C. Whalen, P.C. (*Nicoll v. Anthem, Inc., et al.*, No. 5:15-cv-02878-LHK); Jones Ward PLC (*McGill, et al. v. Anthem, Inc, et al.*, No. 5:15-cv-02863-LHK); and The Giatras Law Firm, PLLC (*Shiltz, et al. v. Anthem, Inc., et al.*, No. 5:15-cv-02892-LHK).

Wolfson is imminently qualified to lead this MDL after almost two decades of prosecuting complex cases and class actions. She is particularly suited for this case because of her considerable experience in privacy-related class actions. Wolfson has been prosecuting e-privacy cases on behalf of consumer classes since the late 1990s, before the term "big data" became part of the everyday vernacular. She was among the first group of attorneys who successfully litigated the privacy rights of millions of consumers against major financial institutions based on the compilation and sale of detailed financial data to third party telemarketers without their consent. While such practices later became the subject of Graham Leach Bliley Act regulation, they were cutting edge law at the time Wolfson was successfully prosecuting them. Since then, Wolfson has prosecuted numerous class actions involving consumer privacy rights, including data breach class actions involving medical privacy rights, gaining invaluable experience critically important to prosecuting this case.

Most recently, Wolfson led plaintiffs' appellate efforts that resulted in the landmark opinion finding Article III standing on behalf of data breach victims, *Remijas v. Neiman Marcus Group, LLC*, No. 14-3122, Docket No. 27, Slip Op. (7th Cir. July 20, 2015). Wolfson is thus not only an expert in knowing the law that will govern this case, but has also been instrumental in shaping it.

She also was among the group of attorneys recommended by Judge Michael Simon in the District of Oregon for designation to help lead *In re Premera Blue Cross Customer Data Security Breach Litigation*, No. 15-md-02633, following a leadership application contest.

Further, during the six months since initiating the first-filed *Kirby v. Anthem* case, Wolfson expended significant efforts including continuing factual investigation, retention and consulting with expert consultants, the honing of legal and procedural strategy, and extensive efforts to collaborate with other plaintiffs' counsel through in person meetings and telephone calls, including the temporary interim lead counsel appointed by the Court, as well as most of the attorneys expected to seek appointment here. These actions demonstrate her commitment to the plaintiff class, her ability to lead, and her legal acumen.

In complying with the Court's directive that all leadership applications present a "lean" structure, and with confidence in Wolfson's abilities and commitment to lead these cases, the other prominent plaintiffs' firms joining this application, all of whom could have submitted applications in

3
JOINT MOTION TO APPOINT TINA WOLFSON AS LEAD COUNSEL
CASE NO. 5:15-md-02617-LHK

their own right, support the appointment of Wolfson as sole lead and pledge their time and resources to assist her as appropriate.

Additionally, Wolfson has collaborated amicably and productively in other endeavors with many of the competing applicants, and enjoys their respect. She is ready, willing, and able to collaborate with those applicants in a co-lead capacity, or in any other capacity permitted by the leadership structure that the Court ultimately adopts.

## II.  WOLFSON HAS ALMOST TWENTY YEARS OF EXPERIENCE IN SUCCESSFULLY PROSECUTING COMPLEX LITIGATION, INCLUDING CLASS ACTIONS AND, PARTICULARLY, PRIVACY-RELATED CLASS ACTIONS

Wolfson is a graduate *cum laude* of Columbia College (1991) and Harvard Law School (1994). She began her civil litigation career at the Los Angeles office of Morrison & Foerster, LLP, where she defended major corporations in complex actions and represented indigent individuals in immigration and deportation trials as well as consumer rights prosecutions as part of the firm's *pro bono* practice. She then gained further invaluable litigation and trial experience at a boutique firm focusing on civil rights and employee rights contingency litigation.

Ahdoot & Wolfson, PC ("AW") is an eight-attorney firm founded in 1998. The vast majority of its practice is plaintiffs' class action litigation. As a founding member, Wolfson has been appointed class counsel in numerous class actions, and has obtained extensive experience in prosecuting complex class action and representative lawsuits. Her vast complex and class action litigation experience is outlined in her *curriculum vitae*, which is attached hereto as Exhibit A. For the sake of brevity, only her privacy-related work is detailed below.

