UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IN RE ANTHEM, INC. DATA BREACH ) 15-MD-02617 LHK
LITIGATION. )
) SAN JOSE, CALIFORNIA
)
) OCTOBER 23, 2015
)
_____ ) PAGES 1-86

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE LUCY H. KOH
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

FOR THE PLAINTIFFS        COHEN MILSTEIN
                          BY:  ANDREW N. FRIEDMAN
                          1100 NEW YORK AVENUE, N.W.
                          SUITE 500, WEST TOWER
                          WASHINGTON, D.C.  20005

                          ALTSHULER BERZON
                          BY:  EVE H. CERVANTEZ
                               MEREDITH JOHNSON
                          177 POST STREET, SUITE 300
                          SAN FRANCISCO, CALIFORNIA  94108

APPEARANCES CONTINUED ON NEXT PAGE

OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                            CERTIFICATE NUMBER 9595

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED WITH COMPUTER

1    APPEARANCES (CONTINUED)

2    FOR THE PLAINTIFFS:    STUEVE, SIEGEL & HANSON
                            BY:  NORMAN E. SIEGEL (BY PHONE)
3                           460 NICHOLS ROAD, SUITE 200
                            KANSAS CITY, MISSOURI  64112
4
                            ROBINSON, CALCAGNIE, ROBINSON,
5                           SHAPIRO & DAVIS
                            BY:  DANIEL S. ROBINSON (BY PHONE)
6                           19 CORPORATE PLAZA DRIVE
                            NEWPORT BEACH, CALIFORNIA  92660
7
                            WEISS LAW LLP
8                           BY:  LEIGH A. PARKER
                            1516 SOUTH BUNDY DRIVE, SUITE 309
9                           LOS ANGELES, CALIFORNIA  90025

10                          FEINSTEIN, DOYLE, PAYNE & KRAVEC
                            BY:  WYATT LYSON
11                          429 FORBES AVENUE, 17TH FLOOR
                            PITTSBURGH, PENNSYLVANIA  15219
12
                            GOMEZ TRIAL ATTORNEYS
13                          BY:  DEBORAH S. DIXON
                            655 WEST BROADWAY, SUITE 1700
14                          SAN DIEGO, CALIFORNIA  92101

15   FOR THE DEFENDANTS:    HOGAN LOVELLS
                            BY:  CRAIG A. HOOVER
16                               PETER R. BISIO
                            555 THIRTEENTH STREET, NW
17                          WASHINGTON, D.C.  20004

18                          BY:  MAREN J. CLOUSE
                                 DESMOND HOGAN
19                          4085 CAMPBELL AVENUE, SUITE 100
                            MENLO PARK, CALIFORNIA  94025
20
                            TROUTMAN SANDERS
21                          BY:  CHAD R. FULLER
                            11682 EL CAMINO REAL, SUITE 400
22                          SAN DIEGO, CALIFORNIA  92130

23                          KIRKLAND AND ELLIS
                            BY:  BRIAN KAVANAUGH
24                          300 NORTH LASALLE
                            CHICAGO, ILLINOIS  60654

25

```
1     SAN JOSE, CALIFORNIA                    OCTOBER 23, 2015

2                       P R O C E E D I N G S

3        (COURT CONVENED AT 4:05 P.M.)

4             THE COURT:  GOOD AFTERNOON AND WELCOME.

5             THE CLERK:  CALLING CASE 15-MD-02617, IN RE: ANTHEM

6     DATA BREACH LITIGATION.

7        IF THE PARTIES THAT ARE PRESENT WOULD PLEASE STATE THEIR

8     APPEARANCES FOR THE RECORD.

9             MR. FRIEDMAN:  GOOD AFTERNOON, YOUR HONOR.

10    ANDREW FRIEDMAN WITH COHEN, MILSTEIN, SELLERS & TOLL FOR THE

11    PLAINTIFFS.

12            MS. CERVANTEZ:  GOOD AFTERNOON, YOUR HONOR.

13    EVE CERVANTEZ FROM ALTSHULER BERZON WITH PLAINTIFFS, AND WITH

14    ME IS MEREDITH JOHNSON, ALSO WITH ALTSHULER BERZON.

15            THE COURT:  OKAY.  GOOD AFTERNOON.  WELCOME.

16            MR. MORY:  GOOD AFTERNOON, YOUR HONOR.  CLAUS MORY

17    WITH GIRARDI & KEESE REPRESENTING THE NEW PLAINTIFFS.

18            THE COURT:  OKAY.  I'M SORRY.  GIVE ME YOUR NAME ONE

19    MORE TIME, PLEASE.

20            MR. MORY:  CLAUS MORY.

21            THE COURT:  OKAY.  M-O-R-E-N?

22            THE CLERK:  M-O-R-Y.

23            THE COURT:  AND YOU'RE WITH GIRARD & GIBBS, CORRECT?

24            MR. MORY:  GIRARDI & KEESE.

25            THE COURT:  ALL RIGHT.  THANK YOU.
```

1          MR. HOOVER:  GOOD AFTERNOON, YOUR HONOR.

2     CRAIG HOOVER FROM HOGAN LOVELLS FOR ANTHEM AND OTHER

3     DEFENDANTS.  WITH ME I HAVE DESMOND HOGAN, PETER BISIO, AND

4     MAREN CLOUSE.

5          THE COURT:  OKAY.  AND MAREN CLOUSE IS -- CAN YOU

6     SPELL THAT, PLEASE?

7          MS. CLOUSE:  M-A-R-E-N, LAST NAME C-L-O-U-S-E.

8          THE COURT:  C-L-O-U-S-E.  OKAY.  THANK YOU.

9          MR. FULLER:  GOOD AFTERNOON, YOUR HONOR.  CHAD FULLER

10    FROM TROUTMAN SANDERS FOR ANTHEM DEFENDANTS.

11         THE COURT:  OKAY.  THANK YOU.

12       AND IS THERE ANYONE ON THE LINE?

13         THE CLERK:  WE DO HAVE JUST SIX PEOPLE ON THE LINE,

14    SO I'LL HAVE THEM STATE THEIR APPEARANCES.

15         THE COURT:  YES, PLEASE.

16         THE CLERK:  OKAY.  WOULD THE PARTIES ON THE PHONE

17    PLEASE STATE THEIR APPEARANCES?

18         MS. DIXON:  GOOD AFTERNOON, YOUR HONOR.  THIS IS

19    DEBORAH DIXON.  I AM APPEARING BECAUSE WE HAVE THE SAN DIEGO

20    WICKENS CASE, AS WELL AS A CASE IN THE MDL.

21         THE COURT:  OKAY.  THANK YOU.  WELCOME.

22         MS. PARKER:  GOOD AFTERNOON, YOUR HONOR.

23    LEIGH PARKER FROM WEISS LAW REPRESENTING THE SMILOW PLAINTIFFS

24    IN THE EASTERN DISTRICT OF NEW YORK CASE, RECENTLY TRANSFERRED

25    TO THIS COURT.

1          MR. LYSON:  GOOD AFTERNOON, YOUR HONOR.  WYATT LYSON

2    FROM FEINSTEIN, DOYLE, PAYNE & KRAVEC ON BEHALF OF PLAINTIFFS

3    GIOTTA AND BENTON.

4          THE COURT:  OKAY.  WAIT ONE SECOND.

5          THE -- I THOUGHT THERE WAS A SMILOW V. ANTHEM CASE IN THE

6    EASTERN DISTRICT OF NEW YORK FOR WHICH THERE WAS A PENDING

7    MOTION TO REMAND TO STATE COURT.

8          MS. PARKER, ARE YOU IN THAT CASE?  OR --

9          MS. PARKER:  YES, YOUR HONOR.  LEIGH PARKER OF WEISS

10   LAW.  MY FIRM IS COUNSEL FOR THAT CASE.  I'M APPEARING TODAY

11   FOR MY COLLEAGUES IN NEW YORK FOR WHOM IT'S AFTER HOURS RIGHT

12   NOW.

13         THE COURT:  OH, OKAY.  SO I GUESS I NEED TO BACK UP.

14   WAS THE MOTION TO REMAND DECIDED?

15         MS. PARKER:  NO, IT WAS NOT, YOUR HONOR.

16         THE COURT:  OH, OKAY.  OH.  SO YOU'RE -- OH, YOU'RE

17   JUST HERE AS AN OBSERVER THEN?  DOES THAT SOUND RIGHT?

18         MS. PARKER:  WE WOULD LIKE TO PRESENT THE MOTION TO

19   REMAND TO THIS COURT, AND WE ARE HERE TODAY TO ANSWER ANY

20   QUESTIONS, AND ALSO TO ASK IF THE COURT WOULD LIKE TO SET A

21   BRIEFING AND HEARING SCHEDULE.

22         MR. HOGAN:  AND, YOUR HONOR, THIS IS DESMOND HOGAN

23   FOR THE ANTHEM DEFENDANTS.

24         THE JPML ISSUED ITS TRANSFER ORDER AND TRANSFERRED THE

25   CASE HERE.  THE PLAINTIFFS HAD ARGUED AGAINST TRANSFER, THAT

```
1    THERE WAS A PENDING MOTION TO REMAND IN STATE COURT, IN FEDERAL

2    COURT, AND THE EASTERN DISTRICT OF NEW YORK.

3         THE JPML SAID THAT IS NO REASON TO WITHHOLD TRANSFER, SO

4    THE MOTION TO REMAND IS NOW PENDING BEFORE THIS COURT.

5              THE COURT:  OH, OKAY.  SORRY.  I MISSED THAT KEY

6     POINT.  THAT CASE IS FULLY HERE NOW?

7              MR. HOGAN:  YEAH, IT IS.

8              THE COURT:  OH, OKAY.

9              MR. HOGAN:  THERE IS AN OCTOBER 13TH, 2015, JPML

10    ORDER WITH A -- DOCKET NUMBER 18 IN THE JPML DOCKET IN THIS

11    MATTER.

12             THE COURT:  OKAY.  LET ME ASK A QUESTION.  HAS THE

13    CLERK OF COURT FOR THE EASTERN DISTRICT OF NEW YORK, HAVE THEY

14    SUBMITTED WHAT THEY NEED TO SUBMIT FOR THIS TO BE ON OUR

15    DOCKET?

16        AND MAYBE MS. SAKAMOTO MIGHT KNOW.

17             THE CLERK:  YES, JUDGE, THEY HAVE.

18             THE COURT:  SO WE HAVE IT OFFICIALLY?

19             THE CLERK:  YES, WE HAVE THE CASE FILE.

20             THE COURT:  ALL RIGHT.  SORRY.  I WASN'T AWARE OF

21    THAT.  SO IT HAS OFFICIALLY BEEN TRANSFERRED.

22             MR. HOGAN:  YES.

23             THE COURT:  OKAY.  ALL RIGHT THEN.

24        NOW, ARE THE MOTION TO REMAND ISSUES SIMILAR TO THE MOTION

25    TO REMAND ORDERS I'VE ALREADY ISSUED?
```

1          MR. HOGAN:  YES, YOUR HONOR.

2          THE COURT:  OKAY.

3          MR. HOGAN:  I BELIEVE THAT THE NOBLE REMAND ORDER IS

4     DIRECTLY ON POINT, AND THE NOBLE REMAND ORDER IS ON THIS

5     DOCUMENT 274, THIS COURT'S DOCKET.

6          IN THE NOBLE REMAND ORDER, YOU RULED THAT THERE WAS

7     COMPLETE ERISA PREEMPTION, THAT THE STATE LAW CLAIMS IN THE

8     NOBLE CASE WERE -- SHOULD -- WERE SUFFICIENT FOR COMPLETE ERISA

9     PREEMPTION THAT WARRANTED THE DENIAL OF THE MOTION TO REMAND.

10         THE REASONING OF YOUR ORDER IS DIRECTLY ON POINT WITH THE

11    PENDING MOTION IN THE SMILOW CASE COMING OUT OF THE EASTERN

12    DISTRICT OF NEW YORK.  THE ISSUES ARE THE SAME.  THERE WERE

13    SIMILAR ALLEGATIONS IN THE COMPLAINT THAT WARRANTED THE DENIAL

14    OF THE MOTION TO REMAND IN NOBLE THAT APPLY WITH EQUAL FORCE IN

15    THIS CASE, AND WE THINK THE LAW OF THE CASE WARRANTS, BASED ON

16    THE SAME ANALYSIS THAT YOU USED IN NOBLE, THAT THE MOTION TO

17    REMAND SHOULD BE DENIED VIS-A-VIS THE SMILOW CASE COMING OUT OF

18    THE EASTERN DISTRICT.

19         THE COURT:  AND, MS. PARKER, I ASSUME THAT YOU

20    DISAGREE.  IS THAT RIGHT?

21         MS. PARKER:  YES, YOUR HONOR, WE DISAGREE.

22         THE COURT:  OKAY.

23         MS. PARKER:  THE SMILOW CASE IS BROUGHT ON BEHALF OF

24    NEW YORK PLAINTIFFS UNDER NEW YORK LAW.

25         THE COURT:  OKAY.

1    MR. HOGAN:  JUST TO RESPOND TO THAT, YOUR HONOR --

2    THE COURT:  SO WE --

3    MR. HOGAN:  I'M SORRY, YOUR HONOR.  I DIDN'T MEAN TO

4    TALK OVER YOU.

5    JUST TO RESPOND, THE MISSOURI CASE WAS BROUGHT ON BEHALF

6    OF MISSOURI PLAINTIFFS UNDER MISSOURI LAW.  THAT IS A

7    DISTINCTION WITHOUT A DIFFERENCE.

8    WHAT MATTERS IS THE SUPREME COURT PRECEDENT AND THE

9    CONTROLLING PRECEDENT CITED IN YOUR NOBLE ORDER ABOUT WHAT

10   COMPLETE ERISA PREEMPTION IS AND THE ALLEGATIONS IN THE

11   COMPLAINT.

12   THE ALLEGATIONS IN THE SMILOW COMPLAINT OUT OF THE EASTERN

13   DISTRICT OF NEW YORK INVOLVE ALLEGATIONS THAT WE PROVIDED

14   SECURITY SERVICES TO DATA AND THAT WE BREACHED THOSE SERVICES.

15   THAT'S THE ALLEGATIONS, JUST AS THEY WERE IN NOBLE.

16   THE COURT HELD -- THIS COURT HELD THAT THAT WARRANTED

17   COMPLETE ERISA PREEMPTION OF THE STATE LAW CLAIMS IN MISSOURI.

18   THE SAME REASONING APPLIES TO THE STATE COURT CLAIMS, THE

19   STATE CLAIMS IN THE SMILOW CASE COMING OUT OF THE EASTERN

20   DISTRICT OF NEW YORK.

21   THE COURT:  ALL RIGHT.  AND, MS. PARKER, I ASSUME

22   THAT YOU HAVE A RESPONSE TO THAT, BUT INSTEAD OF HAVING FURTHER

23   ARGUMENT TODAY, I WOULD LIKE TO SET A BRIEFING SCHEDULE.  I'M

24   ASSUMING THAT THE SMILOW MOTION FOR REMAND REFERENCES SECOND

25   CIRCUIT LAW.

1          IS THAT CORRECT?  I WOULD ASSUME SO.

2          MS. PARKER:  THAT'S CORRECT, YOUR HONOR.

3          THE COURT:  OKAY.  SO SIMILAR TO THE PREVIOUS TWO

4     REMAND ORDERS, I'D LIKE YOU TO PLEASE, IF YOU WOULD, FILE

5     SUPPLEMENTAL BRIEFS UNDER NINTH CIRCUIT LAW BECAUSE THAT'S WHAT

6     I WILL HAVE TO APPLY, AND WE SHOULD PROBABLY FOLLOW THE SAME

7     PROCEDURE.  I DIDN'T HAVE, YOU KNOW, MOTION, OPPOSITION, REPLY.

8     I THINK I JUST GAVE EACH SIDE AN OPPORTUNITY TO ADDRESS NINTH

9     CIRCUIT LAW.

10          MR. HOGAN:  THAT'S RIGHT.  WE FILED CONTEMPORANEOUS

11    TEN-PAGE BRIEFS, AND WE WOULD BE HAPPY, A WEEK FROM MONDAY, IF

12    THAT IS CONSISTENT WITH WHAT THE COURT WOULD WANT, TO FILE

13    CONTEMPORANEOUS TEN-PAGE BRIEFS EXPLAINING UNDER NINTH CIRCUIT

14    LAW WHY REMAND WOULD BE INAPPROPRIATE.

15          THE COURT:  LET ME ASK MS. PARKER, WOULD A WEEK FROM

16    MONDAY GIVE YOU ENOUGH TIME?  THAT WOULD BE NOVEMBER 2ND.

17          MS. PARKER:  ACTUALLY, YOUR HONOR, MY NEW YORK OFFICE

18    HAS A CONFLICT ON MONDAY, NOVEMBER 2ND.  WE WOULD REQUEST

19    NOVEMBER 3RD IF THAT'S AGREEABLE TO THE COURT.

20          THE COURT:  OH, THAT'S COMPLETELY FINE.  OKAY.  SO

21    THEN LET'S PLEASE HAVE SIMULTANEOUS TEN-PAGE BRIEFS.  PLEASE

22    FILE ON NOVEMBER 3RD OF 2015, REFERENCING NINTH CIRCUIT LAW ON

23    THIS ISSUE OF WHETHER SMILOW V. ANTHEM SHOULD BE REMANDED BACK

24    TO NEW YORK STATE COURT.

25          LET ME ASK MS. SAKAMOTO, DO WE HAVE -- I MEAN, WE PROBABLY

1    WILL NOT HAVE A HEARING, BUT IT'S HELPFUL FOR US TO SET A

2    HEARING DATE BECAUSE THAT'S WHEN WE KNOW WE'VE GOT TO FOCUS ON

3    THIS MOTION AND GET AN ORDER OUT.

4         SO I, UNFORTUNATELY, THINK WE'RE PRETTY IMPACTED, BUT -- I

5    DON'T KNOW IF ANYTHING HAS SETTLED THAT MIGHT OPEN UP A DATE.

6         THE CLERK:  HOW EARLY WOULD YOU LIKE, JUDGE?

7         (DISCUSSION OFF THE RECORD BETWEEN THE COURT AND THE

8    CLERK.)

9         THE COURT:  OKAY.  LET'S SET THE HEARING FOR

10   NOVEMBER 19TH AT 1:30.

11        MS. PARKER:  EXCUSE ME, YOUR HONOR.  THIS IS

12   LEIGH PARKER.  UNFORTUNATELY, MR. RUBIN IS NOT AVAILABLE THAT

13   DATE.

14        THE COURT:  OKAY.  WELL, TO BE FRANK, I REALLY THINK

15   THERE'S NOT GOING TO BE A HEARING.  I DIDN'T HAVE A HEARING ON

16   THE PREVIOUS TWO REMAND MOTIONS.  THIS JUST GIVES US THE

17   ABILITY TO REGULATE OUR WORK FLOW.  IT'S ACTUALLY MORE FOR OUR

18   INTERNAL PURPOSES.

19        BUT IF YOU WOULD LIKE ME TO SET IT ON A DATE WHEN HE'S

20   AVAILABLE, I HAVE MY LAW AND MOTION ON THURSDAYS AT 1:30.  IS

21   THERE --

22        MS. PARKER:  WE'RE SORRY TO BE A TROUBLE, YOUR HONOR.

23   IS TUESDAY, NOVEMBER 17TH, A POSSIBILITY?

24        THE COURT:  ALL RIGHT.  I CURRENTLY HAVE A CIVIL

25   TRIAL SET THAT DATE, AND IT'S A BENCH TRIAL, SO I NEED TO BE

1    HERE FOR THAT.

2         AND I THINK -- IF MY CRIMINAL TRIAL THAT'S SET FOR THE 9TH

3    FOR SOME REASON DOESN'T GO, THEN I COULD ADVANCE THE LAST TWO

4    DAYS OF MY CIVIL TRIAL, BUT RIGHT NOW I NEED TO LEAVE THE 9TH,

5    12TH, 13TH, AND 16TH FOR MY CRIMINAL TRIAL AND THE 17TH FOR MY

6    CIVIL TRIAL.

7         (DISCUSSION OFF THE RECORD BETWEEN THE COURT AND THE

8    CLERK.)

9         THE COURT:  WHAT ABOUT FRIDAY, NOVEMBER 20TH THEN?

10   WE CAN SPECIALLY SET IT ON A FRIDAY.

11        MS. PARKER:  AT WHAT TIME, YOUR HONOR?

12        THE COURT:  DO YOU WANT TO SAY 2:00 O'CLOCK?

13        MR. HOGAN:  I'M AVAILABLE AT THE COURT'S CONVENIENCE.

14   IF WE COULD HAVE A MORNING SETTING SO I CAN FLY BACK ACROSS THE

15   COUNTRY, I WOULD PREFER THAT.  BUT IF 2:00 O'CLOCK IS --

16        THE COURT:  THAT'S FINE.  WHAT ABOUT 11:00?

17        MR. HOGAN:  THAT WOULD BE TERRIFIC.

18        THE COURT:  OKAY.  WHAT ABOUT 11:00 THEN?

19        MS. PARKER:  YES.  THANK YOU, YOUR HONOR.

20        THE COURT:  OKAY.  SO THAT WOULD BE FRIDAY,

21   NOVEMBER 20TH.

22        AND I REALLY HIGHLY EXPECT THAT SOMETIME EARLY THAT WEEK,

23   YOU WILL BE GETTING NOTICE THAT IT'S BEING VACATED.

24        MR. HOGAN:  I LOOK FORWARD TO THAT NOTICE.  THANK

25   YOU, YOUR HONOR.

```
1            THE COURT:  ALL RIGHT.  SO WE'LL SET IT FOR

2    11:00 A.M. ON FRIDAY, NOVEMBER 20TH.  OKAY?

3            MS. PARKER:  YES.  THANK YOU.

4            THE COURT:  OKAY.

5       SO I'M SORRY.  AFTER MS. PARKER, I DID NOT GET YOUR NAME,

6    SO IF YOU WOULD PLEASE RESTATE YOUR APPEARANCE.  I WAS TOO BUSY

7    TRYING TO FIND MY SMILOW NOTES.

8            MS. DIXON:  GOOD AFTERNOON, YOUR HONOR.

9            MR. ROBINSON:  DAN ROBINSON ON THE LIU, ZAND, SLATER,

10   AND MACROS CASES.

11           THE COURT:  OKAY.  ONE SECOND.  LET ME TRY TO FIND

12   THOSE.

13       OH.  WHERE ARE THOSE?  OKAY.  THOSE ARE IN THE MDL;

14   CORRECT?

15           THE CLERK:  YES, ALL THESE CASES ARE.

16           THE COURT:  OH, OKAY.  ALL RIGHT.  SO WE'VE GOT

17   MR. DANIEL ROBINSON.  OKAY.  THANK YOU.

18           MR. SIEGEL:  YOUR HONOR, THIS IS NORM SIEGEL FROM

19   KANSAS CITY AT STUEVE, SIEGEL & HANSON.  WE'VE BEEN WORKING AT

20   THE DIRECTION OF LEAD COUNSEL ON VETTING THE CLASS

21   REPRESENTATIVES IN A CONSOLIDATED AMENDED COMPLAINT AND I'M

22   PARTICIPATING THIS AFTERNOON MERELY AS AN OBSERVER.

23           THE COURT:  OKAY.  THANK YOU.  WELCOME.

24           MR. SIEGEL:  THANK YOU.

25           THE COURT:  THANK YOU.  WE SHOULD HAVE AT LEAST ONE
```

