Craig A. Hoover, SBN 113965
E. Desmond Hogan (admitted *pro hac vice*)
Peter R. Bisio (admitted *pro hac vice*)
Allison M. Holt (admitted *pro hac vice*)
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, NW
Washington, DC 20004
Tel:  (202) 637-5600
Fax:  (202) 637-5910
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com
peter.bisio@hoganlovells.com
allison.holt@hoganlovells.com

Michael M. Maddigan,  SBN 163450
**HOGAN LOVELLS US LLP**
1999 Avenue of the Stars,  Suite 1400
Los Angeles, CA 90067
Tel: (310) 785-4600
Fax: (310) 785-4601
michael.maddigan@hoganlovells.com

*Attorneys for Defendants Anthem, Inc. and related parties*
Additional Defendants and Defendants' Counsel Listed on
Signature Page

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE ANTHEM, INC. DATA BREACH LITIGATION | Case No.  5:15-MD-02617-LHK |
| | **THE ANTHEM DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |
| | The Honorable Lucy H. Koh |
| | Date:          February 4, 2016 |
| | Time:          1:30 p.m. |
| | Courtroom:   8, 4th Floor |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendant Anthem, Inc. ("Anthem") and Defendants Blue Cross and Blue Shield of Georgia, Inc., Blue Cross Blue Shield Healthcare Plan of Georgia, Inc., Anthem Insurance Companies, Inc., Blue Cross of California, Anthem Blue Cross Life and Health Insurance Company, Rocky Mountain Hospital and Medical Service, Inc., Anthem Health Plans, Inc., Anthem Health Plans of Kentucky, Inc., Anthem Health Plans of Maine, Inc., HMO Missouri, Inc., RightCHOICE Managed Care, Inc., Healthy Alliance Life Insurance Company, Anthem Health Plans of New Hampshire, Inc., Empire HealthChoice Assurance, Inc., Community Insurance Company, Anthem Health Plans of Virginia, Inc., HealthKeepers, Inc., Blue Cross Blue Shield of Wisconsin, Compcare Health Services Insurance Corporation, Amerigroup Services, Inc., HealthLink, Inc., UniCare Life & Health Insurance Company, Caremore Health Plan, The Anthem Companies, Inc., and The Anthem Companies of California, Inc. (collectively, with Anthem, the "Anthem Defendants") will and hereby do move to dismiss Plaintiffs' Consolidated Amended Class Action Complaint ("CAC") filed in this matter.  Hearing on this motion will be held on February 4, 2016 at 1:30 pm in the Courtroom of the Honorable Lucy H. Koh, located at the Robert F. Peckham Federal Building & United States Courthouse, 280 South First Street, 4th Floor, San Jose, California.

The Anthem Defendants bring this motion pursuant to Federal Rules of Civil Procedure 8, 9, 12(b)(1), and 12(b)(6) on the grounds that Plaintiffs lack standing to bring certain claims asserted in the CAC and the CAC fails to state a claim upon which relief can be granted.

The Anthem Defendants base this motion on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the supporting declarations of Scott Hicks and Kristine Gorman and the exhibits filed therewith, the complete files and records of this action, and such other matters and arguments as may come before the Court, including those raised in connection with reply briefing and oral argument relating to this Motion.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  November 23, 2015

By: /s/ Craig A. Hoover
    Craig A. Hoover
    *Attorney for Anthem Defendants*

ANTHEM DEFENDANTS' MOTION TO DISMISS
Case No. 15-MD-02617-LHK

## STATEMENT OF ISSUES PRESENTED

1.      Whether Plaintiffs' negligence claim on behalf of the Indiana Statewide Class should be dismissed because the Anthem Defendants did not owe Plaintiffs a common law duty of care under Indiana law?

2.      Whether Plaintiffs' negligence claim on behalf of the Indiana Statewide Class should be dismissed because the economic loss doctrine bars Plaintiffs' claim?

3.      Whether Plaintiffs' breach of contract claim on behalf of the California Statewide Class should be dismissed as to three of the California Plaintiffs because they do not assert any contractual relationship with the Anthem Defendants?

4.      Whether Plaintiffs' breach of contract claim on behalf of the California Statewide Class should be dismissed because the Consolidated Amended Class Action Complaint ("CAC") does not identify any enforceable contractual provisions the Anthem Defendants purportedly breached?

5.      Whether Plaintiffs' breach of contract claim on behalf of the California Statewide Class fails because the CAC does not allege facts showing that any alleged breach of contract caused the California Plaintiffs appreciable and actual damage?

6.      Whether ERISA preempts the California breach of contract claims of three of the California Plaintiffs?

7.      Whether Plaintiffs' unjust enrichment claim on behalf of the New York Statewide Class should be dismissed because the CAC alleges that valid and enforceable contracts govern the same subject matter?

8.      Whether ERISA preempts the unjust enrichment claim of one of the New York Plaintiffs?

9.      Whether Plaintiffs' Kentucky Consumer Protection Act claim should be dismissed because the Act cannot be used to support a class action?

10.      Whether Plaintiffs' Kentucky Consumer Protection Act claim fails because the CAC does not allege facts showing that any of the Kentucky Plaintiffs suffered an "ascertainable loss of money or property" as required by the Act?

ANTHEM DEFENDANTS' MOTION TO DISMISS
Case No. 15-MD-02617-LHK

11.    Whether Plaintiffs' California Unfair Competition Law ("UCL") claim should be dismissed because the CAC does not allege facts showing that any violation of the UCL caused Plaintiffs economic injury?

12.    Whether Plaintiffs' UCL claim should be dismissed because the CAC does not allege facts showing that the Anthem Defendants engaged in unfair, unlawful, or fraudulent business practices?

13.    Whether Plaintiffs' New York General Business Law § 349 ("NY GBL") claim should be dismissed because it is not independent of Plaintiffs' breach of contract claim?

14.    Whether Plaintiffs' NY GBL claim should be dismissed because the CAC fails to allege that New York Plaintiffs suffered actual harm?

15.    Whether Plaintiffs' NY GBL claim should be dismissed because the CAC fails to allege facts showing that Anthem engaged in a deceptive act or made a deceptive statement that caused the New York Plaintiffs harm?

16.    Whether ERISA preempts the NY GBL claim of one New York Plaintiff?

17.    Whether Plaintiffs' Georgia Insurance Information and Privacy Protection Act claim should be dismissed because the CAC fails to allege facts showing that any Anthem Defendant disclosed any Georgia Plaintiff's personal information?

18.     Whether Plaintiffs' Georgia Insurance Information and Privacy Protection Act claim should be dismissed because the CAC does not allege facts showing that any Georgia Plaintiff suffered actual damages as the result of any disclosure of personal information?

19.    Whether Plaintiffs' claim for violation of the Kentucky Data Breach Notification Statute should be dismissed because the Anthem Defendants are exempt from the requirements of the Statute?

20.    Whether Plaintiffs' claim for violation of the Kentucky Data Breach Notification Statute should be dismissed for lack of Article III standing because the CAC does not allege facts showing that any Kentucky Plaintiff suffered an injury as a result of the Anthem Defendants' purported failure to provide reasonable notification?

21.     Whether Plaintiffs' third-party beneficiary claim for breach of contract under federal law should be dismissed because the Federal Employees Health Benefits Act bars Plaintiffs from bringing claims against insurers, like the Anthem Defendants, who participate in the "Federal BCBSA Contract"?

22.     Whether any state law claims asserted by Plaintiffs who are enrollees under a Federal Employee health plan are barred by the Federal Employees Health Benefits Act?

# TABLE OF CONTENTS

**Page**

ARGUMENT ..................................................................................................................... 2

I.   PLAINTIFFS' NEGLIGENCE CLAIM ON BEHALF OF THE INDIANA
     STATEWIDE CLASS FAILS. ............................................................................. 2

     A.   Anthem Did Not Owe Plaintiffs A Common Law Duty Of Care ............................. 2

     B.   The Economic Loss Doctrine Bars Plaintiffs' Negligence Claim ........................... 3

II.  PLAINTIFFS' BREACH OF CONTRACT CLAIM ON BEHALF OF THE
     CALIFORNIA STATEWIDE CLASS FAILS. ........................................................... 4

     A.   The CAC Fails To Identify The Contractual Provisions Allegedly
          Breached ............................................................................................................ 4

     B.   The CAC Fails To Show That Any Breach Caused Contractual Damages ............. 6

     C.   ERISA Preempts Plaintiffs Coonce And Tharp's Contract Claims ...................... 10

III. PLAINTIFFS' UNJUST ENRICHMENT CLAIM ON BEHALF OF THE NEW
     YORK STATEWIDE CLASS FAILS. ..................................................................... 11

IV.  PLAINTIFFS' KENTUCKY CONSUMER PROTECTION ACT CLAIM FAILS. ......... 12

     A.   The Act Does Not Provide A Private Right Of Action For Class Actions ............. 12

     B.   Plaintiffs Lack Standing To Bring A Claim Under The Act ................................. 12

V.   PLAINTIFFS' UCL CLAIM FAILS. .................................................................... 14

     A.   Plaintiffs Lack Standing Under The UCL ......................................................... 14

     B.   The CAC Does Not Allege Unlawful, Unfair, Or Fraudulent Conduct ................ 17

          1.   Unlawful Conduct ..................................................................................... 17

          2.   Unfair Conduct ........................................................................................ 18

          3.   Fraudulent Conduct .................................................................................. 19

VI.  THE CAC FAILS TO STATE A CLAIM UNDER NEW YORK GENERAL
     BUSINESS LAW § 349 ..................................................................................... 19

     A.   Plaintiffs' NY GBL Claim Is Not Independent Of Their Contract Claim ............. 19

     B.   The CAC Fails To Allege The New York Plaintiffs Suffered Actual Harm ......... 20

     C.   The CAC Fails To Allege Deceptive Acts That Caused Plaintiffs Harm ............. 21

     D.   Plaintiff Gates' Claim Is Preempted By ERISA ............................................... 22

VII.    PLAINTIFFS' GEORGIA INSURANCE INFORMATION AND PRIVACY
        PROTECTION ACT CLAIM FAILS. ................................................................22

        A.      The CAC Fails To Allege The Anthem Defendants Disclosed Information .......... 22

        B.      The CAC Does Not Allege Any Disclosure Caused Actual Damages ................... 23

VIII.   PLAINTIFFS' KENTUCKY DATA BREACH NOTIFICATION CLAIM FAILS. .........24

        A.      Anthem Is Exempt From The Statute. ........................................................24

        B.      Plaintiffs Lack Standing To Bring A Data Breach Notification Claim ................. 24

IX.     PLAINTIFFS' FEDERAL LAW THIRD-PARTY BENEFICIARY CLAIM
        SHOULD BE DISMISSED. ...........................................................................25

CONCLUSION ..................................................................................................25

Hogan Lovells US
LLP
Attorneys At Law

ANTHEM DEFENDANTS' MOTION TO DISMISS
Case No. 15-MD-02617-LHK

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004) ............................................................................................... 10

*Aetna Life Ins. Co. v. Bayona*,
223 F.3d 1030 (9th Cir. 2010)................................................................................ 10

*Aguilera v. Pirelli Armstrong Tire Corp.*,
223 F.3d 1010 (9th Cir. 2000)................................................................................. 6

