Craig A. Hoover, SBN 113965
E. Desmond Hogan (admitted *pro hac vice*)
Peter R. Bisio (admitted *pro hac vice*)
Allison M. Holt (admitted *pro hac vice*)
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, NW
Washington, DC 20004
Tel:  (202) 637-5600
Fax:  (202) 637-5910
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com
peter.bisio@hoganlovells.com
allison.holt@hoganlovells.com

Michael M. Maddigan,  SBN 163450
**HOGAN LOVELLS US LLP**
1999 Avenue of the Stars,  Suite 1400
Los Angeles, CA 90067
Tel: (310) 785-4600
Fax: (310) 785-4601
michael.maddigan@hoganlovells.com

*Attorneys for Certain Non-Anthem Defendants*
Additional Defendants and Defendants' Counsel Listed on
Signature Page

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE ANTHEM, INC. DATA BREACH LITIGATION | Case No.  5:15-MD-02617-LHK |
| | **NON-ANTHEM DEFENDANTS AND BLUE CROSS BLUE SHIELD ASSOCIATION'S NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |
| | The Honorable Lucy H. Koh |
| | Date:         February 4, 2016<br>Time:         1:30 p.m.<br>Courtroom:   8, 4th Floor |

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** defendants Blue Cross and Blue Shield of Alabama, Blue Cross and Blue Shield of Arizona, Inc., USAble Mutual Insurance Company, d/b/a Arkansas Blue Cross and Blue Shield and BlueAdvantage Administrators of Arkansas, California Physicians' Service d/b/a Blue Shield of California, Blue Cross and Blue Shield of Florida, Inc. d/b/a Florida Blue, CareFirst of Maryland, Inc.,  Blue Cross and Blue Shield of Massachusetts, Inc., Blue Cross and Blue Shield of Michigan, BCBSM, Inc. d/b/a Blue Cross and Blue Shield of Minnesota, Horizon Healthcare Services, Inc., Blue Cross and Blue Shield of North Carolina, Inc., Highmark Inc. f/k/a Highmark Health Services, Highmark West Virginia Inc., BlueCross BlueShield of Tennessee, Blue Cross and Blue Shield of Vermont, Blue Cross and Health Care Service Corporation, a mutual legal reserve Company, d/b/a Blue Cross and Blue Shield of Illinois and Blue Cross and Blue Shield of Texas (collectively, "Non-Anthem Defendants") and defendant Blue Cross Blue Shield Association ("BCBSA") will and hereby do move to dismiss the Plaintiffs' Consolidated Amended Class Action Complaint ("CAC") filed in this matter. Hearing on this motion will be held on February 4, 2016 at 1:30 pm in the Courtroom of the Honorable Lucy H. Koh, located at the Robert F. Peckham Federal Building & United States Courthouse, 280 South First Street, 4th Floor, San Jose, California.

Non-Anthem Defendants and BCBSA bring this motion pursuant to Federal Rules of Civil Procedure 8, 9, 12(b)(1) and 12(b)(6) on the grounds that Plaintiffs lack standing to bring certain claims asserted in the CAC and the CAC fails to state a claim upon which relief can be granted.

Non-Anthem Defendants and BCBSA base this motion on this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the supporting declarations of Catherine Valentin-Andaluz, Dawn Johnson, and Christopher Alworth, and the exhibits filed therewith; the Memorandum of Points and Authorities in Support of the Anthem Defendants' Motion to Dismiss; the complete files and records of this action; and such other matters and arguments as may come before the Court, including those raised in connection with reply briefing and oral argument relating to this Motion.

Dated:  November 23, 2015

By:  /s/ Craig A. Hoover

Craig A. Hoover
*Attorney for Defendants Blue Cross and Blue Shield of Alabama, Blue Cross and Blue Shield of Arizona, Inc., USAble Mutual Insurance Company d/b/a Arkansas Blue Cross and Blue Shield and and BlueAdvantage Administrators of Arkansas, California Physicians' Service d/b/a Blue Shield of California, Blue Cross and Blue Shield of Florida, Inc. d/b/a Florida Blue, CareFirst of Maryland, Blue Cross and Blue Shield of Massachusetts, Inc., Blue Cross and Blue Shield of Michigan, BCBSM, Inc. d/b/a Blue Cross and Blue Shield of Minnesota, Horizon Healthcare Services, Inc., Blue Cross and Blue Shield of North Carolina, Highmark Inc. f/k/a Highmark Health Services, Highmark West Virginia Inc., BlueCross BlueShield of Tennessee, Inc., and Blue Cross and Blue Shield of Vermont*

/s/ Brian P. Kavanaugh

Brian P. Kavanaugh
*Attorney for Defendants The Blue Cross Blue Shield Association and Health Care Service Corporation, a mutual legal reserve Company, d/b/a Blue Cross and Blue Shield of Illinois and Blue Cross and Blue Shield of Texas*

1

## <u>ISSUES PRESENTED</u>

2  1. Whether Plaintiffs' claims should be dismissed as to each Non-Anthem Defendant

3 for which the Consolidated Amended Class Action Complaint ("CAC") does not allege that the

4 Plaintiff(s) asserting such claims was insured by or had any connection to the Non-Anthem

5 Defendant?

6  2. Whether Plaintiffs' breach of contract claim on behalf of the New Jersey Statewide

7 Class should be dismissed because the CAC does not identify any enforceable contractual

8 provisions that Non-Anthem Defendants allegedly breached?

9  3. Whether Plaintiffs' breach of contract claim on behalf of the New Jersey Statewide

10 Class fails because the CAC does not allege facts showing that any alleged breach of contract

11 caused the sole New Jersey Plaintiff any damage?

12  4. Whether Plaintiffs' breach of contract claim on behalf of the New Jersey Statewide

13 Class is barred by the filed rate doctrine to the extent the sole New Jersey Plaintiff seeks damages

14 based on an alleged overpayment of premiums?

15  5. Whether Plaintiffs' negligence claim on behalf of the Indiana Statewide Class

16 should be dismissed because Non-Anthem Defendants did not owe Plaintiffs a common law duty

17 of care under Indiana law?

18  6. Whether Plaintiffs' negligence claim on behalf of the Indiana Statewide Class

19 should be dismissed because the economic loss doctrine bars Plaintiffs' claim?

20  7. Whether Plaintiffs' negligence claim on behalf of the Indiana Statewide Class

21 should be dismissed because the CAC fails to allege facts showing that Non-Anthem Defendants

22 caused Plaintiffs any injury?

23  8. Whether Plaintiffs' unjust enrichment claim on behalf of the New York Statewide

24 Class should be dismissed because the CAC does not allege that any of the New York Plaintiffs

25 had any connection to any Non-Anthem Defendant?

26  9. Whether Plaintiffs' Kentucky Consumer Protection Act claim should be dismissed

27 because the Act cannot be used to support a class action?

28

Hogan Lovells US
LLP
Attorneys At Law

- iii -

NON-ANTHEM DEFENDANTS' MOTION TO DISMISS
Case No. 15-MD-02617-LHK

10.     Whether Plaintiffs' Kentucky Consumer Protection Act claim should be dismissed because the CAC does not allege facts showing that the sole Kentucky Plaintiff who allegedly was enrolled in a Non-Anthem Defendant health plan suffered an "ascertainable loss of money or property" as required by the Act?

11.     Whether Plaintiffs' Kentucky Consumer Protection Act claim should be dismissed because the sole Kentucky Plaintiff who allegedly was enrolled in a Non-Anthem Defendant health plan was not in privity of contract with that Non-Anthem Defendant?

12.     Whether Plaintiffs' Kentucky Consumer Protection Act claim should be dismissed because ERISA preempts the claim of the sole Kentucky Plaintiff who allegedly was enrolled in a Non-Anthem Defendant health plan?

13.     Whether Plaintiffs' California Unfair Competition Law ("UCL") claim should be dismissed because the CAC does not allege facts showing that any violation of the UCL caused the California Plaintiffs who allegedly were enrolled in Non-Anthem Defendant health plans economic injury?

14.     Whether Plaintiffs' UCL claim should be dismissed because the CAC does not allege facts showing that Non-Anthem Defendants engaged in unfair, unlawful, or fraudulent business practices?

15.     Whether Plaintiffs' New York General Business Law § 349 claim should be dismissed because the CAC does not allege that any New York Plaintiff had any connection to any Non-Anthem Defendant?

16.     Whether Plaintiffs' Georgia Insurance Information and Privacy Protection Act claim should be dismissed because the CAC fails to allege facts showing that any Non-Anthem Defendant disclosed any Georgia Plaintiff's personal information?

17.     Whether Plaintiffs' Georgia Insurance Information and Privacy Protection Act claim should be dismissed because the CAC does not allege facts showing that any Georgia Plaintiff suffered damages as the result of any disclosure of personal information?

18.     Whether Plaintiffs' third-party beneficiary claim for breach of contract under federal law should be dismissed because the Federal Employee Health Benefits Act bars Plaintiffs from bringing claims against Non-Anthem Defendants and BCBSA?

19.     Whether any state law claims asserted by Plaintiffs who are enrollees under a Federal Employee health plan are preempted by federal law?

