ALTSHULER BERZON LLP
EVE CERVANTEZ (SBN 164709)
ecervantez@altshulerberzon.com
JONATHAN WEISSGLASS (SBN 185008)
jweissglass@altshulerberzon.com
DANIELLE E. LEONARD (SBN 218201)
dleonard@altshulerberzon.com
MEREDITH A. JOHNSON (SBN 291018)
mjohnson@altshulerberzon.com
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

COHEN MILSTEIN SELLERS & TOLL PLLC
ANDREW N. FRIEDMAN (admitted *pro hac vice*)
afriedman@cohenmilstein.com
GEOFFREY GRABER (SBN 211547)
ggraber@cohenmilstein.com
SALLY M. HANDMAKER (SBN 281186)
shandmaker@cohenmilstein.com
ERIC KAFKA (admitted *pro hac vice*)
ekafka@cohenmilstein.com
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
Telephone:  (202) 408-4600
Facsimile:   (202) 408-4699

*Lead Plaintiffs' Counsel*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| *In Re Anthem, Inc. Data Breach Litigation* | Case No:  15-md-02617-LHK<br><br>**PLAINTIFFS' OPPOSITION TO ANTHEM DEFENDANTS' MOTION TO DISMISS**<br><br>Date:          February 4, 2016<br>Time:          1:30 pm<br>Courtroom:   8, 4th Floor<br>Judge:          Lucy H. Koh |

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION .............................................................................................. 1

FACTS ALLEGED IN THE COMPLAINT ....................................................... 1

ARGUMENT ...................................................................................................... 3

I.   PLAINTIFFS' INDIANA NEGLIGENCE CLAIM IS SUFFICIENTLY PLED .............. 3

    A.   Defendants' Duty of Care Argument Ignores More Recent Indiana Law. .............. 3

    B.   An Important Exception to the Economic Loss Doctrine Applies Here ................. 4

II.   PLAINTIFFS ADEQUATELY ALLEGE BREACH OF CONTRACT ........................... 5

    A.   The CAC Sufficiently Alleges The Promises That Anthem Breached. ................... 5

    B.   The CAC Alleges Valid Contract Damages. .......................................... 7

        1.   Loss of Benefit of the Bargain. ................................................ 7

        2.   Value of PII. ................................................................... 8

        3.   Out-of-Pocket Costs and Imminent Risk of Further Costs. ......................... 9

III.   THE UNJUST ENRICHMENT CLAIM IS PLED IN THE ALTERNATIVE. .............. 11

IV.   PLAINTIFFS' KENTUCKY CONSUMER PROTECTION ACT CLAIM STANDS. ... 11

    A.   Class Actions Are Proper Under the Kentucky Consumer Protection Act ............ 11

    B.   Plaintiffs Have Pled Statutory Standing Under The KCPA ................................. 12

V.   ANTHEM VIOLATED CALIFORNIA'S UNFAIR COMPETITION LAW. ................. 13

    A.   Plaintiffs Have Alleged Loss Sufficient To Confer Standing Under The UCL. ... 13

    B.   Plaintiffs Have Alleged Unlawful, Unfair and Fraudulent Business Practices. .... 15

        1.   Unlawful. ..................................................................... 15

        2.   Unfair. ....................................................................... 16

        3.   Fraudulent. ................................................................... 16

VI.   PLAINTIFFS STATE A VALID NEW YORK GBL §349 CLAIM. ........................... 17

    A.   Anthem Engaged in Consumer-Oriented Conduct Impacting Millions. ... 17

i

B. Plaintiffs Suffered Cognizable Injuries..................................................................18

C. Anthem's Deceptive Acts Caused Plaintiffs' Injuries. ...........................................19

VII. ANTHEM VIOLATED THE GEORGIA INSURANCE INFORMATION ACT............20

A. Anthem Disclosed Plaintiffs' Personal Information. ...............................................20

B. Plaintiffs Have Alleged Actual Damages Caused By The Data Breach.................22

VIII. PLAINTIFFS' CLAIMS ARE NOT PREEMPTED BY ERISA. .....................................22

A. Express Preemption. ................................................................................................22

B. Complete/Conflict Preemption. ..............................................................................24

Plaintiffs' Opposition to Anthem Defendants' Motion to Dismiss
Case No. 15-md-02617-LHK

# TABLE OF AUTHORITIES

## CASES

*In re Adobe Sys., Inc. Privacy Litig.*,
 66 F. Supp. 3d 1197 (N.D. Cal. 2014) ............................................................ *passim*

*Aetna Life Ins. Co. v. Bayona*,
 223 F.3d 1030 (9th Cir. 2000) ......................................................................24

*Ammari Elecs. v. Pac. Bell Directory*,
 2011 WL 5547588 (Cal. Ct. App. Nov. 15, 2011).........................................7

*Anderson v. Hannaford Bros. Co.*,
 659 F.3d 151 (1st Cir. 2011)........................................................................19

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*,
 7 Cal.4th 503 (1994) ......................................................................................9

*Arizona State Carpenters Pension Trust Fund v. Citibank*,
 125 F.3d 715 (9th Cir. 1997) ........................................................................23

*Arnold v. Microsoft Corp.*,
 2000 WL 36114007 (Ky. Cir. Ct. July 21, 2000) ........................................12

*Berry v. MVP Health Plan, Inc.*,
 2006 WL 4401478 (N.D.N.Y. Sept. 30, 2006)............................................24

*Bono v. Monarch Life Ins. Co.*,
 2006 WL 839412 (W.D.N.Y. Mar. 27, 2006)...............................................18

*Bose v. Horizon Blue Cross Blue Shield of New Jersey*,
 2014 WL 1293861 (D.N.J. March 31, 2014).................................................24

*Bose v. Interclick, Inc.*,
 2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011)..........................................18, 19

*Brummett v. Skyline Corp.*,
 1984 WL 262559 (W.D. Ky. Apr. 11, 1984)................................................12

*California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A.*,
 519 U.S. 316 (1997)......................................................................................22

*Camacho v. Automobile Club of Southern California*,
 142 Cal. App. 4th 1394 (2006) ....................................................................16

*CIGNA Corp. v. Amara*,
 563 U.S. 421 (2011)......................................................................................25

*Cinelli v. Sec. Pac. Corp.*,
    61 F.3d 1437 (9th Cir. 1995) ....................................................................25

*Clark v. Bellsouth Telecommunications, Inc.*,
    461 F.Supp.2d 541 (W.D. Ky. 2006) ........................................................12

*Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*,
    70 N.Y.2d 382 (N.Y. 1982) .......................................................................11

*Coates v. Lake View Oil & Ref. Co.*,
    20 Cal. App. 2d 113 (1937) ..........................................................................9

*Complete Auto. Repair Servs. v. Capps*,
    2015 WL 2445911 (Ky. Ct. App. May 22, 2015) ......................................13

*Corona v. Sony Pictures Enter. Inc.*,
    2015 WL 3916744 (C.D. Cal. June 15, 2015) ......................................5, 15

*Coughlin v. Blair*,
    41 Cal. 2d 587 (1953) ...................................................................................7

*Daniels v. Provident Life & Cas. Ins. Co.*,
    2001 WL 877329 (W.D.N.Y. July 25, 2001) ............................................18

*Dishman v. UNUM Life Ins. Co. of America*,
    269 F.3d 974 (9th Cir. 2001) ...............................................................23, 24

*Doe 1 v. AOL LLC*,
    719 F. Supp. 2d 1102 (N.D. Cal. 2010) ....................................................14

*Dunkel v. eBay Inc.*,
    2013 WL 415584 (N.D. Cal. Jan. 31, 2013) ...............................................7

*Dupler v. Costco Wholesale Corp.*,
    249 F.R.D. 29 (S.D.N.Y. 2008) .................................................................20

*In re eBay Litig.*,
    2012 WL 3945524 (N.D. Cal. Sept. 10, 2012) ............................................7

*Edwards v. Arthur Andersen LLP*,
    44 Cal.4th 937 (2008) ...................................................................................7

*Ewart v. eBay, Inc.*,
    602 F. App'x. 357 (9th Cir. 2015) ...............................................................8

*In re Facebook Privacy Litig.*,
    791 F. Supp. 2d 705 (N.D. Cal. 2011) ......................................................14

*In re Facebook Privacy Litigation*.
    572 Fed. App'x. 494 (9th Cir. 2014) .....................................................8, 14

iv

*Fraley v. Facebook,*
    830 F. Supp. 2d 785 (N.D. Cal. 2011) ................................................................9, 25

*Gaidon v. Guardian Life Ins. Co. of Am.,*
    725 N.E.2d 598 (N.Y. 1999) .........................................................................17

*Galaria v. Nationwide Mut. Ins. Co.,*
    998 F. Supp. 2d 646 (S.D. Ohio 2014) ...........................................................21

*Geweke Ford v. St. Joseph's Omni Preferred Care Inc.,*
    130 F.3d 1355 (9th Cir. 1997) ......................................................................23

*GHK Associates v. Mayer Grp., Inc.,*
    224 Cal. App. 3d 856 (1990) ..........................................................................8

*Gregory v. Albertson's, Inc.,*
    104 Cal. App. 4th 845 (2002) ......................................................................16

*Holmes v. Countrywide Fin. Corp.,*
    2012 WL 2873892 (W.D. Ky. July 12, 2012) ...............................................13

*Kashmiri v. Board of Regents of the University of California,*
    156 Cal. App. 4th 809 (2007) ........................................................................6

*Kho v. Pennington,*
    875 N.E.2d 208 (Ind. 2007) ...........................................................................4

*Koch v. Greenberg,*
    2015 WL 5711578 (2d Cir. Sept. 30, 2015) ................................................17

*Koenig v. Boulder Brands, Inc.,*
    995 F.Supp.2d 274 (S.D.N.Y. 2014)............................................................18

*Kwikset Corp. v. Superior Court,*
    51 Cal. 4th 310 (2011) .........................................................................14, 15

*In re LinkedIn User Privacy Litigation,*
    932 F.Supp.2d 1089 (N.D. Cal. 2013) ............................................................8

*Low v. LinkedIn Corp.,*
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ..........................................................9

*Mackey v. Lanier Collection Agency & Serv., Inc.,*
    486 U.S. 825 (1988)....................................................................................22

