Craig A. Hoover, SBN 113965
E. Desmond Hogan (admitted *pro hac vice*)
Peter R. Bisio (admitted *pro hac vice*)
Allison M. Holt (admitted *pro hac vice*)
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, NW
Washington, DC 20004
Tel:  (202) 637-5600
Fax:  (202) 637-5910
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com
peter.bisio@hoganlovells.com
allison.holt@hoganlovells.com

Michael M. Maddigan, SBN 163450
**HOGAN LOVELLS US LLP**
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 785-4600
Fax: (310) 785-4601
michael.maddigan@hoganlovells.com

*Attorneys for Defendants Anthem, Inc. and related parties*
Additional Defendants and Defendants' Counsel Listed on
Signature Page

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| IN RE ANTHEM, INC. DATA BREACH LITIGATION | Case No.  5:15-MD-02617-LHK<br><br>**THE ANTHEM DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>The Honorable Lucy H. Koh<br><br>Date:         February 4, 2016<br>Time:        1:30 p.m.<br>Courtroom:  8, 4th Floor |

# TABLE OF CONTENTS

I.     PLAINTIFFS FAIL TO STATE AN INDIANA NEGLIGENCE CLAIM........................ 1

II.    PLAINTIFFS' CALIFORNIA BREACH OF CONTRACT CLAIM FAILS. ................... 2

    A.    The CAC Fails To Identify The Contractual Provisions Allegedly
        Breached........................................................................................................... 2

    B.    The CAC Fails To Show That Any Breach Caused Contractual Damages. ........... 3

III.   PLAINTIFFS' NEW YORK UNJUST ENRICHMENT CLAIM FAILS........................ 5

IV.   PLAINTIFFS' KCPA CLAIM SHOULD BE DISMISSED. ........................................... 6

    A.    The KCPA Prohibits Class Actions. ................................................................. 6

    B.    Plaintiffs Have Not Alleged Any Ascertainable Loss Of Money Or
        Property. ........................................................................................................... 6

V.    PLAINTIFFS' UCL CLAIMS SHOULD BE DISMISSED. ........................................... 7

    A.    Plaintiffs Lack Standing Under The UCL. ....................................................... 7

    B.    The CAC Does Not Allege Unlawful, Unfair, Or Fraudulent Conduct. ............. 9

VI.   PLAINTIFFS' NEW YORK GENERAL BUSINESS LAW § 349 CLAIM
    FAILS. ......................................................................................................................... 10

    A.    Plaintiffs Do Not Allege Consumer-Oriented Conduct. ..................................... 10

    B.    Plaintiffs Do Not Allege Any Cognizable Injuries. ............................................ 10

    C.    The CAC Fails To Allege Deceptive Acts That Caused Plaintiffs Harm. ........... 11

VII.  PLAINTIFFS' GEORGIA IIPPA CLAIM FAILS. ..................................................... 12

    A.    A Third-Party Cyberattacker "Stole" Plaintiffs' Information. .............................. 12

    B.    Plaintiffs Have Not Alleged Any Actual Damages. ............................................ 13

VIII. ERISA PREEMPTS CERTAIN PLAINTIFFS' CLAIMS. ........................................... 14

CONCLUSION ..................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Health Inc. v. Davila,*
542 U.S. 200 (2004) ...................................................................................................14

*Ammari Elecs. v. Pac. Bell Directory,*
No. A126326, 2011 WL 5547588 (Cal. Ct. App. Nov. 15, 2011) ............................3

*Anderson v. Hannaford Bros. Co.,*
659 F.3d 151 (1st Cir. 2011) ...................................................................................10

*Arnold v. Microsoft Corp.,*
No. 00-CI-00123, 2000 WL 36114007 (Ky. Cir. Ct. July 21, 2000) ........................6

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...............................................................................................7, 11

*Bono v. Monarch Life Ins. Co.,*
No. 05-CV-281S, 2006 WL 839412 (W.D.N.Y. Mar. 27, 2006) ...........................10

*Bose v. Interclick, Inc.,*
No. 10 Civ. 9183 (DAB), 2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011) ..............11

*Brummett v. Skyline Corp.,*
No. C 81-0103-L(B), 1984 WL 262559 (W.D. Ky. Apr. 11, 1984) .........................6

*Chavez v. Blue Sky Natural Beverage Co.,*
340 Fed. App'x 359 (9th Cir. 2009) ..........................................................................4

*Clark v. Bellsouth Telecommunications, Inc.,*
461 F. Supp. 2d 541 (W.D. Ky. 2006) .......................................................................6

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.,*
70 N.Y.2d 382 (1987) ................................................................................................6

*Coates v. Lake View Oil & Ref. Co.,*
20 Cal. App. 2d 113 (1937) .......................................................................................4

*Complete Auto. Repair Servs. v. Capps,*
No. 2012-CA-002145-MR, 2015 WL 2445911 (Ky. Ct. App. May 22, 2015) .........7

*Corona v. Sony Pictures Entm't,*
No. 14-CV-09600 RGK EX, 2015 WL 3916744 (C.D. Cal. June 15, 2015)..........2, 8

*Coughlin v. Blair,*
41 Cal. 2d 587 (1953) ................................................................................................3

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW

*Daniels v. Provident Life & Cas. Ins. Co.*,
   No. 00-CV-0668E(SC), 2001 WL 877329 (W.D.N.Y. July 25, 2001)....................................10

*Deal v. Coleman*,
   751 S.E.2d 337 (Ga. 2013)..............................................................................................12

*Doe I v. AOL LLC*,
   719 F. Supp. 2d 1102 (N.D. Cal. 2010) ......................................................................7, 8

*Dupler v. Costco Wholesale Corp.*,
   249 F.R.D. 29 (S.D.N.Y. 2008) ................................................................................11, 12

*Edwards v. Arthur Andersen LLP*,
   44 Cal. 4th 937 (2008) .......................................................................................................3

*Erie Ins. Co. v. Hickman by Smith*,
   622 N.E.2d 515 (Ind. 1993) ..............................................................................................2

*Ewert v. eBay, Inc.*,
   602 F. App'x 357 (9th Cir. 2015) ....................................................................................3

*Fraley v. Facebook*,
   830 F. Supp. 2d 785 (N.D. Cal. 2011) .............................................................................4

*Gaidon v. Guardian Life Ins. Co. of America*,
   725 N.E.2d 598 (N.Y. 1999)...........................................................................................10

*Gen. Am. Life Ins. Co. v. Castonguay*,
   984 F.2d 1518 (9th Cir. 1993)........................................................................................15

*GHK Assocs. v. Mayer Grp., Inc.*,
   224 Cal. App. 3d 856 (1990)............................................................................................3

*Goody Products, Inc. v. Dev. Auth. of City of Manchester*,
   740 S.E.2d 261 (Ga. Ct. App. 2013) ..............................................................................13

*Hammond v. The Bank of New York Mellon Corp.*,
   No. 08 CIV. 6060 RMB RLE, 2010 WL 2643307 (S.D.N.Y. Jun. 25, 2010) ..........................13

*Haskins v. Symantec Corp.*,
   No. 13-CV-01834-JST, 2014 WL 2450996 (N.D. Cal. June 2, 2014) ......................................3

*Hendricks v. DSW Shoe Warehouse, Inc.*,
   444 F. Supp. 2d 775 (W.D. Mich. 2006) .......................................................................13

*Hinchliffe v. Am. Motors Corp.*,
   440 A.2d 810 (Conn. 1981)...............................................................................................7

