ALTSHULER BERZON LLP
EVE CERVANTEZ (SBN 164709)
ecervantez@altshulerberzon.com
JONATHAN WEISSGLASS (SBN 185008)
jweissglass@altshulerberzon.com
DANIELLE LEONARD (SBN 218201)
dleonard@altshulerberzon.com
MEREDITH JOHNSON (SBN 291018)
mjohnson@altshulerberzon.com
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

COHEN MILSTEIN SELLERS & TOLL PLLC
ANDREW N. FRIEDMAN (admitted *pro hac vice*)
afriedman@cohenmilstein.com
GEOFFREY GRABER (SBN 211547)
ggraber@cohenmilstein.com
SALLY M. HANDMAKER (SBN 281186)
shandmaker@cohenmilstein.com
ERIC KAFKA (admitted *pro hac vice*)
ekafka@cohenmilstein.com
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
Telephone:  (202) 408-4600
Facsimile:  (202) 408-4699

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| *In Re Anthem, Inc. Data Breach Litigation* | Case No:  15-md-02617-LHK |
| | **SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |
| | DEMAND FOR JURY TRIAL |

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................... 1

II. JURISDICTION AND VENUE ......................................................................... 3

III. PARTIES ......................................................................................................... 4

    A.  Plaintiffs ........................................................................................................ 4

    B.  Defendants .................................................................................................. 46

IV. STATEMENT OF FACTS ............................................................................. 50

    A.  The Anthem Database ................................................................................ 50

    B.  Defendants' Privacy Policies, Representations, Omissions, and Contract Terms
        Pertaining to Data Security and Confidentiality ...................................... 51

        1.  Anthem and Anthem Affiliates ............................................................ 51

            a.  Anthem's Privacy Policies, Representations, and Omissions ............. 51

            b.  Anthem's Insurance and Health Benefits Contracts Include Anthem's
               Privacy Policies ............................................................................... 58

               i.  Individual contracts .................................................................. 58

               ii.  Group contracts ..................................................................... 62

        2.  Non-Anthem BCBS Defendants .......................................................... 70

            a.  The BlueCard Program .................................................................... 70

            b.  The Fourteen Non-Anthem Defendants' Privacy Policies, Representations,
               and Omissions ................................................................................. 82

            c.  Each of the Fourteen Non-Anthem Defendants' Insurance and Health
               Benefits Contracts Include Specific Privacy Promises ..................... 84

        3.  Blue Cross Blue Shield Association and the Federal Contract ............ 94

    C.  Defendants Had an Obligation to Protect Personal Information under Federal and
        State Law and the Applicable Standard of Care ...................................... 97

    D.  Defendants Were On Notice of Cyber Attack Threats, and the Inadequacy of Their
        Data Security ........................................................................................... 101

i

E.  Anthem Allowed a Massive Data Breach ...................................................103

F.  Anthem's Data Breach Was a Direct Result of Anthem's Inadequate Data Security ...........111

G.  Defendants Breached Their Contracts To Protect Personal Information ...............................115

    1.  Anthem's Breach of Specific Contract Promises...........................................115

    2.  The Non-Anthem BCBS Defendants' Breach of Their Specific Contract Promises ......118

    3.  BCBSA and Anthem and Non-Anthem Defendants' Breach of the Federal Contract....119

H.  Affected Individuals Were Grievously Harmed By the Anthem Data Breach.....................119

V. CLASS ALLEGATIONS ...............................................................................123

A.  Statewide Classes ......................................................................................123

B.  Federal Employee Class .............................................................................124

C.  Certification of the Proposed Classes is Appropriate ...............................124

VI. CAUSES OF ACTION...................................................................................129

    COUNT I – NEGLIGENCE ...........................................................................129

    COUNT II – NEGLIGENCE PER SE............................................................131

    COUNT III – BREACH OF CONTRACT ......................................................132

    COUNT IV – BREACH OF CONTRACT ......................................................135

    COUNT V – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR
        DEALING..............................................................................................138

        A.  Anthem Defendants ......................................................................138

        B.  Non-Anthem Defendants ..............................................................140

    COUNT VI – THIRD-PARTY BENEFICIARY CLAIM FOR BREACH OF
        CONTRACT UNDER FEDERAL LAW..................................................142

    COUNT VII – NEGLIGENT MISREPRESENTATION...................................145

    COUNT VIII – UNJUST ENRICHMENT .......................................................146

    COUNT IX – STATE CONSUMER PROTECTION LAWS.............................147

ii

Arizona
ARIZONA CONSUMER FRAUD ACT
A.R.S. § 44-1521, et seq. ...........................................................147

California
CALIFORNIA UNFAIR COMPETITION LAW,
CAL. BUS. & PROF. CODE § 17200, et seq..................................149

Colorado
COLORADO CONSUMER PROTECTION ACT,
COLO. REV. STAT. § 6-1-101, et. seq........................................153

Connecticut
CONNECTICUT UNFAIR TRADE PRACTICES ACT,
C.G.S. § 42-110a et seq., ...........................................................155

District of Columbia
DISTRICT OF COLUMBIA CONSUMER PROTECTION PROCEDURES ACT,
D.C. CODE § 28-3904, et seq......................................................157

Hawaii
HAWAII UNFAIR PRACTICES AND UNFAIR COMPETITION STATUTE,
HAW. REV. STAT. § 480-1, et seq. .............................................160

Illinois
ILLINOIS CONSUMER FRAUD ACT,
815 Ill. COMP. STAT. 505/1 et seq. ..........................................162

ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT,
815 Ill. COMP. STAT. § 510/2(a) et. seq. ...................................164

Indiana
INDIANA DECEPTIVE CONSUMER SALES ACT,
IND. CODE § 24-5-0.5-3..............................................................165

Kentucky
KENTUCKY CONSUMER PROTECTION ACT,
KY REV. STAT. § 367.110, et. seq. ............................................167

Maine
MAINE UNFAIR TRADE PRACTICES ACT
5 ME. REV. STAT. §505, 513.......................................................169

MAINE UNIFORM DECEPTIVE TRADE PRACTICES ACT,
10 ME. REV. STAT. § 1212, et. seq. ...........................................171

Maryland
MARYLAND CONSUMER PROTECTION ACT,

iii

MD CODE COMMERCIAL LAW, § 13-301, et. seq. ...................................................172

Massachusetts
MASSACHUSETTS CONSUMER PROTECTION ACT,
MASS. GEN. LAWS ANN. CH. 93A, § 1, et. seq........................................................175

Minnesota
MINNESOTA CONSUMER FRAUD ACT,
MINN. STAT. § 325F.68, et. seq. AND MINN. STAT. §8.31, et. seq.........................177

MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT,
MINN. STAT. § 325D.43, et. seq.................................................................................179

Missouri
MISSOURI MERCHANDISING PRACTICES ACT,
MO. STAT. § 407.010, et seq......................................................................................182

Montana
MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION
ACT, MCA § 30-14-101, et seq..................................................................................184

Nebraska
NEBRASKA CONSUMER PROTECTION ACT,
NEB. REV. STAT. § 59-1601, et. seq. ........................................................................186

NEBRASKA UNIFORM DECEPTIVE TRADE PRACTICES ACT,
NEB. REV. STAT. § 87-301, et. seq. ..........................................................................188

Nevada
NEVADA DECEPTIVE TRADE PRACTICES ACT,
NEV. REV. STAT. § 598.0915, et. seq.; NEV. REV. STAT. § 41.600, et. seq. ............190

New Jersey
NEW JERSEY CONSUMER FRAUD ACT,
N.J. STAT. ANN. § 56:8-1, et. seq..............................................................................193

New Mexico
NEW MEXICO UNFAIR PRACTICES ACT,
N.M. STAT. ANN. § 57-12-1, et. seq..........................................................................195

New York
NEW YORK GENERAL BUSINESS LAW,
N.Y. GEN. BUS. LAW § 349, et. seq. .........................................................................197

North Carolina
NORTH CAROLINA UNFAIR TRADE PRACTICES ACT,
N.C. GEN. STAT. ANN. § 75-1.1, et. seq....................................................................199

iv

North Dakota
NORTH DAKOTA UNLAWFUL SALES OR ADVERTISING ACT,
N.D. CENT. CODE §§ 51-10-01, et. seq....................................................201

Oklahoma
OKLAHOMA CONSUMER PROTECTION ACT,
15 OKL. STAT. ANN. § 751, et. seq. ..........................................................204

Pennsylvania
PENNSYLVANIA UNFAIR TRADE PRACTICES,
73 PA STAT. ANN. § 201-1, et. seq. ..........................................................206

Rhode Island
RHODE ISLAND DECEPTIVE TRADE PRACTICES ACT,
R.I. GEN. LAWS § 6-13.1, et. seq. ............................................................208

South Dakota
SOUTH DAKOTA DECEPTIVE TRADE PRACTICES AND CONSUMER
PROTECTION ACT, S.D. CODIFIED LAWS § 37-24-1, et. seq................................211

Tennessee
TENNESSEE CONSUMER PROTECTION ACT,
TENN. CODE ANN. §§ 47-18-101, et. seq. ...................................................213

Texas
TEXAS DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION
ACT TEX. BUS. & COM. CODE § 17.41, et. seq..........................................216

Vermont
VERMONT CONSUMER FRAUD ACT,
9 VT. STAT. ANN. §§ 2451, et. seq. ..........................................................218

Washington
WASHINGTON CONSUMER PROTECTION ACT,
WASH. REV. CODE § 19.86.020, et. seq.....................................................220

West Virginia
WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT
W. VA. CODE § 46A-6-101, et. seq. ..........................................................222

COUNT X – DATA BREACH STATUTES.....................................................225

California
CALIFORNIA CUSTOMER RECORDS ACT,
CAL. CIV. CODE § 1798.80, et. seq. ..........................................................225

Colorado
COLO. REV. STAT. ANN. § 6-1-716(2), et. seq. .......................................226

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

Delaware
DEL. CODE ANN. TIT. 6 § 12B-102(a), et seq. ........................................................227

District of Columbia
D.C. CODE § 28-3852(a), et. seq. .........................................................................228

Georgia
GA. CODE ANN. § 10-1-912(a), et. seq. ................................................................229

Hawaii
HAW. REV. STAT. § 487N-2(a), et. seq. ..............................................................229

Iowa
IOWA CODE ANN. § 715C.2(1), et. seq. ..............................................................230

Kansas
KAN. STAT. ANN. § 50-7a02(a), et. seq. ............................................................231

Louisiana
LA. REV. STAT. ANN. § 51:3074(A), et. seq. .......................................................232

Michigan
MICH. COMP. LAWS ANN. § 445.72(1), et. seq. ..................................................232

New Hampshire
N.H. REV. STAT. ANN. § 359-C:20(I)(a), et. seq. ...............................................233

Oregon
OR. REV. STAT. ANN. § 646A.604(1), et. seq. .....................................................234

South Carolina
S.C. CODE ANN. § 39-1-90(A), et. seq. ................................................................235

Tennessee
TENN. CODE ANN. § 47-18-2107(b), et. seq. ........................................................236

Virginia
VA. CODE ANN. § 18.2-186.6(B), et. seq. ............................................................236

Washington
WASH. REV. CODE ANN. § 19.255.010(1), et. seq. ..............................................237

Wisconsin
WIS. STAT. ANN. § 134.98(2), et. seq. .................................................................238

Wyoming
WYO. STAT. ANN. § 40-12-502(a), et. seq. ..........................................................239

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

COUNT XI – STATE UNFAIR INSURANCE PRACTICE STATUTES ..........................240

Arizona
ARIZONA UNFAIR INSURANCE PRACTICES STATUTE,
(A.R.S. § 20-442, 443, 444)..............................................................................240

Massachusetts
UNFAIR METHODS OF COMPETITION AND UNFAIR AND DECEPTIVE ACTS
AND PRACTICES IN THE BUSINESS OF INSURANCE,
(MASS. GEN. LAWS ANN. CH. 176D, § 1, et seq.) .....................................................241

New Mexico
TRADE PRACTICES AND FRAUDS IN INSURANCE BUSINESS,
(N.M. STAT. ANN. § 59A-16-1, et seq.) .........................................................242

North Dakota
PROHIBITED PRACTICES IN INSURANCE BUSINESS,
(N.D. CENT. CODE § 26.1-04-01, et seq.)....................................................243

Texas
TEXAS UNFAIR AND DECEPTIVE INSURANCE PRACTICE LAWS,
(TEX. INS. CODE §§ 541.003, 541.051, 541.052, 541.061, 541.151).........................244

West Virginia
UNFAIR TRADE PRACTICES IN THE BUSINESS OF INSURANCE,
(W. VA. CODE § 33-11-1, et seq.)..................................................................245

COUNT XII:  STATE INSURANCE PERSONAL INFORMATION PRIVACY
STATUTES........................................................................................247

Arizona
ARIZONA INSURANCE INFORMATION AND PRIVACY PROTECTION ACT,
(A.R.S. §20-2113, § 20-2118(b))...................................................................247

Connecticut
CONNECTICUT INSURANCE INFORMATION AND PRIVACY PROTECTION
ACT, (CONN. GEN. STAT. §38a-988, 995, 999) .........................................248

Georgia
GEORGIA INSURANCE INFORMATION AND PRIVACY PROTECTION ACT,
(GA. CODE §33-39-14, 21(b))......................................................................249

Illinois
ILLINOIS INSURANCE INFORMATION AND PRIVACY PROTECTION ACT,
(215 ILCS 5/1014, 1021) ..............................................................................251

Maine
MAINE INSURANCE INFORMATION AND PRIVACY PROTECTION ACT,
(ME. REV. STAT. 24-A, § 2215(1), 24-A, § 2217(2)) ....................................................252

Massachusetts
MASSACHUSETTS INSURANCE INFORMATION AND PRIVACY
PROTECTION ACT, (MASS. GEN. LAWS CH. 175I, § 1, et seq.) .............................253

Minnesota
MINNESOTA INSURANCE FAIR INFORMATION REPORTING ACT,
(MINN. STAT. § 72A.49, et seq.) ...................................................................................254

Montana
MONTANA INSURANCE INFORMATION AND PRIVACY PROTECTION ACT,
(MONT. CODE § 33-19-101, et seq.) ............................................................................255

New Jersey
NEW JERSEY INSURANCE INFORMATION PRACTICES ACT,
(N.J. STAT. § 17:23A-1, et seq.)....................................................................................256

North Carolina
NORTH CAROLINA CONSUMER AND CUSTOMER INFORMATION PRIVACY
ACT, (N.C. GEN. STAT. § 58-39-1, et seq.) .................................................................257

Ohio
OHIO INSURANCE TRANSACTION INFORMATION STANDARDS LAW,
(OHIO REV. CODE § 3904.13, §3904.21(b).................................................................258

Oregon
OREGON USE AND DISCLOSURE OF INSURANCE INFORMATION,
(OR. REV. STAT. § 746.600, et seq.) ...........................................................................259

COUNT XIII:  STATE MEDICAL AND HEALTH INFORMATION PRIVACY
STATUTES.................................................................................................................261

California
CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT,
(CIVIL CODE §56 et seq.) .............................................................................................261

Maryland
MARYLAND DISCLOSURE REQUIREMENTS FOR INSURERS,
(MD. CODE, INS. § 4-403)..............................................................................................263

MARYLAND DISCLOSURE REQUIREMENTS FOR NONPROFIT HEALTH
SERVICE PLANS, (MD. CODE, INS. § 14-138) ..........................................................264

MARYLAND CONFIDENTIALITY OF MEDICAL RECORDS ACT,
(MD. CODE, HEALTH-GEN. § 4-301, et seq.) .............................................................265

viii

Minnesota
MINNESOTA HEALTH RECORDS ACT,
(MINN. STAT. § 144.291, et seq.)......................................................................266

Rhode Island
RHODE ISLAND CONFIDENTIALITY OF HEALTH CARE INFORMATION ACT,
(R.I. GEN. LAWS § 5-37.3-1, et seq.) ...............................................................267

Virginia
VIRGINIA INSURANCE INFORMATION AND PRIVACY PROTECTION ACT,
(VA. CODE § 38.2-600, et seq.)..........................................................................268

VIRGINIA HEALTH RECORDS PRIVACY STATUTE,
(VA. CODE § 32.1-127.1:03)...............................................................................269

Washington
WASHINGTON UNIFORM HEALTH CARE INFORMATION ACT,
(WASH. REV. CODE §70.02.045, § 70.02.170) ..............................................270

Wisconsin
WISCONSIN INSURANCE MEDICAL INFORMATION PRIVACY STATUTE,
(WIS. STAT. § 610.70)..........................................................................................271

WISCONSIN CONFIDENTIALITY OF HEATH RECORDS LAW,
(WIS. STAT. § 146.82(5), §142.84) ...................................................................272

VII. PRAYER FOR RELIEF............................................................................................273

VIII. DEMAND FOR JURY TRIAL.................................................................................275

INDEX OF EXHIBITS AND EXHIBITS ....................................................................276

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

Plaintiffs identified below (collectively, "Plaintiffs"), individually, and on behalf of the Classes defined below of similarly situated persons, file this Second Consolidated Amended Class Action Complaint. Plaintiffs file suit against Anthem, Inc., Anthem's affiliates and subsidiaries identified below, the Blue Cross Blue Shield Association, and other Blue Cross Blue Shield licensees identified below (collectively, "Defendants").

## I.    INTRODUCTION

1.    In 2014 and 2015, Anthem, Inc. experienced one of the largest data security breaches in history (the "Anthem Data Breach"). Cyberattackers stole the personal information of approximately 80 million Americans ("Affected Individuals").

2.    Despite the fact that it was storing sensitive personal information that it knew was valuable to, and vulnerable to, cyberattackers, Anthem and its fellow Defendants failed to take even the most basic security precautions that could have protected Affected Individuals' data.  Instead, Anthem and other Defendants used grossly inadequate computer systems and data security practices that allowed the hackers to easily make off with Affected Individuals' personal data.  Stealing this much data takes time, and there were numerous steps along the way when any company following standard IT security practices would have foiled the hackers.  But Anthem and its fellow Defendants failed to take these basic precautions.

3.    Anthem and its fellow Defendants placed the personal information of approximately 80 million Americans in one centralized database (the "Anthem Database"). The Anthem Database included the types of information that federal and state law requires companies to take security measures to protect: names, dates of birth, Social Security numbers, health care ID numbers, home addresses, email addresses, employment information, income data, and confidential medical records ("Personal Information").  This data should have received extra protection, not substandard protection.

4.    Defendants informed their customers and the public, including Plaintiffs and Affected Individuals, that they had privacy policies and practices that protected the confidentiality of sensitive personal information that they collect.  Defendants made these privacy policies and commitments available in a variety of documents, including on Defendants' websites, and in written privacy notices provided to Plaintiffs and Affected Individuals.  Defendants included these privacy policies and

1

1  commitments to maintain the confidentiality of their members' sensitive information as terms of their

2  insurance and health benefits contracts with those members, including the contracts they entered into

3  with Plaintiffs and Affected Individuals.  In these contract terms and other representations to Plaintiffs

4  and Affected Individuals and the public, Defendants promised that they would take specific measures

5  to protect their members' information, consistent with industry standards and federal and state law.

6  They did not.

7       5.      Having done the cyberattackers the favor of compiling the highly sensitive information

8  of 80 million individuals in one place, Defendants failed to implement basic industry-accepted data

9  security tools to prevent cyberattackers from accessing the Anthem Database:  Defendants did not

10  require the users of their computer systems to use a two-factor authentication procedure to enter their

11  computer systems; Defendants did not require users to change their passwords; and Defendants

12  allowed users to access personal information even when those users did not need to access that

13  information for job-related purposes. Defendants also failed to encrypt the sensitive personal

14  information within the Anthem Database. If Defendants had taken even one of these basic security

15  steps, the cyberattackers would not have been able to access or use Affected Individuals' sensitive

16  personal information.

17       6.      Any company with reasonable data security practices and procedures – especially one

18  guarding valuable data that was a known target for cyberattackers – would monitor for a data security

19  breach. In other words, even if a company negligently left the "bank vault" open (as Defendants did),

20  it would still have videos monitoring the bank vault, and alarms that would go off if intruders tried to

21  leave with the loot. However, Defendants failed to implement (or turned off) many standard

22  monitoring and alerting systems. Defendants did have some monitoring systems turned on, and those

23  systems sent out alerts when the cyberattackers entered various parts of Defendants' computer systems

24  and when the cyberattackers stole valuable personal information from the Anthem Database.

25  Defendants either failed to review many of these alerts, or ignored the alerts. As time went on, the

26  cyberattackers were stealing so much data (i.e., highly sensitive personal information) that basic

27  information technology maintenance systems should have recognized and stopped the attack.

28  Unfortunately, Defendants failed to properly implement those systems as well.

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

7.     Since the Anthem Data Breach, Affected Individuals have been repeatedly harmed. For example, Affected Individuals have had fake tax returns filed in their names, allowing criminals to abscond with their tax refunds, have had bank accounts drained, and have had credit cards or fraudulent loans taken out in their names.  They have spent countless hours filing police reports and poring over credit reports to combat identity theft, but new fraud is still being perpetrated against them using the sensitive information taken during the Anthem Data Breach.  Many are now paying monthly or annual fees for identity theft and credit monitoring services.  Now that their sensitive personal information (e.g., their Social Security numbers, dates of birth, and home addresses) has been released, Affected Individuals must worry about being victimized throughout the rest of their lives.

8.     Because Defendants failed to provide even minimally adequate computer systems and data security practices, Affected Individuals are forced to suffer the consequences. This Court must hold Defendants accountable.

## II.     JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in each of the proposed classes, and at least one member of the class of Plaintiffs is a citizen of a state different from a Defendant. The Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because the action includes a claim arising under federal law, the Federal Employee Plaintiffs' and Class Members' third-party beneficiary claim for breach of contract.

10.     This Court has personal jurisdiction over Defendants because Defendants conduct business in the state of California.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) based on the transfer order of the Judicial Panel on Multidistrict Litigation.  Venue was proper in this Court with respect to the actions originally filed in this Court pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in, was directed to, and/or emanated from this District.

3

### III.     PARTIES

**A.     Plaintiffs**

### <u>Arizona</u>

12.     Plaintiff Pearl Bruno is a citizen and resident of the State of Arizona. Ms. Bruno was enrolled in a Blue Cross and Blue Shield of Georgia, Inc. health plan and paid premiums on a regular basis. Blue Cross and Blue Shield of Georgia, Inc. and Anthem collected and received Ms. Bruno's Personal Information, which Anthem maintained in its database. Ms. Bruno received a letter from Anthem informing her that her Personal Information may have been compromised as a result of the Anthem Data Breach. Ms. Bruno now engages in monthly monitoring of her credit and her bank accounts. As a result of the Anthem breach, Ms. Bruno has spent numerous hours addressing issues arising from the Anthem data breach.

### <u>Arkansas</u>

13.     Plaintiff LaQuarius Hall is a citizen and resident of the State of Arkansas. Mr. Hall was enrolled in an Anthem Blue Cross Life and Health Insurance Company health plan and paid premiums on a regular basis. Anthem Blue Cross Life and Health Insurance Company and Anthem collected and received Mr. Hall's Personal Information, which Anthem maintained in its database.  When Mr. Hall's tax refund did not arrive as expected, he contacted the IRS and learned that someone had filed a false tax return in his name using his Personal Information. As a result of the Anthem breach, Mr. Hall was forced to submit affidavits to the IRS, travel to the Social Security Administration office to verify his identity, and spend numerous hours on the phone with the IRS. He still has not received his tax refund for $6,789.00. As a result of the Anthem breach, Mr. Hall has spent numerous hours addressing issues arising from the Anthem data breach and has been denied access to his federal tax refund.

14.     Plaintiff Adam Mannis is a citizen and resident of the State of Arkansas. Mr. Mannis was enrolled in a USAble Mutual Insurance Company d/b/a Arkansas Blue Cross and Blue Shield health plan. Arkansas Blue Cross Blue Shield and Anthem collected and received Mr. Mannis's Personal Information, which Anthem maintained in its database. Mr. Mannis received a letter informing him that his Personal Information may have been compromised as a result of the Anthem breach. Mr. Mannis now closely reviews his identity theft and credit monitoring services and monitors

4

his bank accounts. As a result of the Anthem breach, Mr. Mannis has spent numerous hours addressing issues arising from the Anthem data breach.

### California

15.     Plaintiff Michael Bronzo is a citizen and resident of the State of California. Mr. Bronzo was enrolled in a Blue Cross of California, Inc. d/b/a Anthem Blue Cross of California health plan that he purchased individually, and for which he paid premiums on a regular basis. Blue Cross of California, Inc. and Anthem collected and received Mr. Bronzo's Personal Information, which Anthem maintained in its database. Mr. Bronzo received a letter from Anthem informing him that his information may have been compromised as a result of the Anthem data breach. Mr. Bronzo subsequently received a letter from the IRS informing him that someone had filed a false tax return in his name using his Personal Information. Mr. Bronzos's state tax refund of approximately $700 and his Federal tax refund of approximately $7,000 were delayed. Mr. Bronzo pays approximately $216 annually for identity theft and credit monitoring services in order to monitor for identity theft and fraudulent activity resulting from the Anthem breach. As a result of the Anthem breach, Mr. Bronzo has spent numerous hours addressing issues arising from the Anthem data breach.

16.     Plaintiff Daniel Randrup is a citizen and resident of the State of California. Mr. Randrup was employed by San Joaquin County Office of Education and was enrolled in a health plan through the Self-Insured Schools of California, that was administered by Anthem Blue Cross Life and Health Insurance Company and BlueCross of California, Inc., d/b/a Anthem Blue Cross of California, and paid premiums on a regular basis. Anthem Blue Cross Life and Health Insurance Company, Anthem Blue Cross of California, and Anthem collected and received Mr. Randrup's Personal Information, which Anthem maintained in its database. Mr. Randrup received a letter from Anthem and his employer informing him that his information may have been compromised as a result of the Anthem data breach. Mr. Randrup subsequently received notification from the California Franchise Tax Board stating that he owed thousands of dollars in additional withholding tax based on a tax return that Mr. Randrup did not file. As a result, Mr. Randrup was forced to submit affidavits to the IRS and California Franchise Tax Board, file a police report, file a report with the Federal Trade Commission, and spend significant time and effort attempting to resolve the issue. Mr. Randrup still has not

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

1  received his expected 2014 tax return payment. As a result of the Anthem breach, Mr. Randrup has

2  spent numerous hours addressing issues relating to his tax fraud, monitoring his accounts, and

3  addressing issues arising from the Anthem data breach.

4        17.    Plaintiff Mary Ella Carter is a citizen and resident of the State of California. Ms. Carter

5  was enrolled in a Blue Cross of California, Inc. d/b/a Anthem Blue Cross of California health plan

6  through her husband's employer, a California county, and paid premiums on a regular basis. Blue

7  Cross of California and Anthem collected and received Ms. Carter and her family's Personal

8  Information, which Anthem maintained in its database.  In approximately March, 2015, Ms. Carter

9  received notification from All-Clear ID that her minor daughter's Social Security Number had been

10  compromised. She contacted All-Clear ID for assistance, but they were unable to provide Ms. Carter

11  with any guidance to protect her daughter's Personal Information. As a result of the Anthem breach,

12  Ms. Carter placed credit freezes on her daughter's credit reports with U.S. consumer credit reporting

13  service TransUnion in order to detect potential additional identity theft and fraudulent activity. As a

14  result of the Anthem breach, Ms. Carter has spent her own money and numerous hours addressing

15  issues arising from the Anthem data breach.

16        18.    Plaintiff Kenneth Coonce is a citizen and resident of the State of California. Mr.

17  Coonce was enrolled in Blue Cross of California, Inc. d/b/a Anthem Blue Cross of California health

18  plan and paid premiums on a regular basis. Blue Cross of California and Anthem collected and

19  received Mr. Coonce's Personal Information, which Anthem maintained in its database. Mr. Coonce

20  received a letter from Anthem in March 2015 informing him that his personal information may have

21  been compromised as a result of the Anthem breach. In September 2015, Mr. Coonce was notified by

22  his credit union's fraud department that his debit card number had been stolen and used for

23  unauthorized charges.  Mr. Coonce was forced to submit numerous forms to the credit union and to

24  file a police report in order to reverse the charges, and spent hours on the phone and in person with the

25  bank's customer representatives as well as additional time filling out a police report.  Mr. Coonce pays

26  approximately $312 annually for identity theft and credit monitoring services in order to monitor for

27  identity theft and fraudulent activity resulting from the Anthem breach. As a result of the Anthem

28  breach, Mr. Coonce has spent numerous hours addressing issues arising from the Anthem data breach.

19.     Plaintiff Steve Kawai is a citizen and resident of the State of California. Mr. Kawai was employed by the State of California and enrolled in a CALPERS health plan administered by Anthem Blue Cross Life and Health Insurance Company and Blue Cross of California, Inc., d/b/a Anthem Blue Cross of California, and paid premiums on a regular basis. Anthem Blue Cross Life and Health Insurance Company, Blue Cross of California, and Anthem collected and received Mr. Kawai's personal information, which Anthem maintained in its database. Mr. Kawai received an e-mail from CalPERS, the administrator of his health insurance plan, informing him that his information may have been compromised as a result of the Anthem data breach. As a result of the Anthem breach, Mr. Kawai has spent numerous hours monitoring his accounts and addressing issues arising from the Anthem data breach.

20.     Plaintiff Kenneth Solomon is a citizen and resident of the State of California. Mr. Solomon was enrolled in an Anthem Blue Cross Life and Health Insurance Company Individual PPO and an Anthem Blue Cross Life and Health Insurance Company Class F Medicare Supplement health plan that he purchased independently and paid premiums for on a regular basis. Anthem Blue Cross Life and Health Insurance Company and Anthem collected and received Mr. Solomon's Personal Information, which Anthem maintained in its database. Mr. Solomon received a letter from Anthem informing him that his Personal Information may have been compromised as a result of the Anthem breach. As a result of the Anthem breach, Mr. Solomon has spent numerous hours addressing issues arising from the Anthem data breach.

21.     Plaintiffs Daniel Tharp and Kelly Tharp are husband and wife and citizens and residents of the State of California. Mr. and Mrs. Tharp enrolled in a group health plan offered by the Ironworkers' Employees Benefit Corporation (IBEC), the Plan Administrator for a union welfare fund, serviced by Anthem Blue Cross Life and Health Insurance Company and Blue Cross of California, Inc., d/b/a Anthem Blue Cross of California, and paid premiums on a regular basis. Anthem Blue Cross Life and Health Insurance Company, Anthem Blue Cross of California, and Anthem collected and received the Tharps' Personal Information, which Anthem maintained in its database. On or about February 7, 2015, after the announcement of the Anthem breach, the Tharps attempted to electronically file their taxes but the filing was rejected because someone else had filed a false tax

7

1  return using their Personal Information.  In April, 2015, the Tharps received a confirmatory letter from

2  the IRS informing them that someone may have attempted to impersonate them by using their names

3  and Social Security numbers to file a 2014 federal tax return. Mr. and Mrs. Tharp were forced to

4  submit numerous forms to the IRS, file a police report, and spend hours on the phone with IRS

5  representatives to correct their tax filing. As a result, their 2014 tax return payments were delayed by

6  approximately six months. The Tharps had to spend money for postage and facsimile costs in order to

7  correspond with the IRS. The Tharps also spent approximately $60 out-of-pocket to place credit

8  freezes on their credit reports with the three major U.S. consumer credit reporting agencies in order to

9  detect potential identity theft and fraudulent activity. As a result of the Anthem breach, the Tharps

10 have spent numerous hours monitoring their accounts and addressing issues arising from the Anthem

11 data breach.

12 Plaintiff Joseph Blanchard is a citizen and resident of the State of California. Mr. Blanchard was

13 enrolled in a Blue Cross and Blue Shield of Texas health plan and paid premiums on a regular basis.

14 Blue Cross and Blue Shield of Texas and Anthem collected and received Mr. Blanchard's Personal

15 Information, which Anthem maintained in its database. Mr. Blanchard's wife, who was enrolled in

16 the same health plan, received a letter from Anthem informing her that her Personal Information may

17 have been compromised as a result of the Anthem breach. Later, Mrs. Blanchard received an email

18 from Anthem/AllClear addressed to her husband, Joseph Blanchard, which stated "Anthem is truly

19 sorry for any inconvenience caused by the incident" and invited him to sign up for credit monitoring.

20 Following announcement of the Anthem breach, at least 10 credit cards or credit accounts were

21 opened or attempted to be opened in Mr. Blanchard's name and using his Personal Information. In

22 most instances, hundreds or thousands of dollars were charged on the credit cards and Mr. Blanchard

23 had to personally dispute every charge by making phone calls, submitting affidavits, sending

24 identification, and filing police reports at his expense. Because of the rampant fraud on Mr.

25 Blanchard's accounts, Mr. Blanchard's credit card company denied him an increase in his credit limit

26 during the middle of a home remodel. Additionally, Mr. Blanchard's near-perfect credit score

27 decreased by approximately 130 points. Mr. Blanchard placed credit freezes on his credit reports with

28 the three major U.S. consumer credit reporting agencies in order to detect potential identity theft and

1   fraudulent activity. As a result of the Anthem breach, Mr. Blanchard has spent over 60 hours

2   addressing credit fraud, monitoring his accounts, and addressing issues arising from the Anthem data

3   breach.

4        22.     Plaintiff Lillian Brisko is a citizen and resident of the State of California. Ms. Brisko

5   was enrolled in a Blue Shield of California health plan and paid premiums on a regular basis. Blue

6   Shield of California and Anthem collected and received Ms. Brisko's Personal Information, which

7   Anthem maintained in its database. Ms. Brisko received a letter from Anthem informing her that her

8   Personal Information may have been compromised as a result of the Anthem breach. An Anthem

9   customer representative later confirmed to Ms. Brisko that her Personal Information was in fact

10  compromised. Ms. Brisko and her husband received a letter from the IRS requesting them to verify

11  their identities for their 2014 tax return. Ms. Brisko was later informed by an IRS agent that someone

12  had filed a false tax return in her name using her Personal Information. After contacting the consumer

13  reporting agencies, Ms. Brisko learned that someone had also fraudulently taken out a $3,000 loan in

14  her name from a Check 'n Go store in another city. As a result, Ms. Brisko and her husband were

15  forced to travel to the IRS offices, submit affidavits to the IRS, file a police report, file a complaint

16  with the Federal Trade Commission, and submit extensive documentation to the lending company. Ms.

17  Brisko spent $82.15 in unreimbursed notary fees, USPS fees and FedEx fees to address these issues.

18  As a result of the Anthem breach, Ms. Brisko has spent over 200 hours addressing issues relating to

19  her tax and credit fraud, monitoring her accounts, and addressing issues arising from the Anthem data

20  breach.

21       23.     Plaintiff Alvin Lawson is a citizen and resident of the State of California. Mr. Lawson

22  was enrolled in a Blue Cross Blue Shield Association Federal Employee PPO health plan through his

23  wife's employer, the U.S. Postal Service, and paid premiums on a regular basis. The Blue Cross Blue

24  Shield Association and Anthem collected and received Mr. Lawson's Personal Information, which

25  Anthem maintained in its database. Mr. Lawson received a letter from Anthem informing him that his

26  Personal Information may have been compromised as a result of the Anthem breach. As a result of the

27  Anthem breach, Mr. Lawson has spent numerous hours monitoring his accounts and addressing issues

28  arising from the Anthem data breach.

9

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

**Colorado**

24.     Plaintiff James Schatzman is a citizen and resident of the State of Colorado. Mr. Schatzman was enrolled in an Anthem Blue Cross Blue Shield health plan and paid premiums on a regular basis. Anthem Blue Cross Blue Shield and Anthem collected and received Mr. Schatzman's Personal Information, which Anthem maintained in its database. Mr. Schatzman subsequently received a letter from the IRS informing him that someone had filed a false tax return in his name using his Personal Information. The IRS informed Mr. Schatzman the suspicious tax return was likely a result of the Anthem data breach. Mr. Schatzman's $7,000 tax refund was delayed for 6 months. As a result of the Anthem data breach, Mr. Schatzman has spent numerous hours addressing issues arising from the Anthem data breach.

**Connecticut**

25.     Plaintiff Janet Brunton is a citizen and resident of the State of Connecticut. Ms. Brunton was enrolled in an AT&T East Bargained Employee Medical Program health plan that was administered by Blue Cross and Blue Shield of Illinois and Ms. Brunton paid premiums on a regular basis. Blue Cross and Blue Shield of Illinois and Anthem collected and received Ms. Brunton's Personal Information, which Anthem maintained in its database.  Ms. Brunton also was enrolled in an Anthem Health Plans, Inc. insurance plan. Anthem Health Plans, Inc. and Anthem collected and received Ms. Brunton's Personal Information, which Anthem maintained in its database. Ms. Brunton received a letter from Anthem informing her that her Personal Information may have been compromised as a result of the Anthem data breach. Ms. Brunton subsequently received notice from her tax preparer that the IRS had received a false tax return filed in Ms. Brunton's name using her Personal Information. Ms. Brunton's approximately $10,000 tax return was delayed four months. As a result of the Anthem breach, Ms. Brunton has spent numerous hours addressing issues arising from the Anthem data breach.

26.     Plaintiff Kimberly Kos-Williams is a citizen and resident of the State of Connecticut. Ms. Kos-Williams was enrolled in an Anthem Health Plans, Inc. d/b/a Anthem Blue Cross and Blue Shield of Connecticut health plan that she purchased directly from Anthem, and paid premiums on a regular basis. Blue Cross and Blue Shield of Connecticut and Anthem collected and received Ms. Kos-

1    Williams's Personal Information, which Anthem maintained in its database. Ms. Kos-Williams, her

2    husband, and her two sons received a letter from Anthem informing them that their Personal

3    Information may have been compromised as a result of the Anthem breach. In or about April of 2015,

4    Ms. Kos-Williams and her husband learned from the IRS that a false tax return had been filed in their

5    names using their Personal Information. Ms. Kos-Williams and her husband were forced to submit

6    affidavits to the IRS, file a complaint with the Federal Trade Commission, and report the fraudulent

7    return to the State of Connecticut. Their 2014 tax refund was delayed until approximately May 2015.

8    As a result of the Anthem breach, Ms. Kos-Williams has spent numerous hours addressing issues

9    arising from the Anthem data breach.

10    27.    Plaintiff Gary Lasneski is a citizen and resident of the State of Connecticut. Mr.

11    Lasneski was enrolled in Anthem Health Plans, Inc. d/b/a Anthem Blue Cross and Blue Shield of

12    Connecticut PPO health plan and an Anthem Health Plans, Inc. d/b/a Anthem Blue Cross and Blue

13    Shield of Connecticut HMO health plan that he purchased independently and paid premiums for on a

14    regular basis. Blue Cross and Blue Shield of Connecticut and Anthem collected and received Mr.

15    Lasneski's Personal Information, which Anthem maintained in its database. Mr. Lasneski received a

16    letter from Anthem informing him that his Personal Information may have been compromised as a

17    result of the Anthem breach. Mr. Lasneski subsequently received a letter from the IRS indicating that

18    someone had tried to file a false tax return in his name using his Personal Information. Mr. Laneski

19    also received letters from Best Buy, Office Depot, and Capitol One indicating that someone was trying

20    to open credit accounts in his name using his Personal Information including his name, address, Social

21    Security number and other personally-identifiable information. As a result, Mr. Lasneski has placed

22    extended fraud alerts on his credit reports with the three major U.S. consumer credit reporting agencies

23    in order to detect potential identity theft and fraudulent activity. Because of the fraud tied to Mr.

24    Lasneski's accounts, Mr. Lasneski has been delayed in getting approval for small business loans

25    relating to his business. As a result of the Anthem breach, Mr. Lasneski has spent numerous hours

26    addressing fraudulent activity, monitoring his accounts, and addressing issues arising from the Anthem

27    data breach.

28    28.    Plaintiff Ralph Staffieri is a citizen and resident of the State of Connecticut. Mr.

11

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

1    Staffieri was enrolled in an Anthem Blue Cross Blue Shield Association Federal health plan through

2    his employer, the federal government, and paid premiums on a regular basis. The Blue Cross Blue

3    Shield Association and Anthem collected and received Mr. Staffieri's Personal Information, which

4    Anthem maintained in its database. Mr. Staffieri received a letter from Anthem informing him that his

5    Personal Information may have been compromised as a result of the Anthem breach. As a result of the

6    Anthem breach, Mr. Staffieri has spent numerous hours monitoring his accounts and addressing issues

7    arising from the Anthem data breach.

8            29.    Plaintiff Jessica Holguin is a citizen and resident of the State of Connecticut. Ms.

9    Holguin was enrolled in a Blue Cross and Blue Shield of Vermont health plan and paid premiums on a

10   regular basis. Ms. Holguin's father, who was enrolled in the same health plan, received a letter from

11   Anthem informing him that his Personal Information may have been compromised as a result of the

12   Anthem breach. Ms. Holguin subsequently contacted the U.S. Department of Education to update her

13   student loan account information and learned that the Department had received a check for $5,000

14   from an IRS federal tax return that was fraudulently filed in Ms. Holguin's name. Ms. Holguin

15   contacted the IRS and confirmed that a false tax return had been filed in her name using her Personal

16   Information. Ms. Holguin was advised by the IRS that when she filed her 2014 tax return it would take

17   approximately 180 days to receive her anticipated $9,000 refund, which she still has not received. Ms.

18   Holguin, who has two young children, intended to use her anticipated 2014 tax refund to help pay for

19   her family's living expenses and is now experiencing financial difficulties due to the lengthy delay in

20   receiving her tax refund as a result of the fraudulent filing. As a result of the Anthem breach, Ms.

21   Holguin has spent over 50 hours addressing issues relating to tax fraud, monitoring her accounts, and

22   addressing issues arising from the Anthem data breach.

23                                    **Delaware**

24          30.    Danielle DiFonzo is a citizen and resident of the State of Delaware. Ms. DiFonzo was

25   enrolled in an Anthem Health Plans, Inc. d/b/a Anthem Blue Cross and Blue Shield of Connecticut

26   health plan and paid premiums on a regular basis. Anthem Blue Cross and Blue Shield of Connecticut

27   and Anthem collected and received Ms. DiFonzo's Personal Information, which Anthem maintained in

28   its database. Following announcement of the Anthem breach, fraudsters attempted to open numerous

1    credit applications in Ms. DiFonzo's name and using her Personal Information. At least one attempt

2    was successful and Ms. DiFonzo spent considerable time and effort addressing the issue, including

3    taking a trip to the state police office to report the fraud. Mr. DiFonzo pays approximately $120

4    annually for identity theft and credit monitoring services in order to monitor for identity theft and

5    fraudulent activity resulting from the Anthem breach. As a result of the Anthem breach, Ms. DiFonzo

6    has spent numerous hours monitoring her accounts and addressing issues arising from the Anthem data

7    breach.

8                                    **Florida**

9          31.    Plaintiff Glenn Kahn is a citizen and resident of the State of Florida. Mr. Kahn was

10   enrolled in an Anthem Blue Cross Life and Health Insurance Company health plan and paid premiums

11   on a regular basis. Anthem Blue Cross Life and Health Insurance Company and Anthem collected and

12   received Mr. Kahn's Personal Information, which Anthem maintained in its database. Mr. Kahn

13   received a letter from Anthem informing him that his Personal Information may have been

14   compromised as a result of the Anthem data breach. As a result of the Anthem data breach, Mr. Kahn

15   has spent numerous hours addressing issues arising from the Anthem data breach.

16         32.    Plaintiff Gerald Keaton is a citizen and resident of the State of Florida. Mr. Keaton was

17   enrolled in a BlueCross BlueShield of Georgia health plan and paid premiums on a regular basis.

18   BlueCross BlueShield of Georgia and Anthem collected and received Mr. Keaton's Personal

19   Information, which Anthem maintained in its database. Mr. Keaton received a letter from Anthem

20   informing him that his personal information may have been compromised as a result of the Anthem

21   breach. Mr. Keaton subsequently received a letter from the IRS informing him that someone had filed

22   a false tax return in his name using his Personal Information. As a result of the Anthem breach, Mr.

23   Keaton and his wife were forced to submit affidavits to the IRS and take additional trips to their

24   accountant's office to file paper tax returns. Their 2014 tax return payment was delayed until

25   approximately July 2015 and they are forced to file paper returns for at least the next two years. As a

26   result of the Anthem breach, Mr. Keaton has spent numerous hours addressing issues arising from the

27   Anthem data breach.

28         33.    Plaintiff John McAffry is a citizen and resident of the State of Florida. Mr. McAffry

                                            13

1   was enrolled in a state-sponsored Community Insurance Company d/b/a Anthem Blue Cross and Blue

2   Shield health plan through his employer, the City of Cincinnati, and paid premiums on a regular basis.

3   Anthem Blue Cross and Blue Shield and Anthem collected and received Mr. McAffry's Personal

4   Information, which Anthem maintained in its database. Mr. McAffry received notice via his personal

5   Anthem online insurance portal informing him that his Personal Information may have been

6   compromised as a result of the Anthem breach. Mr. McAffry pays approximately $120 annually for

7   identity theft and credit monitoring services in order to monitor for identity theft and fraudulent

8   activity resulting from the Anthem breach. As a result of the Anthem breach, Mr. McAffry has spent

9   numerous hours addressing issues arising from the Anthem data breach.

10          34.     Plaintiff Charles Platt is a citizen and resident of the State of Florida. Mr. Platt was

11  enrolled in a Blue Cross Blue Shield of Florida Blue Options health plan that he purchased

12  independently and paid premiums for on a regular basis. Blue Cross Blue Shield of Florida and

13  Anthem collected and received Mr. Platt's Personal Information, which Anthem maintained in its

14  database. Mr. Platt received a letter from Blue Cross Blue Shield of Florida and Anthem informing

15  him that his Personal Information may have been compromised as a result of the Anthem breach. As a

16  result of the Anthem breach, Mr. Platt has spent numerous hours addressing issues arising from the

17  Anthem data breach.

18                                          **Georgia**

19          35.     Plaintiff John Thomas, II is a citizen and resident of the State of Georgia. Mr. Thomas

20  was enrolled in a Blue Cross and Blue Shield of Georgia, Inc. and Blue Cross and Blue Shield

21  Healthcare Plan of Georgia, Inc.PPO state health benefit plan through his employer, a county school

22  board, and paid premiums on a regular basis. Blue Cross and Blue Shield of Georgia, Blue Cross and

23  Blue Shield Healthcare Plan of Georgia, and Anthem collected and received Mr. Thomas's Personal

24  Information, which Anthem maintained in its database. Mr. Thomas received a letter from Anthem

25  informing him that his Personal Information may have been compromised as a result of the Anthem

26  breach. Mr. Thomas's wife subsequently received a letter from the IRS informing them that someone

27  had attempted to file a false tax return in their names using their Personal Information. As a result of

28  the Anthem breach, Mr. Thomas and his wife have spent numerous hours addressing issues arising

1   from the Anthem data breach.

2       36.   Plaintiff Lauren Roberts is a citizen and resident of the State of Georgia. Ms. Roberts

3   was enrolled in a Blue Cross Blue Shield of Minnesota health plan and paid premiums on a regular

4   basis. Blue Cross Blue Shield of Minnesota and Anthem collected and received Ms. Roberts's

5   Personal Information, which Anthem maintained in its database. Ms. Roberts was also enrolled in a

6   Blue Cross and Blue Shield of Georgia, Inc. health plan and paid premiums on a regular basis. Blue

7   Cross and Blue Shield of Georgia and Blue Cross Blue Shield of Minnesota collected and received

8   Ms. Roberts's Personal Information, which Anthem maintained in its database. Ms. Roberts received a

9   letter from Anthem informing her that her Personal Information may have been compromised as a

10  result of the Anthem breach. In February 2015, Ms. Roberts received a letter from the health insurance

11  marketplace indicating that someone had fraudulently opened a health insurance policy in her name

12  using her Personal Information. Ms. Roberts spent significant time and effort attempting to cancel the

13  fraudulent policy that was taken out in her name. Ms. Roberts pays approximately $180 annually for

14  identity theft and credit monitoring services in order to monitor for identity theft and fraudulent

15  activity resulting from the Anthem breach. As a result of the Anthem breach, Ms. Roberts has spent

16  numerous hours addressing issues arising from the Anthem data breach.

17      37.   Plaintiff Karen Coppedge is a citizen and resident of the State of Georgia. Ms.

18  Coppedge was enrolled in a health plan that was administered by Anthem Blue Cross Life and Health

19  Insurance Company and Blue Cross of California, Inc., d/b/a Anthem Blue Cross of California, and

20  paid premiums on a regular basis. Anthem Blue Cross Life and Health Insurance Company, Anthem

21  Blue Cross of California and Anthem collected and received Ms. Coppedge's Personal Information,

22  which Anthem maintained in its database. Ms. Coppedge, her husband, and her four daughters

23  received letters from Anthem informing them that their Personal Information may have been

24  compromised as a result of the Anthem breach. As a result of the Anthem breach, Ms. Coppedge has

25  spent numerous hours addressing issues arising from the Anthem data breach.

26      38.   Plaintiff Allison Swank is a citizen and resident of the State of Georgia. Ms. Swank was

27  enrolled in a state-sponsored Blue Cross and Blue Shield of Georgia, Inc. and Blue Cross and Blue

28  Shield Healthcare Plan of Georgia, Inc. through her employer, a Georgia public school, and paid

15

1  premiums on a regular basis. Blue Cross and Blue Shield of Georgia, Inc., Blue Cross and Blue Shield

2  Healthcare Plan of Georgia, Inc., Anthem collected and received Ms. Swank's Personal Information,

3  which Anthem maintained in its database. Ms. Swank received an email and a subsequent letter from

4  Anthem informing her that her Personal Information may have been compromised as a result of the

5  Anthem breach. As a result of the Anthem breach, Ms. Swank has spent numerous hours addressing

6  issues arising from the Anthem data breach.

7          39.     Plaintiff Kevin Donnelly is a citizen and resident of the State of Georgia. Mr. Donnelly

8  was enrolled in a Community Insurance Company d/b/a Anthem Blue Cross and Blue Shield of Ohio

9  health plan and paid premiums on a regular basis. Community Insurance Company and Anthem

10  collected and received Mr. Donnelly's Personal Information, which Anthem maintained in its

11  database. Mr. Donnelly received a letter from Anthem informing him that his Personal Information

12  may have been compromised as a result of the Anthem breach. Additionally, Mr. Donnelly suffered

13  from extensive identity theft when someone opened a fraudulent company in his name using his

14  Personal Information. As a result of the Anthem breach, Mr. Donnelly was forced to file police reports

15  for the identity theft, freeze his wife's and his credit reports with the three major U.S. consumer credit

16  reporting agencies in order to detect potential additional identity theft and fraudulent activity, and

17  assist the Georgia Attorney General's office with the dissolution of the fraudulently created

18  corporation. As a result of the Anthem breach, Mr. Donnelly has spent numerous hours addressing

19  issues arising from the Anthem data breach.

20          40.     Plaintiff Harold Lott is a citizen and resident of the State of Georgia. Mr. Lott was

21  enrolled in a Blue Cross and Blue Shield of Georgia, Inc. health plan through Medicare and paid

22  premiums on a regular basis. Blue Cross and Blue Shield of Georgia and Anthem collected and

23  received Mr. Lott's Personal Information, which Anthem maintained in its database. Mr. Lott

24  contacted Anthem after seeing a story on the news about the breach, and Anthem informed him that

25  his information had been compromised. As a result of the Anthem breach, Mr. Lott has spent

26  numerous hours addressing issues arising from the Anthem data breach.

27                                      **Idaho**

28          41.     Plaintiff Cynthia Kelley is a citizen and resident of the State of Idaho. Ms. Kelley was

16

1    enrolled in an Anthem Blue Cross Life and Health Insurance Company and Anthem health plan

2    through the Motion Picture Industry Pension & Health Plans. Ms. Kelley was notified of the Anthem

3    breach through the Motion Picture Industry Pension and Health Plans website. As a result of the

4    Anthem breach, Ms. Kelley spent significant time monitoring her accounts and took trips to her bank

5    two hours away in order to put blocks on her accounts. Ms. Kelley pays approximately $302 annually

6    for identity theft and credit monitoring services in order to monitor for identity theft and fraudulent

7    activity resulting from the Anthem breach. As a result of the Anthem breach, Ms. Kelley has spent

8    numerous hours monitoring her accounts and addressing issues arising from the Anthem data breach.

9    **Illinois**

10   42.    Plaintiff Mary Wicklund is a citizen and resident of the State of Illinois. Ms. Wicklund

11   was enrolled in a group health plan administered by Blue Cross and Blue Shield of Illinois.  Blue

12   Cross and Blue Shield of Illinois and Anthem collected and received Ms. Wicklund's Personal

13   Information, which Anthem maintained in its database. Ms. Wicklund received a letter from Anthem

14   informing her that her Personal Information may have been compromised as a result of the Anthem

15   data breach. As a result of the Anthem breach, Ms. Wicklund has spent numerous hours addressing

16   issues arising from the Anthem data breach.

17   43.    Plaintiff David Klemer is a citizen and resident of the State of Illinois. Mr. Klemer was

18   enrolled in a Blue Cross and Blue Shield of Illinois – Blue Advantage HMO health plan and his wife

19   paid premiums on a regular basis. Prior to that, Mr. Klemer was enrolled in a Blue Cross Blue Shield

20   of Wisconsin d/b/a Anthem Blue Cross and Blue Shield of Wisconsin health plan through his

21   employer, a government entity, and paid premiums on a regular basis. Blue Cross and Blue Shield of

22   Illinois and Anthem collected and received Mr. Klemer's Personal Information, which Anthem

23   maintained in its database. Mr. Klemer and his wife received a letter from Anthem informing them

24   that their Personal Information may have been compromised as a result of the Anthem breach. Mr.

25   Klemer and his wife subsequently received a letter from the IRS informing them that someone had

26   filed a false tax return in their name using their Personal Information. Mr. Klemer and his wife's tax

27   refund of approximately $580 was delayed two months. As a result of the Anthem breach, Mr. Klemer

28   has spent numerous hours addressing issues arising from the Anthem data breach.

44.     Plaintiff Nadine Foster is a citizen and resident of the State of Illinois. Mrs. Foster was enrolled in Unicare Life & Health Insurance Company insurance and paid premiums on a regular basis. Unicare and Anthem collected and received Mrs. Foster's Personal Information, which Anthem maintained in its database. Mrs. Foster's husband and two of her daughters received letters from Anthem informing them that their Personal Information may have been compromised as a result of the Anthem data breach. Mrs. Foster subsequently received a notice from the IRS informing her that her name and Social Security Number were compromised. Mrs. Foster and her husband were forced to file police reports, sign Federal Trade Commission affidavits, and file their taxes by mail. As a result of the Anthem data breach, Mrs. Foster has spent numerous hours addressing issues arising from the Anthem data breach.

45.     Plaintiff Cynthia Reichrath is a citizen and resident of the State of Illinois. Ms. Reichrath was enrolled in a HealthLink, Inc. State of Illinois health plan through her husband's employer, the State of Illinois Department of Corrections, and paid premiums on a regular basis. HealthLink and Anthem collected and received Ms. Reichrath's Personal Information, which Anthem maintained in its database. Ms. Reichrath received a letter from Anthem informing her that her Personal Information may have been compromised as a result of the Anthem breach. As a result of the Anthem breach, Ms. Reichrath has spent numerous hours monitoring her accounts and addressing issues arising from the Anthem data breach.

46.     Plaintiff Wanda Pratt is a citizen and resident of the State of Illinois. Ms. Pratt was enrolled in a Blue Cross and Blue Shield of Illinois PPO health plan and paid premiums on a regular basis. Blue Cross and Blue Shield of Illinois and Anthem collected and received Ms. Pratt's Personal Information, which Anthem maintained in its database. Ms. Pratt received a letter from Anthem and Blue Cross Blue Shield of Illinois informing her that her Personal Information may have been compromised as a result of the Anthem breach. Ms. Pratt pays approximately $360 annually for identity theft and credit monitoring services in order to monitor for identity theft and fraudulent activity resulting from the Anthem breach. As a result of the Anthem breach, Ms. Pratt has spent numerous hours monitoring her accounts and addressing issues arising from the Anthem data breach.

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

**Indiana**

47.     Plaintiff Brent Harris is a citizen and resident of the State of Indiana. Mr. Harris was enrolled in an Anthem Insurance Companies, Inc. d/b/a Anthem Blue Cross and Blue Shield of Indiana/Bronze Pathway X HMO health plan that he purchased individually, and paid premiums for on a regular basis. Anthem and Anthem Blue Cross Blue Shield of Indiana collected and received Mr. Harris's Personal Information, which Anthem maintained in its database. Mr. Harris received a letter and email from Anthem informing him that his Personal Information may have been compromised as a result of the Anthem breach. As a result of the Anthem breach, Mr. Harris has spent numerous hours addressing issues arising from the Anthem data breach.

48.     Plaintiff Stella Williams is a citizen and resident of the State of Indiana. Ms. Williams was enrolled in a Blue Cross Blue Shield Association Federal Employee Program health plan through her employer, a department of the federal government, and paid premiums on a regular basis. The Blue Cross Blue Shield Association and Anthem collected and received Ms. Williams's Personal Information, which Anthem maintained in its database. Ms. Williams received a letter from her employer informing her that her Personal Information may have been compromised as a result of the Anthem breach. As a result of the Anthem breach, Ms. Williams has spent numerous hours addressing issues arising from the Anthem data breach.

49.     Plaintiff Steven Quinnette is a citizen and resident of the State of Indiana. Mr. Quinnette was enrolled in an Anthem Insurance Companies, Inc. d/b/a Anthem Blue Cross and Blue Shield of Indiana health plan through the Archdioceses of Indianapolis, and paid premiums on a regular basis. Anthem and Anthem Blue Cross and Blue Shield of Indiana collected and received Mr. Quinnette's Personal Information, which Anthem maintained in its database. Mr. Quinnette received an email from his employer and a letter from Anthem informing him that his Personal Information may have been compromised as a result of the Anthem breach. Mr. Quinnette was notified by All Clear ID that his son, a minor victim of the Anthem data breach, had suspicious use of his Social Security Number. As a result of the Anthem breach, Mr. Quinnette has spent numerous hours addressing issues arising from the Anthem data breach.

50.     Plaintiff Darrell Hunter is a citizen and resident of the State of Indiana. Mr. Hunter was

19

1   enrolled in a Blue Cross and Blue Shield of Massachusetts, Inc. health plan, and paid premiums on a
2   regular basis. Blue Cross and Blue Shield of Massachusetts and Anthem collected and received Mr.
3   Hunter's Personal Information, which Anthem maintained in its database. Mr. Hunter's wife received
4   a letter from her employer informing them that their Personal Information may have been
5   compromised as a result of the Anthem breach. Mr. Hunter and his wife subsequently received
6   notification from the IRS informing them that someone had filed a false tax return in their name using
7   their Personal Information. Mr. Hunter and his wife were forced to submit affidavits to the IRS and
8   contact their congressman for assistance. Their 2014 tax return payment of approximately $2,000 was
9   delayed five months. Additionally Mr. Hunter pays approximately $348 annually for identity theft and
10  credit monitoring services in order to monitor for identity theft and fraudulent activity resulting from
11  the Anthem breach. As a result of the Anthem breach, Mr. Hunter has spent numerous hours
12  addressing issues arising from the Anthem data breach.

13          51.     Plaintiff Cheryl Grissom is a citizen and resident of the State of Indiana. Ms. Grissom
14  was enrolled in an Anthem Insurance Companies, Inc. d/b/a Anthem Blue Cross and Blue Shield of
15  Indiana health plan that she purchased individually and she paid premiums on a regular basis. Anthem
16  and Anthem Blue Cross and Blue Shield of Indiana collected and received Ms. Grissom's Personal
17  Information, which Anthem maintained in its database. Ms. Grissom received a letter from Anthem
18  informing her that her Personal Information may have been compromised as a result of the Anthem
19  breach. Ms. Grissom subsequently received a letter from the IRS informing her that someone had filed
20  a false tax return in her name using her Personal Information. Ms. Grissom still has not received her
21  2014 tax return payment in the approximate amount of $10,262. As a result of the Anthem breach, Ms.
22  Grissom has spent numerous hours addressing issues arising from the Anthem data breach.

23          52.     Plaintiff Melinda Lambert is a citizen and resident of the State of Indiana. Mrs.
24  Lambert was enrolled in an Anthem Insurance Companies, Inc. d/b/a Anthem Blue Cross and Blue
25  Shield of Indiana PPO health plan and paid premiums on a regular basis. Anthem and Anthem Blue
26  Cross Blue Shield of Indiana collected and received Ms. Lambert's Personal Information, which
27  Anthem maintained in its database. Mrs. Lambert and her husband received a letter from Anthem
28  informing them that their Personal Information may have been compromised as a result of the Anthem

1   breach. Mrs. Lambert and her husband subsequently received a letter from the IRS informing them

2   that someone had filed a false tax return in their name using their Personal Information. Additionally,

3   Ms. Lambert pays approximately $40 annually for identity theft and credit monitoring services in

4   order to monitor for identity theft and fraudulent activity resulting from the Anthem breach. As a result

5   of the Anthem breach, Mrs. Lambert and her husband have spent numerous hours addressing issues

6   arising from the Anthem data breach.

7          53.     Plaintiff Amy Whittaker is a citizen and resident of the State of Indiana. Ms. Whittaker

8   was enrolled in an Anthem Insurance Companies, Inc. d/b/a Anthem Blue Cross and Blue Shield of

9   Indiana health plan and paid premiums on a regular basis. Ms. Whittaker was previously enrolled in a

10  health plan sponsored by WalMart, and administered by Arkansas Blue Cross and Blue Shield, and

11  paid premiums on a regular basis.  Anthem, Anthem Blue Cross and Shield of Indiana, and Arkansas

12  Blue Cross and Blue Shield collected and received Ms. Whittaker's Personal Information, which

13  Anthem maintained in its database. Ms. Whittaker's husband received a letter from Anthem informing

14  him that his Personal Information may have been compromised as a result of the Anthem breach. Ms.

15  Whittaker and her husband subsequently received an email from their tax preparer informing them that

16  a false tax return had been filed in their name using their Personal Information. Ms. Whittaker and her

17  husband still have not received their 2014 tax return payment in the approximate amount of $500. As a

18  result of the Anthem breach, Ms. Whittaker has spent numerous hours addressing issues arising from

19  the Anthem data breach.

20         54.     Plaintiff Jason Price is a citizen and resident of the State of Indiana. Mr. Price was

21  enrolled in an Anthem Insurance Companies, Inc. d/b/a Anthem Blue Cross and Blue Shield of Indiana

22  health plan through his wife's employer, a government entity, and paid premiums on a regular basis.

23  Anthem and Anthem Blue Cross and Blue Shield of Indiana collected and received Mr. Price's

24  Personal Information, which Anthem maintained in its database. Mr. Price and his wife received a

25  letter from Anthem informing them that their Personal Information may have been compromised as a

26  result of the Anthem breach. Mr. Price and his wife received a letter from their tax preparer informing

27  them that a false tax return had been filed in their name using their Personal Information. As a result of

28  the Anthem breach, Mr. Price and his wife were forced to submit affidavits to the IRS. Their 2014 tax

1   return payment of approximately $4,500 was delayed seven months. As a result of the Anthem breach,

2   Mr. Price has spent numerous hours addressing issues arising from the Anthem data breach.

3          55.     Plaintiff Carrie Donoghue is a citizen and resident of the State of Indiana. Ms.

4   Donoghue was enrolled in an Anthem Insurance Companies, Inc. d/b/a Anthem Blue Cross and Blue

5   Shield of Indiana health plan through Medicaid and Medicare and paid premiums on a regular basis.

6   Anthem and Blue Cross Blue Shield collected and received Ms. Donoghue's Personal Information,

7   which Anthem maintained in its database. Ms. Donoghue received a letter from Anthem informing her

8   that her Personal Information may have been compromised as a result of the Anthem breach. Ms.

9   Donoghue subsequently received a letter from the IRS informing her that someone had filed a false tax

10  return in her name using her Personal Information. Ms. Donoghue still has not received her 2014 tax

11  return payment of approximately $2,800. As a result of the Anthem breach, Ms. Donoghue has spent

12  numerous hours addressing issues arising from the Anthem data breach.

13                                            **Iowa**

14         56.     Plaintiff Shantel Jones is a citizen and resident of the State of Iowa. Ms. Jones was

15  enrolled in a Blue Cross and Blue Shield of Texas health plan and her husband paid premiums on a

16  regular basis. Blue Cross and Blue Shield of Texas and Anthem collected and received Ms. Jones's

17  Personal Information, which Anthem maintained in its database. Ms. Jones received a letter informing

18  her that her Personal Information may have been compromised as a result of the Anthem breach.

19  Fraudulent charges appeared on Ms. Jones's husband's debit card that were disputed and eventually

20  refunded. Ms. Jones and her husband have spent numerous hours addressing issues arising from the

21  Anthem data breach.

22                                           **Kansas**

23         57.     Plaintiff Jason Jenkins is a citizen and resident of the State of Kansas. Mr. Jenkins was

24  enrolled in a Rocky Mountain Hospital and Medical Service, Inc. health plan and paid premiums on a

25  regular basis. Rocky Mountain Hospital and Medical Service, Inc. and Anthem collected and received

26  Mr. Jenkins's Personal Information, which Anthem maintained in its database. Mr. Jenkins received a

27  letter from Anthem informing him that his Personal Information may have been compromised as a

28  result of the Anthem breach. As a result of the Anthem breach, Mr. Jenkins has spent numerous hours

22

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

1  monitoring his accounts and addressing issues arising from the Anthem data breach.

2        58.    Plaintiff Kelli Smith is a citizen and resident of the State of Kansas. Mrs. Smith and her

3  husband Joseph enrolled their three minor children in an Amerigroup KanCare health plan (a managed

4  care health benefits network run by Amerigroup Kansas, Inc. and Amerigroup Corporation) that they

5  purchased independently and paid premiums for on a regular basis. Amerigroup Corporation,

6  Amerigroup Kansas, Inc., and Anthem collected and received the Personal Information of Mrs. Smith

7  and her three minor children, which Anthem maintained in its database. Mrs. Smith received a letter

8  from Anthem informing her that the Personal Information of herself and her minor children may have

9  been compromised as a result of the Anthem breach. Mrs. Smith was subsequently notified by her

10  accountant that someone had filed a false tax return in her and her husband's name using their

11  Personal Information. As a result of the Anthem breach, Mrs. Smith and her husband were forced to

12  travel to the IRS office, submit documentation to the IRS, file a police report, pay postage, and take

13  multiple trips to the post office and police precinct to address issues relating to tax fraud at their

14  expense. Mrs. Smith and her husband will need to use a PIN to file her taxes in the future, and her

15  2014 tax refund payment was delayed by more than six months. This delay caused hardships to Mrs.

16  Smith and her husband who needed their tax refund to pay down medical bills. As a result of the

17  Anthem breach, Mrs. Smith and her husband have spent numerous hours addressing issues relating to

18  their tax fraud, monitoring their accounts, and addressing issues arising from the Anthem data breach.

19  **Kentucky**

20        59.    Plaintiff Dianne Reistroffer is a citizen and resident of the State of Kentucky. Ms.

21  Reistroffer was enrolled in an Anthem Health Plans of Kentucky, Inc. d/b/a Anthem Blue Cross and

22  Blue Shield of Kentucky Medicare Select health plan that she purchased directly from Anthem, and

23  she paid premiums on a regular basis. Anthem Blue Cross and Blue Shield of Kentucky and Anthem

24  collected and received Ms. Reistroffer's Personal Information, which Anthem maintained in its

25  database. Ms. Reistroffer received a letter from Anthem informing her that her Personal Information

26  may have been compromised as a result of the Anthem breach. Ms. Reistroffer pays approximately

27  $108 annually for identity theft and credit monitoring services in order to monitor for identity theft and

28  fraudulent activity resulting from the Anthem Breach. As a result of the Anthem breach, Ms.

1   Reistroffer has spent numerous hours addressing issues arising from the Anthem data breach.

2        60.   Plaintiff Christopher Ruberg is a citizen and resident of the State of Kentucky. Mr.

3   Ruberg was enrolled in an Anthem Health Plans of Kentucky, Inc. d/b/a Anthem Blue Cross and Blue

4   Shield of Kentucky Blue Access PPO health plan that he purchased directly from Anthem, and paid

5   premiums on a regular basis. Anthem Blue Cross and Blue Shield of Kentucky and Anthem collected

6   and received Mr. Ruberg's Personal Information, which Anthem maintained in its database. Mr.

7   Ruberg received two emails and a letter from Anthem informing him that his Personal Information

8   may have been compromised as a result of the Anthem breach. As a result of the Anthem breach, Mr.

9   Ruberg has spent numerous hours addressing issues arising from the Anthem data breach.

10       61.   Plaintiff Frank Bailey is a citizen and resident of the State of Kentucky. Mr. Bailey was

11  enrolled in a BCBSM, Inc. d/b/a Blue Cross and Blue Shield of Minnesota health plan and paid

12  premiums on a regular basis. Blue Cross and Blue Shield of Minnesota and Anthem collected and

13  received Mr. Bailey's Personal Information, which Anthem maintained in its database. Mr. Bailey

14  received a letter from Anthem informing him that his Personal Information may have been

15  compromised as a result of the Anthem breach. As a result of the Anthem breach, Mr. Bailey has spent

16  numerous hours monitoring his accounts and addressing issues arising from the Anthem data breach.

17       62.   Plaintiff Jason Baker is a citizen and resident of the State of Kentucky. Mr. Baker was

18  enrolled in an Anthem Blue Cross Blue Shield Association Federal Employees Program health plan

19  through his employer, the SSA Office of the Inspector General, and paid premiums on a regular basis.

20  The Blue Cross Blue Shield Association and Anthem collected and received Mr. Baker's Personal

21  Information, which Anthem maintained in its database. Mr. Baker received a letter from Anthem

22  informing him that his Personal Information may have been compromised as a result of the Anthem

23  breach. After the announcement of the Anthem breach, the IRS notified Mr. Baker that his tax return

24  had been rejected because someone had filed a false return in his name using his Personal Information.

25  As a result of the Anthem breach, Mr. Baker was forced to call and submit affidavits to the IRS, file a

26  police report, file a complaint with the Federal Trade Commission, and place credit freezes on his

27  credit reports with the three major U.S. consumer credit reporting agencies. His tax return was delayed

28  for a number of months and Mr. Baker will only be able to file in future years after receiving a unique

PIN from the IRS for the rest of his life.  In addition, after the Anthem breach was announced, someone opened a Green Dot prepaid debit card in Mr. Baker's name and using his Personal Information, and used it to make fraudulent purchases. Mr. Baker spent significant time and effort attempting to get the fraudulent account closed. As a result of the Anthem breach, Mr. Baker has spent a significant number of hours addressing tax and credit fraud, monitoring his accounts, and addressing issues arising from the Anthem data breach.

### Louisiana

63.     Plaintiffs Stephen and Beryl Fisse, on behalf of their minor daughter M.F., are citizens and residents of the State of Louisiana. M.F. was enrolled in an an Anthem Health Plans of Virginia, Inc. d/b/a Anthem Blue Cross and Blue Shield of Virginia health insurance plan through Stephen Fisse's employer. Mr. Fisse paid premiums on a regular basis. Anthem Blue Cross Blue Shield collected and received M.F.'s Personal Information, which Anthem maintained in its database. Anthem confirmed to Plaintiffs Stephen and Beryl Fisse that their minor daughter, M.F.'s Personal Information may have been compromised as a result of the Anthem breach. Plaintiffs Stephen and Beryl Fisse only became aware that M.F.'s Personal Information was compromised after they contacted Anthem directly to inquire. As a result of the Anthem breach, Plaintiffs Stephen and Beryl Fisse have spent time and effort monitoring their accounts and those of their minor daughter in order to account for possible fraud or identity theft relating to the Anthem breach.

### Maine

64.     Plaintiff Robin Wilkey is a citizen and resident of the State of Maine. Ms. Wilkey was enrolled in an Anthem Blue Cross Blue Shield—Anthem Health Plans of Maine, Inc., Maine Education Trust (MEA Benefits Trust) health plan through her employer, a public school, and paid premiums on a regular basis while her husband was enrolled in that plan. Anthem and Anthem Health Plans of Maine, Inc. collected and received Ms. Wilkey's Personal Information, which Anthem maintained in its database. Ms. Wilkey and her husband placed credit freezes on their credit reports with the three major U.S. consumer credit reporting agencies in order to detect potential identity theft and fraudulent activity. In February 2015 Ms. Wilkey was notified by her accountant that someone had filed a false tax return in her name using her Personal Information. As a result of the Anthem breach,

1  Ms. Wilkey was forced to submit an affidavit to the IRS, file a police report, take trips to the bank and

2  post office, and make calls to the State of Maine's Insurance Bureau. Ms. Wilkey's $4,400 tax refund

3  was delayed six months and Ms. Wilkey was forced to take odd jobs over the summer. Ms. Wilkey

4  also submitted an identity theft claim to the All Clear ID service that Anthem offered as a result of the

5  breach and that claim was denied. As a result of the Anthem data breach, Ms. Wilkey has spent over

6  100 hours addressing issues arising from the Anthem data breach.

7       65.     Plaintiff Gary Bellegarde is a citizen and resident of the State of Maine. Mr. Bellegarde

8  was enrolled in a Health Plans of Maine, Inc. d/b/a Anthem Blue Cross and Blue Shield of Maine plan

9  and paid premiums on a regular basis. Anthem and Blue Cross and Blue Shield of Maine collected and

10  received Mr. Bellegarde's Personal Information, which Anthem maintained in its database. Mr.

11  Bellegarde received a letter from Anthem informing him that his Personal Information may have been

12  compromised as a result of the Anthem breach, as did his wife, who was a member of the same health

13  plan. After announcement of the Anthem breach, Mr. Bellegarde received a call from his accounting

14  firm informing him that his tax returns had been rejected because someone had filed a false tax return

15  in his name using his Personal Information. Mr. Bellegarde had to drive to the local IRS office to

16  provide proof of identification and fill out an affidavit. As a result, his 2014 tax refund payment was

17  delayed by four months. Mr. Bellegarde also had to travel to the state capital with the paper returns to

18  prevent possible state tax fraud. As a result of the Anthem breach, Mr. Bellegarde has spent numerous

19  hours monitoring his accounts and addressing issues arising from the Anthem data breach.

20       66.     Plaintiff Mark Hatcher is a citizen and resident of the State of Maine. Mr. Hatcher

21  purchased a Health Plans of Maine, Inc. d/b/a Anthem Blue Cross and Blue Shield of Maine health

22  plan independently and paid premiums on a regular basis. Anthem and Anthem Blue Cross and Blue

23  Shield of Maine collected and received Mr. Hatcher's Personal Information, which Anthem

24  maintained in its database. Mr. Hatcher received a letter from Anthem informing him that his Personal

25  Information may have been compromised as a result of the Anthem breach. After announcement of the

26  Anthem breach, Mr. Hatcher's Social Security Number was used to change the PIN on his bank

27  account and the account balance of approximately $913 was withdrawn. During the period before the

28  unauthorized charges were returned, Mr. Hatcher was unable to pay several bills, which damaged his

1    credit, but also left him unable to purchase necessities. One of the bills Mr. Hatcher was unable to pay

2    during this period was his monthly premium to Anthem, and his policy lapsed. Anthem would not

3    reinstate Mr. Hatcher's policy, forcing him to wait until the next open enrollment period to reenroll

4    and leaving him without health insurance coverage in the interim. Mr. Hatcher also incurred a $20.00

5    late fee for the storage unit he was renting.  The late payment was a result of a failed auto-payment

6    which fell 2 days after his bank account was breached and during the time his bank account was

7    frozen. As a result of the Anthem breach, Mr. Hatcher has spent numerous hours monitoring his

8    accounts and addressing issues arising from the Anthem data breach.

9                                          **Maryland**

10          67.     Plaintiff Don West is a citizen and resident of the State of Maryland. Mr. West enrolled

11   in a CareFirst of Maryland health plan and paid premiums on a regular basis. CareFirst of Maryland

12   and Anthem collected and received Mr. West's Personal Information, which Anthem maintained in its

13   database. Mr. West received a letter from Anthem and his employer informing him that his Personal

14   Information may have been compromised as a result of the Anthem breach. In or about February 2015,

15   Mr. West was notified that someone had filed a false tax return under his name using his Personal

16   Information. Mr. West was forced to submit affidavits to the IRS, file a police report, and file his taxes

17   by mail. Mr. West's federal tax refund of $1,700 was delayed six months and Mr. West's State of

18   Maryland tax refund of $400 was delayed eight months. Mr. West received notification that an attempt

19   was made to open a Capital One credit card with Mr. West's Personal Information. As a result of the

20   Anthem breach, Mr. West has spent numerous hours addressing issues arising from the Anthem data

21   breach.

22                                        **Massachusetts**

23          68.     Plaintiff Fazi Zand is a citizen and resident of the State of Massachusetts. Mr. Zand was

24   enrolled in an Anthem Blue Cross Life and Health Insurance Company health plan and paid premiums

25   on a regular basis. Anthem Blue Cross Life and Health Insurance Company and Anthem collected and

26   received Mr. Zand's Personal Information, which Anthem maintained in its database. Mr. Zand

27   received notification e-mails from Anthem and his employer informing him that his information may

28   have been compromised as a result of the Anthem data breach. As a result of the Anthem breach, Mr.

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

1  Zand has spent numerous hours monitoring his accounts and addressing issues arising from the

2  Anthem data breach.

3      69.     Plaintiff Claudia Cass is a citizen and resident of the State of Massachusetts. Ms. Cass

4  was enrolled in the New York State Health Insurance Program (NYSHIP) for Government Employees.

5  Empire HealthChoice Assurance, Inc. d/b/a Empire BlueCross Blue Shield, an Anthem Affiliate,

6  provided services under the NYSHIP plan. Anthem and Empire BlueCross Blue Shield collected and

7  received Ms. Cass's Personal Information, which Anthem maintained in its database. Ms. Cass

8  received a letter from Anthem informing her that her Personal Information may have been

9  compromised as a result of the Anthem breach. Ms. Cass then learned from an Anthem representative

10 that her daughter's Personal Information was also compromised. After announcement of the Anthem

11 breach, Ms. Cass received a notification that her tax return had been rejected because someone had

12 filed a false tax return in her name using her Personal Information and a refund had already been

13 given. The IRS sent Ms. Cass to her local Social Security office, the police, and her bank. Ms. Cass

14 will need to use a PIN to file her taxes in the future, and her 2014 tax refund payment was delayed by

15 almost six months. Additionally, Ms. Cass pays approximately $100 annually for identity theft and

16 credit monitoring services in order to monitor for identity theft and fraudulent activity resulting from

17 the Anthem breach. As a result of the Anthem breach, Ms. Cass has spent numerous hours monitoring

18 her accounts and addressing issues arising from the Anthem data breach.

19     70.     Plaintiff Robert Roy is a citizen and resident of the State of Massachusetts. Mr. Roy

20 was enrolled in a Life & Health Insurance Company health plan through his employer, the

21 Commonwealth of Massachusetts, and he paid premiums on a regular basis. Unicare Life & Health

22 Insurance Company and Anthem collected and received Mr. Roy's Personal Information, which

23 Anthem maintained in its database. Mr. Roy received a letter from Anthem informing him that his

24 Personal Information may have been compromised as a result of the Anthem breach. Mr. Roy pays

25 approximately $252 annually for identity theft and credit monitoring services in order to monitor for

26 identity theft and fraudulent activity resulting from the Anthem breach. Mr. Roy was subsequently

27 notified by his CPA that someone had filed a false tax return under his name using his Personal

28 Information. As a result of the Anthem breach, Mr. Roy was forced to submit an affidavit to the IRS,

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

1    file a police report, and file his taxes by mail. Mr. Roy's $1,700 tax refund was delayed 2.5 months.

2    As a result of the Anthem breach, Mr. Roy has spent numerous hours addressing issues arising from

3    the Anthem data breach.

4          71.     Plaintiff Carrie Ramos is a citizen and resident of the State of Massachusetts. Ms.

5    Amos was enrolled in a state-sponsored Blue Cross and Blue Shield of Massachusetts, Inc. Preferred

6    Blue PPO and paid premiums on a regular basis. Blue Cross and Blue Shield of Massachusetts and

7    Anthem collected and received Ms. Ramos's Personal Information, which Anthem maintained in its

8    database. Around March 2015, Ms. Ramos received a letter from Blue Cross and Blue Shield of

9    Massachusetts informing her that some of her Personal Information was accessed during the breach.

10    She subsequently received a letter from Anthem informing her that her Personal Information may have

11    been compromised as a result of the Anthem breach. As a result of the Anthem breach, Ms. Ramos has

12    spent numerous hours addressing issues arising from the Anthem data breach.

13          72.     Plaintiff Lisa Daniels is a citizen and resident of the State of Massachusetts.  Ms.

14    Daniels was enrolled in a Healthy Alliance Life Insurance Company d/b/a Anthem Blue Cross and

15    Blue Shield of Missouri plan and paid premiums on a regular basis.  Anthem and Anthem Blue Cross

16    and Blue Shield of Missouri collected and received Ms. Daniels' Personal Information, which Anthem

17    maintained in its database.  Ms. Daniels received a letter from Anthem informing her that her Personal

18    Information may have been compromised as a result of the breach.  As a result of the Anthem breach,

19    Ms. Daniels has spent numerous hours monitoring her accounts and addressing issues arising from the

20    Anthem data breach.

21                                  **Michigan**

22          73.     Plaintiff Michelle Kaseta-Collins is a citizen and resident of the State of Michigan.

23    During the relevant period, Ms. Kaseta-Collins was enrolled in several different health plans. Ms.

24    Kaseta-Collins was enrolled in a Blue Cross and Blue Shield of Michigan MESSA health plan through

25    her employer, a public university, and paid premiums on a regular basis. Ms. Kaseta-Collins was

26    enrolled in a Blue Cross Blue Shield of Michigan Community Blue PPO ASC health plan through her

27    employer, a public school, and paid premiums on a regular basis. Ms. Kaseta-Collins was also enrolled

28    in a CareFirst of Maryland, Inc. health plan and paid premiums on a regular basis. Blue Cross Blue

1   Shield of Michigan, CareFirst of Maryland, Inc. and Anthem collected and received Ms. Kaseta-

2   Collins' Personal Information, which Anthem maintained in its database. Ms. Kaseta-Collins and her

3   daughter received a letter from Anthem informing them that their Personal Information may have been

4   compromised as a result of the Anthem breach. Ms. Kaseta-Collins placed credit freezes on her and

5   her daughter's credit reports with the three major U.S. consumer credit reporting agencies in order to

6   detect potential identity theft and fraudulent activity. As a result of the Anthem breach, Ms. Kaseta-

7   Collins has spent numerous hours addressing issues arising from the Anthem data breach.

8                                             **Minnesota**

9          74.     Plaintiff Hank Maurer is a citizen and resident of the State of Minnesota. Mr. Maurer

10   was enrolled in an Anthem Health Plans, Inc. d/b/a Anthem Blue Cross and Blue Shield health plan

11   and paid premiums on a regular basis. Anthem Blue Cross Blue Shield and Anthem collected and

12   received Mr. Maurer's Personal Information, which Anthem maintained in its database. Mr. Maurer

13   received a letter from Anthem informing him that his Personal Information may have been

14   compromised as a result of the Anthem breach. Mr. Maurer pays approximately $180 annually for

15   identity theft and credit monitoring services in order to monitor for identity theft and fraudulent

16   activity resulting from the Anthem breach. As a result of the Anthem breach, Mr. Maurer has spent

17   numerous hours addressing issues arising from the Anthem data breach.

18          75.     Plaintiff Jack Wenglewick is a citizen and resident of the State of Minnesota. During

19   the relevant period, Mr. Wenglewick was enrolled in multiple health plans. Mr. Wenglewick was

20   enrolled in a Blue Cross and Blue Shield of Illinois health plan and an Anthem Blue Cross Life and

21   Health Insurance Company Choice Plus PPO health plan and paid premiums on a regular basis.

22   Anthem, Blue Cross and Blue Shield of Illinois, and Anthem Blue Cross Life and Health Insurance

23   Company collected and received Mr. Wenglewick's Personal Information, which Anthem maintained

24   in its database.  Mr. Wenglewick received notification e-mails from Anthem and his employer

25   informing him that his Personal Information may have been compromised as a result of the Anthem

26   data breach. As a result of the Anthem breach, Mr. Wenglewick has spent numerous hours monitoring

27   his accounts and addressing issues arising from the Anthem data breach.

28

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

**Mississippi**

76.     Plaintiff Charles McCullough is a citizen and resident of the State of Mississippi. Mr. McCullough was enrolled in an Anthem Health Plans of Virginia, Inc. health plan through Yokohama Tire Corporation, and paid premiums on a regular basis. Blue Cross Blue Shield and Anthem collected and received Mr. McCullough's Personal Information, which Anthem maintained in its database. Mr. McCullough received a letter from Anthem informing him that his Personal Information may have been compromised as a result of the Anthem breach. Mr. McCullough also placed fraud alerts on his credit reports with the three major U.S. consumer credit reporting agencies in order to detect potential identity theft and fraudulent activity. As a result of the Anthem breach, Mr. McCullough has spent numerous hours addressing issues arising from the Anthem data breach.

**Missouri**

77.     Plaintiff Debbie Stein is a citizen and resident of the State of Missouri. Ms. Stein was enrolled in a RightChoice Managed Care, Inc. d/b/a Anthem Blue Cross and Blue Shield of Missouri Blue Access Choice health plan through her employer, a Missouri public school, and paid premiums on a regular basis. RightChoice Managed Care, Inc. and Anthem collected and received Ms. Stein's Personal Information, which Anthem maintained in its database. Ms. Stein received a letter from Anthem informing her that her Personal Information may have been compromised as a result of the Anthem breach. Ms. Stein subsequently received a fraudulent tax refund check from the IRS. She filed an identity theft affidavit with the IRS. Ms. Stein also placed credit freezes on her credit reports with the three major U.S. consumer credit reporting agencies in order to detect potential identity theft and fraudulent activity. As a result of the Anthem breach, Ms. Stein took time off of work and has spent numerous hours addressing issues arising from the Anthem data breach.

78.     Plaintiff Melody Eads is a citizen and resident of the State of Missouri. Ms. Eads was enrolled in a RightChoice Managed Care, Inc. d/b/a Anthem Blue Cross and Blue Shield of Missouri Blue Access PPO health plan and paid premiums on a regular basis. RightChoice Managed Care, Inc. and Anthem collected and received Ms. Eads's Personal Information, which Anthem maintained in its database. Ms. Eads received a letter from her employer and Anthem informing her that her Personal Information may have been compromised as a result of the Anthem breach. Ms. Eads subsequently

31

1   received a letter from the IRS indicating that someone had tried to file a false tax return in her name

2   using her Personal Information. As a result, Ms. Eads was forced to submit affidavits to the IRS and

3   file a police report documenting the fraud. As a result of the Anthem breach, Ms. Eads has spent over

4   100 hours addressing tax fraud, monitoring her accounts, and addressing issues arising from the

5   Anthem data breach.

6          79.     Plaintiff Christopher Allen is a citizen and resident of the State of Missouri. Mr. Allen

7   was enrolled in an Anthem Blue Cross and Blue Shield / RightChoice Managed Care, Inc. health

8   insurance plan, and paid premiums on a regular basis. Anthem Blue Cross and Blue Shield /

9   RightChoice Managed Care, Inc. and Anthem collected and received Mr. Allen's Personal

10  Information, which Anthem maintained in its database. Mr. Allen received two letters from Anthem

11  informing him that his and his family's Personal Information may have been compromised as a result

12  of the Anthem breach. Mr. Allen subsequently received a letter from the IRS informing him that

13  someone had filed a false tax return in his name using his Personal Information. As a result, his 2014

14  tax refund payment was delayed by a number of months. As a result of the Anthem breach, Mr. Allen

15  has spent numerous hours monitoring his family's accounts and addressing issues arising from the

16  Anthem data breach.

17                                          **Nebraska**

18         80.     Plaintiff Troy Hobbs is a citizen and resident of the State of Nebraska. Mr. Hobbs was

19  enrolled in a Blue Cross Blue Shield of Wisconsin d/b/a Anthem Blue Cross and Blue Shield of

20  Wisconsin health plan and paid premiums on a regular basis. Anthem Blue Cross and Blue Shield of

21  Wisconsin and Anthem collected and received Mr. Hobbs's Personal Information, which Anthem

22  maintained in its database. Mr. Hobbs received a letter from Anthem informing him that his Personal

23  Information may have been compromised as a result of the Anthem breach. In or around February

24  2015, Mr. Hobbs and his spouse attempted to file their taxes online and received an error message

25  stating their taxes had already been filed, even though Mr. and Mrs. Hobbs had not yet filed a tax

26  return. Mr. Hobbs subsequently received a letter from the IRS informing him that someone had filed a

27  false tax return in his name using his Personal Information. Mr. Hobbs was forced to contact and

28  submit documents to the IRS and file a police report relating to the tax fraud at his own expense.

1   Additionally, Mr. Hobbs's 2014 tax refund payment was delayed by at least six months. In September

2   of 2015, Mr. Hobbs learned that someone had taken out an online loan in his name and using his

3   Personal Information in the amount of $1720. Mr. Hobbs is still in the process of attempting to clear

4   his name with respect to the fraudulent loan. As a result of the Anthem breach, Mr. Hobbs has spent

5   numerous hours addressing issues relating to his tax and credit fraud, monitoring his accounts, and

6   addressing issues arising from the Anthem data breach.

7                                         **Nevada**

8         81.    Plaintiff David Ifversen is a citizen and resident of the State of Nevada. Mr. Ifversen

9   was enrolled in an Anthem Blue Cross Blue Shield Association Federal Employees Program health

10  plan through his employer, the U.S. State Department, and paid premiums on a regular basis. The Blue

11  Cross Blue Shield Association and Anthem collected and received Mr. Ifversen's Personal

12  Information, which Anthem maintained in its database. Mr. Ifversen received a letter from Anthem

13  informing him that his Personal Information may have been compromised as a result of the Anthem

14  breach. As a result of the Anthem breach, Mr. Ifversen has spent numerous hours addressing issues

15  arising from the Anthem data breach.

16        82.    Plaintiff Angelin Gonzalez is a citizen and resident of the State of Nevada. Ms.

17  Gonzalez enrolled in an Anthem Blue Cross Blue Shield health plan that she purchased independently

18  and paid premiums for on a regular basis. Anthem Blue Cross Blue Shield collected and received Ms.

19  Gonzalez's Personal Information, which Anthem maintained in its database. Ms. Gonzalez received a

20  letter from Anthem informing her that her Personal Information may have been compromised as a

21  result of the Anthem data breach. After the announcement of the Anthem breach, Ms. Gonzalez and

22  her husband received a bill from a utility company relating to a property they did not own. They were

23  told someone opened the account online using their Personal Information. Ms. Gonzalez and her

24  husband were forced to send paperwork to the utility company to attempt to fix the problem and file a

25  police report. As a result of the Anthem breach, Ms. Gonzalez and her husband have spent significant

26  time and expense addressing issues arising from the Anthem data breach.

27                                    **New Hampshire**

28        83.    Plaintiff Joseph LeBrun is a citizen and resident of the State of New Hampshire. Mr.

**SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**
**CASE NO. 15-md-02617-LHK**

1  LeBrun was enrolled in an Anthem Health Plans of New Hampshire, Inc. health plan and paid

2  premiums on a regular basis. Anthem Health Plans of New Hampshire, Inc. and Anthem collected and

3  received Mr. LeBrun's Personal Information, which Anthem maintained in its database. Mr. LeBrun

4  received a letter from Anthem informing him that his Personal Information may have been

5  compromised as a result of the Anthem breach. Mr. LeBrun subsequently received a letter from the

6  IRS informing him that someone had filed a false tax return using his Personal Information. Mr.

7  LeBrun also placed credit freezes on his credit reports with the three major U.S. consumer credit

8  reporting agencies in order to detect potential identity theft and fraudulent activity. As a result of the

9  Anthem breach, Mr. LeBrun has spent numerous hours addressing issues arising from the Anthem data

10  breach.

11       84.     Plaintiff Brenda Harrington is a citizen and resident of the State of New Hampshire.

12  Ms. Harrington was enrolled in an Anthem Health Plans of New Hampshire, Inc. health plan that she

13  purchased directly from Anthem, and paid premiums on a regular basis. Anthem Health Plans of New

14  Hampshire, Inc. and Anthem collected and received Ms. Harrington's Personal Information, which

15  Anthem maintained in its database. Ms. Harrington received a letter from Anthem informing her that

16  her Personal Information may have been compromised as a result of the Anthem breach. Ms.

17  Harrington subsequently received a letter from the IRS informing her that someone had filed a false

18  tax return in her name using her Personal Information. As a result of the Anthem breach, Ms.

19  Harrington was forced to submit affidavits to the IRS and file paper tax returns. As a result of the

20  Anthem breach, Ms. Harrington has spent numerous hours addressing issues arising from the Anthem

21  data breach.

22                                    **<u>New Jersey</u>**

23       85.     Plaintiff Elizabeth Ames is a resident and citizen of the State of New Jersey. Ms. Ames

24  was enrolled in a Horizon Blue Cross Blue Shield of New Jersey health plan that she purchased

25  independently from Horizon Blue Cross Blue Shield of New Jersey and was previously enrolled in a

26  Blue Cross Blue Shield of Florida health plan.  Ms. Ames paid premiums on a regular basis. Horizon

27  Blue Cross Blue Shield of New Jersey, Blue Cross Blue Shield of Florida, and Anthem collected and

28  received Ms. Ames's Personal Information, which Anthem maintained in its database.  Ms. Ames

1  received a letter from Anthem informing her that her Personal Information may have been

2  compromised as a result of the data breach. As a result of the Anthem breach, Ms. Ames has spent

3  numerous hours addressing issues arising from the Anthem data breach.

4  <center>**New Mexico**</center>

5  86.    Plaintiff Ronald Percy is a citizen and resident of the State of New Mexico. Mr. Percy

6  was enrolled in a Unicare Life & Health Insurance Company Security Choice Medicare health plan

7  that he purchased independently and paid premiums for on a regular basis. Unicare Life & Health

8  Insurance Company Security Choice Medicare and Anthem collected and received Mr. Percy's

9  Personal Information, which Anthem maintained in its database. Mr. Percy received a letter from

10 Anthem informing him that his Personal Information may have been compromised as a result of the

11 Anthem breach. Mr. Percy and his wife Linda placed credit freezes on their credit reports with the

12 three major U.S. consumer credit reporting agencies in order to detect potential identity theft and

13 fraudulent activity. Additionally, Mr. Percy and his wife pay approximately $230 annually for identity

14 theft and credit monitoring services in order to monitor for identity theft and fraudulent activity

15 resulting from the Anthem breach. As a result of the Anthem breach, Mr. Percy and his wife have

16 spent numerous hours monitoring their accounts and addressing issues arising from the Anthem data

17 breach.

18 <center>**New York**</center>

19 87.    Plaintiff Barbara Gold is a citizen and resident of the State of New York. Ms. Gold was

20 enrolled in a state-sponsored Empire HealthChoice Assurance, Inc. d/b/a Empire BlueCross Blue

21 Shield health plan through her husband's employer, the State of New York, and paid premiums on a

22 regular basis. Empire BlueCross and BlueShield and Anthem collected and received Ms. Gold's

23 Personal Information, which Anthem maintained in its database. Ms. Gold received a letter from

24 Anthem informing her that her Personal Information may have been compromised as a result of the

25 Anthem breach. Anthem confirmed to Ms. Gold over the telephone that her data was in fact

26 compromised. Ms. Gold pays approximately $191 annually for identity theft and credit monitoring

27 services in order to monitor for identity theft and fraudulent activity resulting from the Anthem breach.

28 As a result of the Anthem breach, Ms. Gold has spent numerous hours addressing issues arising from

<center>35</center>

1   the Anthem data breach, which has caused her undue distress.

2       88.     Plaintiff Matthew Gates is a citizen and resident of the State of New York. Mr. Gates

3   was enrolled in a health plan sponsored by his employer, Verizon, and administered by Anthem

4   Insurance Companies, Inc. d/b/a Anthem Blue Cross and Blue Shield, and paid premiums on a regular

5   basis. Anthem Blue Cross and Blue Shield and Anthem collected and received Mr. Gates's Personal

6   Information, which Anthem maintained in its database. Mr. Gates received a letter from Anthem

7   informing him that his Personal Information may have been compromised as a result of the Anthem

8   breach. Mr. Gates's minor son, who was a member of the same health plan, subsequently received a

9   letter from the IRS seeking confirmation of his identity. As a result of the Anthem breach, Mr. Gates

10  and his wife spent numerous hours on the phone with the IRS and police attempting to correct their

11  son's tax filing. As a result, his 2014 tax refund payment was delayed by six months. As a result of the

12  Anthem breach, Mr. Gates and his family have spent numerous hours monitoring their accounts and

13  addressing issues arising from the Anthem data breach.

14      89.     Plaintiff Juan Carlos Cerro is a citizen and resident of the State of New York. Mr. Cerro

15  was enrolled in a state-sponsored Empire HealthChoice Assurance, Inc. d/b/a Empire BlueCross Blue

16  Shield health plan through his wife's employer, a New York public school, and paid premiums on a

17  regular basis. Empire BlueCross and BlueShield and Anthem collected and received Mr. Cerro's

18  Personal Information, which Anthem maintained in its database. Mr. Cerro received a letter from

19  Anthem informing him that his Personal Information may have been compromised as a result of the

20  Anthem breach. Mr. Cerro and his wife subsequently received a letter from the IRS informing them

21  that someone had filed a false tax return in their name using their Personal Information. As a result of

22  the Anthem breach, Mr. Cerro and his wife were forced to submit affidavits to the IRS, file a police

23  report, file a complaint with the Federal Trade Commission, and take trips to the Social Security

24  Administration office. Their 2014 tax return payment was delayed until September 2015. Mr. Cerro

25  and his wife also placed credit freezes on their credit reports with the three major U.S. consumer credit

26  reporting agencies in order to detect potential identity theft and fraudulent activity. Additionally, Mr.

27  Cerro pays approximately $300 annually for identity theft and credit monitoring services in order to

28  monitor for identity theft and fraudulent activity resulting from the Anthem breach. As a result of the

1  Anthem breach, Mr. Cerro has spent numerous hours addressing issues arising from the Anthem data

2  breach.

3          90.     Plaintiff Marne Onderdonk is a citizen and resident of the State of New York. Ms.

4  Onderdonk was enrolled in the New York State Health Insurance Program (NYSHIP) for Government

5  Employees. Empire HealthChoice Assurance, Inc. d/b/a Empire BlueCross BlueShield, an Anthem

6  Affiliate, provided services under the NYSHIP plan. Empire BlueCross Blue Shield and Anthem

7  collected and received Ms. Onderdonk's Personal Information, which Anthem maintained in its

8  database. Ms. Onderdonk placed credit freezes on her credit reports with the three major U.S.

9  consumer credit reporting agencies in order to detect potential identity theft and fraudulent activity,

10  which has caused her delays when applying for credit. Additionally, Ms. Onderdonk pays

11  approximately $240 annually for identity theft and credit monitoring services in order to monitor for

12  identity theft and fraudulent activity resulting from the Anthem breach. As a result of the Anthem

13  breach, Ms. Onderdonk has spent numerous hours monitoring her accounts and addressing issues

14  arising from the Anthem data breach.

15                                                **North Carolina**

16          91.     Plaintiff Randy Polacsek is a citizen and resident of the State of North Carolina. Mr.

17  Polacsek was enrolled in a Blue Shield of California health plan and paid premiums on a regular basis.

18  Prior to that, Mr. Polacsek was enrolled in a Blue Cross Blue Shield of Massachusetts health plan and

19  paid premiums on a regular basis. These entities and Anthem collected and received Mr. Polacsek's

20  Personal Information, which Anthem maintained in its database. Mr. Polacsek received a letter from

21  Anthem informing him that his Personal Information may have been compromised as a result of the

22  Anthem breach. In March 2015, Mr. Polacsek was informed by a detective in Illinois that someone had

23  a credit card in Illinois with Mr. Polacsek's Personal Information. Mr. Polacsek had his credit cards

24  cancelled and reissued. As a result of the Anthem data breach, Mr. Polacsek has spent numerous hours

25  addressing issues arising from the Anthem data breach.

26          92.     Plaintiff Francis Nicosia is a citizen and resident of the State of North Carolina.   Mr.

27  Nicosia was enrolled in multiple health plans.  He was enrolled in a Blue Cross and Blue Shield of

28  North Carolina, Inc. health plan. He was also enrolled in a Blue Cross of California health plan. He

1    was also enrolled in an Anthem Health and Life Insurance Company health plan. Blue Cross and Blue

2    Shield of North Carolina, Blue Cross of California, Anthem Health and Life Insurance Company, and

3    Anthem collected and received Mr. Nicosia's Personal Information, which Anthem maintained in its

4    database. Following Anthem's announcement of the data breach, Mr. Nicosia received a letter from

5    the IRS informing him that someone had filed a false tax return in his name using his Personal

6    Information. Mr. Nicosia thereafter called Anthem and was informed that his Personal Information

7    may have been compromised by the Anthem breach. Mr. Nicosia still has not received his 2014 tax

8    return payment. Additionally, Mr. Nicosia pays approximately $780 annually for identity theft and

9    credit monitoring services in order to monitor for identity theft and fraudulent activity resulting from

10   the Anthem breach. As a result of the Anthem breach, Mr. Nicosia has spent numerous hours

11   addressing issues arising from the Anthem data breach.

12                                              **Ohio**

13          93.     Plaintiff Connie McDaniel is a citizen and resident of the State of Ohio.  Ms. McDaniel

14   was enrolled in a Blue Cross and Blue Shield of Alabama plan and paid premiums on a regular basis.

15   Blue Cross and Blue Shield of Alabama and Anthem collected and received Ms. McDaniel's Personal

16   Information, which Anthem maintained in its database.  Ms. McDaniel received a letter from Anthem

17   informing her that her Personal Information may have been compromised as a result of the Anthem

18   breach.  After the announcement of the Anthem breach, Ms. McDaniel was notified that her joint tax

19   return had been rejected because someone had filed a false return in her name using her Personal

20   Information.  Ms. McDaniel went to the local police department to file a report, called credit reporting

21   agencies, went to her bank and credit union, and communicated with the IRS regarding this matter.  As

22   a result, her 2014 tax refund payment was delayed by three months.  As a result of the Anthem breach,

23   Ms. McDaniel has spent numerous hours monitoring her accounts and addressing issues arising from

24   the Anthem data breach.

25          94.     Plaintiff Janett Tillman is a citizen and resident of the State of Ohio. Ms. Tillman

26   purchased Community Insurance Company's Anthem Blue Cross Advantage through Medicare and

27   paid premiums on a regular basis. Community Insurance Company and Anthem collected and received

28   Ms. Tillman's Personal Information, which Anthem maintained in its database. Ms. Tillman received a

                                                    38

1  letter from Anthem informing her that her Personal Information may have been compromised as a

2  result of the Anthem breach. As a result of the Anthem breach, Ms. Tillman has spent numerous hours

3  monitoring her accounts and addressing issues arising from the Anthem data breach.

4       95.    Plaintiff Rachel Calo is a citizen and resident of the State of Ohio. Ms. Calo was

5  enrolled in an Anthem Insurance Companies' health plan and paid premiums on a regular basis.

6  Anthem Insurance Companies and Anthem collected and received Ms. Calo's Personal Information,

7  which Anthem maintained in its database. Ms. Calo received a letter from Anthem informing her that

8  her Personal Information may have been compromised as a result of the Anthem breach, as did her

9  minor children, who were members of the same health plan. As a result of the Anthem breach, Ms.

10  Calo has spent numerous hours monitoring her accounts and addressing issues arising from the

11  Anthem data breach.

12       96.    Plaintiff Nicholas Bowes is a citizen and resident of the State of Ohio. Mr. Bowes was

13  enrolled in a Community Insurance Company health plan through his employer, a public university,

14  and was previously enrolled in an Anthem Insurance Companies health plan through a parent. Mr.

15  Bowes paid premiums on a regular basis. Anthem, Community Insurance Company, and Anthem

16  Insurance Companies collected and received Mr. Bowes' Personal Information, which Anthem

17  maintained in its database. Mr. Bowes received a letter from Anthem informing him that his Personal

18  Information may have been compromised as a result of the Anthem breach and also received

19  notification from his employer. As a result of the Anthem breach, Mr. Bowes has spent numerous

20  hours monitoring his accounts and addressing issues arising from the Anthem data breach.

21       97.    Plaintiff Martin Williams is a citizen and resident of the State of Ohio. Mr. Williams

22  was enrolled in a Community Insurance Company d/b/a Anthem Blue Cross and Blue Shield of Ohio

23  health plan, which he purchased independently.. Mr. Williams paid premiums on a regular basis.

24  Anthem collected and received Mr. Williams' Personal Information, which Anthem maintained in its

25  database. Mr. Williams received a letter from Anthem informing him that his Personal Information

26  may have been compromised as a result of the Anthem breach, as did his wife. After announcement of

27  the Anthem breach, Mr. Williams was notified of fraudulent charges to one of his accounts, resulting

28  in cancellation and reissuance of the affected card. As a result of the Anthem breach, Mr. Williams has

39

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

1    spent numerous hours monitoring his accounts and addressing issues arising from the Anthem data

2    breach.

3    **Oklahoma**

4    98.    Plaintiff Rosanne M. Stanley is a citizen and resident of the State of Oklahoma. Ms.

5    Stanley was enrolled in an an Anthem Insurance Companies, Inc. d/b/a Blue Cross Blue Shield of

6    Indiana health plan and paid premiums on a regular basis. Anthem Insurance Companies, Inc. and

7    Anthem collected and received Ms. Stanley's Personal Information, which Anthem maintained in its

8    database. Ms. Stanley received a letter from Anthem informing her that her Personal Information may

9    have been compromised as a result of the Anthem breach. Ms. Stanley now closely reviews her

10   identity theft and credit monitoring services and monitors her bank accounts. As a result of the

11   Anthem breach, Ms. Stanley has spent numerous hours addressing issues arising from the Anthem data

12   breach.

13   **Pennsylvania**

14   99.    Plaintiff Gregory Kremer is a citizen and resident of the State of Pennsylvania. Mr.

15   Kremer was enrolled in a Blue Cross Blue Shield of Illinois health plan and paid premiums on a

16   regular basis. Prior to that, Mr. Kremer was enrolled in an Community Insurance Company, d/b/a

17   Anthem Blue Cross and Blue Shield of Ohio health plan. Blue Cross Blue Shield of Illinois,

18   Community Insurance Company, and Anthem collected and received Mr. Kremer's Personal

19   Information, which Anthem maintained in its database. Mr. Kremer received a letter from Anthem

20   informing him that his Personal Information may have been compromised as a result of the Anthem

21   breach. Mr. Kremer has enrolled in an identity theft and credit monitoring service in order to monitor

22   for identity theft and fraudulent activity resulting from the Anthem breach. As a result of the Anthem

23   breach, Mr. Kremer has spent numerous hours addressing issues arising from the Anthem data breach.

24   100.   Plaintiff Denise Masloski is a citizen and resident of the State of Pennsylvania. Ms.

25   Masloski was enrolled in a Highmark Health Services d/b/a Highmark Blue Shield health plan and

26   paid premiums on a regular basis. Highmark Health Services d/b/a Highmark Blue Shield and Anthem

27   collected and received Ms. Masloski's Personal Information, which Anthem maintained in its

28   database.  When Ms. Masloski was unable to file her 2014 tax return she learned that someone had

40

1 filed a false tax return in her name using her Personal Information. As a result of the Anthem breach,

2 Ms. Masloski was forced to submit affidavits to the IRS, travel to the Social Security Administration

3 office to verify her identity, and spend numerous hours on the phone with the IRS. She still has not

4 received her tax refund for $3,425.00. As a result of the Anthem breach, Ms. Masloski has been denied

5 access to her federal tax refund and has spent numerous hours addressing issues arising from the

6 Anthem data breach.

7 **Rhode Island**

8       101.    Plaintiff Alan Voll is a citizen and resident of the State of Rhode Island. Mr. Voll was

9 enrolled in an Anthem Blue Cross Blue Shield health plan and paid premiums on a regular basis.

10 Anthem Blue Cross Blue Shield and Anthem collected and received Mr. Voll's Personal Information,

11 which Anthem maintained in its database. After the Anthem Data Breach, but prior receiving notice of

12 the breach from Anthem, someone accessed Mr. Voll's AT&T account and made unauthorized phone

13 calls. Mr. Voll spent time and effort attempting to have the unauthorized phone calls removed from his

14 account statement. Mr. Voll subsequently received a letter from Anthem informing him that his

15 Personal Information may have been compromised as a result of the Anthem data breach.  As a result

16 of the Anthem data breach, Mr. Voll has spent numerous hours addressing issues arising from the

17 Anthem data breach.

18 **South Carolina**

19       102.    Plaintiff Lakeysha Gant is a citizen and resident of the State of South Carolina. Ms.

20 Gant was enrolled in an Anthem Health Plans of Virginia, Inc. d/b/a Anthem Blue Cross and Blue

21 Shield of Virginia Bronze Plus Choice health plan and paid premiums on a regular basis. Anthem

22 Health Plans of Virginia, Inc. and Anthem collected and received Ms. Gant's personal information,

23 which Anthem maintained in its database. Ms. Gant received a letter from Anthem informing her that

24 her information may have been compromised as a result of the Anthem data breach. Ms. Gant now

25 engages in frequent monitoring of her credit and her bank accounts. As a result of the Anthem breach,

26 Ms. Gant has spent numerous hours addressing issues arising from the Anthem data breach.

27 **Tennessee**

28       103.    Plaintiff Jonathan B. Pulcini is a citizen and resident of the State of Tennessee. Mr.

41

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

1    Pulcini was enrolled in an Anthem Insurance Companies, Inc. d/b/a Anthem Blue Cross and Blue

2    Shield of Indiana health plan and paid premiums on a regular basis. Anthem and Anthem Insurance

3    Companies, Inc. collected and received Mr. Pulcini's Personal Information, which Anthem maintained

4    in its database. Mr. Pulcini received a letter from Anthem informing him that his Personal Information

5    may have been compromised as a result of the Anthem breach. Mr. Pulcini now closely reviews his

6    identity theft and credit monitoring services and monitors his bank accounts. As a result of the Anthem

7    breach, Mr. Pulcini has spent numerous hours addressing issues arising from the Anthem data breach.

8                                                  **Texas**

9           104.    Plaintiff Lane Wagner is a citizen and resident of the State of Texas. Mr. Wagner was

10   enrolled in a Blue Cross and Blue Shield of Texas health plan that he purchased individually, and he

11   paid premiums on a regular basis. Blue Cross and Blue Shield of Texas and Anthem collected and

12   received Mr. Wagner's Personal Information, which Anthem maintained in its database. Mr. Wagner

13   received a letter from Anthem informing him that his Personal Information may have been

14   compromised as a result of the Anthem breach. Mr. Wagner pays approximately $480 annually for

15   identity theft and credit monitoring services in order to monitor for identity theft and fraudulent

16   activity resulting from the Anthem breach. That service notified Mr. Wagner that his Personal

17   Information was for sale on two dark web sites. Mr. Wagner then placed credit freezes on his credit

18   reports with the three major U.S. consumer credit reporting agencies in order to detect potential

19   identity theft and fraudulent activity. Mr. Wagner also filed a police report and filed a complaint with

20   the Federal Trade Commission. As a result of the Anthem breach, Mr. Wagner has spent numerous

21   hours addressing issues arising from the Anthem data breach.

22          105.    Plaintiff Joseph Beckerman is a citizen and resident of the State of Texas. Mr.

23   Beckerman was enrolled in a Blue Cross of California, Inc. d/b/a Anthem Blue Cross of California

24   PPO health plan and an Anthem Health and Life Insurance Company Blue View Plus Insurance Vision

25   health plan. Mr. Beckerman paid premiums on a regular basis. Anthem, Blue Cross of California, Inc.,

26   and Anthem Health and Life Insurance Company collected and received Mr. Beckerman's Personal

27   Information, which Anthem maintained in its database. Mr. Beckerman received a letter from Anthem

28   informing him that his Personal Information may have been compromised as a result of the Anthem

                                                    42

1   breach. Mr. Beckerman pays approximately $700 annually for identity theft and credit monitoring

2   services for himself and his three children, who were members of the same health plan, in order to

3   monitor for identity theft and fraudulent activity resulting from the Anthem breach. As a result of the

4   Anthem breach, Mr. Beckerman has spent numerous hours monitoring his accounts and addressing

5   issues arising from the Anthem data breach on behalf of himself and his three children.

6                                                    **__Virginia__**

7           106.    Plaintiff Amanda Davis is a citizen and resident of the State of Virginia. Mrs. Davis

8   was enrolled in a state-sponsored HMO HealthKeepers, Inc. d/b/a Anthem Blue Cross and Blue Shield

9   of Virginiahealth plan through her employer, a public school. During the relevant period, Mrs. Davis

10  was also insured under an Anthem Health Plans of Virginia, Inc. d/b/a Anthem Blue Cross and Blue

11  Shield of Virginia health plan that she purchased independently through the health insurance

12  marketplace. Mrs. Davis paid premiums for her health plans on a regular basis. HMO HealthKeepers,

13  Inc., Anthem Health Plans of Virginia, Inc., and Anthem collected and received Mrs. Davis's Personal

14  Information, which Anthem maintained in its database. Mrs. Davis received a letter from Anthem

15  informing her that her Personal Information may have been compromised as a result of the Anthem

16  breach. Mrs. Davis subsequently learned that someone had filed a false tax return in her name using

17  her Personal Information and later received a letter from the IRS confirming the same. As a result,

18  Mrs. Davis and her husband did not receive their 2014 tax refund payment until November of 2015,

19  over seven months late. Because of the delay in receiving their tax refund, Mrs. Davis and her husband

20  have experienced difficulties submitting current tax returns for their student loan income based

21  repayment plans which caused their percentage of monthly principal to increase sixfold. Mrs. Davis

22  and her husband placed credit freezes on their credit reports with the three major U.S. consumer credit

23  reporting agencies in order to detect potential identity theft and fraudulent activity. Additionally, Mrs.

24  Davis and her husband pay approximately $480 annually for identity theft and credit monitoring

25  services in order to monitor for identity theft and fraudulent activity resulting from the Anthem breach.

26  As a result of the Anthem breach, Mrs. Davis and her husband have spent numerous hours attempting

27  to renegotiate their student loan terms, monitoring their accounts and addressing issues arising from

28  the Anthem data breach.

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

107.    Plaintiff Michael S. Weinberger is a citizen and resident of the State of Virginia. Mr. Weinberger was enrolled in an Anthem Insurance Companies, Inc. d/b/a Anthem Blue Cross and Blue Shield of Indiana health plan and paid premiums on a regular basis. Anthem Insurance Companies, Inc. and Anthem collected and received Mr. Weinberger's Personal Information, as well as that of his wife, Karen H. Weinberger and his daughter, Alyssa D. Weinberger, which Anthem maintained in its database. Mr. Weinberger received an e-mail and letter from Anthem informing him that his Personal Information may have been compromised as a result of the Anthem breach.  Thereafter, Mr. Weinberger, his wife and his daughter, spent numerous hours addressing issues arising from the Anthem data breach.  In February 2016, Mr. Weinberger was notified that the IRS had detected a suspicious use of Mr. Weinberger's Social Security number to access an e-file PIN number that could be used to electronically file tax returns.  Mr. Weinberger spent time researching the implications of this and concluded that placing a fraud alert on his credit file was an unfortunate additional, but necessary burden to safeguard his credit rating and prevent identity theft.  Now, when he applies for new credit, he will have to go through the hassle of presenting additional documentation that he is indeed who he claims to be.

## **Washington**

108.    Plaintiff Vernon Davitte is a citizen and resident of the State of Washington. Mr. Davitte was enrolled in a Healthy Alliance Life Insurance Company d/b/a Anthem Blue Cross and Blue Shield of Missouri health plan and paid premiums on a regular basis. Healthy Alliance Life Insurance Company and Anthem collected and received Mr. Davitte's Personal Information, which Anthem maintained in its database. Mr. Davitte received a letter from Anthem informing him that his Personal Information may have been compromised as a result of the Anthem breach. Mr. Davitte pays approximately $192 annually for identity theft and credit monitoring services in order to monitor for identity theft and fraudulent activity resulting from the Anthem breach. Mr. Davitte placed a credit freeze on his credit report with Experian in order to detect potential identity theft and fraudulent activity. As a result of the Anthem breach, Mr. Davitte has spent numerous hours addressing issues arising from the Anthem data breach.

109.    Plaintiff Jennifer Mertlich is a citizen and resident of the State of Washington. Ms.

1  Mertlich was enrolled in a health plan administered by Anthem Health and Life Insurance Company

2  and Anthem Blue Cross of California.   Anthem Blue Cross of California, Anthem Health and Life

3  Insurance Company, and Anthem collected and received Ms. Mertlich's Personal Information, which

4  Anthem maintained in its database. Ms. Mertlich received a letter from Anthem informing her that her

5  Personal Information may have been compromised as a result of the Anthem data breach. After the

6  announcement of the Anthem breach, at least four fraudulent credit cards or credit accounts were

7  opened or attempted to be opened in Ms. Mertlich's name and using her Personal Information. In most

8  instances, the credit accounts were maxed out and Ms. Mertlich had to personally dispute the

9  fraudulent charges by making phone calls and submitting documentation. In addition, someone who

10 purchased Ms. Mertlich's Personal Information used it to create a fake identification card using Ms.

11 Mertlich's name, address and other Personal Information. Ms. Mertlich was forced to file two separate

12 police reports in different cities and spend significant time and expense addressing the extensive fraud

13 perpetrated against her. Ms. Mertlich had to purchase credit freezes on her credit reports with the three

14 major U.S. consumer credit reporting agencies in order to detect potential identity theft and fraudulent

15 activity. Ms. Mertlich also paid approximately $120 over the course of a year for identity theft and

16 credit monitoring services in order to monitor for identity theft and fraudulent activity resulting from

17 the Anthem breach. As a result of the Anthem breach, Ms. Mertlich has spent significant time, effort

18 and expense addressing credit fraud, monitoring her accounts, and addressing issues arising from the

19 Anthem data breach.

20                                         **West Virginia**

21        110.    Plaintiff Lisa Shiltz is a resident and citizen of the State of West Virginia. Ms. Shiltz

22 was enrolled in an Anthem Health Plans of Kentucky, Inc. health plan and paid premiums on a regular

23 basis. Anthem Health Plans of Kentucky, Inc. and Anthem collected and received Ms. Shilz's Personal

24 Information, which Anthem maintained in its database.  Ms. Shiltz received a letter from Anthem

25 informing her that her Personal Information may have been compromised as a result of the data

26 breach. Ms. Shiltz subsequently had identity thieves attempt to open bank accounts in her name. As a

27 result of the Anthem breach, Ms. Shiltz has spent numerous hours addressing issues arising from the

28 Anthem data breach.

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

**Wisconsin**

111.     Plaintiff Susan H. Jones is a citizen and resident of the State of Wisconsin. Ms. Jones was enrolled in a Compcare Health Services Insurance Corporation d/b/a Anthem Blue Cross and Blue Shield of Wisconsin health insurance plan. Compcare Health Services Insurance Corporation and Anthem collected and received Ms. Jones's Personal Information, which Anthem maintained in its database. Ms. Jones received a letter from Anthem informing her that her Personal Information may have been compromised as a result of the Anthem breach. Ms. Jones subsequently received a letter from the IRS informing her that someone had filed a false tax return using her Personal Information. As a result of the Anthem breach, Ms. Jones has spent numerous hours addressing issues arising from the Anthem data breach.

112.     Plaintiff Jennifer Rud is a citizen and resident of the State of Wisconsin. Ms. Rud was enrolled in a Anthem Insurance Companies, Inc. d/b/a Anthem Blue Cross and Blue Shield of Indiana health plan and paid premiums on a regular basis. Prior to that, Ms. Rud was enrolled in a Blue Cross Blue Shield of Minnesota health plan. Anthem Insurance Companies, Inc., Blue Cross Blue Shield of Minnesota, and Anthem collected and received Ms. Rud's Personal Information, which Anthem maintained in its database. Ms. Rud received a letter from Anthem informing her that her Personal Information may have been compromised as a result of the Anthem breach. Ms. Rud subsequently received a letter from the IRS informing her that someone had filed a false tax return using her Personal Information. As a result of the Anthem Breach, Ms. Rud was required to submit five forms of identification to the IRS, file a police report, and delay purchase of a house. Her tax refund has also been delayed. As a result of the Anthem breach, Ms. Rud has spent numerous hours addressing issues arising from the Anthem data breach.

**B.     Defendants**

113.     Defendant Anthem, Inc. ("Anthem") is incorporated and headquartered in Indiana. Anthem is one of the largest health benefits and health insurance companies in the United States. Anthem serves its medical members through its health benefits and insurance subsidiaries and affiliates ("Anthem Affiliates"). Anthem is the parent company of the Anthem Affiliates. Anthem also cooperated with other independent Blue Cross Blue Shield licensee insurance and health benefit

1  companies ("non-Anthem BCBS") to create the BlueCard program.

2      114.    Defendant Blue Cross and Blue Shield of Georgia, Inc. is incorporated and

3  headquartered in Georgia.  Defendant is an Anthem Affiliate.

4      115.    Defendant Blue Cross and Blue Shield Healthcare Plan of Georgia, Inc. is incorporated

5  and headquartered in Georgia.  Defendant is an Anthem Affiliate.

6      116.     Defendant Anthem Insurance Companies, Inc. d/b/a Anthem Blue Cross and Blue

7  Shield of Indiana is incorporated and headquartered in Indiana. Defendant is an Anthem Affiliate.

8      117.    Defendant Blue Cross of California, Inc. d/b/a Anthem Blue Cross of California is

9  incorporated and headquartered in California. Defendant is an Anthem Affiliate.

10      118.    Defendant Anthem Blue Cross Life and Health Insurance Company is incorporated and

11  headquartered in California. Defendant is an Anthem Affiliate.

12      119.    Defendant Rocky Mountain Hospital and Medical Service, Inc. d/b/a Anthem Blue

13  Cross and Blue Shield of Colorado in Colorado and d/b/a Anthem Blue Cross and Blue Shield of

14  Nevada in Nevada, is incorporated and headquartered in Colorado. Defendant is an Anthem Affiliate.

15      120.    Defendant Anthem Health Plans, Inc. d/b/a Anthem Blue Cross and Blue Shield of

16  Connecticut is incorporated and headquartered in Connecticut. Defendant is an Anthem Affiliate.

17      121.    Defendant Anthem Health Plans of Kentucky, Inc. d/b/a Anthem Blue Cross and Blue

18  Shield of Kentucky is incorporated and headquartered in Kentucky. Defendant is an Anthem Affiliate.

19      122.    Defendant Anthem Health Plans of Maine, Inc. d/b/a Anthem Blue Cross and Blue

20  Shield of Maine is incorporated and headquartered in Maine. Defendant is an Anthem Affiliate.

21      123.    Defendant HMO Missouri, Inc. d/b/a Anthem Blue Cross and Blue Shield of Missouri

22  is incorporated and headquartered in Missouri. Defendant is an Anthem Affiliate.

23      124.    Defendant RightChoice Managed Care, Inc. d/b/a Anthem Blue Cross and Blue Shield

24  of Missouri is incorporated and headquartered in Missouri. Defendant is an Anthem Affiliate.

25      125.    Defendant Healthy Alliance Life Insurance Company d/b/a Anthem Blue Cross and

26  Blue Shield of Missouri is incorporated and headquartered in Missouri. Defendant is an Anthem

27  Affiliate.

28      126.    Defendant Anthem Health Plans of New Hampshire, Inc. d/b/a Anthem Blue Cross and

47

1  Blue Shield of New Hampshire is incorporated and headquartered in New Hampshire. Defendant is an
2  Anthem Affiliate.

3      127.    Defendant Empire HealthChoice Assurance, Inc. d/b/a Empire Blue Cross and Blue
4  Shield is incorporated and headquartered in New York. Defendant is an Anthem Affiliate.

5      128.    Defendant Community Insurance Company d/b/a Anthem Blue Cross and Blue Shield
6  of Ohio is incorporated and headquartered in Ohio. Defendant is an Anthem Affiliate.

7      129.    Defendant Anthem Health Plans of Virginia, Inc. d/b/a Anthem Blue Cross and Blue
8  Shield of Virginia is incorporated and headquartered in Virginia. Defendant is an Anthem Affiliate.

9      130.    HMO HealthKeepers, Inc. d/b/a Anthem Blue Cross and Blue Shield of Virginia is
10  incorporated and headquartered in Virginia. Defendant is an Anthem Affiliate.

11      131.    Defendant Blue Cross Blue Shield of Wisconsin d/b/a Anthem Blue Cross and Blue
12  Shield of Wisconsin is incorporated and headquartered in Wisconsin. Defendant is an Anthem
13  Affiliate.

14      132.    Defendant Compcare Health Services Insurance Corporation d/b/a Anthem Blue Cross
15  and Blue Shield of Wisconsin is incorporated and headquartered in Wisconsin. Defendant is an
16  Anthem Affiliate.

17      133.    Defendant Amerigroup Corporation is incorporated and headquartered in Delaware.
18  Defendant is an Anthem Affiliate.

19      134.    Defendant Amerigroup Services, Inc. is incorporated and headquartered in Virginia.
20  Defendant is an Anthem Affiliate.

21      135.    Defendant Amerigroup Kansas Inc. is incorporated and headquartered in Kansas.
22  Defendant is an Anthem Affiliate.

23      136.    Defendant HealthLink, Inc. is incorporated in Illinois and headquartered in Missouri.
24  Defendant is an Anthem Affiliate.

25      137.    Defendant Unicare Life & Health Insurance Company is incorporated and
26  headquartered in Indiana. Defendant is an Anthem Affiliate.

27      138.    Defendant CareMore Health Plan is incorporated and headquartered in California.
28  Defendant is an Anthem Affiliate.

139.     Defendant The Anthem Companies, Inc. is incorporated and headquartered in Indiana. Defendant is an Anthem Affiliate.

140.     Defendant The Anthem Companies of California, Inc. is incorporated in California and headquartered in Indiana. Defendant is an Anthem Affiliate.

141.     Discovery may reveal additional Anthem Affiliate Defendants.

142.     Defendant Blue Cross and Blue Shield of Alabama is incorporated and headquartered in Alabama. Defendant is a non-Anthem BCBS company.

143.     Defendant USAble Mutual Insurance Company d/b/a Arkansas Blue Cross and Blue Shield is incorporated and headquartered in Arkansas. Defendant is a non-Anthem BCBS company.

144.     Defendant California Physicians' Service, Inc. d/b/a Blue Shield of California is incorporated and headquartered in California. Defendant is a non-Anthem BCBS company.

145.     Defendant Blue Cross and Blue Shield of Illinois is a division of Health Care Service Corporation, which is incorporated in Illinois. Defendant is headquartered in Illinois. Defendant is a non-Anthem BCBS company.

146.     Defendant Blue Cross and Blue Shield of Florida, Inc. is incorporated and headquartered in Florida. Defendant is a non-Anthem BCBS company.

147.     Defendant CareFirst of Maryland, Inc. d/b/a CareFirst BlueCross BlueShield is incorporated and headquartered in Maryland. Defendant is a non-Anthem BCBS company.

148.     Defendant Blue Cross and Blue Shield of Massachusetts, Inc. is incorporated and headquartered in Massachusetts. Defendant is a non-Anthem BCBS company.

149.     Defendant Blue Cross and Blue Shield of Michigan is incorporated and headquartered in Michigan. Defendant is a non-Anthem BCBS company.

150.     Defendant BCBSM, Inc. d/b/a Blue Cross and Blue Shield of Minnesota is incorporated and headquartered in Minnesota. Defendant is a non-Anthem BCBS company.

151.     Defendant Horizon Healthcare Services, Inc. d/b/a Horizon Blue Cross and Blue Shield of New Jersey is incorporated and headquartered in New Jersey. Defendant is a non-Anthem BCBS company.

152.     Defendant Blue Cross and Blue Shield of North Carolina, Inc. is incorporated and

49

headquartered in North Carolina. Defendant is a non-Anthem BCBS company.

153. Defendant Highmark Health Services d/b/a Highmark Blue Shield is incorporated and headquartered in Pennsylvania. Defendant is a non-Anthem BCBS company.

154. Defendant Blue Cross and Blue Shield of Texas is a division of Health Care Service Corporation, which is incorporated in Illinois. Defendant is headquartered in Texas. Defendant is a non-Anthem BCBS company.

155. Defendant Blue Cross and Blue Shield of Vermont is incorporated and headquartered in Vermont. Defendant is a non-Anthem BCBS company.

156. Defendant Blue Cross Blue Shield Association ("BCBSA") is incorporated and headquartered in Illinois.

157. Discovery may reveal additional non-Anthem BCBS Defendants.

## IV.    STATEMENT OF FACTS

A.    **The Anthem Database**

158. Anthem is one of the largest health benefits and health insurance companies in the United States. Anthem serves its medical members through its fourteen Blue Cross Blue Shield ("BCBS") licensee affiliates ("Anthem BCBS Affiliates"), as well as its non-Blue Cross Blue Shield affiliates ("Anthem non-BCBS Affiliates"), such as Amerigroup Corporation, CareMore Health Group, Inc., HealthLink, and UniCare. (Collectively, Anthem's health benefits and insurance subsidiaries and affiliates will be referred to as "Anthem Affiliates.")

159. Anthem also cooperated with other independent Blue Cross Blue Shield licensee insurance and health benefit companies ("non-Anthem BCBS") to create the BlueCard program. Under the BlueCard program, members of one BCBS licensee may access another BCBS licensee's provider networks and discounts when the members are out of state. Thus, non-Anthem BCBS members may access an Anthem BCBS Affiliate's provider discounts and network when they travel to an area where an Anthem Affiliate serves as the BCBS licensee.

160. As health insurance and health benefits companies, Anthem, Anthem Affiliates, and non-Anthem BCBS collect, receive, and access their customers' and members' extensive individually

1    identifiable health record information. These records include personal information (such as names,

2    dates of birth, Social Security numbers, health care ID numbers, home addresses, email addresses, and

3    employment information, including income data) and individually-identifiable health information

4    (pertaining to the individual claims process, medical history, diagnosis codes, payment and billing

5    records, test records, dates of service, and all other health information that an insurance company has

6    or needs to have to process claims). (Collectively, both the personal information and individually

7    identifiable health information will be referred to as "Personal Information.")

8        161.    Anthem created a common computer database that it referred to as a "single data

9    warehouse" and the "main subscriber file" containing Personal Information for tens of millions of

10   individuals (the "Anthem Database"). The Anthem Database includes Personal Information that was

11   provided by current and former customers or members of Anthem Affiliates. The Anthem Database

12   also includes Personal Information for current and former customers or members of non-Anthem

13   BCBS plans who obtained health care services in areas where Anthem Affiliates serve as the BCBS

14   licensees, as well as employees of self-insured employer groups where Anthem received information

15   about non-Anthem members to provide analytics and administrative services. The Anthem Database

16   also contains Personal Information for Anthem and Anthem Affiliate employees.

17       162.    Anthem publicly admitted that the Anthem Database contained information from

18   former customers or members going back to 2004, and that Anthem generally retains data for 10 years,

19   even though Anthem acknowledges it is not legally required to retain data going back that far in time.

20       163.    Further discovery may demonstrate that the Anthem Database contained information

21   regarding additional individuals.

22   **B.    Defendants' Privacy Policies, Representations, Omissions, and Contract Terms**
23   **        Pertaining to Data Security and Confidentiality**

24       **1.      Anthem and Anthem Affiliates**

25           **a.      Anthem's Privacy Policies, Representations, and Omissions**

26       164.    At all times relevant to this litigation, Anthem and its Affiliates have had privacy

27   policies committing to maintain and protect the confidentiality of information that Anthem and its

28   Affiliates collected from their customers in the course of doing business, including personal and

1   health-related information.

2       165.    At all times relevant to this litigation, Anthem's and its Affiliates' privacy policies

3   included a "Personal Information (Including Social Security Number) Privacy Protection Policy" that

4   applied to all members with whom Anthem does business.  Since at least 2010 (and on information

5   and belief for many years prior to that), that Policy has stated the following:

6       **Anthem Blue Cross and Blue Shield maintains policies that protect the confidentiality of**
        **personal information, including Social Security numbers, obtained from its members**
7       **and associates in the course of its regular business functions. Anthem Blue Cross and**
        **Blue Shield is committed to protecting information about its customers and associates,**
8       **especially the confidential nature of their personal information (PI).** [1]

9       Personal Information is information that is capable of being associated with an individual
        through one or more identifiers including but not limited to, a Social Security number, a
10      driver's license number, a state identification card number, an account number, a credit or
        debit card number, a passport number, an alien registration number or a health insurance
11      identification number, and does not include publicly available information that is lawfully
        made available to the general public from federal, state or local government records or widely
12      distributed media.

13
        •   **Anthem Blue Cross and Blue Shield is committed to protecting the**
14          **confidentiality of Social Security numbers and other Personal Information.**

15
        •   **Anthem Blue Cross and Blue Shield's Privacy Policy imposes a number of**
16          **standards to:**
                o   **guard the confidentiality of Social Security numbers and other personal**
17                  **information,**
                o   **prohibit the unlawful disclosure of Social Security numbers, and**
18              o   **limit access to Social Security numbers.**

19
        Anthem Blue Cross and Blue Shield will not use or share Social Security numbers or personal
20      information with anyone outside the company except when permitted or required by federal
        and state law.
21      **Anthem Blue Cross and Blue Shield Associates must only access Social Security**
        **numbers or personal information as required by their job duties. Anthem Blue Cross**
22      **and Blue Shield has in place a minimum necessary policy which states that associates**
        **may only access, use or disclose Social Security numbers or personal information to**
23      **complete a specific task and as allowed by law.**
        **Anthem Blue Cross and Blue Shield safeguards Social Security numbers and other**
24      **personal information by having physical, technical, and administrative safeguards in**
        **place.**
25

26

27      ───────────────────
            [1] In some of their materials, Defendants utilized the term "Personal Health Information" ("PHI")
        to refer to health information and "Personally Identifiable Information" ("PII" or "PI") to refer to
28      non-health individually identifiable information.

                                                    52

1

2          If you have questions regarding this policy, please contact Customer Service by dialing the number that is located on the back of your ID card.

3    (Emphasis added).  The exact language of this Policy has not changed since 2010, and on information

4    and belief, for many years prior to that.

5          166.    Since at least 2010 (and on information and belief for many years prior to that), the

6    Anthem website and the website for every Anthem BCBS Affiliate and for other Anthem Affiliates

7    has posted this Personal Information (Including Social Security Number) Privacy Protection Policy in

8    its entirety.   The Anthem and Anthem Blue Cross California webpages setting forth this Policy as it

9    appeared during 2014 and 2015 are attached hereto as Exhibits 1-4.

10          167.    This Personal Information (Including Social Security Number) Privacy Protection

11    Policy was made available to Anthem customers and the public in many Anthem documents and

12    websites, and, as discussed further below, is incorporated as a term of Anthem and its Affiliates'

13    individual and group insurance or benefits contracts, including the contracts between Anthem and its

14    Affiliates' and Plaintiffs and Affected Individuals.

15          168.    At all times relevant to this litigation, Anthem and its Affiliates have maintained

16    "Privacy" sections of their websites, where the Personal Information (Including Social Security

17    Number) Privacy Protection Policy is posted.  The "Privacy" website of Anthem and its Affiliates has

18    also stated, at all relevant times to this litigation, that:

19          Anthem is fully committed to the spirit and letter of the Health Insurance Portability and

20          Accountability Act of 1996 (HIPAA), including but not limited to the Privacy Rule that was issued pursuant to HIPAA. A major provision of the Privacy Rule is to safeguard sensitive,

21          personal information about members. This information is referred to as Protected Health Information (PHI), and includes individually identifiable health care and demographic data.

22          HIPAA allows Anthem to use and disclose certain member information for clearly defined

23          treatment, payment and health care operations (TPO). However, members have the right to restrict the release of information about them beyond these uses. The Individual Authorization

24          Form provides the means for members to identify who can see their PHI and what specific PHI can be seen for purposes other than TPO. If you need to have your PHI disclosed to

25          someone outside of Anthem for purposes other than TPO, complete the form and submit it to your local Anthem office. This address is located on the back of your Anthem identification

26          card. If you have questions, please contact your local customer service unit. The telephone number is on the back of your identification card.

27

28    Ex. 1-4.

169.    Anthem and its Affiliates also describe their privacy policies and practices in the annual Privacy Notices.  At all times relevant to this litigation, Anthem and its Affiliates all provided annual notices to customers required by federal and state law and made those notices available on their Privacy webpages.

170.    All times relevant to this litigation, and since at least 2010 (and on information and belief for many years prior), the "Privacy" sections of the Anthem and Anthem's BCBS Affiliate websites have stated:

> The Health Insurance Portability and Accountability Act of 1996 (HIPAA) Privacy Rule allows members the right to receive a notice that describes how individual health information may be used and/or disclosed and how to acquire access to this information. Anthem Blue Cross and its affiliated health plans are federally mandated to send a notice (Notice of Privacy Practices) to members of their fully insured health benefits plans.
> Anthem Blue Cross and its affiliated health plans have developed the following Notices of Privacy Practices based upon Federal and individual State regulations. Please select the appropriate link(s) below, as they apply to you.

Ex. 1-4.  The websites then contain hyperlinks to the privacy notice named: "Anthem Blue Cross and Blue Shield Privacy Practices" in English and Spanish.  At all times relevant to this litigation, Anthem's other non-BCBS Affiliates also posted similar representations on their Privacy websites.

171.    The Anthem privacy notices as they appeared in 2014 and 2015 are attached as Exhibit 5.  The Privacy Notices of Anthem's BCBS Affiliates are identical to the Anthem Privacy Notices. These Privacy Notices contained descriptions of Anthem's privacy policies and practices and set forth in detail how those policies require Anthem and Anthem's BCBS Affiliates to protect and maintain the confidentiality of Personal Information, including:

> We may collect, use and share your nonpublic personal information (PI) as described in this notice. PI identifies a person and is often gathered in an insurance matter.
> We may collect PI about you from other persons or entities, such as doctors, hospitals, or other carriers. We may share PI with persons or entities outside of our company—without your OK in some cases. If we take part in an activity that would require us to give you a chance to opt out, we will contact you. We will tell you how you can let us know that you do not want us to use or share your PI for a given activity. You have the right to access and correct your PI. Because PI is defined as any information that can be used to make judgements about your health, finances, character habits, hobbies, reputation, career and credibility, **we take reasonable safety measures to protect the PI we have about you.** A more detailed state notice is available upon request. Please call the phone number printed on your ID card.

Ex. 5 (emphasis added).

54

172.    These Privacy Notices also discussed Personal Health Information, and stated:

**We are dedicated to protecting your PHI, and have set up a number of policies and practices to help make sure your PHI is kept secure.**
**We have to keep your PHI private. If we believe your PHI has been breached, we must let you know.**
**We keep your oral, written and electronic PHI safe using physical, electronic, and procedural means. These safeguards follow federal and state laws. Some of the ways we keep your PHI safe include securing offices that hold PHI, password-protecting computers, and locking storage areas and filing cabinets. We require our employees to protect PHI through written policies and procedures. These policies limit access to PHI to only those employees who need the data to do their job.** Employees are also required to wear ID badges to help keep people who do not belong out of areas where sensitive data is kept. Also, where required by law, our affiliates and nonaffiliates must protect the privacy of data we share in the normal course of business. They are not allowed to give PHI to others without your written OK, except as allowed by law and outlined in this notice.

Ex. 5 (emphasis added).

173.    These Privacy Notices also promise to keep the "financial information of our current and former members private, as required by law, accreditation standards, and our rules." Ex. 5.

174.    These Privacy Notices also promise to follow state and federal law: "HIPAA (the federal privacy law) generally does not pre-empt, or override, other laws that give people greater privacy protections. As a result, if any state or federal privacy law requires us to provide you with more privacy protections, then we must also follow that law in addition to HIPAA." Ex. 5.

175.    At all times relevant to this litigation, Anthem's other non-BCBS Affiliates also posted Privacy Notices on their websites containing specific policies and practices to maintain the confidentiality of members' personal information substantially similar to Anthem's Privacy Notices.

176.    On information and belief, in all years relevant to this litigation, in addition to making the then-current annual notices always available online, Anthem and its Affiliates all mailed by post or e-electronic mail the same annual privacy notices to individuals as well as to members enrolled in Anthem Affiliate group plans.  Anthem gave its customers the option of electing to receive correspondence electronically, including the required annual Privacy Notices.

177.    Many documents provided by Anthem and its Affiliates to customers, including as discussed further below their contract documents, referred to these Privacy policies and notices and encouraged customers to view online the information regarding their privacy policies and practices set

55

1    forth in those notices.

2        178.    At all times relevant to this litigation, Anthem and its Affiliates advertised their

3    services on their websites, including advertising privacy policies.  Individuals or employers interested

4    in purchasing insurance from Anthem and its Affiliates can review the information provided by

5    Anthem and its Affiliates regarding individual plans, including the privacy policies, can "Get a

6    Quote," and can complete and submit an application through the websites.

7        179.    In addition, for example, advertising materials that Anthem makes available on its

8    website describing all of the individual plans that it sells state, under "Important Plan Information"

9    that:  "As a member, you have rights and responsibilities.  **You have the right to expect the privacy**

10   **of your personal health information to be protected, consistent with state and federal laws and**

11   **our policies**."  (Emphasis added).  Likewise, the materials describing group plans refer to privacy

12   policies under the "General Provisions" applicable to all plans.   On information and belief, at all times

13   pertaining to this lawsuit Anthem and its Affiliates all included references to Anthem's privacy

14   policies and websites in materials advertising Anthem's services and plans to potential customers.

15       180.    In addition, Anthem and its Affiliates all provide links to the privacy policies from

16   other areas of Anthem's websites.  For example, Anthem California has a FAQ (Frequently Asked

17   Questions) page on Anthem's website where Anthem provides the following question: "What is

18   HIPAA and what are my privacy rights at Anthem California?"  Anthem then provides as the answer,

19   the link to Anthem's Privacy website, containing Anthem's Privacy policies and notices.

20       181.    The Anthem and Affiliate websites, Privacy Notices, advertisements, and other

21   documents described above, and contract documents described below, are only some of the many

22   documents in which Anthem and its Affiliates set forth their privacy policies and commitments to

23   maintain the confidentiality of member's personal and medical information, including documents

24   provided to Affected Individuals, the public, business associates, and the government.

25       182.    Anthem and its Affiliates provided documents containing their privacy policies, and

26   made those policies available online, to all Affected Individuals at the time that all Affected

27   Individuals enrolled and paid premiums for insurance and/or health benefits policies and plans sold by

28   Anthem and its Affiliates.

183.     At no point in time prior to any Affected Individual enrolling in and paying premiums for insurance and/or health benefits policies provided by Anthem and its Affiliates did Anthem or its Affiliates ever inform any Affected Individual that Anthem did not comply with its privacy policies with respect to personal information, including the Personal Information (Including Social Security Number) Privacy Protection Policy or the representations regarding those policies and practices set forth in Anthem's Privacy Notices.

184.     At no point in time prior to any Affected Individual enrolling in and paying premiums for insurance and/or health benefits policies provided by Anthem and its Affiliates did Anthem ever inform any Affected Individual that Anthem:

- did not take reasonable measures to protect individuals' personal information from disclosure to third parties;

- did not use physical, electronic, or technical means to protect individuals' personal information from disclosure to third parties;

- permitted Anthem employees and/or associates to access individuals' personal information, including Social Security Numbers, when it was not necessary to perform their job duties;

- did not use double-factor authentication to protect access to individuals' personal information;

- maintained the Personal Information of all Anthem and Anthem Affiliate customers and Blue Card participants, among others, in a single Database that lacked adequate data security;

- did not destroy or otherwise remove Personal Information from Anthem's Database after a reasonable amount of time, or the time period as required by state or federal law;

- did not comply with industry standards for protecting personal or health-related information; and

- did not comply with state or federal laws pertaining to the confidentiality of personal and health-related information.

185.     Plaintiffs and Affected Individuals would not have enrolled in, purchased or otherwise paid premiums to Anthem and its Affiliates for insurance or health benefits services had Anthem and

57

its Affiliates disclosed that they did not have adequate safeguards, procedures and systems to reasonably protect their members' data security.

          **b.**    **Anthem's Insurance and Health Benefits Contracts Include Anthem's Privacy Policies**

186.    When Anthem and its Affiliates sell insurance and health benefits services, they enter into contracts with the individuals they insure and to whom they provide health benefits services, including all of the Affected Individuals who were enrolled as members of Anthem plans.  As set forth below, all of Anthem's and its Affiliates' contracts with Affected Individuals included as binding contract terms Anthem's privacy policies.[2]

187.    In the "Glossary" of terms made available to the public and all Anthem customers on Anthem's website, Anthem defines "Member" as "[a]ny person who is enrolled in and covered by a Health Benefit Plan."

188.    Anthem defines "Health Benefit Plan" as "a policy, contract, evidence of coverage, certificate or agreement issued by a Health Plan to provide, deliver, arrange for, pay for or reimburse any of the costs of health care services."  The Health Benefit Plans sold by Anthem and its Affiliates include insurance policies and other types of health benefit contracts including but not limited to Health Maintenance Organization ("HMO") policies.

189.    Anthem defines "Contract" as "Health Benefit Plan."

190.    Plaintiffs and Affected Individuals who received insurance or health benefits services from Anthem and its Affiliates did so as a result of purchasing either individual policies from Anthem, or enrolling under the terms and conditions of a group contract with Anthem.

**(i)**    **Individual contracts**

191.    The many Plaintiffs and Affected Individuals who purchased individual insurance or health benefits policies from Anthem and its Affiliates, entered into contracts with Anthem and its Affiliates when they applied and paid for insurance and Anthem issued them a policy.

---

[2] Plaintiffs have attached hereto as Exhibits 6-12 documents pertaining to the California Plaintiffs who were enrolled in Anthem plans (Bronzo, Carter, Coonce, Kawai, Randrup, Solomon, Tharps) and discuss those documents as examples throughout this section.

58

192.    Anthem provides the individuals who purchase insurance from it with contracts setting forth the terms and conditions of their insurance policies.  Those individual policy documents are sometimes called the "contract," the "policy agreement," or "Evidence of Coverage."

193.    For example, excerpts from the individual insurance policy contract (the "Combined Evidence of Coverage and Disclosure Form") provided by Anthem to California Plaintiff Michael Bronzo for 2015 coverage are attached hereto as Exhibit 6.  This document states clearly that the Agreement set forth in the Evidence of Coverage and documents incorporated therein constitutes a contract.  *Id*. at p.21.[3]

194.    Anthem, like all insurers, drafts its insurance policy contracts and provides them to its Members. Plaintiffs and the Affected Individuals did not draft these contracts. On information and belief, Anthem uses template documents to generate its insurance policy contracts provided to customers, and these documents use language and structure that is consistent across plans (despite containing differences in medical services covered, deductibles, and the like).

195.    Consideration for the services provided by Anthem and its Affiliates pursuant to these individual contracts is the payment of premiums by Plaintiffs and Affected Individuals to Anthem, as required by Anthem.  All of the Plaintiffs who purchased individual policies from Anthem and its Affiliates paid premiums to Anthem and its Affiliates.

196.    For example, the Combined Evidence of Coverage provided by Anthem to California Plaintiff Michael Bronzo states:  "*In consideration for the payment of the Premiums stated in this Agreement, we will provide the services and benefits listed in this agreement to You and Your enrolled Dependents.*"  Ex. 6 at p.21 (emphasis added).  As set forth above, Mr. Bronzo paid Anthem premiums required by this insurance contract.

197.    The Plaintiffs and Affected Individuals whose information was disclosed in the Anthem Data Breach all entered into those individual policy contracts prior to the Anthem Data Breach in 2014

---

[3] Because Anthem's insurance policies contracts consist of hundreds of pages describing medical benefits and coverage that are not relevant to the terms breached by Anthem and its Affiliates here, Plaintiffs have provided the relevant excerpts rather than attach the entire contract documents.  Page citations are to the original document page numbers.

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

1    and 2015.  Anthem's privacy policies and notices remained the same at all relevant times to this

2    litigation.  The individual policy contracts between Anthem and its Affiliates and Plaintiffs and

3    Affected Individuals are generally ongoing, but in some instances may be superseded by a subsequent

4    contract document when Anthem and its Affiliates changed the terms, and issued a new contract.

5    Where superseding contracts were issued by Anthem and its Affiliates for ongoing policies, the 2014

6    and 2015 policy contracts contain the governing terms.

7          198.    All of the individual policy contracts entered into between Plaintiffs and Affected

8    Individuals and Anthem and its Affiliates incorporated Anthem's then-current privacy policies

9    pertaining to personal information collected by Anthem in the course of doing business, including but

10   not limited to the "Personal Information (Including Social Security Number) Privacy Protection

11   Policy" and the information regarding Anthem's privacy policies and practices provided in then-

12   current annual Privacy Notice available at the time of contract.

13         199.    Anthem and its Affiliates' individual policy contracts incorporated these policies either

14   by setting forth or attaching Anthem's privacy policies and notices directly in or as an appendix to the

15   contract document, or by incorporating those policies by express reference, such as by referring

16   individuals to Anthem's websites setting forth those policies and practices.  As discussed above,

17   Anthem has had privacy policies, including the policies set forth in its website and Privacy Notices at

18   all times relevant to this litigation, and all of Anthem's and its Affiliates' contracts with Plaintiffs and

19   Affected Individuals incorporated those privacy policies.

20         200.    As Plaintiffs allege above and as the attached examples reflect, Anthem and its

21   Affiliates drafted all of the individual policy contracts to include references to Anthem's privacy

22   policies and notices and to Anthem's websites where those privacy policies were set forth for its

23   Members.  There is no material difference in the manner in which these contracts incorporate

24   Anthem's privacy policies, which by Anthem's own terms are policies that are uniform across all

25   Anthem Members.

26         201.    For example, the 2015 Combined Evidence of Coverage contract between Anthem and

27   Plaintiff Michael Bronzo (produced by Anthem in discovery as a plan document applicable to Mr.

28   Bronzo) attached as Exhibit 6 expressly incorporates Anthem's privacy policies and practices, through

60

repeated express references, including by:

- Express reference to Anthem's Notice of Privacy Practices and Anthem's website where privacy policies are located: "You have the right to receive a copy of the Notice of Privacy Practices. You may obtain a copy by calling our customer service department at 1-855-383-7247 or by accessing our website at www.anthem/ca." Ex. 6 at p.24. (On information and belief, Anthem has used this language regarding the right to receive the Privacy Notice consistently in its individual policy contracts since at least 2009).

- Express reference to policies pertaining to the confidentiality of information gathered by Anthem from medical providers: "We are entitled to receive from any Provider of service information about You that is necessary to administer claims on Your behalf according to federal/State law. This right is subject to all applicable confidentiality requirements… A STATEMENT DESCRIBING OUR POLICIES AND PROCEDURES FOR PRESERVING THE CONFIDENTIALITY OF MEDICAL RECORDS IS AVAILABLE AND WILL BE FURNISHED UPON REQUEST." Ex. 6 at p.158 (emphasis in original).

- Attachment of the "Member Rights and Responsibilities" to the contract document: Mr. Bronzo's contract also includes as "Appendix I" a statement of "Member Rights and Responsibilities," which states: "As Your health care partner, we're committed to making sure Your rights are respected while providing Your health benefits." Included in the "Rights" set forth by Anthem is: "You have the right to: … Expect us to keep Your personal health information private. This is as long as it follows State and federal laws and our privacy policies." Ex. 6 at 187.

- Express reference to Anthem's website. Mr. Bronzo's contract also repeatedly refers to the Anthem website for additional information regarding the terms and conditions of his contract with Anthem in general, and at all relevant times Anthem's website set forth Privacy policies pertaining to its Members. Ex. 6 at p.24.

202.    All of Anthem and its Affiliates' contracts with Plaintiffs and Affected Individuals required Plaintiffs and Affected Individuals to provide Anthem and its Affiliates with Personal Information in the enrollment and claims process, and to allow Anthem and its Affiliates to obtain Personal Information from health care providers.   The privacy policies published by Anthem and its Affiliates and provided by Anthem and its Affiliates pertained to this Personal Information acquired by Anthem and its Affiliates pursuant to this contractual relationship.  In light of the contract language and all of the information provided by Anthem and its Affiliates to Plaintiffs and Affected Individuals at the time of contract, it was objectively reasonable for Plaintiffs and Affected Individuals to understand their contracts to include Anthem and its Affiliate's privacy policies.

203.    In addition, all of the individual policy contracts with Plaintiffs and Affected

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

Individuals entered into by Anthem and its Affiliates incorporated Anthem's promise to comply with applicable state and federal laws and regulations pertaining to the confidentiality of personal information.

204.    In addition to the information that was available at all times on Anthem and its Affiliates' websites, other documents provided to individual policyholder Plaintiffs and Affected Individuals, at or before the time of contract, also refer to Anthem's commitment to maintain the confidentiality of personal information, including Social Security Numbers.  For example, Anthem requires all individuals to submit applications for individual insurance policies that include personal information, including Social Security Numbers.  Anthem California's individual application form specifically states with respect to Social Security Numbers:

> Anthem is required by the IRS to collect this information. It is used for internal purposes only and will not be disclosed unless you select the health savings account option in this Application or to federal and state agencies as required by applicable law.

Other Anthem Affiliates make similar representations on their individual policy applications regarding maintaining the confidentiality of Social Security Numbers.

205.    As a result of the documents and information provided to them at the time of contract and throughout their relationship, it was objectively reasonable for Plaintiffs and Affected Individuals to understand their contracts with Anthem and its Affiliates to include the privacy policies and notices pertaining to the personal information about them that would be collected by Anthem and its Affiliates in the course of providing insurance and health benefits services to them pursuant to these contracts.

206.    Nowhere in any of the individual policy contracts between Plaintiffs and Anthem and its Affiliates does Anthem state that it did *not* intend to be contractually bound by its advertised and published privacy policies and notices.

207.    No other document provided by Anthem and its Affiliates to its customers at the time of enrollment in their individual insurance and health benefits policies informed Plaintiffs that Anthem did not intend to be contractually bound by its advertised and published privacy policies and notices.

**(ii)    Group contracts**

208.    The Plaintiffs and Affected Individuals who purchased their insurance or health

benefits from Anthem and its Affiliates as part of a group also entered into contracts with Anthem and its Affiliates.

209.    In the "Glossary" of terms made available to the public and all Anthem customers on Anthem's website, Anthem defines Group as an "employer, association or trust that applies for and accepts Health Benefit Plans on behalf of its Members."

210.    Anthem defines "Subscriber" as "Eligible employees, retired employees or members of the Group whose coverage is in effect and whose name appears on I.D. Cards. It also means the individual in whose name a Contract is issued. The Subscriber can usually enroll dependents under family coverage."

211.    Anthem defines "Contract Holder" as "Subscriber."

212.    Anthem defines "Premiums" as "The actual amount of money charged by the Health Plan for active coverage. Part of the premium may be paid by an employer and part may be paid by the member themselves."

213.    Anthem and its Affiliates enter into contracts with the Group on whose behalf an insurance policy or services plan is purchased, and individual Members who are eligible to participate form their contracts with Anthem and its Affiliates by enrolling in that plan.  The contracts between Plaintiffs and Affected Individuals who enrolled pursuant to group plans were therefore formed with Anthem after a Group applied for and entered into an insurance policy or health benefits services contract with Anthem, and when Plaintiffs and Affected Individuals enrolled as Subscribers/Members under that group policy.  As the documents provided to Members by Anthem at the time of enrollment make clear, once Plaintiffs enrolled, Anthem and its Affiliates were required to provide services and benefits to those Plaintiffs, and the Plaintiff Members could enforce those contracts.

214.    The types of contracts entered into by Anthem and its Affiliates with Groups and their Members include group insurance policies (in which Anthem is acting as the insurer of risk), group health benefits plans including HMOs, and employer or other group self-funded plans for which Anthem and its Affiliates provide services other than insuring or funding health benefits, including acting as the claims administrator.  Plaintiffs will refer to the latter type of group contract as an Administrative Services Contract for a Self-Funded Plan.

63

215.     Anthem and its Affiliates issue two documents when creating a Group insurance policy or health benefits plan:  the Plan Booklet (sometimes alternatively called Member Benefits Booklet, Certificate, or Evidence of Coverage), and a Group Agreement.  The Group Agreement constitutes an agreement between Anthem and its Affiliates and the Group, and incorporates the terms and conditions in the Plan Booklet.  The Plan Booklet is the document provided at the time of enrollment to Members.

216.     When an individual enrolls in a group policy or plan with Anthem and its Affiliates, he forms a contract that includes the terms and conditions set forth in the documents pertaining to that group policy or plan provided to that member by Anthem and its Affiliates at the time of enrollment, which always will include the Plan Booklet.  Anthem and its Affiliates did not provide Plaintiffs or Affected Individuals with copies of their Group Agreement for their group policy or plan at the time of enrollment.

217.     For example, Plaintiff Kenneth Coonce enrolled in a group plan with Anthem Blue Cross in California (an Anthem Blue Cross Small Group PPO plan offered by Mr. Coonce's employer).  Upon enrollment, Mr. Coonce was provided the Plan Booklet (called an "Evidence of Coverage" by Anthem Blue Cross of California). The Evidence of Coverage booklet provided by Anthem to Mr. Coonce is dated 07-01-2012, and has not changed since that effective date, and was the operative contract document applicable in 2014 and 2015.  Ex. 8-1.  Although that Plan Booklet states that the contract is governed by the Group Agreement, the Group Agreement at all times also incorporated the Plan Booklet provided to Mr. Coonce.  This is the standard structure for Anthem's Group contracts, all of which expressly incorporate the Plan Booklets provided to Members.  See Ex. 8-2 at 2; 8-3 at 2. Relevant excerpts of the Group Agreements for 2014 and 2015, produced in discovery by Anthem, for Mr. Coonce's employer group are attached as Ex. 8-2, 8-3.

218.     When Plaintiffs enrolled in their Group plans and thereby entered into contracts with Anthem and its Affiliates governed by the terms and conditions set forth in the Plan Booklet provided by Anthem to Plaintiffs, consideration for that contract was provided by Plaintiffs to Anthem and its Affiliates in many forms, including the premiums paid by and on behalf of Plaintiffs to Anthem and its Affiliates, and Plaintiffs' performance under the terms and conditions of the contract, including by

64

1  providing Anthem and its Affiliates with the personal and confidential information required by these

2  contracts.

3      219.    All of the contracts between Plaintiffs and Affected Individual who enrolled with

4  Anthem and its Affiliates pursuant to Group policies or plans and whose data was disclosed in the

5  Anthem Data Breach were formed prior to the Anthem Data Breach in 2014 and 2015.  These group

6  policies and plans are written by Anthem to be ongoing and automatically renewing.  To the extent

7  that Anthem and its Affiliates changed the terms or price of any specific group plan, they issued new

8  contract documents including new Plan Booklets that superseded the previous documents.

9      220.    Anthem and its Affiliates draft group policy contract documents, including the Plan

10 Booklets provided to Members.  Plaintiffs and the Affected Individuals did not draft these contract

11 documents. On information and belief, Anthem and its Affiliates use template documents to generate

12 insurance policy contract documents, provided to customers, and these documents use language and

13 structure that is consistent across plans and types of plans.

14     221.    All of the group contracts under which Plaintiffs and Affected Individuals enrolled and

15 thereby formed contracts with Anthem and its Affiliates incorporated Anthem and its Affiliates' then-

16 current privacy policies pertaining to personal information, including but not limited to the "Personal

17 Information (Including Social Security Number) Privacy Protection Policy" and the information

18 regarding Anthem and its Affiliates' privacy policies and practices provided in then-current annual

19 Privacy Notices available at the time of contract.

20     222.    The Plan Booklets provided to Plaintiffs and Affected Individuals by Anthem and its

21 Affiliates incorporated these policies either by setting forth in or attaching Anthem and its Affiliates'

22 privacy policies and notices directly to the Plan Booklet, or by incorporating those policies by express

23 reference in the Plan Booklet and/or Group Agreement, such as by referring individuals to Anthem's

24 websites setting forth those policies and practices.  As discussed above, Anthem and its Affiliates have

25 had privacy policies, including the policies set forth in their website and Privacy Notices at all times

26 relevant to this litigation, and all of Anthem and its Affiliates' contracts incorporated those privacy

27 policies.

28     223.    For example, the Evidence of Coverage (Plan Booklet) provided by Anthem to Plaintiff

65

Coonce stated, in language common to Anthem's group contract documents:

- "You also have the right to receive a copy of the Member Rights and Responsibilities Statement and/or the Notice of Privacy Practices. You may obtain either document by calling our customer service department toll free at (800)627-8797 or by accessing our website at www.anthem.com." Ex. 8-1 at p.1.

- "Receipt of Information.  We are entitled to receive from any provider of services information about you which is necessary to administer claims on your behalf.… A STATEMENT DESCRIBING OUR POLICIES AND PROCEDURES REGARDING THE CONFIDENTIALITY OF MEDICAL RECORDS IS AVAILABLE AND WILL BE FURNISHED TO YOU UPON REQUEST.  Ex. 8-1 at p. 84.

- Anthem also attached the Anthem Privacy Notice (discussed above at ¶¶171-74) to the Evidence of Coverage.  Ex. 8-1.

- Anthem also attached "Your Rights and Responsibilities as an Anthem Member" to the EOC, which states "You have the right to: … Privacy, when it comes to your personal health information, as long as it follows state and Federal laws, and our privacy rules."  Ex. 8-1.

224.    All of Anthem and its Affiliates' contracts with Plaintiffs and Affected Individuals, and contracts with their Groups, required Plaintiffs and Affected Individuals to provide Anthem and its Affiliates with Personal Information in the enrollment and claims process, and to allow Anthem and its Affiliates to obtain Personal Information from health care providers.   The privacy policies published by Anthem and its Affiliates and provided by Anthem and its Affiliates pertained to this Personal Information acquired by Anthem and its Affiliates pursuant to this contractual relationship.  In light of the contract language and all of the information provided by Anthem and its Affiliates to Plaintiffs and Affected Individuals at the time of contract, it was objectively reasonable for Plaintiffs and Affected Individuals to understand their contracts and their Groups' contracts to include Anthem and its Affiliate's privacy policies.

225.    In addition, all of the group contracts under which Plaintiffs and Affected Individuals enrolled and thereby formed contracts with Anthem and its Affiliates incorporated Anthem's promise to comply with applicable state and federal laws and regulations pertaining to the confidentiality of personal information.

226.    The Group Agreement and Plan Booklet for all group policies and plans also constitute a contract between Anthem and its Affiliates and the Group, and the individual Members enrolled in

66

that plan are the intended beneficiaries of those contracts.

227.   Anthem's Group Agreements also incorporate Anthem's existing privacy policies.  For example, the Group Agreements for Mr. Coonce's group plan incorporate the Plan Booklet (Evidence of Coverage) (Ex. 8-2 at 2; 8-3 at 2), which in turn incorporate Anthem's privacy policies and notices (Ex. 8-1 at p.1).  Some Group Agreements also contain specific additional provisions committing to maintain the confidentiality of information provided to Anthem.

228.   As discussed above, some Group plans sold by Anthem and its Affiliates provided insurance or health benefits, and others were Administrative Services Contracts for a Self-Funded Plans.

229.   Where Anthem entered into a contract only for Administrative Services, Anthem and the Group purchasing the services entered into an "Administrative Services Contract."   In some cases Anthem provided an Evidence of Coverage or Plan Booklet to Members enrolled in self-funded plans, and in other cases the Group issued a Summary Plan Description regarding the employer's health benefits plan.[4]

230.   The Administrative Services Contracts between Anthem and the Groups in which Plaintiffs and Affected Individuals enrolled are contracts, and the individual Members enrolled in those plans are the intended beneficiaries of those contracts, including specifically the contract terms pertaining to the confidentiality of Members' information.

231.   All of Anthems' Administrative Services Contracts for Self-Funded Plans in which Plaintiffs and Affected Individuals enrolled incorporated Anthem's then-current privacy policies pertaining to personal information, including but not limited to the "Personal Information (Including Social Security Number) Privacy Protection Policy" and the information regarding Anthem's privacy policies and practices provided on Anthem's website at the time of contract.  All contracts benefitting Plaintiffs and Affected Individuals were formed prior to the Anthem Data Breach.  The relevant

---

[4] A Summary Plan Description ("SPD") is a document required to be provided by an employer who offers employee benefit plans covered by Employee Retirement Income Security Act (ERISA). *See* 29 C.F.R. §2520.102-3(Contents of ERISA summary plan description); http://www.dol.gov/general/topic/health-plans/planinformation.  The SPD is not an insurance contract, nor is it a document created or provided by Anthem.

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

1    privacy policies were the same during the relevant time period.

2          232.    For example, California Plaintiffs Daniel and Kelly Tharp enrolled in a group plan for

3    which Anthem provided health benefits services pursuant to an Administrative Services Agreement

4    between Anthem and the Ironworkers' Employees Benefit Corporation (IBEC), the Plan Administrator

5    for a union welfare fund.   Anthem did not provide insurance under this contract, as the health benefits

6    were self-funded by the Group (a union welfare fund).  Anthem provided other services, including

7    claims administration, making payments to Providers on behalf of Members, and other services, as set

8    forth in the group contract.  The Tharps enrolled in a self-funded health benefits plan for which

9    Anthem Blue Cross was the service provider, and thereby were the intended beneficiaries of the terms

10   and conditions of the services contracts between Anthem and the IEBC.  Like other Plaintiffs to whom

11   Anthem provided services governed by a group contract, upon enrollment, Anthem issued the Tharps

12   Anthem membership cards, and the Tharps were required to provide Anthem with confidential

13   personal information to receive services from Anthem.

14         233.    Anthem's group Administrative Services Agreements, including the example contract

15   between Anthem and the IEBC that governed Plaintiff Tharps' plan, incorporate Anthem's privacy

16   policies, and also contain additional specific provisions governing the use of Member personal

17   information provided to Anthem in the course of doing business for the Members.

18         234.    The Administrative Services Agreement between Anthem and the IEBC in effect from

19   2011 through 2014, and renewed in 2015 provides the terms and conditions that govern the Tharps'

20   contracts with Anthem.[5]  Ex. 12-1.  That Agreement expressly incorporates by reference Anthem's

21   then-current standard policies:  "Anthem's standard policies and procedures, as they may be amended

22   from time-to-time, will be used in the provision of services specified in this Agreement."  *Id*. at p.6.

23   Anthem's standard policies pertaining to privacy of information were set forth on Anthem's Privacy

24   website at all times.

25         235.    Like other services agreements entered into by Anthem, the Administrative Services

26

27   ───────────────

28         [5] Anthem produced in discovery to the Tharps the Administrative Services Agreement between
     Anthem and the IEBC effective from 2011 through 2014, that was renewed and amended in 2015.

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

Agreement with the IEBC also specifically contains a section pertaining to confidential information. Anthem specifically agrees that: "Each Party shall maintain the other Party's Information in strict confidence, and shall institute commercially reasonable safeguards to protect the information."  (Ex. 12-1 at 14).   Other Administrative Services Agreements are similar.  See Ex. 10-1, 9-1, 13. (Relevant excerpts of contracts pertaining to Plaintiffs Randrup, Kawai, and Gates).

236.     As a result of the documents and information provided to them at the time of contract and throughout their relationship, it was objectively reasonable for Plaintiffs and Affected Individuals who enrolled under group plans with Anthem and its Affiliates to understand their contracts with Anthem and its Affiliates to include the privacy policies and notices pertaining to the personal information about them that would be collected by Anthem in the course of providing the insurance and health benefits services to them pursuant to these contracts.

237.     Nowhere in any of the contract documents between Plaintiffs and Anthem and its Affiliates and individuals enrolled in group plans or with their Groups (including but not limited to the Plan Booklet) do they state that Anthem and its Affiliates did *not* intend to be contractually bound by its advertised and published privacy policies and notices.

238.     No other document provided by Anthem and its Affiliates to its customers at the time of enrollment informed Plaintiffs that Anthem did not intend to be contractually bound by its advertised and published privacy policies and notices.

239.     Some Plaintiffs and Affected Individuals received coverage for medical expenses through ERISA-defined "employee welfare benefit plans."  29 U.S.C. §§1002(1), 1002(3).  Their employer or group established these plans.  An employee welfare benefit plan is a promise by a covered employer to provide certain benefits.  29 U.S.C. §1002(1).  ERISA plans must be maintained pursuant to a written instrument.  29 U.S.C. §1102(a).  Anthem sells group insurance, health benefits, or administrative services to ERISA plans.  Anthem's group insurance, health benefits, or service "plans" are not "employee welfare benefit plans" as that term is used in ERISA, 29 U.S.C. §1002(1), 1002(3), and §1102(a).   In selling group insurance/health benefits/administrative services contracts to employers, Anthem does not necessarily become the ERISA Plan Administrator or ERISA fiduciary for any ERISA plan provided by the employer.  *See* Ex. 7-1 at 144; Ex. 8-2 at 4; Ex. 8-3 at 9; Ex. 12-1

69

1    at 2, 4, 8-9; Ex. 13 at 2-3, 10.

2        **2.      Non-Anthem BCBS Defendants**

3            **a.      The BlueCard Program**

4        240.    According to Anthem, "The BlueCard program is a national program that enables

5    members of one Blue Cross and Blue Shield (BCBS) Plan to obtain healthcare services while traveling

6    or living in another Blue Cross and Blue Shield Plan's service area." BlueCard links participating

7    health-care providers and the independent Blue Cross and Blue Shield Plans across the country

8    through a single electronic network for outpatient and inpatient claims processing and reimbursement.

9    The BlueCard program was established according to uniform rules created by the Blue Cross Blue

10   Shield Association, and on information and belief, contracts between the participating entities

11   including Anthem and the BCBS companies.  The data for claims processed in the BlueCard program

12   is maintained by Anthem in the Anthem Database.

13       241.    When Plaintiffs and Affected Individuals who were enrolled in insurance or health

14   benefits plans with the Non-Anthem Defendants used the BlueCard program, Non-Anthem Defendants

15   provided Anthem with those Plaintiffs' and Affected Individual's Personal Information, which was

16   consequently stored in the Anthem Data Base and disclosed in the Anthem Data Breach.

17       242.    Of the Affected Individuals whose data was stored in the Anthem Database and

18   accessed in the Anthem Data Breach, at least 317,235 were enrolled in a health insurance or health

19   benefits plan with Blue Cross Blue Shield of Alabama. The following chart sets forth the number of

20   residents of each state who were Affected Individuals enrolled with Blue Cross Blue Shield of

21   Alabama:

| State | Affected Individuals |
|---|---|
| Alabama | 49,201 |
| Alaska | 49 |
| Arizona | 676 |
| Arkansas | 712 |
| California | 25,984 |
| Colorado | 8,805 |
| Connecticut | 3,828 |
| Delaware | 56 |
| D.C. | 60 |
| Florida | 3,463 |

| State | Affected Individuals |
|---|---|
| North Carolina | 2,757 |
| North Dakota | 15 |
| Nebraska | 277 |
| Nevada | 4,793 |
| New Hampshire | 2,415 |
| New Jersey | 2,060 |
| New Mexico | 169 |
| New York | 17,046 |
| Ohio | 34,484 |
| Oklahoma | 377 |

70

| | | | |
|---|---|---|---|
| Georgia | 22,853 | Oregon | 167 |
| Hawaii | 31 | Pennsylvania | 1,150 |
| Idaho | 121 | Puerto Rico | 5 |
| Illinois | 3,888 | Rhode Island | 75 |
| Indiana | 32,646 | South Carolina | 1,304 |
| Iowa | 371 | South Dakota | 41 |
| Kansas | 340 | Tennessee | 2,614 |
| Kentucky | 34,450 | Texas | 2,250 |
| Louisiana | 376 | Utah | 187 |
| Maine | 3,515 | Vermont | 192 |
| Maryland | 637 | Virgin Islands | 0 |
| Massachusetts | 993 | Virginia | 22,681 |
| Michigan | 1,983 | Washington | 282 |
| Minnesota | 417 | West Virginia | 1,319 |
| Mississippi | 711 | Wisconsin | 10,371 |
| Missouri | 13,801 | Wyoming | 176 |
| Montana | 61 | **Total** | 317,235 |

243.     Of the Affected Individuals whose data was stored in the Anthem Database and accessed in the Anthem Data Breach, at least 280,997 were enrolled in a health insurance or health benefits plan with USAble Mutual Insurance Company d/b/a Arkansas Blue Cross and Blue Shield. The following chart sets forth the number of residents of each state who were Affected Individuals enrolled with Arkansas Blue Cross and Blue Shield:

| State | Affected Individuals | State | Affected Individuals |
|---|---|---|---|
| Alabama | 942 | North Carolina | 1,799 |
| Alaska | 75 | North Dakota | 104 |
| Arizona | 985 | Nebraska | 307 |
| Arkansas | 28,584 | Nevada | 9,123 |
| California | 17,428 | New Hampshire | 2,644 |
| Colorado | 10,840 | New Jersey | 874 |
| Connecticut | 2,761 | New Mexico | 280 |
| Delaware | 132 | New York | 10,099 |
| D.C. | 15 | Ohio | 34,316 |
| Florida | 2,452 | Oklahoma | 1,073 |
| Georgia | 12,825 | Oregon | 380 |
| Hawaii | 16 | Pennsylvania | 853 |
| Idaho | 218 | Puerto Rico | 2 |
| Illinois | 4,355 | Rhode Island | 91 |
| Indiana | 31,266 | South Carolina | 1,102 |
| Iowa | 499 | South Dakota | 105 |
| Kansas | 890 | Tennessee | 1,941 |
| Kentucky | 23,569 | Texas | 2,682 |

71

| | | | | |
|---|---|---|---|---|
| Louisiana | 508 | | Utah | 887 |
| Maine | 2,737 | | Vermont | 148 |
| Maryland | 355 | | Virgin Islands | 0 |
| Massachusetts | 295 | | Virginia | 18,985 |
| Michigan | 1,238 | | Washington | 437 |
| Minnesota | 439 | | West Virginia | 1,727 |
| Mississippi | 417 | | Wisconsin | 15,606 |
| Missouri | 30,927 | | Wyoming | 505 |
| Montana | 159 | | **Total** | 280,997 |

244.    Of the Affected Individuals whose data was stored in the Anthem Database and accessed in the Anthem Data Breach, at least 119,176 were enrolled in a health insurance or health benefits plan with California Physicians' Service, Inc. d/b/a Blue Shield of California. The following chart sets forth the number of residents of each state who were Affected Individuals enrolled with Blue Shield of California:

| State | Affected Individuals | | State | Affected Individuals |
|---|---|---|---|---|
| Alabama | 36 | | North Carolina | 224 |
| Alaska | 22 | | North Dakota | 8 |
| Arizona | 668 | | Nebraska | 73 |
| Arkansas | 52 | | Nevada | 12,140 |
| California | 63,702 | | New Hampshire | 1,385 |
| Colorado | 9,542 | | New Jersey | 232 |
| Connecticut | 2,195 | | New Mexico | 62 |
| Delaware | 20 | | New York | 815 |
| D.C. | 75 | | Ohio | 5,583 |
| Florida | 464 | | Oklahoma | 54 |
| Georgia | 2,343 | | Oregon | 189 |
| Hawaii | 25 | | Pennsylvania | 195 |
| Idaho | 80 | | Puerto Rico | 3 |
| Illinois | 790 | | Rhode Island | 17 |
| Indiana | 3,669 | | South Carolina | 94 |
| Iowa | 39 | | South Dakota | 25 |
| Kansas | 63 | | Tennessee | 201 |
| Kentucky | 2,770 | | Texas | 685 |
| Louisiana | 44 | | Utah | 279 |
| Maine | 400 | | Vermont | 43 |
| Maryland | 235 | | Virgin Islands | 1 |
| Massachusetts | 364 | | Virginia | 3,817 |
| Michigan | 229 | | Washington | 281 |
| Minnesota | 96 | | West Virginia | 83 |
| Mississippi | 28 | | Wisconsin | 2,300 |
| Missouri | 2,311 | | Wyoming | 56 |

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

| Montana | 69 | | **Total** | 119,176 |

245.    Of the Affected Individuals whose data was stored in the Anthem Database and accessed in the Anthem Data Breach, at least 1,411,644 were enrolled in a health insurance or health benefits plan with Blue Cross and Blue Shield of Illinois. The following chart sets forth the number of residents of each state who were Affected Individuals enrolled with Blue Cross and Blue Shield of Illinois:

| State | Affected Individuals | State | Affected Individuals |
|---|---|---|---|
| Alabama | 2,189 | North Carolina | 5,291 |
| Alaska | 280 | North Dakota | 233 |
| Arizona | 4,513 | Nebraska | 831 |
| Arkansas | 1,652 | Nevada | 22,250 |
| California | 208,945 | New Hampshire | 6,589 |
| Colorado | 55,815 | New Jersey | 12,805 |
| Connecticut | 28,820 | New Mexico | 1,110 |
| Delaware | 453 | New York | 82,404 |
| D.C. | 654 | Ohio | 105,783 |
| Florida | 11,098 | Oklahoma | 2,327 |
| Georgia | 41,032 | Oregon | 1,312 |
| Hawaii | 361 | Pennsylvania | 4,605 |
| Idaho | 652 | Puerto Rico | 25 |
| Illinois | 265,801 | Rhode Island | 346 |
| Indiana | 168,871 | South Carolina | 3,802 |
| Iowa | 1,922 | South Dakota | 375 |
| Kansas | 1,932 | Tennessee | 5,318 |
| Kentucky | 77,450 | Texas | 12,684 |
| Louisiana | 1,409 | Utah | 1,157 |
| Maine | 5,306 | Vermont | 477 |
| Maryland | 3,210 | Virgin Islands | 12 |
| Massachusetts | 2,832 | Virginia | 51,737 |
| Michigan | 8,187 | Washington | 7,009 |
| Minnesota | 2,490 | West Virginia | 4,196 |
| Mississippi | 1,140 | Wisconsin | 106,989 |
| Missouri | 73,053 | Wyoming | 1,396 |
| Montana | 514 | **Total** | 1,411,644 |

246.    Of the Affected Individuals whose data was stored in the Anthem Database and accessed in the Anthem Data Breach, at least 113,725 were enrolled in a health insurance or health benefits plan with Blue Cross and Blue Shield of Florida, Inc. The following chart sets forth the

73

number of residents of each state who were Affected Individuals enrolled with Blue Cross and Blue Shield of Florida:

| State | Affected Individuals | State | Affected Individuals |
|---|---|---|---|
| Alabama | 161 | North Carolina | 425 |
| Alaska | 7 | North Dakota | 12 |
| Arizona | 132 | Nebraska | 11 |
| Arkansas | 25 | Nevada | 1,104 |
| California | 5,049 | New Hampshire | 614 |
| Colorado | 2,223 | New Jersey | 617 |
| Connecticut | 1,154 | New Mexico | 40 |
| Delaware | 12 | New York | 4,197 |
| D.C. | 14 | Ohio | 3,142 |
| Florida | 77,427 | Oklahoma | 37 |
| Georgia | 3,957 | Oregon | 27 |
| Hawaii | 361 | Pennsylvania | 169 |
| Idaho | 10 | Puerto Rico | 4 |
| Illinois | 244 | Rhode Island | 22 |
| Indiana | 2,780 | South Carolina | 155 |
| Iowa | 11 | South Dakota | 5 |
| Kansas | 33 | Tennessee | 332 |
| Kentucky | 3,663 | Texas | 281 |
| Louisiana | 42 | Utah | 41 |
| Maine | 304 | Vermont | 40 |
| Maryland | 144 | Virgin Islands | 3 |
| Massachusetts | 117 | Virginia | 2,723 |
| Michigan | 129 | Washington | 37 |
| Minnesota | 21 | West Virginia | 95 |
| Mississippi | 44 | Wisconsin | 720 |
| Missouri | 775 | Wyoming | 27 |
| Montana | 6 | **Total** | 113,725 |

247.    Of the Affected Individuals whose data was stored in the Anthem Database and accessed in the Anthem Data Breach, at least 120,765 were enrolled in a health insurance or health benefits plan with CareFirst of Maryland, Inc. d/b/a CareFirst BlueCross BlueShield. The following chart sets forth the number of residents of each state who were Affected Individuals enrolled with CareFirst of Maryland, Inc.:

| State | Affected Individuals | State | Affected Individuals |
|---|---|---|---|
| Alabama | 81 | North Carolina | 558 |
| Alaska | 132 | North Dakota | 10 |
| Arizona | 196 | Nebraska | 45 |

74

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

| | | | | |
|---|---|---|---|---|
| Arkansas | 139 | | Nevada | 2,154 |
| California | 11,930 | | New Hampshire | 602 |
| Colorado | 4,759 | | New Jersey | 995 |
| Connecticut | 2,274 | | New Mexico | 66 |
| Delaware | 316 | | New York | 4,369 |
| D.C. | 734 | | Ohio | 6,662 |
| Florida | 811 | | Oklahoma | 78 |
| Georgia | 1,161 | | Oregon | 81 |
| Hawaii | 22 | | Pennsylvania | 996 |
| Idaho | 34 | | Puerto Rico | 0 |
| Illinois | 821 | | Rhode Island | 33 |
| Indiana | 2,897 | | South Carolina | 287 |
| Iowa | 84 | | South Dakota | 15 |
| Kansas | 60 | | Tennessee | 209 |
| Kentucky | 2,336 | | Texas | 585 |
| Louisiana | 112 | | Utah | 86 |
| Maine | 603 | | Vermont | 102 |
| Maryland | 53,206 | | Virgin Islands | 2 |
| Massachusetts | 294 | | Virginia | 13,878 |
| Michigan | 303 | | Washington | 232 |
| Minnesota | 96 | | West Virginia | 1,096 |
| Mississippi | 86 | | Wisconsin | 1,807 |
| Missouri | 2,257 | | Wyoming | 60 |
| Montana | 13 | | **Total** | 120,765 |

248.    Of the Affected Individuals whose data was stored in the Anthem Database and accessed in the Anthem Data Breach, at least 430,164 were enrolled in a health insurance or health benefits plan with Blue Cross and Blue Shield of Massachusetts, Inc. The following chart sets forth the number of residents of each state who were Affected Individuals enrolled with Blue Cross Blue Shield of Massachusetts, Inc.:

| State | Affected Individuals | | State | Affected Individuals |
|---|---|---|---|---|
| Alabama | 184 | | North Carolina | 1,425 |
| Alaska | 15 | | North Dakota | 11 |
| Arizona | 710 | | Nebraska | 215 |
| Arkansas | 153 | | Nevada | 3,548 |
| California | 44,314 | | New Hampshire | 60,017 |
| Colorado | 12,498 | | New Jersey | 5,535 |
| Connecticut | 25,802 | | New Mexico | 102 |
| Delaware | 125 | | New York | 52,180 |
| D.C. | 454 | | Ohio | 18,401 |
| Florida | 3,104 | | Oklahoma | 95 |
| Georgia | 6,674 | | Oregon | 312 |

75

| | | | |
|---|---:|---|---:|
| Hawaii | 42 | Pennsylvania | 1,802 |
| Idaho | 106 | Puerto Rico | 17 |
| Illinois | 2,451 | Rhode Island | 1,746 |
| Indiana | 15,756 | South Carolina | 668 |
| Iowa | 106 | South Dakota | 33 |
| Kansas | 249 | Tennessee | 583 |
| Kentucky | 5,993 | Texas | 1,550 |
| Louisiana | 170 | Utah | 254 |
| Maine | 14,039 | Vermont | 1,454 |
| Maryland | 1,263 | Virgin Islands | 12 |
| Massachusetts | 109,870 | Virginia | 16,408 |
| Michigan | 752 | Washington | 682 |
| Minnesota | 754 | West Virginia | 565 |
| Mississippi | 102 | Wisconsin | 9,593 |
| Missouri | 6,860 | Wyoming | 136 |
| Montana | 274 | **Total** | 430,164 |

249. Of the Affected Individuals whose data was stored in the Anthem Database and accessed in the Anthem Data Breach, at least 455,854 were enrolled in a health insurance or health benefits plan with Blue Cross Blue Shield of Michigan. The following chart sets forth the number of residents of each state who were Affected Individuals enrolled with Blue Cross Blue Shield of Michigan:

| State | Affected Individuals | State | Affected Individuals |
|---|---:|---|---:|
| Alabama | 948 | North Carolina | 1,978 |
| Alaska | 39 | North Dakota | 19 |
| Arizona | 1,331 | Nebraska | 111 |
| Arkansas | 386 | Nevada | 7,047 |
| California | 22,887 | New Hampshire | 1,338 |
| Colorado | 11,969 | New Jersey | 2,073 |
| Connecticut | 9,597 | New Mexico | 119 |
| Delaware | 269 | New York | 10,311 |
| D.C. | 115 | Ohio | 65,047 |
| Florida | 4,654 | Oklahoma | 300 |
| Georgia | 10,656 | Oregon | 255 |
| Hawaii | 48 | Pennsylvania | 1,169 |
| Idaho | 75 | Puerto Rico | 28 |
| Illinois | 6,222 | Rhode Island | 61 |
| Indiana | 61,059 | South Carolina | 1,083 |
| Iowa | 404 | South Dakota | 94 |
| Kansas | 396 | Tennessee | 2,456 |
| Kentucky | 30,122 | Texas | 1,924 |
| Louisiana | 152 | Utah | 189 |
| Maine | 982 | Vermont | 130 |

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

| Maryland | 840 | Virgin Islands | 6 |
|---|---|---|---|
| Massachusetts | 469 | Virginia | 10,534 |
| Michigan | 133,012 | Washington | 292 |
| Minnesota | 381 | West Virginia | 1,123 |
| Mississippi | 241 | Wisconsin | 19,967 |
| Missouri | 30,759 | Wyoming | 135 |
| Montana | 52 | **Total** | 455,854 |

250.     Of the Affected Individuals whose data was stored in the Anthem Database and accessed in the Anthem Data Breach, at least 351,419 were enrolled in a health insurance or health benefits plan with Blue Cross Blue Shield of Minnesota. The following chart sets forth the number of residents of each state who were Affected Individuals enrolled with Blue Cross Blue Shield of Minnesota:

| State | Affected Individuals | State | Affected Individuals |
|---|---|---|---|
| Alabama | 378 | North Carolina | 1,339 |
| Alaska | 69 | North Dakota | 452 |
| Arizona | 1,490 | Nebraska | 718 |
| Arkansas | 426 | Nevada | 5,338 |
| California | 59,499 | New Hampshire | 1,926 |
| Colorado | 20,685 | New Jersey | 2,833 |
| Connecticut | 10,835 | New Mexico | 241 |
| Delaware | 85 | New York | 17,570 |
| D.C. | 70 | Ohio | 29,261 |
| Florida | 2,513 | Oklahoma | 336 |
| Georgia | 5,302 | Oregon | 562 |
| Hawaii | 74 | Pennsylvania | 1,182 |
| Idaho | 425 | Puerto Rico | 5 |
| Illinois | 6,773 | Rhode Island | 94 |
| Indiana | 25,114 | South Carolina | 528 |
| Iowa | 1,716 | South Dakota | 545 |
| Kansas | 1,049 | Tennessee | 1,077 |
| Kentucky | 12,103 | Texas | 2,578 |
| Louisiana | 152 | Utah | 453 |
| Maine | 1,290 | Vermont | 159 |
| Maryland | 780 | Virgin Islands | 1 |
| Massachusetts | 1,013 | Virginia | 13,240 |
| Michigan | 1,597 | Washington | 859 |
| Minnesota | 38,563 | West Virginia | 723 |
| Mississippi | 149 | Wisconsin | 56,704 |
| Missouri | 19,876 | Wyoming | 360 |
| Montana | 309 | **Total** | 351,419 |

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

251.     Of the Affected Individuals whose data was stored in the Anthem Database and accessed in the Anthem Data Breach, at least 510,525 were enrolled in a health insurance or health benefits plan with Horizon Healthcare Services d/b/a/ Blue Cross Blue Shield of New Jersey. The following chart sets forth the number of residents of each state who were Affected Individuals enrolled with Horizon Healthcare Services d/b/a/ Blue Cross Blue Shield of New Jersey:

| State | Affected Individuals | State | Affected Individuals |
|---|---:|---|---:|
| Alabama | 328 | North Carolina | 2,397 |
| Alaska | 25 | North Dakota | 11 |
| Arizona | 874 | Nebraska | 197 |
| Arkansas | 219 | Nevada | 3,992 |
| California | 38,840 | New Hampshire | 4,411 |
| Colorado | 11,260 | New Jersey | 212,781 |
| Connecticut | 19,981 | New Mexico | 131 |
| Delaware | 461 | New York | 84,037 |
| D.C. | 92 | Ohio | 24,135 |
| Florida | 4,250 | Oklahoma | 142 |
| Georgia | 9,156 | Oregon | 167 |
| Hawaii | 42 | Pennsylvania | 7,116 |
| Idaho | 80 | Puerto Rico | 50 |
| Illinois | 3,935 | Rhode Island | 302 |
| Indiana | 20,099 | South Carolina | 1,242 |
| Iowa | 213 | South Dakota | 43 |
| Kansas | 227 | Tennessee | 824 |
| Kentucky | 10,770 | Texas | 1,948 |
| Louisiana | 174 | Utah | 228 |
| Maine | 2,857 | Vermont | 427 |
| Maryland | 914 | Virgin Islands | 0 |
| Massachusetts | 2,817 | Virginia | 18,333 |
| Michigan | 1,389 | Washington | 343 |
| Minnesota | 658 | West Virginia | 946 |
| Mississippi | 106 | Wisconsin | 5,872 |
| Missouri | 10,581 | Wyoming | 63 |
| Montana | 39 | **Total** | 510,525 |

252.     Of the Affected Individuals whose data was stored in the Anthem Database and accessed in the Anthem Data Breach, at least 203,935 were enrolled in a health insurance or health benefits plan with Blue Cross and Blue Shield of North Carolina. The following chart sets forth the number of residents of each state who were Affected Individuals enrolled with Blue Cross and Blue Shield of North Carolina:

78

| State | Affected Individuals | State | Affected Individuals |
|---|---|---|---|
| Alabama | 306 | North Carolina | 78,866 |
| Alaska | 11 | North Dakota | 21 |
| Arizona | 479 | Nebraska | 41 |
| Arkansas | 162 | Nevada | 1,294 |
| California | 13,733 | New Hampshire | 1,029 |
| Colorado | 6,197 | New Jersey | 977 |
| Connecticut | 2,474 | New Mexico | 60 |
| Delaware | 46 | New York | 12,228 |
| D.C. | 84 | Ohio | 13,224 |
| Florida | 1,386 | Oklahoma | 98 |
| Georgia | 6,896 | Oregon | 91 |
| Hawaii | 13 | Pennsylvania | 563 |
| Idaho | 25 | Puerto Rico | 6 |
| Illinois | 814 | Rhode Island | 40 |
| Indiana | 9,862 | South Carolina | 2,062 |
| Iowa | 165 | South Dakota | 25 |
| Kansas | 123 | Tennessee | 790 |
| Kentucky | 8,844 | Texas | 673 |
| Louisiana | 58 | Utah | 121 |
| Maine | 892 | Vermont | 124 |
| Maryland | 536 | Virgin Islands | 5 |
| Massachusetts | 324 | Virginia | 29,821 |
| Michigan | 387 | Washington | 109 |
| Minnesota | 170 | West Virginia | 917 |
| Mississippi | 61 | Wisconsin | 2,720 |
| Missouri | 3,893 | Wyoming | 60 |
| Montana | 29 | **Total** | 203,935 |

253.    Of the Affected Individuals whose data was stored in the Anthem Database and accessed in the Anthem Data Breach, at least 477,966 were enrolled in a health insurance or health benefits plan with Highmark Health Services d/b/a Highmark Blue Shield. The following chart sets forth the number of residents of each state who were Affected Individuals enrolled with Highmark Health Services d/b/a Highmark Blue Shield:

| State | Affected Individuals | State | Affected Individuals |
|---|---|---|---|
| Alabama | 1,163 | North Carolina | 2,407 |
| Alaska | 64 | North Dakota | 60 |
| Arizona | 1,231 | Nebraska | 1,965 |
| Arkansas | 633 | Nevada | 6,279 |
| California | 39,139 | New Hampshire | 2,423 |
| Colorado | 17,555 | New Jersey | 2,521 |
| Connecticut | 7,071 | New Mexico | 199 |

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

| State | Affected | State | Affected |
|---|---:|---|---:|
| Delaware | 163 | New York | 19,870 |
| D.C. | 173 | Ohio | 99,138 |
| Florida | 4,363 | Oklahoma | 347 |
| Georgia | 9,845 | Oregon | 468 |
| Hawaii | 43 | Pennsylvania | 55,535 |
| Idaho | 348 | Puerto Rico | 14 |
| Illinois | 9,281 | Rhode Island | 87 |
| Indiana | 72,635 | South Carolina | 1,414 |
| Iowa | 631 | South Dakota | 105 |
| Kansas | 496 | Tennessee | 2,789 |
| Kentucky | 34,121 | Texas | 3,007 |
| Louisiana | 803 | Utah | 446 |
| Maine | 2,521 | Vermont | 305 |
| Maryland | 1,387 | Virgin Islands | 3 |
| Massachusetts | 1,012 | Virginia | 28,490 |
| Michigan | 2,338 | Washington | 686 |
| Minnesota | 903 | West Virginia | 10,812 |
| Mississippi | 301 | Wisconsin | 12,147 |
| Missouri | 17,228 | Wyoming | 857 |
| Montana | 144 | **Total** | 477,966 |

254.    Of the Affected Individuals whose data was stored in the Anthem Database and accessed in the Anthem Data Breach, at least 422,731 were enrolled in a health insurance or health benefits plan with Blue Cross and Blue Shield of Texas. The following chart sets forth the number of residents of each state who were Affected Individuals enrolled with Blue Cross and Blue Shield of Texas:

| State | Affected Individuals | State | Affected Individuals |
|---|---:|---|---:|
| Alabama | 892 | North Carolina | 1,541 |
| Alaska | 117 | North Dakota | 422 |
| Arizona | 1,348 | Nebraska | 264 |
| Arkansas | 723 | Nevada | 8,224 |
| California | 82,507 | New Hampshire | 4,221 |
| Colorado | 42,066 | New Jersey | 1,964 |
| Connecticut | 5,205 | New Mexico | 1,270 |
| Delaware | 86 | New York | 12,509 |
| D.C. | 88 | Ohio | 34,290 |
| Florida | 2,815 | Oklahoma | 1,954 |
| Georgia | 11,607 | Oregon | 368 |
| Hawaii | 72 | Pennsylvania | 1,729 |
| Idaho | 191 | Puerto Rico | 17 |
| Illinois | 4,598 | Rhode Island | 121 |
| Indiana | 19,110 | South Carolina | 883 |

80

| | | | | |
|---|---|---|---|---|
| Iowa | 309 | South Dakota | 92 |
| Kansas | 586 | Tennessee | 1,757 |
| Kentucky | 20,736 | Texas | 94,803 |
| Louisiana | 1,710 | Utah | 822 |
| Maine | 3,190 | Vermont | 158 |
| Maryland | 791 | Virgin Islands | 7 |
| Massachusetts | 1,025 | Virginia | 21,352 |
| Michigan | 1,297 | Washington | 685 |
| Minnesota | 714 | West Virginia | 2,454 |
| Mississippi | 430 | Wisconsin | 11,891 |
| Missouri | 14,583 | Wyoming | 1,899 |
| Montana | 238 | **Total** | 422,731 |

255.     Of the Affected Individuals whose data was stored in the Anthem Database and accessed in the Anthem Data Breach, at least 18,362 were enrolled in a health insurance or health benefits plan with Blue Cross and Blue Shield of Vermont. The following chart sets forth the number of residents of each state who were Affected Individuals enrolled Blue Cross and Blue Shield of Vermont:

| State | Affected Individuals | State | Affected Individuals |
|---|---|---|---|
| Alabama | 5 | North Carolina | 40 |
| Alaska | 1 | North Dakota | 0 |
| Arizona | 18 | Nebraska | 2 |
| Arkansas | 1 | Nevada | 20 |
| California | 484 | New Hampshire | 2,205 |
| Colorado | 135 | New Jersey | 51 |
| Connecticut | 317 | New Mexico | 2 |
| Delaware | 0 | New York | 1,902 |
| D.C. | 18 | Ohio | 382 |
| Florida | 70 | Oklahoma | 2 |
| Georgia | 67 | Oregon | 5 |
| Hawaii | 0 | Pennsylvania | 18 |
| Idaho | 6 | Puerto Rico | 0 |
| Illinois | 20 | Rhode Island | 5 |
| Indiana | 56 | South Carolina | 17 |
| Iowa | 1 | South Dakota | 1 |
| Kansas | 3 | Tennessee | 11 |
| Kentucky | 100 | Texas | 15 |
| Louisiana | 1 | Utah | 4 |
| Maine | 1,010 | Vermont | 10,887 |
| Maryland | 24 | Virgin Islands | 0 |
| Massachusetts | 132 | Virginia | 195 |
| Michigan | 22 | Washington | 4 |

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

| Minnesota | 3 | | West Virginia | 1 |
|---|---|---|---|---|
| Mississippi | 0 | | Wisconsin | 66 |
| Missouri | 23 | | Wyoming | 6 |
| Montana | 4 | | **Total** | 18,362 |

**b.    The Fourteen Non-Anthem Defendants' Privacy Policies, Representations, and Omissions**

256.    At all times relevant to this litigation, all Non-Anthem BCBS Defendants made representations to their customers and the public regarding their policies and practices for maintaining and protecting the confidentiality of personal and health-related information, including on their websites and in many documents made available to Plaintiffs and Affected Individuals.

257.    At all times relevant to this litigation, all non-Anthem BCBS Defendants posted descriptions of their privacy practices for safeguarding their members' Personal Information on their websites.

258.    At all times relevant to this litigation, all non-Anthem BCBS Defendants posted online and mailed to their customers Privacy Notices setting forth their commitment to comply with applicable state and federal laws and their policies with respect to safeguarding Personal Information in compliance with state and federal laws.

259.    The website homepage of each of the fourteen Non-Anthem BCBS Defendants has at all times relevant to this litigation contained a link to that entity's privacy practices and notices explaining to their customers its duties and practices with respect to maintaining the confidentiality of personal and financial information.  In these notices, all of the Non-Anthem BCBS Defendants state that they will maintain the confidentiality of Members' personal and financial information, including by imposing procedural and technical safeguards.

260.    The Non-Anthem BCBS Defendants' BCBS Privacy Notices set forth on their websites also all state that they will use or disclose Members' personal and financial information for limited, enumerated purposes.  Among the enumerated purposes are providing information to "business associates."  The Non-Anthem BCBS Defendants tell their customers that they will require business associates to agree to maintain the confidentiality of Member's information.

261.    For example, at all times relevant to this litigation Blue Shield of California represented

82

in its "Notice of privacy practices" available on its website:

> "At Blue Shield, we understand the importance of keeping your personal information private, and we take our obligation to do so very seriously….We maintain physical, technical, and administrative safeguards to ensure the privacy of your PHI.  To protect your privacy, only Blue Shield workforce members who are authorized and trained are given access to our paper and electronic records and to non-public areas where this information is stored….Please note that before we share your PHI, we obtain the vendor's or accreditation organization's written agreement to protect the privacy of your PHI."

The full text of Blue Shield of California's "Notice of privacy practices" is attached hereto as Exhibit 15-3, *see also* 15-4.

262.    Each of the Non-Anthem Defendants made available its privacy policies to its customers and the public in many documents and websites, and as discussed further below, these policies and representations regarding maintaining and protecting the confidentiality of Personal Information were incorporated as a term of every Non-Anthem Defendant's insurance and health benefits contracts.

263.    At no point in time prior to any Plaintiff or other Affected Individual enrolling in and paying premiums for insurance and/or health benefits policies sold by the Non-Anthem BCBS Defendants did any Non-Anthem BCBS Defendant ever inform any Plaintiff or other Affected Individual that it did not comply with its privacy policies pertaining to Personal Information.

264.    Nor did any Non-Anthem Defendant ever inform any Plaintiff or other Affected Individual that it:

- Did not take reasonable measures to determine whether Anthem maintained or required sufficient data security protections for the Anthem Database in which members' Personal Information was stored as a result of the BlueCard program;

- Did not take reasonable measures to determine whether Anthem could protect individuals' Personal Information from disclosure to third parties.

- Did not take reasonable measures to insure that Anthem was destroying or otherwise removing the Personal Information of Non-Anthem Defendants' members from the Anthem Database after a reasonable amount of time, or the time period as required by state or federal law.

- Did not take reasonable measures to determine whether Anthem was using technology or processes such as two-factor authentication or encryption to protect the Personal Information of Non-Anthem Defendants' members;

83

- Did not take reasonable measures to determine whether Anthem was properly auditing its Database access to determine (and potentially halt) any improper access or breaches;

- Did not take reasonable measures to determine whether Anthem was complying with federal or state requirements pertaining to the security of Personal Information of Non-Anthem Defendants' members.

265.    Plaintiffs and Affected Individuals would not have purchased or otherwise paid premiums to the Non-Anthem BCBS Defendants for insurance or health benefits services, including the BlueCard program, had the Non-Anthem BCBS Defendants disclosed that they did not have adequate procedures to protect their Members' Personal Information, and that they did not ensure that entities with whom they did business, including the BlueCard program had adequate safeguards, procedures and systems to reasonably protect the Non-Anthem BCBS Defendants' members' personal information.

c.    **Each of the Fourteen Non-Anthem Defendants' Insurance and Health Benefits Contracts Include Specific Privacy Promises**

266.    The Non-Anthem Defendants enter into individual and group insurance contracts and administrative service agreements in substantially the same manner as set forth above with respect to Anthem, and create contract documents in substantially the same form as described above with respect to Anthem (i.e., individual policy documents and group contracts in which individuals enroll subject to the terms and conditions set forth in a Plan Booklet).  On information and belief, each of the Non-Anthem Defendants 1) drafted the contract documents provided to their customers and 2) used template documents that contained uniform language and structure to create their group and individual policy contract documents and administrative service agreements.

267.    All Plaintiffs and Affected Individuals who purchased insurance and health benefits services from the Non-Anthem Defendants formed contracts directly with a Non-Anthem Defendant by purchasing an individual policy or enrolling in a group plan, and were the intended beneficiaries of group agreements between the Non-Anthem Defendants and groups of which Plaintiffs and Affected Individuals were enrolled as a Member, including self-funded plans for which Non-Anthem Defendants provided administrative services.

84

268.    All Plaintiffs and Affected Individuals who purchased insurance and health benefits services from a Non-Anthem Defendant (and whose personal information was transferred to Anthem and ultimately disclosed in the Anthem Data Breach) formed their contracts with a Non-Anthem Defendant prior to the Anthem Data Breach.  As with Anthem, for Plaintiffs who entered into ongoing contracts prior to 2014, if the Non-Anthem Defendant altered the plan terms and issued a new Plan Booklet or contract, the operative contract documents are the documents in effect in 2014 and 2015. All Plaintiffs and Affected Individuals (and their employers on their behalf) paid premiums to the Non-Anthem Defendant with whom they entered into a contract for insurance or health benefits, and/or for group plans, had premiums or fees paid on their behalf.

269.    Each of the Non-Anthem BCBS Defendants provided documents containing their privacy policies, and made those policies available online, to their Affected Individual customers prior to those customers enrolling and paying premiums for insurance and/or health benefits policies provided by the Non-Anthem BCBS Defendants.

270.    The contracts with Plaintiffs and Affected individuals entered into by the Non-Anthem Defendants all incorporated the then-current privacy policies and notices set forth on that Non-Anthem Defendant's website.

271.    The contract documents provided by each of the Non-Anthem Defendants to their Plaintiff and Affected Individual customers contained contract terms committing to maintain the confidentiality of personal information.

272.    For example, the 2014 and 2015 "About Your Benefits" Plan Booklet from Horizon Blue Cross Blue Shield of New Jersey (Horizon BCBSBJ"), the Privacy Policy posted on Horizon BCBSNJ's website, and, on information and belief, Horizon BCBSNJ's mailed Privacy Notice, all stated:

> NOTICE OF INFORMATION PRIVACY PRACTICES
> **Horizon Blue Cross Blue Shield of New Jersey and its affiliated companies want you to know that we recognize out obligation to keep information about you secure and confidential**. . . . [W]e do not share your information except to conduct our business[.]
> As required by law, we publish this Notice to explain the information that we collect and how we maintain, use and disclose it in administering your benefits.  **We will abide by the statements made in this Notice.**  Except as permitted by law and as explained in this Notice, we do not disclose any information about our past, present or future customers to anyone.

85

When we use the term 'Customer Information,' we are referring to financial or health information that is 'nonpublic,' including any information from which a judgment could possibly be made about you.  When we use the term 'Protected Health Information' or 'PHI,' we are referring to individually identifiable oral, written and electronic information concerning the provision of, or payment for, health care to you.  We refer to Customer Information and PHI collectively as 'Private Information.'

…

HOW DO WE PROTECT PRIVATE INFORMATION?

Our employees get training regarding the need to maintain your Private Information in the strictest confidence.  They agree to be bound by that promise of confidentiality and are subject to disciplinary action if they violate that promise.  **We also maintain appropriate administrative, technical and physical safeguards to reasonably protect your Private Information.  In addition, in those situations where we rely on a third party to perform business, professional or insurance services or functions for us, that third party must agree to safeguard your Private Information.  That business associate must also agree to use it only as required to perform its functions for us and as otherwise permitted by our contract and the law.**  Finally, if we or our business associate causes a 'breach' of privacy as that term is defined under federal law, we will notify you without unreasonable delay of the occurrence.  In these ways, we carry out our confidentiality commitments to you. (Emphasis added).

Relevant excerpts of the Horizon Blue Cross Blue Shield New Jersey Benefits Booklet and the Privacy Notice posted on its website are attached hereto as Ex. 14-1, 14-2 (Plaintiff Ames 2014 and 2015 contract documents with Horizon BCBSNJ); Ex. 14-3 (Horizon BCBSNJ website and privacy notices as set forth in 2014 and 2015).

273.     All of Non-Anthem Defendants' contracts with Plaintiffs and Affected Individuals required Plaintiffs and Affected Individuals to provide the Non-Anthem Defendants with Personal Information in the enrollment and claims process, and to allow the Non-Anthem Defendants to obtain Personal Information from health care providers.   The privacy policies published by the Non-Anthem Defendants and provided by the Non-Anthem Defendants pertained to this Personal Information acquired by the Non-Anthem Defendants pursuant to this contractual relationship.  In light of the contract language and all of the information provided by the Non-Anthem Defendants to Plaintiffs and Affected Individuals at the time of contract, it was objectively reasonable for Plaintiffs and Affected Individuals to understand their contracts to include Non-Anthem Defendants' privacy policies.

274.     The Non-Anthem Defendants' contracts with Plaintiffs, Affected Individuals, and/or their employers on their behalf, contain contract terms pertaining to the BlueCard program.

275.     The Non-Anthem Defendants' contracts with Plaintiffs and Affected Individuals also

86

contained additional specific terms committing to maintaining the confidentiality of personal

information in the context of Members' use of the BlueCard Program.

276.    The Non-Anthem Defendants' contract documents, including contracts with Plaintiffs

and Affected Individuals and/or their employers on their behalf, contain language similar to the

following language with respect to that BCBS Defendant:

> Under the BlueCard Program, when you obtain Covered Services within the geographic area
> served by a Host Plan, Blue Shield will remain responsible for fulfilling our contractual
> obligations.

Ex. 15-1 (Plaintiff Brisko's contract documents with Blue Shield of California).

277.    The Non-Anthem Defendants' contracts with Plaintiffs and Affected Individuals also

contained additional specific terms promising that they would provide their members' Personal

Information only to business associates who themselves promised to protect the confidentiality of that

Personal Information.

278.    As a result of the documents and information provided to them at the time of contract

and throughout their relationship by the Non-Anthem Defendant, it was objectively reasonable for

Plaintiffs and Affected Individuals who purchased individual policies from or enrolled under group

plans with Non-Anthem Defendants to understand their contracts with Non-Anthem Defendants to

include the privacy policies and notices pertaining to the personal information about them that would

be collected in the course of providing the insurance and health benefits services to them pursuant to

these contracts, including the Non-Anthem Defendants' commitment to ensuring the confidentiality of

information provided to business associates and/or other entities as a result of the BlueCard program.

279.    Nowhere in any of the contract documents between Plaintiffs and any Non-Anthem

Defendant (including but not limited to the Plan Booklet) did any Non-Anthem Defendant state that it

did *not* intend to be contractually bound by its advertised and published privacy policies and notices.

280.    No other document provided any Non-Anthem Defendant to its customers at the time of

enrollment informed Plaintiffs that the Non-Anthem Defendant did not intend to be contractually

bound by its advertised and published privacy policies and notices.

281.    Some Plaintiffs and Affected Individuals received coverage for medical expenses

1   through ERISA-defined "employee welfare benefit plans."  29 U.S.C. §§1002(1), 1002(3).  Their

2   employer or group established these plans.  An employee welfare benefit plan is a promise by a

3   covered employer to provide certain benefits.  29 U.S.C. §1002(1).  ERISA plans must be maintained

4   pursuant to a written instrument.  29 U.S.C. §1102(a).  Non-Anthem Defendants sell group insurance,

5   health benefits, or administrative services to ERISA plans.  Non-Anthem Defendants' group insurance,

6   health benefits, or service "plans" are not "employee welfare benefit plans" as that term is used in

7   ERISA, 29 U.S.C. §1002(1), 1002(3), and §1102(a).  In selling group insurance/health

8   benefits/administrative services contracts to employers, Non-Anthem Defendants do not necessarily

9   become the ERISA Plan Administrator or ERISA fiduciary for any ERISA plan provided by the

10  employer.

11        282.    Attached to this Complaint as Exhibits 14-27 are excerpts from examples of named

12  Plaintiffs' contract documents with each of the fourteen Non-Anthem Defendants, consistent with the

13  above general allegations pertaining to all Non-Anthem Defendants.  On information and belief, each

14  Non-Anthem BCBS Defendant used uniform contract language across its contracts, which it drafted

15  based on templates, and therefore all of the Non-Anthem BCBS Defendants' contracts with Affected

16  Individuals contain the terms as described for each Defendant with respect to these Plaintiff contract

17  documents that are provided as examples.

18                        **Non-Anthem Defendant BCBS of Alabama**

19        283.    Plaintiff Connie McDaniel and Non-Anthem Defendant BCBS of Alabama entered into

20  a contract when Plaintiff McDaniel enrolled pursuant to a group plan prior to the Anthem Data Breach

21  (and Plaintiff McDaniel was also the intended beneficiary of her group's contract with BCBS

22  Alabama).  The contract documents drafted by BCBS Alabama include at least the Plan Booklet for

23  her PPO plan, which includes a promise to protect the confidentiality of its members' Personal

24  Information, incorporates by reference the BCBS Alabama Privacy Notices and other information

25  made available on the BCBS Alabama website, and states that BCBS Alabama will remain responsible

26  for fulfilling its contractual obligations when members obtain services through the BlueCard Program.

27  Attached as Exhibit 16 are relevant excerpts of the contract documents produced by BCBS Alabama in

28  discovery for Plaintiff McDaniel (the 2012 PPO plan booklet, in effect during 2014 and 2015), and

incorporated website privacy policies and privacy notices as those appeared in 2014 and 2015.

**Non-Anthem Defendant USAable Mutual Insurance (d/b/a Arkansas BCBS)**

284.     Plaintiff Adam Mannis and Non-Anthem Defendant Arkansas BCBS entered into a contract when Plaintiff Mannis enrolled pursuant to a BCBS Arkansas Health Advantage group plan prior to the Anthem Data Breach (and Plaintiff Mannis was also the intended beneficiary of his group's contract with BCBS Arkansas).  The contract documents drafted by BCBS Arkansas include at least the Evidence of Coverage booklet provided to all Members enrolled in this plan, as well as the individual enrollment forms, which expressly incorporate BCBS Arkansas privacy notices, which were available at all times on the BCBS Arkansas and Health Advantage websites.  Attached as Exhibit 17 are relevant excerpts of the contract documents produced by USAable Mutual Insurance in discovery for Plaintiff Mannis and incorporated website privacy policies and privacy notices, as those websites appeared in 2010 prior to Plaintiff Mannis' initial enrollment in 2011, and as those website notices have appeared since they were amended in 2013.

**Non-Anthem Defendant California Physicians Service (d/b/a Blue Shield of California)**

285.     Plaintiff Lillian Brisko and Non-Anthem Defendant Blue Shield of California entered into a contract when Plaintiff Brisko enrolled in a group plan prior to the Anthem Data Breach (and Plaintiff Brisko was also the intended beneficiary of her group's contract with Blue Shield of California).  The contract documents drafted by Blue Shield of California include the Plan Booklet ("Combined Evidence of Coverage and Disclosure Form"), which includes a promise to protect the confidentiality of its members' Personal Information, incorporates Blue Shield's privacy policies and notices by reference, incorporates by reference the Blue Shield of California website, which at all times has included Blue Shield of California's privacy webpage and privacy notices, and states the Blue Shield of California will remain responsible for contractual obligations when Members use the BlueCard program. Attached as Exhibit 15 are relevant excerpts of the contract documents produced by Blue Shield of California in discovery for Plaintiff Brisko that were in effect during 2014, and the incorporated website privacy policies and privacy notices, as those websites have appeared since 2014.

**Non-Anthem Defendant BCBS of Florida**

286.     Plaintiff Charles Platt and Non-Anthem Defendant BCBS of Florida entered into a

89

contract when Plaintiff Platt purchased an individual insurance policy prior to the Anthem Data Breach.  The contract documents drafted by BCBS Florida include the "Non-Group Contract" provided to Plaintiff Platt, which includes a promise to protect the confidentiality of its members' Personal Information, attaches the BCBS Florida Privacy Notice, incorporates by reference other information made available on the BCBS Florida website and states that BCBS Florida will remain responsible for fulfilling its contractual obligations when members obtain services through the BlueCard Program.  Attached as Exhibit 18 are relevant excerpts of the BCBS Florida contract documents for Plaintiff Platt that were in effect prior to and during the Anthem Data Breach, and incorporated website privacy notices, as those notices have appeared since 2013.

## Non-Anthem Defendant BCBS of Illinois

287.    Plaintiff David Klemer and Non-Anthem Defendant BCBS Illinois entered into a contract when Plaintiff Klemer was enrolled as a Member of a group plan with BCBS Illinois prior to the Anthem Data Breach (and Plaintiff Klemer was also the intended beneficiary of his group's contract with BCBS Illinois).  The contract documents drafted by BCBS Illinois included a Plan Booklet (called a "Certificate") for the "Blue Print Blue Advantage HMO," as well as the group and individual enrollment forms. The Plan Booklet incorporates by reference information about BCBS Illinois on the BCBS Illinois website, which contains several explanations of BCBS Illinois' privacy policies and practices with respect to personal information about its Members, including committing to protecting the confidentiality of information and restricting access for employees and business associates acting on behalf of BCBS Illinois.  In addition, the individual enrollment applications for BCBS group plans (which once completed and submitted are incorporated by reference into BCBS contracts, including Mr. Klemer's contract) require submission of Social Security Numbers, and state: "Your Social Security number is used for internal purposes only."  Attached as Exhibit 19 are relevant excerpts of the BCBS Illinois contract documents that were in effect prior to and during the Anthem Data Breach, the incorporated BCBS Illinois websites as they appeared in 2014, and BCBS Illinois enrollment application.

## Non-Anthem Defendant CareFirst of Maryland (d/b/a Carefirst BCBS)

288.    Plaintiff Don West and Non-Anthem Defendant CareFirst of Maryland entered into a

90

contract when Plaintiff West enrolled in a group plan prior to the Anthem Data Breach (and Plaintiff West was also the intended beneficiary of his group's contract with BCBS CareFirst of Maryland). The contract documents drafted by CareFirst of Maryland include the Group Agreement and Evidence of Coverage, which includes a promise to protect the confidentiality of its members' Personal Information, and states that CareFirst of Maryland will remain responsible for fulfilling its contractual obligations when members obtain services through the BlueCard Program.  Attached as Exhibit 20 are relevant excerpts of the CareFirst of Maryland contract documents for Plaintiff West that were in effect prior to and during the Anthem Data Breach, and the CareFirst of Maryland website privacy notices, as those notices have appeared since 2013.

## Non-Anthem Defendant BCBS of Massachusetts

289.    Plaintiff Carrie Ramos and Non-Anthem Defendant BCBS of Massachusetts entered into a contract when Plaintiff Ramos enrolled pursuant to a group plan prior to the Anthem Data Breach (and Plaintiff Ramos also was the intended beneficiary of her group's contract with BCBS Massachusetts).  The contract documents drafted by BCBS Massachusetts include at least the Plan Booklet ("Subscriber Certificate"), which includes a promise to protect the confidentiality of its members' Personal Information and incorporates by reference the BCBS Massachusetts privacy notice ("Commitment to Confidentiality").  BCBS Massachusetts has also produced in discovery for Plaintiff Ramos the agreement with her group, which specifically promises to protect the confidentiality of Members' personal information, and commits that BCBS Massachusetts will be bound by contractual obligations when Members use BlueCard services.  Attached as Exhibit 21 are relevant excerpts of the contract documents produced by BCBS Massachusetts in discovery for Plaintiff Ramos applicable during 2014 and incorporated website privacy notices as they have appeared since 2014.

## Non-Anthem Defendant BCBS of Michigan

290.    Plaintiff Michelle Kaseta-Collins and Non-Anthem Defendant Blue Cross and Blue Shield of Michigan entered into a contract when Plaintiff Kaseta-Collins enrolled in a Blue Care HMO from BCBS Michigan (and Plaintiff Kaseta-Collins also was the intended beneficiary of her group's contract with BCBS Michigan).  The contract documents drafted by BCBS Michigan include at least the Plan Booklet ("Certificate"), which includes a promise to protect the confidentiality of its

1  members' Personal Information, incorporates by reference the Blue Care Network's policies, which at

2  all times have been set forth on the BCBS Michigan website, including BCBS Michigan's Privacy

3  Notice applicable to Blue Care plans.  Attached as Exhibit 22 are relevant excerpts of the BCBS

4  Michigan contract documents for Plaintiff Kaseta-Collins and BCBS Michigan website privacy notices

5  as they have appeared since 2013.

**Non-Anthem Defendant BCBS of Minnesota**

7       291.    Plaintiff Lauren Roberts entered into a contract with BCBS Minnesota when Plaintiff

8  Roberts enrolled in a group plan with BCBS Minnesota prior to the Anthem Data Breach.  On

9  information and belief, the contract documents drafted by BCBS Minnesota include the Plan Booklet

10  (called a "Certificate of Coverage") that includes a promise to keep Member Personal Information

11  confidential and that incorporates BCBS Minnesota's privacy policies and notices, which have been

12  made available at all times on the BCBS Minnesota website, as well as the individual enrollment

13  form/application.[6] Attached as Exhibit 23 are relevant excerpts of BCBS Minnesota website privacy

14  policies and privacy notices, and enrollment forms, as those documents appeared in 2014.

**Non-Anthem Defendant Horizon BCBSNJ**

16      292.    Plaintiff Elizabeth Ames entered into a contract when Plaintiff Ames purchased an

17  individual insurance policy from Horizon BCBSNJ prior to the Anthem Data Breach.  The contract

18  documents drafted by Horizon BCBSNJ include policy documents that promise to protect the

19  confidentiality of Member's personal information, including when that information is given to

20  business associates, and incorporate the Horizon BCBSNJ websites, which at all times have made the

21  Horizon BCBSNJ privacy policies and notices available, as well as information regarding the

22  BlueCard plan.  Attached as Exhibit 14 are relevant excerpts of Plaintiff Ames's 2014 and 2015

23  Horizon BCBSNJ contract documents and incorporated Horizon BCBSNJ website privacy policies

24  and privacy notices, as those documents appeared in 2014 and 2015.

[6] BCBS Minnesota has produced copies of its privacy policies and notices, but has yet to produce any contract or plan documents for Roberts Plaintiff in discovery.

**Non-Anthem Defendant BCBS of North Carolina**

293.     Plaintiff Frank Nicosia and Non-Anthem Defendant BCBS North Carolina entered into a contract when Plaintiff Nicosia enrolled pursuant to a group plan prior to the Anthem Data Breach (and Plaintiff Nicosia also was the intended beneficiary of his group's contract with BCBS North Carolina).  The contract documents drafted by BCBS North Carolina include a 2014 Plan Booklet ("Benefit Booklet") that promises to protect the confidentiality of Member's personal information, incorporates by reference the BCBS North Carolina privacy notices found on the BCBS North Carolina website, and states that BCBS North Carolina will be bound by contractual obligations when Members use BlueCard services.  Attached as Exhibit 24 are relevant excerpts of the contract documents produced by BCBS North Carolina in discovery for Plaintiff Nicosia applicable during 2014 and the incorporated website privacy notices as those have appeared since 2014.

**Non-Anthem Defendant Highmark (d/b/a Highmark Blue Shield)**

294.     Plaintiff Denise Masloski and Non-Anthem Defendant Highmark Blue Shield entered into a contract when Plaintiff Masloski was enrolled pursuant to a group plan prior to the Anthem Data Breach.[7]  On information and belief, the contract documents drafted by Highmark Blue Shield include a Plan Booklet (called a "Certificate of Coverage") that includes a promise to keep Member Personal Information confidential and that incorporates Highmark Blue Shield's privacy policies and notices, which have been made available at all times on Highmark Blue Shield website, as well as the individual enrollment form/application.  Attached as Exhibit 25 are relevant excerpts of Highmark Blue Shield website privacy notices, as those documents appeared since 2014.

**Non-Anthem Defendant BCBS of Texas**

295.     Plaintiff Lance Wagner and Non-Anthem Defendant BCBS Texas entered into a contract when Plaintiff Wagner purchased an individual insurance policy prior to the Anthem Data Breach.  The contract documents drafted by BCBS Texas include a Plan Booklet that promises to protect the confidentiality of its members' Personal Information, attaches the BCBS Texas Privacy Notice, incorporates by reference other information made available on the BCBS Texas website, and

---

[7] Defendant Highmark has produced no insurance contracts or plans in discovery.

1    states that BCBS Texas will remain responsible for fulfilling its contractual obligations when members

2    obtain services through the BlueCard Program.  Attached as Exhibit 26 are relevant excerpts of the

3    BCBS Texas contract documents for Plaintiff Wagner that were in effect prior to the Anthem Data

4    Breach, and the incorporated BCBS Texas website privacy policies and privacy notices, as those

5    documents appeared in 2014 and 2015.

6                                    **Non-Anthem Defendant of Vermont**

7                296.    Plaintiff Jessica Holguin and Non-Anthem Defendant BCBS Vermont entered into a

8    contract when Plaintiff Holguin enrolled pursuant to a group plan prior to the Anthem Data Breach

9    (and Plaintiff Holguin also was the intended beneficiary of her group's contract with BCBS

10   Michigan).  The contract documents drafted by BCBS Vermont include a 2014 Plan Booklet ("Plan J

11   Comprehensive Certificate") that promises to protect the confidentiality of Member's personal

12   information, incorporates BCBS Vermont's privacy notices (also found on the BCBS Vermont

13   website), states that BCBS Vermont requires business associates to agree to protect Members'

14   information, and states that BCBS Vermont will be bound by its contractual obligations when

15   Members use BlueCard services.  Attached as Exhibit 27 are relevant excerpts of the contract

16   documents produced by BCBS Vermont in discovery for Plaintiff Holguin applicable beginning in

17   2014 and the incorporated website privacy notices as they appeared since 2014.

18       **3.    Blue Cross Blue Shield Association and the Federal Contract**

19               297.    The Blue Cross and Blue Shield Association ("BCBSA"), Anthem and its BCBS

20   Affiliates, and non-Anthem BCBS also contracted to protect the Personal Information of federal

21   government employees who enrolled in the Blue Cross Blue Shield Service Benefit Plan.

22               298.    The Federal Employees Health Benefits Act of 1959 establishes a comprehensive

23   program of health insurance for federal employees and authorizes the Office of Personnel

24   Management ("OPM") to contract with private carriers to offer federal employees an array of health

25   plans.

26               299.    Among the plans offered to federal employees is the Blue Cross Blue Shield Service

27   Benefit Plan ("Federal BCBS Plan").

28               300.    The Federal BCBSA Plan is governed by Contract No. CS 1039 ("Federal BCBSA

94

Contract") between OPM and BCBSA, acting on behalf of, and as agent for, the local BCBS plans (Anthem BCBS Affiliates and non-Anthem BCBS) that process claims under the Federal BCBSA Plan and underwrite the plan in their localities.  The Federal BCBSA Plan has been described by the Congressional Committee on Oversight and Government Reform as an "aggregation" of BCBS local plans.  The Federal BCBSA Contract operative in 2014 and 2015 is attached as Exhibit 28.

301.    The Federal BCBSA Contract incorporates as Appendix A the Plan Booklet (called the "FEHB Brochure") describing the benefits and services to which Enrollees are entitled.  The Federal BCBSA Contract requires BCBSA to distribute this FEHB Brochure to all Enrollees.  The FEHB Brochures for 2014 and 2015 are attached as Exhibit 29, 30.  At all times relevant to this litigation, the then-current year's FEHB Brochure has been made available on the BCBS Federal Employee Program website (www.fepblue.org, maintained by BCBSA, the Anthem BCBS Affiliates, and the non-Anthem BCBS for the Federal BCBSA Plan).

302.    Enrollees are federal employees, including Plaintiffs Alvin Lawson, Ralph Staffieri, Stella Williams, David Ifversen, and Jason Baker, who elected to obtain coverage and benefits under the Federal BCBSA Plan.

303.    Enrollees of the Federal BCBSA Plan including Plaintiffs and Affected Individuals, are the intended beneficiaries of the benefits and services set forth in the Federal BCBSA Contract, including but not limited to the benefits and services listed in the FEHB Brochure incorporated into that contract, including the contract terms pertaining to the confidentiality of Enrollees' personal information.

304.    All Plaintiffs and Affected Individuals who are Enrollees in the Federal BCBSA Plan enrolled in that Plan prior to the Anthem Data Breach.

305.    In the Federal BCBSA Contract, BCBSA, as agent for the Anthem BCBS Affiliates and non-Anthem BCBS, agreed to protect the Personal Information of the Enrollees in the Federal BCBSA Plan.  The contract requires OPM and Enrollees to provide confidential Personal Information, including Social Security Numbers, to BCBSA, as agent for the Anthem BCBS Affiliates and non-Anthem BCBS, in order for it to administer the Federal BCBSA Plan.  Under the agreement, BCBSA, as agent for the Anthem BCBS Affiliates and non-Anthem BCBS, was limited to using "the personal

95

1  data on employees and annuitants that is provided by agencies and OPM, including social security

2  numbers, for only those routine uses stipulated for the data . . . ."  Ex. 28-1 at I-3.

3      306.    BCBSA, as agent for the Anthem BCBS Affiliates and non-Anthem BCBS, agreed to

4  specific obligations with respect to protecting this and other sensitive Personal Information.  At all

5  times relevant to this litigation, under the Federal BCBSA Contract, BCBSA, as agent for the Anthem

6  BCBS Affiliates and non-Anthem BCBS, expressly contracted to:

7          a) "hold all medical records, and information relating thereto, of federal subscribers,

8              confidential" (with limited exceptions that do not apply here);

9          b) maintain the "necessary resources to meet its obligations under the contract,"

10             including security obligations;

11         c) permit the OPM to use NIST SP 800-53 (Security and Privacy Controls for Federal

12             Information Systems and Organizations) or its equivalent as a benchmark for

13             conducting audits of information systems and to recommend that BCBSA, Anthem,

14             the Anthem BCBS Affiliates, and the non-Anthem BCBS, adopt a best practice drawn

15             from NIST SP 800-53;

16         d) either adopt recommendations made by the OPM, or represent that it is already in

17             compliance with the recommendation, or explain why its current practice,

18             notwithstanding its refusal to adopt the recommendation, is equally if not more

19             appropriate for its business purposes than the recommended best practice;

20         e) demonstrate to the OPM their compliance with either a recommended best practice

21             or an alternative current practice they had adopted; and

22         f) permit OPM "to inspect or evaluate the work performed or being performed under

23             the contract."

24  Ex. 28-1 at I-3, I-9; 28-2 at 6.

25      307.    The FEHB Brochures for 2014 and 2015 both state, "If you are enrolled in this Plan,

26  you are entitled to the benefits described in this brochure."  The Brochures define "you/your" to mean

27  "the enrollee (the contract holder eligible for enrollment and coverage under the Federal Employees

28  Health Benefits Program and enrolled in the Plan) and each covered family member."  Under the

96

1  heading "Your Medical and Claims Records are Confidential," the Brochure promises that "We will

2  keep your medical and claims information confidential."  Ex. 29 at 5, 14, 149; Ex. 30 at 5, 14, 153.

3       308.    The FEHB Brochures for 2014 and 2015 also incorporate by reference the Notice of

4  Privacy Policy, available at all times at www.fepblue.org.  The 2015 Notice of Privacy Practice states:

5       This notice describes how we, the Blue Cross and Blue Shield (BCBS) Service Benefit Plan,
        may use and disclose your protected health information (PHI) ..  It also includes our legal
6       obligations concerning your PHI. . . . Members receive a copy of this Notice at the time of
        enrollment and annually thereafter.
7       …
        We have measures in place to protect PHI [Personal Health Information] according to state
8       and federal standards. The measures are designed to protect oral, written, and electronic PHI,
        and include:
9         •  Security and privacy training for all employees.
10        •  Employee access is limited to need-to-know basis. . . .
11        •  All users of our electronic systems are required to use strong passwords.
          •  All users must change their computer passwords periodically.
12

13  The Notice of Privacy Policy in effect for 2014 and 2015 are attached hereto as Exhibit 31.

14       309.    The www.fepblue.org website also states on its "Rights and Responsibilities" page that

15  the plan will "hold all our member records confidential, and will only release them to the appropriate

16  entities if required to do so by law."  Ex. 32.

17       310.    The www.fepblue.org website has at all relevant times been incorporated by reference

18  into the FEHB Brochure.  Ex 29 at 14, Ex. 30 at 14.

19  **C.    Defendants Had an Obligation to Protect Personal Information under Federal and State
20         Law and the Applicable Standard of Care**

21       311.    Defendants are entities covered by HIPAA (see 54 C.F.R. § 160.102) and as such are

22  required to comply with the HIPAA Privacy Rule and Security Rule, 45 CFR Part 160 and Part 164,

23  Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information").

24       312.    HIPAA limits the permissible uses of "protected health information" and prohibits

25  unauthorized disclosures of "protected health information."[8]  In response to the Anthem Data Breach, a

26  senior Department of Health and Human Services advisor explained that "[t]he personally identifiable

27  _____

28  [8] 45 C.F.R. § 164.502 (2009).

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

1    information health plans maintain on enrollees and members — including names and social security

2    numbers — is protected under HIPAA, even if no specific diagnostic or treatment information is

3    disclosed."[9]

4          313.    HIPAA requires that Defendants implement appropriate safeguards for this

5    information.[10]

6          314.    HIPAA requires that Defendants provide notice of a breach of unsecured protected

7    health information, which includes protected health information that is not rendered unusable,

8    unreadable, or indecipherable to unauthorized persons – i.e. non-encrypted data.[11]

9          315.    Additionally, HIPPA requires that Defendants:

10               (a) Implement technical policies and procedures for electronic information systems

11               that maintain electronic protected health information to allow access only to those

12               persons or software programs that have been granted access rights, see 45 CFR §

13               164.312(a)(1);

14               (b) Implement policies and procedures to prevent, detect, contain, and correct security

15               violations, see 45 CFR § 164.306(a)(1);

16               (c) Protect against any reasonably anticipated threats or hazards to the security or

17               integrity of electronic protected health information, see 45 CFR § 164.306(a)(2);

18               (d) Protect against reasonably anticipated uses or disclosures of electronic protected

19               health information that are not permitted under the privacy rules regarding individually

20               identifiable health information, see 45 CFR § 164.306(a)(3);

21               (e) Ensure compliance with the HIPAA security standard rules by its workforce, see

---

[9] Elizabeth Weise, *Anthem fined $1.7 million in 2010 breach*, USA TODAY (Feb. 5, 2015, 6:13 PM), http://www.usatoday.com/story/tech/2015/02/05/anthem-health-care-computer-security-breach-fine-17-million/22931345.

[10] 45 C.F.R. § 164.530(c)(1) (2009).

[11] 45 C.F.R. § 164.404 (2009); 45 C.F.R. § 164.402 (2009).

45 CFR § 164.306(a)(4); and

(f) Effectively train all members of its workforce on the policies and procedures with respect to protected health information as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of protected health information in violation of 45 § CFR 164.530(b).

316.    Defendants are also entities covered by Gramm-Leach-Bliley, 15 U.S.C. § 6801, et. seq. Thus, each Defendant had an "affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801.

317.    Defendants are prohibited by the Federal Trade Commission Act (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission has found that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the Federal Trade Commission Act.[12]

318.    As described below, Defendants are also required by various state laws and regulations to protect individuals' Personal Information.

319.    In addition to their obligations under federal and state laws, Defendants owed a duty to Affected Individuals, who entrusted them with sensitive Personal Information, to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Personal Information in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendants owed a duty to Affected Individuals to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer systems and networks, and the personnel responsible for them, adequately protected the Personal Information of the Affected Individuals.

320.    Defendants owed a duty to Affected Individuals, who entrusted them with sensitive

---

[12] See e.g., *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 243 (3d Cir. 2015).

1    Personal Information, to design, maintain, and test their computer systems to ensure that the Personal

2    Information in Defendants' possession was adequately secured and protected.

3         321.    Defendants owed a duty to Affected Individuals, who entrusted them with sensitive

4    Personal Information, to create and implement reasonable data security practices and procedures to

5    protect the Personal Information in their possession, including adequately training their employees and

6    others who accessed Personal Information within their computer systems on how to adequately protect

7    Personal Information.

8         322.    Defendants owed a duty to Affected Individuals, who entrusted them with sensitive

9    Personal Information, to implement processes that would detect a breach of their data security systems

10   in a timely manner.

11        323.    Defendants owed a duty to Affected Individuals, who entrusted them with sensitive

12   Personal Information, to act upon data security warnings and alerts in a timely fashion.

13        324.    Defendants owed a duty to Affected Individuals, who entrusted them with sensitive

14   Personal Information, to disclose if their computer systems and data security practices were inadequate

15   to safeguard individuals' Personal Information from theft because such an inadequacy would be a

16   material fact in the decision to purchase insurance or other health care services from Defendants, or to

17   entrust Personal Information with Defendants.

18        325.    Defendants owed a duty to Affected Individuals, who entrusted them with sensitive

19   Personal Information, to disclose in a timely and accurate manner when data breaches occurred.

20        326.    Defendants owed a duty of care to Affected Individuals because they were foreseeable

21   and probable victims of any inadequate data security practices. Anthem collected Affected

22   Individuals' Personal Information either directly or indirectly from Anthem Affiliates, Non-Anthem

23   BCBS, and/or BCBSA.  Anthem knew that a breach of its data systems would cause Affected

24   Individuals to incur damages. Anthem Affiliates and Non-Anthem BCBS collected their current and

25   former customers and members' Personal Information, and provided that information to Anthem.

26   Thus, Anthem Affiliates and Non-Anthem BCBS knew that a breach of Anthem's system would cause

27   those people to incur damages.

28

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

1

2
**D.     Defendants Were On Notice of Cyber Attack Threats, and the Inadequacy of Their
Data Security**

3          327.     Defendants knew or should have known that Anthem and Anthem Affiliates had

4     previous problems with their data security.

5          328.     In late 2009 and early 2010, over 600,000 customers of Wellpoint (Anthem's former

6     trade name) and Blue Cross of California had their personal information and protected healthcare

7     information compromised due to a data breach.[13] Customers' Personal Information had not been

8     password protected.[14]

9          329.     In 2013, the Department of Health and Human Services fined Anthem $1.7 million for

10    HIPAA violations. The HHS' Office for Civil Rights found that Anthem "had not enacted appropriate

11    administrative, technical, and physical safeguards for data as required by HIPAA."[15]

12         330.     Also in 2013, the OIG conducted an audit of Wellpoint's information system pursuant

13    to the Federal BCBSA Contract.  In September 10, 2013, the OIG issued a report titled Audit of

14    Information System General and Applications Controls at Wellpoint, Inc.  The purpose of the audit

15    was to examine the "information systems used to process BCBSA's [insurance claims], as well as the

16    various business processes and IT systems used to support these applications."

17         331.     One of the tests OIG routinely conducts is a configuration compliance audit, which is

18    the process of routinely comparing the actual security configuration of computer servers to an

19    approved baseline configuration.  In its audit report, OIG noted that "[f]ailure to implement a thorough

20    configuration compliance auditing program increases the risk that insecurely configured servers

21    remain undetected, creating a potential gateway for malicious virus and hacking activity that could

22    lead to data breaches."  Despite the importance of ensuring the sufficiency of its configuration

23    compliance auditing program, Wellpoint frustrated OIG's efforts to perform this test, claiming that

24
─────────────────

25
[13] Settlement Agreement, *Blue Cross of California Website Security Cases,* Case No. JCCP 4647
(Apr. 18, 2011 Cal. Super. Ct.),
https://anthembluecrosssecuritysettlement.com/SettlementAgreement.pdf.

26
[14] *Id.*

27
[15] Rachel Landen and Joseph Conn, *WellPoint to pay $1.7 million HIPAA penalty*, MODERN
HEALTHCARE (July 11, 2013),

28
http://www.modernhealthcare.com/article/20130711/NEWS/307119954 (last visited Oct. 19, 2015).

1    company policy prohibited external entities such as OIG from accessing Wellpoint's network.  As a

2    result, the Federal BCBSA Plan "was unable to provide satisfactory evidence to confirm that it had a

3    program in place to routinely monitor the configuration of its servers."  After the Anthem Data

4    Breach, Anthem again refused to submit itself to standard tests for determining the vulnerability of its

5    computer systems, again citing "corporate policy."

6          332.   Despite Wellpoint's efforts to frustrate the OIG audit, OIG was able to determine that

7    Wellpoint's information systems were deficient in at least the following ways: (i) weaknesses in

8    privileged user monitoring, (ii) no implementation of controls to prevent rogue devices from accessing

9    the network, (iii) not subjecting all servers to routine vulnerability scans, and (iv) Wellpoint's

10   mainframe password settings were not in compliance with its own standards.  OIG offered numerous

11   recommendations for how Wellpoint could improve its data security procedures.  On information and

12   belief, Wellpoint failed to implement all or many of OIG's recommendations.

13         333.   Defendants were also on notice that healthcare companies were targets for cyberattacks.

14   Indeed, Anthem publicly admitted that Anthem itself is subject to several hundred credible hacking

15   threats per month.

16         334.   Defendants were on notice that the FBI was concerned about healthcare company data

17   security. In August 2014, after a cyber-attack on Community Health Systems, Inc., the FBI warned

18   companies within the healthcare industry that hackers were targeting them.[16] The warning stated that

19   "[t]he FBI has observed malicious actors targeting healthcare related systems, perhaps for the purpose

20   of obtaining Protected Healthcare Information (PHI) and/or Personally Identifiable Information (PII)."

21         335.   Defendants were on notice that the federal government was concerned about healthcare

22   company data encryption and Anthem knew a large portion of the Anthem Database was not

23   encrypted.  The United States Department of Health and Human Services' Office for Civil Rights

24   urges health care providers and insurers to encrypt data containing sensitive personal information. In

25   April 2014, the Department fined Concentra Health Services and QCA Health Plan Inc. of Arkansas

26

27         [16] Jim Finkle, *FBI warns healthcare firms that they are targeted by hackers,* REUTERS (Aug.
     2014, 4:32 PM), http://www.reuters.com/article/2014/08/20/us-cybersecurity-healthcare-fbi-
28   idUSKBN0GK24U20140820.

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

approximately two million dollars for failing to encrypt laptops containing sensitive personal information. In announcing the fines, Susan McAndrew, the DHHS' Office of Human Rights' deputy director of health information privacy, stated "[our] message to these organizations is simple: encryption is your best defense against these incidents."

336. Defendants were also on notice of the threat of cyberattacks due to prior, high-profile security breaches at retail chains such as Home Depot, Target, and Neiman Marcus, as well as the hundreds of credible cyber threats that Anthem received on a monthly basis.

**E.     Anthem Allowed a Massive Data Breach**

337. In February, 2015, after it began to receive media inquiries, Anthem announced to the general public that cyberattackers had breached the Anthem Database, and accessed Personal Information about individuals in the Anthem Database.[17]

338. Anthem later announced that the hackers had accessed Personal Information for 78.8 million people.[18]

339. Anthem admits that the information accessed about Affected Individuals included names, dates of birth, Social Security numbers, health care ID numbers, home addresses, email addresses, and employment information, including income data.[19]

340. On information and belief, medical and health care information was also stolen from Affected Individuals during or as a result of the Anthem Data Breach.  On information and belief, the data that Anthem admits was compromised, including Social Security Numbers and dates of birth, can be used to access medical and health care information through Anthem, Anthem affiliates, and non-Anthem BCBS' online portals.  News reports corroborate that medical data was stolen from Affected Individuals during the Anthem Data Breach.

341. On or about January 29, 2015, after Anthem realized the extent of the breach, Anthem

---

[17] https://www.anthemfacts.com/ (last visited Oct. 19, 2015)

[18] Anna Mathews, *Anthem: Hacked Database Included 78.8 Million People*, WALL STREET JOURNAL (Feb. 24, 2015, 2:49 PM), http://www.wsj.com/articles/anthem-hacked-database-included-78-8-million-people-1424807364.

[19] https://www.anthemfacts.com/ (last visited Oct. 19, 2015).

1   retained a third-party cybersecurity company, Mandiant, to assist in assessing and responding to the

2   Anthem Data Breach and to assist in developing security protocols for Anthem. Mandiant created an

3   Intrusion Investigation Report, which it provided to Anthem in July 2015 ("Mandiant Report").

4       342.    The Mandiant Report demonstrates that Anthem and Anthem Affiliates' computer

5   systems and data security practices were grossly inadequate to secure the highly sensitive and valuable

6   Personal Information that had been entrusted to them. Anthem and Anthem Affiliates' failures were

7   widespread.

8       343.    First, Anthem and Anthem Affiliates failed to implement basic industry-accepted data

9   security tools to prevent cyberattackers from accessing the Anthem Database:  (i) Anthem and

10  Anthem Affiliates did not implement a two-factor authentication procedure for users to enter their

11  computer system, instead allowing users to access the Anthem Database from external computers

12  using only a single password.  (Conversely, in a two-factor authentication system, a user first enters

13  his or her password, and then the user is sent a one-time second password (the second factor) to a

14  personal device. The user receives a different second password every time that the user signs on to his

15  or her account.)  Two-factor authentication has been a security best practice for remotely accessible

16  systems for decades, and its importance is widely known by Information Technology professionals.

17  (ii) Anthem and Anthem Affiliates did not require users to change their passwords on a regular basis,

18  and allowed some users to keep the same password for years. (iii) Anthem and Anthem Affiliates

19  allowed Anthem employees to access Personal Information even when those users did not need to

20  access that information for job-related purposes. █████████████████████████████

21  █████████████████████████████████████████████

22  ██████████████  If Anthem had implemented any of these basic data security tools, the

23  cyberattackers would not have been able to access Affected Individuals' Personal Information, or

24  would not have been able to access so much of Affected Individuals' Personal Information.

25      344.    Second, Anthem and Anthem Affiliates failed to implement basic policies and

26  procedures that could have prevented the attack.  Anthem failed to train employees to identify, report,

27  and delete "phishing" email, ████████████████████████████████████████

28  ████████████████████████████████████████

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

1      345.    Third, Anthem and Anthem Affiliates failed to implement monitoring and alerting that

2 would have alerted them to the cyberattack during the many months and years that the attack was

3 ongoing. Anthem and Anthem Affiliates failed to even implement simple Information Technology

4 maintenance systems that would have discovered the cyberattackers. Even if the cyberattackers gained

5 access to the Anthem Database, Anthem could have and should have, but failed to, discover the data

6 breach before any data was exfiltrated.

7      346.    Fourth, even when Anthem and Anthem Affiliates did implement monitoring and

8 alerting systems, on information and belief, they simply ignored the alerts. If Anthem and Anthem

9 Affiliates had taken proper steps once systems alerts were triggered, they could have averted the

10 Anthem Data Breach.

11     347.    Fifth, Anthem and Anthem Affiliates failed to encrypt the sensitive Personal

12 Information within the Anthem Database. If Anthem and Anthem Affiliates had encrypted the

13 sensitive Personal Information within the Anthem Database, then even if the cyberattackers accessed

14 the Anthem Database, the cyberattackers would have been unable to use the Affected Individuals'

15 Personal Information.  Anthem took none of these basic security steps to protect Affected Individuals'

16 sensitive Personal Information.



17     348.

20                                            If it had, it could have taken steps to stop the eventual Anthem

21 Data Breach.

22     349.

26     350.

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

. These are all common security best practices, especially in high-security environments.

351.

.

352.

. If Anthem and Anthem Affiliates had investigated at this point, they could have prevented the cyberattackers from accessing Affected Individuals' Personal Information.

353.

If Anthem and Anthem Affiliates had investigated at this point, they could have prevented the cyberattackers from accessing Affected Individuals' Personal Information.

354.



If Anthem and Anthem Affiliates had investigated at this point, they could have prevented the cyberattackers from accessing Affected Individuals' Personal Information.

355.

356.

If Anthem had investigated at this point, they could have prevented the cyberattackers from accessing Affected Individuals' Personal Information.

357.

358.

359.

107

360.    According to the Mandiant Report, in December 2014 and January 2015, the cyberattackers extracted massive amounts of data, including Personal Information, from the Anthem Database.

361.

362.

363.

364.

365.    According to the Mandiant Report, on or around January 27, 2015, the cyberattackers'

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

1   unauthorized access and data extraction was noticed by an Anthem or Anthem Affiliate system

2   administrator, who saw that someone else was working remotely from the administrator's user

3   account.

4          366.    According to the Mandiant Report, after they discovered the attacker on January 27,

5   2015, Anthem and Anthem Affiliates implemented containment measures, and the cyberattack ceased

6   by January 31, 2015.

7          367.    According to the Mandiant Report, after discovering the Anthem Data Breach, Anthem

8   and Anthem Affiliates implemented additional containment measures, including resetting passwords

9   of compromised accounts, implementing a multi-factor authentication requirement, ██████████

10  ████████████████████████████████████████████████████████

11  ████████████████████████████████

12         368.    Anthem and Anthem Affiliates' containment measures, and the speed with which many

13  of them were implemented after the Anthem Data Breach was discovered, demonstrate that they

14  already understood proper data security practices, but had chosen not to implement them.

15         369.     Anthem and Anthem Affiliates' containment measures also demonstrate further

16  inadequate aspects of their computer systems and data security practices, as these are all measures that

17  should have been in place before the Anthem Data Breach.  First, prior to the Anthem Data Breach,

18  Anthem and Anthem Affiliates did not implement reasonable methods to protect user passwords, such

19  as a routine password change policy (under which users would be required to change their passwords

20  within a certain time period, e.g., 90 days) ████████████████████████

21  ██████████████████████████████████This is further

22  evidence that that Anthem and Anthem Affiliates had no routine password change policy). ████████

23  ██████████████████████████████████████

24  ██████████ Third, prior to the Anthem Data Breach, Anthem and Anthem Affiliates did not

25  enable all logging functions.

26         370.    The Mandiant Report identified yet another way in which Anthem and Affiliates failed

27  to take reasonable measures to secure the Personal Information in their possession.  Attackers

28  exploited the account of a user with access to Personal Information who did not have a job function

109

1  that required him or her to access Personal Information, demonstrating that Anthem and Anthem

2  Affiliates lacked proper internal access controls for Personal Information.

3       371.    Anthem and Anthem Affiliates also lacked reasonable encryption policies. Anthem's

4  Information Technology Executive, Stacia Grosso, publicly admitted that a large portion of the

5  Anthem Database was not encrypted. Instead, Anthem and Anthem Affiliates only used encryption

6  when data was being moved around within their information environment and for such things as

7  mobile phones and laptops. Anthem also promised after the Anthem Data Breach that it would

8  investigate encryption best practices and determine whether it should encrypt the Anthem Database.  If

9  Anthem had encrypted the data in the Anthem Database, then the cyberattackers would have been

10  unable to use Affected Individuals' Personal Information.

11       372.    On information and belief, Anthem and Anthem Affiliates not only failed to generally

12  encrypt the Anthem Database, they failed to implement specific encryption for sensitive Personal

13  Information within the Anthem Database. Standard industry practice is to encrypt sensitive Personal

14  Information, such as Social Security Numbers. If Anthem had encrypted the sensitive Personal

15  Information within the Anthem Database, even if cyberattackers accessed the Anthem Database, the

16  cyberattackers would have been unable to use the Affected Individuals' Personal Information.

17       373.    The cyberattackers stole Personal Information for approximately 79 million Affected

18  Individuals. On information and belief, Anthem and Anthem Affiliates have still not implemented

19  necessary computer systems and date security practices to ensure that Affected Individuals' Personal

20  Information will not be accessed or stolen by additional cyberattackers.  The remediation measures

21  implemented by Anthem and Anthem Affiliates provided only an immediate stop to the present attack

22  and did not indicate that Anthem and Anthem Affiliates had made any changes to the policies,

23  procedures, management methods, or practices which allowed these attacks to occur in the first place.

24  Each day, new individuals' Personal Information is entered into the Anthem Database, and this

25  Personal Information is at risk until Anthem and Anthem Affiliates improve their data security.

26  Anthem and Anthem Affiliates must put into place a security management framework, as defined by

27  numerous government standards, and conduct audits by third-party independent auditors on a regular

28  basis, to ensure that it keeps abreast of future threats to the Personal Information in its care.

**F.      Anthem's Data Breach Was a Direct Result of Anthem's Inadequate Data Security**

374.    Affected Individuals' Personal Information was compromised in the Anthem Data Breach because Defendants violated their promises and legal obligations to maintain the security of the highly sensitive Personal Information that Affected Individuals entrusted to Defendants.

375.    Despite their promises and legal obligations, Defendants did not provide reasonable or adequate security for Affected Individuals' Personal Information. As the creator and main operator of the Anthem Database, Anthem is responsible for the inadequate and unreasonable computer systems and data security practices as well as the unnecessarily large amount of unneeded data contained in that database.

376.    Despite their promises and legal obligations, Anthem Affiliates, in conjunction with Anthem, operated and maintained the deficient Anthem computer systems and data security practices. Anthem Affiliates placed the Personal Information that they had been entrusted with in the Anthem Database. Instead of having independent Privacy Offices, Anthem Affiliates worked with Anthem's Privacy Office to create their data security practices. Anthem Affiliates continued to rely on the Anthem Database even though there were multiple public indications and warnings that Anthem's computer systems and data security practices were inadequate.

377.    Despite their promises and legal obligations, BCBSA and non-Anthem BCBS allowed the Personal Information that their current and former customers and members had entrusted with them to be placed in to the Anthem Database even though there were multiple public indications and warnings that the Anthem and Anthem Affiliates' computer systems and data security practices were inadequate.

378.    Defendants breached their duties to Affected Individuals by the conduct alleged in the Complaint.

379.    Defendants breached their duty to Affected Individuals to design, maintain, and test their computer systems to ensure that Affected Individuals' Personal Information was adequately secured in many ways, including, but not limited to:

a) failing to create a two-factor-authentication system for users;

b) failing to encrypt the Anthem Database or the sensitive Personal Information within

the Anthem Database;

██████████████████████████████

d) failing to require users to create new passwords within a limited time period, such as 90 days;

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████

f) failing to restrict access to sensitive Personal Information within the Anthem Database to users who had a job-related reason to be accessing that particular Personal Information;

g) failing to turn on all of the logging functions on all their computer systems;

h) failing to aggregate and monitor logging functions;

████████████████████████████████████████████████████████

████████████

████████████████████████████████████████████████████████;

k) failing to implement internal proper access controls for Personal Information, allowing users to access Personal Information even though they did not have job functions that required them to access Personal Information ; and

l) failing to adequately update their computer systems even though those systems had been demonstrated to be inadequate by 2014 because of previous security breaches.

380.   Defendants breached their duty to Affected Individuals to create and implement reasonable data security practices and procedures to protect the Personal Information in their possession in many ways, including, but not limited to:

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

a) failing to respond to all system alerts;

b) continuing to use social security numbers (SSNs) to identify members even though other health insurance companies switched to unique member identification numbers (MINS) as early as 2003;

c) failing to adequately train all users of the Anthem Database on data security practices;

d) needlessly maintaining information regarding former customers (as far back to 2004) on their databases and servers.[20]  Had Defendants simply put inactive members' information on backup servers or tapes, the scope of the breach would have been smaller;

e) failing to adequately train users of Anthem and Affiliates' computer system on how to identify spear-fishing e-mail;

f) failing to provide a framework for escalation of suspicious events; and

g) failing to adequately update their data security practices and procedures even though those practices and procedures had been demonstrated to be inadequate by 2014 because of previous security breaches.

381.    Defendants breached their duty to Affected Individuals to implement processes that would detect a breach of their data security systems in a timely manner in many ways, including, but not limited to:

(a) failing to  aggregate, filter, and report on log and alert information in a unified manner,

(b) failing to turn on all of the "logging" function on their computer systems,

███████████████████████

---

[20] *See, e.g.*, Anthem Data Breach, Cal. Dept. of Ins., http://www.insurance.ca.gov/0400-news/0100-press-releases/anthemcyberattack.cfm (last visited Oct. 19, 2015).

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

(f) failing to implement a reasonable capacity monitoring and alerting system

and

(g) failing to implement basic Information Technology monitoring systems that would

have detected the cyberattackers' activities, such as monitoring data usage on the

system, monitoring data extraction, or performance monitoring.

382.    Defendants breached their duty to Affected Individuals to act upon data security

warnings and alerts in a timely fashion by:

(a) failing to respond to multiple alerts of cyberattacker activity, including a month-long

alert;

(b) failing to aggregate, filter, and report on log and alert information in a unified

manner,

(c) failing to periodically review alert information; and

(d) failing to periodically review log information.

383.    Defendants breached their duty to Affected Individuals to disclose the material fact that

Anthem and Anthem Affiliates' computer systems and data security practices were inadequate to

safeguard Affected Individuals' Personal Information.  Had Defendants disclosed to Affected

Individuals that their computer systems and data security practices were inadequate to safeguard

Affected Individuals' highly sensitive Personal Information, Affected Individuals would not have

entrusted their Personal Information to Defendants and would not have enrolled in their insurance or

health care plans.

384.    Anthem and Anthem Affiliates breached their duty to Affected Individuals to disclose

in a timely and accurate manner that the Anthem Data breach had occurred. Anthem and Anthem

114

Affiliates failed to notify potentially affected customers for several weeks, and in some cases months, after they claim they discovered the breach. Indeed, several states joined together to write to Anthem to urge it to notify Affected Individuals in a more timely manner.[21] As a result, the Affected Individuals were not notified of the Anthem Data Breach until in or about March 2015. Additionally, further discovery will be needed to determine whether Anthem and Anthem Affiliates discovered the breach earlier.[22]

385.   Anthem and Anthem Affiliates' failure to notify Affected Individuals of the Anthem Data Breach in a timely and accurate manner allowed the cyberattackers to begin to use Affected Individuals' Personal Information before Affected Individuals had an opportunity to take steps to protect themselves. For example, many Affected Individuals had fraudulent 2015 tax returns filed in their names. While Anthem and Anthem Affiliates became aware of the Anthem Data Breach near the beginning of the federal tax filing period, they failed to notify the Affected Individuals until near the end of the federal tax filing period. This deprived Affected Individuals of the opportunity to take steps to avoid fraudulent tax filings.

## G.   Defendants Breached Their Contracts To Protect Personal Information

### 1.   Anthem's Breach of Specific Contract Promises

386.   The Anthem Data Breach was the direct result of, and itself constituted, a breach of Anthem and its Affiliates' contractual promises and commitments regarding the security of Plaintiffs' and Affected Individuals' Personal Information.

387.   As set forth above at ¶¶164-239, all of the contracts between Plaintiffs and Affected Individuals and Anthem and its Affiliates, as well as Anthem and its Affiliates' Group and Administrative Services Agreements for which Plaintiffs and Affected Individuals are intended

---

[21] Jim Finkle, *U.S. states say Anthem too slow to inform customers of breach*, REUTERS (Feb. 11, 2015, 11:18 AM), http://www.reuters.com/article/2015/02/11/us-anthem-cybersecurity-states-idUSKBN0LE2QP20150211.

[22] There are reports that Anthem's website dedicated to the security breach – www.anthemfacts.com – was registered on December 13, 2014. *See* e.g., Dan Goodin, *String of big data breaches continues with hack on health insurer Anthem,* ARSTECHNICA (Feb. 5, 2015, 11:01 AM), http://arstechnica.com/security/2015/02/string-of-big-data-breaches-continues-with-hack-on-health-insurer-anthem. / (accessed Feb. 8, 2015).

beneficiaries, included as contract terms the commitments and promises with respect to maintaining and protecting the confidentiality of personal information set forth by Anthem and its Affiliates' in their then-current privacy policies, including but not limited to Anthem's Personal Information (Including Social Security Number) Privacy Protection Policy and the commitments and guarantees as set forth in Anthem's Privacy Notices.

388.    The Anthem Data Breach revealed that Anthem and its Affiliates had breached their contractual promises to Plaintiffs and Affected Individuals, as set forth in those policies.

389.    Anthem and its Affiliates breached their specific commitment in the Personal Information (Including Social Security Number) Privacy Protection Policy and Privacy Notices to "protect the confidentiality" of Members' personal information acquired and compiled by Anthem in the course of doing business, as set forth in ¶¶337-385.

390.    Anthem and its Affiliates breached their specific commitment in the Personal Information (Including Social Security Number) Privacy Protection Policy to impose "standards" to: 1) "guard the confidentiality of Social Security numbers and other personal information;" 2) "prohibit the unlawful disclosure of Social Security numbers;" and 3) "limit access to Social Security numbers" by failing to impose such standards, including industry standards for protecting and limiting access to this information, as set forth in ¶¶337-385.

391.    Anthem and its Affiliates breached their specific commitment in the Personal Information (Including Social Security Number) Privacy Protection Policy that they would not "use or share Social Security numbers or personal information with anyone outside the company except when permitted or required by federal and state law." The Anthem Data Breach resulted from the affirmative actions of Anthem's employees, as set forth in ¶337-385, resulting in Plaintiff and Affected Individuals' Personal information, including Social Security Numbers being shared with unauthorized third parties.

392.    Anthem and its Affiliates breached the following specific commitment in the Personal Information (Including Social Security Number) Privacy Protection Policy by allowing Anthem and Anthem Affiliate Associates to access Social Security numbers or other personal information when not required by their job duties, and failing to impose minimally necessary policies and practices to ensure

116

that employees/associates would only access or use Social Security numbers or personal information to complete a specific task, as set forth in ¶¶337-385:

Anthem Blue Cross and Blue Shield Associates must only access Social Security numbers or personal information as required by their job duties. Anthem Blue Cross and Blue Shield has in place a minimum necessary policy which states that associates may only access, use or disclose Social Security numbers or personal information to complete a specific task and as allowed by law.

393.    Anthem's commitment to limit access to personal information was likewise set forth in Anthem's and Affiliates' Privacy Notices: "We require our employees to protect PHI through written policies and procedures. These policies limit access to PHI to only those employees who need the data to do their job." Anthem and its Affiliates did not limit access to Plaintiff and Affected Individuals' information maintained in the Anthem Data Base to only those individuals who needed the data to do their job.

394.    Anthem and its Affiliates breached the following specific commitment in the Personal Information (Including Social Security Number) Privacy Protection Policy to "safeguard[] Social Security numbers and other personal information by having physical, technical, and administrative safeguards in place" by failing, prior to the Anthem Data Breach, to have reasonable technical or administrative safeguards in place, resulting in the Anthem Data Breach.

395.    Anthem's and its Affiliates' commitment to use technical and procedural safeguards was likewise set forth in Anthem's Privacy Notices, which were also breached by the failure to implement electronic and procedural means to protect Member's information: "We keep your oral, written and electronic PHI safe using physical, electronic, and procedural means." Anthem and its Affiliates breached this promise by failing to use reasonable technical and procedural safeguards, including those recognized as industry standard.

396.    Anthem and its Affiliates breached their Privacy Policies by failing to comply with their stated practices for implementing the HIPAA Privacy Rule, 45 C.F.R. Parts 160 and 164(A), (E), with respect to Members' personal information as set forth in the Privacy Notices.

397.    Anthem and its Affiliates breached their Privacy Policies by failing to comply with their stated practices for implementing the HIPAA Security Rule, 45 C.F.R. Parts 160 and 164(A), (C),

117

with respect to Members' personal information as set forth in the Privacy Notices.

398. Anthem and its Affiliates breached their specific commitment set forth in their Privacy Notices to "take reasonable safety measures to protect the PI we have about you" by failing to take such reasonable safety measures, as set forth in ¶¶337-385.

399. Anthem and its Affiliates breached their specific commitment set forth in their Privacy Notices that the mechanisms by which they would protect the confidentiality of Members' Personal Information would use "safeguards [that] follow federal and state laws," by failing to use safeguards that complied with the HIPAA Privacy and Security rules and other laws, as set forth in ¶¶337-385.

400. Anthem also violated the Gramm-Leach-Bliley Act by failing to protect the security and confidentiality of those customers' "nonpublic personal information." 15 U.S.C. § 6801.

401. Anthem also violated the Federal Trade Commission Act by engaging in the "unfair practice" of failing to maintain reasonable and appropriate data security for consumers' sensitive Personal Information.

**2. The Non-Anthem BCBS Defendants' Breach of Their Specific Contract Promises**

402. As set forth above in ¶¶256-296, each of the Non-Anthem Defendants expressly agreed to protect the confidentiality of its members' Personal Information, to require third parties to whom it provided its members' Personal Information to protect its confidentiality, and to follow its contractual obligations when their Members used the BlueCard Program.

403. All of the Non-Anthem Defendants provided Anthem with Personal Information regarding their members who are Plaintiffs and Affected Individuals when those members used the BlueCard Program. That Personal Information was maintained by Anthem in an unprotected Database, and was disclosed in the Data Breach as a result of the lack of data security.

404. Each of the Non-Anthem Defendants therefore breached its contractual obligations (as set forth in ¶¶256-296) to Plaintiffs and Affected Individuals to maintain the confidentiality of their Personal Information, and to not permit the unauthorized disclosure of that information to third parties, contractual obligations that the Non-Anthem Defendants extended to the BlueCard program, when Plaintiffs' and Affected Individuals Personal Information was disclosed in the Anthem Data Breach.

405. Each of the Non-Anthem Defendants also breached its contractual obligations (as set

118

forth in ¶¶256-296) to Plaintiffs and Affected Individuals by providing Plaintiffs and Affected Individuals' Personal Information to Anthem and failing to take reasonable measures to determine or ensure that Anthem, with which they conducted business and coordinated on the processing of insurance claims as part of the BlueCard program, had sufficient data security to protect the confidentiality of the Non-Anthem Defendants' Members' Personal Information.

### 3. BCBSA and Anthem and Non-Anthem Defendants' Breach of the Federal Contract

406.    As set forth above, BCBSA, acting as agent for Anthem and its BCBS Affiliates and the Non-Anthem BCBS Defendants, entered into the Federal BCBSA Contract with OPM that included as contract terms specific requirements to maintain the confidentiality of Enrollees' Personal Information.

407.    BCBSA provided Anthem with the confidential Personal Information regarding all of the federal Plaintiffs and Affected Individuals who enrolled in the Federal BCBSA Plan that was stored in the unprotected Anthem Data Base, and was disclosed in the Anthem Data Breach as a result of the lack of data security.

408.    BCBSA, acting as agent for Anthem and its BCBS Affiliates and the Non-Anthem BCBS Defendants, along with Anthem, Anthem's BCBS Affiliates, and the Non-Anthem BCBS, all breached their contractual obligations to Plaintiffs and Affected Individuals (as set forth in ¶¶297-310) by failing to maintain the confidentiality of Plaintiffs' Personal Information, including by:

- Failing to limit the uses of Personal Information to those specifically allowed
- Failing to limit access to Personal Information to those on a "need-to-know" basis;
- Failing to allocate the resources necessary to maintaining the confidentiality of this information;
- Failing to comply with applicable federal laws regarding data security and privacy including HIPAA
- Failing to conduct audits or otherwise employ best practices to prevent or halt the unauthorized access to Personal Information
- Failing to allow OIG to perform configuration compliance audits
- Failing to use technical and and procedural safeguards adequate to protect Personal Information.

### H.   Affected Individuals Were Grievously Harmed By the Anthem Data Breach

409.    The FTC defines identity theft as "a fraud committed or attempted using the identifying

<div align="center">119</div>

1 information of another person without authority."[23]   The FTC describes "identifying information" as

2 "any name or number that may be used, alone or in conjunction with any other information, to identify

3 a specific person," including, among other things, "[n]ame, Social Security number, date of birth,

4 official State or government issued driver's license or identification number, alien registration number,

5 government passport number, employer or taxpayer identification number."[24]

6       410.   Identity theft victims must spend countless hours and large amounts of money repairing

7 the impact to their credit.[25]

8       411.   With access to an individual's Personal Information, criminals can do more than just

9 empty a victim's bank account—they can also commit various types of fraud, including: obtaining a

10 driver's license or official identification card in the victim's name but with the thief's picture; using

11 the victim's name and Social Security Number to obtain government benefits; or, filing a fraudulent

12 tax return using the victim's information. In addition, identity thieves may obtain a job using the

13 victim's Social Security Number, rent a house or receive medical services in the victim's name, and

14 may even give the victim's personal information to police during an arrest resulting in an arrest

15 warrant being issued in the victim's name. Further, loss of private and personal health information can

16 expose the victim to loss of reputation, loss of employment, blackmail and other negative effects.

17       412.   Personal Information is such a valuable commodity to identity thieves that once the

18 information has been compromised, criminals often trade the information on the "cyber black-market"

19 for years.

20       413.   A study by Experian found that the "average total cost" of medical identity theft is

21 "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to

22 pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[26] Almost half

23

---

24     [23] 17 C.F.R. § 248.201 (2013).

25     [24] *Id.*

26     [25] *Guide for Assisting Identity Theft Victims*, Federal Trade Commission, 4 (September 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf  (last visited Oct. 19, 2015)

27

28     [26] *See* Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (Mar. 3, 2010, 5:00 AM), http://news.cnet.com/8301-27080_3-10460902-245.html.

1    of medical identity theft victims lose their healthcare coverage as a result of the incident, while nearly

2    one-third saw their insurance premiums rise, and forty percent were never able to resolve their identity

3    theft at all.[27]

4         414.    Indeed, data breaches and identity theft have a crippling effect on individuals and

5    detrimentally impact the entire economy as a whole.

6         415.    The injuries suffered by the Affected Individuals are a direct and proximate result of

7    the Anthem Data Breach and include but are not limited to:

8              a) theft of their valuable personal and financial information;

9              b) loss or delay of tax refunds as a result of fraudulently filed tax returns, including but

10             not limited to the deprivation of the time value of their money due to delay in receiving

11             refunds and the requirement that in the future they file paper returns or use special PIN

12             codes, thus insuring that future tax refunds will also be delayed;

13             c) costs associated with the detection and prevention of identity theft and unauthorized

14             use of their Personal Information and financial, business, banking, and other accounts;

15             d) costs associated with time spent and the loss of productivity from taking time to

16             address and attempt to ameliorate, mitigate, and deal with the actual and future

17             consequences of the Anthem Data Breach, including finding fraudulent charges,

18             cancelling credit cards, purchasing credit monitoring and identity theft protection

19             services, placing fraud alerts on their accounts, the imposition of withdrawal and

20             purchase limits on compromised accounts, and the stress, nuisance, and annoyance of

21             dealing with all issues resulting from the Anthem Data Breach, including additional

22             phishing emails and phone scams;

23             e) the imminent and certain impending injury flowing from fraud and identify theft

24             posed by their Personal Information being placed in the hands of hackers;

25             f)  damages to and diminution in value of their Personal Information entrusted to

26             Defendants for the sole purpose of obtaining health insurance or health care services

27

28   [27] *Id.*

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

from Anthem, Anthem Affiliates, BCBSA and Non-Anthem BCBS with the mutual understanding that Defendants would safeguard Affected Individuals' data against theft and not allow access to or misuse of their data by third parties;

g) money paid to Defendants for health insurance or health care services during the period of the Anthem Data Breach because Plaintiffs and Class Members would not have obtained health insurance or health care services from Defendants had Defendants disclosed that they lacked adequate systems and procedures to reasonably safeguard customers' Personal Information.

h) loss of the benefit of the bargain with Defendants to provide adequate and reasonable data security – i.e. the difference in value between what Plaintiffs should have received from Defendants when they enrolled in and/or purchased insurance from Defendants that Defendants represented, contractually and otherwise, would be protected by reasonable data security, and Defendants' partial, defective, and deficient performance by failing to provide reasonable and adequate data security and failing to protect Plaintiffs' Personal Information from theft.

i) unjust profits retained by Defendants for health insurance or health care services purchased, in that a portion of the price for insurance paid by Affected Individuals to Defendants was intended for the Defendants to take reasonable and adequate security measures to protect Affected Individuals' Personal Information, which Defendants failed to do;

j) damages caused by Defendants' failure to notify Affected Individuals about the Anthem Data Breach in a timely and accurate fashion; and

k) continued risk to Affected Individuals' Personal Information, which remains in the possession of Defendants and which is subject to further breaches so long as Defendants fail to undertake appropriate and adequate measures to protect the Personal Information that Affected Individuals entrusted to Defendants.

416.   Anthem itself acknowledges the harm caused by the Anthem Data Breach because it offered Affected Individuals twenty-four months of identity theft repair and credit monitoring services.

122

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

Two years of identity theft repair and credit monitoring is woefully inadequate to protect Affected Individuals from a virtual lifetime of identity theft risk and does nothing to reimburse Plaintiffs and Class Members for the injuries they have already suffered.  Indeed, Plaintiffs and other Affected Individuals are continuing to experience fraud and identity theft over a year after the Anthem Data Breach.  Credit monitoring services do nothing to detect potential tax fraud, fraudulent business or payday loans, or many other forms of identity theft and fraud currently being experienced by Plaintiffs and other Affected Individuals.

417.    Anthem publicly stated that any identity theft repair or credit monitoring services potentially offered beyond twenty-four months will be embedded in Anthem's pricing.  To the extent Anthem now offers credit monitoring to its members, they are paying for that credit monitoring as part of their premiums, and they lose that protection when they choose a different insurance or health benefits company.  Anthem also stated it will not reimburse individuals that purchase identity theft repair or credit monitoring services.[28]

## V.    CLASS ALLEGATIONS

### A.    Statewide Classes

418.    Pursuant to Fed. R. Civ. P. 23(b)(1), (b)(2), (b)(3), and (c)(4), Plaintiffs assert common law claims for negligence (Count I), negligence per se (Count II), breach of contract (Counts III and IV), breach of the implied covenant of good faith and fair dealing (Count V), third-party beneficiary breach of contract for the Federal Employee Class (Count VI),  negligent misrepresentation (Count VII), unjust enrichment (Count VIII), as well as statutory claims under state consumer protection statutes (Count IX), state data breach notification statutes (Count X), state unfair insurance practice statutes (Count XI), state insurance privacy statutes (Count XII), and state medical privacy statutes (Count XIII), on behalf of separate statewide classes for each of the 50 states, the District of Columbia, Puerto Rico, and the Virgin Islands, defined as follows:

> **Statewide [name of State] Class:** All residents of [name of State] whose Personal Information was maintained on the Anthem Database and was compromised as a result of the breach announced by Anthem on or around February 5, 2015.

---

[28] https://www.anthemfacts.com/faq

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

419. Excluded from the Classes are Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Classes is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

**B.    Federal Employee Class**

420. Pursuant to Fed. R. Civ. P. 23(b)(1), (b)(2), (b)(3), and (c)(4), Plaintiffs assert a breach of contract claim on behalf of a federal employee class, defined as follows:

> **Federal Employee Class:** All enrollees in the Federal Employee Health Benefits Plan whose Personal Information was maintained on the Anthem Database and was compromised as a result of the breach announced by Anthem on or around February 5, 2015.

421. Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

**C.    Certification of the Proposed Classes is Appropriate**

422. Each of the proposed Classes meets the requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

423. Numerosity: There are approximately 79 million individuals in all of the Classes combined. According to Defendants' records, there are thousands, if not millions, of individuals in each putative class, making joinder of each individual member impracticable. According to Defendants' records, at minimum, the number of Affected Individuals residing in each state (as well as the District of Columbia, Puerto Rico, and the Virgin Islands) is as follows: At least 33,419 Affected Individuals are residents of Alaska. At least 359,360 Affected Individuals are residents of Alabama. At least 190,174 Affected Individuals are residents of Arkansas. At least 418,640 Affected Individuals are residents of Arizona. At least 13,507,433 Affected Individuals are residents of California. At least 1,552,987 Affected Individuals are residents of Colorado. At least 1,716,436 Affected Individuals are residents of Connecticut. At least 102,796 Affected Individuals are residents of District of Columbia. At least 62,051 Affected Individuals are residents of Delaware. At least

124

1,428,349 Affected Individuals are residents of Florida. At least 3,726,249 Affected Individuals are residents of Georgia. At least 43,830 Affected Individuals are residents of Hawaii. At least 172,727 Affected Individuals are residents of Iowa. At least 100,686 Affected Individuals are residents of Idaho. At least 1,705,470 Affected Individuals are residents of Illinois. At least 4,558,354 Affected Individuals are residents of Indiana. At least 389,432 Affected Individuals are residents of Kansas. At least 2,305,612 Affected Individuals are residents of Kentucky. At least 277,022 Affected Individuals are residents of Louisiana. At least 967,604 Affected Individuals are residents of Massachusetts. At least 672,102 Affected Individuals are residents of Maryland. At least 531,717 Affected Individuals are residents of Maine. At least 636,075 Affected Individuals are residents of Michigan. At least 313,637 Affected Individuals are residents of Minnesota. At least 2,041,985 Affected Individuals are residents of Missouri. At least 164,216 Affected Individuals are residents of Mississippi. At least 48,217 Affected Individuals are residents of Montana. At least 775,606 Affected Individuals are residents of North Carolina. At least 27,012 Affected Individuals are residents of North Dakota. At least 104,795 Affected Individuals are residents of Nebraska. At least 667,866 Affected Individuals are residents of New Hampshire. At least 1,152,283 Affected Individuals are residents of New Jersey. At least 102,610 Affected Individuals are residents of New Mexico. At least 764,039 Affected Individuals are residents of Nevada. At least 4,656,207 Affected Individuals are residents of New York. At least 5,201,576 Affected Individuals are residents of Ohio. At least 244,312 Affected Individuals are residents of Oklahoma. At least 197,206 Affected Individuals are residents of Oregon. At least 751,931 Affected Individuals are residents of Pennsylvania. At least 15,682 Affected Individuals are residents of Puerto Rico. At least 79,599 Affected Individuals are residents of Rhode Island. At least 461,769 Affected Individuals are residents of South Carolina. At least 44,689 Affected Individuals are residents of South Dakota. At least 773,763 Affected Individuals are residents of Tennessee. At least 2,643,626 Affected Individuals are residents of Texas. At least 181,103 Affected Individuals are residents of Utah. At least 3,777,806 Affected Individuals are residents of Virginia. At least 3,660 Affected Individuals are residents of the Virgin Islands. At least 72,165 Affected Individuals are residents of Vermont. At least 445,932 Affected Individuals are residents of Washington. At least 1,744,732 Affected Individuals are residents of Wisconsin. At least

383,599 Affected Individuals are residents of West Virginia. At least 53,292 Affected Individuals are residents of Wyoming.

424.    Commonality and Predominance: There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include:

a)  Whether Defendants failed to adequately safeguard Plaintiffs' and the Classes' Personal Information;

b) Whether Defendants failed to protect Plaintiffs' and the Classes' Personal Information, as promised;

c) Whether Defendants' computer system systems and data security practices used to protect Plaintiffs' and the Classes' Personal Information violated HIPAA, federal, state and local laws, or Defendants' duties;

d) Whether Defendants engaged in unfair, unlawful, or deceptive practices by failing to safeguard Plaintiffs' and the Classes' Personal Information properly and/or as promised;

e) Whether Defendants violated the consumer protection statutes, data breach notification statutes, state unfair insurance practice statutes, state insurance privacy statutes, and state medical privacy statutes applicable to Plaintiffs and each of the Classes;

f)  Whether Defendants failed to notify Plaintiffs and members of the Classes about the Anthem Data Breach as soon as practical and without delay after the Anthem Data Breach was discovered;

g) Whether Defendants acted negligently in failing to safeguard Plaintiffs' and the Classes' Personal Information;

h) Whether Defendants entered into contracts with Plaintiffs and the members of the each of the Classes that included contract terms requiring Defendants to protect the confidentiality of Plaintiff's Personal Information and have reasonable security measures;

i) Whether Defendants' conduct described herein constitutes a breach of their contracts with Plaintiffs and the members of each of the Classes;

j) Whether Defendants should retain the money paid by Plaintiffs and members of each of the Classes to protect their Personal Information;

k) Whether Plaintiffs and the members of the Classes are entitled to damages as a result of Defendants' wrongful conduct;

l) Whether Plaintiffs and the members of the Classes are entitled to restitution as a result of Defendants' wrongful conduct;

m) What equitable relief is appropriate to redress Defendants' wrongful conduct; and

n) What injunctive relief is appropriate to redress the imminent and currently ongoing harm faced by members of the Classes.

425.    Typicality: Plaintiffs' claims are typical of the claims of the members of the Classes. Plaintiffs and the members of the Classes sustained damages as a result of Defendants' uniform wrongful conduct during transactions with them.

426.    Adequacy: Plaintiffs will fairly and adequately represent and protect the interests of the Classes, and have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interests antagonistic to those of the Classes, and there are no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the members of the proposed Classes, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Classes.

427.    Risks of Prosecuting Separate Actions: This case is appropriate for certification

127

1    because prosecution of separate actions would risk either inconsistent adjudications which would

2    establish incompatible standards of conduct for the Defendants or would be dispositive of the

3    interests of members of the proposed Classes. Furthermore, the Anthem Database still exists, and is

4    still vulnerable to future attacks – one standard of conduct is needed to ensure the future safety of the

5    Anthem Database.

6         428.    Policies Generally Applicable to the Classes: This case is appropriate for certification

7    because Defendants have acted or refused to act on grounds generally applicable to the Plaintiffs and

8    proposed Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure

9    compatible standards of conduct towards members of the Classes, and making final injunctive relief

10   appropriate with respect to the proposed Classes as a whole. Defendants' practices challenged herein

11   apply to and affect the members of the Classes uniformly, and Plaintiffs' challenge to those practices

12   hinges on Defendants' conduct with respect to the proposed Classes as a whole, not on individual

13   facts or law applicable only to Plaintiffs.

14        429.    Superiority: This case is also appropriate for certification because class proceedings

15   are superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs

16   and the members of the Classes. The injuries suffered by each individual member of the Classes are

17   relatively small in comparison to the burden and expense of individual prosecution of the litigation

18   necessitated by Defendants' conduct. Absent a class action, it would be virtually impossible for

19   individual members of the Classes to obtain effective relief from Defendants. Even if members of the

20   Classes could sustain individual litigation, it would not be preferable to a class action because

21   individual litigation would increase the delay and expense to all parties, including the Court, and

22   would require duplicative consideration of the common legal and factual issues presented here. By

23   contrast, a class action presents far fewer management difficulties and provides the benefits of single

24   adjudication, economies of scale, and comprehensive supervision by a single Court.

25   //

26   //

27   //

28

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

## VI.     CAUSES OF ACTION

### COUNT I – NEGLIGENCE
### BROUGHT BY 53 STATEWIDE CLASSES AGAINST ALL DEFENDANTS EXCEPT FOR BCBSA[29]

430.    Plaintiffs incorporate the above allegations by reference.

431.    Defendants required Plaintiffs and Statewide Class Members to submit Personal Information in order to obtain insurance coverage and/or to receive health care services.

432.    Defendants knew, or should have known, of the risks inherent in collecting and storing the Personal Information of Plaintiffs and Statewide Class Members.

433.    As described above, Anthem owed duties of care to Plaintiffs and Statewide Class Members whose Personal Information had been entrusted with Anthem. Anthem Affiliates owed duties of care to Plaintiffs and Statewide Class Members whose information was placed in the Anthem Database due to their dealings with Anthem Affiliates. Non-Anthem BCBS owed duties of care to Plaintiffs and Statewide Class Members whose information was placed in the Anthem Database due to their dealings with non-Anthem BCBS.

434.    Defendants breached their duties to Plaintiffs and Statewide Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' Personal Information.

435.    Defendants acted with wanton disregard for the security of Plaintiffs and State Class Members' Personal Information. Defendants knew or should have known that Anthem had inadequate computer systems and data security practices to safeguard such information, and Defendants knew or should have known that hackers were attempting to access the Personal Information in health care databases, such as Anthem's.

436.    A "special relationship" exists between Defendants and the Plaintiffs and Statewide Class Members. Anthem Affiliates entered into a "special relationship" with the Plaintiffs and State Class Members whose Personal Information was requested, collected, and received by Anthem

_____

[29] Plaintiffs acknowledge that the Court dismissed Plaintiffs' Indiana negligence claim.  While Count I encompasses negligence claims in numerous relevant states, to the extent Count I relates to an Indiana negligence claim, it is re-alleged here solely to preserve the claim for appeal.

Affiliates. A "special relationship" also exists between Anthem Affiliates and Plaintiffs and the State Class Members because Anthem Affiliates are insurers and providers of health plan services and thus stand in a fiduciary or quasi-fiduciary relationship with Plaintiffs and State Class Members. Similarly, non-Anthem BCBS entered a "special relationship" with Plaintiffs and State Class Members whose Personal Information they requested, received, or collected. A "special relationship" also exists between non-Anthem BCBS and Plaintiffs and the State Class Members because non-Anthem BCBS are insurers and providers of health plan services and thus stand in a fiduciary or quasi-fiduciary relationship with Plaintiffs and State Class Members. Anthem entered into a "special relationship" with all Plaintiffs and Class Members by placing their Personal Information in the Anthem Database – information that Plaintiffs and State Class Members had been required to provide to Anthem Affiliates or non-Anthem BCBS. Furthermore, Anthem also created a "special relationship" with Plaintiffs and Statewide Class Members who provided their information to Anthem Affiliates by playing a large in role in creating and maintaining centralized computer systems and data security practices that were used for storage of all of Anthem Affiliates' customers' Personal Information. Finally, Anthem also created a "special relationship" with Plaintiffs and Statewide Class Members whose Personal Information was placed in the Anthem Database due to their dealings with non-Anthem BCBS. Those Plaintiffs and Statewide Class Members' Personal Information was placed in the Anthem Database so that they could receive access to providers and discounts in areas where Anthem serves as the BCBS licensee.

437.    But for Defendants' wrongful and negligent breach of their duties owed to Plaintiffs and Statewide Class Members, Plaintiffs and Statewide Class Members would not have been injured.

438.    The injury and harm suffered by Plaintiffs and Statewide Class Members was the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that they were failing to meet their duties, and that Defendants' breach would cause Plaintiffs and Statewide Class Members to experience the foreseeable harms associated with the exposure of their Personal Information.

439.    As a direct and proximate result of Defendants' negligent conduct, Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT II – NEGLIGENCE PER SE
## BROUGHT BY 53 STATEWIDE CLASSES AGAINST ALL DEFENDANTS EXCEPT FOR BCBSA

440.    Plaintiffs incorporate the above allegations by reference.

441.    Pursuant to the Federal Trade Commission Act (15 U.S.C. §45), Defendants Anthem, Anthem Affiliates, and non-Anthem BCBS had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Personal Information.

442.    Pursuant to HIPAA (42 U.S.C. §1302d et. seq.), Defendants had a duty to implement reasonable safeguards to protect Plaintiffs' and Class Members' Personal Information.

443.    Pursuant to the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), Defendants had a duty to protect the security and confidentiality of Plaintiffs' and Class Members' Personal Information.

444.    Pursuant to state laws in the following 12 states, Anthem and all other Defendants operating in those states had a duty to those respective states' Class Members to implement and maintain reasonable security procedures and practices to safeguard Plaintiffs' and Class Members' Personal Information:

a) Arkansas: Ark. Code § 4-110-104

b) California: Cal Civ. Code § 1798.81.5

c) Connecticut: Conn. Gen. Stat. § 42-471

d) Florida: Fla. Stat. § 501.171(2)

e) Indiana: Ind. Code § 24-4.9-3.5

f) Maryland: Md. Code. Comm. Law § 14-5303

g) Massachusetts: Mass. Gen Laws Ch. 93H, § 3(a)

h) Nevada: Nev. Rev. Stat. § 603A.210

i) Oregon: Ore. Rev. Stat. § 646A.622(1)

j) Rhode Island: R.I. Gen Laws § 11-49.2-2(2)

k) Texas: Tex. Bus. & Com. Code § 521.052(a)

l) Utah: Utah Code § 14-44-201(1)(a)

131

445.     Defendants breached their duties to Plaintiffs and Statewide Class Members under the Federal Trade Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d et. seq.), Gramm-Leach-Bliley Act (15 U.S.C. § 6801), and the state reasonable data security statutes by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Personal Information.

446.     Defendants' failure to comply with applicable laws and regulations constitutes negligence per se.

447.     But for Defendants' wrongful and negligent breach of their duties owed to Plaintiffs and Statewide Class Members, Plaintiffs and Statewide Class Members would not have been injured.

448.     The injury and harm suffered by Plaintiffs and Statewide Class Members was the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that they were failing to meet their duties, and that Defendants' breach would cause Plaintiffs and Statewide Class Members to experience the foreseeable harms associated with the exposure of their Personal Information.

449.     As a direct and proximate result of Defendants' negligent conduct, Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

### COUNT III – BREACH OF CONTRACT
### BROUGHT BY 53 STATEWIDE CLASSES AGAINST ANTHEM AND ANTHEM AFFILIATES

450.     Plaintiffs incorporate the above allegations by reference.

451.     As forth above in ¶¶186-239, Plaintiffs and those Class Members who purchased individual insurance policies from Anthem and its Affiliates or who enrolled pursuant to the terms of a group contract with Anthem and its Affiliates entered into binding and enforceable contracts with Anthem and its Affiliates.

452.     As set forth above in ¶¶186-239, the contracts between Plaintiffs and Class Members and Anthem and its Affiliates were supported by consideration in many forms including the payment of premiums, contributions or fees by all Plaintiffs and Class Members (and/or their employers on their behalf) to Anthem and its Affiliates, and Plaintiff and Class Members' other performance under these contracts, including by providing the Personal Information to Anthem and its Affiliates required

132

by the contracts.

453.    To the extent that group contracts with Anthem and its Affiliates in which Plaintiffs and Class Members enrolled are also contracts with an employer, fund or group, Plaintiffs and Class Members are intended beneficiaries of those group contracts, including the provisions incorporating Anthem's privacy policies and otherwise pertaining to the confidentiality of Personal Information of Members provided to Anthem, as described above at ¶¶186-239.    Plaintiffs and Class Members sue in the alternative for breach of contract as third-party beneficiaries.

454.    As set forth above in ¶¶186-239, Anthem also entered into binding and enforceable Administrative Services Agreements for Self-Funded Plans in which some Plaintiffs and Class Members were enrolled.  Plaintiffs and Class Members are intended beneficiaries of those Administrative Services Agreements, including the provisions incorporating Anthem's privacy policies and otherwise pertaining to the confidentiality of Personal Information of Members provided to Anthem, as described above at ¶¶186-239.  The Plaintiffs and Class Members who enrolled in Self-Funded Plans for whom Anthem provided only administrative services sue as third-party beneficiaries of those contracts.

455.    With respect to contracts between employers and Anthem and/or Anthem affiliates, the applicable contract is not the ERISA plan instrument described in 29 U.S.C. §1102(a)(1).

456.    All contracts between Anthem and its Affiliates and Plaintiffs and Class Members (and/or their employers or other groups) were entered into prior to the Anthem Data Breach, as described above at ¶¶186-239.

457.    Plaintiffs and Class Members (and/or their employers or other groups) performed pursuant to these contracts, including by paying premiums, contributions or fees to Anthem, and by providing Anthem and its Affiliates with the personal, confidential information required by these contracts.  Plaintiffs and Class Members (and/or their employers or other groups) fully performed their obligations under their contracts with Anthem and Anthem Affiliates and satisfied all conditions, covenants, obligations, and promises of these agreements.

458.    As set forth above in ¶¶186-239, all Plaintiffs and Class Members who purchased individual policies from Anthem and its Affiliates entered into contracts with Anthem and its

Affiliates that incorporated, either by express provision or attachment, or incorporation by reference, Anthem's then-current privacy policies pertaining to personal and health-related information, including but not limited to the Personal Information (Including Social Security Number) Privacy Protection Policy, and the Privacy Notices set forth at all times on Anthem's Privacy webpages.  The documents comprising those contracts, and the terms pertaining to privacy and confidentiality of information, are described at ¶¶191-207.

459.     As set forth above in ¶¶186-239 all Plaintiffs and Class Members who enrolled in group plans from Anthem and its Affiliates entered into contracts with Anthem and its Affiliates upon enrollment that incorporated either by express provision or attachment, or incorporation by reference, Anthem's then-current privacy policies pertaining to personal and health-related information, including but not limited to the Personal Information (Including Social Security Number) Privacy Protection Policy, and the Privacy Notices set forth at all times on Anthem's Privacy webpages.  The Group contracts for which Plaintiffs and Affected Individuals were beneficiaries likewise incorporated these policies and notices.  The documents comprising those contracts, and the terms pertaining to privacy and confidentiality of information, are described at ¶¶208-227.

460.     As set forth above in ¶¶186-239, all Anthem and Anthem Affiliates Administrative Services Agreements for which Plaintiffs and Class Members were the intended beneficiaries incorporated either by express provision or attachment, or incorporation by reference, Anthem's then-current privacy policies pertaining to personal and health-related information, including but not limited to the Personal Information (Including Social Security Number) Privacy Protection Policy, and the information set forth at all times on Anthem's Privacy webpages.  The documents comprising those contracts, and the terms pertaining to privacy and confidentiality of information, are described at ¶¶228-239.

461.     As set forth in ¶¶386-401, Anthem and its Affiliates materially breached the terms of their contracts with Plaintiffs and Class Members, and the contract terms intended to benefit Plaintiffs and Class Members, by violating their commitment to maintain the confidentiality and security of Personal Information compiled by Anthem and their Affiliates in the Anthem Data Base; and by failing to comply with their own policies and applicable laws, regulations and industry standards for

data security and protecting the confidentiality of Personal Information.

462.    As a result of Anthem and its Affiliates' breach of contract, Plaintiffs and Class Members did not receive the full benefit of the bargain, and instead received health insurance and/or health care services that were less valuable than described in their contracts.  Plaintiffs and Class Members, therefore, were damaged in an amount at least equal to the difference in value between that which was promised and Anthem and its Affiliates' partial, deficient and/or defective performance.

463.    Also as a result of Anthem and its Affiliates' breach of contract, Plaintiffs and Class Members have suffered actual damages resulting from the theft of their Personal Information and remain at imminent risk of suffering additional damages in the future.

464.    Also as a result of Anthem and its Affiliates' breach of contract, Plaintiffs and Class Members have suffered actual damages resulting from their attempt to ameliorate the effect of the breach of contract and subsequent Anthem Data Breach, including but not limited to purchasing credit monitoring services or taking other steps to protect themselves from the loss of their Personal Information.

465.    Accordingly, Plaintiffs and Statewide Class Members have been injured as a result of Anthem and Anthem Affiliates' breach of contract and are entitled to damages and/or restitution in an amount to be proven at trial.

<div align="center">

**COUNT IV – BREACH OF CONTRACT**
**BROUGHT BY 53 STATEWIDE CLASSES AGAINST NON-ANTHEM BCBS**

</div>

466.    Plaintiffs incorporate the above allegations by reference.

467.    As forth above in ¶¶256-296, Plaintiffs and those Class Members who purchased individual insurance policies from the Non-Anthem Defendants or enrolled pursuant to the terms of a group contract with the Non-Anthem Defendants entered into binding and enforceable contracts with the Non-Anthem Defendants.

468.    The contracts between Plaintiffs and Class Members and the Non-Anthem Defendants were supported by consideration in many forms including the payment of premiums, contributions or fees by Plaintiffs and Class Members and/or their employers on their behalf and Plaintiff and Class Members' performance under these contracts, including by providing the Personal Information to the

<div align="center">

135

</div>

Non-Anthem Defendants required by the contracts.

469.    To the extent that group contracts with the Non-Anthem Defendants in which Plaintiffs and Class Members enrolled are also contracts with an employer, fund or group, Plaintiffs and Class Members are intended beneficiaries of those group contracts, including the provisions incorporating the Non-Anthem Defendants' privacy policies and otherwise pertaining to the confidentiality of Personal Information of Members provided to the Non-Anthem Defendants, as described above at ¶¶256-296.  Plaintiffs and Class Members sue in the alternative for breach of contract as third-party beneficiaries.

470.    As set forth above in ¶¶256-296, the Non-Anthem Defendants also entered into binding and enforceable Administrative Services Agreements for Self-Funded Plans in which some Plaintiffs and Class Members were enrolled. Plaintiffs and Class Members are intended beneficiaries of those Administrative Services Agreements, including the provisions incorporating the Non-Anthem Defendants' privacy policies and otherwise pertaining to the confidentiality of Personal Information of Members provided to Anthem as a result of the BlueCard program, as described above at ¶¶240-255. The Plaintiffs and Class Members who enrolled in Self-Funded Plans for whom Non-Anthem Defendants provided only administrative services sue as third-party beneficiaries of those contracts.

471.    With respect to contracts between employers and Non-Anthem Defendants, the applicable contract is not the ERISA plan instrument described in 29 U.S.C. §1102(a)(1).

472.    All contracts between the Non-Anthem Defendants and Plaintiffs and Class Members (and/or their employers or other groups) were entered into prior to the Anthem Data Breach, as described above at ¶¶256-296.

473.    Plaintiffs and Class Members and/or their employers on their behalf, performed pursuant to these contracts, including by paying premiums, contributions or fees to the Non-Anthem Defendants, and by providing the Non-Anthem Defendants with the personal, confidential information required by these contracts.  Plaintiffs and Class Members and/or their employers on their behalf, fully performed their obligations under their contracts with the Non-Anthem Defendants and satisfied all conditions, covenants, obligations, and promises of these agreements.

136

474.     As set forth above in ¶¶256-296, all Plaintiffs and Class Members who purchased individual or group policies from Non-Anthem Defendants (and/or their employers or other groups) entered into contracts with Non-Anthem Defendants that incorporated, either by express provision by reference, the Non-Anthem Defendants' then-current privacy policies pertaining to personal and health-related information, and the specific privacy-related provisions set forth in those contract documents.

475.     As set forth above in ¶¶256-296, those contracts with Non-Anthem Defendants all expressly committed the Non-Anthem Defendant to assume all contractual obligations when their Members used the BlueCard program to access care in another geographic area.  They also expressly committed the Non-Anthem Defendant to insure that "business associates" (such as Anthem) to whom they provided confidential information would maintain the confidentiality of that information.

476.     As set forth above, Non-Anthem Defendants provided to Anthem the Personal Information of Plaintiffs and Affected Individuals with contracts with Non-Anthem Defendants when Plaintiffs and other Affected Individuals used the BlueCard system.

477.     As set forth above at ¶¶402-405, the Non-Anthem Defendants materially breached their contractual obligation to maintain and protect the confidentiality of Plaintiffs' and Affected Individuals' Personal Information from unauthorized disclosure by failing to ensure that Anthem had adequate data security to protect Plaintiffs' and Affected Individuals' information, and by failing to ensure that the Non-Anthem Defendants' contractual obligations, including protecting the confidentiality of information, were met when Plaintiffs and other Affected Individuals used the BlueCard system.  The Non-Anthem Defendants also materially breached their contractual obligation to ensure their business associates, including Anthem, had adequate data security to protect their Members' Personal Information from unauthorized disclosure.

478.     As a result of Non-Anthem Defendants' breach of contract, Plaintiffs and Class Members did not receive the full benefit of the bargain, and instead received health insurance and/or health care services that were less valuable than described in their contracts.  Plaintiffs and Class Members, therefore, were damaged in an amount at least equal to the difference in value between that which was promised and Non-Anthem Defendants' partial, deficient and/or defective performance.

479.     Also as a result of the Non-Anthem Defendants' breach of contract, Plaintiffs and Class Members have suffered actual damages resulting from the theft of their Personal Information and remain at imminent risk of suffering additional damages in the future.

480.     Also as a result of Non-Anthem Defendants' breach of contract, Plaintiffs and Class Members have suffered actual damages resulting from their attempt to ameliorate the effect of the breach of contract and subsequent Anthem Data Breach, including but not limited to purchasing credit monitoring services or taking other steps to protect themselves from the loss of their Personal Information.

481.     Accordingly, Plaintiffs and Statewide Class Members have been injured as a result of non-Anthem BCBS' breach of contract and are entitled to damages and/or restitution in an amount to be proven at trial.

## COUNT V – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING BROUGHT BY 53 STATEWIDE CLASSES AGAINST ALL DEFENDANTS EXCEPT BCBSA

### A.     Anthem Defendants

482.     Plaintiffs incorporate the above allegations by reference.

483.     Plaintiffs and Class Members entered into and/or were the beneficiaries of contracts with Anthem and its Affiliates, as alleged above.

484.     These contracts were subject to implied covenants of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual obligations (both explicit and fairly implied) and would not impair the rights of the other parties to receive their rights, benefits, and reasonable expectations under the contracts. These included the covenants that Anthem and its Affiliates would act fairly, reasonably, and in good faith in carrying out their contractual obligations to protect the confidentiality of Plaintiffs' and Class Members' Personal Information and to comply with industry standards and federal and state laws and regulations for the security of this information.

485.     "Special relationships" exist between Anthem and its Affiliates and the Plaintiffs and Class Members. Anthem and its Affiliates each entered into a "special relationship" with those Plaintiffs and Class Members who purchased insurance plans from them and/or enrolled in health

1   services plans with them and who entrusted their confidential Personal Information to Anthem and its

2   Affiliates.

3        486.    As set forth above in the breach of contract claim, Anthem and its Affiliates promised

4   to take specific measures to protect Plaintiffs' and Class Members' Personal Information.  Even if

5   Anthem is held not to have breached any express promise in these contracts, Anthem and its

6   Affiliates breached the covenant of good faith and fair dealing by failing to take adequate measures to

7   protect the confidentiality of Plaintiffs' and Class Members' Personal Information, resulting in the

8   Anthem Data Breach.  Anthem and its Affiliates unreasonably interfered with the contract benefits

9   owed to Plaintiff and Class Members by: compiling and storing Plaintiff and Class Members' data for

10  in one massive unprotected Database; by failing to implement reasonable and adequate security

11  measures consistent with industry standards to protect and limit access to the Personal Information in

12  the Anthem Database; by permitting unrestricted access to all the Personal information in this

13  Database; and by failing to implement reasonable auditing procedures to detect and halt the

14  unauthorized extraction of data.

15       487.    Plaintiffs and Class Members performed all conditions, covenants, obligations, and

16  promises owed to Anthem and its Affiliates, including paying Anthem and its Affiliates premiums for

17  their insurance and health benefits contracts and providing Anthem and its Affiliates the confidential

18  information required by the contracts.

19       488.    As a result of Anthem and its Affiliates' breach of the implied covenant, Plaintiffs and

20  Class Members did not receive the full benefit of their bargain, and instead received health insurance

21  and/or health care services and related services that were less valuable than what they paid for and

22  less valuable than their reasonable expectations under the contracts.  Plaintiffs and Class Members

23  were damaged in an amount at least equal to the difference in value between that which they

24  reasonably expected under the contracts and Anthem and its Affiliates' partial, deficient and/or

25  defective performance.

26       489.    Also as a result of Anthem and its Affiliates' breach of the covenant of good faith and

27  fair dealing, Plaintiffs and Class Members have suffered actual damages resulting from the theft of

28  their Personal Information and remain at imminent risk of suffering additional damages in the future.

490.     Also as a result of Anthem and its Affiliates' breach of the covenant of good faith and fair dealing, Plaintiffs and Class Members have suffered actual damages resulting from their attempt to ameliorate the effect of the breach and the subsequent Anthem Data Breach, including but not limited to purchasing credit monitoring services or taking other steps to protect themselves from the loss of their Personal Information.

491.     Accordingly, Plaintiffs and Class Members have been injured as a result of Anthem and its Affiliates' breaches of the covenant of good faith and fair dealing and are entitled to damages and/or restitution in an amount to be proven at trial.

**B.      Non-Anthem Defendants**

492.     Plaintiffs incorporate the above allegations by reference.

493.     Plaintiffs and Class Members entered into and/or were the beneficiaries of contracts with Non-Anthem Defendants for insurance or health benefits, as alleged above.

494.     These contracts were subject to implied covenants of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual obligations (both explicit and fairly implied) and would not impair the rights of the other parties to receive the rights, benefits, and reasonable expectations under the contracts. These included the covenants that Non-Anthem Defendants would act fairly, reasonably, and in good faith in carrying out their contractual obligations to protect the confidentiality of Plaintiffs' and Class Members' Personal Information and to comply with industry standards and federal and state laws and regulations for the security of this information.

495.     "Special relationships" exist between the Non-Anthem Defendants and the Plaintiffs and Class Members. The Non-Anthem Defendants each entered into a "special relationship" with those Plaintiffs and Class Members who purchased insurance plans from them and/or enrolled in health services plans with them and who entrusted their confidential Personal Information to the Non-Anthem Defendants.

496.     As set forth above in the breach of contract claim, the Non-Anthem Defendants promised to take specific measures to protect this Personal Information, and specifically committed to complying with their contractual obligations when Plaintiffs used the BlueCard program.  Even if the

1   Non-Anthem Defendants are held not to have breached any express promise in these contracts, the

2   Non-Anthem Defendants breached the covenant of good faith and fair dealing by failing to take

3   adequate measures to protect the confidentiality of Plaintiffs' and Class Members' Personal

4   Information.  The Non-Anthem Defendants unreasonably interfered with the contract benefits owed

5   to Plaintiff and Class Members by providing Plaintiffs' and Class Members' Personal information to

6   Anthem knowing that Anthem compiled and stored that Personal Information in one massive

7   Database; by failing to investigate, inspect, or otherwise take any action to ensure that Anthem had

8   implemented reasonable and adequate security measures consistent with industry standards to protect

9   and limit access to the Personal Information regarding Non-Anthem Defendants' customers that was

10  in the Anthem Database by virtue of the BlueCard program; by failing to investigate, inspect, or

11  otherwise take any action to ensure that Anthem did not permit unrestricted access to the Personal

12  Information regarding Non-Anthem Defendants' customers that was in the Anthem Database by

13  virtue of the BlueCard program; by failing to investigate, inspect or otherwise take any action to

14  ensure that Anthem used reasonable audit procedures to detect or halt any unauthorized access to the

15  Personal Information regarding Non-Anthem Defendants' customers that was in the Anthem

16  Database by virtue of the BlueCard program.

17      497.    Plaintiffs and Class Members performed all conditions, covenants, obligations, and

18  promises owed to the Non-Anthem Defendants, including paying the Non-Anthem Defendants

19  premiums for their insurance and health benefits contracts and providing the Non-Anthem

20  Defendants the confidential information required by the contracts.

21      498.    As a result of Non-Anthem Defendants' breach of the implied covenant, Plaintiffs and

22  Class Members did not receive the full benefit of their bargain, and instead received health insurance

23  and/or health care services and related services that were less valuable than what they paid for and

24  less valuable than their reasonable expectations under the contracts.  Plaintiffs and Class Members

25  were damaged in an amount at least equal to the difference in value between that which they

26  reasonably expected under the contracts and Non-Anthems' partial, deficient and/or defective

27  performance.

28      499.    Also as a result of Non-Anthem Defendants' breach of the covenant of good faith and

1  fair dealing, Plaintiffs and Class Members have suffered actual damages resulting from the theft of

2  their Personal Information and remain at imminent risk of suffering additional damages in the future.

3       500.   Also as a result of Non-Anthem Defendants' breach of the covenant of good faith and

4  fair dealing, Plaintiffs and Class Members have suffered actual damages resulting from their attempt

5  to ameliorate the effect of the breach and the subsequent Anthem Data Breach, including but not

6  limited to purchasing credit monitoring services or taking other steps to protect themselves from the

7  loss of their Personal Information.

8       501.   Accordingly, Plaintiffs and Class Members have been injured as a result of the Non-

9  Anthem Defendants' breaches of the covenant of good faith and fair dealing and are entitled to

10 damages and/or restitution in an amount to be proven at trial.

11       **COUNT VI – THIRD-PARTY BENEFICIARY CLAIM FOR BREACH OF CONTRACT
              UNDER FEDERAL LAW**
12       **BROUGHT BY FEDERAL EMPLOYEE CLASS AGAINST ALL DEFENDANTS EXCEPT
              ANTHEM NON-BCBS AFFILIATES**
13

14       502.   Plaintiffs incorporate the above allegations by reference.

15       503.   BCBSA, acting as agent for, and on behalf of, the Anthem BCBS Affiliates and non-

16 Anthem BCBS, had a valid, binding, and enforceable express contract with OPM to provide

17 insurance and other benefits to those Plaintiffs who received health insurance and related benefits

18 under the Federal BCBSA Plan ("Federal Employee Plaintiffs") and the Federal Employee Class

19 Members.  Under the express terms of the Federal BCBSA Contract, federal law applies to breach of

20 contract claims.

21       504.   OPM paid money to BCBSA and provided BCBSA with Federal Employee Plaintiffs'

22 and Federal Employee Class Members' Personal Information.  In exchange, BCBSA, on behalf of the

23 Anthem BCBS Affiliates and non-Anthem BCBS, promised, among other things:  (1) to perform all

24 of the services set forth in the Federal BCBSA contract, including Appendix A, which sets forth the

25 Statement of Benefits that is reflected in the FEHB Brochure, (2) to take reasonable measures to

26 protect the security and confidentiality of Federal Employee Plaintiffs' and Federal Employee Class

27 Members' Personal Information, including through the measures described in the Notice of Privacy

28 Practices for the Blue Cross and Blue Shield Service Benefit Plan; and (3) to protect Federal

1  Employees' Personal Information in compliance with federal and state laws and regulations,

2  including HIPAA, and industry standards.

3       505.    BCBSA's promises to take reasonable measures to protect the security and

4  confidentiality of Federal Employee Plaintiffs' and Federal Employee Class Members' Personal

5  Information appear in multiple provisions of the BCBSA contract, including but not limited to terms

6  in the "General Provisions" of the Federal BCBSA Contract, in the attached Plan Brochures

7  incorporated into the Federal BCBSA Contract, and in BCBSA's Notice of Privacy Practices for the

8  Blue Cross and Blue Shield Service Benefit Plan incorporated by reference in the Brochures, as set

9  forth in detail in ¶¶297-310, above.

10      506.    OPM and BCBSA, on behalf of the Anthem BCBS Affiliates and non-Anthem BCBS,

11  intended for the Federal BCBSA Contract to directly benefit and create enforceable rights for Federal

12  Employee Plaintiffs and Federal Employee Class Members.

13      507.    The terms of the Federal BCBSA Contract that concern the protection of Federal

14  Employee Plaintiffs' Personal Information were material terms of the Federal BCBSA Contract.

15      508.    BCBSA, the Anthem BCBS Affiliates, and non-Anthem BCBS did not satisfy their

16  promises and obligations to OPM under the Federal BCBSA Contract, in that they did not take

17  reasonable and contractually-required measures to keep Federal Employee Plaintiffs' and Class

18  Members' Personal Information secure and confidential and did not comply with the applicable

19  federal and state laws, regulations, and industry standards for data security.

20      509.    BCBSA, the Anthem BCBS Affiliates, and non-Anthem BCBS materially breached

21  their contract with OPM by failing to implement the security measures required by the Federal

22  BCBSA Contract.  Instead, Federal Employee Plaintiffs' and Class Members' Personal Information

23  was stored in the inadequately-secured Anthem Database and accessed and exfiltrated in the Anthem

24  Data Breach.  To the extent BCBSA outsourced the collection, storage, use, and protection of Federal

25  Employee Plaintiffs' and Class Members' Personal Information to other entities, BCBSA remains

26  liable for those entities' failure to protect the Personal Information.

27      510.    OPM fully performed its obligations under the Federal BCBSA Contract and satisfied

28  all conditions, covenants, obligations, and promises of the agreement.

511.    BCBSA, Anthem BCBS Affiliates, and non-Anthem BCBS's failure to satisfy their promises and obligations led directly to the Anthem Data Breach, in which Anthem and Anthem Affiliates let unauthorized parties access and exfiltrate Federal Employee Plaintiffs and Class Members' Personal Information.

512.    Federal Employee Plaintiffs and Class Members are clearly intended third-party beneficiaries of the data security provisions in the contract between BCBSA (on behalf of Anthem BCBS Affiliates and non-Anthem BCBS) and OPM, and are entitled to directly enforce its terms. The benefits that Federal Employee Plaintiffs and Class Members receive under the Federal BCBSA Contract are not incidental to the purpose of the agreement.  Instead, the purpose of the Federal BCBSA Contract is to define the terms and conditions under which BCBSA, the Anthem BCBS Affiliates, and the non-Anthem BCBS would provide health insurance and/or related health care services to Federal Employee Plaintiffs.  The provisions of the agreement that pertain to data security are intended to protect the Personal Information of Federal Employee Plaintiffs and Class Members. Among other things, the Federal BCBSA Contract's confidentiality provisions explicitly refer to "subscribers," and the Plan Brochure's confidentiality provision refers to keeping "your medical and claims information confidential" where "your" is defined to include "the enrollee," who is "the contract holder" eligible for coverage.  Federal Employee Plaintiffs and Class Members are subscribers and enrollees within the meaning to the Federal BCBSA Contract and are covered by the Federal BCBSA Plans governed by the contract.

513.    As a result of BCBSA, Anthem BCBS Affiliates, and non-Anthem BCBS's failure to implement the security measures required by the Federal BCBSA Contract, OPM did not receive the full benefit of its bargain, and instead Federal Employee Plaintiffs and Class Members received health insurance and/or related health care services that were less valuable than what OPM had bargained for.

514.    Also as a result of BCBSA, Anthem BCBS Affiliates, and non-Anthem BCBS's failure to implement the security measures required by the Federal BCBSA Contract, Federal Employee Plaintiffs and Class Members have suffered actual damages resulting from the theft of their Personal Information and remain at imminent risk of suffering additional damages in the future.

515.     Also as a result of BCBSA, Anthem BCBS Affiliates, and non-Anthem BCBS's failure to implement the security measures required by the Federal BCBSA Contract, Federal Employee Plaintiffs and Class Members have suffered actual damages resulting from their attempt to ameliorate the effect of the breach of contract and subsequent Anthem Data Breach, including but not limited to purchasing credit monitoring services or taking other steps to protect themselves from the loss of their Personal Information.

516.     Federal Employee Plaintiffs and Class Members also were damaged in an amount at least equal to the difference in value between that which was promised and BCBSA's, Anthem's, and Non-Anthem Defendants' partial, deficient and/or defective performance.

517.     Accordingly, Federal Employee Plaintiffs and Class Members have been injured as a result of Defendants' breach of contract and are entitled to damages and/or restitution in an amount to be proven at trial. Moreover, Federal Employee Plaintiffs and Class Members are additionally entitled to specific performance of the contract, including OPM's right to audit Anthem, which, as discussed above, Anthem has refused and continues to refuse to allow.

518.     Accordingly, Federal Employee Plaintiffs and Class Members have been injured as a result of Defendants' breach of contract and are entitled to damages and/or restitution in an amount to be proven at trial. Moreover, Federal Employee Plaintiffs and Class Members are additionally entitled to specific performance of the contract, including OPM's right to audit Anthem, which, as discussed above, Anthem has refused and continues to refuse to allow.

### COUNT VII – NEGLIGENT MISREPRESENTATION
### BROUGHT BY 53 STATEWIDE CLASSES AGAINST ALL DEFENDANTS EXCEPT BCBSA

519.     Plaintiffs incorporate the above allegations by reference.

520.     Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS negligently and recklessly misrepresented material facts, pertaining to the sale of insurance and health benefits services, to Plaintiffs and Statewide Class Members by representing that they would maintain adequate data privacy and security practices and procedures to safeguard Plaintiffs and Statewide Class Members' Personal Information from unauthorized disclosure, release, data breaches, and theft.

521.     Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS negligently and

145

1    recklessly misrepresented material facts, pertaining to the sale of insurance and health benefits

2    services, to Plaintiffs and Statewide Class Members by representing that they did and would comply

3    with the requirements of relevant federal and state laws pertaining to the privacy and security of

4    Plaintiffs and Statewide Class Members' Personal Information.

5         522.    Because of multiple warnings about the inadequacy of their data privacy and security

6    practices, Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS either knew or should

7    have known that their representations were not true.

8         523.    In reliance upon these misrepresentations, Plaintiffs and Statewide Class Members

9    purchased insurance or health benefits services from Defendants.

10        524.    Had Plaintiffs and Statewide Class Members, as reasonable persons, known of

11   Defendants' inadequate data privacy and security practices, or that Defendants were failing to comply

12   with the requirements of federal and state laws pertaining to the privacy and security of Class

13   Members' Personal Information, they would not have purchased insurance or health benefits services

14   from Defendants, and would not have entrusted their Personal Information to Defendants.

15        525.    As direct and proximate consequence of Defendants' negligent misrepresentations,

16   Plaintiffs and Class Members have suffered the injuries alleged above.

17
                     **COUNT VIII – UNJUST ENRICHMENT**
     **BROUGHT BY 53 STATEWIDE CLASS AGAINST ALL DEFENDANTS EXCEPT FOR**
18                                    **BCBSA**

19        526.    Plaintiffs incorporate the above allegations by reference.

20        527.    In the alternative, Plaintiffs allege that they have no adequate remedy at law and bring

21   this unjust enrichment claim on behalf of the 53 statewide classes.

22        528.    Plaintiffs and Class Members conferred a monetary benefit on Defendants Anthem,

23   Anthem Affiliates, and non-Anthem BCBS in the form of premiums paid for the purchase of health

24   insurance and health benefits services. Plaintiffs and Class Members also provided their Personal

25   Information to Anthem, Anthem Affiliates, and non-Anthem BCBS.

26        529.    Anthem, Anthem Affiliates, and non-Anthem BCBS appreciated or had knowledge of

27   the benefits conferred upon them by Plaintiffs and Class Members.

28        530.    The premiums for health insurance and health benefits services that Plaintiffs and

1    Class Members  paid (directly or indirectly) to Defendants should have been used by Defendants, in

2    part, to pay for the administrative costs of reasonable data privacy and security practices and

3    procedures.

4           531.    As a result of Anthem, Anthem Affiliates, and non-Anthem BCBS' conduct, Plaintiffs

5    and Class Members suffered actual damages in an amount equal to the difference in value between

6    health insurance and health benefit services with the reasonable data privacy and security practices

7    and procedures that Plaintiffs and Class Members paid for, and the inadequate health insurance and

8    health benefits services without reasonable data privacy and security practices and procedures that

9    they received.

10          532.    Under principals of equity and good conscience, Defendants Anthem, Anthem

11   Affiliates, and non-Anthem BCBS should not be permitted to retain the money belonging to Plaintiffs

12   and Class Members because Defendant failed to implement (or adequately implement) the data

13   privacy and security practices and procedures that Plaintiffs and Class Members paid for and that

14   were otherwise mandated by HIPAA regulations, federal, state and local laws, and industry standards.

15          533.    Anthem, Anthem Affiliates, and non-Anthem BCBS should be compelled to disgorge

16   into a common fund for the benefit of Plaintiffs and Class Members all unlawful or inequitable

17   proceeds received by Anthem, Anthem Affiliates, and non-Anthem BCBS.

18          534.    A constructive trust should be imposed upon all unlawful or inequitable sums received

19   by Anthem, Anthem Affiliates, and non-Anthem BCBS traceable to Plaintiffs and Class Members.

20   <div align="center">**COUNT IX – STATE CONSUMER PROTECTION LAWS**</div>
21   <div align="center">**BROUGHT BY THE STATEWIDE CLASSES BELOW**</div>

22   <div align="center">**Arizona**</div>
     <div align="center">**ARIZONA CONSUMER FRAUD ACT,**</div>
     <div align="center">**A.R.S. § 44-1521,** *et seq.*</div>
23   <div align="center">**(BROUGHT BY ARIZONA CLASS AGAINST ANTHEM AND ALL OTHER DEFENDANTS**</div>
     <div align="center">**OPERATING IN ARIZONA EXCEPT FOR BCBSA)**</div>
24

25          535.    Plaintiffs incorporate the above allegations by reference.

26          536.    Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS operating in Arizona

27   engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment,

28   suppression, and omission of material facts in connection with the sale and advertisement of

<div align="center">147</div>

1  "merchandise" (as defined in the Arizona Consumer Fraud Act, A.R.S. §44-1521(5))  in violation of

2  A.R.S. §44-1522(A), including but not limited to the following:

3    a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented

4    material facts to the Arizona Class, in connection with the sale of insurance and health

5    benefits services, by representing that they would maintain adequate data privacy and

6    security practices and procedures to safeguard Arizona Class Members' Personal

7    Information from unauthorized disclosure, release, data breaches, and theft;

8    b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented

9    material facts to the Arizona Class, in connection with sale of insurance and health

10    benefits services, by representing that they did and would comply with the

11    requirements of relevant federal and state laws pertaining to the privacy and security

12    of Arizona Class Members' Personal Information;

13    c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted,

14    suppressed, and concealed the material fact of the inadequacy of the privacy and

15    security protections for Arizona Class Members' Personal Information, with the intent

16    that others rely on the omission, suppression, and concealment;

17    d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in unfair

18    acts and practices, in connection with the sale of insurance and health benefits services

19    by failing to maintain the privacy and security of Arizona Class Members' Personal

20    Information, in violation of duties imposed by and public policies reflected in

21    applicable federal and state laws, resulting in the Anthem Data Breach.  These unfair

22    acts and practices violated duties imposed by laws including the Federal Trade

23    Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d et. seq.), the Gramm-

24    Leach-Bliley Act (15 U.S.C. § 6801), and the Arizona Insurance Information and

25    Privacy Protection Act (A.R.S. §20-2113).

26    e) Defendants Anthem and Anthem Affiliates engaged in unfair acts and practices in

27    connection with the sale of insurance and health benefits services by failing to disclose

28    the Anthem Data Breach to Arizona Class Members in a timely and accurate manner,

148

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

in violation of Ariz. Rev. Stat. § 44-7501.

f)  Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in unfair acts and practices with respect to the sale of insurance and health benefits services by failing to take proper action following the Anthem Data Breach to enact adequate privacy and security measures and protect Arizona Class Members' Personal Information from further unauthorized disclosure, release, data breaches, and theft.

537.    The above unfair and deceptive practices and acts by Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

538.    Defendants knew or should have known that their computer systems and data security practices were inadequate to safeguard Arizona Class Members' Personal Information and that risk of a data breach or theft was highly likely.  Defendants' actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Arizona Class.

539.    As a direct and proximate result of Defendants' unlawful practices, Arizona Class Members suffered injury and/or damages.

540.    Arizona Class Members seek relief under A.R.S. § 4421, et. seq., including, but not limited to, compensatory damages, punitive damages, injunctive relief, and/or attorneys' fees and costs.

**California**
**CALIFORNIA UNFAIR COMPETITION LAW,**
**CAL. BUS. & PROF. CODE § 17200, *et seq.***
**(BROUGHT BY CALIFORNIA CLASS AGAINST ANTHEM AND ALL OTHER**
**DEFENDANTS OPERATING IN CALIFORNIA EXCEPT BCBSA)**

541.    Plaintiffs incorporate the above allegations by reference.

542.    Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS operating in California have violated Cal. Business and Professions Code §17200 et seq. by engaging in unlawful, unfair or fraudulent business acts and practices and unfair, deceptive, untrue or misleading advertising that constitute acts of  "unfair competition" as defined in Cal. Bus. Prof. Code §17200

149

with respect to the insurance and health benefits services provided to the California Class, including but not limited to the following:

a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in deceptive acts and practices with regard to the insurance and health benefits services provided to the California Class by representing and advertising that they would maintain adequate data privacy and security practices and procedures to safeguard California Class Members' Personal Information from unauthorized disclosure, release, data breaches, and theft; and representing and advertising that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of California Class Members' Personal Information.

b) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in deceptive acts and practices with regard to the insurance and health benefit services provided to the California Class by omitting, suppressing, and concealing the material fact of the inadequacy of the privacy and security protections for California Class Members' Personal Information. At the time that California Class members were enrolling in insurance and health benefit services, Defendants failed to disclose to California Class Members that the Anthem and Anthem Affiliates' data security systems failed to meet legal and industry standards for the protection of their Personal Information. Plaintiffs would not have enrolled in Defendants' insurance and health benefit services if they had known about Defendants' substandard data security practices.

c) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in unfair acts and practices with respect to the insurance and health benefits services by establishing the sub-standard security practices and procedures described herein; by soliciting and collecting Plaintiffs' and California Class Members' Personal Information with knowledge that the information would not be adequately protected; and by storing Plaintiffs' and California Class Members' Personal Information in an unsecure electronic environment. These unfair acts and practices were immoral,

unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to
Plaintiffs and California Class Members.  Defendant's practice was also contrary to
legislatively declared and public policies that seek to protect consumer data and ensure
that entities who solicit or are entrusted with personal data utilize appropriate security
measures, as reflected by laws like the Federal Trade Commission Act (15 U.S.C. §
45), HIPAA (42 U.S.C. § 1302d et. seq.), the Gramm-Leach-Bliley Act (15 U.S.C. §
6801), California's Confidentiality of Medical Information Act (Civil Code §56 et
seq.), California's unfair insurance practices statutes (Ins. Code §790 et seq.),
California's Insurance Information and Privacy Protection Act (Ins. Code §791 et
seq.), and California's data breach statute, Cal. Civ. Code § 1798.81.5.  The harm
these practices caused to Plaintiffs and the California Class Members outweighed their
utility, if any.

d) Defendants Anthem and Anthem Affiliates engaged in unfair acts and practices
with respect to the sale of insurance and health benefits services by failing to disclose
the Anthem Data Breach to California Class Members in a timely and accurate
manner, contrary to the duties imposed by Cal. Civ. Code § 1798.82.  These unfair
acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable,
and/or substantially injurious to Plaintiffs and California Class Members.  The harm
these practices caused to Plaintiffs and the California Class Members outweighed their
utility, if any.

e) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in unfair
acts and practices with respect to the provision of insurance and health benefits
services by failing to take proper action following the Anthem Data Breach to enact
adequate privacy and security measures and protect California Class Members'
Personal Information from further unauthorized disclosure, release, data breaches, and
theft.  These unfair acts and practices were immoral, unethical, oppressive,
unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and
California Class Members.  The harm these practices caused to Plaintiffs and the

151
SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

California Class Members outweighed their utility, if any.

f)  Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in unlawful business practices by violating the privacy and security requirements of HIPAA (42 U.S.C. § 1302d et. seq.).

g) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in unlawful business practices by violating California's Confidentiality of Medical Information Act (Civil Code §56 et seq.) with respect to California Class members participating in health services plans regulated by the Knox-Keene Act, and with respect to employees.

h) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in unlawful business practices by violating California's unfair insurance practices statutes (Ins. Code §790 et seq.), and California's Insurance Information and Privacy Protection Act (Ins. Code §791 et seq., "CIIPA") with respect to California Class Members with health insurance.  With respect to CIIPA, Defendants are "insurance institutions" that "collected or received" "personal or privileged information" pertaining to members of the California Class "in connection with an insurance transaction" and, as a result of the Anthem Data Breach, failed to maintain the confidentiality and privacy of and disclosed this personal information without authorization, thereby violating CIIPA;

i)  Defendants Anthem and Anthem Affiliates engaged in unlawful business practices by violating Cal. Civ. Code § 1798.82.

543.    As a direct and proximate result of Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS's acts of unfair and unlawful practices and acts, the Plaintiffs were injured and lost money or property, including but not limited to the premiums and/or price received by Defendants for the insurance and health benefits services, the loss of their legally protected interest in the confidentiality and privacy of their Personal Information, and additional losses described above.

544.    Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS knew or should have known that their computer systems and data security practices were inadequate to safeguard

152

1  California Class Members' Personal Information and that the risk of a data breach or theft was highly

2  likely. Defendants' actions in engaging in the above-named unfair practices and deceptive acts were

3  negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of

4  the California Class.

5      545.   California Class Members seek relief under Cal. Bus. & Prof. Code § 17200, et. seq.,

6  including, but not limited to, restitution to Plaintiffs and Class Members of money or property that the

7  Defendants may have acquired by means of Defendants' deceptive, unlawful, and unfair business

8  practices, restitutionary disgorgement of all profits accruing to Defendants because of their unlawful

9  and unfair business practices, declaratory relief, attorney's fees and costs (pursuant to Cal. Code Civil

10 Pro. §1021.5), and injunctive or other equitable relief.

11                                    **Colorado**
                       **COLORADO CONSUMER PROTECTION ACT,**
12                     **COLO. REV. STAT. § 6-1-101,** *et. seq.*
            **(BROUGHT BY COLORADO CLASS AGAINST ANTHEM AND ALL OTHER**
13            **DEFENDANTS OPERATING IN COLORADO EXCEPT FOR BCBSA)**

14     546.   Plaintiffs incorporate the above allegations by reference.

15     547.   Colorado Class Members are actual or potential consumers of insurance and health

16 benefits services offered by Defendants.

17     548.   Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in deceptive,

18 unfair, and unlawful trade acts or practices in the course of Defendants' business, vocation, or

19 occupation, in violation of C.R.S. §6-1-105, including but not limited to the following:

20          a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS knowingly

21             misrepresented and fraudulently advertised material facts pertaining to the insurance

22             and health benefits services to the Colorado Class by representing and advertising that

23             they would maintain adequate data privacy and security practices and procedures to

24             safeguard Colorado Class Members' Personal Information from unauthorized

25             disclosure, release, data breaches, and theft, in violation of Colo. Rev. Stat. §6-1-

26             105(e), (g) (i) and (u);

27          b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS knowingly

28             misrepresented material facts pertaining to insurance and health benefits services to

153

the Colorado Class by representing and advertising that they did and would comply

with the requirements of relevant federal and state laws pertaining to the privacy and

security of Colorado Class Members' Personal Information, in violation of Colo. Rev.

Stat. §6-1-105(e), (g) (i) and (u);

c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS knowingly

omitted, suppressed, and concealed the material fact of the inadequacy of the privacy

and security protections for Colorado Class Members' Personal Information (intending

to induce others to enter into a transaction), in violation of Colo. Rev. Stat. §6-1-

105(1)(e), (g) (i) and (u);

d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in

deceptive, unfair, and unlawful trade acts or practices, in violation of C.R.S. §6-1-

105(3), by failing to maintain the privacy and security of Colorado Class Members'

Personal Information, in violation of duties imposed by and public policies reflected in

applicable federal and state laws, resulting in the Anthem Data Breach.  These unfair

acts and practices violated duties imposed by laws including the Federal Trade

Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d et. seq.), the Gramm-

Leach-Bliley Act (15 U.S.C. § 6801), Colorado Insurance Regulations (3 CCR 702-

6:6-4-1, Sections 11 and 24), Colorado Unfair Insurance Practices Act (C.R.S .§10-3-

1104), and Colorado's HMO Privacy Law (C.R.S. §10-16-423);

e) Defendants Anthem and Anthem Affiliates engaged in deceptive, unfair, and

unlawful trade acts or practices, in violation of C.R.S. §6-1-105(3), by failing to

disclose the Anthem Data Breach to Colorado Class Members in a timely and accurate

manner, contrary to the duties imposed by Colo. Rev. Stat. Ann. § 6-1-716(2).

f)  Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in

deceptive, unfair, and unlawful trade acts or practices, in violation of C.R.S. §6-1-

105(3), by failing to take proper action following the Anthem Data Breach to enact

adequate privacy and security measures and protect Colorado Class Members'

Personal Information from further unauthorized disclosure, release, data breaches, and

theft.

549.    Defendants engaged in the above unfair or deceptive acts or practices in the course of their business.

550.    As a direct and proximate result of Defendants' deceptive trade practices, Colorado Class Members suffered injuries to legally protected interests, including their legally protected interest in the confidentiality and privacy of their Personal Information.

551.    The above unfair and deceptive practices and acts by Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that these consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

552.    Defendants knew or should have known that their computer systems and data security practices were inadequate to safeguard Colorado Class Members' Personal Information and that risk of a data breach or theft was highly likely. Defendants' actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Colorado Class.

553.    Colorado Class Members seek relief under Colo. Rev. Stat. § 6-1-101, et. seq., including, not limited to, compensatory damages, statutory damages, restitution, penalties, injunctive relief, and/or attorneys' fees and costs.

**Connecticut**
**CONNECTICUT UNFAIR TRADE PRACTICES ACT,**
**C.G.S. § 42-110a _et seq._,**
**(BROUGHT BY CONNECTICUT CLASS AGAINST ANTHEM AND ALL OTHER**
**DEFENDANTS OPERATING IN CONNECTICUT EXCEPT FOR BCBSA)**

554.    Plaintiffs incorporate the above allegations by reference.

555.    Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce, in violation of C.G.S. § 42-110b, including but not limited to the following:

a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented and fraudulently advertised material facts pertaining to the insurance and health benefits services to the Connecticut Class by representing and advertising that they would

155

maintain adequate data privacy and security practices and procedures to safeguard Connecticut Class Members' Personal Information from unauthorized disclosure, release, data breaches, and theft;

b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts pertaining to insurance and health benefits services to the Connecticut Class by representing and advertising that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Connecticut Class Members' Personal Information;

c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted, suppressed, and concealed the material fact of the inadequacy of the privacy and security protections for Connecticut Class Members' Personal Information;

d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in deceptive, unfair, and unlawful trade acts or practices by failing to maintain the privacy and security of Connecticut Class Members' Personal Information, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Anthem Data Breach.  These unfair acts and practices violated duties imposed by laws including the Federal Trade Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d et. seq.), the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), the Connecticut Insurance Information and Privacy Protection Act (C.G.S. 38a-988), and the Connecticut data breach statute (C.G.S. § 42-471).

e) Defendants Anthem and Anthem Affiliates engaged in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the Anthem Data Breach to Connecticut Class Members in a timely and accurate manner, contrary to the duties imposed by C.G.S. § 36a-701b.

f)  Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in deceptive, unfair, and unlawful trade acts or practices by failing to take proper action following the Anthem Data Breach to enact adequate privacy and security measures and protect Connecticut Class Members' Personal Information from further

1      unauthorized disclosure, release, data breaches, and theft.

2      556.    The above unfair and deceptive practices and acts by Defendants Anthem, Anthem

3    Affiliates and Non-Anthem BCBS also violated Connecticut's Unfair Insurance Practices Act, Conn.

4    Gen. Stat. §38a-815,816.

5      557.    As a direct and proximate result of Defendants' deceptive trade practices, Connecticut

6    Class Members suffered an ascertainable loss of money or property, real or personal, as described

7    above, including the loss of their legally protected interest in the confidentiality and privacy of their

8    Personal Information.

9      558.    The above unfair and deceptive practices and acts by Defendants Anthem, Anthem

10   Affiliates and Non-Anthem BCBS were immoral, unethical, oppressive, and unscrupulous. These acts

11   caused substantial injury to consumers that these consumers could not reasonably avoid; this

12   substantial injury outweighed any benefits to consumers or to competition.

13     559.    Defendants knew or should have known that their computer systems and data security

14   practices were inadequate to safeguard Connecticut Class Members' Personal Information and that

15   risk of a data breach or theft was highly likely. Defendants' actions in engaging in the above-named

16   unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless

17   with respect to the rights of members of the Connecticut Class.

18     560.    Connecticut Class Members seek relief under C.G.S. § 42-110a et seq., including, but

19   not limited to, damages, statutory damages, restitution, penalties, injunctive relief, and/or attorneys'

20   fees and costs.

21                              **District of Columbia**
                **DISTRICT OF COLUMBIA CONSUMER PROTECTION PROCEDURES ACT,**
22                              **D.C. CODE § 28-3904,** *et seq.*
          **(BROUGHT BY D.C. CLASS AGAINST ANTHEM AND ALL OTHER DEFENDANTS**
23                    **OPERATING IN D.C. EXCEPT FOR BCBSA)**

24     561.    Plaintiffs incorporate the above allegations by reference.

25     562.    Plaintiffs bring this claim against Defendants Anthem, Anthem Affiliates and Non-

26   Anthem BCBS operating in the District of Columbia ("D.C.") on behalf of the D.C. Class.

27     563.    As defined by D.C. Code § 28-3901, D.C. Class Members are "consumers" who

28   purchased or received goods or services, in the form of insurance and benefits services, for personal,

                                       157

1 household, or family purposes.

2   564.   Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS operating in D.C.

3 engaged in unlawful trade practices, misrepresentations, and the concealment, suppression, and

4 omission of material facts with respect to the sale and advertisement of insurance and health benefit

5 services in violation of D.C. Code § 28-3904, including but not limited to the following:

6       a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented

7       material facts, pertaining to the sale of insurance and health benefits services, to the

8       D.C. Class by representing that they would maintain adequate data privacy and security

9       practices and procedures to safeguard D.C. Class Members' Personal Information from

10       unauthorized disclosure, release, data breaches, and theft in violation of D.C. Code §

11       28-3904(a), (d), (e), (f), (h), and/or (u);

12       b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented

13       material facts, pertaining to the sale of insurance and health benefits services, to the

14       D.C. Class by representing that they did and would comply with the requirements of

15       relevant federal and state laws pertaining to the privacy and security of D.C. Class

16       Members' Personal Information in violation of D.C. Code § 28-3904(a), (d), (e), (f),

17       (h), and/or (u);

18       c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted,

19       suppressed, and concealed the material fact of the inadequacy of the privacy and

20       security protections for D.C. Class Members' Personal Information in violation of D.C.

21       Code § 28-3904(a), (d), (e), (f), (h), and/or (u);

22       d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in unfair

23       acts and practices with respect to the sale of insurance and health benefits services by

24       failing to maintain the privacy and security of D.C. Class Members' Personal

25       Information, in violation of duties imposed by and public policies reflected in

26       applicable federal and state laws, resulting in the Anthem Data Breach.  These unfair

27       acts and practices violated duties imposed by laws including the Federal Trade

28       Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d et. seq.), the Gramm-

Leach-Bliley Act (15 U.S.C. § 6801), and the D.C. Unfair Insurance Trade Practices Act (D.C. Code §§ 31-2231.03 and 31-2231.04).

e) Defendants Anthem and Anthem Affiliates engaged in unfair acts and practices with respect to the sale of insurance and health benefits services by failing to disclose the Anthem Data Breach to D.C. Class Members in a timely and accurate manner, in violation of D.C. Code § 28-3852(a);

f) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in unfair acts and practices with respect to the sale of insurance and health benefits services by failing to take proper action following the Anthem Data Breach to enact adequate privacy and security measures and protect D.C. Class Members' Personal Information from further unauthorized disclosure, release, data breaches, and theft.

565.    The above unfair and deceptive practices and acts by Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

566.    Defendants knew or should have known that their computer systems and data security practices were inadequate to safeguard D.C. Class Members' Personal Information and that risk of a data breach or theft was highly likely.  Defendants' actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the D.C. Class.

567.    As a direct and proximate result of Defendants' unlawful practices, D.C. Class Members suffered injury and/or damages.

568.    D.C. Class Members seek relief under D.C. Code § 28-3905(k), including, but not limited to, restitution, injunctive relief, punitive damages, attorneys' fees and costs, and treble damages or $1500 per violation, whichever is greater.

**<u>Hawaii</u>**
**HAWAII UNFAIR PRACTICES AND UNFAIR COMPETITION STATUTE,**
**HAW. REV. STAT. § 480-1,** *et seq.*
**(BROUGHT BY HAWAII CLASS AGAINST ANTHEM AND ALL OTHER DEFENDANTS**
**OPERATING IN HAWAII EXCEPT FOR BCBSA)**

569.    Plaintiffs incorporate the above allegations by reference.

570.    Plaintiffs bring this claim against Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS operating in Hawaii on behalf of the Hawaii Class.

571.    Hawaii Class Members are "consumers" as meant by Haw. Rev. Stat. § 480-1.

572.    Hawaii Class Members purchased "goods and services" from Defendants as meant by Haw. Rev. Stat. § 480-1.

573.    Hawaii Class Members' purchases of insurance and health benefits services from Defendants were for personal, family, and/or household purposes, as meant by Haw. Rev. Stat. § 480-1.

574.    Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS operating in Hawaii engaged in unfair methods of competition, unfair or deceptive acts or practices, misrepresentations, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of the services purchased by the Hawaii Class in violation of Haw. Rev. Stat. § 480-2(a), including but not limited to the following:

a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts, pertaining to the sale of insurance and health benefits services, to the Hawaii Class by representing that they would maintain adequate data privacy and security practices and procedures to safeguard Hawaii Class Members' Personal Information from unauthorized disclosure, release, data breaches, and theft;

b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts, pertaining to the sale of insurance and health benefits services, to the Hawaii Class by representing that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Hawaii Class Members' Personal Information;

c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted,

160

1 suppressed, and concealed the material fact of the inadequacy of the privacy and

2 security protections for Hawaii Class Members' Personal Information;

3 d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in unfair

4 acts and practices with respect to the sale of insurance and health benefits services by

5 failing to maintain the privacy and security of Hawaii Class Members' Personal

6 Information, in violation of duties imposed by and public policies reflected in

7 applicable federal and state laws, resulting in the Anthem Data Breach.  These unfair

8 acts and practices violated duties imposed by laws including the Federal Trade

9 Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d et. seq.), the Gramm-

10 Leach-Bliley Act (15 U.S.C. § 6801), Hawaii's Privacy of Consumer Financial

11 Information statute (Haw. Rev. Stat. § 431:3A-101, et seq.), Hawaii's Health

12 Maintenance Organization Act - Confidentiality of Medical Information (Haw. Rev.

13 Stat. § 432D-21), Hawaii's Patients' Bill of Rights and Responsibilities Act (Haw.

14 Rev. Stat. § 432E-10(b)(5)), and Hawaii's Unfair Methods of Competition and Unfair

15 and Deceptive Acts and Practices in the Business of Insurance Act (Haw. Rev. Stat. §

16 431:13-103(a)(1) and (a)(2)).

17 e) Defendants Anthem and Anthem Affiliates engaged in unfair acts and practices

18 with respect to the sale of insurance and health benefits services by failing to disclose

19 the Anthem Data Breach to Hawaii Class Members in a timely and accurate manner, in

20 violation of Haw, Rev. Stat. § 487N-2(a);

21 f)  Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in unfair

22 acts and practices with respect to the sale of insurance and health benefits services by

23 failing to take proper action following the Anthem Data Breach to enact adequate

24 privacy and security measures and protect Hawaii Class Members' Personal

25 Information from further unauthorized disclosure, release, data breaches, and theft.

26 575.    The above unfair and deceptive practices and acts by Defendants Anthem, Anthem

27 Affiliates and Non-Anthem BCBS were immoral, unethical, oppressive, and unscrupulous. These acts

28 caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial

161

1    injury outweighed any benefits to consumers or to competition.

2        576.    Defendants knew or should have known that their computer systems and data security

3    practices were inadequate to safeguard Hawaii Class Members' Personal Information and that risk of

4    a data breach or theft was highly likely.  Defendants' actions in engaging in the above-named unfair

5    practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with

6    respect to the rights of members of the Hawaii Class.

7        577.    As a direct and proximate result of Defendants' unlawful practices, Hawaii Class

8    Members suffered injury and/or damages.

9        578.    Hawaii Class Members seek relief under Haw. Rev. Stat. § 480-13, including, but not

10   limited to, damages, injunctive relief, attorneys' fees and costs, and treble damages.

11
                                    **Illinois**
                        **ILLINOIS CONSUMER FRAUD ACT,**
12                      **815 Ill. COMP. STAT. 505/1** *et seq.*
       **(BROUGHT BY ILLINOIS CLASS AGAINST ANTHEM AND ALL OTHER DEFENDANTS**
13                   **OPERATING IN ILLINOIS EXCEPT FOR BCBSA)**

14       579.    Plaintiffs incorporate the above allegations by reference.

15       580.    Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in deceptive,

16   unfair, and unlawful trade acts or practices in the conduct of trade or commerce, in violation of 815

17   Ill. Comp. Stat. 505/2, including but not limited to the following:

18           a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented

19               and fraudulently advertised material facts pertaining to the insurance and health

20               benefits services to the Illinois Class by representing and advertising that they would

21               maintain adequate data privacy and security practices and procedures to safeguard

22               Illinois Class Members' Personal Information from unauthorized disclosure, release,

23               data breaches, and theft;

24           b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented

25               material facts pertaining to insurance and health benefits services to the Illinois Class

26               by representing and advertising that they did and would comply with the requirements

27               of relevant federal and state laws pertaining to the privacy and security of Illinois

28               Class Members' Personal Information;

                                       162

c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted, suppressed, and concealed the material fact of the inadequacy of the privacy and security protections for Illinois Class Members' Personal Information with the intent that others rely on the omission, suppression, and concealment;

d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in deceptive, unfair, and unlawful trade acts or practices by failing to maintain the privacy and security of Illinois Class Members' Personal Information, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Anthem Data Breach.  These unfair acts and practices violated duties imposed by laws including the Federal Trade Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d et. seq.), the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), the Illinois Insurance Information and Privacy Protection Act (215 Ill. Comp. Stat 5/1014), Illinois laws regulating the use and disclosure of Social Security Numbers (815 Ill. Comp. Stat 505/2RR), and the Illinois Uniform Deceptive Trade Practices Act(815 Ill. Comp. Stat. 510/2(a));

e) Defendants Anthem and Anthem Affiliates engaged in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the Anthem Data Breach to Illinois Class Members in a timely and accurate manner, contrary to the duties imposed by 815 Ill. Comp. Stat. § 530/10(a);

f)  Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in deceptive, unfair, and unlawful trade acts or practices by failing to take proper action following the Anthem Data Breach to enact adequate privacy and security measures and protect Illinois Class Members' Personal Information from further unauthorized disclosure, release, data breaches, and theft.

581.   As a direct and proximate result of Defendants' deceptive trade practices, Illinois Class Members suffered injuries, including the loss of their legally protected interest in the confidentiality and privacy of their Personal Information, and damages, as described above.

582.   The above unfair and deceptive practices and acts by Defendants Anthem, Anthem

163

1   Affiliates and Non-Anthem BCBS were immoral, unethical, oppressive, and unscrupulous. These acts

2   caused substantial injury that these consumers could not reasonably avoid; this substantial injury

3   outweighed any benefits to consumers or to competition.

4         583.    Defendants knew or should have known that their computer systems and data security

5   practices were inadequate to safeguard Illinois Class Members' Personal Information and that risk of

6   a data breach or theft was highly likely. Defendants' actions in engaging in the above-named unfair

7   practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with

8   respect to the rights of members of the Illinois Class.

9         584.    Illinois Class Members seek relief under 815 Ill. Comp. Stat. 505/10a, including, but

10  not limited to, damages, restitution, punitive damages, injunctive relief, and/or attorneys' fees and

11  costs.

12  **ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT,**
**815 Ill. COMP. STAT. § 510/2(a)** *et. seq.*

13  **(BROUGHT BY ILLINOIS CLASS AGAINST ANTHEM AND ALL OTHER DEFENDANTS**
**OPERATING IN ILLINOIS EXCEPT FOR BCBSA)**

14        585.    Plaintiffs incorporate the above allegations by reference.

15        586.    While in the course of their businesses, Defendants Anthem, Anthem Affiliates and

16  Non-Anthem BCBS engaged in deceptive trade practices by making false representations, including

17  their representations that they had adequate computer systems and data security practices to protect

18  Personal Information, when their computer systems and data security practices were inadequate, in

19  violation of 815 Ill. Comp. Stat. 510/2(a)(5),(7).

20        587.    Defendants knew or should have known that their computer systems and data security

21  practices were inadequate and engaged in negligent, knowing, and/or willful acts of deception.

22        588.    Illinois Class Members are likely to be damaged by the Defendants' deceptive trade

23  practices.

24        589.    Illinois Class Members seek relief under 815 Ill. Comp. Stat. 510, including, but not

25  limited to, injunctive relief and attorney's fees.

26

27

28

**Indiana**
**INDIANA DECEPTIVE CONSUMER SALES ACT,**
**IND. CODE § 24-5-0.5-3**
**(BROUGHT BY Indiana CLASS AGAINST ANTHEM AND ALL OTHER DEFENDANTS**
**OPERATING IN INDIANA EXCEPT FOR BCBSA)**

590.    Plaintiffs incorporate the above allegations by reference.

591.    Members of the Indiana Class enrolled in and purchased health services from health maintenance organizations ("HMOs") operated by Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS in Indiana for personal, family, and/or household purposes.

592.    A "Health maintenance organization" for purposes of Indiana law means "a person that undertakes to provide or arrange for the delivery of health care services to enrollees on a prepaid basis, except for enrollee responsibility for copayments or deductibles." Ind. Code §27-13-1-19. The purchase of health care services from an HMO is not "insurance" under Indiana law, and a contract for payment for health services from an HMO, as defined in Ind. Code §27-13-1-10, is not a "contract of insurance."

593.    "Contracts of insurance" are exempt from the Indiana Deceptive Consumer Sales Act, but the pre-paid health benefits sold by HMOs are "consumer transactions" within the coverage of that Act, and Defendants selling HMO services are "suppliers." Ind. Code § 24-5-0.5-2(a)(1), (3), (4).

594.    Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS are "suppliers" who engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of "consumer transactions" pertaining to the purchase and sale of HMO services, in violation of Ind. Code § 24-5-0.5-3, including but not limited to the following:

> a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented and fraudulently advertised material facts pertaining to the HMO services to the Indiana Class by representing and advertising that they would maintain adequate data privacy and security practices and procedures to safeguard Indiana Class Members' Personal Information from unauthorized disclosure, release, data breaches, and theft;
>
> b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts pertaining to HMO services to the Indiana Class by representing and

165

advertising that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Indiana Class Members' Personal Information;

c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted, suppressed, and concealed the material fact of the inadequacy of the privacy and security protections for Indiana Class Members' Personal Information;

d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in deceptive, unfair, and unlawful trade acts or practices by failing to maintain the privacy and security of Indiana Class Members' Personal Information, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Anthem Data Breach.  These unfair acts and practices violated duties imposed by laws including the Federal Trade Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d et. seq.), the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), Indiana's HMO Confidentiality law (Ind. Code §27-13-31-1), and Indiana's data breach statute (§ 24-4.9-3.5);

e) Defendants Anthem and Anthem Affiliates engaged in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the Anthem Data Breach to Indiana Class Members in a timely and accurate manner, contrary to the duties imposed by Ind. Code § 24-4.9-3.3;

f)  Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in deceptive, unfair, and unlawful trade acts or practices by failing to take proper action following the Anthem Data Breach to enact adequate privacy and security measures and protect Indiana Class Members' Personal Information from further unauthorized disclosure, release, data breaches, and theft.

595.    As a direct and proximate result of Defendants' deceptive trade practices, Indiana Class Members suffered injuries, including the loss of their legally protected interest in the confidentiality and privacy of their Personal Information, and damages.

596.    The above unfair and deceptive practices and acts by Defendants Anthem, Anthem

166

1  Affiliates and Non-Anthem BCBS were immoral, unethical, oppressive, and unscrupulous. These acts

2  caused substantial injury to consumers that these consumers could not reasonably avoid; this

3  substantial injury outweighed any benefits to consumers or to competition.

4       597.    Defendants knew or should have known that their computer systems and data security

5  practices were inadequate to safeguard Indiana Class Members' Personal Information and that risk of

6  a data breach or theft was highly likely. Defendants' actions in engaging in the above-named unfair

7  practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with

8  respect to the rights of members of the Indiana Class.

9       598.    Indiana Class Members seek relief under Ind. Code §24-5-0.5-4, including, not limited

10 to damages, restitution, penalties, injunctive relief, and/or attorneys' fees and costs.  Senior Members

11 of the Indiana Class injured by Defendants' HMO unfair and deceptive trade practices also seek

12 treble damages, pursuant to § Ind. Code §24-5-0.5-4(i).

13 <div align="center">**Kentucky**<br>**KENTUCKY CONSUMER PROTECTION ACT,**</div>

14 <div align="center">**KY REV. STAT. § 367.110,** *et. seq.*[30]</div>

15 <div align="center">**(BROUGHT BY KENTUCKY CLASS AGAINST ANTHEM AND ALL OTHER**<br>**DEFENDANTS OPERATING IN KENTUCKY EXCEPT FOR BCBSA)**</div>

16      599.    Plaintiffs incorporate the above allegations by reference.

17      600.    Kentucky Class Members purchased insurance and health benefits services for

18 personal, family, and/or household purposes from Defendants.

19      601.    Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in deceptive,

20 unfair, and unlawful trade acts or practices in the conduct of trade or commerce, in violation of Ky.

21 Rev. Stat. § 367.170, including but not limited to the following:

22         a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented

23         and fraudulently advertised material facts pertaining to the insurance and health

24         benefits services to the Kentucky Class by representing and advertising that they

25         would maintain adequate data privacy and security practices and procedures to

26

27         [30] Plaintiffs recognize that the Court dismissed their class claims under the KCPA.  Plaintiffs re-

28 allege the claim here solely to preserve the issue for appeal.

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

safeguard Kentucky Class Members' Personal Information from unauthorized disclosure, release, data breaches, and theft;

b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts pertaining to insurance and health benefits services to the Kentucky Class by representing and advertising that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Kentucky Class Members' Personal Information;

c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted, suppressed, and concealed the material fact of the inadequacy of the privacy and security protections for Kentucky Class Members' Personal Information;

d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in deceptive, unfair, and unlawful trade acts or practices by failing to maintain the privacy and security of Kentucky Class Members Personal Information, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Anthem Data Breach.  These unfair acts and practices violated duties imposed by laws including the Federal Trade Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d et. seq.), and the Gramm-Leach-Bliley Act (15 U.S.C. § 6801);

e) Defendants Anthem and Anthem Affiliates engaged in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the Anthem Data Breach to Kentucky Class Members in a timely and accurate manner, contrary to the duties imposed by Ky. Rev. Stat. Ann. § 365.732(2).

f) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in deceptive, unfair, and unlawful trade acts or practices by failing to take proper action following the Anthem Data Breach to enact adequate privacy and security measures and protect Kentucky Class Members' Personal Information from further unauthorized disclosure, release, data breaches, and theft.

602.   The above unfair and deceptive practices and acts by Defendants Anthem, Anthem

168

1  Affiliates and Non-Anthem BCBS also violated Kentucky's Unfair Insurance Practices Act, Ky. Rev.

2  Stat. §304.12-010.

3      603.    As a direct and proximate result of Defendants' deceptive trade practices, Kentucky

4  Class Members suffered an ascertainable loss of money or property, real or personal, as described

5  above, including the loss of their legally protected interest in the confidentiality and privacy of their

6  Personal Information.

7      604.    The above unfair and deceptive practices and acts by Defendants Anthem, Anthem

8  Affiliates and Non-Anthem BCBS were immoral, unethical, oppressive, and unscrupulous. These acts

9  caused substantial injury to consumers that these consumers could not reasonably avoid; this

10  substantial injury outweighed any benefits to consumers or to competition.

11      605.    Defendants knew or should have known that their computer systems and data security

12  practices were inadequate to safeguard Kentucky Class Members' Personal Information and that risk

13  of a data breach or theft was highly likely. Defendants' actions in engaging in the above-named unfair

14  practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with

15  respect to the rights of members of the Kentucky Class.

16      606.    Kentucky Class Members seek relief under Ky. Rev. Stat. §367.220, including, not

17  limited to, damages, punitive damages, restitution and/or other equitable relief, injunctive relief,

18  and/or attorneys' fees and costs.

19                              **Maine**
                    **MAINE UNFAIR TRADE PRACTICES ACT,**
20                      **5 ME. REV. STAT. §505, 513**
         **(BROUGHT BY MAINE CLASS AGAINST ANTHEM AND BCBS OF MAINE)**
21

22      607.    Plaintiffs incorporate the above allegations by reference.

23      608.    Maine Class Members purchased insurance and health benefits services for personal,

24  family, and/or household purposes from Defendants.

25      609.    On November 2, 2015, Plaintiffs Gary Bellegarde, Mark Hatcher, and Robin Wilkey

26  sent a demand for relief to Anthem Health Plans of Maine, Inc. d/b/a Anthem Blue Cross and Blue

27  Shield of Maine on behalf of the Maine Class.

28      610.    On November 4, 2015, Plaintiffs Gary Bellegarde, Mark Hatcher, and Robin Wilkey

                                        169

1    sent a demand for relief to Anthem, Inc. on behalf of the Maine Class.

2         611.    Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in deceptive,

3    unfair, and unlawful trade acts or practices in the conduct of trade or commerce, in violation of 5 Me.

4    Rev. Stat. §207, including but not limited to the following:

5              a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented

6              and fraudulently advertised material facts pertaining to the insurance and health

7              benefits services to the Maine Class by representing and advertising that they would

8              maintain adequate data privacy and security practices and procedures to safeguard

9              Maine Class Members' Personal Information from unauthorized disclosure, release,

10             data breaches, and theft;

11             b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented

12             material facts pertaining to insurance and health benefits services to the Maine Class

13             by representing and advertising that they did and would comply with the requirements

14             of relevant federal and state laws pertaining to the privacy and security of Maine Class

15             Members' Personal Information;

16             c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted,

17             suppressed, and concealed the material fact of the inadequacy of the privacy and

18             security protections for Maine Class Members' Personal Information;

19             d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in

20             deceptive, unfair, and unlawful trade acts or practices by failing to maintain the

21             privacy and security of Maine Class Members Personal Information, in violation of

22             duties imposed by and public policies reflected in applicable federal and state laws,

23             resulting in the Anthem Data Breach.  These unfair acts and practices violated duties

24             imposed by laws including the Federal Trade Commission Act (15 U.S.C. § 45),

25             HIPAA (42 U.S.C. § 1302d et. seq.), the Gramm-Leach-Bliley Act (15 U.S.C. § 6801),

26             and the Maine Insurance Information and Privacy Protection Act (Me. Rev. Stat. 24-A,

27             § 2215(1).

28             e) Defendants Anthem and Anthem Affiliates engaged in deceptive, unfair, and

170

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

unlawful trade acts or practices by failing to disclose the Anthem Data Breach to Maine Class Members in a timely and accurate manner, contrary to the duties imposed by 10 Me. Rev. Stat. § 1348(1);

f)  Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in deceptive, unfair, and unlawful trade acts or practices by failing to take proper action following the Anthem Data Breach to enact adequate privacy and security measures and protect Maine Class Members' Personal Information from further unauthorized disclosure, release, data breaches, and theft.

612.    As a direct and proximate result of Defendants' deceptive trade practices, Maine Class Members suffered an ascertainable loss of money or property, real or personal, as described above, including the loss of their legally protected interest in the confidentiality and privacy of their Personal Information.

613.    The above unfair and deceptive practices and acts by Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that these consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

614.    Defendants knew or should have known that their computer systems and data security practices were inadequate to safeguard Maine Class Members' Personal Information and that risk of a data breach or theft was highly likely. Defendants' actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Maine Class.

615.    Maine Class Members seek relief under 5 Me. Rev. Stat. §213, including, not limited to, damages, restitution, injunctive relief, and/or attorneys' fees and costs.

### MAINE UNIFORM DECEPTIVE TRADE PRACTICES ACT, 10 ME. REV. STAT. § 1212, *et. seq.* (BROUGHT BY MAINE CLASS AGAINST ANTHEM AND ALL OTHER DEFENDANTS OPERATING IN MAINE EXCEPT FOR BCBSA)

616.    Plaintiffs incorporate the above allegations by reference.

617.    While in the course of their businesses, Defendants Anthem, Anthem Affiliates, and

1  Non-Anthem BCBS engaged in deceptive trade practices by making false representations, including

2  their representations that they had adequate computer systems and data security practices to protect

3  Personal Information, when their computer systems and data security practices were inadequate, in

4  violation of 10 Me. Rev. Stat. §1212(E),(G).

5      618.    Defendants knew or should have known that their computer systems and data security

6  practices were inadequate and engaged in negligent, knowing, and/or willful acts of deception.

7      619.    Maine Class Members are likely to be damaged by the Defendants' deceptive trade

8  practices.

9      620.    Maine Class Members seek relief under 10 Me. Rev. Stat. §1213, including, but not

10  limited to, injunctive relief and attorney's fees.

11  **Maryland**
**MARYLAND CONSUMER PROTECTION ACT,**

12  **MD CODE COMMERCIAL LAW, § 13-301,** *et. seq.*
**(BROUGHT BY MARYLAND CLASS AGAINST ANTHEM AND ALL OTHER**

13  **DEFENDANTS OPERATING IN MARYLAND EXCEPT FOR BCBSA)**

14      621.    Plaintiffs incorporate the above allegations by reference.

15      622.    Plaintiffs bring this claim against Defendants Anthem, Anthem Affiliates and Non-

16  Anthem BCBS operating in the Maryland on behalf of the Maryland Class.

17      623.    Maryland Class Members are "consumers" as meant by Md. Code Ann., Com. Law §

18  13-101.

19      624.    Insurance and health benefits services are "consumer goods" and/or "consumer

20  services" as meant by Md. Code Ann., Com. Law § 13-101.

21      625.    The unlawful trade practices, misrepresentations, and omissions described herein did

22  not constitute "professional services" on the part of Defendants.

23      626.    Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS operating in

24  Maryland engaged in unlawful trade practices, misrepresentations, and the concealment, suppression,

25  and omission of material facts with respect to the sale and advertisement of the services in violation

26  of Md. Code Ann., Com. Law § 13-301, including but not limited to the following:

27      a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented

28      material facts, pertaining to the sale of insurance and health benefits services, to the

172

Maryland Class by representing that they would maintain adequate data privacy and security practices and procedures to safeguard Maryland Class Members' Personal Information from unauthorized disclosure, release, data breaches, and theft in violation of Md. Code Ann., Com. Law § 13-301(1), (2)(i), (2)(iv), (3), (5)(i), (9)(i), (9)(iii), and 14(xxi);

b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts, pertaining to the sale of insurance and health benefits services, to the Maryland Class by representing that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Maryland Members' Personal Information in violation of Md. Code Ann., Com. Law § 13-301(1), (2)(i), (2)(iv), (3), (5)(i), (9)(i), (9)(iii), and 14(xxi);

c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted, suppressed, and concealed the material fact of the inadequacy of the privacy and security protections for Maryland Class Members' Personal Information in violation of Md. Code Ann., Com. Law § 13-301(1), (2)(i), (2)(iv), (3), (5)(i), (9)(i), (9)(iii), and 14(xxi);

d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in unfair acts and practices with respect to the sale of insurance and health benefits services by failing to maintain the privacy and security of Maryland Class Members' Personal Information, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Anthem Data Breach.  These unfair acts and practices violated duties imposed by laws including the Federal Trade Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d et. seq.), the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), Maryland's Confidentiality of Medical Records Act (Md. Code Ann., Health-Gen. §§ 4-302; 4-303(a)); Maryland's Disclosure Requirements for Insurers statute (Md. Code, Ins. § 4-403); Maryland's Disclosure Requirements for Nonprofit Health Service Plans statute (Md. Code, Ins. § 14-138); Maryland's Privacy of Consumer Financial and Health Information regulations (Md.

Code Regs. 31.16.08.01, et seq.); Maryland's data breach statute (Md. Code Ann. Com. Law § 14-3503), and Maryland's Social Security Number Privacy Act (Md. Code Ann., Com. Law § 14-3401, et seq.);

e) Defendants Anthem and Anthem Affiliates engaged in unfair acts and practices with respect to the sale of insurance and health benefits services by failing to disclose the Anthem Data Breach to Maryland Class Members in a timely and accurate manner, in violation of Md. Code Com. Law § 14-3504(b)(3);

f) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in unfair acts and practices with respect to the sale of insurance and health benefits services by failing to take proper action following the Anthem Data Breach to enact adequate privacy and security measures and protect Maryland Class Members' Personal Information from further unauthorized disclosure, release, data breaches, and theft.

627. The above unfair and deceptive practices and acts by Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

628. Defendants knew or should have known that their computer systems and data security practices were inadequate to safeguard Maryland Class Members' Personal Information and that risk of a data breach or theft was highly likely. Defendants' actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Maryland Class.

629. As a direct and proximate result of Defendants' unlawful practices, Maryland Class Members suffered injury and/or damages.

630. Maryland Class Members seek relief under Md. Code Ann., Com. Law § 13-408, including, but not limited to, damages, injunctive relief, and attorneys' fees and costs.

174
SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

**Massachusetts**
**MASSACHUSETTS CONSUMER PROTECTION ACT,**
**MASS. GEN. LAWS ANN. CH. 93A, § 1,** *et. seq.*
**(BROUGHT BY MASSACHUSETTS CLASS AGAINST ANTHEM, BLUE CROSS BLUE**
**SHIELD OF MASSACHUSETTS, EMPIRE BLUE CROSS AND BLUE SHIELD, UNICARE**
**LIFE AND HEALTH INSURANCE COMPANY)**

631.    Plaintiffs incorporate the above allegations by reference.

632.    Plaintiffs bring this claim against Defendant Anthem on behalf of the Massachusetts

Class.

633.    Plaintiff Lisa Daniels sent a demand for relief to Anthem, on behalf of the

Massachusetts Class, on February 27, 2015.

634.    Plaintiffs Darrell Hunter, Carrie Ramos, Lisa Daniels, and Fari Zand sent a demand for

relief to Defendant Blue Cross Blue Shield of Massachusetts, Inc., on behalf of the Massachusetts

Class, on November 2, 2015.

635.    Plaintiff Claudia Cass sent a demand for relief to Defendant Empire HealthChoice

Assurance, Inc. d/b/a Empire Blue Cross and Blue Shield, on behalf of the Massachusetts Class, on

November 2, 2015.

636.    Plaintiff Robert Roy sent a demand for relief to Defendant Unicare Life & Health

Insurance Company on behalf of the Massachusetts Class, on November 2, 2015.

637.    Defendant Anthem operates in "trade or commerce" as meant by Mass. Gen. Laws

Ann. ch. 93A, § 1.

638.    Defendant Anthem engaged in deceptive and unfair acts and practices,

misrepresentation, and the concealment, suppression, and omission of material facts with respect to

the sale and advertisement of services in violation of Mass. Gen. Laws Ann. ch. 93A, § 2(a),

including but not limited to the following:

a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented

material facts, pertaining to the sale of insurance and health benefits services, to the

Massachusetts Class by representing that they would maintain adequate data privacy

and security practices and procedures to safeguard Massachusetts Class Members'

Personal Information from unauthorized disclosure, release, data breaches, and theft;

175

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts, pertaining to the sale of insurance and health benefits services, to the Massachusetts Class by representing that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Massachusetts Class Members' Personal Information;

c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted, suppressed, and concealed the material fact of the inadequacy of the privacy and security protections for Massachusetts Class Members' Personal Information;

d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in unfair acts and practices with respect to the sale of insurance and health benefits services by failing to maintain the privacy and security of Massachusetts Class Members' Personal Information, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Anthem Data Breach.  These unfair acts and practices violated duties imposed by laws including the Federal Trade Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d et. seq.), the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), the Massachusetts Insurance Information and Privacy Protection Act (Mass. Gen. Laws ch. 175I, § 13), the Massachusetts Unfair Methods of Competition and Unfair and Deceptive Acts and Practices in the Business of Insurance statute (Mass. Gen. Laws Ann. ch. 176D, §§ 3(1)(a) and 3(2)); the Massachusetts Right of Privacy statute (Mass. Gen. Laws Ann. ch. 214, § 1B), and the Massachusetts data breach statute (Mass. Gen. Laws Ann. ch. 93H § 3(a));

e) Defendants Anthem and Anthem Affiliates engaged in unfair acts and practices with respect to the sale of insurance and health benefits services by failing to disclose the Anthem Data Breach to Massachusetts Class Members in a timely and accurate manner, in violation of Mass. Gen. Laws Ann. ch. 93H, § 3(a);

f) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in unfair acts and practices with respect to the sale of insurance and health benefits services by failing to take proper action following the Anthem Data Breach to enact adequate

176

privacy and security measures and protect Massachusetts Class Members' Personal

Information from further unauthorized disclosure, release, data breaches, and theft.

639.     The above unfair and deceptive practices and acts by Defendant Anthem were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition. These acts were within the penumbra of common law, statutory, or other established concepts of unfairness.

640.     Anthem knew or should have known that their computer systems and data security practices were inadequate to safeguard Massachusetts Class Members' Personal Information and that risk of a data breach or theft was highly likely.  Anthem's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Massachusetts Class.

641.     As a direct and proximate result of Anthem's unlawful practices, Massachusetts Class Members suffered injury and/or damages.

642.     Massachusetts Class Members seek relief under Mass. Gen. Laws Ann. ch. 93A, § 9, including, but not limited to, actual damages, double or treble damages, injunctive and/or other equitable relief, and/or attorneys' fees and costs.

**Minnesota**
**MINNESOTA CONSUMER FRAUD ACT,**
**MINN. STAT. § 325F.68, et. seq. AND MINN. STAT. §8.31, et. seq.**
**(BROUGHT BY MINNESOTA CLASS AGAINST ANTHEM AND ALL OTHER**
**DEFENDANTS OPERATING IN MINNESOTA EXCEPT FOR BCBSA)**

643.     Plaintiffs incorporate the above allegations by reference.

644.     Plaintiffs bring this claim against Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS operating in Minnesota on behalf of the Minnesota Class.

645.     Insurance and health benefits services are "merchandise" as defined by Minn. Stat. § 325F.68.

646.     Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS operating in Minnesota engaged in unlawful practices, misrepresentation, and the concealment, suppression, and

omission of material facts with respect to the sale and advertisement of  services in violation of Minn. Stat. Ann. § 325F.69, including but not limited to the following:

a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts, pertaining to the sale of insurance and health benefits services, to the Minnesota Class by representing that they would maintain adequate data privacy and security practices and procedures to safeguard Minnesota Class Members' Personal Information from unauthorized disclosure, release, data breaches, and theft;

b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts, pertaining to the sale of insurance and health benefits services, to the Minnesota Class by representing that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Minnesota Class Members' Personal Information;

c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted, suppressed, and concealed the material fact of the inadequacy of the privacy and security protections for Minnesota Class Members' Personal Information;

d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in unfair acts and practices with respect to the sale of insurance and health benefits services by failing to maintain the privacy and security of Minnesota Class Members' Personal Information, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Anthem Data Breach.  These unfair acts and practices violated duties imposed by laws including the Federal Trade Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d, et seq.), the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), the Minnesota Insurance Fair Information Reporting Act (Minn. Stat. § 72A.49, et seq.), the Minnesota Health Records Act (Minn. Stat. § 144.291, et seq.), and the Minnesota Unfair Claims Practices Act (Minn. Stat. § 72A.17, et seq.);

e) Defendants Anthem and Anthem Affiliates engaged in unlawful and deceptive acts and practices with respect to the sale of insurance and health benefits services by

178

1    failing to disclose the Anthem Data Breach to Minnesota Class Members in a timely

2    and accurate manner, in violation of Minn. Stat. Ann. § 325E.61(1)(a);

3    f)  Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in

4    unlawful and deceptive acts and practices with respect to the sale of insurance and

5    health benefits services by failing to take proper action following the Anthem Data

6    Breach to enact adequate privacy and security measures and protect Minnesota Class

7    Members' Personal Information from further unauthorized disclosure, release, data

8    breaches, and theft.

9    647.    The above unlawful and deceptive acts and practices and acts by Defendants Anthem,

10   Anthem Affiliates and Non-Anthem BCBS were immoral, unethical, oppressive, and unscrupulous.

11   These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this

12   substantial injury outweighed any benefits to consumers or to competition.

13   648.    Defendants knew or should have known that their computer systems and data security

14   practices were inadequate to safeguard Minnesota Class Members' Personal Information and that risk

15   of a data breach or theft was highly likely.  Defendants' actions in engaging in the above-named

16   unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless

17   with respect to the rights of members of the Minnesota Class.

18   649.    As a direct and proximate result of Defendants' unlawful practices, Minnesota Class

19   Members suffered injury and/or damages.

20   650.    Minnesota Class Members seek relief under Minn. Stat. Ann. § 8.31, including, but not

21   limited to, damages, injunctive and/or other equitable relief, and attorneys' fees and costs.

22
**MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT,**
**MINN. STAT. § 325D.43, *et. seq.***
23
**(BROUGHT BY MINNESOTA CLASS AGAINST ANTHEM AND ALL OTHER**
**DEFENDANTS OPERATING IN MINNESOTA EXCEPT FOR BCBSA)**
24

651.    Plaintiffs incorporate the above allegations by reference.
25

26   652.    Plaintiffs bring this claim against Defendants Anthem, Anthem Affiliates and Non-

Anthem BCBS operating in Minnesota on behalf of the Minnesota Class.
27

28   653.    Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS operating in

1   Minnesota engaged in deceptive practices, misrepresentation, and the concealment, suppression, and

2   omission of material facts with respect to the sale and advertisement of the insurance and health

3   benefits services in violation of Minn. Stat. § 325D.44, including but not limited to the following:

4         a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented

5         material facts, pertaining to the sale of insurance and health benefits services, to the

6         Minnesota Class by representing that they would maintain adequate data privacy and

7         security practices and procedures to safeguard Minnesota Class Members' Personal

8         Information from unauthorized disclosure, release, data breaches, and theft in violation

9         of Minn. Stat. § 325D.44(5), (7), (9), and (13);

10        b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented

11        material facts, pertaining to the sale of insurance and health benefits services, to the

12        Minnesota Class by representing that they did and would comply with the

13        requirements of relevant federal and state laws pertaining to the privacy and security

14        of Minnesota Class Members' Personal Information in violation of Minn. Stat. §

15        325D.44(5), (7), (9), and (13);

16        c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted,

17        suppressed, and concealed the material fact of the inadequacy of the privacy and

18        security protections for Minnesota Class Members' Personal Information in violation

19        of Minn. Stat. § 325D.44(5), (7), (9), and (13);

20        d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in unfair

21        acts and practices with respect to the sale of insurance and health benefits services by

22        failing to maintain the privacy and security of Minnesota Class Members' Personal

23        Information, in violation of duties imposed by and public policies reflected in

24        applicable federal and state laws, resulting in the Anthem Data Breach.  These unfair

25        acts and practices violated duties imposed by laws including the Federal Trade

26        Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d, et seq.), the Gramm-

27        Leach-Bliley Act (15 U.S.C. § 6801), the Minnesota Insurance Fair Information

28        Reporting Act (Minn. Stat. § 72A.49, et seq.), the Minnesota Health Records Act

(Minn. Stat. § 144.291, et seq.), and the Minnesota Unfair Claims Practices Act (Minn. Stat. § 72A.17, et seq.);

e) Defendants Anthem and Anthem Affiliates engaged in unlawful and deceptive acts and practices with respect to the sale of insurance and health benefits services by failing to disclose the Anthem Data Breach to Minnesota Class Members in a timely and accurate manner, in violation of Minn. Stat. Ann. § 325E.61(1)(a);

f) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in unlawful and deceptive acts and practices with respect to the sale of insurance and health benefits services by failing to take proper action following the Anthem Data Breach to enact adequate privacy and security measures and protect Minnesota Class Members' Personal Information from further unauthorized disclosure, release, data breaches, and theft.

654.    The above unlawful and deceptive acts and practices and acts by Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

655.    Defendants knew or should have known that their computer systems and data security practices were inadequate to safeguard Minnesota Class Members' Personal Information and that risk of a data breach or theft was highly likely.  Defendants' actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Minnesota Class.

656.    As a direct and proximate result of Defendants' unlawful and deceptive trade practices, the Anthem Data Breach affected thousands of Minnesotans.  Even beyond these Minnesotans, the impact on the public is widespread, including the long-term impairment of credit scores, fraudulent tax filings, and national security implications.

657.    As a direct and proximate result of Defendants' unlawful practices, Minnesota Class Members suffered injury and/or damages.

658.    Minnesota Class Members seek relief under Minn. Stat. § 325D.45, including, but not

1   limited to, injunctive relief and attorneys' fees and costs, and also seek relief under Minn. Stat. Ann.

2   § 8.31, including, but not limited to, damages.

3                                        **Missouri**
                            **MISSOURI MERCHANDISING PRACTICES ACT,**
4                              **MO. STAT. § 407.010, *et seq.***
                   **(BROUGHT BY MISSOURI CLASS AGAINST ANTHEM AND ALL OTHER**
5                   **DEFENDANTS OPERATING IN MISSOURI EXCEPT FOR BCBSA.)**

6          659.    Plaintiffs incorporate the above allegations by reference.

7          660.    Plaintiffs bring this claim against Defendants Anthem, Anthem Affiliates and Non-

8   Anthem BCBS operating in Missouri on behalf of the Missouri Class.

9          661.    Missouri Class Members purchased "merchandise" in "trade" or "commerce" as meant

10  by Mo. Stat. § 407.010 when they purchased insurance and health benefits services for personal,

11  family, and/or household purposes.

12         662.    Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS operating in

13  Missouri engaged in unlawful, unfair, and deceptive acts and practices, misrepresentation, and the

14  concealment, suppression, and omission of material facts with respect to the sale and advertisement

15  of the services in violation of Mo. Stat. § 407.020(1), including but not limited to the following:

16                 a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented

17                 material facts, pertaining to the sale of insurance and health benefits services, to the

18                 Missouri Class by representing that they would maintain adequate data privacy and

19                 security practices and procedures to safeguard Missouri Class Members' Personal

20                 Information from unauthorized disclosure, release, data breaches, and theft;

21                 b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented

22                 material facts, pertaining to the sale of insurance and health benefits services, to the

23                 Missouri Class by representing that they did and would comply with the requirements

24                 of relevant federal and state laws pertaining to the privacy and security of Missouri

25                 Class Members' Personal Information;

26                 c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted,

27                 suppressed, and concealed the material fact of the inadequacy of the privacy and

28                 security protections for Missouri Class Members' Personal Information;

                                                182

d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in unfair acts and practices with respect to the sale of insurance and health benefits services by failing to maintain the privacy and security of Missouri Class Members' Personal Information, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Anthem Data Breach.  These unfair acts and practices violated duties imposed by laws including the Federal Trade Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d, et seq.), the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), the Missouri Unfair Trade Practice Act (Mo. Stat. § 375.936(4) and (6)(a)), and Missouri Statute § 354-525;

e) Defendants Anthem and Anthem Affiliates engaged in unlawful and deceptive acts and practices with respect to the sale of insurance and health benefits services by failing to disclose the Anthem Data Breach to Missouri Class Members in a timely and accurate manner, in violation of MO. Rev. Stat. § 407.1500(2)(1)(a);

f)  Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in unlawful and deceptive acts and practices with respect to the sale of insurance and health benefits services by failing to take proper action following the Anthem Data Breach to enact adequate privacy and security measures and protect Missouri Class Members' Personal Information from further unauthorized disclosure, release, data breaches, and theft.

663.    The above unlawful and deceptive acts and practices and acts by Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

664.    Defendants knew or should have known that their computer systems and data security practices were inadequate to safeguard Missouri Class Members' Personal Information and that risk of a data breach or theft was highly likely.  Defendants' actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Missouri Class.

665.     As a direct and proximate result of Defendants' unlawful practices, Missouri Class Members suffered an ascertainable loss of money or property, real or personal, as described above, including the loss of their legally protected interest in the confidentiality and privacy of their Personal Information.

666.     Missouri Class Members seek relief under Mo. Ann. Stat. § 407.025, including, but not limited to, injunctive relief, actual damages, punitive damages, and attorneys' fees and costs.

**Montana**
**MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT, MCA § 30-14-101, _et seq._**
**(BROUGHT BY MONTANA CLASS AGAINST ANTHEM AND ALL OTHER DEFENDANTS OPERATING IN MONTANA EXCEPT FOR BCBSA**

667.     Plaintiffs incorporate the above allegations by reference.

668.     Plaintiffs bring this claim against Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS operating in Montana on behalf of the Montana Class.

669.     The Montana Class Members are "consumers" as meant by Mont. Code § 30-14-102.

670.     The Montana Class Members purchased insurance and health benefits services from Defendants in "trade" and "commerce," as meant by Mont. Code § 30-14-102, for personal, family, and/or household purposes.

671.     Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS operating in Montana engaged in unlawful, unfair, and deceptive acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of the services purchased by the Montana Class in violation Mont. Code § 30-14-103, including but not limited to the following:

a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts, pertaining to the sale of insurance and health benefits services, to the Montana Class by representing that they would maintain adequate data privacy and security practices and procedures to safeguard Montana Class Members' Personal Information from unauthorized disclosure, release, data breaches, and theft;

b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts, pertaining to the sale of insurance and health benefits services, to the

184

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

Montana Class by representing that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Montana Class Members' Personal Information;

c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted, suppressed, and concealed the material fact of the inadequacy of the privacy and security protections for Montana Class Members' Personal Information;

d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in unfair, unlawful, and deceptive acts and practices with respect to the sale of insurance and health benefits services by failing to maintain the privacy and security of Montana Class Members' Personal Information, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Anthem Data Breach.  These unfair, unlawful, and deceptive acts and practices violated duties imposed by laws including the Federal Trade Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d, et seq.), the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), the Montana Insurance Information and Privacy Protection Act (Mont. Code Ann. § 33-19-306); and the Montana Unfair Claim Settlement Practices Act (Mont. Code Ann. § 33-18-201(1));

e) Defendants Anthem and Anthem Affiliates engaged in unlawful, unfair, and deceptive acts and practices with respect to the sale of insurance and health benefits services by failing to disclose the Anthem Data Breach to Montana Class Members in a timely and accurate manner, in violation of Mont. Code Ann. § 30-14-1704(1);

f)  Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in unlawful, unfair, and deceptive acts and practices with respect to the sale of insurance and health benefits services by failing to take proper action following the Anthem Data Breach to enact adequate privacy and security measures and protect Montana Class Members' Personal Information from further unauthorized disclosure, release, data breaches, and theft.

672.   The above unlawful, unfair, and deceptive acts and practices by Defendants Anthem,

185

1    Anthem Affiliates and Non-Anthem BCBS were immoral, unethical, oppressive, and unscrupulous.

2    These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this

3    substantial injury outweighed any benefits to consumers or to competition.

4           673.    Defendants knew or should have known that their computer systems and data security

5    practices were inadequate to safeguard Montana Class Members' Personal Information and that risk

6    of a data breach or theft was highly likely.  Defendants' actions in engaging in the above-named

7    deceptive acts and practices were negligent, knowing and willful, and/or wanton and reckless with

8    respect to the rights of members of the Montana Class.

9           674.    As a direct and proximate result of Defendants' deceptive acts and practices, the

10   Montana Class Members suffered an ascertainable loss of money or property, real or personal, as

11   described above, including the loss of their legally protected interest in the confidentiality and privacy

12   of their Personal Information.

13          675.    Montana Class Members seek relief under Mont. Code § 30-14-133, including, but not

14   limited to, injunctive relief, other equitable relief, actual damages or $500 per Class Member,

15   whichever is greater, treble damages, and attorneys' fees and costs.

16                                      **Nebraska**
                           **NEBRASKA CONSUMER PROTECTION ACT,**
17                           **NEB. REV. STAT. § 59-1601,** *et. seq.*
                **(BROUGHT BY NEBRASKA CLASS AGAINST ANTHEM AND ALL OTHER**
18              **DEFENDANTS OPERATING IN NEBRASKA EXCEPT FOR BCBSA)**

19          676.    Plaintiffs incorporate the above allegations by reference.

20          677.    Plaintiffs bring this claim against Defendants Anthem, Anthem Affiliates and Non-

21   Anthem BCBS operating in Nebraska on behalf of the Nebraska Class.

22          678.    Defendants engage in "trade and commerce," as meant by Neb. Rev. Stat. § 59-1601,

23   by selling health insurance and health benefits services."

24          679.    Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS operating in

25   Nebraska engaged in unfair and deceptive acts and practices, misrepresentation, and the concealment,

26   suppression, and omission of material facts with respect to the sale and advertisement of the services

27   in violation of Neb. Rev. Stat. § 59-1602, including but not limited to the following:

28                 a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented

                                            186

material facts, pertaining to the sale of insurance and health benefits services, to the
Nebraska Class by representing that they would maintain adequate data privacy and
security practices and procedures to safeguard Nebraska Class Members' Personal
Information from unauthorized disclosure, release, data breaches, and theft;

b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented
material facts, pertaining to the sale of insurance and health benefits services, to the
Nebraska Class by representing that they did and would comply with the requirements
of relevant federal and state laws pertaining to the privacy and security of Nebraska
Class Members' Personal Information;

c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted,
suppressed, and concealed the material fact of the inadequacy of the privacy and
security protections for Nebraska Class Members' Personal Information;

d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in unfair
acts and practices with respect to the sale of insurance and health benefits services by
failing to maintain the privacy and security of Nebraska Class Members' Personal
Information, in violation of duties imposed by and public policies reflected in
applicable federal and state laws, resulting in the Anthem Data Breach.  These unfair
acts and practices violated duties imposed by laws including the Federal Trade
Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d, et seq.), the Gramm-
Leach-Bliley Act (15 U.S.C. § 6801), the Nebraska Privacy of Insurance Consumer
Information Act (Neb. Rev. Stat. §§ 44-910, 44-916), and the Nebraska Unfair
Insurance Trade Practices Act (Neb. Rev. Stat. §§ 44-1524, 44-1425);

e) Defendants Anthem and Anthem Affiliates engaged in unlawful and deceptive acts
and practices with respect to the sale of insurance and health benefits services by
failing to disclose the Anthem Data Breach to Nebraska Class Members in a timely
and accurate manner, in violation of Neb. Rev. Stat. Ann. § 87-803(1);

f)  Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in
unlawful and deceptive acts and practices with respect to the sale of insurance and

health benefits services by failing to take proper action following the Anthem Data Breach to enact adequate privacy and security measures and protect Nebraska Class Members' Personal Information from further unauthorized disclosure, release, data breaches, and theft.

680. The above unlawful and deceptive acts and practices and acts by Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

681. Defendants knew or should have known that their computer systems and data security practices were inadequate to safeguard Nebraska Class Members' Personal Information and that risk of a data breach or theft was highly likely. Defendants' actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Nebraska Class.

682. As a direct and proximate result of Defendants' unlawful practices, Nebraska Class Members suffered injury and/or damages.

683. Nebraska Class Members seek relief under Neb. Rev. Stat. § 59-1609, including, but not limited to, injunctive relief, actual damages, and attorneys' fees and costs.

**NEBRASKA UNIFORM DECEPTIVE TRADE PRACTICES ACT,**
**NEB. REV. STAT. § 87-301,** *et. seq.*
**(BROUGHT BY NEBRASKA CLASS AGAINST ANTHEM AND ALL OTHER**
**DEFENDANTS OPERATING IN NEBRASKA EXCEPT FOR BCBSA)**

684. Plaintiffs incorporate the above allegations by reference.

685. Plaintiffs bring this claim against Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS operating in Nebraska on behalf of the Nebraska Class.

686. Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS operating in Nebraska engaged in deceptive trade practices, misrepresentation, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of health insurance and benefits services purchased by the Nebraska Class in violation of Neb. Rev. Stat. § 87-302, including but not limited to the following:

188

a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts, pertaining to the sale of insurance and health benefits services, to the Nebraska Class by representing that they would maintain adequate data privacy and security practices and procedures to safeguard Nebraska Class Members' Personal Information from unauthorized disclosure, release, data breaches, and theft in violation of Neb. Rev. Stat. § 87-302(5), (7), (9), (14), and (15);

b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts, pertaining to the sale of insurance and health benefits services, to the Nebraska Class by representing that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Nebraska Class Members' Personal Information in violation of Neb. Rev. Stat. § 87-302(5), (7), (9), (14), and (15);

c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted, suppressed, and concealed the material fact of the inadequacy of the privacy and security protections for Nebraska Class Members' Personal Information in violation of Neb. Rev. Stat. § 87-302(5), (7), (9), (14), and (15);

d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in deceptive trade practices with respect to the sale of insurance and health benefits services by failing to maintain the privacy and security of Nebraska Class Members' Personal Information, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Anthem Data Breach.  These deceptive trade practices violated duties imposed by laws including the Federal Trade Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d, et seq.), the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), the Nebraska Privacy of Insurance Consumer Information Act (Neb. Rev. Stat. §§ 44-910, 44-916), and the Nebraska Unfair Insurance Trade Practices Act (Neb. Rev. Stat. §§ 44-1524, 44-1425);

e) Defendants Anthem and Anthem Affiliates engaged in deceptive trade practices with respect to the sale of insurance and health benefits services by failing to disclose

189

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

1   the Anthem Data Breach to Nebraska Class Members in a timely and accurate manner,

2   in violation of Neb. Rev. Stat. Ann. § 87-803(1);

3   f)  Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in

4   deceptive trade practices with respect to the sale of insurance and health benefits

5   services by failing to take proper action following the Anthem Data Breach to enact

6   adequate privacy and security measures and protect Nebraska Class Members'

7   Personal Information from further unauthorized disclosure, release, data breaches, and

8   theft.

9   687.   The above deceptive trade practices by Defendants Anthem, Anthem Affiliates and

10   Non-Anthem BCBS were immoral, unethical, oppressive, and unscrupulous. These acts caused

11   substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury

12   outweighed any benefits to consumers or to competition.

13   688.   Defendants knew or should have known that their computer systems and data security

14   practices were inadequate to safeguard Nebraska Class Members' Personal Information and that risk

15   of a data breach or theft was highly likely.  Defendants' actions in engaging in the above-named

16   unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless

17   with respect to the rights of members of the Nebraska Class.

18   689.   As a direct and proximate result of Defendants' unlawful practices, Nebraska Class

19   Members suffered injury and/or damages.

20   690.   Nebraska Class Members seek relief under Neb. Rev. Stat. § 87-303, including, but

21   not limited to, injunctive relief, other equitable relief, and attorneys' fees and costs.

22   **Nevada**
**NEVADA DECEPTIVE TRADE PRACTICES ACT,**
23   **NEV. REV. STAT. § 598.0915, *et. seq.*; NEV. REV. STAT. § 41.600, *et. seq.***
**(BROUGHT BY NEVADA CLASS AGAINST ANTHEM AND ALL OTHER DEFENDANTS**
24   **OPERATING IN NEVADA EXCEPT FOR BCBSA)**

25   691.   Plaintiffs incorporate the above allegations by reference.

26   692.   Plaintiffs bring this claim against Defendants Anthem, Anthem Affiliates and Non-

27   Anthem BCBS operating in Nevada on behalf of the Nevada Class.

28   693.   In the course of their businesses, Defendants Anthem, Anthem Affiliates, and Non-

1   Anthem BCBS operating in Nevada engaged in deceptive acts and practices, misrepresentation, and

2   the concealment, suppression, and omission of material facts with respect to the sale and

3   advertisement of health insurance and health benefits services in violation of Nev. Rev. Stat. §

4   598.0915, including but not limited to the following:

5           a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented

6               material facts, pertaining to the sale of insurance and health benefits services, to the

7               Nebraska Class by representing that they would maintain adequate data privacy and

8               security practices and procedures to safeguard Nevada Class Members' Personal

9               Information from unauthorized disclosure, release, data breaches, and theft, in

10              violation of Nev. Rev. Stat. § 598.0915(5), (7), (9), and (15);

11          b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented

12              material facts, pertaining to the sale of insurance and health benefits services, to the

13              Nevada Class by representing that they did and would comply with the requirements

14              of relevant federal and state laws pertaining to the privacy and security of Nebraska

15              Class Members' Personal Information, in violation of Nev. Rev. Stat. § 598.0915(5),

16              (7), (9), and (15);

17          c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted,

18              suppressed, and concealed the material fact of the inadequacy of the privacy and

19              security protections for Nevada Class Members' Personal Information, in violation of

20              Nev. Rev. Stat. § 598.0915(5), (7), (9), and (15);

21          d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in

22              deceptive trade practices with respect to the sale of insurance and health benefits

23              services by failing to maintain the privacy and security of Nevada Class Members'

24              Personal Information, in violation of duties imposed by and public policies reflected in

25              applicable federal and state laws, resulting in the Anthem Data Breach.  These unfair

26              acts and practices violated duties imposed by laws including the Federal Trade

27              Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d, et seq.), the Gramm-

28              Leach-Bliley Act (15 U.S.C. § 6801), the Nevada Confidentiality and Disclosure of

191

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

Information statute (Nev. Rev. Stat. § 695F.410), the Nevada data breach statute (Nev. Rev. Stat. Ann. § 603A.210),  and the Nevada Trade Practices and Frauds in Insurance statute (Nev. Rev. Stat. Ann. §§  686A.025, 686A.030(1), and 686A.040);

e) Defendants Anthem and Anthem Affiliates engaged in deceptive trade practices with respect to the sale of insurance and health benefits services by failing to disclose the Anthem Data Breach to Nevada Class Members in a timely and accurate manner, in violation of Nev. Rev. Stat. Ann. §  603A.220(1);

f)  Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in deceptive trade practices with respect to the sale of insurance and health benefits services by failing to take proper action following the Anthem Data Breach to enact adequate privacy and security measures and protect Nevada Class Members' Personal Information from further unauthorized disclosure, release, data breaches, and theft.

694.    The above unlawful and deceptive acts and practices and acts by Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

695.    Defendants knew or should have known that their computer systems and data security practices were inadequate to safeguard Nevada Class Members' Personal Information and that risk of a data breach or theft was highly likely.  Defendants' actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Nevada Class.

696.    As a direct and proximate result of Defendants' deceptive practices, Nevada Class Members suffered injury and/or damages.

697.    Nevada Class Members seek relief under Nev. Rev. Stat. Ann. § 41.600, including, but not limited to, injunctive relief, other equitable relief, actual damages, and attorneys' fees and costs.

**New Jersey**
**NEW JERSEY CONSUMER FRAUD ACT,**
**N.J. STAT. ANN. § 56:8-1,** *et. seq.*
**(BROUGHT BY NEW JERSEY CLASS AGAINST ANTHEM AND ALL OTHER**
**DEFENDANTS OPERATING IN NEW JERSEY EXCEPT FOR BCBSA)**

698.    Plaintiffs incorporate the above allegations by reference.

699.    Plaintiffs bring this claim against Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS operating in New Jersey on behalf of the New Jersey Class.

700.    Defendants sell "merchandise," as meant by N.J. Stat. Ann. § 56:8-1, by offering health insurance and health benefits services to the public.

701.    Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS operating in New Jersey engaged in unconscionable and deceptive acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of health insurance and health benefits services in violation of N.J. Stat. Ann. § 56:8-2, including but not limited to the following:

    a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts, pertaining to the sale of insurance and health benefits services, to the New Jersey Class by representing that they would maintain adequate data privacy and security practices and procedures to safeguard New Jersey Class Members' Personal Information from unauthorized disclosure, release, data breaches, and theft;

    b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts, pertaining to the sale of insurance and health benefits services, to the New Jersey Class by representing that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of New Jersey Class Members' Personal Information;

    c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS knowingly omitted, suppressed, and concealed the material fact of the inadequacy of the privacy and security protections for New Jersey Class Members' Personal Information with the intent that others rely on the omission, suppression, and concealment;

    d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in

193

1  unconscionable and deceptive acts and practices with respect to the sale of insurance

2  and health benefits services by failing to maintain the privacy and security of New

3  Jersey Class Members' Personal Information, in violation of duties imposed by and

4  public policies reflected in applicable federal and state laws, resulting in the Anthem

5  Data Breach.  These unfair acts and practices violated duties imposed by laws

6  including the Federal Trade Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. §

7  1302d, et seq.), the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), the New Jersey

8  Insurance Information Practices Act (N.J. Stat. § 17:23A-1, et seq.); and the New

9  Jersey Insurance Trade Practices Act (N.J. Stat. §§ 17:29B-4(1) and (2));

10  e) Defendants Anthem and Anthem Affiliates engaged in unconscionable and

11  deceptive acts and practices with respect to the sale of insurance and health benefits

12  services by failing to disclose the Anthem Data Breach to New Jersey Class Members

13  in a timely and accurate manner, in violation of N.J. Stat. Ann. § 56:8-163(a);

14  f)  Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in

15  unconscionable and deceptive acts and practices with respect to the sale of insurance

16  and health benefits services by failing to take proper action following the Anthem Data

17  Breach to enact adequate privacy and security measures and protect New Jersey Class

18  Members' Personal Information from further unauthorized disclosure, release, data

19  breaches, and theft.

20  702.  The above unlawful and deceptive acts and practices and acts by Defendants Anthem,

21  Anthem Affiliates and Non-Anthem BCBS were immoral, unethical, oppressive, and unscrupulous.

22  These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this

23  substantial injury outweighed any benefits to consumers or to competition.

24  703.  Defendants knew or should have known that their computer systems and data security

25  practices were inadequate to safeguard New Jersey Class Members' Personal Information and that

26  risk of a data breach or theft was highly likely.  Defendants' actions in engaging in the above-named

27  unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless

28  with respect to the rights of members of the New Jersey Class.

194

704.    As a direct and proximate result of Defendants' unconscionable or deceptive acts and practices, New Jersey Class Members suffered an ascertainable loss in moneys or property, real or personal, as described above, including the loss of their legally protected interest in the confidentiality and privacy of their Personal Information.

705.    New Jersey Class Members seek relief under N.J. Stat. Ann. § 56:8-19, including, but not limited to, injunctive relief, other equitable relief, actual damages, treble damages, and attorneys' fees and costs.

<div align="center">

**New Mexico**
**NEW MEXICO UNFAIR PRACTICES ACT,**
**N.M. STAT. ANN. § 57-12-1, *et. seq.***
**(BROUGHT BY NEW MEXICO CLASS AGAINST ANTHEM AND ALL OTHER DEFENDANTS OPERATING IN NEW MEXICO EXCEPT FOR BCBSA)**

</div>

706.    Plaintiffs incorporate the above allegations by reference.

707.    Plaintiffs bring this claim against Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS operating in New Mexico on behalf of the New Mexico Class.

708.    Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS operating in New Mexico engaged in unconscionable, unfair, and deceptive acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of health insurance and health benefits services in violation of N.M. Stat. Ann. § 57-12-3, including but not limited to the following:

a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS knowingly misrepresented material facts, pertaining to the sale of insurance and health benefits services, to the New Mexico Class by representing that they would maintain adequate data privacy and security practices and procedures to safeguard New Mexico Class Members' Personal Information from unauthorized disclosure, release, data breaches, and theft;

b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS knowingly misrepresented material facts, pertaining to the sale of insurance and health benefits services, to the New Mexico Class by representing that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and

<div align="center">

195

</div>

security of New Mexico Class Members' Personal Information;

c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS knowingly omitted, suppressed, and concealed the material fact of the inadequacy of the privacy and security protections for New Mexico Class Members' Personal Information;

d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in unfair, unconscionable, and deceptive acts and practices with respect to the sale of insurance and health benefits services by failing to maintain the privacy and security of New Mexico Class Members' Personal Information, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Anthem Data Breach. These unfair, unconscionable, and deceptive acts and practices violated duties imposed by laws including the Federal Trade Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d, et seq.), the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), the New Mexico Confidentiality of Medical Information statute (N.M. Stat. Ann. § 59A-46-27), the New Mexico Privacy of Nonpublic Personal Information regulation (N.M. Admin. Code 13.1.3); and the New Mexico Trade Practices and Frauds in Insurance statute (N.M. Stat. Ann. §§ 59A-16-4(A), 59A-16-5);

e) Defendants Anthem and Anthem Affiliates engaged in unfair, unconscionable, and deceptive acts and practices with respect to the sale of insurance and health benefits services by failing to disclose the Anthem Data Breach to New Mexico Class Members in a timely and accurate manner;

f) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in unfair, unconscionable, and deceptive acts and practices with respect to the sale of insurance and health benefits services by failing to take proper action following the Anthem Data Breach to enact adequate privacy and security measures and protect New Mexico Class Members' Personal Information from further unauthorized disclosure, release, data breaches, and theft.

709.    The above unfair, unconscionable, and deceptive acts and practices and acts by Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS were immoral, unethical, oppressive,

196

1    and unscrupulous. These acts caused substantial injury to consumers that the consumers could not

2    reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

3        710.    Defendants knew or should have known that their computer systems and data security

4    practices were inadequate to safeguard New Mexico Class Members' Personal Information and that

5    risk of a data breach or theft was highly likely.  Defendants' actions in engaging in the above-named

6    unfair, unconscionable, and deceptive acts and practices were negligent, knowing and willful, and/or

7    wanton and reckless with respect to the rights of members of the New Mexico Class.

8        711.    As a direct and proximate result of Defendants' unfair, unconscionable, and deceptive

9    acts and practices, New Mexico Class Members suffered a loss in money or property, real or

10   personal, as described above, including the loss of their legally protected interest in the

11   confidentiality and privacy of their Personal Information.

12       712.    New Mexico Class Members seek relief under N.M. Stat. Ann. § 57-12-10, including,

13   but not limited to, injunctive relief, actual damages, and attorneys' fees and costs, as well as treble

14   damages or $300, whichever is greater, to the Plaintiffs.

15                                         **New York**
                             **NEW YORK GENERAL BUSINESS LAW,**
16                            **N.Y. GEN. BUS. LAW § 349,** *et. seq.*
                    **(BROUGHT BY NEW YORK CLASS AGAINST ANTHEM AND ALL OTHER**
17                   **DEFENDANTS OPERATING IN NEW YORK EXCEPT FOR BCBSA)**

18       713.    Plaintiffs incorporate the above allegations by reference.

19       714.    Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in deceptive,

20   unfair, and unlawful trade acts or practices in the conduct of trade or commerce and furnishing of

21   services, in violation of N.Y. Gen. Bus. Law § 349(a), including but not limited to the following:

22            a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented

23               and fraudulently advertised material facts, pertaining to the sale and/or furnishing of

24               insurance and health benefits services, to the New York Class by representing and

25               advertising that they would maintain adequate data privacy and security practices and

26               procedures to safeguard New York Class Members' Personal Information from

27               unauthorized disclosure, release, data breaches, and theft;

28            b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented

                                              197

material facts, pertaining to sale and/or furnishing of insurance and health benefits services, to the New York Class by representing and advertising that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of New York Class Members' Personal Information;

c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted, suppressed, and concealed the material fact of the inadequacy of their privacy and security protections for New York Class Members' Personal Information;

d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in deceptive, unfair, and unlawful trade acts or practices by failing to maintain the privacy and security of New York Class Members' Personal Information, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Anthem Data Breach.  These unfair acts and practices violated duties imposed by laws including the Federal Trade Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d et. seq.), the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), and New York's Protection Mechanisms for Insurance Payment Information (N.Y. Soc. Serv. §367-a (2)(b));

e) Defendants Anthem and Anthem Affiliates engaged in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the Anthem Data Breach to New York Class Members in a timely and accurate manner, contrary to the duties imposed by N.Y. Gen Bus. Law § 899-aa(2);

f) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in deceptive, unfair, and unlawful trade acts or practices by failing to take proper action following the Anthem Data Breach to enact adequate privacy and security measures and protect New York Class Members' Personal Information from further unauthorized disclosure, release, data breaches, and theft.

715.    As a direct and proximate result of Defendants' deceptive trade practices, New York Class Members suffered injury and/or damages, including the loss of their legally protected interest in the confidentiality and privacy of their Personal Information, and the loss of the benefit of their

1  bargain.

2      716.    The above unfair and deceptive practices and acts by Defendants Anthem, Anthem

3  Affiliates and Non-Anthem BCBS were immoral, unethical, oppressive, and unscrupulous. These acts

4  caused substantial injury to consumers that these consumers could not reasonably avoid; this

5  substantial injury outweighed any benefits to consumers or to competition.

6      717.    Defendants knew or should have known that their computer systems and data security

7  practices were inadequate to safeguard New York Class Members' Personal Information and that risk

8  of a data breach or theft was highly likely. Defendants' actions in engaging in the above-named unfair

9  practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with

10  respect to the rights of members of the New York Class.

11      718.    Plaintiffs and New York Class Members seek relief under N.Y. Gen. Bus. Law §

12  349(h), including, but not limited to, actual damages, treble damages, statutory damages, injunctive

13  relief, and/or attorney's fees and costs.

14
15
16
**North Carolina**
**NORTH CAROLINA UNFAIR TRADE PRACTICES ACT,**
**N.C. GEN. STAT. ANN. § 75-1.1, *et. seq.***
**(BROUGHT BY NORTH CAROLINA CLASS AGAINST ANTHEM AND ALL OTHER**
**DEFENDANTS OPERATING IN NORTH CAROLINA EXCEPT FOR BCBSA)**

17      719.    Plaintiffs incorporate the above allegations by reference.

18      720.    Plaintiffs bring this claim against Defendants Anthem, Anthem Affiliates and Non-

19  Anthem BCBS operating in North Carolina on behalf of the North Carolina Class.

20      721.    Defendants' sale, advertising, and marketing of insurance and health benefits affected

21  commerce, as meant by N.C. Gen. Stat. § 75-1.1.

22      722.    Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS operating in North

23  Carolina engaged in unlawful, unfair, and deceptive acts and practices, misrepresentation, and the

24  concealment, suppression, and omission of material facts with respect to the sale and advertisement

25  of health insurance and health benefits services in violation of N.C. Gen. Stat. § 75-1.1, including but

26  not limited to the following:

27          a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented

28              material facts, pertaining to the sale of insurance and health benefits services, to the

199

North Carolina Class by representing that they would maintain adequate data privacy and security practices and procedures to safeguard North Carolina Class Members' Personal Information from unauthorized disclosure, release, data breaches, and theft;

b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts, pertaining to the sale of insurance and health benefits services, to the North Carolina Class by representing that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of North Carolina Class Members' Personal Information;

c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted, suppressed, and concealed the material fact of the inadequacy of the privacy and security protections for North Carolina Class Members' Personal Information;

d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in unfair, unlawful, and deceptive acts and practices with respect to the sale of insurance and health benefits services by failing to maintain the privacy and security of North Carolina Class Members' Personal Information, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Anthem Data Breach.  These unfair, unlawful, and deceptive acts and practices violated duties imposed by laws including Federal Trade Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d, et seq.), the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), the North Carolina Consumer and Customer Information Privacy Act (N.C. Gen. Stat. § 58-39-1, et seq.), and the North Carolina Unfair Trade Practices N.C. Gen. Stat. § 58-63-15(1) and (2));

e) Defendants Anthem and Anthem Affiliates engaged in unfair, unlawful, and deceptive acts and practices with respect to the sale of insurance and health benefits services by failing to disclose the Anthem Data Breach to North Carolina Class Members in a timely and accurate manner, in violation of N.C. Gen. Stat. Ann. § 76-65(a);

f)  Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in unfair,

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

unlawful, and deceptive acts and practices with respect to the sale of insurance and health benefits services by failing to take proper action following the Anthem Data Breach to enact adequate privacy and security measures and protect North Carolina Class Members' Personal Information from further unauthorized disclosure, release, data breaches, and theft.

723. The above unfair, unlawful, and deceptive acts and practices and acts by Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

724. Defendants knew or should have known that their computer systems and data security practices were inadequate to safeguard North Carolina Class Members' Personal Information and that risk of a data breach or theft was highly likely.  Defendants' actions in engaging in the above-named unfair, unconscionable, and deceptive acts and practices were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the North Carolina Class.

725. As a direct and proximate result of Defendants' unfair, unconscionable, and deceptive acts and practices, North Class Members suffered injury and/or damages.

726. North Carolina Class Members seek relief under N.C. Gen. Stat. §§ 75-16 and 75-16.1 including, but not limited to, injunctive relief, actual damages, treble damages, and attorneys' fees and costs.

**North Dakota**
**NORTH DAKOTA UNLAWFUL SALES OR ADVERTISING ACT,**
**N.D. CENT. CODE §§ 51-10-01, *et. seq.***
**(BROUGHT BY NORTH DAKOTA CLASS AGAINST ANTHEM AND ALL OTHER**
**DEFENDANTS OPERATING IN NORTH DAKOTA EXCEPT FOR BCBSA)**

727. Plaintiffs incorporate the above allegations by reference.

728. Plaintiffs bring this claim against Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS operating in North Dakota on behalf of the North Dakota Class.

729. Defendants sell and advertise "merchandise," as meant by N.D. Cent. Code § 51-15-01, in the form of insurance and health benefits services.

730. Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS operating in North

Dakota engaged in deceptive acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts with in connection to the sale and advertisement of insurance and health benefits services in violation of N.D. Cent. Code § 51-15-01, including but not limited to the following:

a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts (intending for others to rely upon the misrepresentations), pertaining to the sale of insurance and health benefits services, to the North Dakota Class by representing that they would maintain adequate data privacy and security practices and procedures to safeguard North Dakota Class Members' Personal Information from unauthorized disclosure, release, data breaches, and theft;

b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts (intending for others to rely upon the misrepresentations), pertaining to the sale of insurance and health benefits services, to the North Dakota Class by representing that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of North Dakota Class Members' Personal Information;

c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted, suppressed, and concealed the material fact of the inadequacy of the privacy and security protections for North Dakota Class Members' Personal Information, with the intent that others rely on the omission, suppression, and concealment;

d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in deceptive acts and practices with respect to the sale of insurance and health benefits services by failing to maintain the privacy and security of North Dakota Class Members' Personal Information, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Anthem Data Breach. These unfair, unlawful, and deceptive acts and practices violated duties imposed by laws including Federal Trade Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d, et seq.), the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), the North Dakota

202

Confidentiality of Medical Information statute (N.D. Cent. Code Ann. § 26.1-36-12.4);
the North Dakota Privacy of Consumer Financial and Health Information rule (N.D.
Admin. Code 45-14-01-01, et seq.); and the North Dakota Prohibited Practices in
Insurance Business statute (N.D. Cent. Code Ann. § 26.1-04-03(1) and (2));

e) Defendants Anthem and Anthem Affiliates engaged in deceptive acts and practices
with respect to the sale of insurance and health benefits services by failing to disclose
the Anthem Data Breach to North Dakota Class Members in a timely and accurate
manner, in violation of N.D. Cent. Code Ann. § 51-30-02;

f) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in
deceptive acts and practices with respect to the sale of insurance and health benefits
services by failing to take proper action following the Anthem Data Breach to enact
adequate privacy and security measures and protect North Dakota Class Members'
Personal Information from further unauthorized disclosure, release, data breaches, and
theft.

731.    The above deceptive acts and practices and acts by Defendants Anthem, Anthem
Affiliates and Non-Anthem BCBS were immoral, unethical, oppressive, and unscrupulous. These acts
caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial
injury outweighed any benefits to consumers or to competition.

732.    Defendants knew or should have known that their computer systems and data security
practices were inadequate to safeguard North Dakota Class Members' Personal Information and that
risk of a data breach or theft was highly likely.  Defendants' actions in engaging in the above-named
deceptive acts and practices were negligent, knowing and willful, and/or wanton and reckless with
respect to the rights of members of the North Dakota Class.

733.    As a direct and proximate result of Defendants' deceptive acts and practices,
Defendant acquired money or property from North Dakota Class Members.

734.    North Carolina Class Members seek relief under N.D. Cent. Code Ann. § 51-15-09
including, but not limited to, injunctive relief, damages, restitution, treble damages, and attorneys'
fees and costs.

203

**Oklahoma**
OKLAHOMA CONSUMER PROTECTION ACT,
15 OKL. STAT. ANN. § 751, *et. seq.*
(BROUGHT BY OKLAHOMA CLASS AGAINST ANTHEM AND ALL DEFENDANTS
OPERATING IN OKLAHOMA EXCEPT FOR BCBSA)

735.    Plaintiffs incorporate the above allegations by reference.

736.    Plaintiffs bring this claim against Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS operating in Oklahoma on behalf of the Oklahoma Class.

737.    The Oklahoma Class Members purchased "merchandise," as meant by Okla. Stat. tit. 15, § 752, in the form of insurance and health benefits services.

738.    The Oklahoma Class Members' purchases of insurance and health benefits services from Defendants constituted "consumer transactions" as meant by Okla. Stat. tit. 15, § 752.

739.    Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS operating in Oklahoma engaged in unlawful, unfair, and deceptive trade practices, misrepresentation, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of the services purchased by the Oklahoma Class in violation of Okla. Stat. tit. 15, § 753, including but not limited to the following:

a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS knowingly, or with reason to know, misrepresented material facts pertaining to the sale of insurance and health benefits services to the Oklahoma Class by representing that they would maintain adequate data privacy and security practices and procedures to safeguard Oklahoma Class Members' Personal Information from unauthorized disclosure, release, data breaches, and theft in violation of Okla. Stat. tit. 15, § 753(5) and (8);

b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS knowingly, or with reason to know, misrepresented material facts pertaining to the sale of insurance and health benefits services to the Oklahoma Class by representing that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Oklahoma Class Members' Personal Information in violation of Okla. Stat. tit. 15, § 753(5) and (8);

c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted,

204

suppressed, and concealed the material fact of the inadequacy of the privacy and

security protections for Oklahoma Class Members' Personal Information in violation

of Okla. Stat. tit. 15, § 753(5) and (8);

d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in unfair,

unlawful, and deceptive trade practices with respect to the sale of insurance and health

benefits services by failing to maintain the privacy and security of Oklahoma Class

Members' Personal Information, in violation of duties imposed by and public policies

reflected in applicable federal and state laws, resulting in the Anthem Data Breach.

These unfair, unlawful, and deceptive acts and practices violated duties imposed by

laws including Federal Trade Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. §

1302d, et seq.), the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), the Oklahoma

Privacy of Consumer Financial and Health Information regulation (Okla. Admin. Code

§§ 365:35-1-40, 365:35-1-20); and the Oklahoma Unfair Practices and Fraud in

Insurance statute (Okla. Stat. Ann. tit. 36, § 1204(1) and (2));

e) Defendants Anthem and Anthem Affiliates engaged in unlawful, unfair, and

deceptive trade practices with respect to the sale of insurance and health benefits

services by failing to disclose the Anthem Data Breach to Oklahoma Class Members

in a timely and accurate manner, in violation of 24 Okla. Sta. Ann. § 163(A);

f)  Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in

unlawful, unfair, and deceptive trade practices with respect to the sale of insurance and

health benefits services by failing to take proper action following the Anthem Data

Breach to enact adequate privacy and security measures and protect Oklahoma Class

Members' Personal Information from further unauthorized disclosure, release, data

breaches, and theft.

740.    The above unlawful, unfair, and deceptive trade practices and acts by Defendants

Anthem, Anthem Affiliates and Non-Anthem BCBS were immoral, unethical, oppressive, and

unscrupulous. These acts caused substantial injury to consumers that the consumers could not

reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

741.    Defendants knew or should have known that their computer systems and data security practices were inadequate to safeguard Oklahoma Class Members' Personal Information and that risk of a data breach or theft was highly likely.  Defendants' actions in engaging in the above-named deceptive acts and practices were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Oklahoma Class.

742.    As a direct and proximate result of Defendants' deceptive acts and practices, the Oklahoma Class Members suffered injury and/or damages.

743.    Oklahoma Class Members seek relief under Okla. Stat. Ann. tit. 15, § 761.1 including, but not limited to, injunctive relief, actual damages, and attorneys' fees and costs.

### Pennsylvania
### PENNSYLVANIA UNFAIR TRADE PRACTICES,
### 73 PA STAT. ANN. § 201-1, *et. seq.*
### (BROUGHT BY PENNSYLVANIA CLASS AGAINST ANTHEM AND ALL OTHER DEFENDANTS OPERATING IN PENNSYLVANIA EXCEPT FOR BCBSA)

744.    Plaintiffs incorporate the above allegations by reference.

745.    Plaintiffs bring this claim against Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS operating in Pennsylvania on behalf of the Pennsylvania Class.

746.    The Pennsylvania Class Members purchased insurance and health benefits services from Defendants in "trade" and "commerce," as meant by 73 Pa. Cons. Stat. § 201-2, for personal, family, and/or household purposes.

747.    Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS operating in Pennsylvania engaged in unlawful, unfair, and deceptive acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of the services purchased by the Pennsylvania Class in violation of 73 Pa. Cons. Stat. Ann. § 201-3, including but not limited to the following:

a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts pertaining to the sale of insurance and health benefits services to the Pennsylvania Class by representing that they would maintain adequate data privacy and security practices and procedures to safeguard Pennsylvania Class Members' Personal Information from unauthorized disclosure, release, data breaches, and theft in

violation of 73 Pa. Cons. Stat. Ann. § 201-3(4)(v), (ix), and (xxi);

b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts pertaining to the sale of insurance and health benefits services to the Pennsylvania Class by representing that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Pennsylvania Class Members' Personal Information in violation of 73 Pa. Cons. Stat. Ann. § 201-3(4)(v), (ix), and (xxi);

c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted, suppressed, and concealed the material fact of the inadequacy of the privacy and security protections for Pennsylvania Class Members' Personal Information in violation of in violation of 73 Pa. Cons. Stat. Ann. § 201-3(4)(v), (ix), and (xxi);

d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in unfair, unlawful, and deceptive acts and practices with respect to the sale of insurance and health benefits services by failing to maintain the privacy and security of Pennsylvania Class Members' Personal Information, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Anthem Data Breach.  These unfair, unlawful, and deceptive acts and practices violated duties imposed by laws including Federal Trade Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d, et seq.), the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), the Pennsylvania Quality Healthcare Accountability and Protection statute (40 Pa. Cons. Stat. Ann. § 991.2131); and the Pennsylvania Unfair Insurance Practices Act (40 Pa. Cons. Stat. Ann. § 1171.1(a)(1)(i) and (a)(2));

e) Defendants Anthem and Anthem Affiliates engaged in unlawful, unfair, and deceptive acts and practices with respect to the sale of insurance and health benefits services by failing to disclose the Anthem Data Breach to Pennsylvania Class Members in a timely and accurate manner, in violation of 73 Pa. Stat. § 2303(a);

f) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in unlawful, unfair, and deceptive acts and practices with respect to the sale of insurance

207

1   and health benefits services by failing to take proper action following the Anthem Data

2   Breach to enact adequate privacy and security measures and protect Pennsylvania

3   Class Members' Personal Information from further unauthorized disclosure, release,

4   data breaches, and theft.

5   748.   The above unlawful, unfair, and deceptive acts and practices by Defendants Anthem,

6   Anthem Affiliates and Non-Anthem BCBS were immoral, unethical, oppressive, and unscrupulous.

7   These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this

8   substantial injury outweighed any benefits to consumers or to competition.

9   749.   Defendants knew or should have known that their computer systems and data security

10  practices were inadequate to safeguard Pennsylvania Class Members' Personal Information and that

11  risk of a data breach or theft was highly likely.  Defendants' actions in engaging in the above-named

12  deceptive acts and practices were negligent, knowing and willful, and/or wanton and reckless with

13  respect to the rights of members of the Pennsylvania Class.

14  750.   As a direct and proximate result of Defendants' deceptive acts and practices, the

15  Pennsylvania Class Members suffered an ascertainable loss of money or property, real or personal, as

16  described above, including the loss of their legally protected interest in the confidentiality and privacy

17  of their Personal Information.

18  751.   Pennsylvania Class Members seek relief under 73 Pa. Cons. Stat. § 201-9.2, including,

19  but not limited to, injunctive relief, actual damages or $100 per Class Member, whichever is greater,

20  treble damages, and attorneys' fees and costs.

**Rhode Island**
**RHODE ISLAND DECEPTIVE TRADE PRACTICES ACT,**
**R.I. GEN. LAWS § 6-13.1, *et. seq.***
**(BROUGHT BY RHODE ISLAND CLASS AGAINST ANTHEM, INC. EXCEPT FOR BCBSA)**

24  752.   Plaintiffs incorporate the above allegations by reference.

25  753.   Plaintiffs bring this claim against Defendants Anthem, Anthem Affiliates and Non-

26  Anthem BCBS operating in Rhode Island on behalf of the Rhode Island Class.

27  754.   The Rhode Island Class Members purchased insurance and health benefits services

28  from Defendants in "trade" and "commerce," as meant by R.I. Gen. Laws § 6-13.1-1, for personal,

family, and/or household purposes.

755.    Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS operating in Rhode Island engaged in unlawful, unfair, and deceptive acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of the services purchased by the Rhode Island Class in violation of R.I. Gen. Laws Ann. § 6-13.1-2, including but not limited to the following:

a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts pertaining to the sale of insurance and health benefits services to the Rhode Island Class by representing that they would maintain adequate data privacy and security practices and procedures to safeguard Rhode Island Class Members' Personal Information from unauthorized disclosure, release, data breaches, and theft in violation of R.I. Gen. Laws Ann. § 6-13.1-1(6)(v), (vii), (ix), (xii), (xiii), and (xiv);

b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts pertaining to the sale of insurance and health benefits services to the Rhode Island Class by representing that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Rhode Island Class Members' Personal Information in violation of R.I. Gen. Laws Ann. § 6-13.1-1(6)(v), (vii), (ix), (xii), (xiii), and (xiv);

c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted, suppressed, and concealed the material fact of the inadequacy of the privacy and security protections for Rhode Island Class Members' Personal Information in violation of in violation of R.I. Gen. Laws Ann. § 6-13.1-1(6)(v), (vii), (ix), (xii), (xiii), and (xiv);

d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in unfair, unlawful, and deceptive acts and practices with respect to the sale of insurance and health benefits services by failing to maintain the privacy and security of Rhode Island Class Members' Personal Information, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Anthem Data

209

Breach.  These unfair, unlawful, and deceptive acts and practices violated duties imposed by laws including Federal Trade Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d, et seq.), the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), the Rhode Island Confidentiality of Health Care Information Act (R.I. Gen. Laws § 5-37.3-4); the Rhode Island data breach statute (R.I. Gen. Laws § 11-49.2-2(2), and the Rhode Island Unfair Competition and Practices in Insurance statute (R.I. Gen. Laws § 27-29-4(1) and (2));

e)  Defendants Anthem and Anthem Affiliates engaged in unlawful, unfair, and deceptive acts and practices with respect to the sale of insurance and health benefits services by failing to disclose the Anthem Data Breach to Rhode Island Class Members in a timely and accurate manner, in violation of R.I. Gen. Laws Ann. § 11-49.2-3(a);

f)  Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in unlawful, unfair, and deceptive acts and practices with respect to the sale of insurance and health benefits services by failing to take proper action following the Anthem Data Breach to enact adequate privacy and security measures and protect Rhode Island Class Members' Personal Information from further unauthorized disclosure, release, data breaches, and theft.

756.    The above unlawful, unfair, and deceptive acts and practices by Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

757.    Defendants knew or should have known that their computer systems and data security practices were inadequate to safeguard Rhode Island Class Members' Personal Information and that risk of a data breach or theft was highly likely.  Defendants' actions in engaging in the above-named deceptive acts and practices were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Rhode Island Class.

758.    As a direct and proximate result of Defendants' deceptive acts and practices, the

Rhode Island Class Members suffered an ascertainable loss of money or property, real or personal, as described above, including the loss of their legally protected interest in the confidentiality and privacy of their Personal Information.

759. Rhode Island Class Members seek relief under R.I. Gen. Laws § 6-13.1-5.2, including, but not limited to, injunctive relief, other equitable relief, actual damages or $200 per Class Member, whichever is greater, punitive damages, and attorneys' fees and costs.

**South Dakota**
**SOUTH DAKOTA DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION ACT,**
**S.D. CODIFIED LAWS § 37-24-1, *et. seq.***
**(BROUGHT BY SOUTH DAKOTA CLASS AGAINST ANTHEM AND ALL OTHER DEFENDANTS OPERATING IN SOUTH DAKOTA EXCEPT FOR BCBSA)**

760. Plaintiffs incorporate the above allegations by reference.

761. Plaintiffs bring this claim against Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS operating in South Dakota on behalf of the South Dakota Class.

762. Defendants advertise and sell "goods or services" and/or "merchandise" in "trade" and "commerce," as meant by S.D. Codified Laws § 37-24-1, in the form of insurance and health benefits services.

763. Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS operating in South Dakota engaged in deceptive acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of health insurance and health benefits services in violation of S.D. Codified Laws § 37-24-6, including but not limited to the following:

a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS knowingly and intentionally misrepresented material facts, pertaining to the sale of insurance and health benefits services, to the South Dakota Class by representing that they would maintain adequate data privacy and security practices and procedures to safeguard South Dakota Class Members' Personal Information from unauthorized disclosure, release, data breaches, and theft in violation of S.D. Codified Laws § 37-24-6(1);

b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS knowingly and

211

intentionally misrepresented material facts, pertaining to the sale of insurance and health benefits services, to the South Dakota Class by representing that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of South Dakota Class Members' Personal Information in violation of S.D. Codified Laws § 37-24-6(1);

c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS knowingly and intentionally omitted, suppressed, and concealed the material fact of the inadequacy of the privacy and security protections for South Dakota Class Members' Personal Information in violation of in violation of S.D. Codified Laws § 37-24-6(1);

d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in deceptive acts and practices with respect to the sale of insurance and health benefits services by failing to maintain the privacy and security of South Dakota Class Members' Personal Information, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Anthem Data Breach. These unfair, unlawful, and deceptive acts and practices violated duties imposed by laws including Federal Trade Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d, et seq.), the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), and the Unfair Trade Practices in Insurance statute (S.D. Codified Laws §§ 58-33-5, 58-33-6).

e) Defendants Anthem and Anthem Affiliates knowingly and intentionally engaged in deceptive acts and practices with respect to the sale of insurance and health benefits services by failing to disclose the Anthem Data Breach to South Dakota Class Members in a timely and accurate manner;

f) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in deceptive acts and practices with respect to the sale of insurance and health benefits services by failing to take proper action following the Anthem Data Breach to enact adequate privacy and security measures and protect South Dakota Class Members' Personal Information from further unauthorized disclosure, release, data breaches, and theft.

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

764.    The above deceptive acts and practices by Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

765.    Defendants knew or should have known that their computer systems and data security practices were inadequate to safeguard South Dakota Class Members' Personal Information and that risk of a data breach or theft was highly likely.  Defendants' actions in engaging in the above-named deceptive acts and practices were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the South Dakota Class.

766.    As a direct and proximate result of Defendants' deceptive acts and practices, the South Dakota Class Members were adversely affected, injured, and/or damaged.

767.    South Dakota Class Members seek relief under S.D. Codified Laws § 37-24-31, including, but not limited to, actual damages.

**Tennessee**
**TENNESSEE CONSUMER PROTECTION ACT,**
**TENN. CODE ANN. §§ 47-18-101,** *et. seq.*
**(BROUGHT BY TENNESSEE CLASS AGAINST ANTHEM AND ALL OTHER**
**DEFENDANTS OPERATING IN TENNESSEE EXCEPT FOR BCBSA)**

768.    Plaintiffs incorporate the above allegations by reference.

769.    Plaintiffs bring this claim against Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS operating in Tennessee on behalf of the Tennessee Class.

770.    Defendants advertised and  sold "goods" or "services" in "trade" and "commerce," as meant by Tenn. Code § 47-18-103, in the form of insurance and health benefits services from Defendants.

771.    Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS operating in Tennessee engaged in unlawful, unfair, and deceptive acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of insurance and health benefits services in violation Tenn. Code § 47-18-104, including but not limited to the following:

a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented

213

material facts, pertaining to the sale of insurance and health benefits services, to the
Tennessee Class by representing that they would maintain adequate data privacy and
security practices and procedures to safeguard Tennessee Class Members' Personal
Information from unauthorized disclosure, release, data breaches, and theft in violation
of Tenn. Code § 47-18-104(b)(5) and (9);

b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented
material facts, pertaining to the sale of insurance and health benefits services, to the
Tennessee Class by representing that they did and would comply with the
requirements of relevant federal and state laws pertaining to the privacy and security
of Tennessee Class Members' Personal Information in violation of Tenn. Code § 47-
18-104(b)(5) and (9);

c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted,
suppressed, and concealed the material fact of the inadequacy of the privacy and
security protections for Tennessee Class Members' Personal Information in violation
of Tenn. Code § 47-18-104(b)(5) and (9);

d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in unfair,
unlawful, and deceptive acts and practices with respect to the sale of insurance and
health benefits services by failing to maintain the privacy and security of Tennessee
Class Members' Personal Information, in violation of duties imposed by and public
policies reflected in applicable federal and state laws, resulting in the Anthem Data
Breach.  These unfair, unlawful, and deceptive acts and practices violated duties
imposed by laws including Federal Trade Commission Act (15 U.S.C. § 45), HIPAA
(42 U.S.C. § 1302d, et seq.), the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), the
Tennessee Health Maintenance Organization Act (Tenn. Code § 56-32-125); the
Tennessee Prepaid Limited Health Service Organization Act of 2000 (Tenn. Code §
56-51-150); and the Tennessee Unfair Trade Practices and Unfair Claims Settlement
Act of 2009 (Tenn. Code Ann. § 56-8-104(1)(A) and (2)).

e) Defendants Anthem and Anthem Affiliates engaged in unlawful, unfair, and

deceptive acts and practices with respect to the sale of insurance and health benefits services by failing to disclose the Anthem Data Breach to Tennessee Class Members in a timely and accurate manner, in violation of Tenn. Code. Ann. § 47-18-2107(b);

f)  Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in unlawful, unfair, and deceptive acts and practices with respect to the sale of insurance and health benefits services by failing to take proper action following the Anthem Data Breach to enact adequate privacy and security measures and protect Tennessee Class Members' Personal Information from further unauthorized disclosure, release, data breaches, and theft.

772.    The above unlawful, unfair, and deceptive acts and practices by Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

773.    Defendants knew or should have known that their computer systems and data security practices were inadequate to safeguard Tennessee Class Members' Personal Information and that risk of a data breach or theft was highly likely.  Defendants' actions in engaging in the above-named deceptive acts and practices were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Tennessee Class.

774.    As a direct and proximate result of Defendants' deceptive acts and practices, the Tennessee Class Members suffered an ascertainable loss of money or property, real or personal, as described above, including the loss of their legally protected interest in the confidentiality and privacy of their Personal Information.

775.    Tennessee Class Members seek relief under Tenn. Code Ann. § 47-18-109, including, but not limited to, injunctive relief, actual damages, treble damages for each willful or knowing violation,  and attorneys' fees and costs.

215

**Texas**
### TEXAS DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION ACT, TEX. BUS. & COM. CODE § 17.41, *et. seq.* (BROUGHT BY TEXAS CLASS AGAINST ANTHEM AND BCBS OF TEXAS)

776.    Plaintiffs incorporate the above allegations by reference.

777.    Plaintiff Lane Wagner sent a demand for relief to Anthem, Inc. on behalf of the Texas Class on November 2, 2015.

778.    Plaintiff Lane Wagner sent a demand for relief to Blue Cross Blue Shield of Texas on behalf of the Texas Class on November 2, 2015.

779.    Plaintiffs and Texas Class Members are consumers, as defined in Tex. Bus. & Com. Code § 17.45(4), who sought or acquired insurance and health benefits services.

780.    Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce, in violation of Tex. Bus. & Com. Code § 17.46, including but not limited to the following:

a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented and fraudulently advertised material facts, pertaining to the sale or advertisement of insurance and health benefits services, to the Texas Class by representing and advertising that they would maintain adequate data privacy and security practices and procedures to safeguard Texas Class Members' Personal Information from unauthorized disclosure, release, data breaches, and theft, in violation of Tex. Bus. & Com. §17.46(b)(5),(7),(9), and (24), and §17.50(d) (incorporating violations of the Texas Unfair and Deceptive Insurance Practice Act, (Tex. Ins. Code §§ 541.003, 541.051, 541.052, 541.061, and 541.151);

b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts, pertaining to the sale or advertisement of insurance and health benefits services, to the Texas Class by representing and advertising that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Texas Class Members' Personal Information in violation of Tex. Bus. & Com. §17.46(b)(5),(7),(9), and (24) and §17.50(d) (incorporating

216

violations of the Texas Unfair and Deceptive Insurance Practice Act, (Tex. Ins. Code §§ 541.003, 541.051, 541.052, 541.061, and 541.151);

c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted, suppressed, and concealed the material fact of the inadequacy of the privacy and security protections for Texas Class Members' Personal Information, in violation of Tex. Bus. & Com. §17.46(b)(5),(7),(9), and (24) and §17.50(d) (incorporating violations of the Texas Unfair and Deceptive Insurance Practice Act, (Tex. Ins. Code §§ 541.003, 541.051, 541.052, 541.061, and 541.151);

d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in unconscionable trade acts or practices in violation of Tex. Bus. & Com. §17.50(a)(3) and §17.50(d) failing to maintain the privacy and security of Texas Class Members Personal Information, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Anthem Data Breach.  These unfair acts and practices violated duties imposed by laws including Federal Trade Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d et. seq.), the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), the Texas Medical Records Privacy Act (Tex. Health & Safety Code §181.154), the Texas data breach statute (Tex. Bus. & Com. Code Ann. § 521.052(a), and the Texas Insurance Privacy statute (Tex. Ins. Code §601.002).

e) Defendants Anthem and Anthem Affiliates engaged in unconscionable trade acts or practices in violation of Tex. Bus. & Com. §17.50(a)(3) and §17.50(d) by failing to disclose the Anthem Data Breach to Texas Class Members in a timely and accurate manner, contrary to the duties imposed by Tex. Bus. & Com. Code Ann. § 521.053(b);

f)  Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in unconscionable trade acts or practices in violation of Tex. Bus. & Com. §17.50(a)(3) and §17.50(d) by failing to take proper action following the Anthem Data Breach to enact adequate privacy and security measures and protect Connecticut Class Members' Personal Information from further unauthorized disclosure, release, data breaches, and

217

theft.

781.    As a direct and proximate result of Defendants' deceptive trade practices, Texas Class Members suffered an ascertainable loss of money or property, real or personal, as described above, including the loss of their legally protected interest in the confidentiality and privacy of their Personal Information.

782.    The above unfair and deceptive practices and acts by Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that these consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

783.    Defendants knew or should have known that their computer systems and data security practices were inadequate to safeguard Texas Class Members' Personal Information and that risk of a data breach or theft was highly likely. Defendants' actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Texas Class.

784.    Texas Class Members seek relief under Tex. Bus. & Com. §17.50, including, but not limited to, economic damages, damages for mental anguish, treble damages, injunctive relief, restitution, and attorneys' fees and costs.

**Vermont**
**VERMONT CONSUMER FRAUD ACT,**
**9 VT. STAT. ANN. §§ 2451,** *et. seq.*
**(BROUGHT BY VERMONT CLASS AGAINST ANTHEM AND ALL OTHER**
**DEFENDANTS OPERATING IN VERMONT EXCEPT FOR BCBSA)**

785.    Plaintiffs incorporate the above allegations by reference.

786.    Plaintiffs bring this claim against Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS operating in Vermont on behalf of the Vermont Class.

787.    The Vermont Class Members are "consumers" as meant by Vt. Stat. Ann. tit. 9, § 2451a.

788.    The Vermont Class Members purchased "goods" or "services," as meant by Vt. Stat. Ann. tit. 9, § 2451a., in the form of insurance and health benefits services for personal, family, and/or household purposes.

218

789.    Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS operating in Vermont engaged in unlawful, unfair, and deceptive acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of insurance and health benefits services in violation of Vt. Stat. Ann. tit. 9, § 2453, including but not limited to the following:

a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts pertaining to the sale of insurance and health benefits services to the Vermont Class by representing that they would maintain adequate data privacy and security practices and procedures to safeguard Vermont Class Members' Personal Information from unauthorized disclosure, release, data breaches, and theft;

b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts pertaining to the sale of insurance and health benefits services to the Vermont Class by representing that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Vermont Class Members' Personal Information;

c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted, suppressed, and concealed the material fact of the inadequacy of the privacy and security protections for Vermont Class Members' Personal Information;

d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in unfair, unlawful, and deceptive acts and practices with respect to the sale of insurance and health benefits services by failing to maintain the privacy and security of Vermont Class Members' Personal Information, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Anthem Data Breach.  These unfair, unlawful, and deceptive acts and practices violated duties imposed by laws including Federal Trade Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d, et seq.), the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), and the Vermont Insurance Trade Practices Act (Vt. Stat. Ann. tit. 8, § 4724).

e) Defendants Anthem and Anthem Affiliates engaged in unlawful, unfair, and

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

deceptive acts and practices with respect to the sale of insurance and health benefits

services by failing to disclose the Anthem Data Breach to Vermont Class Members in

a timely and accurate manner, in violation of 9 Vt. Stat. Ann. § 2435(b)(1);

f)  Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in

unlawful, unfair, and deceptive acts and practices with respect to the sale of insurance

and health benefits services by failing to take proper action following the Anthem Data

Breach to enact adequate privacy and security measures and protect Vermont Class

Members' Personal Information from further unauthorized disclosure, release, data

breaches, and theft.

790.    The above unlawful, unfair, and deceptive acts and practices by Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

791.    Defendants knew or should have known that their computer systems and data security practices were inadequate to safeguard Vermont Class Members' Personal Information and that risk of a data breach or theft was highly likely.  Defendants' actions in engaging in the above-named deceptive acts and practices were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Vermont Class.

792.    As a direct and proximate result of Defendants' deceptive acts and practices, the Vermont Class Members suffered injury and/or damages.

793.    Vermont Class Members seek relief under Vt. Stat. Ann. tit. 9, § 2461, including, but not limited to, injunctive relief, restitution, actual damages, disgorgement of profits, exemplary damages, and attorneys' fees and costs.

**Washington**
**WASHINGTON CONSUMER PROTECTION ACT,**
**WASH. REV. CODE § 19.86.020, *et. seq.***
**(BROUGHT BY WASHINGTON CLASS AGAINST ANTHEM AND ALL OTHER**
**DEFENDANTS OPERATING IN WASHINGTON EXCEPT FOR BCBSA)**

794.    Plaintiffs incorporate the above allegations by reference.

795.    Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in deceptive,

unfair, and unlawful trade acts or practices in the conduct of trade or commerce, in violation of Wash. Rev. Code §19.86.020, including but not limited to the following:

a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented and fraudulently advertised material facts pertaining to the insurance and health benefits services to the Washington Class by representing and advertising that they would maintain adequate data privacy and security practices and procedures to safeguard Washington Class Members' Personal Information from unauthorized disclosure, release, data breaches, and theft;

b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts pertaining to insurance and health benefits services to the Washington Class by representing and advertising that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Washington Class Members' Personal Information;

c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted, suppressed, and concealed the material fact of the inadequacy of the privacy and security protections for Washington Class Members' Personal Information;

d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in deceptive, unfair, and unlawful trade acts or practices by failing to maintain the privacy and security of Washington Class Members Personal Information, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Anthem Data Breach.  These unfair acts and practices violated duties imposed by laws including Federal Trade Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d et. seq.), the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), and the Washington regulations pertaining to Privacy of Consumer Financial and Health Information (Wash. ADC 284-04-300).

e) Defendants Anthem and Anthem Affiliates engaged in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the Anthem Data Breach to Washington Class Members in a timely and accurate manner, contrary to the duties

221

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

imposed by § 19.255.010(1);

f) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in
deceptive, unfair, and unlawful trade acts or practices by failing to take proper action
following the Anthem Data Breach to enact adequate privacy and security measures
and protect Washington Class Members' Personal Information from further
unauthorized disclosure, release, data breaches, and theft.

796.   The above unfair and deceptive practices and acts by Defendants Anthem, Anthem
Affiliates and Non-Anthem BCBS also violated Washington's Unfair Insurance Practices Act, Wash.
Rev. Code §48.30.010.

797.   As a direct and proximate result of Defendants' deceptive trade practices, Washington
Class Members suffered injury and/or damages.

798.   The above unfair and deceptive practices and acts by Defendants Anthem, Anthem
Affiliates and Non-Anthem BCBS were immoral, unethical, oppressive, and unscrupulous. These acts
caused substantial injury to consumers that these consumers could not reasonably avoid; this
substantial injury outweighed any benefits to consumers or to competition.

799.   Defendants knew or should have known that their computer systems and data security
practices were inadequate to safeguard Washington Class Members' Personal Information and that
risk of a data breach or theft was highly likely.  Defendants' actions in engaging in the above-named
unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless
with respect to the rights of members of the Washington Class.

800.   Washington Class Members seek relief under Wash. Rev. Code § 19.86.090,
including, but not limited to, actual damages, treble damages, injunctive relief, and attorneys' fees
and costs.

## West Virginia
### WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT,
### W. VA. CODE § 46A-6-101, *et. seq.*
### (BROUGHT BY WEST VIRGINIA CLASS AGAINST ANTHEM)

801.   Plaintiffs incorporate the above allegations by reference.

802.   Plaintiffs bring this claim against Anthem on behalf of the West Virginia Class.

803.   Plaintiff Lisa Shiltz sent a demand for relief to Anthem on behalf of the West Virginia

222

1   Class on November 2, 2015.

2       804.    Plaintiff Lisa Shiltz sent a demand for relief to Highmark West Virginia, Inc. d/b/a

3   Highmark Blue Cross Blue Shield Shield West Virginia on behalf of the West Virginia Class on

4   November 2, 2015.

5       805.    The West Virginia Class Members purchased insurance and health benefits services in

6   "trade" or "commerce," as meant by W. Va. Code Ann. § 46A-6-102, for personal, family, and/or

7   household purposes.

8       806.    Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS operating in West

9   Virginia engaged in unlawful, unfair, and deceptive acts and practices, misrepresentation, and the

10  concealment, suppression, and omission of material facts with respect to the sale and advertisement

11  of the services purchased by the West Virginia Class in violation of W. Va. Code Ann. § 46A-6-104,

12  including but not limited to the following:

13          a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented

14              material facts, pertaining to the sale of insurance and health benefits services, to the

15              West Virginia Class by representing that they would maintain adequate data privacy

16              and security practices and procedures to safeguard West Virginia Class Members'

17              Personal Information from unauthorized disclosure, release, data breaches, and theft in

18              violation of W. Va. Code Ann. § 46A-6-102(7)(E), (I), (L), (M), and (N);

19          b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented

20              material facts, pertaining to the sale of insurance and health benefits services, to the

21              West Virginia Class by representing that they did and would comply with the

22              requirements of relevant federal and state laws pertaining to the privacy and security

23              of West Virginia Class Members' Personal Information in violation of W. Va. Code

24              Ann. § 46A-6-102(7)(E), (I), (L), (M), and (N);

25          c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted,

26              suppressed, and concealed the material fact of the inadequacy of the privacy and

27              security protections for West Virginia Class Members' Personal Information in

28              violation of W. Va. Code Ann. § 46A-6-102(7)(E), (I), (L), (M), and (N);

d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in unfair, unlawful, and deceptive acts and practices with respect to the sale of insurance and health benefits services by failing to maintain the privacy and security of West Virginia Class Members' Personal Information, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Anthem Data Breach.  These unfair, unlawful, and deceptive acts and practices violated duties imposed by laws including Federal Trade Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d, et seq.), the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), the West Virginia Prepaid Limited Health Organization Act (W. Va. Code § 33-25D-28); the West Virginia Health Maintenance Organization Act (W. Va. Code § 33-25A-26); and the West Virginia Unfair Trade Practices in Insurance Act (W. Va. Code Ann. § 33-11-4(1), (2), and (12)).

e) Defendants Anthem and Anthem Affiliates engaged in unlawful, unfair, and deceptive acts and practices with respect to the sale of insurance and health benefits services by failing to disclose the Anthem Data Breach to West Virginia Class Members in a timely and accurate manner, in violation of W.V. Code § 46A-2A-102(a);

f)  Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in unlawful, unfair, and deceptive acts and practices with respect to the sale of insurance and health benefits services by failing to take proper action following the Anthem Data Breach to enact adequate privacy and security measures and protect West Virginia Class Members' Personal Information from further unauthorized disclosure, release, data breaches, and theft.

807.    The above unlawful, unfair, and deceptive acts and practices by Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

808.    Defendants knew or should have known that their computer systems and data security

224

1    practices were inadequate to safeguard West Virginia Class Members' Personal Information and that

2    risk of a data breach or theft was highly likely.  Defendants' actions in engaging in the above-named

3    deceptive acts and practices were negligent, knowing and willful, and/or wanton and reckless with

4    respect to the rights of members of the West Virginia Class.

5         809.    As a direct and proximate result of Defendants' deceptive acts and practices, the West

6    Virginia Class Members suffered an ascertainable loss of money or property, real or personal, as

7    described above, including the loss of their legally protected interest in the confidentiality and privacy

8    of their Personal Information.

9         810.    West Virginia Class Members seek relief under W. Va. Code § 46A-6-106 and 46A-5-

10   104, including, but not limited to, injunctive relief, actual damages or $200, whichever is greater, and

11   attorneys' fees and costs.

12                    **COUNT X – DATA BREACH STATUTES**
                   **BROUGHT BY THE STATEWIDE CLASSES BELOW**
13

14                                  **California**
                        **CALIFORNIA CUSTOMER RECORDS ACT,**
15                          **CAL. CIV. CODE § 1798.80,** *et. seq.*
        **(BROUGHT BY CALIFORNIA CLASS AGAINST ANTHEM AND ALL OTHER**
16         **DEFENDANTS OPERATING IN CALIFORNIA EXCEPT FOR BCBSA)**

17        811.    Plaintiffs incorporate the above allegations by reference.

18        812.    "[T]o ensure that personal information about California residents is protected," the

19   California legislature enacted Civil Code section 1798.81.5, which requires that any business that

20   "owns, licenses, or maintains personal information about a California resident shall implement and

21   maintain reasonable security procedures and practices appropriate to the nature of the information, to

22   protect the personal information from unauthorized access, destruction, use, modification, or

23   disclosure."

24        813.    Defendants are businesses that own, maintain, and license personal information, within

     the meaning of 1798.81.5, about Plaintiffs and Class Members.
25

26        814.    Defendants, to the extent they assert they are not "a provider of health care, health care

27   service plan, or contractor regulated by the Confidentiality of Medical Information Act,"   violated

28   Civil Code section 1798.81.5 by failing to implement reasonable measures to protect Class Members'

                                         225

Personal Information.

815.   Businesses that own or license computerized data that includes personal information, including Social Security numbers, are required to notify California residents when their Personal Information has been acquired (or has reasonably believed to have been acquired) by unauthorized persons in a data security breach "in the most expedient time possible and without unreasonable delay." Cal. Civ. Code § 1798.82. Among other requirements, the security breach notification must include "the types of personal information that were or are reasonably believed to have been the subject of the breach." Cal. Civ. Code § 1798.82.

816.   Defendants are businesses that own or license computerized data that includes personal information as defined by Cal. Civ. Code § 1798.82.

817.   Plaintiffs and Class Members' Personal Information (e.g., Social Security numbers) includes personal information as covered by Cal. Civ. Code § 1798.82.

818.   Because Anthem and Anthem Affiliates reasonably believed that Plaintiffs Personal was acquired by unauthorized persons during the Anthem Data Breach, Anthem and Anthem Affiliates had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Cal. Civ. Code § 1798.82.

819.   Thus, by failing to disclose the Anthem Data Breach in a timely and accurate manner, Anthem and Anthem Affiliates violated Cal. Civ. Code § 1798.82.

820.   As a direct and proximate result of Defendants' violations of the Cal. Civ. Code §§ 1798.81.5; 1798.82, Plaintiffs and Class Members suffered damages, as described above.

821.   Plaintiffs and California Class Members seek relief under Cal. Civ. Code § 1798.84, including, but not limited to, actual damages and injunctive relief.

**Colorado**
**COLO. REV. STAT. ANN. § 6-1-716(2),** *et. seq.*
**(BROUGHT BY COLORADO CLASS AGAINST ANTHEM AND ALL ANTHEM AFFILIATES OPERATING IN COLORADO EXCEPT FOR BCBSA)**

822.   Plaintiffs incorporate the above allegations by reference.

823.   Anthem and Anthem Affiliates are required to accurately notify Plaintiffs and Class Members if Anthem and Anthem Affiliates become aware of a breach of their data security system in

226

1    the most expedient time possible and without unreasonable delay under Colo. Rev. Stat. Ann. § 6-1-

2    716(2).

3        824.    Defendants are businesses that own or license computerized data that includes

4    personal information as defined by Colo. Rev. Stat. Ann. § 6-1-716(1),(2).

5        825.    Plaintiffs and Class Members' Personal Information (e.g., Social Security numbers)

6    includes personal information as covered by Colo. Rev. Stat. Ann. § 6-1-716(1),(2).

7        826.    Because Anthem and Anthem Affiliates were aware of a breach of their security

8    system, Anthem and Anthem Affiliates had an obligation to disclose the data breach in a timely and

9    accurate fashion as mandated by Colo. Rev. Stat. Ann. § 6-1-716 (2).

10       827.    Thus, by failing to disclose the Anthem Data Breach in a timely and accurate manner,

11   Anthem and Anthem Affiliates violated Colo. Rev. Stat. Ann. § 6-1-716 (2).

12       828.    As a direct and proximate result of Anthem and Anthem Affiliates' violations of Colo.

13   Rev. Stat. Ann. § 6-1-716(2), Plaintiffs and Class Members suffered damages, as described above.

14       829.    Plaintiffs and Class Members seek relief under Colo. Rev. Stat. Ann. § 6-1-716(4),

15   including, but not limited to, actual damages and equitable relief.

16                                          **Delaware**
                                **DEL. CODE ANN. TIT. 6 § 12B-102(a),** *et seq.*
17               **(BROUGHT BY DELAWARE CLASS AGAINST ANTHEM AND ALL ANTHEM**
                   **AFFILIATES OPERATING IN DELAWARE EXCEPT FOR BCBSA)**
18

19       830.    Plaintiffs incorporate the above allegations by reference.

20       831.    Anthem and Anthem Affiliates are required to accurately notify Plaintiffs and Class

21   Members if Anthem and Anthem Affiliates become aware of a breach of their data security system

22   (which is reasonably likely to result in the misuse of a Delaware resident's personal information) in

23   the most expedient time possible and without unreasonable delay under 6 Del. Code Ann. § 12B-

24   102(a).

25       832.    Defendants are businesses that own or license computerized data that includes

26   personal information as defined by 6 Del. Code Ann. § 12B-102(a).

27       833.    Plaintiffs and Class Members' Personal Information (e.g., Social Security numbers)

28   includes personal information as covered under 6 Del. Code Ann. § 12B-101(4).

227

834.     Because Anthem and Anthem Affiliates were aware of a breach of their security system (which is reasonably likely to result in a misuse Delaware residents' personal information), Anthem and Anthem Affiliates had an obligation to disclose the data breach in a timely and accurate fashion as mandated by 6 Del. Code Ann. § 12B-102(a).

835.     Thus, by failing to disclose the Anthem Data Breach in a timely and accurate manner, Anthem and Anthem Affiliates violated  6 Del. Code Ann. § 12B-102(a).

836.     As a direct and proximate result of Anthem and Anthem Affiliates' violations of 6 Del. Code Ann. § 12B-102(a), Plaintiffs and Class Members suffered damages, as described above.

837.     Plaintiffs and Class Members seek relief under 6 Del. Code Ann. § 12B-104, including, but not limited to, actual damages and broad equitable relief.

**District of Columbia**
**D.C. CODE § 28-3852(a),** *et. seq.*
**(BROUGHT BY DISTRICT OF COLUMBIA CLASS AGAINST ANTHEM AND ALL ANTHEM AFFILIATES OPERATING IN THE DISTRICT OF COLUMBIA EXCEPT FOR BCBSA)**

838.     Plaintiffs incorporate the above allegations by reference.

839.     Anthem and Anthem Affiliates are required to accurately notify Plaintiffs and Class Members if Anthem and Anthem Affiliates become aware of a breach of their data security system in the most expedient time possible and without unreasonable delay under D.C. Code § 28-3852(a).

840.     Defendants are businesses that own or license computerized data that includes personal information as defined by D.C. Code § 28-3852(a).

841.     Plaintiffs and Class Members' Personal Information (e.g., Social Security numbers) includes personal information as covered under D.C. Code § 28-3851(3).

842.     Because Anthem and Anthem Affiliates were aware of a breach of their security system, Anthem and Anthem Affiliates had an obligation to disclose the data breach in a timely and accurate fashion as mandated by D.C. Code § 28-3852(a).

843.     Thus, by failing to disclose the Anthem Data Breach in a timely and accurate manner, Anthem and Anthem Affiliates violated  D.C. Code § 28-3852(a).

844.     As a direct and proximate result of Anthem and Anthem Affiliates' violations of D.C. Code § 28-3852(a), Plaintiffs and Class Members suffered damages, as described above.

845.    Plaintiffs and Class Members seek relief under D.C. Code § 28-3853(a), including, but not limited to, actual damages.

### Georgia
### GA. CODE ANN. § 10-1-912(a), *et. seq.*
### (BROUGHT BY GEORGIA CLASS AGAINST ANTHEM AND ALL ANTHEM AFFILIATES OPERATING IN GEORGIA EXCEPT FOR BCBSA

846.    Plaintiffs incorporate the above allegations by reference.

847.    Anthem and Anthem Affiliates are required to accurately notify Plaintiffs and Class Members if Anthem and Anthem Affiliates become aware of a breach of their data security system (that was reasonably likely to have caused unauthorized persons to acquire Plaintiffs and Class Members' Personal Information) in the most expedient time possible and without unreasonable delay under Ga. Code Ann. § 10-1-912(a).

848.    Defendants are businesses that own or license computerized data that includes personal information as defined by Ga. Code Ann. § 10-1-912(a).

849.    Plaintiffs and Class Members' Personal Information (e.g., Social Security numbers) includes personal information as covered under Ga. Code Ann. § 10-1-912(a).

850.    Because Anthem and Anthem Affiliates were aware of a breach of their security system (that was reasonably likely to have caused unauthorized persons to acquire Plaintiffs and Class Members' Personal Information), Anthem and Anthem Affiliates had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Ga. Code Ann. § 10-1-912(a).

851.    Thus, by failing to disclose the Anthem Data Breach in a timely and accurate manner, Anthem and Anthem Affiliates violated  Ga. Code Ann. § 10-1-912(a).

852.    As a direct and proximate result of Anthem and Anthem Affiliates' violations of Ga. Code Ann. § 10-1-912(a), Plaintiffs and Class Members suffered damages, as described above.

853.    Plaintiffs and Class Members seek relief under Ga. Code Ann. § 10-1-912 including, but not limited to, actual damages and injunctive relief.

### Hawaii
### HAW. REV. STAT. § 487N-2(a), *et. seq.*
### (BROUGHT BY HAWAII CLASS AGAINST ANTHEM AND ALL ANTHEM AFFILIATES OPERATING IN HAWAII EXCEPT FOR BCBSA)

854.    Plaintiffs incorporate the above allegations by reference.

229

855.    Anthem and Anthem Affiliates are required to accurately notify Plaintiffs and Class Members if Anthem and Anthem Affiliates become aware of a breach of their data security system without unreasonable delay under Haw. Rev. Stat. § 487N-2(a).

856.    Defendants are businesses that own or license computerized data that includes personal information as defined by Haw. Rev. Stat. § 487N-2(a).

857.    Plaintiffs and Class Members' Personal Information (e.g., Social Security numbers) includes personal information as covered under Haw. Rev. Stat. § 487N-2(a).

858.    Because Anthem and Anthem Affiliates were aware of a breach of their security system, Anthem and Anthem Affiliates had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Haw. Rev. Stat. § 487N-2(a).

859.    Thus, by failing to disclose the Anthem Data Breach in a timely and accurate manner, Anthem and Anthem Affiliates violated Haw. Rev. Stat. § 487N-2(a).

860.    As a direct and proximate result of Anthem and Anthem Affiliates' violations of Haw. Rev. Stat. § 487N-2(a), Plaintiffs and Class Members suffered damages, as described above.

861.    Plaintiffs and Class Members seek relief under Haw. Rev. Stat. § 487N-3(b), including, but not limited to, actual damages.

**Iowa**
**IOWA CODE ANN. § 715C.2(1), *et. seq.***
**(BROUGHT BY IOWA CLASS AGAINST ANTHEM AND ALL ANTHEM AFFILIATES OPERATING IN IOWA EXCEPT FOR BCBSA)**

862.    Plaintiffs incorporate the above allegations by reference.

863.    Anthem and Anthem Affiliates are required to accurately notify Plaintiffs and Class Members if Anthem and Anthem Affiliates become aware of a breach of their data security system in the most expeditious time possible and without unreasonable delay under Iowa Code Ann. § 715C.2(1).

864.    Defendants are businesses that own or license computerized data that includes personal information as defined by Iowa Code Ann. § 715C.2(1).

865.    Plaintiffs and Class Members' Personal Information (e.g., Social Security numbers) includes personal information as covered under Iowa Code Ann. § 715C.2(1).

230

866.    Because Anthem and Anthem Affiliates were aware of a breach of their security system, Anthem and Anthem Affiliates had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Iowa Code Ann. § 715C.2(1).

867.    Thus, by failing to disclose the Anthem Data Breach in a timely and accurate manner, Anthem and Anthem Affiliates violated  Iowa Code Ann. § 715C.2(1).

868.    As a direct and proximate result of Anthem and Anthem Affiliates' violations of Iowa Code Ann. § 715C.2(1), Plaintiffs and Class Members suffered damages, as above.

869.    Plaintiffs and Class Members seek relief under Iowa Code Ann. § 714.16(7), including, but not limited to, actual damages and injunctive relief.

<u>**Kansas**</u>
**KAN. STAT. ANN. § 50-7a02(a),** *et. seq.*
**(BROUGHT BY KANSAS CLASS AGAINST ANTHEM AND ALL ANTHEM AFFILIATES OPERATING IN KANSAS EXCEPT FOR BCBSA)**

870.    Plaintiffs incorporate the above allegations by reference.

871.    Anthem and Anthem Affiliates are required to accurately notify Plaintiffs and Class Members if Anthem and Anthem Affiliates become aware of a breach of their data security system (that was reasonably likely to have caused misuse Plaintiffs and Class Members' Personal Information) in the most expedient time possible and without unreasonable delay under Kan. Stat. Ann. § 50-7a02(a).

872.    Defendants are businesses that own or license computerized data that includes personal information as defined by Kan. Stat. Ann. § 50-7a02(a).

873.    Plaintiffs and Class Members' Personal Information (e.g., Social Security numbers) includes personal information as covered under Kan. Stat. Ann. § 50-7a02(a).

874.    Because Anthem and Anthem Affiliates were aware of a breach of their security system (that was reasonably likely to have caused misuse Plaintiffs and Class Members' Personal Information), Anthem and Anthem Affiliates had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Kan. Stat. Ann. § 50-7a02(a).

875.    Thus, by failing to disclose the Anthem Data Breach in a timely and accurate manner, Anthem and Anthem Affiliates violated  Kan. Stat. Ann. § 50-7a02(a).

231

876.    As a direct and proximate result of Anthem and Anthem Affiliates' violations of Kan. Stat. Ann. § 50-7a02(a), Plaintiffs and Class Members suffered damages, as described above.

877.    Plaintiffs and Class Members seek relief under Kan. Stat. Ann. § 50-7a02(g), including, but not limited to, broad equitable relief.

<div align="center">

**Louisiana**
**LA. REV. STAT. ANN. § 51:3074(A),** *et. seq.*
**(BROUGHT BY LOUISIANA CLASS AGAINST ANTHEM AND ALL ANTHEM
AFFILIATES OPERATING IN LOUISIANA EXCEPT FOR BCBSA)**

</div>

878.    Plaintiffs incorporate the above allegations by reference.

879.    Anthem and Anthem Affiliates are required to accurately notify Plaintiffs and Class Members if Anthem and Anthem Affiliates become aware of a breach of their data security system (that was reasonably likely to have caused unauthorized persons to acquire Plaintiffs and Class Members' Personal Information) in the most expedient time possible and without unreasonable delay under La. Rev. Stat. Ann. § 51:3074(C).

880.    Defendants are businesses that own or license computerized data that includes personal information as defined by La. Rev. Stat. Ann. § 51:3074(C).

881.    Plaintiffs and Class Members' Personal Information (e.g., Social Security numbers) includes personal information as covered under La. Rev. Stat. Ann. § 51:3074(C).

882.    Because Anthem and Anthem Affiliates were aware of a breach of their security system (was reasonably likely to have caused unauthorized persons to acquire Plaintiffs and Class Members' Personal Information), Anthem and Anthem Affiliates had an obligation to disclose the data breach in a timely and accurate fashion as mandated by La. Rev. Stat. Ann. § 51:3074(C).

883.    As a direct and proximate result of Anthem and Anthem Affiliates' violations of La. Rev. Stat. Ann. § 51:3074(C), Plaintiffs and Class Members suffered damages, as described above.

884.    Plaintiffs and Class Members seek relief under La. Rev. Stat. Ann. § 51:3075, including, but not limited to, actual damages.

<div align="center">

**Michigan**
**MICH. COMP. LAWS ANN. § 445.72(1),** *et. seq.*
**(BROUGHT BY MICHIGAN CLASS AGAINST ANTHEM AND ALL ANTHEM
AFFILIATES OPERATING IN MICHIGAN EXCEPT FOR BCBSA)**

</div>

885.    Plaintiffs incorporate the above allegations by reference.

<div align="center">

232

</div>

886.    Anthem and Anthem Affiliates are required to accurately notify Plaintiffs and Class Members if they discover a security breach, or receive notice of a security breach (where unencrypted and unredacted Personal Information was accessed or acquired by unauthorized persons), without unreasonable delay under Mich. Comp. Laws Ann. § 445.72(1).

887.    Defendants are businesses that own or license computerized data that includes personal information as defined by Mich. Comp. Laws Ann. § 445.72(1).

888.    Plaintiffs and Class Members' Personal Information (e.g. Social Security numbers) includes personal information as covered under Mich. Comp. Laws Ann. § 445.72(1).

889.    Because Anthem and Anthem Affiliates discovered a security breach and had notice of a security breach (where unencrypted and unredacted Personal Information was accessed or acquired by unauthorized persons), Anthem and Anthem Affiliates had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Mich. Comp. Laws Ann. § 445.72(4).

890.    As a direct and proximate result of Anthem and Anthem Affiliates' violations of Mich. Comp. Laws Ann. § 445.72(4), Plaintiffs and Class Members suffered damages, as above.

891.    Plaintiffs and Class Members seek relief under Mich. Comp. Laws Ann. § 445.72(13), including, but not limited to, a civil fine.

<u>**New Hampshire**</u>
**N.H. REV. STAT. ANN. § 359-C:20(I)(a),** *et. seq.*
**(BROUGHT BY NEW HAMPSHIRE CLASS AGAINST ANTHEM AND ALL ANTHEM AFFILIATES OPERATING IN NEW HAMPSHIRE EXCEPT FOR BCBSA)**

892.    Plaintiffs incorporate the above allegations by reference.

893.    Anthem and Anthem Affiliates are required to accurately notify Plaintiffs and Class Members if Anthem and Anthem Affiliates become aware of a breach of their data security system (in which misuse of Personal Information has occurred or is reasonably likely to occur) as soon as possible under N.H. Rev. Stat. Ann. § 359-C:20(I)(a).

894.    Defendants are businesses that own or license computerized data that includes personal information as defined by N.H. Rev. Stat. Ann. § 359-C:20(I)(a).

895.    Plaintiffs and Class Members' Personal Information (e.g., Social Security numbers) includes personal information as covered under N.H. Rev. Stat. Ann. § 359-C:20(I)(a).

896.    Because Anthem and Anthem Affiliates were aware of a security breach (in which misuse of Personal Information has occurred or is reasonably likely to occur), Anthem and Anthem Affiliates had an obligation to disclose the data breach in a timely and accurate fashion as mandated by N.H. Rev. Stat. Ann. § 359-C:20(I)(a).

897.    As a direct and proximate result of Anthem and Anthem Affiliates' violations of N.H. Rev. Stat. Ann. § 359-C:20(I)(a), Plaintiffs and Class Members suffered damages, as described above.

898.    Plaintiffs and Class Members seek relief under N.H. Rev. Stat. Ann. § 359-C:21(I), including, but not limited to, actual damages and injunctive relief.

## Oregon
## OR. REV. STAT. ANN. § 646A.604(1), *et. seq.*
### (BROUGHT BY OREGON CLASS AGAINST ANTHEM AND ALL OTHER DEFENDANTS OPERATING IN OREGON EXCEPT FOR BCBSA)

899.    Plaintiffs incorporate the above allegations by reference.

900.    Pursuant to Or. Rev. Stat. Ann. § 646A.622(1), a business "that maintains records which contain personal information" of a Oregon resident "shall implement and maintain reasonable security measures to protect those records from unauthorized access, acquisition, destruction, use, modification or disclosure."

901.    Defendants are businesses that maintain records which contain personal information, within the meaning of Or. Rev. Stat. Ann. § 646A.622(1), about Plaintiffs and Class Members.

902.    Defendants violated Or. Rev. Stat. Ann. § 646A.622(1) by failing to implement reasonable measures to protect Class Members' Personal Information,

903.    Anthem and Anthem Affiliates are required to accurately notify Plaintiffs and Class Members if Anthem and Anthem Affiliates become aware of a breach of their data security system in the most expeditious time possible and without unreasonable delay under Or. Rev. Stat. Ann. § 646A.604(1).

904.    Defendants are businesses that own, maintain, or otherwise possess data that includes consumers personal information as defined by Or. Rev. Stat. Ann. § 646A.604(1).

905.    Plaintiffs and Class Members' Personal Information (e.g., Social Security numbers)

234

1   includes personal information as covered under Or. Rev. Stat. Ann. § 646A.604(1).

2        906.   Because Anthem and Anthem Affiliates discovered a breach of their security system,

3   Anthem and Anthem Affiliates had an obligation to disclose the data breach in a timely and accurate

4   fashion as mandated by Or. Rev. Stat. Ann. § 646A.604(1).

5        907.   As a direct and proximate result of Defendants' violations of Or. Rev. Stat. Ann. §§

6   646A.604(1) and 646A.622(1), Plaintiffs and Class Members suffered damages, as described above.

7        908.   Plaintiffs and Class Members seek relief under Or. Rev. Stat. § 646A.624(3),

8   including, but not limited to, actual damages and injunctive relief.

9                              **South Carolina**
                     **S.C. CODE ANN. § 39-1-90(A)**, *et. seq.*
10   **(BROUGHT BY SOUTH CAROLINA CLASS AGAINST ANTHEM AND ALL ANTHEM
         AFFILIATES OPERATING IN SOUTH CAROLINA EXCEPT FOR BCBSA)**

11       909.   Plaintiffs incorporate the above allegations by reference.

12       910.   Anthem and Anthem Affiliates are required to accurately notify Plaintiffs and Class

13   Members following discovery or notification of a breach of their data security system (if personal

14   information that was not rendered unusable through encryption, redaction, or other methods was, or

15   was reasonably believed to have been, acquired by an unauthorized person, creating a material risk of

16   harm) in the most expedient time possible and without unreasonable delay under S.C. Code Ann. §

17   39-1-90(A).

18       911.   Defendants are businesses that own or license computerized data or other data that

19   includes personal identifying information as defined by S.C. Code Ann. § 39-1-90(A).

20       912.   Plaintiffs and Class Members' Personal Information (e.g., Social Security numbers)

21   includes personal identifying information as covered under S.C. Code Ann. § 39-1-90(D)(3).

22       913.   Because Anthem and Anthem Affiliates discovered a breach of its data security system

23   (in which personal information that was not rendered unusable through encryption, redaction, or other

24   methods was, or was reasonably believed to have been, acquired by an unauthorized person, creating

25   a material risk of harm), Anthem and Anthem Affiliates had an obligation to disclose the data breach

26   in a timely and accurate fashion as mandated by S.C. Code Ann. § 39-1-90(A).

27       914.   As a direct and proximate result of Anthem and Anthem Affiliates' violations of S.C.

28

                                   235

1   Code Ann. § 39-1-90(A), Plaintiffs and Class Members suffered damages, as described above.

2       915.    Plaintiffs and Class Members seek relief under S.C. Code Ann. § 39-1-90(G),

3   including, but not limited to, actual damages and injunctive relief.

4   <div align="center">**Tennessee**<br>**TENN. CODE ANN. § 47-18-2107(b),** *et. seq.*</div>

5   <div align="center">**(BROUGHT BY TENNESSEE CLASS AGAINST ANTHEM AND ALL ANTHEM**<br>**AFFILIATES OPERATING IN TENNESSEE EXCEPT FOR BCBSA)**</div>

6       916.    Plaintiffs incorporate the above allegations by reference.

7       917.    Anthem and Anthem Affiliates are required to accurately notify Plaintiffs and Class

8   Members following discovery or notification of a breach of their data security system (in which

9   unencrypted personal information was, or is reasonably believed to have been, acquired by an

10  unauthorized person) in the most expedient time possible and without unreasonable delay under

11  Tenn. Code Ann. § 47-18-2107(b).

12      918.    Defendants are businesses that own or license computerized data that includes

13  personal information as defined by Tenn. Code Ann. § 47-18-2107(a)(2).

14      919.    Plaintiffs and Class Members' Personal Information (e.g., Social Security numbers)

15  includes personal information as covered under Tenn. Code Ann. § 47-18-2107(a)(3)(A).

16      920.    Because Anthem and Anthem Affiliates discovered a breach of their security system

17  (in which unencrypted personal information was, or is reasonably believed to have been, acquired by

18  an unauthorized person), Anthem and Anthem Affiliates had an obligation to disclose the data breach

19  in a timely and accurate fashion as mandated by Tenn. Code Ann. § 47-18-2107(b).

20      921.    As a direct and proximate result of Anthem and Anthem Affiliates' violations of Tenn.

21  Code Ann. § 47-18-2107(b), Plaintiffs and Class Members suffered damages, as described above.

22      922.    Plaintiffs and Class Members seek relief under Tenn. Code Ann. §§ 47-18-2107(h),

23  47-18-2104(d), 47-18-2104(f), including, but not limited to, actual damages, injunctive relief and

24  treble damages.

25  <div align="center">**Virginia**<br>**VA. CODE ANN. § 18.2-186.6(B),** *et. seq.*</div>

26  <div align="center">**(BROUGHT BY VIRGINIA CLASS AGAINST ANTHEM AND ALL ANTHEM**<br>**AFFILIATES OPERATING IN VIRGINIA EXCEPT FOR BCBSA)**</div>

27      923.    Plaintiffs incorporate the above allegations by reference.

28

<div align="center">236</div>

924.    Anthem and Anthem Affiliates are required to accurately notify Plaintiffs and Class Members following discovery or notification of a breach of their data security system (if unencrypted or unredacted personal information was or is reasonably believed to have been accessed and acquired by an unauthorized person who will, or it is reasonably believed who will, engage in identify theft or another fraud) without unreasonable delay under Va. Code Ann. § 18.2-186.6(B).

925.    Defendants are entities that own or license computerized data that includes personal information as defined by Va. Code Ann. § 18.2-186.6(B).

926.    Plaintiffs and Class Members' Personal Information (e.g., Social Security numbers) includes personal information as covered under Va. Code Ann. § 18.2-186.6(A).

927.    Because Anthem and Anthem Affiliates discovered a breach of their security system (in which unencrypted or unredacted personal information was or is reasonably believed to have been accessed and acquired by an unauthorized person, who will, or it is reasonably believed who will, engage in identify theft or another fraud), Anthem and Anthem Affiliates had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Va. Code Ann. § 18.2-186.6(B).

928.    As a direct and proximate result of Anthem and Anthem Affiliates' violations of Va. Code Ann. § 18.2-186.6(B), Plaintiffs and Class Members suffered damages, as described above.

929.    Plaintiffs and Class Members seek relief under Va. Code Ann. § 18.2-186.6(I), including, but not limited to, actual damages.

**Washington**
**WASH. REV. CODE ANN. § 19.255.010(1),** *et. seq.*
**(BROUGHT BY WASHINGTON CLASS AGAINST ANTHEM AND ALL ANTHEM AFFILIATES OPERATING IN WASHINGTON EXCEPT FOR BCBSA)**

930.    Plaintiffs incorporate the above allegations by reference.

931.    Anthem and Anthem Affiliates are required to accurately notify Plaintiffs and Class Members following discovery or notification of the breach of their data security system (if personal information was, or is reasonably believed to have been, acquired by an unauthorized person and the personal information was not secured) in the most expedient time possible and without unreasonable delay under Wash. Rev. Code Ann. § 19.255.010(1).

237

932.    Defendants are businesses that own or license computerized data that includes personal information as defined by Wash. Rev. Code Ann. § 19.255.010(1).

933.    Plaintiffs and Class Members' Personal Information (e.g., Social Security numbers) includes personal information as covered under Wash. Rev. Code Ann. § 19.255.010(5).

934.    Because Anthem and Anthem Affiliates discovered a breach of its security system (in which personal information was, or is reasonably believed to have been, acquired by an unauthorized person and the personal information was not secured), Anthem and Anthem Affiliates had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Wash. Rev. Code Ann. § 19.255.010(1).

935.    As a direct and proximate result of Anthem and Anthem Affiliates' violations of Wash. Rev. Code Ann. § 19.255.010(1), Plaintiffs and Class Members suffered damages, as described above.

936.    Plaintiffs and Class Members seek relief under Wash. Rev. Code Ann. §§ 19.255.010(10)(a), 19.255.010(10)(b) including, but not limited to, actual damages and injunctive relief.

**Wisconsin**
**WIS. STAT. ANN. § 134.98(2),** *et. seq.*
**(BROUGHT BY WISCONSIN CLASS AGAINST ANTHEM AND ALL ANTHEM AFFILIATES OPERATING IN WISCONSIN EXCEPT FOR BCBSA)**

937.    Plaintiffs incorporate the above allegations by reference.

938.    Anthem and Anthem Affiliates are required to accurately notify Plaintiffs and Class Members if they know that personal information in its possession has been acquired by a person whom it has not authorized to acquire the personal information within a reasonable time under Wis. Stat. Ann. §§ 134.98(2)-(3)(a).

939.    Defendants are businesses that maintain or license personal information as defined by Wis. Stat. Ann. § 134.98(2).

940.    Plaintiffs and Class Members' Personal Information (e.g., Social Security numbers) includes personal information as covered under Wis. Stat. Ann. § 134.98(1)(b).

941.    Because Anthem and Anthem Affiliates knew that personal information in its possession had been acquired by a person whom it has not authorized to acquire the personal

information, Anthem and Anthem Affiliates had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Wis. Stat. Ann. § 134.98(2).

942.    As a direct and proximate result of Anthem and Anthem Affiliates' violations of Wis. Stat. Ann. § 134.98(3)(a), Plaintiffs and Class Members suffered damages, as described above.

943.    Plaintiffs and Class Members seek relief under Wis. Stat. Ann. § 134.98, including, but not limited to, actual damages and injunctive relief.

## Wyoming
## WYO. STAT. ANN. § 40-12-502(a), *et. seq.*
## (BROUGHT BY WYOMING CLASS AGAINST ANTHEM AND ALL ANTHEM AFFILIATES OPERATING IN WYOMING EXCEPT FOR BCBSA)

944.    Plaintiffs incorporate the above allegations by reference.

945.    Anthem and Anthem Affiliates are required to accurately notify Plaintiffs and Class Members when they become aware of a breach of its data security system (if the misuse of personal identifying information has occurred or is reasonably likely to occur) in the most expedient time possible and without unreasonable delay under Wyo. Stat. Ann. § 40-12-502(a).

946.    Defendants are businesses that own or license computerized data that includes personal information as defined by Wyo. Stat. Ann. § 40-12-502(a).

947.    Plaintiffs and Class Members' Personal Information (e.g., Social Security numbers) includes personal information as covered under Wyo. Stat. Ann. § 40-12-502(a).

948.    Because Anthem and Anthem Affiliates were aware of a breach of their data security system (in which the misuse of personal identifying information has occurred or is reasonably likely to occur), Anthem and Anthem Affiliates had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Wyo. Stat. Ann. § 40-12-502(a).

949.    As a direct and proximate result of Anthem and Anthem Affiliates' violations of Wyo. Stat. Ann. § 40-12-502(a), Plaintiffs and Class Members suffered damages, as described above.

950.    Plaintiffs and Class Members seek relief under Wyo. Stat. Ann. § 40-12-502(f), including, but not limited to, actual damages and broad equitable relief.

**COUNT XI – STATE UNFAIR INSURANCE PRACTICE STATUTES
BROUGHT BY THE STATEWIDE CLASSES BELOW**

**Arizona**
**ARIZONA UNFAIR INSURANCE PRACTICES STATUTE,
(A.R.S. § 20-442, 443, 444) AGAINST ALL DEFENDANTS OPERATING IN ARIZONA
EXCEPT FOR BCBSA**

951.    Plaintiffs incorporate the preceding allegations by reference.

952.    Plaintiffs bring this claim against Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS operating in Arizona on behalf of the Arizona Class whose personal information was compromised as a result of the Anthem Data Breach.

953.    Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS operating in Arizona engaged in an unfair methods of competition or an unfair or deceptive acts or practices in the business of insurance in violation of A.R.S. §40-442, 443, and 444, including but not limited to:

a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts pertaining to the sale of insurance and health benefits services to the Arizona Class by representing that they would maintain adequate data privacy and security practices and procedures to safeguard Arizona Class Members' Personal Information from unauthorized disclosure, release, data breaches, and theft;

b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts pertaining to the sale of insurance and health benefits services to the Arizona Class by representing that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Arizona Class Members' Personal Information;

c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted, suppressed, and concealed the material fact of the inadequacy of the privacy and security protections for Arizona Class Members' Personal Information;

d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in unfair acts and practices with respect to the sale of insurance and health benefits services by failing to maintain the privacy and security of Arizona Class Members Personal Information, in violation of duties imposed by and public policies reflected in

240

applicable federal and state laws, resulting in the Anthem Data Breach.  These unfair

acts and practices violated duties imposed by laws including the Federal Trade

Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d et. seq.), the Gramm-

Leach-Bliley Act (15 U.S.C. § 6801), and the Arizona Insurance Information and

Privacy Protection Act (A.R.S. §20-2113).

e) Defendants Anthem and Anthem Affiliates engaged in unfair acts and practices

with respect to the sale of insurance and health benefits services by failing to disclose

the Anthem Data Breach to Arizona Class Members in a timely and accurate manner,

in violation of Ariz. Rev. Stat. § 44-7501.

f)  Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in unfair

acts and practices with respect to the sale of insurance and health benefits services by

failing to take proper action following the Anthem Data Breach to enact adequate

privacy and security measures and protect Arizona Class Members' Personal

Information from further unauthorized disclosure, release, data breaches, and theft.

954. The Arizona Class have suffered damages from Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS' unfair methods of competition and unfair or deceptive acts and practices in the business of insurance in violation of A.R.S. §40-442, 443, and 444.

955. The Arizona Class seek relief including but not limited to actual damages, nominal damages, injunctive relief, and/or attorneys' fees and costs.

**Massachusetts**
**UNFAIR METHODS OF COMPETITION AND UNFAIR AND DECEPTIVE ACTS AND PRACTICES IN THE BUSINESS OF INSURANCE,**
**(MASS. GEN. LAWS ANN. CH. 176D, § 1, et seq.) AGAINST ALL DEFENDANTS OPERATING IN MASSACHUSETTS EXCEPT BCBSA**

956. Plaintiffs incorporate the above allegations by reference.

957. Plaintiffs bring this claim against Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS operating in Massachusetts on behalf of the Massachusetts Class whose personal information was compromised as a result of the Anthem Data Breach.

958. Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in unfair methods of competition or unfair or deceptive acts or practices in the business of insurance, in

violation of Mass. Gen. Laws Ann. ch. 176D, §§ 3(1)(a) & 3(2), including, but not limited to:

a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts pertaining to the sale of insurance and health benefits services to the Massachusetts Class by representing that they would maintain adequate data privacy and security practices and procedures to safeguard Massachusetts Class Members' Personal Information from unauthorized disclosure, release, data breaches, and theft;

b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts pertaining to the sale of insurance and health benefits services to the Massachusetts Class by representing that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Massachusetts Class Members' Personal Information;

c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted, suppressed, and concealed the material fact of the inadequacy of the privacy and security protections for Massachusetts Class Members' Personal Information;

959.    The Massachusetts Class Members have suffered injury resulting from Defendants' illegal disclosures and failures to maintain the confidentiality of their personal, financial, and/or health information.

960.    The Massachusetts Class seeks relief including but not limited to damages, injunctive relief, and/or attorneys' fees and costs.

**New Mexico**
**TRADE PRACTICES AND FRAUDS IN INSURANCE BUSINESS,**
**(N.M. STAT. ANN. § 59A-16-1, *et seq.*) AGAINST ALL DEFENDANTS OPERATING IN**
**NEW MEXICO EXCEPT BCBSA**

961.    Plaintiffs incorporate the above allegations by reference.

962.    Plaintiffs bring this claim against Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS operating in New Mexico on behalf of the New Mexico Class whose personal information was compromised as a result of the Anthem Data Breach.

963.    Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in unfair methods of competition or unfair or deceptive acts or practices in the business of insurance, in

violation of N.M. Stat. Ann. § 59A-16-4 and N.M. Stat. Ann. § 59A-16-5, including, but not limited to:

> a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts pertaining to the sale of insurance and health benefits services to the New Mexico Class by representing that they would maintain adequate data privacy and security practices and procedures to safeguard New Mexico Class Members' Personal Information from unauthorized disclosure, release, data breaches, and theft;
>
> b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts pertaining to the sale of insurance and health benefits services to the New Mexico Class by representing that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of New Mexico Class Members' Personal Information;
>
> c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted, suppressed, and concealed the material fact of the inadequacy of the privacy and security protections for New Mexico Class Members' Personal Information;

964.    The New Mexico Class Members have suffered injury resulting from Defendant Anthem's illegal disclosure and failure to maintain the confidentiality of their personal, financial, and/or health information.

965.    The New Mexico Class seeks relief including but not limited to actual damages, injunctive relief, and/or attorneys' fees and costs.

**North Dakota**
**PROHIBITED PRACTICES IN INSURANCE BUSINESS,**
**(N.D. CENT. CODE § 26.1-04-01, *et seq*.) AGAINST ALL DEFENDANTS OPERATING IN NORTH DAKOTA EXCEPT BCBSA**

966.    Plaintiffs incorporate the above allegations by reference.

967.    Plaintiffs bring this claim against Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS operating in North Dakota on behalf of the North Dakota Class whose personal information was compromised as a result of the Anthem Data Breach.

968.    Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in unfair

243

1   methods of competition or unfair or deceptive acts or practices in the business of insurance, in

2   violation of N.D. Cent. Code Ann. § 26.1-04-03(1) and N.D. Cent. Code Ann. § 26.1-04-03(2),

3   including, but not limited to:

4   a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented

5   material facts pertaining to the sale of insurance and health benefits services to the

6   North Dakota Class by representing that they would maintain adequate data privacy

7   and security practices and procedures to safeguard North Dakota Class Members'

8   Personal Information from unauthorized disclosure, release, data breaches, and theft;

9   b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented

10   material facts pertaining to the sale of insurance and health benefits services to the

11   North Dakota Class by representing that they did and would comply with the

12   requirements of relevant federal and state laws pertaining to the privacy and security

13   of North Dakota Class Members' Personal Information;

14   c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted,

15   suppressed, and concealed the material fact of the inadequacy of the privacy and

16   security protections for North Dakota Class Members' Personal Information;

17   969.   The North Dakota Class Members have suffered injury resulting from Defendants'

18   illegal disclosures and failures to maintain the confidentiality of their personal, financial, and/or

19   health information.

20   970.   The North Dakota Class seeks relief including but not limited to damages, injunctive

21   relief, and/or attorneys' fees and costs.

22   **Texas**
**TEXAS UNFAIR AND DECEPTIVE INSURANCE PRACTICE LAWS,**

23   **(TEX. INS. CODE §§ 541.003, 541.051, 541.052, 541.061, 541.151) AGAINST ALL**
**DEFENDANTS OPERATING IN TEXAS EXCEPT BCBSA**

24   971.   Plaintiffs incorporate the above allegations by reference.

25   972.   Plaintiffs bring this claim against Defendants Anthem, Anthem Affiliates, and Non-

26   Anthem BCBS operating in Texas on behalf of the Texas Class whose personal information was

27   compromised as a result of the Anthem Data Breach.

28

244

973.     Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in unfair methods of competition or unfair or deceptive acts or practices in the business of insurance, in violation of Tex. Ins. Code §§ 541.003, 541.051, 541.052, and 541.061 including, but not limited to:

a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts pertaining to the sale of insurance and health benefits services to the Texas Class by representing that they would maintain adequate data privacy and security practices and procedures to safeguard Texas Class Members' Personal Information from unauthorized disclosure, release, data breaches, and theft;

b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts pertaining to the sale of insurance and health benefits services to the Texas Class by representing that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Texas Class Members' Personal Information;

c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted, suppressed, and concealed the material fact of the inadequacy of the privacy and security protections for Texas Class Members' Personal Information;

974.     The Texas Class Members have suffered injury resulting from Defendants' illegal disclosures and failures to maintain the confidentiality of their personal, financial, and/or health information.

975.     The Texas Class seeks relief including but not limited to damages, injunctive relief, and/or attorneys' fees and costs.

### West Virginia
### UNFAIR TRADE PRACTICES IN THE BUSINESS OF INSURANCE, (W. VA. CODE § 33-11-1, *et seq.*) AGAINST ALL DEFENDANTS OPERATING IN WEST VIRGINIA EXCEPT BCBSA

976.     Plaintiffs incorporate the above allegations by reference.

977.     Plaintiffs bring this claim against Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS operating in West Virginia on behalf of the West Virginia Class whose personal information was compromised as a result of the Anthem Data Breach.

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

978.    Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in unfair methods of competition or unfair or deceptive acts or practices in the business of insurance, in violation of W. Va. Code Ann. §§ 33-11-4(1),  33-11-4(2), and 33-11-4(12), including, but not limited to:

    a) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts pertaining to the sale of insurance and health benefits services to the West Virginia Class by representing that they would maintain adequate data privacy and security practices and procedures to safeguard West Virginia Class Members' Personal Information from unauthorized disclosure, release, data breaches, and theft;

    b) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS misrepresented material facts pertaining to the sale of insurance and health benefits services to the West Virginia Class by representing that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of West Virginia Class Members' Personal Information;

    c) Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS omitted, suppressed, and concealed the material fact of the inadequacy of the privacy and security protections for West Virginia Class Members' Personal Information;

    d) Defendants Anthem, Anthem Affiliates, and Non-Anthem BCBS engaged in unfair acts and practices with respect to the sale of insurance and health benefits services by failing to maintain the privacy and security of West Virginia Class Members Personal Information, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Anthem Data Breach.  These unfair acts and practices violated duties imposed by laws including Federal Trade Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d et. seq.), the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), West Virginia's Prepaid Limited Health Service Organization Act (W. Va. Code Ann. § 33-25D-28), and West Virginia's Health Maintenance Organization Act (W. Va. Code Ann. § 33-25A-2).

    e) Defendants Anthem and Anthem Affiliates engaged in unfair acts and practices

246

1    with respect to the sale of insurance and health benefits services by failing to disclose

2    the Anthem Data Breach to West Virginia Class Members in a timely and accurate

3    manner, in violation of W.V. Code § 46A.2A 102(a)

4    f)  Defendants Anthem, Anthem Affiliates and Non-Anthem BCBS engaged in unfair

5    acts and practices with respect to the sale of insurance and health benefits services by

6    failing to take proper action following the Anthem Data Breach to enact adequate

7    privacy and security measures and protect West Virginia Class Members' Personal

8    Information from further unauthorized disclosure, release, data breaches, and theft.

9    979.    The West Virginia Class Members have suffered injury resulting from Defendants'

10    illegal disclosures and failures to maintain the confidentiality of their personal, financial, and/or

11    health information.

12    980.    The West Virginia Class seeks relief including but not limited to damages, injunctive

13    relief, and/or attorneys' fees and costs.

14    **COUNT XII:  STATE INSURANCE PERSONAL INFORMATION PRIVACY STATUTES**
       **BROUGHT BY THE STATEWIDE CLASSES BELOW**

15

       **Arizona**

16    **ARIZONA INSURANCE INFORMATION AND PRIVACY PROTECTION ACT,**
       **(A.R.S. §20-2113, § 20-2118(b)) AGAINST ANTHEM AND ANTHEM AFFILIATES**

17    **OPERATING IN ARIZONA**

18    981.    Plaintiffs incorporate the above allegations by reference.

19    982.    Plaintiffs bring this claim against Defendants Anthem and Anthem Affiliates operating

20    in Arizona on behalf of the Arizona Class whose personal information was compromised as a result

21    of the Anthem Data Breach.

22    983.    Defendants Anthem and Anthem Affiliates are "insurance institution[s]" for purposes

23    of the Arizona Insurance Information and Privacy Protection Act, A.R.S. §20-2102.

24    984.    Defendants Anthem and Anthem Affiliates collected and received individually-

25    identifiable personal information regarding members of the Arizona Class during insurance

26    transactions.

27    985.    Defendants Anthem and Anthem Affiliates disclosed individually-identifiable personal

28    information regarding members of the Arizona Class that was collected or received in connection

247

1   with an insurance transaction without their authorization, in violation of A.R.S. §20-2113.  The

2   disclosure of personal information to unauthorized individuals in the Anthem Data Breach resulted

3   from the affirmative actions of Anthem employees.  ███████████████████████████████

4   ████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████

8   ██████████████████████████  Thus, Anthem actively and affirmatively allowed the

9   cyberattackers to see and obtain individually-identifiable personal information regarding members of

10  the Arizona Class.

11        986.    The Anthem Data Breach compromised the Personal Information and violated the

12  rights of members of the Arizona Class.

13        987.    The Arizona Class has suffered damages from Defendants Anthem and Anthem

14  Affiliates' illegal disclosure and failure to maintain the confidentiality of their personal information.

15        988.    The Arizona Class seeks relief under A.R.S. §20-2118(b)) including but not limited to

16  actual damages, nominal damages, injunctive relief, and/or attorneys' fees and costs.

17  **Connecticut**
**CONNECTICUT INSURANCE INFORMATION AND PRIVACY PROTECTION ACT,**

18  **(CONN. GEN. STAT. §38a-988, 995, 999) AGAINST ANTHEM AND ANTHEM AFFILIATES**
**OPERATING IN CONNECTICUT**

19        989.    Plaintiffs incorporate the above allegations by reference.

20        990.    Plaintiffs bring this claim against Defendants Anthem and Anthem Affiliates operating

21  in Connecticut on behalf of the Connecticut Class whose personal information was compromised as a

22  result of the Anthem Data Breach.

23        991.    Defendants Anthem and Anthem Affiliates are "insurance institution[s]" for purposes

24  of the Connecticut Insurance Information and Privacy Protection Act, C.G.S.§38a-976(12).

25        992.    Defendants Anthem and Anthem Affiliates collected and received individually-

26  identifiable personal information regarding members of the Connecticut Class during insurance

27  transactions.

28

248

993.     Defendants Anthem and Anthem Affiliates disclosed individually-identifiable personal information regarding members of the Connecticut Class that was collected or received in connection with an insurance transaction without their authorization, in violation of C.G.S. §38a-988.  The disclosure of personal information to unauthorized individuals in the Anthem Data Breach resulted from the affirmative actions of Anthem employees. ████████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Thus, Anthem actively and affirmatively allowed the cyberattackers to see and obtain individually-identifiable personal information regarding members of the Connecticut Class.

994.     Defendants Anthem and Anthem Affiliates failed to create and implement the standards and procedures for the management, transfer and security of personal information, including medical record information, required by C.G.S §38a-999, including standards and procedures to guard against the unauthorized access to and collection of, use or disclosure of this information, and thereby violated C.G.S §38a-999.

995.     The Anthem Data Breach compromised Personal Information, including medical record information, and violated the rights of members of the Connecticut Class.

996.     The Connecticut Class has suffered damages from Defendants Anthem and Anthem Affiliates' illegal disclosure and failure to maintain the confidentiality of their personal information, including medical record information.

997.     The Connecticut Class seeks relief under C.G.S §38a-995 including but not limited to actual damages, nominal damages, injunctive relief, and/or attorneys' fees and costs.

### Georgia
**GEORGIA INSURANCE INFORMATION AND PRIVACY PROTECTION ACT, (GA. CODE §33-39-14, 21(b)) AGAINST ANTHEM AND ANTHEM AFFILIATES OPERATING IN GEORGIA**

998.     Plaintiffs incorporate the above allegations by reference.

249

999.     Plaintiffs bring this claim against Defendants Anthem and Anthem Affiliates operating in Georgia on behalf of the Georgia Class whose personal information was compromised as a result of the Anthem Data Breach.

1000.   Defendants Anthem and Anthem Affiliates are "insurance institution[s]" for purposes of the Georgia Insurance Information and Privacy Protection Act, Ga. Code §33-39-14.

1001.   Defendants Anthem and Anthem Affiliates collected and received individually-identifiable personal information regarding members of the Georgia Class during insurance transactions.

1002.   Defendants Anthem and Anthem Affiliates disclosed individually-identifiable personal information regarding members of the Georgia Class that was collected or received in connection with an insurance transaction without their authorization, in violation of Ga. Code §33-39-14. The disclosure of personal information to unauthorized individuals in the Anthem Data Breach resulted from the affirmative actions of Anthem employees. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Thus, Anthem actively and affirmatively allowed the cyberattackers to see and obtain individually-identifiable personal information regarding members of the Georgia Class.  The Anthem Data Breach compromised Personal Information, including medical record information, and violated the rights of members of the Georgia Class.

1003.   The Georgia Class has suffered damages from Defendants Anthem and Anthem Affiliates' illegal disclosure and failure to maintain the confidentiality of their personal information.

1004.   The Georgia Class seeks relief under Ga. Code §33-39-21(b), including but not limited to actual damages, nominal damages, injunctive relief, and/or attorneys' fees and costs.

**Illinois**
**ILLINOIS INSURANCE INFORMATION AND PRIVACY PROTECTION ACT,**
**(215 ILCS 5/1014, 1021) AGAINST ANTHEM AND ANTHEM AFFILIATES OPERATING**
**IN ILLINOIS**

1005.   Plaintiffs incorporate the above allegations by reference.

1006.   Plaintiffs bring this claim against Defendants Anthem and Anthem Affiliates operating in Illinois on behalf of the Illinois Class whose personal information was compromised as a result of the Anthem Data Breach.

1007.   Defendants Anthem and Anthem Affiliates are "insurance institution[s]" for purposes of the Illinois Insurance Information and Privacy Protection Act, 215 ILCS 5/1014.

1008.   Defendants Anthem and Anthem Affiliates collected and received individually-identifiable personal information regarding members of the Illinois Class during insurance transactions.

1009.   Defendants Anthem and Anthem Affiliates disclosed individually-identifiable personal information regarding members of the Illinois Class that was collected or received in connection with an insurance transaction without their authorization, in violation of 215 ILCS 5/1014.  The disclosure of personal information to unauthorized individuals in the Anthem Data Breach resulted from the affirmative actions of Anthem employees.  ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.  Thus, Anthem actively and affirmatively allowed the cyberattackers to see and obtain individually-identifiable personal information regarding members of the Illinois Class.

1010.   The Anthem Data Breach compromised Personal Information, including medical record information, and violated the rights of members of the Illinois Class.

1011.   The Illinois Class has suffered damages from Defendants Anthem and Anthem Affiliates' illegal disclosure and failure to maintain the confidentiality of their personal information in

251

violation of 215 ILCS 5/1014.

1012.   The Illinois Class seeks relief under 215 ILCS 5/1021, including but not limited to actual damages, nominal damages, injunctive relief, and/or attorneys' fees and costs.

**Maine**
**MAINE INSURANCE INFORMATION AND PRIVACY PROTECTION ACT,**
**(ME. REV. STAT. 24-A, § 2215(1), 24-A, § 2217(2)) AGAINST ANTHEM AND ANTHEM**
**AFFILIATES OPERATING IN MAINE**

1013.   Plaintiffs incorporate the above allegations by reference.

1014.   Plaintiffs bring this claim against Defendants Anthem and Anthem Affiliates operating in Maine on behalf of the Maine Class whose personal information was compromised as a result of the Anthem Data Breach.

1015.   Defendants Anthem and Anthem Affiliates are entities licensed to engage in the business of insurance in Maine and collect, maintain or distribute personal information arising out of insurance transactions.

1016.   Defendants Anthem and Anthem Affiliates collected, maintained and/or distributed personal information arising out of insurance transactions regarding the Maine Class, and that information was compromised as a result of the Anthem Data Breach.

1017.   Defendants Anthem and Anthem Affiliates disclosed individually-identifiable personal information regarding members of the Maine Class without their authorization, in violation of Me. Rev. Stat. 24-A, § 2215(1). The disclosure of personal information to unauthorized individuals in the Anthem Data Breach resulted from the affirmative actions of Anthem employees. ████████ ████████████████████████████████████████████████████████ ███████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████████ Thus, Anthem actively and affirmatively allowed the cyberattackers to see and obtain individually-identifiable personal information regarding members of the Maine Class.

1018.   Members of the Maine Class were injured and have suffered damages as a result of

252

Defendants Anthem and Anthem Affiliates' illegal disclosure and failure to maintain the confidentiality of their personal information in violation of Me. Rev. Stat. 24-A, § 2215(1).

1019.   The Maine Class seeks relief under Me. Rev. Stat. 24-A, § 2217, including but not limited to actual damages, nominal damages, injunctive relief, and/or attorneys' fees and costs.

### Massachusetts
### MASSACHUSETTS INSURANCE INFORMATION AND PRIVACY PROTECTION ACT, (MASS. GEN. LAWS CH. 175I, § 1, *et seq.*) AGAINST ANTHEM AND ANTHEM AFFILIATES OPERATING IN MASSACHUSETTS

1020.   Plaintiffs incorporate the above allegations by reference.

1021.   Plaintiffs bring this claim against Defendants Anthem and Anthem Affiliates operating in Massachusetts on behalf of the Massachusetts Class whose personal information was compromised as a result of the Anthem Data Breach.

1022.   Defendants Anthem and Anthem Affiliates are "insurance institution[s]" as defined by the Massachusetts Insurance Information and Privacy Protection Act, Mass. Gen. Laws ch. 175I, § 2.

1023.   Defendants Anthem and Anthem Affiliates collected and received "personal information," as defined by the Massachusetts Insurance Information and Privacy Protection Act, Mass. Gen. Laws ch. 175I, § 2, regarding members of the Massachusetts Class in connection with insurance transactions.

1024.   Defendants Anthem and Anthem Affiliates disclosed personal information regarding members of the Massachusetts Class that was collected or received in connection with an insurance transactions without the Massachusetts Class Members' written authorization, in violation of Mass. Gen. Laws ch. 175I, § 13.  The disclosure of personal information to unauthorized individuals in the Anthem Data Breach resulted from the affirmative actions of Anthem employees. ███████████████ ████████████████████████████████████████████████████ █████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████████████ Thus, Anthem actively and affirmatively allowed the cyberattackers to see and obtain individually-

1    identifiable personal information regarding members of the Massachusetts Class.

2        1025.   The Anthem Data Breach compromised Personal Information and violated the rights

3    of members of the Massachusetts Class.

4        1026.   The Massachusetts Class suffered injury from Defendants Anthem and Anthem

5    Affiliates' illegal disclosure and failure to maintain the confidentiality of their personal information.

6        1027.   The Massachusetts Class seek relief under Mass. Gen. Laws ch. 175I, § 20 including

7    but not limited to special damages, compensatory damages, nominal damages, injunctive relief,

8    and/or attorneys' fees and costs.

9                                   **Minnesota**
                        **MINNESOTA INSURANCE FAIR INFORMATION REPORTING ACT,**
10   **(MINN. STAT. § 72A.49, *et seq*.) AGAINST ANTHEM AND ANTHEM AFFILIATES**
                              **OPERATING IN MINNESOTA**
11
         1028.   Plaintiffs incorporate the above allegations by reference.
12
         1029.   Plaintiffs bring this claim against Defendants Anthem and Anthem Affiliates operating
13
     in Minnesota on behalf of the Minnesota Class whose personal information was compromised as a
14
     result of the Anthem Data Breach.
15
         1030.   Defendants Anthem and Anthem Affiliates are "insurer[s]" as defined by the Minnesota
16
     Insurance Fair Information Reporting Act, Minn. Stat. § 72A.491.
17
         1031.   Defendants Anthem and Anthem Affiliates collected and received "personal
18
     information," as defined by the Minnesota Insurance Fair Information Reporting Act, Minn. Stat. §
19
     72A.491, regarding members of the Minnesota Class in connection with insurance transactions.
20
         1032.   Defendants Anthem and Anthem Affiliates disclosed personal information regarding
21
     members of the Minnesota Class that was collected or received in connection with an insurance
22
     transactions without the Minnesota Class Members' authorization, in violation of Minn. Stat. §
23
     72A.502.  The disclosure of personal information to unauthorized individuals in the Anthem Data
24
     Breach resulted from the affirmative actions of Anthem employees.
25
26
27
28

                                        254

1 ████████████████████████████████████

2 █████████████████████████████████ Thus, Anthem actively and

3 affirmatively allowed the cyberattackers to see and obtain individually-identifiable personal

4 information regarding members of the Minnesota Class.

5      1033.   The Anthem Data Breach compromised Personal Information and violated the rights of

6 members of the Minnesota Class.

7      1034.   The Minnesota Class suffered injury from Defendants Anthem and Anthem Affiliates'

8 illegal disclosure and failure to maintain the confidentiality of their personal information.

9      1035.   The Minnesota Class seek relief under Minn. Stat. § 72A.503 and Minn. Stat. § 13.08

10 including but not limited to actual damages, injunctive relief, declaratory relief, and any other

11 equitable relief, as well as exemplary damages of not less than $1,000 and not more than $15,000 for

12 each willful violation.

<div align="center">

**Montana**
**MONTANA INSURANCE INFORMATION AND PRIVACY PROTECTION ACT,**
**(MONT. CODE § 33-19-101, *et seq*.) AGAINST ANTHEM AND ANTHEM AFFILIATES**
**OPERATING IN MONTANA**

</div>

     1036.   Plaintiffs incorporate the above allegations by reference.

     1037.   Plaintiffs bring this claim against Defendants Anthem and Anthem Affiliates operating in Montana on behalf of the Montana Class whose personal information was compromised as a result of the Anthem Data Breach.

     1038.   Defendants Anthem and Anthem Affiliates are "insurance institution[s]" as defined by the Montana Insurance Information and Privacy Protection Act, Mont. Code § 33-19-104.

     1039.   Defendants Anthem and Anthem Affiliates collected and received "personal information," as defined by the Montana Insurance Information and Privacy Protection Act, Mont. Code § 33-19-104, regarding members of the Montana Class in connection with insurance transactions.

     1040.   Defendants Anthem and Anthem Affiliates disclosed personal information regarding members of the Montana Class that was collected or received in connection with an insurance transactions without the Montana Class Members' written authorization, in violation of Mont. Code

Ann. § 33-19-306.  The disclosure of personal information to unauthorized individuals in the Anthem

Data Breach resulted from the affirmative actions of Anthem employees. ███████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████ Thus, Anthem actively and

affirmatively allowed the cyberattackers to see and obtain individually-identifiable personal

information regarding members of the Montana Class.

 1041. The Anthem Data Breach compromised Personal Information and violated the rights of

members of the Montana Class.

 1042. The Montana Class suffered injury from Defendants Anthem and Anthem Affiliates'

illegal disclosure and failure to maintain the confidentiality of their personal information.

 1043. The Montana Class seeks relief under Mont. Code Ann. § 33-19-407 including but not

limited to actual damages, nominal damages, injunctive relief, and/or attorneys' fees and costs.

**New Jersey**
**NEW JERSEY INSURANCE INFORMATION PRACTICES ACT,**
**(N.J. STAT. § 17:23A-1, *et seq*.) AGAINST ANTHEM AND ANTHEM AFFILIATES**
**OPERATING IN NEW JERSEY**

 1044. Plaintiffs incorporate the above allegations by reference.

 1045. Plaintiffs bring this claim against Defendants Anthem and Anthem Affiliates operating

in New Jersey on behalf of the New Jersey Class whose personal information was compromised as a

result of the Anthem Data Breach.

 1046. Defendants Anthem and Anthem Affiliates are "insurance institution[s]" as defined by

the New Jersey Insurance Information Practices Act, N.J. Stat. § 17:23A-2.

 1047. Defendants Anthem and Anthem Affiliates collected and received "personal

information," as defined by the New Jersey Insurance Information Practices Act, N.J. Stat. § 17:23A-

2, regarding members of the New Jersey Class in connection with insurance transactions.

 1048. Defendants Anthem and Anthem Affiliates disclosed personal information regarding

256

members of the New Jersey Class that was collected or received in connection with an insurance

transactions without the New Jersey Class Members' written authorization, in violation of N.J. Stat. §

17:23A-13.  The disclosure of personal information to unauthorized individuals in the Anthem Data

Breach resulted from the affirmative actions of Anthem employees.  ███████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████  Thus, Anthem actively and

affirmatively allowed the cyberattackers to see and obtain individually-identifiable personal

information regarding members of the New Jersey Class.

1049.   The Anthem Data Breach compromised Personal Information and violated the rights of

members of the New Jersey Class.

1050.   The New Jersey Class suffered injury from Defendants Anthem and Anthem Affiliates'

illegal disclosure and failure to maintain the confidentiality of their personal information.

1051.   The New Jersey Class seeks relief under N.J. Stat. § 17:23A-20 including but not

limited to actual damages, nominal damages, injunctive relief, and/or attorneys' fees and costs.

**North Carolina**
**NORTH CAROLINA CONSUMER AND CUSTOMER INFORMATION PRIVACY ACT,
(N.C. GEN. STAT. § 58-39-1, *et seq*.) AGAINST ANTHEM AND ANTHEM AFFILIATES
OPERATING IN NORTH CAROLINA**

1052.   Plaintiffs incorporate the above allegations by reference.

1053.   Plaintiffs bring this claim against Defendants Anthem and Anthem Affiliates operating

in North Carolina on behalf of the North Carolina Class whose personal information was compromised

as a result of the Anthem Data Breach.

1054.   Defendants Anthem and Anthem Affiliates are "insurance institution[s]" as defined by

the North Carolina Consumer and Customer Information Privacy Act, N.C. Gen. Stat. § 58-39-15.

1055.   Defendants Anthem and Anthem Affiliates collected and received "personal

information," as defined by the North Carolina Consumer and Customer Information Privacy Act,

257

1   N.C. Gen. Stat. § 58-39-15, regarding members of the North Carolina Class in connection with

2   insurance transactions.

3        1056.   Defendants Anthem and Anthem Affiliates disclosed personal information regarding

4   members of the North Carolina Class that was collected or received in connection with an insurance

5   transactions without the North Carolina Class Members' written authorization, in violation of N.C.

6   Gen. Stat. § 58-39-75.  The disclosure of personal information to unauthorized individuals in the

7   Anthem Data Breach resulted from the affirmative actions of Anthem employees.

8

9

10

11

12                                                                                                        Thus,

13  Anthem actively and affirmatively allowed the cyberattackers to see and obtain individually-

14  identifiable personal information regarding members of the North Carolina Class.

15       1057.   The Anthem Data Breach compromised Personal Information and violated the rights of

16  members of the North Carolina Class.

17       1058.   The North Carolina Class suffered injury from Defendants Anthem and Anthem

18  Affiliates' illegal disclosure and failure to maintain the confidentiality of their personal information.

19       1059.   The North Carolina Class seek relief under N.C. Gen. Stat. § 58-39-105 including but

20  not limited to actual damages, nominal damages, injunctive relief, and/or attorneys' fees and costs.

21                                           **Ohio**
22          **OHIO INSURANCE TRANSACTION INFORMATION STANDARDS LAW,
            (OHIO REV. CODE § 3904.13, §3904.21(b) AGAINST ANTHEM AND ANTHEM
23                       AFFILIATES OPERATING IN OHIO**

24       1060.   Plaintiffs incorporate the above allegations by reference.

25       1061.   Plaintiffs bring this claim against Defendants Anthem and Anthem Affiliates operating

26  in Ohio on behalf of the Ohio Class whose personal information was compromised as a result of the

27  Anthem Data Breach.

28       1062.   Defendants Anthem and Anthem Affiliates are "insurance institution[s]" for purposes

                                              258
                 SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
                             CASE NO. 15-md-02617-LHK

of the Insurance Transaction Information Standards Law, Ohio Rev. Code § 3904.13.

1063.   Defendants Anthem and Anthem Affiliates collected and received individually-identifiable personal information regarding members of the Ohio Class during insurance transactions.

1064.   Defendants Anthem and Anthem Affiliates disclosed individually-identifiable personal information regarding members of the Ohio Class that was collected or received in connection with an insurance transaction without their authorization, in violation of Ohio Rev. Code § 3904.13.  The disclosure of personal information to unauthorized individuals in the Anthem Data Breach resulted from the affirmative actions of Anthem employees. ███████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████. Thus, Anthem actively and affirmatively allowed the cyberattackers to see and obtain individually-identifiable personal information regarding members of the Ohio Class.

1065.   The Anthem Data Breach compromised Personal Information, including medical record information, and violated the rights of members of the Ohio Class.

1066.   The Ohio Class have suffered damages from Defendants Anthem and Anthem Affiliates' illegal disclosure and failure to maintain the confidentiality of their personal information in violation of Ohio Rev. Code § 3904.13.

1067.   The Illinois Class seek relief under Ohio Rev. Code §3904.21, including but not limited to actual damages, nominal damages, injunctive relief, and/or attorneys' fees and costs.

**Oregon**
**OREGON USE AND DISCLOSURE OF INSURANCE INFORMATION,**
**(OR. REV. STAT. § 746.600, *et seq*.) AGAINST ANTHEM AND ANTHEM AFFILIATES**
**OPERATING IN OREGON**

1068.   Plaintiffs incorporate the above allegations by reference.

1069.   Plaintiffs bring this claim against Defendants Anthem and Anthem Affiliates operating in Oregon on behalf of the Oregon Class whose personal information was compromised as a result of

1   the Anthem Data Breach.

2       1070.   Defendants Anthem and Anthem Affiliates are "licensee[s]" as defined by the Oregon

3   Use and Disclosure of Insurance Information Statute, Or. Rev. Stat. § 746.600.

4       1071.   Defendants Anthem and Anthem Affiliates are "health insurer[s]" as defined by the

5   Oregon Use and Disclosure of Insurance Information Statute, Or. Rev. Stat. § 746.600.

6       1072.   Defendants Anthem and Anthem Affiliates collected and received "personal

7   information," as defined by the Oregon Use and Disclosure of Insurance Information Statute, Or. Rev.

8   Stat. § 746.600, regarding members of the Oregon Class in connection with insurance transactions.

9       1073.   Defendants Anthem and Anthem Affiliates disclosed personal information regarding

10  members of the Oregon Class that was collected or received in connection with an insurance

11  transactions without the Oregon Class Members' written authorization, in violation of Or. Rev. Stat. §

12  746.665.  The disclosure of personal information to unauthorized individuals in the Anthem Data

13  Breach resulted from the affirmative actions of Anthem employees. ████████████████████

14  ████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████

18  ████████████████████████████████  Thus, Anthem actively and

19  affirmatively allowed the cyberattackers to see and obtain individually-identifiable personal

20  information regarding members of the Oregon Class.

21      1074.   Defendants Anthem and Anthem Affiliates used or disclosed personal information

22  regarding members of the Oregon Class that was collected or received in connection with an

23  insurance transactions without obtaining the Oregon Class Members' authorization, in violation of

24  Or. Rev. Stat. § 746.607(2).

25      1075.   The Anthem Data Breach compromised Personal Information and violated the rights

26  of members of the Oregon Class.

27      1076.   The Oregon Class suffered injury from Defendants Anthem and Anthem Affiliates'

28  illegal disclosure and failure to maintain the confidentiality of their personal information.

1077.   The Oregon Class seeks relief under Or. Rev. Stat. § 746.680 including but not limited to actual damages, nominal damages, injunctive relief, and/or attorneys' fees and costs.

**COUNT XIII:  STATE MEDICAL AND HEALTH INFORMATION PRIVACY STATUTES BROUGHT BY THE STATEWIDE CLASSES BELOW**

**California**
**CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT,**
**(CIVIL CODE §56 *et seq*.) AGAINST ANTHEM AND ANTHEM AFFILIATES OPERATING IN CALIFORNIA**

1078.   Plaintiffs incorporate the above allegations by reference.

1079.   Plaintiffs bring this claim against Defendants Anthem and Anthem Affiliates operating in California on behalf of the California Class whose personal information was compromised as a result of the Anthem Data Breach.

1080.   Defendants Anthem and Anthem Affiliates provide "health care service plans," as defined in Civil Code §§56.05(g), and are entities regulated pursuant to the Knox-Keene Health Care Service Plan Act of 1975, and are therefore subject to the requirements of the California Confidentiality of Medical Information Act.  Anthem's health care service plans in California include, but are not limited to Anthem Blue Cross HMO (CaliforniaCare), described by Anthem as "one of the largest HMOs in the country."

1081.   The California Class includes "patients," as defined by the Confidentiality of Medical Information Act to whom "medical information" in the possession of Defendants Anthem and Anthem Affiliates pertains, as defined in Civil Code §§56.05(j) and (k).

1082.   Defendants Anthem and Anthem Affiliates disclosed medical information pertaining to members of the proposed California Class to unauthorized persons without first obtaining consent, in violation of Civil Code §56.10(a).  The disclosure of information to unauthorized individuals in the Anthem Data Breach resulted from the affirmative actions of Anthem employees. ███████████

███████████████████████████████████

███████████████████████████████

███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████ Thus,

Anthem actively and affirmatively allowed the cyberattackers to see and obtain information regarding members of the California Class.

1083.   Defendants Anthem and Anthem Affiliates' negligence resulted in the release of individually-identifiable medical information pertaining to members of the California Class to unauthorized persons and the breach of the confidentiality of that information.  Defendants Anthem and Anthem Affiliates' negligent failure to maintain or preserve medical information pertaining to members of the California Class in a manner that preserved the confidentiality of the information contained therein violates Civil Code §56.101(a).

1084.   Defendants Anthem and Anthem Affiliates are also "employer[s]" that receive and maintain medical information pertaining to members of the California Class for purposes of Civil Code §56.20.

1085.   Defendants Anthem and Anthem Affiliates failed to establish appropriate procedures to ensure the confidentiality and protection from unauthorized use and disclosure of that medical information pertaining to members of the California Class, as required by Civil Code §56.20.

1086.   Defendants Anthem and Anthem Affiliates disclosed medical information pertaining to members of the California Class to unauthorized persons without first obtaining consent, in violation of Civil Code §56.20(c), and permitted the information to be used by unauthorized persons for purposes other than the administering and maintaining employee benefit plans, including health care plans and plans providing short-term and long-term disability income, workers' compensation and for determining eligibility for paid and unpaid leave from work for medical reasons, in violation of Civil Code §56.20(d).

1087.   The California Class were injured and have suffered damages from Defendants Anthem and Anthem Affiliates' illegal disclosure and negligent release of their medical information in violation of Civil Code §§56.10, 56.20, and 56.101, and therefore seek relief under Civil Code §56.35 and §56.36 including but not limited to actual damages, nominal statutory damages of $1,000, civil penalties, injunctive relief, and/or attorneys' fees and costs.

**Maryland**
**MARYLAND DISCLOSURE REQUIREMENTS FOR INSURERS,**
**(MD. CODE, INS. § 4-403) AGAINST ANTHEM AND ANTHEM AFFILIATES OPERATING**
**IN MARYLAND**

1088.   Plaintiffs incorporate the above allegations by reference.

1089.   Plaintiffs bring this claim against Defendants Anthem and Anthem Affiliates operating in Maryland on behalf of the Maryland Class whose medical information was compromised as a result of the Anthem Data Breach.

1090.   Defendants Anthem and Anthem Affiliates are "insurer[s]" as meant by Md. Code, Ins. § 4-403.

1091.   Defendants Anthem and Anthem Affiliates disclosed medical information pertaining to members of the Maryland Class without their authorization and for no other reason permitted by Md. Code, Ins. § 4-403, and therefore violated Md. Code, Ins. § 4-403.   The disclosure of information to unauthorized individuals in the Anthem Data Breach resulted from the affirmative actions of Anthem employees. Thus, Anthem actively and affirmatively allowed the cyberattackers to see and obtain information regarding members of the Maryland Class.

1092.   The Anthem Data Breach compromised medical information and violated the rights of members of the Maryland Class.

1093.   The Maryland Class suffered injury from Defendants Anthem and Anthem Affiliates' illegal disclosure and failure to maintain the confidentiality of their medical information.

1094.   The Maryland Class seeks relief under Md. Code, Ins. § 4-403 including but not limited to declaratory relief, injunctive relief, attorneys' fees and costs, as well as actual damages for Defendants' knowing violation of Md. Code, Ins. § 4-403.

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

**MARYLAND DISCLOSURE REQUIREMENTS FOR NONPROFIT HEALTH SERVICE PLANS,**
**(MD. CODE, INS. § 14-138) AGAINST ANTHEM AND ANTHEM AFFILIATES OPERATING IN MARYLAND**

1095.   Plaintiffs incorporate the above allegations by reference.

1096.   Plaintiffs bring this claim against Defendants Anthem and Anthem Affiliates operating health services plans in Maryland on behalf of the Maryland Class whose medical information was compromised as a result of the Anthem Data Breach.

1097.   Defendants Anthem and Anthem Affiliates operate "nonprofit health service plans" and/or "Blue Cross or Blue Shield" plans in Maryland as meant by Md. Code, Ins. § 14-138.

1098.   Defendants Anthem and Anthem Affiliates disclosed medical information pertaining to members of the Maryland Class without their authorization and for no other reason permitted by Md. Code, Ins. § 14-138, and therefore violated Md. Code, Ins. § 14-138.  The disclosure of information to unauthorized individuals in the Anthem Data Breach resulted from the affirmative actions of Anthem employees.  Thus, Anthem actively and affirmatively allowed the cyberattackers to see and obtain information regarding members of the Maryland Class.

1099.   The Anthem Data Breach compromised medical information and violated the rights of members of the Maryland Class.

1100.   The Maryland Class suffered injury from Defendants Anthem and Anthem Affiliates' illegal disclosure and failure to maintain the confidentiality of their medical information.

1101.   The Maryland Class seeks relief under Md. Code, Ins. § 14-138 including but not limited to declaratory relief, injunctive relief, attorneys' fees and costs, as well as actual damages for Defendants' knowing violation of Md. Code, Ins. § 14-138.

264

**MARYLAND CONFIDENTIALITY OF MEDICAL RECORDS ACT,**
**(MD. CODE, HEALTH-GEN. § 4-301, *et seq*.) AGAINST ANTHEM AND ANTHEM**
**AFFILIATES OPERATING IN MARYLAND**

1102.   Plaintiffs incorporate the above allegations by reference.

1103.   Plaintiffs bring this claim against Defendants Anthem and Anthem Affiliates operating in Maryland on behalf of the Maryland Class whose medical records were compromised as a result of the Anthem Data Breach.

1104.   Defendants Anthem and Anthem Affiliates operate as "health maintenance organizations" as defined in Md. Code Ann., Health-Gen. § 19-301, and are therefore "health care providers" as defined in Md. Code Ann., Health-Gen. § 4-301 subject to the requirements of the Maryland Confidentiality of Medical Records Act.

1105.   Defendants Anthem and Anthem Affiliates are also a "person" to whom medical records are disclosed as meant by Md. Code Ann., Health-Gen. § 4-302, and are therefore subject to the requirements of the Maryland Confidentiality of Medical Records Act.

1106.   Defendants Anthem and Anthem Affiliates disclosed medical records pertaining to the Maryland Class without their authorization and for no other reason permitted by Md. Code Ann., Health-Gen. § 4-302, and therefore violated Md. Code Ann., Health-Gen. § 4-302.  The disclosure of information to unauthorized individuals in the Anthem Data Breach resulted from the affirmative actions of Anthem employees. ██████████████████████████████████████████ ████████████████████████████████████████ ███████████████████████████████████████████ ████████████████████████████████████████ ███████████████████████████████████████ ██████████████████████. Thus, Anthem actively and affirmatively allowed the cyberattackers to see and obtain information regarding members of the Maryland Class.

1107.   Maryland Class Members were injured by Defendants Anthem and Anthem Affiliates' disclosure of their medical records in violation Md. Code Ann., Health-Gen. § 4-302.

1108.   The Maryland Class seeks relief pursuant to Md. Code Ann., Health-Gen. § 4-309, including but not limited to declaratory relief, injunctive relief, and attorneys' fees and costs, as well

265

as actual damages for Defendants' knowing violations of Md. Code Ann., Health-Gen. § 4-302.

**Minnesota**
**MINNESOTA HEALTH RECORDS ACT,**
**(MINN. STAT. § 144.291, *et seq*.) AGAINST ANTHEM AND ANTHEM AFFILIATES**
**OPERATING IN MINNESOTA**

1109.   Plaintiffs incorporate the above allegations by reference.

1110.   Plaintiffs bring this claim against Defendants Anthem and Anthem Affiliates operating in Minnesota on behalf of the Minnesota Class whose health records were compromised as a result of the Anthem Data Breach.

1111.   As a result of conducting the business of insurance and other health benefits services in Minnesota, including but not limited to the processing of claims and third-party payments for health care, Defendants Anthem and Anthem Affiliates received from health care providers health records pertaining to members of the Minnesota Class.

1112.   Defendants Anthem and Anthem Affiliates negligently and/or intentionally released the health records pertaining to the Minnesota Class without their signed and dated consent and for no other reason permitted by Minn. Stat. Ann. § 144.293, and therefore violated Minn. Stat. Ann. § 144.293.  The release of information to unauthorized individuals in the Anthem Data Breach resulted from the affirmative actions of Anthem employees. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████Thus, Anthem actively and affirmatively allowed the cyberattackers to see and obtain information regarding members of the Minnesota Class.

1113.   Minnesota Class Members were injured by Defendants Anthem and Anthem Affiliates' negligent and/or intentional release of their health records in violation of Minn. Stat. Ann. § 144.293.

1114.   The Minnesota Class seeks relief for Defendants Anthem and Anthem Affiliates' violation of Minn. Stat. Ann. § 144.293, including but not limited to compensatory damages, nominal damages, injunctive relief, and/or attorneys' fees and costs.

266

**Rhode Island**
**RHODE ISLAND CONFIDENTIALITY OF HEALTH CARE INFORMATION ACT,**
**(R.I. GEN. LAWS § 5-37.3-1, *et seq.*) AGAINST ANTHEM AND ANTHEM AFFILIATES**
**OPERATING IN RHODE ISLAND**

1115.   Plaintiffs incorporate the above allegations by reference.

1116.   Plaintiffs bring this claim against Defendants Anthem and Anthem Affiliates operating in Rhode Island on behalf of the Rhode Island Class whose confidential health care information was compromised as a result of the Anthem Data Breach.

1117.   As a result of conducting the business of insurance and other health benefits services in Rhode Island, including but not limited to the processing of claims and third-party payments for health care, Defendants Anthem and Anthem Affiliates possessed confidential health care information pertaining to members of the Rhode Island Class.

1118.   Defendants Anthem and Anthem Affiliates released or transferred confidential health care information pertaining to the Rhode Island Class without their written consent and for no other reason permitted by R.I. Gen. Laws § 5-37.3-4, and therefore violated R.I. Gen. Laws § 5-37.3-4.  The release of information to unauthorized individuals in the Anthem Data Breach resulted from the affirmative actions of Anthem employees.  ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████  Thus, Anthem actively and affirmatively allowed the cyberattackers to see and obtain information regarding members of the Rhode Island Class.

1119.   Defendants Anthem and Anthem Affiliates failed to establish the security procedures in relation to confidential health care information as required by R.I. Gen. Laws § 5-37.3-4, and therefore violated R.I. Gen. Laws § 5-37.3-4.

1120.   Rhode Island Class Members were injured by Defendants Anthem and Anthem Affiliates' release or transfer of their confidential health care information and/or Defendants Anthem and Anthem Affiliates' failure to establish security procedures to protect their confidential healthcare

267

1   information in violation of R.I. Gen. Laws § 5-37.3-4.

2        1121.   The Rhode Island Class seeks relief for Defendants Anthem and Anthem Affiliates'

3   violation of R.I. Gen. Laws § 5-37.3-4, including but not limited to actual damages, punitive

4   damages, declaratory relief, injunctive relief, and/or attorneys' fees and costs, as well as statutory

5   damages of $5,000 for each knowing and intentional violation.

6                                          **Virginia**
     **VIRGINIA INSURANCE INFORMATION AND PRIVACY PROTECTION ACT,**
7    **(VA. CODE § 38.2-600, *et seq.*) AGAINST ANTHEM AND ANTHEM AFFILIATES**
                             **OPERATING IN VIRGINIA**
8
9        1122.   Plaintiffs incorporate the above allegations by reference.

10       1123.   Plaintiffs bring this claim against Defendants Anthem and Anthem Affiliates operating

11   in Virginia on behalf of the Virginia Class whose information was compromised as a result of the

12   Anthem Data Breach.

13       1124.   Defendants Anthem and Anthem Affiliates are "insurance institutions" as defined by

14   the Virginia Insurance Information and Privacy Protection Act, Va. Code § 38.2-602.

15       1125.   Defendants Anthem and Anthem Affiliates collected and received "medical-record

16   information," as defined by the Virginia Insurance Information and Privacy Protection Act, Va. Code

17   § 38.2-602, regarding members of the Virginia Class in connection with insurance transactions.

18       1126.   Defendants Anthem and Anthem Affiliates disclosed medical-record information

19   regarding members of the Virginia Class that was collected or received in connection with an

20   insurance transactions without the Virginia Class Members' written authorization, in violation of Va.

21   Code § 38.2-613.  The disclosure of information to unauthorized individuals in the Anthem Data

22   Breach resulted from the affirmative actions of Anthem employees. ███████████████████

23   ████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████

27   ████████████████████████████████████  Thus, Anthem actively and

28   affirmatively allowed the cyberattackers to see and obtain information regarding members of the

Virginia Class.

1127.   The Anthem Data Breach compromised medical-record information and violated the rights of members of the Virginia Class.

1128.   The Virginia Class suffered injury from Defendants Anthem and Anthem Affiliates' illegal disclosure and failure to maintain the confidentiality of their medical-record information.

1129.   The Virginia Class seek relief under Va. Code § 38.2-617 including but not limited to actual damages, nominal damages, injunctive relief, and/or attorneys' fees and costs.

**VIRGINIA HEALTH RECORDS PRIVACY STATUTE, (VA. CODE § 32.1-127.1:03) AGAINST ANTHEM AND ANTHEM AFFILIATES OPERATING IN VIRGINIA**

1130.   Plaintiffs incorporate the above allegations by reference.

1131.   Plaintiffs bring this claim against Defendants Anthem and Anthem Affiliates operating in Virginia on behalf of the Virginia Class whose health records were compromised as a result of the Anthem Data Breach.

1132.   Virginia law recognizes an individual's right of privacy in the content of his or her health records.  Va. Code § 32.1-127.1:03.

1133.   As a result of conducting the business of insurance and other health benefits services in Virginia, including but not limited to the processing of claims and third-party payments for health care, Defendants Anthem and Anthem Affiliates possessed health records pertaining to members of the Virginia Class.

1134.   Defendants Anthem and Anthem Affiliates are "health care entit[ies]" as defined by Va. Code Ann. § 32.1-127.1:03 and had a duty under Virginia law to not redisclose or otherwise reveal any health records in its possession regarding the Virginia Class.  Va. Code § 32.1-127.1:03(3).

1135.   Defendants Anthem and Anthem Affiliates redisclosed or otherwise revealed the health records pertaining to the Virginia Class without their consent and for no other reason permitted by Va. Code § 32.1-127.1:03(3), and therefore violated Va. Code § 32.1-127.1:03(3).  The disclosure of information to unauthorized individuals in the Anthem Data Breach resulted from the affirmative actions of Anthem employees.

**SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK**

Thus, Anthem actively and affirmatively allowed the cyberattackers to see and obtain information regarding members of the Virginia Class.

1136.   Virginia Class Members were injured by Defendants Anthem and Anthem Affiliates' illegal disclosure and negligent release of their health records in violation of Va. Code § 32.1-127.1:03(3).

1137.   The Virginia Class seeks relief for Defendants Anthem and Anthem Affiliates' violation of Va. Code § 32.1-127.1:03(3), including but not limited to actual damages, special damages, nominal damages, exemplary damages, injunctive relief, and/or attorneys' fees and costs.

**Washington**

**WASHINGTON UNIFORM HEALTH CARE INFORMATION ACT, (WASH. REV. CODE §70.02.045, § 70.02.170) AGAINST ANTHEM AND ANTHEM AFFILIATES OPERATING IN WASHINGTON**

1138.   Plaintiffs incorporate the above allegations by reference.

1139.   Plaintiffs bring this claim against Defendants Anthem and Anthem Affiliates operating in Washington on behalf of the Washington Class whose personal information was compromised as a result of the Anthem Data Breach.

1140.   As a result of conducting the business of insurance and other health benefits services, including but not limited to the processing of claims and third-party payments for health care, in Washington, Defendants Anthem and Anthem Affiliates possessed personal information including personal health care information pertaining to members of the Washington Class.

1141.   Defendants Anthem and Anthem Affiliates released personal information, including health care information, regarding members of the Washington Class without authorization in violation of Wash. Rev. Code §70.02.045.  The release of information to unauthorized individuals in the Anthem Data Breach resulted from the affirmative actions of Anthem employees.

270

1

2

3

4 Thus,

5 Anthem actively and affirmatively allowed the cyberattackers to see and obtain information regarding

6 members of the Washington Class.

7      1142.  The Washington Class were injured and have suffered damages from Defendants

8 Anthem and Anthem Affiliates' illegal disclosure and negligent release of their personal information,

9 including health care information in violation of Wash. Rev. Code §70.02.045.

10      1143.  The Washington Class seek relief under Wash. Rev. Code §70.02.170, including but

11 not limited to actual damages, nominal damages, injunctive relief, and/or attorneys' fees and costs.

12 **Wisconsin**

13 **WISCONSIN INSURANCE MEDICAL INFORMATION PRIVACY STATUTE, (WIS. STAT. § 610.70) AGAINST ANTHEM AND ANTHEM AFFILIATES OPERATING IN WISCONSIN**

14      1144.  Plaintiffs incorporate the above allegations by reference.

15

16      1145.  Plaintiffs bring this claim against Defendants Anthem and Anthem Affiliates operating

17 in Wisconsin on behalf of the Wisconsin Class whose personal information was compromised as a

18 result of the Anthem Data Breach.

19      1146.  Defendants Anthem and Anthem Affiliates are "insurance institution[s]" for purposes

20 of Wis. Stat. § 610.70.

21      1147.  Defendants Anthem and Anthem Affiliates collected and received individually-

22 identifiable personal medical information regarding members of the Wisconsin Class during

23 insurance transactions.

24      1148.  Defendants Anthem and Anthem Affiliates disclosed individually-identifiable personal

25 medical information regarding members of the Wisconsin Class that was collected or received in

26 connection with an insurance transaction without their authorization, in violation of Wis. Stat. §

27 610.70.  The disclosure of information to unauthorized individuals in the Anthem Data Breach

28 resulted from the affirmative actions of Anthem employees.

1 ████████████████████████████████████

2 ████████████████████████████████████

3 ████████████████████████████████████

4 ████████████████████████████████████

5 ███████████████████████████ Thus, Anthem actively and

6 affirmatively allowed the cyberattackers to see and obtain information regarding members of the

7 Wisconsin Class.

8     1149.   The Anthem Data Breach compromised personal medical information and violated the

9 rights of members of the Wisconsin Class.

10     1150.   The Wisconsin Class has suffered damages from Defendants Anthem and Anthem

11 Affiliates' illegal disclosure and failure to maintain the confidentiality of their personal medical

12 information in violation of Wis. Stat. § 610.70.

13     1151.    The Wisconsin Class seeks relief, including but not limited to actual damages,

14 nominal damages, injunctive relief, and/or attorneys' fees and costs.

15
**WISCONSIN CONFIDENTIALITY OF HEATH RECORDS LAW,
(WIS. STAT. § 146.82(5), §142.84) AGAINST ANTHEM AND ANTHEM AFFILIATES**

16 **OPERATING IN WISCONSIN**

17     1152.   Plaintiffs incorporate the above allegations by reference.

18     1153.   Plaintiffs bring this claim against Defendants Anthem and Anthem Affiliates operating

19 in Wisconsin on behalf of the Wisconsin Class whose personal information was compromised as a

20 result of the Anthem Data Breach.

21     1154.   Wisconsin law requires that all health records remain confidential.  Wis. Stat. §146.82.

22     1155.   As a result of conducting the business of insurance and other health benefits services,

23 including but not limited to the processing of claims and third-party payments for health care, in

24 Wisconsin, Defendants Anthem and Anthem Affiliates possessed health records pertaining to

25 members of the Wisconsin Class.

26     1156.   Defendants Anthem and Anthem Affiliates are "covered entit[ies]" for purposes of

27 Wis. Stat. §146.82(5) and had a duty not to re-disclose any health records in its possession regarding

28 the Wisconsin Class under Wisconsin law.  Wis. Stat. §146.82(5).

1157.   Defendants Anthem and Anthem Affiliates re-disclosed health records pertaining to the Wisconsin Class without their consent and for no other reason permitted by either Wis. Stat. §146.82(5) or §610.70, and therefore violated Wis. Stat. §146.82(5).  The disclosure of information to unauthorized individuals in the Anthem Data Breach resulted from the affirmative actions of Anthem employees. ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ Thus, Anthem actively and affirmatively allowed the cyberattackers to see and obtain information regarding members of the Wisconsin Class.

1158.   Wisconsin Class  members were injured and have suffered damages from Defendants Anthem and Anthem Affiliates' illegal disclosure and negligent release of their health information in violation of Wis. Stat. §146.82(5).

1159.   The Wisconsin Class seek relief under Wis. Stat. § 146.81, including but not limited to actual damages, nominal damages, exemplary damages of up to $25,000 for knowing and willful violations and up to $1,000 for negligent violations, statutory penalties, injunctive relief, and/or attorneys' fees and costs.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the 53 Statewide Classes, seek the following relief:

A.       An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Classes as requested herein, appointed the undersigned as Class counsel, and finding that Plaintiffs are proper representatives of the Classes requested herein.

B.       Plaintiffs request injunctive relief.  Awarding injunctive and other equitable relief as is necessary to protect the interests of the Classes, including (i) an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein; (ii) requiring Defendants to protect all data collected or received through the course of their business in accordance with HIPAA regulations,

1   the Gramm-Leach Bliley Act, other federal, state and local laws, and best practices under industry

2   standards; (iii) requiring Defendants to design, maintain, and test their computer systems to ensure

3   that Personal Information in their possession is adequately secured and protected; (iv) requiring

4   Defendants to disclose any future data breaches in a timely and accurate manner; (v) requiring

5   Defendants to engage third-party security auditors as well as internal security personnel to conduct

6   testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a

7   periodic basis and ordering them to promptly correct any problems or issues detected by these

8   auditors; (vi) requiring Defendants to audit, test, and train their security personnel to run automated

9   security monitoring, aggregating, filtering and reporting on log information in a unified manner; (vii)

10  requiring Defendants to implement multi-factor authentication requirements; (viii) requiring

11  Defendants' employees to change their passwords on a timely and regular basis, consistent with best

12  practices; (ix) requiring Defendants to encrypt all Personal Information; (x) requiring Defendants to

13  audit, test, and train its security personnel regarding any new or modified procedures; (xi) requiring

14  Anthem to segment data by, among other things, creating firewalls and access controls so that if one

15  area of the Anthem network is compromised, hackers cannot gain access to other portions of

16  Anthem's systems; (xii) requiring Defendants to purge, delete, and destroy in a reasonably secure and

17  timely manner Personal Information no longer necessary for their provision of services; (xiii)

18  requiring Defendants to conduct regular database scanning and securing checks; (xiv) requiring

19  Defendants to routinely and continually conduct internal training and education to inform internal

20  security personnel how to identify and contain a breach when it occurs and what to do in response to

21  a breach; (xv) requiring Defendants to provide lifetime credit monitoring and identity theft repair

22  services to members of the Classes; and (xvi) requiring Defendants to educate all class members

23  about the threats they face as a result of the loss of their Personal Information to third parties, as well

24  as steps Class Members must take to protect themselves.

25      C.      Plaintiffs also request actual damages, punitive damages, treble damages, statutory

26  damages, exemplary damages, equitable relief, restitution,  disgorgement of profits, attorney's fees,

27  statutory costs, and such other and further relief as is just and proper. Plaintiffs seek attorneys' fees

28  under California Code of Civil Procedure 1021.5, and similar statutes under other state laws.

1

## VIII.   DEMAND FOR JURY TRIAL

2

Plaintiffs demand a trial by jury on all triable issues.

3

4

                        **COHEN MILSTEIN SELLERS & TOLL PLLC**
                        ANDREW N. FRIEDMAN

5

                        GEOFFREY GRABER
                        SALLY M. HANDMAKER

6

                        ERIC KAFKA

7

Dated: March 11, 2016            By: /s/ Andrew N. Friedman

8

                        **ALTSHULER BERZON LLP**

9

                        EVE H. CERVANTEZ
                        JONATHAN WEISSGLASS

10

                        DANIELLE LEONARD
                        MEREDITH JOHNSON

11

12

Dated:  March 11, 2016           By: /s/ Eve H. Cervantez

13

                        *Lead Plaintiffs' Counsel*

14

                        **LIEFF CABASER HEIMANN & BERNSTEIN, LLP**
                        MICHEL SOBOL

15

16

                        **GIRARD GIBBS LLP**
                        ERIC GIBBS

17

                        *Plaintiffs' Steering Committee*

18

19

20

21

22

23

24

25

26

27

28

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

**INDEX OF EXHIBITS TO**
**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

Exhibit          Description of Exhibit
No.

1.      Anthem's Privacy webpage (https://www.anthem.com/health-insurance/about-
             us/privacy) (as it has appeared since January 2015)

2.      Anthem's Privacy webpage (https://www.anthem.com/health-insurance/about-
             us/privacy) (as it appeared from January 2014 until January 2015)

3.      Anthem Blue Cross California's Privacy webpage
                  (https://www.anthem.com/ca/health-insurance/about-us/privacy) (as it has
                  appeared since January 2015)

4.      Anthem's Blue Cross California's Privacy webpage
                  (https://www.anthem.com/ca/health-insurance/about-us/privacy) (as it
                  appeared from January 2014 until January 2015)

5.      Anthem's Privacy Notices available in 2014 and 2015 (available at:
                  https://www.anthem.com/health-insurance/about-us/privacy) (dated 9/23/2013
                  and 10/1/2014)

6.      Plaintiff Michael Bronzo
                  Anthem California Blue Cross 2015 "Combined Evidence of Coverage and
                  Disclosure Form" for Plaintiff Michael Bronzo (excerpts)

7.      Plaintiff Mary Carter
                  7-1      Anthem California Blue Cross 2015 Combined Evidence of Coverage and
                           Disclosure Form for Plaintiff Mary Carter (excerpts)
                  7-2      Anthem California Blue Cross 2015 Group Agreement for Plaintiff Mary
                           Carter's group (excerpts)

8.      Plaintiff Kenneth Coonce
                  8-1      Anthem California Blue Cross Small Group PPO Plan Booklet for Plaintiff
                           Kenneth Coonce applicable in 2014 and 2015 (excerpts)

276

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK

1     8-2     2014 Group agreement between Anthem Blue Cross California for Plaintiff
2             Kenneth Coonce's group (excerpts)
3     8-3     2015 Group agreement between Anthem Blue Cross California for Plaintiff
4             Kenneth Coonce's group (excerpts)
5  9.     Plaintiff Steve Kawai
6     9-1     CalPERS Administrative Services Agreement with Anthem Blue Cross for
7             2014-2018 (excerpts)
8  10.    Plaintiff Daniel Randrup
9     10-1    Administrative Services Agreement between Self-Insured Schools of
10            California and Anthem Blue Cross Life and Health of California (excerpts)
11            (filed under seal)
12 11.    Plaintiff Kenneth Solomon
13            Individual Anthem Blue Cross Life and Health Insurance Company PPO
14            policy for Plaintiff Kenneth Solomon (excerpts)
15 12.    Plaintiffs Daniel and Kelly Tharp
16    12-1    Administrative Services Agreement between Anthem California Blue Cross
17            and the Ironworkers' Employees Benefit Corporation (IEBC), effective 2011
18            through 2015 (redacted)
19 13.    Plaintiff Matthew Gates
20            Administrative Services Agreement between Anthem and Plaintiff Gates's
21            employer (excerpts)
22 14.    Plaintiff Elizabeth Ames
23    14-1    2014 Horizon Blue Cross Blue Shield New Jersey Benefits Booklet for
24            Plaintiff Elizabeth Ames (excerpts)
25    14-2    2015 Horizon Blue Cross Blue Shield New Jersey Benefits Booklet for
26            Plaintiff Elizabeth Ames (excerpts)
27    14-3    Horizon BCBSNJ Privacy Policies and Notices, as they have appeared on
28            Horizon's website since 2014

277

15.      Plaintiff Lillian Brisko

      15-1   California Blue Shield Combined Evidence of Coverage and Disclosure Form for Plaintiff Lillian Brisko, effective October 1, 2013 (excerpts)

      15-2   Blue Shield of California Privacy website, as it appeared since at least 2013

      15-3   Blue Shield of California Privacy Notice, available at all times on Blue Shield of California's website, as it has appeared since 2013

      15-4   Blue Shield of California Gramm-Leach Bliley Privacy Notice, available at all times on Blue Shield of California's website, as it has appeared since 2013

16.      Plaintiff Connie McDaniel

      16-1   2012 BCBS Alabama PPO Plan Booklet for Plaintiff Connie McDaniel, in effect during 2015 (excerpts)

      16-2   BCBS Alabama Privacy Notice, as it appeared since 2013

17.      Plaintiff Adam Mannis

      17-1   2011 BCBS Arkansas Enrollment application for Plaintiff Mannis (excerpts, redacted for privacy)

      17-2   BCBS Arkansas Plan Booklet for Plaintiff Mannis, in effect since 2012 (excerpts)

      17-3   BCBS Arkansas privacy websites, as they appeared since 2014 (BCBS Arkansas, Health Advantage, USAble Mutual Insurance)

      17-4   BCBS Arkansas's Health Advantage privacy webpages, as they appeared at the time of Plaintiff Mannis' enrollment in 2011

18.      Plaintiff Charles Platt

      18-1   BCBS Florida Non-Group Contract for Plaintiff Platt, effective 1/8/2013 (excerpts, redacted for privacy)

      18-2   BCBS Florida Privacy Notice, as it appeared since 2013

19.      Plaintiff David Klemer

      19-1   BCBS Illinois Certificate for the Blue Print Blue Advantage HMO for Plaintiff David Klemer (excerpts)

278

1    19-2    BCBS Illinois privacy websites, as it has appeared since 2014

2    19-3    BCBS Illinois Privacy Notice, as it has appeared since 2013

3    19-4    BCBS Illinois enrollment application

4  20.    Plaintiff Don West

5    20-1    CareFirst Blue Choice Advantage Plan Booklet for Plaintiff Don West,

6    effective April 1, 2014 (excerpts)

7    20-2    CareFirst privacy website, as it has appeared since 2014

8    20-3    CareFirst Privacy Notice, as it has appeared since 2013

9  21.    Plaintiff Carrie Ramos

10    21-1    BCBS Massachusetts 2014 Preferred Blue PPO Subscriber Certificate for

11    Plaintiff Carrie Ramos (excerpts)

12    21-2     BCBS Massachusetts Commitment to Confidentiality Privacy Notice, as it has

13    appeared since 2014

14  22.    Plaintiff Michelle Kaseta-Collins

15    22-1 BCBS Michigan Plan Booklet for Plaintiff Michelle Kaseta-Collins (excerpts)

16    22-2 BCBS Michigan privacy website, as it has appeared since 2014

17    22-3 BCBS Michigan Privacy Notice, as it has appeared since 2013

18  23.    Plaintiff Lauren Roberts

19    23-1    BCBS Minnesota Privacy Notices, as they appeared on BCBS Minnesota's

20    website since 2013

21    23-2    BCBS Minnesota group plan application/enrollment form

22  24.    Plaintiff Frank Nicosia

23    24-1    BCBS North Carolina Benefit Booklet for Plaintiff Frank Nicosia (excerpts)

24    24-2    BCBS North Carolina privacy webpage, as it has appeared since 2014

25    24-3    BCBS North Caroline Privacy Notice, as it has appeared since 2014

26  25.    Plaintiff Denise Masloski

27    Highmark Blue Shield Privacy Notices, as they have appeared on Highmark's website

28    since 2013

279

26.      Plaintiff Lance Wagner

      26-1     BCBS Texas BlueEdge Individual Plan Booklet for Plaintiff Wagner (excerpts)

      26-2     BCBS Texas Privacy Notice, as it has appeared since 2013

      26-3     BCBS Texas privacy websites

27.      Plaintiff Jessica Holguin

      27-1     2014 BCBS Vermont Plan Booklet ("Plan J Comprehensive Certificate") for Plaintiff Jessica Holguin (excerpts)

      27-2     BCBS Vermont privacy website, as it has appeared since 2014

      27-3     BCBS Vermont Privacy Notice, as it has appeared since 2014

28.      The Federal BCBSA Contract

      28-1     2013 Contract CS 1039

      28-2     2014 Amendment to Contract CS 1039

      28 -3    2015 Amendment to Contract CS 1039

29.      2014 FEHB Brochure (excerpts)

30.      2015 FEHB Brochure (excerpts)

31.      Blue Cross and Blue Shield Service Benefit Plan Notice of Privacy Practice, available at www.fepblue.org, as it appeared in 2014 and 2015

32.      The Rights and Responsibilities webpage of www.fepblue.org, as it appeared in 2015

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
CASE NO. 15-md-02617-LHK