ALTSHULER BERZON LLP
EVE CERVANTEZ (SBN 164709)
ecervantez@altshulerberzon.com
JONATHAN WEISSGLASS (SBN 185008)
jweissglass@altshulerberzon.com
DANIELLE E. LEONARD (SBN 218201)
dleonard@altshulerberzon.com
MEREDITH A. JOHNSON (SBN 291018)
mjohnson@altshulerberzon.com
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

COHEN MILSTEIN SELLERS & TOLL PLLC
ANDREW N. FRIEDMAN (admitted *pro hac vice*)
afriedman@cohenmilstein.com
GEOFFREY GRABER (SBN 211547)
ggraber@cohenmilstein.com
SALLY M. HANDMAKER (SBN 281186)
shandmaker@cohenmilstein.com
ERIC KAFKA (admitted *pro hac vice*)
ekafka@cohenmilstein.com
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

*Lead Plaintiffs' Counsel*
Additional Plaintiffs' Counsel Listed on Signature Page

KIRKLAND & ELLIS LLP
BRIAN P. KAVANAUGH (SBN 6270046)
LUKE C. RUSE (SBN 6296476)
TIM PICKERT (SBN 6313725)
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
brian.kavanaugh@kirkland.com
luke.ruse@kirkland.com
tim.pickert@kirkland.com

*Attorneys for Blue Cross Blue Shield Association*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| **IN RE ANTHEM, INC. DATA BREACH LITIGATION** | Case No. 15-md-02617-LHK (NC)<br><br>**JOINT LETTER BRIEF REGARDING DISCOVERY DISPUTES** |

I.  **PLAINTIFFS' STATEMENT**

Plaintiffs seek the Court's assistance in resolving two discovery disputes with Defendant Blue Cross Blue Shield Association ("BCBSA") with respect to Plaintiffs' Second Set of Requests for Production ("RFPs") (Exs. A and B).  First, BCBSA has improperly refused to produce any documents beyond what BCBSA deems relevant to members of the Federal Employee Program ("FEP"), despite the fact that, as licensor for *all* Blue Cross Blue Shield ("BCBS") defendants in the case, BCBSA may have highly relevant documents concerning the security of data held by all BCBS defendants, including Anthem.[1]  Second, for many RFPs, BCBSA refused to produce any documents created after February 3, 2015, the date the Anthem Data Breach was announced, even though such documents may contain information relevant to pre-breach data security, and despite the fact that Plaintiffs seek injunctive relief and specific performance to remedy ongoing inadequate data security.  On July 6, 2016, BCBSA attached a written "compromise" along with its portion of this Joint Letter Brief.[2]  As summarized in Plaintiffs' Exhibit C, BCBSA's July 6 offer is largely insufficient.  In order to avoid further delay in bringing this matter to the attention of the Court, Plaintiffs intend to submit the Joint Letter Brief based on BCBSA's July 6 position.[3]

   A.  **The Court Should Compel BCBSA to Produce Documents Relevant to All Claims and Defenses in This Litigation by Withdrawing Its General Objection # 8, and Its "FEP Only" Limitations on Responses and Custodians.**

BCBSA's General Objection #8 "objects to Plaintiffs' . . . requests … to the extent they seek documents relating to individual plaintiffs who are not alleged to be members of the Federal Employee Program ('FEP') and the Federal Employee Class…" (Ex. B at 6-7.)  Although BCBSA does not assert "FEP only" objections in response to any specific RFPs, in response to many RFPs[4], BCBSA only agrees to produce documents related to FEP members.[5]  Significantly, for the RFPs that BCBSA intends to use search terms to locate documents according to the ESI protocol,[6] BCBSA will only search for custodians from the "FEP program."  (6/6/16 K. Warner Ltr., Ex. E at 2.)  The ostensible rationale behind this objection is that BCBSA is only a defendant with respect to the federal breach of contract claim brought on behalf of the FEP Class.

