# EXHIBIT L

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

300 North LaSalle
Chicago, Illinois  60654

Brian P. Kavanaugh
To Call Writer Directly:
(312) 862-2015
brian.kavanaugh@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

July 6, 2016

**By E-mail**

Eve Cervantez
Altshuler Berzon LLP
177 Post Street
Suite 300
San Francisco, CA 94108

Andrew N. Friedman
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave NW
Suite 500, East Tower
Washington, D.C. 20005

Re:     Anthem Data Breach Litigation – Discovery Disputes Regarding
BCBSA's Responses to Plaintiffs' Second Set of Requests for Production

Dear Eve and Andy:

On behalf of Blue Cross Blue Shield Association ("BCBSA"), I write in response to Plaintiffs' counsels' correspondence of June 29 and July 1, 2016.  The purpose of my correspondence is to correct the many misstatements in yours.  It is abundantly clear that Plaintiffs have no interest in a meaningful meet and confer process (as shown below) so we are in agreement that the parties are at impasse.  An accurate summary of how we got here is in order though and informs the remainder of my letter.

## Chronology of the Parties' Discovery Dispute

BCBSA responded to Plaintiffs' Second Set of Requests for Production on February 15, 2016.  In its responses, BCBSA included several general objections, including with respect to discovery unrelated to the claims asserted against BCBSA (*i.e.* what you have dubbed the "FEP only" objection).  Likewise, BCBSA objected generally to discovery after October 19, 2015, the filing date of the Consolidated Amended Complaint.   Both of these objections are clear on the face of BCBSA's response.  Moreover, BCBSA's responses to individual requests ("RFPs") raised additional objections, in many instances, and further specified what BCBSA would produce, if anything, in response to the particular request.  For a number of RFPs, BCBSA made clear that it would produce documents that related to the Data Breach or Anthem data security and was not restricting its production to documents relating only to FEP members.   (*See e.g.* BCBSA's Resp. to RFP # 8, 17, 18, 19, 20, 27)

Plaintiffs raised no objections to BCBSA's responses.

1

# KIRKLAND & ELLIS LLP

Lead Plaintiffs' Counsel
July 6, 2016
Page 2

On February 29, 2016, BCBSA provided Plaintiffs with its ESI search protocol for those requests for which BCBSA intended to employ a custodian-based search.  BCBSA clearly identified the targets of its searches as "FEP Custodian(s)."  (2/29/2016 K. Warner Ltr. to E. Cervantez)  Moreover, the titles of the custodians indicated their responsibilities with respect to FEP (*e.g.* John DuMoulin, Executive Director, OPM & Government Relations).  BCBSA had previously disclosed additional details about these individuals, and the subject matter of their knowledge, in its Initial Disclosures, served November 20, 2015. It is simply not true, as you assert, that BCBSA informed Plaintiffs of its FEP limitations "for the first time" on May 3, 2016.

Plaintiffs were silent until two weeks later.  On the last day permitted under the Stipulated Order re Electronic Discovery to raise any challenge to BCBSA's proposed search protocol, Plaintiffs wrote to contest *some* of BCBSA's search terms.  Plaintiffs said nothing about any of BCBSA's temporal objections, custodians, or its limitation of some RFP responses to documents related to FEP.  (3/14/2016 E. Kafka Ltr. to B. Kavanaugh)  Nor did Plaintiffs take issue with the scope of BCBSA's production for any of the RFPs where BCBSA indicated it would undertake non-custodian-based searches.  Under the Stipulated Order, Plaintiffs were required to raise any issues with BCBSA's search protocol within 14 days, and are not permitted to sandbag, as you have, raising an ever shifting number of issues as the parties' discussions continue.  (Dkt. 352, at 3)

The parties met by telephone on Monday, March 21, 2016, and discussed generally the search terms related to the specific RFPS for which BCBSA proposed custodian searches: 10-12, 23-24, 29 and 41.  BCBSA requested that Plaintiffs provide specific suggestions regarding any search term modifications they were requesting.  Plaintiffs agreed to provide their specific suggestions by the end of the week, Friday, March 25, 2016.  But Plaintiffs did not write to BCBSA until April 13, 2016, to propose additional search terms (some of which BCBSA later accepted).[1]   In this letter, two months after receiving BCBSA's responses, Plaintiffs first suggested adding additional custodians for the handful of request for which the parties were discussing custodial searches.  Notably, Plaintiffs said nothing about BCBSA's specific (or general) objections to the time period for which BCBSA agreed to produce documents.  Nor did Plaintiffs raise any issue with dozens of specific RFP responses for which BCBSA proposed non-custodial searches.

---

[1]   Plaintiffs' did not state during the March 21 call, as your letter suggests, that they would need to "review Anthem's and BCBSA's initial productions in order to make more concrete suggestions" regarding search terms or that it would take over three weeks to do so.  BCBSA does not appreciate the need to engage in this type of criticism.  But your July 1 letter raises several petty complaints about the timing of certain of BCBSA's responses, while neglecting every instance in which Plaintiffs failed to take some action when promised or otherwise were slow to respond.

