| | |
|---|---|
| ALTSHULER BERZON LLP<br>EVE CERVANTEZ (SBN 164709)<br>ecervantez@altshulerberzon.com<br>JONATHAN WEISSGLASS (SBN 185008)<br>jweissglass@altshulerberzon.com<br>DANIELLE E. LEONARD (SBN 218201)<br>dleonard@altshulerberzon.com<br>MEREDITH A. JOHNSON (SBN 291018)<br>mjohnson@altshulerberzon.com<br>177 Post Street, Suite 300<br>San Francisco, CA 94108<br>Telephone: (415) 421-7151<br>Facsimile: (415) 362-8064 | COHEN MILSTEIN SELLERS & TOLL PLLC<br>ANDREW N. FRIEDMAN (admitted *pro hac vice*)<br>afriedman@cohenmilstein.com<br>GEOFFREY GRABER (SBN 211547)<br>ggraber@cohenmilstein.com<br>SALLY M. HANDMAKER (SBN 281186)<br>shandmaker@cohenmilstein.com<br>ERIC KAFKA (admitted *pro hac vice*)<br>ekafka@cohenmilstein.com<br>1100 New York Ave. NW<br>Suite 500, West Tower<br>Washington, DC 20005<br>Telephone:  (202) 408-4600<br>Facsimile:   (202) 408-4699 |

*Lead Plaintiffs' Counsel*
Additional Plaintiffs' Counsel Listed on Signature Page

HOGAN LOVELLS US LLP
CRAIG A. HOOVER (SBN 113965)
craig.hoover@hoganlovells.com
E. DESMOND HOGAN (admitted pro hac vice)
desmond.hogan@hoganlovells.com
555 Thirteenth Street, NW
Washington, DC  20004-1109
Telephone:    (202) 637-5600
Facsimile:     (202) 637-5910

*Attorneys for Defendants Anthem, Inc. and related parties*
Additional Defendants and Defendants' Counsel Listed on Signature Page

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| **IN RE ANTHEM, INC. DATA BREACH LITIGATION** | Case No. 15-md-02617-LHK (NC)<br><br>**JOINT LETTER BRIEF REGARDING DISCOVERY DISPUTES** |

I. **ANTHEM'S STATEMENT**

The Anthem Defendants ("Anthem") and Plaintiffs have reached impasse with regard to a critical Request for Production.[1] In RFP 33, Anthem seeks, and Plaintiffs refuse to provide, the results of forensic inspection of Plaintiffs' computers that connect to the internet and contain electronically stored information relating to Plaintiffs. *See* Ex. 1. Anthem issued RFP 33 in an attempt to narrow RFP 31, which sought a forensic copy of Plaintiffs' computer systems and smart phones, in light of this Court's ruling related to that request. In the discovery hearing regarding RFP 31, the Court noted that RFP 31 sought information regarding causation that is "relevant on the class certification issues presented as to whether there's going to be individual inquiry or there can be a collective analysis of that," but determined that Anthem should pursue "less intrusive means" to collect this relevant information. Tr. of Disc. Hr'g, 22. The Court then encouraged the parties and their experts to "work together" and discuss a "targeted way and a safe way to use information from Plaintiffs' computers" in a way that "would be less burdensome…on the privacy interests of the Plaintiffs that would give greater assurance to them that it was not going to be misused in some way." *Id.*, at 32, 35-36.

Anthem heeded the Court's instruction. When issuing RFP 33, Anthem made clear that—unlike RFP 31—RFP 33 would never require Plaintiffs to turn over either their computer systems or a forensic copy of their computer systems to Anthem (or its experts). Moreover, RFP 33 does not seek access to Plaintiffs' smart phones at all, although this was previously sought with regards to RFP 31.

