# EXHIBIT L

1  ALTSHULER BERZON LLP
   EVE CERVANTEZ (SBN 164709)
2  ecervantez@altshulerberzon.com
   JONATHAN WEISSGLASS (SBN 185008)
3  jweissglass@altshulerberzon.com
   DANIELLE E. LEONARD (SBN 218201)
4  dleonard@altshulerberzon.com
   MEREDITH A. JOHNSON (SBN 291018)
5  mjohnson@altshulerberzon.com
   177 Post Street, Suite 300
6  San Francisco, CA 94108
   Telephone: (415) 421-7151
7  Facsimile: (415) 362-8064

8  COHEN MILSTEIN SELLERS & TOLL PLLC
   ANDREW N. FRIEDMAN (admitted *pro hac vice*)
9  afriedman@cohenmilstein.com
   GEOFFREY GRABER (SBN 211547)
10 ggraber@cohenmilstein.com
   SALLY M. HANDMAKER (SBN 281186)
11 shandmaker@cohenmilstein.com
   ERIC KAFKA (admitted *pro hac vice*)
12 ekafka@cohenmilstein.com
   1100 New York Ave. NW
13 Suite 500, West Tower
   Washington, DC 20005
14 Telephone:  (202) 408-4600
   Facsimile:   (202) 408-4699
15
   *Lead Plaintiffs' Counsel*
16 Additional Plaintiffs' Counsel Listed on Signature Page

17

18  **UNITED STATES DISTRICT COURT**
    **NORTHERN DISTRICT OF CALIFORNIA**
19  **SAN JOSE DIVISION**

20

| | |
|---|---|
| 21  **IN RE ANTHEM, INC. DATA BREACH LITIGATION** | Case No. 15-md-02617-LHK (NC) |
| 22 | **AMENDED NOTICE OF PLAINTIFFS' RULE 30(b)(6) DEPOSITION OF DEFENDANT ANTHEM, INC. AND ANTHEM AFFILIATE DEFENDANTS** |
| 23 | |
| 24 | Date:  September 8, 2016 |
| 25 | Time: 9:00 a.m. |
|    | Place: Cohen Milstein Sellers & Toll PLLC, 1100 New York Ave. NW, Fifth Floor, Washington, D.C. 20005 |
| 26 | |
| 27 | Judge: Honorable Lucy H. Koh |
| 28 | |

**TO DEFENDANT ANTHEM, INC., ALL ANTHEM AFFILIATE DEFENDANTS, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Plaintiffs will take the deposition upon oral examination of Defendant Anthem, Inc. and Anthem Affiliate Defendants pursuant to Federal Rule of Civil Procedure 30(b)(6) on September 8, 2016, at 9:00 a.m., at Cohen Milstein Sellers & Toll PLLC, 1100 New York Ave. NW, Fifth Floor, Washington, D.C. 20005, or at other mutually agreeable dates, times, and locations. The deposition will be recorded by stenographic and/or videographic means before a notary public or some other person authorized by law to administer oaths. The deposition will continue from day to day until completed, with Saturdays, Sundays, and legal holidays excepted, under the time limitations provided by Rule 30(d) or the Court.

Pursuant to Rule 30(b)(6), Defendants shall designate one or more officers, directors, managing agents, or other persons who consent to testify on Defendant's behalf as to the following matters for examination, which incorporate the definitions listed below.

**Relevant Time Frame**

Unless otherwise stated, the relevant time frame for each category is from October 1, 2011 to the present.

**Definitions**

1. "Anthem," "you," and "your" refer to Defendant Anthem, Inc., its past and present parents, subsidiaries, affiliates, predecessors, successors, employees, independent contractors, officers, agents, vendors, accountants, each of the Anthem Affiliate Defendants, and all other persons or entities acting on its behalf or under Anthem's direct or indirect control.

2. "Anthem Affiliate Defendants" refers to the entities identified in paragraphs 124–151 of the Third Consolidated Amended Class Action Complaint, including their past and present parents, subsidiaries, affiliates, predecessors, successors, employees, independent contractors, officers, agents, vendors, accountants, and all other persons or entities acting on its behalf or under its direct or indirect control.

