EXHIBIT M

Craig A. Hoover, SBN 113965
E. Desmond Hogan (admitted *pro hac vice*)
Peter R. Bisio (admitted *pro hac vice*)
Allison M. Holt (admitted *pro hac vice*)
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, NW
Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com
peter.bisio@hoganlovells.com
allison.holt@hoganlovells.com

Michael M. Maddigan, SBN 163450
**HOGAN LOVELLS US LLP**
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 785-4600
Fax: (310) 785-4601
michael.maddigan@hoganlovells.com

*Attorneys for Non-Anthem Defendants*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE ANTHEM, INC. DATA BREACH LITIGATION | Case No. 5:15-MD-02617-LHK<br><br>**DECLARATION OF NANCY COLTON IN SUPPORT OF THE ANTHEM DEFENDANTS' STATEMENT REGARDING "DISCOVERY DISPUTE PERTAINING TO MEMBER LEVEL DATA"** |

## DECLARATION OF NANCY COLTON

I, Nancy Colton declare:

1. I am employed by Anthem, Inc. ("Anthem"), where I serve as a Staff Vice President in the Healthcare Analytics department. I have worked on data analytics and database issues since approximately 1990. I have personal knowledge of the facts stated in this declaration and would, if called as a witness, competently testify to those facts.

2. I am familiar with the databases and systems Anthem maintains in the course of its regularly conducted business on which Anthem stores information about its members and the health benefits policies and plans under which such members are covered. I also am familiar with the database Anthem created to track information about the approximately 78 million individuals ("Impacted Individuals") whose information was accessed in the cyber attack Anthem publicly announced on or about February 4, 2015 (the "Cyber Attack").

3. I am familiar with Interrogatory No. 21, served on the Anthem Defendants on October 21, 2016, and Interrogatory Nos. 2-6 served on the Non-Anthem Defendants on September 14, 2016 (collectively, the "Discovery Requests").

4. Based on my review of the Discovery Requests, it is my understanding that Plaintiffs are asking the Anthem Defendants to produce data showing the specific product name, enrollment dates, and monthly premium payments for all Anthem health benefit policies and plans across the commercial and government lines of business, including individual, group, administrative services only, Medicare, and Medicaid plans and policies, for each and every Impacted Individual ("Anthem Requested Information"). Based on my review of the Discovery Requests, it also is my understanding that Plaintiffs are asking the Non-Anthem Defendants to, among other things, produce data showing the line of business of the Non-Anthem Defendant health benefit policies and plans, including individual,

1

group, administrative services only, Medicare, and Medicaid plans and policies, for each and every Impacted Individual ("Non-Anthem Requested Information").

5. As discussed below, the Anthem Defendants do not maintain a single database or system that contains the Anthem Requested Information. Instead, to the extent Anthem has components of the Anthem Requested Information, Anthem would have to create the Anthem Requested Information by querying multiple databases and systems and compiling the results of those queries in a new database. Subject to the limitations set forth below, I estimate that the overall process of creating the Anthem Requested Information would take at least two months, if not more, and require significant resources.

**Anthem Defendants**

6. At a high level, creating the Anthem Requested Information would involve two discrete steps. First, Anthem would have to identify all of the health benefits policies and plans, as well as the product name and enrollment dates for each and every one of those policies and plans, for each and every Impacted Individual. Second, Anthem would have to collect the available information about the insurance premiums and administrative service fees relating to such policies and plans for each and every Impacted Individual. I discuss each of those steps below.

**Step One: Identifying Health Benefits Policies And Plans, Product Names, and Enrollment Dates Under Which Impacted Individuals Were Covered**

7. Following the Cyber Attack, Anthem created a database containing information about Impacted Individuals (the "Member Impact Database"). The Member Impact Database identifies, for each Impacted Individual, the Anthem health benefits policy or plan under which the Impacted Individual was covered on January 31, 2015, or the closest date prior in time to January 31, 2015 for which such information was available. These policies and plans fall into a variety of categories, including but not limited to individual policies and plans, fully insured

group policies and plans, self-insured group policies and plans, Medicare policies and plans, and Medicaid policies and plans. There also are some Impacted Individuals for whom Anthem was not able to attribute a particular plan or policy when it created the Member Impact Database. The Member Impact Database does *not* contain information about the enrollment dates or product names applicable to any policies and plans. It also does *not* contain any information about the premiums or administrative service fees that individuals, groups, or government entities may have paid with respect to such policies or plans. And the Member Impact Database does *not* identify any earlier policies or plans under which Impacted Individuals may have been covered; it only identifies one policy or plan for each Impacted Individual, to the extent it identifies a policy or plan at all.

8. The only practical way for Anthem to get information about other Anthem policies and plans under which each and every Impacted Individual was covered would be to take the information about the approximately 78 million Impacted Individuals identified in the Member Impact Database and run it through Anthem's enterprise data warehouse, known as EDWard. As part of that process, Anthem also could use a query to identify the product name and enrollment dates (i.e., start and termination dates of coverage) for those policies and plans. This process would take at least three weeks, and could take longer, and it would require the dedication of two full-time equivalents ("FTEs") for at least two weeks (e.g., at least 160 hours of employee time). Given the limitations of the information in the Member Impact Database and EDWard, this process would not identify *all* Anthem policies and plans under which Impacted Individuals were covered because EDWard does not contain information about every Anthem policy or plan under which each individual identified in EDWard was covered. Likewise, this process would not identify *all* product names or enrollment dates for Impacted Individuals' policies and plans. Further, the level of specificity of the product name available in EDWard would vary.

