# TAB 170

ALTSHULER BERZON LLP
EVE CERVANTEZ (SBN 164709)
ecervantez@altshulerberzon.com
JONATHAN WEISSGLASS (SBN 185008)
jweissglass@altshulerberzon.com
DANIELLE E. LEONARD (SBN 218201)
dleonard@altshulerberzon.com
MEREDITH A. JOHNSON (SBN 291018)
mjohnson@altshulerberzon.com
TONY LOPRESTI (SBN 289269)
tlopresti@altshulerberzon.com
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

COHEN MILSTEIN SELLERS & TOLL PLLC
ANDREW N. FRIEDMAN (admitted *pro hac vice*)
afriedman@cohenmilstein.com
GEOFFREY GRABER (SBN 211547)
ggraber@cohenmilstein.com
SALLY M. HANDMAKER (SBN 281186)
shandmaker@cohenmilstein.com
ERIC KAFKA (admitted *pro hac vice*)
ekafka@cohenmilstein.com
1100 New York Ave. NW
Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

*Lead Plaintiffs' Counsel*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| **IN RE ANTHEM, INC. DATA BREACH LITIGATION** | Case No. 15-md-02617-LHK (NC) <br><br> **DECLARATION OF ANDREW N. FRIEDMAN IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** <br><br> Date: June 29, 2017 <br> Time: 1:30 p.m. <br> Judge: Hon. Lucy H. Koh <br> Crtrm: 8, 8th Floor |

I, Andrew N. Friedman, declare and state as follows:

1. I am a partner at Cohen Milstein Sellers & Toll PLLC. I am admitted to practice in the District of Columbia and New York, as well as multiple circuit and federal courts. I have personal knowledge of the matters discussed herein, and, if called as a witness, could testify competently thereto. I am submitting this declaration in support of Plaintiffs' Motion for Class Certification.

2. After the Judicial Panel transferred to this Court 17 class actions relating to the Anthem Data Breach announced in February, 2015 (the "MDL"), the Court selected Eve Cervantez of Altshuler Berzon LLP and me as Interim Plaintiffs' Counsel.

3. By a September 11, 2015 Order of this Court (the "September 11 Order"), Ms. Cervantez and I were appointed as Co-Lead Plaintiffs' Counsel in the MDL. As part of the same Order, the Court appointed Eric Gibbs of Girard Gibbs LLP and Michael Sobol of Lieff Cabraser Heimann & Bernstein LLP to a Plaintiffs' Steering Committee. For purposes of this Declaration, Ms. Cervantez, Mr. Gibbs, Mr. Sobol and I will be referred to as "Plaintiffs' Lead Attorneys."

4. From the time of the September 11 Order, Plaintiffs' Lead Attorneys have aggressively prosecuted this Action on behalf of the putative classes. On occasion, Plaintiffs' Lead Attorneys have requested other MDL Plaintiffs' Counsel to assist in certain tasks, including but not limited to review of documents produced in discovery, defense of Named Plaintiff depositions, and taking depositions of certain Non-Anthem BCBS Defendant designees. However, to avoid duplicative efforts, all assignments of any work have only been given by Ms. Cervantez and/or me. Furthermore, Ms. Cervantez' office has been collecting on a monthly basis contemporaneous time reports from every Plaintiffs' firm that has been assigned work in the MDL. As a result, Plaintiffs' Lead Attorneys have worked efficiently and economically in the prosecution of the MDL.

5. Plaintiffs' Lead Attorneys have performed a great deal of work investigating the facts underlying the MDL, engaging in discovery, and conducting extensive motion practice. Among the work undertaken to date and/or coordinated by Plaintiffs' Lead Attorneys (and other legal professionals working at Plaintiffs' Lead Attorneys' respective firms) are:

- Drafting the First, Second, Third and Fourth Consolidated Amended complaints;

- Drafting oppositions to two Motions to Dismiss;

- Working with retained experts and consultants to determine the technical details behind the data breach, the extent of Defendants' wrongdoing in regard to the breach, and the harm exacted on members of the Class;

- Drafting 12 sets of Requests for Production to the Defendants;

- Drafting 9 sets of Interrogatories to the Defendants;

- Drafting 7 sets of Requests for Admission to the Defendants;

