Craig A. Hoover, SBN 113965
E. Desmond Hogan (admitted *pro hac vice*)
Peter R. Bisio (admitted *pro hac vice*)
Michelle A. Kisloff (admitted *pro hac vice*)
Allison M. Holt (admitted *pro hac vice*)
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, NW
Washington, DC 20004
Tel:  (202) 637-5600
Fax:  (202) 637-5910
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com
peter.bisio@hoganlovells.com
michelle.kisloff@hoganlovells.com
allison.holt@hoganlovells.com

Michael M. Maddigan,  SBN 163450
**HOGAN LOVELLS US LLP**
1999 Avenue of the Stars,  Suite 1400
Los Angeles, CA 90067
Tel: (310) 785-4600
Fax: (310) 785-4601
michael.maddigan@hoganlovells.com

*Attorneys for Certain Anthem and Non-Anthem Defendants*
Additional Defendants and Defendants' Counsel Listed on
Signature Page

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| IN RE ANTHEM, INC. DATA BREACH LITIGATION | Case No.  5:15-MD-02617-LHK |
| | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| | The Honorable Lucy H. Koh |
| | Date:            June 22 and/or 29, 2017<br>Time:            1:30 p.m.<br>Courtroom:    8, 4th Floor |

REDACTED VERSION OF DOCUMENT TO BE SEALED

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................1

FACTUAL BACKGROUND ...............................................................................3

ARGUMENT .......................................................................................................7

I.    PLAINTIFFS FAIL TO SATISFY THE COMMONALITY REQUIREMENT. ................7

      A.    The Questions Regarding The Anthem Defendants Are Not Common. .................7

      B.    The Questions Regarding The Non-Anthem Defendants Are Not
            Common. ....................................................................................................9

II.   PLAINTIFFS FAIL TO SHOW THE PROPOSED CLASS
      REPRESENTATIVES' CLAIMS ARE TYPICAL. ...........................................10

      A.    All Of The Proposed Class Representatives Are Subject to Unique
            Defenses. ...................................................................................................10

      B.    The Claims Of The Proposed California Contract Class Representatives
            Do Not Fairly Encompass The Claims of Putative Class Members. ......................12

      C.    The Non-Anthem Subclass Representatives' Claims Are Not Typical For
            Additional Reasons. ..................................................................................13

III.  PLAINTIFFS LACK STANDING TO ASSERT CLAIMS AGAINST CERTAIN
      NON-ANTHEM DEFENDANTS. ....................................................................15

IV.   CERTAIN CALIFORNIA NAMED PLAINTIFFS ARE NOT ADEQUATE. .................16

V.    PLAINTIFFS CANNOT CERTIFY CLASSES UNDER RULE 23(B)(2). ......................17

      A.    The Anthem Injunctive Classes Cannot Be Certified Under Rule 23(b)(2). ..........17

      B.    The Non-Anthem Injunctive Class Cannot Be Certified Under Rule
            23(b)(2). ....................................................................................................19

VI.   INDIVIDUAL ISSUES PREDOMINATE BECAUSE PLAINTIFFS CANNOT
      PROVE DEFENDANTS CAUSED THEM INJURY ON A CLASSWIDE
      BASIS. ........................................................................................................20

      A.    Out-Of-Pocket Losses. ..............................................................................21

      B.    Benefit of the Bargain. ..............................................................................23

      C.    Loss of Value of PII. .................................................................................28

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW

VII.   INDIVIDUAL ISSUES PREDOMINATE FOR ADDITIONAL REASONS ................... 30

    A.   Individual Issues Predominate Regarding The California Breach of Contract Claims Because The Court Would Have To Review Individual Contracts. ...................................................................................... 31

    B.   The California UCL Claim Raises Numerous Individualized Issues. .................... 33

    C.   The New York GBL § 349 Claim Raises Numerous Individualized Issues. .......... 37

VIII.  PLAINTIFFS' PROPOSED CLASSES ARE OVERBROAD. ........................................ 39

IX.   PLAINTIFFS FAIL TO SATISFY THE SUPERIORITY REQUIREMENT. ................... 40

CONCLUSION ................................................................................................................. 40

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Abdale v. North Shore-Long Island Jewish Health Sys., Inc.*,
    41 N.Y.S. 3d 448 (N.Y. Sup. Ct. 2016) ............................................................. 21

*Ackerman v. Coca-Cola Co.*,
    No. 09-cv-395-DLI-RML, 2013 WL 7044866 (E.D.N.Y. July 18, 2013) ..................... 19, 38

*In re Adobe Sys., Inc. Privacy Litig.*,
    66 F. Supp. 3d 1197 (N.D. Cal. 2014) ............................................................. 6, 15

*Aho v. AmeriCredit Fin. Servs., Inc.*,
    277 F.R.D. 609 (S.D. Cal. 2011) ....................................................................... 38

*Akaosugi v. Benihana Nat. Corp.*,
    No. 11-01272-WHA, 2011 WL 5444265 (N.D. Cal. Nov. 9, 2011) ....................................... 16

*Arthur Young & Co. v. United States*,
    549 F.2d 686 (9th Cir. 1977) ............................................................................ 39

*Bates v. Bankers Life & Cas. Co.*,
    993 F. Supp. 2d 1318 (D. Or. 2014) .................................................................... 13

*Blough v. Shea Homes, Inc.*,
    No. 12-cv-01493-RSM, 2014 WL 3694231 (W.D. Wash. July 23, 2014) ............................ 28

*Bond v. Marriott Int'l, Inc.*,
    296 F.R.D. 403 (D. Md. 2014) ........................................................................... 12

*Brown v. Am. Airlines, Inc.*,
    285 F.R.D. 546 (C.D. Cal. 2011) ....................................................................... 19

*Califano v. Yamasaki*,
    442 U.S. 682 (1979) ......................................................................................... 20

*Caronia v. Philip Morris USA, Inc.*,
    22 N.Y.3d 439 (2013) ....................................................................................... 18

*In re Carrier IQ, Inc.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) ............................................................... 14

*Castaneda v. Burger King Corp.*,
    264 F.R.D. 557 (N.D. Cal. 2009) ...................................................................... 20

*Chambliss v. CareFirst, Inc.*,
    189 F. Supp. 3d 564 (D. Md. 2016) ................................................................... 30

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW

*Circle Click Media LLC v. Regus Mgmt. Grp. LLC*,
  No. 12-cv-04000-SC, 2015 WL 6638939 (N.D. Cal. Oct. 30, 2016) .................................... 35

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013) .......................................................................................................... 20

*In re Comput. Memories Sec. Litig.*,
  111 F.R.D. 675 (N.D. Cal. 1986) ........................................................................................... 14

*Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*,
  4 Cal. App. 4th 963 (1992) ..................................................................................................... 18

*Corona v. Sony Pictures Entm't, Inc.*,
  No. 14-cv-09600-RGK, 2015 WL 3916744 (C.D. Cal. June 15, 2015) ................................ 18

*In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.*,
  Nos. 08-md-1988-DMS, 10-cv-0257-DMS, 2011 WL 6325877 (S.D. Cal. Dec. 16,
  2011) ....................................................................................................................................... 34

*In re Currency Conversion Fee Antitrust Litig.*,
  230 F.R.D. 303 (S.D.N.Y. 2004) .................................................................................11, 12, 37

*In re Dial Complete Mktg. & Sales Practices Litig.*,
  312 F.R.D. 36 (D.N.H. 2015) ................................................................................................. 24

*In re Eaton Vance Corp. Sec.. Litig.*,
  220 F.R.D. 162 (D. Mass. 2004) ............................................................................................ 15

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ........................................................................................9, 10, 23

*In re Empire Blue Cross & Blue Shield Customer Litig.*,
  622 N.Y.S.2d 843 (Sup. Ct. 1994), *aff'd sub nom. Minihane v. Weissman*, 640
  N.Y.S.2d 102 (1st Dep't 1996) ............................................................................................... 27

*Feinstein v. Firestone Tire & Rubber Co.*,
  535 F. Supp. 595 (S.D.N.Y. 1982) ......................................................................................... 17

*Fero v. Excellus Health Plan, Inc.*,
  No. 6:15-cv-06569-EAW, 2017 WL 713660 (W.D.N.Y. Feb. 22, 2017) .............................. 27

*Fogel v. Farmers Grp., Inc.*,
  160 Cal. App. 4th 1403 (2008) ............................................................................................... 26

*Gonzales v. Comcast Corp.*,
  No. 10-cv-01010-LJO-BAM, 2012 WL 10621 (E.D. Cal. Jan. 3, 2012) ............................... 19

*Gustafson v. BAC Home Loans Servicing, LP*,
  294 F.R.D. 529 (C.D. Cal. 2013) ........................................................................................... 25

*Hadjavi v. CVS Pharmacy, Inc.*,
   No. 10-cv-04886-SJO, 2011 WL 3240763 (C.D. Cal. July 25, 2011) ................................ 40

*Hangarter v. Provident Life & Acc. Ins. Co.*,
   373 F.3d 998 (9th Cir. 2004) ....................................................................................... 15

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
   293 F.R.D. 21 (D. Me. 2013) .................................................................................... 21, 23

*Herskowitz v. Apple, Inc.*,
   301 F.R.D. 460 (N.D. Cal. 2014) ......................................................................... *passim*

*Homampour v. Blue Shield of Cal. Life & Health Ins. Co.*,
   No. 15-cv-05003-WHO, 2016 WL 7406443 (N.D. Cal. Dec. 22, 2016) .............................. 16

*In re Home Depot, Inc., Customer Data Sec. Breach Litig.*,
   No. 14-md-2583-TWT, 2016 WL 2897520 (N.D. Ga. May 18, 2016) ................................ 6

*Hovenkotter v. Safeco Corp.*,
   No. 09-217-JLR, 2009 WL 6698629 (W.D. Wash. Aug. 3, 2009)....................................... 14

*Horwitz ex rel. Gilbert v. Bankers Life & Cas. Co.*,
   745 N.E.2d 591 (Ill. App. 2001) .................................................................................. 25

*In re Itel Sec. Litig.*,
   89 F.R.D. 104 (N.D. Cal. 1981) .................................................................................. 15

*Jermyn v. Best Buy Stores, L.P.*,
   256 F.R.D. 418 (S.D.N.Y. 2009) .................................................................................. 38

*Johnson v. Harley-Davidson Motor Co.*,
   285 F.R.D. 573 (E.D. Cal. 2012) .................................................................................. 34

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017) .................................................................................... 23

*Klein v. Empire Blue Cross & Blue Shield*,
   No. 93-civ-5187-JSM, 1998 WL 336633 (S.D.N.Y. June 23, 1998) .................................... 8

*Kline v. Dymatize Enters., LLC*,
   No. 15-cv-2348-AJB-RBB, 2016 WL 6026330 (S.D. Cal. Oct. 13, 2016) .......................... 20

*Kosta v. Del Monte Foods, Inc.*,
   308 F.R.D. 217 (N.D. Cal. 2015)................................................................................. 17

*Kunzelmann v. Wells Fargo Bank, N.A.*,
   No. 11-cv-81373-DMM, 2013 WL 139913 (S.D. Fla. Jan. 10, 2013) ................................ 25

*La Mar v. H & B Novelty & Loan Co.*,
   489 F.2d 461 (9th Cir. 1973)...................................................................................... 14

*Lane v. Wells Fargo Bank, N.A.*,
  No. 12-04026-WHA, 2013 WL 3187410 (N.D. Cal. June 21, 2013)................................... 14

*In re Lenovo Adware Litig.*,
  No. 15-md-2624-RMW, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016)............................. 11

*Lewallen v. Medtronic USA, Inc.*,
  No. 01-20395-RMW, 2002 WL 31300899 (N.D. Cal. Aug. 28, 2002)................................ 18

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
  523 U.S. 26 (1998)........................................................................................................ 48

*In re LinkedIn User Privacy Litig.*,
  No. 12-xc-03088-EJD, 2014 WL 1323713 (N.D. Cal. Mar. 28, 2014) ................................ 39

*In re LinkedIn User Privacy Litig.*,
  932 F. Supp. 2d 1089 (N.D. Cal. 2013) .............................................................................. 7

*Loeffler v. Target Corp.*,
  324 P.3d 50 (Cal. 2013) ............................................................................................... 26

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) .............................................................................. 30

*MacKay v. Superior Court of L.A. Cty.*,
  188 Cal. App. 4th 1427 (2010)................................................................................. 25, 26

*Mahon v. Ticor Title Ins. Co.*,
  683 F.3d 59 (2d Cir. 2012)............................................................................................ 16

*Martinez v. Brown*,
  No. 08-CV-565-BEN, 2011 WL 1130458 (S.D. Cal. Mar. 25, 2011)............................ 19, 20

*Mazur v. eBay Inc.*,
  257 F.R.D. 563 (N.D. Cal. 2009)................................................................................... 10

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ......................................................................................... 39

*In re Med. Capital Sec. Litig.*,
  No. SAML 10-2145-DOC, 2011 WL 5067208 (C.D. Cal. July 26, 2011) ........................... 32

*Miller v. Fuhu Inc.*,
  No. 2:14-cv-06119-CAS-AS, 2015 WL 7776794 (C.D. Cal. Dec. 1, 2015) ....................... 24

*Moore v. Apple Inc.*,
  309 F.R.D. 532 (N.D. Cal. 2015)............................................................................... *passim*

*Mund v. EMCC, Inc.*,
  259 F.R.D. 180 (D. Minn. 2009) ................................................................................... 32

*In re Myford Touch Consumer Litig.*,
  No. 13-cv-03072-EMC, 2016 WL 6873453 (N.D. Cal. Nov. 22, 2016) ........................ 11, 33

*Newman v. RCN Telecom Servs., Inc.*,
  238 F.R.D. 57 (S.D.N.Y. 2006) ........................................................................................ 37

*Nitsch v. Dreamworks Animation SKG Inc.*,
  315 F.R.D. 270 (N.D. Cal. 2016) ..................................................................................... 23

*Ono v. Head Racquet Sports USA, Inc.*,
  No. 13-cv-4222 FMO, 2016 WL 6647949 (C.D. Cal. Mar. 8, 2016) ................................. 34

*Orlander v. Staples, Inc.*,
  802 F.3d 289 (2d Cir. 2015) ............................................................................................ 38

*Oscar v. BMW of N. Am., LLC*,
  2012 WL 2359964 (S.D.N.Y. June 19, 2012) ............................................................. 37, 38

*Otto v. Abbott Labs. Inc.*,
  12-cv-01411-SVW-DTB, 2015 WL 9698992 (C.D. Cal., Sept. 29, 2015) .......................... 34

