ALTSHULER BERZON LLP
EVE CERVANTEZ (SBN 164709)
ecervantez@altshulerberzon.com
JONATHAN WEISSGLASS (SBN 185008)
jweissglass@altshulerberzon.com
DANIELLE E. LEONARD (SBN 218201)
dleonard@altshulerberzon.com
MEREDITH A. JOHNSON (SBN 291018)
mjohnson@altshulerberzon.com
TONY LOPRESTI (SBN 289269)
tlopresti@altshulerberzon.com
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

COHEN MILSTEIN SELLERS & TOLL PLLC
ANDREW N. FRIEDMAN (admitted pro hac vice)
afriedman@cohenmilstein.com
GEOFFREY GRABER (SBN 211547)
ggraber@cohenmilstein.com
SALLY M. HANDMAKER (SBN 281186)
shandmaker@cohenmilstein.com
ERIC KAFKA (admitted pro hac vice)
ekafka@cohenmilstein.com
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
Telephone:  (202) 408-4600
Facsimile:   (202) 408-4699

*Lead Plaintiffs' Counsel*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| *In Re Anthem, Inc. Data Breach Litigation* | Case No. 15-MD-02617-LHK |
| | **PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |
| | Date: June 29, 2017<br>Time: 1:30 p.m.<br>Judge: Hon. Lucy H. Koh<br>Crtrm: 8, 8th Floor |

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# Table of Contents

**Page**

Table of Authorities ............................................................................................................ iv

Introduction ....................................................................................................................... 1

Argument ........................................................................................................................... 2

I. Plaintiffs' Claims Against Anthem All Satisfy Rule 23(a) ........................................... 2

    A. Plaintiffs' Claims Raise Common Questions Subject To Common Answers ............... 2

        1. The Inadequacy of Anthem's Data Security Raises Common
           Questions ................................................................................................. 2

        2. Each of Plaintiffs' Claims Raises Numerous Other Common
           Questions ................................................................................................. 5

    B. The Class Representatives' Claims Are Typical of the Class Claims ........................ 5

        1. "Unique" Defenses Do Not Undermine Typicality Here ................................... 5

        2. The California Contract Representatives' Claims Are Typical ........................ 6

    C. The Named Plaintiffs Are Adequate ..................................................................... 7

II. Plaintiffs' Injunctive Relief Claims Against Anthem Should
    Be Certified Under (b)(2) ......................................................................................... 8

    A.  A Single Injunction to Provide Adequate Data Security Is
       Appropriate ....................................................................................................... 8

    B. All Class Members Are Entitled To Fraud Detection/Prevention
       Services ............................................................................................................ 8

III. Rule 23(b)(3) Certification is Appropriate Because Common Issues Predominate
    and a Class Action Is Superior For All Claims ........................................................... 9

    A. The Inadequacy of Anthem's Data Security Is the Predominant
       Question ............................................................................................................ 9

    B. Common Issues Predominate for the UCL Claims Against Anthem ........................ 11

        1. Unfair Practices ........................................................................................... 11

        2. Unlawful Practices. ..................................................................................... 12

        3. Fraudulent Omissions. ................................................................................. 14

        4. Restitution. .................................................................................................. 15

           a. Feasibility. ........................................................................................... 15

b. Filed Rate Doctrine. .................................................................................16

c. Premium Payments..................................................................................17

5. The Proposed UCL Class is Not Overbroad. .........................................18

C. The NY GBL Claim Raises Common Questions that Predominate............................18

1. Liability..........................................................................................................18

2. Common Damages Issues Predominate ...........................................................19

a. Statutory Damages ..................................................................................19

b. Benefit of the Bargain. ...........................................................................19

i. Filed Rate.........................................................................................19

ii. Premium Payments. ........................................................................20

c. Loss of Value of PII. ...............................................................................20

D. Common Issues Predominate For the California Breach of Contract
Claims...........................................................................................................21

1. Anthem California Contract Class ..................................................................21

a. Liability. .................................................................................................22

b. Damages..................................................................................................23

i. Benefit of the Bargain. ....................................................................23

ii. Loss of Value of PII .......................................................................24

iii. Out of Pocket Costs .......................................................................24

2. Anthem California ASO Contract Class ..........................................................24

E. Common Questions Predominate With Respect to the Federal Contract Claim ..........25

F. A Class Trial Is Manageable and Superior ...................................................................26

IV. The UCL Claims Against Non-Anthem Defendants Should Be Certified ..............................27

A. The UCL Claims Against Non-Anthem Defendants Raise Common
Questions......................................................................................................27

B. The Claims of the Class Representatives Are Typical of the Class
Claims...........................................................................................................27

C. Article III Is No Bar to Certification............................................................................28

1. Plaintiffs Have Standing Against All Non-Anthem Defendants. ....................28

2.  Any Question Regarding Plaintiffs' Standing Should Be
Addressed After Class Certification.................................................................29

D. Plaintiffs' Request for Injunctive Relief is Common to the Class...............................29

E. Common Issues Predominate and a Class Action is Superior.....................................30

Conclusion.............................................................................................................................30

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Table of Authorities

**Federal Cases**

*Abdullah v. U.S. Sec. Assocs., Inc.*,
    731 F.3d 952 (9th Cir. 2013) ............................................................................... 2

*Adobe Sys. Inc. v. Blue Source Grp., Inc.*,
    125 F. Supp. 3d 945 (N.D. Cal. 2015) ................................................................ 16

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
    526 U.S. 40 (1999) ........................................................................................ 17, 18

*Backus v. Gen. Mills, Inc.*,
    122 F. Supp. 3d 909 (N.D. Cal. 2015) ................................................................ 12

*Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*,
    270 F.R.D. 488 (N.D. Cal. 2010) .......................................................................... 7

*Bates v. United Parcel Serv., Inc.*,
    511 F.3d 974 (9th Cir. 2007) ............................................................................... 29

*Briseno v. ConAgra Foods, Inc.*,
    2017 WL 53421 (9th Cir. Jan. 3, 2017) .............................................................. 15

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) ............................................................................ 27

*Cady v. Anthem Blue Cross Life and Health Ins. Co.*,
    583 F. Supp. 2d 1102 (N.D. Cal. 2008) .............................................................. 28

*Donovan v. Philip Morris USA, Inc.*,
    268 F.R.D. 1 (D. Mass. 2010) ............................................................................... 9

*Dolmage v. Combined Ins. Co. of Am.,*,
    2016 WL 754731 (N.D. Ill. Feb. 23, 2016) ........................................................ 22

*Dupler v. Costco Wholesale Corp.*,
    249 F.R.D. 29 (E.D.N.Y. 2008) ..................................................................... 13, 19

*Ebin v. Kangadis Food Inc.*,
    297 F.R.D. 561 (S.D.N.Y. 2014) ........................................................................ 19

*Ellis v. Costco Wholesale Corp.*,
    285 F.R.D. 492 (N.D. Cal. 2012) ........................................................................ 24

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ................................................................................. 8

*Fero v. Excellus Health Plan, Inc.*,
  2017 WL 713660 (W.D.N.Y. Feb. 22, 2017) .......................................................... 26

*Guido v. L'Oreal, USA, Inc.*,
  2014 WL 6603730 (C.D. Cal. July 24, 2014) ........................................................ 15

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) .................................................................................. 6

*Herskowitz v. Apple, Inc.*,
  301 F.R.D. 460 (N.D. Cal. 2014) ....................................................................... 9, 12

*In re Activision Sec. Litig.*,
  621 F. Supp. 415 (N.D. Cal. 1985) .................................................................. 27, 28

*In re Adobe Sys., Inc. Privacy Litigation*,
  66 F. Supp. 3d 1197 (N.D. Cal. 2014) .......................................................... *passim*

*In re Carrier IQ, Inc.*,
  78 F. Supp. 3d 1051 (N.D. Cal. 2015) ....................................................... 12, 15, 29

*In re Computer Memories Sec. Litig.*,
  111 F.R.D. 675 (N.D. Cal.1986) ........................................................................... 27

*In re Conseco Life Ins. Co. Life Trend Ins. Sales & Mktg. Litig.*,
  270 F.R.D. 521 (N.D. Cal. 2010) ........................................................................... 7

*In re Coordinated Title Ins. Cases*,
  2004 WL 690380 (Sup. Ct. 2004) ........................................................................ 19

*In re Dial Complete Mktg. & Sales Practices Litig.*,
  312 F.R.D. 36 (D.N.H. 2015) .............................................................................. 16

*In re Express Scripts, Inc., Pharmacy Benefits Mgmt. Litig.*,
  2007 WL 1796224 (E.D. Mo. June 20, 2007) ...................................................... 25

*In re Lenovo Adware Litig.*,
  2016 WL 6277245 (N.D Cal. Oct. 27, 2016) ........................................................ 20

*In re Myford Consumer Litigation*
  2016 WL 6873453 (N.D. Cal. Nov. 22, 2016) ...................................................... 14

*In re Stec Inc. Sec. Litig.*,
  2012 WL 6965372 (C.D. Cal. Mar. 7, 2012) .......................................................... 7

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
  219 F.R.D. 661 (D. Kan. 2004) .............................................................................. 7

*In re Yahoo Mail Litig.*,
    308 F.R.D. 577 (N.D. Cal. 2015) ........................................................................... 5, 8

*Jones v. Bayer Corp.*,
    280 F.R.D. 551 (S.D. Cal. 2012) ................................................................................ 4

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) ............................................................................. 5, 24

*Kennedy v. Jackson Nat. Life Ins. Co.*,
    2010 WL 2524360 (N.D. Cal. June 23, 2010) ............................................................ 8

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
    232 F.3d 979 (9th Cir. 2000) ............................................................................. 16, 17

*Kurtz v. Kimberly-Clark Corporation*,
    __ F.Supp.3d __, 2017 WL 1155398 (E.D.N.Y Mar. 27, 2017) ............................. 15, 16, 19

*La Mar v. H B Novelty & Loan Co.*,
    489 F.2d 461 (9th Cir. 1973) ..................................................................................... 27

*Libby, McNeill, and Libby v. City Nat. Bank*,
    592 F.2d 504 (9th Cir. 1978) ............................................................................. 25, 29

*Longest v. Green Tree Servicing LLC*,
    308 F.R.D. 310 (C.D. Cal. 2015) ............................................................................. 12

*Macro v. Indep. Health Ass'n, Inc.*,
    180 F. Supp. 2d 427 (W.D.N.Y. 2001) ..................................................................... 20

*Mazur v. eBay Inc.*,
    257 F.R.D. 563 (N.D. Cal. 2009) ............................................................................... 6

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ..................................................................................... 18

*Miller v. Fuhu Inc.*,
    2015 WL 7776794 (C.D. Cal. Dec. 1, 2015) ............................................................ 16

*Moore v. Apple Inc.*,
    309 F.R.D. 532 (N.D. Cal. 2015) ....................................................................... 23, 25

*O'Connor v. Uber Techs., Inc.*,
    311 F.R.D. 547 (N.D. Cal. 2015) ............................................................................... 7

*Orlander v. Staples, Inc.*,
    802 F.3d 289 (2d Cir. 2015) ..................................................................................... 19

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ........................................................................................... 29

*Oscar v. BMW of N. Am., LLC*,
    2012 WL 2359964 (S.D.N.Y. June 19, 2012) ...................................................... 19

*Payton v. Cnty. of Kane*,
    308 F.3d 673 (7th Cir. 2002) ............................................................................... 29

