# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| IN RE ANTHEM, INC. DATA BREACH LITIGATION | Case No. 5:15-MD-02617-LHK<br><br>The Honorable Lucy H. Koh |

## SETTLEMENT AGREEMENT AND RELEASE

## TABLE OF CONTENTS

Page

RECITALS. .................................................................................................................1

1.  DEFINITIONS. ..........................................................................................3

2.  BUSINESS PRACTICE COMMITMENTS.................................................10

3.  SETTLEMENT FUND. ...............................................................................11

4.  CREDIT SERVICES....................................................................................14

5.  ALTERNATIVE COMPENSATION. ...........................................................16

6.  OUT-OF-POCKET COSTS. .........................................................................17

7.  RESIDUE OF SETTLEMENT FUND. ..........................................................18

8.  PRELIMINARY APPROVAL. ......................................................................18

9.  CLASS NOTICE, OPT-OUTS, AND OBJECTIONS.....................................19

10. DUTIES OF SETTLEMENT ADMINISTRATOR. .........................................20

11. SERVICE PAYMENTS.................................................................................22

12. ATTORNEYS' FEES AND COSTS. ..............................................................23

13. RELEASE. ..................................................................................................24

14. EFFECTIVE DATE AND TERMINATION....................................................24

15. NO ADMISSION OF WRONGDOING. .........................................................26

16. REPRESENTATIONS...................................................................................27

17. NOTICE. ....................................................................................................27

18. MISCELLANEOUS......................................................................................28

**EXHIBITS**

LIST OF ACTIONS....................................................................................................EXHIBIT 1

BUSINESS PRACTICE COMMITMENTS. ...............................................................EXHIBIT 2

PRELIMINARY APPROVAL ORDER. .....................................................................EXHIBIT 3

NOTICE PLAN. ........................................................................................................EXHIBIT 4

NOTICES....................................................................................................................EXHIBIT 5

    a.  POSTCARD................................................................................................EXHIBIT 5a

    b.  LONG FORM ............................................................................................EXHIBIT 5b

    c.  EMAIL.......................................................................................................EXHIBIT 5c

    d.  PUBLICATION..........................................................................................EXHIBIT 5d

OUT-OF-POCKET COSTS CLAIM FORM. ..............................................................EXHIBIT 6

CREDIT SERVICES OR ALTERNATIVE COMPENSATION CLAIM FORM. .......EXHIBIT 7

FINAL APPROVAL ORDER AND JUDGMENT.......................................................EXHIBIT 8

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Settlement Agreement" or "Agreement") is made as of May 31, 2017, by and between, as hereinafter defined, (a) Settlement Class Representatives on behalf of themselves and the Settlement Class, and (b) Defendants (collectively, the "Parties"). This Agreement fully and finally compromises and settles any and all claims that are, were, or could have been asserted in the litigation styled *In re Anthem, Inc. Data Breach Litigation*, Case No. 5:15-MD-02617-LHK (N.D. Cal.).

## RECITALS

WHEREAS, in February 2015 Anthem, Inc. ("Anthem") announced that it had been the victim of a criminal cyber attack on its computer systems in which the attacker gained unauthorized access to the personal information of Anthem members and various other individuals (the "Data Breach").

WHEREAS, after announcement of the Data Breach, multiple putative class action lawsuits were filed against Anthem and other Defendants in jurisdictions across the country, alleging that Defendants failed to properly protect personal information in accordance with their duties, had inadequate data security, and delayed notifying potentially impacted individuals.

WHEREAS, on June 8, 2015, the Judicial Panel on Multidistrict Litigation ("MDL Panel") transferred seventeen putative class action lawsuits to the Honorable Lucy H. Koh in the United States District Court for the Northern District of California (the "Court") for coordinated pretrial proceedings.

WHEREAS, additional lawsuits against one or more Defendants also were transferred to, filed in, or otherwise assigned to the Court and included in coordinated pretrial proceedings as part of *In re Anthem, Inc. Data Breach Litigation*, Case No. 5:15-MD-02617-LHK (N.D. Cal.).

WHEREAS, the Court appointed Eve Cervantez, Andrew N. Friedman, Michael W. Sobol, and Eric Gibbs as Class Counsel to represent Plaintiffs and putative class members in *In re Anthem, Inc. Data Breach Litigation.*

WHEREAS, Class Counsel filed a Consolidated Amended Class Action Complaint ("CAC") in *In re Anthem, Inc. Data Breach Litigation*, Defendants moved to dismiss the CAC, and the Court granted in part and denied in part the motion by Order dated February 14, 2016.

WHEREAS, Class Counsel filed a Second Consolidated Amended Class Action Complaint ("SAC") in *In re Anthem, Inc. Data Breach Litigation*, Defendants moved to dismiss the SAC, and the Court granted in part and denied in part the motion by Order dated May 26, 2016.

WHEREAS, on July 16, 2016, Class Counsel filed a Third Consolidated Amended Class Action Complaint ("TAC") in *In re Anthem, Inc. Data Breach Litigation*, and Defendants filed Answers to the TAC on August 4, 2016.

WHEREAS, on February 24, 2017, Class Counsel filed a Fourth Consolidated Amended Class Action Complaint ("FAC") in *In re Anthem, Inc. Data Breach Litigation*, and Defendants filed Answers to the FAC on March 17, 2017.

WHEREAS, the Parties engaged in extensive fact and expert discovery over the course of this litigation.

WHEREAS, on March 10, 2017, Class Counsel filed a motion to certify certain classes pursuant to Federal Rule of Civil Procedure 23, Defendants filed an opposition to that motion, Class Counsel filed reply papers, and the Parties briefed six *Daubert* motions in connection with class certification.

WHEREAS, on January 25, 2017, the Court ordered the Parties to indicate whether they were willing to engage in private mediation, and if so, to complete that private mediation by May 31, 2017.

WHEREAS, the Parties engaged in three arm's-length, in-person mediation sessions on February 28, 2017 in New York, April 20, 2017 in New York, and May 22, 2017 in San Francisco, under the direction of former United States District Judge Layn R. Phillips.

WHEREAS, the Parties also engaged in additional mediation communications by telephone and e-mail, both directly and through Judge Phillips, between February 28, 2017 and May 31, 2017.

WHEREAS, Class Counsel has investigated the facts relating to the Data Breach with the assistance of consultants in cybersecurity and identity theft, analyzed the evidence adduced during pretrial discovery, and researched the applicable law with respect to Plaintiffs' claims against Defendants and the potential defenses thereto, including the motions described above, 14 discovery motions, reviewing 3.8 million pages of documents, taking 80 percipient witness and 30(b)(6) depositions, defending 105 named Plaintiff depositions, producing four experts for deposition, and taking five expert depositions.

WHEREAS, Defendants deny any wrongdoing whatsoever, and this Agreement shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any Defendant with respect to any claim of any fault or liability or wrongdoing or damage whatsoever, any infirmity in the defenses that the Defendants have asserted or would assert, or to the requirements of Federal Rule of Civil Procedure 23 and whether Plaintiffs satisfy those requirements.

WHEREAS, based upon their investigation and pretrial discovery as set forth above, Class Counsel have concluded that the terms and conditions of this Agreement are fair,

2

reasonable and adequate to Plaintiffs and Settlement Class Members and are in their best interests, and have agreed to settle the claims asserted in *In re Anthem, Inc. Data Breach Litigation* pursuant to the terms and provision of this Agreement after considering (a) the substantial benefits that Settlement Class Members will receive from the Settlement, (b) the uncertain outcome and attendant risks of litigation, (c) the delays inherent in litigation, and (d) the desirability of permitting the settlement of this litigation to be consummated as provided by the terms of this Agreement.

WHEREAS, it is the intention of the Parties to resolve the disputes and claims which they have between them on the terms set forth below.

NOW, THEREFORE, in consideration of the promises, covenants, and agreements herein described and for other good and valuable consideration acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, the Parties do hereby mutually agree, as follows:

## 1.    DEFINITIONS

As used in this Settlement Agreement, the following terms shall have the meanings indicated:

1.1    "Action" or "Actions" means all the actions listed in Exhibit 1, which have been filed in, transferred to, or otherwise assigned to the Court and included in coordinated or consolidated pretrial proceedings as part of *In re Anthem, Inc. Data Breach Litigation*, Case No. 5:15-MD-02617-LHK.

1.2    "Administrative Expenses" means all of the expenses incurred in the administration of this Settlement, including, without limitation, all expenses or costs associated with the Notice Plan and providing Notice to the Settlement Class, locating Settlement Class Members, determining the eligibility of any person to be a Settlement Class Member, and administering, calculating and distributing the Settlement Fund to Settlement Class Members. Administrative Expenses also include all reasonable third-party fees and expenses incurred by the Settlement Administrator in administering the terms of this Agreement.

1.3    "Affiliates" means, with respect to any Entity, any other Entity that directly or indirectly controls, is controlled by, or is under common control with such Entity.  For purposes of this definition, "control" when used with respect to any Entity means an ownership interest of at least twenty-five percent (25%) and/or the power to direct the management and policies of such Entity, directly or indirectly, whether through the ownership of voting securities by contract or otherwise.

3

1.4    "Agreement" or "Settlement Agreement" means this Settlement Agreement. The terms of the Settlement Agreement are set forth herein including the exhibits hereto.

1.5    "Alternative Compensation" means compensation to Settlement Class Members as set forth in Section 5.

1.6    "Anthem" means Defendants Anthem, Inc.; Blue Cross and Blue Shield of Georgia, Inc.; Blue Cross Blue Shield Healthcare Plan of Georgia, Inc.; Anthem Insurance Companies, Inc.; Blue Cross of California; Anthem Blue Cross Life and Health Insurance Company; Rocky Mountain Hospital and Medical Service, Inc.; Anthem Health Plans, Inc.; Anthem Health Plans of Kentucky, Inc.; Anthem Health Plans of Maine, Inc.; HMO Missouri, Inc.; RightCHOICE Managed Care, Inc.; Healthy Alliance Life Insurance Company; Anthem Health Plans of New Hampshire, Inc.; Empire HealthChoice Assurance, Inc.; Community Insurance Company; Anthem Health Plans of Virginia, Inc.; HealthKeepers, Inc.; Blue Cross Blue Shield of Wisconsin; Compcare Health Services Insurance Corporation; Amerigroup Corporation; Amerigroup Services, Inc.; Amerigroup Kansas, Inc.; Amerigroup Washington, Inc.; HealthLink, Inc.; UniCare Life & Health Insurance Company; CareMore Health Plan; The Anthem Companies, Inc.; The Anthem Companies of California, Inc., and their current, former, and future Affiliates, Parents, Subsidiaries, and Successors.

