FILED

Page 1 of 3

DEC 11 2017

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

November 29, 2017

Judge Koh – Case System Administrator
United States Courthouse
280 South 1st Street, Room 2112
San Jose, CA 95113

1. **Plaintiff & Case Number**
    1.1. In re Anthem, Inc. Data Breach Litigation, **case number 15-MD-02617**
2. **Class Member Information**
    2.1. *Class Member's Name*
        2.1.1. Sharon McClellan
    2.2. *Address*

    

    2.3. *Email Address*

    2.4. *Contact Phone Number*

    2.5. *Why I believe I am a Settlement Class Member*
        2.5.1. I was identified by the Defendant as a member effected by the data breach and received a postcard with **claim**
3. **Reason(s) for Objection(s) and/or Comment(s)**
    3.1. After being involved in more than three data breaches in the past three years—LinkedIn (twice), Anthem Blue Cross Blue Shield (BCBS), and now Equifax, it remains unknown how long Equifax will provide identity theft monitoring, coverage, and protection as one (1) of over 15 million Americans impacted by the Equifax data breach.

    In the case of Anthem BCBS, holding them and other organizations to a higher standard for retaining and protecting my personal information and my identity, as well as the information and identity of others, has become more vital today than five years ago. I recently discovered that my LinkedIn account has repeatedly been hacked and information changed with no co-operation from the organization and continued denial from the organization that anything unusual has happened. This type of flippant behavior from organizations continues to rise as well as **short-term credit monitoring services** continue to be **the fix for these data breaches**. Once the data is stolen, an individual's information, like my own, are **not just a two-year problem, it becomes a lifetime problem** for the remainder of my life.

    The supposed credit monitoring offer made by Anthem BCBS to those individuals impacted by this data breach, was not given to me then and I have no record of receipt from Anthem BCBS that any offer was ever made. I was laid-off from my company in August 2015 and if the offer was made through Parker Haniffin's Human Resources department, as an employer-sponsored plan, they Human Resources department failed to provide that information to me. Although, in accordance with HIPPA laws, Anthem BCBS was informed by Parker Hannifin of my departure from the organization, still holding Anthem BCBS liable for informing me.

    When the announcement was made of the BCBS data breach and letter was sent out in February 2015 that individuals impacted by this breach would be notified of the actions BCBS would be taken once the FBI investigation was completed; I opted to take matters into my own hands and froze all credit reporting with, what I thought was only three credit

agencies—Experian, Equifax, Transunion, until recently when I discovered there is a fourth credit agency, Innovis, which has only just come to my attention, since October 2017, making there four credit agencies in our nation.

**Credit monitoring** should be appropriately **paid out** on a permanent basis for all class members affected by this data breach **through operational funds** for **all future BCBS annual financials and forecasting years**. This **benefit ensures and assures** the following:

- 3.1.1 The information and history on each victim is static, never change
    - 3.1.1.1 Social Security Numbers
    - 3.1.1.2 Health History from the time the hack occurred
    - 3.1.1.3 Date of Birth
    - 3.1.1.4 Addresses formerly lived at
    - 3.1.1.5 Etc.
- 3.1.2 The hack was not a victimless crime, victim information on the Darknet will remain available indefinitely to the highest bidders.
    - 3.1.2.1 All victims of the Anthem Blue Cross Blue Shields data breach should be protected indefinitely.
- 3.1.3 Anthem BCBS explanation in layman terms fails to fully explain in detail how my information and the information of others will remain protected, so I and others can research Anthem BCBS improvements to better understand their approach.
    - 3.1.3.1 More detail must be given to those affected by the data breach to fully understand the scope of Anthem BCBS's intent to protect existing victims and future victims as well as identity and information in the future.
- 3.1.4 By offering credit monitoring for a short-term is not a fix. It's a band-aid, to appease the insured, which is myself and others. By offering some short-term credit monitoring service, is lie saying it was the insured fault that the data was stolen, which clearly is not the case.
    - 3.1.4.1 Identity protection is not the responsibility of the individuals, rather the responsibility is given to the corporation in which we, as the victim(s), have placed full and complete trust in to protect our identity and data information. We are required to provide our information at the request of these corporations who are not and appear not to be taking corrective action to ensure and assure victims that their personal data is and will remain protected and secure. Offering existing members, and future members, at the cost of the organization, as an operational cost, to permanently provide credit monitoring insurance for existing and future data breaches.
- 3.1.5 All Anthem BCBS Stakeholders (i.e., board members, shareholders, stockholders, healthcare systems, providers, the insured, etc.) can rest assured their invested dollars will continue to remain stable and grow.

