John J. Pentz, *pro hac vice*
19 Widow Rites Lane
Sudbury, MA 01776
Telephone: 978.261.5725
Facsimile: 978.405.5161
jjpentz3@gmail.com

Attorney for Class Members/
Objectors Dannette Coddington
And Andrew Coddington

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

_____
                                                                      )
In re ANTHEM INC. DATA BREACH          ) **Case No. 15-md-02617-LHK**
LITIGATION                                                   )
_____)_____

Class members Dannette Coddington and Andrew Coddington, 6526 Highland Drive, Independence, OH 44131-6355, telephone # 216-496-1300, (the "Coddington Objectors"), hereby object to the proposed settlement and request for attorney's fees. Each of these class member's personal information was taken during the Data Breach, and each of the above-named objectors received a postcard notice of this settlement (copies attached hereto as Exhibit A). Neither of these objectors has objected to any class action settlements during the past three years.

I. **The Settlement Grossly Overvalues In-Kind Relief, and Grossly Undervalues the Cash Alternative.**

The proposed settlement is disproportionately skewed toward in-kind relief, namely, credit monitoring services, that will cost Anthem a fraction of the credit they will take against the $115 million fund for each claim of credit monitoring, while grossly undervaluing the cash alternative option by offering only $36 to $50 to class members

electing the cash alternative. According to Experian's website, the 3-bureau credit monitoring product, IdentityWorks Premium, currently retails for $19.99/month. This means that the two years of credit monitoring offered through the settlement has a retail value of $480, which is presumably the amount of the credit that Anthem will take against the $115 million settlement fund for each class member who elects credit monitoring.

The cash alternative, rather than being $480, is a mere $36, or 7.5% of the nominal value of the in-kind services. This gross discrepancy is clearly intended to steer class members away from the cash alternative and toward the credit monitoring, which will provide Anthem with a far higher credit against the settlement fund. The $36 cash equivalent figure is strong evidence of the actual fair market value of the credit monitoring, which is the amount that Anthem will pay Experian for the credit monitoring. If Anthem were not obtaining the credit monitoring at a steep discount off the retail price, it would be indifferent as to whether class members elected credit monitoring or cash, and the cash option would be exactly equivalent to the retail value of credit monitoring. Because Anthem is likely paying Experian less than $36 for each claim of two years of credit monitoring, it is willing to send class member no more than that figure for the cash alternative.

The Coddington Objectors object to any difference between the amount of credit Anthem is afforded for each claim of credit monitoring and the amount of the cash alternative. As currently devised, Anthem should receive no more than $36 credit against the settlement fund for each two-year period of credit monitoring elected. $36 is the best evidence of the actual fair market value of the Experian credit monitoring offered through

this settlement. If the credit monitoring in fact has a higher fair market value, then the cash alternative payment should be increased to reflect that value. There is no reason why a class member who has no need for additional credit monitoring should be penalized for that circumstance.

The Coddington Objectors also object to any requirement to prove that a class member already subscribes to credit monitoring before they are eligible for the cash alternative. This is a further effort to force class members to elect a credit monitoring product that will provide Anthem with a settlement credit 15 times larger than the one they will receive for cash payments. Three years will have passed since the Anthem data breach, once class members start receiving their settlement benefits. Any acute need for credit monitoring in the wake of the breach has now passed, and was addressed by Anthem's provision of AllClear ID. Class members should be able to freely choose whether they wish to continue monitoring their credit, or whether they would prefer to have cash, now that the most immediate danger from the breach has lessened with time.

Moreover, the credit monitoring provided by the Settlement has a value far less than stated by Class Counsel. Class Counsel claims that the Settlement already has a value of $213 million based on the claims for credit monitoring filed so far, but the Settlement Agreement makes clear that Anthem has paid no more than $17 million for all of the credit monitoring that may be claimed through the settlement. The Settlement establishes a preference for paying class members through credit monitoring rather than cash, because Anthem is not paying anything close to the market price for the credit monitoring provided by Experian. With regard to out of pocket claims, however, which are to be paid in cash, the Settlement establishes a ceiling of $15 million, and requires

3

class members to have their claims reduced pro rata if the total claims exceed that amount. There is no reason why residual funds may not be used to supplement the out of pocket claim fund, other than to save Anthem money as it will be cheaper to Anthem to purchase credit monitoring extensions than to actually pay additional cash to harmed class members.

**II.     Class Counsel Should Receive a Fee of No More Than 25% of $115 Million.**

Class Counsel has requested an attorneys' fee of 33% of the $115 million settlement fund, or $37.95 million. Instead, Class Counsel should receive no more than the Circuit benchmark of 25% in this case that carried little risk, and that was aided significantly by government enforcement. Indeed, according to the American Council on Science and Health, the only value added by this Settlement is the $15 million set aside to reimburse claims for out-of-pocket costs. *See Exhibit B*. In light of the fact that Anthem had already agreed to spend $260 million to make security improvements as a result of its regulatory settlement with state attorneys general, under no circumstances should Class Counsel here be permitted to take credit for those expenditures, as they purport to do in the redacted sections of their Fee Memorandum. Class Counsel is entitled to no more than 25% of the new money committed as a result of this Settlement.

While Anthem has agreed to offer an additional two years of credit monitoring as part of the Settlement, all class members have already received two full years of credit monitoring, a period that the state attorneys general felt was sufficient to mitigate the effects of the data breach. Further credit monitoring is less urgent and not of as much value to class members as the first two years of monitoring. Class Counsel should not receive the upward adjustment from the benchmark that a 33% fee would represent for securing a

settlement that consists largely of supplemental, unnecessary credit monitoring. The only portion of the Settlement not related to credit services or fees and costs is the $15 million set aside for out-of-pocket costs claims, but if all of that amount is not claimed, the remainder is converted to even more unnecessary credit monitoring.

Because Class Counsel has not secured a $115 million cash settlement, but instead has secured just $15 million in new cash, and the remainder of the settlement in the form of in-kind benefits of dubious value, Class Counsel should receive no more than 25% of the nominal value of the settlement, which is the Circuit benchmark.

## CONCLUSION

For the foregoing reasons, this Court should award Class Counsel a fee of no more than $28.75 million.

Signed by:                         Date:

_____     _____
Dannette Coddington

_____     _____
Andrew Coddington

                                        Respectfully submitted,
                                        By their attorney,

*/s/ John J. Pentz*
John J. Pentz, Esq., *pro hac vice*
19 Widow Rites Lane
Sudbury, MA 01776
Phone: (978) 261-5725
Fax: (978) 405-5161
jjpentz3@gmail.com

C. Benjamin Nutley, Esq.
1055 E. Colorado Blvd.
Pasadena, CA 91106
(310) 654-3365
nutley@zenlaw.com

**CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the foregoing was filed with the Clerk of Court using CM/ECF on December 29, 2017 and as a result has been served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

      By: */s/ John J Pentz*
      John J. Pentz

## CONCLUSION

For the foregoing reasons, this Court should award Class Counsel a fee of no more than $28.75 million.

Signed by: _____  Date: 12/22/17
Dannette Coddington

_____  12/22/17
Andrew Coddington

Respectfully submitted,
By their attorney,

*/s/ John J. Pentz*
John J. Pentz, Esq., *pro hac vice*
19 Widow Rites Lane
Sudbury, MA 01776
Phone: (978) 261-5725
Fax: (978) 405-5161
jjpentz3@gmail.com

C. Benjamin Nutley, Esq.
1055 E. Colorado Blvd.
Pasadena, CA 91106
(310) 654-3365
nutley@zenlaw.com
