Theodore H. Frank (SBN 196332)
COMPETITIVE ENTERPRISE INSTITUTE
  CENTER FOR CLASS ACTION FAIRNESS
1310 L Street NW 7th Floor
Washington, DC 20005
Voice: 202-331-2263
Email: ted.frank@cei.org

*Attorneys for Objector Adam E. Schulman*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| *In Re Anthem, Inc. Data Breach Litigation* | Case No. 15-md-02617-LHK |
| | **NOTICE OF MOTION, MOTION OF ADAM E. SCHULMAN TO APPOINT SPECIAL MASTER, AND MEMORANDUM IN SUPPORT** |
| ADAM E. SCHULMAN, <br> Objector. | Date: April 5, 2018 <br> Time: 1:30 p.m. <br> Courtroom: 8, 4nd floor <br> Judge: The Honorable Lucy H. Koh |

## NOTICE OF MOTION AND MOTION

TO ALL THE PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 5, 2018, at 1:30 p.m. or as soon thereafter as the matter may be heard by the Honorable Judge Lucy H. Koh of the United States District Court for the Northern District of California, San Jose Division, located at 280 South 1st Street, San Jose, CA 95113, Courtroom 8, Objector Adam E. Schulman will and hereby does move the Court pursuant to N.D. Cal. L.R. 7, Fed. R. Civ. P. 23(h)(4), Fed. R. Civ. P. 53 and Fed. R. Civ. P. 54(d)(2)(D) for an order appointing a special master to investigate, review and make recommendations regarding class counsel's reasonable lodestar and a reasonable division thereof amongst plaintiffs' counsel, with the master's fees to be paid for by a deduction of the fees otherwise awarded to class counsel.

This motion is based on this Notice of Motion and Motion to Appoint Special Master, and the following memorandum of points and authorities, the pleadings and record in this case including in particular the Objection of Adam E. Schulman ("Obj.") (Dkt. 924), and such other materials as the Court may consider.

PLEASE TAKE FURTHER NOTICE that, in accordance with Local Rule 7-2, a proposed Order is attached (Exhibit 1).

PLEASE TAKE FURTHER NOTICE that the undersigned consents to disposition of this motion on the papers in accordance with Local Rule 7-1(b).

## STATEMENT OF COURT ACTION SOUGHT

Objector Schulman moves the Court to enter an order pursuant to Federal Rules of Civil Procedure 23(h)(4), 53, and 54(d)(2)(D) appointing a special master to review class counsel's request for attorneys' fees. Specifically, Schulman moves the Court to appoint a master to investigate and review class counsel's billing and to recommend a reasonable lodestar accounting, as well as to propose a division amongst plaintiffs' firms. If the Court chooses to appoint a private party for this purpose, Schulman moves for that master to be compensated from a deduction in the fund of fees that would otherwise go to pay class counsel. Fed. R. Civ. P. 53(g)(2)(B).

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ..................................................................................... 1

STATEMENT OF COURT ACTION SOUGHT ...................................................................... 1

TABLE OF CONTENTS ............................................................................................................ 2

TABLE OF AUTHORITIES ....................................................................................................... 3

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 7

    I.    Rules and precedent authorize appointment of a special master to aid in review of fee motions in complex cases. ............................................................................ 8

    II.    A special master should be appointed to investigate the prima facie unreliability of class counsel's purported lodestar. ........................................................................ 10

    III.    A special master should be appointed to investigate any fee sharing arrangements between firms and to recommend and apportionment of the ultimate fee award ............ 12

    IV.    Class action fee proceedings suffer from an adversarial deficit; the Court could also consider appointing a guardian to represent the class's interest in proceedings in front of the master. .......................................................................... 13

    V.    As an equitable matter, the master should be paid through a reduction in the eventual fee award. ............................................................................................... 16

CONCLUSION ........................................................................................................................ 17

# TABLE OF AUTHORITIES

**Cases**

*AANP v. Am. Ass'n of Naturopathic Physicians*,
   37 Fed. Appx. 894 (9th Cir. 2002) ................................................................................................10

*In re Agent Orange Prods. Liab. Litig.*,
   818 F.2d 216 (2d Cir. 1987) ..........................................................................................................12

*Aird v. Ford Motor Co.*,
   86 F.3d 216 (D.C. Cir. 1996) ........................................................................................................17

*Arkansas Teacher Retirement System v. State Street Bank and Trust Co.*,
   232 F. Supp. 3d 189 (D. Mass. 2017) .......................................................................................9, 11

*Arkansas Teacher Retirement System v. State Street Bank and Trust Co.*,
   2017 WL 1712516 (D. Mass. May 2, 2017) ..............................................................................9, 16

*Bezdek v. Vibram USA, Inc.*,
   809 F.3d 78 (1st Cir. 2015) ...........................................................................................................14

