1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

IN RE ANTHEM, INC. DATA BREACH
LITIGATION

Case No. 5:15-MD-02617-LHK

**REVISED [PROPOSED] ORDER
GRANTING PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, LITIGATION
EXPENSES, AND SERVICE AWARDS TO
CLASS REPRESENTATIVES**

This matter is before the Court on Plaintiffs' motion for attorneys' fees, litigation

expenses, and service awards to class representatives.  Having considered the motion, all exhibits

and attachments thereto, the record in this matter, the briefs and arguments of counsel, and the

briefs and arguments of objectors to the motion, **IT IS HEREBY ORDERED** as follows:

**ATTORNEYS' FEES**

1.     The Court finds that Plaintiffs' Counsel are entitled to reasonable attorneys' fees,

pursuant to the common fund doctrine. *In re Washington Public Power Supply Sys. Sec. Litig.*, 19

F.3d 1291, 1300 (9th Cir. 1994).

2.     The Court finds that the percentage-of-recovery method of determining reasonable

attorneys' fees is appropriate here, where the settlement creates a common fund, and exercises its

discretion to analyze the fee request using that method. *Vizcaino v. Microsoft Corp.*, 290 F.3d

[PROPOSED] ORDER GRANTING MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND
SERVICE AWARDS TO CLASS REPRESENTATIVES; Case No:  15-md-02617-LHK (NC)

1  1043, 1047 (9th Cir. 2002); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, (9th Cir.

2  2011) (court may determine fees as "a percentage of the common fund in lieu of the often more

3  time-consuming task of calculating the lodestar"); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d

4  1036, 1046 (N.D. Cal. 2008).  The Court recognizes that in the Ninth Circuit, the "benchmark"

5  fee award is 25% of the common fund, which can be adjusted upward or downward based on the

6  circumstances of the case.  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir.

7  1989).

8        3.      The Court finds that Plaintiffs' Counsel's fee request of $37,950,000 falls below

9  the benchmark of 25% of the common fund.  The $115 million settlement fund creates billions of

10  dollars of value for class members, including through the following:  every class member is

11  eligible for at least two (and more likely four) years of credit monitoring that is worth at least

12  $9.99 per class member per month; every class member may obtain fraud resolution services,

13  valued at $89.98, at any time in the next four years; every class member can submit a claim for up

14  to $10,000 to be reimbursed for out-of-pocket costs or time spent as a result of the data breach

15  (subject to a class-wide cap of $15 million for reimbursement of out-of-pocket costs); and class

16  members who already have credit monitoring services can select alternative cash compensation of

17  $50.  Even if the Court conservatively calculates the value of the common fund by considering

18  only the value of credit monitoring (and not the value of the other relief), and only the value to

19  class members who have already submitted claims for credit monitoring, the settlement provides

20  over $500 million in benefits to the class ($9.99 x 48 months x 1,125,275 class members).  *See*

21  *Johansson-Dohrmann v. Cbr Sys., Inc.*, 2013 WL 3864341 (S.D. Cal. July 24, 2013).  Plaintiffs'

22  Counsel's fee request is less than 8% of $500 million.

23        4.      The Court also finds that Plaintiffs' Counsel's fee request of $37,950,000 falls

24  below the benchmark of 25% of the common fund because the settlement provides for significant

25  and valuable changes to Anthem's cybersecurity practices, in addition to the $115 million

26  settlement fund.  The settlement requires Anthem to make specific changes to its cybersecurity, as

27  set forth in Exhibit 2 of the Settlement Agreement, and to nearly triple its spending on

28  cybersecurity for the next three years.  The value of these changes is reflected in the sum certain

2

1    of additional money that Anthem has committed to spending on cybersecurity over the next three

2    years, and is appropriately included as part of the value of the common fund for purposes of

3    applying the percentage of the fund method of determining fees.  *See Staton v. Boeing Co.*, 327

4    F.3d 938, 974 (9th Cir. 2003).  Plaintiffs' Counsel's fee request, when taken as a percentage of

5    $115 million plus the value of the sum certain of additional money that Anthem has committed to

6    spending on cybersecurity, falls well below the benchmark of 25% of the common fund.

