UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE ANTHEM, INC. DATA BREACH LITIGATION | Case No. 15-MD-02617-LHK<br><br>**ORDER GRANTING MOTION TO APPOINT SPECIAL MASTER**<br><br>Re: Dkt. No. 929 |

On December 1, 2017, Plaintiffs filed a Motion for Attorneys' Fees, seeking an award of $37.95 million from the $115 million settlement fund. ECF No. 916-6 at 1. On January 4, 2018, Objector Adam Schulman filed a Motion to Appoint Special Master. ECF No. 929. The Court held a hearing on February 1, 2018. Having considered the parties' submissions, the relevant law, the record in this case, and the arguments advanced at the hearing, the Court hereby GRANTS the motion to appoint a special master.

On July 6, 2015, the Court appointed Eve Cervantez of Altshuler Berzon LLP and Andrew Friedman of Cohen Milstein Sellers & Toll PLLC as temporary lead counsel to organize Plaintiffs for the preliminary case management conference. ECF No. 16 at 2. The Court also set a September 10, 2015 hearing to appoint lead Plaintiffs' counsel. *Id.* at 3. The Court requested that

1    applicants "set forth attorney fee proposals, rates, and percentages that applicants expect to seek if

2    the litigation succeeds in creating a common fund." *Id.*

3          In the meantime, on July 16, 2015, the Court issued an Order Re Plaintiffs' Counsel's

4    Billing Records and Briefs in Opposition to Motions for Appointment as Lead Plaintiffs' Counsel.

5    ECF No. 46.  The Court ordered "Plaintiffs' counsel and their staff, consultants, and experts to

6    maintain contemporaneous billing records of all time spent litigating this case." *Id.* at 1.  The

7    Court defined "contemporaneous" as "an individual's time spent on a particular activity . . .

8    recorded no later than seven days after that activity occurred." *Id.*  Moreover, the Court

9    highlighted efficient billing in explaining that, "[w]hen appointing lead Plaintiffs' counsel, the

10   Court [would] designate one lead counsel to review all billing records each month to ensure

11   compliance with [the] Order and to strike any duplicative or inefficient billing." *Id.*

12         On August 20, 2015, the Court received eighteen separate motions to serve as lead

13   Plaintiffs' counsel.  ECF No. 284 at 1–2.  The motion from Ms. Cervantez and Mr. Friedman

14   sought appointment as lead Plaintiffs' counsel and proposed a Plaintiffs' steering committee

15   composed of six other law firms.  ECF No. 190 at 1.  Their motion represented that Ms. Cervantez

16   and Mr. Friedman "are cognizant of the issues that can arise with multiple firms involved in

17   litigation and have developed a system to guard against inefficiency and duplication by assigning

18   work carefully and monitoring that work and all firms' billing." *Id.* at 4.  The Court received only

19   one opposition brief, which was filed by Robbins Geller Rudman & Dowd LLP on August 27,

20   2015.  ECF No. 284 at 2.  That opposition brief "strongly" opposed Ms. Cervantez and Mr.

21   Friedman's "suggestion of an eight-firm leadership structure."  ECF No. 217 at 1.  In particular,

22   the brief explained that "an eight-firm structure is not small, not efficient, and not necessary." *Id.*

23         The Court held a hearing on September 10, 2015.  With regard to Ms. Cervantez and Mr.

24   Friedman's proposal of an eight-firm structure, the Court said:

25         Mr. Friedman and Ms. Cervantez, I was very disappointed to see that you need
26         eight law firms to litigate this case.  I think that's very inefficient and it makes me
         wonder whether your two firms don't have the resources or the expertise in data
27         breach and privacy cases to be lead Plaintiffs' counsel here, that you feel like you

28

2

need the support of six additional law firms.  To me, it doesn't instill confidence in your motion.

ECF No. 294 at 57–58; *see also id.* at 120 ("You know that I'm not happy with your Steering Committee and your structure.").  Mr. Friedman reassured the Court:

> Your Honor, again, what we're talking about is not having a group of eight litigate the case.  There are two people litigating this case, and only on an as-needed basis do we reach out to those people.
>
> So there's no guarantee of work.  There is no guarantee that eight people are ever going to work on this case.  There is a—there is only a guarantee from Ms. Cervantez and I that we will—we will litigate the case efficiently, and we will do so with your Honor's admonitions about overbilling.
>
> But at any given time, there could be—there could be three people working the case.  There is not going to be a scrum, if you will, on a weekly basis.  That's not our intention and that was not what we intended to put forward in the papers.

*Id.* at 62.

