ALTSHULER BERZON LLP
EVE CERVANTEZ (SBN 164709)
ecervantez@altshulerberzon.com
DANIELLE E. LEONARD (SBN 218201)
dleonard@altshulerberzon.com
MEREDITH A. JOHNSON (SBN 291018)
mjohnson@altshulerberzon.com
TONY LOPRESTI (SBN 289269)
tlopresti@altshulerberzon.com
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

COHEN MILSTEIN SELLERS & TOLL PLLC
ANDREW N. FRIEDMAN (admitted *pro hac vice*)
afriedman@cohenmilstein.com
GEOFFREY GRABER (SBN 211547)
ggraber@cohenmilstein.com
SALLY M. HANDMAKER (SBN 281186)
shandmaker@cohenmilstein.com
ERIC KAFKA (admitted *pro hac vice*)
ekafka@cohenmilstein.com
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile:  (202) 408-4699

*Co-Lead Plaintiffs' Counsel*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| *In Re Anthem, Inc. Data Breach Litigation* | Case No: 15-md-02617-LHK (NC) <br><br> **PLAINTIFFS' NOTICE OF AMENDMENT TO CLASS ACTION SETTLEMENT AND SUPPLEMENTAL BRIEF IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT AS AMENDED** <br><br> Date: TBD <br> Time: TBD <br> Judge: Lucy H. Koh <br> Crtrm: 8, 4th Floor |

**Table of Contents**

Table of Authorities .................................................................................................................. ii

Introduction ............................................................................................................................... 1

Background ................................................................................................................................ 2

    A. Original Settlement Agreement ................................................................................. 2

    B. Actual Claims Rate .................................................................................................... 4

    C. How Claims Rates Affect Allocation of Settlement Funds ....................................... 4

    D. The April Amendment to the Settlement Agreement ................................................ 5

Argument ................................................................................................................................... 7

    A. The Court Should Grant Final Approval to the Settlement Agreement as Modified ........... 7

    B. Additional Notice of the Amended Settlement Is Not Required .............................. 8

Conclusion ............................................................................................................................... 11

i

Plaintiffs' Notice of Amendment to Class Action Settlement and Supplemental Brief ISO of Final Approval of Settlement as Amended; Case No. 15-md-02617-LHK (NC)

**Table of Authorities**

**Court Cases**

*In re Compact Disc Minimum Advertised Price Antitrust Litigation*,
  292 F. Supp. 2d 184 (D. Me. 2003) .................................................................................... 10

*In re Google Referrer Header Privacy Litigation*,
  869 F.3d 737 (9th Cir. 2017) ................................................................................................ 7

*In re Prudential Insurance Co. of America Sales Practices Litigation*,
  962 F. Supp. 450 (D.N.J. 1997) ....................................................................................... 8, 11

*In re Remeron End-Payor Antitrust Litigation*,
  2005 WL 2230314 (D.N.J. Sept. 13, 2005) ........................................................................ 10

*Keepseagle v. Vilsack*,
  102 F. Supp. 3d 306 (D.D.C. 2015) ..................................................................................... 9

*Klee v. Nissan North America, Inc.*,
  2015 WL 4538426 (C.D. Cal. July 7, 2015) ................................................................... 8, 11

*Knuckles v. Elliott*,
  2016 WL 3912816 (E.D. Mich. July 20, 2016) ...................................................... 8, 9, 10, 11

*Shaffer v. Continental Casualty Co.*,
  362 F. App'x. 627 (9th Cir. 2010) ........................................................................................ 9

*Trombley v. Bank of America Corp.*,
  2013 WL 5153503 (D.R.I. Sept. 12, 2013) ....................................................................... 9, 10

**Additional Authorities**

*Manual for Complex Litigation, Fourth* (Federal Judicial Center 2004) ..................................... 9, 10

**INTRODUCTION**

The Parties have negotiated a modification of the Settlement Agreement that sends more residual Settlement benefits directly to Settlement Class Members, rather than to *cy pres*. *See* April 18, 2018 Amendment to Settlement Agreement ("April Amendment"), Ex. A to Supplemental Declaration of Eve H. Cervantez in Support of Final Approval of Settlement Agreement as Amended ("Cervantez April Amendment Decl.").[1] Plaintiffs were preparing to file the April Amendment and supporting papers on April 18, 2018, the same day that the Court issued its *Order Requesting Response and Additional Information* (Doc. 1006), which directed Plaintiffs to file a response to the Supplemental Objection of Adam E. Schulman (Doc. 976) and an updated chart showing the allocation of funds by May 2, 2018. This filing is not a response to the Court's Order, which Plaintiffs received just hours before this filing. Plaintiffs will separately file, on the schedule set by the Court, a response to Mr. Schulman's Supplemental Objection and an updated fund allocation chart.