The law of electronic privacy is evolving quickly and Wolfson is a seasoned practitioner in this area who not only knows the law, but has also helped shape it. Wolfson was among the first group of attorneys who successfully litigated the privacy rights of millions of consumers against major financial institutions. The plaintiffs alleged that the defendants used their personal information to compile detailed financial data to use for internal marketing purposes and to sell to third party telemarketers, without their consent. As lead counsel in these privacy class actions, Wolfson brought the consumer claims to successful conclusion on a class-wide basis, conferring millions of dollars of benefits to consumers. The business practices that her clients challenged in those cases later became

the subject of Graham Leach Bliley Act regulation. These consumer privacy class actions successfully prosecuted, without limitation, Chase Manhattan Bank, American Express, MBNA America Bank, Discover Bank, FleetBoston, and Washington Mutual Bank.

Wolfson has also prosecuted medical privacy class actions on behalf of victims of data breaches under the California Confidentiality of Medical Information Act. For example, AW was a member of the Executive Committee in the consolidated actions entitled *Whitaker v. Health Net*, Case No. 2:11-cv-00910-KJM (E.D. Cal.), and in the *Sutter Medical Information Cases*, Case No. JCCP 4698 (Cal. Super. Ct., Sacramento Cty.). (In both cases, she collaborated efficiently and productively with Girard Gibbs LLP, among other co-counsel).

Wolfson and AW were instrumental to the plaintiffs' efforts in the *Target* data breach litigation, collaborating with firms who may be submitting an application for lead in this case, including Stueve Siegel Hanson LLP, Girard Gibbs, Morgan & Morgan Complex Litigation Group, and Heins Mills & Olson, P.L.C. on the consumer side, as well Hausfeld LLP and Milberg LLP on the financial institutions' side. AW contributed considerable effort to vetting hundreds of potential class representatives in a streamlined and efficient manner, responding to discovery requests and defending depositions, legal research, and the consolidated complaint, among other projects.

Wolfson is currently serving, by court appointment, on the Consumer Plaintiffs' Steering Committee in *The Home Depot, Inc., Customer Data Security Breach Litigation*, No. 14-md-2583 (N.D. Ga.). She is in close, productive collaboration again with Stueve Siegel Hanson and Morgan & Morgan, who are co-lead in that MDL, and Girard Gibbs, who is on the Steering Committee.

Additionally, Wolfson is among the group of lawyers selected to prosecute the Premera Data Breach MDL. After a contest among four different groups of attorneys, Judge Simon appointed Tousley Brain Stephens PLLC (who was supported by Wolfson) as lead counsel and directed lead counsel to propose additional leadership positions. During the hearing, Judge Simon opined that Wolfson "obviously ha[s] a great deal of expertise and a great deal to offer" in the data breach field and that he expects the plaintiffs' leadership proposal to include Wolfson. Plaintiffs will be submitting a proposed order that will take into account Judge Simon's comments.

Wolfson's colleagues elected her as co-lead class counsel in the consumer class action

stemming out of the Neiman Marcus data breach, entitled *Remijas, et al. v. Neiman Marcus Group, LLC*, No. 14-cv-1735 (N.D. Ill.). AW and Wolfson were responsible for briefing and arguing the appeal from the trial court's order granting the motion to dismiss on the pleadings based on lack of Article III standing. The Seventh Circuit's groundbreaking opinion was the first appellate decision to consider the issue of Article III standing in data breach cases since, and in light of, the Supreme Court's decision in *Clapper v. Amnesty Intern. USA*, 133 S.Ct. 1138 (2013). The defense bar has aggressively advocated that *Clapper* set a more rigorous standard for Article III standing inquiries than previously existed and that, in light of that decision, data breach cases generally lack standing unless the plaintiffs could show that they suffered unreimbursed fraudulent charges. As a result of the appeal spearheaded by Wolfson, the Seventh Circuit adopted the plaintiffs' reasoning, rejected this narrow view of *Clapper*, and established that data breach victims have standing to pursue claims based on the increased risk of identity theft and fraud, even before that theft or fraud materializes. *Remijas v. Neiman Marcus*, No. 14-3122 (July 20, 2015, 7th Cir.) (reversed and remanded). This reasoning is consistent with this Court's approach in the *Adobe Systems, Inc. Privacy Litigation*, No. 13-5226. Thus, Wolfson is not only aware of the legal precedent relevant to this case, but is at the forefront of creating it.

Wolfson and AW are currently litigating other privacy-related cases, including data breach class actions against The Regents of the University of California, Shorter University, Uber Technologies, Premera Blue Cross, and Michaels Stores, as well as Telephone Consumer Protection Act ("TCPA") class actions against American Eagle Outfitters, Hollister, Scout Industries, and Wells Fargo Bank.