1    MORE PERSON ON THE LINE.

2              MS. DIXON:  YES, YOUR HONOR.  SORRY, YOUR HONOR.

3    THIS IS DEBORAH DIXON.

4              THE COURT:  OH, BUT YOU ALREADY STATED --

5              MS. DIXON:  I AM APPEARING --

6              THE COURT:  -- YOU'RE APPEARING ON BEHALF OF THE

7    SAN DIEGO WICKENS CASE BEFORE JUDGE MAAS IN SUPERIOR COURT;

8    CORRECT?

9              MS. DIXON:  YES, YOUR HONOR.  I JUST DIDN'T KNOW IF

10   YOU HAD CAUGHT THAT.  THANK YOU.

11             THE COURT:  OKAY.  THANK YOU.

12             MR. LYSON:  AND WYATT LYSON FOR PLAINTIFFS GIOTTA AND

13   BENTON, JUST AS AN OBSERVER.

14             THE COURT:  OKAY.  AND LET ME ASK --

15        (DISCUSSION OFF THE RECORD BETWEEN THE COURT AND THE

16   CLERK.)

17             THE COURT:  OKAY.  ALL RIGHT.  AND THAT IS IN THIS

18   CASE, RIGHT?

19             THE CLERK:  YES, JUDGE.

20             THE COURT:  ALL RIGHT.  THANK YOU.

21        IS THERE ONE OTHER PERSON?  I UNDERSTOOD THERE WERE SIX ON

22   THE PHONE.

23             MR. KAVANAUGH:  YES, YOUR HONOR, GOOD AFTERNOON.

24   BRIAN KAVANAUGH OF KIRKLAND AND ELLIS ON BEHALF OF THE

25   BLUE CROSS BLUE SHIELD ASSOCIATION.  WE'VE NOT YET BEEN SERVED

1    IN THE CONSOLIDATED AMENDED COMPLAINT, BUT WE'VE BEEN NAMED.

2         THE COURT:  OKAY.  THANK YOU.

3      YOU'RE FROM BLUE CROSS BLUE SHIELD ASSOCIATION?

4         MR. KAVANAUGH:  CORRECT, YOUR HONOR.

5         THE COURT:  AND YOU ARE FROM KIRKLAND AND ELLIS; IS

6    THAT CORRECT?

7         MR. KAVANAUGH:  THAT'S CORRECT.

8         THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

9       NOW, WHY DON'T WE FOLLOW UP WITH -- SO THESE OTHER CASES,

10   THE SMILOW CASE IN THE CENTRAL DISTRICT OF CALIFORNIA, I CALLED

11   JUDGE HOGUE, AS YOU ASKED ME TO AFTER THE LAST CMC, AND SHE

12   E-MAILED ME BACK SAYING "I DON'T EVEN HAVE THE CASE ANYMORE,

13   IT'S BEEN REMOVED TO FEDERAL COURT."

14      SO WHERE IS THAT CASE NOW?  BECAUSE WE CAN'T SEEM TO FIND

15   IT.  WHAT'S THE STATUS?

16        MR. HOOVER:  YOUR HONOR, MY UNDERSTANDING IS THAT IT

17   WAS IN THE COMPLEX DOCKET IN LOS ANGELES.

18        THE COURT:  YES.

19        MR. HOOVER:  AND THAT IT WAS ON HOLD PURSUANT TO THE

20   PROCEDURES OF THAT COURT FOR THE TIME BEING.  THAT'S WHAT WE

21   KNOW ABOUT THE STATUS OF IT.  I'M NOT AWARE OF IT LEAVING STATE

22   COURT.

23        THE COURT:  WELL, I -- SO I CONTACTED HER, AS YOU

24   REQUESTED, AND SHE E-MAILED ME BACK ON SEPTEMBER 15TH SAYING,

25   "WELL, THAT CASE WAS REMOVED TO FEDERAL COURT AND IT'S NO

1    LONGER ON OUR DOCKET."

2              MR. HOOVER:  IT WAS, IN FACT, REMOVED TO FEDERAL

3    COURT, BUT THEN THE CASE WAS REMANDED.

4              THE COURT:  WELL, I EXPLAINED THAT, TOO, AND I SAID,

5    "OH, I DIDN'T EVEN KNOW THAT WAS POSSIBLE BECAUSE THAT WAS

6    ALREADY PREVIOUSLY REMANDED," AND THEN I DIDN'T HEAR BACK.

7         SO I ASSUME -- SHE DOESN'T THINK SHE HAS IT.

8              MR. HOOVER:  OKAY.  WE CAN CERTAINLY FOLLOW UP, YOUR

9    HONOR.

10             THE COURT:  OKAY.  IF YOU WOULD, PLEASE.

11             MR. HOOVER:  SURE.

12             THE COURT:  ALL RIGHT.  SO YOUR UNDERSTANDING IS IT'S

13   STILL IN SUPERIOR COURT IN LOS ANGELES?

14             MR. HOOVER:  THAT'S CORRECT.

15             THE COURT:  OKAY.  WELL, I DON'T KNOW WHAT ELSE TO

16   DO.  WHAT DO YOU -- HOW DO YOU WANT TO PROCEED ON THIS ONE?

17             MR. HOOVER:  WELL, MAYBE WE CAN TALK ABOUT WICKENS

18   AND HOW WE'RE GOING TO PROCEED THERE.  I THINK IF WE CAN

19   LOCATE -- WHY DON'T WE LOOK INTO WHY THE CASE APPARENTLY IS NOT

20   KNOWN TO THE JUDGE TO BE THERE?

21             THE COURT:  OKAY.  AND SHE SAID THAT HER STAFF HAD

22   CHECKED AND THAT CASE WAS NO LONGER ON THEIR DOCKET AND THAT IT

23   HAD BEEN REMOVED.

24             MR. HOOVER:  THE ONLY THING I CAN GATHER FROM THAT IS

25   THAT SOMEHOW IT GOT HUNG UP PERHAPS IN THE REMAND TRANSFER

```
 1       PROCESS.  BUT I DON'T KNOW.

 2               THE COURT:  OKAY.  SO IF YOU WOULD LOOK INTO THAT?

 3       CAN YOU JUST FILE A SMILOW CENTRAL DISTRICT OF CALIFORNIA

 4       UPDATE WITHIN TWO WEEKS?

 5               MR. HOOVER:  YES.  YES, YOUR HONOR.

 6               THE COURT:  OKAY.  THANK YOU.

 7       ALL RIGHT.  NOW, AS YOU REQUESTED, I'VE ALSO BEEN IN TOUCH

 8       WITH JUDGE MAAS DOWN IN SAN DIEGO SUPERIOR AND I FORWARDED TO

 9       HIM THE CASE MANAGEMENT ORDER FROM THE LAST COURT DATE.  HE

10       SIMILARLY FORWARDED TO ME AN ORDER THAT HE DID RECENTLY, I

11       GUESS ABOUT A WEEK AGO OR SOMETHING LIKE THAT.

12       WHAT MORE IS THERE TO DO ON THAT ONE?  ANYTHING?

13               MR. HOOVER:  WELL, YOUR HONOR, WE'VE BEEN CONSULTING

14       WITH LEAD COUNSEL FOR PLAINTIFFS ABOUT THE SITUATION.  WE HAVE

15       SUBMITTED TO YOU A COUPLE OF EXAMPLES OF COORDINATION ORDERS

16       THAT TAKE PLACE TYPICALLY IN MDL'S.

17       WE HAVE MY PARTNER, MICHAEL MADDIGAN, WHO IS GETTING READY

18       FOR TRIAL SO HE'S NOT HERE TODAY, BUT HE'S BEEN IN TOUCH WITH

19       MS. DIXON AND I THINK THAT THERE IS SOME DISCUSSION OF

20       COOPERATING, COORDINATING ON DISCOVERY.

21       BUT THERE'S A DIFFERENCE OF VIEW IN TERMS OF TIMING, AND I

22       THINK THE PLAINTIFFS IN THE WICKENS CASE HAVE EARLIER MOTION TO

23       DISMISS AND CLASS CERTIFICATION DATES.

24               THE COURT:  THEY --

25               MR. HOOVER:  THEY INTEND TO PRESS THOSE.  OF COURSE,
```

1    THOSE ARE THE VERY SAME CLAIMS, CALIFORNIA BREACH OF CONTRACT,

2    CALIFORNIA CONSUMER PROTECTION, THAT THE CO-LEAD COUNSEL FOR

3    PLAINTIFFS HAVE IDENTIFIED ON THEIR LIST OF THINGS.

4         SO YOU WOULD POTENTIALLY BE IN A SITUATION WHERE THERE'S A

5    RULING ON THE VERY SAME ISSUES, THE VERY SAME SIMILAR CLASSES

6    AHEAD OF YOU HAVING A CHANCE TO RULE ON THOSE ISSUES IN THE

7    MDL, WHICH IS NOT IDEAL FROM AN MDL PERSPECTIVE.  BUT I'LL LET

8    PLAINTIFFS' COUNSEL ADDRESS THAT AS WELL.

9              MR. FRIEDMAN:  YOUR HONOR, WE AGREE WITH THAT.  WE'VE

10   SPOKEN WITH MR. HOOVER AND OTHERS ABOUT THAT VERY ISSUE AND

11   THAT IS A CONCERN, A VERY SERIOUS CONCERN THAT PERHAPS THE

12   SAN DIEGO COURT MIGHT GET OUT IN FRONT WITH REGARD TO THE VERY

13   SAME ISSUES THAT YOUR HONOR HAS TO RULE UPON.

14             THE COURT:  BUT THEY CAN DO THAT.

15             MR. FRIEDMAN:  THEY -- IN THEORY, THEY CAN DO THAT,

16   YOUR HONOR.

17        THE QUESTION IS, IS THERE SOMETHING YOUR HONOR CAN DO TO

18   FOLLOW UP WITH THAT CONVERSATION AND PERHAPS EXPLAIN THAT TO

19   THE JUDGE IN SAN DIEGO BECAUSE THAT WOULD PRESENT A VERY

20   AWKWARD SITUATION.

21             MR. HOOVER:  YOUR HONOR, WE --

22             THE COURT:  WELL, I CAN'T -- UNFORTUNATELY -- I'M

23   SORRY TO INTERRUPT YOU, MR. HOOVER -- BUT I CAN'T TELL ANOTHER

24   JUDGE NOT TO PROCEED WITH THEIR WORK.  AND IF HE'S FASTER THAN

25   ME, THEN --

1      MR. HOOVER:  UNDERSTOOD, YOUR HONOR.  I DON'T THINK

2   ANY OF US HERE ARE SAYING THAT YOU CAN ORDER THE JUDGE NOT TO

3   MOVE FASTER THAN YOU.

4      I THINK THE QUESTION IS, AND MY IMPRESSION IS THE JUDGE IS

5   FINE WITH COMMUNICATING -- HE MENTIONED, I THINK IN COURT, THAT

6   HE COMMUNICATED WITH YOU INITIALLY, AND I DON'T KNOW IF HE

7   APPRECIATES THE MAGNITUDE OF THE LANDSCAPE OF THE MDL AND THE

8   ISSUES THAT ARE BEING DECIDED HERE.

9      I KNOW IN OTHER MDL'S I'VE BEEN INVOLVED IN, A

10  CONVERSATION BETWEEN THE MDL JUDGE AND A STATE COURT JUDGE

11  ALMOST ALWAYS LEADS TO THE CONCLUSION THAT THE STATE COURT CASE

12  WILL NOT GET OUT AHEAD OF THE MDL.

13      THE COURT:  UM-HUM.

14      MR. HOOVER:  AND SO I GUESS ALL WE CAN -- ALL WE CAN

15  SUGGEST IS THAT PERHAPS YOU HAVE ONE MORE CONVERSATION AND IF

16  THAT -- IF THAT DOESN'T RESULT IN MORE COORDINATION, THEN SO BE

17  IT AND WE'LL GO FROM THERE.

18      I ALSO WILL SAY THAT --

19      THE COURT:  I DID HAVE THAT CONVERSATION WITH HIM

20  LAST TIME -- I'M SORRY TO INTERRUPT YOU -- AND I THINK HE TAKES

21  PRIDE IN DOING HIS THINGS FASTER THAN OTHER COURTS.  HE SAID

22  HE'D BEEN IN A SIMILAR SITUATION, THE OTHER JUDGE WAS NOT HAPPY

23  THAT HE RULED FASTER, BUT THAT HIS RULINGS CAUSED A SETTLEMENT,

24  WHICH ULTIMATELY BENEFITED THEM BOTH.

25      I HAVE TOLD HIM THAT THIS IS A CONSOLIDATION OF 117 CASES.

```
1    IT IS AN MDL.  I SENT HIM MY CASE SCHEDULE.

2         HE SET HIS CASE SCHEDULE AFTER MY CASE SCHEDULE, AND IF HE

3    WANTS TO PROCEED FASTER, I -- YOU KNOW, I'VE ALREADY HAD THAT

4    CONVERSATION WITH HIM.  HE'S GOING TO DO WHAT HE WANTS TO DO

5    AND HE JUST VERY WELL MAY BE FASTER.

6         NOW, JUST BECAUSE HE RULES FIRST DOESN'T MEAN THAT I'LL BE

7    PERSUADED WITH EVERYTHING HE SAYS.  I MEAN, IT'S JUST LIKE

8    EVERY OTHER CASE.  I MEAN, JUDGES DON'T ALWAYS AGREE, SO -- OR

9    MAYBE I WILL BE PERSUADED.  I DON'T KNOW.  WE'LL HAVE TO SEE.

10        BUT --

11             MR. HOOVER:  UNDERSTOOD, YOUR HONOR.

12             THE COURT:  YEAH.

13             MR. HOOVER:  I THINK -- OBVIOUSLY THE GOAL OF AN MDL

14   IS TO AVOID CONFLICTING RULINGS TO THE EXTENT POSSIBLE.

15        BUT WHEN YOU HAVE A STATE COURT SITUATION, OBVIOUSLY YOU

16   DON'T HAVE THE SAME CONTROL AS YOU DO WITH OTHER FEDERAL CASES.

17             THE COURT:  UM-HUM.

18             MR. HOOVER:  I SHOULD ALSO MENTION THAT AS WE HAVE

19   DISCUSSED WITH MS. DIXON, WE DO INTEND TO TRY TO GET THE

20   CALIFORNIA STATE COURT CASES THAT ARE PENDING IN SAN DIEGO AND

21   LOS ANGELES RESPECTIVELY CONSOLIDATED UNDER -- BY MAKING A

22   MOTION TO THE CHAIR OF THE JUDICIAL COUNCIL UNDER CALIFORNIA

23   RULE OF COURT 3.521.

24             THE COURT:  OKAY.

25             MR. HOOVER:  AND THE GOAL OF THAT BEING NOT HAVING
```

```
1        TWO STATE COURT CASES WITH THE SAME ALLEGATIONS GOING ON AND

2        RATHER HAVING THEM COORDINATED EITHER IN LOS ANGELES OR IN

3        SAN DIEGO.  SO WE PLAN TO FILE THAT MOTION NEXT WEEK.

4                THE COURT:  OKAY.  AND THAT -- AND THAT ONE THE

5        JUDICIAL COUNCIL DECIDES?

6                MR. HOOVER:  YES.

7                THE COURT:  OKAY.  BUT YOU'LL HAVE TO FIND IF THE

8        SMILOW CASE IS STILL IN LOS ANGELES FIRST.

9                MR. HOOVER:  THAT'LL BE OUR MISSION.

10               THE COURT:  OKAY.  ALL RIGHT.

11           WERE THERE ANY OTHER -- SO WE HAVE SMILOW IN L.A. -- OH,

12       ONE OTHER I WANTED TO ASK ABOUT WITH SMILOW IN NEW YORK, AND

13       THAT IS MERTLICH AND KAUFMAN IN WASHINGTON SUPERIOR COURT.

14           DO YOU HAVE ANY MORE THOUGHTS ABOUT WHETHER YOU'RE GOING

15       TO REMOVE EITHER CASE -- I GUESS IT'S TWO CASES, CORRECT? -- TO

16       FEDERAL COURT?

17               MR. HOOVER:  YES.

18               THE COURT:  WHAT'S THE STATUS ON THOSE?

19               MR. HOOVER:  THAT'S CORRECT.  ONE HAS BEEN SERVED,

20       YOUR HONOR, AND THE OTHER HAS NOT BEEN SERVED.

21               THE COURT:  OKAY.

22               MR. HOOVER:  WE ARE ACTIVELY LOOKING AT AND LIKELY

23       WILL REMOVE BOTH OF THOSE CASES.

24               THE COURT:  OKAY.  ALL RIGHT.  ARE THERE ANY OTHERS?

25       I THINK THAT WAS IT FOR MY LIST.  WERE THERE ANY OTHERS?
```