*Allen v. Nextera Energy Operating Servs.*,
NO. C 12-01610 LB, 2012 WL 1918930 (N.D. Cal. May 25, 2012) ..................... 6

*Amburgy v. Express Scripts, Inc.*,
671 F. Supp. 2d 1046 (E.D. Mo. 2009).................................................................. 13

*Antman v. Uber Techs., Inc.*,
NO. 3:15-CV-01175-LB, 2015 WL 6123054 (N.D. Cal. Oct. 19, 2015) .............. 25

*Arnold v. Microsoft Corp.*,
NO. 00-CI-00123, 2000 WL 36114007 (Ky. Cir. Ct. July 21, 2000)..................... 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................... 15, 18, 22

*Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*,
NO. 03 CIV. 1537 (MBM), 2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003) ........ 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................. 3

*Berry v. MVP Health Plan, Inc.*,
NO. 1:06-CV-120, 2006 WL 4401478 (N.D.N.Y. Sept. 30, 2006) ....................... 22

*Bloom ex rel. Estate of Bloom v. Cigna Corp.*,
NO. 04 CIV. 5729 (MBM), 2004 WL 2793207 (S.D.N.Y. Dec. 3, 2004) ............ 22

*Bono v. Monarch Life Ins. Co.*,
NO. 05-CV-281S, 2006 WL 839412 (W.D.N.Y. Mar. 27, 2006) ......................... 19

*Bose v. Horizon Blue Cross Blue Shield of New Jersey*,
NO. CIV.A. 12-4671 ES, 2014 WL 1293861 (D.N.J. Mar. 31, 2014) .................. 12

*Carlsen v. GameStop, Inc.*,
NO. CIV. 14-3131 DWF/SER, 2015 WL 3538906 (D. Minn. June 4, 2015)........... 7

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW

ANTHEM DEFENDANTS' MOTION TO DISMISS
Case No. 15-MD-02617-LHK

*Castro v. NYT Television*,
　　851 A.2d 88 (N.J. Super. Ct. App. Div. 2004)..................................................................... 14

*City of New York v. Smokes-Spirits.Com, Inc.*,
　　911 N.E.2d 834 (N.Y. 2009)............................................................................................... 21

*Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*,
　　70 N.Y. 2d 382 (N.Y. 1987)................................................................................................ 11

*Cooney v. Chi. Pub. Schs.*,
　　943 N.E.2d 23 (Ill. App. Ct. 2010) ................................................................................ 2, 3

*Corona v. Sony Pictures Entm't, Inc.*,
　　NO. 14-CV-09600 RGK EX, 2015 WL 3916744 (C.D. Cal. June 15, 2015)..................... 25

*Daniels v. Provident Life & Cas. Ins. Co.*,
　　NO. 00-CV-0668E(SC), 2001 WL 877329 (W.D.N.Y. July 25, 2001)................................ 20

*Dash v. Seagate Tech. (U.S.) Holdings, Inc.*,
　　27 F. Supp. 3d 357 (E.D.N.Y. 2014) ................................................................................. 21

*Dolmage v. Combined Ins. Co. of Am.*,
　　NO. 14 C 3809, 2015 WL 292947 (N.D. Ill. Jan. 21, 2015).................................................. 2

*Dunkel v. eBay, Inc.*,
　　NO. 5:12-CV-01452-EJD, 2013 WL 415584 (N.D. Cal. Jan. 31, 2013)................................ 4

*Fossen v. Blue Cross & Blue Shield of Montana, Inc.*,
　　660 F.3d 1102 (9th Cir. 2011)............................................................................................. 10

*Galaria v. Nationwide Mut. Ins. Co.*,
　　998 F. Supp. 2d 646 (S.D. Ohio 2014)................................................................................ 23

*Gallipeau v. Correct Care Sols.*,
　　NO. CA 3:10-2017-JFA-JRM, 2011 WL 4502043 (D.S.C. Sept. 29, 2011) ......................... 2

*Georgia Malone & Co. v. Rieder*,
　　19 N.Y.3d 511 (N.Y. 2012)................................................................................................. 11

*Goldman v. Metro. Life Ins. Co.*,
　　5 N.Y.3d 561 (N.Y. 2005).................................................................................................... 11

*Gunkel v. Renovations, Inc.*,
　　822 N.E.2d 150 (Ind. 2005) .................................................................................................. 3

*Hammond v. Bank of N.Y. Mellon Corp.*,
　　NO. 08 CIV. 6060 RMB RLE, 2010 WL 2643307 (S.D.N.Y. June 25, 2010)....................... 3

*Hodges v. Apple Inc.*,
　　NO. 13-CV-01128-WHO, 2013 WL 4393545 (N.D. Cal. Aug. 12, 2013)........................... 17

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW

- ix -

*Holmes v. Countrywide Fin. Corp.*,
  NO. 5:08-CV-00205-R, 2012 WL 2873892 (W.D. Ky. July 12, 2012)..................... 7, 8, 13, 23

*Hosseini v. Wells Fargo Bank, N.A.*,
  NO. C-13-02066 DMR, 2013 WL 4279632 (N.D. Cal. Aug. 9, 2013) .................................. 14

*In re Adobe Sys., Inc. Privacy Litig.*,
  66 F. Supp. 3d 1197 (N.D. Cal. 2014) ............................................................................ passim

*In re Facebook PPC Adver. Litig.*,
  NO. 5:09-CV-03043-JF, 5:09-CV-03430-JF, 5:09-CV-03519-JF, 2010 WL 3341062
  (N.D. Cal. Aug. 25, 2010) ................................................................................................... 19

*In re Horizon Healthcare Servs., Inc. Data Breach Litig.*,
  NO. CIV.A 13-7418 CCC, 2015 WL 1472483 (D.N.J. Mar. 31, 2015) ................. 8, 16, 21, 23

*In re iPhone 4S Consumer Litig.*,
  NO. C 12-1127 CW, 2013 WL 3829653 (N.D. Cal. July 23, 2013)....................................... 19

*In re LinkedIn User Privacy Litig.*,
  932 F. Supp. 2d 1089 (N.D. Cal. 2013) ................................................................................... 7

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  230 F.R.D. 61 (D. Mass. 2005) ............................................................................................. 12

*In re Science App. Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
  45 F. Supp. 3d 14 (D.D.C. 2014) ........................................................................................ 7, 8

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  903 F. Supp. 2d 942 (S.D. Cal. 2012) ............................................................................ 15, 17

*In re Sony Gaming Networks & Customer Data Security Breach Litig.*,
  996 F. Supp. 2d 942 (S.D. Cal. 2014) ..................................................................... 11, 20, 21

*In re Target Corp. Customer Data Sec. Breach Litig.*,
  66 F. Supp. 3d 1154 (D. Minn. 2014) ................................................................................... 12

*In re Zappos.com, Inc. Customer Data Sec. Breach Litig.*,
  NO. 3:12-CV-00325-RCJ-VP, MDL 2357, 2015 WL 3466943 (D. Nev. Jun. 1, 2015) .......... 7

*Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark & Linard, P.C.*,
  929 N.E.2d 722 (Ind. 2010) .............................................................................................. 2, 3

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005)............................................................................................... 10

*Knippling v. Saxon Mortg., Inc.*,
  NO. 2:11-CV-03116-JAM, 2012 WL 1142355 (E.D. Cal. Mar. 22, 2012)............................ 16

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) ............................................................................................ 14, 16, 17

*Lance Camper Mfg. Corp. v. Republic Indem. Co.*,
  44 Cal. App. 4th 194 (1996)................................................................................................ 6

*Lee v. City of Los Angeles*,
  250 F.3d 668, 688 (9th Cir. 2001)...................................................................................... 10

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) ............................................................................... 7

*M.T. v. Saum*,
  7 F. Supp. 3d 701 (W.D. Ky. 2014) .................................................................................. 14

*McAfee v. Francis*,
  NO. 5:11-CV-00821-LHK, 2011 WL 3293759 (N.D. Cal. Aug. 1, 2011) ............................ 6

*Miron v. Herbalife Int'l, Inc.*,
  11 F. App'x 927 (9th Cir. 2001) ........................................................................................... 4

*Nolte v. Cedars Sinai Med. Ctr.*,
  236 Cal. App. 4th 1401 (2015)........................................................................................... 18

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
  647 N.E.2d 741 (N.Y. 1995) .................................................................................... 19, 20, 21

*Pacheco v. Soon Kim*,
  NO. 3:14-CV-00124-MMD, 2014 WL 5460869 (D. Nev. Oct. 27, 2014) ............................ 2

*Parrino v. FHP, Inc.*,
  146 F.3d 699, 706 (9th Cir. 1998) ...................................................................................... 10

*Pagliara v. Johnston Barton Proctor & Rose, LLP*,
  708 F.3d 813 (6th Cir. 2013)............................................................................................... 14

*Patent Scaffolding Co. v. William Simpson Const. Co.*,
  256 Cal. App. 2d 506 (1967) ................................................................................................. 6

*Patriot Sci. Corp. v. Korodi*,
  504 F. Supp. 2d 952 (S.D. Cal. 2007) .................................................................................. 5

*Paul v. Providence Health Sys.-Oregon*,
  240 P.3d 1110 (Or. Ct. App. 2010) ..................................................................................... 13

*Pelman v. McDonald's Corp.*,
  237 F. Supp. 2d 512 (S.D.N.Y. 2003)................................................................................. 19

*Pilot Life Ins. Co. v. Dedeaux*,
  481 U.S. 41 (1987) .............................................................................................................. 10

*Pisciotta v. Old Nat'l Bancorp,*
    499 F.3d 629 (7th Cir. 2007) ....................................................................... 2

*Press Rentals Inc. v. Genesis Fluid Solutions Ltd.,*
    NO. 5:11-CV-02579 EJD, 2013 WL 485654 (N.D. Cal. Feb. 6, 2013) ............... 4, 5

*Reilly v. Ceridian Corp.,*
    664 F.3d 38 (3d Cir. 2011) ........................................................................ 8

*Remijas v. Neiman Marcus Grp., LLC,*
    794 F.3d 688 (7th Cir. 2015) ..................................................................... 25

*Resnick v. AvMed, Inc.,*
    693 F.3d 1317 (11th Cir. 2012) .............................................................. 9, 21

*Robins v. Glob. Fitness Holdings, LLC,*
    838 F. Supp. 2d 631 (N.D. Ohio 2012) ......................................................... 16

*Ruiz v. Gap, Inc.,*
    540 F. Supp. 2d 1121 (N.D. Cal. 2008) ........................................................ 15

*Ruiz v. Gap, Inc.,*
    622 F. Supp. 2d 908 (N.D. Cal. 2009) ...................................................... 6, 7, 8

*Ruiz v. Gap, Inc.,*
    NO. 07-5739 SC, 2009 WL 250481 (N.D. Cal. Feb. 3, 2009) ........................... 15

*Seaton v. Mayberg,*
    610 F.3d 530 (9th Cir. 2010) ...................................................................... 2

*Shafran v. Harley-Davidson, Inc.,*
    NO. 07 CIV. 01365 (GBD), 2008 WL 763177 (S.D.N.Y. Mar. 20, 2008) ......... 20, 21