# TABLE OF CONTENTS

Page

ARGUMENT ................................................................................................................. 3

I.  PLAINTIFFS' BREACH OF CONTRACT CLAIM ON BEHALF OF THE NEW
    JERSEY STATEWIDE CLASS FAILS. ............................................................... 3

    A.  The CAC Fails To Identify The Contractual Provisions Allegedly
        Breached ................................................................................................... 4

    B.  The CAC Fails To Show That Any Breach Caused Any Damages. ......... 6

    C.  The Filed Rate Doctrine Bars Plaintiffs' Overpayment Theory of
        Damages. .................................................................................................. 6

II.  PLAINTIFFS' NEGLIENCE CLAIM ON BEHALF OF THE INDIANA
     STATEWIDE CLASS FAILS. ............................................................................. 7

III. PLAINTIFFS' UNJUST ENRICHMENT CLAIM ON BEHALF OF THE NEW
     YORK STATEWIDE CLASS FAILS. .................................................................. 8

IV.  PLAINTIFFS' KENTUCKY CONSUMER PROTECTION ACT CLAIM FAILS. ... 9

V.   PLAINTIFFS' UCL CLAIM FAILS. .................................................................. 10

VI.  THE CAC FAILS TO STATE A CLAIM UNDER NEW YORK GENERAL
     BUSINESS LAW § 349. .................................................................................... 12

VII. PLAINTIFFS' GEORIGA INSURANCE INFORMATION AND PRIVACY
     PROTECTION ACT CLAIM FAILS. ................................................................ 13

VIII. PLAINTIFFS' THIRD-PARTY BENEFICIARY CLAIM FOR BREACH OF
      CONTRACT UNDER FEDERAL LAW SHOULD BE DISMISSED. ................ 13

    A.  Statutory, Regulatory, And Contractual Background Regarding FEHBA
        And The Service Benefit Plan. ................................................................ 14

    B.  OPM Is The Only Party That Can Enforce Contract No. CS 1039.. ...... 16

    C.  The Federal Employee Plaintiffs' State Law Claims Are Preempted ..... 19

CONCLUSION ........................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Adams v. I-Flow Corp.*,
   NO. CV09-09550 R SSX, 2010 WL 1339948 (C.D. Cal. Mar. 30, 2010) ............................. 2

*Am. Pipe & Steel Corp. v. Firestone Tire & Rubber Co.*,
   292 F.2d 640 (9th Cir. 1961)............................................................................................. 20

*Am. Tel. & Tel. Co. v. Cent. Office Tel., Inc.*,
   524 U.S. 214 (1998) ........................................................................................................... 7

*Arnett v. Seaside Transp. Servs., LLC*,
   NO. 13-CV-01672-WHO, 2014 WL 117325 (N.D. Cal. Jan. 13, 2014) ............................... 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................................................... 12

*Botsford v. Blue Cross & Blue Shield of Mont., Inc.*,
   314 F.3d 390 (9th Cir. 2002)...................................................................................... 17, 19

*Brewer v. Portfolio Recovery Assocs.*,
   NO. CIV.A. 1:07CV-113-M, 2007 WL 3025077 (W.D. Ky. Oct. 15, 2007) ................... 9, 10

*Bridges v. Blue Cross & Blue Shield Ass'n*,
   935 F. Supp. 37 (D.D.C. 1996) .................................................................................... passim

*Burgett v. Appalachian Reg'l Healthcare, Inc.*,
   NO. CIV. 6:13-191, 2014 WL 2441235 (E.D. Ky. May 30, 2014) ...................................... 10

*Carlsen v. GameStop, Inc.*,
   NO. CIV. 14-3131 DWF/SER, 2015 WL 3538906 (D. Minn. June 4, 2015).......................... 6

*Clark v. Prudential Ins. Co. of Am.*,
   736 F. Supp. 2d 902 (D.N.J. 2010) ...................................................................................... 7

*Cnty. of Nassau v. Expedia, Inc.*,
   120 A.D.3d 1178 (N.Y. App. Div. 2014)............................................................................... 9

*DeHart v. US Bank, N.A.*,
   811 F. Supp. 2d 1038 (D.N.J. 2011) .................................................................................... 6

*Derusseau v. Bank of Am., N.A.*,
   NO. 11 CV 1766 MMA JMA, 2012 WL 1059928 (S.D. Cal. Mar. 28, 2012) ...................... 11

*Duval Motor Co. v. Dell Fin., LLC*,
   NO. 8:08CV2476T30TGW, 2009 WL 1515628 (M.D. Fla. June 1, 2009) .............................. 4

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW

*Eclectic Prop. East, LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ............................................................................. 12

*El Sobrante Dev., LLC v. Nat'l Assur. Grp.*,
   NO. 1:08-CV-00455, 2010 WL 3171422 (E.D. Cal. Aug. 11, 2010) ...................... 7

*Empire HealthChoice Assurance, Inc. v. McVeigh*,
   547 U.S. 677 (2006) .......................................................................................... 15

*Gauvin v. Trombatore*,
   682 F. Supp. 1067 (N.D. Cal. 1988) ..................................................................... 2

*Hayes v. Prudential Ins. Co.*,
   819 F.2d 921 (9th Cir. 1987) ............................................................................. 17

*Helfrich v. Blue Cross & Blue Shield Ass'n*,
   804 F.3d 1090 (10th Cir. 2015) .......................................................................... 20

*Holmes v. Countrywide Fin. Corp.*,
   NO. 5:08-CV-00205-R, 2012 WL 2873892 (W.D. Ky. July 12, 2012) ........... 10, 13

*In re Science App. Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
   45 F. Supp. 3d 14 (D.D.C. 2014) ......................................................................... 6

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
   865 F. Supp. 2d 1002 (C.D. Cal. 2011) .............................................................. 12

*Jackson v. Ocwen Loan Serv.*,
   LLC, NO. 11-60560-CIV, 2012 WL 882493 (S.D. Fla. Mar. 14, 2012) ................ 6

*Kelley v. Metro. Life Ins. Co.*,
   NO. 13-61864-CIV, 2013 WL 5797367 (S.D. Fla. Oct. 28, 2013) ........................ 5

*Kight v. Kaiser Found. Health Plans of Mid-Atlantic States, Inc.*,
   34 F. Supp. 2d 334 (E.D. Va. 1999) .............................................................. 15, 20

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ........................................................................... 14

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) ....................................................................................... 11

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ............................................................................. 14

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ................................................................ 6

*Luso Fuel, Inc. v. BP Prods. N. Am., Inc.*,
   NO. CIV.A. 08-CV-3947DMC, 2009 WL 1873583 (D.N.J. June 29, 2009) .......... 5

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW

- viii -

NON-ANTHEM DEFENDANTS' MOTION TO DISMISS
Case No. 15-MD-02617-LHK

*Magnum LTL, Inc. v. CIT Grp./Bus. Credit, Inc.*,
   NO. CIV A 208CV05345 WJM, 2009 WL 1025550 (D.N.J. Apr. 16, 2009) ......................... 4

*Mandarin Trading Ltd. v. Wildenstein*,
   16 N.Y.3d 173 (N.Y. 2011).................................................................................................... 9

*Misc. Serv. Workers v. Philco-Ford Corp.*,
   661 F.2d 776 (9th Cir. 1981)............................................................................................ 17, 18

*Mitchell v. C & S Wholesale Grocers, Inc.*,
   NO. CIV.A. 10-2354 (JLL), 2010 WL 2735655 (D.N.J. July 8, 2010).................................. 5

*New SD, Inc. v. Rockwell Int'l Corp.*,
   79 F.3d 953 (9th Cir. 1996).................................................................................................. 20

*Parrino v. FHP, Inc.*,
   146 F.3d 699 (9th Cir. 1998)................................................................................................ 14

*Pierce v. State Farm Mut. Auto. Ins. Co.*,
   NO. 14-22691-CIV, 2014 WL 7671718 (S.D. Fla. Dec. 16, 2014)......................................... 4

*Skypala v. Mortg. Elec. Registration Sys., Inc.*,
   655 F. Supp. 2d 451 (D.N.J. 2009) ........................................................................................ 5

*Smith v. Trusted Univ. Standards in Elec. Transactions, Inc.*,
   NO. CIV09-4567RBKKMW, 2010 WL 1799456 (D.N.J. May 4, 2010)................................... 5

*Vargas v. JP Morgan Chase Bank, N.A.*,
   NO. 5:14-CV-00859-ODW, 2014 WL 3435628 (C.D. Cal. July 11, 2014) ......................... 12

*Warren v. Fox Family Worldwide, Inc.*,
   328 F.3d 1136 (9th Cir. 2003).............................................................................................. 14

*Weinberg v. Sprint Corp.*,
   801 A.2d 281 (N.J. 2002)........................................................................................................ 7

*Young v. Facebook, Inc.*,
   790 F. Supp. 2d 1110 (N.D. Cal. 2011) ................................................................................. 4

**STATUTES**

5 U.S.C. § 8901 .......................................................................................................................... 14

5 U.S.C. § 8902 ............................................................................................................... 14, 15, 17

5 U.S.C. § 8903 .......................................................................................................................... 14

5 U.S.C. § 8910 .......................................................................................................................... 15