*Marin Gen. Hosp. v. Modesto & Empire Traction Co.,*
    581 F.3d 941 (9th Cir. 2009) ..................................................................24, 25

*McKell v. Washington Mutual, Inc.,*
    142 Cal. App. 4th 1457 (2006) ....................................................................16

*Meyerson v. Prime Realty Services, LLC*,
    796 N.Y.S. 2d 848 (N.Y. Sup. Ct. 2005) .................................................................18, 19

*Miron v. Herbalife Int'l, Inc.*,
    11 F. App'x 927 (9th Cir. 2001) ...............................................................................7

*Morey v. Vannucci*,
    64 Cal.App.4th 904 (1998) ........................................................................................6

*New West Charter Middle School v. Los Angeles Unified School Dist.*,
    187 Cal. App. 4th 831 (2010) ....................................................................................7

*Nutrishare, Inc. v. Connecticut General Life Ins. Co.*,
    2014 WL 1028351 (E.D. Cal. Mar. 14, 2014) ........................................................24

*Orlander v. Staples, Inc.*,
    802 F.3d 289 (2d Cir. 2015).................................................................................17, 18

*Ormond v. Anthem, Inc.*,
    799 F.Supp.2d 910 (S.D. Ind. 2011) .....................................................................4, 5

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
    647 N.E.2d 741 (N.Y. 1995)....................................................................................19

*Paulsen v. CNF Inc.*,
    559 F.3d 1061 (9th Cir. 2009) ............................................................................22, 23

*People v. Pangan*,
    213 Cal. App. 4th 574 (2013) ..................................................................................10

*In re Pharm. Indus. Avg. Wholesale Price Litig.*,
    230 F.R.D. 61 (D. Mass. 2005).................................................................................12

*Picciotta v. Old Nat'l Bancorp*,
    499 F.3d 629 (7th Cir. 2007) .................................................................................3, 4

*Providence Health Plan v. McDowell*,
    385 F.3d 1168 (9th Cir. 2004) .................................................................................23

*Rabin v. Mony Life Ins. Co.*,
    2007 WL 737474 (S.D.N.Y. Mar. 8, 2007) ...........................................................11

*Remijas v. Neiman Marcus Group*,
    794 F.3d 688 (7th Cir. 2015) ........................................................................... *passim*

*Resnick v. AvMed, Inc.*,
    693 F.3d 1317 (11th Cir. 2012) ...............................................................................20

*Ruiz v. Gap, Inc.*,
    622 F.Supp.2d 908 (N.D. Cal. 2009) .................................................................9, 15

Plaintiffs' Opposition to Anthem Defendants' Motion to Dismiss
Case No. 15-md-02617-LHK

*Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010)................................................................................12

*Shafran v. Harley-Davidson, Inc.*,
   2008 WL 763177 (S.D.N.Y. Mar. 20, 2008) ...........................................19

*Shames-Yeakel v. Citizens Financial Bank*,
   677 F.Supp.2d 994 (N.D. Ill. 2009) ......................................................4, 21

*Shaw v. Delta Air Lines, Inc.*,
   463 U.S. 85 (1983)................................................................................22

*Silcox v. State Farm Mut. Auto. Ins. Co.*,
   2014 WL 7335741 (S.D. Cal. Dec. 22, 2014)...........................................16

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig. ("Sony I")*,
   903 F. Supp. 2d 942 (S.D. Cal. 2012)....................................................15

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig. ("Sony II")*,
   996 F. Supp. 2d 942 (S.D. Cal. 2014)...............................................18, 19

*Spagnola v. Chubb Corp.*,
   574 F.3d 64 (2d Cir. 2009)...................................................................18

*Stollenwerk v. Tri-W. Health Care Alliance*,
   254 F. App'x 664 (9th Cir. 2007) ..............................................10, 11, 20

*Svenson v. Google Inc.*,
   2015 WL 1503429 (N.D. Cal. Apr. 1, 2015) .......................................7, 8, 9

*Troyk v. Farmers Grp., Inc.*,
   171 Cal. App. 4th 1305 (2009) .............................................................15

*Union Bank, N.A. v. CBS Corp.*,
   2009 WL 1675087 (S.D.N.Y. June 10, 2009) .......................................11, 12

*Van Alstine v. CIGNA*,
   73 Fed. Appx. 956 (9th Cir. Cal. 2003) ..................................................25

*Venturino v. First Unum Life Ins. Co.*,
   724 F.Supp.2d 429 (S.D.N.Y. 2010).......................................................24

*Walgreen Co. v. Hinchy*,
   21 N.E.3d 99 (Ind. Ct. App. 2014)...........................................................4

*Walsh v. Walsh*,
   18 Cal. 2d 439 (1941) ............................................................................6

*Webb v. Jarvis*,
   575 N.E.2d 992 (Ind. 1991) ....................................................................3

Plaintiffs' Opposition to Anthem Defendants' Motion to Dismiss
Case No. 15-md-02617-LHK

*Willingham v. Glob. Payments, Inc.*,
    2013 WL 440702 (N.D. Ga. Feb. 5, 2013) ..................................................................21

*Witriol v. LexisNexis Grp.*,
    2006 WL 4725713 (N.D. Cal. Feb. 10, 2006) ............................................................15

*Worix v. MedAssets, Inc.*,
    857 F. Supp. 2d 699 (N.D. Ill. 2012) ........................................................................22

*Yanting Zhang v. Superior Court*,
    57 Cal. 4th 364 (2013) ..............................................................................................16

*Young v. Facebook, Inc.*,
    790 F. Supp. 2d 1110 (N.D. Cal. 2011) ......................................................................7

*In re Zappos.com, Inc.*,
    2015 WL 3466943 (D. Nev. June 1, 2015) ..................................................................9

## FEDERAL STATUTES

29 U.S.C. §1002 ..............................................................................................22, 23

29 U.S.C. §1103 ..............................................................................................22, 25

29 U.S.C. §1132, ERISA §502 ..................................................................22, 24, 25

29 U.S.C. §1144, ERISA §514 ............................................................................22

## STATE STATUTES

Cal. Bus. & Prof. Code §17200 ............................................................................13

Cal. Bus. & Prof. Code §17204 ............................................................................13

Cal. Civ. Code §3300 ..............................................................................................9

Cal. Insurance Code §22 ..........................................................................................5

Ga. Code Ann. §33-39-1 ........................................................................................21

Ga. Code Ann. §33-39-14 ..............................................................................20, 21

Ind. Code §24-4.9-3-3.5 ..........................................................................................4

Ind. Code §25-26-13-15 ..........................................................................................4

Ky. Rev. Stat. §337.845 ........................................................................................12

Ky. Rev. Stat. §367.170 ........................................................................................12

Ky. Rev.Stat. §367.220 ...............................................................................................12, 13

New York General Business Law §349 .............................................................. *passim*

**FEDERAL RULES**

F.R.C.P. 12(b)(6) ..................................................................................................1

F.R.C.P. 23 .........................................................................................................12

**OTHER AUTHORITIES**

4 Witkin, Summary 10th (2005) Sales, § 203 .................................................8

**INTRODUCTION**

Plaintiffs seek to hold Anthem accountable for the grossly inadequate data security that resulted in the massive Anthem Data Breach and injured 80 million people.  Anthem flouted its promises, industry standards, and the law when it collected confidential information into a single database; failed to limit access to persons with a need to know, require two-factor authorization to access it, or encrypt it; and ignored blatant warning signs that massive amounts of data were being exfiltrated.  The Court should deny the Anthem Defendants' motion to dismiss pursuant to Rule 12(b)(6) because Plaintiffs have plausibly alleged facts supporting their claims, and Defendants' arguments to the contrary ignore the well-pleaded allegations of the Consolidated Amended Class Action Complaint ("CAC") and misapply or misapprehend applicable state law.

Defendants are incorrect that Plaintiffs' injuries and damages are insufficient under the governing law. The named Plaintiffs allege that they suffered the following injuries as a result of Anthem's actions and omissions: 1) They paid premiums for services that should have included adequate data security, but did not, and were therefore deprived of the benefit of their bargain. 2) They had their valuable Personal Information stolen. 3) They were forced to spend time and/or resources monitoring and/or repairing credit, including many instances of actual fraud and/or identity theft. 4) They remain at considerable risk for additional identity theft and fraud.

Nor is there merit to Defendants' additional claim-specific arguments, which Plaintiffs address in turn below. Because even Anthem does not contend that ERISA is a complete defense to any claim, Plaintiffs explain at the end of the brief why their claims are not preempted.[1]

**FACTS ALLEGED IN THE COMPLAINT**

Defendant Anthem, Inc. serves customers through its subsidiary Blue Cross Blue Shield ("BCBS") and other affiliates ("Anthem Affiliates") (together, "Anthem"). CAC ¶¶155, 109-135. Anthem collects its customers' personal information, including names, Social Security Numbers ("SSNs"), birth dates, home addresses, employment and income data, and health and medical information ("Personal Information"). CAC ¶¶157. Anthem compiled the Personal

---

[1] FEHBA preemption is addressed in response to the Non-Anthem Defendants' motion.

Information of almost 80 million individuals ("Affected Individuals"), dating back to 2004, all in one centralized "Anthem Database." CAC ¶¶3, 158-59.