*Hodges v. Apple, Inc.*,
   No. 13-CV-01128-WHO, 2013 WL 4393545 (N.D. Cal. Aug. 12, 2013)..........................9

*Holmes v. Countrywide Fin. Corp.*,
   No. 5:08-CV-00205-R, 2012 WL 2873892 (W.D. Ky. App. July 12, 2012) ...........................7

*Horowitz v. Stryker Corp.*,
   613 F. Supp. 2d 271 (E.D.N.Y. 2009) ..................................................................................12

*In re Adobe Sys., Inc. Privacy Litig.*,
   66 F. Supp. 3d 1197 (N.D. Cal. 2014) ..............................................................................7, 8

*In re eBay Litig.*,
   No. 07-CV-2198 RMW, 2012 WL 3945524 (N.D. Cal. Sept. 10, 2012) .................................3

*In re Facebook Privacy Litig.*,
   791 F. Supp. 2d 705 (N.D. Cal. 2011) ..............................................................................7, 8

*In re Facebook Privacy Litig.*,
   572 F. App'x 494 (9th Cir. 2014) .........................................................................................4

*In re Grand Theft Auto Video Game Consumer Litig.*,
   251 F.R.D. 139 (S.D.N.Y. 2008) ..........................................................................................6

*In re Horizon Healthcare Servs.*,
   No. CIV.A. 13-7418 CCC, 2015 WL 1472483 (D.N.J. March 31, 2015) ..............................11

*In re LinkedIn User Privacy Litig.*,
   932 F. Supp. 2d 1089 (N.D. Cal. 2013) ................................................................................4

*In re Science App. Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
   45 F. Supp. 3d 14 (D.D.C. 2014) .........................................................................................3

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig. ("Sony I")*,
   903 F. Supp. 2d 942 (S.D. Cal. 2012) ...............................................................................8, 9

*In re Sony Gaming Networks and Customer Data Security Breach Litig. ("Sony II")*,
   996 F. Supp. 2d 942 (S.D. Cal. 2014) ...................................................................................9

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   66 F. Supp. 3d 1154 (D. Minn. 2014) ...................................................................................8

*J'Aire Corp. v. Gregory*,
   598 P.2d 60 (1979)................................................................................................................2

*Kashmiri v. Regents of the University of California*,
   156 Cal. App. 4th 809 (2007)................................................................................................2

*Kho v. Pennington*,
   875 N.E.2d 208 (Ind. 2007) .................................................................................................1

*Koch v. Greenberg*,
   No. 14-1712-CV, 2015 WL 5711578 (2nd Cir. Sept. 30, 2015) ..........................................10

Hogan Lovells US
LLP
Attorneys At Law

*Korman v. Consol. Edison Co. of N.Y., Inc.*,
  915 F. Supp. 2d 359 (E.D.N.Y. 2013) ..................................................................14

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) ...........................................................................................8

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) ............................................................4, 13

*McAfee v. Francis*,
  No. 5:11-CV-00821-LHK, 2011 WL 3293759 (N.D. Cal. Aug. 1, 2011) .................2

*Merziotis v. Kaiser Found. Health Plan, Inc.*,
  No. 10CV0686-LAB WVG, 2010 WL 4853888 (S.D. Cal. Nov. 23, 2010) ...........14

*Meyerson v. Prime Realty Services, LLC*,
  796 N.Y.S.2d 848 (N.Y. Sup. Ct. 2005) ..............................................................11

*Miller v. Wells Fargo Bank, N.A.*,
  994 F. Supp. 2d 542 (S.D.N.Y. 2014).................................................................11

*Morey v. Vannucci*,
  64 Cal. App. 4th 904 (1998).................................................................................2

*Moyer v. Michaels Stores, Inc.*,
  No. 14 C 561, 2014 WL 3511500 (N.D. Ill. July 14, 2014) .................................13

*New West Charter Middle School v. Los Angeles Unified School Dist.*,
  187 Cal. App. 4th 831 (2010)...............................................................................3

*Nutrishare, Inc. v. Conn. Gen. Life Ins. Co.*,
  No. 2:13-CV-02378-JAM-AC, 2014 WL 1028351 (E.D. Cal. Mar. 14, 2014).......15

*Orlander v. Staples, Inc.*,
  802 F.3d 289 (2d Cir. 2015)................................................................................12

*Ormond v. Anthem, Inc.*,
  799 F. Supp. 2d 910 (S.D. Ind. 2011) ...............................................................1, 2

*Paulsen v. CNF Inc.*,
  559 F.3d 1061 (9th Cir. 2009).............................................................................15

*People v. Pangan*,
  213 Cal. App. 4th 574 (2013)................................................................................5

*Pisciotta v. Old Nat'l Bancorp*,
  499 F.3d 629 (7th Cir. 2007)................................................................................1

*Randolph v. ING Life Ins. & Annuity Co.*,
  973 A.2d 702 (D.C. 2009)...................................................................................10

*Remijas v. Neiman Marcus Group*,
    794 F.3d 688 (7th Cir. 2015)..........................................................................4, 5

*Ruiz v. Gap, Inc.*,
    No. 07-5739 SC, 2009 WL 250481 (N.D. Cal. Feb. 3, 2009) .........................8

*Ruiz v. Gap, Inc.*,
    622 F. Supp. 2d 908 (N.D. Cal. 2009) ........................................................5, 8

*Sender v. Franklin Res., Inc.*,
    No. C-11-3828 EMC, 2011 WL 5006460 (N.D. Cal. Oct. 20, 2011)........................15

*Shafran v. Harley-Davidson, Inc.*,
    No. 07 CIV. 01365 (GBD), 2008 WL 763177 (S.D.N.Y. Mar. 20, 2008) .........................10, 11

*Shames-Yeakel v. Citizens Fin. Bank*,
    677 F. Supp. 2d 994 (N.D. Ill. 2009) ..........................................................1, 13

*Stollenwerk v. Tri-W. Health Care Alliance*,
    254 F. App'x 664 (9th Cir. 2007) ................................................................5, 12

*Svenson v. Google, Inc.*,
    No. 13-CV-04080-BLF, 2015 WL 1503429 (N.D. Cal. Apr. 1, 2015) ..................3, 4

*Toohey v. CIGNA Corp.*,
    No. CV-09-88-ST, 2009 WL 2169859 (D. Ore. Jun. 24, 2009) ..............................14

*Venturino v. First UNUM Life Ins. Co.*,
    724 F. Supp. 2d 429 (S.D.N.Y. 2010)..........................................................15

*Walgreen Co. v. Hinchy*,
    21 N.E.3d 99 (Ind. Ct. App. 2014)................................................................1

*Walsh v. Walsh*,
    18 Cal. 2d 439 (1941) ..................................................................................2

*Wiebe v. NDEX WEST, LLC*,
    No. SACV10-325 AG RNBX, 2010 WL 2035992 (C.D. Cal. May 17, 2010)..................3

*Witriol v. LexisNexis Grp.*,
    No. C05-02392 MJJ, 2006 WL 4725713 (N.D. Cal. Feb. 10, 2006)..................8

*Young v. Facebook, Inc.*,
    790 F. Supp. 2d 1110 (N.D. Cal. 2011) ......................................................2

**Statutes**

29 U.S.C. § 1132(a)(1)(B)...........................................................................15

29 U.S.C. § 1144(a) ....................................................................................14

Cal. Civ. Code § 56 .................................................................................................9

Cal. Civ. Code § 1798.82 .........................................................................................9

Ga. Code Ann. § 33-39-21 .....................................................................................13

Ga. Code Ann. § 33-39-14 ...............................................................................12, 13

Ky. Rev. Stat. Ann. § 367.220 .................................................................................6

N.Y. Gen. Bus. Law § 349 .....................................................................................10

Hogan Lovells US
LLP
Attorneys At Law

- vii -

ANTHEM DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
Case No. 5:15-MD-02617-LHK

1    Plaintiffs' Opposition does nothing to cure the CAC's insufficient allegations.  Each of the

2 eight claims still asserted against the Anthem Defendants and at issue here should be dismissed.[1]

3 ## I.      PLAINTIFFS FAIL TO STATE AN INDIANA NEGLIGENCE CLAIM.