But under the Federal Rules, a party may seek discovery that is "relevant to *any party's* claim or defense."  Fed. R. Civ. P. 26(b)(1) (emphasis added).  Discovery is not limited to issues between the party seeking discovery and the party from whom discovery is sought.  *See McKissick v. Gemstar-TV Guide Int'l, et. al.*, Case No. 04-cv-262, Doc. No. 169 (N.D. Okla., Oct. 5, 2006) (Ordering production, and finding that "[t]he plain language of Rule 26 negates [co-defendant] Gemstar's objections based upon the First Request being directed at claims other than those between

---

[1] *See* Second Amended Complaint ("SAC") (ECF 473-3) ¶240.
[2] BCBSA's attachment was its first written compromise to Plaintiffs (except for an extremely narrow offer for Requests 10-12). BCBSA provided a different offer orally on June 28, 2016. *See* 6/29/16 E. Kafka Ltr., Ex. F.
[3] As described in Plaintiffs' July 1 letter, BCBSA has engaged in a months-long effort of delay and obfuscation (Ex. D). BCBSA's eleventh-hour (and still insufficient) compromise offer, which has forced Plaintiffs to alter their original portion of the Joint Letter and to respond to BCBSA's chart (Ex. C), continues this tactic.
[4] RFPs # 9, 13-16, 21-22, 25, 28, 40, 43-46, and 48. *See* Exhibit B.
[5] BCBSA's Gen. Obj. # 8, and "FEP only" limitations are procedurally defective. Each RFP response must "state with specificity the grounds for objecting to the request, including the reasons," Fed. R. Civ. P. 26(b)(2)(B), and "an objection must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 26(b)(2)(C). BCBSA never states specific "FEP only" objections to Plaintiffs' RFPs, and never links its production limitations to an objection.
[6] RFPs # 10-12, 23-24, 29, and 41. *See* Exhibit B.

Plaintiff and [co-defendant] Gemstar."); *see also*, 8 Fed. Prac. & Proc. Civ.2d §2011 ("A third-party defendant may examine plaintiff although neither party asserts a claim against the other."). Accordingly, BCBSA may not withhold documents because they are purportedly relevant only to Plaintiffs' claims against BCBSA's co-defendants rather than BCBSA.  For example, RFPs 9-12, 23-24 seek highly relevant documents about Anthem's data security for all BCBS members' PII, which BCBSA has attempted to artificially limit to only data security for FEP members' PII.

Furthermore, even if BCBSA's "FEP only" objection were appropriate under the Federal Rules (and it is not), BCBSA is impermissibly using its "FEP only" limitations to withhold documents that are relevant to Plaintiffs' breach of contract claim against BCBSA.  Plaintiffs allege that BCBSA promised to "take reasonable measures to protect the security and confidentiality of Federal Employee Plaintiffs' and Federal Employee Class Members' Personal Information…" (Second Am. Compl. ("SAC") (ECF No. 473-3) at ¶ 504), and that BCBSA breached its contract with the Office of Personnel Management ("OPM") by failing "take reasonable and contractually-required measures to keep Federal Employee Plaintiffs' and Class Members' Personal Information secure and confidential…" (*Id.* at ¶ 508).  Pursuant to BCBSA's contract with OPM, BCBSA's licensees, including Anthem, processed all FEP member claims.  (*Id.* at ¶ 300).  Thus, the cybersecurity of BCBSA's licensees is relevant to whether BCBSA breached its contract with OPM.

BCBSA's eleventh-hour "compromise" is deficient: BCBSA still subjects all of its custodial searches and its custodian list to its FEP limitation, still imposes an FEP-only limitation to key requests for non-custodial searches, and still refuses to withdraw its General Objection # 8.  Under BCBSA's "compromise," BCBSA will continue to impermissibly use the "FEP only" objections to withhold documents highly relevant to both Plaintiffs' FEP claim and Plaintiffs' other claims.  For example, Anthem has produced documents indicating that in 2015, BCBSA created a Cybersecurity Proposal for BCBS licensees, including most of the Defendants in this case.[7]  The 2015 Cybersecurity Proposal includes proposed cybersecurity standards that BCBS licensees would be required to follow, and is likely to contain crucial information about BCBSA's licensees' cybersecurity, thus providing relevant information about how FEP and other licensees' members' personal information is or should be protected.  Yet, even under its "compromise," BCBSA still refuses to search for any emails or other custodial documents surrounding the Cybersecurity Proposal.  Similarly, in response to RFPs 10-12, 23-24, all of which implicate Anthem's data security, BCBSA refuses to search for relevant documents outside the limited universe of FEP-custodians.