## KIRKLAND & ELLIS LLP

Lead Plaintiffs' Counsel
July 6, 2016
Page 3


It was not until the parties' May 13, 2016 meet and confer that it became apparent that Plaintiffs, though continuing to frame their requests as modifications to BCBSA's ESI search protocol, were actually seeking to challenge BCBSA's substantive objections to the scope of discovery, but the only specific RFPs discussed were RFPs 10-12. (5/19/2016 K. Warner Ltr. to E. Kafka at 4) Later still, on May 17, 2016, Plaintiffs first suggested that BCBSA should "periodically supplement its production to include documents it creates or obtains during the course of this litigation," again, in the context of RFPs 10-12. (5/17/2016 E. Kafka Ltr. to L. Ruse)

In the communications that followed, Plaintiffs have expanded the scope of our conversations beyond RFPs 10-12, while attempting to justify much of this discovery from BCBSA as related to claims that Plaintiffs have asserted against Anthem. However, Plaintiffs refused, during our calls or in written correspondence, to point to a specific claim or count and explain how that claim justifies some of the expansive discovery Plaintiffs seek from BCBSA—a non-party to that claim.

To be sure, beyond the "FEP Only" and temporal scope objections BCBSA made to *some* of Plaintiffs' requests, BCBSA asserted various burden, relevance and proportionality objections to specific requests. Plaintiffs have refused to explain why BCBSA should be compelled to provide documents—unrelated to claims against BCBSA—that Plaintiffs can get, or are getting, directly from Anthem. I raised the question again during our call on Tuesday, June 28 of what non-duplicative information Plaintiffs want BCBSA to search for and how it pertains to their claims against Anthem. Plaintiffs could not answer on the spot, but stated that they would get back to me. Instead of responding to my questions though, Plaintiffs chose to send yet another letter simply demanding that BCBSA categorically withdraw its objections.

What is most troubling about Plaintiffs' conduct over the past several months is the stark contrast to the meet and confer process Plaintiffs engaged in with Anthem. Plaintiffs negotiated with Anthem for months and engaged in an RFP by RFP discussion about the substance and scope of documents to be produced. (*See e.g.* 1/8/16 D. Hogan Ltr. to E. Cervantez; 1/14/16 D. Berger Ltr. to D. Hogan; 1/25/16 D. Hogan Ltr. to E. Cervantez) If Plaintiffs had been willing to substantively engage with BCBSA in a similar and timely manner, we are confident many of the issues Plaintiffs are now bringing to the Court could have been resolved, or narrowed, long ago.

Your letter complains that BCBSA has requested several meet and confers over the last few weeks in an effort to resolve some of these outstanding issues and implies that BCBSA has delayed in providing its half of the joint letter brief. We are surprised by this. After receiving BCBSA's June 6, 2016 letter, you decided additional meet and confers were not helpful and on June 10 indicated that Plaintiffs would send their half of a joint discovery brief "early next week." (6/10/2016 E. Kafka Email). Nine days later (and thirteen days after BCBSA's June 6,

# KIRKLAND & ELLIS LLP

Lead Plaintiffs' Counsel
July 6, 2016
Page 4


2016 letter), on June 19, 2016, Plaintiffs sent BCBSA their half of a letter brief addressing three disputes.  The subsequent meet and confers that BCBSA initiated allowed the parties to resolve one of these disputes.  You also criticize BCBSA for requesting meet and confer sessions with "different members of Plaintiffs' litigation team."  But BCBSA specifically requested meet and confers with more senior attorneys within Plaintiffs' leadership structure because those individuals participating on prior meet and confers were unwilling or unable to articulate a basis for their assertions regarding the relevance or proportionality of the demands they have made of BCBSA and BCBSA was hoping to expedite the resolution of outstanding issues through including additional attorneys into the process.

The time it has taken to bring this matter to the Court is also due to Plaintiffs' ever-changing demands, even during the last three meet and confer sessions.  For example, after the parties' June 22 meet and confer, Plaintiffs' sent a "compromise" proposal demanding that BCBSA produce documents for an extended time period in response to many RFPs to which BCBSA had objected in full in its initial responses back in February 2016 and that had *never* been the subject of any prior meet and confer.  (6/24/16 E. Kafka Email)  This necessitated an additional meet and confer, held on June 28, during which BCBSA offered to produce several categories of documents unrelated to the FEP program and through July 31, 2016, as detailed below.  Likewise, during that call, BCBSA again invited Plaintiffs' counsel to explain the need for any additional discovery beyond BCBSA's second compromise offer with reference to the actual claims in the litigation and the document production Plaintiffs had negotiated with Anthem.   Instead of responding substantively or continuing the discussion, Plaintiffs sent yet another letter on the afternoon of June 29 along with a revised letter brief, demanding that BCBSA respond to both 48 hours later.