Instead, what RFP 33 seeks is "the results of [a] forensic analysis, including a list of any indicators of compromise, to include malicious files, historical evidence of malicious files, and events logs of any anti-virus software that may have removed the malware prior to examination." Ex. 2. This means that Plaintiffs can comply with RFP 33 *without ever turning over their computers—or a forensic copy of their computers*—to Anthem or its experts. Rather RFP 33 requests that *Plaintiffs' experts*[2] conduct a forensic analysis of Plaintiffs' computers (that both parties' experts agree on), and thereafter provide Anthem with the results of that analysis. Anthem made these adjustments in the scope of what it is seeking—seeking only the results of the inspection, not the forensic images themselves—in order to accommodate Plaintiffs' privacy concerns and to, as the Court said, provide "greater security to the Plaintiffs as to what exactly was being extracted and for what purpose." *Id.*, at 32. And in an effort to further reduce any burden on Plaintiffs, *Anthem will bear all of the costs associated with these examinations*. *See* Rule 26(b)(1) (considering "whether the burden or expense of the proposed discovery outweighs its likely benefit").[3]

---

[1] Anthem served RFP 33 on May 18, 2016. Anthem Defs.' Second Set of Req. For Produc. Of Doc. and Things, Ex. 1; Defs.' Letter to Plfs., May 18, 2016, Ex. 2. Plaintiffs responded on June 13, 2016. Pls.' Resp. and Objection To The Anthem Defs.' Second Set of Req. For Produc. Of Doc. and Things, Ex. 3; Pls.' Letter to Defs., June 13, 2016, Ex. 4. The parties met, conferred, and reached impasse on June 24.
[2] Anthem's expert has prepared a list of acceptable programs to perform the forensic examination, and is ready to meet with Plaintiffs' expert to determine which programs will be used to respond to RFP 33.
[3] Defendants are not asking "Plaintiffs to generate a document that does not currently exist," Ex. 4, but propose an "inspection, search, and production protocol" to protect Plaintiffs' privacy concerns while

Despite Plaintiffs' recent protestations to the contrary, the Court's prior finding on relevance was right: the forensic inspection results are highly relevant to critical issues at stake in this litigation. *See* Tr. of Disc. Hr'g, 22; Order Denying Anthem's Req. to Compel Disc., Dkt. 502, at 2 (noting that "information that plaintiffs' [PII] and [PHI] was compromised before the Anthem attack" may be "probative of causation"). Anthem is entitled to discover information "reasonably calculated to lead to the discovery of admissible evidence." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005). Information that would tend to demonstrate that Plaintiffs' alleged injuries were caused by malware, viruses, or hacks of their devices, rather than by the cyberattack on Anthem, meets this threshold. *Enwere v. Terman Assoc., L.P.*, No. C 07-1239 JF PVT, 2008 WL 5146617, at *5 (N.D. Cal. Dec. 4, 2008) (Defendants are entitled to the information they "reasonably need in order to … evaluate how much of Plaintiff's [injuries are] attributable to their conduct, so that they have a fair opportunity to prepare their defense for trial."). And although Anthem disputes[4] that it must prove that the Anthem cyberattack was "not the cause of Plaintiffs' identity theft," Ex. 4 at 2, Plaintiffs' continued insistence that Anthem bears the burden of proof on the issue of causation only further supports Anthem's request for the results of a forensic inspection of their computers. Plaintiffs cannot reasonably seek to impose the burden of proving causation of alleged injuries on Anthem, and then deny Anthem's discovery of evidence that could help establish that events other than the cyberattack on Anthem led to Plaintiffs' alleged injuries. And this is especially true where, as here, the FBI has said that it has "not observed data stolen from the Anthem breach being sold on online dark markets," Dkt. 479-6, meaning that there is a strong indication that the cyberattack on Anthem did not cause many Plaintiffs' alleged injuries.