3. "BCBSA" refers to Defendant Blue Cross Blue Shield Association, its past and present parents, subsidiaries, affiliates, predecessors, successors, employees, independent

1  contractors, officers, agents, vendors, accountants, and all other persons or entities acting on its
2  behalf or under its direct or indirect control.
3      4.   The "Data Breach" refers to the cyberattack that Anthem announced on February 4,
4  2015.
5      5.   "Non-Anthem BCBS Defendants" refers to the entities identified in paragraphs 153-
6  165 of the Third Consolidated Amended Class Action Complaint, including their past and present
7  parents, subsidiaries, affiliates, predecessors, successors, employees, independent contractors,
8  officers, agents, vendors, accountants, and all other persons or entities acting on its behalf or under
9  its direct or indirect control.
10     6.   "Non-Anthem Defendants" refers to the Non-Anthem BCBS Defendants and
11 BCBSA.
12     7.   "Personal Information" has the definition used in paragraph 160 of the Second
13 Consolidated Amended Class Action Complaint, and includes:
14        a.   Names (including former or alternate names, such as maiden names or nick names)
15        b.   User IDs
16        c.   Passwords
17        d.   Birthdates
18        e.   Addresses
19        f.   Telephone or facsimile numbers
20        g.   Email addresses
21        h.   Payment card information
22        i.   Financial account information
23        j.   Employment information, including income data
24        k.   Individually-identifiable health information
25        l.   Social Security or taxpayer identification numbers
26     8.   "Security Controls" include administrative and technical, but not physical methods of
27 securing information.
28

**Matters for Examination**

1. The Data Breach, including how it occurred, the methods the perpetrators used, the Anthem systems that were involved and their contents, the information that was accessed or exfiltrated, and how the breach was discovered.

2. Any investigations into the Data Breach by Anthem or third parties, including the people and entities involved, and any limitations of the investigations.

3. Any findings or recommendations made following an investigation into the Data Breach, and Anthem's consideration of and responses to those findings or recommendations.

4. Actions taken after the discovery of the Data Breach to improve the Security Controls or cybersecurity of Anthem's systems and discussions about those actions, including changes to cybersecurity staffing and budgets, Anthem's practices regarding logging and monitoring, passwords and multifactor authentication practices, encryption, and use of data loss prevention technologies.

5. Security Controls Anthem used prior to the Data Breach to prevent, protect, detect, or disrupt cybersecurity incidents, including when those Security Controls were used, their scope, and associated costs.

6. Security Controls Anthem used after the Data Breach to prevent, protect, detect, or disrupt cybersecurity incidents, including when those Security Controls were used, their scope, and associated costs.

7. Security Controls that Anthem used to protect Personal Information before the Data Breach, including when those Security Controls were used, their scope, and associated costs.

8. Security Controls that Anthem used to protect Personal Information after the Data Breach, including when those Security Controls were used, their scope, and associated costs.

9. The costs Anthem incurred for implementing improvements to Security Controls or overall cybersecurity after discovery of the Data Breach and discussions about those costs.

10. All intrusions into Anthem's systems that took place or were discovered between January 2013 and February 2015, including how the incidents occurred, the information and systems that may have been accessed or compromised, Anthem's short- and long-term responses, and any lessons learned.

11. Risks and vulnerabilities to Anthem's cybersecurity systems between October 1, 2011 and discovery of the Data Breach, the steps Anthem took to mitigate or remediate those risks and vulnerabilities, the costs involved, and related discussions by Anthem's decision makers.

12. Current risks or vulnerabilities to the security of Personal Information maintained by Anthem, whether and to what extent Anthem is planning or attempting to mitigate or remediate those risks and vulnerabilities, the costs involved, and related discussions by Anthem's decision makers.

13. The extent to which members of Anthem's executive leadership team and Board of Directors were briefed about cybersecurity issues between 2010 and discovery of the Data Breach, the present, including the contents of those briefings.

14. The extent to which members of Anthem's executive leadership team and Board of Directors were briefed about cybersecurity issues between discovery of the Data Breach and the present, including the contents of those briefings.

15. Personnel changes between 2010 and the present in board and executive leadership team positions related to cybersecurity, including the Chief Information Officer.

16. Actions taken by members of Anthem's board or executive leadership team to address cybersecurity concerns between 2010 and the present.

17. Interactions with government or regulatory entities concerning the Data Breach or the security of Personal Information maintained by Anthem, including any communications regarding findings, recommendations, or draft or final reports prepared by those entities, which may include the Federal Bureau of Investigation, the Secret Service, the Office of Personnel Management, the Department of Health and Human Services, state agencies and attorneys general, and the National Association of Insurance Commissioners.