**Step Two:  Collecting Information About The Premiums And Administrative Fees Relating To The Anthem Policies And Plans Under Which Impacted Individuals Were Covered.**

9.  In addition to identifying the list of the Anthem policies and plans under which all Impacted Individuals were covered, as well as the product names and enrollment dates for those policies and plans, Anthem also would have to take information about the policies and plans and run it through EDWard utilizing different queries to identify information about the premiums and administrative fees relating to those policies and plans.  This process would take at least one week and require the dedication of one FTE (e.g., at least 40 hours of employee time).  The information gathered about the premiums and administrative fees through this process has several important limitations and would require Anthem to run additional queries on separate databases and systems because only some of the information about premiums and administrative fees in the EDWard database is maintained at the individual level, as described below.

10.  First, EDWard contains revenue information, not information about the prices charged in the form of premiums or administrative fees for health benefits policies and plan.  Thus, the information gathered would be information about the revenue Anthem earned from payments received as opposed to the premiums or administrative fees that Anthem charged.

11.  Second, much of the revenue information contained in EDWard relating to Anthem group health benefits policies or plans is maintained at the group level.  As a result, Anthem would not be able to determine the amount of money that was paid with respect to each Impacted Individual who was covered under a group health benefits policy or plan.  At most, Anthem would be able to determine the average amount that was paid with respect to each individual—including Impacted Individuals—covered under a given group policy or plan.  This process would take approximately three additional weeks, requiring the dedication

of two FTEs for the duration of that period (e.g., at least 240 hours of employee time). (As part of that process, Anthem also would determine the average amount that was paid with respect to each individual—including Impacted Individuals—covered under individual policies and plans for which data is maintained at the product, not policy or plan, level.) It is important to note that Anthem has no way of knowing how the average amount relates to the amount, if any, actually paid by an individual covered under a group policy or plan. For group policies and plans, Anthem is paid by the group (e.g., the employer); it is not paid by the individuals covered under the group policy or plan. Anthem does not have information about the extent to which the cost of a group policy or plan is passed on to the individuals covered under the policy or plan. Indeed, group policies and plans have different financial arrangements with respect to the individuals covered under the policies and plans. Some group policies and plans require covered individuals to pay only a fraction of the cost of the policies or plans that may be attributable to them. Other group policies and plans do not require covered individuals to pay anything for their coverage.

12. Third, EDWard does not contain information about the payments Anthem receives from federal or state governments with respect to all Medicaid and Medicare health benefit policies and plans. Nor is this type of information stored in any other central database. In addition, for a majority of Anthem Medicaid and Medicare policies and plans, the individuals covered under those policies or plans do not make any payments to Anthem. Consequently, Anthem would not be able to determine through EDWard what amount an Impacted Individual paid or what amount a federal or state government paid on that Impacted Individual's behalf for every Medicaid or Medicare policy or plan under which Impacted Individuals were covered.

13. Fourth, the revenue information contained in EDWard has some additional gaps. As a result, Anthem likely would not be able to identify revenue

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
MENLO PARK

DECLARATION OF NANCY COLTON IN SUPPORT OF DEFENDANTS' STATEMENT REGARDING DISCOVERY DISPUTE

information for some of the commercial policies and plans under which Impacted Individuals were covered. To fill these gaps, Anthem would have to take information about the policies and plans under which Impacted Individuals were covered and run it through different databases and systems. Specifically, Anthem would have to run the information through the Enterprise Group Database, which contains premium information with respect to fully insured group plans and policies; through the Individual Information Mart, which contains premium information with respect to fully insured individual and small group plans and policies; and through the Financial Reporting System, which contains administrative fee information with respect to administrative services only plans and policies. This process would take approximately three additional weeks, requiring the dedication of two FTEs for the duration of that period (e.g., at least 240 hours of employee time). (This process could be done at the same time as, although separately from, the process described in Paragraph 12.) Like EDWard, the Enterprise Group Database, the Individual Information Mart, and Financial Reporting System all contain revenue information; they do not contain information about the prices charged in the form of premiums or administrative fees. And these databases and systems, like EDWard, do not contain revenue information at the individual level with respect to all health benefit policies and plans and primarily maintain only 48 months of historical information.

14. Because of these limitations, at the end of the process Anthem would likely need to dedicate an FTE for at least another week (e.g., at least 40 hours of employee time), and possibly more, to validate the data calculations and matching process.

**Non-Anthem Defendants**

15. In the same way that the Member Impact Database does not identify every Anthem policy or plan under which Impacted Individuals were covered, it also does not contain information about every Non-Anthem Defendant policy or

plan under which Impacted Individuals were covered.

16. Anthem has no way of identifying all of the Non-Anthem Defendant policies or plans under which each and every Impacted Individual was covered. To the best of my knowledge, the only way such Non-Anthem Defendant policies or plans could be identified would be for each Non-Anthem Defendant to use information about the approximately 78 million Impacted Individuals identified in the Member Impact Database to query its own systems and databases and identify policies and plans under which such Impacted Individuals were covered. Based on my knowledge and experience regarding the different ways data can be organized and stored by health care benefits companies, I believe this likely would be a time consuming process, similar to the process described above with respect to Anthem.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 8th day of December, 2016 in Mason, Ohio.

_____
Nancy Colton