- Reviewing approximately 3.8 million pages of documents produced by the Defendants;

- Deposing 18 percipient defendant fact witnesses;

- Deposing 62 30(b)(6) witnesses (who testified on 86 agreed-upon topics);

- Drafting discovery requests to third-parties (NAIC, Mandiant, Ernst & Young and the Office of Personnel and Management)

- Moving to Compel the production of documents withheld by the OPM (in the District Court for the District of D.C.);

- Answering discovery requests (interrogatories and requests for production) for all Plaintiffs;

- Preparing for and defending 106 Plaintiff depositions;

- Coordinating the production of 30 Plaintiffs' computers to the Independent Forensic Examiner;

- Taking the Depositions of Defendants' six expert witnesses;

- Preparing for and defending the depositions of Plaintiffs' four expert witnesses;

- Reviewing and serving initial expert reports, rebuttal reports and supplemental expert reports of Plaintiffs' expert witnesses;

- Regularly holding meet and confer conferences with Defendants' counsel over the scope of discovery requests;

- Preparing approximately 19 joint discovery dispute letters, some of which were submitted to Magistrate Judge Cousins;

- Arguing five discovery disputes before Magistrate Judge Cousins relating to: Defendants' request to forensically inspect Plaintiffs' computers; the scope of defendant BCBSA's discovery obligations; the scope of third-party FireEye's discovery obligations; and Plaintiffs' request for data on the financial features of Defendants' insurance products;

- Attending nine Case Management Conferences;

- Coordinating with plaintiffs' counsel in the two remaining state court actions related to the Anthem data breach;

- Preparing for and conducting a mediation session before Judge Layn Phillips;

- Drafting the class certification motion

6.     Ms. Cervantez and I have maintained overall responsibility for strategy, quality control, and communications with opposing counsel.

7.     While Plaintiffs' Lead Attorneys (and other professionals at their firms) often contributed to completion of certain of the enumerated tasks noted above, to avoid duplicative efforts, each of the four Plaintiffs' Lead Attorneys took primary responsibility for certain of the tasks. The following is a non-exhaustive list of the tasks for which each of the four firms took primary responsibility:

**Cohen Milstein**

- Coordinating and defending Plaintiff depositions;

- Document review and taking of depositions of senior Anthem executives and information security personnel;

- Taking depositions of Defendants' experts regarding Chinese hacking and the dark web;

- Coordination of forensic imaging of 30 Plaintiffs' computers;

- Conducting discovery of BCBSA (including taking depositions thereof)

**Altshuler Berzon**

- Drafting the Complaints;

- Drafting the memoranda in opposition to the motions to dismiss;

- Coordinating discovery of the Non-Anthem Defendants (including taking depositions)

- 3 -
DECLARATION OF ANDREW FRIEDMAN IN SUPP. OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 15-MD-02617-LHK

- Drafting the class certification memorandum
- Document review and taking depositions regarding Anthem organizational structure and contracts

**Gibbs Law Group**

- Drafting requests for production, requests for admission and interrogatories;
- Conducting meet and confers with Defendants on the scope of the discovery requests;
- Developing strategy for dealing with the technical aspects of Defendants' data security;
- Taking depositions of Defendants' personnel responsible for technical aspects of data security

**Lieff Cabraser**

- Discovery of Plaintiffs' and Defendants' damage experts, including depositions thereof;
- Working with Plaintiffs' main liability expert;
- Meeting and conferring with Defendants on privilege disputes and preparing joint discovery letters regarding same;
- Coordinating review by Plaintiffs' counsel of 3.8 million pages of Defendants' documents, including training and supervision of attorneys reviewing and coding these documents

8. Each of Plaintiffs' Lead Attorneys are experienced class action litigators familiar with the legal and factual issues involved in the MDL and are each highly qualified. The work done by each of Plaintiffs' Lead Attorneys (and those working at their direction at their respective firms) provide a substantial basis for a finding that they satisfy each applicable criterion under Rule 23(g) and are well qualified to serve as Lead Class Counsel. The experience and qualifications of Ms. Cervantez, Mr. Gibbs and Mr. Sobol (and their respective firms) are detailed in their respective declarations. I will detail my own qualifications and experience (and that of my Firm) in paragraphs 9-14 below.