*Owens v. Kaiser Found. Health Plan, Inc.*,
  244 F.3d 708 (9th Cir. 2001) ........................................................................................... 17

*Pulaski & Middleman, LLC v. Google, Inc.*,
  802 F.3d 979 (9th Cir. 2015) ........................................................................................... 28

*Punian v. Gillette Co.*,
  No. 14-CV-05028-LHK, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) ........................ 9, 34

*Quezada v. Loan Ctr. of Calif., Inc.*,
  No. 08–CIV-00177 WBS KJM, 2009 WL 5113506 (E.D. Cal. Dec. 18, 2009) ................... 34

*Raffin v. Medicredit, Inc.*,
  No. CV 15-4912-GHK (PJWx), 2017 WL 131745 (C.D. Cal. Jan 3, 2017) ........................ 18

*Randolph v. J.M. Smucker Co.*,
  303 F.R.D. 679 (S.D. Fla. 2014) ....................................................................................... 24

*Rapp v. Green Tree Servicing, LLC.*,
  302 F.R.D. 505 (D. Minn. 2014) ............................................................................. 24, 25, 26

*In re Rezulin Prods. Liab. Litig.*,
  210 F.R.D. 61 (S.D.N.Y. 2002) ......................................................................................... 37

*In re Rhone-Poulen Rorer, Inc.*,
  51 F.3d 1293 (7th Cir. 1995) ............................................................................................ 39

*Ries v. Arizona Beverages USA LLC*,
  287 F.R.D. 523 (N.D. Cal. 2012) ...................................................................................... 19

Hogan Lovells US
LLP
Attorneys At Law

- vii -

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 15-MD-02617-LHK

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) ......................................................................... 19

*Schulken v. Washington Mut. Bank*,
   No. 09–CV–02708–LHK, 2012 WL 28099 (N.D. Cal. Jan. 5, 2012) .................................. 19

*Senne v. Kansas City Royals Baseball Corp.*,
   315 F.R.D. 523 (N.D. Cal. 2016)........................................................................ 14

*Shin v. Esurance Ins. Co.*,
   No. C8–5626 RBL, 2009 WL 688586 (W.D. Wash. Mar. 13, 2009).................................... 16

*Smith v. Triad of Alabama, LLC*,
   No. 1:14-CV-324-WKW, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017).............................. 21

*Solomon v. Bell Atl. Corp.*,
   777 N.Y.S.2d 50 (1st Dep't 2004) ................................................................. 37, 38

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   903 F. Supp. 2d 942 (S.D. Cal. 2012) ................................................................. 11

*In re St. Jude Med., Inc.*,
   425 F.3d 1116 (8th Cir. 2005) .................................................................... 18, 30

*In re Stec Inc. Secs. Litig.*,
   No. SACV 09–01304–JVS, 2012 WL 6965372 (C.D. Cal. Mar. 7, 2012)............................. 16

*Steinberg v. Nationwide Mut. Ins. Co.*,
   224 F.R.D. 67 (E.D.N.Y. 2004)......................................................................... 32

*Stollenwerk v. TriWest Healthcare Alliance*,
   No. 03-cv-0185, slip op. (D. Ariz. June 10, 2008) .............................................. 23

*M.D. ex rel. Stukenberg v. Perry*,
   675 F.3d 832 (5th Cir. 2012)........................................................................... 9

*Tait v. BSH Home Appliances Corp.*,
   289 F.R.D. 466 (C.D. Cal. 2012)....................................................................... 33

*Thomas v. Sprint Sols., Inc.*,
   No. C08–5119 TEH, 2010 WL 1263189 (N.D. Cal. Mar. 30, 2010) .................................. 14

*In re TJX Cos. Retail Sec. Breach Litig.*,
   246 F.RD. 389 (D. Mass. 2007) .................................................................. 19, 21

*Todd v. Temper-Sealy Int'l, Inc.*,
   No. 13-cv-04984-JST, 2016 WL 5746364 (N.D. Cal. Sept. 30, 2016) ............................. 40

*Tucker v. Pac. Bell Mobile Servs.*,
   208 Cal. App. 4th 201 (2012)........................................................................... 33

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW

- viii -

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 15-MD-02617-LHK

*Vaquero v. Ashley Furniture Indus., Inc.*,
    824 F.3d 1150 (9th Cir. 2016) ........................................................................ 21

*In re Vioxx Class Cases*,
    180 Cal. App. 4th 116 (2009) ......................................................................... 33

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................. 7, 17

*Webb v. Carter's Inc.*,
    272 F.R.D. 489 (C.D. Cal. 2011) ............................................................... 34, 39

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010) ....................................................................... 33

**STATUTES & REGULATIONS**

12 U.S.C. § 1843(k) ....................................................................................... 35

15 U.S.C. § 1012(b) ....................................................................................... 35

15 U.S.C. § 6801 ........................................................................................... 35

15 U.S.C. § 6805(a)(6) ................................................................................... 35

42 U.S.C. § 18031(e) ..................................................................................... 26

12 C.F.R. § 225.28 ........................................................................................ 35

16 C.F.R. § 313.3(k) ...................................................................................... 35

45 C.F.R. § 160.103 ........................................................................................ 8

45 C.F.R. § 160.306 ........................................................................................ 8

Cal. Code Regs. tit. 10 § 2220.58(b) ................................................................. 25

Cal. Code Regs. tit. 28 § 1300.50 *et seq.* ........................................................ 27

Cal. Gov't Code §§ 100500-05 ......................................................................... 26

Cal. Health & Safety Code §§ 1349-85 .............................................................. 27

Cal. Health & Safety Code § 1399.815(b) ........................................................... 26

Cal. Ins. Code § 10192.15(c) ........................................................................... 25

Cal. Welf. & Inst. Code § 14005.26 .............................................................. 26, 27

Cal. Welf. & Inst. Code § 15890.5 .................................................................... 26

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 15-MD-02617-LHK

**RULES**

Fed. R. Civ. P. 23.................................................................................................... *passim*

Fed. R. Civ. P. 65(d) ......................................................................................................... 19

## INTRODUCTION

In late January 2015, Anthem discovered that it had been attacked by an Advanced Persistent Threat ("APT") group that was later determined to have been sponsored by the Chinese government.  Using a previously unknown type of malware, this APT group stole information concerning approximately 78 million individuals.  Importantly, none of that stolen information has been found for sale anywhere in the world in the more than two years since the attack, and after more than a year of discovery, Plaintiffs have presented zero evidence to support their allegations that the stolen data was or ever will be used to commit identity theft to their detriment.  That same discovery has shown that many Plaintiffs were the victims of other data breaches and have personal information for sale on black markets for reasons unrelated to Anthem, such that any analysis into the cause of alleged identity theft necessarily would be highly individualized.

Plaintiffs ask this Court to certify an assortment of classes and subclasses stretching back in time to 2011 and earlier and including millions of individuals who had different types of information exfiltrated in the attack and coverage under disparate health benefit plans through 14 independent Blue Cross Blue Shield companies.  Courts consistently deny class certification in data breach cases because, among other things, individualized issues regarding causation and injury predominate and not all putative class members are similarly situated.  Defendants submit that based on the record evidence and applicable law, the same result should obtain here.

Plaintiffs have failed to satisfy the requirements for class certification as to each proposed class in multiple ways.  With respect to Rule 23(a), they have failed to identify common questions that will generate common answers because their proposed classes include individuals who are not similarly situated and assert claims against multiple Defendants spanning multiple years and changing data security standards.  Thus, whether and to what extent any Defendant had an obligation to provide data security or additional disclosures and whether any such obligations were violated would vary by time, putative class member, and Defendant.  Plaintiffs also have failed to satisfy the typicality requirement because discovery has shown that each named Plaintiff is subject to unique defenses and does not fairly represent the claims of the proposed classes.  Among other things, the personally identifying information ("PII") of numerous Plaintiffs has

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 15-MD-02617-LHK

Hogan Lovells US
LLP
ATTORNEYS AT LAW

1   been exposed through voluntary disclosures and prior breaches and is available for sale on black

2   markets as a result of those prior breaches.  In addition, Plaintiffs made decisions to enroll in

3   health plans based on factors such as cost and coverage, not data security.  Indeed, data security

4   promises were not part of many Plaintiffs' plans, and most Plaintiffs never read Defendants'

5   privacy policies or other statements regarding data security.  Further, the two Plaintiffs who seek

6   to represent classes against the Non-Anthem Defendants lack standing to sue all but two of them.

7   Finally, the Plaintiffs who seek to represent the California Contract Classes are inadequate

8   because they have a conflict of interest that has now led them to redefine and narrow the class to

9   exclude individuals whose contractual relationship with Anthem ended before 2014.

10          Plaintiffs also have failed to satisfy the requirements of Rule 23(b).  Plaintiffs' request for

11   certification under Rule 23(b)(2) fails because the relief sought is predominantly monetary in

12   nature and different putative class members are differently situated, such that if injunctive relief

13   were appropriate at all, the nature of the injunction would vary from member to member.  For

14   example, Plaintiffs seek an injunction requiring Anthem to provide class members with "five

15   years of fraud-prevention and detection services," Br. at 10, but their own expert opined that only

16   individuals who had their names, dates of birth ("DOBs"), and Social Security Numbers ("SSNs")

17   stolen need such protections, and many putative class members did not have those three data

18   elements exfiltrated.  Rule 23(b)(3) is not satisfied because, among other things, each of

19   Plaintiffs' claims and theories of causation and injury require individualized inquiries.  For

20   example, Plaintiffs assert that they can show Anthem allegedly caused benefit of the bargain

21   injury on a classwide basis, but their expert has not even opined that benefit of the bargain

22   damages were incurred; he has merely opined that he has a methodology he could use to

23   determine whether there was any such injury.  Further, not only is that methodology deficient for

24   multiple reasons, but Plaintiffs have no way of showing on a classwide basis which putative class

25   members actually paid premiums (a prerequisite to recovering benefit of the bargain damages) or

26   are barred from recovering benefit of the bargain damages by the filed-rate doctrine.

27          For these and the other reasons discussed below, Plaintiffs' sprawling motion is contrary

28   to controlling precedent and the record evidence and should be denied in its entirety.

**FACTUAL BACKGROUND**

In late January 2015, Anthem discovered that it was under attack by a sophisticated APT attacker that was exfiltrating information from Anthem's ███████████████████ ████████████████████████████████ ██████████████████████████████████ ███████████████ R11 (Killelea Depo. at 42-44, 85-87, 108-09, 145-47); R12 at 7; R13 (Hedges Depo. at 28-30, 33); R113 (Colton Decl. at 1).[1]

Anthem acted swiftly after discovering the attack and expelled the APT attacker within three days.  R14 at 5-6.  Anthem also worked quickly to share information about the attack with individuals, regulators, and the media, R2 (Friedberg Rep. at 24-25), as well as to offer two years of free identity protection and credit monitoring services through AllClear ID to all *potentially* impacted individuals, which exceeded what most other companies offer by a year.  *See* R15 (Nader 10/20/16 Depo. at 204).  Anthem's response earned praise from federal officials and industry experts, who described it as "swift, comprehensive, effective, and reasonable, especially given the elite status and sophistication of the Attacker." R2 (Friedberg Rep. at 4-5); *see* R17 at 1.

**Anthem Had Strong Information Security At The Time Of The Attack.**  Plaintiffs' allegations notwithstanding,[2] the record is clear:  at the time of the attack, Anthem had assembled a broad array of ████████████████████████████████████████████ ████████████████████████████████████████████

---

[1] Citations are to record evidence ("R") in Defendants' evidentiary submission in opposition to Plaintiffs' motion for class certification.

[2] Plaintiffs' selective citations to the record mischaracterize the underlying documents in many instances.  For example, Plaintiffs state that Anthem referred to PII as "our most valuable asset" and that Anthem aggregated PII to "optimize revenue."  Br. at 2.  These quotes are cherry picked fragments of full sentences taken from completely unrelated documents, drafted almost two years apart.  The first of these makes clear that Anthem compiled data to "***improve access to care and outcomes***," and in doing so sought to "[o]ptimize revenue consistent with the risk of the population served."  R12 at 4 (emphasis added); *see also* R18 (McIntyre Depo. at 27-30).  Plaintiffs questioned an Anthem witness about this document, who testified that "optimize revenue" referred to "understand[ing] costs and opportunities to manage those costs" such that "people are receiving the quality of the care at the right time, right provider."  R11 (Killelea Depo. at 171-73).  And the full quotation in the second document makes clear that Anthem recognized that "data is our most valuable asset ***and it is our duty to safeguard it***," R19 at 16 (emphasis added).  Indeed, this document, drafted by non-information security professionals, focuses on how data security "is Everyone's responsibility" at Anthem and articulates strategies for enhancing Anthem's strong security of customer data.  *Id.* at 16-26.

[REDACTED] *See* R3 (Savage Rep. at 4); R16 at 25.  Anthem also had recruited high-caliber professionals to staff the information security department, and dedicated increasing levels of funding to its program every year since at least 2013.  *See* R20 (Miller Depo. at 154); R21.  The strength of Anthem's information security program is demonstrated by the threats the company successfully thwarted.  [REDACTED] [REDACTED] R22 at 4; R23 at 2.  Independent third-party assessors and regulators, who performed in-depth assessments of Anthem's information security program both before and after the attack, also validated its strength.  As just one example, the National Association of Insurance Commissioners ("NAIC"), whose members are Anthem's insurance regulators, R24 at 1, conducted an enterprise-wide examination of Anthem "to assess Anthem's state of cybersecurity preparedness prior to the data breach," including an "in-depth review of the cybersecurity controls that were in place prior to the Data Breach." R14 at 1, 3.  NAIC concluded that "Anthem appeared to have taken ***reasonable measures*** prior to the Data Breach to protect its computer network and data," including the "implementation of cybersecurity technologies and procedures ***consistent with or exceeding those of a typical organization of its size and type***." *Id.* at 3 (emphases added).  NAIC thus closed its investigation without imposing any fines or penalties.

In addition, Anthem was the first health insurer to receive certification under the Health Information Trust Alliance ("HITRUST") Common Security Framework ("CSF")—the framework created for, and now predominant in, the health care industry.  Anthem selected its largest application system, [REDACTED] as the end application to be tested for purposes of the certification, R25 (Mellinger Depo. at 223); [REDACTED] [REDACTED] [REDACTED] R3 (Savage Rep. at 12). [REDACTED] [REDACTED] R26 at 5, 16, 18.