*Plascencia v. Lending 1st Mortg.*,
    259 F.R.D. 437 (N.D. Cal. 2009) ........................................................................... 6

*Polanco v. Schneider Nat. Carriers, Inc.*,
    2012 WL 10717265 (C.D. Cal. Apr. 25, 2012) ...................................................... 5

*Pulaski & Middleman, LLC v. Google, Inc.*,
    802 F.3d 979 (9th Cir. 2015) ..................................................................... 15, 16, 21

*Randolph v. J.M. Smucker Co.*,
    303 F.R.D. 679 (S.D. Fla. 2014) ......................................................................... 16

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ............................................................................... 9

*Senne v. Kansas City Royals Baseball Corp.*,
    315 F.R.D. 523 (N.D. Cal. 2016) .............................................................. 27, 28, 29

*Shields v. Walt Disney Parks & Resorts US, Inc.*,
    279 F.R.D. 529 (C.D. Cal. 2011) ........................................................................... 9

*Smith v. Triad of Alabama, LLC*,
    2017 WL 1044692 (M.D. Ala. Mar. 17, 2017) ..................................................... 11

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011) ............................................................................. 14

*Torres v. Mercer Canyons, Inc.*,
    835 F.3d 1125 (9th Cir. 2016) ................................................................. 10, 18, 26

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ................................................................................. passim

*United Steel Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*,
    593 F.3d 802 (9th Cir. 2010) ............................................................................... 13

*Vaquero v. Ashley Furniture Indus., Inc.*,
    824 F.3d 1150 (9th Cir. 2016) ....................................................................... passim

*Villalpando v. Exel Direct Inc.*,
   303 F.R.D. 588 (N.D. Cal. 2014) ................................................................. 11

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ............................................................................. 2, 5

*Walters v. Reno*,
   145 F.3d 1032 (9th Cir. 1998) ...................................................................... 8

*Werdebaugh v. Blue Diamond Growers*,
   2014 WL 2191901 (N.D. Cal. May 23, 2014) .............................................. 14

*Wetzel v. Lou Ehlers Cadillac Grp. Long Term Disability Ins. Program*,
   222 F.3d 643 (9th Cir. 2000) ...................................................................... 26

*Wit v. United Behavioral Health*,
   317 F.R.D. 106 (N.D. Cal. 2016) ................................................................ 30

**California Cases**

*Cellular Plus, Inc. v. Superior Court*,
   14 Cal. App. 4th 1224 (1993) ..................................................................... 17

*Cortez v. Purolator Air Filtration Prod. Co.*,
   23 Cal. 4th 163 (2000) .............................................................................. 17

*Coughlin v. Blair*,
   41 Cal. 2d 587 (1953) .......................................................................... 23, 24

*Fogel v. Farmers Grp., Inc.*,
   160 Cal. App. 4th 1403 (2008) ................................................................... 17

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ........................................................................... 6, 14

*In re Vioxx Class Cases*
   180 Cal. App. 4th 116 (2009) ..................................................................... 14

*MacKay v. Superior Court*,
   188 Cal. App. 4th 1427 (2010) ................................................................... 16

*Pink Dot, Inc. v. Teleport Commc'ns Grp.*,
   89 Cal. App. 4th 407 (2001) ...................................................................... 16

*Rose v. Bank of Am., N.A.*,
   57 Cal. 4th 390 (2013) .............................................................................. 14

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
CASE NO. 15-md-02617-LHK

*Shersher v. Superior Court*,
 154 Cal. App. 4th 1491 (2007) ...................................................................... 17

*Troyk v. Farmers Grp., Inc.*,
 171 Cal. App. 4th 1305 (2009) ...................................................................... 17

**Illinois Case**

*Horwitz ex rel. Gilbert v. Bankers Life & Cas. Co.*,
 319 Ill. App. 3d 390 (2001) ........................................................................... 16

**New York Cases**

*Batas v. Prudential Ins. Co. of Am.*,
 281 A.D.2d 260 (N.Y. App. Div. 2001) .......................................................... 20

*Beller v. William Penn Life Ins. Co. of N.Y.*,
 8 A.D.3d 310 (N.Y. App. Div. 2004) .............................................................. 20

*Goshen v. Mus. Life Ins. Co. of N.Y.*,
 98 N.Y.2d 314 (2002) .............................................................................. 19, 20

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
 85 N.Y.2d 20 (1995) ...................................................................................... 19

**Federal Statutes**

15 U.S.C. § 1012(b) ............................................................................................ 14

15 U.S.C. § 6801 ................................................................................................ 30

**State Statutes**

Cal. Bus. & Prof. Code § 17203 ........................................................................ 17

Cal. Civ. Proc. Code § 337 ................................................................................ 26

Cal Health & Safety Code §§ 1367 .................................................................... 17

Cal Health & Safety Code §§ 1385.03 ............................................................... 17

Cal. Ins. Code §§ 10181.3 .................................................................................. 17

Cal. Ins. Code §§ 10181.6 .................................................................................. 17

**Federal Regulations**

45 C.F.R. § 160.103 ........................................................................................... 13

45 C.F.R. §§ 164.306(a)(1)-(4) ................................................................................ 12

45 C.F.R § 164.308(a)(1) ......................................................................................... 12

45 C.F.R §§ 164.308(a)(5)(ii)(B)-(D) ...................................................................... 13

45 C.F.R § 164.312(a)(1) .......................................................................................... 13

45 C.F.R § 164.312(b) ........................................................................................... 3,13

45 C.F.R § 164.312(d) ............................................................................................... 3

**Secondary Source**

13 Williston & Lord, *A Treatise on the Law of Contracts* § 37:28 (4th ed. 2013) ........................ 25

# INTRODUCTION

This is a case about Anthem's inadequate data security for a single data warehouse in which Anthem aggregated all class members' personally identifying information ("PII"). Because of that inadequate security, hackers were able to obtain class members' PII in a single data breach. Plaintiffs will prove with common evidence that Anthem's failure to take mandatory cybersecurity precautions that its marginalized information security professionals had sought for years allowed one of the largest data breaches in U.S. history. Anthem disclaims responsibility for its grossly inadequate data security practices, contending that it faced an "unstoppable" foe, but this defense only serves to highlight that common issues predominate. Focusing on another common issue, Anthem argues that class members have nothing to fear because the cyber-criminals were purportedly employees of the Chinese government (*i.e.*, Anthem speculates that the criminals' motives were exclusively espionage rather than profit). This is small comfort for class members whose only certain knowledge is that Anthem failed to protect their PII from criminals. Plaintiffs will rely upon common evidence to disprove Anthem's speculation, and demonstrate the serious risk of harm faced by all class members into the future.

Plaintiffs moved for injunctive relief classes to require Anthem to (1) provide adequate cybersecurity for their PII (still stored in Anthem's vulnerable databases), and (2) engage a fraud detection and prevention service. Anthem's argument against Rule 23(b)(2) certification – that class members have different information at risk – shows that Anthem still doesn't get it. Class members are *all* entitled to have Anthem take adequate steps to protect their PII, no matter what type of PII it is. The proposed injunctive relief (seeking services, not money) is appropriate.

Certification of the Rule 23(b)(3) monetary relief classes is also appropriate. Trial of those claims will center on a single predominant question — whether Anthem's security was adequate. If Plaintiffs prove that it was not, the remaining questions are equally common to all proposed class members: (1) Whether Anthem's inadequate data security violated specified laws or California public policy of protecting private information; (2) Whether Anthem's uniform failure to disclose the fact of its inadequate data security would have misled a reasonable consumer; (3) Whether Anthem's inadequate data security breached the federal contract and Anthem's uniform privacy

policies, and whether those privacy policies were incorporated into Anthem's California contracts; and (4) Whether Non-Anthem Defendants failed to ensure that Anthem had adequate security to protect their members' PII.

Anthem's opposition to class certification underscores that this case is appropriate for class treatment:  The overwhelming majority of issues raised by Anthem are merits disputes common to *all* class members, with a few issues that will need to be decided categorically for certain business lines or other identifiable groups.  Anthem identifies *no* "individualized" issues requiring class member by class member determinations, except for a single defense (causation) pertaining to one type of damages (Out-of-Pocket Expenses), that is no bar to class certification.  A class trial centering on the core predominant data security issues will be infinitely more manageable and superior than millions of separate trials.

## ARGUMENT

### I.    Plaintiffs' Claims Against Anthem All Satisfy Rule 23(a)

Plaintiffs established that each of their classes satisfy Rule 23(a).  ECF 743-12 (Plaintiffs' Memorandum In Support of Class Certification) ("Mem") at 6-9.  Anthem's arguments to the contrary ignore controlling Ninth Circuit law, turn on merits disputes that are common to the class, or are predominance arguments by another name, that are discussed *infra* at 9-26.

#### A. Plaintiffs' Claims Raise Common Questions Subject To Common Answers

#### 1. The Inadequacy of Anthem's Data Security Raises Common Questions

Every one of Plaintiffs' claims will turn on whether Anthem failed to provide class members with data security adequate to protect their PII.  Mem. at 2-4, 6-7.  Rule 23(a)(2) is satisfied by this "single *significant* question of law or fact" that is "apt to drive the resolution of the litigation."  *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)).

Plaintiffs will use common evidence to prove that Anthem had inadequate cybersecurity since at least 2011.  *See, e.g.,* T32 at 1 (2015 email from Anthem's Chief Information Security Officer: "I have been trying for *five years* to lock down or close some of these open holes").  For example, the five deficiencies highlighted by Plaintiffs' expert (Mem. at 3-4) demonstrate

fundamental cybersecurity flaws from at least 2011 through January 2015:

(1) ███████████████████████████████████████████

███████████████████████████████████████████

███████████████ T175, which was one of the "open holes" that Anthem's CISO had not been able to close prior to the data breach. T32 at 1.

(2) ██████████████████████████████████████

██████████████████████████████ T176, ████████████████████████████

████████████████████████████████████████ T177 at Slide 4; T178 at 10-11.

(3) ███████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████ *see* T179 at 10.  Even then, Anthem ignored its own policies. ███████████████████

████████████████████████████████████████

██████████████ *See* T180 at 7.  Despite this serious security threat, ██████████████████████

████████████████ *Id.*  By then it was too late.  Anthem's willful violations rendered it █████

████████████ *See* T16 (Strebe Rep.) at 33-42.

(4) ███████████████████████ Since at least 2011, Anthem's policies required

████████████████████████████████████ T181 at 8, ████████████████

████████████████████████████████████████ T180 at 8.  At the time of the data breach, ████████████████████████████

█████████████████████████ T174 at ¶¶ 2-8.

(5) ████████████████████████████████████

██████████████████████████████████████████ T182 at 194, ████

████████████████████████████████████████████████

███████████████████████ T183 at 191:22-192:13, 214:1-216:20.

Although Anthem argues that Plaintiffs must prove the inadequacy of its data security from 2011 to the time of the breach in light of unspecified cybersecurity standards that changed in

unspecified ways over time (Opp. at 7-8), it does not concede that the adequacy of its data security fluctuated from year to year, instead arguing that its cybersecurity was always "strong." Opp. at 3-7. Nor does it argue that cybersecurity standards ever decreased, rather than increasing. Plaintiffs will respond with common evidence of Anthem's continuing security policy violations from 2011 to the time of the data breach. *See Johns v. Bayer Corp.,* 280 F.R.D. 551, 559 (S.D. Cal. 2012) (defendants' arguments about alleged changing standards over time raised common merits arguments).[1] Anthem's claims of adequate cybersecurity are refuted by common evidence that should be presented to a jury only once, not millions of times, including:

- Anthem relies on its expert, Savage, to argue that it had a "broad array" of cyber defenses, but Savage specifically *refused* to opine that Anthem's pre-breach cybersecurity was reasonable or sufficient to protect PII. *Compare* Opp. at 3-4 to T184 at 102:1-104:10. Plaintiffs' cybersecurity expert will show how Anthem's cybersecurity failures, including the failure to follow its own policies, allowed the data breach to occur. T16 (Strebe Report) at 29-69.