1.7    "Business Days" means Monday, Tuesday, Wednesday, Thursday, and/or Friday, excluding holidays observed by the federal government.

1.8    "Claim Form" means the form Settlement Class Members submit (either in paper form or via the Settlement Website) to select Credit Services or Alternative Compensation, attached hereto as Exhibit 7.

1.9    "Class Counsel" means Eve Cervantez, Andrew N. Friedman,  Michael W. Sobol, and  Eric Gibbs, as well as their respective firms, Altshuler Berzon LLP, Cohen Milstein Sellers & Toll PLLC, Lieff Cabraser Heimann & Bernstein LLP and  Girard Gibbs LLP.

1.10    "Court" means the United States District Court for the Northern District of California.

1.11    "Credit Services" means the services described in Section 4.

1.12    "Data Breach" means the data breach Anthem announced on or about February 4, 2015.

1.13   "Defendants" means all defendants identified in the FAC filed in *In re Anthem, Inc. Data Breach Litigation*, Case No. 5:15-MD-02617-LHK, including Anthem, Inc.; Blue Cross and Blue Shield of Georgia, Inc.; Blue Cross Blue Shield Healthcare Plan of Georgia, Inc.; Anthem Insurance Companies, Inc.; Blue Cross of California; Anthem Blue Cross Life and Health Insurance Company; Rocky Mountain Hospital and Medical Service, Inc.; Anthem Health Plans, Inc.; Anthem Health Plans of Kentucky, Inc.; Anthem Health Plans of Maine, Inc.; HMO Missouri, Inc.; RightCHOICE Managed Care, Inc.; Healthy Alliance Life Insurance Company; Anthem Health Plans of New Hampshire, Inc.; Empire HealthChoice Assurance, Inc.; Community Insurance Company; Anthem Health Plans of Virginia, Inc.; HealthKeepers, Inc.; Blue Cross Blue Shield of Wisconsin; Compcare Health Services Insurance Corporation; Amerigroup Corporation; Amerigroup Services, Inc.; Amerigroup Kansas, Inc.; Amerigroup Washington, Inc.; HealthLink, Inc.; UniCare Life & Health Insurance Company; CareMore Health Plan; The Anthem Companies, Inc.; The Anthem Companies of California, Inc.; Blue Cross and Blue Shield of Alabama; USAble Mutual Insurance Company, d/b/a Arkansas Blue Cross and Blue Shield; California Physicians' Service d/b/a Blue Shield of California; Blue Cross and Blue Shield of Florida, Inc. d/b/a Florida Blue; CareFirst of Maryland, Inc.; Blue Cross and Blue Shield of Massachusetts, Inc.; Blue Cross and Blue Shield of Michigan; BCBSM, Inc. d/b/a Blue Cross and Blue Shield of Minnesota; Horizon Healthcare Services, Inc.; Blue Cross and Blue Shield of North Carolina; Highmark Inc. f/k/a Highmark Health Services; Blue Cross and Blue Shield of Vermont; Health Care Service Corporation, a Mutual Legal Reserve Company; and The Blue Cross and Blue Shield Association.

1.14   "Effective Date" means the date upon which the Settlement contemplated by this Agreement shall become effective as set forth in Section 14.

1.15   "Entity" means any corporation, partnership, limited liability company, association, trust or other or organization of any type.

1.16   "Final Approval Order and Judgment" means an order and judgment that the Court enters after the Final Fairness Hearing, which finally approves the Settlement Agreement and dismisses Defendants with prejudice and without material change to the Parties' agreed-upon proposed final approval order and judgment attached hereto as Exhibit 8.

1.17   "Final Fairness Hearing" means the hearing to be conducted by the Court to determine the fairness, adequacy, and reasonableness of the Settlement Agreement pursuant to Federal Rule of Civil Procedure 23 and whether to issue the Final Approval Order and Judgment.

1.18    "Individual" means an individual or legal entity or their respective successors or assigns.

1.19    "Net Settlement Fund" means the amount of funds that remain in the Settlement Fund after funds are paid from or allocated for payment from the Settlement Fund for the following: (i) reasonable Administrative Expenses incurred pursuant to this Settlement Agreement as set forth in Section 1.2, (ii) Taxes as described in Section 3, (iii) Service Payments approved by the Court, (iv) attorneys' fees and costs approved by the Court, (v) Credit Services described in Section 4, and (vi) Out-of-Pocket Costs described in Section 6.

1.20    "Notice" means notice of the proposed class action settlement to be provided to Settlement Class members pursuant to the Notice Plan approved by the Court in connection with preliminary approval of the Settlement, substantially in the forms attached hereto as Exhibit 5.

1.21    "Notice Date" means the last date on which Notice is mailed to Settlement Class Members.

1.22    "Notice Plan" means the settlement notice program developed by the Settlement Administrator substantially in the form attached hereto as Exhibit 4, as approved by the Court.

1.23    "Out-of-Pocket Costs" means out-of-pocket costs or expenditures that a Settlement Class Member actually incurred that are fairly traceable to the Data Breach, as set forth in Section 6.  Out-of-Pocket Costs may include, without limitation, the following: unreimbursed fraud losses or charges; professional fees incurred in connection with identity theft or falsified tax returns; credit freezes; credit monitoring that was ordered after January 2015 through the date on which the Credit Services become available through this Settlement Agreement; miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges; and time spent remedying issues related to the Data Breach at $15 per hour or unpaid time off work at the actual hourly rate of that Settlement Class Member, whichever is greater.  Settlement Class Members shall not be compensated for more than ten hours of time spent remedying issues related to the Data Breach without a detailed showing how this time was expended and why it was necessary.

1.24    "Out-of-Pocket Costs Claim Form" means the form (in paper or on the Settlement Website) attached hereto as Exhibit 6.

1.25    "Parents" means, with respect to any Entity, any corporation or other entity that owns or controls, directly or indirectly, at least a majority of the

6

securities or other interests that have by their terms ordinary voting power to elect a majority of the board of directors or others performing similar function of such Entity.

1.26    "Parties" means the Settlement Class Representatives, on behalf of themselves and the Settlement Class, and Defendants.

1.27    "Person" means an individual or legal entity or their respective successors or assigns.

1.28    "Personal Information" means names, dates of birth, member identification numbers, Social Security numbers, addresses, phone numbers, email addresses, and employment information that were stored on Anthem's systems and accessed without authorization during the Data Breach.

1.29    "Plaintiff" means a person who was named as a plaintiff in any complaint filed in one of the Actions or in *In re Anthem, Inc. Data Breach Litigation*, Case No. 5:15-MD-02617-LHK.

1.30    "Preliminary Approval Order" means an order by the Court that preliminarily certifies a Settlement Class, approves this Agreement, including but not limited to the forms and procedure for providing notice to the Settlement Class, establishes a procedure for Settlement Class Members to object to or opt-out of the Settlement, and sets a date for the Final Fairness Hearing, without material change to the Parties' agreed-upon proposed preliminary approval order attached hereto as Exhibit 3.

1.31    "Qualified Settlement Fund means the account described in Section 3.3.

1.32    "Released Claim" means any claim, liability, right, demand, suit, obligation, damage, including consequential damages, losses or costs, punitive damages, attorneys' fees and costs, actions or causes of action, of every kind or description—whether known or Unknown (as the term "Unknown Claims" is defined herein), suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, legal, statutory, or equitable—related to or arising from any of the facts alleged in any of the Actions.

1.33    "Service Payments" means compensation awarded and paid to Settlement Class Representatives in recognition of their role in this litigation, as set forth in Section 11.

1.34    "Settlement" means the settlement of the Actions by and between the Parties, and the terms thereof as stated in this Settlement Agreement.

7

1.35    "Settlement Administrator" means KCC.  Class Counsel and Defendants may, by agreement, substitute a different Settlement Administrator, subject to Court approval.

1.36    "Settlement Class" means all Individuals whose Personal Information was maintained on Anthem's Enterprise Data Warehouse and are included in Anthem's Member Impact Database and/or received a notice relating to the Data Breach; provided, however, that the following are excluded from the Settlement Class: (i) Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns; (ii) any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff; and (iii) any individual who timely and validly opts-out from the Settlement Class.

1.37    "Settlement Class Member" means a member of the Settlement Class.

1.38    "Settlement Class Representatives" means all plaintiffs named in the FAC filed in *In re Anthem, Inc., Data Breach Litigation*, Case No. 5:15-MD-02617-LHK, including Cindy Chadwick, Pearl Bruno, Daniel Randrup, Mary Ella Carter (on behalf of her minor daughter T), Kenneth Coonce, Steve Kawai, Kenneth Solomon, Joseph and Karen Jo Blanchard, Lillian Brisko, Alvin Lawson, James Schatzman, Janet Brunton, Kimberly Kos-Williams, Gary Lasneski, Ralph Staffieri, Jessica Holguin, Danielle DiFonzo, Glenn Kahn, Gerald Keaton, John McAffry, Charles Platt, John Thomas, II, Lauren Roberts, Karen Coppedge, Allison Swank, Kevin Donnelly, Harold Lott, Cynthia Kelley, Mary Wicklund, David Klemer, Nadine Foster, Cynthia Reichrath, Wanda Pratt, Brent Harris, Steven Quinnette, Darrell Hunter, Cheryl Grissom, Melinda Lambert, Amy Whittaker, Shantel and Rahman Jones, Jason Jenkins, Kelli Smith (on her own behalf and on behalf of her three minor children), Dianne Reistroffer, Christopher Ruberg, Frank Bailey, Jason Baker, Meredith Fisse, Robin Wilkey, Gary Bellegarde, Mark Hatcher, Don West, Denese Depeza, Claudia Cass, Robert Roy, Carrie Ramos, Lisa Daniels, Michelle Kaseta-Collins, Lyle Nichols, Hank Maurer, Jack Wenglewick, Charles McCullough, Debbie Stein, Melody Eads, Christopher Allen, Jill Noble, Cherri and Gregory Hawes, Christina Renkoski (previously Novak), Shawn Crane, Troy Hobbs, David Ifversen, Angelin Gonzalez, Joseph LeBrun, Brenda Harrington, Elizabeth Ames, Ronald Percy, Barbara Gold, Matthew Gates, Marne Onderdonk, Frank Pacilio, Valerie Brescia, Randy Polacsek, Francis Nicosia, Connie McDaniel, Rachel Calo, Nicholas Bowes, Martin Williams, Rosanne M. Stanley, Gregory Kremer, Denise Masloski, Alan Voll, Lakeysha Gant, Jonathan B. Pulcini, Patrick Kimbrell, William Ansah-Dawson, C. Wheelwright, Michael S. Weinberger, Vernon Davitte, Jennifer Mertlich, Simon Kaufman, Lisa Shiltz, Susan H. Jones, and Jennifer Rud.