Insured individuals or un-insured individuals who lost their personal information at no fault, but that of Anthem BCBS; makes Anthem BCBS 100% liable for the data that was stolen and was the responsibility of Anthem BCBS to protect my, and others, personal information based solely and in its entirety on the fact that Anthem BCBS, requested and required that information for their records. Now it is Anthem BCBS responsibility to ensure every individual can continue to feel confident in Anthem BCBS by adding a new line item to their annual operating cost for Life-time Credit Monitoring to me and to those individuals who data was simply stolen; therefore, redistributing the $597,500 to be added back to the final class payout.

Organizations, like Anthem BCBS, continue to set aside the rights of an individuals, myself included, as being responsible for protecting our own identity and data information; when in fact the opposite is true. **Anthem BCBS should be held**

liable for having allowed personal information to be stolen for far more than the existing class payout. If corporations, like Anthem BCBS, want to **continue to gather personal identifying information** that puts **individual identities and credit history risk**, then **I respectfully request** that the largest privately held health insurance provider in the country, Anthem BCBS, to set an example through the court that **they are liable for a minimum of $1 Billion USD** to those effected by this data breach.

3.2. **In Summary**

    3.2.1. Anthem BCBS will monetarily retain lifetime credit monitoring service to all those individuals who lost their personal data in the 2014-2015 data breach.

    3.2.2. Anthem BCBS to payout a total of $1 Billion in USD with attorney fees to be covered under separate cover from the $1 Billion USD.

    3.2.3. Attorney fees should be held to the existing services as received to include objections for no more than the already stated $3 Million USD. Or, in accordance with California state law.

4. **Requested Statements from Class Member, herein**

    *4.1. The number of possible class action settlements objected to in the last three (3) years*

        4.1.1. I, Sharon McClellan, have **not** objected to **any** class action settlements in the last three years.

    *4.2. Class member's intent to appear and/or testify at the Final Approval Hearing*

        4.2.1. I, Sharon McClellan, **do not** intend to appear, nor testify, at the Final Approval Hearing

    *4.3. The possible name(s) and contact information of any and all attorneys representing, advising, or assisting the class member, including any counsel who may be entitled to compensation for any reason related to the class member's objection or comment*

        4.3.1. I, Sharon McClellan, retain **no** representative attorney(s)s advising **nor** assisting me in this objection, or comment, requiring **no** compensation.

    *4.4. The possible name(s) of the attorney(s) that intend to appear on the class member's behalf at the Final Approval Hearing, and the identity of that attorney*

        4.4.1. I, Sharon McClellan, retain **no** representative attorney(s) that will appear on my behalf at the Final Approval Hearing, therefore **not** requiring me to identify an attorney.

    *4.5. The identity of the class member, or any person(s), who wish to be called to testify at the Final Approval Hearing*

        4.5.1. I, Sharon McClellan, have **no** one identified, including myself, that holds an interest in being, or wishing to be, called to testify at the Final Approval Hearing.

Your Honorable Koh, I hope you will fully consider everything herein before a judgement is made on this case; for the sake of all Americans. It's time that corporations, like Anthem BCBS and Equifax, be held accountable for the safe retention of personal information, under the Privacy Act of 1974.

Kind Regards,

*Sharon McClellan* (signature)

Sharon McClellan

cc: *In re Anthem, Inc. Data Breach Litigation*
    P.O. Box 404012
    Louisville, KY 40233-9821

/S/