*In re Bluetooth Headset Products Liability Litigation*,
   654 F.3d 935 (9th Cir. 2011) ........................................................................................................13

*Bounds v. Smith*,
   430 U.S. 817 (1977) .....................................................................................................................13

*Cardinal Chem. Co. v. Morton Int'l*,
   508 U.S. 83 (1993) .......................................................................................................................13

*Carlsen v. Global Client Solutions*,
   542 Fed. Appx. 594 (9th Cir. 2013) .......................................................................................... 9-10

*In re Citigroup Inc Secs. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013) ..........................................................................................10

*In re Community Bank of N. Va.*,
   418 F.3d 277 (3d Cir. 2005) .........................................................................................................16

*In re Continental Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ..........................................................................................................8

*Drazin v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, No. 06-cv-06219-FSH-PS,
   2012 WL 1758828 (D.N.J. Apr. 5, 2012) .....................................................................................12

*Dyer v. Wells Fargo Bank, N.A.*,
   303 F.R.D. 326 (N.D. Cal. 2013) ..................................................................................................10

*Eubank v. Pella Corp.*,
   753 F.3d 718 (7th Cir. 2014) ........................................................................................................13

*In re FPI/Agretech Sec. Litig.*,
    105 F.3d 469 (9th Cir. 1997) ................................................................................................. 12

*Fujiwara v. Sushi Yasuda Ltd*,
    58 F. Supp. 3d 424 (S.D.N.Y. 2014) ..................................................................................... 14

*Goldberger v. Integrated Res.*,
    209 F.3d 43 (2d. Cir. 2000) ............................................................................................ 13-14

*Gottlieb v. Barry*,
    43 F.3d 474 (10th Cir. 1994) ......................................................................................... 8-9, 15

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000) ................................................................................................... 8

*Haas v. Pittsburgh Nat'l Bank*,
    77 F.R.D. 382 (W.D. Pa. 1977) ............................................................................................ 15

*Hendricks v. StarKist Co.*, No. 13-cv-00729-HSG,
    2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) ..................................................................... 17

*In re High Sulfur Content Gasoline Prods. Liab. Litig.*,
    517 F.3d 220 (5th Cir. 2008) ..................................................................................... 12, 15-16

*In re HP Inkjet Printer Litig.*,
    716 F.3d 1173 (9th Cir. 2013) .............................................................................................. 13

*Hendricks v. StarKist Co.*, No. 13-cv-00729-HSG,
    2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) .........................................................................

*In re Johnson & Johnson Derivative Litig.*,
    900 F. Supp. 2d 467 (D.N.J. 2012) ................................................................................... 9, 11

*In re Johnson & Johnson Derivative Litig.*,
    2013 WL 11228425 (D.N.J. June 13, 2013) ................................................................... 11, 16

*Kaplan v. Rand*,
    192 F.3d 60 (2d Cir. 1999) ................................................................................................... 15

*K-2 Ski Co. v. Head Ski Co., Inc.*,
    506 F.2d 471 (9th Cir. 1974) ................................................................................................ 17

*Laffitte v. Robert Half Int'l*,
    376 P.3d 672 (Cal. 2016) ................................................................................................ 15, 16

*Latin Am. Music Co. v. Archdiocese*,
    499 F.3d 32 (1st Cir. 2007) ................................................................................................... 17

*Marshall v. Deutsche Post DHL & DHL Express (USA), Inc.*,
    2015 WL 5560541 (E.D.N.Y. Sept. 21, 2015) ..................................................................... 14

Case No. 15-md-02617                                                                                                                            4
MOTION TO APPOINT SPECIAL MASTER

*In re Mercury Interactive Corp. Sec. Litig.*,
   618 F.3d 988 (9th Cir. 2010) .................................................................................................. 14

*Miller v. Mackey Int'l, Inc.*,
   70 F.R.D. 533 (S.D. Fla. 1976) ............................................................................................... 15

*Minor v. Christie's, Inc.*, No. C 08-05445 WHA,
   2011 WL 902235 (N.D. Cal. Jan. 29, 2011) ............................................................................. 8

*National Organizatiom for Reform of Marijuana Laws v. Mullen*,
   828 F.2d 536 (9th Cir. 1987) .................................................................................................... 9

*Neslin v. Wells*,
   104 U.S. 428 (1882) ............................................................................................................... 17

*Nwabueze v. AT&T Inc.*,
   2013 WL 6199596 (N.D. Cal. Nov. 27, 2013) ....................................................................... 10

*Pearson v. NBTY, Inc.*,
   772 F.3d 778 (7th Cir. 2014) .................................................................................................. 13

*Red v. Unilever PLC*, No. C 10-00387 JW,
   2010 WL 3629689 (N.D. Cal. Sept. 14, 2010) ................................................................. 12, 17