7          5.       The Court has analyzed the reasonableness of Plaintiffs' Counsel's fee request,

8    including by applying the non-exhaustive factors set forth in *Vizcaino v. Microsoft Corp.*, 290

9    F.3d 1043 (9th Cir. 2002).  Because all of the factors strongly support an upward adjustment from

10   the 25% benchmark, the Court finds that even if Plaintiffs' Counsel's fee request is conservatively

11   measured as 33% of the $115 million settlement fund, it is reasonable.  In particular, the Court

12   finds:

13          a.       First, the overall result and benefit to the class from the litigation is

14   exceptional.  The monetary component of the settlement directly benefits the class by providing

15   class members with relief tailored to their specific needs, including credit monitoring services,

16   fraud resolution services, and reimbursement for out-of-pocket losses.  The mandatory changes

17   required by the settlement provide additional core benefits to the class, which are critical because

18   class members' PII remains in Anthem's databases.  In addition, the innovative notice plan

19   benefitted the class by providing notice to class members for whom Anthem did not have contact

20   information and who may not have otherwise learned they were victims of the data breach and

21   taken steps to protect themselves.  And the efficiency with which Counsel achieved the proposed

22   settlement is itself a benefit to the class, given the time-sensitivity of providing class members

23   with credit monitoring and improving defendants' cybersecurity in a data breach case.

24          b.       Second, this case required extraordinary skill and high quality work, which

25   Plaintiffs' Counsel demonstrated.

26          c.       Third, this was a risky case and Plaintiffs' Counsel handled it on a

27   contingency basis.  There was no guarantee that Plaintiffs' claims would survive a motion to

28   dismiss, particularly given the many prior data breach cases that have been defeated on motions to

3

1  dismiss. *See, e.g.*, *Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010); *Holmes v.*

2  *Countrywide Fin. Corp.*, 2012 WL 2873892, at *5 (W.D. Ky. July 12, 2012).  And there was no

3  guarantee that Plaintiffs' claims would be certified.  Indeed, at the time Plaintiffs' Counsel took

4  this case, there was no precedent granting class certification to consumers in a data breach case.

5  Parallel state court litigation in California and Missouri, the novelty of Plaintiffs' damage

6  theories, and the specter of additional rounds of motions to dismiss and class certification on

7  Plaintiff' hundreds of common law and statutory claims added to the risk that Plaintiffs' Counsel

8  bore without payment, or any guarantee of ever being paid, for more than two years.

9           d.      Fourth, this is the largest settlement ever achieved in a data breach case,

10  including settlements of data breach cases involving more class members.

11        6.      The Court finds that the credit monitoring provided under the settlement does not

12  make this a "coupon settlement" under the Class Action Fairness Act (CAFA), such that CAFA's

13  statutory provisions regarding attorneys' fees awards would apply.  Coupon settlements "involve

14  a discount—frequently a small one—on class members' purchases from the settling defendant.

15  These discounts require class members to hand over more of their own money before they can

16  take advantage of the coupon, and they often are only valid for select products or services." *In re*

17  *Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 951 (9th Cir. 2015) (internal cites omitted).

18  The credit monitoring provided here does not offer a discount on some future product offered by

19  Anthem, or require class members to hand over money to anyone, much less Anthem.  It does not

20  turn the settlement into a coupon settlement.

21        7.      The Court finds that Plaintiffs' Counsel's use of the gross settlement fund for

22  purposes of the percentage-of-fund valuation is appropriate and aligns with well-established

23  practice in this district. *See Online DVD-Rental*, 779 F.3d at 953.  The amounts spent on

24  litigation expenses, class notice, and settlement administration all inure to the benefit of the class.

25        8.      The Court's assessment that Plaintiffs' fee request is reasonable does not rest upon

26  the granularities of the cybersecurity improvements that Anthem is required to implement, nor

27  does it rest solely on the sum certain of additional funding that Anthem is required to commit to

28  cybersecurity improvements.  However, the Court finds that it does not violate Fed. R. Civ. P.

4

1  23(h) or *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) for the Court to

2  consider the cybersecurity improvements and the sum certain of additional funding, both of which

3  were filed under seal, as part of its assessment of Plaintiffs' Counsel's fee request.  Neither Fed.

4  R. Civ. P. 23(h) nor *In re Mercury Interactive* supersede the well-known standards for filing

5  confidential materials under seal, which the Court will address separately in an order ruling on the

6  motion to file these materials under seal.

7  　　　9.　　　For all of the above reasons, the Court finds that Plaintiff's Counsel's fee request

8  of $37,950,000 is reasonable, whether measured as less than 8% of the value of the credit

9  monitoring services that class members have already claimed, less than 25% of the value of the

10  $115 million settlement fund added to the value of the new cybersecurity measures Anthem must

11  implement, or 33% of the $115 million settlement fund.