After the hearing, on September 11, 2015, the Court rejected the eight-firm structure and appointed Ms. Cervantez and Mr. Friedman as Co-Lead Plaintiffs' Counsel and Eric Gibbs of Girard Gibbs LLP and Michael Sobol of Lieff Cabraser Heimann & Bernstein, LLP as Plaintiffs' Steering Committee members.  ECF No. 284 at 2–3.  The Court noted that Ms. Cervantez and Mr. Friedman could "take advantage of the wealth of knowledge and expertise demonstrated by the other applicants" and, "as needed," could "consult with the other applicants regarding devising damages theories, retaining data security experts, litigating against the defendants in this case, and identifying and communicating with potential plaintiffs."  *Id.* at 3.  Nevertheless, the Court emphasized that "two Co-Lead Plaintiffs' Counsel supported by a two-member Plaintiffs' Steering Committee will best serve the interests of the putative class in this MDL."  *Id.*  The Court's decision to appoint Ms. Cervantez and Mr. Friedman was based in part on their demonstrated "commitment to maintain scrupulous, contemporaneous billing records of all time spent litigating this case, in compliance with this Court's July 16, 2015 order."  *Id.* at 2 (citation omitted).

On September 14, 2015, the Court clarified its Order Appointing Lead Plaintiffs' Counsel. The Court stated that "Co-Lead Plaintiffs' Counsel may assign discrete tasks to counsel for other

United States District Court
Northern District of California

1  plaintiffs in this MDL for resource-intensive tasks such as identifying plaintiffs for the

2  Consolidated Amended Complaint and reviewing discovery." ECF No. 286 at 1.  However, the

3  Court was explicit that "[t]his augmentation of resources should be on an as needed basis and

4  consistent with efficiency." *Id.*

5       Presently before the Court is Plaintiffs' attorneys' fees request.  As reflected in Plaintiffs'

6  January 31, 2018 billing chart, their request includes 331 billers from 53 law firms and 78,892.5

7  hours of legal work.  ECF No. 960-5.[1]  That list includes the 4 law firms that Ms. Cervantez and

8  Mr. Friedman proposed, and that the Court specifically declined to include, as part of the Steering

9  Committee.  Specifically, those 4 law firms have billed $3,624,911.50 in total.  *See id.* (showing

10  $653,171.50 billed by Barrack, Rodos & Bacine; $977,342.00 billed by Branstetter, Stranch &

11  Jennings, PLLC; $1,040,895.00 billed by Cohen & Malad; and $953,503.00 billed by Stueve,

12  Siegel Hanson LLP).  Plaintiffs had 107 partners and 94 associates work on this case.  Also, a

13  large number of contract attorneys, staff attorneys, and a contract paralegal worked on the case;

14  the markup charged for their work was as high as $447 an hour.  Plaintiffs calculate a lodestar of

15  over $38 million in attorneys' fees.  *Id.* at 9.  They request that the Court award $37.95 million in

16  attorneys' fees, a figure which represents 33% of the $115 million settlement fund.  ECF No. 916-

17  6 at 1.

18       In order to evaluate the reasonableness of a request for attorneys' fees, the Court must be

19  able to determine "the hours reasonably expended."  *Young v. Polo Retail, LLC*, No. 02-CV-

20  04546-VRW, 2007 WL 951821, at *6 (N.D. Cal. Mar. 28, 2007).  However, Plaintiffs' motion

21  showed "the tasks performed by each law firm, but not the tasks performed by each biller at each

22  law firm." ECF No. 955 at 1.  Accordingly, the Court requested supplemental information from

23  Plaintiffs both before the February 1, 2018 hearing, *see* ECF Nos. 945, 955, and at the February 1,

24  2018 hearing.  The Court "requires detailed submissions that provide sufficient information from

---

[1] To the extent that the numerical figures in this Order differ slightly from the figures mentioned at the hearing, the figures in this Order are based on the most recent information received from Plaintiffs as well as representations made by Plaintiffs at the February 1, 2018 hearing.

Case No. 15-MD-02617-LHK
ORDER GRANTING MOTION TO APPOINT SPECIAL MASTER

1   which the Court can determine whether there has been any duplication in attorney effort or

2   whether the amounts expended were reasonable." *In re Johnson & Johnson Derivative Litig.*, 900

3   F. Supp. 2d 467, 499 (D.N.J. 2012).

4          Moreover, based on Co-Lead Plaintiffs' Counsel's assignment of tasks across 53 law firms

5   and 331 billers, the Court has concerns that billing items may be duplicative or inefficient.  The

6   operative Fourth Consolidated Amended Class Action Complaint is 291 pages, ECF No. 714, and

7   there have been two rounds of motions to dismiss, resulting in an 82-page order and a 90-page

8   order, ECF Nos. 468, 524.  Additionally, the parties have litigated 14 discovery motions before

9   this Court and another discovery motion in the District of Columbia.  ECF No. 916-8 ¶ 37.  To be

10  sure, this case required a significant amount of work.  Nevertheless, employing 53 law firms likely

11  resulted in unnecessarily duplicative or inefficient work by virtue of the fact that so many billers

12  needed to familiarize themselves with the case and keep abreast of case developments.

13         A special master's review of the extensive billing in this case is also necessary because if

14  the Court were to award the full $37.95 million in attorneys' fees, $2.14 million in attorneys'

15  costs, $597,500 as incentive awards to the named Plaintiffs, and $23 million in administrative

16  costs, only approximately 45% of the $115 settlement fund would remain to benefit the class.