The original non-reversionary Settlement was designed to avoid a large *cy pres* distribution by channeling funds to increase the Alternative Compensation awards from $36 to up to $50 (or by 40%), and then to lengthen the duration of credit monitoring and fraud resolution services from two years to up to four years (or by 100%). Only then would any residual funds go to *cy pres*. The parties' proposed modification maintains those features of the Settlement but, if funds still remain after all payments, expenses, and costs identified in the Settlement are paid or reserved for, those funds will *also* (1) add to the reserve for Out-of-Pocket Costs if necessary to pay valid claims up to $10,000 per Settlement Class Member and, if funds still remain when all valid Out-of-Pocket Costs claims are paid, (2) extend credit monitoring and fraud resolution services for as long as possible, in one-month increments. **Under this proposed amendment, only an amount of money insufficient to fund one additional full month of Credit Services would be distributed to *cy pres*.** The April Amendment does not otherwise alter any substantive aspect of the Settlement Agreement, or change the fundamental structure and benefits.

---

[1] All parties have agreed to all terms and are prepared to execute the April Amendment upon the Court's approval. Plaintiffs have submitted an unexecuted version of the April Amendment for the Court's review so that the Court may choose to approve either the original settlement or the settlement as amended. Cervantez April Amendment Dec. ¶19.

1

Plaintiffs' Notice of Amendment to Class Action Settlement and Supplemental Brief ISO of Final Approval of Settlement as Amended; Case No. 15-md-02617-LHK (NC)

Although the original Settlement is fair, reasonable, and adequate, and deserving of final approval, the April Amendment is designed to: (1) address the surfeit of funds available as a result of the number of claims for Alternative Compensation; (2) address concerns the Court raised at the approval hearing; and (3) comport with the parties' original intent of distributing Settlement benefits directly to the Settlement Class.

The proposed April Amendment enhances the benefits being provided to the Settlement Class and will not adversely affect any Settlement Class Member. Therefore, there is no requirement that the Settlement Class Members be sent notice of the April Amendment, and notice should not be sent because it would be prohibitively expensive and would potentially confuse Settlement Class Members. Nevertheless, the parties recommend that the approximately 400 individuals who opted out of the Settlement Class be sent letters giving them the option to rejoin the Settlement Class and file a claim.

Because the April Amendment addresses concerns raised by the Court at the approval hearing, Plaintiffs respectfully submit that this modification requires no adjustment to the Court's currently contemplated schedule for final approval. Plaintiffs, of course, will be happy to provide any further information or briefing the Court requires.

Accordingly, Plaintiffs respectfully request that the Court grant final approval to the Settlement, as modified by the April Amendment. If the Court declines to grant approval to the Agreement as amended, then Plaintiffs request that the Court grant final approval to the original Settlement Agreement.

## BACKGROUND

### A. Original Settlement Agreement

The original Settlement offered credit monitoring and fraud resolution services to all Settlement Class Members, along with cash payments to the subset of Settlement Class Members who believed they had suffered out-of-pocket losses as a result of the data breach and submitted valid Out-of-Pocket Costs claims. The Settlement also provided that Settlement Class Members who already had credit

2

Plaintiffs' Notice of Amendment to Class Action Settlement and Supplemental Brief ISO of Final Approval of Settlement as Amended; Case No. 15-md-02617-LHK (NC)

monitoring could claim a cash payment of up to $50 as Alternative Compensation, a benefit that has never been obtained in a large data breach settlement.[2]

As in other data breach settlements, the original Settlement negotiated between the parties divided class member benefits to be paid from the Net Settlement Fund (after payment of administrative expenses and Court-awarded attorneys' fees and costs and service payments) into various categories to distribute settlement benefits fairly among Settlement Class Members as follows:

1) Seventeen million dollars were allocated to fund two years of credit monitoring services (for Settlement Class Members who wanted to sign up for such services) and fraud resolution services (for all Settlement Class Members, regardless if they filed a claim), which is the fixed cost the parties negotiated with the third-party credit monitoring vendor.