Recognized for her class action experience, Wolfson is often invited to chair or lecture at seminars on issues pertaining to class action litigation and has been published on topics in this area. (*See* Exhibit A, Wolfson CV, at 5-6.) As a co-chair and panelist, she is currently planning a half day CLE program co-sponsored by the Federal Litigation Section of the Federal Bar Association and the Northern District of California Chapter to take place this fall at the Ceremonial Courthouse, addressing the latest developments in class action practice.

Recognized for her privacy litigation experience, Wolfson has been invited to lecture about

data breach litigation issues, including seminars pertaining to the Anthem Data Breach. She spoke at the HarrisMartin Data Breach Conferences in March 2014 and 2015 concerning the Neiman Marcus and Anthem data breaches, respectively. Additionally, Ms. Wolfson is invited to speak at the Federal Bar Association's Cybersecurity Seminar this fall. Further, Wolfson was recently selected to serve as a member of the Privacy Subcommittee of the State Bar of California's Antitrust and Unfair Competition Law Section.

### III. WOLFSON HAS DEMONSTRATED THE ABILITY TO WORK COOPERATIVELY WITH OTHER PLAINTIFFS' COUNSEL AND DEFENSE COUNSEL

As described above, Wolfson has repeatedly demonstrated her ability to work with other plaintiffs' counsel, in both lead and subordinate positions. Moreover, in this case, Wolfson has already shown her collaborative and leadership skills with regard to counsel who support her application, as well as those who are competing with her for leadership. In February 2015, Wolfson attended in person a meeting of plaintiffs' counsel organized by Cohen & Malad, LLP in Palm Springs, California. There, she shared factual findings and discussed case theories and strategies with the group, as well as with many who attended on a one-on-one basis, be they practitioners experienced in the data privacy area or those new to this area. During the ensuing six months, Wolfson has stayed in contact with numerous plaintiffs' counsel, freely offering her ideas on all factual, legal, and logistical strategies, including discussions with defense counsel.

Further, Ms. Wolfson values and demonstrates professionalism not only in her dealings with co-counsel, but with opposing counsel as well. She is well-regarded by the defense bar as an experienced and zealous advocate, but also a consummate professional. She often collaborates with past and present opposing counsel on continuing legal education projects and bar activities. For example, in October 2014, she was invited by opposing counsel Angel Garganta of Venable, LLP, to conduct a mock class certification hearing as part of Venable's in-house marketing event, with Judge Patel (Ret.) presiding. (*See* Exhibit A, Wolfson CV, at 5.) Ms. Wolfson strongly believes that civility and professionalism benefits all parties, their counsel, the judiciary, and the legal path toward justice.

## IV. WOLFSON HAS BEEN AND CONTINUES TO BE WILLING AND ABLE TO COMMIT TO A TIME-CONSUMING PROCESS AND HAS ACCESS TO SUFFICIENT RESOURCES TO PROSECUTE THIS LITIGATION IN A TIMELY MANNER

With nearly two decades of complex and class action litigation behind her, Wolfson well understands both the time and financial commitments that this type of high stakes litigation demands. Wolfson is also aware that the Court expects the litigation to move promptly and efficiently. She does not take these obligations lightly and would not ask the Court to appoint her lead unless she was certain she could meet these obligations. Without equivocation, Wolfson assures the Court that she and her firm have both the staff and the financial resources to lead and manage this case promptly and efficiently to a successful conclusion.

AW's staff size (eight attorneys) is large enough for the case to be staffed appropriately, but modest enough to assure the Court that Wolfson's approach to the case will be acutely aware of efficiencies and avoid any duplication of effort. As a testament to AW's financial health and sound judgment, AW has never borrowed funds from any parties, but has thrived and grown on the proceeds it brings in through its members' efforts. Such financial health is the result of its principals never overextending their financial commitments.

AW can undoubtedly meet the human and financial resource commitments this case requires. As an extra assurance to the Court, the counsel representing those plaintiffs who join in this application stand ready, willing, and able to provide whatever support Wolfson asks of them. These prominent firms' resumes and qualifications are attached hereto as Exhibit B. The Court should note that all these firms have extensive complex and class action litigation experience, and many have extensive data breach experience. These esteemed firms' choice to support Wolfson speaks volumes about her qualifications and leadership skills.