1            MR. HOOVER:  NOT THAT I'M AWARE OF.

2            THE COURT:  OKAY.  NOW, ON THE COORDINATION --

3            MR. FRIEDMAN:  EXCUSE ME, YOUR HONOR.

4            THE COURT:  OH, SORRY.  GO AHEAD, PLEASE.

5            MR. FRIEDMAN:  SORRY.  I DIDN'T MEAN TO INTERRUPT.

6        JUST IN TERMS OF -- I MAY BE JUMPING THE GUN HERE, BUT WE

7    JOINTLY SUBMITTED TWO EXEMPLARS OF CASE MANAGEMENT ORDERS,

8    EXHIBIT A AND EXHIBIT B TO THE CASE MANAGEMENT ORDER, AND IT

9    REALLY HAS TO DO WITH THE COORDINATION OF DISCOVERY AND THAT

10   WOULD MAKE THINGS A LOT EASIER.

11           THE COURT:  AND I ALREADY SPOKE WITH JUDGE MAAS ABOUT

12   COORDINATING DISCOVERY AND WE'VE AGREED TO DO IT.

13       SO I UNDERSTOOD THAT YOU'RE GOING TO WORK ON A PROPOSED

14   ORDER BASED ON THE TWO MODELS THAT YOU PROVIDED.  IS THAT

15   RIGHT?

16           MR. FRIEDMAN:  WE WILL DO THAT.  WE WANTED TO MAKE

17   SURE THAT WAS OKAY WITH YOUR HONOR.

18           THE COURT:  OH, THAT'S TOTALLY FINE.  I THINK IT

19   MAKES SENSE TO SAVE EVERYONE THE RESOURCES, AND I ALREADY SPOKE

20   WITH JUDGE MAAS THAT WHATEVER COMES IN IN HIS CASE CAN BE USED

21   HERE, AND VISE-VERSA.

22           MR. FRIEDMAN:  GREAT.  WE'LL GO AHEAD AND DO THAT.

23           THE COURT:  SO CAN YOU GIVE ME A DATE BY WHICH WE'LL

24   GO LOOK FOR YOUR PROPOSED COORDINATION ORDER?  OTHERWISE I

25   DON'T WANT IT TO GET LOST IN -- WE ALREADY HAVE OVER 270

1    FILINGS IN THIS CASE, SO --

2              MR. FRIEDMAN:  TWO WEEKS FROM TODAY?

3              THE COURT:  THAT'S FINE.  SO THAT WOULD BE

4    NOVEMBER 13TH, FRIDAY, THE 13TH.

5              MR. FRIEDMAN:  PERFECT.

6              THE COURT:  SO THAT'S THE PROPOSED COORDINATION

7    ORDER.

8         OKAY.  I THINK THAT'S IT FOR INDIVIDUAL CASE UPDATES.

9    DOES THAT SOUND RIGHT, MR. HOOVER?

10             MR. HOOVER:  YES, IT DOES, YOUR HONOR.

11             THE COURT:  OKAY.  ALL RIGHT.  SO WE'VE GOT THAT.

12        ALL RIGHT.  LET'S GO TO -- LET'S GO TO THE CASE

13   ORGANIZATION.

14        SO CORRECT ME IF I'M WRONG, BUT IT SEEMS LIKE THERE ARE

15   SIX BUCKETS:  ONE IS A TORT COMMON LAW BUCKET; ONE IS A

16   CONTRACT COMMON LAW BUCKET; ONE IS A STATE STATUTORY

17   CONSTITUTIONAL OR CONSUMER, EXCUSE ME, PROTECTION BUCKET; ONE

18   IS A STATE DATA BREACH STATUTORY BUCKET; ONE IS A STATE PRIVACY

19   STATUTORY BUCKET; AND THEN UNJUST ENRICHMENT AND NEGLIGENT

20   MISREPRESENTATION, I DON'T KNOW IF WE CAN JUST PUT THOSE IN

21   SOME OF THE PREVIOUS BUCKETS OR WHETHER THEY NEED THEIR OWN

22   CATEGORY.

23        DOES THAT SOUND RIGHT TO YOU?

24             MR. HOOVER:  I ALSO WOULD MENTION THAT THERE'S A

25   FEDERAL COMMON LAW CLAIM, SO THAT WOULD BE ANOTHER CATEGORY, IF

1    YOU WILL, FOR GROUPING.

2          THE COURT:  OKAY.  NOW, WOULD YOU PUT NEGLIGENT

3    MISREPRESENTATION IN WITH TORT?  IN WITH THE NEGLIGENCE BUCKET?

4    YOU WOULD?  YOUR TEAM IS SHAKING THEIR HEAD YES.

5          MR. HOOVER:  I THINK SO, YES.

6          THE COURT:  ALL RIGHT.  LET'S DO THAT.

7       NOW, WHERE WOULD YOU PUT UNJUST ENRICHMENT?  WITH BREACH

8    OF CONTRACT?  CAN WE DO THAT?  OR NO?

9          MR. HOOVER:  I THINK IT'S A LITTLE DIFFERENT, YOUR

10   HONOR.

11         THE COURT:  OKAY.  SO HOW MANY BUCKETS DO YOU THINK

12   THERE ARE?  DO YOU THINK THERE ARE SEVEN?

13         MR. HOOVER:  YOUR HONOR, IF WE COUNT THE FEDERAL

14   COMMON LAW CLAIM --

15         THE COURT:  YES.

16         MR. HOOVER:  -- AND THEN GROUP NEGLIGENT

17   MISREPRESENTATION WITH THE TORTS --

18         THE COURT:  YES.

19         MR. HOOVER:  -- BUT HAVE UNJUST ENRICHMENT ON ITS

20   OWN, I THINK THAT WOULD BE -- THAT WOULD BE --

21         MR. BISIO:  SIX.

22         MR. HOOVER:  SEVEN.  SEVEN TOTAL.

23         THE COURT:  SEVEN.  OKAY.

24      LET ME HEAR FROM THE PLAINTIFFS.  DO YOU -- I'M JUST

25   TRYING TO THINK OF A WAY TO ORGANIZE THESE CAUSES OF ACTION.

1     DOES THAT SOUND RIGHT TO YOU?

2         MS. CERVANTEZ:  YES, YOUR HONOR.  UNJUST ENRICHMENT

3     OFTEN GOES WITH BREACH OF CONTRACT.

4         THE COURT:  YES.

5         MS. CERVANTEZ:  IT'S EITHER OR, NOT BOTH.

6         THE COURT:  SURE, YEAH.

7         MS. CERVANTEZ:  AND I THINK WE WOULD AGREE THAT THE

8     FEDERAL CONTRACT CLAIM, EVEN THOUGH THE CONTRACT CLAIM IS --

9     CONTRACT LAW IS GENERALLY THE SAME, IT IS A DIFFERENT CONTRACT.

10    SO I THINK WE WOULD AGREE THAT THAT'S A SEPARATE BUCKET.

11       THERE'S THE DATA BREACH STATUTES, THE INSURANCE PRIVACY

12    STATUTES, AND THE CONSUMER PROTECTION STATUTES, AND THEY'RE --

13    THE CONSUMER PROTECTION STATUTES ARE FAIRLY SIMILAR.  THEY'RE

14    NOT IDENTICAL.

15        THE COURT:  UM-HUM.

16        MS. CERVANTEZ:  IN FACT, THAT'S WHY WE DID PLEAD EACH

17    ONE SEPARATELY.  WE DIDN'T -- WE DON'T HAVE A CAUSE OF ACTION

18    THAT SAYS STATE CONSUMER PROTECTION STATUTES.

19        THE COURT:  OKAY.  SO LET'S BE GENEROUS WITH ME.

20    LET'S PUT NEGLIGENT MISREPRESENTATION IN TORT AND LET'S PUT

21    UNJUST ENRICHMENT IN CONTRACT.

22       OKAY.  SO THEN I COUNT SIX BUCKETS.

23       HOW MUCH DOES NEGLIGENCE, FOR EXAMPLE, VARY ACROSS THE

24    DIFFERENT STATES?  IS IT ESSENTIALLY THE SAME ELEMENTS?

25        MS. CERVANTEZ:  IT IS -- YOUR HONOR, PLAINTIFFS

1    BELIEVE THAT IT IS ESSENTIALLY THE SAME ELEMENTS.  THERE'S

2    PROBABLY SOME MORE DIFFERENTIATION BETWEEN NEGLIGENCE CLAIMS

3    AND, SAY, BREACH OF CONTRACT CLAIMS ARE VERY DEFINITELY THE

4    SAME.  THERE MAY BE SOME SLIGHT DIFFERENCES IN NEGLIGENCE

5    CLAIMS IN DIFFERENT STATES.

6            THE COURT:  OKAY.  WHAT DO YOU THINK?

7            MR. HOOVER:  I WOULD SAY THERE ARE DIFFERENCES, YOUR

8    HONOR.  FOR EXAMPLE, SOME STATES' NEGLIGENCE CLAIMS REQUIRE

9    ACTUAL LOSS OR DAMAGES.  IN OTHER STATES, THE ECONOMIC LOSS

10   DOCTRINE COMES INTO PLAY, AND WE SAW THAT PLAY OUT IN THE

11   RULINGS IN THE TARGET CASE.

12           THE COURT:  OKAY.  WHAT ABOUT BREACH OF CONTRACT?  IS

13   THAT ESSENTIALLY THE SAME ACROSS THE STATES?

14           MS. CERVANTEZ:  WE BELIEVE BREACH OF CONTRACT IS

15   ESSENTIALLY THE SAME AND THAT IT'S ESSENTIALLY THE SAME

16   CONTRACT.

17           THE COURT:  OKAY.  WHAT ABOUT --

18           MR. HOOVER:  I THINK THERE'S SIMILARITY THERE, BUT

19   OBVIOUSLY THE CONTRACTS THEMSELVES FROM STATE TO STATE ARE

20   GOING TO BE DIFFERENT.

21           THE COURT:  OKAY.  ALL RIGHT.  WHAT ABOUT CONSUMER

22   PROTECTION?  I ASSUME, NOW, THAT'S PROBABLY WIDELY VARIED.  IS

23   THAT RIGHT?  STATE STATUTES --

24           MS. CERVANTEZ:  YOUR HONOR, I WOULDN'T SAY THAT IT

25   WIDELY VARIES, BUT EACH STATUTE -- IT'S STATUTORY LANGUAGE THAT

1    YOU HAVE TO INTERPRET VIA THE STATUTE, AND SO THERE ARE SOME

2    MORE DIFFERENCES.  YOU COULD PROBABLY CATEGORIZE THEM INTO

3    BROAD GROUPS, BUT THERE ARE GOING TO BE MORE DIFFERENCES IN

4    STATE LAW AND CONSUMER PROTECTION.  THAT'S WHY WE HAD

5    RECOMMENDED LOOKING AT A FEW CONSUMER PROTECTION STATUTES AS

6    OPPOSED TO MAKING A DECISION ONLY ON ONE.

7            THE COURT:  OKAY.

8            MR. HOOVER:  YOUR HONOR, I THINK THERE IS QUITE A

9    WIDE VARIATION IN CONSUMER PROTECTION STATUTES.

10           THE COURT:  OKAY.

11           MR. HOOVER:  THE NINTH CIRCUIT RECOGNIZED THAT IN

12   MAZZA WHERE THEY MADE CLEAR THAT CONSUMER PROTECTION LAWS ARE A

13   CREATURE OF THE STATE IN WHICH THEY ARE FASHIONED DEPENDING ON

14   THE STATE LEGISLATURES OR STATE SUPREME COURTS, SO YOU HAVE

15   DIFFERENCES ON ISSUES LIKE RELIANCE, SCIENTER AND SO FORTH.

16           THE COURT:  NOW, WHAT ABOUT THE STATE DATA BREACH

17   STATUTES?

18           MS. CERVANTEZ:  YOUR HONOR, I BELIEVE THAT THE STATE

19   DATA BREACH STATUTES ARE ALL FAIRLY SIMILAR.  THEY TEND TO BE

20   WORDED SIMILARLY.

21       THERE ARE SOME STATES THAT DON'T HAVE A PRIVATE RIGHT OF

22   ACTION, BUT WE BELIEVE -- WE DIDN'T PLEAD THOSE.

23       IN OTHER WORDS, THE DIFFERENCE -- THE BIGGEST DIFFERENCE

24   IN STATE DATA BREACH STATUTES IS DO THEY HAVE A PRIVATE RIGHT

25   OF ACTION OR NOT, AND WE DIDN'T PLEAD THE ONES THAT DIDN'T HAVE

1    A PRIVATE RIGHT OF ACTION.

2              THE COURT:  GOT IT.

3              MS. CERVANTEZ:  THERE MAY BE A FEW THAT HAVE

4    ADDITIONAL AND MORE REQUIREMENTS, MAYBE TWO, BUT I BELIEVE THAT

5    MOST OF THEM ARE ESSENTIALLY THE SAME.

6              THE COURT:  DO YOU AGREE WITH THAT, MR. HOOVER?

7              MR. HOOVER:  I THINK THERE ARE SOME DIFFERENCES, YOUR

8    HONOR.

9              THE COURT:  OKAY.  WHAT ABOUT THE PRIVACY, THE STATE

10   INSURANCE PRIVACY STATUTE, STATE MEDICAL AND HEALTH INFORMATION

11   PRIVACY STATUTES?

12             MS. CERVANTEZ:  YOUR HONOR, THE INSURANCE PRIVACY

13   STATUTES ALL CAME OUT OF, YOU KNOW, A PARTICULAR MODEL OF

14   STATUTE THAT WAS GOING AROUND AT A CERTAIN TIME AND SO THEY'RE

15   WORDED VERY SIMILARLY AND THERE'S VERY LITTLE CASE LAW

16   INTERPRETING THEM.

17             THE COURT:  OKAY.

18             MS. CERVANTEZ:  SO THAT THERE'S NOT A LOT OF

19   DIFFERENCES BECAUSE THE WORDS ARE THE SAME AND THERE'S NOT A

20   LOT OF CASE LAW INTERPRETING THEM.

21             THE COURT:  OKAY.

22             MR. HOOVER:  YOUR HONOR, I CAN'T -- AT THIS POINT, I

23   HAVEN'T HAD THE COMPLAINT IN A COUPLE DAYS.  I CAN'T GIVE YOU A

24   DETAILED ANALYSIS OF THE SIMILARITY OF THOSE, SO I'D RATHER

25   DEFER ON THAT ONE.

1          THE COURT:  OKAY.  WHERE HAS -- WHICH BUCKET HAS THE

2    GREATEST DAMAGES?

3          MS. CERVANTEZ:  YOUR HONOR, THAT'S A GOOD -- THAT'S A

4    GOOD QUESTION.  THE REASON I THINK THAT WE'VE PLED DIFFERENT

5    THEORIES IS EVEN THOUGH THE CORE FACTS OF KIND OF WRONGDOING

6    MAYBE FALL INTO TWO OR THREE BUCKETS, THERE'S DIFFERENT LEGAL

7    THEORIES THAT FIND THE SAME --

8          THE COURT:  YEAH.

9          MS. CERVANTEZ:  -- AND SO WE'RE STILL INVESTIGATING

10   THAT.  THAT IS, THERE IS -- THERE'S DIFFERENT DAMAGES THEORIES

11   THAT WE ALLEGE.

12         THE COURT:  UM-HUM.

13         MS. CERVANTEZ:  THERE IS THE KIND OF OUT-OF-POCKET

14   DAMAGES THAT PEOPLE SUFFERED.  THERE'S KIND OF A BENEFIT OF THE

15   BARGAIN DAMAGES MEASURE.  THERE'S A RESTITUTION DAMAGES

16   MEASURE.

17        AND UNTIL WE'VE TAKEN SOME MORE DISCOVERY, WE ACTUALLY

18   DON'T KNOW WHICH IS GOING TO BE THE LARGEST DAMAGES BUCKET.

19   THAT'S WHY WE NEED TO PROCEED ON ALL OF THEM AT THIS POINT.

20         THE COURT:  OKAY.  WELL, WHICH ONES HAVE THE LARGEST

21   CLASS MEMBERS?

22         MS. CERVANTEZ:  IT'S OUR UNDERSTANDING, AND WE

23   DON'T -- WE'RE CONFINED TO PUBLICLY AVAILABLE INFORMATION.

24         THE COURT:  SURE.

25         MS. CERVANTEZ:  BUT IT'S OUR INFORMATION THAT

```
 1        CALIFORNIA IS BY FAR THE LARGEST NUMBER OF AFFECTED

 2        INDIVIDUALS.  IT'S OUR UNDERSTANDING IT'S APPROXIMATELY 13.5

 3        MILLION IN CALIFORNIA.

 4             AND IT'S OUR UNDERSTANDING THERE'S MAYBE 4.5 OR 4 MILLION

 5        IN INDIANA AND NEW YORK.  AFTER THAT, THERE'S SOME STATES IN

 6        KIND OF THE 3 TO 4 MILLION RANGE.

 7                  THE COURT:  WAIT.  WHAT IS NEW YORK?

 8                  MS. CERVANTEZ:  NEW YORK, THAT ONE -- THERE'S NOTHING

 9        PUBLIC ABOUT HOW MANY PEOPLE WERE AFFECTED.  WE WERE ABLE TO

10        FIND THERE'S ABOUT 4 MILLION MEMBERS OF ANTHEM.

11                  THE COURT:  OKAY.

12                  MS. CERVANTEZ:  BUT THERE WOULD BE MORE PEOPLE

13        AFFECTED THAN MEMBERS, SUCH AS THEIR DEPENDENTS.

14                  THE COURT:  OKAY.  LET ME HEAR FROM MR. HOOVER OR

15        ANYONE ELSE ON HIS TEAM.

16             DO YOU AGREE WITH 13.5 MILLION MEMBERS IN CALIFORNIA?  DO

17        YOU AGREE WITH THAT?

18                  MR. HOOVER:  WE HAVE ABOUT 13.5, INCLUDING ANTHEM AND

19        NON-ANTHEM.

20                  THE COURT:  OKAY.  NOW, WHAT DO YOU HAVE FOR INDIANA?

21                  MR. HOOVER:  IS SOMEBODY ON A CELL?  IF YOU CAN MUTE

22        IT PERHAPS?

23                  THE COURT:  HELLO?  SOMEONE WHO IS ON-LINE, IF YOU

24        CAN MUTE YOUR PHONE, PLEASE?  THANK YOU.  THERE'S A LITTLE BIT

25        OF AN ECHO.  THANK YOU.
```

```
 1              OKAY.  WHAT DO YOU HAVE FOR INDIANA, NEW YORK?
 2              MR. HOOVER:  YOUR HONOR, WE HAVE ABOUT 4.5 FOR
 3    INDIANA.
 4              THE COURT:  OKAY.
 5              MR. HOOVER:  AND THESE AREN'T PRECISE FIGURES.
 6              THE COURT:  SURE, THAT'S OKAY.
 7              MR. HOOVER:  FOR NEW YORK WE HAVE ABOUT 4.6.
 8              THE COURT:  OKAY.
 9              MR. HOOVER:  FOR VIRGINIA, 3.7; OHIO 5.2; WE HAVE,
10    LET'S SEE, KENTUCKY 2.3 MILLION; AND IT LOOKS LIKE -- LET'S
11    SEE -- WISCONSIN, 1.7; I THINK GEORGIA IS 3.7.
12        SO THAT GIVES YOU A FEEL FOR SOME OF THE STATES.
13              THE COURT:  SURE.
14              MR. HOOVER:  ON THE QUESTION OF DAMAGES, I THINK --
15    AS YOUR HONOR OBSERVED AT THE LAST HEARING, I DON'T THINK THESE
16    CASES ARE -- RESULT IN HIGH DAMAGES.
17        WE ALSO HAVE, FROM STATE TO STATE, DIFFERENCES.  I THINK
18    THE FILED RATE DOCTRINE ON SOME OF THE PLAINTIFFS' THEORIES
19    WHERE THEY OVERPAID FOR THEIR PREMIUMS, THE FILED RATE DOCTRINE
20    COULD BE AN ISSUE IN SOME STATES.  SO I THINK THERE ARE GOING
21    TO BE SOME DIFFERENT ISSUES.
22              THE COURT:  OKAY.  NOW, I DID READ THAT AN L.A.
23    SUPERIOR COURT CASE AND A DATA BREACH CASE CAME OUT WITH A
24    $28 MILLION SETTLEMENT, A 28 OR $23 MILLION SETTLEMENT I SAW
25    RECENTLY.
```