*Silcox v. State Farm Mut. Auto. Ins. Co.,*
    NO. 14CV2345 AJB MDD, 2014 WL 7335741 (S.D. Cal. Dec. 22, 2014) ............ 18

*Spagnola v. Chubb Corp.,*
    574 F.3d 64 (2d Cir. 2009) .................................................................... 19, 20

*Stollenwerk v. Tri-W. Health Care Alliance,*
    254 F. App'x 664 (9th Cir. 2007) ............................................................ 9, 17

*Warren v. Fox Family Worldwide, Inc.,*
    328 F.3d 1136 (9th Cir. 2003) ................................................................... 10

*Williams v. Chase Bank USA, N.A.,*
    390 S.W.3d 824 (Ky. Ct. App. 2012) ........................................................... 12

*Willingham v. Global Payments, Inc.,*
    NO. 1:12-CV-01157-RWS, 2013 WL 440702 (N.D. Ga. Feb. 5, 2013) ........... 3, 23

Hogan Lovells US
LLP
Attorneys At Law

- xii -

*Worix v. MedAssets, Inc.*,
 857 F. Supp. 2d 699 (N.D. Ill. 2012) ........................................................................ 2, 23

*Young v. Facebook, Inc.*,
 790 F. Supp. 2d 1110 (N.D. Cal. 2011) ........................................................................ 4

**STATUTES**

15 U.S.C. § 6801(b) ........................................................................................................ 24

15 U.S.C. § 6805(a) ........................................................................................................ 24

29 U.S.C. § 1132(a)(1)(B) .............................................................................................. 10

29 U.S.C. § 1144(a) ................................................................................................. 10, 22

Cal. Civ. Code § 56.06(j) ............................................................................................... 18

Cal. Civ. Code § 1798.82 ......................................................................................... 17, 18

Ga. Code Ann. § 33-39-14 ............................................................................................. 22

Ga. Code Ann. § 33-39-21 ............................................................................................. 23

Ind. Code §§ 24-4.9, *et seq.* ........................................................................................... 2

Cal. Ins. Code §§ 790, *et seq.* ...................................................................................... 17

Ky. Rev. Stat. Ann. § 365.732 ....................................................................................... 24

Ky. Rev. Stat. Ann. § 367.220 ....................................................................................... 13

N.Y. Gen. Bus. Law § 349 ............................................................................. 1, 19, 20, 22

**REGULATIONS**

45 C.F.R. § 160.102(a) ................................................................................................... 24

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW

ANTHEM DEFENDANTS' MOTION TO DISMISS
Case No. 15-MD-02617-LHK

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs in this centralized multidistrict litigation assert a host of claims against Anthem, Inc. ("Anthem") and its affiliates (collectively, with Anthem, the "Anthem Defendants") based upon a criminal cyberattack against Anthem that Anthem announced on February 4, 2015.  This Motion to Dismiss addresses nine of the claims asserted in Plaintiffs' Consolidated Amended Class Action Complaint ("CAC") pursuant to the Court's November 10, 2015 Case Management Order.  *See* Dkt. 366.[1]  As discussed in detail below, each of these nine claims suffers from fundamental flaws and should be dismissed.

For example, Plaintiffs assert common law and statutory claims that require a plaintiff to show that a defendant's actions caused the plaintiff "appreciable and actual damage" (California contract law), "economic injury" (California Unfair Competition Law), "actual" harm (New York General Business Law § 349), "actual damages" (Georgia Insurance Information and Privacy Protection Act), and the like.  However, the CAC fails to allege facts showing that the named Plaintiffs bringing these claims suffered such injuries, particularly in light of Anthem's provision of two years of free credit monitoring, much less that any such injuries were caused by the Anthem cyberattack.

Plaintiffs also assert claims based on statutes that simply do not apply to the facts of this case.  They assert a claim under the Kentucky Data Breach Notification Statute, for example, but that statute expressly exempts from its requirements companies, like the Anthem Defendants, that are subject to the Gramm-Leach-Blilely Act and HIPAA.  Similarly, Plaintiffs assert a claim under the Georgia Insurance Information and Privacy Protection Act, but that Act bars insurers from disclosing information; it does not penalize them for being the target of a cyberattacker.

Plaintiffs' claims also suffer from a myriad of other flaws, ranging from a lack of Article III standing to assert claims based on Anthem's alleged failure to provide notification of the cyberattack to claims being preempted by ERISA.  For these and all of the other reasons discussed below, the Court should grant the Anthem Defendants' Motion to Dismiss.

---

[1]  The tenth claim—Plaintiffs' breach of contract claim against Non-Anthem Defendants on behalf of the New Jersey Statewide Class (Count VI)—is only asserted against Non-Anthem Defendants.  Thus, this claim is not addressed herein.

1

## ARGUMENT

2    **I.    PLAINTIFFS' NEGLIGENCE CLAIM ON BEHALF OF THE INDIANA
        STATEWIDE CLASS FAILS.**

3
        **A.    Anthem Did Not Owe Plaintiffs A Common Law Duty Of Care.**

4
            To state a negligence claim under Indiana law, a plaintiff must allege that "the defendant

5
    has a duty to conform its conduct to a standard of care arising from its relationship with the

6
    plaintiff." *Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d

7
    722, 726 (Ind. 2010).[2]  There is no such common law duty here as a matter of law.  The Seventh

8
    Circuit has held that Indiana law does not allow a cause of action in tort "against a database

9
    owner for failing to protect adequately personal information." *Pisciotta v. Old Nat'l Bancorp*,

10
    499 F.3d 629, 637 (7th Cir. 2007).  The court noted that Indiana has legislation specifying a

11
    database owner's duties concerning the protection of personal information that can be enforced

12
    only by the Indiana Attorney General.  *See* Ind. Code §§ 24-4.9, *et seq.*[3]  As the Seventh Circuit

13
    explained, "it is unlikely that the legislature intended to sanction the development of common law

14
    tort remedies that would apply to the same factual circumstances addressed by the statute."

15
    *Pisciotta*, 499 F.3d at 637.  Accordingly, the Anthem Defendants did not breach a common law

16
    duty of care under Indiana law by allegedly failing to adequately protect Plaintiffs' information.[4]

17

18    [2]  The Anthem Defendants assume solely for purposes of this motion that each of the common
    law claims brought on behalf of a putative statewide class are governed by the laws of a single

19    state, but they reserve the right to argue in the future that the claims of different members of a
    single statewide class may be subject to different states' laws based on the facts.

20    [3]  A 2009 amendment exempted database owners with security policies under HIPAA from some
    of the requirements of the statute but the amendment continues to provide for enforcement noly

21    by the Attorney General.  *See* P.L.137-2009, Sec. 5.  Plaintiffs cannot rely upon alleged violations
    of HIPAA to support their negligence claim because HIPAA does not provide for a private right

22    of action.  *See, e.g., Pacheco v. Soon Kim*, NO. 3:14-CV-00124-MMD, 2014 WL 5460869, at *3
    (D. Nev. Oct. 27, 2014) (dismissing claims based on alleged improper disclosure of confidential

23    information in violation of HIPAA) (citing *Seaton v. Mayberg*, 610 F.3d 530, 533 (9th Cir.
    2010)); *Gallipeau v. Correct Care Sols.*, NO. CA 3:10-2017-JFA-JRM, 2011 WL 4502043, at *3

24    (D.S.C. Sept. 29, 2011) ("Courts that have considered the question of whether a private right of
    action exists under HIPAA have concluded that the statute does not, in fact, create any kind of

25    duty so as to give rise to a cause of action for its breach.").

26    [4]  This conclusion is consistent with numerous cases finding that there is no common law duty of
    care in the context of data breaches. *See Worix v. MedAssets, Inc.*, 869 F. Supp. 2d 893, 897

27    (N.D. Ill. 2012) (rejecting plaintiffs' argument that defendant had a common law duty to
    reasonably handle and safeguard patient medical information); *Dolmage v. Combined Ins. Co. of*

28    *Am.*, NO. 14 C 3809, 2015 WL 292947, at *18-19 (N.D. Ill. Jan. 21, 2015) (dismissing plaintiff's
    negligence claim because there is no common law duty to protect personal information); *Cooney*

1

**B.      The Economic Loss Doctrine Bars Plaintiffs' Negligence Claim.**

Plaintiffs' negligence claim also fails because, under Indiana law, a "defendant is not liable under a tort theory for any purely economic loss caused by its negligence . . . ." *Indianapolis-Marion Cnty. Pub. Library*, 929 N.E.2d at 726-27.  "[T]he economic loss rule reflects that the resolution of liability for purely economic loss caused by negligence is more appropriately determined by commercial rather than tort law."  *Id.* at 729.  Here, Plaintiffs allege in their breach of contract claim that the Anthem Defendants "fail[ed] to implement the security measures required by the contracts."  *See* CAC ¶¶ 305-306.  "In general, a claim that a product or service did not perform as expected is best left to contract law remedies."  *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 155 (Ind. 2005).

Under Indiana law, "damage from a defective product or service may be recoverable under a tort theory if the defect causes personal injury or damage to other property, but contract law governs damage to the product or service itself and purely economic loss arising from the failure of the product or service to perform as expected."  *Id.*  Here, the CAC does not allege any facts showing that the named Indiana Plaintiffs suffered personal injury or property damage as a result of the cyberattack.  Instead, Plaintiffs' alleged injuries are purely economic.  Thus, the economic loss doctrine bars Plaintiffs' Indiana negligence claim unless an exception to the rule applies, such as an attorney-client or fiduciary relationship.  *Indianapolis-Marion Cnty. Pub. Library*, 929 N.E.2d at 742.  The CAC does not allege any facts showing that the Indiana Plaintiffs and the Anthem Defendants had such a relationship; it only contains conclusory statements that "[a] 'special relationship' exists between Defendants and the Plaintiffs."  CAC ¶ 288.  Such allegations are only "labels and conclusions" that do not suffice to state a claim for relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, the economic loss doctrine bars Plaintiffs' negligence claim.[5]

---

*v. Chi. Pub. Schs.*, 943 N.E.2d 23, 29 (Ill. App. Ct. 2010) (affirming trial court's dismissal of plaintiff's negligence claim because plaintiffs did not have a common law duty to protect personal information); *Hammond v. Bank of N.Y. Mellon Corp.*, NO. 08 CIV. 6060 RMB RLE, 2010 WL 2643307, at *33-34 (S.D.N.Y. June 25, 2010) (same); *Willingham v. Global Payments, Inc.*, NO. 1:12-CV-01157-RWS, 2013 WL 440702, at *61 (N.D. Ga. Feb. 5, 2013) (same).

[5]  Plaintiff Stella Williams alleges that she "was enrolled in a Blue Cross Blue Shield Federal

## II. PLAINTIFFS' BREACH OF CONTRACT CLAIM ON BEHALF OF THE CALIFORNIA STATEWIDE CLASS FAILS.

Plaintiffs' breach of contract claim against the Anthem Defendants on behalf of a California Statewide Class is brought by eleven Plaintiffs who allegedly are residents of California. *See* CAC ¶¶ 15-24. Two of those Plaintiffs (Joseph Blanchard and Lillian Brisko) do not allege that they had any contractual relationships with any Anthem Defendant; they only allege contractual relationships with Non-Anthem Defendants. *See* CAC ¶¶ 22, 23. Thus, their breach of contract claims against the Anthem Defendants must be dismissed. A third Plaintiff (Alvin Lawson) also does not allege a contractual relationship with the Anthem Defendants; he alleges instead that he "was enrolled in a Blue Cross Blue Shield Federal Employee PPO health plan." *Id.* ¶ 24. Thus, his breach of contract claim against the Anthem Defendants also should be dismissed.[6] The breach of contract claims of the other eight California Plaintiffs fail because (a) the CAC fails to identify the contractual provisions that allegedly were breached, (b) the CAC fails to allege facts showing any breach caused Plaintiffs to suffer damages that are cognizable under California law, and (c) certain Plaintiffs' claims are preempted by ERISA.