5 U.S.C. § 8912 .................................................................................................................... 16, 19

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW

NON-ANTHEM DEFENDANTS' MOTION TO DISMISS
Case No. 15-MD-02617-LHK

5 U.S.C. § 8913 .................................................................................................... 14, 15

Ga. Code Ann. § 33-39-21 ....................................................................................... 13

Ky. Rev. Stat. Ann. § 367.220 ................................................................................... 9

N.J. Stat. Ann. § 17B:26-1 ........................................................................................ 7

N.Y. Gen. Bus. Law § 349 .................................................................................. 3, 12

**REGULATIONS**

5 C.F.R. § 890.105 ............................................................................................. 15, 16

5 C.F.R. § 890.107 ....................................................................................... 15, 16, 19

48 C.F.R. Ch. 16 ..................................................................................................... 15

48 C.F.R. § 1609.7001 ............................................................................................ 15

48 C.F.R. § 1652.204-70 ......................................................................................... 19

48 C.F.R. § 1652.222-70 .................................................................................... 15, 16

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Plaintiffs in this centralized multidistrict litigation assert various claims against certain Blue Cross and Blue Shield entities that are not affiliated with Anthem, Inc. (collectively, "Non-Anthem Defendants") and one claim against the Blue Cross Blue Shield Association ("BCBSA"), all stemming from a criminal cyberattack against Anthem, Inc. ("Anthem") that Anthem announced on February 4, 2015.  All eight of the claims in the Consolidated Amended Class Action Complaint ("CAC") that are asserted against Non-Anthem Defendants and that are the subject of motion to dismiss briefing, including the sole claim that also is asserted against BCBSA, should be dismissed because the CAC fails to allege any facts showing that any Non-Anthem Defendant or BCBSA breached any duty or did anything that injured Plaintiffs in connection with the Anthem cyberattack.[1]

Indeed, the CAC is almost devoid of any factual allegations regarding what Non-Anthem Defendants and BCBSA supposedly did or did not do that allegedly injured Plaintiffs.  This is amply demonstrated by the CAC's complete failure to allege any facts regarding *ten* Non-Anthem Defendants with respect to any of the eight claims that are the subject of this Motion.  Specifically, *none* of the named Plaintiffs asserting those eight claims alleges that they were insured by or had any other connection whatsoever with (1) Blue Cross and Blue Shield of Alabama; (2) Blue Cross and Blue Shield of Arizona, Inc.; (3) CareFirst of Maryland, Inc.; (4) Blue Cross and Blue Shield of Michigan; (5) Blue Cross and Blue Shield of North Carolina, Inc.; (6) Highmark Inc. f/k/a Highmark Health Services; (7) Highmark West Virginia Inc.; (8) BlueCross BlueShield of Tennessee, Inc.; (9) Blue Cross and Blue Shield of Vermont; or (10) Health Care Service Corporation, a mutual legal reserve Company, d/b/a Blue Cross and Blue Shield of Illinois.  *See, e.g.*, CAC ¶¶ 15-24 (California Plaintiffs), 36-41 (Georgia Plaintiffs), 48-56 (Indiana Plaintiffs), 60-62 (Kentucky Plaintiffs), 83 (New Jersey Plaintiff), 85-88 (New York

---

[1] Pursuant to the Court's Case Management Order (Dkt. 366), Defendants are only moving to dismiss ten of the claims in the CAC.  The two other claims that are the subject of motion to dismiss briefing—the breach of contract claim against Anthem and Anthem affiliates on behalf of the California Statewide Class and the Kentucky Data Breach Notification claim—are not asserted against Non-Anthem Defendants.  *See* CAC ¶¶ 302-11, 423-30.  Thus, those claims are not addressed herein.

Plaintiffs), 24, 29, 49, 80 (Federal Employee Plaintiffs).  Accordingly, all eight of the claims asserted against these ten Non-Anthem Defendants can and should be dismissed for failure to state a claim against them on that basis alone.  *See, e.g.*, *Adams v. I-Flow Corp.,* NO. CV09-09550 R SSX, 2010 WL 1339948, at *3 (C.D. Cal. Mar. 30, 2010); *Gauvin v. Trombatore,* 682 F. Supp. 1067, 1071 (N.D. Cal. 1988).

Further, not one of the 98 named Plaintiffs in the CAC alleges that he or she was insured by or had any connection with three of these Non-Anthem Defendants—Blue Cross and Blue Shield of Arizona, Inc., BlueCross BlueShield of Tennessee, Inc., and Highmark West Virginia Inc.  Thus, ***all*** of the claims in the CAC should be dismissed as to these three Non-Anthem Defendants for failure to state a claim.

Each of the eight claims also suffers from other fundamental defects, many of which are identified in the Anthem Defendants' Memorandum of Points and Authorities ("Anthem Br."), which Non-Anthem Defendants incorporate by reference.  These defects include, but are not limited to, the following.

First, Plaintiffs' breach of contract claim on behalf of the New Jersey Statewide Class should be dismissed because the CAC fails to identify any contractual provisions that allegedly were breached and fails to allege facts showing that the sole New Jersey Plaintiff asserting that claim suffered any damages.  The New Jersey breach of contract claim also is barred by the filed rate doctrine to the extent it is predicated on a theory that the New Jersey Plaintiff paid too much for her health plan.

Second, Plaintiffs' negligence claim on behalf of the Indiana Statewide Class fails because the Non-Anthem Defendants did not owe Plaintiffs a common law duty of care under Indiana law, and the economic loss doctrine bars Plaintiffs' claim.  Further, the CAC fails to allege facts showing that Plaintiffs' alleged injuries were caused by Non-Anthem Defendants.

Third, Plaintiffs' unjust enrichment claim on behalf of the New York Statewide Class should be dismissed because none of the New York Plaintiffs alleges any connection whatsoever to any Non-Anthem Defendant.

1    <u>Fourth</u>, Plaintiffs' Kentucky Consumer Protection Act claim should be dismissed because

2    the Act does not provide a basis for a class action to be brought.  Further, the CAC does not

3    allege any facts showing that the sole Kentucky Plaintiff who allegedly was enrolled in a Non-

4    Anthem Defendant health plan suffered "an ascertainable loss of money or property" or had

5    privity of contract with any Non-Anthem Defendant as required by the Act.

6    <u>Fifth</u>, Plaintiffs' California Unfair Competition Law ("UCL") claim should be dismissed

7    because the CAC fails to allege any facts showing that any Non-Anthem Defendant violated the

8    UCL or that any such violation caused any California Plaintiff an economic injury.

9    <u>Sixth</u>, Plaintiffs' claim under New York's General Business Law § 349 fails for the same

10   reason their unjust enrichment claim fails:  the CAC does not allege that any New York Plaintiff

11   had any connection to any Non-Anthem Defendant and thus fails to state a claim.

12   <u>Seventh</u>, Plaintiffs' Georgia Insurance Information and Privacy Protection Act claim

13   should be dismissed because the CAC fails to allege facts showing that any Non-Anthem

14   Defendant disclosed any Georgia Plaintiffs' personal information or that any Georgia Plaintiff

15   suffered damages as the result of any such disclosure.

16   <u>Eighth</u>, Plaintiffs' third-party beneficiary claim for breach of contract under federal law

17   fails because Plaintiffs are barred by the Federal Employee Health Benefits Act ("FEHBA") from

18   bringing claims against Non-Anthem Defendants and BCBSA under the Federal BCBSA

19   Contract.

20   For all these reasons, the Court should grant Non-Anthem Defendants' and BCBSA's

21   Motion and dismiss all eight of the claims asserted in the CAC that are the subject of this Motion

22   to Dismiss.

23   ## **ARGUMENT**

24   ## I.    **PLAINTIFFS' BREACH OF CONTRACT CLAIM ON BEHALF OF THE NEW JERSEY STATEWIDE CLASS FAILS.**

25   Plaintiffs' breach of contract claim against Non-Anthem Defendants on behalf of the New

26   Jersey Statewide Class is brought by a single New Jersey Plaintiff, Elizabeth Ames, who alleges

27   that she "was enrolled in a Horizon Blue Cross Blue Shield of New Jersey health plan ... and was

28

previously enrolled in a Blue Cross Blue Shield of Florida health plan." CAC ¶ 83.

Significantly, Plaintiff Ames does not allege that she was enrolled in any other Non-Anthem

Defendant's health plan or had a contract or any other connection whatsoever with any other

Non-Anthem Defendant. Thus, as a threshold matter, the breach of contract claim on behalf of

the New Jersey Statewide Class should be dismissed as to every other Non-Anthem Defendant

because no contract is alleged. *See Magnum LTL, Inc. v. CIT Grp./Bus. Credit, Inc.*, NO. CIV A

208CV05345 WJM, 2009 WL 1025550, at *4 (D.N.J. Apr. 16, 2009) (dismissing breach of

contract claim where no contractual relationship shown); *Duval Motor Co. v. Dell Fin., LLC*, NO.