Plaintiffs enrolled in one of Anthem's health care plans, paid premiums, and provided Anthem with the required Personal Information. CAC ¶¶12-128, 303. Many Plaintiffs directly purchased individual insurance or health benefits policies from Anthem. *E.g.*, CAC ¶¶15, 20, 48, 52, 60, 61. Other Plaintiffs paid via their employers' group insurance or health policies with Anthem. *E.g.*, CAC ¶¶16, 19, 36, 39. In return for these payments, Anthem promised to safeguard the privacy and confidentiality of this Personal Information, including complying with applicable laws and industry standards. These promises were reflected in many documents provided to customers, some of which are quoted verbatim in the CAC. CAC ¶¶4, 161-170, 303. Every Anthem website promised to "maintain[] policies that protect the confidentiality of personal information, including Social Security Numbers," including "having physical, technical, and administrative safeguards in place" and that "associates must only access Social Security numbers or personal information as required by their job duties." CAC ¶¶166. Anthem mailed customers notices with similarly worded promises. CAC ¶¶163. Anthem also promised customers that it would comply with certain federal and state laws. CAC ¶¶165, 178-181.[2]

Anthem had previous problems with data security and thus knew it was a likely target for cyberattackers, CAC ¶¶193-202, and knew or should have known that its data security practices were inadequate. CAC ¶¶241-243, 284, 287.  Anthem failed to implement basic industry-accepted data security tools to prevent unauthorized users from accessing Personal Information: it did not encrypt the data, require users to change their passwords, or use two-factor authorization, and it allowed employees to access Personal Information when those employees did not need such access. CAC ¶5. Anthem left open the data for any nominally proficient hacker to see. Anthem also failed to monitor its systems, and/or ignored security alerts that it received. CAC ¶6. The details of the many industry-standard security steps that Anthem failed to take, and

---

[2] In agreeing to comply with HIPAA, Anthem promised to implement technical policies that would only allow authorized individuals to access electronic personal information, to protect against reasonably anticipated threats to the security of electronic information, and to train all personnel to maintain the security of the personal information. CAC ¶¶178-181.

warning signs it ignored, are set forth in the CAC filed under seal.  CAC ¶¶207-238.

As a result of Anthem's multiple failures to implement even minimally adequate security precautions, hackers made off with the Personal Information of 80 million individuals. CAC ¶¶204-238. Given Anthem's flawed data security and the information contained in the database, hackers may also have accessed medical and health care information. CAC ¶206.

Plaintiffs were injured as a direct and proximate cause of Anthem's failure to provide adequate data security, and suffered economic loss as a result. First, Plaintiffs paid Anthem money for services that should have included protecting their Personal Information from unauthorized disclosure, but did not ("Loss of Benefit of the Bargain"). *E.g.*, CAC ¶¶267, 289-291, 309, 354, 367. Second, the theft of Plaintiffs' Personal Information resulted in the loss of Plaintiffs' legally protected interest in the confidentiality and privacy of this valuable Personal Information ("Loss of Value of PII"). *E.g.* CAC ¶¶267, 289-291, 310, 427, 527. Third, individual Plaintiffs incurred out-of-pocket losses, including delayed tax returns, and the time and costs of credit monitoring ("Out-of-Pocket Costs"). *E.g.,* CAC ¶¶7, 15-16, 18, 19, 21, 36, 38-41, 48, 50, 52-53, 55, 60-61, 85-88, 267, 310. Anthem belatedly began offering customers credit monitoring, but the two years of service offered by Anthem is inadequate to protect Plaintiffs and Affected Individuals from a lifetime risk. CAC ¶268.  Fourth, all Plaintiffs are at significant risk of imminent identity theft (or have already suffered identity theft) as a result of the exfiltration of their Personal Information ("Imminent Risk of Further Costs"). *E.g.* CAC ¶¶267, 310.

## ARGUMENT

## I.   PLAINTIFFS' INDIANA NEGLIGENCE CLAIM IS SUFFICIENTLY PLED.

### A.   Defendants' Duty of Care Argument Ignores More Recent Indiana Law.

Plaintiffs have alleged that Anthem violated the duty of care owed Indiana Plaintiffs and Class Members by collecting and storing their Personal Information without adequate data security. Anthem does not contest the applicable standard, or assert that Plaintiffs don't meet that standard (*see*, *e.g.*, *Webb v. Jarvis*, 575 N.E.2d 992, 996 (Ind. 1991)), but argues only that Plaintiffs' claim is precluded by *Picciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 637 (7th Cir. 2007). The Seventh Circuit predicted (because there was no applicable Indiana law at the time)

that the Indiana Supreme Court would not recognize the cost of credit monitoring as the type of compensable injury necessary to state a claim for negligence. *Id.* at 637-39.[3]  The court relied heavily on an Indiana statute requiring a database owner to provide notice of a data breach, but imposing no other requirements on the database owner. *Id.* at 637. But that statute has been amended since *Picciotta*, and now requires a database owner to "maintain reasonable procedures…to protect and safeguard from unlawful use or disclosure any personal information …."  Ind. Code § 24-4.9-3-3.5(b) (effective July 1, 2009).[4] This is precisely what Plaintiffs allege Anthem Defendants failed to do.  Moreover, contrary to the Seventh Circuit's supposition, Indiana courts frequently borrow from statutes that do not contain a private right of action to impose common law duties. *See Kho v. Pennington*, 875 N.E.2d 208, 212-16 (Ind. 2007) (noting "The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment …"); *Walgreen Co. v. Hinchy*, 21 N.E.3d 99, 109 (Ind. Ct. App. 2014), (pharmacist liable in negligence for violating duty of confidentiality to her customers, based on a statute, Ind. Code § 25-26-13-15(a), with no private enforcement mechanism).[5]

## B.  An Important Exception to the Economic Loss Doctrine Applies Here.

"The economic loss rule in Indiana has several exceptions, including where fiduciaries or insurers have assumed specific obligations." *Ormond v. Anthem, Inc.*, 799 F.Supp.2d 910, 937 (S.D. Ind. 2011), *citing U.S. Bank, N.A. v. Integrity Land Title Corp.*, 929 N.E.2d 742, 745-46 (Ind. 2010) (economic loss "rule is a *general* rule and [is] open to appropriate exceptions"). The

---

[3] The Seventh Circuit has since recognized that the cost of obtaining credit monitoring after ones' personal information has been exposed in a data breach is a "concrete injury" for Article III standing purposes. *Remijas v. Neiman Marcus Group*, 794 F.3d 688, 694 (7th Cir. 2015).

[4] Anthem is well aware of the 2009 amendment, stating this amendment "exempted database owners with security policies under HIPAA from some of the requirements of the statute." Opp. at 2 n.3.  That exemption is only for a data base owner that "complies" with its HIPAA policy, Ind. Code § 24-4.9-3-3.5(a), which Plaintiffs allege Anthem failed to do, CAC ¶ 258.

[5] The non-binding, non-Indiana cases cited by Defendants (MTD at 2-3, n.4) concern situations in which there was no relationship at all between plaintiffs and defendants that would give rise to any duty, and/or HIPAA did not apply. More recent cases have found that inadequate data security may give rise to a negligence claim under Indiana law. *Shames-Yeakel v. Citizens Financial Bank*, 677 F.Supp.2d 994, 1007-1009 (N.D. Ill. 2009).

insurer exception arises from the Indiana Supreme Court's recognition that "the relationship between a policyholder and the insurance company is a special one." *Ormond*, 789 F.Supp.2d at 935-36, *citing Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 518 (Ind. 1993). Accordingly, a federal court found that the economic loss doctrine did not bar negligence claims brought by policy holders against *Anthem* because "the relationship between Anthem and its members was more than a garden-variety, arms-length contractual relationship." *Ormond*, 789 F.Supp.2d at 937. The CAC alleges just such a special relationship, including that Anthem is an insurer and has a fiduciary or quasi-fiduciary relationship with Plaintiffs, and also that Plaintiffs were required to provide their Personal Information to Anthem. CAC ¶ 288. *See also Corona v. Sony Pictures Enter. Inc.*, 2015 WL 3916744, *5 (C.D. Cal. June 15, 2015) (economic loss doctrine did not bar California negligence claim because of "special relationship").

## II.   PLAINTIFFS ADEQUATELY ALLEGE BREACH OF CONTRACT.

### A.   The CAC Sufficiently Alleges The Promises That Anthem Breached.

Plaintiffs have alleged that they were all enrolled in Anthem plans for which they paid premiums, and thereby entered into contracts for insurance and/or health benefits services with Anthem. CAC ¶¶15-21, 303. There can be no real dispute that the relationship between Anthem and its customers is contractual. *See generally* Cal. Insurance Code § 22 ("Insurance *is a contract . . .*") (emphasis added). This is not a case where there is a question as to whether there is a contract at all. *Cf.* MTD at 5 (*citing Press Rentals Inc. v. Genesis Fluid Solutions Ltd.*, 2013 WL 485654, *4 (N.D. Cal. Feb. 6, 2013) (claim dismissed for failure to sufficiently allege existence of contractual relationship). Some Plaintiffs purchased insurance directly, and others purchased it as part of an employer policy. All have alleged a contract under California law.

Anthem's argument that Plaintiffs have not pled the contract terms with specificity is based only on the summary language in the breach of contract count. MTD at 5 (*citing* CAC ¶¶303-306).[6] But the CAC identifies specific promises (many quoted verbatim) regarding data

---

[6] Anthem asks the Court to parse through the facts alleged by each individual California Plaintiff and dismiss claims brought by certain Plaintiffs who were insured by a non-Anthem Defendant. MTD at 4 (discussing Plaintiffs Blanchard and Brisko). The Court need not engage in such an

security in many documents. CAC ¶¶ 4, 161-70. The CAC also alleges, in detail, how Anthem

breached those promises by failing to maintain adequate data security to protect Plaintiffs'

Personal Information. CAC ¶203-245, 252-258. Plaintiffs need not repeat all allegations in each

Count, *In re Adobe Sys., Inc. Privacy Litig.,* 66 F. Supp. 3d 1197, 1226-27 (N.D. Cal. 2014), nor,

as Anthem concedes, must they "recite the terms of the contract verbatim." MTD at 4.

     The real dispute in this case is not about whether Plaintiffs have identified breached

promises, but whether the specific promises Plaintiffs allege were breached became terms of

Anthem's insurance contracts. Plaintiffs allege they did. CAC ¶¶302-311. This dispute is a

matter of contract interpretation to be resolved by evidence addressing the parties' reasonable

expectations, and is not appropriate for resolution on a motion to dismiss. *See, e.g., Kashmiri v.*

*Board of Regents of the University of California*, 156 Cal. App. 4th 809, 829, 831-32 (2007)

(addressing on summary judgment issue of whether certain online promises became terms of

contract as question of contract interpretation); *Morey v. Vannucci*, 64 Cal.App.4th 904, 912,

(1998) (Contract interpretation—determining mutual intention of the parties—should be based

on "objective manifestations of the parties' intent" including contractual language and extrinsic

evidence); *Walsh v. Walsh*, 18 Cal. 2d 439, 443 (1941) (with respect to contract disputes:  "it is

primarily the duty of the trial court to construe it after a full opportunity afforded all the parties

in the case to produce evidence of the facts, circumstances, and conditions surrounding its

execution and the conduct of the parties relative thereto").[7]

     Anthem also ignores Plaintiffs' allegations that Anthem breached its promise to comply

---

exercise, both because named Plaintiffs who purchased insurance from Non-Anthem Defendants
do not bring breach of contract claims against Anthem Affiliates with whom they had no
relationship, and because such issues are more appropriately resolved in the context of
addressing class definitions and representatives at class certification. *See* Opp. to Non-Anthem
Mot. to Dismiss at Section I. Similarly, Plaintiff Lawson brings a claim under the federal
contract, and does not allege a California breach of contract claim.