4    Plaintiffs argue that the Court should not follow *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d

5 629, 637 (7th Cir. 2007), because the Indiana database security statute has been amended, *see*

6 Opp. at 3-4, but the amendment does nothing to alter the fundamental holding of *Pisciotta*.

7 *Pisciotta* found that a Plaintiff could not bring a common law negligence claim because, in

8 addition to enumerating database owners' duties, the statute expressly provides—and Plaintiffs

9 cannot deny—that only the Indiana Attorney General may enforce the statute.  *See* P.L.137-2009,

10 Sec. 5; *see also Pisciotta*, 499 F.3d at 637 ("Had the Indiana legislature intended that a cause of

11 action should be available against a database owner for failing to protect adequately personal

12 information, we believe that it would have made some more definite statement of that intent.").

13 None of the cases Plaintiffs cite in which courts referenced statutory violations in explaining

14 duties of care involve the database security statute or suggests that *Pisciotta* was wrongly

15 decided.[2]  Allegations that the Anthem Defendants failed to comply with HIPAA add nothing to

16 the analysis because there is no private right of action for a HIPAA violation—a point Plaintiffs

17 do not dispute—and Plaintiffs cannot circumvent that limitation with a common law negligence

18 claim, *see* MTD at 2 n.3.

19    Plaintiffs' arguments regarding the economic loss doctrine also are misplaced.  Plaintiffs

20 rely on *Ormond v. Anthem, Inc.*, 799 F. Supp. 2d 910 (S.D. Ind. 2011), for the proposition that the

21 Anthem Defendants had a "fiduciary or quasi fiduciary relationship with Plaintiffs."  Opp. at 5.

22 But *Ormond* is inapposite because it addressed the narrow issue of whether a *mutual* insurance

23 company had a fiduciary duty to its member/owners in connection with a *demutualization*.

24

25 [1] Plaintiffs have withdrawn their ninth claim against the Anthem Defendants.  *See* Opp. at 11.

26 [2] *Kho v. Pennington*, 875 N.E.2d 208 (Ind. 2007), involved the Indiana Medical Malpractice
Statute.  *Walgreen Co. v. Hinchy*, involved "professional malpractice."  21 N.E.3d 99, 109-10

27 (Ind. Ct. App. 2014).  And in *Shames-Yeakel v. Citizens Fin. Bank*, the bank did "not dispute that
it had a duty to protect Plaintiffs' account from fraudulent access" under cases holding that "a

28 bank 'has a duty not to disclose information concerning one of its customers unless it is to
someone who has a legitimate public interest.'" 677 F. Supp. 2d 994, 1008 (N.D. Ill. 2009).

*Ormond*, 799 F. Supp. 2d at 935-37.  Further, *Ormond* expressly recognized that "the relationship between a policyholder and the insurance company" is a "'contractual relationship'" that is "'at times a traditional arms-length dealing between two parties, . . . at times one of a fiduciary nature, and, at other times, an adversarial one.'"  *Id.* at 935-36 (quoting *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 518 (Ind. 1993)).  The CAC alleges no facts showing a fiduciary relationship.  Plaintiffs' conclusory allegations regarding that relationship, CAC ¶ 288, Opp. at 5, are insufficient to state a claim.  *See* MTD at 3.[3]  Thus, the economic loss doctrine applies.

## II.    PLAINTIFFS' CALIFORNIA BREACH OF CONTRACT CLAIM FAILS.

### A.    The CAC Fails To Identify The Contractual Provisions Allegedly Breached.

The CAC fails to "allege the specific provisions" of contracts the Anthem Defendants allegedly breached as required.  *See Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011).  Plaintiffs' arguments cannot supply contract terms where they do not exist and thus fail to save the claims of the eight California Plaintiffs.[4]  These Plaintiffs do not rely on the actual "Anthem plan" contracts, but rather on privacy policies they allege were mailed or posted online. Opp. at 5-6 (citing CAC ¶¶ 4, 161-70).  They argue that whether these documents—despite being outside the four corners of the applicable contracts—"became terms of Anthem's insurance contracts" is a "dispute" that cannot be resolved now.  *Id.* at 6.  But there can be no "dispute" created by the CAC where Plaintiffs alleged *no facts* showing how the "privacy policy" promises supposedly became incorporated contract terms.[5]  See Opp. at 6; CAC ¶¶ 302-11.

Further, Plaintiffs do not defend their "alternative theories of contract formation," claiming only that the Court "need not resolve now" challenges to them.  Opp. at 6 n.7. Plaintiffs' desire to avoid the issue—including not addressing *McAfee v. Francis*, 2011 WL

---

[3]  Plaintiffs cite *Corona v. Sony Pictures Entm't*, 2015 WL 3916744 (C.D. Cal. June 15, 2015), which is inapposite because it found a "special relationship" based on different allegations and the 6-factor *J'Aire Corp. v. Gregory*, 598 P.2d 60 (1979) test, which does not apply in Indiana.

[4]  Plaintiffs concede that the other three California Plaintiffs—Blanchard, Brisko, and Lawson— do not state a breach of contract claim against the Anthem Defendants.  *See* Opp. at 5-6 n.6.

[5]  The cases Plaintiffs cite do not support their argument.  *Morey v. Vannucci*, 64 Cal. App. 4th 904 (1998), and *Walsh v. Walsh*, 18 Cal. 2d 439 (1941), involved disputes over the meaning of certain ambiguous words in express contracts.  *Kashmiri v. Regents of the University of California*, 156 Cal. App. 4th 809 (2007), concerned whether certain obligations were part of an implied contract where no express agreements existed.

3293759 (N.D. Cal. Aug. 1, 2011)—is understandable: the CAC fails to allege facts showing that the privacy policies were supported by consideration or gave rise to enforceable obligations. *See* MTD at 5-6. The CAC also fails to allege facts showing that implied contractual obligations arose out of the provision of health insurance and services or how such implied contracts could exist when Plaintiffs alleged express contracts. *Id.* at 6. Plaintiffs' claims therefore should be dismissed. *See, e.g.*, *Haskins v. Symantec Corp.*, 2014 WL 2450996, at *4 (N.D. Cal. June 2, 2014) (dismissing contract claim where plaintiff failed to plead facts showing how terms "became part" of agreement).[6]

### B.   The CAC Fails To Show That Any Breach Caused Contractual Damages.

Plaintiffs identify three categories of damages in their Opposition, none of which show they suffered contractual damages. First, Plaintiffs' "loss of benefit of the bargain theory," Opp. at 7-8, is flawed because whether a *measure* of damages *could* include a partial refund of a contract price does not mean that Plaintiffs have adequately alleged they suffered actual injury in this case.[7] The CAC's overpayment allegations are conclusory, *see* CAC ¶¶ 267, 309, and are in line with data theft cases holding that such threadbare allegations do not state a cognizable injury. *See, e.g.*, *In re Science App. Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 30 (D.D.C. 2014) (no injury where some indeterminate part of insurance premiums went toward security). Similarly, the court in *Svenson v. Google, Inc.*, 2015 WL 1503429 (N.D. Cal. Apr. 1, 2015), only sustained plaintiff's overpayment theory *after* she amended her complaint to include