### B. The Court Should Compel BCBSA to Produce Documents Created After February 3, 2015.

Plaintiffs offered a compromise whereby BCBSA would produce documents in response to a selected set of the RFPs through July 31, 2016.  (6/24/16 E. Kafka e-mail, Ex. K.) However, even in its July 6 "compromise," BCBSA refuses to produce documents created after February 3, 2015, the date that Anthem announced the Anthem Data Breach had occurred, for 4 of the 7 RFPs where BCBSA agreed to utilize custodial searches.  (*See* Ex. C, RFPs # 23-24, 29, and 41).  For the other 3 RFPs, BCBSA will search for documents created on or before December 31, 2015, but only for documents that refer to pre-February 3, 2015 conduct.  (*See* Ex. C, RFPs # 10-12.)

---

[7] After learning of the Cybersecurity Proposal from documents produced by Anthem, Plaintiffs asked why BCBSA had not produced similar documents. (5/9/16 Kafka Ltr., Ex. G at 3; 5/17/16 Kafka Ltr., Ex. H; 5/27/16 Kafka Ltr., Ex. I at 3.) BCBSA responded that it had not produced the Proposal because it had "agreed to produce certain documents only to the extent that they relate to Plaintiffs' FEP claim." (5/19/16 Warner Ltr., Ex. J at 3.)

BCBSA possesses highly relevant custodial documents that were created after their 2015 cut-offs. For example, Plaintiffs' RFPs # 10-12 and 23-24 seek information about Anthem's data security, and BCBSA's attempts (if any) to verify Anthem's data security. BCBSA's timeframe objections shield BCBSA from providing custodial documents (e.g., e-mails between BCBSA employees) regarding Anthem's data security and BCBSA's new 2015 Cybersecurity Proposal. Custodial documents responsive to these RFPs are likely to contain relevant evaluations of pre-Data Breach policies and elucidate the contours of pre-Data Breach policies. These post-Data Breach documents are relevant to whether BCBSA breached its contract with OPM, and are also relevant to Plaintiffs' request for specific performance of the federal contract going forward. That is, Plaintiffs allege a *continuing* breach of the federal contract, and are entitled to current documents to prove that point. Documents created after Feb. 3, 2015 will also be relevant to Plaintiffs' claims against other Defendants, including Plaintiffs' request for injunctive relief to insure that Anthem institutes adequate data security for the PII of BCBSA licensees' members, which Anthem *still* possesses. *See, e.g.,* SAC ¶¶ 162, 373, 518, 545, Prayer for Relief.

In its July 6 "compromise," BCBSA also continues to assert date limitations for six non-custodial RFPs without any consideration of burden or proportionality. (*See* Ex. C, RFPs # 25, 27, 36, 40, 43, and 45.) For example, in response to RFP No. 25, BCBSA has agreed to produce "organizational charts" through Feb. 3, 2015. Plaintiffs simply ask BCBSA to produce organization charts through October 19, 2015. (Ex. C, RFP # 25.) This should create a minimal burden.