## BCBSA's Offers of Compromise

Despite Plaintiffs' repeated failure (or refusal) to explain their generic assertions that the RFPs discussed during our meet and confer calls seek post-Data Breach documents that are relevant to their claims, including claims for injunctive relief, BCBSA nonetheless proposed a compromise on June 6.  During the parties' meet and confer exchanges, Plaintiffs offered two arguments in support of expanding BCBSA's custodial searches:  (i) that post-Data Breach documents "are likely to contain relevant evaluations of pre-data breach policies" and (ii) that post-Data Breach documents will "elucidate the contours of pre-data breach policies." (5/27/2016 E. Kafka Ltr. to K. Warner, at 3.)   In order to respond to the only specific justifications offered by Plaintiffs, BCBSA proposed to expand its searches for RFPs 10, 11, and 12 to cover documents created through December 31, 2015.  Without explanation or counter-proposal, on June 10, Plaintiffs rejected BCBSA's compromise, even though BCBSA had

# KIRKLAND & ELLIS LLP

Lead Plaintiffs' Counsel
July 6, 2016
Page 5

offered to search for custodial documents for a time period beyond even what Anthem had agreed to.[2]  (6/10/2016 E. Kafka Email)

On Sunday June 19, Plaintiffs provided BCBSA with their half of the joint letter brief. That draft (i) did not reference any of the specific RFPs over which the parties had met and conferred during the preceding weeks, (ii) did not explain how or why BCBSA's compromise offer of June 6 was deficient and offered no compromise on behalf of Plaintiffs, and (iii) sought to raise issues with nearly every one of BCBSA's responses to the Second Set of Requests for Production, even though the parties had never discussed most of them.  As a result, BCBSA's counsel conferred with Eric Kafka on June 22, 2016, to express BCBSA's concern that Plaintiffs were raising issues that the parties had never discussed and that the draft letter brief failed to answer any of the questions BCBSA had raised during the parties many meet and confers. BCBSA asked Plaintiffs' counsel to reconsider their position.  On June 24, Mr. Kafka emailed BCBSA's counsel with a supposed "compromise" that demanded more, not less.  Plaintiffs simply repeated their undifferentiated demand from the draft letter brief that BCBSA withdraw its objections and produce documents in response to dozens of RFPs that the parties had never discussed.

Surprised by Mr. Kafka's response, BCBSA's counsel again sought a meet and confer, this time with Plaintiffs' senior leadership,[3] which eventually took place on June 28.  During that call, counsel for BCBSA expressed to Plaintiffs' Lead Counsel (who had not participated in the prior meet and confer discussions) its concern over the way in which Plaintiffs had approached the discovery dispute; the ever-shifting nature of Plaintiffs' demands and justifications; the fact that Plaintiffs' current, broad demands were not tailored to the actual RFPs they served and the claims pleaded in the Complaint and that Plaintiffs had not addressed BCBSA's other objections to certain RFPs, including relevance and proportionality.  Counsel for BCBSA pointed out RFPs that had never been discussed and provided examples of RFPs that sought information entirely duplicative of information that Plaintiffs requested of Anthem.[4]   And BCBSA's counsel

---

[2]   Anthem did not agree to undertake custodial searches beyond October 2015.  Rather, Anthem agreed to produce security policies, practices, and procedures concerning information security or privacy and formal submissions to government regulators generated through July 31, 2016, located as a result of non-custodial searches.  (5/31/2016 D. Hogan Ltr. to G. Graber)

[3]   Troubled by Mr. Kafka's inability to respond to the issues BCBSA raised during the call on June 22, I reached out to Lead Plaintiffs' Counsel on June 23, even before receiving Mr. Kafka's June 24 "compromise," to escalate the discussion.

[4]   For example, RFP 41, which requested all documents regarding *Anthem's* assessment of the number of persons who have suffered or are likely to suffer fraud as a result of the data breach, is nearly

# KIRKLAND & ELLIS LLP

Lead Plaintiffs' Counsel
July 6, 2016
Page 6

specifically noted the stark contrast between the way in which Plaintiffs had addressed BCBSA and the manner in which Plaintiffs conferred with Anthem—addressing scope objections early and engaging in detailed, RFP-specific exchanges over several months.

Nevertheless, in another effort to compromise, BCBSA offered (just like Anthem) to conduct several ***non-custodial searches*** for documents created through July 31, 2016.   In particular, BCBSA offered to expand its searches to locate and produce the following categories of documents:

- Directives from OPM regarding the data security requirements of the OPM contract;

- BCBSA policies and procedures communicated to Anthem regarding compliance with the data security requirements of the OPM contract;

- Any OPM or the Office of the Inspector General audit reports with respect to Anthem's network data security and responses thereto;

- BCBSA policies and procedures containing data security requirements applicable to Anthem's networks;

- Any final reports of audits or assessments undertaken by BCBSA with respect to Anthem's network data security; and

- Any certification by Anthem to BCBSA regarding Anthem's network data security.

Additionally, BCBSA offered to expand its production of documents in response to certain RFPs that sought information concerning the Data Breach itself.