Plaintiffs assert that this inspection report will not definitely show that Plaintiffs' PII or PHI was extracted from their devices. Yet, criminal attackers "commonly seek to acquire end users' personal information from their home and personal devices," Dkt. 479-7, Decl. of Austin Berglas ¶ 11, and thereafter use or sell captured credentials and personal information on the dark web. As addressed previously by Mr. Berglas, certain types of malware—which could be identified through analysis of Plaintiffs' devices—utilize key stroke loggers to capture PII from users when they type in their SSN or online account credentials into any website or document. *Id.* at ¶ 8. Attackers can then use this PII/PHI to perpetrate identify theft and fraud. Moreover, evidence that Plaintiffs have been the victim of this type of attack is particularly relevant when several Plaintiffs allege that the Anthem cyberattack caused their alleged identity theft despite the fact that neither those Plaintiffs nor their social security numbers were compromised in the Anthem attack. *Compare* SAC ¶ 21 (alleging Plaintiff Kelly Tharp's experienced identity theft), *with* Defs.' Resp. to Plfs.' Req. for Admis., Ex. 5 at 11-12 (denying that either Plaintiff Kelly Tharp or her social security number were impacted by the Anthem cyberattack).

---

seeking discovery Defendants are entitled under Rules 26(b)(1) and 34. *See Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. 10-CV-03428-LHK, 2012 WL 70428, at *1 (N.D. Cal. Jan. 9, 2012). RFP 33 simply proposes a "protocol for the imaging, analysis, and subsequent production of responsive documents" which "minimize[s] the burden and inconvenience to [Plaintiffs]." *Id.*, 2012 WL 70428, at *3 (permitting forensic inspection conducted by either the requesting parties' expert or a third party expert).
[4] *See Stollenwerk v. Tri-W. Health Care Alliance*, 254 F. App'x 664, 668 (9th Cir. 2007) (plaintiffs must prove a plausible causal connection between their alleged injuries and a cyberattack to prevail).

There is also little doubt that Plaintiffs' computers have a "special connection to the lawsuit," *Brocade Commc'ns Sys., Inc.*, 2012 WL 70428, at *1; *see also* Dkt. 479, at 1-2, such that Anthem has good cause for seeking the results of forensic analyses of those computers. Plaintiffs have not only placed the security of their PII and PHI at issue in this litigation, but also have provided information in discovery tending to show that Plaintiffs' personal computers have been targeted by criminal attackers. Plaintiff Claudia Cass, for example, suggested there may be a link between her bank account being hacked and the fact that "Plaintiff's computer had been infected by a virus that was subsequently removed." Plf. Claudia Cass's Resp. to the Anthem Defs.' First Set of Interrog. to Plfs., Ex. 6 at 9.

The other Rule 26(a) factors addressed in Defendants' prior briefing regarding RFP 31 holds true with regards to RFP 33, including the critical fact that only Plaintiffs have access to this crucial, relevant information. *See* Dkt. 479, at 2-3; Rule 26(b)(1) (considering the "parties' relative access" to the information requested). There is no other source of information that would demonstrate whether Plaintiffs' computers contain malware—which is often undetected—that compromised Plaintiffs' PII or PHI.

In sum, Anthem has heeded this Court's prior guidance with regard to this highly relevant information and has made a significantly narrowed and modified proposal that would allow it to obtain what the Court has found to be relevant evidence while minimizing any burden to Plaintiffs and protecting their privacy. By contrast, Plaintiffs have refused to compromise in any way. For all of the reasons stated above, Anthem requests the Court order the production of the results of forensic inspection conducted by Plaintiffs' expert with respect to malware, viruses, or other hacks of Plaintiffs' devices.

## II.  **PLAINTIFFS' STATEMENT**

This is Anthem's second attempt to search named Plaintiffs' personal computers. As the Court is aware, Anthem previously sought an order requiring Plaintiffs to turn over their personal electronic devices for "surgical" examination and copying. The Court rightfully denied that request, finding it "unreasonably intrusive and disproportional to the present needs of the case." (Order, ECF 502, at 1.) Anthem has now renewed its request, except this time it asks Plaintiffs' expert to generate a "forensic analysis". Ex. 1.[5] Anthem's renewed request remains inappropriate for the same reasons as the original request: it is not proportional to the needs of the case but is instead highly intrusive, burdensome, and pointless. It is also procedurally deficient because it requires Plaintiffs to generate a document that does not currently exist. The Court should again deny the request to search Plaintiffs' computers.