18. Anthem's policies, procedures, protocols, standards, and practices related to cybersecurity, including those related to network segmentation, password security, access controls, and vendor security risk management.

19. Exceptions to Anthem's cybersecurity-related policies, procedures, protocols, standards, and practices.

20. Anthem's integration of legacy networks from HMC and Amerigroup Corporation

into Anthem's security framework.

21. The extent to which Anthem has complied with any applicable security standards and the reasons for Anthem's compliance or non-compliance, including the NIST Cybersecurity Framework, COBIT 5, the HITECH Act, PCI DSS, ISO/IEC 27001 and 27002, and the HITRUST CSF.

22. The development, adoption, implementation of, and Anthem's compliance with, the BCBSA cybersecurity proposal discussed in spring 2015.

23. Identity theft or credit monitoring services Anthem offered to protect the Personal Information of consumers or Anthem employees whose information was exfiltrated in the Data Breach, including the terms and benefits of such services, their effectiveness in the protection of Personal Information, their effectiveness in the mitigation of loss of Personal Information or identity theft, their costs to Anthem and end-users, and Anthem's choice of vendors.

24. Identity theft or credit monitoring services Anthem offered beginning January 1, 2016, to protect the Personal Information of Anthem's members, including the terms and benefits of such services, their effectiveness in the protection of Personal Information, their effectiveness in the mitigation of loss of Personal Information or identity theft, their costs to Anthem and end-users, and Anthem's choice of vendors.

25. The systems used to share Personal Information between and among Anthem and the Non-Anthem Defendants, including the identity of the various systems, what information is transmitted over each, how Anthem uses that information, and Security Controls used to protect Personal Information transmitted through these systems, including to and from Anthem, BCBSA or any Non-Anthem BCBS Defendants, and including pertaining to Federal Employees and the BlueCard program.

26. Anthem's representations to BCBSA or other Non-Anthem BCBS Defendants that directly or indirectly transmitted Personal Information to Anthem regarding the safety or security of that Personal Information.

27. The contractual relationships between and among Anthem, BCBSA, and Non-Anthem BCBS Defendants, including pertaining to the Federal Employees plans and BlueCard

program.

28. The business relationships, operations, and processes between and among Anthem, BCBSA, and Non-Anthem BCBS Defendants pertaining to the Federal Employees plans and BlueCard program, including arrangements for sharing and protecting Personal Information.

29. Anthem's cybersecurity insurance coverage, both prior to and after the Data Breach, including terms and costs.

30. Anthem's analyses or understanding of the importance that customers place on the security of their Personal Information, including the information provided to or maintained by Anthem.

31. Consumers' reactions or experiences attributed to the Data Breach, including the incidence and cost of fraud or identity theft suffered by consumers whose information was exfiltrated in the Data Breach.

32. How Anthem stores information relevant to identifying the putative class members and how that information can be accessed.

33. The organizational structure of and relationships between and among Anthem and each Anthem affiliate.

34. The organizational structure within Anthem with respect to the divisions or units responsible for cybersecurity.

35. Anthem's advertisements or representations to customers and enrollees regarding the security of their PII and PHI, and the steps that Anthem was taking to protect their PII and PHI, including but not limited to statements about privacy on Anthem's websites, Privacy Policies, and Notices of Privacy Practices.

36. Anthem's process for determining policies, procedures, protocols, and standards, and practices related to cybersecurity, including which Anthem employees are authorized to make final decisions on various policies.

37. Anthem's individual policy contracts effective during 2014 and 2015, and corresponding Plan Booklets (including but not limited to Evidence of Coverage and any other documents provided to members describing their benefits upon enrollment), including any form or

1  template policy contracts and booklets and/or any contracts or booklets submitted to state regulators
2  for approval for 2014 and 2015.

3      38.     Anthem's group contracts and agreements effective during 2014 and 2015, and
4  corresponding Plan Booklets (including but not limited to Evidence of Coverage and any other
5  documents provided to members describing their benefits upon enrollment), including any form or
6  template policy contracts and booklets and/or any contracts or booklets submitted to state regulators
7  for approval for 2014 and 2015.

8      39.     Anthem's administrative services only contracts effective during 2014 and 2015,
9  including any form or template policy contracts and booklets and/or any contracts or booklets
10 submitted to state regulators for approval for 2015 and 2015.

11     40.     The Office of Personnel Management's attempts to audit or investigate Anthem's
12 cybersecurity, including Anthem's responses to OPM, related internal discussions, the results of the
13 OPM's audits, and any response by Anthem.