9. For 47 years, Cohen Milstein has been a leading class action firm, recovering tens of billions of dollars for injured plaintiffs. Cohen Milstein is unique among class action firms in the breadth of its practice areas. It has demonstrated a commitment to protecting consumers and the public interest in dozens of antitrust, securities, consumer protection, product liability, civil rights, and human rights class actions. Cohen Milstein has earned recognition as a "class-action powerhouse" (*Forbes*), "the most effective law firm in the U.S. for lawsuits with a strong social and political component" (*Corporate Legal Times*), one of "America's 25 Most Influential Law Firms" (*The Trial Lawyer*), and one of the "Most Feared Plaintiffs Law Firms" (*Law360*). In 2016, *Law360* included Cohen Milstein as one of only three Plaintiffs firms on its list of Class Action Groups of the Year.[1] In addition, Mr. Friedman, and a number of his partners, has repeatedly been named Washington D.C. "Super Lawyers." A more detailed description of Cohen Milstein's practice and achievements can been found at www.cohenmilstein.com

10. Among Cohen Milstein's most significant past and present cases include:

- *HEMT MBS Litigation*, (No. 1:08-cv-05653, U.S. District Court for the Southern District of New York). On May 10, 2016, U.S. District Judge Paul A. Crotty finally approved a $110 million settlement in the mortgage-backed securities class action brought by investors against Credit Suisse AG and its affiliates. This settlement ends claims brought by the New Jersey Carpenters Health Fund and other investors who claimed that the offering documents for the mortgage-backed securities at issue violated the Securities Act as they contained false and misleading misstatements concerning compliance with underwriting standards.

- *In re Urethane Antitrust Litigation (Polyether Polyol Cases)* (D. Kan.). Cohen Milstein serves as co-lead counsel on behalf of a class of direct purchasers of chemicals used to make many everyday products, from mattress foam to carpet cushion, who were overcharged as a result of a nationwide price-fixing conspiracy. On February 25, 2016, Cohen Milstein reached an agreement with The Dow Chemical Company to settle the case against Dow for $835 million. Combined with earlier settlements obtained from Bayer, Huntsman, and BASF, the Dow settlement pushed the total settlements in the case to $974 million. The settlement was approved on July 29, 2016.

- *RALI MBS Litigation*, (Civ. No. 08-8781, U.S. District Court for the Southern District of New York). In July 2015 On July 31, 2015, Judge Katherine Failla gave final approval to a $235 million settlement with underwriters Citigroup Global Markets Inc., Goldman Sachs & Co., and UBS Securities LLC. She also approved a plan for distribution to investors of those funds as well as the previously approved $100 million settlement with RALI, its affiliates, and the individual

---

[1] http://www.law360.com/articles/743097/class-action-group-of-the-year-cohen-milstein.

Defendants that was reached in in 2013. This global settlement marks an end to a long and complicated class action over MBS offerings that RALI and certain of its affiliates issued and sold to the New Jersey Carpenters Health Fund and other investors from 2006 through 2007. The case took seven years of intense litigation to resolve.

- *In re: Bear Stearns Mortgage Pass-Through Certificates Litigation* (No. 08-08093, U.S. District Court for the Southern District of New York). On May 27, 2015, U.S. District Judge Laura Taylor Swain finally approved a class action settlement with JPMorgan Chase & Co., which agreed to pay $500 million and up to an additional $5 million in litigation-related expenses to resolve claims arising from the sale of $27.2 billion of mortgage-backed securities issued by Bear Stearns & Co. during 2006 and 2007 in 22 separate public offerings.

- *Harborview MBS Litigation*, (No. 08-5093, U.S. District Court for the Southern District of New York). In February 2014, Cohen Milstein reached a settlement with the Royal Bank of Scotland (RBS) in the Harborview MBS Litigation, resolving claims that RBS duped investors into buying securities backed by shoddy home loans. The $275 million settlement is the fifth largest class action settlement in a federal MBS case. This case is one of eight significant MBS actions that Cohen Milstein has been named lead or co-lead counsel by courts and one of three that were nearly thrown out by the court, only to be revived in 2012.