**Anthem Was the Target of a State-Sponsored APT Attacker.**  Plaintiffs have not disputed that it was an APT sponsored by the Chinese government that attacked Anthem.  *See* R8

(Van Dyke Reply Rep. at 12-13); R9 (Strebe Rep. at 5).  That this attack was successful does not demonstrate that Anthem's data security was inadequate because State-sponsored APT attacks are close to unstoppable.  R27 (Mulvenon Depo. at 126-27).  Such attackers deploy sophisticated tools and doggedly pursue their goal of infiltrating organizations.  R28 at 1-2. ███████████ ████████████████████████████████████████████████████████████.  R3 (Savage Rep. at 27-29).  Importantly, APTs sponsored by the Chinese government do ***not*** steal information for the purpose of monetizing it.  Crowdstrike, which NAIC retained as a part of its regulatory investigation into the Anthem cyberattack, found that "attacks associated with this foreign government have ***not*** resulted in PII being transferred to non-state actors."  R14 at 5 (emphasis added).  Instead, information stolen by Chinese government-sponsored APTs is taken solely for counterintelligence purposes.  R4 (Mulvenon Rep. at 33).  Selling it or using it for any other objective would dilute its intelligence value.  R27 (Mulvenon Depo. at 100).  There is ***no evidence*** the Chinese government has ***ever*** taken ***any*** of the information it has stolen and used it for identity theft, R4 (Mulvenon Rep. at 32), and Plaintiffs have ***no evidence*** to support any speculation the Chinese government will act differently here.  Plaintiffs' repeated allegations that they were victims of identity theft or fraud as a result of the Anthem cyberattack are thus wholly unsupported by the record.  *See, e.g.*, FAC ¶¶ 14-16, 19-20, 22-25, 27-28, 30, 33-34, 37, 41-42, 46-50 (alleging Plaintiffs had to address fraud "[a]s a result of the Anthem breach").

**There Is No Evidence Linking Identity Theft To The Anthem Cyberattack.**  Given the identity of the attacker, it is no surprise that ***none*** of the information stolen from Anthem has been found for sale online or otherwise.  Plaintiffs' experts did not even try to find the information on the Deep or Dark Web, but Anthem's experts spent significant time trying to locate it and they could not.  R4 (Mulvenon Rep. at 27-32); R5 (Berglas Rep. at 12-13).  Neither DGI, Inc.—a government contractor that serves U.S. intelligence agencies and maintains one of the largest databases of Dark Web sites—nor K2 Intelligence—a leading cybercrime investigation firm—found any evidence of the Anthem data online.  R4 (Mulvenon Rep. at 27-32); R5 (Berglas Rep. at 6-8).  Nor have other cybersecurity firms.  And there is no reason to believe the Anthem data will be put up for sale in the future.  R4 (Mulvenon Rep. at 6).  Thus, this case is unlike other

1   cases in which information clearly was taken for monetary purposes and appeared for sale shortly

2   after the attack.  *See In re Home Depot, Inc.*, *Customer Data Sec. Breach Litig.*, 2016 WL

3   2897520, at *2 (N.D. Ga. May 18, 2016) (citing evidence of breached data online); *In re Adobe*

4   *Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1206 (N.D. Cal. 2014) (same).

5           That is not to say there is no information about Plaintiffs for sale on criminal sites on the

6   Web.  The evidence shows that there is—just not from the Anthem attack.  For example,

7

8

9

10

11

12

13

14                                   *Id.* at 39-42.[3]  The absence of any connection

15   between this data and the data taken from Anthem is illustrated by the fact

16

17                                   *Id.* at 7, 22-25.

18

19

20

21           **Anthem Has Continued To Improve Its Information Security.**  Anthem has continued

22   to improve its security posture since the cyberattack.  For example,

23

24

25   _____
     [3]

26

27

28                   R6 (Berglas Supp. Rep. at 11).  This is yet another route by which
     Plaintiffs' PII may have ended up on the Web or used by criminals.  *Id.* at 5-6.

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 15-MD-02617-LHK

*See* R3 (Savage Rep. at 64-83); R14 at 6.  In its 2015 examination, NAIC concluded that "Anthem's improvements" and "schedule of planned future improvements appeared to be reasonable efforts to secure the environment beyond the initial Data Breach remediation tasks."  R14 at 6.

## ARGUMENT

### I.   PLAINTIFFS FAIL TO SATISFY THE COMMONALITY REQUIREMENT.

Plaintiffs have not satisfied Rule 23(a)(2) because they have not identified common questions for any of the proposed classes that "will resolve an issue that is central to the validity of each one of the claims in one stroke" and "generate common *answers* apt to drive the resolution of the litigation."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

#### A.  Questions Regarding The Anthem Defendants' Conduct Are Not Common.

Plaintiffs suggest that whether Anthem's data security was adequate is a common question, Br. at 7, but that question cannot be resolved in one stroke across all of Plaintiffs' classes because of the varying claims, time periods, data elements, and security practices and tools implicated.  For example, Plaintiffs' proposed expert on benefit of the bargain injury testified that individuals "purchase[ ] a level of security" for the "period of time" they are enrolled in a health plan, whether that is "a month or a year," and that he was "not asked" to assess benefit of the bargain injury for individuals while they were "not paying" for their health plans.  R72 (Rossi Depo. at 297-98).  Thus, under Plaintiffs' theory, a putative class member can only suffer a benefit of the bargain injury during the time he or she is paying premiums.  *Cf. In re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d 1089, 1094 (N.D. Cal. 2013) (benefit of the bargain injury "could only have occurred" at "the time the parties entered into the contract").  Because Plaintiffs seek to certify Statewide California UCL Subclasses and a nationwide Federal Employee Class seeking benefit of the bargain damages back to 2011, along with a Statewide New York GBL Subclass seeking benefit of the bargain damages back to 2012, *see* Mot. at 2-4, 5; R72 (Rossi Depo. at 163), this means Plaintiffs will have to show that Anthem's data security was inadequate each year from 2011-2015.

Tellingly, whether Anthem's data security was adequate at the time of the cyberattack is

Hogan Lovells US LLP
Attorneys At Law

1  not the same question as whether it was adequate during earlier time periods in which premiums

2  were paid, because what is adequate changes over time in accordance with changing technology,

3  business practices, threats, and other factors.  *See* R3 (Savage Rep. at 5-6).  As the FTC has

4  explained, risks and vulnerabilities are "ever-changing," and cyber security assessment programs

5  must "be able to adjust to evolving security threats."  R74 at 8. ████████████████████████

6  ████████████████████████████████████  *See* R3 (Savage Rep. at 51-52).

7  Accordingly, whether Anthem's data security was adequate is not a common question that can be

8  resolved in one stroke.  It is a series of questions that requires different evidence for different time

9  periods and could have different answers for different putative class members enrolled at different

10  times.  *See Klein v. Empire Blue Cross & Blue Shield*, 1998 WL 336633, at *4 (S.D.N.Y. June

11  23, 1998) ("[T]he answer to the question whether the Treatment was experimental may be

12  different in different years between 1990 and 1996.").

13          Whether "Anthem's cybersecurity violated HIPPA [*sic*]," Br. at 7, also is not a common

14  question.  It is not central to the resolution of Plaintiffs' contract claims because those claims are

15  not premised on a violation of HIPAA; they are based on alleged obligations that "complement

16  (or go beyond) Anthem's preexisting legal duties."  Dkt. 524 at 22, 37.  It likewise is not central

17  to Plaintiffs' claims under the GBL or the fraud prong of the UCL, which are premised on alleged

18  omissions in Anthem's statements.  And it is relevant to Plaintiffs' unlawful and unfair UCL

19  claims only to the extent they are premised on a violation of HIPAA as opposed to other statutes.

20  In addition to not being central to all their claims, Plaintiffs' brief does not identify which

21  provision[s] of HIPAA Anthem allegedly violated classwide, and they cannot simply ask the

22  Court to assume a common question can be found somewhere in HIPAA's many granular

23  requirements.  Further, to the extent Plaintiffs claim Anthem did not comply with a HIPAA

24  requirement to safeguard information, the answer to the question may vary over time for the

25  reasons discussed above and could also turn on whether the information exfiltrated for a given

26  individual constituted individually identifiable health information subject to HIPAA's security

27  and privacy protections.  *See* 45 C.F.R. §§ 160.103, .306 (HIPAA protects information that (1)

28  relates to the "provision of health care to an individual" or "payment for the provision of health

1    care to an individual" *and* (2) "identifies the individual" or provides a reasonable basis to believe

2    that information can be used to identify the individual).  For all these reasons, whether Anthem

3    violated HIPAA will not drive resolution of any of the class claims.  *See Ellis v. Costco Wholesale*

4    *Corp.*, 657 F.3d 970, 983 (9th Cir. 2011) (no commonality where entire class not subject to illegal

5    practice); *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 838-44 (5th Cir. 2012).

6           The question of whether Anthem violated "its promises to its members," Br. at 7, also is

7    not a common question.  On its face, the question is wholly irrelevant to putative class members

8    asserting claims against Anthem who were never Anthem members and do not allege Anthem

9    made promises to them.  It also is irrelevant to the GBL and UCL fraud claims asserted by

10   Anthem members, which are predicated on omissions rather than affirmative misrepresentations.

11   *Id.* at 16, 18-19.  And it has no application to Anthem members to whom Anthem did not make

12   enforceable promises.  As demonstrated in Section VII.A., Anthem did not promise data security

13   to some putative class members, and in other instances, the member cannot enforce the contract in

14   which any promise was made.  Thus, whether Anthem violated its promises is not a common

15   question with a common answer across the proposed classes.  *See Ellis*, 657 F.3d at 983.

16        **B.  Questions Regarding The Non-Anthem Defendants' Conduct Are Not Common.**

17          Plaintiffs also fail to satisfy the commonality requirement with respect to the two

18   Statewide California Non-Anthem Customer Subclasses they seek to certify.  The question of

19   whether the Non-Anthem Defendants "informed their members that [their] PII would not be

20   protected when stored" in ███████ Br. at 7, will not generate common answers central to the

21   validity of Plaintiffs' UCL claims against all of the Non-Anthem Defendants in one stroke.  A

22   Non-Anthem Defendant's alleged failure to inform could only give rise to a UCL claim to the

23   extent it had an obligation to inform its members, and the existence of any such obligation turns

24   on each Non-Anthem Defendant's varied relationships and interactions with its members, its

25   knowledge of Anthem's data security practices, and when it acquired that knowledge.  *See infra*

26   Section VII.B.2; *Punian v. Gillette Co.*, 2016 WL 1029607, *9-11 (N.D. Cal. Mar. 15, 2016).

27          Similarly, the question of whether the Non-Anthem Defendants ensured "Anthem would

28   adequately safeguard their members' PII," Br. at 7, raises as to all the proposed classes against

Non-Anthem Defendants the issue of whether any particular Non-Anthem Defendant had such an obligation and whether that obligation changed over time based on what it knew.  The need to inquire into what each Non-Anthem Defendant knew and when it knew it, *see infra* Section VII.B.2., means commonality is not satisfied.  Further, several proposed classes are unlimited in time and another stretches back four years; thus, both purportedly common questions would need to be answered with respect to each Non-Anthem Defendant at multiple points in time.[4]

## II.   PLAINTIFFS FAIL TO SHOW THE PROPOSED CLASS REPRESENTATIVES' CLAIMS ARE TYPICAL.

Plaintiffs' motion also fails because they cannot demonstrate the class representatives' claims are typical of those of putative class members.  *See* Fed. R. Civ. P. 23(a)(3).

### A.   All Of The Proposed Class Representatives Are Subject to Unique Defenses.

None of the proposed representatives are typical because all of them are subject to "unique" defenses, as shown in Exhibit R55 and discussed below.  *Ellis*, 657 F.3d at 984 (citation omitted); *see also Mazur v. eBay Inc.*, 257 F.R.D. 563, 568-69 (N.D. Cal. 2009).

**1. Causation.**  Nearly all of the proposed class representatives are subject to unique defenses regarding causation of their alleged loss of value of PII and out-of-pocket losses.  For example, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* R5 (Berglas Rep. at 23-24); R69 at 5; R70.[5]  Thus, according to Plaintiffs' own expert, they do not need the credit protection that forms the basis of Plaintiffs' loss of value of PII injury theory.  *See* R8 (Van Dyke Reply Rep. at 3).  Most proposed class representatives also were subject to prior data breaches that exposed some of the same PII impacted by the Anthem cyberattack, undercutting the argument that the Anthem attack diminished the value of their PII and creating a risk of identity theft independent of Anthem.  *See* R5 (Berglas Rep. at 32-39 & Ex. 5 ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[4] In addition, because the statutes at issue under the UCL unlawful prong did not require any Non-Anthem Defendant to police Anthem with respect to personal information given by a member or a provider directly to Anthem, which was frequently the case with respect to the data exfiltrated here, *see infra* Section VII.B.5., it also would be necessary to determine for each putative class member how their information came to be in EDWard.

[5] Anthem originally admitted FEP Class Representative ▓▓▓▓▓ SSN was stolen, but subsequently determined it was not; Anthem's motion to withdraw its admission is pending. *See* Dkt. 742. BCBSA has not admitted Ifversen's SSN was stolen.

Hogan Lovells US LLP
Attorneys At Law

1     . Moreover, the record shows

2

3     *See*

4 R5 (Berglas Rep. at 6 & Exs. 6-9, 11, 13-14).

5

6     R30 at 7.  All these facts raise unique defenses that will require substantial time to litigate,

7 to the detriment of putative class members to whom they do not apply.

8     **2. Benefit of the Bargain.**  A number of proposed class representatives across all

9 proposed classes are barred from recovering benefit of the bargain damages by the filed-rate

10 doctrine defense, including Plaintiff Solomon, *see infra* Section VI.B.2., but some unnamed

11 putative class members (such as those covered under self-insured plans) would not be subject to

12 this defense.  A number of class representatives also are subject to the defense that they did not

13 pay anything for their health insurance and cannot recover benefit of the bargain damages under

14 the Court's prior order dismissing Plaintiff Onderdonk's claim for "Benefit of the Bargain

15 Losses" for failure to allege "she paid premiums or fees for health services."  *See* Dkt. 524 at 69.

16 For example,

17

18

19     *see also In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp.

20 2d 942, 966 (S.D. Cal. 2012) (no UCL restitution where plaintiffs "received the PSN services free

21 of cost" and thus "have not alleged 'lost money or profits'"); *In re Lenovo Adware Litig.*, 2016

22 WL 6277245, at *10 (N.D. Cal. Oct. 27, 2016) (no GBL claim where plaintiffs "d[id] not allege

23 that they were charged any fee in connection with the installation of [software]").