- Anthem emphasizes its HITRUST certification. Opp. at 4. Plaintiffs will prove that the HITRUST certification did not include the database at-issue (████████) (T185 at 2), the review was largely based on self-reporting, Anthem misreported its compliance with key security items, and Anthem's CISO sits on HITRUST's Board.[2]

- Anthem contends that NAIC found its cybersecurity "reasonable." Opp. at 4. But Plaintiffs will show that this report is unreliable because it too was based on self-reporting and "did not include verification of any of the underlying source data." R14 at 14.

- Anthem attempts to show the attack was sophisticated or undetectable, claiming that the hackers used "a previously unknown type of malware." Opp. at 1, 5. Plaintiffs will show that the malware was in fact detectable, and ████████████████████ ████████████████████████████████████████ T187 at 21, 28-29.

- Anthem relies on its expert Mulvenon to claim that the attack was "close to unstoppable." Opp. at 5. Plaintiffs will demonstrate that ████████████████ ████████████████████████████████████████████ ████████████████████ *See* R2 (Friedberg Report) at 16-17; T175. Plaintiffs will also demonstrate that

---

[1] Even if there were any relevant changes to Anthem's cybersecurity over time (and there were not) this would not affect commonality on Plaintiffs' claims for injunctive relief, which are premised on Anthem's *currently* inadequate data security. Rule 23(b)(2) certification is discussed *infra*, at 8-9.

[2] ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ T186 at 156, 214-15. ████████ *See* T180 at 7.

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
CASE NO. 15-md-02617-LHK

Mulvenon does not even claim to be a cybersecurity expert. ECF 820 (Motion to Exclude Mulvenon) at 1.

**2. Each of Plaintiffs' Claims Raises Numerous Other Common Questions**

Resolution of all the claims in this case will turn on the adequacy of Anthem's data security, and that is more than sufficient to establish commonality.  Nonetheless, Plaintiffs have identified many other common questions flowing from Anthem's core failure to protect class member PII.  Mem. at 15, 18, 24-25.  Anthem, in turn, emphasizes here other defenses common to the classes, relying on its expert Mulvenon to contend that *no* class members have or will be harmed by its security failures because the allegedly Chinese hackers intend to use the stolen PII for espionage rather than fraud, and that Anthem data is not for sale on the Dark Web.  Opp. at 4-6.  Plaintiffs will defeat these defenses with common evidence, demonstrating that Anthem's expert's testimony is speculative, lacks factual underpinning, and contradicts his earlier public statements (ECF 820 (Motion to Exclude Mulvenon)), and that data is often almost impossible to find on the Dark Web, but still available to criminals.  T23 (Winningham Report) ¶¶ 46-56.

Anthem's argument that some questions are not relevant to some claims (Opp. at 8-9) is a red herring, when those questions are indisputably relevant to other claims.  Commonality is claim-specific.  *See, e.g.*, *Polanco v. Schneider Nat. Carriers, Inc.*, 2012 WL 10717265, at *7 (C.D. Cal. Apr. 25, 2012).  And Anthem is just wrong on the law to contend that a common question must resolve the entire action.  A question must resolve "'*an* issue,' not *all* issues."  *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 592 (N.D. Cal. 2015) (*quoting Wal-Mart*, 131 S. Ct. at 2551).  Anthem's argument that *other* questions raised by Plaintiffs' California contract and UCL unlawful claims are not common, while wrong, also does not defeat commonality.  For purposes of commonality, "even a single common question will do."  *Wal-Mart*, 131 S. Ct. at 2551 (internal alterations omitted).  *See, infra* at 9-26 (discussing other issues raised by Anthem with respect to predominance).

**B. The Class Representatives' Claims Are Typical of the Class Claims**

The proposed class representatives' claims are typical of class members' claims because they were all injured by "the same course of conduct" – Anthem's failure to protect their PII and its concomitant violation of consumer protection statutes and contracts.  Mem. at 7-9; *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017).

### 1. "Unique" Defenses do Not Undermine Typicality Here

Anthem contends that proposed class representatives are subject to "unique defenses" (Opp. at 10-12) but these defenses are not "unique" at all and apply with equal force to other proposed class members. *See, e.g.*, *Johns*, 280 F.R.D. at 557 (supposedly "unique" defenses regarding lack of reliance, proof of injury, and damages made class representatives "more typical (not less) of other class members").[3]   Indeed, Anthem raises the exact same defenses twice – once with respect to class representatives, and again with respect to other class members. *Compare* Opp. at 10-12 *with* Opp. at 22-30 (███████████████████, type and accuracy of data exfiltrated, filed rate doctrine, failure to pay premiums, failure to review data security disclosures, reenrollment after breach notification).  This demonstrates that Anthem's "unique" defenses have nothing to do with typicality, and, as Anthem itself describes them, relate only to predominance. *See, e.g., Plascencia v. Lending 1st Mortg.*, 259 F.R.D. 437, 443-44 (N.D. Cal. 2009).[4]

### 2. The California Contract Representatives' Claims Are Typical

Plaintiffs are typical when, as here, they allege breach of the *same* contract terms – Anthem's uniform privacy policies. Mem. at 8-9.  Anthem is wrong that the California contract class representatives' claims do not "fairly encompass" the class claims because they were not enrolled in all the types of plans sold by Anthem. Opp. at 12-13.  The *type* of plan is a distinction without a difference, where Plaintiffs demonstrate that the *same* contract terms – the uniform privacy policies – were incorporated into all types of plan. Mem. at 21-22; *infra* at 22-23.  Anthem's cases

---

[3] A "unique" defense defeats typicality where the proposed "representative is preoccupied with defenses unique to it." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508-09 (9th Cir. 1992) (internal quotation marks omitted).  In the case cited by Anthem, the representative's claims challenging fake bidding were not "typical" because she was a *seller* subject to an "unclean hands defense" for fake bidding herself. *Mazur v. eBay Inc.*, 257 F.R.D. 563, 568-69 (N.D. Cal. 2009).

[4] Anthem argues that the UCL class representatives will not be able to show "that, had the omitted information been disclosed, [they] would have been aware of it and behaved differently."  Opp. at 11.  This is a merits issue relevant to the class representatives only, not a typicality issue.  Under the UCL, class representatives must meet a standing requirement that includes a reliance element *beyond* what the rest of the class must prove. *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009).  The class representatives have confirmed that, had they known about Anthem's inadequate security before entrusting the company with their PII, they would have acted differently. T1-T8.  Plaintiffs' decision to stay enrolled with Anthem does not undercut this testimony.  Their PII was already in Anthem's insecure databases and would not have been removed had they switched insurers. *See In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1231 (N.D. Cal. 2014) (plaintiffs sufficiently alleged reliance despite decision to re-subscribe after learning of omission).

are all inapposite because they involve variance in the relevant *terms* of the contracts at issue (or a failure to submit evidence as to the relevant terms).  Opp. at 12-13.

Anthem points to the few plans (mostly vision and dental) that lack express incorporation language to argue against typicality, but Plaintiffs already identified those plans and established that they also incorporated the privacy policies.  Mem. at 21-22.  In any event, this is at most a defense applicable to an identifiable and uniform group of absent class members; it does not make the class representatives atypical.  *See Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*, 270 F.R.D. 488, 493-94 (N.D. Cal. 2010) (typicality not implicated by defenses that apply to absent class members).  Similarly, that one Plaintiff's ASO had more extensive privacy promises than other contracts (Opp. at 13) is the opposite of a unique defense, and does not defeat typicality.

**C. The Named Plaintiffs Are Adequate**

Plaintiffs demonstrated that they will adequately represent the class.  Mem. at 9.  Anthem contests adequacy only for the four California Contract Class Plaintiffs.  Opp. at 16.  They too are adequate.  Anthem complains that Plaintiffs limited the contract class to exclude those who were not enrolled in Anthem plans in 2014 or 2015 (which is when the data breach occurred).  Anthem does not address how individuals whose prior-year contracts had terminated by the time of the data breach would have a claim for breach of an enforceable contract.  "[T]his case is a far cry from those in which courts found inadequacy, as …Plaintiffs are not 'pursuing relatively insignificant claims while jeopardizing the ability of class members to pursue far more substantial, meaningful claims.'"  *O'Connor v. Uber Techs., Inc.*, 311 F.R.D. 547, 566 (N.D. Cal. 2015), *quoting In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 669 (D. Kan. 2004)).  Anthem's cases are thus inapposite.  *See, e.g, In re Stec Inc. Sec. Litig.*, 2012 WL 6965372 (C.D. Cal. Mar. 7, 2012) (foregoing stronger claims).[5]  Narrowing a class definition in light of the pertinent facts does not create a conflict.  *In re Conseco Life Ins. Co. Life Trend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 532 (N.D. Cal. 2010) ("Plaintiffs are permitted to press a theory of contract liability that

---

[5] Unlike in Anthem's cases, Plaintiffs have not "jettisoned" any remedies either. The two types of damages available exclusively for contract claims, Loss of Value of PII and Out-of-Pocket Expenses, flow from the 2014-2015 data breach. Plaintiffs seek Benefit of the Bargain damages back to 2011 under the UCL.

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
CASE NO. 15-md-02617-LHK

affords them the best chance of certification and of success on behalf of the class"); *Kennedy v. Jackson Nat. Life Ins. Co.*, 2010 WL 2524360, at \*5 (N.D. Cal. June 23, 2010) (same).

## II.   Plaintiffs' Injunctive Relief Claims Against Anthem Should Be Certified Under (b)(2)

### A.  A Single Injunction to Provide Adequate Data Security Is Appropriate

Plaintiffs seek a single injunction mandating security improvements designed to prevent future data breaches and protect all class members' PII on Anthem's systems.  T16 at 73-82.  By continuing to store all class members' PII in inadequately-secured databases located on vulnerable networks, Anthem is engaged in "a pattern or practice that is generally applicable to the class as a whole," *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998), which "is sufficient to satisfy Rule 23(b)(2)."  *In re Yahoo Mail Litig.*, 308 F.R.D. at 600.  Anthem's only response is to claim that it stores different information about different class members, Opp. at 17,[6] but Anthem does not even attempt to explain – much less provide evidence of – why it would be appropriate to provide different levels of data security depending on the particular PII stored.  *Cf.* T60-62, 64 (demonstrating that Anthem's own security policies would prohibit this).[7]

### B. All Class Members Are Entitled To Fraud Detection/Prevention Services

Plaintiffs are also entitled to (b)(2) certification for their request for fraud detection and prevention services.  Class members request these services because of Anthem's uniform cybersecurity practices, which failed to adequately protect their PII from hackers.  *See, e.g.*, T22 (Van Dyke Reply Report) at ¶19 ("All Anthem data breach victims are at increased risk of harm.").