8

1.39    "Settlement Fund" means One Hundred and Fifteen Million United States Dollars ($115,000,000) and any interest on or other income or gains earned while such amount is held in the Qualified Settlement Fund.

1.40    "Settlement Website" means a website established by the Settlement Administrator to provide information about the Settlement and permit the submission of claims.  At a minimum, the following information shall be posted on the Settlement Website: A redacted version of the Fourth Amended Complaint; this Settlement Agreement (but without the Business Practice Commitments set forth in Exhibit 2); Plaintiffs' Motion for Preliminary Approval of Class Action Settlement; Class Notice; Claims Forms with the ability to electronically submit the Claims Form; and, after filing, Plaintiffs' Motion for Attorneys' Fees and Costs and Service Payments, and Plaintiffs' Motion for Final Approval.

1.41    "Subsidiaries" means with respect to any Entity, any corporation, limited liability company, partnership or other entity of which such Entity owns or controls, directly or indirectly, at least a majority of the securities or other interests that have by their terms ordinary voting power to elect a majority of the board of directors or others performing similar functions with respect to such corporation, limited liability company, partnership or other entity.

1.42    "Successor," means, with respect to a natural person, that person's heir, and, with respect to an Entity, any other Entity that through merger, buyout, or any other means, acquires all of that Entity's duties, rights, obligations, shares, debts, or assets.

1.43    "Taxes" means (i) any and all applicable taxes, duties and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) arising in any jurisdiction, if any, with respect to the income or gains earned by or in respect of the Settlement Fund, including, without limitation, any taxes that may be imposed upon Defendants or their counsel with respect to any income or gains earned by or in respect of the Settlement Fund for any period while it is held in the Qualified Settlement Fund; (ii) any other taxes, duties and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) relating to the Settlement Fund that the Settlement Administrator determines are or will become due and owing, if any; and (iii) any and all expenses, liabilities and costs incurred in connection with the taxation of the Settlement Fund (including without limitation, expenses of tax attorneys and accountants).

1.44    "Unknown Claims" means any and all Released Claims that any Settlement Class Representative or Settlement Class Member does not know or suspect to exist in his or her favor as of the Effective Date and which, if known by

9

him or her, might have affected his or her decision(s) with respect to the Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that upon the Effective Date, Settlement Class Representatives and Settlement Class Members shall have waived any and all provisions, rights, and benefits conferred by any law of any state of the United States, or principle of common law or otherwise, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Settlement Class Representatives and Class Counsel acknowledge, and each Settlement Class Member by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a key element of the Settlement Agreement.

## 2.    BUSINESS PRACTICE COMMITMENTS

2.1    Anthem shall adopt, pay for, implement, and/or maintain the business practice commitments related to information security to safeguard Settlement Class Members' personally identifiable information as set forth in Exhibit 2, attached hereto. To the extent permitted by the Court, Exhibit 2 shall be filed under seal because it contains sensitive information about Anthem's cybersecurity practices that could harm Defendants and Settlement Class Members if made public.

2.2    Anthem shall maintain the business practice commitments set forth in Exhibit 2 for at least three (3) years from the date of entry of the Final Approval Order and Judgment.

2.3    Anthem shall engage the same independent consultant that it has already engaged or will engage to conduct its annual SOC 2 Type 2 assessment to verify that Anthem is in compliance with the business practice commitments set forth in Exhibit 2.

2.4    After the Effective Date, Anthem agrees to annually provide Plaintiffs a copy of its SOC 2 Type 2 assessment, conducted by the same independent consultant that it has already engaged or will engage, and a supplement covering the additional items described in Exhibit 2, covering the period until

10

three (3) years after the date of entry of the Final Approval Order and Judgment.

2.5     To the extent Plaintiffs believe that Anthem is not complying with its business practice commitments set forth herein and in Exhibit 2 hereto, Plaintiffs will first meet and confer with Anthem to discuss the situation before seeking relief from the Court.

## 3.     SETTLEMENT FUND

3.1     Defendants agree to make a settlement payment of one hundred and fifteen million United States Dollars ($115,000,000) and deposit that settlement payment into the Qualified Settlement Fund as follows: (i) Defendants shall deposit twenty-five million United States Dollars ($25,000,000) into the Qualified Settlement Fund ten (10) Business Days after the Court enters the Preliminary Approval Order to cover reasonable costs associated with the Notice Plan, Administrative Expenses incurred prior to entry of the Final Approval Order and Judgment, and set-up costs for the Credit Services vendor; and (ii) Defendants shall deposit the balance of the one hundred and fifteen million United States Dollars ($115,000,000) into the Qualified Settlement Fund ten (10) Business Days after the Court enters the Final Approval Order and Judgment.

3.2     As further described in this Agreement, the Settlement Fund shall be used by the Settlement Administrator to pay for:

(a)  all reasonable Administrative Expenses;

(b)  the Taxes described in Sections 3;

(c)  Service Payments award by the Court, as described in Section 11;

(d)  attorneys' fees and costs approved by the Court, as described in Section 12;

(e)  Credit Services as described in Section 4;

(f)  Alternative Compensation as described in Section 5;

(g)  Out-of-Pocket Costs as described in Section 6.

3.3     The Qualified Settlement Fund shall be an account established at a financial institution approved by Class Counsel and Defendants and, pursuant to Section 3.9, shall be maintained as a qualified settlement fund pursuant to Treasury Regulation § 1.468B-1, *et seq.*

11

3.4     No amounts from the Settlement Fund may be withdrawn from the Qualified Settlement Fund unless (i) expressly authorized by the Settlement Agreement or (ii) approved by the Court.  Class Counsel may authorize the payment of actual reasonable Administrative Expenses from the Settlement Fund without further order of the Court.  The Settlement Administrator shall provide Class Counsel and Defendants with notice of any withdrawal or other payment the Settlement Administrator proposes to make from the Qualified Settlement Fund before the Effective Date at least five (5) Business Days prior to making such withdrawal or payment.

3.5     The Settlement Administrator, subject to such supervision and direction of the Court and/or Class Counsel as may be necessary or as circumstances may require, shall administer and/or oversee distribution of the Settlement Fund to Settlement Class Members pursuant to this Agreement.

3.6     The Settlement Administrator and Class Counsel are responsible for communicating with Settlement Class Members regarding the distribution of the Settlement Fund and amounts paid under the Settlement.

3.7     All funds held in the Qualified Settlement Fund relating to the Settlement shall be deemed to be in the custody of the Court until such time as the funds shall be distributed to Settlement Class Members or otherwise disbursed pursuant to this Agreement and/or further order of the Court.

3.8     Any funds in the Qualified Settlement Fund in excess of U.S. $250,000 shall be invested in short term United States Agency or Treasury Securities, repurchase agreements collateralized by such instruments, or a mutual fund invested solely in such instruments, and shall collect and reinvest all earnings accrued thereon. Any funds held in the Qualified Settlement Fund in an amount of less than U.S. $250,000 may be held in an interest-bearing account insured by the Federal Deposit Insurance Corporation ("FDIC") or may be invested as funds in excess of U.S. $250,000 are invested.  Funds may be placed in a non-interest bearing account as may be reasonably necessary during the check clearing process.

3.9     The Parties agree that the Settlement Fund is intended to be maintained as a qualified settlement fund within the meaning of Treasury Regulation § 1.468B-1, and that the Settlement Administrator, within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of the Settlement Fund and paying from the Settlement Fund any Taxes owed with respect to the Settlement Fund.  The Parties agree that the Settlement Fund shall be treated as a qualified settlement fund from the earliest date possible, and agree to any relation-back election required to treat the Settlement Fund as a qualified settlement fund from the earliest date possible.

12

3.10    All Taxes relating to the Settlement Fund shall be paid out of the Settlement Fund, shall be considered to be a cost of administration of the Settlement, and shall be timely paid by the Settlement Administrator without prior order of the Court.  Further, the Settlement Fund shall indemnify and hold harmless the Parties and their counsel for Taxes (including, without limitation, taxes payable by reason of any such indemnification payments).

3.11    The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by any Settlement Class Representative or any Settlement Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Settlement Fund.

3.12    Each Settlement Class Representative and Settlement Class Member shall be solely responsible for the federal, state and local tax consequences to him, her or it of the receipt of funds from the Settlement Fund pursuant to this Agreement.

3.13    The Defendants and their counsel shall not have any responsibility for or liability whatsoever with respect to (i) any act, omission or determination of Class Counsel, the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.  Defendants also shall have no obligation to communicate with Class Members and others regarding amounts paid under the Settlement.