*Redman v. RadioShack Corp.*,
   768 F.3d 622 (7th Cir. 2014) .................................................................................................. 14

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .................................................................................................. 14

*In re TransUnion Corp. Privacy Litig.*, MDL 1530
   2009 WL 937158 (N.D. Ill. Apr. 6, 2009) ........................................................................ 12, 17

*In re Tremont Secs. Litig.*,
   699 Fed. Appx. 8 (2d Cir. 2017) ............................................................................................. 10

*UFCW Local 880-Retail Food v. Newmont Mining Corp.*,
   352 Fed. Appx. 232 (10th Cir. 2009) ...................................................................................... 15

*United States v. Kaczynski*,
   416 F.3d 971 (9th Cir. 2005) .................................................................................................. 13

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ................................................................................................ 14

*In re Volkswagen & Audi Warranty Extension Litig.*,
   784 F. Supp. 2d 35 (D. Mass. 2011) ....................................................................................... 15

*Wilson v. SW Airlines,*
   880 F.2d 807 (5th Cir. 1989) .................................................................................................. 17

*Wininger v. SI Mgmt. L.P.*,
   301 F.3d 1115 (9th Cir. 2002)................................................................................................10

*In re World Trade Ctr. Disaster Site Litig.*,
   754 F.3d 114 (2d Cir. 2014) ...................................................................................................14

**Rules**

Advisory Committee Notes to 1993 Amendments to Fed. R. Civ. P. 54 ................................................8

Advisory Committee Notes to 2003 Amendments to Fed. R. Civ. P. 53 ...................................9, 16-17

Fed. R. Civ. P. 23(h) ...............................................................................................................7, 12

Fed. R. Civ. P. 23(h)(4)................................................................................................................8

Fed. R. Civ. P. 53 .........................................................................................................................9

Fed. R. Civ. P. 53(b)(2)(A)..........................................................................................................9

Fed. R. Civ. P. 53(c)(1)(C) ..........................................................................................................9

Fed. R. Civ. P. 53(e)....................................................................................................................9

Fed. R. Civ. P. 53(f) ....................................................................................................................9

Fed. R. Civ. P. 53(g)(2)(B) .......................................................................................................16

Fed. R. Civ. P. 53(g)(3).............................................................................................................17

Fed. R. Civ. P. 54(d)(2)(D) .........................................................................................................8

**Other Authorities**

Henderson, William D.,
   *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*,
   77 Tul. L. Rev. 813 (2003)................................................................................................14-15

Wright & Miller, Federal Practice & Procedure § 2602 (2017) .........................................................8

## MEMORANDUM OF POINTS AND AUTHORITIES

### Issue to be decided

1. In conjunction with evaluating the reasonableness of class counsel's requested attorneys' fees (Dkt. 916-5), should the Court appoint a special master to (A) investigate counsel's billing records, time expenditures, hourly rates, and fee sharing agreements among the firms and to (B) report and recommend a lodestar accounting and a proposed fee allocation amongst the firms.

Proposed answer: Yes.

### Statement of relevant facts

In June 2015, the Judicial Panel on Multidistrict Litigation transferred seventeen actions over the Anthem data breach to this Court for consolidated pretrial proceedings. Dkt. 1. Out of eighteen motions to serve as lead counsel, the Court selected two attorneys as co-lead counsel and two more as a supporting steering committee. Dkt. 284. The Court rejected the proposal (Dkt. 190) from lead counsel to have eight firms controlling the litigation. Dkt. 284. After twenty months of discovery, the parties settled in late May 2017. Declaration of Eve H. Cervantez, Dkt. 916-8 ¶¶ 3-4. Anthem agreed to establish an all-inclusive fund of $115 million, portions of which will fund (1) the purchase of credit monitoring services for claimant class members, (2) alternative cash compensation, incentive awards, and out-of-pocket restitution for a small subset of class members, (3) the costs of notice and administration, and (4) class counsel's award of attorneys' fees and costs. Settlement Agreement (Dkt. 869-8) ¶ 3.2. Class counsel moved for a Rule 23(h) fee and expense award totaling $39.95 million, amounting to 34.7% of the gross and 43.4% of the net settlement, submitting lodestar time from 53 firms comprising hundreds of timekeepers. Plaintiffs' Notice of Motion and Motion for Attorneys' Fees, Dkt. 916-5; Plaintiffs' Memorandum in Support of Motion for Attorneys' Fees ("Fee Mem."), Dkt. 916-6. Class member Adam Schulman objected to that request as excessive on either a percentage or a lodestar basis. Objection of Adam Schulman ("Obj."), Dkt. 924. Schulman declared his intention to move the Court to appoint a special master to review class counsel's fee request. Obj. at 1, 18, 23. This motion follows.