12  　　　10.　　　The Court has also conducted a rough lodestar cross-check, which confirms that

13  the fee request is reasonable and that Counsel is not receiving windfall profits from this case. *See*

14  *Vizcaino*, 290 F.3d at 1050.  Class Counsel's billing summaries comply with this Court's

15  guidelines for class action attorney fee requests and contain sufficient detail for the Court to

16  conduct a lodestar cross-check.  These summaries show that Plaintiffs' Counsel's lodestar for

17  work on this case through December 31, 2017 is $38,015,714, representing 78,892.5 hours of

18  attorney time, and representing a multiplier of less than 1.0 on the fee request.  The Court finds

19  that the lodestar multiplier falls at the very low end of the spectrum of most successful class

20  action cases, *see Vizcaino*, 290 F.3d at 1051 n.6.  The Court finds that the hours and rates

21  Plaintiffs' Counsel used to calculate the lodestar are reasonable:

22  　　　　　a.　　　First, the Court finds that the time Plaintiffs' Counsel spent on this case

23  was reasonable, particularly given that Plaintiffs' Counsel necessarily completed an enormous

24  amount of discovery, including 34,000 hours reviewing, coding, analyzing, and summarizing 3.8

25  million pages of documents produced by Defendants; almost 14,000 hours preparing for, taking,

26  and defending almost 200 depositions; and more than 7,000 hours on discovery; worked closely

27  with experts, including to develop the non-monetary benefits of the proposed settlement; and

28  devoted significant time researching federal and state law claims for each of the 50 states,

[PROPOSED] ORDER GRANTING MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND
SERVICE AWARDS TO CLASS REPRESENTATIVES; Case No:  15-md-02617-LHK (NC)

1  successfully opposing two motions to dismiss, and fully briefing class certification.  The Court

2  finds that Lead Counsel's management of the case resulted in efficient litigation and that Lead

3  Counsel exercised sound billing judgment when determining what time to include in the claimed

4  lodestar.

5          b.     Second, the Court finds that the rates Plaintiffs' Counsel used to calculate

6  their lodestar are reasonable.  All Co-Lead Counsel and PSC firm rates have been approved

7  multiple times in the Northern District of California, including by this Court.  The Court has

8  reviewed Exhibit 3 to the Declaration of Eve Cervantez, which sets forth court-approvals for the

9  rates charged by each law firm (or comparable firms in their geographic market).  Plaintiffs'

10  Counsel's blended rate for all timekeepers is $481.62, which compares favorably to blended rates

11  approved in other MDLs and class actions in this district.  *See, e.g.*, *In re: High-Tech Emp.*

12  *Antitrust Litig.*, No. 5:11-cv-03541, Dkt. 54 at *16 (N.D. Cal. Sept. 2, 2015).

13          c.     The Court also finds that Plaintiffs' Counsel's rates for document analysis

14  and review are reasonable and that the contract and staff attorney rates used by Plaintiff's Counsel

15  for the lodestar cross check are reasonable market rates.  The blended rate for document analysis

16  and review performed by all time keepers, including partners, associates, contract or staff

17  attorneys, and paralegals, $389, is reasonable.  In addition, the Court finds that it would be

18  inappropriate to reduce a contract or staff attorneys' rate on the basis that it must be treated as a

19  "cost" rather than a fee.  *See In re AOL Time Warner S'holder Derivative Litig.*, 2010 WL

20  363113, at *26 (S.D.N.Y. Feb. 1, 2010); *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 898

21  (C.D. Cal. 2016).  The Court additionally finds that Plaintiffs' Counsel's use of a mix of

22  associates and contract attorneys, rather than only contract attorneys, for document analysis and

23  review, was permissible and does not second guess that staffing decision.  *See Moreno v. City of*

24  *Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

25      11.    The Court leaves it to Co-Lead Counsel, in the first instance, to allocate the

26  attorneys' fees awarded to the firms that submitted time in this case.  If there are any

27  disagreements among Counsel, the Court will determine whether Co-Lead Counsel's plan of

28  allocation is reasonable.

[PROPOSED] ORDER GRANTING MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND
SERVICE AWARDS TO CLASS REPRESENTATIVES; Case No:  15-md-02617-LHK (NC)

1        12.     The Court has reviewed and considered the objections to and comments on

2 Plaintiffs' motion for attorneys' fees, including objections that the award of attorneys' fees are too

3 high. *See* ECF Nos. 912, 920, 921, 924, 925, 927, 932, KCC Reply Dec. Exs. D and F.