17         The administrative costs in this case were high because the settlement administrator sent

18  notice by mail to 54.9 million class members and by email to 5.15 million class members.  ECF

19  No. 916-32 ¶¶ 10, 13.  To reach the remaining class members with no known mailing or email

20  addresses, the settlement administrator published notice in *People* and *Good Housekeeping* and

21  also purchased more than 180 million advertising impressions across Twitter, LinkedIn,

22  Instagram, Google Display Network, and Facebook.  *Id.* ¶¶ 14–15.  Unfortunately, despite these

23  extensive notice efforts, only 1.33 million class members out of the approximately 79.15 million

24  class members, or 1.68% of the total class, have submitted claims.  ECF No. 958 ¶ 4.  In light of

25  these circumstances and the Court's duty to protect the interests of the absent class members, a

26  special master's close scrutiny of Plaintiffs' attorneys' fees request is warranted.

27         The foregoing discussion is not meant to suggest that Plaintiffs have not obtained a good

28

Case No. 15-MD-02617-LHK
ORDER GRANTING MOTION TO APPOINT SPECIAL MASTER

United States District Court
Northern District of California

result for the class.  The $115 million settlement amount is the largest settlement reached in a data breach class action in the United States.  Every class member receives fraud resolution services. ECF No. 869-8 ¶ 4.9.  $15 million is set aside to reimburse up to $10,000 for each class member who incurred out-of-pocket expenses as a result of the data breach.  *Id.* ¶ 6.4.  Additionally, the settlement agreement allows class members to submit claims for either credit monitoring or alternative cash payments.  The credit monitoring lasts for at least two years (and up to four years) beyond the two years that Anthem has already provided.  *Id.* ¶¶ 4.7–4.8.  For class members who already have credit monitoring, the alternative cash payments can reach $50 per class member.  *Id.* ¶ 5.3.

In addition to monetary relief, the settlement agreement requires Anthem to triple its annual spending on data security and to implement cybersecurity controls and reforms recommended by Plaintiffs' cybersecurity experts.  *Id.* ¶ 2.  For example, Anthem must change its data retention policies, follow specific remediation schedules, and do annual IT security risk assessments and settlement compliance review.  *Id.*

However, despite the important relief that the settlement agreement secures for the class, the above-identified concerns counsel in favor of appointing a special master to review the billing records and analyze Plaintiffs' attorneys' fees request.  Accordingly, pursuant to the Court's authority under Federal Rule of Civil Procedure 23(h)(4), the Court will refer the "issues related to the amount of the award to a special master."

Courts within this district and outside this district have often appointed special masters in similar circumstances.  *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2016 WL 4126533, at *1 (N.D. Cal. Aug. 3, 2016) (approving in part motion for class action attorneys' fees based on report and recommendation of special master); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 10-CV-04572-SI, 2014 WL 12635766, at *1 (N.D. Cal. Feb. 3, 2014) (issuing report and recommendation to district court on motion for attorneys' fees in MDL); *In re Johnson & Johnson*, 900 F. Supp. 2d at 498 (appointing special master where counsels' fee declarations did not contain enough detail and supplemental filings were also deficient); *Acosta v.*

Case No. 15-MD-02617-LHK
ORDER GRANTING MOTION TO APPOINT SPECIAL MASTER

United States District Court
Northern District of California

*Master Maint.*, 192 F. Supp. 2d 577, 602 (M.D. La. 2001) ("It is customary for the Court to appoint a special master in mass tort cases or class actions to account for the money the Court has ordered to be set aside to pay for the common expenses incurred by the court-appointed committee."), *aff'd*, 69 F. App'x 659 (5th Cir. 2003); *see also* 9C Arthur R. Miller, Federal Practice and Procedure § 2602 (3d ed. 2017) ("[F]ederal courts . . . may designate special masters to help determine the amount of or allocate attorneys' fees, litigation expenses, and court costs in complex cases.").

Indeed, the Ninth Circuit has affirmed district court fee awards made after referral to a special master and has itself referred appellate attorneys' fees disputes to a special master. *See Carlsen v. Glob. Client Sols., LLC*, 542 F. App'x 594, 594–95 (9th Cir. 2013) (affirming fee award where district court adopted special master's report and recommendation); *AANP v. Am. Ass'n of Naturopathic Physicians*, 37 F. App'x 894, 895 (9th Cir. 2002) ("The determination of an appropriate amount of fees on appeal . . . is referred to the court's special master, Appellate Commissioner Peter L. Shaw . . . .").

The Court therefore GRANTS the motion to appoint a special master.  At the hearing, the Court notified the parties of the Court's intention to appoint a special master and suggested Hon. James Kleinberg (Ret.).  Pursuant to Federal Rule of Civil Procedure 53, the Court offered the parties an opportunity to object to Judge Kleinberg and to suggest other candidates for the appointment.  Plaintiffs volunteered to do so by February 2, 2018.  On February 2, 2018, Plaintiffs filed a statement indicating that they have no objection to Judge Kleinberg, unless Judge Kleinberg reveals a ground for disqualification under 28 U.S.C. § 455.  ECF No. 970 at 2.
**IT IS SO ORDERED.**

Dated: February 2, 2018

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge

Case No. 15-MD-02617-LHK
ORDER GRANTING MOTION TO APPOINT SPECIAL MASTER