2) Consistent with other large data breach settlements, fifteen million dollars were allocated to pay claims for Out-of-Pocket Costs.

3) The remainder was available to pay for Alternative Compensation. Plaintiffs conservatively projected there would be $18,452,500 available to pay for Alternative Compensation, assuming Class Counsel requested, and the Court awarded, the maximum amount contemplated in the Settlement for attorneys' fees and costs and service payments. The estimated remainder would have been sufficient to pay $36 to approximately 500,000 claimants, which Plaintiffs determined was a fair amount given the potential range of monetary damages in the case.[3] If more than 512,569 Settlement Class Members submitted a claim for Alternative Compensation, each Settlement Class Member's share would have been reduced *pro rata*. Conversely, if the aggregate value of Alternative Compensation claims fell

---

[2] The original Settlement also provides important enhancements to Anthem's cybersecurity practices, none of which are affected by the April Amendment.

[3] Expert estimates of damages for the black market value of personally identifiable information ranged from $4 to $10 per Class Member. ECF No. 743-11 at 12–13. Because the Court had not yet ruled on class certification, Plaintiffs' expert had not yet conducted a conjoint survey to measure the value, if any, of Plaintiffs' benefit of the bargain damages. *Id.* Plaintiffs' other damages measure, based on the value of five years of credit monitoring services, was available to Settlement Class Members without resort to the Alternative Compensation fund – Class Members were entitled to reimbursement for sums already spent on credit monitoring by filing a claim for Out-of-Pocket Costs, and they were entitled to claim two to four years of credit monitoring services going forward as part of the Settlement, on top of the two years already provided by Anthem immediately after the data breach.

below $13 million (the amount necessary to pay 361,111 claims at $36), each Alternative Compensation claimant would receive up to $50.

4) The original Settlement provided that any funds remaining after the payment of Alternative Compensation claims would fund up to an additional two years of credit monitoring and fraud resolution services, at $4.6 million per year, which could be prorated to $383,333.33 per additional month.

### B.   Actual Claims Rate

The Settlement Administrator reports that as of April 17, 2018 it has received 1,232,164 timely claims for credit monitoring services, 137,243 claims for Alternative Compensation, and 6,809 claims for reimbursement of Out-of-Pocket Costs. Third Supplemental Declaration of KCC Class Action Services (Lana Lucchesi) re: Updated Claim Information. ("Third KCC Decl.") ¶2. Thus, the overall claims rate is 1.7%. *Id.* Taken separately, the credit monitoring claims rate is 1.6%, while the Alternative Compensation claims rate is just under 0.2%. *Id.* The overall Anthem claims rate of 1.7% is significantly higher than recent large-scale payment card data breach cases: over 7 times higher than *Target* and 8.5 times higher than the available figures for *Home Depot*. Cervantez April Amendment Dec. ¶¶13-17 (*Home Depot* claims rate of approximately 0.2% and *Target* claims rate of 0.23%).[4]

### C.   How Claims Rates Affect Allocation of Settlement Funds

During the February 1, 2018 hearing, the Court expressed concern that the Settlement may have been designed to discourage the Court from cutting requested attorneys' fees by capping the maximum relief available to the Settlement Class. This was not the case. Cervantez April Amendment Decl. ¶4. In fact, the converse is true: Class Counsel expected a higher overall claims rate, including a higher claims rate for Alternative Compensation, and thus structured the original Settlement to accommodate

---

[4] Plaintiffs expected that the claims rate here would be higher than in *Target* or *Home Depot*. Cervantez April Amendment Decl. ¶¶13-17. There was no direct U.S. mail notice in *Home Depot* at all, and direct U.S. mail notice in *Target* was limited to those individuals for whom Target lacked an email address. *Id.* ¶¶14, 16. Here, in contrast, postcard notices were sent via U.S. mail to all 54,925,559 Settlement Class Members for whom Defendants had a complete mailing address *and* email notice was also sent to all 5,151,500 Settlement Class Members for whom Defendants provided an email address. Declaration of Jay Garaci re: Notice Procedures, ECF No. 916-32. Moreover, *Target* and *Home Depot* involved payment card information, whereas the Anthem data breach involved personally identifiable information such as social security numbers and birthdates.