Furthermore, Wolfson has already demonstrated her commitment to the case and the plaintiff class over the last six months. After filing the first of all the cases six months ago, Wolfson spent significant time continuing to investigate the developing facts, conferring with retained consultants, sharing facts and her legal expertise with other counsel, and conferring with them about strategy. Further, Wolfson has composed a discovery preservation letter and plaintiff vetting questionnaire and

has directed her staff to set up systems to promptly begin the plaintiff vetting process in the event the Court appoints her lead, or to share with those who are appointed if Wolfson is not appointed. Wolfson understands that this time may not be billable.

Additionally, Wolfson has thought through a streamlined legal strategy, as well as an efficient approach to the scheduling in this case. Under Wolfson's approach, the claims of the putative class members would be pursued through traditional common law theories, and the goal is to recover (1) out-of-pocket expenses relating to actual identity theft, (2) the cost associated with protecting oneself against future identity theft, and (3) "overpayment" for the data protection services that the class paid for, and that Defendants promised, but never delivered. *See Remijas v. Neiman Marcus*; *see also Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1322, 1328 (11th Cir. 2012) (re: identity theft and overpayment, respectively).

## V. IMPORTANT SCHEDULING ISSUES

While Wolfson is continuing to meet and confer with Temporary Interim Lead Counsel on the proposed pre-certification scheduling in this matter, she respectfully requests that the Court take the following key suggestions into consideration, irrespective of whom the Court ultimately appoints as lead counsel:

1. On the day that lead counsel is appointed (the "Appointment Date"), the Court should order Defendants to begin informally producing relevant core documents already in their possession, such as (a) all forensic reports by Mandiant, as well as any other reports compiled as a result of investigations conducted after the breach by Defendants or third parties, and (b) all documents produced to the government as a result of its investigation, to be produced 14 days after the Appointment Date along with initial disclosures. These documents are relevant and readily available to Defendants, and the putative class should not be forced to wait for formal discovery to be served in order to obtain this basic information after six months of stalemate.

2. Also on the Appointment Date, the Court should order that Defendants identify all relevant ESI data bases and custodians, Plaintiff provide search terms, and the parties begin the ESI meet and confer process with the goal of coming to agreement prior to the service of formal discovery responses.

3. As discussed on the record at the Preliminary Case Management Conference on July 31, 2015, Defendants are proposing a schedule under which the expert discovery deadline would precede class certification briefing, and *Daubert* motions would be briefed simultaneously with class certification briefing, and heard prior to class certification. Wolfson respectfully submits that this approach is misguided.

First, at the class certification stage, "district courts are not required to conduct a full *Daubert* analysis." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 495 (C.D. Cal. 2012) (distilling Ninth Circuit holdings). Thus, while Defendants may wish to bring *Daubert* challenges, Plaintiffs do not concede that such an analysis is appropriate in relation to class certification.

Second, it is not advisable to close *all* fact and expert discovery prior to class certification. Depending on what classes are certified, the issues remaining for trial may vary, and it may not be possible to know all the subjects on which expert discovery is needed until after certification. Finally, if the Court denies class certification, such a schedule would result in an extraordinary waste of resources, as experts would have been retained and prepared to testify on issues not even yet raised, when the case is limited to individual relatively low-value claims.

A more efficient approach would be to have certification-related expert discovery deadlines precede certification briefing. While the parties could file *Daubert* motions prior to or simultaneously with certification briefing, the deadline to file such motions should fall after the Court has issued its decision on class certification, and sufficiently in advance of trial to allow the parties to prepare for trial with the benefit of such rulings.

V. **FEES**

In order to ensure that duplicative billing is avoided, Wolfson would implement billing guidelines, subject to the Court's approval, and would require that all bills be submitted on a monthly basis for *in camera* review. Wolfson's fee application would comport with 9th Circuit law and the requested billing rates would comport with counsel's experience and customary billing rates for San Jose, California.

VI. **CONCLUSION**

For all the foregoing reasons, the undersigned request that the Court appoint Tina Wolfson as

Lead Counsel for this litigation. Alternatively, Wolfson is willing, ready, and able to serve the plaintiff class in any capacity that the Court deems appropriate.