1      OKAY.  SO WOULD YOU SAY THAT YOUR LARGEST STATES -- AND BY

2      "LARGEST" I MEAN BY POPULATION -- WOULD BE, WHAT, CALIFORNIA,

3      OHIO, INDIANA, NEW YORK?  DOES THAT SOUND RIGHT, MR. HOOVER?

4          MR. HOOVER:  THOSE WOULD BE IN THE MIX, YES.

5      AND, AGAIN, THOSE ARE ESTIMATES NOT JUST OF THE ANTHEM

6      MEMBERS, BUT PEOPLE AFFECTED, SO IT TAKES INTO ACCOUNT BOTH

7      ANTHEM AND NON-ANTHEM.

8          THE COURT:  OKAY.  WHO WOULD BE YOUR FIFTH LARGEST

9      STATE?  WHICH STATE WOULD BE YOUR FIFTH LARGEST STATE?  EXCUSE

10     ME.

11         MR. HOOVER:  I'M JUST TRYING TO LOOK THROUGH THE

12     NUMBERS BECAUSE I DON'T HAVE THEM RANKED.

13         THE COURT:  ALL RIGHT.

14         MR. HOOVER:  IT LOOKS LIKE VIRGINIA, 3.7.

15         THE COURT:  UM-HUM.  BUT GEORGIA WAS ALSO 3.7.

16         MR. HOOVER:  AND IT LOOKS LIKE GEORGIA, 3.7.

17         THE COURT:  OKAY.  SO IT WOULD BE CALIFORNIA FIRST,

18     NEW YORK SECOND, INDIANA THIRD -- OH, NO, NO, I'M SORRY -- OHIO

19     SECOND, NEW YORK THIRD, INDIANA FOURTH, AND THEN VIRGINIA AND

20     GEORGIA TIEING FOR FIFTH.  DOES THAT SOUND RIGHT?

21         MR. HOOVER:  YES.

22         THE COURT:  OKAY.  AND THAT ALREADY WOULD BE 34.2

23     MILLION PEOPLE IF YOU JUST ADD UP THE TOP FIVE, WELL, REALLY

24     THE TOP SIX SINCE GEORGIA AND VIRGINIA TIE FOR FIFTH.

25         WELL, I'M INCLINED, AND THIS MAY BE A BIG MISTAKE -- WELL,

1    LET ME HEAR FROM YOU.  DO YOU NEED ONE CAUSE OF ACTION FROM

2    EACH BUCKET TO BE RESOLVED?  I JUST DON'T GET A SENSE OF WHICH

3    ONES ARE THE KEY CAUSES OF ACTION.

4            MR. HOOVER:  WELL, YOUR HONOR, AS YOU KNOW, OUR

5    POSITION IS THAT WE SHOULD DO EVERYTHING NOW AS OPPOSED TO YOU

6    HAVING TO DO EVERYTHING THREE OR FOUR TIMES.

7            THE COURT:  I UNDERSTAND THAT, AND I REALLY WISH I

8    COULD.  BUT I -- I JUST -- I KNOW WE WILL NOT BE ABLE TO DO

9    THAT, AND I'M SORRY WE CAN'T.  IT'S JUST TOO MUCH FOR US.

10           MR. HOOVER:  AGAIN, WE LAID OUT -- WE LAID OUT OUR

11   ARGUMENT IN THE PAPERS --

12           THE COURT:  UM-HUM.

13           MR. HOOVER:  -- SO I WON'T BELABOR IT.

14           THE COURT:  YEAH.

15           MR. HOOVER:  BUT I THINK WHEN YOU LOOK AT THE LENGTH

16   OF AN MDL, THE LIFE OF AN MDL --

17           THE COURT:  UM-HUM.

18           MR. HOOVER:  -- WHAT'S NOT DONE NOW LEADS TO A LOT OF

19   COMPLICATIONS AS THE CASE GOES FORWARD AND LEADS TO MORE WORK

20   BEING DONE LATER, AND I THINK THAT THAT IS WHY I THINK MOST OF

21   THESE LARGE MDL'S, AND ALL THE BREACH MDL'S --

22           THE COURT:  YEAH.

23           MR. HOOVER:  -- HAVE TRIED TO KNOCK OUT THE MOTION TO

24   DISMISS UP FRONT, AND I THINK THAT THE -- YOU KNOW, CERTAINLY

25   THE INTRODUCTION OF THE COMPLAINT AND ALL THE VARYING STATE

1    LAWS, I THINK JUST TRYING TO TAKE A COUPLE CAUSES OF ACTION AND

2    TAKE THOSE THROUGH TO CLASS CERT IS GOING TO LEAVE YOU WITH A

3    LOT OF SPLITTING OF CLASSES, LEAVING CLAIMS OUT THERE, AND

4    APPEALS, YOU KNOW, IN BETWEEN.

5         AND SO THAT'S THE REASON THAT WE WERE URGING THE COURT TO

6    RETHINK THE APPROACH THAT THE COURT HAD IN MIND AT THE LAST

7    HEARING.

8         AND WE CERTAINLY WOULD BE PREPARED TO LIVE WITH THE

9    SAME -- DISCOVERY IS GOING FORWARD EITHER WAY, AND SO THAT'S --

10   YOU'VE MADE IT VERY CLEAR THAT'S HAPPENING.

11        THE COURT:  UM-HUM.

12        MR. HOOVER:  AND SO WITH DISCOVERY HAPPENING, BUT

13   THEN OUR EXPERTS DOING SOME NOW, SOME A YEAR FROM NOW, SOME TWO

14   YEARS FROM NOW, IT BECOMES A SITUATION WHERE CLASS CERT, YOU'RE

15   GOING TO BE GETTING MULTIPLE LOOKS AT IT.

16        AND JUST AS AN EXAMPLE, YOU COULD HAVE -- YOU COULD HAVE

17   EXPERTS OPINING ON A COUPLE CALIFORNIA CAUSES OF ACTION NOW AND

18   OTHERS WAIT FOR LATER AND THE CLASS GETS NOTICE ON CERTAIN

19   CAUSES OF ACTION, BUT NOT ON OTHERS.

20        AND SO, YOU KNOW, WE JUST WANTED THE COURT TO GET A LOOK

21   AT THAT COMPLICATION, IF YOU WILL, UP FRONT, AND WE'VE DONE

22   THAT, SO I WON'T BELABOR IT, YOUR HONOR, BUT THAT'S -- THAT'S

23   CERTAINLY OUR GOING IN POSITION HERE.

24        THE COURT:  UM-HUM.  I APPRECIATE THAT, AND I REALLY

25   WISH THAT I COULD.  BUT UNFORTUNATELY, WITH THE CASE LOAD, I

1    JUST CAN'T -- I CAN'T RESOLVE A MOTION TO DISMISS ON ALL CAUSES

2    OF ACTION THAT HAVE BEEN ALLEGED IN A 213 PAGE COMPLAINT.  I

3    REALLY WISH I COULD DO THAT, BUT I CAN'T.

4        SO THE QUESTION IS -- OBVIOUSLY I'M NOT GOING TO ADOPT THE

5    PLAINTIFFS' PROPOSAL, WHICH JUST SAYS, "WELL, LET US PICK

6    EVERYTHING, THE DEFENDANTS DON'T GET TO PICK."  THAT'S NOT

7    GOING TO HAPPEN.

8        I THINK I'M GOING TO DIVIDE IT EVENLY.  YOU'RE GOING TO

9    GET HALF AND THE PLAINTIFFS WILL GET HALF AND YOU'LL HAVE TO

10   CONSULT WITH THE NON-ANTHEM DEFENDANTS IN JOINTLY DECIDING

11   WHICH ONES THE DEFENDANTS WANT TO MOVE ON.

12       I AM NOT GOING TO LIMIT IT FURTHER.  ONCE WE SELECT OUR

13   NUMBER, THAT'S THE NUMBER THAT IS ELIGIBLE TO GO THROUGH THE

14   REST OF THE CASE AND THROUGH TRIAL.

15       NOW, OBVIOUSLY IF SOMETHING GETS DISMISSED WITH PREJUDICE

16   IN THE FIRST MOTION TO DISMISS OR THE SECOND MOTION TO DISMISS,

17   IT'S NOW OFF THE TABLE.

18       BUT I'M NOT -- WHEN I HAD PREVIOUSLY SPOKEN WITH YOU ALL,

19   I THOUGHT I WOULD HAVE THIS FUNNELING OF CONTINUALLY REDUCING

20   THE NUMBER.  I'M NOT.  WHATEVER SURVIVES THE MOTIONS TO DISMISS

21   IS FAIR GAME FOR CLASS CERT.  OKAY?

22       MR. HOOVER:  YOUR HONOR, I WOULD LIKE TO RAISE ONE

23   ISSUE, AND THAT IS THE FEDERAL CLAIM.

24       THE COURT:  YES.

25       MR. HOOVER:  IT REALLY IS -- IT STICKS OUT AS UNIQUE

1      IN THE SENSE THAT IT IS THE ONE NATIONWIDE CLASS.

2           THE COURT:  UM-HUM.

3           MR. HOOVER:  IT NAMES ALL DEFENDANTS.  IT IS A THIRD

4      PARTY BENEFICIARY CLAIM THAT'S ASSERTED BASED ON A CONTRACT --

5      AND BY THE WAY, THAT'S A LARGE CLASS, YOUR HONOR.  YOU WERE

6      ASKING ABOUT NUMBERS.  IT'S OVER 2 MILLION FEDERAL EMPLOYEES IN

7      THE PUTATIVE CLASS.

8           AND IT'S -- IT'S BROUGHT ONLY AGAINST ALL OF THE

9      BLUE CROSS BLUE SHIELD ENTITIES, NOT THE NON-BLUE CROSS

10     BLUE SHIELD ENTITIES THAT ARE DEFENDANTS, AND I THINK IT'S

11     IMPORTANT FOR THE COURT TO ADDRESS THAT CLAIM BECAUSE THAT IS A

12     NATIONWIDE CLASS CLAIM.  IT WILL BE ODD TO BE GOING THROUGH THE

13     STATE LAW CAUSES OF ACTION AND THEN LEAVING FOR A COUPLE YEARS

14     A CLAIM LIKE THAT WHICH WE THINK, BY THE WAY, YOUR HONOR, IS

15     SUBJECT TO DISMISSAL.

16          THE CONTRACT THAT THEY'RE SUING ON ON A THIRD PARTY

17     BENEFICIARY BASIS IS GOVERNED BY THE FEDERAL EMPLOYEES' HEALTH

18     BENEFITS ACT, OR FEHB, AND THAT ESTABLISHES THE PROGRAM FOR

19     HEALTH INSURANCE FOR FEDERAL EMPLOYEES AND EMPOWERS OPM TO

20     CONTRACT WITH PRIVATE INSURANCE CARRIERS TO PROVIDE THEM

21     INSURANCE.

22          FEHB CONTAINS A COMPREHENSIVE ADMINISTRATIVE ENFORCEMENT

23     SCHEME, MUCH LIKE ERISA IN SOME WAYS, WHICH PROVIDES AN

24     EXCLUSIVE REMEDY FOR AN ACTION COGNIZABLE UNDER FEHB.

25          SO OUR ARGUMENT IS GOING TO BE, AND I ASSUME

1    MR. KAVANAUGH'S ARGUMENT FOR BLUE CROSS BLUE SHIELD ASSOCIATION

2    IS GOING TO BE THAT THE PLAINTIFFS CAN'T BRING A THIRD PARTY

3    BENEFICIARY CLAIM BECAUSE IT WOULD BE INCONSISTENT WITH THAT

4    SCHEME.

5         SO I THINK IT'S -- WHATEVER WE DO WITH THE OTHER, WITH THE

6    STATE LAW CAUSES OF ACTION, I THINK IT'S IMPORTANT, YOUR HONOR,

7    TO TAKE THIS ONE HEAD ON.

8              THE COURT:  OKAY.  WELL, WHAT IF --

9         DO YOU AGREE THAT THAT'S A KEY ONE?

10             MS. CERVANTEZ:  YOUR HONOR, WE DON'T AGREE THAT IT'S

11   A KEY ONE, THE FEDERAL ONE, JUST BECAUSE WHAT WE'RE SEEING IS

12   SOMETHING THAT WE CAN LOOK AT KIND OF FOR SETTLEMENT PURPOSES,

13   OR TO LOOK AT OTHER CLAIMS AND COMPARE THEM, SIMILAR CLAIMS

14   ACROSS THE COUNTRY IN ORDER TO BE ABLE TO RESOLVE OTHER CLAIMS

15   IN A MORE STREAMLINED MANNER DOWN THE ROAD.

16             THE COURT:  UM-HUM.

17             MS. CERVANTEZ:  THAT BEING SAID, I THINK THAT WE WANT

18   TO STEP BACK AND THINK, WHAT'S THE PURPOSE OF GOING THROUGH

19   THIS PROCESS OF NARROWING DOWN AND NOT DECIDING ALL CLAIMS NOW?

20        AND I THINK THERE'S TWO PURPOSES, BECAUSE IN THE END --

21   THE END GAME IS EVERYTHING HAS TO BE RESOLVED, EITHER WE SETTLE

22   THE CASE OR SOMEBODY MAKES A DECISION ABOUT EVERY SINGLE CLAIM

23   AT SOME POINT DOWN THE ROAD.

24        AND SO I THINK THAT YOUR HONOR NEEDS TO GIVE THE PARTIES

25   ENOUGH INFORMATION TO GO FORWARD ON THAT AND, THEREFORE, IF

1    DEFENDANTS FEEL THAT IT'S VERY IMPORTANT TO THEM, IF THEY NEED

2    TO KNOW THE ANSWER TO THAT FEDERAL CLAIM FOR SOME REASON, WE

3    WOULD NOT OBJECT TO ALSO TEEING THAT UP.

4         SO I GUESS WHAT I'M SAYING TO YOUR HONOR IS I UNDERSTAND

5    YOU SAID SIX AS A GENERAL MATTER, BUT IF THE DIFFERENCE

6    BETWEEN, SAY, THE SIX CLAIMS AND EIGHT CLAIMS MEANS A LOT TO

7    THE PARTIES IN ORDER -- IN ORDER TO BE ABLE TO EVALUATE THE

8    CASE --

9              THE COURT:  YEAH.

10             MS. CERVANTEZ:  -- IT WOULD BE WORTH IT TO DO SOME

11   MORE WORK AT THE BEGINNING TO REALLY HELP THINGS AT THE END.

12        SO IF THEY REALLY WANT THE FEDERAL CLAIM, WE CERTAINLY

13   HAVE NO OBJECTION TO TEEING IT UP, PARTICULARLY IF -- AND

14   MR. KAVANAUGH IS ON THE PHONE NOW.

15        WHAT WE WOULDN'T WANT IS TWO MOTIONS TO DISMISS AT

16   DIFFERENT TIMES WITH, YOU KNOW, TRYING TO GET BLUE CROSS

17   BLUE SHIELD ASSOCIATION SERVED.  MR. KAVANAUGH HAS AGREED TO

18   ACCEPT SERVICE, BUT THE COURT HAS ACTUALLY NOT ISSUED A SUMMONS

19   YET, SO WE'RE NOT ABLE TO SERVE ANYBODY.

20        BUT IF MR. KAVANAUGH IS PREPARED TO GO FORWARD ALSO SO

21   WE'RE DOING ALL THE BRIEFING AT THE SAME TIME AND WE'RE NOT --

22   THERE'S NOT A DELAY BECAUSE OF THE FEDERAL CONTRACT CLAIM, WE

23   WOULD HAVE NO OBJECTION TO THAT.

24        I WOULD LIKE TO TALK A LITTLE BIT ABOUT THE OTHER CLAIMS

25   AND WHO'S GOING TO CHOOSE THOSE CLAIMS.

1    MR. HOOVER:  WHILE WE'RE ON THE SUBJECT OF THE

2  FEDERAL CLAIM, THOUGH, IS IT OKAY IF WE HEAR FROM MR. KAVANAUGH

3  ON THE TIMING ISSUE, YOUR HONOR?

4    THE COURT:  PLEASE, GO AHEAD.

5    MR. KAVANAUGH:  YOUR HONOR, HI.  THANK YOU.  YOUR

6  HONOR, THIS IS BRIAN KAVANAUGH.

7    I THINK -- I THINK THERE'S -- WE'RE ALSO LOSING SIGHT OF

8  AN ISSUE HERE THAT THERE ARE A GREAT NUMBER OF ADDITIONAL

9  DEFENDANTS WHO ARE ALSO NAMED IN CONNECTION WITH THAT

10  PARTICULAR COUNT, CERTAINLY THE ASSOCIATION -- IT'S THE ONLY

11  COUNT BROUGHT AGAINST THE ASSOCIATION, BUT THERE ARE OTHER

12  DEFENDANTS WHO ARE NAMED IN THAT COUNT WHO ARE NOT PRESENT

13  BEFORE THE COURT AS WELL.

14    SO WE DO HAVE SOME CONCERNS ABOUT ALL INTERESTED PARTIES

15  HAVING AN OPPORTUNITY TO RAISE ISSUES THEY HAVE WITH THAT

16  COUNT.

17    THE COURT:  LET ME ASK MS. SAKAMOTO, CAN YOU GET IN

18  TOUCH WITH THE CLERK'S OFFICE?  IF THIS CONSOLIDATED AMENDED

19  COMPLAINT WAS FILED ON OCTOBER 19TH OF 2015, WHY HAS A SUMMONS

20  NOT YET BEEN ISSUED BY THE COURT?

21    THE CLERK:  YES, JUDGE, BUT THE CLERK'S OFFICE IS

22  CURRENTLY CLOSED.

23    THE COURT:  OH.

24    THE CLERK:  I WILL SEND AN E-MAIL TO THE CSA AND

25  SNOOKI AS WELL, THE SUPERVISOR.

1           THE COURT:  YEAH.

2           THE CLERK:  I'LL DO THAT.

3           THE COURT:  BECAUSE I THOUGHT THE SUMMONS GET ISSUED

4     WHEN THE COMPLAINTS GET FILED, SO WHAT'S GOING ON?

5           THE CLERK:  I DON'T KNOW.  WE'LL CHECK ON THAT.

6           THE COURT:  OH.

7       YOU FILED IT ELECTRONICALLY.  MAYBE THAT'S WHY.

8           MS. CERVANTEZ:  WE FILED IT ELECTRONICALLY, BUT I

9     THINK PROBABLY THE PROBLEM IS BECAUSE IT WAS AN AMENDED

10    COMPLAINT, IT DID ADD NEW DEFENDANTS, SO WE FILED A NEW SUMMONS

11    WAITING TO BE ISSUED, AND WE DID TRY CALLING THE CLERK'S OFFICE

12    YESTERDAY, BUT WE HADN'T GOTTEN A RESPONSE BACK YET.

13        SO IF WE COULD GET IT, YOU KNOW, ISSUED BY THIS MONDAY, WE

14    WOULD BE PREPARED TO EFFECT PERSONAL SERVICE AS QUICKLY AS

15    POSSIBLE.

16          THE COURT:  OKAY.  ALL RIGHT.  SO -- OKAY.

17        MR. KAVANAUGH, WHAT'S YOUR POSITION ON TIMING?  WE

18    CURRENTLY HAVE THIS MOTION TO DISMISS SET FOR HEARING ON

19    FEBRUARY 4TH.

20          MR. KAVANAUGH:  YOUR HONOR, WE'VE ALREADY INDICATED

21    TO THE PLAINTIFF THAT WE'RE GOING TO ACCEPT SERVICE, OR I WILL

22    ACCEPT SERVICE ON BEHALF OF THE ASSOCIATION AND I DON'T HAVE AN

23    ISSUE WITH THAT DATE.

24        I'M LOOKING RIGHT NOW, AND I BELIEVE THE DATE THAT WAS

25    ORIGINALLY SELECTED FOR THE INITIAL MOTION TO DISMISS WAS

1    NOVEMBER 16TH.  I GUESS WE HAVE SOME CONCERNS ABOUT THAT DATE,

2    AND ALSO BECAUSE OF THE NUMBER OF ADDITIONAL DEFENDANTS THAT

3    ARE NOT YET BEFORE THE COURT AND MAY NOT HAVE HAD AN

4    OPPORTUNITY TO EVEN REVIEW THE COMPLAINT.

5         BUT A FEBRUARY HEARING DATE I DON'T THINK PRESENTS A

6    PROBLEM WITH US IN TERMS OF THE ISSUES THAT WE'RE GOING TO

7    RAISE.

8              THE COURT:  ALL RIGHT.  YOU DON'T HAVE THE SUMMONS

9    FOR THE OTHER DEFENDANTS, DO YOU?  DO YOU?  THE OTHER

10   NON-ANTHEM ENTITIES?

11             MS. CERVANTEZ:  NO.  WE FILED A SUMMONS WITH A LIST

12   OF ALL OF THE DEFENDANTS, BUT IT HASN'T BEEN ISSUED.

13             THE COURT:  OKAY.  I WOULD LIKE TO ORDER THAT YOU

14   SERVE ALL NAMED DEFENDANTS BY -- CAN YOU DO IT BY NEXT

15   THURSDAY, ASSUMING YOU GET ALL THE SUMMONS ON MONDAY?

16             MS. CERVANTEZ:  YES, YOUR HONOR.

17             THE COURT:  OKAY.  SO I'M ORDERING THAT THEY ALL BE

18   SERVED ON OCTOBER 29TH.  WE --

19        (DISCUSSION OFF THE RECORD BETWEEN THE COURT AND THE

20   CLERK.)

21             THE COURT:  ALL RIGHT.  WELL, I'D LIKE TO KEEP THE

22   FEBRUARY 4TH DATE, SO WHAT'S YOUR PROPOSAL ON THE BRIEFING

23   SCHEDULE ON THE MOTION?  MR. KAVANAUGH?

24             MR. KAVANAUGH:  OBVIOUSLY I CAN'T SPEAK -- I'M

25   LOOKING AT THE CALENDAR NOW.  I'D BE HAPPY TO COORDINATE WITH

1    MR. HOOVER AND COUNSEL FOR THE PLAINTIFFS ON SOMETHING WE CAN

2    ALL AGREE ON.

3    I GUESS MY QUESTION IS ALSO, IS THE COURT -- IS THE COURT

4    CONTEMPLATING, GIVEN THE ADDITIONAL PARTIES NAMED IN THE

5    CONSOLIDATED AMENDED COMPLAINT, THAT EACH NAMED DEFENDANT HAS

6    AN OPPORTUNITY TO BRING ITS OWN MOTION?  I MEAN, I THINK THAT'S

7    AN ISSUE WE HAVE IN TERMS OF HOW MANY CAUSES OF ACTION OR

8    COUNTS HAVE TO BE COVERED IN A MOTION.  IF THE ASSOCIATION IS

9    FILING ITS OWN, THEN, YOU KNOW, OBVIOUSLY IT'S ADDRESSED JUST

10   TO COUNT SIX, WE CAN DEAL WITH THAT.

11   MR. HOOVER:  YOUR HONOR, I THINK MR. KAVANAUGH MAKES

12   A GOOD POINT.  I THINK THE ASSOCIATION IS FAIRLY SIMPLE.  IT'S

13   NAMED ONLY IN ONE COUNT.

14   THE COURT:  UM-HUM.