### A. The CAC Fails To Identify The Contractual Provisions Allegedly Breached.

Plaintiffs' California breach of contract claim should be dismissed because the CAC fails to identify the contractual provisions that allegedly were breached. Courts in this district have repeatedly stated that "[i]n an action for breach of a written contract, a plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached." *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011) (citing *Miron v. Herbalife Int'l, Inc.*, 11 F. App'x 927, 929 (9th Cir. 2001)); *see also Press Rentals Inc. v. Genesis Fluid Solutions Ltd.*, NO. 5:11-CV-02579 EJD, 2013 WL 485654, *4 (N.D. Cal. Feb. 6, 2013) (same); *Dunkel v. eBay, Inc.*, NO. 5:12-CV-01452-EJD, 2013 WL 415584, *9 (N.D. Cal. Jan. 31, 2013) (same). Although that does not require a plaintiff to recite the terms of a contract verbatim, "a

---

Employee Program health plan." CAC ¶ 49. To the extent she is asserting an Indiana negligence claim against the Anthem Defendants, then her claim also fails for the additional reason that it is barred by the Federal Employee Health Benefits Act ("FEHBA"). *See* Section IX *infra*.

[6] Plaintiff Lawson's California breach of contract claim also should be dismissed because it is barred by FEHBA. *See* Section IX *infra*.

plaintiff must still make factual allegations pointing to the existence of a contract and supporting that the contract contained the terms [that] would give rise to the asserted legal effect." *Press Rentals Inc.*, 2013 WL 485654, *4.  The CAC fails to satisfy that requirement here.  It asserts a California breach of contract claim on behalf of a disparate group of individuals allegedly covered under very different types of health plans, including individual, group, and Medicare plans, without making any attempt to identify the contractual provisions in the different health plans that allegedly were breached.  Instead, it simply alleges in conclusory fashion that:

> Anthem and/or Anthem Affiliates agreed, among other things: (1) to provide health insurance coverage and/or related health care services to Plaintiffs and Statewide Class Members according to the terms of their health plans; (2) to take reasonable measures to protect the security and confidentiality of Plaintiffs' and Statewide Class Members' Personal Information; and (3) to protect Plaintiffs' and Statewide Class Members' Personal Information in compliance with federal and state laws and regulations, including HIPAA, and industry standards.

CAC ¶ 303(a).  These allegations are insufficient because they give no indication as to which provisions allegedly were breached with respect to any of the particular health plans in which the named California Plaintiffs allegedly were enrolled.

The allegations in the CAC regarding the privacy policies the Anthem Defendants allegedly mailed to individuals or posted online are more specific, but the CAC does not allege any facts showing how those privacy policies supposedly gave rise to enforceable contractual obligations.  The CAC does not allege facts showing that these policies were incorporated into the named California Plaintiffs' health plans.  CAC ¶¶ 161-70; 252-58.  It likewise fails to allege facts showing that these policies gave rise to separately enforceable contracts supported by consideration.  *See Patriot Sci. Corp. v. Korodi*, 504 F. Supp. 2d 952, 960 (S.D. Cal. 2007) ("It is hornbook law that a contract, to be enforceable, must be supported by consideration.").  "California courts have repeatedly refused to enforce gratuitous promises, even if reduced to writing in the form of an agreement." *Id.* (citation omitted).  The CAC does not allege facts showing that any asserted promises in the privacy policies were supported by consideration, and consideration given for Plaintiffs' health plans cannot be used as a bootstrap for "gratuitous promises" because "[p]ast consideration cannot support a contract." *Id.* (citation omitted).  Plaintiffs, moreover, allege no facts to show how contracts allegedly based on the privacy policies

1   were formed.  *See McAfee v. Francis*, NO. 5:11-CV-00821-LHK, 2011 WL 3293759, at *2 (N.D.

2   Cal. Aug. 1, 2011) (dismissing breach of contract claim where plaintiffs failed to allege facts

3   showing "acceptance that mirrors the offer" or the "contract date").

4   　　　　Finally, Plaintiffs' assertion that implied contractual obligations arose from the Anthem

5   Defendants' use of their personal information "in providing health insurance and related services"

6   is fundamentally flawed.  CAC ¶ 303(c).  The CAC fails to allege any facts showing that implied

7   contracts existed beyond vague, conclusory allegations about Defendants' demanding and using

8   personal information for their "business purposes."  *Id.*  Because no facts are alleged that show

9   how any implied contracts were formed, Plaintiffs' claim fails.  *See Allen v. Nextera Energy*

10  *Operating Servs.*, NO. C 12-01610 LB, 2012 WL 1918930, at *2 (N.D. Cal. May 25, 2012)

11  (dismissing implied contract claim where no facts alleged regarding contract formation).  In

12  addition, because the health plans in which Plaintiffs allegedly were enrolled were express

13  contracts governing the Anthem Defendants' obligation to provide "health insurance and related

14  services," CAC ¶ 303(c), Plaintiffs cannot assert that implied contracts required the Anthem

15  Defendants to provide additional services.  *See Lance Camper Mfg. Corp. v. Republic Indem. Co.*,

16  44 Cal. App. 4th 194, 203 (1996) (breach of implied contract claim "cannot lie where there exists

17  between the parties a valid express contract covering the same subject matter").

18  　　　　**B.**　　　**The CAC Fails To Show That Any Breach Caused Contractual Damages.**

19  　　　　Plaintiffs' California breach of contract claim also fails because the CAC does not allege

20  facts showing that any breach caused the California Plaintiffs contractual damages.  To show

21  contractual damages under California law, a Plaintiff must establish "appreciable and actual

22  damage."  *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000); *see*

23  *also Patent Scaffolding Co. v. William Simpson Const. Co.,* 256 Cal. App. 2d 506, 511, (1967)

24  ("A breach of contract without damage is not actionable.").  Nominal damages, speculative harm,

25  or threat of future harm do not suffice to show legally cognizable injury.  *See Aguilera*, 223 F.3d

26  at 1015; *see also Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 917 (N.D. Cal. 2009).  The CAC fails to

27  allege facts showing that the California Plaintiffs suffered such damage.

28  　　　　The only allegations of injury that Plaintiffs Kawai and Solomon make are that they spent

"numerous hours" addressing issues relating to the cyberattack on Anthem.  CAC ¶¶ 19-20.  Such

alleged injuries do not give rise to the type of "appreciable and actual damage" that is recoverable

under California contract law.  *Ruiz*, 622 F. Supp. 2d at 917-18; *see also Holmes v. Countrywide*

*Fin. Corp.*, NO. 5:08-CV-00205-R, 2012 WL 2873892, at *11 (W.D. Ky. July 12, 2012) (courts

"uniformly reject attempts to recover for time the plaintiffs spent self-monitoring financial

accounts and credit history").

They also cannot rely on the CAC's conclusory allegations regarding "damages to and

diminution in value of" Plaintiffs' personal information, CAC ¶ 267(f), because the CAC fails to

allege facts demonstrating that the value of such information has been diminished or that

Plaintiffs intended to sell their information for profit.  *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d

1010, 1028 (N.D. Cal. 2012); *see also In re Zappos.com, Inc. Customer Data Sec. Breach Litig.*,

NO. 3:12-CV-00325-RCJ-VP, MDL 2357, 2015 WL 3466943, at *3 (D. Nev. Jun. 1, 2015).  And

even if "personal information does have independent economic value that has been diminished by

[a] Defendant's alleged breach of contract, this loss in value would not be a cognizable form of

contract damages."  *Low*, 900 F. Supp. 2d at 1029.

The CAC's conclusory allegations regarding purported overpayment also are unavailing.

*See* CAC ¶¶ 267, 309.  Courts routinely reject damage theories based on the same allegations the

CAC makes here: that Plaintiffs did not receive the "full benefit of their bargain" because of a

purported "failure to implement the security measures required by the contracts."  *Id.*; *see In re*

*Science App. Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 30 (D.D.C.

2014) (no injury where plaintiffs failed to show "money they paid could have or would have

bought a better policy with a more bullet-proof information-security regime"); *Carlsen v.*

*GameStop, Inc.*, NO. CIV. 14-3131 DWF/SER, 2015 WL 3538906, at *6 (D. Minn. June 4, 2015)

(no injury where alleged facts did not show plaintiff "bargain[ed] for data privacy/security"); *In*

*re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d 1089, 1094 (N.D. Cal. 2013).

The CAC similarly fails to allege facts showing that Plaintiffs Carter and Coonce suffered

"appreciable and actual damage."  The CAC alleges that Plaintiff Carter "received notification

from All-Clear ID that her minor daughter's Social Security Number had been compromised" and

1  that she put "credit freezes on her daughter's credit reports," CAC ¶ 17, but it does not allege

2  facts showing how this resulted in any actual injury.  It also alleges that Plaintiff Coonce was

3  notified "that his debit card number had been stolen and used for unauthorized charges," *id.* ¶ 18,

4  but it again fails to show how this caused "appreciable and actual damage."  Further, no

5  allegations tie this stolen debit card number to the Anthem cyberattack because the CAC does not

6  allege that debit card numbers were stolen.  And the CAC's allegations regarding money these

7  Plaintiffs spent on "credit freezes" and "identity theft and credit monitoring services" are

8  insufficient because prophylactic measures are not cognizable when no actual injury has been

9  sustained.  *See Ruiz*, 622 F. Supp. 2d at 918; *Holmes*, 2012 WL 2873892, at *6-10; *see also Reilly*

10  *v. Ceridian Corp.*, 664 F.3d 38, 46 (3d Cir. 2011); *In re Science App. Int'l Corp. (SAIC) Backup*

11  *Tape Data Theft Litig.*, 45 F. Supp. 3d at 30.  Voluntary expenditures for credit monitoring

12  services also do not give rise to damages where Anthem has offered two years of free credit

13  monitoring.  Plaintiffs' remaining allegations regarding "numerous" hours spent addressing issues

14  related to the attack are insufficient for the reasons discussed above with respect to Plaintiffs

15  Kawai and Solomon.  *See, e.g.*, *Ruiz*, 622 F. Supp. 2d at 917-18.

16      The CAC alleges that Plaintiffs Bronzo and Daniel and Kelly Tharp had their tax refunds

17  delayed, CAC ¶¶ 15, 21, but it does not allege that their refunds have not been received.  This,

18  too, fails to show "appreciable and actual damage."  *See In re Horizon Healthcare Servs.*, *Inc.*

19  *Data Breach Litig.*, NO. CIV.A. 13-7418 CCC, 2015 WL 1472483, at *8 & n.9 (D.N.J. Mar. 31,

20  2015) (plaintiff lacked standing where he had "already received his tax refund" and failed to

21  allege facts showing how he had been "damaged financially" by any delay).  The allegations

22  about "numerous hours" spent addressing issues relating to tax refunds and the cyberattack, and

23  paying "$216 annually for identity theft and credit monitoring services" (Bronzo) and "$60 out-

24  of-pocket to place credit freezes" (Tharp) are likewise insufficient.  *See Holmes*, 2012 WL

25  2873892, at *11 ("voluntary expenditures to reduce a future risk" did not constitute "recoverable

26  injuries" under contract laws of other states).