8:08CV2476T30TGW, 2009 WL 1515628, at *4 (M.D. Fla. June 1, 2009) (same). The breach of

contract claim also should be dismissed as to Horizon Healthcare Services, Inc. d/b/a Horizon

Blue Cross Blue Shield of New Jersey ("Horizon") and Blue Cross and Blue Shield of Florida

d/b/a Florida Blue ("Florida Blue") because (a) the CAC fails to identify the contractual

provisions that allegedly were breached, (b) the CAC fails to allege Plaintiff Ames suffered any

injury, and (c) the filed rate doctrine bars Plaintiff Ames's attempt to recover a portion of the

insurance premiums she allegedly paid.

## A.   The CAC Fails To Identify The Contractual Provisions Allegedly Breached.

Plaintiffs' New Jersey breach of contract claim should be dismissed because the CAC fails

to identify any provisions of Plaintiffs Ames' alleged contracts with Horizon or Florida Blue that

allegedly were breached. Indeed, apart from alleging that such contracts existed (the "health

plans" referenced in CAC ¶ 83), the CAC is devoid of any factual allegations at all regarding her

contracts. Instead, it simply makes the conclusory statement that

> non-Anthem BCBS agreed, among other things: (1) to provide health insurance
> coverage and/or related health services to Plaintiffs and Statewide Class Members
> according to the terms of their health plans; (2) to take reasonable measures to
> protect the security and confidentiality of Plaintiffs' and Statewide Class
> Members' Personal Information; and (3) to protect Plaintiffs' and Statewide Class
> Members' Personal Information in compliance with federal and state laws and
> regulations, including HIPAA, and industry standards.

CAC ¶ 313.a. Vague, conclusory and non-specific allegations like these that do not point to any

contractual terms do not state a breach of contract claim. *See, e.g.*, *Young v. Facebook, Inc.*, 790

F. Supp. 2d 1110, 1117 (N.D. Cal. 2011); *Pierce v. State Farm Mut. Auto. Ins. Co.*, NO. 14-

22691-CIV, 2014 WL 7671718, at *4 (S.D. Fla. Dec. 16, 2014); *Skypala v. Mortg. Elec. Registration Sys., Inc.*, 655 F. Supp. 2d 451, 460 (D.N.J. 2009).

The CAC's allegations regarding privacy policies likewise do not support a breach of contract claim against Horizon or Florida Blue.  Those allegations consist entirely of the following statement:

> Non-Anthem BCBS Defendants made similar promises and representations in their mailed privacy notices and on their websites.  In general, the non-Anthem BCBS Defendants promised to maintain physical, electronic, and procedural safeguards that comply with state and federal law to safeguard individuals' Personal Information.

CAC ¶ 171.  This falls far short of what is needed to state a breach of contract claim for multiple reasons.  First, the allegations are too vague and conclusory to support a breach of contract claim. *See, e.g., Young,* 790 F. Supp. 2d at 1117.  Second, the CAC does not allege any facts showing how any such statements—even if they had been alleged as to Horizon and Florida Blue—were incorporated into the terms of Plaintiff Ames' health plans.  Third, the CAC fails to allege any facts showing that the alleged privacy notices themselves created enforceable contracts.  As the Anthem Defendants argue in their brief, gratuitous promises do not give rise to contractual rights; there must be an offer, acceptance, and consideration, none of which are alleged with respect to Plaintiff Ames.  *See* Anthem Br., Section II.A.; CAC ¶¶ 171, 162-70; *see also Smith v. Trusted Univ. Standards in Elec. Transactions, Inc.*, NO. CIV09-4567RBKKMW, 2010 WL 1799456, at *5, 8 (D.N.J. May 4, 2010) (no consideration); *Kelley v. Metro. Life Ins. Co.*, NO. 13-61864-CIV, 2013 WL 5797367, at *2 (S.D. Fla. Oct. 28, 2013) (no contract formation).

The CAC's allegations regarding implied contract obligations, *see* CAC ¶ 313.c, also are not actionable because the CAC fails to allege facts showing that such contracts were formed, *see Mitchell v. C & S Wholesale Grocers, Inc.*, NO. CIV.A. 10-2354 (JLL), 2010 WL 2735655, at *6 (D.N.J. July 8, 2010), and because they involve the same subject matter as the express contracts Plaintiffs allege were in force.  *See Luso Fuel, Inc. v. BP Prods. N. Am., Inc.*, NO. CIV.A. 08-CV-3947DMC, 2009 WL 1873583, at *3 (D.N.J. June 29, 2009).  Accordingly, to the extent Plaintiffs Ames' breach of contract claim is based on privacy policies or alleged implied contractual obligations, it fails as a matter of law.

1

**B.      The CAC Fails To Show That Any Breach Caused Any Damages.**

2

Plaintiffs' New Jersey breach of contract claim also should be dismissed because the CAC

3

fails to allege facts showing that Plaintiff Ames suffered any damages as a result of the Anthem

4

cyberattack.  The sole allegation in the CAC regarding Plaintiff Ames' damages is that, "[a]s a

5

result of the Anthem breach, Ms. Ames has spent numerous hours addressing issues arising from

6

the Anthem data breach."  CAC ¶ 83.  This is not enough to state a breach of contract claim.  *See,*

7

*e.g.*, *DeHart v. US Bank, N.A.*, 811 F. Supp. 2d 1038, 1047 (D.N.J. 2011) (dismissing breach of

8

contract claim where plaintiff alleged he was overcharged, but did not allege he paid the charge);

9

*Jackson v. Ocwen Loan Serv.*, LLC, NO. 11-60560-CIV, 2012 WL 882493, at *5 (S.D. Fla. Mar.

10

14, 2012) (dismissing breach of contract claim where plaintiff alleged vague and conclusory

11

injury).

12

The CAC's conclusory allegations regarding other types of alleged injuries also fail to

13

state a breach of contract claim for the reasons discussed in the Anthem Defendants' brief.  *See*

14

Anthem Br., Section II.B.  Specifically, the CAC's allegations regarding "damages to and

15

diminution in value of" Plaintiffs' personal information, CAC ¶ 267(f), fail to state a claim

16

because the CAC fails to allege facts demonstrating that the value of such information has been

17

diminished or that any Plaintiff, much less Plaintiff Ames, ever intended to sell their information

18

for profit.  *See, e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028 (N.D. Cal. 2012).  The

19

CAC's conclusory allegations regarding overpayment of premiums, *see* CAC ¶¶ 267, 309,

20

likewise do not state a claim because Plaintiffs allege no facts showing they could or would have

21

purchased a different policy with purportedly better data security.  *See, e.g.*, *In re Science App.*

22

*Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 30 (D.D.C. 2014); *Carlsen*

23

*v. GameStop, Inc.*, NO. CIV. 14-3131 DWF/SER, 2015 WL 3538906, at *6 (D. Minn. June 4,

24

2015).

25

**C.      The Filed Rate Doctrine Bars Plaintiffs' Overpayment Theory of Damages.**

26

Plaintiffs' New Jersey breach of contract claim also is barred by the filed rate doctrine to

27

the extent it seeks damages based on the allegation that Plaintiff Ames paid too much in

28

premiums.  The filed rate doctrine bars claims for monetary relief "premised on state contract

principles ... on which plaintiffs seek to enforce a rate other than the filed rate." *Weinberg v. Sprint Corp.*, 801 A.2d 281, 287 (N.J. 2002); *see also Am. Tel. & Tel. Co. v. Cent. Office Tel., Inc.*, 524 U.S. 214 (1998) (holding state breach of contract claims barred by filed rate doctrine). The CAC alleges that Plaintiff Ames was "enrolled" in a Horizon health plan "that she purchased independently" from Horizon and for which she "paid premiums on a regular basis." CAC ¶ 83. As required by New Jersey law, the rates applicable for that health plan were filed with the Commissioner of the Department of Banking and Insurance. *See* Declaration of Catherine Valentin-Andaluz in Support of Non-Anthem Defendants' Motion to Dismiss and exhibits thereto; N.J. Stat. Ann. § 17B:26-1 (providing that the Commissioner may disapprove of any filed policy on several grounds including if the benefits are "unreasonable" in relation to the premiums charged). The CAC seeks to enforce a rate different from the filed rate by asserting that Plaintiff Ames "was damaged" by an "overpayment" of premiums because she received services "less valuable than what [she] paid for." CAC ¶ 319. Thus, Plaintiff Ames is seeking a "'remedy requiring a refund of a portion of the filed rate,'" and her overpayment theory "'is barred by application of the filed rate doctrine.'" *Clark v. Prudential Ins. Co. of Am.*, 736 F. Supp. 2d 902, 919-21 (D.N.J. 2010) (citation omitted) (dismissing quasi-contract claim where damages sought "return of some portion of [plaintiff's] premium payments").

## II.    PLAINTIFFS' NEGLIGENCE CLAIM ON BEHALF OF THE INDIANA STATEWIDE CLASS FAILS.

Of the nine named Plaintiffs asserting a negligence claim on behalf of the Indiana Statewide Class, only two allege any connection to Non-Anthem Defendants: Plaintiff Hunter alleges that he "was enrolled in a Blue Cross Blue Shield of Massachusetts health plan" and Plaintiff Whittaker alleges that she "was enrolled in a Blue Cross Blue Shield Administrative of Arkansas health plan." CAC ¶¶ 51, 54. None of the nine Plaintiffs alleges any facts showing how any alleged negligence of any other Non-Anthem Defendant purportedly caused them injury. Thus, the negligence claim on behalf of the Indiana Statewide Class should be dismissed as to all of the other Non-Anthem Defendants on that basis alone. *See, e.g.*, *El Sobrante Dev., LLC v. Nat'l Assur. Grp.*, NO. 1:08-CV-00455, 2010 WL 3171422, at *6 (E.D. Cal. Aug. 11, 2010),

*report and recommendation adopted as modified* 2010 WL 3504912 (E.D. Cal. Sept. 7, 2010) (dismissing negligence claims against individual defendant where allegations of negligence related to other defendants).