[7] Anthem also discusses Plaintiffs' alternative theories of contract formation at some length.
MTD at 5-6.  The fact that Plaintiffs have pled theories of contract formation *in the alternative* is
no reason to dismiss Plaintiffs' breach of contract claims. This Court need not resolve now the
merits of any challenge to these alternative theories of contract formation, including the
contention that Plaintiffs will not be able to prove consideration.

with applicable laws regarding the privacy of personal information. CAC ¶¶165, 177-183, 258-60. Under California law, Defendants' contracts necessarily incorporate applicable laws even absent specific promises. *See Edwards v. Arthur Andersen LLP*, 44 Cal.4th 937, 954 (2008).[8]

### B.    The CAC Alleges Valid Contract Damages.

There is no merit to Anthem's argument that Plaintiffs' contractual damages aren't "appreciable and actual."  MTD at 6-9. Each is legally viable under California contract law.

1. <u>Loss of Benefit of the Bargain.</u> Plaintiffs allege that they did not get what they paid for under their contracts with Anthem, which included promises to maintain adequate data security. CAC ¶¶267, 309. Contract damages are intended to give a plaintiff "the benefit of his bargain and insofar as possible to place him in the same position he would have been in had the promisor performed the contract." *Coughlin v. Blair*, 41 Cal. 2d 587, 603 (1953); *New West Charter Middle School v. Los Angeles Unified School Dist.*, 187 Cal. App. 4th 831, 844 (2010). Contract damages in California can therefore include a partial refund of a contract price paid when a defendant fails to deliver on that bargain. *See, e.g.*, *Svenson v. Google Inc.*, 2015 WL 1503429, at *4 (N.D. Cal. Apr. 1, 2015) (plaintiff stated a claim for breach of contract damages for partial refund of purchase price to compensate for breach of privacy policy); *In re eBay Litig.*, 2012 WL 3945524, at *4 (N.D. Cal. Sept. 10, 2012) ("courts have awarded a pro rata refund for partial performance of a contract where the parties attributed a specific value to particular increments of performance."); *Ammari Elecs. v. Pac. Bell Directory*, 2011 WL 5547588, at *12 (Cal. Ct. App. Nov. 15, 2011), *as modified on denial of reh'g* (Dec. 13, 2011) ("Under the doctrine of partial restitution, a party who pays in full for goods or services only partially received is entitled to recover as damages the difference in value between what was paid for and what was actually

_____

[8] None of the non-binding cases cited by Anthem (MTD at 4-5) require this Court to dismiss the contract claim. *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011), was dismissed because plaintiff failed to identify *any* contract term that defendant's actions violated. In *Miron v. Herbalife Int'l, Inc.*, 11 F. App'x 927, 929 (9th Cir. 2001) the plaintiff invoked documents pertaining to entities other than the defendant, and that did not prohibit the actions alleged to be a violation. In *Dunkel v. eBay Inc.*, 2013 WL 415584, at *8 (N.D. Cal. Jan. 31, 2013) the court resolved an *unopposed* motion to dismiss.  *Id.* at *1.

1    received." (*relying on E.A. Robey & Co. v. City Title Ins. Co*., 261 Cal.App.2d 517, 523 (1968)));

2    *see also Ewart v. eBay, Inc.*, 602 F. App'x 357, 359 (9th Cir. 2015) (recognizing partial

3    restitution damages theory). California contract damages may be approximate. *GHK Associates*

4    *v. Mayer Grp., Inc*., 224 Cal. App. 3d 856, 873-74 (1990) ("Where the fact of damages is certain,

5    the amount of damages need not be calculated with absolute certainty. [citations] The law

6    requires only that some reasonable basis of computation of damages be used . . . .").[9]

7           Defendants' argument on this point—that "[c]ourts routinely reject damages" theories

8    based on "overpayment"—ignores applicable California contract law and instead relies on two

9    inapposite out-of-jurisdiction cases. MTD at 7. Defendants also cite *In re LinkedIn User Privacy*

10   *Litigation*, 932 F.Supp.2d 1089, 1094 (N.D. Cal. 2013), but that decision addressed Article III

11   standing and did not address or analyze California contract damages law.

12          2.   Value of PII. The particular combination of personal information stolen in the Anthem

13   Data Breach (name, SSN, date of birth, employer, income) has economic value, demonstrated in

14   part by the lengths to which the criminals went to mine Anthem's database to extract this specific

15   information. The Ninth Circuit has recognized that California contract law permits damages for

16   the harm caused by the "dissemination of personal information" and "losing the sales value of

17   that information." *In re Facebook Privacy Litigation.* 572 Fed. App'x. 494, 494 (9th Cir. 2014).

18   Plaintiffs' California contract damages allegations are thus sufficient.

19          Consistent with California contract law, the Ninth Circuit did not require Plaintiffs to

20   plead with specificity how to measure these contract damages, nor should this Court. *In re*

21   *Facebook Privacy*, 572 Fed. App'x. at 494; *see also Svenson*, 2015 WL 1503429, at *5; *GHK*

22   *Associates*, 224 Cal. App. 3d at 873-74. Assuming *arguendo* that at an appropriate time Plaintiffs

23   and their experts will submit evidence approximating the diminution in value arising from the

24   loss of confidentiality, and/or the value of the information stolen, there is no reason under

25   California contract law why Plaintiffs should not receive damages as compensation therefor.

26   ───────────────────────────
27   [9] This partial refund theory of contract damages is consistent with the standard applicable to
     damages for the delivery of defective goods under a sales contract: "the difference between 'the
     value of the goods accepted and the value they would have had if they had been as warranted.'"
28   (U.C.C. 2714(2)." 4 Witkin, Summary 10th (2005) Sales, § 203, at 182.

The cases upon which Defendants rely were either decided prior to, or do not address the Ninth Circuit's ruling in, the *Facebook Privacy* litigation. MTD at 7. To extent the earlier cases held that plaintiffs must allege an interest in selling their personal information to prove the value of that information, they are inconsistent with other areas of law. *See, e.g.*, *Fraley v. Facebook*, 830 F. Supp. 2d 785, 799-800 (N.D. Cal. 2011) (finding loss of value injury for standing purposes without inquiring into intent to sell one's name and pictures); *Coates v. Lake View Oil & Ref. Co.*, 20 Cal. App. 2d 113, 117 (1937) (describing potential measure of damages where "a seller agrees to sell to a buyer an article which has no established market value").[10] Finally, Northern District decisions addressing *Facebook Privacy* are consistent with this contract damages theory surviving here. *See, e.g.*, *Svenson*, 2015 WL 1503429, at *5 ("In light of the Ninth Circuit's ruling, this Court concludes that Svenson's allegations of diminution in value of her personal information are sufficient to show contract damages for pleading purposes.").

    3. Out-of-Pocket Costs and Imminent Risk of Further Costs.  Plaintiffs have either already incurred, or are imminently likely to incur, specific out-of-pocket costs related to monitoring for identify theft or repairing credit or tax status as a result of the Anthem Data Breach, including one who has yet to receive a 2014 tax return. CAC ¶16. These are reasonably foreseeable costs caused by the Anthem Data Breach, and are consequential damages available under California law. *See* Civil Code §3300; *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 515 (1994). *Cf. Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 693 (7th Cir. 2015) (credit monitoring costs and "plausible" substantial risk of future harm constitute sufficient injury for standing purposes). The only case cited by Defendants (MTD at 7-8) purporting to apply California law is *Ruiz v. Gap. Inc.*, 622 F.Supp.2d 908 (N.D. Cal. 2009), *aff'd other grounds*, 380 F. App'x 689, 692 (9th Cir. 2010).  *Ruiz* was a stolen laptop case, in which the plaintiff identified no out of pocket costs and alleged only "fear" and "risk" of future identity theft. *Id.* at 910-11, 917. The court did not hold that out-of-pocket costs—including the

---

[10] Nor did either of the cases relied upon by Defendants involve the targeted theft of this combination of valuable and confidential personal information. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028 (N.D. Cal. 2012) (browser histories); *In re Zappos.com, Inc.,* 2015 WL 3466943, at *9 (D. Nev. June 1, 2015) (name and last four digits of credit card).

time and money actually incurred for monitoring for identity theft—can *never* be consequential

contract damages, which would be inconsistent with California contract law. Defendants'

argument that California Plaintiffs who suffered *actual* tax fraud for 2014 immediately following

the Anthem Data Breach have not suffered compensable consequential damages is specious.

MTD at 8-9. Defendants ignore that the refund was delayed (or never received, CAC ¶16), and

that Plaintiffs lost the time-value of their money. *People v. Pangan*, 213 Cal. App. 4th 574, 582

(2013) ("possession of money now, as distinct from the future, is worth something and that

something must be accounted for in order to arrive at the actual value of an economic loss.").