---

[6] Plaintiffs claim the Anthem Defendants ignored their "allegation that Anthem breached its promise to comply with applicable laws." Opp. at 6-7. Not so. Those promises allegedly were in privacy policies, which the Anthem Defendants addressed in detail. *See* MTD at 5-6. Further, to state a contract claim under California law Plaintiffs must do more than point to an alleged statutory violation. *See Wiebe v. NDEX WEST, LLC*, 2010 WL 2035992, at *3 (C.D. Cal. May 17, 2010). The single case Plaintiffs cite, *Edwards v. Arthur Andersen LLP*, stands only for the limited proposition that California statutes governing employment contracts cannot be waived. 44 Cal. 4th 937, 945-46, 951-55 (2008).

[7] The cases Plaintiffs cite are distinguishable because they examined the "proper measure of damages" *after* liability had been established. *New West Charter Middle School v. Los Angeles Unified School Dist.*, 187 Cal. App. 4th 831, 844 (2010); *Ammari Elecs. v. Pac. Bell Directory*, 2011 WL 5547588, at *12 (Cal. Ct. App. Nov. 15, 2011) (same); *GHK Assocs. v. Mayer Grp., Inc.*, 224 Cal. App. 3d 856, 873 (1990) (same); *Coughlin v. Blair*, 41 Cal. 2d 587, 600 (1953) (same). Plaintiffs' reliance on *In re eBay Litig.*, 2012 WL 3945524 (N.D. Cal. Sept. 10, 2012) and *Ewert v. eBay, Inc.*, 602 F. App'x 357 (9th Cir. 2015) is similarly misplaced, as these cases involved evidentiary issues after class certification and *rejected* a pro rata refund theory.

1   allegations that an identified portion of the consumer price paid for the "app" purchase was

2   specifically for privacy protections, which are lacking here. *See id.* at *4. Moreover, *Svenson*

3   relied on *Chavez v. Blue Sky Natural Beverage Co.*, 340 Fed. App'x 359 (9th Cir. 2009), which

4   does not apply in a cyberattack case for all the reasons discussed in *In re LinkedIn User Privacy*

5   *Litig. See* 932 F. Supp. 2d 1089, 1093-94 (N.D. Cal. 2013) (distinguishing *Chavez* because,

6   among other things, the "loss Plaintiff alleges—not receiving the full benefit of the bargain—

7   cannot be the 'resulting damages' of this alleged breach"). Plaintiffs assert that *In re LinkedIn*

8   "did not address or analyze California contract damages law," Opp. at 8, but the court expressly

9   applied the elements of a California contract claim. *See id.* at 1093-94.

10          Second, Plaintiffs reliance on *In re Facebook Privacy Litig.*, 572 F. App'x, 494 (9th Cir.

11   2014), to support their alleged diminution in value theory is misplaced. That unpublished

12   decision is "not precedent," Circuit Rule 36-3, and it merely "recognized" that diminished sales

13   value of personal information "may be sufficient" to show damages in certain circumstances.

14   *Svenson*, 2015 WL 1503429, at *5. The court in *Svenson* found the plaintiff stated a diminished

15   value contract claim where the complaint specifically alleged a "robust market" for personal

16   information and that she was "'deprived'" of an ability to sell it "on the market." *Id.* The CAC

17   here lacks such allegations. *See also Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028-29

18   (N.D. Cal. 2012) (rejecting diminution theory where plaintiffs failed to show they had been

19   foreclosed from capitalizing on value of their data). This requirement that Plaintiffs allege more

20   than bare bones diminution of value is consistent with other areas of the law. The alleged injury

21   in *Fraley v. Facebook* was not damage to the value of PII but rather the separate loss of plaintiffs'

22   "valuable endorsement of third-party products and services." 830 F. Supp. 2d 785, 811 (N.D.

23   Cal. 2011). And the general contract principles for vendor-vendee relationships in *Coates v. Lake*

24   *View Oil & Ref. Co.*, 20 Cal. App. 2d 113 (1937), have no application here.

25          Third, Plaintiffs' argument that alleged credit monitoring costs and delayed tax refunds

26   are sufficient to show "'appreciable and actual damage,'" *Low*, 900 F. Supp. 2d at 1028, is

27   contrary to California law and *Remijas v. Neiman Marcus Group*, 794 F.3d 688 (7th Cir. 2015),

28   does not save their claim. In particular, generalized principles of consequential damages and the

1   time value of money do not excuse Plaintiffs' failure to allege facts showing "actual damage" in

2   this case.  *See* Opp. at 9-10.  Plaintiffs fail to distinguish *Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908

3   (N.D. Cal. 2009), and other authorities (see MTD at 8) holding that allegations that plaintiffs

4   "spent time and/or money" to "protect themselves from harm" did not constitute contractual

5   damages.  *Id.* at 917.  The same is true here, where alleged prophylactic expenditures in the

6   absence of actual injury also are not cognizable.[8]  Plaintiffs also fail to address the persuasive

7   authority from other courts holding that such expenditures are not contractual damages, *see* MTD

8   at 8, and instead rely on *People v. Pangan*, 213 Cal. App. 4th 574 (2013), an inapposite criminal

9   case about restitution calculations.  The decisions cited in the Motion show that allegations

10  regarding delayed or not yet received tax refunds do not establish contract damages.

11          Finally, the CAC does not allege facts showing a plausible link between the Anthem

12  cyberattack and any misuse of Plaintiffs' Bronzo, Randrup, Carter, Coonce, Tharp, or Brisko's

13  information.  *Remijas* does not help Plaintiffs because the portion they quote concerns credit

14  monitoring and has nothing to do with meeting the elements of a California breach of contract

15  claim.  Likewise, Plaintiffs cannot rely on *Stollenwerk v. Tri-W. Health Care Alliance*, 254 F.

16  App'x 664 (9th Cir. 2007), where causation was buttressed "not only by the temporal, but also by

17  the *logical*, relationship" between the data theft and alleged identity fraud based on specific

18  allegations, including that plaintiff had not been the victim of identity theft and did not transmit

19  personal information over the internet.  *Id.* at 667-68.  These types of allegations are absent from

20  the CAC.

21  **III.   PLAINTIFFS' NEW YORK UNJUST ENRICHMENT CLAIM FAILS.**

22          Plaintiffs argue that their unjust enrichment claim should not be dismissed because there is

23  a dispute about whether "Anthem's promises to provide adequate data security" are contract

24  terms and their unjust enrichment claim is pled in the alternative.  Opp. at 11.  This argument is

25  both wrong factually—their unjust enrichment claim is not pled in the alternative—and misses the

---

[8] Plaintiffs do not contest that Plaintiffs Kawai and Solomon's allegations of spending "hours" addressing "issues relating" to the Anthem cyberattack, CAC ¶¶ 19-20, do not establish contractual damages.  *See* MTD at 6-7.  Nor do Plaintiffs dispute that the theft of Plaintiff Coonce's debit card number and subsequent unauthorized charges have no connection to the Anthem cyberattack.  *See* MTD at 8.

point substantively.  Plaintiffs' unjust enrichment claim expressly seeks a return of the portion of the insurance premiums Plaintiffs allegedly paid "for the administrative costs of reasonable data privacy and security practices and procedures."  CAC ¶ 353; *see also id.* ¶¶ 354-55.  Thus, it is necessarily premised on a theory that "Anthem's promises to provide adequate data security" were part of the insurance contracts for which premiums were paid.  The fact that the Anthem Defendants have moved to dismiss Plaintiffs' contract claim does not mean Plaintiffs' unjust enrichment claim must survive.  If the Anthem Defendants are correct, then the premiums paid are not tied to data security promises, and the unjust enrichment claim necessarily fails because they could not have been unjustly enriched by premiums.  If Plaintiffs are correct, then Plaintiffs' unjust enrichment claim is barred by an express contract.  *See, e.g., Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987) (valid and enforceable contract precludes quasi contract claims "arising out of the same subject matter").