## II.   DEFENDANT'S STATEMENT

Plaintiffs begin with two fundamentally flawed predicates. ***First***, Plaintiffs falsely assert that BCBSA has "refused to produce any documents beyond what BCBSA deems relevant to members of the [FEP]." From the outset, BCBSA agreed to search for documents relating to BCBSA's contractual relationship with Anthem, the Anthem Data Breach itself, Anthem's cybersecurity, Anthem's information technology infrastructure, Anthem's protection of PHI or PII transmitted to Anthem by other BCBS licensees, Anthem's discovery of the Data Breach, Anthem's security flaws, if any, identified in the Data Breach, and BCBSA's policies and procedures utilized to respond to the Data Breach.[8] (*See* e.g. Ex. B at RFP #s 8, 17-20, 27; Ex. M, BCBSA Resps. to First RFPs, at RFP #4.)

***Second***, Plaintiffs assert that "for many RFPs [though they do not limit this letter brief to those RFPs] BCBSA has refused to produce any documents created after February 3, 2015," and then malign BCBSA's offers of compromise, though Plaintiffs themselves have offered no compromise.[9] In reality—depending on the specific RFP, its relationship to the claims against BCBSA, its relevance to the litigation generally, and whether it sought information duplicative of information that Plaintiffs requested and/or are receiving from Anthem itself—BCBSA agreed to produce documents either through February 3, 2015 (the announcement of the Data Breach) or October 19, 2015 (the filing of the CAC). (Ex. B.)[10] *See e.g. Ogden v. Bumble Bee Foods, LLC*, 292

---

[8] The context for Plaintiffs' demands is important. Of the thirteen counts and over eighty sub-counts in the Complaint, Plaintiffs assert ***only one cause of action against BCBSA***, the third-party beneficiary claim for breach of contract under federal law (Count VI). Plaintiffs do not allege that BCBSA's database or system was breached, but rather that BCBSA is liable for *Anthem's* purported past failure to comply with the OPM contract's alleged security requirements. There are no factual allegations in the Complaint that that there is a continuing data breach within Anthem. Nor are there any allegations that the data security of any non-Anthem BCBS licensee was deficient or contributed to any putative class member's alleged injuries. (Dkt. No. 473-4)

[9] Plaintiffs do not address any of BCBSA's objections other than its FEP and time-period limitations.

[10] Plaintiffs' incorrectly assert that BCBSA refuses to produce documents created after February 3, 2015 in

F.R.D. 620, 628 (N.D. Cal. 2013) (limiting time frame of discovery for certain requests for production based on relevance); Fed. R. Civ. P. 26(b)(1) (mandating that discovery be "proportional to the needs of the case").  For the three specific RFPs that Plaintiffs raised during the parties' meet and confer calls, BCBSA offered a compromise to search for documents created through December 31, 2015.  (Ex. E, at 4.)  Plaintiffs rejected that compromise without explanation or counter-offer.  (Ex. N, 6/10/16 E. Kafka e-mail at 1.)  On June 28, BCBSA offered another compromise to undertake several non-custodial searches (on top of those compromise offers made in its June 6 letter) for categories of documents created through July 31, 2016 and extending in scope beyond the FEP, thus addressing both of Plaintiffs' complaints. (Ex. L, 7/6/16 B. Kavanaugh Ltr. at 6 and Ex. L-1.)[11]  Again, without counter-offer, compromise, or even discussion, Plaintiffs categorically rejected BCBSA's second compromise, and now characterize BCBSA's offers as "insufficient," without explaining how BCBSA's offers are deficient relative to the precise claims at issue and the needs of the case, as detailed in Exhibit P, replying to Plaintiffs' assertions in Exhibit C.

Plaintiffs refused to engage in substantive, RFP-specific negotiations regarding what documents they purportedly need from BCBSA or how those documents relate to specific claims against any specific Defendants, let alone BCBSA.[12]  Instead, Plaintiffs made broad-stroke and ever-evolving requests of BCBSA, including a supposed "compromise" on June 24 that actually *expanded* Plaintiffs' demands, insisting that BCBSA produce documents responsive to RFPs to which BCBSA objected in full more than four months earlier and which had *never* been discussed by the parties since. (Compare Ex. B to Ex. K, requesting BCBSA to produce documents responsive to RFPs # 21-22, 26, 30-33, 35, 38-39, 42, 44, 46-51.)  This lack of focused, substantive engagement is reflected in the dispute Plaintiffs now bring to the Court.  Many of Plaintiffs' demands are not tethered to specific RFPs; nor are they supported by any demonstration of relevance or proportionality.  Fed. R. Civ. P. 26(b)(1) adv. comm. note (2015) ("A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them.").  This is not surprising given Plaintiffs' failure to engage in a proper meet and confer process for each RFP they now place at issue.[13]

---

response to RFP #s 29 and 41.  BCBSA's original Responses agreed to produce documents in response to these RFPs through October 19, 2015, several months after the Data Breach. (Ex. B.)