BCBSA's counsel asked Plaintiffs to articulate what non-duplicative information they sought from BCBSA so the parties could meaningfully meet and confer with respect to many of the newly challenged RFPs.  Plaintiffs' counsel did not offer a response during the call but said that they would confer and get back to BCBSA.  That response came on June 29, and simply mischaracterized and rejected BCBSA's offer to compromise with no counter-offer of compromise from Plaintiffs.  Because Mr. Kafka's June 29 letter so badly misstates the content and import of BCBSA's offer, I have attached a chart reflecting (i) the RFPs for which BCBSA had offered in its responses to produce documents using custodial and non-custodial searches,

---

identical to Plaintiffs' Request 61 to the Anthem Defendants, and is much more appropriately obtained from Anthem.

# KIRKLAND & ELLIS LLP

Lead Plaintiffs' Counsel
July 6, 2016
Page 7

(ii) the scope of production BCBSA offered in its responses, (iii) the expanded scope that Plaintiffs demand, and (iv) the compromises that BCBSA has offered without reciprocal concessions by Plaintiffs.  (Ex. 1 hereto)

**Identifying Data Sources**

As we made clear, again, during our telephone conference on June 28, there are no data sources not previously disclosed in BCBSA's Initial Disclosures that BCBSA reasonably expects to contain documents that are within the scope of BCBSA's production and which are not being searched to locate and produce those documents.  During our call, Plaintiffs asked that we describe those data sources with one additional level of granularity than what is contained BCBSA's disclosures (*e.g.* specific file shares rather than file shares generally). We agreed to do that.  And we understand that description to be consistent with the level of detail being provided by other defendants.[5]  As for when BCBSA will provide that information, we can provide a partial list by the end of next week and the remainder, if necessary, a reasonable time after we resolve our present disputes.

**Impact of Plaintiffs' Delay on BCBSA's Production**

Having already addressed the fallacy of Plaintiffs' assertion that BCBSA hindered the progress of discovery, I am compelled to address briefly the most recent of your misstatements. I did not tell Ms. Cervantez on June 30th that BCBSA "has not run any custodial searches." (7/1/2016 E. Cervantez Ltr. to B. Kavanaugh)  Nor did I tell her that BCBSA had not begun reviewing documents because it did not want to "ramp up,"  though I did say that we needed closure on scope, custodians and search terms so that BCBSA did not need to go through the process twice—something Ms. Cervantez agreed that Plaintiffs did not expect BCBSA to do. (*Id.*)  BCBSA has collected from both custodial and non-custodial sources, has reviewed documents and has run proposed search terms as part of the parties' meet and confer efforts. Rather, what I told Eve on June 30 is exactly what I told the larger group of Plaintiffs' counsel during our conference call on June 28:  Plaintiffs' decision to wait until June 19 (nearly four months after BCBSA served its discovery responses) to belatedly challenge ***all of BCBSA's responses*** jeopardizes BCBSA's ability to substantially complete its document production by the end of July.  Had Plaintiffs timely raised the issues they now complain of back in February, or even engaged in a good faith meet and confer process regarding Plaintiffs' individual requests, these issues could have been resolved long ago—either by agreement or with the Court's assistance.  Any time pressure Plaintiffs now feel is of their own creation.

---

[5]   Mr. Kafka's letter mentions "applications" which we did not discuss and which we do not generally understand to be data sources.

## KIRKLAND & ELLIS LLP

Lead Plaintiffs' Counsel
July 6, 2016
Page 8


The problem with Plaintiffs' tactics is simple.  In February, BCBSA suggested a combination of custodial and non-custodial, targeted searches that were tailored to the scope of production BCBSA offered for each RFP.  By waiting months into the process—after BCBSA had long ago shared its proposed ESI searches and had negotiated search terms with Plaintiffs—to challenge the scope of BCBSA's production, Plaintiffs have effectively brought the parties back to square one. To the extent BCBSA is required to expand the scope of its production, the parties will need to start the negotiation over search terms over again.  In other words, BCBSA made concessions regarding search terms proposed by Plaintiffs based on the specific custodians, time frame and other search terms at issue for given RFPs.  BCBSA will not simply agree to add custodians or expand the date range of the searches without *potentially* revisiting some of those concessions once it has an opportunity to ascertain the impact of any expanded search parameters.

The timeline for BCBSA to substantially complete the document production ***that it agreed to*** has not changed and remains the same as we represented to the Court in the last Case Management Statement filed by the parties.  And, as I explained during our June 28th conference call, BCBSA is confident that the additional searches and production that BCBSA proposed as a compromise could be accommodated without materially altering the timeline of BCBSA's production.  But, BCBSA cannot make any assurances with respect to additional searches Plaintiffs now demand with respect to virtually every RFP, particularly given the eleventh hour at which Plaintiffs have chosen to make those demands.