First, as a threshold matter, Anthem's request is defective under the Federal Rules. RFP 33 requires Plaintiffs to generate a document – the "forensic analysis" – that does not currently exist. (Ex. 2.) This is not allowed under Rule 34. *See e.g., Lamon v. Adams*, 2015 WL 1879606, at *3 (E.D. Cal. Apr. 22, 2015) ("Rule 34 cannot be used to require the adverse party to prepare, or cause to be prepared, a writing to be produced for inspection, but it can

---

[5] Curiously, Anthem has refused to disclose the "list of acceptable programs" to counsel, and has stated that Anthem would only be willing to provide the list in a discussion with Plaintiffs' expert. *See* A. Holt, 7/14/16 E-mail, attached hereto as Exhibit 7.

only be used to require the production of things in existence"). The Court should deny Anthem's request on this ground alone.[6]

Setting aside its invalidity under the Federal Rules, RFP 33 – like its predecessor RFP 31 – is also inappropriate because Anthem has not made a heightened showing of good cause. *See Cefalu v. Holder*, 2013 WL 4102160, at *1 (N.D. Cal. Aug. 12, 2013). Where a forensic image of a computer system is sought, the propounding party must demonstrate the computer systems "have a special connection to the lawsuit." *See e.g., Memry Corp. v. Kentucky Oil Tech, N.V.*, 2007 WL 832937, at *3 (N.D. Cal. Mar. 19, 2007). A federal court only orders a party to allow its computer systems to be forensically imaged or inspected in "an extreme situation" where the computer content is "intricately related to the very basis of the lawsuit." *Id.* For example, federal courts have permitted such searches when a party alleges trade secret misappropriation, contends that the trade secret is on the defendant's computer system, and thus seeks a forensic image of defendant's computer. *See e.g., Brocade Commc'ns Sys., Inc.*, 2012 WL 70428, at *1.[7] Anthem's RFP 33 does not meet this heightened standard.

Anthem's Request No. 33 seeks information that is irrelevant, or at best, only tangentially relevant to certain damages claimed by only some plaintiffs. Anthem seeks to examine Plaintiffs' computers to attempt to prove Plaintiffs' personal information was *also* stolen by someone else, and that someone else was responsible for any identity theft claimed by Plaintiffs. But many of Plaintiffs' alleged losses, such as "loss of the benefit of the bargain" are not premised upon the theory that Plaintiffs' PII or PHI has already been used for illicit gain. *See* Third Amended Complaint ("TAC") (ECF 537), ¶ 415(h); Order Granting in Part and Denying in Part Motion to Dismiss (ECF 524) at 23-25, 53-54, 68-69. For categories of harm that do not require that Plaintiffs' PII has already been used for illicit gain, evidence that Plaintiffs' PII had also been stolen from their own computer systems is completely irrelevant.[8] Further, not all Plaintiffs have even claimed specific incidents of identity theft. *See, e.g.*, TAC ¶¶ 12, 14. Anthem's request thus seeks information totally irrelevant to them.[9] Anthem incorrectly contends that the Court has found that "the forensic inspection results are highly relevant to critical issues at stake in this litigation." *Supra*, at 2. As the Court is aware, it never described the forensic inspection results as "highly relevant." In denying RFP 31, the

---

[6] *Brocade Commc'ns Sys., Inc.*, 2012 WL 70428 (N.D. Cal. 2012), cited by Anthem, is inapposite. In *Brocade*, the producing party did not create a new list or new document; rather, the producing party "review[ed] files for relevance, responsiveness, and privilege prior to any disclosure." *Id.* at *3.

[7] Even for highly relevant evidence, courts will require parties to gather the relevant information through other forms of discovery. In *Brocade*, the Court permitted a forensic inspection only after Brocade propounded other discovery requests, and Brocade had "shown that serious questions exist[ed] both as to the reliability and the completeness of materials produced in response." *Brocade*, 2012 WL 70428, at *3.

[8] *Stollenwerk v. Tri-W. Health Care Alliance*, 254 F. App'x 664, 668 (9th Cir. 2007) is not to the contrary. That case discussed the causal connection between a cyberattack and identity theft, not the causal connection between a cyberattack and "loss of value of PII" or "benefit of the bargain" damages.