14     41.     The creation, maintenance, and content of the "individual impact data collection"
15 referenced in The Anthem Defendants' Responses to Plaintiffs' Second Set of Interrogatories, and
16 any other actions by Anthem to recreate the Data Breach or compile data of individuals affected.

17     42.     Anthem's investigation or determinations as to whether an individual or group of
18 individuals' data was accessed or taken in the Data Breach.

19     43.     Contractual and business arrangements by which Anthem customers, including
20 individuals, group health plans, and/or self-funded health plans, make payments to Anthem and/or
21 Anthem affiliates, including how Anthem accounts for or apportions such payments per individual
22 insured.

23     44.     The systems used to share Personal Information between and among Anthem and the
24 Anthem Affiliates, including the identity of the various systems, what information is transmitted
25 over each, how Anthem uses that information, and Security Controls used to protect Personal
26 Information transmitted through these systems.

27     45.     The manners and methods by which you gather, track, or store information regarding
28 the amount of premiums, service payments, or other amounts paid to you for insurance,

administrative services, HMOs, and/or other health care services, including but not limited to the identity and description of the systems or databases in which such information is maintained and the length of time for which such information is maintained.

Dated: August 24, 2016                By: _/s/ Eve H. Cervantez_
                                          Eve H. Cervantez

**ALTSHULER BERZON LLP**
EVE H. CERVANTEZ
JONATHAN WEISSGLASS
DANIELLE E. LEONARD
MEREDITH A. JOHNSON

**GIRARD GIBBS LLP**
ERIC GIBBS
DAVID M. BERGER

**COHEN MILSTEIN SELLERS & TOLL PLLC**
ANDREW N. FRIEDMAN
GEOFFREY GRABER
SALLY M. HANDMAKER
ERIC KAFKA

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
MICHAEL W. SOBOL
NICOLE SUGNET

# PROOF OF SERVICE

I am employed in the City and County of San Francisco, California. I am over the age of eighteen years and not a party to the within action. My business address is 177 Post Street, Suite 300, San Francisco, California 94108.

On August 24, 2016, I served the following document(s) as indicated below:

**AMENDED NOTICE OF PLAINTIFFS' RULE 30(b)(6) DEPOSITION OF DEFENDANT ANTHEM, INC. AND ANTHEM AFFILIATE DEFENDANTS**

A     **BY ELECTRONIC SERVICE** By agreement of the parties, I caused each document to be sent via email in Adobe "PDF" format to the above email address(es), as set forth on this date. Each transmission was complete and without error.

| | |
|---|---|
| Craig A. Hoover (SBN 113965)<br>E. Desmond Hogan (admitted pro hac vice)<br>Peter R. Bisio (admitted pro hac vice)<br>Allison M. Holt (admitted pro hac vice)<br>HOGAN LOVELLS US LLP<br>555 Thirteenth Street, NW<br>Washington, DC 20004-1109<br>craig.hoover@hoganlovells.com<br>desmond.hogan@hoganlovells.com<br>peter.bisio@hoganlovells.com<br>allison.holt@hoganlovells.com<br><br>Michael Maddigan (SBN 163450)<br>HOGAN LOVELLS US LLP<br>1999 Avenue of the Stars, Suite 1400<br>Los Angeles, CA 90067<br>michael.maddigan@hoganlovells.com | *Attorneys for Defendants Anthem, Inc., The Anthem Companies, Inc., The Anthem Companies of California, Inc., Anthem Blue Cross Life And Health Insurance Company, Blue Cross of California, doing business as Anthem Blue Cross, and their affiliates that have been named as defendants in the cases listed in the Table of Related Cases (collectively, "Anthem") and Defendants Horizon Healthcare Services, Inc., Blue Cross and Blue Shield of Arizona, Inc., Highmark West Virginia, Inc., and Blue Cross Blue Shield of Michigan* |
| John D. Martin (admitted pro hac vice)<br>Lucile H. Cohen (admitted pro hac vice)<br>1320 Main Street, 17th Floor<br>Columbia, SC 29201<br>john.martin@nelsonmullins.com<br>lucie.cohen@nelsonmullins.com | *Attorneys for Anthem* |
| Chad R. Fuller (SBN 190830)<br>11682 El Camino Real, Suite 400<br>San Diego, CA 92130<br>chad.fuller@troutmansanders.com | *Attorney for Anthem* |

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this August 24, 2016 at San Francisco, California.

Eve H. Cervantez