- *In Re Electronic Books Antitrust Litigation*, (No. 11-md-02293, U.S. District Court for the Southern District of New York). In August 2014, a New York federal judge approved a $400 million antitrust settlement in the hotly contested ebooks price-fixing suit against Apple Inc. Combined with $166 million in previous settlements with five defendant publishing companies, consumers could receive more than $560 million. The settlement resolves damages claims brought by a class of ebook purchasers and attorneys general from 33 U.S. states and territories.

- *Countrywide MBS Litigation*, (2:10-cv-00302, U.S. District Court in the Central District of California). In April 2013, Plaintiffs in the landmark mortgage-backed securities (MBS) class action litigation against Countrywide Financial Corporation and others, led by Lead Plaintiff, the Iowa Public Employees' Retirement System (IPERS), agreed to a $500 million settlement. It is the nation's largest MBS-federal securities class action settlement. The settlement was approved in December 2013 and brings to a close the consolidated class action lawsuit brought in 2010 by multiple retirement funds against Countrywide and other defendants for securities violations involving the packaging and sale of MBS. The settlement is also one of the largest (top 20) class action securities settlements of all time.

- *In re Beacon Associates Litigation,* (No. 09-cv-0777, United States District Court for the Southern District of New York). Class action settlement of $219 million for trustees and participants in ERISA-covered employee benefit plans whose assets were lost through investments made on their behalf by Beacon Associates LLC I & II in the investment schemes of Bernard Madoff.

- *In re Plasma-Derivative Protein Therapies Antitrust Litigation*, (No. 09 C 7666, United States District Court for the Northern District of Illinois). After four years of litigation, in October of 2013, CSL Limited, CSL Behring LLC, CSL Plasma, Inc. (collectively, "CSL"), and the Plasma Protein Therapeutics Association ("PPTA") agreed to pay $64 million dollars to settle a lawsuit

- 6 -

brought by the University of Utah Hospital and other health care providers alleging that CSL, the PPTA, and Baxter agreed between 2003-2009 to restrict the supply of immunoglobulin and albumin, and thereby increase the prices of those therapies. Two months later, Baxter International Inc. and Baxter Healthcare Corp. (collectively "Baxter") agreed to pay an additional $64 million to settle these claims – bringing the total recovery to the class to $128 million.

- *Keepseagle v. Vilsack*, Civil Action No. 1:99CV03119 (D.D.C.).  A class of Native American farmers and ranchers allege that they have been systematically denied the same opportunities to obtain farm loans and loan servicing that have been routinely afforded white farmers by the USDA. A class was certified in 2001 by Judge Emmet Sullivan, District Judge for the U.S. District Court for the District of Columbia, and the D.C. Circuit declined USDA's request to review that decision.  On October 19, 2010, the case reached a historic settlement, with the USDA agreeing to pay $680 million in damages to thousands of Native American farmers and ranchers and forgive up to $80 million worth of outstanding farm loan debt.

- *In re Parmalat Securities Litigation*, No. 04 MD 1653 (S.D.N.Y.). In this securities litigation case, Cohen Milstein has successfully negotiated two partial settlements totaling approximately $90 million. At the second partial settlement hearing, Judge Lewis A. Kaplan remarked that plaintiffs' counsel "did a wonderful job here for the class and were in all respects totally professional and totally prepared.  I wish I had counsel this good in front of me in every case." Our clients, four large European institutional investors, were appointed as co-lead plaintiffs and we were appointed as co-lead counsel.  Most notably, this case allowed us the opportunity to demonstrate our expertise in the bankruptcy area. During the litigation, the company subsequently emerged from bankruptcy and we added "New Parmalat" as a defendant because of the egregious fraud committed by the now-bankrupt old Parmalat. New Parmalat strenuously objected and Judge Kaplan of the Southern District of New York ruled in the class plaintiffs' favor, a ruling which was affirmed on appeal. This innovative approach of adding New Parmalat enabled the class to obtain an important additional source of compensation, as we subsequently settled with New Parmalat.