24     **3. UCL and GBL Omission.**  To prevail on an omission theory under the UCL's

25 fraudulent prong, a plaintiff must show "'that, had the omitted information been disclosed, one

26 would have been aware of it and behaved differently.'"  *In re Myford Touch Consumer Litig.,*

27 2016 WL 6873453, at *2 (N.D. Cal. Nov. 22, 2016) (citation omitted).  Similarly, the GBL

28 requires a plaintiff to "show that the defendant's 'material deceptive act' caused the injury."  *In re*

*Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 303, 310-11 (S.D.N.Y. 2004) (citation omitted).  Here, none of the proposed UCL and GBL class representatives can show both that (i) they would have been aware of any additional disclosure and (ii) the omission caused them to enroll in their plans.

**B.  The Claims Of The Proposed California Contract Class Representatives Do Not Fairly Encompass The Claims of Putative Class Members.**

In addition to being subject to unique defenses, the four proposed representatives of the California Contract Classes are not typical because they "did not participate in all of the plans at issue and thus their claims may be different from those of proposed class members whose [benefits] are subject to different terms under different plans."  *Bond v. Marriott Int'l, Inc.*, 296 F.R.D. 403, 408 (D. Md. 2014).  The proposed representatives were covered under small fully-insured group plans, R77; R78, an individual Medicare supplement policy, R79; Dkt. 720-4 (Solomon Decl. ¶ 3), and a self-insured Administrative Services Only ("ASO") group plan, R80.

---

[6]

At most, the declarations highlight the individualized factual issues that will have to be litigated regarding reliance and materiality.

None were enrolled in 2014-2015 in a Major Medical Risk plan, a Medi-Cal plan, an individual Covered California plan, a coverage replacement plan, a vision plan or a dental plan.  Because each of these latter plans raises its own set of issues and unique defenses, Plaintiffs cannot demonstrate typicality. *Bond*, 296 F.R.D. at 408.  Plaintiffs place great weight on the assertion that all putative class members' "insurance contracts incorporated Anthem's uniform privacy policies," Br. at 9, but it is undisputed that vision and dental plans contain different privacy provisions than those in the proposed representatives' plans or none at all.  *See* Dkt. 722-1 (Broad Decl. ¶ 13); Dkt. 722-2 (summary chart at 26-27).  Moreover, to the extent a data security provision is part of any Medi-Cal plan, several contain a no-third-party-beneficiary clause that would preclude enforcement by putative class members.  R100.  Similarly, Plaintiffs' tautological assertion that Plaintiff Kawai is "typical of other class members with similar ASO agreements" is contrary to the record.  Br. at 9.  ██████████████████████████████████ ██████████████████████████████████████████ R80; R81, which the Court reviewed at the motion to dismiss stage.  Dkt. 524 at 33-34.  As discussed in Section VII.A., other ASO agreements have no-third-party-beneficiary clauses, *see* R87, the template BAA also has a no-third-party-beneficiary clause, R90, and some ASO agreements describe the BAA as a "separate" agreement.  R86; R89.  Thus, the evidence shows that "absent putative plaintiffs . . . did not purchase identical [plans] . . . , but rather purchased policies with different" provisions that raise different issues, and the proposed representatives of the California Contract Classes' claims fail to satisfy the typicality requirement because they do not fairly encompass the claims of putative class members.  *Bates v. Bankers Life & Cas. Co.*, 993 F. Supp. 2d 1318, 1341 (D. Or. 2014); *see also Lane v. Wells Fargo Bank, N.A.*, 2013 WL 3187410, at *7 (N.D. Cal. June 21, 2013).

### C.  The Non-Anthem Subclass Representatives' Claims Are Not Typical For Additional Reasons.

In addition to not being typical because they are subject to unique defenses, Plaintiffs Brisko and Blanchard's UCL claims are not typical of the proposed California Non-Anthem Customer subclasses for an additional reason:  they were only covered under health plans offered or administered by Blue Shield of California ("Blue Shield") and Health Care Service

Corporation ("HCSC"), respectively; they have no connection to any other Non-Anthem Defendant.  FAC ¶¶ 19-20; Br. at 8.  Absent any connection, Brisko and Blanchard have no basis to assert UCL claims against other Non-Anthem Defendants because nothing those other Non-Anthem Defendants did or did not do could have caused them any injury.  *See Thomas v. Sprint Sols., Inc.*, 2010 WL 1263189, at *4 (N.D. Cal. Mar. 30, 2010) (dismissing UCL claim for failure to allege defendant's nondisclosure was immediate cause of injury).  Thus, they lack typicality with respect to the UCL claims against those other Non-Anthem Defendants.  *See La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 462, 465 (9th Cir. 1973) (no typicality because plaintiff "cannot represent those having causes of action against other defendants against whom the plaintiff has no cause of action and from whose hands he suffered no injury").

Plaintiffs argue that Brisko and Blanchard's claims are "typical of all Non-Anthem customers in California impacted by the Breach" because "Anthem acquired their PII as a result of the Inter-Plan Program in which all Non-Anthem Defendants participated" and therefore are "'juridically related' such that customers of one Non-Anthem Defendant are typical of customers of other Non-Anthem Defendants."  Br. at 8.  But Plaintiffs have no evidence to support the claim that Non-Anthem Defendants provided to Anthem the PII that was exfiltrated in the attack, and the juridically-related exception does not apply because the Inter-Plan Program did not require any Non-Anthem Defendant to violate the UCL by omitting information, violating statutes, or engaging in unfair practices.  *Cf. In re Comput. Memories Sec. Litig.*, 111 F.R.D. 675, 680 (N.D. Cal. 1986) (exception applies where defendants "bound to a common course of conduct" through an agreement).  *Senne v. Kansas City Royals Baseball Corp.* is not to the contrary; the claims in that case challenged conduct that was required by the agreements among the defendants.  315 F.R.D. 523, 568 (N.D. Cal. 2016) (alleging wage and hour violations based on uniform rules and agreements that bound defendants "to a common course of conduct with respect to the compensation of minor league players").  Because those are not the circumstances here, Brisko and Blanchard are not typical.  *See, e.g., Hovenkotter v. Safeco Corp.*, 2009 WL 6698629, at *4 (W.D. Wash. Aug. 3, 2009) (rejecting argument that "related companies may be sued by one plaintiff having claims against only one company based on a theory that the defendants are all

engaged in the same activity"); *In re Eaton Vance Corp. Sec.. Litig.,* 220 F.R.D. 162, 171 (D. Mass. 2004) (no typicality in securities action where plaintiffs had not invested in two of the funds and fact that funds were managed by the same individuals, invested in the same loans, and had the same signatories was of "marginal relevance"); *cf. In re Itel Sec. Litig.*, 89 F.R.D. 104, 119 (N.D. Cal. 1981).

## III.   PLAINTIFFS LACK STANDING TO ASSERT CLAIMS AGAINST CERTAIN NON-ANTHEM DEFENDANTS.

Plaintiffs' motion to certify UCL classes against the Non-Anthem Defendants also should be denied because Plaintiffs Brisko and Blanchard lack Article III standing to assert UCL claims against any Non-Anthem Defendants other than Blue Shield and HCSC, respectively.[7]  Article III requires that "a plaintiff must have suffered injury-in-fact that is fairly traceable to the actions of the defendant, and that his injury is likely to be redressed by a favorable decision," *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1064 (N.D. Cal. 2015), and a plaintiff cannot proceed on behalf of a class if she cannot demonstrate Article III standing.  *See In re Adobe*, 66 F. Supp. 3d at 1211. Brisko and Blanchard's alleged injuries are not "fairly traceable to the actions of" any Non-Anthem Defendants (other than possibly Blue Shield and HCSC, respectively) because they have no connection whatsoever with any of those Non-Anthem Defendants.  *See* FAC ¶¶ 19-20; R110-R112; Dkts. 493, 494 (Brisko and Blanchard covered under Blue Shield and HCSC plans).  Thus, they lack standing to assert UCL claims against those Non-Anthem Defendants, and their motion to certify UCL classes against those Defendants should be denied.  *See Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1022 (9th Cir. 2004) (no standing where plaintiff "has no contractual relationship with Defendant" and "is not personally threatened by their conduct").[8]

---

[7] The Court denied the Non-Anthem Defendants' motion to dismiss for lack of standing, but made clear its decision was "not meant to give Plaintiffs a free pass on standing."  Dkt. 524 at 12. Instead, the Court stated that "standing questions may be deferred until class certification in cases like this," and that "if standing concerns remain at class certification, the Non-Anthem Defendants are invited to re-raise them before this Court."  *Id.*

[8] Even as to Blue Shield and HCSC, every Plaintiff must have a connection with each individual Defendant to have standing to sue that particular Defendant.  But Plaintiffs seek certification of two omnibus subclasses (one for injunctive relief and one for damages) of all residents of California whose data was compromised by the cyberattack and who were "enrolled in a health plan with *a* Non-Anthem BCBS Defendant." Mot. at 3 (emphasis added).  Plaintiffs' proposed class definitions do not address the fundamental question of which Plaintiffs are suing which Defendants, and their Motion also should be denied for this additional reason.

Further, Plaintiffs' motion to certify UCL classes against all of the Non-Anthem Defendants should be denied regardless of whether the Court finds typicality satisfied based on the juridically-related exception.  "[W]hether or not Rule 23 would permit a plaintiff to represent a class against non-injurious defendants cannot affect the plaintiff's Article III standing to sue the non-injurious defendants.  A federal rule cannot alter a constitutional requirement." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012).  Indeed, "no district court in the Ninth Circuit has found a plaintiff to have established Article III standing based on a juridical link between defendants." *Akaosugi v. Benihana Nat. Corp.*, 2011 WL 5444265, at *2 (N.D. Cal. Nov. 9, 2011); *see also Homampour v. Blue Shield of Cal. Life & Health Ins. Co.*, 2016 WL 7406443, at *7 (N.D. Cal. Dec. 22, 2016); *Shin v. Esurance Ins. Co.*, 2009 WL 688586, at *5 (W.D. Wash. Mar. 13, 2009) (no authority "binds the Court to treat an alleged juridical link as a trump card in the game of applying the Constitution").  There is no basis for the Court to do so here.

## IV.   CERTAIN CALIFORNIA NAMED PLAINTIFFS ARE NOT ADEQUATE.

Contrary to Plaintiffs' assertion, *see* Br. at 9, California Plaintiffs Carter, Coonce, Solomon, and Kawai do not "fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), because they "refuse to assert certain claims that may be available and advantageous to the absent putative class members." *In re Stec Inc. Secs. Litig.*, 2012 WL 6965372, at *6 (C.D. Cal. Mar. 7, 2012).  These four Plaintiffs are among the proposed class representatives for the Statewide California Class and the Statewide California Anthem UCL Restitution Subclass, which assert UCL claims against Anthem.  *See* Mot. at 2-3.  The former is comprised of all California residents impacted by the Anthem cyberattack, without any time limitation.  *Id.* at 2.  The latter includes all California residents impacted by the cyberattack "who were enrolled in an Anthem health plan for which Anthem was paid during the four-year statute of limitations." *Id.* at 2-3.  At the same time, these four Plaintiffs also seek to represent classes asserting California contract claims against Anthem on behalf of individuals enrolled in Anthem health plans in 2014 and 2015.  *Id.* at 4-5.  This temporal limitation—which appeared for the first time in the FAC— means that Carter, Coonce, Solomon, and Kawai are not asserting breach of contract claims on behalf of unnamed putative class members who were only enrolled in Anthem health plans in

earlier years, even though they will be precluded from asserting these abandoned claims in the future.  *See Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (res judicata bars claims that could have been raised in prior action).  The Court should reject Carter, Coonce, Solomon, and Kawai's "essentially cosmetic" attempt to strengthen their California contract claims at the expense of putative class members who did not have Anthem plans in 2014 or 2015.  *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 606 (S.D.N.Y. 1982).

## V.     PLAINTIFFS CANNOT CERTIFY CLASSES UNDER RULE 23(B)(2).

Plaintiffs' request to certify UCL and GBL classes under Rule 23(b)(2) should be denied because Plaintiffs have failed to satisfy the threshold requirements of Rule 23(a), for all the reasons discussed above.  *See Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217, 231 (N.D. Cal. 2015).  Plaintiffs' request for 23(b)(2) certification also fails for additional reasons.

### A.   The Anthem Injunctive Classes Cannot Be Certified Under Rule 23(b)(2).

Notwithstanding NAIC's conclusions regarding the state of Anthem's data security at the time of the attack and the additional enhancements Anthem has made, as well as the free credit monitoring Anthem provided, Plaintiffs seek to certify classes for injunctive relief against Anthem under Rule 23(b)(2).  Plaintiffs' request should be denied on two independent grounds.

**1. Putative Class Members Are Differently Situated.**  Plaintiffs' request to certify 23(b)(2) classes against Anthem fails because "the nature of th[e] injunction would differ depending on the specific facts giving rise to the individual customer's claim." *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 481 (N.D. Cal. 2014) (denying 23(b)(2) certification).  Rule 23(b)(2) "does not authorize class certification when each individual class member would be entitled to a *different* injunction . . . against the defendant." *Wal-Mart*, 564 U.S. at 360 (emphasis added). But that is precisely what the injunctive relief Plaintiffs seek here would require.  To the extent injunctive relief requiring Anthem to protect information is appropriate at all, different putative class members would be entitled to different levels of protection because they have different information in Anthem's systems.  *See* R113 at 3.  An injunction requiring heightened security measures for all putative class members would not be appropriate.  Similarly, to the extent injunctive relief requiring Anthem to provide credit monitoring were appropriate, not all putative

1  class members would be entitled to the same monitoring because not all putative class members

2  had the same data elements exfiltrated.  Mr. Van Dyke conceded as much when he opined that it

3  is individuals whose name, SSN, and DOB were exfiltrated who should take his "minimum

4  recommended fraud prevent steps."  R8 (Van Dyke Reply Rep. at 19).  ████████

5  ████████████████████████████████████████████████████████████████

6  █, and therefore they would not be entitled to the same relief under Plaintiffs' theory.  Thus,

7  Plaintiffs' proposed 23(b)(2) class cannot be certified.  *Herskowitz*, 301 F.R.D. at 481; *Lewallen*

8  *v. Medtronic USA, Inc.*, 2002 WL 31300899, at *2-3 (N.D. Cal. Aug. 28, 2002) (the "requisite

9  cohesiveness is lacking where individual issues predominate").[9]

10    **2. Plaintiffs Primarily Seek Monetary Relief.**  Certifying Plaintiffs' proposed 23(b)(2)

11  classes against Anthem also would be improper because the primary relief Plaintiffs seek through

12  the injunction is "practically indistinguishable from an order that [Anthem] pay Plaintiffs

13  money."  *Herskowitz*,301 F.R.D. at 482.[10]  Plaintiffs seek to require Anthem to further fortify its

14  security controls and at the same time provide "at least five years" of "fraud-prevention and

15  detection services" to putative class members.  Br. at 10.  This requested relief is simply an

16  extension of the damages Mr. Van Dyke proposed based on putative class members purchasing

17  identity protection services for five years at a cost of "between $9 to $20 a month."  R7 (Van

18  Dyke Rep. at 32).  Requiring Anthem to pay for ongoing credit monitoring is no different than

19  requiring Anthem to pay damages based on the cost of such credit monitoring, and those costs are

20  individualized.  *See supra* Section V.A.1. & *infra* Section VI.C.  Courts regularly reject 23(b)(2)

21

22  [9] The cases Plaintiffs cite are inapposite.  *See* Br. at 10.  In *Caronia v. Philip Morris USA, Inc.*, 22

23  N.Y.3d 439 (2013), the court declined to create an independent medical monitoring cause of action, which in any event requires individualized inquiries.  *See In re St. Jude Med., Inc.*, 425

24  F.3d 1116, 1122 (8th Cir. 2005).  *Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*, 4 Cal. App. 4th 963 (1992), was not even a class action and never considered 23(b)(2) issues.  And

25  *Corona v. Sony Pictures Entm't, Inc.*, simply recognized credit monitoring as an Article III injury and articulated a test considering, among other things, "the relative increase in the risk of identity theft," an inherently individualized inquiry.  2015 WL 3916744, at *4 (C.D. Cal. June 15, 2015).