Anthem argues that it should not have to provide the same monitoring to all class members.  Opp. at 17-18.  Rule 23(b)(2), however, "does not require [the Court] to examine the viability or bases of class members' claims for … injunctive relief."  *In re Yahoo*, 308 F.R.D. at 599 (*quoting*

---

[6] Anthem's cited evidence does not establish any relevant variation in class members' PII stored in ███████ as it pertains to confidentiality protections; instead, it shows that ███████ contains enrollment information and claim information submitted by doctors and members. R113 ¶4.

[7] The NY GBL statutory damages can also be certified under Rule 23(b)(2) because those class members all suffered the same injury – the exfiltration of their PII. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 987 (9th Cir. 2011) (when court certifies a (b)(2) class it may also certify a claim for "incidental monetary relief" that does "not require an individual determination" (quotes omitted)).  Such (b)(2) certification is appropriate here because the GBL does not (contrary to Anthem's contention) require individual proof of causation.  *See infra* at 18-19.

*Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010)).  It is enough that they "seek uniform relief and … the relief remedies a practice applicable to all class members."  *Shields v. Walt Disney Parks & Resorts US, Inc.*, 279 F.R.D. 529, 559 (C.D. Cal. 2011).[8]  And Anthem is wrong on the merits in any event.  *All* class members are entitled to fraud detection and prevention services from Anthem because all are at increased risk.  *See, e.g.*, T22 (Van Dyke Reply Report) at ¶19.  Anthem conflates this with a *damages* issue:  whether a particular class member suffered a Loss of Value of PII equivalent to the $9-$25 per month retail cost of credit monitoring.  *See id*. at ¶3.c (discussing class members who have reason to believe their names, SSNs, and DOBs were exfiltrated).  That is irrelevant to whether Anthem, whose shoddy security practices allowed the breach, should have to provide monitoring to all injured parties.

Anthem is also incorrect that a (b)(2) class would be improper because the fraud prevention and detection services that Plaintiffs seek are allegedly "practically indistinguishable from an order that [Anthem] pay Plaintiffs money."  Opp. at 18 (quoting *Herskowitz*, 301 F.R.D. at 482).  In *Herskowitz*, plaintiffs sought a judicial declaration that could be used to require Apple to pay refunds *directly to class members*.  *Id.* at 482 (suits seeking "compensation for a loss" are suits for money damages).  Plaintiffs here are not asking the Court to compel Anthem to pay money to Plaintiffs – they are asking the Court to compel Anthem to provide fraud prevention and detection services to the class to avoid future harm.  Anthem will likely need to pay for these monitoring services, but these payments will not be made *to* Plaintiffs.  "Simply because an injunction requires the defendant to pay money does not convert it into a monetary action."  *Donovan v. Philip Morris USA, Inc.*, 268 F.R.D. 1, 27 (D. Mass. 2010).

## III.     Rule 23(b)(3) Certification is Appropriate Because Common Issues Predominate and a Class Action Is Superior For All Claims

### A. The Inadequacy of Anthem's Data Security Is The Predominant Question

The most important question across claims is whether Anthem provided adequate data security for the tens of millions of individuals whose PII it aggregated in its data warehouse.  *Supra*

---

[8] The authorities Anthem cites do not counsel a different result.  In *Herskowitz v. Apple, Inc.*, for example, this Court refused to certify a Rule 23(b)(2) class where defendant had no uniform practice.  301 F.R.D. 460, 481 (N.D. Cal. 2014).

9

at 2-5.  This overarching question subsumes numerous technical inquiries, including, for example:

- Whether Anthem should have aggregated so much PII in a single data warehouse;

- Whether Anthem should have ████████████████,

- Whether Anthem should have ██████████████████████████

- Whether Anthem should have ██████████████████████████████

- Whether Anthem should have ██████████████████████████████
  ████████████████ and

- Whether Anthem should have detected that hackers were exfiltrating ████████████
  ████████████████████

As set forth in Plaintiffs' Trial Plan, these important questions will be resolved on the basis of common evidence, including expert opinion, testimony from Anthem security personnel, and Information Security documents.  Tr. Pl. at 1-3. This core evidence will be used to answer the ultimate question of Anthem's liability for each claim:  Did Anthem's deficient cybersecurity constitute an unfair or unlawful business practice?  Did it breach the federal contract or Anthem's uniform privacy policies incorporated into California contracts?  Were members of the public likely to be deceived?  Anthem has raised common defenses, centered on this same core common evidence:  its claims that it had strong data security, and that the hackers were "unstoppable."

Anthem ignores these important common questions, and instead focuses on damages. Setting aside that the most important damages issues *are* common, individual damages issues do not defeat predominance.  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).  This is so because predominance is not "nose-counting . . . More important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis . . . ."  *Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016).  The millions of data breach victims should only have to prove the inadequacy of Anthem's data security once.[9]

---

[9] In any event, all that Plaintiffs must do with respect to damages is demonstrate that their damages resulted from Anthem's conduct. *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1154 (9th Cir. 2016).  Plaintiffs will prove here that every class members' PII was taken *as a result* of Anthem's inadequate data security and that Anthem is therefore liable.  This Court has already held, as a matter of law, that if Plaintiffs prove Anthem liable, these types of damages are available.  ECF 468 at 32-35, 45-49; ECF 524 at 23-27, 75-77.  No more is needed.  Where a

Anthem focuses on a few ancillary liability issues with respect to some claims, but these are of much less significance to the predominance inquiry and do not require individualized inquiry at all.  An "individual" question is one that requires "members of a proposed class . . . to present evidence that *varies from member to member*."  *Tyson,* 136 S. Ct. at 1045 (emphasis added). This case, in contrast, presents a core nucleus of questions common to *all* class members (discussed above), and beyond that, additional questions that are common to large categories of class members; *e.g.*, whether ASO members are protected by the Gramm-Leach-Bliley Act ("GLBA"), or whether Anthem's Medi-Cal contracts incorporate its privacy policies.  Plaintiffs will answer these latter questions with "generalized" evidence, *id.*, that applies to thousands or millions of class members.  As such, these questions are "aggregation-enabling," *id.*, and weigh in favor of class certification.  *See also Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 608 (N.D. Cal. 2014) ("A court evaluating predominance must determine . . . whether there are ways to manage effectively proof of any element that may require individualized evidence." (citation omitted)).

Finally, Anthem argues that there is something special about data breach cases that precludes class certification.  Opp. at 21.  Not so.  *See Smith v. Triad of Alabama, LLC*, 2017 WL 1044692, at *16 (M.D. Ala. Mar. 17, 2017) (in data breach case, certifying breach of contract claim based on Notice of Privacy Practices).[10]  The older data breach cases Anthem cites do not counsel for a different conclusion, as all involve a claim solely for out-of-pocket costs, the one measure of damages that Plaintiffs here acknowledge cannot be tried on a class-wide basis.  None of Anthem's cases addressed Benefit of the Bargain or Loss of Value of PII damages.

**B. Common Issues Predominate for the UCL Claims Against Anthem**

**1. Unfair Practices.**  Plaintiffs' unfair practices claim depends entirely on common questions to be proven through common evidence applicable to all class members: (1) whether Anthem offended California's public policy of protecting customer data; and (2) whether Anthem's public policy violation is outweighed by the utility of its conduct.  ECF 468 at 40, *citing In re*

_____

defense going to the plausibility of a damages calculation is common to class members' claims, the issue is one for summary judgment or trial—not class certification.  *Tyson*, 136 S. Ct. at 1047-49.

[10] Anthem's attempts to distinguish the case do nothing to undermine its holding.  *See* Opp. at 21 n.12.  The number of class members and identity of the thief are irrelevant to class certification.

*Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d at 1227; Mem. at 15. The answer to the first question will rest entirely on common proof of Anthem's shoddy cybersecurity.  As this Court already held, Plaintiffs need not establish a statutory violation to prove their unfair claim.  ECF 524 at 60; *see also In re Carrier IQ, Inc.,* 78 F. Supp. 3d 1051, 1115-17 (N.D. Cal. 2015) ("an act can be 'unfair' even if not unlawful").

Likewise, whether Anthem's public policy violation is outweighed by the utility of its conduct will also yield a common answer for all class members.  Anthem has yet to identify *any* utility from its sub-standard data security practices, and so it may not even be necessary to reach this question.  *See Backus v. Gen. Mills, Inc.,* 122 F. Supp. 3d 909, 929-30 (N.D. Cal. 2015). Should Anthem identify utility from its conduct, that utility can be weighed against California public policy on a class-wide basis.  *See Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 331 (C.D. Cal. 2015) ("[W]hether a practice is unfair in the context of legislative policy, or whether harms outweigh utilities, are questions capable of classwide resolution." (internal quotation marks omitted)).  The differences raised in Anthem's brief (*e.g.*, whether a specific class member read Anthem's data security policies) do not have any possible bearing on the utility of Anthem's decision to provide inadequate data security.[11]

**2.  Unlawful Practices.**  Plaintiffs will establish their unlawful business practice claim by proving Anthem violated data security standards established by HIPAA, GLBA, or the FTC Act. Mem. at 15. Once again, the predominant question is Anthem's inadequate data security.  Anthem raises several statute-specific defenses, but these raise *common* merits issues.  For example, Anthem does not dispute that it flouted its HIPAA obligations for years, as chronicled in Anthem's own admissions and discovery documents (T180; *supra* at 3) and Plaintiffs' Expert Report.  T16 (Strebe Report at 30, 35-36, 44-45, 48-49, 54).[12]  Anthem argues that its liability could turn on whether the

---

[11] Anthem's reliance on *Herskowitz* is also misplaced.  *See supra* at 9, n.8.

[12] Plaintiffs's common evidence will prove that Anthem violated at least the following HIPAA regulations:  45 C.F.R. §§164.306(a)(1)-(4) (Anthem must ensure the confidentiality of ePHI, protect against any reasonably anticipated threats or hazards to the security of the information, and impermissible uses or disclosures of the information); 164.308(a)(1) (Anthem must "implement policies and procedures to prevent, detect, contain, and correct security violations," implement security measures sufficient to reduce the risks and vulnerabilities, and "regularly review records of information system activity," including audit logs and access reports);

particular data exfiltrated for each class member constitutes individually identifiable health information under HIPAA. Opp. at 8-9, 35.  This raises common legal issues.  *See United Steel Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010) (abuse of discretion to "conclude[e] that merely because it was not *assured* that plaintiffs would prevail on their primary legal theory, that theory was not the appropriate basis for the predominance inquiry").  In any event, Plaintiffs will prove on the merits that each one of the eight exfiltrated types of PII – even basic identifiers like names and addresses – are protected by HIPAA when held in the database of an entity like Anthem.  *See* 45 C.F.R. §160.103.  According to the U.S. Department of Health and Human Services, "Individually identifiable health information includes many common identifiers (e.g., name, address, birth date, Social Security Number)."  Summary of the HIPAA Privacy Rule, https://www.hhs.gov/hipaa/for-professionals/privacy/laws-regulations/ (last visited April 28, 2017).