3.14    The Settlement Class Representatives and Class Counsel shall not have any liability whatsoever with respect to (i) any act, omission or determination of the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

13

4.    **CREDIT SERVICES**

4.1    Credit Services shall be provided by Experian.  Experian will provide "3B Credit Plus" Services to Settlement Class Members who claim Credit Services and enroll with Experian, including:

- Daily credit monitoring of the Settlement Class Members' credit file at all three (3) major credit reporting agencies (Experian, Equifax & TransUnion);
- An Experian (1B) Credit Report upon enrollment;
- A subsequent, updated Experian (1B) Credit Report available at the Settlement Class Members' election as often as daily (online);
- ID Theft Insurance, which covers certain identity theft related expenses incurred by Settlement Class Members up to a limit of $1 million;
- Internet Surveillance, which includes monitoring of the "dark web" for Settlement Class Members' personal information;
- Identity Validation monitoring and alerts to notify Settlement Class Members in the event their identity has been verified across the Experian identity network.
- Identity Restoration Services that provide professional fraud resolution assistance to Settlement Class Members who experience identity theft or fraud, helping them with identity recovery and restoration.
- Minor Plus will be provided to Settlement Class Members who are minors, including Social Security Number Trace, Internet Surveillance, Identity Restoration, and ID Theft Insurance.

4.2    The long form Notice shall describe generally the nature of the Credit Services and will be posted on the Settlement Website pursuant to Section 1.40 of this Settlement Agreement, and described on the website or web page of Experian pursuant to Section 4.5, below.

4.3    For a period of no later than ninety (90) days after the Notice Date, Settlement Class Members may submit to the Settlement Administrator a Claim Form selecting Credit Services in a manner consistent with the Claim Form and Notice, provided they have not submitted a Claim Form selecting Alternative Compensation.  The Settlement Administrator shall review all claims for Credit Services to validate that each Credit Services claimant (i) is a Settlement Class Member and (ii) has not claimed Alternative Compensation.  Ambiguities or deficiencies on the face of the Claim Form shall be resolved by the Settlement Administrator.  To the extent there is any ambiguity with respect to a Settlement Class Member's election of Credit Services or Alternative Compensation, and the Settlement Administrator cannot resolve the ambiguity, the ambiguous Claim Form shall default to Credit Services.  For deficiencies, the Settlement Administrator shall ask the

Settlement Class Member to cure the deficiency, and in doing so, may use its discretion to determine the most efficient and effective means of communicating with the Settlement Class Member, whether by email, telephone, or mail.  Disputes with respect to Claim Forms shall be resolved by the Settlement Administrator.

4.4    Pursuant to Section 10 below, the Settlement Administrator shall send to each valid Credit Services claimant, via email, or for claimants with no email address by U.S. Mail, an activation code to be used to activate Credit Services via the website of Experian.  Valid Credit Services claimants may activate Credit Services for a period of one (1) year from the date the Settlement Administrator sends the activation code.  Experian shall provide Credit Services to all valid Credit Services claimants who timely activate those services.

4.5    On or before the Notice Date, Experian shall establish a dedicated website or web page which provides instructions on how to submit a Credit Services claim and the activation processes, and sets forth a general description of the nature of the Credit Services to be provided as part of this Settlement.

4.6    The Settlement Administrator shall within five (5) Business Days after the Effective Date pay Experian the amount of $17,000,000 from the Settlement Fund for providing Credit Services pursuant to the agreement with Experian.

4.7    Credit Services shall be provided for a period of at least two (2) years starting from the later of (i) the date a Settlement Class Member enrolls for Credit Services or (ii) the date that is five (5) Business Days after the Effective Date.

4.8    In accordance with Section 7.1 below, if there are funds remaining in the Settlement Fund after all valid claims, expenses, and costs have been paid or reserved for, the Settlement Administrator shall use the remaining funds to pay Experian to extend Credit Services in one month increments, for up to two additional years.  In that event, Experian shall notify Settlement Class Members who have submitted valid claims for Credit Services that the credit monitoring period has been extended and for how long Credit Services will be provided.

4.9    Experian shall also offer Identity Restoration Services to all Settlement Class Members (whether or not they claim Credit Services, Alternative Compensation, or neither), for a period of two (2) years from the Effective Date, and longer, should Credit Services be continued pursuant to Section 4.8.  Identity Restoration Services provide for professional fraud resolution assistance by a dedicated, U.S.-based Fraud Resolution Agent, who assists

15

Settlement Class Members who experience identity theft or fraud with the steps to identity recovery and restoration.

## 5.    ALTERNATIVE COMPENSATION

5.1    Settlement Class Members who (i) already have some form of credit monitoring or protection and (ii) do not enroll in the Credit Services available under this Settlement Agreement may request Alternative Compensation by submitting a Claim Form selecting Alternative Compensation to the Settlement Administrator no later than 90 days after the Notice Date.  To be eligible to receive Alternative Compensation, the Settlement Class Member must, in the Claim Form, (i) state that he or she has some form of credit monitoring or protection as of the date the Claim Form is submitted, (ii) identify the credit monitoring or protection he or she has and approximately when he or she enrolled, and (iii) not also elect to claim Credit Services on the Claim Form.

5.2    The Settlement Administrator shall verify that each person who submits a Claim Form selecting Alternative Compensation (i) is a Settlement Class Member, (ii) has not claimed Credit Services available under this Settlement Agreement, (iii) has stated in the Claim Form that he or she has some form of credit monitoring or protection as of the date the Claim Form is submitted and the approximate date when he or she enrolled, and (iv) has identified in the Claim Form the credit monitoring or protection he or she has, but shall not otherwise validate the statements in the Claim Form.  Each Claim Form that meets these requirements shall be deemed a valid claim for Alternative Compensation.  No Settlement Class Member may have more than one valid Claim Form for Alternative Compensation.  Ambiguities or deficiencies on the face of the Claim Form shall be resolved by the Settlement Administrator.  To the extent there is any ambiguity with respect to a Settlement Class Member's election of Credit Services or Alternative Compensation, and the Settlement Administrator cannot resolve the ambiguity, the ambiguous Claim Form shall default to Credit Services.  For other deficiencies, the Settlement Administrator shall ask the Settlement Class Member to cure the deficiency, and in doing so, may use its discretion to determine the most efficient and effective means of communicating with the Settlement Class Member, whether by email, telephone, or mail.  Disputes with respect to any Claim Form shall be resolved by the Settlement Administrator.

5.3    Pursuant to Section 10 below, each Settlement Class Member who submits a valid Claim Form selecting Alternative Compensation shall receive a payment equal to the lesser of (i) $36.00 or (ii) the amount equal to the Net Settlement Fund divided by the number of valid Claim Forms selecting Alternative Compensation; provided, however, that if the aggregate amount

of claims for Alternative Compensation is less than $13,000,000, then the amount paid per claim shall increase pro rata until the amount per claim is equal to $50 or the aggregate sum of Alternative Compensation claims paid is $13,000,000, whichever is less.

## 6.    OUT-OF-POCKET COSTS

6.1    Settlement Class Members who have Out-of-Pocket Costs may request payment of their Out-of-Pocket Costs by submitting an Out-of-Pocket Costs Claim Form (either in paper form or on the Settlement Website) to the Settlement Administrator accompanied by an attestation regarding the Out-of-Pocket Costs incurred, and documentation of Out-of-Pocket Costs as to which documentation should naturally exist and have been retained or is obtainable, as detailed on the Out-of-Pocket Costs Claims Form.  Out-of-Pocket Costs Claim Forms may be submitted at any time on or before the date that is one (1) year after entry of the Final Approval Order and Judgment.

6.2    The Settlement Administrator shall verify that each person who submits an Out-of-Pocket Costs Claim Form is a Settlement Class Member and shall have the sole discretion and authority to determine whether and to what extent an Out-of-Pocket Costs Claim Form reflects valid Out-of-Pocket Costs actually incurred that are fairly traceable to the Data Breach.  To the extent the Settlement Administrator determines a claim for Out-of-Pocket Costs is deficient, within ten (10) days of making such a determination, the Settlement Administrator shall notify the Settlement Class Member of the deficiencies and give the Settlement Class Member thirty (30) days to cure the deficiencies.  The Settlement Administrator shall have the sole discretion and authority to determine whether the Settlement Class Member has cured the deficient claim such that it reflects valid Out-of-Pocket Costs actually incurred that are fairly traceable to the Data Breach.

6.3    Out-of-Pocket Costs for preventative measures, such as obtaining credit monitoring services or credit freezes, shall be deemed fairly traceable to the Data Breach if they were incurred in February 2015 or thereafter and the Settlement Class Member states that they were incurred in response to the Data Breach.  Out-of-Pocket Costs for unreimbursed losses related to identity theft, falsified tax returns, or other alleged wrongdoing (collectively "Misconduct"), or for attempting to remedy Misconduct, shall be deemed fairly traceable to the Data Breach if (i) the Misconduct occurred in February 2015 or thereafter, (ii) the Settlement Class Member states that he or she believes the Misconduct is connected to the Data Breach, and (iii) the Misconduct involved possible mis-use of the type of Personal Information accessed in the Data Breach (i.e., name, address, date of birth, Social

17

Security Number, email address, telephone number, employment information, and/or health care member identification number).

6.4    The Settlement Administrator shall reserve $15 million from the Settlement Fund to pay valid Out-of-Pocket Costs and shall not pay more than that amount in the aggregate for valid Out-of-Pocket Costs.    Valid Out-of-Pocket Costs shall be determined and paid as soon as practicable after the Effective Date.  Each Settlement Class Member who submits an Out-of-Pocket Costs Claim Form for valid Out-of-Pocket Costs shall receive a payment equal to the lesser of (i) the amount of the Settlement Class Member's valid Out-of-Pocket Costs or (ii) $10,000.00; provided, however, that if the amount of valid claims submitted on or before the Effective Date exceeds $15 million, all such claims shall be subject to a pro rata reduction. After the Effective Date, the Settlement Administrator shall process and pay Out-of-Pocket Costs Claim Forms in the order in which they are received, provided that the Settlement Administrator shall cease processing and paying Out-of-Pocket Costs Claim Forms once it has paid $15 million of valid Out-of-Pocket Costs in the aggregate.  If the Settlement Administrator has paid $15 million of valid Out-of-Pocket Costs in the aggregate, it shall update the Settlement Website to reflect that Out-of-Pocket Costs Claim Forms will no longer be processed and paid.