**I.    Rules and precedent authorize appointment of a special master to aid in review of fee motions in complex cases.**

"When lawyers request fees from a class settlement fund; they are not like adversaries in litigation; they are like artists requesting a grant from the National Endowment for the Arts." *In re Continental Ill. Secs. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992). Such "grant-making" requires "different procedures." *Id.* "The appointment of a special master to advise the court is an obvious possibility, one frequently used in fee matters and especially appropriate in a case such as this that lacks an adversary setting." *Id.*

Subsequent amendments to the federal rules of civil procedure expressly ratified the suggestion of *Continental Secs.* Added in 2003, Fed. R. Civ. P. 23(h)(4) provides, "The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D)." In turn, Rule 54(d)(2)(D) (added in 1993) provides that "the court may refer issues concerning the value of services to a special master under Rule 53 without regard to the limitations of Rule 53(a)(1), and may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter." "[W]ithout the need for a local rule," "[t]his authorization eliminates any controversy as to whether such references are permitted under Rule 53(b) as 'matters of account and of difficult computation of damages' and whether motions for attorneys' fees can be treated as the equivalent of a dispositive pretrial matter that can be referred to a magistrate judge." Advisory Committee Notes to 1993 Amendments to Fed. R. Civ. P. 54.

To wit, "[f]ederal courts…may designate special masters to help determine the amount of or allocate attorneys' fees, litigation expenses, and court costs in complex cases." Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 2602 (2017); *see e.g. Minor v. Christie's, Inc.*, No. C 08-05445 WHA, 2011 WL 902235 (N.D. Cal. Jan. 29, 2011) (report of special master Ellen K. Eagen), *report adopted by* 2011 WL 902033 (N.D. Cal. Mar. 14, 2011). Complexity, however, is not the only reason to designate a master. When "a district court that suspects that the plaintiffs' rights in a particular case are not being adequately vindicated [that court] may appoint counsel, a special master, or an expert to review or challenge the fee application filed by plaintiffs' attorneys." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 201 n.6 (3d Cir. 2000). As the Tenth Circuit has explained, a special master can serve as an "an

impartial observer" and "insure that the class' interests [are] protected" thereby obviating the need for an independent guardian ad litem for the class. *Gottlieb v. Barry*, 43 F.3d 474, 490 (10th Cir. 1994). Here, class counsel's excessive lump sum fee request, coupled with nebulous and irregular lodestar submissions demonstrate the need for further inquiry. Obj. 15-25; *see also infra* §§ II-III. It is appropriate to appoint a special master to conduct that inquiry. *See Arkansas Teacher Ret. System v. State St. Bank and Tr. Co.*, 232 F. Supp. 3d 189 (D. Mass. 2017) ("*State Street*") (*sua sponte* proposing to appoint special master to review questionable billing practices, including excessive markup of contract attorneys); *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 498-99 (D.N.J. 2012) (referring fee accounting to special master where "counsels' fee declarations [were] not sufficiently detailed for the court to engage in the sort of searching and thorough inquiry that a traditional lodestar analysis requires.").

A special master engaged to conduct a fee accounting serves a "hybrid role": investigating and then issuing a report and recommended disposition as a hearing officer. *State Street*, 2017 WL 1712516, at *1 (D. Mass. May 2, 2017). Both the text of Rule 53—governing special master appointments—and the case law interpreting the rule permit this type of assignment. Rule 53(c)(1)(C) contemplates that, even without an appointment order, the master has authority to conduct an evidentiary hearing, compel, take, and record evidence. Rule 53(b)(2)(A) allows the appointing order to specify particular "investigation or enforcement duties." The subsequent report and recommendation is an implicit expectation of most if not every special master under Rule 53(e) and (f). "The master's role in enforcement may extend to investigation in ways that are quite unlike the traditional role of judicial officers in an adversary system." Advisory Committee Notes to 2003 Amendments to Rule 53. In *National Organization for Reform of Marijuana Laws v. Mullen*, the Ninth Circuit held that it was a valid exercise of discretion for the district court to delegate to the special master "the power to act as investigator as well as hearing officer." 828 F.2d 536, 544-45 (9th Cir. 1987) (adopting the position of Fifth Circuit decisions).

And so, unsurprisingly, the Ninth Circuit has approved of special master fee referral, and has even itself referred accounting of appellate attorneys' fees to a special master. *See respectively Carlsen v.*

*Global Client Solutions, LLC*, 542 Fed. Appx. 594 (9th Cir. 2013) (affirming district court's fee award made after referral to special master for report and recommendation) *and AANP v. Am. Ass'n of Naturopathic Physicians*, 37 Fed. Appx. 894 (9th Cir. 2002) (designating the Ninth Circuit's appellate commissioner as a special master to determine amount of attorneys' fees due appellee). For the reasons discussed below, counsel's fee request warrants additional scrutiny. To conserve the Court's limited resources, part of that investigation can be delegated to a special master.