4        13.     For the reasons discussed above, the Court concludes that the requested fee award

5 is reasonable, OVERRULES all objections to Plaintiffs' motion for attorneys' fees, and GRANTS

6 Plaintiffs' motion for attorneys' fees.

7        14.     The Court also denies the Motion of Objector Schulman (ECF 929) for

8 Appointment of a Special Master.

9 **LITIGATION EXPENSES**

10        15.     The Court finds that, under the common fund doctrine, Plaintiffs' Counsel are

11 entitled to the reimbursement of reasonable litigation expenses incurred in prosecuting the

12 litigation. *See, e.g.*, *Corson v. Toyota Motor Sales U.S.A., Inc.*, 2016 WL 1375838, at *9 (C.D.

13 Cal. Apr. 4, 2016). The Court finds that the expenses incurred in this litigation were necessary to

14 the effective representation of the class and would normally be charged to a fee-paying client.

15 Notably, no objector has objected to Plaintiffs' Counsel's motion for litigation expenses. The

16 Court therefore GRANTS Plaintiffs' motion for litigation expenses in the amount of

17 $2,005,068.59. The Court also GRANTS Plaintiffs' request for a reserve of $60,000 for future

18 expert costs, and a reserve of $72,000 to maintain a call center to assist class members with the

19 claims process, which amounts may be paid by the Settlement Administrator upon submission of

20 invoices. Any amount of reserved costs not expended will be used to extend credit monitoring

21 pursuant to the Settlement Agreement and/or be donated to the *cy pres* recipients.

22 **SERVICE AWARDS**

23        16.     The Court finds that the requested service awards for Named Plaintiffs are

24 reasonable and appropriate. Service awards are meant "to compensate class representatives for

25 work undertaken on behalf of a class," *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934,

26 949 (9th Cir. 2015), including time and effort spent on behalf of the class and personal difficulties

27 encountered by the class representative. "The Ninth Circuit has established $5,000.00 as a

28 reasonable benchmark [for service awards]." *In re Yahoo Mail Litig.*, 2016 WL 4474612, at *11

7

1    (N.D. Cal. Aug. 25, 2016).  All of the Named Plaintiffs in this case participated significantly in

2    discovery, including but not limited to gathering and producing documents in response to at least

3    33 document requests, responding to at least 12 interrogatories, and reviewing complaint

4    allegations about themselves for accuracy.  In addition, all but one of the Named Plaintiffs was

5    deposed.  This level of time and effort justifies a service award of $5,000.  *See, e.g.*, *In re Yahoo*

6    *Mail Litig.*, 2016 WL 4474612, at \*11.

7         17.    The Court additionally finds that a service award of $7,500, rather than $5,000, is

8    appropriate for each of the 29 Named Plaintiffs who, in addition to participating in discovery,

9    were required by court order to have their computers forensically examined by Defendants.

10   Courts have recognized that particularly invasive discovery of plaintiffs amounts to a "personal

11   difficulty" that is relevant to the size of service awards.  *See, e.g.*, *Garner v. State Farm Mut.*

12   *Auto. Ins. Co.*, 2010 WL 1687832, at \*17 (N.D. Cal. Apr. 22, 2010).  The forensic examination

13   process required Named Plaintiffs to:  (1) allow an outside party to enter their homes to run

14   imaging software, (2) turn over their computers and tablets to a third party for scanning at an off-

15   site location, or (3) participate in one or more telephone conferences with a third party to remotely

16   run software that took an image of data on their personal computers and tablets.  This

17   extraordinarily invasive discovery went far beyond what is typical in a class action, in terms of

18   both the time and effort it required and the personal difficulty it created for the plaintiffs, and

19   warrants a service award of $7,500 for the 29 Named Plaintiffs who were subjected to it.

20        18.    The Court finds that the total amount requested for service awards ($597,500,

21   which reflects service awards or $5,000 for 76 of the Named Plaintiffs and $7,500 for 29 of the

22   Named Plaintiffs) compares favorably to the size of settlement fund and the individual awards for

23   class members.  *See In re Online DVD*, 779 F.3d 934 at 948.

24        19.    The Court has reviewed and considered the objection to Plaintiffs' motion for

25   service awards.  For the reasons discussed above, the Court concludes that the requested service

26   awards are reasonable, OVERRULES the objection to Plaintiffs' motion for service awards (ECF

27   925), and GRANTS Plaintiffs' motion for service awards.

28

[PROPOSED] ORDER GRANTING MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND
SERVICE AWARDS TO CLASS REPRESENTATIVES; Case No:  15-md-02617-LHK (NC)

1    **IT IS SO ORDERED**.

2

3    Dated: _____, 2018           _____

4                                            The Honorable Lucy H. Koh
                                         U.S. DISTRICT COURT JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER GRANTING MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND
SERVICE AWARDS TO CLASS REPRESENTATIVES; Case No:  15-md-02617-LHK (NC)