4

Plaintiffs' Notice of Amendment to Class Action Settlement and Supplemental Brief ISO of Final Approval of Settlement as Amended; Case No. 15-md-02617-LHK (NC)

that. *Id.* ¶5. Had the Alternative Compensation claims rate been even slightly higher, reductions in the attorneys' fee award would have gone directly to the Settlement Class, rather than to *cy pres*. *Id*. For example, if the Alternative Compensation claims rate had been approximately 0.5% higher, a reduction of up to $9.2 million in requested attorneys' fees would have resulted in credit monitoring and fraud resolution services being extended and would not have increased the *cy pres*. *Id.* ¶10. Exhibit B to the Cervantez April Amendment Declaration is a chart illustrating how small variations in the Alternative Compensation claims rate would have affected the amount potentially going to *cy pres*.

Uncertainty necessarily accompanies Settlements such as this. Not only is this the largest settlement in a data breach class action, no comparable settlement has permitted eligible Settlement Class Members to choose between credit monitoring services and Alternative Compensation based on whether a Settlement Class Member already has credit monitoring, which is an unknown variable. Thus, there was no test case to estimate the Alternative Compensation claims rate. While Class Counsel believe giving Settlement Class Members a choice of their preferred remedy is a virtue of the Settlement, it made it even more difficult to predict the Alternative Compensation claims rates.

In response to this uncertainty, the original Settlement Agreement provided that if the Alternative Compensation claims rate was low, money in the Net Settlement Fund would be used to increase the Alternative Compensation payments to $50 and then to extend the credit monitoring and fraud resolution services by up to two additional years. However, because of the unexpectedly low number of Alternative Compensation claims, it appears that there will be at least $3.3 million remaining – and more if the Court does not approve Plaintiffs' attorneys' fees request in its entirety – that will go to *cy pres*. That was never the parties' intention. The April Amendment addresses this issue by allocating Settlement Funds exactly as they were allocated in the original Settlement and then increasing the benefits provided directly to Settlement Class Members by redistributing residual funds that otherwise would have gone to *cy pres*.

**D.   The April Amendment to the Settlement Agreement**

Under both the original Settlement and the April Amendment, the Net Settlement Fund will be allocated to: payment of all valid claims for Out-of-Pocket Costs up to an aggregate cap of $15 million; payment of all claims for Alternative Compensation (at $50 per class member); payment for the initial

5

Plaintiffs' Notice of Amendment to Class Action Settlement and Supplemental Brief ISO of Final Approval of Settlement as Amended; Case No. 15-md-02617-LHK (NC)

two years of credit monitoring and fraud resolution services; and payment for an additional two years of credit monitoring and fraud resolution services (four years total).  Under the original Settlement, any remaining funds then would have gone directly to *cy pres*.  Under the April Amendment, however, the funds remaining will not go directly to *cy pres*.  Instead, they will be allocated as follows:  *First*, the remainder will be used to supplement the $15 million Out-of-Pocket Costs reserve to the extent necessary to pay Class Members up to $10,000 each for valid Out-of-Pocket Costs.  *Second*, any funds remaining after paying all valid Out-of-Pocket Costs will be used to extend credit monitoring and fraud resolution services beyond the four years contemplated in the original Settlement until there are insufficient funds in the Net Settlement Fund to pay for at least one more full month of Credit Services.[5]  Only then would the remainder be directed to the proposed *cy pres* recipients.  By extending the maximum duration of credit monitoring and fraud resolution services, the April Amendment ensures that any reductions to the attorneys' fees award will revert to Settlement Class Members and that *less* than $416,666.66 (the maximum cost of one month of credit monitoring) will go to *cy pres* under any circumstances.

      The April Amendment also provides that letters will be sent to the approximately 400 individuals who opted out of the Settlement, giving them the option to rejoin the Settlement Class and obtain the benefits of the modified Settlement Agreement.

      Finally, the April Amendment contains a technical amendment to the Notice provisions to address a potential ambiguity in the Notice Plan and reflect what actually occurred:  The Settlement contemplated that Notices would be mailed by the end of October 2017 (ECF No. 869-12 at ¶ 21), and the Notices were in fact mailed by that deadline to all of the Settlement Class Members for whom Defendants had a complete mailing address (ECF No. 916-32).  The Notice Plan also provided that any Notices returned undeliverable should be re-mailed to new addresses provided by the United States

---

[5] Plaintiffs have negotiated an extension of their contract with Experian to provide credit monitoring and fraud resolution Services.  Under that extension, Experian has agreed to provide credit monitoring to valid claimants and fraud resolution services to the entire Class, as provided in the Settlement Agreement, on an indefinite basis, so long as there are funds remaining to pay for those extended Services.  The cost for a fifth year of credit monitoring and fraud resolution services will remain $4.6 million per year (which can be prorated for full months), and the cost for the sixth year, and any additional years thereafter, will be $5 million per year (which can be prorated for full months).  Cervantez April Amendment Decl. ¶18.