Dated: August 20, 2015

Respectfully Submitted,

/s/ Tina Wolfson
Tina Wolfson
**AHDOOT & WOLFSON, PC**
1016 Palm Avenue
West Hollywood, CA 90069
Tel: 310-474-9111
Fax: 310-474-8585
twolfson@ahdootwolfson.com

*Proposed Lead Counsel; Counsel for Plaintiffs Samantha Kirby (Case No. 15-2636), Colleen Lesher and Vince Kandis (Case No. 15-2836)*

David S. Casey, Jr.
Gayle M. Blatt
Wendy M. Behan
Jason C. Evans
**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD LLP**
110 Laurel Street
San Diego, CA 92101
Tel: 619-238-1811
Fax: 619-544-9232
dcasey@cglaw.com
gmb@cglaw.com
wbehan@cglaw.com
jevans@cglaw.com

*Counsel for Plaintiffs Mary Jo Meer, Dan Shulman, and Sarah Shulman (Case No. 15-2821)*

Katrina Carroll
Kyle A. Shamberg
**LITE DEPALMA GREENBERG, LLC**
211 West Wacker Drive, Suite 500
Chicago, IL 60613
Tel: 312-750-1265
kcaroll@litedepalma.com
kshamberg@litedepalma.com

*Counsel for Plaintiff Cliff Sojourner*

*(Case No. 15-637)*

Joseph G. Sauder
Matthew D. Schelkopf
Benjamin F. Johns
Joseph B. Kenney
**CHIMICLES & TIKELLIS LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Tel: 610-642-8500
Fax: 610-649-3633
jgs@chimicles.com
mds@chimicles.com
bfj@chimicles.com
jbk@chimicles.com

*Counsel for Plaintiff John Keyser*
*(Case No. 15-2644)*

Bryan L. Clobes
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
1101 Market Street
Philadelphia, PA 19107
Tel: 215-864-2800
Fax: 215-864-2810
bclobes@caffertyclobes.com

*Counsel for Plaintiff Jacob Harker*
*(Case No. 15-2841)*

Joseph J. Siprut
**SIPRUT PC**
17 North State Street, Suite 1600
Chicago, IL 60602
Tel: 312-236-0000
Fax: 312-267-1906
jsiprut@siprut.com

*Counsel for Plaintiffs Colleen Lesher and Vince Kandis (Case No. 15-2836)*

Steven R. Jaffe
Mark S. Fistos
Seth M. Lehrman
**FARMER, JAFFE, WEISSING, EDWARDS, FISTOS & LEHRMAN, P.L.**
425 North Andrews Avenue, Suite 2

12

JOINT MOTION TO APPOINT TINA WOLFSON AS LEAD COUNSEL
CASE NO. 5:15-md-02617-LHK

Fort Lauderdale, FL 33301
Tel: 954-524-2820
Fax: 954-524-2822
steve@pathtojustice.com
mark@pathtojustice.com
seth@pathtojustice.com

*Counsel for Plaintiffs Margaret McKinley and Nicholas Bowes (Case No. 15-2650), and Alenka Maric (Case No. 15-2866)*

Paul C. Whalen
**THE LAW OFFICES OF PAUL C. WHALEN, P.C.**
768 Plandome Road
Manhasset, NY 11030
Tel: 516-426-6870
Fax: 212-658-9685
pcwhalen@gmail.com

*Counsel for Plaintiff Sean Nicoll (Case No. 15-2878)*

Jasper D. Ward IV
Alex C. Davis
**JONES WARD PLC**
Marion E. Taylor Building
312 South Fourth Street, 6th Floor
Louisville, KY 40202
Tel: 502-882-6000
Fax: 502-587-2007
jasper@jonesward.com
alex@jonesward.com

*Counsel for Plaintiffs Matthew McGill and Timothy Whalen (Case No. 15-2863)*

Troy N. Giatras
Matthew Stonestreet
**THE GIATRAS LAW FIRM, PLLC**
118 Capitol Street, Suite 400
Charleston, WV 25301
Tel: 304-343-2900
Fax: 304-343-2942
troy@thewvlawfirm.com
matt@thewvlawfirm.com

*Counsel for Plaintiffs Lisa Shiltz, Jennifer Ooten, and Rianna Ooten (Case No. 15-2892)*

13
JOINT MOTION TO APPOINT TINA WOLFSON AS LEAD COUNSEL
CASE NO. 5:15-md-02617-LHK

## CERTIFICATE OF SERVICE

I, Tina Wolfson, counsel for Plaintiffs Samantha Kirby, Colleen Lesher, and Vince Kandis, hereby certify that on July 16, 2015, I caused to be filed true and correct copies of the foregoing JOINT MOTION FOR APPOINTMENT OF TINA WOLFSON AS LEAD COUNSEL electronically using the Court's electronic case filing (CM/ECF) system, which automatically generated and sent a notice of electronic filing to the e-mail addresses of all counsel of record.

Dated: August 20, 2015              /s/ Tina Wolfson
                                    Tina Wolfson