15   MR. HOOVER:  THE OTHER NEW DEFENDANTS ARE NAMED IN

16   MANY COUNTS.

17   THE COURT:  UM-HUM.

18   MR. HOOVER:  IN SOME CASES, ALL COUNTS.

19   AND IF THEY'RE NOT SERVED UNTIL THURSDAY, I THINK IT'S

20   ASKING A LOT TO BE ABLE TO FILE MOTIONS ON NOVEMBER 16TH.  AND

21   I DON'T KNOW WHO'S --

22   THE COURT:  ALL RIGHT.  IN THE FUTURE, I'M GOING TO

23   ASK THE PLAINTIFFS, OR ANY PARTY IN THIS CASE, IF YOU HAVE TO

24   FILE SOMETHING AND YOU NEED SOMETHING FROM THE CLERK'S OFFICE,

25   I EXPECT YOU TO COME IN PERSON, MAKE A CALL OR COME IN PERSON.

1    DON'T JUST E-FILE IT AND ASSUME IT'S GOING TO HAPPEN.  OKAY?

2         I'M SORRY THAT IT WASN'T DONE MORE PROMPTLY, BUT THIS

3    REALLY PUTS US IN A BIND NOW.

4         (DISCUSSION OFF THE RECORD BETWEEN THE COURT AND THE

5    CLERK.)

6              THE COURT:  OH, ALL RIGHT.  THERE'S SOMEONE IN THE

7    CLERK'S OFFICE AND THEY'RE GOING TO ISSUE THE SUMMONS RIGHT

8    NOW.

9         WHY CAN'T -- CAN YOU SERVE IT SOONER THAN THURSDAY?

10             MS. CERVANTEZ:  WE WILL EFFECT IT AS QUICKLY AS

11   POSSIBLE, YOUR HONOR.  IF WE CAN GET IT DONE ON MONDAY, WE

12   WILL.  I'M JUST NOT SURE ABOUT COORDINATING WITH THE DIFFERENT

13   LOCATIONS.  BUT WE'LL GET AS MANY SERVED ON MONDAY AS POSSIBLE.

14             THE COURT:  OKAY.  BUT DON'T ALL THESE ENTITIES HAVE

15   THE SAME INTEREST?  ISN'T IT LARGELY GOING TO BE THE SAME

16   DEFENSES?

17             MR. HOOVER:  YOUR HONOR, I THINK THERE ARE SOME

18   ENTITIES THAT MAY FEEL AS THOUGH THEY DON'T HAVE SUFFICIENT

19   CONTACT WITH CALIFORNIA FOR PURPOSES OF JURISDICTION OR VENUE.

20   I JUST DON'T KNOW.  BUT THAT'S A POTENTIAL ISSUE THAT WE

21   FLAGGED JUST SO THE COURT WOULD BE AWARE OF IT.

22        AND SO I THINK THAT'S -- IT'S GOING TO -- IT MAY DEPEND ON

23   THE DEFENDANT WHETHER THEY WOULD RAISE THOSE SORTS OF

24   PROCEDURAL DEFENSES.

25             AND I -- I DON'T KNOW WHO'S GOING TO BE REPRESENTING ALL

1    OF THESE DEFENDANTS.  WE REPRESENT SOME OF THE NON-ANTHEM

2    DEFENDANTS CURRENTLY, AS YOUR HONOR KNOWS, WHICH WERE

3    ORIGINALLY NAMED.

4         BUT MY GUESS IS THAT THERE WILL BE OTHER COUNSEL IN

5    ADDITION TO MR. KAVANAUGH COMING INTO THE CASE.

6              THE COURT:  SO WHICH DEFENDANTS WILL GET OTHER

7     COUNSEL?

8              MR. HOOVER:  YOUR HONOR, I DON'T KNOW HOW TO ANSWER

9     THAT QUESTION.  I DON'T KNOW THE ANSWER TO THAT QUESTION.

10             THE COURT:  OKAY.

11             MS. CERVANTEZ:  AND, YOUR HONOR, IN SOME MDL'S WHERE

12    THERE'S MANY DEFENDANTS AND MANY DEFENDANTS' COUNSEL, THE COURT

13    ENDS UP HAVING A LIAISON DEFENDANTS' COUNSEL, A LEAD

14    DEFENDANTS' COUNSEL ALSO, THAT IS, THAT YOU DON'T HAVE 35

15    SEPARATE -- IT'S NOT 35 -- BUT YOU DON'T HAVE 18 SEPARATE

16    COUNSEL EACH FILING A MOTION AND EACH BEING ON AT EVERY HEARING

17     AND AT EVERY MEET AND CONFER.

18         SO HOPEFULLY THAT WOULD -- THE COUNSEL WILL BE

19    CONSOLIDATED IN SOME WAY ANYWAY, BUT IF NOT, MDL COURTS HAVE

20    FOUND A WAY TO DEAL WITH THAT.

21             MR. HOOVER:  YEAH.  YOUR HONOR, I EXPECT THERE WILL

22     BE COORDINATION, ABSOLUTELY.

23         THE DIFFICULTY WE'RE IN RIGHT NOW IS THAT THE

24    PLAINTIFFS -- WE DIDN'T KNOW THAT THEY WERE GOING TO NAME, YOU

25    KNOW, 15, 16 MORE DEFENDANTS.  THEY'VE DONE THAT.

1          THE COURT:  UM-HUM.

2          MR. HOOVER:  AND IT'S DIFFICULT WHEN COMPANIES

3     HAVEN'T HIRED A LAWYER YET TO MEET A DEADLINE THAT'S A FEW

4     WEEKS AWAY.

5          THE COURT:  OKAY.  SO LET ME UNDERSTAND.  ARE THEY

6     GOING TO BE FILING MOTIONS TO DISMISS FOR LACK OF PERSONAL

7     JURISDICTION AND THEY'RE GOING TO BE ASKING TO NOT BE A PART OF

8     THIS MDL?  IS THAT --

9          MR. HOOVER:  YOUR HONOR, I DON'T KNOW THE ANSWER TO

10     THAT.  I DO KNOW THAT IN SOME MDL'S, IF A CASE IS NOT BROUGHT

11     IN A STATE WHERE THEY HAVE ANY BUSINESS GOING ON WHATSOEVER,

12     THAT THOSE SORTS OF ARGUMENTS HAVE BEEN MADE, AND MADE WITH

13     GROUNDS, AND THAT SOMETIMES RESULTS IN THE PLAINTIFFS FILING AN

14     ACTION IN A STATE IN WHICH THERE WOULD BE JURISDICTION OVER

15     THOSE DEFENDANTS AND THAT ACTION ULTIMATELY ENDS UP BEING

16     TRANSFERRED TO THE MDL COURT.

17          BUT IN THIS SITUATION, I CAN'T PREDICT WHETHER THERE WILL

18     BE JURISDICTIONAL MOTIONS BROUGHT, BUT I WANTED TO FLAG IT FOR

19     THE COURT BECAUSE SOME OF THESE DEFENDANTS ARE -- YOU KNOW, ARE

20     NOT CALIFORNIA BLUES, IF YOU WILL.

21          MS. CERVANTEZ:  YOUR HONOR, WE THINK THAT THERE WILL

22     BE PERSONAL JURISDICTION IN THIS COURT FOR MOST, IF NOT ALL, OF

23     THE DEFENDANTS BECAUSE OF THE WAY THIS BLUE CARD PROGRAM

24     WORKED.

25          FOR EXAMPLE, I MEAN, THAT'S, IN FACT, HOW THESE PEOPLE'S

1    DATA, WHO WERE NOT -- WHO WERE NOT -- WHO DID NOT LIVE IN

2    STATES WHERE ANTHEM WAS THE BLUE CROSS BLUE SHIELD LICENSEE

3    ENDED UP WITH THEIR DATA IN THE ANTHEM DATABASE.

4         SO I THINK WE'RE GOING TO FIND THAT MANY PEOPLE -- THAT

5    THESE INSURANCE COMPANIES IN OTHER STATES ALL DID HAVE CONTACT

6    WITH CALIFORNIA AND, IN FACT, FOR EXAMPLE, ONE OF OUR

7    CALIFORNIA PLAINTIFFS WAS INSURED UNDER ANTHEM OF TEXAS.

8         BUT I DO AGREE THAT IT IS POSSIBLE THAT THERE WILL BE

9    DEFENDANTS WHO ARGUE THAT THERE IS NO PERSONAL JURISDICTION AND

10   THEN WE HAVE TO, AS MR. HOOVER SAID, FILE KIND OF -- KIND OF GO

11   BACK, FILE SOMETHING AGAINST THEM IN THEIR HOME STATE, GO

12   THROUGH THE MDL TRANSFER PROCESS.

13        NOW, THEY MAY DECIDE TO WAIVE PERSONAL JURISDICTION

14   KNOWING THAT IT DOESN'T GET THEM OUT OF THIS CASE AND IT

15   DOESN'T GET THEM OUT OF THIS MDL, IT JUST GIVES THEM TWO MORE

16   MONTHS, BUT THEY'RE GOING TO BE HERE ANYWAY.  SO IT'S VERY

17   POSSIBLE THAT THEY WILL DECIDE TO WAIVE PERSONAL JURISDICTION

18   BECAUSE THEY'RE GOING TO END UP HERE ANYWAY.

19        BUT IT IS POSSIBLE -- IT'S CERTAINLY POSSIBLE THAT THERE

20   WILL BE DEFENDANTS WHO WANT TO DO IT THE HARD WAY AND WE WOULD

21   HAVE TO DO THAT THEN.

22        MR. HOOVER:  YOUR HONOR, I DIDN'T MEAN TO SIDETRACK

23   US WITH THE PERSONAL JURISDICTION AND VENUE ISSUE.  IT'S COME

24   UP IN OTHER MDL'S.

25        I'M NOT AWARE OF AN ANTHEM OF TEXAS, BUT CERTAINLY IF IT'S

```
 1    AN ANTHEM ENTITY --

 2              MS. CERVANTEZ:  I'M SORRY.  I MISSPOKE.  IT'S A

 3    BLUE CROSS OF TEXAS, WHICH IS NOT --

 4              MR. HOOVER:  DIFFERENT COMPANY.

 5              MS. CERVANTEZ:  YES.

 6              MR. HOOVER:  RIGHT.  I WAS GOING TO SAY, FOR AN

 7    ANTHEM COMPANY, I DON'T THINK THERE WOULD BE AN ISSUE.

 8          BUT THESE OTHER BLUES ARE INDEPENDENTLY OWNED AND THEY MAY

 9    WELL HAVE OTHER COUNSEL.

10              THE COURT:  WELL, IF I GET MULTIPLE PERSONAL

11    JURISDICTION MOTIONS, THEY WON'T BE ABLE TO BE HEARD ON

12    FEBRUARY 4TH, SO THEY'LL HAVE TO BE FILED ACCORDING TO -- SO

13    THEY HAVE 21 DAYS FROM SERVICE AND THEY'RE ALL GOING TO BE

14    SERVED BY OCTOBER 29TH.

15              MR. HOOVER:  YOUR HONOR, IN ADDITION TO THE PERSONAL

16    JURISDICTION ISSUES, THE ISSUE YOU IDENTIFIED A FEW MINUTES AGO

17    IS IT WOULD BE OUR RESPONSIBILITY TO TALK WITH THE OTHER

18    DEFENDANTS, THE NEW DEFENDANTS IN SELECTING CAUSES OF ACTION.

19              THE COURT:  UM-HUM.

20              MR. HOOVER:  YOU KNOW, THEY'RE GOING TO BE IN THIS

21    CASE AS MUCH AS ANTHEM IS UNTIL THEY HAVE A CHANCE TO MOVE TO

22    TRY TO HAVE IT DISMISSED, AND WE'LL WORK VERY PROMPTLY WITH

23    EVERYONE AND OTHER COUNSEL ON THE DEFENSE SIDE.

24          BUT I DO THINK YOU WERE CORRECT TO OBSERVE THAT IF WE'RE

25    GOING TO BE DECIDING ON THE MANAGEMENT OF THE CASE AND IT'S
```

1   GOING TO BE IMPACTING PARTIES THAT ARE NOT YET EVEN SERVED,

2   WE'LL NEED TO HAVE SOME OPPORTUNITY TO GET THAT INPUT FROM

3   THOSE OTHER NEW DEFENDANTS.

4           THE COURT:  WELL, WHAT IF I MOVE THE MOTION TO

5   DISMISS FILING DEADLINE TO NOVEMBER 23RD?  SO THAT WOULD BE

6   EVEN BEYOND THE 21 DAYS THEY WOULD NORMALLY HAVE TO RESPOND TO

7   THE COMPLAINT, ASSUMING THEY'RE SERVED BY OCTOBER 29TH, AND

8   HOPEFULLY SOME WILL BE SERVED SOONER SINCE THESE PLAINTIFFS ARE

9   GOING TO LEAVE WITH SUMMONSES TODAY --

10          MR. HOOVER:  YOUR HONOR, HOW DOES THE SELECTION OF

11  THE CAUSES OF ACTION WORK INTO THAT?  I MEAN, AS I UNDERSTAND

12  IT, WE ARE TO CHOOSE THREE AND THE PLAINTIFFS ARE TO CHOOSE

13  THREE.  DEFENDANTS ARE TO CHOOSE THREE AND THE PLAINTIFFS ARE

14  GOING TO CHOOSE THREE.  I DON'T KNOW WHAT WE'RE GOING TO DO

15  ABOUT THE FEDERAL, WHETHER THAT'S ONE OF THE SIX OR SEPARATE.

16          BUT THAT NEEDS TO BE DONE SO YOU KNOW WHAT YOUR TARGET IS,

17  RIGHT, IN TERMS OF BRINGING THE MOTION.

18          THE COURT:  UM-HUM.

19          MR. HOOVER:  AND SO I JUST WANTED TO, TO RAISE THAT

20  ISSUE BECAUSE WE'LL NEED TO KNOW WHAT WE'RE MOVING ON.

21          THE COURT:  UM-HUM.

22          MR. HOOVER:  AND WE DON'T YET KNOW WHO WE'RE -- WHO

23  WE'RE SPEAKING WITH FOR THESE OTHER DEFENDANTS.  I THINK OUR

24  FIRM WILL REPRESENT -- I THINK THERE ARE SOME, A FEW THAT I

25  KNOW THAT WE WILL REPRESENT.

```
 1              THE COURT:  UM-HUM.

 2              MR. HOOVER:  BUT CERTAINLY I DON'T KNOW ABOUT OTHERS.

 3              THE COURT:  OKAY.  SO IS YOUR SUGGESTION THEN THAT

 4    THE MOTION THAT'S GOING TO BE HEARD ON FEBRUARY 4TH ONLY BE

 5    YOUR MOTION?  AND THEN WE SET DIFFERENT DATES AND DIFFERENT

 6    SCHEDULES FOR THE OTHER DEFENDANTS WHO ARE NEWLY NAMED IN THE

 7    CONSOLIDATED AMENDED COMPLAINT?

 8         I JUST THINK THAT A LOT OF THEIR ISSUES WILL BE

 9    OVERLAPPING AND I THINK THAT A LOT OF THEIR ARGUMENTS WILL BE

10    OVERLAPPING.

11              MR. HOOVER:  WHETHER -- WHETHER OURS IS HEARD -- I

12    GUESS, YOUR HONOR, IT DEPENDS ON WHETHER THEY ARE GOING TO BE

13    MOVING ON THE SAME SIX OR SEVEN CAUSES OF ACTION.

14              THE COURT:  UM-HUM.

15              MR. HOOVER:  AND IF THAT'S THE CASE, I THINK THAT WE

16    WILL -- WE WOULD NEED TO INVOLVE THEM IN SELECTING THE THREE OR

17    FOUR OR WHATEVER IT IS FROM THE DEFENSE SIDE.

18              THE COURT:  UM-HUM.

19              MR. HOOVER:  IF THEY'RE GOING TO BE MOVING SORT OF ON

20    A SEPARATE BASIS BECAUSE THEY DO HAVE DIFFERENT ISSUES -- I

21    MEAN, IT WASN'T -- IT WAS ANTHEM'S, OBVIOUSLY, SECURITY

22    INCIDENT.  THEY'LL HAVE OTHER ISSUES THAT THEY'RE RAISING THAT

23    ANTHEM MAY NOT BE RAISING.

24              THE COURT:  UM-HUM.

25              MR. HOOVER:  AND IN THAT SENSE, A SEPARATE BRIEFING
```

1    OPPORTUNITY FOR THEM IN SOME WAYS I THINK DOES MAKE SENSE.

2        AND SO IF THAT WERE THE CASE, THEN I THINK IT COULD BE A

3    DIFFERENT DAY.

4            THE COURT:  OKAY.

5            MS. CERVANTEZ:  YOUR HONOR?

6            THE COURT:  UM-HUM.

7            MS. CERVANTEZ:  YEAH, WE WOULD HAVE NO OBJECTION TO A

8    DIFFERENT OR LATER BRIEFING SCHEDULE FOR THE -- FOR SOME -- FOR

9    NON-ANTHEM DEFENDANTS THAT WERE NOT REPRESENTED BY HOGAN

10   LOVELLS OR --

11           MR. HOOVER:  I THINK WE WOULD NEED TO DO -- I THINK

12   GIVEN THE SIMILARITY -- GIVEN THE DIFFERENCE BETWEEN ANTHEM AND

13   SOME OF THE OTHER NON-ANTHEM DEFENDANTS -- I DON'T THINK IT'S A

14   LAW FIRM ISSUE.  I THINK IT'S A PARTY ISSUE.

15       SO I THINK IT WOULD MAKE SENSE TO KEEP THE NON-ANTHEM

16   DEFENDANTS TOGETHER ON -- BECAUSE I THINK THEIR ISSUES WOULD BE

17   SIMILAR.

18           MS. CERVANTEZ:  WELL, WE HAVE NO -- THAT SEEMS LIKE

19   THAT WOULD MAKE SENSE FROM A CASE MANAGEMENT POINT OF VIEW TO

20   BE MORE EFFICIENT THAT WAY.

21           THE COURT:  BLESS YOU.

22           MR. FULLER:  THANK YOU.

23           MS. CERVANTEZ:  YOUR HONOR, I --

24           THE COURT:  SO YOU WOULD -- WOULD YOU PUT THE 17 NON

25   -ANTHEM BLUE CROSS BLUE SHIELD COMPANIES WITH BLUE CROSS

1    BLUE SHIELD ASSOCIATION?  YOU WOULD PUT THEM AS ONE BIG GROUP?

2              MR. HOOVER:  YES.  I'LL LET MR. KAVANAUGH SPEAK TO

3    THAT AS WELL, BUT THAT MAKES SENSE TO ME.

4              MR. KAVANAUGH:  SURE.

5              THE COURT:  OKAY.  GO AHEAD.

6              MR. KAVANAUGH:  I WAS JUST GOING TO SAY, YOUR HONOR,

7    I MEAN, CERTAINLY I DON'T SPEAK FOR ANY OF THE OTHER BLUES,

8    EITHER, BUT I DON'T HAVE AN OBJECTION TO THAT.

9         I THINK THE ISSUE THAT WE WILL HAVE IS THE ONE THAT

10   MR. HOOVER PUT HIS FINGER ON, AND THAT IS TO THE EXTENT THAT

11   THERE ARE OVERLAPPING ISSUES, YOU KNOW, WE'RE GOING TO WANT OUR

12   OPPORTUNITY TO BE HEARD IN THE FIRST INSTANCE, BECAUSE AS YOUR

13   HONOR I THINK INDICATED, THERE IS GOING TO BE OVERLAP, AND WHEN

14   THAT HAPPENS, YOU'RE -- THE COURT'S PROBABLY GOING TO BE

15   UNLIKELY TO REVIEW AND REVISIT THE SAME ISSUE IN A SECOND ROUND

16   OF BRIEFING.

17             THE COURT:  UM-HUM.

18             MR. KAVANAUGH:  I THINK THE BOTTOM LINE, YOUR HONOR,

19   IS THAT THE CONSOLIDATED AMENDED COMPLAINT IS SIGNIFICANTLY

20   BROADER THAN WHAT CAME BEFORE IT AND ADDS AN ADDITIONAL -- A

21   SIGNIFICANT NUMBER OF NEW PARTIES AND THERE'S -- THERE REALLY

22   HASN'T BEEN MUCH OF AN OPPORTUNITY TO REACT TO THAT AND

23   DETERMINE A COORDINATED APPROACH GIVEN THE ADDITION OF NEW

24   PARTIES THAT HAD NO PRIOR EXPOSURE TO THE MDL BRINGS TO THE

25   TABLE.

```
1          THE COURT:  SO WHAT ABOUT NOVEMBER 23RD, DECEMBER 21,

2     AND JULY 19TH -- JANUARY 19TH AS THE NEW DATE FOR THE

3     CONSOLIDATED MOTION TO DISMISS?  I MEAN, YOU WOULD ONLY HAVE 21

4     DAYS FROM THE DATE OF SERVICE ANYWAY.  I'M ACTUALLY GIVING YOU

5     EXTRAS.  I'M GIVING YOU FOUR DAYS --

6          MR. KAVANAUGH:  FOR THE ASSOCIATION, I DON'T HAVE A

7     PROBLEM, YOUR HONOR, WITH THOSE DATES.  I DON'T THINK THE ISSUE

8     IS NECESSARILY OURS.  WE'RE NAMED IN THAT ONE COUNT.

9          I'M JUST JOINING IN MR. HOOVER'S COMMENTS ABOUT THE NUMBER

10    OF PARTIES THAT ARE NOT YET BEFORE YOU, AND POSSIBLY THE

11    COMPLEXITY INVOLVED IN SELECTING CAUSES OF ACTION.

12         I SUSPECT THAT SOME OF THOSE OTHER BLUES COMPANIES ARE

13    GOING TO FEEL DIFFERENTLY ABOUT THE SELECTION OF STATES OR

14    CAUSES OF ACTION THAN OTHERS, AND THERE'S PROBABLY GOING TO BE

15    A LACK OF UNIFORMITY IN THOSE VIEWS GIVEN --

16         THE COURT:  OKAY.  WELL, THEN --

17         MR. KAVANAUGH:  GIVEN THE --

18         THE COURT:  I'M SORRY TO INTERRUPT YOU.  GIVE ME A

19    PROPOSAL, BECAUSE I'M KEEPING THIS FEBRUARY 4TH DATE.  SO

20    EITHER YOU'RE IN AND YOU'RE GOING TO BE INCLUDED AND WE'RE

21    GOING TO HAVE TO FIGURE OUT AN EXPEDITED SCHEDULE THAT WORKS

22    FOR YOU, OR YOU'RE OUT AND I'M GOING TO GO FORWARD ON

23    FEBRUARY 4TH WITH JUST ANTHEM AND I'M GOING TO SCHEDULE A LATER

24    DATE FOR THE BLUE CROSS BLUE SHIELD ENTITIES.

25         DO YOU SEE WHAT I'M SAYING?  YOU CAN'T HAVE IT BOTH WAYS.
```