27      The allegation that Plaintiff Randrup "still has not received his expected 2014 tax return

28  payment," CAC ¶ 16, also is insufficient because the CAC does not allege that he does not expect

to or will not receive the payment, or state any facts showing that he has been damaged financially by the delay.  Thus, the CAC fails to show that Plaintiff Randrup has suffered the "appreciable and actual damage" needed to state a breach of contract claim.

Finally, all of the allegations regarding alleged misuse of personal information relating to Plaintiffs Bronzo, Randrup, Carter, Coonce, Tharp, and Brisko fail for an additional reason:  the CAC fails to allege facts showing that any purported fraud was caused by the cyberattack on Anthem.  The CAC alleges that these Plaintiffs experienced a fraudulent misuse of their personal information at some point preceding the filing of the CAC, but it does not allege facts tying the fraud to the cyberattack.  *See* CAC ¶¶ 15-18, 21-23.  This "*purely* temporal connection[]" is "insufficient to establish causation" between the cyberattack and Plaintiffs' purported harm.  *Stollenwerk v. Tri-W. Health Care Alliance*, 254 F. App'x 664, 668 (9th Cir. 2007) (emphasis in original).  The CAC does not allege, for example, that these Plaintiffs took steps to safeguard their personal information or that they had never before been the victim of identity theft.  *Cf. Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1326-27 (11th Cir. 2012) (finding that plaintiffs satisfied causation requirement where they alleged not only a temporal connection, but also that they had never before had their identities stolen or information compromised and that each took precautions to protect their personal information).  The CAC also does not allege that the information stolen during the cyberattack is being sold illicitly or otherwise made available to third parties to exploit.  It alleges that "criminals often trade [personal] information on the 'cyber black-market,'" CAC ¶ 264, but notably fails to allege that *Plaintiffs'* information is on the black-market.  *Cf. In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1215 (N.D. Cal. 2014) (finding Article III standing where plaintiffs alleged that "stolen data has already surfaced on the Internet, and other hackers have allegedly used it").  Thus, the CAC fails to plausibly link Plaintiffs' purported injuries to the Anthem cyberattack as opposed to some other source.[7]

---

[7]  Scores of other cyber intrusions and data thefts have compromised the personal information of tens of millions of individuals.  Ebay, Target, Home Depot, Neiman Marcus, CVS, Experian, JPMorgan Chase, and the Office of Personnel Management are but a few entities that have experienced such attacks in the last two years.  *See, e.g.*, Bill Hardekopf, *The Big Data Breaches of 2014*, Forbes, Jan. 13, 2015 *available at* http://www.forbes.com/sites/moneybuilder/2015/01/13/the-big-data-breaches-of-2014/.

C.     **ERISA Preempts Plaintiffs Coonce and Tharp's Contract Claims.**

The contract claims of Plaintiffs Coonce and Daniel and Kelly Tharp also should be dismissed because they are preempted by ERISA.  ERISA contains a "deliberately expansive" statutory preemption provision that expressly preempts "any and all State laws" that "relate to any employee benefit plan." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45-46 (1987); 29 U.S.C. § 1144(a).  These Plaintiffs' contract claims "relate to" employee benefit plans governed by ERISA.  CAC ¶ 303; *see* supporting Declaration of Scott Hicks and exhibits thereto.[8] Specifically, the CAC alleges that they or their employers "paid money" to the Anthem Defendants and provided the Anthem Defendants with personal information in exchange for various contractual obligations, which the Anthem Defendants allegedly breached.  CAC ¶ 303(a).  Their contract claims are therefore expressly preempted by ERISA.  *See Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1034 (9th Cir. 2010) (noting that "ERISA preempts common law theories of contract implied in fact ... and breach of contract").

These Plaintiffs' contract claims also are completely preempted under ERISA's "exclusive remedial scheme." *Fossen v. Blue Cross & Blue Shield of Montana, Inc.*, 660 F.3d 1102, 1007 (9th Cir. 2011).  ERISA enables plan beneficiaries like Plaintiffs Coonce and Daniel and Kelly Tharp "to enforce [their] rights under the terms of [their ERISA] plan," 29 U.S.C. § 1132(a)(1)(B), and any "state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004); *see also* Order Denying Motion to Remand, *In re Anthem, Inc. Data Breach Litig.*, 15-CV-2874-LHK, Dkt. 247 at *7-8 (Sept. 9, 2015).  Plaintiffs allege that they provided their personal information and paid money to the Anthem Defendants in exchange for various contractual obligations, including protection of their information.  Because these Plaintiffs'

---

[8]  The CAC specifically references the contracts between the Anthem Defendants and Plaintiffs, and the crux of Plaintiffs' breach of contract claim is that the Anthem Defendants are liable for allegedly breaching those contracts.  CAC ¶ 303.  Because the contracts are integral to the CAC, they can be considered in connection with a motion to dismiss under Rule 12(b)(6). *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998)).

contract claims seek "to enforce ... rights under the terms" of their ERISA plan, they are completely preempted and should be dismissed.

### III.   PLAINTIFFS' UNJUST ENRICHMENT CLAIM ON BEHALF OF THE NEW YORK STATEWIDE CLASS FAILS.

The New York Plaintiffs' unjust enrichment claim, which seeks damages based on the insurance premiums Plaintiffs allegedly paid Anthem, *see* CAC ¶¶ 353-57, should be dismissed because there can be no unjust enrichment claim as a matter of New York law where there exists an enforceable express contract. *Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70 N.Y. 2d 382, 388 (N.Y. 1987); *see also In re Sony Gaming Networks and Customer Data Security Breach Litig.*, 996 F. Supp. 2d 942, 984-85 (S.D. Cal. 2014) ("*Sony II*") (dismissing New York unjust enrichment claim when valid express contract governed the subject matter of the dispute).  Unjust enrichment "lies as a quasi-contract claim," and it contemplates "an obligation imposed by equity to prevent injustice, *in the absence of an actual agreement between the parties*."  *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (N.Y. 2012) (emphasis added); *Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 572 (N.Y. 2005).  Thus, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter."  *Clark-Fitzpatrick, Inc.*, 70 N.Y. 2d at 388; *see also Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, NO. 03 CIV. 1537 (MBM), 2003 WL 23018888, at *17 (S.D.N.Y. Dec. 22, 2003) *aff'd*, 110 F. App'x 191 (2d Cir. 2004); *Goldman,* 5 N.Y.3d at 572.

The CAC alleges that the New York Plaintiffs paid premiums for Anthem health plans, *see* CAC ¶¶ 85-88, and it does not allege that those health plans are not "valid and enforceable written contracts."  There also is no question that the health plans involve "the same subject matter" as Plaintiffs' unjust enrichment claim because the relief Plaintiffs seek is the return of a portion of the premiums they paid.  *See* CAC ¶¶ 351, 353.  Thus, Plaintiffs' unjust enrichment claim necessarily fails.  *See Goldman*, 5 N.Y.3d at 572 (where "disputed terms and conditions fall entirely within the insurance contract, there is no valid claim for unjust enrichment").

The unjust enrichment claim as to named Plaintiff Matthew Gates, CAC ¶ 86, also fails

because it is preempted by ERISA.  Plaintiff Gates received his health insurance through an ERISA

plan that his employer sponsored.  *See* supporting Declaration of Kristine Gorman and exhibits

thereto.  Like the members of the California Statewide Class discussed above, Plaintiff Gates'

claim relates to his ERISA plan and he seeks to enforce rights under that plan.  *See* CAC ¶¶ 353-

54.  Accordingly, Plaintiff Gates' unjust enrichment claim is both expressly and completely

preempted by ERISA.  *See, e.g.*, *Bose v. Horizon Blue Cross Blue Shield of New Jersey*, NO.

CIV.A. 12-4671 ES, 2014 WL 1293861, at *9 (D.N.J. Mar. 31, 2014).

## IV.    PLAINTIFFS' KENTUCKY CONSUMER PROTECTION ACT CLAIM FAILS.

### A.    The Act Does Not Provide A Private Right Of Action For Class Actions.

Plaintiffs' Kentucky Consumer Protection Act claim fails because the Act cannot be used

to bring a class action.  *See In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61,

84 (D. Mass. 2005) (finding "no right to bring a class action to enforce the consumer protection

statutes" of Kentucky and other states); *Arnold v. Microsoft Corp.*, NO. 00-CI-00123, 2000 WL

36114007, at *6 (Ky. Cir. Ct. July 21, 2000), *aff'd*, NO. 2000-CA-002144-MR, 2001 WL

1835377 (Ky. Ct. App. Nov. 21, 2001) ("The Court also does not believe that KRS 367.170 was

meant to be a vehicle for Class Action suits and declines to open such a sweepingly vague statute

for use as a blunt instrument in a Class Action suit.").  The court in *In re Target Corporation

Customer Data Security Breach Litigation* recently dismissed class action claims under the

Kentucky Consumer Protection Act for this very reason.  *See* 66 F. Supp. 3d 1154, 1163-66 (D.

Minn. 2014) ("Plaintiffs may not maintain a class action as to their claims under the consumer-

protection statutes in ... Kentucky.").  Plaintiffs' Kentucky Consumer Protection Act claim should

be dismissed for the same reason.

### B.    Plaintiffs Lack Standing To Bring A Claim Under The Act.

Plaintiffs' Kentucky Consumer Protection Act claim also fails because the three named

Kentucky Plaintiffs lack standing.  Plaintiff Bailey lacks standing to bring a claim under the Act

because he does not allege facts showing that he had a contractual relationship with the Anthem

Defendants.  The Kentucky Consumer Protection Act requires an individual be "a purchaser with

privity of contract ... to have standing to bring an action under the Act," *Williams v. Chase Bank*

*USA, N.A.*, 390 S.W.3d 824, 829 (Ky. Ct. App. 2012), but the CAC alleges only that Plaintiff

Bailey "was enrolled in a Blue Cross Blue Shield [of] Minnesota health plan."  CAC ¶ 62.