The negligence claim also should be dismissed as to Blue Cross and Blue Shield of Massachusetts, Inc. ("BCBSMA") and USAble Mutual Insurance Company, d/b/a Arkansas Blue Cross and Blue Shield and BlueAdvantage Administrators of Arkansas ("BCBSAR") for the same reasons set forth by the Anthem Defendants:

- BCBSMA and BCBSAR did not owe Hunter and Whittaker (or any other Indiana Plaintiff) a common law duty of care. *See* Anthem Br., Section I.A.

- The economic loss doctrine bars Hunter and Whittaker's claims. *See* Anthem Br., Section I.B.

The negligence claim also should be dismissed for an additional reason:  the CAC fails to allege facts showing that Hunter and Whittaker's alleged injuries were proximately caused by BCBSMA and BCBSAR.  Indeed, the CAC is devoid of any specific allegations regarding what these Non-Anthem Defendants supposedly did or did not do.  Plaintiffs' negligence claim rests instead on the generic and conclusory allegations that these "Defendants acted with wanton disregard for the security of Plaintiffs and State Class Members' Personal Information," "knew or should have known that Anthem had inadequate computer systems and data security practices," and "knew or should have known that hackers were attempting to access the Personal Information in health care databases, such as Anthem's."  CAC ¶ 287.  Conclusory allegations like these are insufficient to state a negligence claim, particularly where plaintiffs allege it was Anthem's data system that was attacked, not the system of any Non-Anthem Defendant.  *See, e.g.*, *Arnett v. Seaside Transp. Servs., LLC*, NO. 13-CV-01672-WHO, 2014 WL 117325, at *4 (N.D. Cal. Jan. 13, 2014) (dismissing complaint that did not "clearly identify the conduct of each defendant that would support the various theories of negligence plaintiff is attempting to plead").

## III.  PLAINTIFFS' UNJUST ENRICHMENT CLAIM ON BEHALF OF THE NEW YORK STATEWIDE CLASS FAILS.

Plaintiffs' unjust enrichment claim on behalf of the New York Statewide Class should be

dismissed as to all Non-Anthem Defendants because the CAC does not allege that any of the four New York Plaintiffs have any connection to any Non-Anthem Defendant.  To adequately plead a claim for unjust enrichment, a plaintiff must show that the defendant was enriched at the plaintiff's expense and that "it is against equity and good conscience to permit the [other party] to retain what is sought to be recovered."  *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (N.Y. 2011); *Cnty. of Nassau v. Expedia, Inc.*, 120 A.D.3d 1178, 1180 (N.Y. App. Div. 2014).  Here, Plaintiffs' unjust enrichment claim is premised on the theory that Non-Anthem Defendants were unjustly enriched by "[t]he premiums for health insurance and health benefits services that Plaintiffs and Class Members paid (directly or indirectly) to Defendants ...."  CAC ¶ 353.  But the CAC does not allege that the New York Plaintiffs paid any premiums to any Non-Anthem Defendant.  It only alleges that they paid premiums for Anthem or Empire Blue Cross Blue Shield (an Anthem affiliate) health plans.  *See* CAC ¶¶ 85-88.  Thus, their unjust enrichment claim against Non-Anthem Defendants should be dismissed.  *See Mandarin Trading Ltd.*, 16 N.Y.3d at 182 (dismissing unjust enrichment claim where plaintiff failed to allege a "relationship" between the parties that could have caused "reliance or inducement").

## IV.  PLAINTIFFS' KENTUCKY CONSUMER PROTECTION ACT CLAIM FAILS.

The only Kentucky Plaintiff who alleges any connection to a Non-Anthem Defendant is Frank Bailey, who asserts that he "was enrolled in a Blue Cross Blue Shield Minnesota health plan."  CAC ¶ 62.  Because the CAC fails to allege facts showing any connection between Kentucky Plaintiffs and other Non-Anthem Defendants, Plaintiffs' Kentucky Consumer Protection Act claim should be dismissed as to every other Non-Anthem Defendant.  *See Brewer v. Portfolio Recovery Assocs.*, NO. CIV.A. 1:07CV-113-M, 2007 WL 3025077, at *3 (W.D. Ky. Oct. 15, 2007).  It also should be dismissed against Blue Cross and Blue Shield of Minnesota ("BCBSMN") for the same two reasons it should be dismissed against the Anthem Defendants.  Specifically, the Kentucky Consumer Protection Act does not provide a private right of action for class actions, *see* Anthem Br., Section IV.A, and the CAC does not allege facts showing that Plaintiff Bailey "suffer[ed] any ascertainable loss of money or property" as required by Ky. Rev. Stat. Ann. § 367.220.  *See* Anthem Br., Section IV.B.  Instead, it alleges only that Plaintiff Bailey

1    "spent numerous hours monitoring his accounts and addressing issues arising from the Anthem

2    data breach." CAC ¶ 62.  Thus, it fails to state a claim under the Kentucky Consumer Protection

3    Act. *See Holmes v. Countrywide Fin. Corp.*, NO. 5:08-CV-00205-R, 2012 WL 2873892, at *14

4    (W.D. Ky. July 12, 2012) (time spent monitoring accounts not cognizable injury).

5           The CAC also fails to state a claim under the Kentucky Consumer Protection Act against

6    BCBSMN for two additional reasons.  First, Plaintiff Bailey's "health plan" was a self-insured

7    group plan sponsored by his employer. *See* Declaration of Dawn Johnson in Support of the Non-

8    Anthem Defendants' Motion to Dismiss and exhibits thereto.  BCBSMN only provided certain

9    administrative services to the plan, and its Service Agreement with Plaintiff Bailey's employer

10   expressly provided that employees "are not third party beneficiaries with respect to the

11   obligations of the Parties" regarding data confidentiality.  Johnson Decl., Ex. 2 at 26.  Thus,

12   Plaintiff Bailey was not in "privity of contract" with BCBSMN, and his Kentucky Consumer

13   Protection Act claim fails as a matter of law. *See Brewer*, 2007 WL 3025077, at *3 (dismissing

14   Kentucky Consumer Protection Act claim where plaintiff failed to allege he purchased services

15   from, or was in privity of contract with, the defendant).  Second, to the extent Plaintiff Bailey was

16   in privity of contract with BCBSMN, then ERISA would preempt his Kentucky Consumer

17   Protection Act claim because it would "relate to" his ERISA group plan. *Burgett v. Appalachian*

18   *Reg'l Healthcare, Inc.*, NO. CIV. 6:13-191, 2014 WL 2441235, at *5 (E.D. Ky. May 30, 2014)

19   (dismissing claim under statute as preempted by ERISA and noting that "[v]irtually all state law

20   claims relating to an employee benefit plan are preempted by ERISA").

21   **V.     PLAINTIFFS' UCL CLAIM FAILS.**

22          Only two of the ten California Plaintiffs allege any connection to Non-Anthem

23   Defendants:  Plaintiff Blanchard alleges that he was "enrolled in a Blue Cross Blue Shield of

24   Texas health plan" and Plaintiff Brisko alleges that she was "enrolled in a Blue Shield of

25   California health plan."  CAC ¶¶ 22-23.[2]  Because the CAC fails to allege any facts regarding any

26   _____

27   [2] Plaintiff Bronzo alleges that he was enrolled in a "Blue Cross Blue Shield of California health
     plan," CAC ¶ 15, but there is no such entity.  Blue Cross of California and Blue Shield of
     California are separate entities—the former is an Anthem affiliate and the latter is not—and
28   Plaintiffs have named both of those entities as Defendants.  They have not named "Blue Cross
     Blue Shield of California" as a defendant because no such entity exists.

1   other Non-Anthem Defendant, Plaintiffs' UCL claim against the other Non-Anthem Defendants

2   should be dismissed.  *See, e.g.*, *Derusseau v. Bank of Am., N.A.*, NO. 11 CV 1766 MMA JMA,

3   2012 WL 1059928, at *9 (S.D. Cal. Mar. 28, 2012) (dismissing UCL claims because complaint

4   "fails to allege sufficient facts to support any identifiable wrongdoing by specific Defendants").