Plaintiffs have adequately pled causation.  CAC ¶¶267-269. The credit monitoring costs

incurred by Plaintiffs were the direct result of Anthem's notification that it failed to maintain the

confidentiality of Plaintiffs' Personal Information. *See Remijas*, 794 F.3d at 694 ("An affected

customer, having been notified by Neiman Marcus that her card is at risk, might think it

necessary to subscribe to a service that offers monthly credit monitoring. It is telling in this

connection that Neiman Marcus offered one year of credit monitoring . . . . It is unlikely that it

did so because the risk is so ephemeral that it can safely be disregarded."); *see also*

https://www.identitytheft.gov/ info-lost-or-stolen.html (government instructions regarding steps

to take upon receiving data breach notice).  The specific nature of the information stolen *and* the

temporal sequence of the resulting fraud create a logical inference of causation sufficient to state

a claim for damages.[11] The Ninth Circuit's decision in *Stollenwerk v. Tri-W. Health Care*

*Alliance*, 254 F. App'x 664, 668 (9th Cir. 2007), relied upon by Anthem (MTD at 9), actually

supports Plaintiffs. Anthem relies on the Ninth Circuit's comment that "purely temporal

connections are often insufficient to establish causation." MTD at 9.[12] But the Ninth Circuit

reversed a grant of judgment with respect to causation concluding that "[h]ere, however,

---

[11] Anthem improperly requests that the Court consider extra-complaint facts regarding other data breaches described in a *Forbes* magazine article, MTD at 9, n.7. Were the Court to take evidence about these other data breaches, it would find that the vast majority involved credit card numbers, not SSNs, while over one-third of named Plaintiffs here allege tax fraud, as to which a stolen SSN is a prerequisite.

[12] Anthem's quotation (MTD at 9) omits the qualifier "often," inaccurately implying that the Ninth Circuit held that temporal connections are always insufficient. *Id.*

1   proximate cause is supported not only by the temporal, but also by the *logical*, relationship

2   between the two events." *Id.* (emphasis in original); *cf. Remijas*, 794 F.3d at 696 (finding

3   sufficient causation for standing). It is certainly a plausible logical inference from the temporal

4   sequence and type of information at issue in this case that the Anthem Data Breach resulted in

5   the tax identity theft alleged by Plaintiffs, which is plenty for pleading purposes.

6   **III.     THE UNJUST ENRICHMENT CLAIM IS PLED IN THE ALTERNATIVE.**

7           Anthem does not deny that Plaintiffs allege all elements of a New York unjust

8   enrichment claim. MTD at 11.  Instead, citing *Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70

9   N.Y.2d 382, 388 (N.Y. 1982), Anthem contends that Plaintiffs' unjust enrichment claim is barred

10  because there is an express contract between the parties. *Id*. But Anthem cannot have it both

11  ways: contest the contract terms for purposes of the breach of contract claim, and then contend

12  that the same contract requires dismissal of the unjust enrichment claim.

13          *Clark-Fitzpatrick* bars unjust enrichment claims only when there is a "valid written

14  agreement, the existence of which is undisputed, and the scope of *which clearly covers the*

15  *dispute between the parties*." 70 N.Y.2d at 389 (emphasis added). When there is a dispute "as to

16  whether the terms of the parties' agreement covered" the subject matter of an unjust enrichment

17  claim, courts will not dismiss the claim. *Rabin v. Mony Life Ins. Co.*, 2007 WL 737474, at *5

18  (S.D.N.Y. Mar. 8, 2007); *see also Union Bank, N.A. v. CBS Corp.*, 2009 WL 1675087, at *7-8

19  (S.D.N.Y. June 10, 2009). Here, the unjust enrichment claim concerns Anthem's promises to

20  provide adequate data security, which Anthem disputes are contract terms. CAC ¶¶353-355;

21  MTD at 4-5. The Court should resolve the unjust enrichment claim only after resolving the

22  contract claims on the merits later in the litigation.

23  **IV.     PLAINTIFFS' KENTUCKY CONSUMER PROTECTION ACT CLAIM STANDS.**

24          **A.     Class Actions Are Proper Under the Kentucky Consumer Protection Act.[13]**

25

26  [13] When Plaintiffs pled a violation of the Kentucky Data Breach statute in the CAC, it was not
    clear whether Anthem would dispute Plaintiffs' allegations that it was subject to HIPPA and/or

27  the Gramm-Leach-Bliley Act.  Plaintiffs now agree that the data breach statute is inapplicable to
    Anthem, given its admission that it is governed by HIPAA. MTD at 24. Accordingly, Plaintiffs

28  withdraw that claim, and request that the Court deny Anthem's motion as moot.

1    Anthem's contention that KCPA claims may not be pursued in class actions is largely

2    premised on *dicta* in a single unpublished trial court decision. MTD at 12, *citing Arnold v.*

3    *Microsoft Corp.*, 2000 WL 36114007 (Ky. Cir. Ct. July 21, 2000), *aff'd other grounds*, 2001 WL

4    1835377 (Ky. Ct. App. Nov. 21, 2001). The trial court held that the KCPA could not be used to

5    pursue antitrust claims against indirect purchasers, and also stated in *dicta* that it did not

6    "believe" KCPA claims could be brought as class actions, based primarily on the statute's venue

7    provision. *Id.* at *6, 8. A district court in Massachusetts relied solely on *Arnold* for its statement

8    that class claims may not be pursued under the KCPA. *In re Pharm. Indus. Avg. Wholesale Price*

9    *Litig.*, 230 F.R.D. 61, 84 (D. Mass. 2005). But the statute does not contain an express class action

10   ban, and courts have certified class actions under the KCPA, both before and after *Arnold*. *See*

11   *Brummett v. Skyline Corp.*, 1984 WL 262559 (W.D. Ky. Apr. 11, 1984); *Clark v. Bellsouth*

12   *Telecommunications, Inc.*, 461 F.Supp.2d 541 (W.D. Ky. 2006).[14]

13   Anthem also relies on the decision in *In re Target Corp. Data Sec. Breach Litig.*, 66

14   F.Supp.3d 1154 (D.Minn. 2014), but that decision mistook the Kentucky overtime statute—

15   which does contain a class action ban—for the KCPA. *Target* cites only to a case that concerned

16   Kentucky's *overtime* statue, *not* the KCPA. *Id.* at 1165 *citing Davenport v. Charter Comm'cns,*

17   *LLC*, 35 F.Supp.3d 1040, 1047-48 (E.D. Mo. 2014) (overtime actions under Ky. Rev. Stat. §

18   337.845(1)-(2) may only be brought "by any one (1) or more employees for and in behalf of

19   himself, herself, or themselves"). The KCPA does not contain similar language, Ky. Rev. Stat. §

20   367.220, and may therefore be pursued as a Rule 23 class action. *Shady Grove Orthopedic*

21   *Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010).

22   **B.      Plaintiffs Have Pled Statutory Standing Under The KCPA.**

23   The Kentucky Plaintiffs have pled "ascertainable loss of money or property" as required

24   by Ky. Rev. Stat. § 367.220. Anthem ignores the allegations of injury that apply to all Plaintiffs

---

26   [14] "Any person who purchases or leases goods or services primarily for personal, family or
household purposes and thereby suffers any ascertainable loss of money or property, real or
27   personal, as a result of the use or employment by another person of a method, act or practice
declared unlawful by KRS 367.170, may bring an action…."  Ky. Rev. Stat. § 367.220.

and focuses only on the Plaintiff-specific paragraphs of the CAC (¶¶60-61).[15] MTD at 12-14.

Kentucky Plaintiffs have alleged 1) Loss of Benefit of the Bargain; 2) Loss of Valuable PII; 3)

Out-of-Pocket Costs; and 4) Imminent Risk of Identity Theft. CAC ¶¶60-61, 267, 424-425, 427.

These allegations sufficiently allege "loss" as that term is used in the KCPA.

 Under Kentucky law, a consumer deprived of the benefit of his bargain in purchasing a

good or service has suffered an "ascertainable loss" even absent other allegations of damage.

*Complete Auto. Repair Servs. v. Capps*, 2015 WL 2445911, at *5 (Ky. Ct. App. May 22, 2015),

*as modified* (May 29, 2015). The Kentucky court explained, relying on other state consumer

protection statutes using the same "ascertainable loss" language:

> We conclude that a person is not required to allege a specific amount of actual
> damages that he has already incurred as out-of-pocket expenses to make out a
> prima facie case under KRS 367.220. If the consumer proves that he has
> purchased an item that is different from or inferior to that for which he bargained,
> the "ascertainable loss" requirement is satisfied.

*Id.* (citing with approval *Hinchliffe v. American Motors Corp.*, 440 A.2d 810, 814 (Conn. 1981)).

The sole case addressing Kentucky law cited by Anthem (*Holmes v. Countrywide Fin. Corp.*,

2012 WL 2873892, at *13 (W.D. Ky. July 12, 2012)) was decided prior to *Complete Auto,* and is

based only on what a federal district court perceived to be a trend rejecting credit monitoring

expenses as the sole basis for harm, in the then-absence of applicable Kentucky law. As

Plaintiffs' benefit of the bargain allegations are sufficient to establish loss, the Court need not

decide whether Loss of Value of PII or Out-of-Pocket Costs also constitute ascertainable loss.

## V. ANTHEM VIOLATED CALIFORNIA'S UNFAIR COMPETITION LAW.

### A. Plaintiffs Have Alleged Loss Sufficient To Confer Standing Under The UCL.

 California's unfair competition law (Business and Professions Code §17200 *et seq.*, or

"§17200" or "UCL") confers standing on anyone who suffers an "injury in fact"—that is, has

"lost money or property" as a result of the alleged violation. Cal. Bus. & Prof. Code § 17204.

The California Supreme Court summarized the governing standards for economic loss thus:

---

[15] Plaintiff Bailey obtained health care services through a non-Anthem plan (Blue Cross Blue
Shield of Minnesota), and therefore does not bring a KCPA claim against the Anthem
Defendants.

> There are innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary.  Neither the text of Proposition 64 nor the ballot arguments in support of it purport to define or limit the concept of "lost money or property," nor can or need we supply an exhaustive list of the ways in which unfair competition may cause economic harm.

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011) (internal citations omitted); *id*. at 324 ("[T]he quantum of lost money or property necessary to show standing is only so much as would suffice to establish injury in fact [under Article III]."). Plaintiffs have pled injuries and economic loss caused by Anthem's conduct including: 1) Loss of Benefit of the Bargain (CAC ¶¶267, 367); 2) Loss of Value of PII (CAC ¶¶267, 367);[16] 3) Out-of-Pocket Costs (CAC ¶¶267).