## IV.   PLAINTIFFS' KCPA CLAIM SHOULD BE DISMISSED.

### A.   The KCPA Prohibits Class Actions.

It is undisputed that several federal courts have held that the Kentucky Consumer Protection Act cannot be used to support a class action.  MTD at 12; *see also In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 160 (S.D.N.Y. 2008).  Plaintiffs effectively ask this Court to ignore these decisions and *Arnold v. Microsoft Corp.*, 2000 WL 36114007, at *6 (Ky. Cir. Ct. July 21, 2000), *aff'd*, 2001 WL 1835377 (Ky. Ct. App. Nov. 21, 2001), because other "courts have certified class actions under the KCPA, both before and after *Arnold*."  Opp. at 12.  But the two decisions Plaintiffs cite *do not address* whether the KCPA is a proper vehicle for a class action.  *See Brummett v. Skyline Corp.*, 1984 WL 262559 (W.D. Ky. Apr. 11, 1984); *Clark v. Bellsouth Telecommunications, Inc.*, 461 F. Supp. 2d 541 (W.D. Ky. 2006).  This Court should follow *Arnold* and other federal cases that address the issue, and dismiss Plaintiffs' KCPA claim.

### B.   Plaintiffs Have Not Alleged Any Ascertainable Loss Of Money Or Property.

Plaintiffs do not dispute that Plaintiff Bailey lacks standing to assert a KCPA claim, Opp. at 13 n.15, but argue that Plaintiffs Ruberg and Reistroffer have standing because each suffered an "ascertainable loss of money or property."  Ky. Rev. Stat. Ann. § 367.220.  Not so.  Ruberg

1   and Reistroffer's alleged loss of PII and risk of identity theft are intangible, non-economic

2   losses—not losses of "money or property" under the KCPA.  MTD at 12-14.  Likewise, the CAC

3   fails to allege any facts showing that either Plaintiff incurred out-of-pocket costs.  *See Holmes v.*

4   *Countrywide Fin. Corp.*, 2012 WL 2873892, at *14 (W.D. Ky. App. July 12, 2012).  Finally,

5   Plaintiffs cannot rely on *Complete Auto. Repair Servs. v. Capps*, 2015 WL 2445911 (Ky. Ct. App.

6   May 22, 2015), to claim they were deprived of the benefit of their bargain.  They do not allege

7   facts showing that they "received something other than what [they] bargained for," like an

8   "inoperable truck with substantial damage instead of a working truck."  *Id.* at *5.  The CAC

9   asserts that Plaintiffs overpaid for data security, but it does not allege that Ruberg and Reistroffer

10   purchased insurance on the basis of any data security practices or privacy policy representations.

11   Absent allegations that Plaintiffs bargained for these services, Plaintiffs lack sufficient facts to

12   show they received something other than "that for which [they] bargained."  *Id.*; *Hinchliffe v. Am.*

13   *Motors Corp.*, 440 A.2d 810, 814 (Conn. 1981) (plaintiff alleged ascertainable loss because she

14   "purchased an item *partially as a result of*" a deceptive act and was deprived of the benefit of her

15   bargain) (emphasis added).  Plaintiffs Ruberg and Reistroffer therefore lack statutory standing

16   under the KCPA.

17   **V.      PLAINTIFFS' UCL CLAIMS SHOULD BE DISMISSED.**

18          **A.      Plaintiffs Lack Standing Under The UCL.**

19          Plaintiffs concede that their allegations of "Loss of Value of PII" fail to support their UCL

20   claim, Opp. at 14 n.16, and instead argue that their alleged "Loss of Benefit of the Bargain" and

21   "Out-of-Pocket Costs" satisfy the UCL's "economic injury" standing requirement.  *Id.* at 14.

22   They do not.  Plaintiffs "Loss of Benefit of the Bargain" claim rests on the CAC's conclusory

23   allegations that Plaintiffs would not have purchased insurance from Anthem if they had known of

24   Anthem's alleged data security practices.  *Id.* (citing CAC ¶¶ 267, 367).  But conclusory

25   allegations are not enough.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Instead, Plaintiffs

26   must make *plausible* factual allegations that, absent the challenged practices, they would not have

27   purchased the product at issue.  Plaintiffs rely on *Facebook*, *Doe*, and *Adobe*, *see* Opp. at 14, but

28   those courts recognized only that factual allegations that plaintiffs saw defendants' policies at the

1  time they chose to use defendants' products and services could support UCL claims when

2  defendants later allegedly failed to live up to their policies.  *See In re Adobe Sys., Inc. Privacy*

3  *Litig.*, 66 F. Supp. 3d 1197, 1224 (N.D. Cal. 2014); *In re Facebook Privacy Litig.*, 791 F. Supp.

4  2d 705, 715 (N.D. Cal. 2011) (citing *Doe I v. AOL LLC*, 719 F. Supp. 2d 1102, 1111-13 (N.D.

5  Cal. 2010)); *Doe I*, 719 F. Supp. 2d at 1111.  In contrast, the CAC alleges no facts about any

6  California Plaintiff's decision to buy insurance from the Anthem Defendants, much less that any

7  representation about Anthem's data security practices influenced his or her purchase decision.

8  *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig. ("Sony I")*, 903 F. Supp.

9  2d 942, 969-70 (S.D. Cal. 2012) (dismissing UCL claim where plaintiffs acquired the product

10  before viewing the defendant's privacy policy).

11        As for "Out-of-Pocket Costs," Plaintiffs argue that the Court should ignore authority—

12  *Sony I*, 903 F. Supp. 2d at 966 (S.D. Cal. 2012); *Ruiz v. Gap, Inc.*, 2009 WL 250481, at *3-4

13  (N.D. Cal. Feb. 3, 2009), *aff'd* 380 F. App'x 689, 692 (9th Cir. 2010)—holding that credit

14  monitoring costs do not support a UCL claim.  Opp. at 15.  *Sony I* is not contrary to the California

15  Supreme Court's decision in *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322-23 (2011), as

16  Plaintiffs are forced to argue.  *Sony I* analyzed *Kwikset*'s requirement that a UCL plaintiff suffer

17  economic injury caused by the defendant's conduct and concluded that time and money spent

18  mitigating a heightened risk of identity theft do not suffice.  903 F. Supp. 2d at 965-66.  Plaintiffs

19  argue that *Sony* cited only *Ruiz*, and that *Ruiz* does not say what the Anthem Defendants claimed.

20  *Id.*  But the *Ruiz* decision Plaintiffs cite—contrary to Plaintiffs' argument—is a different opinion

21  that addressed standing to bring common law claims.  *See* Opp. at 9, 15 (citing *Ruiz*, 622 F. Supp.