[11] Anthem has not agreed to conduct custodial searches beyond October 2015. Rather, Anthem agreed to conduct a non-custodial search for certain polices and submissions to government regulators through July 31, 2016. (Ex. O, 5/31/16 D. Hogan Ltr.)  Plaintiffs offer no justification for why BCBSA should be held to even more demanding production obligations than Anthem.

[12] The history of the parties' meet and confer discussions, Plaintiffs' shifting demands, and BCBSA's offers of compromise is set forth in detail in Brian Kavanaugh's July 6, 2016 Letter to Lead Plaintiffs' Counsel.  (Ex. L.)  Plaintiffs' characterization of BCBSA's offers of compromise as an "effort of delay and obfuscation" is nonsense.  BCBSA's demand for a substantive meet and confer process is what Rules 1 and 26 contemplate.  Unfortunately, after the parties' June 28 meet and confer where BCBSA offered to search for several categories of documents through July 31, 2016 and encouraged further dialogue among the parties, Plaintiffs still did not engage in an effort to eliminate or narrow their dispute, but responded only with correspondence rejecting BCBSA's offer *in toto*.  This prompted BCBSA to detail how the categories of documents it had offered to search for on the June 28 call corresponded with the RFPs that Plaintiffs continued to assert were in dispute.  (Ex. L and L-1.)  Plaintiffs' effort to label BCBSA's description as a new offer is gamesmanship.  Even in the last two days, BCBSA sought common ground for RFPs where Plaintiffs represented they are willing to compromise; but Plaintiffs' "compromise" positions continue to evolve.  (Ex. Q, 7/12/16 L. Ruse E-mail.)

[13] For example, Plaintiffs complain about BCBSA's "FEP only" objection with respect to RFPs #21-22, 44, 46, and 48 even though BCBSA objected these RFPs in full in February 2016 and Plaintiffs had never raised them since until Plaintiffs' June 24 "compromise" email.  Similarly, Plaintiffs assert BCBSA should expand the time period of its non-custodial productions for RFPs #25, 27, 36, 40, 43, and 45.  But Plaintiffs never raised these RFPs

None of Plaintiffs' arguments support the expansive discovery they seek.  ***First***, Plaintiffs' claim that BCBSA's post-Data Breach policies and related custodial documents are likely to shed light on BCBSA's pre-Data Breach policies is self-defeating because BCBSA has already agreed to produce its pre-Data Breach data security requirements applicable to Anthem.  (*E.g.* Ex. B, RFP #9; Ex. M, at RFP #4-5.)  BCBSA further offered to produce its post-Data Breach data security requirements for licensees and any audit reports, but Plaintiffs rejected this offer.  (Ex. L. at 6.)

***Second***, whether BCBSA "breached its contract with OPM" depends on BCBSA's pre-Data Breach compliance with the terms of that contract, not BCBSA's after-the-fact deliberations regarding forward-looking proposals applicable to licensees generally.[14]  Plaintiffs make much of BCBSA's 2015 cybersecurity proposal, suggesting in conclusory fashion that they are entitled to "all documents" because they "are relevant to whether BCBSA breached its contract with OPM."  But, BCBSA offered to search for documents containing post-Data Breach cyber-security requirements as they relate to the OPM contract.  Plaintiffs could not explain during the parties' meet and confers— and offer no explanation now—why custodial searches for "*all documents*" related to the proposal are relevant or proportional, especially given that the proposal contained a number of discussion topics that are not related to the security of Anthem's networks.  Moreover, BCBSA already offered to produce the data security standards that were actually adopted and applicable to Anthem.  If Plaintiffs believe Anthem's views on those standards and any related proposals are relevant to their claims against Anthem, Plaintiffs should look first to Anthem for those materials.[15]