Sincerely,


*/s/ Brian P. Kavanaugh*

Brian P. Kavanaugh

**Exhibit 1**

Note: For Request #21-22, 26, 30-33, 35, 38-39, 43, 44, and 46-51, BCBSA either objected in full or referred Plaintiffs' to BCBSA's objections and responses to Plaintiffs' First Set of RFPs.  Plaintiffs never raised those responses/objections during any meet and confer discussions.

| *Document Request* | *Summary of BCBSA's Response* | *Plaintiffs' June 24, 2016 Demand* | *BCBSA's Compromise Offers[1]* |
|---|---|---|---|
| **Request #8.**  All documents and communications You provided to or received from any foreign or domestic government or governmental entity, such as the U.S. Federal Trade Commission, Federal Bureau of Investigation, Department of Homeland Security, Department of Health and Human Services, Office of Personnel Management, Office of the Inspector General, attorneys general, insurance commissioners, and the Irish Data Protection Commissioner, regarding the Data Breach. | BCBSA agreed to produce "formal submissions to and responses from governmental entities in their role as regulators regarding the Data Breach" created between January 1, 2014 and October 19, 2015. | Expand BCBSA's search to include documents created on or before July 31, 2016. | June 28, 2016 Offer: Offered to expand scope of search to include documents created between January 1, 2014 and July 31, 2016. |

---

[1]   Italicized text indicates BCBSA's proposal to expand the search parameters for custodial searches.  All other compromise proposals refer to additional non-custodial searches.

Exhibit 1

| Document Request | Summary of BCBSA's Response | Plaintiffs' June 24, 2016 Demand | BCBSA's Compromise Offers[1] |
|---|---|---|---|
| **Request #9.** All policies and procedures to determine whether an entity receiving Your or Your licensees' members' PHI and/or PII provides adequate security for that information. | BCBSA agreed to produce "policies and procedures regarding the security of FEP Members' PII and/or PHI when transmitted to other entities" created between January 1, 2014 and February 3, 2015. | Expand BCBSA's search to include documents created on or before July 31, 2016.<br><br>Remove FEP-related limitation on the scope of BCBSA's search. | June 28, 2016 Offer: Offered to search for, and produce any responsive materials located, the following additional categories of documents: (i) BCBSA policies and procedures communicated to Anthem regarding compliance with the data security requirements of the OPM contract; (ii) BCBSA policies and procedures containing data security requirements applicable to Anthem's networks; (iii) any certification by Anthem to BCBSA regarding Anthem's network data security.  All searches would be for documents created between January 1, 2014 and July 31, 2016. |

**Exhibit 1**

| Document Request | Summary of BCBSA's Response | Plaintiffs' June 24, 2016 Demand | BCBSA's Compromise Offers[1] |
|---|---|---|---|
| **Request #10.** All documents and communications regarding Anthem's security for Your or Your licensees' members' PHI and/or PII. | BCBSA agreed to produce responsive documents and communications from January 1, 2014 - February 3, 2015 located pursuant to a reasonable search in accordance with a reasonable ESI search protocol. | Expand BCBSA's search to include documents created on or before July 31, 2016.<br><br>Remove FEP-related limitation on the scope of BCBSA's search. | *June 6, 2016 Offer: Offered to expand the time period of its proposed search to include documents, if any, created after February 3, 2015, but no later than December 31,2015, that relate to "Anthem's [pre-February 3, 2015] security for [FEP] members' PHI and/or PII."* |
| **Request #11.** All documents and communications regarding any attempt by You to verify that Anthem was adequately protecting the PHI or PII of Your or Your licensees' members. | BCBSA agreed to produce responsive documents and communications from January 1, 2014 - February 3, 2015 located pursuant to a reasonable search in accordance with a reasonable ESI search protocol. | Expand BCBSA's search to include documents created on or before July 31, 2016.<br><br>Remove FEP-related limitation on the scope of BCBSA's search. | *June 6, 2016 Offer: Offered to expand the time period of its proposed search to include documents, if any, created after February 3, 2015, but no later than December 31, 2015, that relate to "any attempt by [BCBSA] to verify that Anthem was adequately protecting the PHI or PII of [FEP] members [prior to February 3, 2015]."* |

**Exhibit 1**

| Document Request | Summary of BCBSA's Response | Plaintiffs' June 24, 2016 Demand | BCBSA's Compromise Offers[1] |
|---|---|---|---|
| **Request #12.** All documents reflecting Your assessment of the potential risks and vulnerabilities to the confidentiality, integrity, and availability of electronic PHI and PII held by Anthem. | BCBSA agreed to produce responsive documents dated January 1, 2014 - February 3, 2015 located pursuant to a reasonable search in accordance with a reasonable ESI search protocol. | Expand BCBSA's search to include documents created on or before July 31, 2016.<br><br>Remove FEP-related limitation on the scope of BCBSA's search. | *June 6, 2016 Offer: Offered to expand the time period of its proposed search to include documents, if any, created after February 3, 2015, but no later than December 31, 2015, that relate to "[BCBSA's] assessment [prior to February 3, 2015] of the potential risks and vulnerabilities to the [security] of [FEP members'] electronic PHI and PII held by Anthem."* |
| **Request #13.** All documents, including but not limited to written contracts or agreements, reflecting assurance from Anthem that it would appropriately safeguard electronic PHI and/or PII. | BCBSA agreed to produce "documents sufficient to show written contracts or agreements relating to FEP members reflecting 'assurances from Anthem' that it would appropriately safeguard electronic PHI and/or PII" created between January 1, 2014 and February 3, 2015. | Expand BCBSA's search to include documents created on or before July 31, 2016.<br><br>Remove FEP-related limitation on the scope of BCBSA's search. | June 28, 2016 Offer: Offered to search for, and produce any responsive materials located, any certification by Anthem to BCBSA regarding Anthem's network data security between January 1, 2014 and July 31, 2016.<br><br>Reminded Plaintiffs that BCBSA had already agreed to produce any data security requirements in its License Agreement with Anthem. |