[9] On June 13, 2016, Anthem provided Plaintiffs with Responses to Requests for Admission, and denied that some of the named Plaintiffs had their PII exfiltrated during the Data Breach. Ex. 5. The Responses do not increase RFP 33's relevance. Determining the truth of Anthem's new assertion will turn entirely on an investigation of Anthem's computer systems and documents, and is wholly unrelated to RFP 33, except to highlight that only Anthem's computer systems have a "special connection to this lawsuit."

Court found that "if there was information that plaintiffs' [PII and PHI] was compromised before the Anthem attack, that information might be probative of causation." (Order, Dkt. 502, at 2.) The Court further explained that "if Anthem has evidence of a specific data compromise by a specific plaintiff, then it might focus its discovery on that intrusion, rather than a blanket request for all plaintiffs' computer systems." (*Id.*) Anthem has not done so.[10]

Moreover, RFP 33 is highly unlikely to yield any evidence regarding whether Plaintiffs' PII or PHI was compromised. It is extremely unlikely that Plaintiffs' PII or PHI was stolen from their personal computers and used to commit identity fraud. (Garron Decl., Ex. 8, ¶ 14-16.) Contrary to Anthem's contention, Claudia Cass' PII was not stolen from her personal computer. Even if criminal hackers did steal Plaintiffs' PII from Plaintiffs' computers, it would in all likelihood be impossible to detect, because personal computers are unlikely to contain the kind of security software that allows tracking of exfiltrated data. *Id.* at ¶ 13. Instead of detecting whether PII or PHI was actually exfiltrated, RFP 33 suggests that the goal would be to generate a list of malware programs found on the computer. This would reveal nothing. First, malware detection programs are notorious for over-reporting the amount of malware on a computer. *Id.* at ¶ 20. Second, out of hundreds of millions of malware programs, very few are capable of extracting PII or PHI from computers. *Id.* at ¶ 6. Even those that are capable of doing so are not well-suited to do so, and are generally not used to extract anything other than account credentials such as passwords. *Id.* ¶ 9. They are not used to extract sensitive PII, such as Social Security numbers, from *personal* computers. *Id.* ¶¶ 9-10.

Given that there is a low probability that RFP 33 will yield any relevant evidence, RFP 33 is far too burdensome and invasive to pass Rule 26(b)(1)'s proportionality test. RFP 33 remains intrusive, burdensome, and invasive for the same reasons that led the Court to reject RFP 31. Contrary to the types of "targeted" discovery suggested by the Court – such as "interrogatories and deposition requests," (Tr. of Disc. Hr'g, 35) – Anthem continues to demand a search of the entirety of Plaintiffs' computer systems.  Plaintiffs will *still* have to turn over their computer systems to a third party. These computer systems contain sensitive material unrelated to this litigation, such as personal correspondence, pictures of Plaintiffs' family and friends, and other confidential information about Plaintiffs' lives. Plaintiffs will *still* be concerned that their privacy will be violated by a third party who Plaintiffs have never met before, even if that expert has been selected by Plaintiffs' counsel. It is *still* heavily burdensome to force Plaintiffs to relinquish control over their computers for many hours while the forensic copies are being produced; for some, their personal and professional life will be paralyzed while they are without their computers. It is *still* particularly burdensome for those who have recently been victims of the Anthem Data Breach and the anxiety engendered by it, to allow another party to have complete access to their computer systems and information stored thereon. And potential plaintiffs in future data breach class actions will *still* be deterred.

In sum, Anthem's RFP 33 remains inappropriate for the same reasons identified by the Court when it rejected the prior iteration of this request.  In addition, Anthem's new version of the Request is procedurally defective. Accordingly, the Court should again deny Anthem's request to search Plaintiffs' personal computers.

---

[10] At the last hearing, Anthem's counsel represented that Anthem had evidence that some Plaintiffs' PII was on the Dark Web. Plaintiffs asked for copies, but Anthem refused to produce information. Ex. 9-10.