- *Dukes v. Wal-Mart Stores, Inc.*, No. C-01-2252 (N.D. Cal.).  Cohen Milstein is co-lead counsel in this sex discrimination case.  In 2004, the U.S. District Court certified a nationwide class action lawsuit for all female employees of Wal-Mart who worked in U.S. stores any time after December 26, 1998.  This was the largest civil rights class action ever certified against a private employer, including approximately 1.5 million current and former female employees.  That ruling was appealed, and while affirmed by the Ninth Circuit, was reversed by the Supreme Court in June 2011.  Cohen Milstein argued the case for the plaintiffs-respondents in the Supreme Court.  Since then, the *Dukes* action has been amended to address only the Wal-Mart regions that include stores in California, and other regional class cases have been or are soon to be filed.  This litigation to resolve the merits of the claims – whether Wal-Mart discriminates against its female retail employees in pay and promotions – continues.

- *Rubin v. MF Global, Ltd.*, (08-CV-02233, S.D.N.Y.).  Acting as co-lead counsel in this class action, the Firm represented the Central States, Southeast and Southwest Areas Pension Fund which was one of the co-lead plaintiffs in the case.  In September 2010, as a result of Plaintiffs' decision to appeal, the U.S. Second Circuit Court of Appeals vacated in part the lower court's dismissal of the case and remanded the case for further proceedings.  In overturning the District Court decision, the Second Circuit issued a decision which differentiated between a forecast or a

- 7 -

forward looking statement accompanied by cautionary language -- which the Appellate Court said would be insulated from liability under the bespeaks caution doctrine -- from a factual statement, or non-forward-looking statement, for which liability may exist. Importantly, the Second Circuit accepted Plaintiffs' position that where a statement is mixed, the court can sever the forward-looking aspect of the statement from the non-forward looking aspect. The Court further stated that statements or omissions as to existing operations (and present intentions as to future operations) are not protected by the bespeaks caution doctrine. Mediation followed this decision and resulted in a settlement comprised of $90 million in cash.

- *Hughes v. Huron Consulting Group,* (09-CV-04734, N.D. Ill.). Cohen Milstein represented lead plaintiffs the Public School Teachers' Pension & Retirement Fund of Chicago and the Arkansas Public Employees Retirement System ("APERS") in this case against Huron Consulting Group, founded by former Arthur Anderson personnel following its collapse in the wake of the Enron scandal. In August 2010, the District Court for the Northern District of Illinois denied defendants' motions to dismiss *in their entirety* and upheld plaintiffs' allegations that defendants intentionally improperly accounted for acquisition-related payments, which allowed plaintiffs to move forward with discovery. The case was settled for $40 million, comprised of $27 million in cash and 474,547 shares in Huron common stock, with an aggregate value at the time of final approval in 2011 of approximately $13 million.

- *In re Lucent Technologies Securities Litigation*, Civ. Action No. 00-621 (JAP) (D.N.J.). A settlement in this massive securities fraud class action was reached in late March 2003. The class portion of the settlement amounts to over $500 million in cash, stock and warrants and ranks as the second largest securities class action settlement ever completed. Cohen Milstein represented one of the co-lead plaintiffs in this action, a private mutual fund.

- *Nate Pease, et al. v. Jasper Wyman & Son, Inc., et al*., Civil Action No. 00-015 (Knox County Superior Court, Me.). In 2004, a state court jury from Maine found three blueberry processing companies liable for participating in a four-year price-fixing and non-solicitation conspiracy that artificially lowered the prices defendants paid to approximately 800 growers for wild blueberries. The jury ordered defendants Cherryfield Foods, Inc., Jasper Wyman & Son, Inc., and Allen's Blueberry Freezer, Inc. to pay $18.68 million in damages, the amount which the growers would have been paid absent the defendants' conspiracy. After a mandatory trebling of this damage figure under Maine antitrust law, the total amount of the verdict for the plaintiffs is just over $56 million. The Firm served as co-lead counsel.

- *In re StarLink Corn Products, Liability Litigation*, MDL No. 1403. (N.D. Ill.). Cohen Milstein successfully represented U.S. corn farmers in a national class action against Aventis CropScience USA Holding and Garst Seed Company, the manufacturer and primary distributor of StarLink corn seeds. StarLink is a genetically modified corn variety that the United States government permitted for sale as animal feed and for industrial purposes, but never approved for human consumption. However, StarLink was found in corn products sold in grocery stores across the country and was traced to widespread contamination of the U.S. commodity corn supply. The Firm, as co-lead counsel, achieved a final settlement providing more than $110 million for U.S. corn farmers, which was approved by a federal district court in April 2003. This settlement was the first successful resolution of tort claims brought by farmers against the manufacturers of genetically modified seeds.