26  [10] The Court cannot bifurcate Plaintiffs' claims for "injunctive" relief under 23(b)(2) and

27  "monetary" relief under 23(b)(3), *see* Br. at 10 & n.6, because the "injunctive" relief they seek is effectively monetary relief.  *Raffin v. Medicredit, Inc.* is readily distinguishable on this ground.

28  2017 WL 131745, at *9 (C.D. Cal. Jan. 3, 2017) ("injunctive relief" certified under 23(b)(2) only required defendant to stop specific business practice).

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 15-MD-02617-LHK

certification where, as here, the relief is primarily monetary. *See Herskowitz*, 301 F.R.D. at 481

(no (b)(2) certification where injunctive relief sought was "in essence" a "claim for monetary

damages"); *Brown v. Am. Airlines, Inc.*, 285 F.R.D. 546, 559 (C.D. Cal. 2011) (monetary claims

predominated); *In re TJX Cos. Retail Sec. Breach Litig.,* 246 F.R.D. 389, 400 (D. Mass. 2007)

(23(b)(2) certification "not justified" where "predominate motive behind this suit is financial").[11]

## B. The Non-Anthem Injunctive Class Cannot Be Certified Under Rule 23(b)(2).

The Court also should deny Plaintiffs' request to certify a Non-Anthem UCL class under

Rule 23(b)(2) for multiple reasons. First, the injunctions sought are not "generally applicable to

the class as a whole." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010); Fed. R. Civ. P.

23(b)(2). The Non-Anthem UCL subclass includes Plaintiffs "who *were* enrolled in a health plan

with a Non-Anthem BCBS Defendant," Mot. at 3 (emphasis added), but who may not be enrolled

with a Non-Anthem Defendant now. Enjoining the Non-Anthem Defendants from permitting

their members' PII to be conveyed to other licensees as part of the BlueCard program would

provide no relief to former members because they may not have any future BlueCard claims and

thus "are not currently in a position to benefit from a change in [the Non-Anthem Defendants']

policies and practices." *Schulken v. Washington Mut. Bank*, 2012 WL 28099, at *7 (N.D. Cal.

Jan. 5, 2012) (denying 23(b)(2) certification because the "relief sought is not appropriate for the

*class as a whole*") (emphasis added); *see also Gonzales v. Comcast Corp.*, 2012 WL 10621, *16

(E.D. Cal. Jan. 3, 2012) (denying 23(b)(2) class where "the vast majority of class members would

have no claim for injunctive relief, because they are, by definition, former Comcast subscribers").

Second, Plaintiffs have not shown that that the requested "class-wide injunction would

satisfy Federal Rule of Civil Procedure 65(d)" and avoid the need for individual "tailoring."

*Martinez v. Brown*, 2011 WL 1130458, at *13 (S.D. Cal. Mar. 25, 2011). Instead, just as the

proposed injunction in *Martinez* would have required the court to determine for "each and every

---

[11] Plaintiffs' assertion that statutory damages can be certified under Rule 23(b)(2) fails for similar reasons. *See* Br. at 18 n.9. Plaintiffs cannot show on a classwide basis that the Anthem Defendants caused the injuries alleged, *see infra* Section VII.C., and thus each putative class member would have to prove causation to obtain statutory damages. *Ackerman v. Coca-Cola Co.*, 2013 WL 7044866, at *20 n.32 (E.D.N.Y. July 18, 2013); *see also Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 541 (N.D. Cal. 2012) (denying Rule 23(b)(2) certification due to "individualized assessments of damages").

[prison] facility" "what constitute[d] a 'reasonable' restriction," *id.* at *13-15, the relief Plaintiffs seek here would require the Non-Anthem Defendants and the Court to determine whether each and every BCBS licensee has implemented the "necessary" security controls mandated by Plaintiffs' injunction, Br. at 10—a vague and generalized inquiry that would vary for each licensee and require the Court to act as an information security standards-board.  Where, as here, "the relief sought by a putative class needs to be tailored to unenumerated subgroups, a class action is not appropriate." *Martinez*, 2011 WL 1130458, at *15; *see Castaneda v. Burger King Corp.*, 264 F.R.D. 557, 566, 569 (N.D. Cal. 2009) (relief under 23(b)(2) "not appropriate for a 92–store class as a whole," because it "will primarily need to be tailored store-by-store").

Third, Plaintiffs' requested relief—an injunction prohibiting Non-Anthem Defendants from conveying members' PII to any BCBS licensee, unless the licensee implements "necessary" security controls, and limiting the ability of licensees to aggregate or store PII, Br. at 10—is vastly overbroad and would impact millions of individuals outside of the Statewide California Non-Anthem Customer Subclass Plaintiffs seek to certify.  It would effectively dismantle the BlueCard Program for all BCBS plan members (nearly one in three Americans), many of whom are contractually guaranteed BlueCard services.  Such broad relief, which would impact millions of individuals beyond the proposed class, cannot be "necessary" to redress the subclass' injuries. *Kline v. Dymatize Enters., LLC*, 2016 WL 6026330, *4 (S.D. Cal. Oct. 13, 2016); *cf. Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("[I]njunctive relief should be no more burdensome to the defendant[s] than necessary to provide complete relief to the plaintiffs.").

## VI.   INDIVIDUAL ISSUES PREDOMINATE BECAUSE PLAINTIFFS CANNOT PROVE DEFENDANTS CAUSED THEM INJURY ON A CLASSWIDE BASIS.

Plaintiffs' request for certification of Rule 23(b)(3) classes fails because they cannot satisfy the predominance requirement, which is "even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013).  Plaintiffs have not shown with common proof that putative class members suffered injury as a result of Defendants' alleged conduct. *Id.* at 1432-35.  They have failed to present any expert testimony on their alleged out-of-pocket losses, and the expert testimony they have offered on their benefit of the bargain and

loss of value of PII theories fail to carry their burden for multiple reasons.  Plaintiffs try to side-step this problem by asserting that arguments about the validity of their expert reports are not issues for class certification, Br. at 12 & n.7, but that overused argument is misplaced.  As a case they cite explains, "[i]f the plaintiffs cannot prove that damages resulted from the defendant's conduct, then the plaintiffs cannot establish predominance."  *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1154 (9th Cir. 2016).  Courts have repeatedly found that individual issues regarding causation predominate in data breach cases and denied certification.  *See In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 33 (D. Me. 2013) (no certification where evidence required "trial involving individual issues for each class member"); *In re TJX Cos. Retail Sec. Breach Litig.*, 249 F.R.D. 389, 397 (D. Mass 2007) ("Given that there are a myriad of ways in which fraud losses can occur . . . [c]ausation will have to be determined loss-by-loss, bank-by-bank, further rendering certification inappropriate."); *Abdale v. North Shore-Long Island Jewish Health Sys., Inc.*, 41 N.Y.S. 3d 448 (N.Y. Sup. Ct. 2016) (denying certification because plaintiffs' claims "would devolve into a myriad of mini trials").[12]  And no court has ever certified a class asserting the type of data breach claims brought against the Non-Anthem Defendants and BCBSA, all of whose systems, it is undisputed, were not breached.  This Court should deny certification here for the same reasons.

### A. Out-Of-Pocket Losses.

Although more than 50 named Plaintiffs allege identity theft or other fraud and numerous others assert they incurred additional out-of-pocket losses, Plaintiffs have not identified any methodology, much less an expert, that can prove on a classwide basis that such alleged losses were caused by the Anthem cyberattack.  Plaintiffs therefore cannot show that common issues predominate with respect to the California Contract Classes and Federal Employee Class, which seek to recover for out-of-pocket losses.  *See In re Hannaford*, 293 F.R.D. at 33 (no

---

[12] The recent decision in *Smith v. Triad of Alabama, LLC*, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017), is not to the contrary.  It involved only about 1200 individuals and facts noticeably absent from this case:  an identified individual who undisputedly had stolen patient files from the defendant and used them to commit tax fraud.  *Id.* at *4-5.  Here, there is no evidence that PII stolen in the attack has been used to commit identity theft and there are many alternative explanations for Plaintiffs' alleged injuries. *See, e.g.*, R5 (Berglas Rep. at 6-8).

1   predominance because "[w]ithout an expert, [plaintiffs] cannot prove total damages").

2        Determining whether the Anthem cyberattack caused putative class members to incur out-

3   of-pocket losses inherently turns on numerous individualized issues that Plaintiffs ignore and that

4   their "trial plan" similarly fails to confront.  First, because different individuals had different

5   types of information stolen, *see* R113 (Colton Decl. at 3-4); R68; R69, the finder of fact would

6   need to determine whether that information could have been used to commit identity theft or

7   fraud.  For example, while Plaintiff Cheryl Grissom alleges that she suffered tax fraud as a result

8   of the cyberattack, which would require fraudulent use of her SSN, *see* FAC ¶ 48, ████████

9   ████████████████████████████████████████████ Further, even where

10  information was exfiltrated, the finder of fact would need to determine whether it was accurate.

11  For example, ████████████████████████████████████████

12  ████████████████████████████████████████████

13  ████████████████████████████████████████████████

14  ████████████████████████████ R71.

15        Second, where accurate information was stolen that could have been used to commit fraud

16  or identity theft, the finder of fact would need to determine whether any alleged fraud or identity

17  theft was caused by something else.  Discovery has shown that many putative class members

18  were subject to ████████████████████████████████████

19  ████████████████████████████████████

20  ████████████████████████████████████

21  ████████████████████████████████████████

22  ████████████████████████████████████████

23  ████████████████████████████████████

24  ████████████████████████████████████████

25  ████████████████████████████████████████

26  ████████████████████████████████████████

27  ████████████████████████████████████████

28  ████████████████—yet another alternative explanation for any identity theft allegedly

related to the Anthem cyberattack.  *See* R6 (Berglas Supp. Rep. at 5).

Third, the same variability regarding the information exfiltrated and potential alternative causes for alleged identity theft and fraud mean that any alleged purchase of credit monitoring services also would have to be independently evaluated, particularly given Anthem's offer of two years of free credit monitoring services.  For example, an individual whose SSN was not exfiltrated in the Anthem attack but whose SSN and other personal information were exposed in another data breach and are available on the Deep Web cannot attribute any need for credit monitoring to the Anthem attack.  Thus, Plaintiffs' theory of liability ignores significant causation issues that would need to be tried on an individual basis.  *See, e.g.*, *Stollenwerk v. TriWest Healthcare Alliance*, No. 03-cv-0185, slip op. at *7 (D. Ariz. June 10, 2008) (denying certification where "causation inquiry will depend on individual factual circumstances that will vary from class member to class member," including alternative causes of identity theft).[13]

### B. Benefit of the Bargain.

Plaintiffs also cannot show common issues predominate with respect to claims based on the benefit of the bargain.  Their sole support for that theory of injury is Professor Peter Rossi's report, but his testimony should be excluded pursuant to Defendants' *Daubert* motion, and it also fails to satisfy Rule 23(b)(3) for additional reasons.

**1. Insufficient Proof of Feasibility.**  Regardless of whether Professor Rossi's testimony is excluded, the proposed methodology he sketches out does not withstand the "rigorous analysis" this Court must employ to determine whether Plaintiffs have met their burden under Rule 23.  *See Ellis*, 657 F.3d at 982.  Professor Rossi offers no opinion about whether putative class members actually have suffered benefit of the bargain injury, R72 (Rossi Depo. at 75-76), and he has not done any of the work that would be required to implement his proposed methodology for

---

[13] Plaintiffs suggest that other courts have certified classes where individualized issues still exist, *see* Br. at 22-23, but those cases were not data breach cases; they involved common proof of liability and causation and only the ***calculation*** of damages and minor affirmative defenses were individualized. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120-21 (9th Cir. 2017) (plaintiffs "generally will be able to 'show that their damages stemmed from the [Defendants'] actions that created the legal liability"); *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 310-313, 315 (N.D. Cal. 2016) (common evidence of antitrust impact, methodology for calculating damages on a classwide basis, and key defense shown through generalized evidence).

determining whether such injury exists. He has not even taken any of the steps that he would need to take to design a conjoint survey, much less actually conducted a survey and then completed the equilibrium analysis he says is needed to determine whether a market price premium exists. *Id.* at 147-57. He also has refused to commit to how many surveys he would conduct, what the questions would be, and whether he would conduct an equilibrium analysis for one national market or different geographic markets. *Id.* at 154, 157, 258. For all these reasons, Plaintiffs have failed to carry their burden of demonstrating injury on a classwide basis. To hold otherwise would eviscerate *Comcast* by permitting classes to be certified based on the *ipse dixit* of proposed experts who have done no work but merely say they can. *See Miller v. Fuhu Inc.*, 2015 WL 7776794, *22 (C.D. Cal. Dec. 1, 2015) (denying class certification "given the relatively undeveloped state of plaintiff's proposed survey").[14]

**2. Filed-Rate Doctrine.** Individualized issues also predominate because whether Anthem caused any particular class member benefit of the bargain injury cannot be determined without addressing the filed-rate doctrine, which Plaintiffs completely ignore. The Court dismissed Plaintiff Ames' breach of contract claim for benefit of the bargain injury because it was barred by the filed-rate doctrine. *See* Dkt. 524 at 38-44. Similar analyses would need to be undertaken with respect to each claim for which Plaintiffs seek to certify a class. Specifically, for each putative class member, the Court would need to (i) identify the health plan at issue, (ii) determine whether it was subject to regulatory oversight, (iii) determine the state or federal law that applies, and (iv) decide whether the filed-rate doctrine bars a benefit of the bargain claim under the applicable law. In *Rapp v. Green Tree Servicing, LLC*, individualized issues predominated because, among other things, the court found the filed-rate doctrine would have to be addressed on a "state-by-state (or claimant-by-claimant) basis, rather [than] on a class-wide basis" and because "answering the

---

[14] *See also In re Dial Complete Mktg. & Sales Practices Litig.*, 312 F.R.D. 36, 79 (D.N.H. 2015) ("Plaintiffs simply have not provided the court with sufficient details to permit a full assessment of whether damages can be feasibly calculated on a classwide basis" where Plaintiffs discussed how "conjoint analysis works generally" but did not provide "an actual model for evaluation"); *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 698 (S.D. Fla. 2014) (rejecting proposed conjoint analysis for measuring price premium where Plaintiffs provided "no evidence on the actual model to be applied" and "merely assert[ed] that other courts have found such models to be feasible mechanisms by which damages could be measured and that this court should do the same").