Anthem's other statutory defenses are relevant, if at all, to *all* class members enrolled in particular lines of business, and thus weigh in favor of class treatment.  *See, e.g., Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 44 n.4 (E.D.N.Y. 2008) (when "there are large groups of putative class members who are similarly situated . . . that is an issue that can be dealt with in a systematic way, rather than requiring mini-trials").[13]  Anthem's status as a "financial institution" under the GLBA does not vary from one ASO class member to the next, and raises a common legal question. Similarly, Anthem's argument that the McCarran-Ferguson Act precludes application of the FTC Act raises legal questions common to the millions of class members enrolled in Anthem's fully-insured plans, that should be decided only once:  (1) Whether Anthem waived this argument by failing to plead it as an affirmative defense; and (2) Whether the McCarran-Ferguson Act could ever preempt Plaintiffs' California *state* UCL claim, when the Act was intended to pre-empt only

---

164.308(a)(5)(ii)(B)-(D)(Anthem must guard against, detect, and report malware, monitor log-in attempts and reporting discrepancies, and implement procedures for changing and safeguarding passwords); 164.312(a)(1) (Anthem must implement appropriate access controls, including mechanisms to encrypt and decrypt ePHI); 164.312(b) (Anthem must implement mechanisms to record and examine activity in information systems that contain or use ePHI).

[13] If any line of business or plan-level distinctions become relevant, which class members are enrolled in which type of plan can be determined from Anthem's records produced in discovery.

*federal* law to the extent it interferes with *state* law.[14]

**3. Fraudulent Omissions.** Plaintiffs' fraudulent omission claim rests on Anthem's admission that it did not reveal its inadequate data security to *anyone*, coupled with common proof of that inadequate security. Mem. at 15-16. The class need only show that "members of the public are likely to be deceived" by Anthem's omissions. *Tobacco II*, 46 Cal. 4th at 312 (quotes omitted). This is a common, classwide question. The entire premise of Anthem's argument to the contrary (Opp. at 33) is wrong, because reliance is not an element of a UCL claim. *Tobacco II*, 46 Cal. 4th at 306; *Stearns v. Ticketmaster Corp.,* 655 F.3d 1013, 1020 (9th Cir. 2011) ("relief under the UCL is available without individualized proof of deception, reliance and injury") (citation omitted).

Nor is there any merit to Anthem's "materiality" argument. An omission is material if a reasonable consumer "would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *Tobacco II*, 46 Cal.4th at 327. Whether "reasonable consumers" would "attach importance" to Anthem's failure to adequately protect the PII it collected about them must be determined objectively, for all class members at once. This is not that very rare case in which a party has proffered *evidence* demonstrating that the materiality of the omitted information *actually* varies from reasonable consumer to reasonable consumer. *See Werdebaugh v. Blue Diamond Growers*, 2014 WL 2191901, at *14 (N.D. Cal. May 23, 2014) (distinguishing Anthem's case on that basis).[15]

Under the guise of demonstrating that the issue of materiality is not subject to common proof, Anthem makes several merits arguments why it believes data security is not important to a reasonable consumer. Opp. at 33-34. These arguments will not be successful under the governing standard. *See Tobacco II*, 46 Cal. 4th at 326 (information can be material even if it is not "sole or

---

[14] The McCarron-Ferguson Act preempts actions brought under the FTC Act – not state law. 15 U.S.C. § 1012(b). Here Plaintiffs are "enforcing the [state] UCL, not the statutes underlying their claim of unlawful business practice." *Rose v. Bank of Am., N.A.*, 57 Cal. 4th 390, 396 (2013).

[15] Moreover, the *In re Vioxx Class Cases* decision was only in the context of Plaintiffs' CLRA claim; the court specifically refused to consider similar arguments with respect to the UCL. 180 Cal. App. 4th 116, 134 n. 19 (2009). Indeed, most of Anthem's cases discuss the CLRA rather than the UCL, but the CLRA requires proof of reliance whereas the UCL does not. *Id.* Anthem's reliance on *In re Myford Consumer Litigation* is also misplaced. There defendant proved that, despite the omission of information in its advertising material, the allegedly omitted information "was widely available to the public." 2016 WL 6873453, at *2 (N.D. Cal. Nov. 22, 2016).

even the predominant or decisive factor"). Either way, these are common issues. For example, Plaintiffs will point to the large public outcry that occurred after the data breach to show that people do reasonably assume that their PII is being appropriately safeguarded by their insurer, irrespective of whether they read the fine print policy. ECF 524 at 63; *see In re Carrier IQ, Inc.,* 78 F. Supp. 3d at 1114–15. Plaintiffs will also show that the decision to re-enroll in Anthem is fundamentally different from the decision to enroll in the first place: Anthem already has the customer's PII at the time of re-enrollment and will retain that information even if the customer switches insurers. *See, e.g.,* T189 at 84:22-85:6 ("I didn't want to keep exposing [my information] to different insurers"); T188 at 106:8:9 ("What more could go wrong?"). *See also In re Adobe*, 66 F.Supp.3d at 1231.

**4. Restitution.** Plaintiffs' Benefit of the Bargain restitution will be proven through common evidence to be provided by Plaintiffs' expert, Dr. Peter Rossi, who will determine the market value price premium Anthem received for the product it should have delivered – insurance with adequate data security – as opposed to the deficient product it actually provided.

**a. Feasibility.** Anthem's critique of Plaintiffs' expert's proposed methodology for measuring benefit of the bargain damages (Opp. at 23-24) raises common issues. Professor Rossi has explained the conjoint survey and economic analyses that he will conduct. Mem. at 11-12. Plaintiffs need not *prove* damages to establish predominance. *Vaquero*, 824 F.3d at 1155; *Briseno v. ConAgra Foods, Inc.*, 2017 WL 53421, at *2 (9th Cir. Jan. 3, 2017). The critical issue is whether Plaintiffs' alleged damages resulted from Anthem's conduct. *Vaquero*, 824 F.3d at 1154. They did. Mem. at 16-17; *cf. Pulaski & Middleman, LLC v. Google, Inc.,* 802 F.3d 979, 986 (9th Cir. 2015) (once class representative makes threshold showing restitution flows automatically).

Anthem's criticisms of Professor Rossi's proposed methodology are misplaced for the reasons explained in Plaintiffs' opposition to Defendants' motion to exclude his testimony. ECF 823. *Cf., e.g.*, *Guido v. L'Oreal, USA, Inc.*, 2014 WL 6603730, at *9 (C.D. Cal. July 24, 2014) (conjoint survey does not need to be conducted prior to class certification). These arguments are also premature. After *Tyson*, the proper result with respect to a critique of alleged "fatal similarities" in any damages analysis is to certify the class and then decide the merits issue at summary judgment or trial. *Tyson,* 136 S.Ct. at 1047-49. *Cf. Kurtz v. Kimberly-Clark Corporation*,

__ F.Supp.3d __, 2017 WL 1155398, at *58 (E.D.N.Y Mar. 27, 2017) ("The objection that poor survey design may bias the results is premature").[16]  The cases Anthem relies on all predate *Tyson* and *Vaquero* (*see* Opp. at 24 & n.14), and involve experts who, unlike Dr. Rossi, could not even begin to explain how they would go about their damages analysis.  *Compare* ECF 823 (Rossi Opp.) at 1-2 (explaining methodology including in two peer-reviewed journal articles).[17]

      **b. Filed Rate Doctrine.**  Anthem's filed rate defense raises common legal issues.  This Court need only decide whether such a defense is available under California law.  *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 992 (9th Cir. 2000) (*federal* filed rate doctrine does not preclude state law claims that implicate rates set by *state* agency).  Because Plaintiffs do not seek certification of nationwide classes under the UCL, Anthem's argument that the Court might need to apply the filed rate doctrine of multiple states is wrong.  Opp. at 24-25 (citing cases seeking nationwide classes). The UCL class here is limited to "residents of California," ECF 743 at 2-3, who bring claims under California law.  *See, e.g., Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 972 (N.D. Cal. 2015).  No other state's filed rate doctrine is relevant.[18]

      On the merits, Plaintiffs will prevail.  The California Supreme Court has not recognized any state equivalent to the federal filed rate doctrine, and the courts of appeal have declined to adopt, or even analogize to, the federal filed rate doctrine in cases involving state rates.  *See, e.g., Pink Dot, Inc. v. Teleport Commc'ns Grp.*, 89 Cal. App. 4th 407, 416-17 (2001) ("There is no parallel state filed rate doctrine[.]").[19]  Perhaps for that reason, Anthem ignores the question of

---

[16] Also, that the amount of restitution "may not be susceptible of exact proof or may be uncertain, contingent or difficult of ascertainment does not bar recovery."  *Pulaski*, 802 F.3d at 989.

[17] *See Miller v. Fuhu Inc.*, 2015 WL 7776794, *22 (C.D. Cal. Dec. 1, 2015) (in deposition, expert stated "he would 'start the evaluation process all over'"); *In re Dial Complete Mktg. & Sales Practices Litig.*, 312 F.R.D. 36, 78-79 & n.27 (D.N.H. 2015) (expert's response to question about methodology: "it may very well be some form of regression analysis or something similar to that"); *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 698 (S.D. Fla. 2014) ("Other than the bald, unsupported assertion that this method will work, Plaintiff presents no hard-and-fast evidence that the premium is capable of measurement").

[18] Anthem cites no authority holding that *another state's* filed rate doctrine is a valid defense to *California* UCL claims brought by *California* residents.  *Horwitz ex rel. Gilbert v. Bankers Life & Cas. Co.*, 319 Ill. App. 3d 390 (2001) is not to the contrary: there, the court applied Colorado's filed rate doctrine because it had previously determined that Colorado law applied to all claims.

[19] The only case Anthem cites as authority for a state law "filed rate doctrine" is *MacKay v. Superior Court*, 188 Cal. App. 4th 1427 (2010).  But *MacKay* cannot be stretched so far.  There,

16

1   whether California even *has* a filed rate doctrine, instead going straight to a host of statutory

2   provisions that pertain to health plans.  Opp. at 25-27.  These cites are largely irrelevant; most have

3   nothing to do with rates.[20]  And they do not cure the fundamental defect in Anthem's argument:

4   California does not recognize any state filed rate defense, much less one implicated here.

5       **c. Premium Payments.**  Anthem argues, incorrectly, that restitution is unavailable to

6   individuals who had premiums paid to Anthem on their behalf, rather than paying Anthem directly.

7   Opp. at 11, 27-28.  Plaintiffs will demonstrate with common evidence that, unlike the case that

8   Anthem cites, Anthem does not provide anyone with health insurance "free of cost."  Opp. at 11.

9   All class members either paid premiums to Anthem, or had premiums or fees paid to Anthem on

10  their behalf.  Mem. at 19, 23.  And the UCL specifically permits the Court to order restitution to

11  "any person in interest" – not just the person from whom Anthem received the money.  Cal. Bus. &

12  Prof. Code § 17203.  Where class members have an equitable claim to money Anthem acquired via

13  an unfair business practice, restitution is proper.  *See, e.g. Troyk v. Farmers Grp., Inc.*, 171 Cal.

14  App. 4th 1305, 1338 (2009); *Shersher v. Superior Court*, 154 Cal. App. 4th 1491, 1500 (2007).

15  This raises a common legal issue, on which Plaintiffs will prevail:  Whether class members all have

16  an equitable interest in premiums paid to Anthem on their behalf.  Those whose employers paid

17  Anthem for health insurance or ASO services have an ownership interest in those funds, because

18  they earned that health insurance as part of their compensation. *Cortez v. Purolator Air Filtration*

19  *Prod. Co.*, 23 Cal. 4th 163, 178 (2000) (exchange of labor creates "ownership interest" under

20  UCL).[21]  And Medi-Cal recipients have a property interest in their government benefits. *See Am.*

---

22  the court of appeal cited the filed rate doctrine only as additional "support" for the conclusion it
    reached via statutory construction of provisions for property and casualty insurance.  *Id.* at 1148-
23  59.  Moreover, *McKay* was concerned only with direct challenges to rates. *See also Cellular Plus,*
    *Inc. v. Superior Court*, 14 Cal. App. 4th 1224, 1240-43 (1993) (rejecting state filed rate defense);
    *Fogel v. Farmers Grp., Inc.*, 160 Cal. App. 4th 1403, 1418 (2008) (same); *Knevelbaard*, 232 F.3d
24  at 993 (California has "clearly rejected" state filed rate defense).