## 7.    RESIDUE OF SETTLEMENT FUND

7.1    No portion of the Settlement Fund shall revert or be repaid to Defendants after the Effective Date.  Any residual funds remaining in the Settlement Fund after all the payments, expenses, and costs identified in Sections 1.2, 3.10, 4.6, 5.3, 6.4, 10.3, 11.2, and 12.2 have been paid or reserved for shall be used to extend the Credit Services beyond the original termination date for as long as possible, but in no instance by less than one month.  To the extent the residual funds are insufficient to extend the Credit Services by at least one month or there are residual funds remaining once Credit Services have been extended, such remaining funds shall be subject to a cy pres distribution to the Center for Education and Research in Information Assurance Security at Purdue University and the Electronic Frontier Foundation, to be divided equally between them.

## 8.    PRELIMINARY APPROVAL

8.1    Promptly upon the execution of this Agreement, Settlement Class Representatives and Class Counsel will file a motion for preliminary approval of the Settlement with the Court.  Contemporaneously with or as part of that motion, Settlement Class Representatives and Class Counsel will move for certification of the Settlement Class pursuant to Federal Rule of

Civil Procedure 23(b)(3).  Defendants reserve the right to contest any motion to certify a class for any purpose other than settlement of the Actions.

8.2    Class Counsel shall apply to the Court for entry of the Preliminary Approval Order attached hereto as Exhibit 3.  The Preliminary Approval Order shall include approval of the form of notice provided to Settlement Class Members.

## 9.    CLASS NOTICE, OPT-OUTS, AND OBJECTIONS

9.1    Notice shall not be distributed or disseminated until after the Court enters the Preliminary Approval Order.

9.2    The Settlement Administrator is responsible for distributing and disseminating the Notice in accordance with the Notice Plan, Exhibit 4 hereto.

9.3    Defendants shall provide the Settlement Administrator with the names, last known mailing address, and last known e-mail addresses of Settlement Class Members, to the extent reasonably available, no later than five (5) business days after the date on which the Court enters the Preliminary Approval Order.  To the extent that Anthem has reasonably available names or other identifying information about Settlement Class Members, but not mailing or email addresses, those names and other identifying information shall also be provided to the Settlement Administrator for use in verifying the identity of Settlement Class Members to whom a mailed notice is not sent, but who respond to publication notice.

9.4    Class Counsel shall provide the Settlement Administrator with the names, last known mailing address, and last known email addresses of Settlement Class Representatives and any other putative class member who has reported updated address information to Class Counsel, no later than five (5) Business Days after the date on which the Court enters the Preliminary Approval Order.

9.5    The Notice shall explain the procedure for Settlement Class Members to opt-out and exclude themselves from the Settlement Class by notifying the Settlement Administrator in writing, postmarked no later than sixty (60) calendar days after the Notice Date.  Each written request for exclusion must set forth the name of the individual seeking exclusion and can only request exclusion for that one individual.

9.6    The Notice shall explain the procedure for Settlement Class Members to object to the Settlement by submitting written objections to the Court no later than sixty (60) calendar days after the Notice Date.  The written objection

must include the objector's name, address, personal signature, a statement of grounds for the objection, a statement indicating the basis for the Objector's belief that he or she is a member of the Settlement Class (to the extent the Objector did not receive Class Notice), a statement identifying the number of class action settlements objected to by the Settlement Class member in the last three years, a statement whether the objector intends to appear at the Final Fairness Hearing, either in person or through counsel, and if through counsel, identifying counsel by name, address, and telephone number.  In addition to the foregoing, if the Settlement Class Member is represented by counsel and such counsel intends to speak at the Final Fairness Hearing, the written objection must include a detailed statement of the specific legal and factual basis for each and every objection and a detailed description of any and all evidence the objecting Settlement Class Member may offer at the Final Fairness Hearing, including copies of any and all exhibits that the objecting Class member may introduce at the Final Fairness Hearing. The Notice will also state that any Settlement Class Member who does not file a timely and adequate notice of intent in accordance with this Section waives the right to object or to be heard at the Final Fairness Hearing and shall be forever barred from making any objection to the Settlement.

9.7    Anthem will serve the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, no later than ten days after this Agreement is filed with the Court.

## 10.    DUTIES OF SETTLEMENT ADMINISTRATOR

10.1    The Settlement Administrator shall perform the functions as are specified in this Agreement and its Exhibits, including, but not limited to, overseeing administration of the Settlement Fund; providing Notice to Settlement Class Members via U.S. mail and email; effecting publication Notice and a media plan; establishing and operating the Settlement Website and a toll-free number; administering the claims processes; and distributing Credit Services, Alternative Compensation, and Out-Of-Pocket Costs according to the processes and criteria set forth herein.

10.2    The duties of the Settlement Administrator, in addition to other responsibilities that are described in this Agreement and attached hereto as Exhibit 4, include:

a.    Obtaining from Defendants, pursuant to Section 9.3, the names, last known mailing addresses, and last known e-mail addresses, to the extent reasonably available, of Settlement Class Members for the purpose of sending Notice to Settlement Class Members;

b. Obtaining updated addresses for Settlement Class Members through the National Change of Address operated by the United States Postal Service;

c. Obtaining from Anthem, pursuant to Section 9.3, information to the extent reasonably available, necessary to establish a reasonably practical procedure to verify Settlement Class Members;

d. Effecting the Notice Plan in accordance with the procedures set forth in Section 9;

e. Establishing and maintaining a post office box for mailed written notifications of exclusion from the Settlement Class;

f. Establishing and maintaining the Settlement Website that, among other things, allows Class Members to submit claims electronically;

g. Establishing and maintaining a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answering the questions of Settlement Class Members who call with or otherwise communicate such inquiries;

h. Responding to any mailed or emailed Settlement Class Member inquiries;

i. Processing all written notifications of exclusion from the Settlement Class;

j. Providing weekly reports and, no later than ten (10) days after the deadline for Settlement Class Members to exclude themselves from the Settlement, provide a final report to Class Counsel and Defendants' counsel that summarizes the number of written notifications of exclusion received that week, the total number of written notifications of exclusion received to date, and other pertinent information as requested by Class Counsel and Defendants' counsel;

k. In advance of the Final Fairness Hearing, preparing affidavits to submit to the Court that: (i) attest to implementation of the Notice Plan in accordance with the Preliminary Approval Order; and (ii) identify each Settlement Class Member who timely and properly provided written notification of exclusion from the Settlement Class;

l.   Reviewing, determining the validity of, and processing all claims submitted by Settlement Class Members, pursuant to criteria set forth in Sections 4, 5, and 6;

m.   Pursuant to Sections 4 and 5 hereto, within thirty (30) days after the Effective Date, provide activation instructions or monetary payment, either electronically or by U.S. Mail, to Settlement Class Members for (i) Credit Services or (ii) Alternative Compensation;

n.   Pursuant to Section 6 herein, within sixty (60) days after entry of the Final Approval Order and Judgment or thirty (30) days after the Effective Date, whichever is later, and as soon as practicable thereafter on a rolling basis as claims are received, provide monetary payment, either electronically or by U.S. Mail, to Settlement Class Members for Out-of-Pocket Costs;

o.   Providing weekly reports and a final report to Class Counsel and Defendants' counsel that summarize the number of claims since the prior reporting period, the total number of claims received to date, the number of any claims approved and denied since the prior reporting period, the total number of claims approved and denied to date, and other pertinent information as requested by Class Counsel and Defendants' counsel; and

p.   Performing any function related to Settlement administration at the agreed-upon instruction of both Class Counsel and Defendants' counsel, including, but not limited to, verifying that cash payments have been distributed in accordance with Sections 4, 5, and 6.

10.3   All costs incurred by the Settlement Administrator shall be borne by and paid by the Settlement Fund.

## 11.   SERVICE PAYMENTS

11.1   Settlement Class Representatives and Class Counsel may seek awards of Service Payments to the Settlement Class Representatives. Any requests for such awards must be filed at least 21 days before the deadline for filing objections to the Settlement. Defendants agree not to oppose requests for such Service Payments to the extent they do not exceed $7,500 per Settlement Class Representative whose computer was forensically imaged, and $5,000 per remaining Settlement Class Representative.

11.2   The Settlement Administrator shall pay the Service Payments approved by the Court to the Settlement Class Representatives from the Settlement Fund. Such Service Payments shall be paid in the amount approved by the Court

22

five (5) Business Days after Defendants give the Settlement Administrator written notice (with a copy to Plaintiffs) that the Effective Date has occurred. Defendants shall give the Settlement Administrator written notice that the Effective Date has occurred within three (3) Business Days of the Effective Date occurring.

11.3    In the event the Court declines to approve, in whole or in part, the payment of the Service Awards in the amounts requested, the remaining provisions of this Agreement shall remain in full force and effect.  No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the amount of Service Awards shall constitute grounds for cancellation or termination of this Agreement.

## 12.    ATTORNEYS' FEES AND COSTS

12.1    Class Counsel may file a motion for an award of attorneys' fees and costs to be paid from the Settlement Fund.  The motion must be filed at least 21 days before the deadline for filing objections to the Settlement.  Defendants agree not to oppose a request for an award of attorneys' fees and costs that does not exceed 33% of the Settlement Fund ($37,950,000) in attorneys' fees plus reimbursement of actual costs not to exceed $3,000,000.

12.2    The Settlement Administrator shall pay the attorneys' fees and costs awarded by the Court to Class Counsel from the Settlement Fund.  Such attorneys' fees and costs shall be paid in the amount approved by the Court five (5) Business Days after Defendants give the Settlement Administrator written notice (with a copy to Plaintiffs) that the Effective Date has occurred; provided, however, that such attorneys' fees and costs may be paid after entry of the Final Approval Order and Judgment and before the Effective Date upon Class Counsel's execution of an agreement approved by Defendants, such approval not to be unreasonably withheld, pursuant to which Class Counsel agree to be jointly and severally obligated to repay the attorneys' fees and costs, plus interest at the rate earned by the Settlement Fund, to Defendants if the Effective Date does not occur.  Such agreement shall provide that repayment shall be made within ten (10) Business Days of Class Counsel receiving written notice that Defendants are terminating the Settlement Agreement because the Effective Date has not occurred.  Each Class Counsel's law firm shall agree in any such agreement that the law firm and its partners and/or shareholders are subject to the jurisdiction of this Court for the purpose of enforcing the provisions of such agreement.