## II.  A special master should be appointed to investigate the prima facie unreliability of class counsel's purported lodestar.

Schulman's objection details at length the irregularities and apparent excesses of class counsel's fee request, all of which require further examination. Obj. 15-18 (duplication of effort); Obj. 18-22 (hourly rates for document review time); Obj. 23-24 (inscrutable billing). "Giving counsel the benefit of the doubt even in light of apparently improperly claimed hours…runs counter to the rule…that the burden to submit detailed records justifying hours reasonably expended falls upon the claiming attorneys." *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1126 (9th Cir. 2002). The lodestar "serves little purpose as a cross-check if it is accepted at face value." *In re Citigroup Secs. Litig.*, 965 F. Supp. 2d 369, 389 (S.D.N.Y. 2013). Thus, even the time summaries permitted in the lodestar crosscheck context should "at the very least, break down the hours worked by year and task." *In re Tremont Secs. Litig.*, 699 Fed. Appx. 8, 18 n.13 (2d Cir. 2017). "Very general information" will not suffice. *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 333-34 (N.D. Cal. 2014) (citing cases). Rather, one needs at least some information about the who, what and when: **who** performed **what** tasks and **when**? *See, e.g., Nwabueze v. AT&T Inc.*, 2013 WL 6199596, at *11 (N.D. Cal. Nov. 27, 2013) (requiring information as to "when [tasks] were performed—that is, before or after settlement was reached").

Class counsel provide a few categorical firm-by-firm breakdowns (Dkts. 916-10, 916-11, 916-12), but these spreadsheets do not allow class members or the court the requisite clarity as to who did what and when. Obj. 23-24. And what they do reveal is duplication, inefficiency, and overcharging. Obj. 15-22. In these circumstances, other courts have appointed special masters to investigate the lurking questions.

For example, in *Johnson & Johnson Derivative Litigation*, class counsel sought a fee of $10 million in connection with a derivative settlement. 900 F. Supp. 2d 467, 475 (D.N.J. 2012). Representing a shareholder, the Center for Class Action Fairness, objected, *inter alia*, that the vagueness of the fee submissions did not permit the necessary scrutiny of the reasonableness of the hours claimed. Supplemental Objection of Mark G. Petri, No. 10-cv-2033 (FLW), Dkt. 195 at 14-17 (D.N.J. Sept. 14, 2012). The court agreed that the fee declarations were "not sufficiently detailed" to vet the lodestar. 900 F. Supp. 2d at 498. With only "seven broad categories" of task delineation, the court could not discern how many hours were spent beneficially or productively, nor "determine whether there has been any duplication in attorney effort" among the six plaintiffs' firms. *Id* at 498-99. Because the court's docket prevented it from expending further resources culling through the lodestar records, it exercised its discretion to appoint a special master to conduct an accounting of the lodestar. *Id.* at 499. Ultimately, the referral and special master proceedings (including input from CCAF's client), resulted in a 138-page report that recommended a reduction of proclaimed lodestar hours by more than 20%. *In re Johnson & Johnson Derivative Litig.*, 2013 WL 11228425 (D.N.J. June 13, 2013), *adopted by district court*, 2013 WL 6163858 (D.N.J. Nov. 25, 2013).

More recently, as described in Schulman's objection (Obj. 23), the District of Massachusetts appointed a special master to investigate questionable billing practices in connection with a $300 million class settlement in the *State Street* case. No. 11-cv-10230-MLW, Dkt. 173 (D. Mass. Mar. 8, 2017). There, a Boston Globe Spotlight Team investigation prompted the court to reassess the reliability of the lodestar submissions class counsel (including Lieff Cabraser) had provided with their fee motion. 232 F. Supp. 3d 189 (D. Mass. 2017). Specifically, Judge Wolf questioned "whether the hourly rates plaintiffs' counsel attributed to the staff attorneys in calculating the lodestar are, as represented, what these firms actually charged for their services or what other lawyers in their community charge paying clients for similar services" and "whether paying clients customarily agreed to pay, and actually paid, an hourly rate for staff attorneys that is about ten times more than the hourly cost, before overhead, to the law firms representing plaintiffs." *Id.* at 192-93. Similar questions arise in this case. Obj. at 18-22.

If, as in *State Street* and *Johnson & Johnson*, this Court's overcrowded docket constrains it from delving as deeply as necessary into the fee accounting, Schulman recommends the appointment of a special master to serve that function. *See also Drazin v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, No. 06-cv-06219-FSH-PS, 2012 WL 1758828, at *1 (D.N.J. Apr. 5, 2012) (issuing report and recommendation after being appointed to calculate the lodestar in a case with "exceptionally voluminous" time records "which were compounded by [an] inter-law firm battle.").