6

Plaintiffs' Notice of Amendment to Class Action Settlement and Supplemental Brief ISO of Final Approval of Settlement as Amended; Case No. 15-md-02617-LHK (NC)

Postal Service or found through use of a look-up service. Ex. 4 to Settlement Agreement at 13 (ECF No. 869-13). The April Amendment clarifies that the Settlement Administrator was not to cease re-mailing Notices to new addresses by the end of October 2017, but was to continue researching new addresses and re-mail returned Notices through January 29, 2018, the claims filing deadline for claims for Credit Monitoring Services or Alternative Compensation, which is what the Settlement Administrator did. Third KCC Decl. ¶13.

## ARGUMENT

**A.      The Court Should Grant Final Approval to the Settlement Agreement as Modified.**

The Settlement Agreement that Plaintiffs presented to the Court in their original motion for Final Approval is fair, reasonable, and adequate for all of the reasons set forth in Plaintiffs' papers, and was and is deserving of final approval. First and foremost, the Settlement achieves the primary pre-settlement goals articulated in Plaintiffs' complaint and class certification papers: equitable relief to protect their privacy through (1) very specific improvements to Anthem's cybersecurity that were derived in consultation with security professionals based on Plaintiffs' extensive discovery, coupled with three years of independent compliance monitoring, and an agreement to maintain a set level of cybersecurity funding for the next three years; and (2) credit monitoring services for the time recommended by Plaintiffs' expert for the more than one million Settlement Class Members who claimed such services, plus fraud resolution services for any Settlement Class Members who need such assistance in the next four years. This is real relief that will benefit Settlement Class Members now; any delay in this necessary and immediate protection to further litigate the case or attempt to negotiate a "better" settlement would not be in the Settlement Class's interests. The Settlement also provides what is likely full compensation for all Settlement Class Members who incurred any out-of-pocket costs that could possibly be related to the Anthem data breach. And unlike most data breach settlements, the Settlement also provides cash compensation for those who do not need credit monitoring, in an amount many times more than at least one potential measure of damages: All Settlement Class Members who claimed Alternative Compensation will receive $50, compared to the $4 to $10 estimated by experts for "loss of value of PII." The original Settlement also provides that any remainder in the Net Settlement Fund will be directed to *cy pres*, as permitted by Ninth Circuit law. *See, e.g.*, *In re Google Referrer*

7

Plaintiffs' Notice of Amendment to Class Action Settlement and Supplemental Brief ISO of Final Approval of Settlement as Amended; Case No. 15-md-02617-LHK (NC)

*Header Privacy Litig.*, 869 F.3d 737, 742 (9th Cir. 2017) (affirming *cy pres* only settlement of $5.3 million for 129 million class members where proof of individual claims or distribution of award to all class members would be burdensome and costly).

The April Amendment makes the already good Settlement even better.  Although Ninth Circuit precedent would have allowed a large *cy pres* award given the size of the Settlement Class, the modified Settlement redirects money that would have gone to *cy pres* directly back to the Settlement Class, consistent with the parties' original intent in reaching this Agreement:  first to compensate Settlement Class Members who submit valid claims for Out-of-Pocket Costs, to the extent the original $15 million fund is oversubscribed,[6] and second to extend the duration of credit monitoring services (to over one million Settlement Class Members who filed claims) and fraud resolution services (available to *all* Settlement Class Members).  Pursuant to the April Amendment, less than $416,666.66 will go to *cy pres* no matter what the Court decides with respect to Plaintiffs' attorneys' fees.  The proposed Settlement, including the April Amendment, thus benefits the entire Settlement Class and should be finally approved.