1    YOU CAN'T SAY, "I DON'T WANT ANTHEM TO GO FIRST, BECAUSE I WANT

2    IN THE FIRST INSTANCE TO HAVE MY SAY," BUT THEN SAY, "OH, BUT

3    IT'S JUST TOO EARLY AND WE CAN'T MAKE THIS FEBRUARY 4TH DATE."

4         BECAUSE THAT FEBRUARY 4TH DATE IS HAPPENING.  SO EITHER

5    THE BLUE CROSS BLUE SHIELD ASSOCIATION ENTITIES ARE IN OR

6    THEY'RE OUT.  WHAT --

7              MR. KAVANAUGH:  YOUR HONOR, JUST TO BE CLEAR, I'M

8    SPEAKING FOR THE BLUE CROSS BLUE SHIELD ASSOCIATION.  I'M NOT

9    SPEAKING FOR THOSE OTHER ENTITIES.

10        ON BEHALF OF THE ASSOCIATION, IF THE -- IF COUNT SIX IS TO

11   BE INCLUDED, THEN WE ARE HAPPY TO PROCEED AT THE SAME TIME AS

12   ANTHEM ON THE SCHEDULE YOUR HONOR ORIGINALLY CONTEMPLATED.

13             THE COURT:  OKAY.  SO ARE THE BLUE CROSS BLUE SHIELD

14   COMPANIES NOT MEMBERS OF THE BLUE CROSS BLUE SHIELD

15   ASSOCIATION?  THAT'S WHAT I'M UNCLEAR ON.  THEY'RE NOT YOUR --

16   YOU'RE NOT A MEMBERSHIP ASSOCIATION?  YOU'RE A STANDALONE

17   WITHOUT ANY RELATION TO THE NON-ANTHEM BLUE CROSS BLUE SHIELD

18   COMPANIES?

19             MR. KAVANAUGH:  THEY ARE LICENSEES.  THEY ARE

20   INDEPENDENT COMPANIES.

21             THE COURT:  OKAY.  SO WHO'S A MEMBER OF YOUR

22   ASSOCIATION?  I'M SORRY.  I JUST DON'T UNDERSTAND YOUR ENTITY.

23   ARE YOU AN ASSOCIATION OF AFFILIATED ORGANIZATIONS?  OR WHY ARE

24   YOU CALLED ASSOCIATION?

25             MR. KAVANAUGH:  THAT IS THE NAME OF THE ENTITY.  THE

1    OTHER BLUES THAT WE'RE REFERRING TO HERE, THE OTHER BLUE CROSS

2    BLUE SHIELD ENTITIES ARE INDEPENDENT COMPANIES THAT ARE

3    LICENSEES OF THE BLUE CROSS BLUE SHIELD ASSOCIATION.

4         THE COURT:  OKAY.  THEY'RE YOUR LICENSEES?

5         MR. KAVANAUGH:  CORRECT.  THE WORD "ASSOCIATION," IF

6    THAT'S WHAT'S GIVING YOUR HONOR TROUBLE, THAT IS JUST THE NAME

7    OF THE ENTITY.  IT IS AN INDEPENDENT LEGAL ENTITY.  EACH OF THE

8    LICENSEES IS AN INDEPENDENT LEGAL ENTITY.

9         THE COURT:  OKAY.  THANK YOU.  THANK YOU FOR THAT

10   CLARIFICATION.

11        WELL, IF I DON'T SET ANY DATE, THEN THEY'LL HAVE 21 DAYS

12   FROM THE DATE OF SERVICE TO RESPOND TO THE COMPLAINT.  MAYBE

13   THAT'S EASIER.

14        IF YOU WANT TO BE PART OF THIS SHIP THAT'S GOING TO BE

15   HEARD ON FEBRUARY 4TH, YOU'LL FOLLOW THIS SCHEDULE OF

16   NOVEMBER 23RD, DECEMBER THE 21ST, AND JANUARY THE 19TH.

17        AND IF NOT, YOU'LL JUST HAVE 21 DAYS FROM WHEN YOU'RE

18   SERVED, WHICH WILL PROBABLY BE SOONER THAN NOVEMBER 23RD TO

19   RESPOND.

20        MR. HOOVER:  YOUR HONOR, MAY I GIVE A SUGGESTION?

21        THE COURT:  WHAT'S THAT?

22        MR. HOOVER:  I THINK FOR THE NON-ANTHEM BLUE CROSS

23   BLUE SHIELD ENTITIES THAT WE REPRESENT --

24        THE COURT:  AND HOW MANY OF THE 17 DO YOU REPRESENT?

25        MR. HOOVER:  WE REPRESENT FOUR THAT WERE ORIGINALLY

1    NAMED --

2         THE COURT:  OKAY.

3         MR. HOOVER:  -- IN THE OTHER CASES, AND WE REPRESENT

4    AT THIS POINT AN ADDITIONAL THREE.

5         THE COURT:  OKAY.

6         MR. HOOVER:  AND SO THAT WOULD BE SEVEN TOTAL OUT OF

7    THE 18 NON-ANTHEM BLUES.

8         THE COURT:  WAIT.  WHEN YOU SAY 18, ARE YOU INCLUDING

9    THE ASSOCIATION?

10        MR. HOOVER:  I THINK SO, YES.

11        THE COURT:  OKAY.

12        MR. HOOVER:  SO IT WOULD BE SEVEN OUT OF THE 18 THAT

13   WE WILL BE REPRESENTING.

14        THE COURT:  OKAY.

15        MR. HOOVER:  AND I WOULD SAY FOR THOSE THAT WE

16   REPRESENT, THEY WOULD WANT TO BE -- THEY WOULD LIKE TO FILE A

17   SEPARATE BRIEF, BUT BE ON THE SAME SCHEDULE AS YOU IDENTIFIED

18   ON NOVEMBER 23RD WITH THE FEBRUARY 4 HEARING.

19        THE COURT:  WELL, IF IT'S GOING TO BE A SEPARATE

20   BRIEF, IT'S NOT GOING TO BE HEARD ON FEBRUARY 4TH.  IT'LL BE

21   HEARD AFTER.

22        MR. HOOVER:  OKAY.

23        MR. KAVANAUGH:  YOUR HONOR, IS THAT -- IS THAT THE

24   COURT'S INTENTION, TO HAVE A BRIEF FILED BY THE ASSOCIATION AS

25   WELL, THAT IF WE FILE ON THE SAME SCHEDULE, IT WILL NOT BE

1    HEARD ON THE 4TH?

2          THE COURT:  I THINK THAT IS UNFORTUNATELY LIKELY

3    BECAUSE I -- I DON'T THINK I HAVE THE RESOURCES.  I MEAN, THE

4    ORDER IS GOING TO BE HOPEFULLY THOROUGHLY RESEARCHED,

5    COMPREHENSIVE AND WE'LL TRY TO GET THE LAW RIGHT, AND I JUST

6    DON'T THINK WE HAVE THE CAPACITY.

7       WE HAVE A PRETRIAL CONFERENCE IN ANOTHER CASE ON THAT DATE

8    AND WE HAVE OTHER CASES THAT UNFORTUNATELY NEED OUR ATTENTION,

9    TOO.  SO I THINK IT WOULD BE DIFFICULT.

10       NOW, YOU CAN FILE IT AND WE CAN TAKE A LOOK AND IF WE CAN

11    HANDLE MORE THAN ONE ON THAT DATE, WE WILL TRY TO DO THAT.  BUT

12    I JUST CAN'T GUARANTEE RIGHT NOW THAT WE CAN.

13          MR. HOOVER:  UNDERSTOOD, YOUR HONOR.

14          THE COURT:  OKAY.

15          MR. KAVANAUGH:  UNDERSTOOD, YOUR HONOR.

16          MS. CERVANTEZ:  YOUR HONOR?

17          THE COURT:  YES.

18          MS. CERVANTEZ:  I KNOW IT'S GETTING LATE, BUT I DID

19    WANT TO MAKE SURE THAT WE STILL WENT BACK AND ADDRESSED THE

20    ISSUE OF THE SELECTION OF CLAIMS.

21       AS WE SET FORTH IN OUR PAPERS, WE'RE THE ONES WHO HAVE TO

22    MOVE FOR CLASS CERTIFICATION.  WE'RE THE ONES WHO HAVE TO PROVE

23    OUR CASE.  RIGHT NOW WE HAVE TO PUT FORTH EVERYTHING IN THE

24    COMPLAINT.

25          ONCE WE GET THE DISCOVERY, WE FIGURE OUT HOW WE'RE GOING

1  TO MOVE FORWARD, WHAT ARE THE BEST CLAIMS.

2       IF WE AREN'T ABLE TO SELECT ENOUGH OF OUR BEST CLAIMS TO

3  GO FORWARD, IT WILL CAUSE -- YOU KNOW, WE AGREE WITH YOUR

4  GENERAL PROPOSAL TO HAVE A NARROW ISSUE -- NUMBER OF CLAIMS,

5  BUT IF WE PICK THREE AND THEY PICK TWO KENTUCKY CLAIMS AND

6  THEIR FEDERAL EMPLOYEE, WE DON'T THINK THAT'S GOING TO WORK TO

7  GIVE ALL OF THE PARTIES ENOUGH INFORMATION.

8       WE DID --

9       THE COURT:  HOW MANY DO YOU THINK YOU NEED?  I'M

10  SORRY TO INTERRUPT YOU.

11       MS. CERVANTEZ:  WE SUGGESTED A COMPROMISE TO THEM.

12  WE WOULD SWITCH OUT -- THEY WANTED KENTUCKY INSTEAD.  THEY SAID

13  KENTUCKY HAD MORE PEOPLE THAN CONNECTICUT, WHICH WE DIDN'T

14  KNOW, SO WE SAID, GREAT, WE WOULD SUBSTITUTE OUT THE KENTUCKY

15  CLAIM INSTEAD OF THE CONNECTICUT UNFAIR PRACTICES CLAIM.

16       SO WE WOULD HAVE FIVE -- THE FIVE, FIVE CLAIMS.

17       THE COURT:  UM-HUM.

18       MS. CERVANTEZ:  AND IF THEY HAVE THREE THAT THEY

19  THOUGHT THEY NEEDED IN ADDITION, THAT WOULD BE EIGHT CLAIMS.

20       I KNOW THAT THAT'S CLEARLY MORE WORK FOR YOUR HONOR, BUT I

21  THINK THAT GETTING ENOUGH CLAIMS, AS YOU SAID, CLAIMS IN

22  DIFFERENT BUCKETS THAT ADDRESS DIFFERENT ISSUES SO THAT THE

23  PARTIES UNDERSTAND THE WHOLE SCOPE OF THE CASE, THAT'S

24  IMPORTANT AND WILL REALLY MAKE A DIFFERENCE ON, YOU KNOW, GOING

25  FORWARD.

1    THE COURT:  YOU KNOW, I'M JUST WONDERING, DO WE NEED

2  TO HAVE ANOTHER CMC AFTER WE GET ALL THE BLUE CROSS ENTITIES IN

3  THE CASE?

4    MR. HOOVER:  YOUR HONOR, I THINK -- I THINK THAT,

5  UNFORTUNATELY, MAKES SENSE BECAUSE WE'RE PICKING THE -- WE'RE

6  CHARTING THE COURSE.  YOUR HONOR HAS MADE THE RULING THAT WE'RE

7  GOING TO BE PICKING CAUSES OF ACTION AND THAT'S THE WAY THE

8  CASE IS GOING TO PROCEED, AND I FEEL AS THOUGH THE OTHER

9  DEFENDANTS NEED TO HAVE A SAY IN THAT.

10    THE COURT:  UM-HUM.

11    MR. HOOVER:  OTHERWISE THEY'LL BE COMING IN AT THE

12  NEXT HEARING SAYING THEY HAD NO SAY IN IT.  AND I THINK TO

13  AVOID THAT, WE SHOULD DO SOMETHING.  AND IT DOESN'T HAVE TO BE

14  A LONG TIME FROM NOW.  PEOPLE ARE GOING TO GET SERVED, AS YOU

15  SAID, AND WE CAN GET TOGETHER.

16    I DO THINK THAT THERE IS SOME ABSOLUTE EQUITY IN SPLITTING

17  THESE BECAUSE, YOU KNOW, FOR EXAMPLE, THE REASON WE PICKED

18  KENTUCKY IS IT'S A NOTICE -- IT'S A NOTICE STATUTE, AND WE WANT

19  TO BE ABLE TO PRESENT OUR ARGUMENT THAT THERE IS NOT A NOTICE

20  CLAIM HERE AND THE PLAINTIFFS HADN'T SELECTED THAT ONE.

21    SO I THINK WE'RE -- WE DIDN'T PICK A STATE THAT HAS NOBODY

22  IN IT.  KENTUCKY ACTUALLY HAS A LOT OF ANTHEM MEMBERS IN IT.

23    THE COURT:  UM-HUM.

24    MR. HOOVER:  AND IT'S REPRESENTED UNDER SOME OTHER

25  STATUTES AS WELL.

1        SO I DO THINK THAT YOUR INITIAL INSTINCT TO HAVE SOMETHING

2    THAT'S EQUITABLE AND NOT HAVING PLAINTIFFS PICKING ALL OR MOST

3    OF THE CLAIMS WAS RIGHT.  AND THEY KNOW THEY'RE GOING TO HAVE

4    THEIR THREE STRONGEST, OR HOWEVER THEY WANT TO REFER TO THEM,

5    YOU KNOW, COMING UP NO MATTER WHAT.  SO I THINK WE SHOULD BE

6    SPLITTING THEM.

7        MS. CERVANTEZ:  AND, YOUR HONOR, THE -- THREE IS NOT

8    ENOUGH FOR US TO GIVE YOU --

9        THE COURT:  SO WHAT'S YOUR NUMBER?

10       MS. CERVANTEZ:  FIVE.

11       THE COURT:  OKAY.  NOW, WHAT IF WE DID FIVE AND FIVE,

12   BUT THE DEFENDANTS WOULD HAVE TO SPLIT IT BETWEEN THE ANTHEM

13   AND THE BLUE CROSS ENTITIES?  I THINK YOUR INTERESTS ARE

14   LARGELY ALIGNED.  THERE MAY BE A FEW UNIQUE ISSUES, BUT IT'S

15   THE SAME DATA BREACH THAT IS THE ESSENCE OF ALL OF THE CLAIMS

16   AGAINST BOTH ENTITIES.

17       SO I DON'T KNOW -- I WOULD DEFER TO THE DEFENDANTS FOR YOU

18   TO DECIDE HOW YOU SPLIT IT UP.  ANTHEM GETS THREE, BLUE CROSS

19   GETS TWO.  I MEAN, HOWEVER YOU ALL WANT TO SPLIT IT UP THAT

20   MAKES SENSE.

21       MR. HOOVER:  YOUR HONOR, I THINK WE CERTAINLY CAN

22   COORDINATE WITH THE OTHER DEFENDANTS.  I THINK YOU'RE CORRECT

23   ABOUT GENERAL ALIGNMENT OF INTERESTS AND IT'S IN THE NATURE OF

24   COORDINATION IN AN MDL TO DO THAT.

25       THE COURT:  SO WHAT ABOUT FIVE AND FIVE?  YOU PICK --

1    YOU JOINTLY, ALL OF THE BLUES ENTITIES, ALL OF THE ANTHEM

2    ENTITIES PICK FIVE, PLAINTIFFS PICK FIVE.  WE'LL GO ON TEN.

3         MR. HOOVER:  I THINK THAT WOULD WORK.  I THINK FOUR

4    AND FOUR ALSO WOULD WORK.

5         AGAIN, WE'D LIKE IT TO BE CLEAR THAT WE'RE PICKING HAVING

6    OBJECTED TO THE NOTION THAT WE'RE DOING THIS PIECEMEAL.

7         BUT ONCE WE'RE IN THAT WORLD, I THINK SPLITTING THEM

8    EVENLY, WHETHER IT'S FOUR AND FOUR OR FIVE AND FIVE, IS FINE.

9         THE COURT:  WHY DO YOU NEED FIVE VERSUS FOUR?

10         MS. CERVANTEZ:  WELL, YOUR HONOR, IT'S THE CLAIMS

11   WE -- AS YOU SAID, IN TERMS OF THE -- IN TERMS OF THE BUCKETS,

12   WE'VE GOT BREACH OF CONTRACT CLAIM, A NEGLIGENCE CLAIM --

13         THE COURT:  UM-HUM.

14         MS. CERVANTEZ:  -- AND AN INSURANCE PRIVACY ACT

15   CLAIM.

16         AND THEN, BECAUSE CONSUMER PROTECTION ACTS ARE NOT AS

17   SIMILAR AS SOME OTHER STATUTES, THAT'S WHY WE HAVE TWO OF

18   THOSE.  WE HAVE THE NEW YORK AND CALIFORNIA 17200S.  SO THOSE

19   ARE TWO VERY BIG STATES, AND IF YOU READ THE STATUTE, THOSE ARE

20   ARGUABLY --

21         THE COURT:  OKAY.

22         MS. CERVANTEZ:  -- ON THE FAR SPECTRUM OF DIFFERENT

23   CONSUMER PROTECTION STATUTES.  WE THINK THAT GIVES US THE BEST

24   CHANCE, GOING FORWARD FOR EVERYBODY, FOR DEFENDANTS AND

25   PLAINTIFFS, TO BE ABLE TO EVALUATE THE CASE.  IF YOU RULE ON

1    THOSE, WE'LL KNOW HOW YOU WOULD RULE ON MANY OTHER CONSUMER

2    PROTECTION STATUTES.

3         THE COURT:  OKAY.  LET'S GO FIVE AND FIVE THEN, FIVE

4    FOR ALL THE JOINT DEFENDANTS AND FIVE FOR ALL THE JOINT

5    PLAINTIFFS.  WE'LL GO FIVE AND FIVE.

6         NOW, TELL ME WHAT SCHEDULE WORKS.  I'VE -- I MEAN, I CAN

7    UNDERSTAND WHY ONE OF THESE BLUES ENTITIES MIGHT SAY, "WELL, I

8    WANT TO FIGHT PERSONAL JURISDICTION," BUT UNDERSTAND THAT MEANS

9    THEY WILL HAVE NO SAY IN WHAT'S GOING WITH THIS MDL AND THAT

10   WILL BE THEIR CHOICE TO MAKE.  IF THEY WANT TO HAVE A VOICE ON

11   HOW THESE MOTIONS TO DISMISS ARE GOING TO BE LITIGATED OR NOT,

12   AND EVEN IF THEY DO END UP GOING TO WHATEVER STATE, THERE'S NO

13   GUARANTEE THAT THE JPML WON'T SEND THEM BACK HERE, SO THEY'LL

14   JUST COME IN LATE AND NOT HAVE A SAY.  BUT OBVIOUSLY THAT'S

15   THEIR OWN STRATEGIC CHOICE AS TO WHAT MAKES SENSE FOR THEM.

16        BUT I'M OKAY WITH TRYING TO PUSH BACK THE SCHEDULE TO GIVE

17   ENOUGH TIME FOR THE NEW ENTITIES TO BE SERVED, TO HIRE

18   COUNSEL -- I MEAN, I'M SURE THAT IT'S NOT GOING TO COME AS A

19   SURPRISE TO THEM THAT THERE'S THIS LITIGATION THAT'S BEEN GOING

20   ON FOR SOME TIME, SO I'M HOPING THAT THAT CAN BE DONE

21   EXPEDITIOUSLY.

22        SO WE'LL DO FIVE CLAIMS PER SIDE, AND THAT WILL BE THE TEN

23   THAT WE'LL TAKE THROUGH TWO MOTIONS TO DISMISS, THROUGH CLASS

24   CERT, THROUGH SUMMARY JUDGMENT.  OBVIOUSLY IF SOMETHING GETS

25   DISMISSED WITH PREJUDICE, DON'T WASTE ANY MORE TIME ON IT.

1          AND IF ANYBODY WANTS TO FILE A MOTION TO DISMISS FOR LACK

2     OF PERSONAL JURISDICTION, THAT WILL NOT BE HEARD ON

3     FEBRUARY 4TH AND I WILL SCHEDULE A SEPARATE HEARING DATE FOR IT

4     AND THEY WON'T HAVE SAY IN THE MOTION TO DISMISS LITIGATION.

5     THAT'S GOING FORWARD ON THE 4TH.

6          SO ARE YOU TELLING ME THE 23RD DOES NOT GIVE YOU ENOUGH

7     TIME?  AND IF SO, WHAT DOES?

8          AND, I MEAN, IT'S SORT OF GOING IN DIFFERENT DIRECTIONS.

9     WHAT I WAS HEARING EARLIER IS, PLEASE DON'T LET THIS STATE

10    COURT CASE IN SAN DIEGO GET OUT IN FRONT OF YOU, YOU SHOULD BE

11    DECIDING FIRST.  BUT THEN NOW I'M HEARING, BUT, OH, NO,

12    EVERYTHING IS GOING TO BE SO DELAYED AND MAYBE THE 4TH IS NOT

13    GOING TO WORK.

14         SO HOW MUCH TIME DO YOU NEED?  I'VE SUGGESTED GOING BACK A

15    WEEK TO NOVEMBER 23RD.

16              MR. HOOVER:  YOUR HONOR, SPEAKING FOR OUR CLIENTS --

17              THE COURT:  UM-HUM.

18              MR. HOOVER:  -- NOVEMBER 23RD IS FINE.

19         I THINK THE ISSUE IS GOING TO BE WITH THOSE WHO ARE

20    BRINGING NEW COUNSEL INTO THE SITUATION AND THERE'S JUST NO WAY

21    FOR ME TO SPEAK FOR THEM.

22              THE COURT:  OKAY.  DO YOU WANT TO BE HEARD,

23    MR. KAVANAUGH?

24              MR. KAVANAUGH:  YOUR HONOR, I'M SORRY.  I THOUGHT I

25    RESPONDED TO THAT QUESTION EARLIER.

1       I AGREE WITH MR. HOOVER.  WE CAN BE PREPARED TO ANSWER ON

2    THAT -- OR TO MOVE TO DISMISS ON THAT SCHEDULE.

3            THE COURT:  OKAY.

4            MR. KAVANAUGH:  THAT'S FINE BY US.  OBVIOUSLY WE

5    DON'T SPEAK FOR THE OTHER PARTIES.

6            THE COURT:  UNDERSTOOD.

7        OKAY.  SO THEN WHY DON'T WE KEEP THAT SCHEDULE?  IT WILL

8    BE NOVEMBER 23RD FOR THE MOTION TO DISMISS, AND I -- IN MY

9    MIND, THAT IS GOING TO BE THE JOINT MOTION TO DISMISS,

10   INCLUDING THE ASSOCIATION AND ALL OF THE ENTITIES THAT

11   MR. HOOVER AND HIS TEAM REPRESENTS, AND IT SHOULD INCLUDE ANY

12   OTHER BLUES ENTITY.  THAT WILL BE DUE NOVEMBER 23RD.

13       THE PLAINTIFFS' OPPOSITION WILL BE DUE DECEMBER 21; AND

14   THEN THE DEFENDANTS' REPLY WILL BE DUE JANUARY 19TH.  IT'LL BE

15   ONE JOINT MOTION.

16           MR. KAVANAUGH:  YOUR HONOR, THIS IS BRIAN KAVANAUGH.

17       I DID NOT UNDERSTAND YOUR HONOR TO BE ASKING US THAT WE