 All three Kentucky Plaintiffs also lack standing because the Kentucky Consumer

Protection Act only provides a cause of action for a person who "suffers any ascertainable loss of

money or property."  Ky. Rev. Stat. Ann. § 367.220.  The CAC fails to allege facts showing the

Kentucky Plaintiffs suffered any such loss.  Plaintiffs Ruberg and Bailey's alleged injuries are

limited to "numerous hours [spent] addressing issues arising from the Anthem data breach," CAC

¶¶ 61-62, and Plaintiff Dianne Reistroffer's alleged injuries are limited to lost time and

"approximately $108 annually for identity theft and credit monitoring services in order to monitor

for identity theft and fraudulent activity."  CAC ¶ 60.  Neither time spent "addressing issues" nor

credit monitoring costs are "ascertainable loss[es] of money or property."  The U.S. District Court

for the Western District of Kentucky dismissed a Kentucky Consumer Protection Act claim

involving Countrywide Financial Corporation's data breach on precisely this basis when the

plaintiffs in that case alleged nearly identical injuries.  *See Holmes*, 2012 WL 2873892, at *14

(allegations regarding credit monitoring payments and lost time spent monitoring credit do not

amount to an "actual loss" under Kentucky law).  Courts interpreting "ascertainable loss"

requirements under the laws of other states similarly agree that such requirements are not met

when plaintiffs' alleged injuries include only costs spent to purchase credit monitoring services or

time lost to monitor credit.  *See Paul v. Providence Health Sys.-Oregon*, 240 P.3d 1110, 1122

(Or. Ct. App. 2010) ("Here, too, we fail to understand how the money expended by plaintiffs is a

loss occasioned by the alleged UTPA violations. In short, rather than allege a loss of money or

property as a result of defendant's misrepresentations, plaintiffs' complaint alleges out-of-pocket

expenses to prevent a potential loss of money or property (through identity theft) that might result

from the misrepresentations."); *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1057

(E.D. Mo. 2009) (time expended is "not sufficiently definite or certain" to support a claim for

ascertainable loss of money or property under the Missouri Merchandising Practices Act).

 Plaintiffs' alleged "loss of their legally protected interest in the confidentiality and privacy

of their Personal Information," CAC ¶ 427, also does not qualify as an "ascertainable loss of

1   money or property." Plaintiffs must produce "evidence from which a factfinder could find or

2   infer that the plaintiff suffered an actual loss." *M.T. v. Saum*, 7 F. Supp. 3d 701, 705 (W.D. Ky.

3   2014). The "intangible harm as a result of alleged invasions of their rights of privacy and

4   confidentiality" is not an ascertainable loss of monies or property, *Castro v. NYT Television*, 851

5   A.2d 88, 96 (N.J. Super. Ct. App. Div. 2004) (interpreting New Jersey's Consumer Fraud Act),

6   and is instead a non-economic loss the law does not remedy. *See, e.g.*, *Pagliara v. Johnston*

7   *Barton Proctor & Rose, LLP*, 708 F.3d 813, 820 (6th Cir. 2013) (emotional distress not an

8   ascertainable loss under Tennessee's Consumer Protection Act).

9   **V.   PLAINTIFFS' UCL CLAIM FAILS.**

10       **A.   Plaintiffs Lack Standing Under The UCL.**

11       Plaintiffs' UCL claim fails because the CAC does not allege facts showing that any of the

12   named California Plaintiffs has standing to bring a UCL claim. To satisfy the UCL's standing

13   requirements, a party must "(1) establish a loss or deprivation of money or property sufficient to

14   qualify as an injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the

15   result of, i.e., *caused by*, the unfair business practice ... that is the gravamen of the claim."

16   *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322-23 (2011) (emphases in original). The

17   CAC fails to satisfy these requirements.

18       The CAC's conclusory allegations that Plaintiffs "lost money or property, including but

19   not limited to the premiums and/or price received by Defendants for the insurance and health

20   benefits services, the loss of their legally protected interest in the confidentiality and privacy of

21   their Personal Information," CAC ¶ 367, are insufficient to state a UCL claim. *See, e.g.*, *Hosseini*

22   *v. Wells Fargo Bank, N.A.*, NO. C-13-02066 DMR, 2013 WL 4279632, at *8 (N.D. Cal. Aug. 9,

23   2013) (rejecting "conclusory allegation that [plaintiffs] 'were injured in fact and lost money or

24   property as a result' of Defendant's 'practices.'"). The CAC does not allege any facts showing

25   that the named California Plaintiffs received no benefit in exchange for the insurance premiums

26   they allegedly paid the Anthem Defendants, and they do not allege that they paid more for health

27   insurance than they otherwise would have had they known that the Anthem Defendants' data

28   security practices allegedly were inadequate to prevent the cyberattack. *Cf. Adobe*, 66 F. Supp.

3d at 1224 ("Four of the six Plaintiffs allege they personally spent more on Adobe products than they would had they known Adobe was not providing the reasonable security Adobe represented it was providing.").  Nor can such allegations be assumed in the context of health insurance, where the decision of what insurance to buy can be influenced by a myriad of factors more salient than the features of an insurer's data security, including the choices made by one's employer, the scope of the coverage offered, and the size of the insurer's provider network.  Further, courts have repeatedly held that the exposure of personal information in a cyberattack, without more, does not constitute economic injury in-and-of-itself.  *See, e.g.*, *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 966 (S.D. Cal. 2012) ("*Sony I*"); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008).

The CAC's conclusory allegations concerning the costs associated generally with "medical identity theft," CAC ¶ 265, are similarly unavailing.  Not only are those allegations not specific to any Plaintiff, but the allegations of medical data being stolen are conclusory and not entitled to a presumption of truth.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The more specific harms alleged by the California Plaintiffs also do not constitute economic injury.  For example, each California Plaintiff alleges that he or she "spent numerous hours addressing issues arising from the Anthem data breach."  CAC ¶¶ 15-24.  Five also allege that they engaged credit monitoring services "in order to monitor for identity theft and fraudulent activity resulting from the Anthem breach" (Bronzo and Coonce), or that they placed freezes on their credit reports (Carter and the Tharps).  *Id.* ¶¶ 15, 17, 18, 21.  These types of alleged injuries do not satisfy the UCL requirement that a plaintiff allege "loss or deprivation of money or property sufficient to qualify as an injury in fact."  *Sony I*, 903 F. Supp. 2d at 966 (allegations regarding "heightened risk of identity theft, time and money spent on mitigation of that risk ... do not suffice as injury under the UCL"); *Ruiz v. Gap, Inc.*, NO. 07-5739 SC, 2009 WL 250481, at *3-4 (N.D. Cal. Feb. 3, 2009), *aff'd* 380 F. App'x 689, 692 (9th Cir. 2010) (time and money spent to monitor and repair credit is not the "kind of loss of money or property necessary for standing to assert a claim under section 17200"); *Knippling v. Saxon Mortg., Inc.*, NO. 2:11-CV-03116-JAM, 2012 WL 1142355, at *2 (E.D. Cal. Mar. 22, 2012) (plaintiff's allegations that she lost time

1   dealing with multiple telephone calls and letters insufficient under UCL).

2          Six California Plaintiffs allege that, following the Anthem Defendants' notification of the

3   cyberattack, they were victims of identity theft, but none identifies an economic injury for

4   purposes of UCL standing.[9]  Plaintiffs Bronzo, Brisko and the Tharps allegedly were notified that

5   false tax returns were filed under their names.  CAC ¶¶ 15, 21, 23.  Plaintiffs Bronzo and the

6   Tharps further allege that their tax refunds were delayed.  *Id.* ¶¶ 15, 21.  Plaintiff Randrup alleges

7   that he was notified that "he owed thousands of dollars in additional withholding tax based on a

8   tax return that Mr. Randrup did not file" and that "he has not yet received his expected 2014 tax

9   return payment."  *Id.* ¶ 16.  Plaintiff Coonce alleges that "his debit card number [was] stolen and

10  used for unauthorized charges."  *Id.* ¶ 18.  And Plaintiff Brisko alleges that someone fraudulently

11  took out a loan in her name.  *Id.* ¶ 23.  None of these harms constitute economic injuries.

12  Plaintiffs Bronzo and the Tharps have received their tax refunds, *id.* ¶¶ 15, 21, and Plaintiff

13  Randrup does not allege any reason to believe that he will not receive his.  *See In re Horizon*

14  *Healthcare Servs.*, 2015 WL 1472483, at *8 (no redressable injury where plaintiff had already

15  received tax return).  And Plaintiffs Coonce and Brisko do not allege that any money was stolen

16  from their accounts or that they had to pay for unauthorized charges or loans.  *See* CAC ¶¶ 16, 23;

17  *Robins v. Glob. Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 644 (N.D. Ohio 2012) (no injury

18  where alleged unauthorized charges were reversed by bank).

19         The CAC also does not allege facts showing that the alleged injuries of these six

20  California Plaintiffs were "*caused by* the unfair business practice ... that is the gravamen of the

21  claim." *Kwikset Corp.*, 51 Cal. 4th at 322-23 (emphasis in original).  The CAC does not allege

22  facts showing how the cyberattack *caused* any harm to the California Plaintiffs who allege

23  fraudulent misuse of their personal information.  *See* Section II.B *supra* (discussing California

24  Plaintiffs' failure to allege causation to sustain their breach of contract claim).  It relies instead on

25  tenuous temporal relationships that fail to connect the cyberattack and the alleged injuries, rather

26  than stating sufficient facts to show economic injury "caused by [] the unfair business practice."

27

28  [9]  A seventh (Plaintiff Blanchard) is addressed in Section V of the Non-Anthem Defendants and
BCBSA's Brief.

*Kwikset Corp.*, 51 Cal. 4th at 322-23; *see also Stollenwerk*, 254 F. App'x at 668 (temporal connection, without more, is insufficient to satisfy causation requirement).

Finally, none of the California Plaintiffs identifies any injury whatsoever resulting from the Anthem Defendants' alleged delay in notifying their members of the cyberattack, or their alleged failure to take further action following the attack.  The CAC asserts that the Anthem Defendants engaged in unfair practices "by failing to disclose the Anthem Data Breach to California Class Members in a timely and accurate manner" and "failing to take proper action following the Anthem Data Breach to enact adequate privacy and secure measures," *see* CAC ¶¶ 366(c), (d); *see also* ¶ 366(h) (alleging violation of Civ. Code § 1798.82), but this Court's opinion in *In re Adobe Systems, Inc. Privacy Litigation* makes clear that a UCL claim cannot be based on such theories in the absence of factual allegations showing injury caused by the delayed notice as opposed to injury caused by the cyberattack itself.  66 F. Supp. 3d at 1217.[10]

### B.   The CAC Does Not Allege Unlawful, Unfair, Or Fraudulent Conduct.

#### 1.   Unlawful Conduct

Plaintiffs assert that the Anthem Defendants are liable under the "unlawful" prong of the UCL based on alleged violation of several statutes, CAC ¶ 366(e-h), but their generalized allegations are insufficient to state a claim.  The CAC alleges that the Anthem Defendants violated HIPAA, the California Insurance Information and Privacy Protection Act, and Insurance Code §§ 790, *et seq*., *id.* ¶ 366(e-g), but it references those statutes only generally, and does not specify how the Anthem Defendants supposedly violated them, or which of the many affiliates and subdivisions engaged in such alleged conduct.  Such generality cannot support a UCL claim that a defendant's practice is unlawful.  *See, e.g.*, *Hodges v. Apple Inc*., NO. 13-CV-01128-WHO, 2013 WL 4393545, at *6 (N.D. Cal. Aug. 12, 2013) (to satisfy "unlawful" prong, "a plaintiff must identify the particular section of the statute that was violated and plead with particularity how the facts of this case pertain to that specific statute") (internal quotation omitted).

---

[10]  Plaintiffs also fail to support their preferred UCL remedy of restitution of money and disgorgement of profits that supposedly accrued to the Anthem Defendants as a result of their challenged business practices.  CAC ¶ 369.  There is no ground for restitution because the Anthem Defendants are not alleged to have profited or benefited from the cyberattack.  *Sony I*, 903 F. Supp. 2d at 970.