5          Plaintiffs' UCL claim against Blue Cross Blue Shield of Texas and Blue Shield of

6   California also should be dismissed for three separate and independent reasons.  First, the CAC

7   does not allege facts showing that these Non-Anthem Defendants' alleged violations of the UCL

8   caused Blanchard or Brisko an injury sufficient to confer standing under the UCL for the reasons

9   discussed by the Anthem Defendants.  *See* Anthem Br., Section V.A.[3]

10          Second, the CAC fails to plead the element of causation necessary to state a UCL claim

11   with respect to Plaintiff Blanchard for an additional reason.  *See Kwikset Corp. v. Superior Court*,

12   51 Cal. 4th 310, 322-23 (2011) (UCL plaintiff must "show that that economic injury was the

13   result of, i.e. *caused by*, the unfair business practice ... that is the gravamen of the claim").  The

14   CAC alleges that Plaintiff Blanchard spent "over 60 hours" allegedly addressing credit card and

15   related fraud on accounts opened, or attempted to be opened, in his name.  CAC ¶ 22.  Not only is

16   that not a sufficient injury under the UCL, *see supra*, but the CAC does not allege that it was ***his***

17   "Personal Information" that was compromised in the Anthem cyberattack.  Rather, the CAC

18   alleges that Plaintiff Blanchard's wife—who is not a named Plaintiff—received notice that ***her***

19   "Personal Information may have been compromised."  *Id.*  The CAC does not allege that Plaintiff

20   Blanchard's wife was the victim of any fraud as a result of the cyberattack, let alone facts

21   showing that he (or she) personally suffered any recognizable injury as the result of the potential

22   compromise of his wife's information.

23          Third, the CAC contains only conclusory allegations regarding what Blue Cross Blue

24   Shield of Texas and Blue Shield of California supposedly did or did not do that violated the UCL.

25

26   ―――――――――――
[3] The CAC alleges various acts of identity theft relating to Plaintiff Blanchard, but it does not allege that he actually lost money or property, and the "over 60 hours" he allegedly spent

27   "addressing issues arising from the Anthem data breach" do not support a UCL claim.  CAC ¶ 22; *see* Anthem Br., Section V.A (time spent mitigating risk of identity theft not a cognizable injury

28   under the UCL).  The CAC similarly alleges identity theft relating to Plaintiff Brisko, but does not allege that any money was stolen from her.  *See* CAC ¶ 23; Anthem Br., Section V.A.

1
2
3
4
5
6
7
8
9
10
11
12

The CAC alleges that these Non-Anthem Defendants "collected and received" Plaintiffs Blanchard and Brisko's "Personal Information, which Anthem maintained in its database."  CAC ¶¶ 22-23.  Beyond that, the only allegations supporting Plaintiffs' UCL claim against Non-Anthem Defendants are conclusory and generic allegations about "Defendants" or "Non-Anthem BCBS" as a group.  *See, e.g.*, CAC ¶¶ 171, 366.  That is not enough to state a claim against any Non-Anthem Defendant.  *See, e.g.*, *Vargas v. JP Morgan Chase Bank, N.A.*, NO. 5:14-CV-00859-ODW, 2014 WL 3435628, at *5 (C.D. Cal. July 11, 2014) (denying UCL claims against multiple defendants based on "'lump' or 'group' pleading").  The deficiencies in this approach are highlighted by Plaintiffs' allegations that Blue Cross Blue Shield of Texas and Blue Shield of California can be held liable under the fraudulent prong of the UCL.  CAC ¶ 366.  The CAC does not identify a single communication by either Non-Anthem Defendant that allegedly was fraudulent, much less that Blanchard or Brisko saw or relied upon such communication.

13

## VI.     THE CAC FAILS TO STATE A CLAIM UNDER NEW YORK GENERAL BUSINESS LAW § 349.

14
15
16
17
18
19
20
21
22
23
24
25
26
27

Plaintiffs' claim under New York General Business Law § 349 fails as to every Non-Anthem Defendant because, as discussed above in connection with Plaintiffs' unjust enrichment claim, none of the New York Plaintiffs alleges any connection whatsoever to any Non-Anthem Defendant.  Thus, the CAC does not allege any facts showing that any Non-Anthem Defendant made any statement to any New York Plaintiff, let alone a materially false statement that allegedly caused injury.  *See In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1050 (C.D. Cal. 2011) (dismissing claim against "UHG Defendants" where complaint failed to allege they "made any statements to Plaintiffs, let alone any materially false statements that caused them injury").  Plaintiffs' "[]threadbare" assertion that "Non-Anthem BCBS engaged in deceptive, unfair, and unlawful trade acts or practices," CAC ¶ 526, falls far short of a "plausible claim for relief" that can survive a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Eclectic Prop. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014).  Thus, Plaintiffs' New York General Business Law § 349 claims should be dismissed.

28

## VII. PLAINTIFFS' GEORGIA INSURANCE INFORMATION AND PRIVACY PROTECTION ACT CLAIM FAILS.

The single Georgia Plaintiff who alleges any connection to a Non-Anthem Defendant, Lauren Roberts, asserts that she "was enrolled in a Blue Cross Blue Shield of Minnesota health plan." CAC ¶ 37. The CAC therefore fails to state a claim under the Georgia Insurance Information and Privacy Protection Act against any other Non-Anthem Defendant. Plaintiffs' claim against BCBSMN also should be dismissed for the same two reasons that their claim against the Anthem Defendants fails.

First, the CAC does not allege that BCBSMN disclosed Plaintiff Roberts's information to anyone. It alleges that third-party cyberattackers "stole[]" Plaintiffs' personal information. CAC ¶ 206; *see also id.* ¶¶ 224, 226. As the Anthem Defendants explain, a third-party's unauthorized, criminal theft does not amount to an improper "disclosure" under the Act. *See* Anthem Br., Section VII. Further, the CAC does not even allege that BCBSMN was the source of the information that was stolen from Anthem. It alleges that both "Blue Cross Blue Shield of Minnesota *and* Anthem collected and received Ms. Roberts's Personal Information, which Anthem maintained in its database." CAC ¶ 37 (emphasis added).

Second, the CAC does not allege facts showing that any alleged disclosure caused Plaintiff Roberts to sustain "actual damages" as required by the Act. *See* Ga. Code Ann. § 33-39-21; *see* Anthem Br., Section VII.B. Plaintiff Roberts alleges that someone "fraudulently opened a health insurance policy in her name" and that she spent "significant time and effort attempting to cancel the fraudulent policy," CAC ¶ 37. She also alleges that she pays "$180 annually for identity theft and credit monitoring services." *Id.* Lost time and credit monitoring expenses like those alleged by Plaintiff Roberts do not constitute "actual damages" that can support a claim under the Act. *See Holmes*, 2012 WL 2873892, at *11.

## VIII. PLAINTIFFS' THIRD-PARTY BENEFICIARY CLAIM FOR BREACH OF CONTRACT UNDER FEDERAL LAW SHOULD BE DISMISSED.

Count VI is brought by Plaintiffs Alvin Lawson, Ralph Staffieri, Stella Williams, and David Ifversen (the "Federal Employee Plaintiffs"), who are all alleged to be federal employees or, in Mr. Lawson's case, the spouse of a federal employee. *See* CAC ¶¶ 24, 29, 49, 80, 332. The

Federal Employee Plaintiffs allege that BCBSA and other Defendants breached the data security and confidentiality provisions of a federal government contract between BCBSA and the U.S. Office of Personnel Management ("OPM").  *Id.* ¶¶ 332-36.  The Federal Employee Plaintiffs maintain that they are intended third party beneficiaries of the federal contract and entitled to sue for a breach of its terms.  *Id.* ¶ 339.  Regardless of whether they are intended third party beneficiaries, the Federal Employee Plaintiffs cannot sue over a purported breach of the OPM-BCBSA contract.  Instead, OPM has exclusive authority to enforce the contract.

### A.   Statutory, Regulatory, And Contractual Background Regarding FEHBA And The Service Benefit Plan.

*The Federal Employees Health Benefits Act*.  The OPM-BCBSA contract at issue was entered into pursuant to the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901-14.  Congress enacted FEHBA in 1959 to provide health benefits for federal employees and annuitants and their dependents.  CAC ¶ 172.  Instead of selecting one insurer for this purpose, it vested a government agency—OPM—with broad discretion to establish insurance plans with many different insurers, which are known under the FEHBA program as "carriers."  *See* 5 U.S.C. §§ 8901(7), 8902-03, 8913.

*The Service Benefit Plan*.  One such plan is the nationwide Service Benefit Plan.  *See* 5 U.S.C. § 8903(1); CAC ¶ 172.  The Service Benefit Plan is formed, pursuant to FEHBA, by a federal government contract—Contract No. CS 1039—between OPM and BCBSA.  CAC ¶ 172; *see generally* Contract No. CS 1039.  Supporting Declaration of Christopher Alworth, Ex. 1.[4]  In entering into Contract No. CS 1039, BCBSA acts on behalf of local BCBSA licensees (including Anthem BCBS Affiliates and non-Anthem BCBS entities) that insure the Plan and administer it in

---

[4] Exhibit 1 to the Alworth Declaration is the 2013 version of Contract No. CS 1039.  That version, along with annual amendments thereto, was the operative contract governing the Service Benefit Plan in 2014 and 2015, when the alleged cyber attack occurred.  *See* CAC ¶ 1.  The 2014 and 2015 annual amendments are attached as Exhibits 2 and 3 to the Alworth Declaration.  The CAC specifically references Contract No. CS 1039, and the crux of Count VI is that Defendants are liable for purportedly breaching that contract.  *See, e.g.*, CAC ¶¶ 172, 332-36.  Because Contract No. CS 1039 is referenced in and integral to the CAC, it can be considered in connection with a motion to dismiss under Rule 12(b)(6).  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998)).