Plaintiffs' allegations regarding the benefit of the bargain fall squarely within the holding of *Kwikset* that economic loss includes paying more or acquiring less in a transaction than one should have. 51 Cal. 4th at 323; *see also In re Facebook Privacy Litig*., 791 F. Supp. 2d 705, 715 (N.D. Cal. 2011) ("a plaintiff who is a consumer of certain services (i.e., who "paid fees" for those services) may state a claim under [the UCL] when a company, in violation of its own policies, discloses personal information about its consumers to the public"); *cf. Doe 1 v. AOL LLC*, 719 F. Supp. 2d 1102, 1111 (N.D. Cal. 2010) ("AOL's collection and disclosure of members' undeniably sensitive information is not something that members bargained for when they signed up and paid fees for AOL's service."). Anthem invents a requirement that Plaintiffs must show they "received no benefit" in exchange for money paid, but that is not what *Kwikset* says.  MTD at 14. Anthem also cites this Court's decision in *In re Adobe Systems*, 66 F.Supp.3d at 1224, for the proposition that Plaintiffs must allege they would not have paid as much in premiums as they did had they known of Defendants' poor data security practices, but Plaintiffs have pled that they would not have purchased it at all. CAC ¶¶249, 267(g), (h).[17]

---

[16] In light of *Facebook Privacy*, 572 Fed. Appx. 494 (9th Cir. 2014), Plaintiffs do not argue here that the Loss of Value of PII constitutes economic injury for purposes of the UCL.

[17] Unlawful and unfair practice claims (unlike misrepresentation) require no such allegation.

*Kwikset* also recognizes economic loss where a plaintiff is "required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." 51 Cal. 4th at 323. Credit monitoring and repair time and costs fit squarely within this rubric. *See Corona*, 2015 WL 3916744, at *5; *Witriol v. LexisNexis Grp.*, 2006 WL 4725713, at *6 (N.D. Cal. Feb. 10, 2006); *cf. In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1159 (D. Minn. 2014) (unreimbursed expenses sufficient injury for standing).

The conclusion in *In re Sony Gaming Networks & Customer Data Sec. Breach Litig. ("Sony I"),* 903 F. Supp. 2d 942, 966 (S.D. Cal. 2012) that "time and money" spent mitigating identity theft were not economic loss for purposes of §17200 is not consistent with *Kwikset*. Moreover, *Sony* cites only *Ruiz v. Gap, Inc.*, but as discussed earlier *Ruiz* does *not* hold, as Anthem asserts (MTD at 15), that time and money spent on credit monitoring "is not" economic loss. *Supra* at 9. *Kwikset* also holds that deprivation of money or property to which an individual has "a cognizable claim" constitutes economic loss. 51 Cal.4th at 323. As described above, many California Plaintiffs suffered tax fraud, and were deprived of the time-value of their money (interest) by the delay in receiving their anticipated refund. *Supra* at 10. Plaintiffs have also adequately pled a logical and temporal connection between the injuries suffered and Anthem's poor security practices, defeating Anthem's argument that Plaintiffs have failed to establish causation with respect to the Out-of-Pocket Losses. MTD at 17. *Supra* at 10.

Anthem also asserts that Plaintiffs cannot claim the remedy of restitution "because the Anthem Defendants are not alleged to have profited or benefited from the cyberattack," citing *Sony I*, 903 F. Supp. 2d at 970. MTD at 17 n. 10. But *Sony I* held that restitution was not an available remedy where *plaintiffs had not paid anything to the defendant*. *Id.* Restitution is available where, as here, Plaintiffs allege that they paid premiums and that Anthem may therefore be compelled to "to return money obtained through an unfair business practice to persons in interest from whom the property was taken." *Sony I*, 903 F. Supp. 2d at 970.

## B.    Plaintiffs Have Alleged Unlawful, Unfair and Fraudulent Business Practices.

1. <u>Unlawful.</u>  "Virtually any law—federal, state, or local—can serve as a predicate" for a Section 17200 action. *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1335 (2009) (internal

15

quotation marks omitted). The 200-page CAC alleges in detail the various statutes and common law duties that Anthem has violated, and the facts supporting those claims, and summarizes those allegations in support of the unlawful acts that form the predicate for the §17200 claim at CAC ¶366. *See, e.g.* CAC ¶¶177-183 (duties under HIPAA and other federal statutes); CAC ¶¶240-250, 258-260 (duties breached under HIPAA and other statutes); CAC ¶366(g) (California Insurance Information and Privacy Protection Act). Anthem makes no substantive argument that the allegations of unlawful conduct under any of the statutes named in the CAC and incorporated as violations of §17200 do not state a claim. MTD at 17-18. Its only argument is that CAC ¶366 is insufficiently detailed, but Plaintiffs are not required to repeat all of the previous allegations incorporated by reference. *Adobe*, 66 F. Supp. 3d at 1227.

2. <u>Unfair</u>. Anthem incorrectly argues that Plaintiffs have failed to state a claim of "unfair" conduct in violation of §17200, because Plaintiffs failed to allege that Anthem's actions were "immoral, unethical, oppressive, or unscrupulous." MTD at 18 (citing *Silcox v. State Farm Mut. Auto. Ins. Co*., 2014 WL 7335741 (S.D. Cal. Dec. 22, 2014)). Plaintiffs are not required to do so under any of the three tests used by California courts to determine "unfair" conduct for purposes of §17200. *See, e.g*., *McKell v. Washington Mutual, Inc*., 142 Cal. App. 4th 1457, 1473 (2006) (the "balancing test": A business practice is unfair if it "[i] *violates established public policy or* if it is immoral, unethical, oppressive or unscrupulous *and* [ii] causes injury to consumers which outweighs its benefits.") (emphasis added); *Silcox*, 2014 WL 7335741, at *5 (same); *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002) (the "tethering test": A business practice is unfair if it offends an established public policy that is "tethered to specific constitutional, statutory or regulatory provisions."); *Camacho v. Automobile Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006) (the "FTC test": A business practice is unfair if (a) the injury to consumers is substantial; (b) the injury is not outweighed by any countervailing benefits to consumers or competition; and (c) the injury is one that consumers themselves could not reasonably have avoided.); *see also Yanting Zhang v. Superior Court,* 57 Cal. 4th 364, 380 (2013) (acknowledging that the "unfair" standard remains unsettled).

3. <u>Fraudulent.</u> Anthem focuses *only* on the summary allegations in the UCL count (CAC

16

1    ¶366(a)), rather than all the factual allegations set forth in the CAC identifying in detail

2    Anthem's misrepresentations and omissions with respect to data security. MTD at 19; *see* CAC

3    ¶¶161-176, 177-192, 240-260. Plaintiffs have also alleged that the misrepresentations and

4    omissions were material, *and* that they would not have paid money for Anthem's products had

5    Anthem revealed its misrepresentations or the inadequacies in its data security policies. CAC

6    ¶¶190, 249, 267. Anthem asserts that the CAC does not identify misrepresentations or omissions

7    made specifically to the California Plaintiffs, which ignores the allegations that Anthem and all

8    Anthem affiliates, including those operating in California, made omissions and

9    misrepresentations on their websites and in other documents. CAC ¶¶161-176.

10   **VI.    PLAINTIFFS STATE A VALID NEW YORK GBL §349 CLAIM.**

11       **A.    Anthem Engaged in Consumer-Oriented Conduct Impacting Millions.**

12       To assert a claim under New York General Business Law §349 ("GBL"), "a plaintiff

13   must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially

14   misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or

15   practice." *Orlander v. Staples, Inc*., 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker,*

16   *Merrall & Condit Co.*, 967 N.E.2d 675 (N.Y. 2012)). If "the conduct at issue can 'potentially

17   affect similarly situated consumers,' the requirement of consumer-oriented conduct is met."

18   *Koch v. Greenberg*, 2015 WL 5711578, at *3 (2d Cir. Sept. 30, 2015) (*quoting Oswego*

19   *Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 741, 745 (N.Y. 1995)).

20   Here, Anthem's conduct affected approximately 80 million individuals, CAC ¶¶204, 239, which

21   will include millions of New Yorkers, easily meeting the standard.

22       The GBL claim is not precluded, as Anthem incorrectly contends (MTD at 19-20),

23   because of the contract claim. *See e.g*., *Orlander*, 802 F.3d at 302 (allowing both GBL and

24   breach of contract claims). In the insurance context, while a "private contract dispute as to policy

25   coverage" for a particular insured is not consumer-oriented, practices that have a "broader impact

26   on consumers at large" are consumer-oriented. *Gaidon v. Guardian Life Ins. Co. of Am*., 725

27   N.E.2d 598, 603 (N.Y. 1999). Anthem's cases involve individual disputes regarding policy

28   coverage, in which each plaintiff alleged "nothing more than a private dispute over insurance

17

1  coverage with no implications to the public at large." *Daniels v. Provident Life & Cas. Ins. Co.*,

2  2001 WL 877329 at *8 (W.D.N.Y. July 25, 2001); *see also Bono v. Monarch Life Ins. Co.,* 2006

3  WL 839412 at *2-3 (W.D.N.Y. Mar. 27, 2006) (cited in MTD at 19-20).

4  **B.      Plaintiffs Suffered Cognizable Injuries.**

5  For a GBL claim, "a plaintiff must prove 'actual' injury . . . though not necessarily

6  pecuniary harm." *Bose v. Interclick, Inc.*, 2011 WL 4343517, at *8 (S.D.N.Y. Aug. 17, 2011)

7  (*citing Oswego*, 647 N.E.2d at 741). Here, Plaintiffs allege Anthem's deceptive practices injured

8  Plaintiffs, including by Loss of the Benefit of the Bargain (CAC ¶267(h)); Loss of PII (CAC

9  ¶¶267, 527); and Out-of-Pocket Costs (CAC ¶¶85-88, 267).

10  Anthem relies on *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009), to argue that

11  Plaintiffs' injury allegations are insufficient because the CAC does not allege any losses

12  "independent of the loss caused by the alleged breach of contract." MTD at 20. But this case is

13  governed by *Orlander*, 802 F.3d 289, not *Spagnola*.  *Orlander* applied a long line of New York

14  cases recognizing a cognizable injury when a plaintiff alleges "on account of a materially

15  misleading practice, she purchased a product and did not receive the full value of her purchase."

16  802 F.3d at 302; *see also Koenig v. Boulder Brands, Inc.*, 995 F.Supp.2d 274, 288-89 (S.D.N.Y.

17  2014). Unlike the plaintiff here, the plaintiff in *Spagnola* alleged that he *did* receive the full value

18  of his purchase (but claimed the price was incorrect for other reasons). *Spagnola*, 574 F.3d at 74.