22  2d at 908).  The *Ruiz* decision the Anthem Defendants cited is directly on point.  *See* MTD at 15

23  (citing *Ruiz*, 2009 WL 250481 at *3-4).  Moreover, Plaintiffs offer no support for treating money

24  spent on credit monitoring as economic injury when Anthem has offered two years of free credit

25  monitoring and identity theft protection services.  *See Ruiz*, 2009 WL 250481 at *3-4.[9]

---

[9]  In the cases cited by Plaintiffs—*Corona*, 2015 WL 3916744, at *5, *Witriol v. LexisNexis Grp.*, 2006 WL 4725713, at *6 (N.D. Cal. Feb. 10, 2006), *In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154 (D. Minn. 2014)— the courts simply did not address the impact of Defendants paying for credit monitoring services, as Anthem has done for consumers here.  *See* Opp. at 15.

Finally, Plaintiffs cite no case supporting restitution.  Instead, they try to distinguish *Sony I* on the ground that third parties, and not the defendant, received the subscription fees.  Opp. at 15.  But *Sony I* held that restitution was unavailable because "Sony did not benefit financially from the Data Breach."  *Sony I*, 903 F. Supp. 2d at 970.  Neither did the Anthem Defendants.

**B.      The CAC Does Not Allege Unlawful, Unfair, Or Fraudulent Conduct.**

*Unlawful*:  To defend their UCL "unlawful" claim, Plaintiffs cite paragraphs of the CAC that reference certain statutes, but allege only generally how the Anthem Defendants' data protection efforts were inadequate.  *See* Opp. at 16 (citing CAC ¶¶ 177-83, 240-50, 258-60, 366(g)).  Plaintiffs' reliance on these paragraphs simply confirms that the CAC does not "identify the particular section of the statute that was violated and plead with particularity how the facts of this case pertain to that specific statute."  *Hodges v. Apple, Inc.*, 2013 WL 4393545, at *6 (N.D. Cal. Aug. 12, 2013) (citations omitted).  Further, Plaintiffs conspicuously fail to cite any paragraphs referencing Cal. Civ. Code § 56 or § 1798.82, or respond in any way to the Anthem Defendants' arguments that Plaintiffs did not allege a violation of those statutes.  *See* MTD at 18.

*Unfair*:  Plaintiffs wrongly suggest that the Anthem Defendants misstated the test for determining whether "unfair" conduct has been alleged and claim that they are not required to allege that the Anthem Defendants' conduct was "immoral, unethical, oppressive, unscrupulous." Opp. at 16.  The Anthem Defendants correctly identified the factors considered by California courts and argued that "the CAC fails to allege conduct . . . that rises to the level of 'unfair' practices."  MTD at 18.  As described in their Motion, the Anthem Defendants did not violate public policy or cause their members to suffer cognizable injuries.  Thus, the Anthem Defendants' "unfair" argument focused on the quality of the alleged conduct, which Plaintiffs do not dispute was not "immoral, unethical, oppressive, or unscrupulous."  *See* Opp. at 16.

*Fraudulent*:  The Anthem Defendants argued that the "CAC contains only conclusory allegations" of "deceptive representations and concealed material facts."  MTD at 19.  Plaintiffs argue the Anthem Defendants focused "*only* on the summary allegations" in the CAC, Opp. at 16, but the additional allegations to which they point are *conclusory* allegations that Plaintiffs relied on material misrepresentations and contain no facts to support those conclusions or tie any

alleged misrepresentation to any insurance purchase. *See* Opp. at 17 (citing CAC ¶¶ 161-92, 240-60). Plaintiffs therefore fail to allege fraudulent conduct sufficient to state a UCL claim.

## VI.  PLAINTIFFS' NEW YORK GENERAL BUSINESS LAW § 349 CLAIM FAILS.

### A.  Plaintiffs Do Not Allege Consumer-Oriented Conduct.

Plaintiffs do not allege facts showing the Anthem Defendants committed any deceptive "consumer-oriented" act under the NY GBL. *Daniels v. Provident Life & Cas. Ins. Co.*, 2001 WL 877329, at *8 (W.D.N.Y. July 25, 2001). The CAC does not allege that the Anthem Defendants committed deceptive acts broadly impacting consumers, such as making false representations about products sold at a public auction, *Koch v. Greenberg*, 2015 WL 5711578, *3 (2d Cir. Sept. 30, 2015), or engaging in "an extensive marketing scheme" to "lure[] [consumers] into purchasing policies" by misrepresenting insurance policy coverage. *Gaidon v. Guardian Life Ins. Co. of America*, 725 N.E.2d 598, 603-04 (N.Y. 1999). Plaintiffs instead allege the Anthem Defendants committed deceptive acts in connection with private insurance services obtained through employer/state-sponsored insurance plans. CAC ¶¶ 85-88; 525-30. Indeed, Plaintiffs allege that Defendants collected Plaintiffs' personal information because of their status as "current and former customers or members of Anthem Affiliates," a relationship created through private insurance policies. CAC ¶ 158. Plaintiffs cannot transform their private contract dispute into a NY GBL claim absent allegations of "facts showing injury or potential injury to the public." *Bono v. Monarch Life Ins. Co.*, 2006 WL 839412, at *2-3 (W.D.N.Y. Mar. 27, 2006).

### B.  Plaintiffs Do Not Allege Any Cognizable Injuries.

The CAC also fails to allege any cognizable injury caused by any alleged deceptive act. First, Plaintiffs allege no facts showing any out-of-pocket costs beyond credit monitoring fees, which are not a cognizable injury under the NY GBL.[10] Second, Plaintiffs claim the "time-value of money" transforms a delayed, but received, tax return into a cognizable injury, but they do not

---

[10] Plaintiffs' reliance on *Anderson v. Hannaford Bros. Co.*, 659 F.3d 151 (1st Cir. 2011), to distinguish *Shafran v. Harley-Davidson, Inc.*, 2008 WL 763177 (S.D.N.Y. Mar. 20, 2008), is misplaced. *Anderson* discussed *Shafran* in its analysis of whether plaintiffs' mitigation steps were reasonable—not whether plaintiff alleged cognizable injury. Other courts have adopted *Shafran* without distinguishing between cases of accidental data loss and intentional data theft. *See Randolph v. ING Life Ins. & Annuity Co.*, 973 A.2d 702, 708 (D.C. 2009).

cite any legal authority for this proposition, which is inconsistent with the reasoning of courts dismissing analogous claims.  *See In re Horizon Healthcare Servs.*, 2015 WL 1472483, at *8 (D.N.J. March 31, 2015) ("third prong of redressability" not satisfied where plaintiff "already received his tax refund").  Third, Plaintiffs argue incorrectly that an "unconsented disclosure of Social Security numbers" satisfied the NY GBL injury requirement in *Meyerson v. Prime Realty Services, LLC*, 796 N.Y.S.2d 848 (N.Y. Sup. Ct. 2005).  Opp. at 18-19.  But no SSNs were disclosed in *Meyerson*; the issue there was whether the plaintiff stated a NY GBL claim when her landlord "deceptively represented that she was required by law" to provide him with her SSN and other information and she suffered anxiety and had to retain an attorney to respond.  *Meyerson*, 796 N.Y.S.2d at 854-56.  The court found *those* allegations to be "sufficient under the statute," *id.* at 856, but that says nothing about whether the loss of PII Plaintiffs allege in the CAC is a cognizable injury under the NY GBL.  The Court should follow *Sony II*, which distinguished both *Meyerson* and *Bose v. Interclick, Inc.*, 2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011), and found that loss of privacy is not a cognizable injury under the NY GBL.  *See* MTD at 20.