***Third***, the Complaint does *not* "allege a continuing breach" of the OPM contract by BCBSA (*see* SAC ¶¶ 502-518), but instead, at most, a continuing violation by ***Anthem*** concerning "OPM's right to audit Anthem, which . . . Anthem … continues to refuse to allow." (SAC ¶ 518.)  Beyond that, Plaintiffs do not articulate what injunctive relief or specific performance they seek under the OPM contract, let alone how their RFPs relate to any such relief.

***Finally***, Plaintiffs do not explain how the broad discovery they demand is "relevant to Plaintiffs' claims against other Defendants, including Plaintiffs' request for injunctive relief" against Anthem, or why BCBSA should be burdened to produce documents they can obtain from Anthem.[16]

Per the Court's Civil Standing Order, BCBSA has offered the proposed compromises in Exhibits L and L-1 hereto.

---

in any meet and confer other than their June 24 "compromise" email. (Ex. L-1.)  This contrasts sharply to the RFP-by-RFP negotiations in which Plaintiffs engaged Anthem over hours of meet and confer sessions and months of correspondence.  (*See e.g.* Ex. R, 1/8/16 D. Hogan Ltr.; Ex. S, 1/14/16 D. Berger Ltr.; Ex. T, 1/25/16 D. Hogan Ltr.)

[14] Plaintiffs' understated description of RFPs # 10-12 and 23-24 does not reveal that these RFPs request "all documents" or "all documents and communications" regarding a variety of topics and Plaintiffs do not begin to explain how such "all documents" requests are necessary or proportional to their needs or why a more targeted search, such as BCBSA has offered, is insufficient.

[15] Plaintiffs have not been willing to limit their request to Anthem's contribution to the discussion regarding post-Data Breach standards adopted by BCBSA.

[16] If BCBSA must produce documents that do not relate to claims against it or that have been or could have been obtained from Anthem, BCBSA requests that the Court shift those costs to Plaintiffs under Rule 26(c)(1).

Respectfully submitted,

**COHEN MILSTEIN SELLERS & TOLL PLLC**
ANDREW N. FRIEDMAN
GEOFFREY GRABER
SALLY M. HANDMAKER
ERIC KAFKA

Dated:  July 15, 2016          By: /s/ Andrew N. Friedman

**ALTSHULER BERZON LLP**
EVE H. CERVANTEZ
JONATHAN WEISSGLASS
DANIELLE E. LEONARD
MEREDITH A. JOHNSON

Dated:  July 15, 2016          By: /s/ Eve H. Cervantez

*Lead Plaintiffs' Counsel*

**GIRARD GIBBS LLP**
ERIC GIBBS
DAVID M. BERGER
1 Kaiser Plaza, Suite 1125
Oakland, California 94612
Telephone:  (510) 981-4800
Facsimile:  (415) 981-4846

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
MICHAEL W. SOBOL
NICOLE D. SUGNET
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339

*Plaintiffs' Steering Committee*

**KIRKLAND & ELLIS LLP**
BRIAN P. KAVANAUGH (SBN 6270046)
LUKE C. RUSE (SBN 6296476)
TIM PICKERT (SBN 6313725)
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
brian.kavanaugh@kirkland.com
luke.ruse@kirkland.com
tim.pickert@kirkland.com

Dated:  July 15, 2016       By: /s/ Brian P. Kavanaugh

*Attorneys for The Blue Cross Blue Shield Association*

**ECF CERTIFICATION**

Pursuant to Local Rule 5-1(i)(3), the filing attorney attests that she has obtained concurrence regarding the filing of this document from the signatories to the document.

Dated: July 15, 2016

                                               /s/ Andrew N. Friedman