Exhibit 1

| Document Request | Summary of BCBSA's Response | Plaintiffs' June 24, 2016 Demand | BCBSA's Compromise Offers[1] |
|---|---|---|---|
| **Request #14.** All documents and communications regarding Your licensees' security for Your or Your licensees' members' PHI and/or PII. | BCBSA directed Plaintiffs to BCBSA's response to Request No. 9. | Expand BCBSA's search to include documents created on or before July 31, 2016.<br><br>Remove FEP-related limitation on the scope of BCBSA's search. | See BCBSA's offer for Request No. 9. |
| **Request #15.** All documents and communications regarding limitations to Blue Cross Blue Shield licensees' retention, use, or disclosure of Your or Your licensees' members PHI and/or PII. | BCBSA agreed to produce "written policies and procedures in effect between January 1, 2014 and February 3, 2015 regarding the security of FEP Members' PII and/or PHI when transmitted to other entities." | Expand BCBSA's search to include documents created on or before July 31, 2016.<br><br>Remove FEP-related limitation on the scope of BCBSA's search. | June 28, 2016 Offer: Offered to search for, and produce any responsive materials located, the following additional categories of documents: (i) BCBSA policies and procedures communicated to Anthem regarding compliance with the data security requirements of the OPM contract; (ii) BCBSA policies and procedures containing data security requirements applicable to Anthem's networks; and (iii) directives from OPM regarding the data security requirements of the OPM contract. All searches would be for documents created between January 1, 2014 and July 31, 2016. |

Exhibit 1

| Document Request | Summary of BCBSA's Response | Plaintiffs' June 24, 2016 Demand | BCBSA's Compromise Offers[1] |
|---|---|---|---|
| **Request #16.** All documents and communications regarding limitations to Anthem's retention, use, or disclosure of Your or Your licensees' members' PHI and/or PII. | BCBSA agreed to produce "written policies and procedures in effect between January 1, 2014 and February 3, 2015 regarding Anthem's security of FEP Members' PII and/or PHI when transmitted to other entities." | Expand BCBSA's search to include documents created on or before July 31, 2016.<br><br>Remove FEP-related limitation on the scope of BCBSA's search. | June 28, 2016 Offer: Offered to search for, and produce any responsive materials located, the following additional categories of documents: (i) BCBSA policies and procedures communicated to Anthem regarding compliance with the data security requirements of the OPM contract;  (ii) BCBSA policies and procedures containing data security requirements applicable to Anthem's networks; and (iii) directives from OPM regarding the data security requirements of the OPM contract.  All searches would be for documents created between January 1, 2014 and July 31, 2016. |

**Exhibit 1**

| Document Request | Summary of BCBSA's Response | Plaintiffs' June 24, 2016 Demand | BCBSA's Compromise Offers[1] |
|---|---|---|---|
| **Request #17.** All presentations to members of Your Board of Directors regarding (a) possible cybersecurity threats, (b) Anthem's cybersecurity, (c) Anthem's information technology infrastructure, or (d) the security protection of Your or Your licensees' members' PHI and/or PII that was transmitted to Anthem. | BCBSA agreed to produce "any specific presentations to BCBSA's Board of Directors regarding Anthem's cybersecurity, Anthem's information technology infrastructure, or Anthem's security protection of PHI and/or PII transmitted to Anthem by Blue Cross Blue Shield licensees" created between January 1, 2014 and February 3, 2015. | Expand BCBSA's search to include documents created on or before July 31, 2016. | See BCBSA offers for Request #19, 20. |
| **Request #18.** All documents memorializing or recording meetings in which members of Your Board of Directors were informed about (a) possible cybersecurity threats, (b) Anthem's cybersecurity, (c) Anthem's information technology infrastructure, or (d) the security protection of Your or Your licensees' members' PHI and/or PII that was transmitted to Anthem. | BCBSA agreed to produce "relevant portions of any BCBSA Board of Director meeting minutes regarding Anthem's cybersecurity, Anthem's information technology infrastructure, or Anthem's security protection of PHI and/or PII transmitted to Anthem by Blue Cross Blue Shield licensees" created between January 1, 2014 and February 3, 2015. | Expand BCBSA's search to include documents created on or before July 31, 2016. | See BCBSA offers for Request #19, 20. |