Respectfully submitted,

        **COHEN MILSTEIN SELLERS & TOLL PLLC**
        ANDREW N. FRIEDMAN
        GEOFFREY GRABER
        SALLY M. HANDMAKER
        ERIC KAFKA

Dated:  July 21, 2016        By: /s/ Andrew N. Friedman

        **ALTSHULER BERZON LLP**
        EVE H. CERVANTEZ
        JONATHAN WEISSGLASS
        DANIELLE E. LEONARD
        MEREDITH A. JOHNSON

Dated:  July 21, 2016        By: /s/ Eve H. Cervantez

        *Lead Plaintiffs' Counsel*

        **GIRARD GIBBS LLP**
        ERIC GIBBS
        DAVID M. BERGER
        1 Kaiser Plaza, Suite 1125
        Oakland, California 94612
        Telephone:  (510) 981-4800
        Facsimile:  (415) 981-4846

        **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
        MICHAEL W. SOBOL
        NICOLE D. SUGNET
        275 Battery Street, 29th Floor
        San Francisco, CA 94111-3339

        *Plaintiffs' Steering Committee*

                                    **HOGAN LOVELLS US LLP**
                                    **CRAIG A. HOOVER**
                                    **E. DESMOND HOGAN**
                                    **PETER R. BISIO**
                                    **ALLISON M. HOLT**

Dated: July 21, 2016       By: /s/ Craig A. Hoover

                                    Craig A. Hoover (SBN 113965)
                                    craig.hoover@hoganlovells.com
                                    E. Desmond Hogan (admitted pro hac vice)
                                    desmond.hogan@hoganlovells.com
                                    Peter R. Bisio (admitted pro hac vice)
                                    peter.bisio@hoganlovells.com
                                    Allison M. Holt (admitted pro hac vice)
                                    allison.holt@hoganlovells.com
                                    555 Thirteenth Street, NW
                                    Washington, DC  20004-1109
                                    Telephone:     (202) 637-5600
                                    Facsimile:      (202) 637-5910

                                    Michael Maddigan (SBN 163450)
                                    michael.maddigan@hoganlovells.com
                                    1999 Avenue of the Stars, Suite 1400
                                    Los Angeles, CA  90067
                                    Telephone:     (310) 785-4600
                                    Facsimile:      (310) 785-4601
                                    Maren J. Clouse (SBN 228726)
                                    maren.clouse@hoganlovells.com
                                    4085 Campbell Ave., Suite 100
                                    Menlo Park, CA  94025
                                    Telephone:     (650) 463-4000
                                    Facsimile:      (650) 463-4199

                                    *Attorneys for Defendants Anthem, Inc., and*
                                    *certain of its affiliates that have been named as*
                                    *defendants in the Consolidated Amended*
                                    *Complaint (collectively, "Anthem")*

                                    **TROUTMAN SANDERS LLP**
                                    **CHAD R. FULLER**

Dated: July 21, 2016       By: /s/ Chad R. Fuller

                                    Chad R. Fuller (SBN 190830)
                                    chad.fuller@troutmansanders.com
                                    11682 El Camino Real, Suite 400
                                    San Diego, CA 92130

Telephone:   (858) 509-6056
Facsimile:   (858) 509-6040

*Attorney for Anthem*

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
JOHN D. MARTIN
LUCILE H. COHEN

Dated: July 21, 2016          By: /s/ John D. Martin

John D. Martin (admitted pro hac vice)
john.martin@nelsonmullins.com
Lucile H. Cohen (admitted pro hac vice)
lucie.cohen@nelsonmullins.com
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone:   (803) 255-9241
Facsimile:   (858) 256-7500

*Attorneys for Anthem*

## ECF CERTIFICATION

Pursuant to Local Rule 5-1(i)(3), the filing attorney attests that she has obtained concurrence regarding the filing of this document from the signatories to the document.

Dated:  July 21, 2016

/s/   Craig A. Hoover
Craig A. Hoover

*Attorney for Anthem*