- 8 -
DECLARATION OF ANDREW FRIEDMAN IN SUPP. OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 15-MD-02617-LHK

- *Snyder v. Nationwide Mutual Insurance Company*, No. 97/0633 (Sup. Ct. N.Y. Onondaga Cty.). Cohen Milstein served as one of plaintiffs' principal counsel in this case on behalf of persons who held life insurance policies issued by Nationwide through its captive agency force. The action alleged consumer fraud and misrepresentations. Plaintiffs obtained a settlement valued at more than $85 million. The judge praised the efforts of Cohen Milstein and its co-counsel for having done "a very, very good job for all the people." He complimented "not only the manner" in which the result was arrived at, but also the "time … in which it was done."

- *Oncology & Radiation Associates, P.A. v. Bristol Myers Squibb Co., et al.*, No. 1:01CV02313 (D.D.C.). Cohen Milstein has been co-lead counsel in this case since its inception in 2001. Plaintiffs alleged that Bristol-Myers Squibb unlawfully monopolized the United States market for paclitaxel, a cancer drug discovered and developed by the United States government, which Bristol sells under the brand name Taxol. Bristol's scheme included a conspiracy with American BioScience, Inc., a generic manufacturer, to block generic competition. Cohen Milstein's investigation and prosecution of this litigation on behalf of direct purchasers of Taxol led to a settlement of $65,815,000 that was finally approved by U.S. District Judge Emmet G. Sullivan on August 14, 2003 and preceded numerous Taxol-related litigations brought by the Federal Trade Commission and State Attorneys General offices.

- *Kruman v. Christie's International PLC, et al.*, Docket No. 01-7309. A $40 million settlement on behalf of all persons who bought or sold items through Christie's or Sotheby's auction houses in non-internet actions was approved in this action. Cohen Milstein served as one of three leading counsel on behalf of foreign plaintiffs. The Court noted that approval of the settlement was particularly appropriate, given the significant obstacles that faced plaintiffs and plaintiffs' counsel in the litigation. The settlement marked the first time that claims on behalf of foreign plaintiffs under U.S. antitrust laws have been resolved in a U.S. court, a milestone in U.S. antitrust jurisprudence.

- *Roberts v. Texaco, Inc.*, 94-Civ. 2015 (S.D.N.Y.). Cohen Milstein represented a class of African-American employees in this landmark litigation that resulted in the then-largest race discrimination settlement in history ($176 million in cash, salary increases and equitable relief). The Court hailed the work of class counsel for, *inter alia,* "framing an imaginative settlement, that may well have important ameliorative impact not only at Texaco but in the corporate context as a whole …".

- *Trotter v. Perdue Farms, Inc.*, Case No. 99-893 (RRM) (JJF) (MPT), D. Del. This suit on behalf of hourly workers at Perdue's chicken processing facilities – which employ approximately 15,000 people – forced Perdue to pay employees for time spent "donning and doffing," that is, obtaining, putting on, sanitizing and removing protective equipment that they must use both for their own safety and to comply with USDA regulations for the safety of the food supply. The suit alleged that Perdue's practice of not counting donning and doffing time as hours worked violated the Fair Labor Standards Act and state law. In a separate settlement with the Department of Labor, Perdue agreed to change its pay practices. In addition, Perdue is required to issue retroactive credit under one of its retirement plans for "donning and doffing" work if the credit would improve employees' or former employees' eligibility for pension benefits. Cohen Milstein was co-lead counsel.

11. I am a *magna cum laude* 1980 graduate of Tufts University. I graduated from the George Washington University National Law Center with a J.D. in 1983. After working for the United States Patent and Trademark Office, I joined Cohen Milstein in 1985.

12. I am a Co-Chair of the Consumer Protection practice group and I along with the Firm, have had many notable achievements in consumer class actions. In the privacy and data breach area I, or my firm , have worked on the following matters:

- *In re The Home Depot, Inc. Customer Data Sec. Breach Litig.* (N.D. Ga.) (I am currently a member of the Plaintiffs' Steering Committee and head of the Expert Committee on the financial institution side of the data and privacy case).