1   question of whether a particular state's law bars a claim under the filed-rate doctrine can be

2   extremely difficult."  302 F.R.D. 505, 512, 514, 519 (D. Minn. 2014).  So too here.

3          Plaintiffs' proposed UCL restitution subclasses and GBL damages subclass include "[a]ll

4   residents of" California and New York "whose personal information was maintained on the

5   Anthem Database and was compromised . . . and who were enrolled in" *any* Anthem or (for

6   California) Non-Anthem BCBS plans for which Anthem or a Non-Anthem Defendant was paid

7   during the statute of limitations.  Mot. at 3-4.  Thus, these subclasses include tens of thousands of

8   individuals who were enrolled in insurance plans issued by Defendants located in other states.

9   *See* FAC ¶¶ 239-52.  Similarly, Plaintiffs' Anthem California Contract Class includes individuals

10  like Plaintiff Kahn, who were enrolled in a California plan but resided in another state.  FAC ¶ 29.

11  Because "[t]he scope of the filed-rate doctrine varies dramatically from state to state," and

12  numerous putative class members were residents of one state but covered under policies issued by

13  insurers in different states, individualized analyses would be necessary to determine which

14  individuals are precluded by the filed-rate doctrine from recovering for benefit of the bargain

15  injury.  *Rapp*, 302 F.R.D. at 511-12; *see also Kunzelmann v. Wells Fargo Bank, N.A.*, 2013 WL

16  139913, at *6, 11-12 (S.D. Fla. Jan. 10, 2013).  This could require the Court to apply conflicts of

17  law principles to determine what law governs the application of the filed-rate doctrine, which

18  likely would (but might not always) result in the application of the law of the state in which the

19  plan was issued.  *See Horwitz ex rel. Gilbert v. Bankers Life & Cas. Co.*, 745 N.E.2d 591, 597

20  (Ill. App. 2001) (applying Colorado filed-rate doctrine to policy issued in Colorado where rates

21  were filed with Colorado regulator); *Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D.

22  529, 539-40 (C.D. Cal. 2013) (filed-rate doctrine complicates choice of law analysis).

23         Identifying the applicable law is only the first of the individualized issues that would need

24  to be addressed.  For example, the filed-rate doctrine bars ███████████ from recovering for

25  benefit of the bargain injury because the ████████████████████████████████

26  ████████████████████████ to be filed and approved before they can be charged.

27  *See* Cal. Ins. Code § 10192.15(c); Cal. Code Regs. tit. 10 § 2220.58(b); *MacKay v. Superior*

28  *Court of L.A. Cty.*, 188 Cal. App. 4th 1427, 1448-49 (2010) (rejecting tort liability for "charging a

rate that has been approved by the [CDI] commissioner" because filed-rate doctrine "provides that rates duly adopted by a regulatory agency are not subject to collateral attack in court").[15]  The filed-rate doctrine also bars the benefit of the bargain claims of other Anthem California Contract Class Plaintiffs and putative class members, but deciding that issue requires an individualized analysis because different plans are subject to different regulatory regimes in California.

For example, the Department of Health Care Services ("DHCS") requires major risk medical insurance plans to "submit annually to the department rates which it estimates are sufficient to cover the cost of providing major risk medical coverage to its subscribers," Cal. Welf. & Inst. Code § 15890.5, and DHCS has the "authority" to "approve subscriber contributions, and plan rates." *Id.* § 15873(d).  DHCS administers Medi-Cal policies under different regulations and statutes that require it to "impos[e]" a statutorily-prescribed monthly premium of $13 per child with a maximum contribution of $39 per family" when the family income of an enrollee passes a certain level.  *See* Cal. Welf. & Inst. Code § 14005.26(d).  Thus, the application of the filed-rate doctrine to a Medi-Cal plan could turn on putative class members' unique financial circumstances.

A different regulator, the Department of Managed Health Care ("DMHC"), oversees health care service plans issued to certain individuals who lost health care coverage due to a job loss or change in employer-provided benefits.  Before "changes in the premium" can be made for these plans, the plan must file an amendment with the DMHC certifying compliance with required statutory rate levels.  Cal. Health & Safety Code § 1399.815(b).  Coverage offered on California's Affordable Care Act exchange, Covered California, is subject to a different set of regulatory requirements, and rates for these policies are based on negotiations between insurers and state regulators.  *See, e.g.*, 42 U.S.C. § 18031(e); Cal. Gov't Code §§ 100500-05; R117-119 (Krum Decl. at 1 & Exs.).  And small and large group insurance plans are subject to intense regulatory scrutiny for obtaining licenses, making modifications, and changing rates under yet

---

[15] The *Rapp* court noted that courts in California have disagreed "about whether the doctrine applies."  *Rapp*, 302 F.R.D. at 512.  But its sole authority for that proposition (*Fogel v. Farmers Grp., Inc.*, 160 Cal. App. 4th 1403 (2008)), is *dicta* that predated the *MacKay* decision, which disagreed with *Fogel*, and the California Supreme Court has cited *MacKay* for proposition that a UCL claim cannot challenge a rate approved by the CDI.  *See Loeffler v. Target Corp.*, 324 P.3d 50, 77 (Cal. 2013).  Thus, there is no doubt the filed-rate doctrine applies.

another set of requirements.  *See, e.g.*, Cal. Health & Safety Code §§ 1349-85; Cal. Code Regs. tit. 28 § 1300.50 *et seq.*  Thus, as in *Rapp*, the individualized nature of the filed-rate doctrine precludes certification.

A similar issue exists with respect to Plaintiffs' proposed Federal Employee Class and GBL damages subclass.  In *Fero v. Excellus Health Plan, Inc.*, the court found that OPM negotiates and sets insurance premium rates with regard to the FEP Program and thus plaintiffs were barred from recovering benefit of the bargain damages against BCBSA because the court would have to evaluate the reasonableness of rates the federal government approved.  2017 WL 713660, at *33 (W.D.N.Y. Feb. 22, 2017).  This Court would have to undertake the same analysis in connection with the proposed Federal Employee Class' claim for benefit of the bargain damages on their third-party beneficiary federal breach of contract claim and thus should reach the same conclusion as in *Fero*.  The same is true for the GBL damages subclass.  *See, e.g.*, *In re Empire Blue Cross & Blue Shield Customer Litig.*, 622 N.Y.S.2d 843, 845 (Sup. Ct. 1994), *aff'd sub nom. Minihane v. Weissman*, 640 N.Y.S.2d 102 (1st Dep't 1996).  For all these reasons, individualized issues regarding the filed-rate doctrine would predominate.

**3. Premium Payments.**  Individualized issues regarding the payment of premiums also would predominate.  This Court has held that a Plaintiff who did not pay premiums cannot recover for benefit of the bargain injury.  *See* Dkt. 524 at 69 (dismissing Plaintiff Onderdonk's GBL claim for benefit of the bargain losses because she did not allege she paid premiums).  Discovery has shown that other named Plaintiffs who alleged they paid premiums actually did not, *see supra* Section II.A.2.; R54; ████████, and Plaintiffs' putative classes contain individuals covered under policies for which they would not have paid any premiums, including individuals enrolled in Medi-Cal plans who did not meet a certain family income threshold or in certain Medicare Advantage plans that charged zero premiums.  Cal. Welf. & Inst. Code § 14005.26; R109.  Accordingly, to determine whether any individual suffered benefit of the bargain injury, the finder of fact would first have to determine whether the individual paid premiums during the relevant time period.  This would be an individualized inquiry because there is no classwide evidence showing whether a particular individual paid premiums.  For example, Anthem tracks

the total premium revenue it receives on behalf of employer group policies, but it has no

information about how that amount is split between the employer and individual employees, if at

all.  *See* R114 (Colton Depo. at 19-22, 31-32); R113 (Colton Decl. at 4).  The inquiry is further

complicated by the fact that individuals may switch plans and obligation to pay premiums may

change over time.  *See* R42 (Gates at 109-13).

Plaintiffs' allegation that putative class members covered under ASO plans suffered

benefit of the bargain injury raises additional issues.  FAC ¶¶ 457-65.  Not only do Plaintiffs have

no classwide evidence of the premiums individuals may pay their employers under ASO plans,

but they also have no evidence of any connection between those premiums and the administrative

fees employers separately paid Defendants for a wide range of services that varied from employer

to employer.  ██████████████████████████████████████████████████████████████

████████████████████████████████████████  *See* R87; R111; R116.  Absent evidence

of a connection between the premiums individuals pay and the fees Anthem receives, which

necessarily would be individualized, members cannot recover benefit of the bargain damages.  *Cf.*

*Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015) (UCL recovery is

"excess of what the plaintiff gave the defendant over the value of what the plaintiff received").[16]

### C.  Loss of Value of PII.

Plaintiffs also cannot show that common issues predominate with respect to classes

alleging a loss of value of PII.  Plaintiffs have recast that theory as the "cost to protect oneself

from fraud when that PII is made public."  Br. at 13.  But Plaintiffs' attempt to reinvent their loss

of value of PII theory fails to support their class certification motion for multiple reasons.

First, Plaintiffs cannot show that common issues predominate by relying on Mr. Van

Dyke's expert reports.  His testimony should be excluded for all the reasons set forth in

Defendants' *Daubert* motion.  Further, when he was asked whether he was "offering any opinion

---

[16] Plaintiffs identify "cost of repair" as another "measure of benefit of the bargain damages."  Br. at 22.  But the cases they cite concern repairs to buildings and automobiles, and analogous repairs here would involve fixing purported defects in Anthem's data security program, not providing Plaintiffs with identity protection services. Even if Plaintiffs could seek "cost of repair" in the form of identity protection services, that would not satisfy Rule 23(b)(3) for the reasons set forth in Section VI.C.  *See also Blough v. Shea Homes, Inc.*, 2014 WL 3694231, at *15 (W.D. Wash. July 23, 2014) (no predominance where cost of repair injury required individualized inquiries).

1   that any plaintiff has actually suffered economic damages," he responded, "No." R73 (Van Dyke

2   Depo. at 63).  Thus, Mr. Van Dyke's testimony plainly does not provide a basis for concluding

3   that loss of value of PII can be proven on a classwide basis.

4        Second, Van Dyke's and Plaintiffs' proposed methodology for determining loss of value

5   of PII does not fit the loss of value of PII theory the Court allowed to proceed past the motion to

6   dismiss stage.  Plaintiffs now believe " [a] reasonable economic proxy" for their alleged loss is

7   the costs of credit monitoring.  Br. at 13.  The Court, however, expressly distinguished loss of

8   value of PII from cases involving the costs of credit monitoring and guarding against fraud, which

9   is precisely how Plaintiffs have now framed their loss of value of PII theory.  Dkt. 468 at 46.

10       Third, however it is defined, Plaintiffs' loss of value of PII theory involves inherently

11  individualized issues.  *See, e.g.*, *Moore v. Apple Inc.*, 309 F.R.D. 532, 546 (N.D. Cal. 2015)

12  (denying certification where individualized inquiries needed to determine whether alleged breach

13  caused class members injury).  It is undisputed that whether and to what extent a loss of value of

14  PII has occurred depends on the information that was stolen.  *See* R8 (Van Dyke Reply Rep. at 3

15  (stating that "fraud mitigation recommendations" described in report are "for people who have

16  reason to believe that at *least* their name, date of birth and social security number were

17  exfiltrated")).  Here, different individuals had different types of information exfiltrated.  ███

18  ████████████████████████████████████████████████████.  R113 (Colton

19  Decl. at 3-4).  Determining what was stolen and how it relates to an alleged loss of value of PII

20  requires an individualized inquiry.

21       That inquiry is even more individualized because there is no classwide basis for deciding

22  whether stolen information was accurate.  ███████████████████████████

23  ██████████████████████████████████████████████████████

24  ██████████████████████████████████████████████████████

25  ██████████████████████████████████████████████████████

26  ██████████████████████████████████████████████████████

27  ████████████████████████████████████████  Thus, deciding whether an

28  individual's exfiltrated information was accurate requires additional individualized inquiries.

1    Further, whether and to what extent exfiltration of an individual's PII diminished the

2    value of that PII depends on specific facts relating to the individual. ███████████████

3    ███████████████████████████████████████████████████████████████

4    ███████████████████████████████████████████████████████████████

5    ███████████████████████████████████████████████████████████████

6    ███████████████████████████████████████████████████████████████

7    ████████████████████    Thus, determining how the exfiltration of PII from ███████

8    impacted the value of an individual's PII requires an individualized inquiry.  *See, e.g.*, *In re St.*

9    *Jude*, 425 F.3d at 1122 (class certification precluded because "each plaintiff's need (or lack of

10   need) for medical monitoring is highly individualized").

11       Finally, Plaintiffs argue "[t]here is a black market on which PII is sold, and this black

12   market serves as a floor for damages," Br. at 13, but this argument makes no sense.  There is zero

13   evidence that PII exfiltrated from █████████ is for sale on the black market or is likely to be in the

14   future.  R4 (Mulvenon Rep. at 6, 27-32); R27 (Mulvenon Depo. at 85-101); R5 (Berglas Rep. at

15   12-13).  Thus, the Anthem attack did not diminish the black market value of Plaintiffs' PII, and

16   Plaintiffs remain free to capture any economic value their PII has on that market.  Of course, ███

17   ████████████████████████████████████████████████████████ and there

18   is no evidence any putative class members wanted to either.  *See Chambliss v. CareFirst, Inc.*,

19   189 F. Supp. 3d 564, 572 (D. Md. 2016) (rejecting devaluation argument where plaintiffs never

20   "attempted to sell their personal information" nor were forced "to accept a decreased price"); *Low*

21   *v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028-29 (N.D. Cal. 2012) (same).