25  [20] Anthem's focus on the minutiae of certain provisions governing Medicaid and Medicare plans
    underscores how deep Anthem had to dig to find *any* statutory provision remotely related to state
26  approval of filed rates.  Anthem does not argue that state regulators have the power to approve or
    reject filed rates for individual or fully-funded group health plans – because they do not.  *See* Cal.
27  Ins. Code §§ 10181.3, 10181.6, Cal Health & Safety Code §§ 1367, 1385.03.

28  [21] Anthem incorrectly contends that some class representatives "did not pay for their coverage" or
    did not pay premiums (Opp. at 11, 27) as if Anthem provided them with free insurance.  Actually,

1   *Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 60 (1999) (Social Security and welfare).[22]

2   **5. The Proposed UCL Class is Not Overbroad.** Anthem failed to disclose its sub-

3   standard data security to *anyone* in the class. T72 (RFAs 265-66). That means all class members

4   received the same information from Anthem – which is to say, *no* information – concerning

5   deficient data security. There is thus no merit to Anthem's argument that the class is overbroad

6   because Plaintiffs were allegedly exposed to disparate security information. Opp. at 39. In

7   contrast, *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), involved large segments of

8   the class who were never exposed to the challenged conduct, and "it [was] unreasonable to assume

9   that all class members" had seen the "very limited" misleading advertising campaign targeting a

10  small segment of a sweeping class. *Id.* at 595-96. Plaintiffs do not allege here that Anthem

11  engaged in misleading advertising to the general public, but rather that Anthem has a relationship

12  with its members and an obligation to disclose. Its failure to disclose security deficiencies is a

13  common practice which, if proven, "is evidence that the class as a whole was exposed to

14  purportedly misleading omissions." *Torres*, 835 F.3d at 1137. And the public outcry after the data

15  breach demonstrates that, had Anthem adequately disclosed its poor security, class members would

16  have been aware of it, whether or not they read Anthem's data security information page. *Supra* at

17  15. Anthem's overbreadth challenge fails because Plaintiffs' class definition is reasonably co-

18  extensive with their theory of liability. *See Torres*, 835 F.3d at 1139.

19  **C. The NY GBL Claim Raises Common Questions that Predominate**

20  **1. Liability.** Anthem admits it failed to disclose its substandard security practices to *any*

21  of its customers. T72 (RFAs 265-66). The common questions that predominate therefore concern

22  the inadequacy of Anthem's data security and whether Anthem's uniform omission was likely to

23  mislead a reasonable consumer. Mem. at 18. Anthem relies on cases in which there were

24  individualized questions about whether class members actually saw defendants' affirmative

25  misrepresentations to argue that "causation" defeats predominance (Opp. at 37), but Plaintiffs'

---

26      the premiums were deducted from their spouses' paychecks rather than their own. *See* R35
        (Carter at 70:16-18); R40 (Brisko at 203:17-204:23). Restitution is still owed.

27  [22]At the class certification stage, the Court need not decide whether Medi-Cal recipients in fact

28  retain an equitable interest in government payments for their healthcare; it suffices that this issue
        raises a common question for all California class members who receive Medi-Cal.

claim is based on omissions, not misrepresentations.  In *Dupler*, the court distinguished between the two, and clarified that in an omissions case, there is no need to prove that the plaintiffs would have reviewed the hypothetical documents in which the omitted information might have been provided. 249 F.R.D. at 40; *see also In re Coordinated Title Ins. Cases*, 2004 WL 690380, at *7 (Sup. Ct. 2004) (distinguishing causation standards).  This is for good reason.  If Anthem had disclosed that it would not provide adequate data security, there is little doubt class members would have learned of such a significant disclosure, whether or not they previously read Anthem's data security information.  *Supra* at 15.  Plaintiffs will also prove through conjoint analysis the price premium for the undelivered data security; what information class members saw is irrelevant.  T19 (Rossi Report) at ¶¶92-107.  *See, e.g., Kurtz*, 2017 WL 1155398, at *55-56; *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 568-69 (S.D.N.Y. 2014).[23]

Defendants' suggestion that the objective standard for materiality does not warrant classwide treatment is also wrong.  Opp. at 37-38.  The appropriate inquiry is whether the "reasonable consumer" would have been misled, not whether any particular individual was misled. *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995).  Accordingly, the question and answer will be the same for the whole class.  *Kurtz,* 2017 WL 1155398, at *56.[24]

**2. Common Damages Issues Predominate**

**a. Statutory Damages.**  The GBL's statutory damages provision obviates the need for individualized damages calculations.  *Kurtz,* 2017 WL 1155398, at *57.

**b. Benefit of the Bargain.**

*i. Filed Rate.*  Anthem's filed rate defense raises common issues.  The GBL claim is brought on only behalf of New Yorkers under New York law. *Goshen v. Mus. Life Ins. Co. of N.Y.*,

---

[23] In *Oscar v. BMW of N. Am., LLC*, 2012 WL 2359964, at *5 (S.D.N.Y. June 19, 2012), plaintiffs could not "isolate[e] any purchase price attributable to the nondisclosure" at issue. Here, Plaintiffs have proposed a conjoint analysis that will isolate the price premium attributable to the omission. *See Kurtz*, 2017 WL 1155398, at *56 (distinguishing *Oscar* on basis of conjoint analysis).

[24] Defendants' cases are inapposite. Opp. at 37-38. Anthem has not submitted an expert report proving *actual* consumer variation in materiality. And class members here had no alternative sources of information about Anthem's cybersecurity deficiencies, which it hid.

98 N.Y.2d 314, 325 (2002) (GBL covers deceptive transactions in New York).  And Plaintiffs will prevail on the merits.  *See, e.g.*, *Beller v. William Penn Life Ins. Co. of N.Y.*, 8 A.D.3d 310, 311 (N.Y. App. Div. 2004) (demonstrating that New York law permits claims that do not *directly* challenge the reasonableness of the filed rate); *Batas v. Prudential Ins. Co. of Am.*, 281 A.D.2d 260, 261 (N.Y. App. Div. 2001) (same).  Anthem's case prohibits only direct challenges to rates.

    *ii.  Premium Payments*.  There is no support in New York law for Anthem's argument that individuals who did not pay premiums directly to Anthem may not seek Benefit of the Bargain damages. Opp. at 11, 27.  Anthem relies on this Court's prior Order dismissing Plaintiff Onderdonk's Benefit of the Bargain claim.  But that Order dealt with a different issue: whether there was "any economic relationship" at all between Onderdonk, her employer, and Anthem. ECF 524 at 52.  *In re Lenovo Adware Litig.*, 2016 WL 6277245, at *10 (N.D Cal. Oct. 27, 2016) is also uninstructive, because plaintiffs there did not allege that someone else made payments on their behalf.  Here, any class member who did not pay premiums had premiums or fees paid on their behalf.  For example, insureds often bring GBL claims based on health insurance purchased for them through an employer.  *See e.g., Macro v. Indep. Health Ass'n, Inc.*, 180 F. Supp. 2d 427, 428–29 (W.D.N.Y. 2001). Anthem has no contrary authority.

    **c.  Loss of Value of PII.**  All class members had PII exfiltrated in the data breach, and common expert testimony will establish the proper measure for that Loss of Value of PII, based on either the black market value of the stolen PII or the cost of protecting oneself from fraud after PII is stolen.  Mem at 12-13; *see also* ECF 822 (Opposition to Defendants' Motion to Exclude Van Dyke) (discussing this testimony in detail).  Whether Plaintiffs are appropriately measuring the economic loss of Loss of Value of PII is a common merits issue.[25]  And Anthem is wrong that Plaintiffs cannot prove Loss of Value of PII on a classwide basis because Mr. Van Dyke did not himself offer an opinion on class member economic damages, or multiply the cost of fraud prevention by the number of class members:  particularly at class certification, Plaintiffs do not

---

[25] Anthem's contention that the Court has already precluded Plaintiffs from using the cost of credit monitoring to measure Loss of Value of PII is incorrect.  Opp. at 29.  The Court distinguished cases about the increased risk of harm that leads to Loss of the Value of PII from cases about the actual costs of credit monitoring – what Plaintiffs here refer to as Out of Pocket Expenses.  ECF 468 at 46.  The Order does not describe or limit how Plaintiffs may *measure* Loss of Value of PII.

need to put forward an expert to do the math.

Anthem raises two common merits defenses (Opp. at 30) to the black market value measure of damages, that cannot undermine class certification because they apply to *all* class members, and in any event, are wrong. The Court has already rejected Anthem's argument that Plaintiffs must express a desire to sell their PII on the black market. ECF 524 at 27 (Plaintiffs need plead only that there is a market for their PII). And whether Anthem PII is or will be sold on the black market is not relevant; rather, the black market helps to set a value for Plaintiffs' loss.[26]

Anthem's challenge to measuring the Loss of Value of PII as the cost of protecting oneself after its confidentiality is lost, also raises common issues. Plaintiffs will prove on the merits that being the victim of a previous breach or prior exposure of one's PII (on the Dark Web or otherwise) does not diminish the risk of identity theft or financial fraud stemming from the Anthem data breach. This is because stolen data is not widely and easily available to any criminal who wants it; accordingly, each new exposure carries with it an entirely separate and independent risk of identity theft from new fraudsters, for which separate protection must be purchased. T22 (Van Dyke Reply Report) at ¶¶3b, 8-9; T23 (Winningham Report) ¶¶16, 24-26, 34-45. Anthem's argument about variation in PII exfiltrated also presents, at most, categorical rather than individual issues, all of which can be resolved based on Anthem's records. Class members fall into several broad categories – such as SSNs taken or not. Anthem's assertion that about 2% of the SSNs exfiltrated may have been inaccurate is merely a subset of this issue, and does not involve any individual issues, as Anthem points to only four possible categories of inaccuracies (R71 at 2-4) of which Anthem has records. These damages issues do not defeat predominance. *Tyson,* 136 S.Ct. at 1049; *Pulaski*, 802 F.3d at 986.

### D. Common Issues Predominate For the California Breach of Contract Claims

### 1. Anthem California Contract Class

---

[26] Anthem's experts' failure to find Anthem data on the Dark Web does not indicate that class members face no risk because (1) the criminals who stole the data could use it themselves or sell it privately without marketing it on the Dark Web, and (2) it is so difficult to find information on the Dark Web that a failure to find it does not mean it is not there. T23 (Winningham Report ¶¶ 46-56). Moreover, Anthem's expert's opinion on this topic should be excluded because it was not based on any reliable methodology. ECF 820 (Motion to Exclude Mulvenon).

**a. Liability.**  Anthem does not challenge Plaintiffs' showing that they will prove through common evidence the following: contract formation, performance, the uniformity of Anthem's data security promises that Plaintiffs contend are incorporated into all Anthem insurance contracts, and breach of those promises based on Anthem's deficient cybersecurity.  Mem. at 19; Opp. at 32-33. Anthem also does not challenge Plaintiffs' summary of evidence (T44) which proves that *235 out of the 245* California contracts used the same or very similar language to expressly incorporate by reference Anthem's uniform privacy promises.  T44 (Rule 1006 Summary); T43 ¶¶8-28; T75 (Rogs 23-25).  Common issues predominate.