12.3    Defendants shall have no responsibility for, interest in, or liability whatsoever with respect to any payment or allocation of attorneys' fees and costs to Class Counsel under this Agreement.

12.4     The finality or effectiveness of the Settlement will not be dependent on the Court awarding Class Counsel any particular amount of attorneys' fees and/or costs. In the event the Court declines to approve, in whole or in part, the payment of the Attorneys' fees and/or costs in the amounts requested, the remaining provisions of this Agreement shall remain in full force and effect. No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the amount of Attorneys' fees and/or costs shall constitute grounds for cancellation or termination of this Agreement.

## 13.     RELEASE

13.1     As of the Effective Date, all Settlement Class Representatives and all Settlement Class Members absolutely and unconditionally release and discharge any and all Released Claims against each and every Defendant, their current, former, and future Affiliates, Parents, and Subsidiaries, and every other person or entity.

13.2     The Parties understand that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, each Party expressly assumes that risk of such possible difference in facts, and agrees that this Agreement shall remain effective notwithstanding such difference in facts. The Parties agree that in entering this Agreement, it is understood and agreed that each Party relies wholly upon its own judgment, belief, and knowledge and that each Party does not rely on inducements, promises or representations made by anyone other than those embodied herein.

13.3     Notwithstanding any other provision of this Agreement (including, without limitation, this Section), nothing in this Agreement shall be deemed to in any way impair, limit, or preclude the Parties' rights to enforce any provision of this Agreement, or any court order implementing this Agreement, in a manner consistent with the terms of this Agreement.

## 14.     EFFECTIVE DATE AND TERMINATION

14.1     The Effective Date of the Settlement shall be the first Business Day after all of the following conditions have occurred:

       (a) Defendants and Class Counsel execute this Settlement Agreement;

       (b) The Court enters the Preliminary Approval Order, without material change to the Parties' agreed-upon proposed preliminary approval order attached hereto as Exhibit 3;

(c) Notice is provided to the Settlement Class consistent with the Preliminary Approval Order;

(d) The Court enters the Final Approval Order and Judgment, without material change to the Parties' agreed-upon proposed final approval order and judgment attached hereto as Exhibit 8; and

(e) The Final Approval Order and Judgment has become final because (i) the time for appeal, petition, rehearing or other review has expired, or (ii) if any appeal, petition, request for rehearing or other review has been filed, the Final Approval Order and Judgment is affirmed without material change or the appeal is dismissed or otherwise disposed of, no other appeal, petition, rehearing or other review is pending, and the time for further appeals, petitions, requests for rehearing or other review has expired.

14.2    In the event that the Court declines to enter the Preliminary Approval Order as specified in Section 14.1(b), declines to enter the Final Approval Order as specified in Section 14.1(d), or the Final Approval Order and Judgment does not become final as specified in Section 14.1(e), Defendants may at their sole discretion terminate this Agreement on five (5) Business Days written notice to Class Counsel. For avoidance of doubt, Defendants may not terminate the Agreement while an appeal from an order granting final approval is pending.

14.3    Defendants also may at their sole discretion terminate this Agreement on five (5) Business Days written notice to Class Counsel if more than a specified number of individuals submit valid requests to exclude themselves from the Settlement Class, as agreed to by the Parties and submitted to the Court for *in camera* review.

14.4    In the event the Agreement is terminated pursuant to Sections 14.2 or 14.3, the Settlement Administrator, within ten (10) Business Days of receiving written notification of such event from counsel for Defendants, shall pay to Defendants an amount equal to the Settlement Fund together with any interest or other income earned thereon, less (i) any Taxes paid or due with respect to such income, (ii) any reasonable Administrative Expenses actually incurred and paid or payable from the Settlement Fund as authorized in this Agreement, and (iii) any Attorneys' Fees and Costs paid prior to termination pursuant to Section 12.2 (which shall be repaid to Defendants by Class Counsel as specified in the agreement referenced in Section 12.2).

14.5    Except as otherwise provided herein, in the event the Settlement is terminated, the Parties to this Agreement, including Settlement Class Members, shall be deemed to have reverted to their respective status in the Actions immediately prior to the execution of this Agreement and, except as

25

otherwise expressly provided, the Parties shall proceed in all respects as if this Agreement and any related orders had not been entered.  In addition, the Parties agree that in the event the Settlement is terminated:

(a) any Court orders preliminarily or finally approving certification of the Settlement Class and any other orders entered pursuant to the Agreement shall be deemed null and void and vacated and shall not be used in or cited by any person or entity in support of claims or defenses or in support or in opposition to a class certification motion;

(b) this Agreement shall become null and void, and the fact of this Settlement and that Defendants did not oppose certification of any class under this Settlement, shall not be used or cited by any person or entity, including in any contested proceeding relating to certification of any proposed class.

## 15.    NO ADMISSION OF WRONGDOING

15.1    This Agreement, whether or not consummated, any communications and negotiations relating to this Agreement or the Settlement, and any proceedings taken pursuant to the Agreement:

(a) shall not be offered or received against any Defendant as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any Defendant with respect to the truth of any fact alleged by any Plaintiff or the validity of any claim that has been or could have been asserted in the Actions or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Actions or in any litigation, or of any liability, negligence, fault, breach of duty, or wrongdoing of any Defendant;

(b) shall not be offered or received against any Defendant as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any Defendant;

(c) shall not be offered or received against any Defendant as evidence of a presumption, concession or admission with respect to any liability, negligence, fault, breach of duty, or wrongdoing, or in any way referred to for any other reason as against any Defendant, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Agreement; provided, however, that if this Agreement is approved by the Court, the Parties may refer to it to effectuate the liability protection granted them hereunder;

26

(d) shall not be construed against any Defendant as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial; and

(e) shall not be construed as or received in evidence as an admission, concession or presumption against any Settlement Class Representative or any Settlement Class Member that any of their claims are without merit, or that any defenses asserted by any Defendants have any merit, or that damages recoverable under the Actions would not have exceeded the Settlement Fund.

## 16.    REPRESENTATIONS

16.1    Each Party represents that (i) such Party has full legal right, power and authority to enter into and perform this Agreement, subject to Court approval, (ii) the execution and delivery of this Agreement by such Party and the consummation by such Party of the transactions contemplated by this Agreement have been duly authorized by such Party, (iii) this Agreement constitutes a valid, binding and enforceable agreement, and (iv) no consent or approval of any person or entity is necessary for such Party to enter into this Agreement.

## 17.    NOTICE

17.1    All notices to Class Counsel provided for in this Agreement shall be sent by e-mail and First Class mail to the following:

Eve Cervantez
**Altshuler Berzon LLP**
177 Post Street, Suite 300
San Francisco, CA 94108
ecervantez@altshulerberzon.com

Andrew N.  Friedman
**Cohen Milstein Sellers & Toll PLLC**
1100 New York Avenue, NW
Suite 500, West Tower
Washington, DC
afriedman@cohenmilstein.com

17.2    All notices to Defendants or counsel to Defendants provided for in this Agreement shall be sent by e-mail and First Class mail to the following:

Craig A. Hoover
E. Desmond Hogan
Peter R. Bisio
**Hogan Lovells US LLP**
555 Thirteenth Street, NW
Washington, DC  20004-1109
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com
peter.bisio@hoganlovells.com

Chad R. Fuller
**Troutman Sanders LLP**
11682 El Camino Real, Suite 400
San Diego, CA 92130
chad.fuller@troutmansanders.com

John D. Martin
Lucile H. Cohen
**Nelson Mullins Riley & Scarborough LLP**
1320 Main Street, 17th Floor
Columbia, SC 29201
john.martin@nelsonmullins.com
lucie.cohen@nelsonmullins.com

Brian Kavanaugh
**Kirkland & Ellis LLP**
300 N. LaSalle
Chicago, IL 60654
brian.kavanaugh@kirkland.com

17.3    All notices to the Settlement Administrator provided for in this Agreement shall be sent by e-mail and First Class mail to the following:

Kurtzman Carson Consultants LLC
2335 Alaska Ave.
El Segundo, CA 90245

17.4    The notice recipients and addresses designated in this Section may be changed by written notice.

## 18.    MISCELLANEOUS PROVISIONS

18.1    <u>Further Steps.</u>  The Parties agree that they each shall undertake any required steps to effectuate the purposes and intent of this Agreement.

28

18.2    <u>Representation by Counsel.</u>  The Settlement Class Representatives and Defendants represent and warrant that they have been represented by, and have consulted with, the counsel of their choice regarding the provisions, obligations, rights, risks, and legal effects of this Agreement and have been given the opportunity to review independently this Agreement with such legal counsel and agree to the particular language of the provisions herein.

18.3    <u>Contractual Agreement.</u>  The Parties understand and agree that all terms of this Agreement, including the Exhibits thereto, are contractual and are not a mere recital, and each signatory warrants that he or she is competent and possesses the full and complete authority to execute and covenant to this Agreement on behalf of the Party that he or she represents.

18.4    <u>Integration.</u>  This Agreement constitutes the entire agreement among the Parties and no representations, warranties or inducements have been made to any Party concerning this Settlement Agreement other than the representations, warranties and covenants contained and memorialized herein.

18.5    <u>Drafting.</u>  The Parties agree that no single Party shall be deemed to have drafted this Settlement Agreement, or any portion thereof, for purpose of the invocation of the doctrine of *contra proferentum*. This Settlement Agreement is a collaborative effort of the Parties and their attorneys.

18.6    <u>Modification or Amendment.</u> This Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by the Persons who executed this Agreement or their successors-in-interest.