### III. A special master should be appointed to investigate any fee sharing arrangements between firms and to recommend and apportionment of the ultimate fee award

A further reason to appoint a master is the need to inquire into fee-sharing arrangements between firms in connection with this Court's obligation to allocate the fee award amongst firms under Rule 23(h). *See* Obj. 16 (discussing, *inter alia*, *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220 (5th Cir. 2008)). In a case predating 23(h), the Second Circuit presaged *High Sulfur* by rejecting the notion that class counsel may "divide the award among themselves in any manner they deem satisfactory under a private fee sharing agreement." *In re "Agent Orange" Prods. Liab. Litig.*, 818 F.2d 216, 223 (2d Cir. 1987). "Such a division overlooks the district court's role as protector of class interests under Fed. R. Civ. P. 23(e)." *Id.* The Second Circuit decreed that "in all future class actions counsel must inform the court of the existence of a fee sharing agreement at the time it is formulated." *Id.* at 226; *see also In re FPI/Agretech Sec. Litig.*, 105 F.3d 469, 473-74 (9th Cir. 1997) (citing favorably *Agent Orange*). To objector's knowledge, this Court has not been made aware of any fee sharing agreements that may exist.

A special master can lend a hand in these inquiries. *High Sulfur*, 517 F.3d at 234 & n.21 (observing that special masters can be used to recommend reasonable fee allocations through an open and transparent process); *In re TransUnion Corp. Privacy Litig.*, MDL 1530, 2009 WL 937158 (N.D. Ill. Apr. 6, 2009) (appointing a master to determine the appropriate fee allocation); *Red v. Unilever PLC*, No. C 10-00387 JW, 2010 WL 3629689 (N.D. Cal. Sept. 14, 2010) (appointing a master to propose apportionment of the attorneys' fee fund).

Case No. 15-md-02617　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　12
MOTION TO APPOINT SPECIAL MASTER

Class counsel's fee motion fails to propose and allocation and omits any mention of fee-sharing agreements (if they indeed exist). Both are additional reasons to appoint a master.

### IV. Class action fee proceedings suffer from an adversarial deficit; the Court could also consider appointing a guardian to represent the class's interest in proceedings in front of the master.

Just like a district court evaluating a settlement without objectors, a special master evaluating fee submissions on an *ex parte* basis is put at an inherent "disadvantage." *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014). "Even the most dedicated trial judges are bound to overlook meritorious cases without the benefit of an adversary presentation." *Bounds v. Smith*, 430 U.S. 817, 826 (1977). To reintroduce a thorough-going adversarial presentation of the issues, courts routinely appoint *amici* to argue on behalf of the unrepresented side. *See, e.g., Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83, 104 (1993) (Scalia, J., concurring) ("[W]hen faced with a complete lack of adversariness" it is common practice for federal courts to "appoint[] an amicus to argue the unrepresented side." (listing Supreme Court cases); *United States v. Kaczynski*, 416 F.3d 971, 977 (9th Cir. 2005) (appointing *pro bono* amicus to represent the interests of the Unabomber's unrepresented victims and their families).

Again, the lack of adversarial process is doubly problematic in the class action context where conflicts of interest between class counsel and class members are endemic. *Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) ("acute conflict of interest"); *Redman v. Radioshack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014) ("built-in conflict of interest"); *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013) ("the interests of class members and class counsel nearly always diverge."). Attorneys' fees disputes in an aggregate litigation context present a prototypical situation warranting third-party appointments. In certain cases, the parties negotiate "clear sailing" settlement clauses whereby the defendant agrees not to oppose class counsel's fee; thus depriving the court of the advantages of the adversarial process. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947-48 (9th Cir. 2011).

But even without an explicit "clear sailing" clause, a common fund settlement structure results in the same "diluted—indeed, suspended" "adversary system." *Goldberger v. Integrated Res.*, 209 F.3d 43, 52 (2d Cir. 2000). After a common fund all-in sum has been negotiated, defendants care not how the settlement fund is divided, and individual class members lack the incentive to intervene simply in

hopes of a "miniscule *pro rata* gain." *Id.* at 52-53 (citing *In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992)); *see also Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003) ("Ordinarily, a defendant is interested only in disposing of the total claim asserted against it…the allocation between the class payment and the attorneys' fees is of little or no interest to the defense") (internal quotation omitted). Thus, recently the Second Circuit appointed *amicus* counsel to argue in support of the district court's decision to limit contingency fees. *In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 121 n.4 (2d Cir. 2014). There, *amicus* counsel vindicated the district court's concern that "overcompensation of attorneys would take away money from needy plaintiffs, and…[its] rightful[] sensitiv[ity] to the public perception of overall fairness." *Id.* at 127.