**B.     Additional Notice of the Amended Settlement Is Not Required.**

There is no requirement that the Settlement Class be provided with notice of the April Amendment.  To the contrary, courts have repeatedly held that when a settlement is modified after class notice has already been sent, the class need not receive another notice unless the modification would have a material *adverse* effect on class member rights, because there is no reason to think that a class member who did not opt out after receiving notice of the original settlement would opt out based on a modified improved settlement.  *See, e.g., Knuckles v. Elliott*, 2016 WL 3912816, *5–6 (E.D. Mich. July 20, 2016) (notice of settlement modification "required only where the amendment would have a material *adverse* effect on the rights of class members") (internal punctuation and citations omitted, emphasis in original); *Klee v. Nissan North America, Inc.*, 2015 WL 4538426, *5 (C.D. Cal. July 7, 2015) ("[W]hen a settlement is amended to make it more valuable, it is unnecessary to give additional

---

[6] As of January 31, 2018, the Settlement Administrator did not expect that the out of pocket damages fund would be exhausted.  Second Supplemental Declaration of KCC (ECF No. 958) ¶9.  However, the deadline for out of pocket claims is over a year away.

notice to those class members that received adequate notice of the original proposed settlement and decided not to opt out."); *In re Prudential Ins. Co. of America Sales Practices Litig.*, 962 F. Supp. 450, 473 n.10 (D.N.J. 1997) ("Class members need not be informed of the Final Enhancements to the settlement because the Proposed Settlement is only more valuable with these changes. Plainly, class members who declined to opt out earlier, would not choose to do so now."); *Trombley v. Bank of America Corp.*, 2013 WL 5153503, *6 (D.R.I. Sept. 12, 2013) (no additional notice or hearing required where revised settlement is more beneficial to class); *Manual for Complex Litigation, Fourth* (Federal Judicial Center 2004) § 21.61 ("If the fairness hearing leads to substantial changes *adversely* affecting some members of the class, additional notice, followed by an opportunity to be heard, might be necessary.") (emphasis added); *see also Shaffer v. Continental Cas. Co.*, 362 F. App'x. 627, 631 (9th Cir. 2010) ("Although changes were made to the release after potential class members received the notice, the changes did not render the notice inadequate because they narrowed the scope of the release.").

*Knuckles v. Elliott*, 2016 WL 3912816, explains, under circumstances similar to those here, why additional notice is not required when a modified settlement does not adversely affect class members. In *Knuckles*, the settlement provided that $14 would be paid to each class member who filed a claim, with the unclaimed remainder directed to *cy pres*. *Id.* at *2. At the fairness hearing, the Court expressed concern because only ten percent of the class had filed claims, meaning that ninety percent of the settlement fund would go to *cy pres*. *Id.* at *5. At the court's suggestion, the parties modified the settlement to require a *pro rata* distribution of the entire settlement fund to those who had already filed claims, rather than directing the unclaimed remainder to *cy pres*. *Id.* The court cited to numerous district court decisions that had held that notice of an amendment to a class action settlement is required only where the amendment might have a "material *adverse* effect on the rights of class members." *Id.* (quoting *Keepseagle v. Vilsack*, 102 F. Supp. 3d 306, 313 (D.D.C. 2015)). The court explained that "the modification involves changes to the agreed upon cy pres distribution and it improves the deal for Class members. As such, Class members who will receive a larger distribution and individuals who failed to opt-out or submit a Proof of Claim form – and thus who have waived whatever rights they had in the Settlement Fund – need not receive notice of the modification." *Id.* at *6.

The rationale in these cases also governs here. Settlement Class Members who failed to either opt out or file a claim have already agreed to release their claims and waive whatever rights they had in the Settlement Fund (subject to their unexpired right to file a claim for Out-of-Pocket Costs and to access fraud resolution services). There is no reason that Settlement Class Members who failed to opt out of the original Settlement would now want to opt out of the modified Settlement that does not adversely affect them. And here, unlike in *Knuckles*, which offered enhanced benefits only to those class members who had already filed a claim, the modified Settlement improves the deal for *all* Settlement Class Members by providing extended fraud resolution services for all Settlement Class Members beyond the four year maximum contemplated in the original Settlement Agreement.[7]

Further, sending another direct notice to Settlement Class Members in this case would be prohibitively expensive (over $14 million in postage alone) and would render the April Amendment moot by expending all of the funds that might otherwise be used to benefit the class on a notice that was not required. *See In re Remeron End-Payor Antitrust Litig.*, 2005 WL 2230314, at *19 (D.N.J. Sept. 13, 2005) ("[A]dditional class notice is not always required because, e.g., of the cost of notice that would take recovered money from the class."); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 292 F. Supp. 2d 184, 186 (D. Me. 2003) ("[I]t would be too burdensome and costly to repeat a mailing to the over eight million class members informing them of favorable changes in the proposed amended settlement, especially to those who never objected to the first proposed settlement."). In addition, such a notice likely would confuse Settlement Class Members, who already received notice. *Cf. Manual Complex Lit.* § 21.28, Interlocutory Appeals of Certification Decisions (recognizing "the confusion and the substantial expense of renotification" that may result when two notices are sent).