18   AGREED TO FILE A SINGLE MOTION.  I THINK, AGAIN, WITHOUT

19   KNOWING THE CLAIMS THAT ULTIMATELY GET SELECTED, BUT ASSUMING

20   COUNT SIX IS ONE OF THEM, WE'D LIKE -- THAT'S THE ONLY COUNT

21   THAT'S DIRECTED TO THE ASSOCIATION.  OUR BRIEF WILL OBVIOUSLY

22   RAISE A NUMBER OF THOSE SIGNIFICANT FEHB ISSUES THAT MR. HOOVER

23   SPOKE ABOUT EARLIER.

24       WE'D LIKE AN OPPORTUNITY, BECAUSE IT IS A UNIQUE ISSUE, TO

25   FILE OUR OWN BRIEF ON THAT ONE COUNT BECAUSE OF THE NATURE OF

1    THAT CLAIM.

2            THE COURT:  WELL, MY CONCERN WITH THAT -- I MEAN,

3    MR. HOOVER, ARE YOU NOT GOING TO WANT TO BRIEF THAT CLAIM?

4            MR. HOOVER:  YES, ABSOLUTELY.  THAT CLAIM IS

5    AGAINST -- THAT CLAIM IS AGAINST ALL DEFENDANTS.

6        BUT OBVIOUSLY ANTHEM AND -- IS DIFFERENTLY SITUATED THAN

7    THE ASSOCIATION.  THE ASSOCIATION MAY HAVE DIFFERENT ARGUMENTS

8    IT WISHES TO MAKE.

9        YOUR HONOR, I UNDERSTOOD WHAT -- I THOUGHT WHAT YOU WERE

10   SAYING WAS THAT THE NON-ANTHEM DEFENDANTS NEEDED TO GET ON THE

11   SAME SCHEDULE, BUT WOULD BE FILING A SEPARATE BRIEF FROM THE

12   ANTHEM DEFENDANTS, WHICH I THINK MAKES SENSE FOR THE REASONS

13   THAT MR. KAVANAUGH IS SAYING, AND I'M SURE IF OTHER COUNSEL

14   WERE HERE REPRESENTING NON-ANTHEM DEFENDANTS, THEY WOULD HAVE

15   ABSOLUTELY THAT SAME STRONG VIEW.

16           THE COURT:  WELL, WHAT IF YOU DID A JOINT MOTION, BUT

17   YOU GOT EXTRA PAGES?  I WOULD ASSUME THAT A LOT OF WHAT YOU

18   WILL SAY WITH REGARD TO THE FEDERAL CONTRACT CLAIM IS GOING TO

19   BE OVERLAPPING.

20           MR. HOOVER:  I THINK --

21           MR. KAVANAUGH:  YOUR HONOR, I'M SURE WE --

22   I'M SORRY.  GO AHEAD.

23           MR. HOOVER:  GO AHEAD.

24           MR. KAVANAUGH:  I WAS GOING TO SAY, YOUR HONOR, I'M

25   SURE WE CAN ALL COORDINATE, AS WE'VE DONE IN OTHER MDL'S, TO

1      TRY TO AVOID REPETITION TO THE EXTENT POSSIBLE.

2         I MEAN, THERE MAY BE SOME UNIQUE ASPECTS OR ANGLES THAT

3      ANTHEM IS GOING TO RAISE IN ITS MOTION.  WE'LL DO OUR BEST TO

4      NOT BE DUPLICATIVE.

5         FOR THE ASSOCIATION, IT IS THE ONLY COUNT AND IT IS A

6      SIGNIFICANT ONE AND, FRANKLY, YOU KNOW, REQUIRES A BIT OF

7      DIVING INTO FEDERAL STATUTES, AND SO WE'D LIKE THE OPPORTUNITY

8      TO BRIEF THAT AS A STANDALONE.  AGAIN, WE CAN WORK

9      COOPERATIVELY TO COORDINATE AND AVOID REPETITION.

10        I ALSO AGREE WITH MR. HOOVER THAT TO THE EXTENT OTHER

11     NON-ANTHEM BLUES ARE ADDED IN A TIMELY FASHION AND OTHERWISE

12     HAVE AN OPPORTUNITY TO PARTICIPATE, THEY'RE LIKELY GOING TO

13     HAVE THEIR OWN PERSPECTIVE ON A NUMBER OF THESE CAUSES OF

14     ACTION AS WELL.

15           THE COURT:  ALL RIGHT.  THEN WE'RE GOING TO HAVE TO

16     HAVE ANOTHER CMC BECAUSE I'M NOT GOING TO HAVE FIVE OR SIX

17     MOTIONS BRIEFED ON THIS SCHEDULE.  IT'S JUST NOT GOING TO

18     HAPPEN.

19           MR. HOOVER:  YOUR HONOR, IF WE WERE ABLE TO LIMIT IT

20     TO TWO, NOT FIVE, BUT TWO BRIEFS, AN ANTHEM BRIEF AND A

21     NON-ANTHEM BRIEF THAT WOULD INCLUDE THE ASSOCIATION, WOULD

22     THAT -- WOULD THAT BE ACCEPTABLE TO THE COURT?  THAT WAY IT'S

23     JUST TWO, IT'S NOT FIVE.

24           THE COURT:  SO THEN YOU'RE SAYING EACH BRIEF IS GOING

25     TO BRIEF 20 CLAIMS, SO IT'S GOING TO BE A TOTAL OF 20 CAUSES OF

1    ACTION?  BECAUSE I'M NOT GOING TO DO THAT.

2           MR. HOOVER:  I THINK WE WOULD BE -- WE WOULD BE

3    COORDINATING IT, YOUR HONOR.  I THINK THE POINT IS THAT THERE

4    WOULD -- THERE ARE DIFFERENT -- SOME DIFFERENT ARGUMENTS THAT

5    ARE GOING TO BE MADE BY ANTHEM VERSUS OTHERS, AND I THINK THAT

6    IT WOULD BE OUR RESPONSIBILITY NOT TO DUPLICATE AND WE WOULD

7    TAKE THAT RESPONSIBILITY VERY SERIOUSLY.

8           AND SO I'M NOT SUGGESTING THAT WE CREATE BRIEFS THAT SAY

9    THE SAME THING FOR YOU.

10          THE COURT:  SO YOU'RE SAYING -- WELL, WHAT I HEAR

11   FROM MR. KAVANAUGH IS THAT HE CANNOT SPEAK FOR THE TEN OTHER

12   NON-ANTHEM BLUE CROSS ENTITIES.  HE CANNOT COMMIT THEM NOW TO

13   DOING ONE JOINT BRIEF WITH HIM.  THAT'S WHAT I'M HEARING.

14          MR. HOOVER:  I CAN COMMIT THE ONES THAT WE REPRESENT

15   TO -- I THINK IT WOULD BE PREFERABLE TO THE NON-ANTHEM

16   DEFENDANTS, AND I THINK OTHERS WE DON'T REPRESENT PROBABLY FEEL

17   THE SAME WAY, TO AT LEAST HAVE A SEPARATE BRIEF FROM ANTHEM

18   BECAUSE OF THE DIFFERENT ISSUES THAT ARE RAISED.

19          AND MR. KAVANAUGH HOPEFULLY WOULD BE PREFERRING THAT TO

20   ONE JOINT BRIEF AS WELL.

21          AND SO IF WE CAN AGREE, IF MR. KAVANAUGH IS AGREEABLE TO

22   JUST HAVING ONE SECOND BRIEF WITH NON-ANTHEM DEFENDANTS, THAT

23   WOULD BE, I THINK, THE PREFERABLE WAY TO GO AND WE WOULD TRY TO

24   DO IT ALL ON THE SAME SCHEDULE.

25          MR. KAVANAUGH:  YOUR HONOR, I GUESS JUST TO BE CLEAR,

1    THERE'S ONE COUNT FOR THE ASSOCIATION, AND SO OUR BRIEF WILL

2    ONLY ADDRESS THAT ONE, ONE COUNT.

3         AGAIN, I DON'T KNOW WHAT THE PERSPECTIVE OF OTHER

4    NON-ANTHEM BLUES IS GOING TO BE, BUT I CAN TELL YOU OUR BRIEF

5    IS NOT GOING TO COVER NINE OR TEN CAUSES OF ACTION.  IT WILL

6    COVER ONE.

7              THE COURT:  AND THEN THE OTHER NON-ANTHEM BLUE CROSS

8    ENTITIES ARE GOING TO COME IN AND THEY'RE GOING TO SAY THEY

9    WANT -- WE'RE GOING TO HAVE TO HAVE ANOTHER CMC, SO LET'S

10   FIGURE OUT WHAT THE DATE IS AND WE CAN BRING THIS TO A CLOSE.

11             MS. CERVANTEZ:  YOUR HONOR, ONE OTHER POSSIBLE

12   SUGGESTION, I DON'T KNOW IF DEFENDANTS WOULD BE AMENABLE TO IT,

13   BUT TO STICK WITH THIS SCHEDULE FOR ANTHEM AND THE ANTHEM

14   AFFILIATES, AND HOPEFULLY BLUE CROSS BLUE SHIELD ASSOCIATION

15   ALSO, AND THEN IF THERE'S -- HAVE KIND OF -- YOU KNOW, WE

16   TALKED ABOUT THAT THERE MIGHT NEED TO BE A SECOND ROUND MOTION

17   TO DISMISS AND PLUG THE NON-ANTHEM DEFENDANTS IN AT THAT TIME.

18             MR. HOOVER:  YOUR HONOR, THAT'S MAKING THE NON-ANTHEM

19   DEFENDANTS WAIT MONTHS AND MONTHS.  IT'S NOT -- THERE'S

20   FUNDAMENTAL UNFAIRNESS THERE.

21        I THINK IF WE NEED ANOTHER CMC, THEY'LL ALL BE HERE AT THE

22   NEXT CMC.  EVERYBODY WILL BE HERE AND WE'LL JUST GET IT DONE

23   ONCE AND FOR ALL.

24        (PAUSE IN PROCEEDINGS.)

25             THE COURT:  OKAY.  THIS IS WHAT I WOULD BE WILLING TO

1       DO, BUT I DO THINK IT MAKES SENSE TO HAVE A FURTHER CMC.  THIS

2       WOULD BE MY PROPOSAL:  ALL OF THE PLAINTIFFS COMBINED GET TO

3       SELECT FIVE CAUSES OF ACTION FOR THE MOTIONS TO DISMISS.  OKAY?

4            THE DEFENDANTS, ANTHEM GETS TO PICK THREE, AND ALL OF THE

5       BLUE CROSS ENTITIES GET TO PICK TWO, AND YOU'LL HAVE TO

6       COORDINATE WHICH ONES MAKE SENSE.  I THINK YOUR INTERESTS ARE

7       VERY ALIGNED, SO THERE HOPEFULLY WILL BE NO PROBLEM WITH

8       REACHING A CONSENSUS ON THAT.

9            I WOULD BE OKAY WITH ONE SET OF ANTHEM ENTITY BRIEFS AND

10      ONE SET OF BLUE CROSS ENTITY BRIEFS, BUT I'M GOING TO CUT YOUR

11      PAGE LIMITS.  IT'S GOING TO BE 20/20/10 AND NOT 25/25/15.

12           SO THAT WOULD BE MY PROPOSAL.  I WOULD TRY TO KEEP ALL OF

13      THOSE HEARD ON FEBRUARY 4TH.

14           IF ANY BLUE CROSS ENTITY WANTS TO FILE A SEPARATE MOTION

15      TO DISMISS FOR PERSONAL JURISDICTION OR SOMETHING LIKE THAT,

16      THEY CAN DO SO, BUT THAT WILL NOT BE HEARD ON FEBRUARY 4TH AND

17      THEY WILL NOT BE INVOLVED IN THE BRIEFING ON THE TEN CAUSES OF

18      ACTION.  I JUST DON'T THINK THAT I COULD HANDLE ON THE SAME DAY

19      MORE THAN THESE TWO MOTIONS AND A PRETRIAL CONFERENCE IN

20      ANOTHER CASE.  MUCH AS I WOULD LIKE TO, I JUST THINK IT'S NOT

21      HUMANLY POSSIBLE FOR US TO DO THAT.  WE WANT TO GIVE YOU REALLY

22      THOUGHTFUL AND COMPREHENSIVE ORDERS.

23                MR. HOOVER:  YOUR HONOR, COULD I BE HEARD ON ONE

24       ISSUE?

25                THE COURT:  WHAT'S THAT?

```
 1              MR. HOOVER:  WE HAVE GONE FROM SIX TO TEN CAUSES OF

 2     ACTION.

 3              THE COURT:  UM-HUM.

 4              MR. HOOVER:  ANTHEM IS THE MAIN DEFENDANT AND WILL

 5     HAVE TO BRIEF ALL THOSE CAUSES OF ACTION.  I WOULD RESPECTFULLY

 6     REQUEST THAT THE ANTHEM BRIEF FOR THE TEN, INSTEAD OF THE SIX,

 7     BE AT 25 AND THE OTHER BRIEF CAN, AS FAR AS WE'RE CONCERNED FOR

 8     OUR OTHER CLIENTS, COULD BE AT 20.

 9          BUT I DON'T KNOW HOW WE BRIEF TEN CAUSES OF ACTION IN 20

10     PAGES.  I JUST -- WE'D RESPECTFULLY ASK FOR THE 25, AT LEAST

11     FOR THE ANTHEM GROUP.

12              THE COURT:  AND FOR THE BLUES ENTITIES' BRIEF, YOU'RE

13     SAYING THAT ONE WOULD BE THE 20/20/10?

14              MR. HOOVER:  YES.

15              THE COURT:  I MEAN, I WOULD THINK MOST OF -- A LOT OF

16     THEIR DEFENSES ARE DERIVATIVE OF ANTHEM'S.

17              MR. HOOVER:  THEY'LL HAVE THEIR OWN DEFENSES AS WELL,

18     YOUR HONOR.

19              THE COURT:  YEAH, I KNOW THEY MIGHT HAVE SOME UNIQUE

20     THINGS, BUT I THINK ALSO THERE WILL BE SOME DERIVATIVE DEFENSES

21     AS WELL THAT PIGGYBACK OFF OF WHAT ANTHEM IS GOING TO RAISE.

22          OKAY.  SO THE ANTHEM ENTITIES' BRIEFS WILL BE 25/25/15,

23     THE BLUE CROSS BLUE SHIELD ENTITIES' BRIEFS WILL BE 20/20/10,

24     THEY GET TO PICK TWO AND ANTHEM ENTITIES GET TO PICK THREE.

25              MS. CERVANTEZ:  YOUR HONOR, WE REALLY APPRECIATE YOUR
```

1      EXPANDING THE NUMBER OF CLAIMS.  I THINK THAT WOULD REALLY HELP

2      THE PARTIES, ALL OF THE PARTIES UNDERSTAND WHERE WE'RE GOING

3      WITH THIS CASE.

4           I JUST WANTED TO CLARIFY THE PAGES AND THE BRIEFS.  IF

5      THEY'RE FILING TWO BRIEFS, ARE WE THEN --

6           THE COURT:  YOU'RE FILING TWO OPPOSITIONS.

7           MS. CERVANTEZ:  WE'RE FILING TWO OPPOSITIONS, ONE 25

8      PAGES AND ONE 20 PAGES?

9           THE COURT:  YES.  YOU'RE FILING A 25 PAGE OPPOSITION

10     TO THE ANTHEM ENTITIES' MOTION TO DISMISS, AND A 20 PAGE

11     OPPOSITION TO THE BLUES ENTITIES' MOTIONS TO DISMISS.

12          MS. CERVANTEZ:  THANK YOU, YOUR HONOR.

13          THE COURT:  OKAY.  SO THAT'LL BE THE BRIEFING

14     SCHEDULE, NOVEMBER 23RD, DECEMBER 21, JANUARY 19TH.  WE'LL KEEP

15     THE HEARING ON FEBRUARY 4TH.

16          NOW, I'M GOING TO DISMISS -- OR I'M SORRY -- DENY WITHOUT

17     PREJUDICE THE MOTION TO SEAL BECAUSE IT WAS OVERBROAD.  SOME OF

18     THE THINGS THAT WERE SEALED WERE ALL PUBLICLY AVAILABLE

19     INFORMATION.  THE FACT THAT ANTHEM RETAINED A THIRD PARTY

20     CYBERSECURITY COMPANY AND THAT IT CREATED A REPORT IN JULY OF

21     2015, THAT'S ALL PUBLICLY AVAILABLE.  IN FACT, THAT'S ALL ON

22     WWW.ANTHEMFACTS.COM.

23          MR. HOGAN:  YOUR HONOR, I'M --

24          THE COURT:  AND SO I'M LOOKING AT PARAGRAPH 207,

25     PARAGRAPH 239, PARAGRAPHS 245 THROUGH 248 OF THE CONSOLIDATED

1    AMENDED COMPLAINT.

2         SO THIS IS WHAT I'M GOING TO PROPOSE:  I'M GOING TO DENY

3    THIS WITHOUT PREJUDICE, AND I CAN -- YOU KNOW, BECAUSE OF THE

4    LATE HOUR, I WILL JUST ISSUE A WRITTEN ORDER -- WELL, I'LL GO

5    AHEAD AND PUT IT ON THE RECORD.

6         HISTORICALLY, COURTS HAVE RECOGNIZED A GENERAL RIGHT TO

7    INSPECT AND COPY PUBLIC RECORDS AND DOCUMENTS, INCLUDING

8    JUDICIAL RECORDS AND DOCUMENTS.  KAMAKANA VS. CITY AND COUNTY

9    OF HONOLULU, 447 F.3D 1172 AT 1178, NINTH CIRCUIT, 2006,

10   QUOTING NIXON VERSUS WARNER COMMUNICATIONS, INCORPORATED, 435

11   U.S. 589, 597 AT NOTE 7, 1978.

12        THUS, WHEN CONSIDERING A SEALING REQUEST, A STRONG

13   PRESUMPTION IN FAVOR OF ACCESS IS THE STARTING POINT.

14        FOR REQUESTS TO SEAL JUDICIAL RECORDS RELATED TO

15   NON-DISPOSITIVE MOTIONS, THE PARTIES MUST MEET THE GOOD CAUSE

16   STANDARD OF FEDERAL RULE OF CIVIL PROCEDURE 26(C), CITING

17   KAMAKANA AT PAGES 1179 TO 1180.  THE GOOD CAUSE STANDARD

18   REQUIRES A PARTICULARIZED SHOWING THAT SPECIFIC PREJUDICE OR

19   HARM WILL RESULT IF THE INFORMATION IS DISCLOSED.  PHILLIPS EX

20   REL. ESTATES OF BYRD V. GENERAL MOTORS CORPORATION, 307 F.3D

21   1206 AT 1210 THROUGH 1211, NINTH CIRCUIT, 2002; SEE FEDERAL

22   RULE OF CIVIL PROCEDURE 26(C).

23        BROAD ALLEGATIONS OF HARM, UNSUBSTANTIATED BY SPECIFIC

24   EXAMPLES OF ARTICULATED REASONING WILL NOT SUFFICE.  BECKMAN

25   INDUSTRIES, INCORPORATED VERSUS INTERNATIONAL INSURANCE

1    <u>COMPANY</u>, 966 F.2D 470 AT 476, NINTH CIRCUIT, 1992.

2        THE CONSOLIDATED AMENDED COMPLAINT FAILS TO MEET THIS

3    STANDARD.  IT'S OVERLY BROAD AND EFFECTIVELY TRIES TO SEAL SOME

4    PUBLICLY AVAILABLE INFORMATION, SO THAT MOTION TO SEAL IS

5    DENIED.

6        IT IS WITHOUT PREJUDICE, HOWEVER.

7        AND I'M GOING TO ORDER A NEW POLICY AND PROCEDURE FOR HOW

8    MOTIONS TO SEAL WILL BE FILED IN THIS CASE, AND BECAUSE OF THE

9    LATE HOUR, I'LL JUST ISSUE AN ORDER ON THAT.

10        ESSENTIALLY YOU'RE GOING TO FILE ALL MOTIONS TO SEAL

11   JOINTLY, BECAUSE WHAT TENDS TO HAPPEN IS THE PARTY THAT IS

12   FILING A DOCUMENT FOR SEALING JUST REQUESTS EVERYTHING TO BE

13   SEALED THAT THE OTHER PARTY HAS LABELED CONFIDENTIAL UNDER THE

14   PROTECTIVE ORDER, AND THAT'S USUALLY OVERLY BROAD AND WE HAVE

15   TO WAIT UNTIL WE GET THE DECLARATIONS FROM THE PARTY WHOSE

16   INFORMATION HAS BEEN DESIGNATED CONFIDENTIAL WHO ACTUALLY

17   SELECTS WHAT THEY'RE GOING TO SEEK TO SEAL AND NOT SEAL, AND

18   OFTEN THEY ABANDON SEALING WITH REGARD TO SOME INFORMATION THAT

19   THEY DESIGNATED CONFIDENTIAL UNDER THE PROTECTIVE ORDER AND

20   THEN IT BECOMES UNSEEMLY BURDENSOME FOR THE COURT TO HAVE TO GO

21   THROUGH WORD-BY-WORD, LINE-BY-LINE TO FIGURE OUT, IS THIS

22   INFORMATION THAT THE DEFENDANTS ARE NO LONGER SEEKING TO SEAL,

23   OR IS IT?

24        SO FROM NOW ON I'M GOING TO HAVE ALL ADMINISTRATIVE

25   MOTIONS TO FILE UNDER SEAL BE FILED AS JOINT MOTIONS.  PRIOR TO

1    FILING ANY SUCH JOINT MOTION, LEAD COUNSEL FOR BOTH PARTIES

2    MUST MEET AND CONFER TO DECIDE WHAT INFORMATION THE PARTIES

3    WILL REQUEST TO FILE UNDER SEAL.

4         THE PARTIES MUST FILE DECLARATIONS FROM LEAD COUNSEL THAT

5    CONFIRM COMPLIANCE WITH THIS ORDER WITH EACH MOTION TO FILE

6    UNDER SEAL.

7         THE PARTIES SHALL FILE, CONCURRENT WITH THE ADMINISTRATIVE

8    MOTION TO FILE UNDER SEAL, ALL NECESSARY DECLARATIONS

9    ESTABLISHING THAT THE INFORMATION SOUGHT TO BE SEALED IS

10   SEALABLE.

11        OKAY?  SO THAT'S GOING TO BE MY NEW PROCEDURE.

12        THERE'S GOING TO BE A LOT OF SEALING IN THIS CASE, AND

13   THIS WILL CERTAINLY HELP STREAMLINE IT AND HOPEFULLY MAY

14   PREVENT US FROM HAVING TO DO REPEATED SERIAL MOTIONS TO SEAL

15   FOR THE SAME DOCUMENTS.

16        SO WHEN CAN YOU FILE A NEW JOINT SEALING REQUEST?

17             MR. HOGAN:  COULD I CONFER WITH COUNSEL?

18             THE COURT:  YES, PLEASE.

19        (DISCUSSION OFF THE RECORD BETWEEN COUNSEL.)