The CAC also does not adequately allege the Anthem Defendants violated any of the other statutes it references.  Civil Code § 56 addresses "Medical information," which is defined to mean "information ...  regarding a patient's medical history, mental or physical condition, or treatment."  Cal. Civ. Code § 56.06(j).  The CAC alleges that the cyberattack against Anthem involved names, social security numbers, and the like, CAC ¶ 205, but it does not contain *factual allegations* showing that any medical information was involved, and the conclusory allegation that it was, *id.* ¶ 206, is not entitled to be credited.  *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Similarly, Civil Code § 1798.82 requires disclosure of an information security breach "in the most expedient time possible and without unreasonable delay."  But the CAC does not allege facts to support an allegation that the Anthem Defendants failed to disclose the attack as expediently as possible or that any delays were unreasonable.  *See* CAC ¶ 250.

### 2.     Unfair Conduct

Plaintiff's UCL claim based on allegedly unfair practices also fails.  A business practice is "unfair" within the meaning of the UCL if it

> violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits.  The determination of whether a business practice is unfair involves an examination of that practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer.  In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.

*Nolte v. Cedars Sinai Med. Ctr.*, 236 Cal. App. 4th 1401, 1407-08 (2015), *review denied* (Sept. 9, 2015) (internal quotations omitted).  Here, the CAC fails to allege conduct by the Anthem Defendants that rises to the level of "unfair" practices.  It alleges that Anthem's databases were hacked and member data stolen, CAC ¶¶ 203, 206, and that this was the result of the Anthem Defendants' failure to maintain sufficient security procedures, but it does not allege facts that support the conclusion that Defendants' failure to prevent the cyberattack resulted from immoral, unethical, oppressive, or unscrupulous conduct on Defendants' part.  *See, e.g.*, *Silcox v. State Farm Mut. Auto. Ins. Co.*, NO. 14CV2345 AJB MDD, 2014 WL 7335741, at *5 (S.D. Cal. Dec. 22, 2014) ( "unfair" prong not satisfied where plaintiff alleged misrepresentations but did not

allege facts showing that defendant's conduct was immoral, unethical, or oppressive).

### 3.   Fraudulent Conduct

The CAC contains only conclusory allegations that the Anthem Defendants made deceptive representations and concealed material facts about the status of their data security measures.  CAC ¶ 366(a).  These claims sound in fraud and must be pled with particularity; that requires Plaintiffs to identify the alleged misrepresentations and to adequately allege that they relied on them, or specify material omissions.  *See, e.g.*, *In re Facebook PPC Adver. Litig.*, NO. 5:09-CV-03043-JF, 5:09-CV-03430-JF, 5:09-CV-03519-JF, 2010 WL 3341062, at *12 (N.D. Cal. Aug. 25, 2010) (dismissing UCL claim where plaintiffs failed to identify representations reviewed with particularity); *In re iPhone 4S Consumer Litig.*, NO. C 12-1127 CW, 2013 WL 3829653, at *12-13 (N.D. Cal. July 23, 2013).  The CAC fails to identify any specific misrepresentation or omission made to the named California Plaintiffs, much less allege facts showing that they relied upon or were otherwise injured by such misrepresentation or omission. Thus, the CAC's summary allegations of fraudulent practices fail to state a UCL claim.

## VI.   THE CAC FAILS TO STATE A CLAIM UNDER NEW YORK GENERAL BUSINESS LAW § 349.

To state a claim under New York General Business Law § 349 ("NY GBL"), Plaintiffs must show "(1) that the act, practice or advertisement was consumer-oriented; (2) that the act, practice or advertisement was misleading in a material respect; and (3) that the plaintiff was injured as a result of the deceptive practice, act or advertisement."  *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 525 (S.D.N.Y. 2003).  This requires a showing that defendants' alleged "material deceptive act or practice caused ...  actual ... harm."  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995).  And this "loss must be independent of the loss caused by the alleged breach of contract."  *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009).  The CAC fails to satisfy these requirements.

### A.   Plaintiffs' NY GBL Claim Is Not Independent Of Their Contract Claim.

Plaintiffs' NY GBL claim fails because § 349 "does not apply to breach of contract disputes between private parties."  *Bono v. Monarch Life Ins. Co.*, NO. 05-CV-281S, 2006 WL

839412, at *2-3 (W.D.N.Y. Mar. 27, 2006).  Such private contract disputes "do not affect the consuming public at large," and therefore fail to satisfy the statute's threshold requirement that "the act, practice or advertisement was consumer-oriented."  *Daniels v. Provident Life & Cas. Ins. Co.*, NO. 00-CV-0668E(SC), 2001 WL 877329, at *8 (W.D.N.Y. July 25, 2001); *Oswego Laborers' Local 214 Pension Fund*, 647 N.E.2d at 744 ("[p]rivate contract disputes, unique to the parties ... would not fall within the ambit of [G.B.L. § 349]").  The CAC is devoid of any allegations that the Anthem Defendants' alleged deceptive acts were "consumer-oriented" or directed at the "public at large."  Plaintiffs instead allege that the Anthem Defendants' conduct was directed at individual Plaintiffs with which they were in privity of contract.  These allegations fail to satisfy the NY GBL's threshold requirement.

### B.    The CAC Fails To Allege The New York Plaintiffs Suffered Actual Harm.

Plaintiffs' NY GBL claim also fails because the CAC does not allege facts showing the New York Plaintiffs suffered the type of "actual" harm needed to support a NY GBL claim.  *Oswego Laborers' Local 214 Pension Fund*, 647 N.E.2d at 745.  First, the CAC does not allege any losses "independent of the loss caused by the alleged breach of contract."  *Spagnola*, 574 F.3d at 74.  It alleges that the New York Plaintiffs' alleged injuries flow from the Anthem Defendants' alleged breaches of contract, which purportedly caused the New York Plaintiffs to "suffer[] actual damages resulting from the theft of their Personal Information," including the "imminent risk of suffering additional damages in the future."  CAC ¶ 310.  These broad injuries are not "independent of" the New York Plaintiffs' alleged injuries under the NY GBL claim; they encompass those alleged injuries in full.  *See* CAC ¶ 527.

Second, to the extent the CAC tries to allege an independent injury in the form of a "loss of [the New York Plaintiffs'] legally protected interest in the confidentiality and privacy of their Personal Information," CAC ¶ 527, the NY GBL claim fails because a "loss of privacy" alone is not "sufficient to state an injury" under the statute.  *Sony II*, 996 F. Supp. 2d at 1004.

Third, the only injuries alleged specifically with respect to Plaintiffs Gold and Onderdonk are injuries in the form of time and money spent monitoring their credit.  CAC ¶ 85, 88.  These alleged injuries are insufficient to establish actual harm under the NY GBL.  *See Shafran v.*

1    *Harley-Davidson, Inc.*, NO. 07 CIV. 01365 (GBD), 2008 WL 763177, at *3 (S.D.N.Y. Mar. 20,

2    2008) ("time and expense of credit monitoring" is not an injury the NY GBL remedies).

3         Fourth, Plaintiffs Gates and Cerro's allegedly delayed tax returns also do not constitute

4    "actual" harm under for purposes of the NY GBL.  *Oswego Laborers' Local 214 Pension Fund*,

5    647 N.E.2d at 745; *In re Horizon Healthcare Servs.*, 2015 WL 1472483, at *8 (finding plaintiff

6    was not injured when tax refund was delayed but received).

7         **C.    The CAC Fails To Allege Deceptive Acts That Caused Plaintiffs Harm.**

8         Plaintiffs' NY GBL claim also fails because Plaintiffs have not shown "actual injury

9    *caused by* a materially misleading or deceptive act or practice."  *City of New York v. Smokes-*

10   *Spirits.Com, Inc.*, 911 N.E.2d 834, 839 (N.Y. 2009) (emphasis added).  The CAC does not allege

11   any facts showing the New York Plaintiffs' alleged harm was caused by any actions taken by

12   Empire HealthChoice Assurance d/b/a Empire Blue Cross and Blue Shield ("Empire") or any

13   other Anthem Defendant operating in New York.  Indeed, the CAC is devoid of any allegation

14   that Empire made any statements at all related to data privacy, much less that the New York

15   Plaintiffs saw "the misleading statements of which [Plaintiffs] complain[] before" they enrolled in

16   the Anthem Defendants' health care plans.  *Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F.

17   Supp. 3d 357, 361 (E.D.N.Y. 2014); *Sony II*, 996 F. Supp. 2d at 1005.  The CAC also does not

18   allege facts showing that Empire concealed material facts regarding data privacy, or that Plaintiffs

19   would not have suffered injury if Empire had disclosed any of those facts.  Further, the CAC fails

20   to allege facts showing that Plaintiffs Gates and Cerro's alleged identity theft was "caused by" the

21   cyberattack or even that the cyberattack is the only plausible cause.  *See Resnick*, 693 F.3d at

22   1326 (suggesting that allegations of a mere temporal connection, without more, could not have

23   "survived a motion to dismiss").  Finally, although the CAC alleges that the New York Plaintiffs

24   lost "an opportunity to take steps to protect themselves" from tax fraud due to delayed notice, it

25   does not allege facts showing that an earlier notification would have averted their alleged injuries.

26   *See* CAC ¶¶ 86-87, 251.  Thus, their allegations of delayed notification fail to state a claim.  *See*

27   *Adobe*, 66 F. Supp. 3d at 1218.

28

1

      **D.**     **Plaintiff Gates' Claim Is Preempted By ERISA.**

2

      Plaintiff Gates' NY GBL claim, like his New York unjust enrichment claim, also is

3

preempted by ERISA.  ERISA's expansive statutory scheme preempts "any and all State laws"

4

that "relate to any employee benefit plan."  29 U.S.C. § 1144(a).  Plaintiff Gates' GBL claim

5

"relate[s] to" his ERISA plan because he alleges that Defendants' misrepresentations and

6

omissions concerned their performance with respect to that plan.  *See* CAC ¶ 526 (a, b, c, d).  His

7

NY GBL claim thus seeks "to enforce his rights under the terms of the plan, or to clarify his

8

rights to future benefits under the terms of the plan," and is preempted.  *Bloom ex rel. Estate of*

9

*Bloom v. Cigna Corp.*, NO. 04 CIV. 5729 (MBM), 2004 WL 2793207, at *2 (S.D.N.Y. Dec. 3,

10

2004); *see also Berry v. MVP Health Plan, Inc.*, NO. 1:06-CV-120, 2006 WL 4401478, at *6

11

(N.D.N.Y. Sept. 30, 2006) (finding NY GBL § 349 claim expressly preempted where, as here, the

12

Court had to consider the relevant plan).