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW

their respective localities.  *See* CAC ¶¶ 172, 332; Contract No. CS 1039 § 4.3.

*OPM's Exclusive Authority Over FEHBA Contracts.*  Under FEHBA, OPM is vested with sole authority to contract for the provision of health plans and to determine the benefit structure of each plan.  *See* 5 U.S.C. §§ 8902(a), (d).  Among other things, OPM promulgates the official description of a plan's terms in a "Statement of Benefits."  *See* 5 U.S.C. § 8902(d).  The Statement of Benefits is incorporated into the government contract between OPM and BCBSA. *See* Contract CS 1039 § 2.2(a); *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 684 (2006).[5]

Congress gave OPM the authority to decide disputes over FEHBA benefits (*see* 5 U.S.C. § 8902(j)), and pursuant to that authority, OPM has established a mandatory administrative remedy for an enrollee, including a review of the dispute by OPM followed potentially by court review of OPM's decision.  *See* 5 C.F.R. §§ 890.105, 890.107(c), (d)(1).  Through separate provisions of FEHBA, Congress also delegated to OPM the exclusive authority to police the conduct, policies, and practices of FEHBA carriers, and OPM has promulgated extensive regulations on the topic.  *See* 5 U.S.C. §§ 8902(e), 8910, 8913(a); 48 C.F.R. Ch. 16; *see also Bridges v. Blue Cross & Blue Shield Ass'n*, 935 F. Supp. 37, 42-43 (D.D.C. 1996); *Kight v. Kaiser Found. Health Plans of Mid-Atlantic States, Inc.*, 34 F. Supp. 2d 334, 342 (E.D. Va. 1999).  For example, OPM has the authority to penalize a carrier and to order appropriate corrective action any time the carrier fails to "perform the contract in accordance with prudent business practices" (which includes "[c]ompliance with the terms of the FEHB contract, regulations and statutes") or engages in "[a] pattern of poor conduct."  48 C.F.R. §§ 1609.7001(b), (b)(3), (c).

OPM's regulations specifically give OPM the right to take action against the carrier "to protect the interest of Members," *i.e.*, enrollees in the Service Benefit Plan such as the Federal Employee Plaintiffs.  48 C.F.R. § 1652.222-70(b).  Anytime OPM learns of a "Significant Event" (which is defined as "any occurrence or anticipated occurrence that might reasonably be expected

---

[5]  The 2014 and 2015 Statements of Benefits for the Service Benefit Plan are attached as Exhibits 4 and 5 to the Alworth Declaration and are referred to hereafter as the "2014 Statement of Benefits" and the "2015 Statement of Benefits."

1  to have a material effect upon the Carrier's ability to meet its obligations under this contract," *id.*

2  § 1652.222-70(a)), OPM has the right, among other things, to direct "the Carrier to take

3  corrective action," advise enrollees "of the Significant Event and provid[e] them an opportunity

4  to transfer to another [FEHBA] plan," withhold financial payments otherwise due to the carrier,

5  or terminate the contract.  *Id.* §§ 1652.222-70(b)(1), (3), (4), (6).  Contract No. CS 1039 itself

6  contains identical provisions.  *See* Contract No. CS 1039 § 1.10; *see also id.* § 1.12(a) (providing

7  OPM with similar remedies to be used as OPM "deems necessary to protect the interests of

8  Members").

9       OPM's regulations allow for "[c]ourt review" of a broad range of disputes under FEHBA.

10  5 C.F.R. § 890.107.  This includes disputes over enrollment, "dissatisfaction with the OPM's

11  resolution of a specific claims dispute," or "dissatisfaction with the OPM's general programmatic

12  decisions."  *Bridges*, 935 F. Supp. at 42; *see also* 5 C.F.R. §§ 890.107(a), (b), (c).  Such suits

13  "must be brought against" the federal government, *i.e.*, either the employee's federal "employing

14  office" or OPM.  5 C.F.R. §§ 890.107(a), (b), (c).  And, such suits are "limited to the deferential

15  standard of review prescribed in the [Administrative Procedure Act]."  *Bridges*, 935 F. Supp. at

16  42.  Correspondingly, FEHBA opens the courthouse doors to "a civil action or claim against the

17  United States founded on" FEHBA.  5 U.S.C. § 8912.

18       **B.    OPM Is The Only Party That Can Enforce Contract No. CS 1039.**

19       Regardless of whether the Federal Employee Plaintiffs are suing for "benefits" or for

20  something else, their federal breach of contract claims are not permitted under FEHBA's

21  comprehensive administrative regime.  If they are suing for benefits under the FEHBA contract,

22  such claims are expressly barred both by OPM's regulations and the contractual terms.  OPM's

23  regulations provide that the exclusive remedy to challenge a denial of contractual benefits by a

24  carrier is to seek review by OPM and, if that is unsuccessful, to sue OPM.  5 C.F.R.

25  §§ 890.105(e), 890.107(c), (d)(1).  The regulations make clear that a lawsuit over "benefits must

26  be brought against OPM and not against the carrier or carrier's subcontractors."  *Id.* § 890.107(c).

27  The Service Benefit Plan's Statement of Benefits—which, again, is part of the OPM-BCBSA

28  contract—contains the same prohibition on suits against the carrier.  *See* 2014 Statement of

Benefits at 131 ("If you do not agree with OPM's decision, your only recourse is to sue. If you decide to sue, you must file the suit against OPM ..."); 2015 Statement of Benefits at 135 (same). Accordingly, if the Federal Employee Plaintiffs are suing for benefits, those claims are prohibited both by regulation and by contract. They are also preempted by FEHBA's preemption provision, 5 U.S.C. § 8902(m)(1). *See, e.g.*, *Botsford v. Blue Cross & Blue Shield of Mont., Inc.*, 314 F.3d 390 (9th Cir. 2002); *Hayes v. Prudential Ins. Co.*, 819 F.2d 921 (9th Cir. 1987).

If the Federal Employee Plaintiffs are suing for something other than benefits, their claims are no less barred because FEHBA's scheme gives OPM exclusive authority over all aspects of the contractual relationship, not just over benefits. In an analogous situation, the Ninth Circuit held that "[w]here Congress has established a regulatory scheme, the specification thereof normally excludes duplicative judicial jurisdiction," meaning that private parties cannot bring suit. *Misc. Serv. Workers v. Philco-Ford Corp.*, 661 F.2d 776, 780-81 (9th Cir. 1981). *Miscellaneous Service Workers* involved a putative dispute under the Service Contract Act (the "SCA"). The SCA requires that certain government contracts contain "specific provisions establishing minimum wage and fringe benefit levels." *Id.* at 778. The plaintiffs alleged that the compensation and benefits they received from a federal government contractor was not compliant with the requirements of the SCA. *Id.* at 779. Although the Ninth Circuit found that "it is clear that plaintiffs are indeed members of a class for whose especial benefit the statute was passed," they could not sue over an alleged breach because "Congress intended to provide for exclusive administrative enforcement of the SCA." *Id.* at 780. The court's conclusion stemmed largely from the fact that the SCA contemplates that the federal government will enforce the statute and the required contractual provisions, given that a federal official has the authority to "withhold" amounts due under a contract or "to cancel a contract" in the event of a violation. *Id.* at 779. The court concluded that "the legislative scheme inherent in the [SCA] envisions a comprehensive rubric for the protection of federal services workers," leaving no room for a private cause of action by the workers themselves. *Id.* at 780.

Relying on *Miscellaneous Service Workers* and cases like it, another court has held that FEHBA's detailed enforcement regime precludes federal remedies against carriers by parties

NON-ANTHEM DEFENDANTS' MOTION TO DISMISS
Case No. 15-MD-02617-LHK

other than OPM.  *See Bridges*, 935 F. Supp. at 41-43.  In *Bridges*, the plaintiff asserted that those administering the Service Benefit Plan had committed mail fraud by failing to disclose discount arrangements with hospitals and by failing to share those discounts when computing coinsurance for enrollees.  In holding that FEHBA precludes Service Benefit Plan enrollees from bringing RICO and breach of contract claims against BCBSA, the *Bridges* court analogized to a situation where a plaintiff seeks to imply a private right of action from a federal statute, which is the same test the Ninth Circuit used in *Miscellaneous Service Workers*.  *Id*. at 41-42.  The analogy was apt, the court ruled, because FEHBA called for public enforcement through OPM's policing action.  *Id.* at 42.

Applying that test, the court held that "nothing in the FEHBA, nor in its implementing language or legislative history, indicates that the legislature had any intent to allow a civil RICO action to spring out of a violation of the FEHBA, nor would it be consistent with the underlying legislative scheme of the FEHBA to apply such a remedy."  *Id*.  In reaching that conclusion, the court—as did the Ninth Circuit in *Miscellaneous Service Worker*—focused on the facts that Congress charged OPM with administering FEHBA and that OPM has the authority to protect enrollees by policing carriers, including "the power to penalize or debar carriers who violate the terms of their contracts with the OPM."  *Id*. at 42-43.  "[T]he broad enforcement and oversight powers of the OPM established in the statute indicate that the exclusive remedy for an action cognizable under the FEHBA lies under the FEBHA, not under another federal statute."  *Id*. at 41.  And, as was the case in *Miscellaneous Service Workers*, alternative enforcement by the impacted class of individuals was barred even though those individuals were intended beneficiaries of the contract at issue and of the statutory scheme under which the contract was created.  *Id*. at 42; *see also Misc. Serv. Workers*, 661 F.2d at 780.  For the same reasons expressed in *Bridges*, the Federal Employee Plaintiffs' federal breach of contract "claims must be dismissed because the detailed enforcement scheme of the FEHBA leaves no room for" such claims.  *Bridges*, 935 F. Supp. at 43.