19  As the Second Circuit explained in *Orlander*, plaintiffs in the *Spagnola* line of cases "alleged

20  damages in the amount of the purchase price, but failed to allege that defendants had denied

21  them the services for which they contracted." 802 F.3d at 302.  Plaintiffs here allege that

22  Defendants have denied them services.

23  Anthem also incorrectly claims that a "loss of privacy" is not a cognizable injury. MTD

24  at 20. But New York courts have recognized privacy violations as injuries for GBL claims. *See*

25  *Meyerson v. Prime Realty Services, LLC*, 796 N.Y.S. 2d 848, 856 (N.Y. Sup. Ct. 2005) ("[I]t

26  cannot be doubted that a privacy invasion claim—and an accompanying request for attorney's

27  fees—may be stated under GBL § 349 based on nonpecuniary injury . . . "); *see also Bose*, 2011

28  WL 4343517, at *9. Anthem relies only on *In re Sony Gaming Networks & Customer Data Sec.*

1    *Breach Litig.* ("*Sony II*"), 996 F. Supp. 2d 942, 1004 (S.D. Cal. 2014), which distinguished

2    *Meyerson* and *Bose* because the defendants in those cases intentionally violated plaintiffs'

3    privacy. *Id.* at 1004. This Court should not adopt *Sony II*'s reasoning because the injury inquiry

4    should not differ depending on the causal mechanism by which plaintiffs are injured. Plaintiffs

5    have suffered the exact same injury as in *Meyerson*—unconsented disclosure of Social Security

6    numbers. CAC ¶ 205. The *Meyerson* decision was grounded in the finding that the plaintiff's

7    privacy was violated because there is "a broad recognition of the confidential nature of a social

8    security number." *Meyerson*, 796 N.Y.S.2d at 852.  (In *Sony II*, there were no allegations that

9    plaintiffs' Social Security numbers were accessed.)

10       Anthem incorrectly contends that credit monitoring costs incurred (CAC ¶¶85-88, 267)

11   cannot be sufficient injury under *Shafran v. Harley-Davidson, Inc.,* 2008 WL 763177, at *3

12   (S.D.N.Y. Mar. 20, 2008), a stolen laptop case where the court found the risk of identity theft

13   "speculative." In contrast, the risk of identity theft from the information stolen in this case,

14   intentionally and directly mined from Anthem's databases by criminals, is very real, and credit

15   monitoring time and expense were reasonably incurred. *See Remijas*, 794 F.3d at 694; *Anderson*

16   *v. Hannaford Bros. Co.*, 659 F.3d 151, 166 n.11 (1st Cir. 2011) (distinguishing *Shafran* from

17   cases where "thieves accessed and misused the data, resulting in thousands of fraudulent

18   charges"). Finally, Anthem again ignores the time-value of money, which is an economic loss,

19   when it denies that a delayed tax return is a cognizable injury. MTD at 20-21.

20       **C.    Anthem's Deceptive Acts Caused Plaintiffs' Injuries.**

21       Under the GBL, deceptive acts and practices are "representations or omissions … likely

22   to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego*, 647

23   N.E.2d at 745. Plaintiffs allege violations of the GBL based both on omissions of material fact

24   (Anthem's failure to tell customers of its inadequate data security practices) (CAC ¶ 526(c)) and

25   affirmative misrepresentations (CAC ¶¶526(a); 162-170 (describing misrepresentations in

26   detail)). Plaintiffs allege that Anthem's deceptive practices caused Plaintiffs' injuries, CAC ¶

27   527, including by depriving Plaintiffs of the benefit of their bargain. CAC ¶ 267.

28       Anthem contends that Plaintiffs have not adequately alleged causation because they did

not plead that they saw the misleading misrepresentations prior to making their purchase

decisions. MTD at 21. Because consumers enroll in health insurance annually, the reasonable

inference is that Plaintiffs did see at least Anthem's mailed misrepresentations before re-

enrolling each year. Moreover, Anthem cannot and does not make the same contention regarding

Plaintiffs' omission allegations. For omissions allegations, Plaintiffs need not allege they saw

Anthem's representations. *See e.g., Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 40, 44

(S.D.N.Y. 2008) ("plaintiffs' theory of the case … is one of omission and nondisclosure. Given

that theory, it does not appear that it will be critical to the case in connection with the alleged

claims to individually examine whether [plaintiff] actually reviewed the terms…").

Anthem, citing *Resnick v. AvMed, Inc.*, 693 F.3d 1317 (11th Cir. 2012) contends that

New York Plaintiffs' allegations of causation for their fraudulent tax returns are insufficient.

MTD at 21. However, Plaintiffs have plead facts showing that "their contention that the data

breach caused the identity theft is plausible." 693 F.3d at 1327. Following the Anthem Data

Breach, Plaintiff Cerro and Gates were notified by the IRS of tax fraud for 2014. CAC ¶¶86-87.

Crucially, the data stolen—names, birth dates, Social Security numbers, home addresses, and

employment and income data—is precisely the information needed to file a fraudulent tax return.

Plaintiffs pled both a logical and temporal relationship.  *Stollenwerk*, 254 F.Appx. at 668.

## VII.  ANTHEM VIOLATED THE GEORGIA INSURANCE INFORMATION ACT.

### A.  Anthem Disclosed Plaintiffs' Personal Information.

The Georgia Insurance Information and Privacy Act ("IIPA") protects insureds from the

unauthorized disclosure of confidential information collected from them by insurance companies

during insurance transactions.[18] There is no merit to Anthem's argument that it did not "disclose"

information in violation of the IIPA because it did not affirmatively authorize the hackers to

access it. MTD at 22. Anthem reads "disclose" so narrowly that it contradicts the purpose of the

Act, to require insurance companies to protect the confidentiality of the information in their care.

---

[18] "An insurance institution, agent, or insurance-support organization shall not disclose any personal or privileged information about an individual collected or received in connection with an insurance transaction unless [listing specific exceptions]." Ga. Code Ann. §33-39-14.

1    Anthem's construction has no support in the statutory text, purpose or case law.  There is

2  no dispute that Personal Information was accessed while in Anthem's care, and as Plaintiffs

3  contend, that unauthorized access resulted from Anthem's actions that were at best negligent and

4  at worst knowing. The term "disclose" as used in this statute must include, at a minimum, the

5  negligent release of protected information to unauthorized individuals, as to hold otherwise

6  would undermine the purposes of the Act.[19] The Georgia Legislature created the statute to

7  establish "standards" for the "collection, use, and disclosure" by insurance companies, in order to

8  "maintain a balance between the need for information by those conducting the business of

9  insurance and the public's need for fairness in insurance information practices." Ga. Code Ann.

10  §33-39-1. To maintain such a balance in today's online world, the statute's mandate that

11  insurance entities "shall not disclose" information, *id.* at §33-39-14, should be read to cover

12  disclosures resulting from a failure to safeguard confidential electronically stored information.

13  *See generally Shames-Yeakel v. Citizens Fin. Bank*, 677 F. Supp. 2d 994, 1008 (N.D. Ill. 2009)

14  (stating, in the context of a negligence claim, that if a banks' "duty not to disclose information"

15  was "to have any weight in the age of online banking," they "must certainly employ sufficient

16  security measures to protect their customers' online accounts").

17    Moreover, the Georgia Legislature broadly mandated that insurance entities "shall not

18  disclose" certain private information, but did not specify that "disclose" required an affirmative

19  act.  Compare Ga. Code Ann. §33-39-14 with §33-39-23 ("Any person who *knowingly and*

20  *willfully* obtains information about an individual from an insurance institution, agent, or

21  insurance-support organization under false pretenses shall be guilty of a misdemeanor."

22  (emphasis added)). The Court should not read an unwritten requirement into the statute.

23    No case cited by Anthem holds otherwise. None involve violations of Ga. Code Ann.

24  §33-39-14 (or even interpret "disclose" in the context of a comparable IIPA), and all involve

25  inapposite claims with distinct elements.  *Galaria v. Nationwide Mut. Ins. Co.*, 998 F. Supp. 2d

26  646, 661-62 (S.D. Ohio 2014) (publicity of a private fact); *Willingham v. Glob. Payments, Inc.*,

27

28  [19] Discovery will reveal what actions were and were not taken by Anthem's employees that
provided cyber-hackers with access to this information unimpeded.  See CAC ¶ 215.

21

1  2013 WL 440702, at *13 (N.D. Ga. Feb. 5, 2013) ("furnishing" of data); *Worix v. MedAssets,*

2  *Inc.*, 857 F. Supp. 2d 699, 701 (N.D. Ill. 2012) ("knowingly divulg[ing]" information).

3       **B.**    **Plaintiffs Have Alleged Actual Damages Caused By The Data Breach.**

4       The named Plaintiffs who reside in Georgia all were damaged by 1) Loss of Benefit of

5  the Bargain; 2) Loss of the Value of PII; 3) Out-of-Pocket Costs; and 4) Risk of Imminent

6  Identity Theft. CAC ¶¶36-41, 267, 800-804. Anthem argues that these allegations do not state a

7  claim for actual damages under the GA IPPA, but cite no case law rejecting these types of

8  damages under Georgia law in general, the GA IPPA damages provision (§33-39-21), or the

9  damages provision of any comparable state IIPA. MTD at 23. Anthem has therefore given this

10  Court no valid basis to reject Plaintiffs' allegations.

11  **VIII.   PLAINTIFFS' CLAIMS ARE NOT PREEMPTED BY ERISA.**

12       ERISA does not preempt California Plaintiffs Coonce and Tharp's breach of contract

13  claims or New York Plaintiff Gates' unjust enrichment and GBL claims. MTD at 10-12, 22.[20]

14  Anthem makes conclusory arguments for both "(1) 'express' preemption under ERISA §514(a),

15  29 U.S.C. §1144(a); and (2) preemption due to a 'conflict' with ERISA's exclusive remedial

16  scheme set forth in [ERISA §502(a),] 29 U.S.C. § 1132(A)," *Paulsen v. CNF Inc.*, 559 F.3d

17  1061, 1081 (9th Cir. 2009), but ignores binding authority limiting both preemption doctrines.