### C.     The CAC Fails To Allege Deceptive Acts That Caused Plaintiffs Harm.

Plaintiffs do not dispute the CAC's failure to allege facts showing they saw any misrepresentations prior to purchasing health insurance.  Opp. at 19-20.  Plaintiffs assert it is a "reasonable inference" that Plaintiffs saw "Anthem's mailed misrepresentations before re-enrolling each year," Opp. at 20, but Plaintiffs plead no facts to support this inference.  *Iqbal*, 556 U.S. at 678.  The CAC formulaically alleges that the Anthem Defendants mailed privacy notices, CAC ¶ 162, but not that the New York Plaintiffs saw them before enrolling, much less before "re-enrolling each year."  Opp. at 20.  Plaintiffs also cite *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29 (S.D.N.Y. 2008), for the proposition that "[f]or omissions allegations, Plaintiffs need not allege they saw Anthem's representations."  Opp. at 20.  But *Dupler* addressed class certification and did not consider whether plaintiffs pled sufficient facts to state a GBL omission claim.  *See* 249 F.R.D. at 40, 44.  Further, "the causation element is essential" for both omission and misrepresentation claims, *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 557 (S.D.N.Y. 2014), and Plaintiffs' GBL omission claim fails absent allegations of any "connection

between the defendants' deceptive conduct and a specific injury that she suffered as a result of that activity." *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 287 (E.D.N.Y. 2009).

Plaintiffs claim they have "pled both a logical and temporal relationship" between the cyberattack and tax fraud, but they have done nothing more than allege that tax fraud occurred, with no facts making a plausible connection between tax fraud and the attack.  Plaintiffs therefore allege an insufficient, "purely temporal" connection unsupported by facts suggesting a "logical[] relationship between the two events." *Stollenwerk*, 254 F. App'x at 668.

Finally, Plaintiffs' reliance on *Orlander v. Staples, Inc.* is misplaced.  802 F.3d 289 (2d Cir. 2015).  Plaintiff there alleged that he would not have purchased a product protection plan but for defendant's misrepresentations regarding its coverage.  *Id.* at 301.  Here, no facts are alleged that the NY Plaintiffs would not have purchased the Anthem Defendants' services but for any deceptive acts.  Further, there is no basis to make that assumption when three of the four NY Plaintiffs allegedly obtained health insurance through employers, and there are no allegations about who (Plaintiff or employer) decided which plan to buy.  CAC ¶¶ 85-88.  Plaintiffs thus do not allege they lost a benefit of the bargain, because they have not shown they purchased health insurance services on the basis of any affirmative statements or omissions regarding data security.

## VII.   PLAINTIFFS' GEORGIA IIPPA CLAIM FAILS.

### A.   A Third-Party Cyberattacker "Stole" Plaintiffs' Information.

The Georgia IIPPA provides that an insurance institution "shall not disclose" certain information except when certain conditions are met.  Ga. Code Ann. § 33-39-14.  Plaintiffs incorrectly argue that "Anthem reads 'disclose' so narrowly that it contradicts the [IIPPA's] purpose," but the Anthem Defendants properly "afford the statutory text its 'plain and ordinary meaning'" by "read[ing] the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." *Deal v. Coleman*, 751 S.E.2d 337, 341 (Ga. 2013).  "Disclose" means "to make (something) known to the public."  www.merriam-webster.com/dictionary/disclose.  Plaintiffs seek to distort the meaning of the word by expanding it to include third-party cyberattackers' criminal theft of data.  But no one understands a government to have "disclosed" its secrets when a classified communique is intercepted by a spy.

1    The Anthem Defendants did not "disclose" its customers' information either.

2          Notably, the only case Plaintiffs cite, *Shames-Yeakel*, did not involve interpretation of a

3    statute, and the defendant bank in that case did not dispute it had a *common law* duty "to protect

4    Plaintiffs' account from fraudulent access."  677 F. Supp. 2d at 1008.  Plaintiffs' assertion that the

5    cases the Anthem Defendants cited are distinguishable because "[n]one involve violations of Ga.

6    Code Ann. § 33-39-14," Opp. at 21, misses the point, as there are no cases interpreting that

7    provision.  In contrast, the Anthem Defendants' cases make clear that courts do not interpret

8    statutory language prohibiting affirmative conduct (like "shall not disclose") to penalize crime

9    victims like Anthem Defendants.  MTD at 23.  Plaintiffs' construction of the IIPPA should be

10   rejected.

11              **B.        Plaintiffs Have Not Alleged Any Actual Damages.**

12         The IIPPA only permits recovery of "actual damages."  Ga. Code Ann. § 33-39-21.  The

13   CAC's allegations fail to satisfy the statute's plain text.  First, the CAC alleges no facts showing

14   that the Georgia Plaintiffs bargained for anything in connection with Defendants' IIPPA

15   obligations, much less that they received less than their bargain due to any alleged improper

16   disclosure.  *See Goody Products, Inc. v. Dev. Auth. of City of Manchester*, 740 S.E.2d 261, 271

17   (Ga. Ct. App. 2013) (describing the "benefit of the bargain" standard under Georgia law).

18   Second, "unauthorized collection of personal information does not create an economic loss," and

19   the CAC fails to allege any facts showing that a different conclusion is warranted here.  *Low*, 900

20   F. Supp. 2d at 1028-29.  Third, Plaintiffs cite no Georgia authority "to support [their] position that

21   the purchase of credit monitoring constitutes either actual damages or a cognizable loss," and the

22   Court should be "extremely cautious about adopting 'substantive innovation' in state law."

23   *Hendricks v. DSW Shoe Warehouse, Inc.*, 444 F. Supp. 2d 775, 783 (W.D. Mich. 2006) (citation

24   omitted).  Finally, a "risk" of identity theft clearly does not constitute "[a]ctual damages" under

25   the term's ordinary meaning.  *See Moyer v. Michaels Stores, Inc.*, 2014 WL 3511500, at *7 (N.D.

26   Ill. July 14, 2014) (risk of identity theft not actual damage); *Hammond v. The Bank of New York

27   Mellon Corp.*, 2010 WL 2643307, at *13 (S.D.N.Y. Jun. 25, 2010) (collecting cases under various

28   states' laws finding that "an increased risk of identity theft" was not a cognizable injury).

## VIII.   ERISA PREEMPTS CERTAIN PLAINTIFFS' CLAIMS.

In a futile attempt to avoid ERISA preemption, Plaintiffs argue that their contract, unjust enrichment, and GBL claims are not completely preempted because the Court cannot consider extrinsic evidence when analyzing preemption and Plaintiffs' claims arise from duties independent from an ERISA plan.  Opp. at 24-25.  Plaintiffs further assert that these claims are not expressly preempted pursuant to 29 U.S.C. § 1144(a) because they are not an alternative enforcement mechanism to obtain ERISA plan benefits and do not interfere with ERISA relationships.  Opp. at 22-24.  Plaintiffs' arguments are meritless and contrary to controlling law.