7

**Exhibit 1**

| Document Request | Summary of BCBSA's Response | Plaintiffs' June 24, 2016 Demand | BCBSA's Compromise Offers[1] |
|---|---|---|---|
| **Request #19.** All memoranda, executive summaries, analyses, and reports directed to Your high-level executives, including but not limited to those written by or directed to Your Chief Information Officer, Your Chief Information Security Officer, or similar executives, regarding the Data Breach. | BCBSA agreed to produce "formal memoranda prepared for BCBSA's executive leadership team regarding the Data Breach" created between January 1, 2014 and October 19, 2015. | Expand BCBSA's search to include documents created on or before July 31, 2016. | June 28, 2016 Offer: Agreed to expand scope of search to include documents created between January 1, 2014 and July 31, 2016. |

Exhibit 1

| Document Request | Summary of BCBSA's Response | Plaintiffs' June 24, 2016 Demand | BCBSA's Compromise Offers[1] |
|---|---|---|---|
| **Request #20.** All memoranda, executive summaries, analyses, and reports directed to Your high-level executives, including but not limited to those written by or directed to your Chief Information Officer, Chief Information Security Officer, or equivalent personnel regarding: (a) Anthem's data security prior to discovery of the Data Breach, (b) Anthem's discovery of the Data Breach, (c) security flaws identified in the Data Breach, or (d) changes to Anthem's data security implemented after discovery of the data breach. | BCBSA agreed to produce "formal memoranda prepared for BCBSA's executive leadership team regarding Anthem's data security prior to discovery of the Data Breach, Anthem's discovery of the Data Breach, or security flaws identified in the Data Breach" created between January 1, 2014 and October 19, 2015. | Expand BCBSA's search to include documents created on or before July 31, 2016. | June 28, 2016 Offer: Agreed to expand scope of search to include documents created between January 1, 2014 and July 31, 2016. |

**Exhibit 1**

| Document Request | Summary of BCBSA's Response | Plaintiffs' June 24, 2016 Demand | BCBSA's Compromise Offers[1] |
|---|---|---|---|
| **Request #23.** All documents regarding any security audits or testing to evaluate the security of any parts of Anthem's networks. | BCBSA agreed to produce responsive documents dated January 1, 2014 - February 3, 2015 located pursuant to a reasonable search in accordance with a reasonable ESI search protocol. | Expand BCBSA's search to include documents created on or before July 31, 2016.  Remove FEP-related limitation on the scope of BCBSA's search. | June 28, 2016 Offer:  For the period January 1, 2014 – July 31, 2016, offered to search for, and produce any responsive materials, the following categories of documents: (i) OPM or the Office of the Inspector General audit reports with respect to Anthem's network data security and responses thereto, and (ii) final reports of audits or assessments undertaken by BCBSA with respect to Anthem's network data security. |

**Exhibit 1**

| Document Request | Summary of BCBSA's Response | Plaintiffs' June 24, 2016 Demand | BCBSA's Compromise Offers[1] |
|---|---|---|---|
| **Request #24.** All documents regarding Anthem's compliance or noncompliance with any applicable network or data security guidelines or standards, such as NIST, COBIT 5, the HITECH Act, PCI DSS, ISO/IEC27001, and ISO/IEC27002. | BCBSA agreed to produce responsive documents dated January 1, 2014 - February 3, 2015 located pursuant to a reasonable search in accordance with a reasonable ESI search protocol. | Expand BCBSA's search to include documents created on or before July 31, 2016. Remove FEP-related limitation on the scope of BCBSA's search. | June 28, 2016 Offer:  For the period January 1, 2014 – July 31, 2016, offered to search for, and produce any responsive materials, the following categories of documents: (i) OPM or the Office of the Inspector General audit reports with respect to Anthem's network data security and responses thereto, and (ii) final reports of audits or assessments undertaken by BCBSA with respect to Anthem's network data security. |
| **Request #25.** Documents sufficient to identify all Your employees who, between October 1, 2011 and the present, were responsible for the development and implementation of policies and procedures aimed at protecting information provided to Your licensees, including Anthem. | BCBSA agreed to produce "documents sufficient to show or organizational charts of BCBSA's FEP Program, including the Program Assurance team and any Plan Management Team responsible for working with Anthem, created between January 1, 2014 and February 3, 2015." | Expand BCBSA's search to include documents created on or before October 19, 2015 Remove FEP-related limitation on the scope of BCBSA's search. | Plaintiffs never met or conferred with BCBSA regarding this request. |

11

**Exhibit 1**

| Document Request | Summary of BCBSA's Response | Plaintiffs' June 24, 2016 Demand | BCBSA's Compromise Offers[1] |
|---|---|---|---|
| **Request #27.** All of Your policies, procedures, and protocols for mitigating the harmful effects on Your or Your licensees' members of cybersecurity incidents. | BCBSA agreed to produce "documents sufficient to show the policies and procedures utilized by BCBSA in responding to the Data Breach." | Expand BCBSA's search to include documents created on or before July 31, 2016. | Plaintiffs never met or conferred with BCBSA regarding this request. |
| **Request #28.** All documents and communications regarding Your policies, procedures, protocols, and practices concerning how to advise consumers whose PII and/or PHI was included in the Data Breach, including, but not limited to, what information You will provide to them, and when You will notify or respond to them regarding a data breach. | BCBSA agreed to produce "documents sufficient to show the policies and procedures utilized by BCBSA in advising or notifying FEP members of the Data Breach." | Expand BCBSA's search to include documents created on or before October 19, 2015<br><br>Remove FEP-related limitation on the scope of BCBSA's search. | Plaintiffs never met or conferred with BCBSA regarding this request. |