- *In re Vizio, Inc. Consumer Privacy Litig.* (C.D. Cal.) (I am currently a member of the Executive Committee in this privacy case)

- *In re Heartland Payment Sys. Data Sec. Breach Litig.* (D.N.J.) (I was a Steering Committee member on financial institution side of data and privacy case)

- *In Re: Science Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.* (D.D.C.) (I played significant role in case involving data breach of medical and personal health information of 4.7 million former and active duty military personnel; case dismissed on standing grounds)

- *Landwher, et al. v. AOL, Inc.* (E.D. Va.) (Firm served as Co-Lead Counsel in nationwide class action involving violations of the Electronic Communications Privacy Act arising out of AOL's purposeful public release of search data of more than 650,000 members and users, resulted in $5 million settlement);

- *Nader v. Capital One Bank (USA), N.A.* (C.D. Cal.) (I served as one of principal counsel in litigation involving bank covertly recording outbound customer service calls, resulted in $3 million settlement);

- *In re Google Street View Elec. Comm'ns Litig.* (N.D. Cal.) (Firm serving as Co-Lead Counsel in ongoing litigation on behalf of a nationwide class regarding Google's intentional interception of electronic communications sent over open, non-secured wireless internet connections through its use of vehicles sent to capture images for its "Street View" technology without the knowledge or authorization of class members).

13. My leadership roles in other class actions have yielded significant recoveries on behalf of consumers. Among these cases are:

- *Khoday v. Symantec Corp.* (D. Minn.) (I was sole lead counsel in case which resulted in a $60 million settlement for consumers deceived by ecommerce sellers);

- *In re General Motors Dex-Cool Products Liab. Litig.* (S.D. Ill.) (I worked principally with Girard Gibbs, representing consumers with engine damage caused by defective factory-installed coolant leading to dollar-for-dollar reimbursement for each consumer up to $800);

- *Snyder v. Nationwide Mut. Ins., Co.* (Sup. Ct. NY Onondaga Cnty.) (I served as one of the principal counsel, obtaining $85 million for class of insureds);

- *Keithly v. Intelius, Inc.* (W.D. Wash.) (I served as co-lead counsel, reaching settlements making $12 million in cash and $3.5 million in vouchers available to the class for deceptively enrolling consumers in a subscription-based service);

- *Baird v. Thompson Consumer Electronics* (Cir. Ct. Madison Cnty., IL) (I served as one of two Co-Lead Counsel, reached agreement that made up to $100 million available for persons who paid for unreimbursed repairs to televisions).

- *In re Vonage Mtkg. And Sales Practices Litig.* (D. N.J.) (I acted as co-lead counsel representing telecommunications subscribers alleging deceptive advertising and account management practices, resulting in $4.75 million settlement)

- *Ferrington v. McAfee, Inc.* (W.D. Wash.) (I was lead counsel in this Court alleging the collection of unauthorized monthly credit and debit charges as the result of post-transaction marketing and which resulted in settlement offering most class members virtually 100% cash refunds for those who made claims;

- *In re iPod Cases* (Cal. Super. Ct., San Mateo County) (I represented iPod purchasers who alleged material misrepresentations and omissions about the batter life of the iPods. I, along with other principal counsel negotiated a settlement conservatively valued at $15 million and which provided payments, extended warranties, battery replacements and store credits to the Class)

14. In addition to my work in consumer class actions, I have litigated numerous securities class actions. In *In re Globalstar Sec. Litig.* (S.D.N.Y.), for example, I served as one of lead trial counsel at the trial of a certified class action. Near the end of the second week of trial, a cash settlement of $20 million was reached for the benefit of the certified class. In approving the settlement, Judge P. Kevin Castel was highly complementary of plaintiffs' counsel, calling me and others "top trial lawyers …[who were] exceptionally fine in their presentation of the evidence."

15. I, along with other Plaintiffs' Lead Counsel, are committed to continuing to lead this case on behalf of the Classes enumerated in Plaintiffs' Motion for Class Certification.

- 11 -
DECLARATION OF ANDREW FRIEDMAN IN SUPP. OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 15-MD-02617-LHK

1   I declare under penalty of perjury under the laws of the United States of America that the
2   foregoing is true and correct.  Executed this 10th day of March, 2017, in Washington, D.C.


            By:   /s/ *Andrew N. Friedman*
                  Andrew N. Friedman