22   **VII.   INDIVIDUAL ISSUES PREDOMINATE FOR ADDITIONAL REASONS.**

23       Plaintiffs' California contract, UCL, and GBL claims also raise a number of additional

24   individualized issues.  Class certification should be denied because these issues—both separately

25   and when considered in combination with the individualized issues that pervade Plaintiffs'

26   theories of injury—predominate over any allegedly common issues.[17]

---

[17] The individualized analysis required to determine which plans are subject to ERISA such that
certain Plaintiffs and putative class members' claims are preempted further undercuts
predominance.  The Court denied Defendants' motion to dismiss on ERISA preemption grounds,

### A. Individual Issues Predominate Regarding The California Breach of Contract Claims Because The Court Would Have To Review Individual Contracts.

Plaintiffs propose two California Contract Classes comprised of individuals enrolled in health benefit plans governed by ASO agreements ("ASO Class") and all other health benefit plans ("Non-ASO Class") in 2014 or 2015 offered by a California-based Anthem affiliate.  Mot. at 4-5.  Because their claims "would require examining each individual class member's contract," plaintiffs cannot satisfy the predominance requirement.  *Moore*, 309 F.R.D. at 545.

With respect to the ASO Class, Plaintiffs recognize the Court has rejected the contract claims of Plaintiffs covered under certain ASO agreements, Dkt. No. 524 at 29-38, and they purport to exclude from the ASO Class "individuals enrolled in plans provided by groups with agreements produced by Anthem in discovery that contain a 'no third party beneficiary' clause." Br. at 23 n.15.  Based on this narrowed class definition, Plaintiffs assert that Anthem "promised to protect the confidentiality of ASO members' PII" and that this promise "is either set forth in the terms of the ASO itself, or is incorporated by reference within a BAA [Business Associate Agreement] or benefits booklet."  Br. at 23.  But these allegations cannot be resolved on a class-wide basis, and Plaintiffs' truncated class definition simply underscores the individualized issues.

ASO agreements and BAAs are often negotiated, *see* R82 (Nader Depo. 10/19/16 at 85); R83 (Evers Depo. at 58-59), and the resulting material variations create a host of individualized issues.  For example, several of the ASO agreements Plaintiffs identify do not address the data security of member information.  *See* R84-R86; R76 (Foell Decl. at 2-3).  And even where an ASO agreement does contain a provision regarding the security of member data, individualized review is required to determine if it has a no-third-party-beneficiary clause or a provision requiring application of some state law other than California.  *See* R87; R83 (Evers Depo. at 129-30).  For ASO agreements that do not contain a data security provision or a no-third-party-beneficiary clause, further individualized inquiry is necessary to determine if a benefit booklet or BAA is incorporated into the agreement.  Some ASO agreements contain merger clauses that preclude incorporation of benefit booklets.  *See* R94.  Others refer to BAAs as a "separate . . .

but Defendants raise the issue here to preserve it for appeal.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 15-MD-02617-LHK

Hogan Lovells US
LLP
Attorneys At Law

1  agreement between the Parties," R89; R76 (Foell Decl. at 4), which contrasts sharply with the

2  CalPERS ASO agreement the Court held incorporated an attached BAA.  Dkt. 524 at 34; R80.

3  And even if a BAA is incorporated into an ASO agreement, further individualized review is

4  required to determine if the BAA has a no-third-party-beneficiary clause.  Significantly,

5  Anthem's **template** BAA contains a no-third-party-beneficiary clause.  *See* R90.  Thus, the Court

6  would need to review each final BAA to determine whether it contains this clause or whether the

7  clause was deleted during negotiations with the group.[18]  *See* Dkt. 524 at 30-31 (dismissing

8  Randrup's claim based on no-third-party-beneficiary clause).

9        Plaintiffs' proposed Non-ASO Class suffers from similar problems, as the record belies

10  Plaintiffs' assertion that Anthem made uniform promises across "*all* individual and group

11  insurance contracts."  Br. at 19.[19]  The Non-ASO Class claims involve multiple lines of business,

12  and an individualized review is required to determine if a plan contains an enforceable data

13  security provision.  For example, the vision template agreement contains no provision regarding

14  the security or privacy of member data.  *See* R95.  A number of dental and Medicare supplement

15  agreements also do not contain such a provision.  *See* R96-R99.  And some Medicaid contracts

16  contain no-third-party-beneficiary clauses, which preclude Plaintiffs' breach of contract claims.

17  *See* R100-R101.  Plaintiffs try to minimize these individualized issues by claiming they raise their

18  own "common legal question":  whether the Notice of Privacy Practices ("NOPP") created an

19  enforceable data security promise.  Br. at 21-22.  But these contracts are not identical and a

20  further individualized inquiry would be needed to determine whether they contain merger clauses

21  that preclude incorporation of an NOPP.  *See* R98-R99.  And even where a booklet contains

22  language related to privacy, an individualized analysis is necessary to determine whether it

---

[18]  The template BAA is representative of many other BAAs.  Anthem produced the template as a document "sufficient to show" documents applicable to individuals affected by the cyberattack in 2014 and 2015.  Four of the 22 California ASO agreements that Anthem produced are with clients whose BAAs include a no-third-party-beneficiary clause that mirrors the template BAA clause word for word.  *Compare* R90, *with* R91, R92, R93, *and* R94.

[19]  The cases Plaintiffs cite are inapposite because, among other reasons, they involve contracts that were "substantially identical," *In re Med. Capital Sec. Litig.*, 2011 WL 5067208, *3 (C.D. Cal. July 26, 2011), "materially identical," *Mund v. EMCC, Inc.*, 259 F.R.D. 180, 185 (D. Minn. 2009), or contained "similar, if not identical, key terms," *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 79 (E.D.N.Y. 2004), whereas here there are material differences.

1    creates an enforceable obligation.  Some Medicaid booklets only include statements about privacy

2    alongside "guidelines for healthy living" that are informational rather than contractual.  *See*

3    R102-R104.  Some group booklets that reference Anthem "privacy policies" alongside member

4    responsibilities (such as treating doctors with respect) do not "guide[]" the member to a website

5    or other source for the policy and thus do not incorporate the policy.  Dkt. 524 at 15; R105-R106.

6          Finally, some agreements in both the ASO Class and Non-ASO Class contain venue

7    provisions that limit where claims can be brought.  R107; R108; R80; R87.  The need to sort

8    through all these variations defeats predominance.  *See Moore*, 309 F.R.D. at 545.

9          **B.  The California UCL Claim Raises Numerous Individualized Issues.**

10          **1. Individual Issues Predominate With Respect To Plaintiffs' Fraudulent Omission**

11    **Claim.**  Plaintiffs cannot show reliance on omissions on a classwide basis.  Reliance can be

12    inferred when an omission is material, which requires assessing whether "a reasonable consumer

13    'would attach importance to its existence or nonexistence in determining his choice of action in

14    the transaction in question.'"  *In re Myford*, 2016 WL 6873453, at *2 (citation omitted).  But "if

15    the issue of materiality or reliance is a matter that would vary from consumer to consumer, the

16    issue is not subject to common proof, and the action is properly not certified as a class action."  *In*

17    *re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009); *see also Tucker v. Pac. Bell Mobile*

18    *Servs.*, 208 Cal. App. 4th 201, 228 (2012).[20]  Here, the evidence shows that the materiality of the

19    alleged omission—"failure to disclose that PII would be stored on systems that do not meet

20    reasonable standards for data security," Br. at 15—is not subject to common proof.

21          For example, Anthem did not distribute NOPPs to members enrolled in ASO groups, *see*

22    R82 (Nader Depo. 10/19/16 at 166),

23

24

---

[20] Plaintiffs' assertion that the "reasonable consumer" standard obviates individualized inquiries
is based on cases where, unlike here, no evidence showed that the materiality of the alleged
omission varied by class member.  *See Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087,
1090 (9th Cir. 2010) (no evidence undercut allegation that each plaintiff purchased their annuities
from the same type of broker, reviewed the same standardized written materials, and signed the
same sales and disclosure forms); *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480
(C.D. Cal. 2012) (no evidence that materiality varied from class member to class member).

[REDACTED]

For all these reasons, whether the alleged omissions were material and relied upon will vary from individual to individual.  Because that cannot be determined with common proof, UCL classes should not be certified.  *See Otto v. Abbott Labs. Inc*., 2015 WL 9698992, at *5 (C.D. Cal. Sept. 29, 2015) (denying certification where "fact intensive inquiries" were required "to determine if each class member is one to whom the omission could have been material").[22]

**2. Plaintiffs' Omission Claim Against The Non-Anthem Defendants Raises Additional Individualized Issues.**  A UCL omission claim can only be based on "a fact the defendant was obliged to disclose," and a duty to disclose only arises when the defendant "had exclusive knowledge of material facts not known to the plaintiff" and actively concealed material facts or made partial representations while suppressing some material facts.  *Punian*, 2016 WL 1029607, at *9 (citations omitted).  Thus, to decide Plaintiffs' UCL omission claim against the Non-Anthem Defendants, the finder of fact would need to consider what each Non-Anthem Defendant knew about how Anthem stored its data and when the Non-Anthem Defendant knew it.  This is another reason Plaintiffs' Non-Anthem Customer UCL subclasses cannot be certified.

[21] [REDACTED]

[22] *See also Webb v. Carter's Inc.*, 272 F.R.D. 489, 502-03 (C.D. Cal. 2011) (denying class certification regarding failure to disclose chemical content of tagless labels where consumer decisions varied depending on many factors); *Johnson v. Harley-Davidson Motor Co.*, 285 F.R.D. 573, 580-81 (E.D. Cal. 2012) (denying certification where purchasing behavior and expectations varied from consumer to consumer); *Quezada v. Loan Ctr. of Calif., Inc.*, 2009 WL 5113506, at *5 (E.D. Cal. Dec. 18, 2009) (denying class certification where evidence rebutted inference of classwide reliance); *In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.*, 2011 WL 6325877, at *10 (S.D. Cal. Dec. 16, 2011) (same); *Ono v. Head Racquet Sports USA, Inc.*, 2016 WL 6647949, at *10-14 (C.D. Cal. Mar. 8, 2016) (same).

### 3. Individual Issues Predominate As To Plaintiffs' Unlawful Practices Claims.

Plaintiffs cannot satisfy the predominance requirement under the unlawful prong of the UCL because individualized inquiries are needed to resolve their claim for each statute at issue. As discussed in Section I.A., whether HIPAA was violated may vary over time and may also turn on whether the information exfiltrated for a given individual was subject to HIPAA's security provisions.[23] Similarly, whether the Gramm-Leach-Bliley Act ("GLBA") applied depends on whether Defendants were acting as "financial institutions." *See* 15 U.S.C. § 6801. Defendants were not acting as "financial institutions" to the extent they were only providing administrative services. *See* 15 U.S.C. § 6805(a)(6); 16 C.F.R. § 313.3(k); 12 C.F.R. § 225.28; 12 U.S.C. § 1843(k).[24] Conversely, to the extent Defendants were acting as insurance companies conducting the business of insurance, the McCarran-Ferguson Act, 15 U.S.C. § 1012(b), precludes applying the FTC Act where, as here, that conduct is regulated by state law. Thus, whether HIPAA, the GLBA, or the FTC Act applied turns on individualized issues.

### 4. Individual Issues Predominate As To Plaintiffs' Unfair Practices Claims.

Plaintiffs frame their unfair practices UCL claim using what appears to be a hybrid tethering-balancing test: "(i) whether Anthem's security practices violated California public policy of protecting the confidentiality of PII, and (ii) whether that public policy violation is outweighed by the utility of Anthem's conduct." Br. at 15. Because that test is linked to HIPAA, the GLBA, and the FTC Act, individual questions predominate for the same reasons as set forth above in Section VII.B.3. *See Herskowitz*, 301 F.R.D. at 476 (where individual questions predominated on statutory-based claim, individual questions predominated on unfairness claim). Further, determining whether Anthem's purported violation of public policy caused harm that is outweighed by the utility of Anthem's conduct requires individualized proof. *Id.*; *see also Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, 2015 WL 6638939, at *13 (N.D. Cal. Oct. 30, 2016). A putative class member

---

[23] The same is true with respect to the Federal Employee Class to the extent Plaintiffs attempt to base their federal third-party beneficiary breach of contract claim on alleged HIPAA violations.

[24] For example, Plaintiffs cannot assert a UCL claim against HCSC based on alleged violations of the GLBA because ▮▮▮▮▮▮▮▮▮▮▮, the only proposed class representative with possible standing to sue HCSC, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ R39 (Blanchard at 78-80); R111; R112 at 69.

who only had a first and last name exfiltrated in the attack and whose PII was already for sale on black markets "likely suffered a different [alleged] harm" than a putative class member who had multiple data fields exfiltrated in the attack. *Herskowitz*, 301 F.R.D. at 476. Similarly, the utility of allegedly not providing adequate data security to putative class members who never paid premiums, did not review statements related to data security, and valued features of their plans unrelated to data security "is likely different" than putative class members who paid premiums and reviewed such statements. *Id.* at 477. ████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████ further demonstrates that "individualized determinations tailored to the particular circumstances" of each putative class member are necessary when weighing utility against an alleged public policy violation. *Herskowitz*, 301 F.R.D. at 477

**5. Plaintiffs' Unfair And Unlawful UCL Claims Against the Non-Anthem Defendants Raise Additional Individualized Issues.** Plaintiffs allege the Non-Anthem Defendants violated HIPAA, the GLBA, and the FTC Act because they lacked safeguards "for member information provided to Anthem." Br. at 17. But the information about Non-Anthem members exfiltrated from ██████ was not necessarily provided to Anthem by the Non-Anthem Defendants. It might have been in ██████ for a variety of reasons, such as: the person once was an Anthem member, *see* Trial Br. at 4, or because a healthcare provider gave the information to Anthem. *See* R13 (Hedges Depo. at 14, 18-25, 28-30, 33); *see* R113 at 1. HIPAA, the GLBA, and the FTC Act would have no application in such circumstances. Thus, to determine whether they were violated, the Court would need to determine where each Non-Anthem member's exfiltrated information came from. Further, there is nothing objectively unfair about a "collective policy and practice" under which members receiving services in an Anthem state submit (or have their physician submit) their claims to Anthem. Br. at 17. To the extent Plaintiffs claim it was unfair because the Non-Anthem Defendants knew Anthem did not have "appropriate safeguards," Br. at 17, that raises the same individualized issues about what they knew and when as Plaintiffs' omission claim against the Non-Anthem Defendants. Thus, individualized issues regarding the UCL claims against the Non-Anthem Defendants predominate.