Anthem nevertheless contends – based only on minor language variations with respect to *ten* specified vision, dental, Medicare supplement, and Medicaid contracts – that the Court must "examin[e] each individual class member's contract."  Opp. at 31-33.  Given Anthem's admitted use of form contracts, this is specious.  Even if Anthem is correct that a small number of plans use a variation in language that requires the Court's attention, this does not result in *individualized* differences.  All of the issues raised by Anthem with respect to the content of its contracts are *at best* categorical and easily managed, with the Court ultimately being called upon to review and interpret a handful of contracts – not each individual one.[27]

Anthem points to five plans that lack express references to Anthem's privacy policies and notices (Opp. at 32 citing R95-99), and argues that two of them (R98-99) also contain "merger" clauses that might preclude incorporation of the NOPP, but Plaintiffs already acknowledged these contracts and explained that Plaintiffs will prove that the NOPP was mailed along with the contracts in a "welcome kit," which a reasonable insured would assume was part of the contract.  Mem. at 21. Whether a reasonable insured would interpret the NOPP as part of the contract is not an individualized issue; it is a basic issue of contract interpretation that the Court need make only once, with respect to all class members covered by these five contracts.  *Cf. Dolmage v. Combined Ins. Co. of Am.*, 2016 WL 754731, at *4-6 (N.D. Ill. Feb. 23, 2016).  Anthem argues with respect to

---

[27] Anthem uses phrases like "for example" and "some contracts" as if there are a whole host of contracts that contain such variation, but Plaintiffs examined and summarized *all* of the contracts produced in discovery by Anthem for its affiliates selling plans in California – T44 – and Anthem has not challenged that summary.  Discovery is closed, and this *is* the universe of contracts relevant to the California contract claim for purposes of adjudicating this case; any argument premised on reviewing anything other than this universe of produced contracts is a red herring.

three Medicaid booklets (R102-104) that the promises are "informational" rather than "contractual" based on context, and that two group plans (R105-106) reference Anthem's privacy policies without specifying where they can be obtained.  But these arguments do not raise *individualized* issues, and the Court can easily decide these two issues of contract interpretation. Given the multitude of significant common issues, this small number of contracts that could potentially require separate review does not defeat predominance.[28]

Anthem's other arguments focus on the wrong contracts, citing to four Medicaid contracts between it and the government, rather than plan booklets provided to members.  Opp at 32 (pointing to government contracts, R100-101, that contain a no-third-party-beneficiary clause); Opp. at 33 (citing government contracts R107-108 with venue provisions).  But Plaintiffs are suing to directly enforce the contract that forms between Anthem and its members, governed by member plan booklets.  Mem. at 20 n.11.  Anthem's contracts with the government are irrelevant.

**b. Damages.**  Damages raise common issues as set forth *supra*, 15-17, 20-21, and below:

*i. Benefit of the Bargain*.  Anthem cannot and does not dispute that the California Contract Class brings breach of contract claims exclusively under California law.  Mem. at 19; T56 ¶39 (contracts with California affiliates governed by California law).  Anthem's filed rate defense is thus common, and will commonly fail, for the reasons discussed above.  *Supra* at 16-17.

Anthem argues without citation that Benefit-of-the-Bargain damages are available only to class members who personally paid premiums — and not to others who had enforceable contracts but whose premiums were paid on their behalf — by a spouse, employer, or government agency.  Opp. at 11, 27.  But Anthem does not dispute performance for any class member here; *i.e.*, that it was paid for all of its contracts with class members.  Mem. at 19, 23 (citing evidence).  Anthem misunderstands contract damages.  Once Plaintiffs have established liability, all class members are entitled to damages that will put them "in the same position [they] would have been in had [the defendant] performed the contract."  *Coughlin v. Blair*, 41 Cal. 2d 587, 603 (1953); ECF No. 524 at

---

[28] Anthem's argument that the contract classes are overbroad because they allegedly contain individuals who "could not have been injured," (Opp. at 39) is a rehash of this merits argument. Anthem's supposition that it will prevail on the merits is a far cry from the case on which it relies, in which plaintiff "does not and cannot contend" that all applicable contracts included the relevant promise. *Moore v. Apple Inc.,* 309 F.R.D. 532, 542 (N.D. Cal. 2015). Plaintiffs here do so contend.

23-25.  Damages for all class members here will be the value of Anthem's undelivered

performance.  *Coughlin*, 41 Cal.2d at 604.

  *ii. Loss of Value of PII*.  In addition to the Loss of Value of PII measurements described

above, Plaintiffs also raised a classwide alternative measure of these damages in the form of repair

costs.  Mem. at 22.  Anthem responds not by identifying an individualized issue, but by arguing

Plaintiffs are wrong on the law, which raises a common question.  Opp. at 28 n.16.

  *iii. Out of Pocket Costs*.  Plaintiffs acknowledged that the amount of out of pocket

expenses incurred by class members is the only individualized issue in this case, but "the need for

individual damages calculations does not, alone, defeat class certification."  *Vaquero*, 824 F.3d at

1155.  Mem. at 22-23.  Perhaps for this reason, Anthem relies heavily on "causation" arguments in

this portion of its briefing.  These arguments relate only to out of pocket fraud costs, not other out

of pocket expenses such as credit monitoring.  *Cf.* ECF 524 at 28 (it is Anthem's burden to prove

their actions were not the "but-for cause" of injury).  And this issue does not preclude

certification.  *Cf., e.g.*, *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 539 (N.D. Cal. 2012)

(approving two-phase trial plan under which "defendant will have an opportunity to present

individualized defenses with respect to each class member"); *Just Film*, 847 F.3d at 1120-21

(damages calculations from class member records).

### 2. Anthem California ASO Contract Class

  Plaintiffs established that Anthem's California ASO contracts include promises to protect

the confidentiality of member PII (including the baseline promise to comply with HIPAA) set forth

in the ASO, the BAA, or in incorporated member plan booklets.  Mem at 23-24; T93-97; T56 ¶¶42-

50.  Anthem is wrong that "each individual class member's contract" must be examined. Opp. at 31.

The issues are categorical across ASOs, and, at worst, it is only the available universe of ASO

contracts (which each could cover many thousands of class members) that may require separate

interpretation.  Anthem produced a total of only 22 California ASOs (Opp. at 32 n.18), and

Plaintiffs have excluded members of 13 of those ASOs. [29]  The contract interpretation questions that

---

[29] Discovery has closed, and having chosen to produce only this subset, Anthem cannot now rely
on ASO documents beyond this universe.  Moreover, Plaintiffs excluded from the class

1   Anthem raises are manageable for this small number of ASO documents.  Opp. at 31-32.[30]

2          Anthem compares this case to *Moore,* 309 F.R.D. at 545, but the tortious interference with

3   contract claims in that case involved a truly individualized issue: whether the plaintiffs had a

4   contractual right to receive text messages given the amounts of their own personal usage (including

5   whether they had exceeded plan limits in any given month). There are no comparable individualized

6   inquiries here to determine Anthem's promises or breach thereof.

7          Finally, ASO contract damages are common for the same reason other proposed class

8   member damages are common.  *Supra* at 23-24.  In particular, it is hornbook law that third party

9   beneficiaries may recover Benefit of the Bargain damages, without themselves having paid

10  premiums.  13 Williston & Lord, *A Treatise on the Law of Contracts* § 37:28 (4th ed. 2013) ("The

11  beneficiary is not required to furnish the consideration.").

12          **E. Common Questions Predominate With Respect to the Federal Contract Claims**

13          The federal contract claim raises quintessential common issues, based on Anthem and

14  BCBSA's breach of a single contract.  Mem. at 24-25. Unsurprisingly, Defendants raise no

15  predominance arguments with respect to liability, instead relying solely on the same incorrect

16  arguments they make with respect to damages for all claims.  These fail for the reasons discussed

17  above.  For example, Anthem raises a federal filed rate defense (Opp. at 27), but that is a common

18  merits issue:  Plaintiffs will demonstrate that the filed rate doctrine is not implicated here because

19  OPM is not acting as a rate-maker when it negotiates health insurance benefits on behalf of federal

20  employees.  *See In re Express Scripts, Inc., Pharmacy Benefits Mgmt. Litig.*, 2007 WL 1796224, at

21  *6 (E.D. Mo. June 20, 2007) (government "acted like any private employer by negotiating a health

22  insurance contract on behalf of its employees," which was not "rate-making within the meaning of

23        definition any ASO produced by Anthem in discovery in which either the ASO itself or the
        incorporated BAA contain an express no-third-party beneficiary clause. ECF 743-10 (Notice of
24      Motion).  Anthem points out that Plaintiffs inadvertently missed one such ASO.  Opp. at 31-32;
        R76 (Foell Decl.) ¶¶ 16-17. Plaintiffs hereby amend the proposed class definition to include Intel
25      Corporation in the list of plan members excluded from the ASO Contract Class, and submit a
        [Revised Proposed] Order certifying the classes. As that is also the only ASO that did not require
26      application of California law, this alleged "individualized" issue is now also non-existent.

27  [30] Anthem also invokes venue clauses in two ASO agreements (Opp. at 33) but any venue
        arguments have long since been waived. Rule 12(b)(3), (h); *Libby, McNeill, and Libby v. City Nat.
28      Bank*, 592 F.2d 504, 510 (9th Cir. 1978).

1  the filed rate doctrine").[31]

2       Defendants are incorrect that the federal class is overbroad because Defendants believe

3  that, on the merits, some members will ultimately be unable to prove their right to recover certain

4  types of damages.  Opp. at 40.  "That an injurious course of conduct may sometimes fail to cause

5  injury to certain class members" does not mean the class definition is overbroad, so long as the

6  "class definition is reasonably co-extensive with Plaintiffs' chosen theory of liability."  *Torres*, 835

7  F.3d at 1136-37.  Nor is the federal class overbroad because it allegedly lacks a "temporal

8  limitation."  Opp. at 40.  Plaintiffs have evidence of Anthem's inadequate data security back at least

9  to 2011, the federal contract has been in effect at least that long, and the statute of limitations on the

10  federal contract also extends back four years to 2011.  *Wetzel v. Lou Ehlers Cadillac Grp. Long*

11  *Term Disability Ins. Program*, 222 F.3d 643, 646-47 (9th Cir. 2000) (federal contract claim borrows

12  "analogous" state statute of limitations); Cal. Civ. Proc. Code § 337 (four year statute on written

13  contract).

14       **F. A Class Trial Is Manageable and Superior**

15       A class trial on the selected claims would be efficient and manageable, and superior to

16  millions of individual trials.[32]  As set forth in Plaintiffs' Trial Plan, with the exception of the

17  additional expert and fact evidence about Anthem's inadequate data security, the vast majority of

18  the evidence relevant to liability is already before the Court, with approximately 190 plaintiff

19  exhibits and 119 defense exhibits.  There are no individualized issues requiring class member by

20  class member inquiry relating to liability, Benefit of the Bargain, or Loss of Value of PII damages.