18.7    <u>Waiver.</u> The failure of a Party hereto to insist upon strict performance of any provision of this Agreement shall not be deemed a waiver of such Party's rights or remedies or a waiver by such Party of any default by another Party in the performance or compliance of any of the terms of this Agreement.  In addition, the waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

18.8    <u>Severability.</u>  Should any part, term or provision of this Agreement be declared or determined by any court or tribunal to be illegal or invalid, the Parties agree that the Court may modify such provision to the extent necessary to make it valid, legal and enforceable. In any event, such provision shall be separable and shall not limit or affect the validity, legality or enforceability of any other provision hereunder.

18.9    <u>Successors.</u>  This Settlement Agreement shall be binding upon and inure to the benefit of the heirs, successors and assigns of the Parties thereto.

18.10    <u>Survival</u>.  The Parties agree that the terms set forth in this Agreement shall survive the signing of this Agreement.

18.11    <u>Governing Law.</u>  All terms and conditions of this Settlement Agreement shall be governed by and interpreted according to the laws of the State of Indiana, without reference to its conflict of law provisions, except to the extent the federal law of the United States requires that federal law governs.

18.12    <u>Interpretation.</u>
    (a)    Definitions apply to the singular and plural forms of each term defined.
    (b)    Definitions apply to the masculine, feminine, and neuter genders of each term defined.
    (c)    Whenever the words "include," "includes" or "including" are used in this Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

18.13    <u>No Precedential Value.</u>  The Parties agree and acknowledge that this Agreement carries no precedential value.

18.14    <u>Fair & Reasonable.</u>  The Parties and their counsel believe this Agreement is a fair and reasonable compromise of the disputed claims, in the best interest of the Parties, and have arrived at this Agreement as a result of extensive arms-length negotiations.

18.15    <u>Retention of Jurisdiction.</u>  The administration and consummation of the Settlement as embodied in this Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction over the Settlement and the Parties for the purpose of enforcing the terms of this Agreement.

18.16    <u>Headings.</u>  Any headings contained herein are for informational purposes only and do not constitute a substantive part of this Agreement. In the event of a dispute concerning the terms and conditions of this Agreement, the headings shall be disregarded.

18.17    <u>Exhibits</u>.  The Exhibits to this Agreement are expressly incorporated by reference and made part of the terms and conditions set forth herein.

18.18    <u>Counterparts</u>. This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Agreement shall exchange among themselves original signed counterparts.

30

18.19   <u>Facsimile and Electronic Mail</u>.  Transmission of a signed Agreement by facsimile or electronic mail shall constitute receipt of an original signed Agreement by mail.

18.20   <u>No Assignment</u>.  Each Party represents and warrants that such Party has not assigned or otherwise transferred (via subrogation or otherwise) any right, title or interest in or to any of the Released Claims.

18.21   <u>Non-Disparagement</u>.  Settlement Class Representatives, Class Counsel, Defendants, and Defendants' counsel agree not to make any statements, written or verbal, or to cause or encourage any other Person to make any statements, written or verbal, that defame, disparage or in any way criticize the personal or business reputation, practices, or conduct of the Parties and their respective counsel concerning all Released Claims, as well as the litigation of this Action, the Settlement, this Settlement Agreement, and any discussions, interactions, or negotiations of the Settlement by the Parties and their counsel.  Settlement Class Representatives, Defendants, and their respective counsel may issue press releases in connection with the filing of the motion for preliminary approval of this Settlement.  The Parties shall exchange drafts of any such proposed press releases 24 hours in advance of publication and provide the opposing Party with a meaningful opportunity to comment on the draft press releases.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by themselves or by their duly authorized counsel:

Anthem, Inc., on behalf of itself and Blue Cross and Blue Shield of Georgia, Inc.; Blue Cross Blue Shield Healthcare Plan of Georgia, Inc.; Anthem Insurance Companies, Inc.; Blue Cross of California; Anthem Blue Cross Life and Health Insurance Company; Rocky Mountain Hospital and Medical Service, Inc.; Anthem Health Plans, Inc.; Anthem Health Plans of Kentucky, Inc.; Anthem Health Plans of Maine, Inc.; HMO Missouri, Inc.; RightCHOICE Managed Care, Inc.; Healthy Alliance Life Insurance Company; Anthem Health Plans of New Hampshire, Inc.; Empire HealthChoice Assurance, Inc.; Community Insurance Company; Anthem Health Plans of Virginia, Inc.; HealthKeepers, Inc.; Blue Cross Blue Shield of Wisconsin; Compcare Health Services Insurance Corporation; Amerigroup Corporation; Amerigroup Services, Inc.; Amerigroup Kansas, Inc.; Amerigroup Washington, Inc.; HealthLink, Inc.; UniCare Life & Health Insurance Company; Caremore Health Plan; The Anthem Companies, Inc.; and The Anthem Companies of California, Inc.

_____
Name:
Title:
Date:


Blue Cross and Blue Shield of Alabama

_____
Name:
Title:
Date:


USAble Mutual Insurance Company, d/b/a Arkansas Blue Cross and Blue Shield

_____
Name:
Title:
Date:


California Physicians' Service d/b/a Blue Shield of California

_____
Name:
Title:
Date:

32

Blue Cross Blue Shield of Florida, Inc. d/b/a Florida Blue

_____
Name:
Title:
Date:


CareFirst of Maryland, Inc.

_____
Name:
Title:
Date:


Blue Cross and Blue Shield of Massachusetts, Inc.

_____
Name:
Title:
Date:


Blue Cross and Blue Shield of Michigan

_____
Name:
Title:
Date:


BCBSM, Inc. d/b/a Blue Cross and Blue Shield of Minnesota

_____
Name:
Title:
Date:


Horizon Healthcare Services, Inc.

_____
Name:

33

Title:
Date:


Blue Cross and Blue Shield of North Carolina

_____
Name:
Title:
Date:


Highmark Inc. f/k/a Highmark Health Services

_____
Name:
Title:
Date:


Blue Cross Blue Shield of Vermont

_____
Name:
Title:
Date:


Health Care Service Corporation, a Mutual Legal Reserve Company

_____
Name:
Title:
Date:


The Blue Cross and Blue Shield Association

_____
Name:
Title:
Date:

34

CLASS COUNSEL, ON BEHALF OF THE SETTLEMENT CLASS

Name:   Eve Cervantez, Altshuler Berzon LLP
Title:      Co-Lead Plaintiffs' Counsel
Date:      6-22-17

Name:   Andrew N. Friedman, Cohen Milstein Sellers & Toll PLLC
Title:      Co-Lead Plaintiffs' Counsel
Date:

Name:   Michael Sobol, Lieff Cabraser Heimann & Bernstein LLP
Title:      Plaintiffs' Steering Committee
Date:

Name:   Eric Gibbs, Girard Gibbs LLP
Title:  Plaintiffs' Steering Committee
Date:

35

CLASS COUNSEL, ON BEHALF OF THE SETTLEMENT CLASS

_____

Name:    Eve Cervantez, Altshuler Berzon LLP
Title:         Co-Lead Plaintiffs' Counsel
Date:

_____

Name:    Andrew N. Friedman, Cohen Milstein Sellers & Toll PLLC
Title:    Co-Lead Plaintiffs' Counsel
Date:

_____

Name:    Michael Sobol, Lieff Cabraser Heimann & Bernstein LLP
Title:    Plaintiffs' Steering Committee
Date:    June 22, 2017

_____

Name:    Eric Gibbs, Girard Gibbs LLP
Title:    Plaintiffs' Steering Committee
Date:

35

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by themselves or by their duly authorized counsel:

Anthem, Inc., on behalf of itself and Blue Cross and Blue Shield of Georgia, Inc.; Blue Cross Blue Shield Healthcare Plan of Georgia, Inc.; Anthem Insurance Companies, Inc.; Blue Cross of California; Anthem Blue Cross Life and Health Insurance Company; Rocky Mountain Hospital and Medical Service, Inc.; Anthem Health Plans, Inc.; Anthem Health Plans of Kentucky, Inc.; Anthem Health Plans of Maine, Inc.; HMO Missouri, Inc.; RightCHOICE Managed Care, Inc.; Healthy Alliance Life Insurance Company; Anthem Health Plans of New Hampshire, Inc.; Empire HealthChoice Assurance, Inc.; Community Insurance Company; Anthem Health Plans of Virginia, Inc.; HealthKeepers, Inc.; Blue Cross Blue Shield of Wisconsin; Compcare Health Services Insurance Corporation; Amerigroup Corporation; Amerigroup Services, Inc.; Amerigroup Kansas, Inc.; HealthLink, Inc.; UniCare Life & Health Insurance Company; Caremore Health Plan; The Anthem Companies, Inc.; and The Anthem Companies of California, Inc.

Name: _Pamela C. Williams_

Title: Pamela C. Williams

Date: Senior Vice President + Counsel, Litigation

6/22/17

Blue Cross and Blue Shield of Alabama

Name: _____

Title: _____

Date: _____

USAble Mutual Insurance Company, d/b/a Arkansas Blue Cross and Blue Shield

Name: _____

Title: _____

Date: _____

California Physicians' Service d/b/a Blue Shield of California

Name: _____

Title: _____

Date: _____

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by themselves or by their duly authorized counsel:

Anthem, Inc., on behalf of itself and Blue Cross and Blue Shield of Georgia, Inc.; Blue Cross Blue Shield Healthcare Plan of Georgia, Inc.; Anthem Insurance Companies, Inc.; Blue Cross of California; Anthem Blue Cross Life and Health Insurance Company; Rocky Mountain Hospital and Medical Service, Inc.; Anthem Health Plans, Inc.; Anthem Health Plans of Kentucky, Inc.; Anthem Health Plans of Maine, Inc.; HMO Missouri, Inc.; RightCHOICE Managed Care, Inc.; Healthy Alliance Life Insurance Company; Anthem Health Plans of New Hampshire, Inc.; Empire HealthChoice Assurance, Inc.; Community Insurance Company; Anthem Health Plans of Virginia, Inc.; HealthKeepers, Inc.; Blue Cross Blue Shield of Wisconsin; Compcare Health Services Insurance Corporation; Amerigroup Corporation; Amerigroup Services, Inc.; Amerigroup Kansas, Inc.; HealthLink, Inc.; UniCare Life & Health Insurance Company; Caremore Health Plan; The Anthem Companies, Inc.; and The Anthem Companies of California, Inc.