Through its oversight responsibility, the court itself assumes a derivative fiduciary obligation *In re Mercury Interactive Corp. Sec. Lit.*, 618 F.3d 988, 993-95 (9th Cir. 2010). That obligation entails not rubber-stamping fee requests even in the absence of objectors. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002). Too often though, an *ex parte* unopposed fee proceeding leads to a rubber stamping of class counsel's proposed fee order. *Marshall v. Deutsche Post DHL & DHL Express (USA) Inc.*, 2015 WL 5560541, at *1 (E.D.N.Y. Sept. 21, 2015) ("Without the adversarial process, there is a natural temptation to approve a settlement, bless a fee award, sign a proposed order submitted by plaintiffs' counsel, and be done with the matter"). That in turn, leads to "proposed orders masquerading as judicial opinions" and ultimately, an entire self-sustaining jurisprudence that has become "so generous to plaintiffs' attorneys." *Fujiwara v. Sushi Yasuda Ltd.,* 58 F. Supp. 3d 424, 436 (S.D.N.Y. 2014). There is no better time than now to break the deleterious cycle.

Just as "meritorious objectors can be of immense help to a district court in evaluating the fairness of a settlement," so too can an appointed class guardian aid in scrutinizing fee submissions. *Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 84 n.3 (1st Cir. 2015). To avoid an unenlightening one-sided reexamination of the issues (to the detriment of absent class members), this Court could appoint a *guardian ad litem* to represent the class's interests in front of the special master. "Because the common-fund doctrine places the plaintiff's counsel in a position that is directly adverse to the class, a court can use its supervisory authority under Rule 23 to appoint a guardian ad litem to represent the class

Case No. 15-md-02617 14
MOTION TO APPOINT SPECIAL MASTER

on the issue of attorneys' fees." William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*, 77 TUL. L. REV. 813, 817 (2003); *e.g., Gottlieb v. Barry*, 43 F.3d 474, 490 (10th Cir. 1994) (endorsing possibility of guardian *ad litem*, though holding it not required); *Miller v. Mackey Int'l, Inc.*, 70 F.R.D. 533, 535 (S.D. Fla. 1976) (appointing guardian *ad litem* to act on behalf of class members in conjunction with class counsel's fee motion); *Haas v. Pittsburgh Nat'l Bank*, 77 F.R.D. 382, 383 (W.D. Pa. 1977) (same). This enables a "genuinely adversarial process" and "serve[s] to enhance the accuracy and legitimacy of fee awards." *Laffitte v. Robert Half Int'l., Inc.*, 376 P.3d 672, 691 (Cal. 2016) (Liu, J., concurring).

One objection to a guardian's appointment may be that a special master doesn't need any support in serving the class's interests. But that ignores the foundational premise of the American legal system: the adversary system reaches better results than does a purely inquisitional Continental system of adjudication. An *ex parte* proceeding will make things more onerous and tedious for the special master; a guardian's presence would relieve some of the special master's burden, more easily enable her to complete her investigation within a timely period, and effectively give the class a double security: two sets of eyeballs scrutinizing class counsel's billing records.

If the court decides against appointing a guardian, it should nonetheless permit objecting class members to participate in the special master proceedings. It is routine to introduce adversarial presentation into special master fee proceedings via objector participation. *Kaplan v. Rand*, 192 F.3d 60, 65 (2d Cir. 1999) (noting objector participation in front of special master); *UFCW Local 880-Retail Food v. Newmont Mining Corp.*, 352 Fed. Appx. 232, 234 n.2 (10th Cir. 2009) (same); *In re Volkswagen & Audi Warranty Extension Litig.,* 784 F. Supp. 2d 35, 38 (D. Mass. 2011), *rev'd on other grounds*, 692 F.3d 4 (1st Cir. 2012) (noting that class members were permitted an opportunity to speak in front of special master regarding fees); *see generally High Sulfur*, 517 F.3d at 232 n.18 ("Other guidelines for minimal procedural protections appear in the federal rules governing special masters and magistrate judges, who may be asked by a district court to oversee an attorneys' fee allocation. In either situation, all interested parties present their data to the deciding officer; have limited if any right to engage in ex parte contacts; and may, on a fully developed record, seek reconsideration or modification of the

allocation by the district court.") (internal citations omitted). As it has done previously, CCAF would be willing to participate in that capacity here. *See Johnson & Johnson Derivative Litig.*, 2013 WL 11228425, at *8-*9 (D.N.J. June 13, 2013) (noting CCAF's participation in the special master proceedings over class counsel's resistance).

More generally than just the fee context, the Advisory Committee Notes recommend that "in most settings…*ex parte* communications [between the master and] the parties should be discouraged or prohibited." Advisory Committee Notes to 2003 Amendments to Rule 53; *cf. also In re Community Bank of N. Va.*, 418 F.3d 277, 319 (3d Cir. 2005) (criticizing *ex parte* determinations into settlement fairness that excluded objectors). Adversarial and transparent presentation is especially helpful here, because the overbilling here involves systematic actions by class counsel common to class-action fee requests that the special master has no reason to be familiar with and may not notice in the course of an *ex parte* proceeding where he is only hearing one side of the issue.

The Court should ensure that any special master proceedings are as adversarial as possible.[1]

## V.  As an equitable matter, the master should be paid through a reduction in the eventual fee award.

Fed. R. Civ. P. 53(g)(2)(B) allows the master's compensation to be paid "from a fund or subject matter of the action within the court's control."[2] "A party whose unreasonable behavior has occasioned the need to appoint a master…may be charged all or a major portion of the master's fees."

---

[1] In this same vein, the selection of an unconflicted, unbeholden special master is invaluable. *See State Street*, 2017 WL 1712516, at *4 (D. Mass. May 2, 2017) (observing that Lieff and another firm had recommended a former judge for the master appointment, an individual whom they engaged for mediation services in other cases).

[2] The issue of costs should not sway the Court against appointing a special master or guardian who (unlike CCAF) would require an hourly fee. Simply put, the costs would "'pale in comparison to the significant amounts of money' to be divided between plaintiffs and counsel in high-value cases." *Laffitte v. Robert Half Int'l., Inc.*, 376 P.3d 672, 691 (Cal. 2016) (Liu, J., concurring) (quoting William Rubenstein, *The Fairness Hearing: Adversarial and Regulatory Approaches*, 53 UCLA L. Rev. 1435, 1455 (2006)). This is one such high-value case, with a $115 million megafund settlement and at least $13 million in overbilling. Obj. 24.

Advisory Committee Notes to 2003 Amendments to Rule 53. "[T]he district court enjoys broad discretion to allocate the master's fees as it thinks best under the circumstances of the case." *Aird v. Ford Motor Co.*, 86 F.3d 216, 221 (D.C. Cir. 1996); *accord Latin Am. Music Co. v. Archdiocese*, 499 F.3d 32, 43 (1st Cir. 2007); *K–2 Ski Co. v. Head Ski Co., Inc.*, 506 F.2d 471, 476 (9th Cir.1974). Class counsel may be liable for these costs. *Aird*, 86 F.3d at 221 (affirming district court's decision to tax class counsel for special master's costs as the losing party in the case).

And so they should be liable here. It light of the fact that class counsel's billing practices have occasioned the need for a special master, it is class counsel that should foot the bill, not the class. "[E]quity requires that the loss, which consequence thereof must fall on one of the two, shall be borne by him by whose fault it was occasioned." *Neslin v. Wells*, 104 U.S. 428, 437 (1882); *cf. also Wilson v. SW Airlines*, 880 F.2d 807, 816 (5th Cir. 1989) ("class counsel … asked for unreasonably high enhancements and additional fees. Indeed, class counsel produced a figure that would exhaust the entire surplus…. [F]or this reason we hold that, although class counsel's conduct does not destroy its equitable claim, it does diminish it."). Other courts appointing masters have ordered that the master's compensation be deducted from the eventual fee award approved. *In re TransUnion Corp. Privacy Litig.*, MDL. 1530, 2009 WL 937158, at *5 (N.D. Ill. Apr. 6, 2009); *Red v. Unilever PLC*, No. C 10-00387 JW, 2010 WL 3629689, at *3 (N.D. Cal. Sept. 14, 2010); *cf. also Hendricks v. StarKist Co.*, No. 13-cv-00729-HSG, 2016 WL 5462423, at *16 (N.D. Cal. Sept. 29, 2016) (finding it "appropriate and justified" to pay objectors' $150,000 fee out of class counsel's fee fund). That is the proper course here too.

The order regarding allocation of the master's payment may be subject to later modification should unforeseen circumstances arise. Fed. R. Civ. P. 53(g)(3). But at least for now, it is only fair to have counsel's eventual fee award cover the fees of a master's services in recommending an appropriate accounting of fees.

## CONCLUSION

For the foregoing reasons, the Court should appoint a special master to investigate the billing irregularities demonstrated here, and to recommend a firm-by-firm apportionment of the fee award.

Dated: January 4, 2018          Respectfully submitted,

*/s/ Theodore H. Frank*
Theodore H. Frank (SBN 196332)
COMPETITIVE ENTERPRISE INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1310 L Street NW, 7th Floor
Washington, DC 20005
Email: ted.frank@cei.org
Voice: 202-331-2263

*Attorneys for Objector Adam Schulman*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing motion using the CM/ECF filing system thus effectuating service of such filing on all ECF registered attorneys in this case.

DATED this 4th day of January, 2018.

*/s/ Theodore H. Frank*
Theodore H. Frank