---

[7] *Trombley v. Bank of America Corp.*, 2013 WL 5153503, is similar. In *Trombley*, notice was sent to almost 400,000 class members, of whom only 3,591 filed claims. *Id.* at *2. The court denied final approval because the amount of attorney's fees requested was unreasonable in relation to the benefit to class members. *Id.* The parties then revised the settlement agreement to provide that class members who had submitted valid claims would each receive larger cash awards, with the remainder to be divided *pro rata* among class members who had not submitted claims. *Id.* at *2, *6. The court held that "[b]ecause the compensation provided by the Revised Settlement Agreement is more beneficial to the class than the compensation offered by the original settlement agreement, no additional notice nor a second hearing is necessary." *Id.* at *6.

For all these reasons, the April Amendment does not contemplate notice of the April Amendment being sent to the Settlement Class. However, the parties have agreed and recommend that the approximately 400 individuals who opted out of the Settlement Class be given the opportunity to rejoin the Settlement Class and enjoy the benefits of the enhanced Settlement. This is consistent with the decisions of some courts that have considered the issue and have held that when a post-notice settlement modification benefits the class, class members who opted out should be permitted to opt back in to receive any additional settlement benefits. *See, e.g., Knuckles*, 2016 WL 3912816, at *6; *Klee*, 2015 WL 4538426, at *5; *In re Prudential Ins. Co.*, 962 F. Supp. at 473 n.10. Further, sending letters to individuals who excluded themselves from the Settlement Class will not be burdensome or costly and will not delay implementation of the Agreement. Accordingly, the April Amendment requires that the Settlement Administrator send a letter to those individuals, and include a form by which those individuals may rejoin the Settlement Class and request credit monitoring services or Alternative Compensation.

## CONCLUSION

For the foregoing reasons, and those stated in Plaintiffs' papers in support of final approval, the Court should find that the Settlement Agreement, as modified by the April Amendment, is fair, reasonable, and adequate, and should grant final approval thereto.

Respectfully submitted,

**ALTSHULER BERZON LLP**

Dated: April 18, 2018

By: /s/ *Eve Cervantez*

Eve Cervantez (SBN 164709)
ecervantez@altshulerberzon.com
Danielle E. Leonard (SBN 218201)
dleonard@altshulerberzon.com
Meredith A. Johnson (SBN 291018)
mjohnson@altshulerberzon.com
Tony LoPresti (SBN 289269)
tlopresti@altshulerberzon.com
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone:    (415) 421-7151
Facsimile:    (415) 362-8064

| | |
|---|---|
| 1 | **COHEN MILSTEIN SELLERS & TOLL PLLC** |
| 2 | Andrew N. Friedman (admitted pro hac vice)<br>afriedman@cohenmilstein.com |
| 3 | Geoffrey Graber (SBN 211547)<br>ggraber@cohenmilstein.com |
| 4 | Sally M. Handmaker (SBN 281186)<br>shandmaker@cohenmilstein.com |
| 5 | Eric Kafka (admitted pro hac vice)<br>ekafka@cohenmilstein.com |
| 6 | 1100 New York Ave. NW<br>Suite 500, West Tower |
| 7 | Washington, DC 20005<br>Telephone: (202) 408-4600 |
| 8 | Facsimile: (202) 408-4699 |
| 9 | *Co-Lead Plaintiffs' Counsel* |
| 10 | **LIEFF CABRASER HEIMANN &<br>BERNSTEIN LLP** |
| 11 | Michael Sobol<br>David Rudolph |
| 12 | 275 Battery Street, 29th Floor<br>San Francisco, CA 94111 |
| 13 | **GIRARD GIBBS LLP** |
| 14 | Eric Gibbs<br>David Berger |
| 15 | 505 14th Street, Suite 1110<br>Oakland, California 94612 |
| 16 | Phone: (510) 350-9700<br>Fax: (510) 350-9701 |
| 17 | *Plaintiffs' Steering Committee* |

12

Plaintiffs' Notice of Amendment to Class Action Settlement and Supplemental Brief ISO of Final Approval of Settlement as Amended; Case No. 15-md-02617-LHK (NC)