20             THE COURT:  SO ALL OF THE SUMMONSES HAVE BEEN ISSUED

21   AND THEY'RE ON THE DOCKET.  OKAY?  SO PLEASE SERVE IT AS SOON

22   AS POSSIBLE.

23             MS. CERVANTEZ:  THANK YOU VERY MUCH.

24             MR. HOOVER:  YOUR HONOR, WE'RE IN A POSITION TO FILE

25   THE DECLARATIONS AND MOTION TO SEAL BY THE END OF NEXT WEEK.

1          THE COURT:  OKAY.  BUT YOU NEED TO MEET AND CONFER

2    AND COME TO AN AGREEMENT ABOUT WHAT YOU'D LIKE TO SEEK TO SEAL.

3          MR. HOOVER:  UNDERSTOOD.

4          THE COURT:  SO THAT WOULD BE OCTOBER 30TH.  THANK

5    YOU.

6          MR. HOOVER:  RIGHT.  WE ALREADY WERE TALKING WITH THE

7    PLAINTIFFS ABOUT NARROWING IT, YOUR HONOR.

8          THE COURT:  THANK YOU.  I REALLY APPRECIATE THAT.

9       FOR US, THE SEALING REQUESTS ARE OFTEN THE MOST TIME

10   CONSUMING AND THE MOST BURDENSOME AND WE JUST DON'T HAVE THE

11   RESOURCES THAT YOU ALL DO, SO WE REALLY APPRECIATE IF YOU CAN

12   HELP US OUT.

13      OKAY.  SO THAT'S THE MOTION TO SEAL.

14      WITH REGARD TO YOUR CASE SCHEDULE, I'M FINE WITH THE

15   STAGGERED DAUBERT MOTIONS.

16      SO THE DEADLINE TO FILE MOTION FOR CLASS CERT WILL BE

17   FEBRUARY 17 OF 2017 IF THERE'S A SECOND ROUND MOTION TO

18   DISMISS, OR NOVEMBER 30TH OF 2016.

19      NOW, THESE ARE DATES -- I THINK THIS WOULD BE EASIER IF I

20   JUST FILE THIS, UNLESS YOU WANT ME TO GO THROUGH IT WITH YOU

21   NOW.

22          MR. HOOVER:  IT'S FINE, YOUR HONOR, IF IT'S -- WE'VE

23    AGREED TO THAT SCHEDULE.

24          MS. CERVANTEZ:  YES.  THE SCHEDULE AS SET OUT IS WHAT

25    WE'VE AGREED TO.  IT'S MOSTLY THE SAME SCHEDULE YOU HAD.  IT'S

1    ONLY THE LAST TWO DATES THAT ARE DIFFERENT.

2         THE COURT:  WELL, THE DEFENDANTS' MOTION --

3         MS. CERVANTEZ:  OH, YOU'RE RIGHT.

4         THE COURT:  -- TO STRIKE EXPERTS WOULD BE DUE ON

5    MARCH 17TH INSTEAD OF FEBRUARY 17TH; THE OPPOSITIONS WOULD THEN

6    BE DUE APRIL 14TH; THE REPLIES WOULD BE DUE APRIL 28TH.

7         THE PLAINTIFFS' DEADLINE TO FILE DAUBERT MOTIONS WOULD BE

8    APRIL 14TH; OPPOSITIONS WOULD BE DUE APRIL 28TH; AND THE

9    REPLIES WOULD BE DUE MAY 12TH.

10        DOES THAT SOUND RIGHT?

11        MS. CERVANTEZ:  YES, YOUR HONOR.

12        MR. HOOVER:  YES.

13        THE COURT:  ALL RIGHT.  AND THEN I HAVE A

14   CORRESPONDING SCHEDULE IF THERE IS NO SECOND ROUND MOTION TO

15   DISMISS, ALTHOUGH THAT WOULD SURPRISE ME, FRANKLY, BUT WE HAVE

16   THOSE DATES AS WELL JUST IN CASE.

17        ALL RIGHT.  SO YOUR REQUEST TO DO THAT KIND OF STAGGERED

18   BRIEFING FOR DAUBERT MOTIONS, THAT'S FINE.  THAT'S GRANTED.

19        FURTHER CMC, LET'S PICK THE DATE.  WHAT MAKES SENSE?  I DO

20   THINK IT IS ONLY FAIR, ONCE ALL THE BLUES ENTITIES ARE

21   INVOLVED, TO MAKE SURE THAT THEY'RE ON BOARD WITH THIS.  SO

22   WHAT DATE MAKES SENSE?

23        MR. HOOVER:  WHAT RANGE DO YOU HAVE IN MIND, YOUR

24   HONOR, IN TERMS OF YOUR SCHEDULE?

25        THE COURT:  WELL, I'D LIKE TO KEEP THIS NOVEMBER 23RD

1    BRIEFING SCHEDULE, SO SOONER WOULD BE BETTER THAN LATER.  I

2    THINK NEXT WEEK IS TOO SOON SINCE WE DON'T KNOW EXACTLY WHEN

3    FOLKS WILL BE SERVED.

4         SO MAYBE FIRST WEEK OF NOVEMBER IF THAT WOULD WORK.

5              MR. HOOVER:  I'M GOING TO BE IN FRONT OF

6    JUDGE PROCTOR THE LATTER PART OF THAT WEEK, YOUR HONOR.  I

7    GUESS WE COULD DO EARLIER THAT WEEK OR EARLY THE FOLLOWING

8    WEEK.

9              THE COURT:  OKAY.  WELL, WE ARE STARTING A BENCH

10   TRIAL IN A WAGE AN HOUR CASE ON NOVEMBER 2ND.  IS THAT RIGHT?

11             THE CLERK:  YES, JUDGE.

12             THE COURT:  SO I WILL -- THE ONLY DATES THAT I COULD

13   DO IT, SINCE WE HAVE TRIAL MONDAY AND TUESDAY, WOULD BE

14   WEDNESDAY OR THURSDAY.

15        (DISCUSSION OFF THE RECORD BETWEEN THE COURT AND THE

16   CLERK.)

17             THE COURT:  OKAY.  SO I COULD DO IT WEDNESDAY,

18   NOVEMBER 4TH, IN THE AFTERNOON.  I DON'T KNOW HOW NOVEMBER 12TH

19   LOOKS, BUT THAT'S GETTING TOO CLOSE TO YOUR DEADLINE.

20             MR. HOOVER:  I HAVE TO BE IN BIRMINGHAM ON THE

21   AFTERNOON OF THE 4TH, YOUR HONOR, SO I COULD NOT MAKE THAT.

22        I COULD DO THE --

23             THE COURT:  COULD YOU DO IT BY PHONE?  I MEAN, IT

24   WOULD BE PREFERABLE TO HAVE YOU HERE IN PERSON, OBVIOUSLY.

25             MR. HOOVER:  I THINK I SHOULD BE HERE.

1           WHAT ABOUT EITHER THE 2ND, 3RD, OR THE FOLLOWING WEEK,

2       YOUR HONOR?

3               THE COURT:  WELL, I HAVE TRIAL UNTIL 4:30 ON THE 2ND

4       AND 3RD, AND THAT CASE IS DEFINITELY GOING.

5               MR. HOOVER:  WHAT ABOUT THE FOLLOWING WEEK?  THAT

6       WOULD BE THE -- THAT WOULD BE THE 9TH, MONDAY, THE 9TH.

7               THE COURT:  YEAH.  UNFORTUNATELY, CURRENTLY I HAVE A

8       CRIMINAL TRIAL SET.  THAT'S A JURY TRIAL.  THE PARTIES COULD

9       ALWAYS CHANGE THEIR MINDS, BUT RIGHT NOW I'M SET ON THE 9TH AND

10      I NEED TO RESERVE TIME FOR THAT.

11              MR. HOOVER:  DOES THAT GO THE 10TH AND --

12              THE COURT:  IT DOES, UNFORTUNATELY.  IT DOES.

13          NOW, WE COULD DO THE 12TH.  I JUST THINK THAT'S GETTING

14      TOO CLOSE TO THE NOVEMBER 23RD DATE.  THAT'S A LITTLE

15      UNCOMFORTABLE.

16          I MEAN, I GUESS I COULD SET SOMETHING AT 4:45.

17              MR. HOOVER:  HOW ABOUT THAT TIME ON THE 3RD, THE 2ND

18      OR 3RD, YOUR HONOR, TOWARD THE END OF THE DAY?

19              THE COURT:  WE COULD DO IT ON THE 10TH, RIGHT?

20      BECAUSE IF THE CRIMINAL TRIAL GOES AWAY, THEN WE WOULD FINISH

21      THE SILLAH TRIAL ON THE 9TH; CORRECT?

22          OH, NO, WE WOULD BE -- WE COULD HAVE THE 10TH FREE.

23              THE CLERK:  MAYBE.

24              THE COURT:  I MIGHT HAVE THE 10TH FREE, BUT IS THAT

25      TOO CLOSE TO THE 23RD?

```
1          MR. HOOVER:  I THINK IT WOULD BE OKAY, YOUR HONOR,

2     SPEAKING FOR EVERYBODY THAT WE REPRESENT.

3          MR. KAVANAUGH:  THAT'S FINE FOR THE ASSOCIATION, YOUR

4     HONOR, AND IT PROBABLY GIVES THE OTHER PARTIES TIME TO RETAIN

5     COUNSEL AND GET ORGANIZED.

6          THE COURT:  YEAH, I WAS THINKING ABOUT THAT, AND

7     THAT'LL GIVE THEM SOME TIME TO AT LEAST START THINKING ABOUT

8     THE COMPLAINT AND HOW THEY WANT TO APPROACH IT.  SO MAYBE THE

9     10TH WOULD BE BETTER.

10     (DISCUSSION OFF THE RECORD BETWEEN THE COURT AND THE

11     CLERK.)

12          THE COURT:  SO IF MY CRIMINAL TRIAL GOES AWAY, I WILL

13     BE FREE ON THE 10TH BECAUSE MY WAGE AN HOUR CASE WILL END ON

14     THE 9TH.  IT'S SET FOR THREE DAYS.

15     SO WE COULD -- I KNOW YOU PREFER THE MORNING, RIGHT,

16     BECAUSE YOU'RE COMING FROM THE EAST COAST?

17          MR. HOOVER:  YES.  WE NORMALLY COME IN THE NIGHT

18     BEFORE SO WE DON'T GET CAUGHT UP WITH A FLIGHT BEING CANCELLED.

19          THE COURT:  OKAY.

20     (DISCUSSION OFF THE RECORD BETWEEN THE COURT AND THE

21     CLERK.)

22          THE COURT:  ALL RIGHT.  SO, YOU KNOW, WE COULD LEAVE

23     IT FLEXIBLE.  I DON'T KNOW IF THAT INTRODUCES MORE UNCERTAINTY.

24     BUT MY CRIMINAL TRIAL MAY BE ENDING AT 2:30 INSTEAD OF

25     4:30 AT THE DEFENSE COUNSEL'S REQUEST, SO WE COULD SET IT FOR
```

```
1    3:00.

2              MR. HOOVER:  ON THE 10TH?

3              THE COURT:  ON THE 10TH.  BUT IF THAT TRIAL GOES AWAY

4    BECAUSE THERE'S A PLEA, THEN WE COULD MOVE IT TO 11:00 AND I

5    JUST COULD LET YOU KNOW.  BUT, I DON'T KNOW, DOES THAT CREATE

6    MORE CONFUSION FOR YOU?  OR --

7              MR. HOOVER:  IT WOULD WORK FOR US, YOUR HONOR.

8              MR. KAVANAUGH:  THAT WORKS FOR THE ASSOCIATION.

9              MS. CERVANTEZ:  THAT WORKS FOR PLAINTIFFS.

10             THE COURT:  OKAY.  SO WHY DON'T WE SAY IT'S GOING TO

11   BE NOVEMBER 10TH AT 3:00, BUT IF MY CRIMINAL TRIAL GOES AWAY, I

12   WILL ADVANCE IT TO 11:00.

13             MR. HOOVER:  OKAY.

14             THE COURT:  OKAY?  SO THAT'S THAT.

15        NOW, DISTRIBUTION OF MATERIALS TO OUTSIDE FIRMS, CAN WE

16   RESERVE THIS FOR THE 10TH?  I'M NOT REALLY SURE I UNDERSTAND

17   WHAT THE ISSUES ARE, AND --

18             MS. CERVANTEZ:  YES, WE CAN ASK -- YES, WE CAN

19   RESERVE IT TO THE 10TH.

20             THE COURT:  AND I DON'T KNOW IF I SHOULD BE -- IF I

21   NEED TO HEAR -- SO YOU'RE SAYING THAT OTHER PLAINTIFFS' COUNSEL

22   FROM WHOM YOU HAVE NOT REQUESTED ASSISTANCE ARE ASKING FOR ALL

23   THE DISCOVERY?

24             MS. CERVANTEZ:  YES, YOUR HONOR.  AND NORMALLY WE

25   WOULD HAVE NO PROBLEM PROVIDING PEOPLE WITH COPIES OF THINGS.
```

1        IT'S JUST BECAUSE OF THE EXTREME SECURITY IN THIS CASE

2    WITH THINGS LIKE THE MANDIANT REPORT, WE DON'T WANT TO BE -- WE

3    DON'T WANT TO BE SENDING IT OUT TO, YOU KNOW, A HUNDRED

4    PLAINTIFFS' COUNSELS.

5            THE COURT:  IS THERE ANY WAY YOU CAN REDACT SOME OF

6    THE --

7            MS. CERVANTEZ:  NOT REALLY.  I MEAN, WE'VE AGREED

8    ALREADY THAT ONCE WE GET THE COMPLAINT SETTLED, WE WILL PROVIDE

9    THE UNREDACTED COMPLAINT TO ALL OF THE PLAINTIFFS' COUNSEL.

10           THE COURT:  OKAY.

11           MS. CERVANTEZ:  IT'S THE REALLY NITTY GRITTY, YOU

12    KNOW, REALLY DETAILED INFORMATION IN THE MANDIANT REPORT THAT

13    WE'RE JUST WORRIED ABOUT EVEN HOW TO TRANSMIT IT.

14           THE COURT:  OKAY.

15           MS. CERVANTEZ:  BUT WE CAN WAIT UNTIL NOVEMBER 10TH

16    AND MAYBE WORK OUT SOMETHING AND PRESENT IT IN A MORE

17    COMPREHENSIVE MANNER TO YOUR HONOR.

18           THE COURT:  YEAH.  I GUESS MY ONLY CONCERN IS IF

19    THERE ULTIMATELY IS A GLOBAL RESOLUTION, I WOULD ASSUME THAT

20    YOU WILL CHECK IN WITH THE OTHER PLAINTIFFS' COUNSEL AS TO

21    WHETHER THEIR CLIENTS AND THEY SUPPORT ANY RESOLUTION.  HOW CAN

22    THEY DO THAT IF THEY'VE BEEN KEPT IN THE DARK?

23        SO I -- YOU KNOW, I DON'T KNOW WHETHER I NEED TO HEAR FROM

24    ONE OF THEM TO EXPLAIN WHY THEY NEED IT IN ADVANCE OF THE 10TH.

25    I'M JUST NOT CLEAR ON WHAT THIS ISSUE IS.

1          MS. CERVANTEZ:  WE CAN ALSO TALK TO THE COUNSEL.  HE

2     WAS IN TRIAL, SO WE HAVEN'T ACTUALLY BEEN ABLE TO SPEAK TO HIM.

3     HE'S JUST SENT US WRITTEN REQUESTS.  SO WE CAN SPEAK TO HIM

4     FURTHER AND INVOLVE HIM IN A MEET AND CONFER WITH DEFENSE

5     COUNSEL AS NECESSARY AND WORK SOMETHING OUT.

6          THE COURT:  YEAH.

7          MS. CERVANTEZ:  BECAUSE WE HEAR YOUR CONCERNS.  WE

8     DON'T INTEND TO KEEP PEOPLE IN THE DARK, AND AS I SAID, IT'S

9     JUST BECAUSE OF THIS KIND OF SUPER SECURITY IN CERTAIN DOCUMENT

10    WHICH, IN THE WRONG HANDS, IT'S OUR UNDERSTANDING COULD HURT

11    CLIENTS, THE CLASS MEMBERS, BECAUSE ANTHEM STILL HAS THEIR

12    DATA.

13         THE COURT:  ALL RIGHT.  WELL, I MEAN, THEY'RE COURT

14    OFFICERS, AND PRESUMABLY THEY WON'T DISCLOSE IT TO ANYONE

15    THEY'RE NOT SUPPOSED TO.

16       WHO IS THE PERSON THAT -- ONLY ONE PERSON HAS REQUESTED

17    IT, AND SO IS IT?

18         MS. CERVANTEZ:  SO FAR IT'S MR. SKEPNEK.  HE'S -- BUT

19    I'M SURE THERE WILL BE -- I'M SURE THERE WILL BE OTHERS, TOO.

20         THE COURT:  SURE.

21         MS. CERVANTEZ:  WE HEAR YOUR HONOR'S CONCERN ABOUT

22    THAT.

23         THE COURT:  SO MAYBE WHAT YOU SHOULD DO -- I'D LIKE A

24    JOINT CASE MANAGEMENT STATEMENT TO BE FILED.  I DON'T WANT

25    TO -- WOULD NOVEMBER 3RD GIVE ALL THE BLUES ENTITIES ENOUGH

1   TIME?  MAYBE NOT, BECAUSE THEY'RE ONLY GETTING PERHAPS

2   REPRESENTATION THAT WEEK.

3       WHAT ABOUT NOVEMBER 6TH?

4           MR. HOOVER:  THAT'S PROBABLY ABOUT AS FAR BACK AS YOU

5   CAN GO GIVEN THE HEARING IS GOING TO BE A FEW DAYS LATER.  SO I

6   THINK THAT'S BETTER THAN THE 3RD.

7           THE COURT:  OKAY.  SO LET'S HAVE THE JOINT CASE

8   MANAGEMENT STATEMENT FILED BY NOVEMBER 6TH, AND I WOULD LIKE TO

9   HEAR FROM MR. SKEPNEK ON THIS ISSUE, OKAY, AS TO WHAT HE NEEDS

10  AND WHY HE NEEDS IT.  I WOULD JUST LIKE TO HEAR ANOTHER VOICE,

11  THE OTHER VIEWPOINT.  OKAY?  SO HE SHOULD BE INCLUDED IN THE

12  JCMS ON THIS VIEWPOINT.

13          MS. CERVANTEZ:  YES, YOUR HONOR.  WE'LL MAKE SURE TO

14  CONTACT HIM RIGHT AWAY.

15          THE COURT:  AND THIS ISSUE ABOUT AMENDMENT OF

16  PLEADINGS AND PRE-SUIT DEMAND LETTERS, I ASSUME THIS IS NOT

17  RIPE AND THIS WOULD BE, WHAT, PART OF A SECOND ROUND MOTION TO

18  DISMISS IF THERE IS A SECOND AMENDED COMPLAINT THAT INCLUDES

19  NEW CAUSES OF ACTION.  DOES THAT SOUND RIGHT, IT'S NOT RIPE FOR

20  TODAY?

21          MR. HOOVER:  I THINK IT'S NOT RIPE FOR TODAY.

22          MS. CERVANTEZ:  WE WERE JUST GIVING YOUR HONOR A

23  HEADS UP.

24          THE COURT:  OKAY.  I THINK THAT'S GOING TO BE A

25  FUTURE FIGHT, POTENTIALLY.

1      OKAY.  WELL, OBVIOUSLY WE'LL HAVE A CMC ON FEBRUARY 4TH AS

2  WELL, SO YOU MIGHT AS WELL GO AHEAD AND CALENDAR THAT.

3      WHAT ELSE?  IS THAT IT?

4      MR. KAVANAUGH:  YOUR HONOR, THIS IS BRIAN KAVANAUGH.

5      ONE HOUSEKEEPING MATTER.  I NOTICE ON THE CURRENT SCHEDULE

6  THERE ARE SOME DISCLOSURE DEADLINES OF NOVEMBER 2ND.  I GUESS

7  I'D ASK, ON BEHALF OF OURSELVES AND POSSIBLY THE OTHERS WHO

8  AREN'T PRESENT YET, THAT WE TABLE THOSE UNTIL THE NEXT CMC AND

9  WE CAN TRY TO WORK WITH PLAINTIFFS' COUNSEL ON REACHING SOME

10  AGREED DATES ON NEWLY NAMED PARTIES.

11      THE COURT:  WHY DON'T WE SAY FOR NEWLY NAMED PARTIES,

12  WHAT ABOUT NOVEMBER 16TH, NOVEMBER 20TH?

13      MS. CERVANTEZ:  THAT WOULD BE ACCEPTABLE FOR

14  PLAINTIFFS.

15      THE COURT:  WHAT ABOUT ONE OF THOSE DATES?

16      MR. KAVANAUGH:  YOUR HONOR, FOR THE ASSOCIATION, I'M

17  HAPPY TO -- WE'LL TAKE NOVEMBER 20TH.  THAT'S FINE.  I JUST

18  WANTED TO RAISE THE ISSUE SINCE THAT DEADLINE WAS AROUND THE

19  CORNER AND BEFORE THE NEXT CMC.

20      THE COURT:  THAT'S FINE.  WE'LL SAY NOVEMBER 20TH IS

21  THE DATE TO EXCHANGE INITIAL DISCLOSURES WITH NEWLY NAMED

22  PARTIES, ASSUMING THAT YOU'RE GOING TO SERVE THEM BY NEXT

23  THURSDAY.

24      AND I WANT THEM SERVED BY MONDAY, THE 26TH.  OKAY?

25      MS. CERVANTEZ:  WE'LL MAKE EVERY EFFORT TO GET THEM

1    SERVED ON MONDAY.

2              THE COURT:  OKAY.  SO WHAT ELSE?  WHAT ELSE?

3    ANYTHING ELSE WE NEED TO COVER TODAY?

4         I THINK THAT'S IT FOR MY LIST.

5              MS. PARKER:  YOUR HONOR, LEIGH PARKER FROM WEISS LAW.

6    A SMALL HOUSEKEEPING ISSUE.

7              THE COURT:  YES, GO AHEAD.

8              MS. PARKER:  YOUR HONOR HAD SET THE HEARING ON THE

9    SMILOWS' MOTION TO REMAND FOR NOVEMBER 20TH.

10             THE COURT:  YES.

11             MS. PARKER:  I BELIEVE IT WOULD MAKE SENSE TO MOVE

12   THAT TO NOVEMBER 10TH CONCURRENT WITH THE NEXT CMC.

13             MR. HOGAN:  NO OBJECTION FROM DEFENDANTS, YOUR HONOR.

14             THE COURT:  WELL, THE PROBLEM WITH THE HEARING DATES

15   IS THAT IT IS A WAY FOR US TO REGULATE OUR WORK LOAD, SO

16   NOVEMBER 12TH, WHICH IS THAT SAME WEEK, I ALREADY HAVE A MOTION

17   TO DISMISS IN EVGENY VERSUS GAME INSIGHT; I HAVE A MOTION FOR

18   CLASS CERTIFICATION IN HUYNH V. SANCHEZ; I HAVE A MOTION FOR

19   DEFAULT JUDGMENT IN NEVES VERSUS BENCHMARK RECOVERY; I HAVE A

20   MOTIONS TO DISMISS IN RESENDIZ V. COUNTY OF MONTEREY; AND I

21   UNDERSTAND THAT I HAVE A LOT OF SENTENCINGS THAT WEEK IN MY

22   CRIMINAL CALENDAR.

23        IS THAT RIGHT?

24             THE CLERK:  YES, JUDGE.

25             THE COURT:  ALL RIGHT.  SO, SEE, THAT'S REALLY THE

1    PROBLEM WITH THE HEARING DATES.  I CAN ACCOMMODATE THE WORK

2    LOAD OF ADDING A CMC, BUT I CANNOT ACCOMMODATE THE WORK LOAD OF

3    ISSUING YOU AN ORDER.  I TRY TO GET MY ORDERS OUT AS CLOSE AS

4    POSSIBLE, IF NOT BEFORE THE HEARING DATES, AND THAT'S MY

5    CONCERN.  AS MUCH AS I WOULD LOVE TO MOVE THAT UP, THAT'S MY --

6    THAT'S MY CONCERN WITH THAT DATE.

7        I MEAN, AS IT IS, I ALREADY HAVE A FINAL PRETRIAL

8    CONFERENCE IN SILICON STORAGE V. NATIONAL UNION FIRE INSURANCE;

9    A MOTION TO DISMISS IN REYES VERSUS NATIONSTAR MORTGAGE; AND A

10   MOTION TO REMAND IN DURAN VERSUS FERNANDEZ BROTHERS ON

11   NOVEMBER 19TH.

12       SO I ALREADY HAVE A FULL LAW AND MOTION AND I HAVE A VERY

13   HEAVY CRIMINAL SENTENCING CALENDAR ON NOVEMBER 18TH, SO I

14   ALREADY HAVE A LOT THAT WEEK, BUT I AM TRYING TO ADD ANTHEM IN

15   ON THE 20TH.

16           MS. PARKER:  AND I APPRECIATE THAT, YOUR HONOR.

17           THE COURT:  YEAH.

18           MS. PARKER:  DURING THE CONFERENCE, I WAS ABLE TO GET

19   AHOLD OF MY NEW YORK COUNSEL AND I'M INFORMED THAT THEY'RE NOT

20   AVAILABLE ON THE 20TH.  I APOLOGIZE.

21           THE COURT:  OKAY.  SO, I MEAN, I'M GOING TO VACATE

22   THAT DATE.  I'M PUTTING THE 20TH IN AS A MARKER FOR ME TO TRY

23   TO GET AN ORDER OUT.  I REALLY DON'T ANTICIPATE NEEDING A

24   HEARING OR ANY ORAL ARGUMENT ON THAT.

25           BUT IF YOU WANT ME TO MOVE IT TO ANOTHER DATE WHEN HE'S

```
1    AVAILABLE, OR SHE'S AVAILABLE, WHAT DATE IS THAT?

2                MS. PARKER:  I THINK THAT MAKES SENSE, YOUR HONOR,

3    RATHER THAN BURDENING THE COURT WITH A STIPULATION.

4                THE COURT:  WHAT IS THAT?

5                MS. PARKER:  THE WEEK OF NOVEMBER 23RD AT THE COURT'S

6    CONVENIENCE.

7                THE COURT:  OKAY.

8          (DISCUSSION OFF THE RECORD BETWEEN THE COURT AND THE

9    CLERK.)

10               THE COURT:  OKAY.  WHAT ABOUT MONDAY, THE 23RD?

11               MS. PARKER:  WHAT TIME IS CONVENIENT FOR YOUR HONOR?

12         (DISCUSSION OFF THE RECORD BETWEEN THE COURT AND THE

13   CLERK.)

14               THE COURT:  OKAY.  WELL, I HAVE A PRETRIAL CONFERENCE

15   ON MONDAY, NOVEMBER 23RD AT 11:00, SO I COULD SCHEDULE YOU --

16   I'D PREFER AFTER THAT, LIKE 1:00 O'CLOCK.

17               MS. PARKER:  THAT'S FINE, YOUR HONOR.  THANK YOU.

18               MR. HOGAN:  THAT'S FINE, YOUR HONOR.  THANK YOU.

19               THE COURT:  THAT'S NOVEMBER 23RD.

20         OKAY.  WHAT ELSE?  ANYTHING ELSE?  NO?

21         OKAY.  THANK YOU ALL VERY MUCH.  THANK YOU VERY MUCH.

22               MS. CERVANTEZ:  THANK YOU, YOUR HONOR.

23               MR. HOOVER:  THANK YOU, YOUR HONOR.

24               MS. PARKER:  THANK YOU, YOUR HONOR.

25               MR. KAVANAUGH:  THANK YOU, YOUR HONOR.
```

1          MR. FRIEDMAN:  THANK YOU, YOUR HONOR.

2          MR. HOGAN:  THANK YOU, YOUR HONOR.

3      (THE PROCEEDINGS WERE CONCLUDED AT 6:04 P.M.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1
2
3                      CERTIFICATE OF REPORTER
4
5
6
7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED
8   STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,
9   280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY
10  CERTIFY:
11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS
12  A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE
13  ABOVE-ENTITLED MATTER.
14
15
16  _____
    LEE-ANNE SHORTRIDGE, CSR, CRR
17  CERTIFICATE NUMBER 9595
18       DATED:  NOVEMBER 3, 2015
19
20
21
22
23
24
25
```

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25