13

**VII.**    **PLAINTIFFS' GEORGIA INSURANCE INFORMATION AND PRIVACY PROTECTION ACT CLAIM FAILS.**

14

      **A.**     **The CAC Fails To Allege The Anthem Defendants Disclosed Information.**

15

      Plaintiffs fail to state a claim under the Georgia Insurance Information and Privacy

16

Protection Act because the CAC does not allege facts showing that the Anthem Defendants

17

*disclosed* Plaintiffs' personal information in violation of the statute.  Ga. Code § 33-39-14

18

provides that an insurance institution "shall not *disclose* any personal or privileged information

19

about an individual collected or received in connection with an insurance transaction," unless

20

certain conditions are met.  *Id.* (emphasis added).  The CAC asserts that the Anthem Defendants

21

"disclosed individually-identifiable personal information regarding members of the Georgia

22

Class," but fails to allege any facts to support this claim.  CAC ¶ 801.  The CAC's conclusory

23

statements are insufficient as a matter of law, *Iqbal*, 556 U.S. at 678, and they contradict

24

Plaintiffs' own description of the cyberattack.  The CAC alleges in no uncertain terms that

25

Plaintiffs' personal information was "*stolen*" by a third-party cyberattacker, not that the Anthem

26

Defendants disclosed it to the cyberattacker.  CAC ¶ 206; *see also id.* ¶¶ 224, 226.  A third-

27

party's unauthorized, criminal theft of Plaintiffs' personal information does not amount to

28

improper disclosure by the Anthem Defendants under the Georgia statute. *See Galaria v. Nationwide Mut. Ins. Co.*, 998 F. Supp. 2d 646, 662 (S.D. Ohio 2014) (plaintiff did not allege disclosure where "[c]omplaint alleges the PII was *stolen* from [d]efendant") (emphasis in original); *Willingham v. Global Payments, Inc.*, NO. 1:12-CV-01157-RWS, 2013 WL 440702, at *13 (N.D. Ga. Feb. 5, 2013) (dismissing Fair Credit Reporting Act claim because defendants "did not furnish [p]laintiffs' personal data to hackers"); *Worix v. MedAssets, Inc.*, 857 F. Supp. 2d 699, 703 (N.D. Ill. 2012) (dismissing Stored Communications Act claim related to a third-party's theft of personal information where plaintiff failed to allege defendants improperly divulged information).

**B.    The CAC Does Not Allege Any Disclosure Caused Actual Damages.**

Plaintiffs' claim under the Georgia Insurance Information and Privacy Protection Act also fails because the CAC alleges no facts showing that the named Georgia Plaintiffs sustained "actual damages." Ga. Code Ann. § 33-39-21. It alleges that Plaintiffs Coppedge, Swank, and Lott "spent numerous hours addressing issues arising from" the cyberattack, CAC ¶ 38-39, 41, but lost time, without more, are not the "actual damages" the statute requires. *See Holmes*, 2012 WL 2873892, at *11 (time spent "self-monitoring financial accounts and credit history" insufficient to plead injury). Similarly, while the CAC alleges that someone "fraudulently opened a health insurance policy" in Plaintiff Robert's name, the only injury it alleges with respect to that policy is "time and effort" spent attempting to cancel the policy. CAC ¶ 37. Finally, the CAC alleges someone "attempted to file a false tax return" with respect to Plaintiff Thomas, CAC ¶ 36, but it does not allege that he sustained actual damages as a result of that attempt or that it even delayed his tax refund. *In re Horizon Healthcare Servs.*, 2015 WL 1472483, at *8 (dismissing claim where plaintiff "already received his tax refund").

The CAC further fails to allege facts showing that any actual damages were "sustained ... as a result of a violation" of the Act. Ga. Code Ann. § 33-39-21. Like Plaintiffs' breach of contract, UCL, and NY GBL claims, the CAC fails to allege facts showing a causal link between any disclosure of information and any alleged identity theft. *See* Sections II.B, V.A, and VI.C *supra*. It does nothing more than allege a temporal proximity between the cyberattack and the

1  alleged identity theft, which does not show that any actual damages were caused by the

2  cyberattack.  Thus, the CAC does not show that the Georgia Plaintiffs' alleged damages were

3  "sustained ... as a result of a violation" of the Act, and Plaintiffs' claim should be dismissed.

4  **VIII.   PLAINTIFFS' KENTUCKY DATA BREACH NOTIFICATION CLAIM FAILS.**

5  **A.   Anthem Is Exempt From The Statute.**

6  Plaintiffs' Kentucky Data Breach Notification claim should be dismissed because the

7  Anthem Defendants are statutorily exempt from the data breach statute's notification

8  requirements.  The statute imposes requirements on certain "information holder(s)" to notify "any

9  resident of Kentucky whose unencrypted personal information was ... acquired by an

10  unauthorized person."  Ky. Rev. Stat. Ann. § 365.732(2).  But the statute expressly exempts from

11  its requirements any person who is "subject to the provisions of Title V of the Gramm-Leach-

12  Bliley Act ... or [HIPAA]."  *Id.* § 365.732(8).  The Anthem Defendants are health plans and

13  health care providers subject to HIPAA, 45 C.F.R. § 160.102(a), and they are insurance providers

14  subject to the Gramm-Leach-Bliley Act.  15 U.S.C. §§ 6801(b), 6805(a).  Indeed, the CAC

15  expressly alleges that the Anthem Defendants are subject to both.  CAC ¶ 182 ("Defendants are

16  also entities covered by Gramm-Leach-Bliley."); CAC ¶ 177 ("Defendants are entities covered by

17  HIPAA.").  Accordingly, the Anthem Defendants are exempt from the requirements of Ky. Rev.

18  Stat. Ann. § 365.732, and Plaintiffs' claim for a violation of those requirements fails.

19  **B.   Plaintiffs Lack Standing To Bring A Data Breach Notification Claim.**

20  Plaintiffs' Kentucky data breach notification claim also fails because the Kentucky

21  Plaintiffs lack Article III standing.  A plaintiff must demonstrate standing for each claim he

22  brings by alleging "(1) injury-in-fact that is concrete and particularized, as well as actual or

23  imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3)

24  that the injury is redressable by a favorable ruling."  *Adobe*, 66 F. Supp. 3d at 1211.  The CAC

25  fails to satisfy these requirements with respect to the Kentucky Data Breach Notification claim

26  because it does not allege "any injury resulting from a failure to provide reasonable notification."

27  *Id.* at 1218.  As discussed in Section IV.B *supra*, the Kentucky Plaintiffs' only alleged injuries are

28  costs associated with credit monitoring and lost time spent addressing issues related to the

cyberattack.  The CAC does not allege facts showing that these alleged injuries were caused by a failure to timely notify Plaintiffs of the cyberattack.  It merely states that the Kentucky Plaintiffs received letters from the Anthem Defendants informing them that their personal information may have been compromised.  CAC ¶¶ 60-62.  The CAC does not allege when the Kentucky Plaintiffs received these letters, why the notification timing was unreasonable, or how any delay in notification caused Plaintiffs to incur credit monitoring costs or lost time.  An alleged delay in notification, without more, does not satisfy Article III standing.  *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 695 (7th Cir. 2015); *Antman v. Uber Techs., Inc.*, NO. 3:15-CV-01175-LB, 2015 WL 6123054, at *11 (N.D. Cal. Oct. 19, 2015) (plaintiff lacked Article III standing where he "did not plead injury related to the delay; delay alone is not enough"); *Corona v. Sony Pictures Entm't, Inc.*, NO. 14-CV-09600 RGK EX, 2015 WL 3916744, *8-9 (C.D. Cal. June 15, 2015) (dismissing claims under data breach notification statutes for failure to allege injury resulting from delay).  Because the CAC fails to allege anything more than delay, the Kentucky Data Breach Notification claim should be dismissed.

## IX.   PLAINTIFFS' FEDERAL LAW THIRD-PARTY BENEFICIARY CLAIM SHOULD BE DISMISSED.

For the reasons stated in Section VIII of the Non-Anthem Defendants and Blue Cross Blue Shield Association's Motion to Dismiss, Plaintiffs' third-party beneficiary claim for breach of contract under federal common law fails because FEHBA bars their attempt to assert claims against Defendants under the Federal BCBSA Contract.  It likewise bars any attempt by Plaintiffs enrolled under a Federal Employee health plan to assert state law claims against Defendants relating to the plan.

## CONCLUSION

For all the foregoing reasons, Anthem Defendants respectfully request that the Court grant their motion to dismiss Plaintiffs' claims.

Respectfully submitted,

**HOGAN LOVELLS US LLP**
CRAIG A. HOOVER
E. DESMOND HOGAN
PETER R. BISIO
ALLISON M. HOLT

Dated:  November 23, 2015          By: /s/ Craig A. Hoover

Craig A. Hoover (SBN 113965)
craig.hoover@hoganlovells.com
E. Desmond Hogan (admitted *pro hac vice*)
desmond.hogan@hoganlovells.com
Peter R. Bisio (admitted *pro hac vice*)
peter.bisio@hoganlovells.com
Allison M. Holt (admitted *pro hac vice*)
allison.holt@hoganlovells.com
555 Thirteenth Street, NW
Washington, DC 20004-1109
Telephone:     (202) 637-5600
Facsimile:     (202) 637-5910

Michael Maddigan (SBN 163450)
michael.maddigan@hoganlovells.com
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone:     (310) 785-4600
Facsimile:     (310) 785-4601

Maren J. Clouse (SBN 228726)
maren.clouse@hoganlovells.com
4085 Campbell Ave., Suite 100
Menlo Park, CA 94025
Telephone:     (650) 463-4000
Facsimile:     (650) 463-4199

*Attorneys for Defendants Anthem, Inc., Blue Cross and*
*Blue Shield of Georgia, Inc., Blue Cross Blue Shield*
*Healthcare Plan of Georgia, Inc., Anthem Insurance*
*Companies, Inc., Blue Cross of California, Anthem Blue*
*Cross Life and Health Insurance Company, Rocky*
*Mountain Hospital and Medical Service, Inc., Anthem*
*Health Plans, Inc., Anthem Health Plans of Kentucky,*
*Inc., Anthem Health Plans of Maine, Inc., HMO*
*Missouri, Inc., RightCHOICE Managed Care, Inc.,*
*Healthy Alliance Life Insurance Company, Anthem*
*Health Plans of New Hampshire, Inc., Empire*
*HealthChoice Assurance, Inc., Community Insurance*
*Company, Anthem Health Plans of Virginia, Inc.,*
*HealthKeepers, Inc., Blue Cross Blue Shield of*
*Wisconsin, Compcare Health Services Insurance*
*Corporation, Amerigroup Services, Inc., HealthLink,*
*Inc., UniCare Life & Health Insurance Company,*
*Caremore Health Plan, The Anthem Companies, Inc.,*

*and The Anthem Companies of California, Inc.*
*(collectively "The Anthem Defendants")*

**TROUTMAN SANDERS LLP**
CHAD R. FULLER

Dated:  November 23, 2015          By: /s/ Chad R. Fuller

Chad R. Fuller (SBN 190830)
chad.fuller@troutmansanders.com
11682 El Camino Real, Suite 400
San Diego, CA 92130
Telephone:     (858) 509-6056
Facsimile:      (858) 509-6040

*Attorney for The Anthem Defendants*

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
JOHN D. MARTIN
LUCILE H. COHEN

Dated:  November 23, 2015          By: /s/ John D. Martin

John D. Martin (admitted *pro hac vice*)
john.martin@nelsonmullins.com
Lucile H. Cohen (admitted *pro hac vice*)
lucie.cohen@nelsonmullins.com
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone:     (803) 255-9241
Facsimile:      (858) 256-7500

*Attorneys for The Anthem Defendants*