As in *Bridges*, an enrollee's only possible cause of action here would lie "[u]nder the FEHBA and the APA" in the form of "a right to challenge the OPM's general programmatic

1  decisions," *i.e.*, OPM's purported failure to "monitor BCBSA closely enough." *Id.* at 45. Such

2  an action could only be brought once OPM takes final action on the matter.[6] *Id.* at 45-46.

3  Allowing enrollees to sue a carrier would be incongruous with OPM's regulations mandating that

4  FEHBA lawsuits "must be brought against" the federal government. 5 C.F.R. §§ 890.107(a), (b),

5  (c). Even a lawsuit about benefits—the provision of which is the central purpose of a FEHBA

6  plan—must be brought against the government "and not against the carrier or carrier's

7  subcontractors." *Id.* § 890.107(c). Much less should a suit against a carrier be permitted for other

8  sorts of disputes. That the government is the only possible defendant in a suit by a FEHBA

9  enrollee also follows from the fact that jurisdiction under FEHBA exists solely for claims

10  "against the United States." 5 U.S.C. § 8912; *see also Botsford*, 314 F.3d at 397-98 ("FEHBA

11  provides federal courts with jurisdiction solely over suits against the United States," which makes

12  sense because "FEHBA involves only one employer: the United States").

13       For these reasons, OPM (subject only to judicial review under the APA) has the exclusive

14  authority to enforce Contract No. CS 1039 and "FEHBA leaves no room for" the Federal

15  Employee Plaintiffs' private, federal cause of action against a carrier. *Bridges*, 935 F. Supp. at

16  43; *cf. Botsford*, 314 F.3d at 398 ("The federal remedies provided to aggrieved federal employees

17  under the regulatory scheme are the only intended remedies under FEHBA.").

18       **C.    The Federal Employee Plaintiffs' State Law Claims Are Preempted.**

19       It is unclear whether the Federal Employee Plaintiffs are asserting state law causes of

20  action in addition to their third-party breach of contract claim under federal law. If Federal

21  Employee Plaintiff Lawson (a California resident) also is asserting California breach of contract

22  and UCL claims and Federal Employee Plaintiff Williams (an Indiana resident) also is asserting

23  an Indiana negligence claim, then such claims should be dismissed because they are preempted.

24

25  [6] Allowing the Federal Employee Plaintiffs to sue Defendants would interfere with OPM's
    regulation of FEHBA. As just one simple example, Plaintiffs seek an injunction requiring
26  "Defendants to purge, delete, and destroy in a reasonable and timely manner Personal Information
    no longer necessary for their provision of services." CAC at p. 203 (Prayer for Relief ¶ B.xii.).
27  But OPM requires BCBSA and the local Blue Cross and Blue Shield licensees to maintain
    enrollee data well beyond that time. *See, e.g.*, Contract No. CS 1039 § 3.8; 48 C.F.R. § 1652.204-
28  70 ("individual enrollee and/or patient claim records will be maintained for six years after the end
    of the contract term to which the claim records relate").

1  "Congress already adopted an enforcement scheme in FEHBA whereby it delegated the power to

2  police the administration of FEHBA plans to OPM." *Kight*, 34 F. Supp. 2d at 342.  Thus, where a

3  plaintiff "attempt[s] to seek state law review of Plan administrative policies," it "directly conflicts

4  with the OPM powers," resulting in preemption "under traditional conflict preemption

5  principles." *Id.*; *see also Helfrich v. Blue Cross & Blue Shield Ass'n*, 804 F.3d 1090, 1106-10

6  (10th Cir. 2015) (holding that the OPM-BCBSA contract is governed by federal law, not state

7  law, in part due to the government's interest in uniformity in the administrative of FEHBA plans).

8  The same logic applies to any state law claims that Service Benefit Plan enrollees have brought or

9  attempt to bring in this case.  The Ninth Circuit has not specifically addressed displacement by

10  federal law in the FEHBA context, but it has held in another context that even a subcontract

11  between a private government contractor and its subcontractor is controlled by federal law.  *See*

12  *New SD, Inc. v. Rockwell Int'l Corp.*, 79 F.3d 953 (9th Cir. 1996); *Am. Pipe & Steel Corp. v.*

13  *Firestone Tire & Rubber Co.*, 292 F.2d 640, 643 (9th Cir. 1961).  Here, Plaintiffs recognize that

14  Contract No. CS 1039 is governed by federal law because they purport to bring Count VI—which

15  is the only Count related specifically to the Federal Employee Plaintiffs—"UNDER FEDERAL

16  LAW."  CAC at p. 89.  They cannot bring state law claims relating to the same contract because

17  state law is preempted.

## CONCLUSION

18

19      For the foregoing reasons, the Non-Anthem Defendants and BCBSA respectfully request

20  that the Court grant their motion to dismiss Plaintiffs' claims.

21                                         Respectfully submitted,

22                                         **HOGAN LOVELLS US LLP**

23                                         CRAIG A. HOOVER
                                           E. DESMOND HOGAN
24                                         PETER R. BISIO
                                           ALLISON M. HOLT

25

26  Dated:  November 23, 2015              By: /s/ Craig A. Hoover

27                                         Craig A. Hoover (SBN 113965)
                                           craig.hoover@hoganlovells.com
28                                         E. Desmond Hogan (admitted *pro hac vice*)
                                           desmond.hogan@hoganlovells.com

1                      Peter R. Bisio (admitted *pro hac vice*)
                            peter.bisio@hoganlovells.com

2                      Allison M. Holt (admitted *pro hac vice*)
                            allison.holt@hoganlovells.com

3                      555 Thirteenth Street, NW
                            Washington, DC 20004-1109

4                      Telephone:     (202) 637-5600
                            Facsimile:     (202) 637-5910

5

6                      Michael Maddigan (SBN 163450)
                            michael.maddigan@hoganlovells.com

7                      1999 Avenue of the Stars, Suite 1400
                            Los Angeles, CA 90067

8                      Telephone:     (310) 785-4600
                            Facsimile:     (310) 785-4601

9                      Maren J. Clouse (SBN 228726)
                            maren.clouse@hoganlovells.com

10                    4085 Campbell Ave., Suite 100
                            Menlo Park, CA 94025

11                    Telephone:     (650) 463-4000
                            Facsimile:     (650) 463-4199

12

13                    *Attorney for Defendants Blue Cross and Blue Shield of Alabama, Blue Cross and Blue Shield of Arizona, Inc., USAble Mutual Insurance Company d/b/a Arkansas Blue Cross Blue Shield and and BlueAdvantage Administrators of Arkansas, California Physicians' Service d/b/a Blue Shield of California, Blue Cross and Blue Shield of Florida, Inc. d/b/a Florida Blue, CareFirst of Maryland, Inc., Blue Cross and Blue Shield of Massachusetts, Inc., Blue Cross and Blue Shield of Michigan, Blue Cross and Blue Shield of Minnesota, Horizon Healthcare Services, Inc., Blue Cross and Blue Shield of North Carolina, Highmark Health Services, Highmark West Virginia Inc.,  BlueCross BlueShield of Tennessee, and Blue Cross and Blue Shield of Vermont*

23                    **KIRKLAND & ELLIS LLP**
                            BRIAN P. KAVANAUGH
                            KATHERINE WARNER
                            TIM PICKERT

26 Dated: November 23, 2015           By: /s/ Brian P. Kavanaugh
                            Brian Kavanaugh (admitted *pro hac vice*)
                            brian.kavanaugh@kirkland.com
                            Katherine Warner (*admitted pro hac vice*)
                            kate.warner@kirkland.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Tim Pickert (*admitted pro hac vice*)
tim.pickert@kirkland.com
300 N. LaSalle
Chicago, IL 60654
Telephone: (312) 862-2015
Facsimile: (312) 862-2200

*Attorney for Defendants The Blue Cross Blue
Shield Association and Health Care Service
Corporation, a Mutual Legal Reserve Company,
d/b/a Blue Cross and Blue Shield of Illinois and
Blue Cross and Blue Shield of Texas*

### L.R. 5-1(i)(3) ECF Attestation

I, Craig Hoover, am the ECF user whose ID and password are being used to file the

following: **NON-ANTHEM DEFENDANTS AND BLUE CROSS BLUE SHIELD**

**ASSOCIATION'S NOTICE OF MOTION AND MOTION TO DISMISS**

**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**.  In compliance with L.R.

5-1(i)(3), I hereby attest that Brian Kavanaugh has concurred with this filing.

/s/ *Craig A. Hoover*
Craig A. Hoover