18       A. Express Preemption. 29 U.S.C. §1144(a) preempts state laws that "relate to" ERISA

19  plans. A law "relates to" an ERISA plan only if it has a "connection with or reference to such a

20  plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983).[21]   A claim has a "connection"

---

[20] The Court may decline to reach this argument altogether, because it is improperly based on extrinsic evidence.  Anthem does not argue that ERISA preempts other Plaintiffs' claims.  Many Plaintiffs obtained insurance individually or through government employers, and are not covered by ERISA.  29 U.S.C. §§ 1002 (32), 1003(b)(1); *see, e.g.,* CAC ¶¶15, 16.

[21] There is no preemption if the relationship is "too tenuous, remote or peripheral." *Id.* at 100 n.21.  Anthem does not and cannot argue that Plaintiffs' claims have a "reference to" ERISA plans, which means "acts immediately and exclusively upon ERISA plans" or "the existence of [an] ERISA plan[] is essential to the law's operation." *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A.*, 519 U.S. 316, 325-326 (1997).  State laws of general applicability are not preempted. *See Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 838 n.12 (1988) (contrasting treatment of two state laws).

with an ERISA plan if it mandates employee benefit structures or their administration, binds

employers or plan administrators to particular choices or precludes uniform administrative

practice, provides alternative enforcement mechanisms to obtain ERISA plan benefits, or

impinges upon traditional ERISA relationships. *Arizona State Carpenters Pension Trust Fund v.*

*Citibank*, 125 F.3d 715, 723-24 (9th Cir. 1997) (citation omitted).[22] "Benefits" has particular

meaning under ERISA, and refers to medical care, not data security. 29 U.S.C. §1002(1).[23]

Plaintiffs' breach of contract and unjust enrichment claims are not preempted because

Anthem's data privacy promise is not an ERISA plan "benefit" and Plaintiffs do not seek a

benefits-related remedy, and because resolution of the claims does not depend on an obligation

imposed by ERISA or encroach on ERISA relationships. The Ninth Circuit has allowed state law

contract claims involving ERISA plans and ERISA-regulated parties to go forward, even in cases

where the promises at issue were contained in ERISA plans (which may not be the case here,

*infra* at 25), so long as the claim was not an alternative mechanism for a plan participant to

obtain plan benefits.  *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1172 (9th Cir. 2004)

(no preemption of breach of contract claim by insurer against plan participants who breached

reimbursement promises in their ERISA plan because no dispute over benefits); *Geweke Ford v.*

*St. Joseph's Omni Preferred Care Inc.*, 130 F.3d 1355,  1357-59 (9th Cir. 1997). The contract

provisions breached here promise protection for privacy, not benefits.  Holding insurers (or even

ERISA plan administrators) liable for violations of privacy does not interfere with uniform plan

administration. *Dishman v. UNUM Life Ins. Co. of America*, 269 F.3d 974, 982, 984 (9th Cir.

2001) (even if privacy violations occur in the course of plan administration, this "peripheral[]

impact" is insufficient to warrant preemption).  In contrast, Anthem's cases involve claims for

---

[22] ERISA-regulated relationships are those between "plan and plan member, between plan and
employer, between employer and employee."  *Paulsen*, 559 F.3d at 1082.

[23] ERISA plan benefits are only "medical, surgical or hospital care or benefits, or benefits in the
event of sickness, accident, disability, death or unemployment, or vacation benefits,
apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal
services."  *Id.*

1   plan benefits.  *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1034 (9th Cir. 2000); *Bose v.*

2   *Horizon Blue Cross Blue Shield of New Jersey*, 2014 WL 1293861, *9 (D.N.J. March 31, 2014).

3          Gates' GBL claim is not expressly preempted because it rests upon Anthem's omissions

4   and misrepresentations of material fact regarding data security, not benefits. *See Venturino v.*

5   *First Unum Life Ins. Co.*, 724 F.Supp.2d 429, 432-33 (S.D.N.Y. 2010) (GBL claim not

6   preempted); *Nutrishare, Inc. v. Connecticut General Life Ins. Co.*, 2014 WL 1028351, *6 (E.D.

7   Cal. Mar. 14, 2014) (UCL claims not preempted even though ERISA plan must be consulted).

8   Anthem's GBL cases, by contrast, involve recovery of ERISA benefits. MTD at 22, *citing Bloom*

9   *ex rel. Estate of Bloom v. Cigna Corp.*, 2004 WL 2793207, *2 (S.D.N.Y. Dec. 3, 2004); *Berry v.*

10  *MVP Health Plan, Inc.*, 2006 WL 4401478, *6-7 (N.D.N.Y. Sept. 30, 2006) (portion of GBL

11  claim that did not challenge benefits determination not preempted).

12         B. <u>Complete/Conflict Preemption.</u>  Claims are only preempted if they meet *both* prongs

13  of the Ninth Circuit's test for conflict preemption:  (1) the plaintiff, "at some point in time, could

14  have brought the claim under ERISA § 502(a)(1)(B)," and (2) "there is no other independent

15  legal duty that is implicated by a defendant's actions." *Marin Gen. Hosp. v. Modesto & Empire*

16  *Traction Co.*, 581 F.3d 941, 946-47 (9th Cir. 2009) (quoting *Aetna Health Inc. v. Davila*, 542

17  U.S. 200, 210 (2004)). Neither prong is satisfied here.

18         Gates' GBL claim alleges that Anthem omitted and/or misrepresented the material fact

19  that it had substandard data security. CAC ¶¶525-529.  It could not have been brought under

20  ERISA §502(a)(1)(B), because it does not seek to enforce rights under an ERISA plan, but is

21  instead based on Anthem's deceptive acts.  *See Venturino,* 724 F.Supp.2d at 432-33 (GBL claim

22  of deception in marketing and issuing insurance policies not preempted).  Also, Anthem's duty

23  not to engage in deceptive trade practices arises separately from any ERISA obligations it may

24  have.  *Id.* (no preemption of GBL claim that deception "causes an insured person to pay

25  premiums without getting what he bargained for in return"). *See also Nutrishare,* 2014 WL

26  1028351, at *6-7 (no preemption of UCL or fraud claims). Gates' unjust enrichment claim also

27  involves an independent duty—to provide data security. *See Dishman,* 269 F. 3d at 983-84 (no

28  preemption; invasion of privacy independent of benefits claim).

1    Anthem's argument for preemption of Coonce and Tharp's breach of contract claim, and

2    Gates' unjust enrichment claim, is based on extrinsic evidence not properly considered on a

3    12(b)(6) motion, and must be denied. Claims are conflict preempted only if they could have been

4    brought under ERISA §502(a)(1)(B), which allows a participant to sue to "recover benefits due

5    to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify

6    his rights to future benefits under the terms of the plan." 29 U.S.C. §1132(a)(1)(B).  ERISA

7    requires that plans be maintained pursuant to a written plan instrument. 29 U.S.C. §1103(a).

8    Only claims for relief *under the terms of the plan* may be brought under ERISA §502(a)(1)(B).

9    *CIGNA Corp. v. Amara*, 563 U.S. 421, 436-438 (2011) (summary plan descriptions, or SPDs, are

10   not "the terms of the plan" and are not enforceable under ERISA §502(a)(1)(B)).

11   The CAC specifically alleges that the applicable contract is "not the employer benefits

12   plan document." CAC ¶303(b).  This is plausible.  *See Van Alstine v. CIGNA*, 73 Fed. Appx.

13   956, 957 (9th Cir. Cal. 2003) ("The insurance policy that implements the [ERISA] plan's

14   requirement to arrange for the provision of certain benefits is not, itself, the plan.").[24] There is no

15   preemption when plaintiffs sue to enforce the terms of some contract other than the ERISA plan.

16   *Marin Gen.,* 581 F.3d at 946-47.  Anthem appears to argue that the Hicks and Gorman exhibits

17   are ERISA plans that Plaintiffs could enforce under ERISA.  MTD at 10-12.  Hicks Ex. 2 and

18   Gorman Ex. 1 are non-enforceable SPDs, and Hicks Ex. 1 is an Evidence of Coverage that

19   applies to both ERISA and non-ERISA plans.  ECF 411-2 at 25.  At the least, there is a dispute

20   of fact as to what is the applicable ERISA plan that could be enforced pursuant to ERISA

21   §502(a)(1)(B).  This issue is one of fact that cannot be decided on a 12(b)(6) motion.  *See Fraley*,

22   830 F.Supp.2d at 794-95 (consideration of extrinsic documents improper unless complaint relies

23   on document and there is no dispute as to document's authenticity and relevance).

24   _____

25   [24] The CAC here is different from the complaints that this Court declined to remand to state court
     on grounds of complete ERISA preemption, in which Anthem was alleged to have breached

26   promises that were included in the plaintiffs' ERISA plans. Those plaintiffs did not contest that
     the attached insurance policies were ERISA plans.  ECF 274 at 7-9; ECF 417 at 6-7.  Though

27   some pre-*Amara* cases have assumed that the policy is the ERISA plan, one cannot determine
     that from the face of the policy.  *See, e.g., Cinelli v. Sec. Pac. Corp.*, 61 F.3d 1437, 1440-44 (9th

28   Cir. 1995) (detailed factual examination to determine that insurance policy was ERISA plan).

**COHEN MILSTEIN SELLERS & TOLL PLLC**
ANDREW N. FRIEDMAN
GEOFFREY GRABER
SALLY M. HANDMAKER
ERIC KAFKA

Dated:  December 21, 2015          By: /s/ Andrew N. Friedman _____

**ALTSHULER BERZON LLP**
EVE H. CERVANTEZ
JONATHAN WEISSGLASS
DANIELLE E. LEONARD
MEREDITH A. JOHNSON

Dated:  December 21, 2015          By: /s/ Eve H. Cervantez _____

*Lead Plaintiffs' Counsel*

**GIRARD GIBBS LLP**
ERIC GIBBS
DAVID M. BERGER
1 Kaiser Plaza, Suite 1125
Oakland, California 94612
Telephone:  (510) 981-4800
Facsimile:  (415) 981-4846

**LEIFF CABRASER HEIMANN &
BERNSTEIN, LLP**
MICHAEL W. SOBOL
NICOLE D. SUGNET
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339

*Plaintiffs' Steering Committee*