<u>Complete Preemption</u>.  Plaintiffs' threshold argument that the Court need not address ERISA preemption because the argument is supported by "extrinsic evidence" is a red herring. Courts routinely adjudicate ERISA preemption on motions to dismiss and look to plan-related documents like SPDs.  *See, e.g.*, *Merziotis v. Kaiser Found. Health Plan, Inc.*, 2010 WL 4853888, at *1 (S.D. Cal. Nov. 23, 2010) (preemption "routinely" addressed "at the motion to dismiss phase"); *Toohey v. CIGNA Corp.*, 2009 WL 2169859, at *4 (D. Ore. Jun. 24, 2009), *R. & R. adopted*, 2009 WL 2223622 (July 21, 2009) (relying on SPDs); *Korman v. Consol. Edison Co. of N.Y., Inc.*, 915 F. Supp. 2d 359, 363 (E.D.N.Y. 2013) (same).  This is especially true where the health plan contracts are integral to Plaintiffs' allegations and Plaintiffs do not contest the documents' authenticity or their membership in ERISA plans.  *See* MTD at 10 n.8; Opp. at 2.

Plaintiffs also fail to show that their contract, unjust enrichment, and NY GBL claims are based on duties separate from their ERISA plans.  Legal duties are not independent of ERISA if they derive from "rights and obligations" under an ERISA plan.  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 213 (2004).  Here, Plaintiffs Coonce, Tharp, and Gates' contract and unjust enrichment claims are based on allegations that they paid money to the Anthem Defendants in exchange for various promises under their plans, including security protections, and Plaintiffs seek to enforce these plan-related obligations and "rights," including recoupment of alleged premium "overpayment."  CAC ¶¶ 306-10, 351-55.  Thus, Plaintiffs' claims are completely preempted. *See Sender v. Franklin Res., Inc.*, 2011 WL 5006460, at *5-6 (N.D. Cal. Oct. 20, 2011) (no independent duty where claims turned on obligations under plan); *see also* Order Denying Mot. to

Remand, Dkt. 274, at *7-8 (Sept. 9, 2015) (complete preemption of breach of contract claim based on similar allegations); Order Denying Mot. to Remand, Dkt. 417, at *6 (Nov. 24, 2015) (complete preemption of unjust enrichment claim based on similar allegations).  Plaintiff Gates' NY GBL claim likewise seeks to enforce rights under an ERISA plan because the alleged misrepresentations and omissions on which Plaintiffs rely all derive from promises Plaintiffs specifically assert were incorporated into their contracts.  *See* CAC ¶¶ 161-67, 258; Opp. at 6-7.[11]

> Express Preemption.  These same claims are also expressly preempted because they serve as alternative enforcement mechanisms distinct from ERISA's remedial scheme.  *See* 29 U.S.C. § 1132(a)(1)(B).  Whether characterized as claims for "benefits" or to enforce "rights," Plaintiffs seek to enforce promises the Anthem Defendants allegedly made in Plaintiffs' ERISA plans.  Therefore, Plaintiffs' claims bear upon ERISA-regulated relationships and "relate to" their ERISA plans.  *See Gen. Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1522 (9th Cir. 1993) (express preemption applies where state law claim "reaches a relationship that is already regulated by ERISA" including the relationship between "plan and participant").  The relationship between these Plaintiffs and the Anthem Defendants exists because Plaintiffs had coverage under ERISA health benefit plans.  Plaintiffs' claims therefore all relate to alleged rights under their ERISA plans' terms, will require interpretation of those plans, and thus are expressly preempted. Plaintiffs' cases are distinguishable on this basis. Opp. at 22-23; *e.g.*, *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1082-83 (9th Cir. 2009) (no express preemption where state law claims against third-party did not affect ERISA-regulated relationships).

## CONCLUSION

> The Anthem Defendants respectfully request that the Court grant their motion to dismiss.

> Respectfully submitted,

---

[11]  The cases Plaintiffs cite are inapposite.  *See, e.g.*, *Venturino v. First UNUM Life Ins. Co.*, 724 F. Supp. 2d 429 (S.D.N.Y. 2010) (involving bait-and-switch advertising allegations, where the policy terms differed from the bargain struck, in contrast to Plaintiffs' assertion that the Anthem Defendants did not provide the security measures expressly promised); *Nutrishare, Inc. v. Conn. Gen. Life Ins. Co.*, 2014 WL 1028351 (E.D. Cal. Mar. 14, 2014) (where insurer brought claims involving purported false representations with no connection to the ERISA plan terms).

1

2

3

4   Dated:  January 19, 2016

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**HOGAN LOVELLS US LLP**
CRAIG A. HOOVER
E. DESMOND HOGAN
PETER R. BISIO
ALLISON M. HOLT

By: /s/ Craig A. Hoover
_____

Craig A. Hoover (SBN 113965)
craig.hoover@hoganlovells.com
E. Desmond Hogan (admitted *pro hac vice*)
desmond.hogan@hoganlovells.com
Peter R. Bisio (admitted *pro hac vice*)
peter.bisio@hoganlovells.com
Allison M. Holt (admitted *pro hac vice*)
allison.holt@hoganlovells.com
555 Thirteenth Street, NW
Washington, DC 20004-1109
Telephone:      (202) 637-5600
Facsimile:      (202) 637-5910

Michael Maddigan (SBN 163450)
michael.maddigan@hoganlovells.com
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone:      (310) 785-4600
Facsimile:      (310) 785-4601

Maren J. Clouse (SBN 228726)
maren.clouse@hoganlovells.com
4085 Campbell Ave., Suite 100
Menlo Park, CA 94025
Telephone:      (650) 463-4000
Facsimile:      (650) 463-4199

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW

ANTHEM DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
Case No. 5:15-MD-02617-LHK

1
2
3
4
5
6
7
8
9
10
11
12

*Attorneys for Defendants Anthem, Inc., Blue Cross and Blue Shield of Georgia, Inc., Blue Cross Blue Shield Healthcare Plan of Georgia, Inc., Anthem Insurance Companies, Inc., Blue Cross of California, Anthem Blue Cross Life and Health Insurance Company, Rocky Mountain Hospital and Medical Service, Inc., Anthem Health Plans, Inc., Anthem Health Plans of Kentucky, Inc., Anthem Health Plans of Maine, Inc., HMO Missouri, Inc., RightCHOICE Managed Care, Inc., Healthy Alliance Life Insurance Company, Anthem Health Plans of New Hampshire, Inc., Empire HealthChoice Assurance, Inc., Community Insurance Company, Anthem Health Plans of Virginia, Inc., HealthKeepers, Inc., Blue Cross Blue Shield of Wisconsin, Compcare Health Services Insurance Corporation, Amerigroup Services, Inc., HealthLink, Inc., UniCare Life & Health Insurance Company, Caremore Health Plan, The Anthem Companies, Inc., and The Anthem Companies of California, Inc. (collectively "The Anthem Defendants")*

13

**TROUTMAN SANDERS LLP**
CHAD R. FULLER

14

15

Dated:  January 19, 2016

By: /s/ Chad R. Fuller

16

17

18

Chad R. Fuller (SBN 190830)
chad.fuller@troutmansanders.com
11682 El Camino Real, Suite 400
San Diego, CA 92130
Telephone:  (858) 509-6056
Facsimile:  (858) 509-6040

19

*Attorney for The Anthem Defendants*

20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  January 19, 2016

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
JOHN D. MARTIN
LUCILE H. COHEN

By: /s/ John D. Martin

John D. Martin (admitted *pro hac vice*)
john.martin@nelsonmullins.com
Lucile H. Cohen (admitted *pro hac vice*)
lucie.cohen@nelsonmullins.com
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone:      (803) 255-9241
Facsimile:      (858) 256-7500

*Attorneys for The Anthem Defendants*

- 18 -