**Exhibit 1**

| *Document Request* | *Summary of BCBSA's Response* | *Plaintiffs' June 24, 2016 Demand* | *BCBSA's Compromise Offers[1]* |
|---|---|---|---|
| **Request #29.** All communications between or among You, Anthem, and/or Your licensees regarding the Data Breach. | BCBSA agreed to produce communications "between BCBSA and Anthem concerning Anthem's response to the Data Breach located pursuant to a reasonable search in accordance with a reasonable ESI search protocol" through October 19, 2015. | Expand BCBSA's search to include documents created on or before July 31, 2016.  Remove FEP-related limitation on the scope of BCBSA's search. | |
| **Request #34.** All insurance policies, including any declaration pages and riders that could be used to satisfy any claim in this action. | BCBSA agreed to produce the "declaration page of any primary insurance policy that it believes may be applicable to this matter." | Expand BCBSA's search to include documents created on or before October 19, 2015 | Plaintiffs never met or conferred with BCBSA regarding this request. |
| **Request #36.** All contracts between or among You, Anthem, and/or Your licensees that allocate costs associated with a data or privacy breach, including through indemnification provisions. | BCBSA agreed produce "any contracts between or among these parties that allocate costs associated with the claims made against BCBSA in this matter.  BCBSA further directs Plaintiffs to BCBSA's Objections and Responses to Plaintiffs' Request for Production, Set One, Request Nos. 4-5." | Expand BCBSA's search to include documents created on or before July 31, 2016. | Plaintiffs never met or conferred with BCBSA regarding this request. |

**Exhibit 1**

| Document Request | Summary of BCBSA's Response | Plaintiffs' June 24, 2016 Demand | BCBSA's Compromise Offers[1] |
|---|---|---|---|
| **Request #37.** Organization charts showing names, job titles, and working relationships for Your employees likely to be in possession of documents relevant to this litigation or responsive to these Requests for Production. | "BCBSA is willing to meet and confer on this Request." | Expand BCBSA's search to include documents created on or before October 19, 2015 | Plaintiffs have never responded to BCBSA's offer to meet and confer with respect to this Request. |
| **Request #40.** All documents regarding Your assessment, evaluation, or estimate of the number of your members or other persons that have suffered, or are likely to suffer, fraud, identity theft, or other harm as a result of the Data Breach. | BCBSA agreed to produce "formal reports or assessments, evaluations or estimates of the number of FEP members who have suffered, or are likely to suffer fraud or other theft as a result of the Data Breach" created between January 1, 2014 and October 19, 2015. | Expand BCBSA's search to include documents created on or before July 31, 2016.<br><br>Remove FEP-related limitation on the scope of BCBSA's search. | Plaintiffs never met or conferred with BCBSA regarding this request. |
| **Request #41.** All documents regarding Anthem's assessment, evaluation, or estimate of the number of your members or other persons that have suffered, or are likely to suffer, fraud, identity theft, or other harm as a result of the Data Breach. | BCBSA agreed to produce responsive documents located pursuant to a reasonable search in accordance with a reasonable ESI search protocol through October 19, 2015. | Expand BCBSA's search to include documents created on or before July 31, 2016.<br><br>Remove FEP-related limitation on the scope of BCBSA's search. | Plaintiffs never met or conferred with BCBSA regarding this request. |

**Exhibit 1**

| Document Request | Summary of BCBSA's Response | Plaintiffs' June 24, 2016 Demand | BCBSA's Compromise Offers[1] |
|---|---|---|---|
| **Request #43.** All analyses, studies, or reports regarding the importance of data security to Your or Your licensees' members or potential members. | BCBSA agreed to produce "documents sufficient to show formal reports or studies commissioned, conducted or prepared by BCBSA prior to the Data Breach regarding the importance of data security to its FEP members or potential FEP members" created between January 1, 2014 and February 3, 2015. | Expand BCBSA's search to include documents created on or before October 19, 2015<br><br>Remove FEP-related limitation on the scope of BCBSA's search. | Plaintiffs never met or conferred with BCBSA regarding this request. |
| **Request #45.** All analyses, studies, or reports regarding the monetary value of data security to Your or Your licensees' members or potential members. | BCBSA agreed to produce "documents sufficient to show formal of reports or studies commissioned, conducted or prepared by BCBSA prior to the Data Breach regarding the monetary value of data security to its FEP members or potential FEP members" created between January 1, 2014 and February 3, 2015. | Expand BCBSA's search to include documents created on or before October 19, 2015<br><br>Remove FEP-related limitation on the scope of BCBSA's search. | Plaintiffs never met or conferred with BCBSA regarding this request. |