### C. The New York GBL § 349 Claim Raises Numerous Individualized Issues.

Individualized issues also predominate with respect to Plaintiffs' proposed New York GBL Class and Subclass, which allege the Anthem Defendants "omitted, suppressed, and concealed the material fact of the inadequacy of their privacy and security protections for New York Class Members' Personal Information."  FAC ¶ 718(c).  (Plaintiffs do not seek to certify a GBL claim against the Non-Anthem Defendants, although the FAC alleges one.  *See* FAC ¶ 718.)

First, Plaintiffs cannot prove on a classwide basis that Defendants' alleged omissions caused Plaintiffs injury, a crucial element of their GBL claim.  *See, e.g.*, *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 63 (S.D.N.Y. 2006) (deceptive act must be cause of harm asserted).  Although reliance may not be required under the GBL, the "assessment of specific causation often dissolves into a 'myriad of individualized causation inquiries'" that preclude class certification.  *In re Currency Conversion*, 230 F.R.D. at 310-11 (quoting *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 66 (S.D.N.Y. 2002)).  That is precisely the situation here.  Plaintiffs cannot prove on a classwide basis any causal connection between Anthem's alleged omissions and Plaintiffs' alleged injuries.  ███████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████, and Anthem did not distribute NOPPs on behalf of ASO plans.  *See supra* Section VII.A.  Plaintiffs who would not have been aware of disclosures Anthem allegedly should have made cannot demonstrate a connection between any omissions and alleged injuries.  To determine whether any connection exists, the Court would have to examine the facts regarding each putative class member, an individualized issue that defeats predominance.  *See Oscar v. BMW of N. Am., LLC*, 2012 WL 2359964, at *5 (S.D.N.Y. June 19, 2012) (no classwide way to show "whether the disclosure of the downsides of RFTs would have affected purchasers' decisions to buy the MINI S, or the price at which they would have made that purchase"); *Solomon v. Bell Atl. Corp.*, 777 N.Y.S.2d 50, 53 (1st Dep't 2004) (no certification where "individual plaintiffs did not all see the same advertisements" and "some saw no advertisements at all" before subscribing).

Second, Plaintiffs wrongly contend the "reasonable consumer" standard obviates the need

1    to show common issues predominate with respect to materiality.  *See* Br. at 18.  Although New

2    York courts have "adopted an objective definition of 'misleading,'" *Orlander v. Staples, Inc.*, 802

3    F.3d 289, 300 (2d Cir. 2015), Plaintiffs still must demonstrate an alleged omission was material

4    when, as here, ███████████████████████████████████████████████████████████████

5    ███████████████████████████████████████████████████████████████████████████████

6    ███████████████████████████████████████████████████████  There is no basis to

7    conclude any further disclosure by Anthem of its data-security practices would have caused them

8    to decline Anthem coverage.  Instead, the issue of materiality plainly varies from individual to

9    individual and is not amenable to classwide proof.  *See Webb*, 272 F.R.D. at 502 (defendants

10   introduced "persuasive evidence that materiality . . . would vary from consumer to consumer,

11   such that" analogous "reasonable consumer standard" under CLRA "cannot be applied");

12   *Solomon*, 777 N.Y.S.2d at 56 (whether reasonable consumer was misled is individualized).[26]

13        Third, Plaintiffs' reference to the statutory damages provision in the GBL does not help

14   under 23(b)(3) or (b)(2), *see* Br. at 18-19 & n.9, because "[i]n order to receive the statutory

15   amount, each class member would still have to prove causation."  *Ackerman*, 2013 WL 7044866,

16   at *20 n.32 (denying class certification where individualized issues regarding loss causation

17   predominated); *see Aho v. AmeriCredit Fin. Servs., Inc.*, 277 F.R.D. 609, 618 (S.D. Cal. 2011)

18   ("Plaintiff has failed to demonstrate that any award of statutory damages would flow directly

19   from liability to the class as a whole without the need for resolution of substantial factual issues

20   or individualized determinations.").  For all these reasons, individualized issues predominate.[27]

21   ███████████████████████████

22   ███████████████████████████████████████████████████████████████████████████

23   [26] *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418 (S.D.N.Y. 2009), is not to the contrary.
24   Whereas the class in *Jermyn* was defined to include only individuals who had suffered an injury
     because of defendant's conduct—being denied a price match guarantee by defendant—Plaintiffs
25   here cannot establish loss causation on a classwide basis. *See Oscar*, 2012 WL 2359964, at *7.

     [27] As shown above and in Defendants' Response to the Trial Plan, a trial would not be
26   "streamlined and efficient."  Br. at 14.  Plaintiffs' suggestion that the Court "try the four selected
     claims as the next step in the MDL process," *id.*, is both premature and misguided.  The Court has
27   not concluded pretrial proceedings in any of the cases before it.  Further, most of the proposed
     class representatives—including all of the Anthem California Contract Class representatives—
28   cannot try their claims in this Court because they filed suit in other courts and must be remanded
     to those courts for trial. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S.

## VIII.   PLAINTIFFS' PROPOSED CLASSES ARE OVERBROAD.

Class certification also should be denied because Plaintiffs' proposed classes are overbroad and include individuals who "*could not* have been injured by Defendant[s'] alleged wrongful conduct." *Moore*, 309 F.R.D. at 542.  With respect to their proposed UCL classes, for example, California law does not allow individuals who were "'never exposed to an alleged false or misleading advertising . . . campaign to recover damages under California's UCL.'" *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012).  And "[f]or everyone in the class to have been exposed to the omissions, . . . it is necessary for everyone in the class to have viewed the allegedly misleading advertising." *Id.*  Yet, as described above, many Plaintiffs admitted that they did not or cannot recall reviewing NOPPs or other statements regarding data security in connection with their enrollment in a plan.  *See supra* Sections II.A & VII.B.; *In re LinkedIn User Privacy Litig.*, 2014 WL 1323713, at *4-5, *9 (N.D. Cal. Mar. 28, 2014) (no benefit of bargain injury where deceptive conduct not material).  The proposed UCL classes also "necessarily includ[e] individuals who did not pay" and thus were not injured.  *Moore*, 308 F.R.D. at 542.  The only injury for which Plaintiffs seek to recover under the UCL is benefit of the bargain, Br. at 16-17, but a number of named Plaintiffs did not pay premiums, and unnamed putative class members who were members of certain Medicaid and Medicare Advantage plans would not have paid premiums either.  *See* Sections II.A. & VI.B.3.  Putative class members enrolled in plans subject to the filed-rate doctrine similarly would not have sustained any benefit of the bargain injury.  *Id.*

The proposed GBL, California Contract, and Federal Employee Contract classes are similarly overbroad.  For example, some New York Plaintiffs cannot show Anthem's alleged omissions caused them injury because they admitted they did review NOPPs or other statements regarding data security in connection with their enrollment in a health plan, and re-enrolled after

---

26 (1998).  In addition, not only would requiring Defendants to try selected claims against a subset of plaintiffs be inefficient and prejudicial, but it also would raise serious Seventh Amendment issues.  *See Arthur Young & Co. v. United States*, 549 F.2d 686, 693-94 (9th Cir. 1977) (court may not try some issues and reserve others if "reserved issues are so 'interwoven' with" issues being tried "that presentation of all the issues together at one hearing before one trier of fact is necessary to comport with the guarantees of the Seventh Amendment"); *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995) ("judge must not divide issues between separate trials in such a way that the same issue is reexamined by different juries").

1    learning about the attack.  *See supra* Sections II.A. & VII.C.  Likewise, with respect to Plaintiffs'

2    California contract claims, putative class members enrolled in plans that "did not have a

3    contractual right" to data security, such as certain dental, vision, Medi-Cal, and Medicare

4    supplement plans, or who did not have a right to bring a third party beneficiary claim, "***could not***

5    have been injured."  *Moore*, 308 F.R.D. at 542.  Putative members of the Federal Employee class

6    cannot show they suffered out-of-pocket injury caused by the Anthem data breach, some also

7    cannot prove loss of value of PII injury because they did not have SSNs stolen in the attack, and

8    the filed-rate doctrine bars them from recovering for benefit of the bargain injury.  *See supra*

9    Sections II.A. & VI.B.2.  The Federal Employee Class also is overbroad because while Plaintiffs

10   do not include any temporal limitation to this class, the only evidence they point to in their

11   motion, brief, or proposed trial plan dates from 2013, including the 2013 Federal Contract and

12   BCBSA's alleged knowledge of Anthem's data security practices from 2013 onward.

13   **IX.    PLAINTIFFS FAIL TO SATISFY THE SUPERIORITY REQUIREMENT.**

14           Plaintiffs have not carried their burden of satisfying Rule 23(b)(3)'s superiority

15   requirement because "'the objectives'" of certifying the proposed classes will not "'be achieved

16   in th[is] particular case.'"  *Todd v. Temper-Sealy Int'l, Inc.*, 2016 WL 5746364, at *13 (N.D. Cal.

17   Sept. 30, 2016) (citation omitted).  Because "resolving Plaintiffs' claims would require . . . highly

18   individualized inquir[ies]," as shown in Sections VI & VII, "a class action would not be a

19   superior mechanism for resolving this dispute."  *Id.*  Instead, a class trial would be overwhelmed

20   by individualized issues relating to, among other things, the exposure of each class member to

21   Defendants' alleged omissions and whether class members paid premiums, suffered prior

22   exposures of their personal information, or already had their information for sale on black

23   markets.  Plaintiffs' proposed Trial Plan does not cure these issues for the reasons discussed in

24   Defendants' Response to the Trial Plan, and a class trial would be unmanageable.  *See Hadjavi v.*

25   *CVS Pharmacy, Inc.*, 2011 WL 3240763, at *9 (C.D. Cal. July 25, 2011) (class treatment

26   inappropriate "due to manageability concerns regarding the number of individual issues").

27                                            **CONCLUSION**

28           For all the foregoing reasons, Plaintiffs' Motion for Class Certification should be denied.

Respectfully submitted,

**HOGAN LOVELLS US LLP**
CRAIG A. HOOVER
E. DESMOND HOGAN
PETER R. BISIO
MICHELLE A. KISLOFF
ALLISON M. HOLT

Dated: April 7, 2017

By:    /s/ Craig A. Hoover

Craig A. Hoover (SBN 113965)
craig.hoover@hoganlovells.com
E. Desmond Hogan (admitted pro hac vice)
desmond.hogan@hoganlovells.com
Peter R. Bisio (admitted pro hac vice)
peter.bisio@hoganlovells.com
Michelle A. Kisloff (admitted pro hac vice)
michelle.kisloff@hoganlovells.com
Allison M. Holt (admitted pro hac vice)
allison.holt@hoganlovells.com
555 Thirteenth Street, NW
Washington, DC  20004-1109
Telephone:     (202) 637-5600
Facsimile:      (202) 637-5910

Michael Maddigan (SBN 163450)
michael.maddigan@hoganlovells.com
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA  90067
Telephone:     (310) 785-4600
Facsimile:      (310) 785-4601

*Attorneys for Defendants Anthem, Inc., and
certain of its affiliates that have been named
as defendants in the Third Amended
Complaint (collectively, "Anthem") and
Defendants Blue Cross and Blue Shield of
Alabama,  USAble Mutual Insurance
Company d/b/a Arkansas Blue Cross Blue
Shield and BlueAdvantage Administrators of
Arkansas, California Physicians' Service
d/b/a Blue Shield of California, Blue Cross
and Blue Shield of Florida, Inc. d/b/a Florida
Blue, CareFirst of Maryland, Inc., Blue
Cross and Blue Shield of Massachusetts, Inc.,
Blue Cross and Blue Shield of Michigan,
Blue Cross and Blue Shield of Minnesota,*

1

2

3

*Horizon Healthcare Services, Inc., Blue Cross and Blue Shield of North Carolina, Highmark Health Services, and Blue Cross and Blue Shield of Vermont*

4   **TROUTMAN SANDERS LLP**
    CHAD R. FULLER

5

6   Dated: April 7, 2017          By:    /s/ Chad R. Fuller

7                                 Chad R. Fuller (SBN 190830)
                                  chad.fuller@troutmansanders.com
8                                 11682 El Camino Real, Suite 400
                                  San Diego, CA 92130
9                                 Telephone:    (858) 509-6056
                                  Facsimile:    (858) 509-6040
10

11                                *Attorney for Anthem*

12                                **NELSON MULLINS RILEY &
                                  SCARBOROUGH LLP**
13                                JOHN D. MARTIN
                                  LUCILE H. COHEN
14

15  Dated: April 7, 2017          By:    /s/ John D. Martin

16                                John D. Martin (admitted pro hac vice)
                                  john.martin@nelsonmullins.com
17                                Lucile H. Cohen (admitted pro hac vice)
                                  lucie.cohen@nelsonmullins.com
18                                1320 Main Street, 17th Floor
                                  Columbia, SC 29201
19                                Telephone:    (803) 255-9241
                                  Facsimile:    (858) 256-7500
20

21                                *Attorneys for Anthem*

22                                **KIRKLAND & ELLIS LLP**
23                                BRIAN P. KAVANAUGH
                                  KATHERINE WARNER
24                                JESSICA STAIGER
                                  LUKE C. RUSE
25                                TIM PICKERT

26  Dated: April 7, 2017:         By:    /s/ Brian P. Kavanaugh

27                                Brian Kavanaugh (admitted pro hac vice)
28                                brian.kavanaugh@kirkland.com

Hogan Lovells US
LLP
Attorneys At Law

- 42 -
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 15-MD-02617-LHK

Katherine Warner (admitted pro hac vice)
kate.warner@kirkland.com
Jessica Staiger (admitted pro hac vice)
iessica.staiger@kirkland.com
Luke C. Ruse (admitted pro hac vice)
luke.ruse@kirkland.com
Tim Pickert (admitted pro hac vice)
tim.pickert@kirkland.com
300 N. LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for The Blue Cross Blue Shield
Association and Health Care Service
Corporation, a Mutual Legal Reserve
Company, d/b/a Blue Cross and Blue Shield
of Illinois and Blue Cross and Blue Shield of
Texas*

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 15-MD-02617-LHK