21  Most issues are common to all class members, requiring examination of Anthem's conduct in light

22  of the relevant legal standards: the inadequacy of Anthem's data security, its uniform omissions,

23
24  [31] *Fero v. Excellus Health Plan, Inc.*, 2017 WL 713660 at *33 (W.D.N.Y. Feb. 22, 2017) is the only decision that has ever found that OPM engages in rate-making for purposes of the filed rate doctrine, and the court there fatally missed that OPM was acting as an employer.

25  [32] There is no reason this Court cannot conduct that trial.  Anthem raises contradictory arguments,
26  claiming in one sentence that the claims of some proposed class representatives should be remanded to other courts for trial, and in the next that "requiring Defendants to try selected claims
27  against a subset of plaintiffs [would] be inefficient and prejudicial" and raises Seventh Amendment concerns.  Opp. at 38-39 n. 27.  Plaintiffs suggest that the Court hold a case management conference to decide next steps, with further briefing on *Lexecon* and Seventh
28  Amendment issues as needed.

1 and its uniform privacy policies.  Anthem's defenses, including the filed rate doctrine and its

2 "blame China" excuse, raise further common issues.

3       The issues that Anthem contends require individualized determination do not, and instead

4 require, at the most, a handful of determinations (mostly by the Court) for identifiable sub-groups:

5 for example, do the ten contracts without express references to Anthem's privacy policies

6 incorporate the same uniform privacy policies as do the other 235 with express language?

7 Certification is appropriate.  *See, e.g., Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th

8 Cir. 2017) (court should use "variety of procedural tools" to efficiently manage class action).

9 **IV.**    **The UCL Claims Against Non-Anthem Defendants Should be Certified**

10       **A. The UCL Claims Against Non-Anthem Defendants Raise Common Questions**

11       Plaintiffs have raised numerous common questions to which there are common answers,

12 based on common evidence applicable to the UCL claim against all Non-Anthem Defendants.

13 Mem. at 7, 17; T106 ¶4.a-d.  The over-arching question is the fairness and legality of Non-Anthem

14 Defendants' joint practice of requiring that member PII be conveyed to Anthem without insuring

15 adequate security, and without informing members about this lack of adequate security.  Defendants

16 argue that *other* questions are not common.  Opp. at 9-10.  Even if this were true, and it is not, as

17 discussed *infra* at 30, this goes to predominance, not commonality.  *Supra* at 5.

18       **B. The Claims of the Class Representatives Are Typical of the Class Claims**

19       Plaintiffs Brisko and Blanchard, who were enrolled in health plans with Blue Shield of

20 California and HCSC, respectively, are typical of Non-Anthem Defendant customers in California.

21 "[A] court may find typicality if it determines that the actions of the various defendants are

22 'juridically related.'"  *Senne v. Kansas City Royals Baseball Corp.*, 315 F.R.D. 523, 567 (N.D. Cal.

23 2016) (discussing *La Mar v. H B Novelty & Loan Co.*, 489 F.2d 461, 466 (9th Cir. 1973)).  A

24 juridical link exists if defendants "entered into . . . an agreement and were thereby bound to a

25 common course of conduct that gave rise to the plaintiff's alleged injuries."  *Senne*, 315 F.R.D. at

26 567-68 (quoting *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 681 (N.D. Cal.1986)); *see*

27 *also In re Activision Sec. Litig.*, 621 F. Supp. 415, 432 (N.D. Cal. 1985) (insurers' agreement

28 created link).

Non-Anthem Defendants are juridically linked because they are all signatory to a single Licensing Agreement and BAA.  T106 ¶3.a.  Under the Licensing Agreement, they were all required to participate in the InterPlan programs, whereby their members' PII was provided to Anthem, subject only to the inadequate security protections set forth in the BAA.  T106 ¶3.a-d, h-i.  Although all Non-Anthem Defendants had authority acting as the BCBSA Board of Directors to create and modify the Licensing Agreement and BAA, together they agreed in these documents both to require transmission of member PII to Anthem, and not to require implementation of any specific cybersecurity standard to protect that PII.  T106 ¶3.h.  The Licensing Agreement and BAA bound all Non-Anthem Defendants to a "common course of conduct" that led to the compromise of Blanchard's, Brisko's, and class members' PII.  *Senne*, 315 F.R.D. at 568.

Defendants misstate the juridically-related doctrine by arguing that it does not apply because the agreements did not "require any Non-Anthem Defendant to violate the UCL."  Opp. at 14.  The doctrine does not require Plaintiffs to prove now that Defendants violated the law, but rather that the agreement binds Defendants to common conduct that "g[ives] rise to" Plaintiffs' injuries.  *Senne*, 315 F.R.D. at 568; *In re Activision Sec. Litig.*, 621 F.Supp. at 432.[33]  Whether that conduct violated the law is a merits question that should be addressed later.

**C. Article III Is No Bar to Certification**

**1. Plaintiffs have standing against all Non-Anthem Defendants.**  The Non-Anthem Defendants should be treated as a single entity for purposes of Article III because Brisko and Blanchard's injury traces to a unified process which all Non-Anthem Defendants carried out together.  *See Cady v. Anthem Blue Cross Life and Health Ins. Co.*, 583 F. Supp. 2d 1102, 1106-07 (N.D. Cal. 2008) (Standing without direct relationship appropriate if challenged conduct was a "result of a centralized process involving all Defendants").  Non-Anthem Defendants "shared [a] relationship such that they should be treated as a single entity" for standing purposes.  *Id.* at 1107.  They agreed together to participate in the InterPlan programs and they all relied on the same inadequate BAA rather than implementing actual security controls.  T106 ¶¶3.a-e, h-i, 4.a-b.

---

[33] Unlike here, Defendants' cases do not address situations in which defendants were contractually bound to a common course of conduct.  Opp. at 14-15.

Brisko's and Blanchard's injuries are traceable to this centralized process and they have standing to represent similarly situated individuals whose PII was exfiltrated as a result of that process.[34]

**2. Any question regarding Plaintiffs' standing should be addressed after class certification.** Any concerns about standing should be deferred until after class certification, which is antecedent to the Article III inquiry. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999). Once certified, "the class of unnamed persons described in the certification acquire[s] a legal status separate from the representative," *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 987 (9th Cir. 2007), and "standing requirements must be assessed with reference to the class as a whole, not simply with reference to individual named plaintiffs." *Payton v. Cnty. of Kane*, 308 F.3d 673, 680 (7th Cir. 2002); *In re Carrier IQ, Inc.*, 78 F.Supp.3d at 1072 (same). Here, because the proposed class includes California residents who raise UCL claims against each Non-Anthem Defendant, T58, a certified class will include members with standing against each Defendant.

The Court may also defer ruling on standing because, although the selected claims against the Non-Anthem Defendants that are up for class certification only include Plaintiffs' UCL claims, there is at least one Named Plaintiff in this litigation who has a direct claim against each Non-Anthem Defendant. T190. *See Senne Kansas City Royals Baseball Corp.* 114 F. Supp. 3d 906, 919, 924 (N.D. Cal. 2015) (deferring standing where, as here, there was "a named plaintiff who can assert a claim directly against every defendant, but there is not a named plaintiff who can assert *each* claim in the complaint against each defendant").

**D. Plaintiffs' Request for Injunctive Relief is Common to the Class**

Plaintiffs request injunctive relief against Non-Anthem Defendants to ensure that BCBS Licensees "implement[] necessary security controls to safeguard th[e] PII" conveyed to them and to "prohibit[] any BCBS licensee from aggregating and storing [PII] indefinitely for non-operations purposes." Mem. at 10. This relief will protect all Non-Anthem members whose PII has been conveyed to Anthem's insecure database, and is applicable to the whole class, because both current

---

[34] Plaintiffs do not argue that a juridical link confers standing (*cf.* Opp. at 16), but the doctrine would be useless if a plaintiff could never establish standing.

1    *and* former members will benefit from the requested change. *Cf.* Opp. at 19.

2         The injunction would require Non-Anthem Defendants to ensure that baseline security

3    standards are in place to protect their members' PII when shared through the InterPlan programs.[35]

4    The same standards would apply to all Non-Anthem Defendants.  Defendants are thus wrong that

5    the requested relief would need to be "individually tailored." Opp. at 19-20.  As a practical matter,

6    the cybersecurity standards would likely be implemented as a common condition of licensure.

7         **E. Common Issues Predominate and a Class Action is Superior**

8         Common issues predominate.  Mem. at 17.  Plaintiffs' fraudulent omission claim is based

9    on Non-Anthem Defendants' uniform knowledge that they were doing nothing to determine what

10   security measures Anthem had in place or to monitor Anthem's compliance with the BAA.  T106

11   ¶4.a-b.  And *none* of them informed their customers that they would not follow their own privacy

12   policies and would not maintain the confidentiality of members' PII.  T106 ¶4.c-d.  Plaintiffs' claim

13   does not, as Defendants argue (Opp. at 34) depend on whether each Non-Anthem Defendant knew

14   about Anthem's inadequate data security.  And even if this were the basis of Plaintiffs' claim, the

15   issues are not individualized among class members, but only with respect to the 14 Non-Anthem

16   Defendants.  Defendants raise another common merits issue when they argue that Plaintiffs must

17   prove that Non-Anthem Defendants provided member PII to Anthem.  Opp. at 36.  Plaintiffs will

18   demonstrate that, as a matter of law, it does not matter *who* provided the PII to Anthem, so long as

19   Non-Anthem Defendants' common agreement required the PII to be provided. T106 ¶3.a-d.[36]

20                              **CONCLUSION**

21        The Court should grant Plaintiffs' Motion for Class Certification in its entirety.

22

23   [35] Contrary to Defendants' suggestion, Opp. at 19, Plaintiffs "are not required to come forward with
     an injunction that satisfies Rule 65(d) with exacting precision at the class certification stage." *Wit*
24   *v. United Behavioral Health*, 317 F.R.D. 106, 136 (N.D. Cal. 2016) (punctuation omitted).  And
     Plaintiffs do not request an injunction beyond the California subclass; the coincident beneficial
25   effect of better data security for others is no reason to deny class certification.

26   [36] Defendants cite no authority in support of their argument that "HIPAA, the GLBA, and the FTC
     Act would have no application" unless the Non-Anthem Defendants directly sent their customers'
27   PII to Anthem.  Opp. at 36.  Nothing in these laws establishes such a limitation. *See, e.g.*, 15
     U.S.C. §6801 (GLBA establishes "affirmative and continuing obligation . . . to protect the
28   security and confidentiality" of customers' personal information).  Moreover, even if these laws
     were so limited, the "unfair" UCL prong is not implicated. *Supra* at 12.

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
CASE NO. 15-md-02617-LHK

Respectfully submitted,

**ALTSHULER BERZON LLP**
EVE H. CERVANTEZ
JONATHAN WEISSGLASS
DANIELLE LEONARD
MEREDITH JOHNSON
TONY LOPRESTI

Dated:  May 5, 2017          By: /s/     *Eve H. Cervantez*
                                   Eve H. Cervantez

**COHEN MILSTEIN SELLERS & TOLL PLLC**
ANDREW N. FRIEDMAN
GEOFFREY GRABER
SALLY M. HANDMAKER
ERIC KAFKA

Dated:  May 5, 2017          By: /s/     *Andrew N. Friedman*
                                   Andrew N. Friedman

*Lead Plaintiffs' Counsel*

**LIEFF CABASER HEIMANN & BERNSTEIN, LLP**
MICHAEL SOBOL
JASON LICHTMAN

**GIRARD GIBBS LLP**
ERIC GIBBS
DAVID BERGER

*Plaintiffs' Steering Committee*