_____

Name:
Title:
Date:

Blue Cross and Blue Shield of Alabama

_____

Name: Michael Velezis
Title: Vice President Legal Services
Date: 6/22/17

USAble Mutual Insurance Company, d/b/a Arkansas Blue Cross and Blue Shield

_____

Name:
Title:
Date:

California Physicians' Service d/b/a Blue Shield of California

_____

Name:
Title:
Date:

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by themselves or by their duly authorized counsel:

Anthem, Inc., on behalf of itself and Blue Cross and Blue Shield of Georgia, Inc.; Blue Cross Blue Shield Healthcare Plan of Georgia, Inc.; Anthem Insurance Companies, Inc.; Blue Cross of California; Anthem Blue Cross Life and Health Insurance Company; Rocky Mountain Hospital and Medical Service, Inc.; Anthem Health Plans, Inc.; Anthem Health Plans of Kentucky, Inc.; Anthem Health Plans of Maine, Inc.; HMO Missouri, Inc.; RightCHOICE Managed Care, Inc.; Healthy Alliance Life Insurance Company; Anthem Health Plans of New Hampshire, Inc.; Empire HealthChoice Assurance, Inc.; Community Insurance Company; Anthem Health Plans of Virginia, Inc.; HealthKeepers, Inc.; Blue Cross Blue Shield of Wisconsin; Compcare Health Services Insurance Corporation; Amerigroup Corporation; Amerigroup Services, Inc.; Amerigroup Kansas, Inc.; HealthLink, Inc.; UniCare Life & Health Insurance Company; Caremore Health Plan; The Anthem Companies, Inc.; and The Anthem Companies of California, Inc.

Name:
Title:
Date:

Blue Cross and Blue Shield of Alabama

Name:
Title:
Date:

USAble Mutual Insurance Company, d/b/a Arkansas Blue Cross and Blue Shield

Name: Lee DonaﾉAﾚ
Title: Sr. Y.P. Chief Legal DFﾟﾟ.crﾚ
Date: 6-22-17

California Physicians' Service d/b/a Blue Shield of California

Name:
Title:
Date:

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by themselves or by their duly authorized counsel:

Anthem, Inc., on behalf of itself and Blue Cross and Blue Shield of Georgia, Inc.; Blue Cross Blue Shield Healthcare Plan of Georgia, Inc.; Anthem Insurance Companies, Inc.; Blue Cross of California; Anthem Blue Cross Life and Health Insurance Company; Rocky Mountain Hospital and Medical Service, Inc.; Anthem Health Plans, Inc.; Anthem Health Plans of Kentucky, Inc.; Anthem Health Plans of Maine, Inc.; HMO Missouri, Inc.; RightCHOICE Managed Care, Inc.; Healthy Alliance Life Insurance Company; Anthem Health Plans of New Hampshire, Inc.; Empire HealthChoice Assurance, Inc.; Community Insurance Company; Anthem Health Plans of Virginia, Inc.; HealthKeepers, Inc.; Blue Cross Blue Shield of Wisconsin; Compcare Health Services Insurance Corporation; Amerigroup Corporation; Amerigroup Services, Inc.; Amerigroup Kansas, Inc.; HealthLink, Inc.; UniCare Life & Health Insurance Company; Caremore Health Plan; The Anthem Companies, Inc.; and The Anthem Companies of California, Inc.

_____

Name:
Title:
Date:


Blue Cross and Blue Shield of Alabama

_____

Name:
Title:
Date:


USAble Mutual Insurance Company, d/b/a Arkansas Blue Cross and Blue Shield

_____

Name:
Title:
Date:


California Physicians' Service d/b/a Blue Shield of California

_____

Name: HOPE H. SCOTT
Title: VICE PRESIDENT, CHIEF RISK+COMPLIANCE OFFICER
Date: June 22, 2017

Blue Cross Blue Shield of Florida, Inc. d/b/a Florida Blue

Name: _Deirdre MacCarthy_
Title: _Senior Counsel_
Date: _June 21, 2017_

CareFirst of Maryland, Inc.

Name:
Title:
Date:

Blue Cross and Blue Shield of Massachusetts, Inc.

Name:
Title:
Date:

Blue Cross Blue Shield of Michigan

Name:
Title:
Date:

BCBSM, Inc. d/b/a Blue Cross and Blue Shield of Minnesota

Name:
Title:
Date:

Horizon Healthcare Services, Inc.

Name:
Title:
Date:

Blue Cross Blue Shield of Florida, Inc. d/b/a Florida Blue

Name: _____
Title:
Date:

CareFirst of Maryland, Inc.

Name: *PATRICK DE GRAVELLES*
Title: *LITIGATION GENERAL COUNSEL*
Date: *JULY 21, 2017*

Blue Cross and Blue Shield of Massachusetts, Inc.

Name: _____
Title:
Date:

Blue Cross Blue Shield of Michigan

Name: _____
Title:
Date:

BCBSM, Inc. d/b/a Blue Cross and Blue Shield of Minnesota

Name: _____
Title:
Date:

Horizon Healthcare Services, Inc.

Name: _____
Title:
Date:

Blue Cross Blue Shield of Florida, Inc. d/b/a Florida Blue

_____

Name:
Title:
Date:


CareFirst of Maryland, Inc.

_____

Name:
Title:
Date:


Blue Cross and Blue Shield of Massachusetts, Inc.

_____

Name: _STEPHANIE LOVELL_
Title: _EVP, MEDICARE + CHIEF LEGAL OFFICER_
Date: _6/22/17_


Blue Cross Blue Shield of Michigan

_____

Name:
Title:
Date:


BCBSM, Inc. d/b/a Blue Cross and Blue Shield of Minnesota

_____

Name:
Title:
Date:


Horizon Healthcare Services, Inc.

_____

Name:
Title:
Date:

Blue Cross Blue Shield of Florida, Inc. d/b/a Florida Blue

_____

Name:
Title:
Date:


CareFirst of Maryland, Inc.

_____

Name:
Title:
Date:


Blue Cross and Blue Shield of Massachusetts, Inc.

_____

Name:
Title:
Date:


Blue Cross Blue Shield of Michigan

_____

Name: Michelle R. Heikka
Title: Attorney
Date: 6.21.17


BCBSM, Inc. d/b/a Blue Cross and Blue Shield of Minnesota

_____

Name:
Title:
Date:


Horizon Healthcare Services, Inc.

_____

Name:
Title:
Date:

Blue Cross Blue Shield of Florida, Inc. d/b/a Florida Blue

_____

Name:
Title:
Date:


CareFirst of Maryland, Inc.

_____

Name:
Title:
Date:


Blue Cross and Blue Shield of Massachusetts, Inc.

_____

Name:
Title:
Date:


Blue Cross Blue Shield of Michigan

_____

Name:
Title:
Date:


BCBSM, Inc. d/b/a Blue Cross and Blue Shield of Minnesota

_____

Name:  Joel A Mutzer
Title:  Dep. Gen'l Counsel
Date:  6/21/17


Horizon Healthcare Services, Inc.

_____

Name:
Title:
Date:

Blue Cross Blue Shield of Florida, Inc. d/b/a Florida Blue

Name:
Title:
Date:

CareFirst of Maryland, Inc.

Name:
Title:
Date:

Blue Cross and Blue Shield of Massachusetts, Inc.

Name:
Title:
Date:

Blue Cross and Blue Shield of Michigan

Name:
Title:
Date:

BCBSM, Inc. d/b/a Blue Cross and Blue Shield of Minnesota

Name:
Title:
Date:

Horizon Healthcare Services, Inc. d/b/a Horizon Blue Cross Blue Shield of New Jersey

Name: Zenola Harper

Blue Cross and Blue Shield of North Carolina

Name: Louis Patalano II
Title: VP & Deputy General Counsel
Date: 6-21-17

Highmark Inc. f/k/a Highmark Health Services

Name:
Title:
Date:

Blue Cross Blue Shield of Vermont

Name:
Title:
Date:

Health Care Service Corporation, a Mutual Legal Reserve Company

Name:
Title:
Date:

The Blue Cross and Blue Shield Association

Name:
Title:
Date:

Blue Cross and Blue Shield of North Carolina

Name:
Title:
Date:

Highmark Inc. f/k/a Highmark Health Services

Name:   Thomas L. Vankirk
Title:   Secretary • Chief Legal Officer
Date:   6/21/17

Blue Cross Blue Shield of Vermont

Name:
Title:
Date:

Health Care Service Corporation, a Mutual Legal Reserve Company

Name:
Title:
Date:

The Blue Cross and Blue Shield Association

Name:
Title:
Date:

Blue Cross and Blue Shield of North Carolina

_____

Name:
Title:
Date:


Highmark Inc. f/k/a Highmark Health Services

_____

Name:
Title:
Date:


Blue Cross Blue Shield of Vermont

_____

Name: Don C. George
Title: President & CEO
Date: June 21, 2017


Health Care Service Corporation, a Mutual Legal Reserve Company

_____

Name:
Title:
Date:


The Blue Cross and Blue Shield Association

_____

Name:
Title:
Date:

Blue Cross and Blue Shield of North Carolina

_____

Name:
Title:
Date:

Highmark Inc. f/k/a Highmark Health Services

_____

Name:
Title:
Date:

Blue Cross Blue Shield of Vermont

_____

Name:
Title:
Date:

Health Care Service Corporation, a Mutual Legal Reserve Company

_____

Name:
Title:
Date:

The Blue Cross and Blue Shield Association

_____

Name:    W. Scott Nehs
Title:    Senior Vice President
Date:     June 22, 2017

Blue Cross and Blue Shield of North Carolina

_____
Name:
Title:
Date:


Highmark Inc. f/k/a Highmark Health Services

_____
Name:
Title:
Date:


Blue Cross Blue Shield of Vermont

_____
Name:
Title:
Date:


Health Care Service Corporation, a Mutual Legal Reserve Company

_____
Name: Norman K. Beck
Title: Divisional Vice President
Date: June 21, 2017


The Blue Cross and Blue Shield Association

_____
Name:
Title:
Date: