Hon. James P. Kleinberg (Ret.)
JAMS
160 West Santa Clara Street
Suite 1600
San Jose, CA 95113
Telephone: (408) 288-2240
Fax: (408) 295-5267
jkleinberg@jamsadr.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| IN RE ANTHEM, INC. DATA BREACH LITIGATION | Case No.: 15—MD—02617—LHK REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE: AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES |
| --- | --- |

## I. Introduction and methodology

By Order of February 8, 2018 ("Order"), the undersigned was charged with reviewing the lodestar for fees and expenses for the representation of the Class. In doing so, the Special Master is authorized to "review the time and expenses spent litigating the case" and to deduct time and

Case No.: 15-MD-02617-LHK
REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE: AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES

1

expenses that are "excessive, unnecessary, or duplicative." Order at 2.[1] The Special Master is not reviewing the reasonableness or fairness of the settlement itself, but only class counsel's fees and expenses. Even so limited, the scope of this review is extensive. This is partly due to the size of the case and the number of counsel. Class counsel have supplied hundreds of pages of billing data containing thousands of entries.  The Special Master has also reviewed objections to counsel's application.

### A. Percentage vs. Lodestar

There has been a long-standing debate as to the proper methodology for calculating fees in class actions. The easiest approach is to simply apply a percentage to the settlement. The Ninth Circuit has established a "benchmark" of 25% applied against the settlement as the fee award, but even this seemingly simple method may be adjusted up or down depending upon "special circumstances." See, *In re Bluetooth Headset Products Liability Litigation,* 654 F.3d 935, 942 (9th Cir. 2011), *Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990), *Vizcaino v. Microsoft Corp*., 290 F.3d 1043,1050 (9th Cir. 2002). As a check on the figure arrived at through the percentage method, courts have used the lodestar alternative, as described below, to review and possibly revise the fees to be awarded. [2]

This case settled in June 2017. Anthem agreed to an all-inclusive fund of $115 million, out of which class counsel moved pursuant to Rule 23(h) for fees and expenses totaling $39.95

---

[1] The Special Master spent 38 years in private practice before appointment to the bench, during which time he was responsible for keeping time records and submitting bills to clients using hourly rates. And, as a Superior Court Judge he reviewed fee applications on a regular basis.

[2] NYU School of Law has published a 2016 research paper entitled *Attorneys Fees in Class Actions: 2009-2013* which analyzes the statistical breakdown between the percentage and lodestar methods.

Case No.: 15-MD-02617-LHK
REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE: AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES

million as counsel's "lodestar." That amount is 34.7% of the gross and 43.4% of the net

settlement.[3] This claimed amount is derived from the time records of 53 law firms comprising

over 300 timekeepers.

The lodestar figure is calculated by multiplying the number of hours the prevailing party

reasonably expended on the litigation (as supported by adequate documentation) by a

reasonable hourly rate for the region and for the experience of the lawyer. *Staton v. Boeing,* 327

F.3d 938, 965 (9th Cir. 2003). Though the lodestar figure is "presumptively

reasonable," *Cunningham v. Cnty. of Los Angeles,* 879 F.2d 481, 488 (9th Cir.1988), the Court

may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a

host of "reasonableness" factors, "including the quality of representation, the benefit obtained

for the class, the complexity and novelty of the issues presented, and the risk of

nonpayment," *Hanlon,* 150 F.3d at 1029 (citing *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67,

70 (9th Cir.1975)). Foremost among these considerations, however, is the benefit obtained for

the class. See *Hensley v. Eckerhart,* 461 U.S. 424, 434–36, 103 S.Ct. 1933, 76 L.Ed.2d 40

(1983); *McCown v. City of Fontana,* 565 F.3d 1097, 1102 (9th Cir.2009)(ultimate

reasonableness of the fee "is determined primarily by reference to the level of success achieved

---

[3] The Special Master has not adopted the "benchmark" of 25% of the settlement fund as the primary method for the reasons explored in *In re Bluetooth Headset Products Liability Litigation,* 654 F.3d 935, 944-946 (9th Cir.2011). Some decisions advocate the percentage method, because it has been argued that the lodestar approach, among other negatives, may tempt lawyers to run up their hours. At the same time, the lodestar analysis has been used as a "cross check" when the percentage technique is employed. See, *Goldberger v. Integrated Resources, Inc.* 209 F.3d 43, 50 (2d Cir. 2000). There is no authority prohibiting the reverse approach, i.e., doing a lodestar analysis with a percentage calculation as a cross check. As noted below, the Special Master has done that here.

Case No.: 15-MD-02617-LHK
REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE: AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

3

by the plaintiff"). Thus, where the plaintiff has achieved "only limited success,"

counting *all* hours expended on the litigation—even those reasonably spent—may produce an "excessive amount," and the Supreme Court has instructed district courts to instead "award only that amount of fees that is reasonable in relation to the results obtained." *Hensley,* 461 U.S. at 436, 440, 103 S.Ct. 1933.

The results obtained in this case were undoubtedly significant. They include changes in Anthem's business practices to add millions of dollars of additional funds to deploy security measures to protect class members' personally identifying information into the future. To achieve this result class counsel were engaged in a very substantial litigation effort along traditional lines: discovery through document review and depositions plus significant motion practice. This is a truly megafund case by any measure. The Special Master is guided by the principle as stated in treatise Federal Practice and Procedure – Civil (commonly known as Wright & Miller):

"One of the most significant considerations taken into account in setting the ultimate fee is the benefit conferred by the litigation. Benefit in this context is not necessarily limited to monetary relief or the value of the property right protected. A number of courts have indicated the importance of encouraging private litigants to vindicate public wrongs by suggesting that the fees awarded should be particularly generous in those situations. This consideration seems warranted. Since the objective of the award is to create a financial incentive to initiate socially desirable litigation and thereby enhance access to the adjudicative process, taking into account the amount of benefit actually produced and allowing fees to be enhanced accordingly seems particularly appropriate." 7B Fed. Prac. & Proc. Civ. §1803.1 (3d.ed.)

Case No.: 15-MD-02617-LHK
REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE: AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES

4

1    The lodestar method of calculating attorney fees is a two-step process. First, courts

2  multiply the hours an attorney works by the attorney's hourly rate—this process yields the

3

4  lodestar—and then comes the difficult part: courts adjust the lodestar up or down "to reflect the

5  characteristics of a given action." The lodestar method raises three questions: (1) how do courts

6  determine a reasonable hourly rate? (2) how do courts determine a reasonable number of hours?

7  and (3) once courts come up with the lodestar, on what basis do courts adjust that figure up or

8  down?

9

10    And, as noted in the Wright & Miller treatise:

11    "The court must exercise caution in awarding fees lest they deplete the recovery for the

12  class." 7B Fed. Prac. & Proc. Civ. §1803.1 (3d.ed.)

13    And the lodestar approach has been criticized:

14

15    "The lodestar approach is unworkable because, among other things, it abandons the

16  adversary process upon which our judicial system is based; requires judges to assess, *after* the

17  litigation is over, strategic and other decisions made by plaintiffs' lawyers in the midst of

18  litigation (with the resulting "inequities of retrospective rate setting," *Kirchoff v. Flynn*, 786 F.2d

19  320, 325 (7th Cir.1986)); *In re Oracle Securities Litigation,* 131 F.R.D. 688, 689 (N.D. Ca.

20  1990)

21

22    With all of these competing considerations in mind, the Special Master has

23  reviewed counsel's billing records, rates, hours, tasks, number of personnel employed, and the

24  claimed expenses for each billing firm. The Court has reviewed the settlement terms between

25  the class and defendant, including whether counsel's representation is correct that there is no

26

27  collusion or conflicts of interest (e.g., fee splitting among counsel), and whether there is a "clear

28  Case No.: 15-MD-02617-LHK
REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE: AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES

5

1    sailing" arrangement providing for the payment of attorneys' fees separate and apart from class

2    funds. The Special Master has not been charged with assessment of the reasonableness or

3
     fairness of the settlement, e.g., *Churchill Vill., LLC v. General Electric,* 361 F.3d 566 (9th Cir,
4
5    2004).

6        The Special Master takes the position that, to the extent the lodestar is adjusted

7    downwards from what class counsel is seeking, the difference will revert to the class members.

8
     Further, the Special Master recommends that the costs of litigation and the fees of the Special
9
10   Master be deducted from counsels' share rather than that of the class.

11       B.   Summary of billing issues

12       The Special Master has focused his analysis on the following specific billing issues:

13

14           (1)  Rates charged for attorney and non-attorney personnel of different

15               denominations (e.g., Partner, Fellow, Associate, Contract Attorney, Law Clerk,

16               Of Counsel); and

17
18           (2) How much time was spent on the litigation activities and whether there was

19               attendance by the appropriate person or multiple counsel at the same event,

20               e.g., depositions and hearings.

21       C.  Calculations in this case

22
         Compilations of counsel's lodestar information are found in the following court
23
24   filings:

25           •   Detailed Lodestar Information by Firm and Biller Dkt. 916-10

26           •   "Detailed Contract/Staff Attorney Information"

27
28   Case No.: 15-MD-02617-LHK
     REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE: AWARD OF ATTORNEYS' FEES AND
     REIMBURSEMENT OF LITIGATION EXPENSES

6

- Summary of Total Lodestar by Firms Dkt. 944-5

- Task Code Key and Related breakdown per firm Dkt. 916-12

- Declaration of Co-lead Counsel Eve H. Cervantez, Esq. at pp. 17-18 and exhibits D 960-6 thereto

- Time Stricken (by Plaintiffs' Counsel) in Exercise of Billing Judgment Dkt. 960-4

- Detailed Lodestar Information by Firm and Biller (updated to include historic rates) Dkt. 960-5

- Task Code Billing by Timekeeper Dkt. 960-6.

The Special Master has not reviewed every line item. It appears Lead Counsel did so. See, Declaration of Eve Cervantez, Esq., December 1, 2017, at 22-23 and Ms. Cervantez' Supplemental Declaration of January 31, 2018, which post-dates and responds to the Court's Orders of January 29 and 30, 2018. The Special Master has undertaken spot-checking of the records produced to gain a sense of their value to this process.

**II. Rates**

A. Overall rates analysis

The rates indicated in each firm's application constitute one-half of the lodestar calculation, the other being hours.[4] Law firm rates generally used to be confidential between lawyers and clients except for fee applications pursuant to statute or the subject of litigation. But for some years hourly rates have become publicized, sometimes in academic studies, cases and

---

[4] The Special Master notes that class counsel have undertaken a review of hours and deleted what they found to be incorrect or overstated. Dkt. 960-4 Filed 1/31/18.

Case No.: 15-MD-02617-LHK
REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE: AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

7

in the press.[5] Some courts have referred to the Laffey Matrix—which derives its name from the case *Laffey v. Northwest Airlines, Inc.*(572 F. Supp. 354 (D.D.C. 1983), affirmed in part, reversed in part on other grounds, 746 F.2d 4 (D.C. Cir. 1984), cert. denied, 472 U.S. 1021 (1985). It is a free resource published each year by the U.S. Attorney's office for the District of Columbia. It offers tiered rates for lawyers, differentiated according to their years of experience. The matrix is available at www.justice.gov/usao/dc/divisions/civil.html. Some areas of the country, e.g., San Francisco Bay Area, may have higher rates than others. See, e.g., *Garnes v. Barnhardt* 2006 WL 249522 at *7 (N.D. Cal.); see also *Chanel, Inc. v. Doan*, 2007 WL 781976 (N.D. Cal.).); and *Syers Properties III, Inc. v. Rankin*, 226 Cal. App. 4th 691, 702 (2014).

The Ninth Circuit has rejected the Laffey Matrix as having little or no relevance outside of the District of Columbia. *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010): "just because the Laffey matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away." *Jacobson v. Persolve, LLC*, No. 14-CV-00735-LHK, 2016 WL 7230873, at *6 (N.D. Cal. Dec. 14, 2016)  At most it is admittedly a dated reference point, and not at all binding on the Special Master or the Court.

A possibly useful resource is a commercially prepared report of actual rates that have been paid by real clients. Called the Real Rate Report, it is published by Wolters Kluwer, an information, software, and related corporate legal-services company

---

[5] Much of the referenced material is from the California Lawyer magazine, published by the State Bar of California.

Case No.: 15-MD-02617-LHK
REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE: AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

8

(www.wkelmsolutions.com). The report was first released in 2012 and has been updated and improved several times since.

The data used for the 2014 Real Rate Report (the most recent available) includes more than $16.2 billion in fees billed and paid through TyMetrix for legal services in the United States during the seven-year period of 2007 through 2013. It includes fees paid by 90 companies to more than 5,600 law firms and more than 206,000 timekeepers, and it covers approximately 141,000 partners and associates spread across more than 350 U.S. metropolitan areas. The rate data in the report is presented in a variety of ways: high-level data cuts, industry analysis, and practice-area analysis, among others. Rates by timekeeper category are supplied for 59 cities. In-depth data for ten large cities has been mapped to twelve separate practice areas, such as Labor and Employment and Corporate, for example. Data is also parsed based on the size of the firm. Like the Laffey Matrix before it, the Real Rate Report has been accepted by many courts. (See, *Hicks v. Toys 'R Us-Delaware, Inc.*, 2014 WL 4670896 at *1 (C.D. Cal.). However, this report, like Laffey, has only marginal value in determining what appropriate rates should be.

A third source comes from Thomson Reuters, well-known producer of Westlaw, which several times a year compiles hourly rates from court filings by case and timekeeper. It used to be known as Westlaw Court Express but is now called the Legal Billing Report. Each report has two sections. One is sorted by region/law firm, and the other is by billing rate/region. This is the most granular of reports, including the names of timekeepers, law firms, and the case names and numbers of the matters.

Case No.: 15-MD-02617-LHK
REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE: AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES

9

Summary of Rates per Thomson Reuters[6]

| Experience (years) Lawyers | Laffey: D.C. | Laffey: S.F. | Laffey: L.A. | Real Rate Report |
|---|---|---|---|---|
| 20+ | $520 | $562 | $541 | $645 |
| 11–19 | $460 | $497 | $478 | $575 |
| 8–10 | $370 | $400 | $385 | $364 |
| 4–7 | $300 | $324 | $312 | $204 |
| 1–3 | $255 | $275 | $265 | $192 |
| Paralegals/law clerks | $150 | $156 | $140 | $166 |

As noted, the rates standing alone do not answer the "reasonable lodestar" question. But, in this case specific examples depict an unfortunate scenario, specifically the rates charged for the time of "contract" or "staff" attorneys.

B. Contract/Staff Attorneys - Rates

A review of the Detailed Contract/Staff Attorney Information is of particular importance. The clearest summary of this data is found in ECF Docket No. 977-4, an attachment to the Supplemental Declaration of Lead Counsel Cervantez. That summary reveals most of the personnel are labeled as "Contract Attorney." These 33 lawyers are shown as paid

---

[6] Courts have routinely looked to the rates charged in a particular locale in setting fees. See, e.g., *Yahoo!, Inc. v. Net Games, Inc.* 329 F. Supp.2d 1179 (N.D. Ca. 2004).

Case No.: 15-MD-02617-LHK
REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE: AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES

by the firms at hourly rates from $25.00 to $65.00, with the clear majority in the $40.00 range. These individuals are not paid out of the class recovery fund, but rather by the firms that have retained them. Put another way, these billers were paid $727,537.86, or an average of $22,046.60 per person. Class counsel have charged hourly rates for contract attorneys from $185 to $495. Dkt.977-4 These billers were charged out to the class per the claimed lodestar of $6,997,153.50, or an average of $212,034.95 per person. Dividing that charge by 19,445.40 hours billed yields an hourly rate of $359.83. Dkt. 977-4 In other words, class counsel seek to have them billed at a rate applied to 4 to 8-year lawyers. It is simply inappropriate for these rates to be charged, especially when there is recent authority for the hourly rates to range for such billers from $25 to $59. See, *Dial Corp. vs. News Corp*, 317 F.R.D. 426, 430, 438 (S.D.N.Y. 2016), *Banas v. Volcano Corp.,* 47 F.Supp.3d 957,980 (N.D. Cal. 2014).

The Court in *Dial Corp. supra,* noted: "Plaintiffs seek reimbursement of $7,512,915.12 in expenses. The vast majority of those expenses arises from costs associated with retaining two expert witnesses and retaining contract attorneys to review millions of documents. (Pl. Mot. for Fees at 20.) The contract attorney fees, amounting to a little more than $1 million were billed "at an average rate of $39/hour without any mark-up applied." (Pl. Mot. for Fees at 20.) Simple math reveals that more than 25,000 hours of attorney time were expended. To Counsel's credit, this attorney time was "accounted as an expense rather than included in the lodestar." (Pl. Mot. for Fees at 20.) That fact weighs heavily in favor of granting the expenses. While courts in this Circuit have permitted attorneys to garnish their lodestars with marked-up contract attorney fees, this Court appreciates Counsel's decision to treat these contractor fees as an expense. It

Case No.: 15-MD-02617-LHK
REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE: AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES

11

1  saves the Court from having to "determine a correct spread between the contract attorney's cost
2  and his or her hourly rate and his or her salary." *Citigroup Sec. Litig.*, 965 F.Supp.2d at 394.
3  This Court encourages the Plaintiffs' class action bar to consider adopting this practice in future
4
5  actions." 317 F.R.D. at 438.

6       The Special Master is not recommending the Court go as far as *Dial* regarding
7  contract attorneys but suggests, solely as part of this analysis, theoretically revising their rates
8  billed here to that of a paralegal, namely $156 per hour. This seems appropriate since much of
9
10  the contract attorney work falls under Task Code 2, "Review of documents produced by
11  Defendants." [7] Class counsel have charged hourly rates for contract attorneys from $185 to
12  $495. Dkt. 977-4 The Special Master gives class counsel the benefit of the doubt by using the
13  lowest rate claimed by each firm, rather than the actual rates claimed. Using the lowest hourly
14  rates claimed, the impact these charges for contract attorneys have on the lodestar computation
15
16  are as follows:[8]

17       Bonnet:      287.9 Hours X rate of $275/hour = $79,172.50. *If billed at $156/hr. the*
18  *charge would be $44,912*
19

20       Boucher:     707.6 Hours X rate of $185/hour =$130,906.  *If billed at $156/hr. the*
21  *charge would be $110,385.60*
22

23

24

25

26  [7] See Dkt.916-12 for Task Code Key.
27  [8] Dkt. 960-5 "Detailed Lodestar Information by Firm and Biller (updated to include historic rates).
28  Case No.: 15-MD-02617-LHK
    REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE: AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

12

1      Branstetter:    663.6 Hours X lowest rate of $385/hour=$255,486. *If billed at $156/hr.*

2   *the charge would be $103,521.60*

3

4      Cohen Milstein: 5784.2 Hours X lowest rate[9] of $245 = $1,417,129. *If billed at $156/hr.*

5   *the charge would be $902,335.20*

6

7      Gibbs: 1656.7 Hours X rate of $350 = $579,845. *If billed at $156/hr. the charge would*

8   *be $258,445.20*

9

10      Lieff: 5448 Hours X lowest rate of $415 = $2,260,920. *If billed at $156/hr. the charge*

11   *would be $849,888*

12

13      Lockridge: 387.2 Hours X rate of $325 = $125,840. *If billed at $156/hr. the charge*

14   *would be $60,403*

15

16      Schubert: 3802.8 Hours X lowest rate of $350 = $1,330,980. *If billed at $156/hr. the*

17   *charge would be $593,236.80*

18

19      Scott: 545.1 Hours X rate of $400 = $218,040. *If billed at $156/hr. the charge would be*

20   *$85,035.60*

21

22      Zimmerman: 162.3 Hours X rate of $300 = $48,690. *If billed at $156/hr. the charge*

23   *would be $25,318.80.*

24

25      The above contract attorney analysis for all firms yields significant data:

26

27   [9] "Lowest rate" shown on chart for contract attorneys.

Case No.: 15-MD-02617-LHK
REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE: AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES

13

*Class counsel charges $6,997,153 for contract attorneys. However, using the hourly rate of $156, the total equals $3,033,482 or approximately one-half of what was billed. As noted, this analysis uses the rate per Thomson Reuters for San Francisco paralegals.*

The Special Master also considered what the rates would be if all billers were combined, regardless of status. The average hourly rates (for all billing personnel) for those firms whose hourly fee claims are in the six- or seven-figure range are as follows:

| Name: | Average hourly rate: |
|---|---|
| Altschuer | $587 |
| Barrack | 482 |
| Berger | 624 |
| Bennett | 388 |
| Boucher | 248 |
| Branstetter | 445 |
| Cohen & Malad | 462 |
| Cohen Milstein | 472 |
| Edwards | 525* |
| Federman | 572 |
| Forbes | 375 |
| Gibbs | 454 |
| Goldman | 638 |
| Heins | 383 |
| Kaplan | 501 |
| Keller | 421 |
| Lieff | 481 |
| Lockridge | 338 |
| Milberg | 420 |
| Morgan | 510 |
| Murray | 353 |
| Pomerantz | 476 |
| Robinson | 548 |
| Schubert | 373 |
| Scott | 401 |
| Stueve | 425 |
| Stull | 689 |

Case No.: 15-MD-02617-LHK
REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE: AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

14

| | |
|---|---|
| Webb | 533 |
| Whalen | 133* |
| Zimmerman | 401 |

*Sole practitioner (for this case)

Applying simple math, the average rate for all billers listed above is $455 per hour. These combined per firm rates, while not conclusive in themselves, do not appear excessive to the Special Master.

C. Services billed

This is a massive case in all respects: the amount and scope of the settlement are the end results of thousands of billable hours by dozens of lawyers, paralegals, contract attorneys, and clerks. A detailed summary is found at pages 1, 3-4 of the Cervantez Declaration of December 1, 2017. The billing records supplied to the Court cover many hundreds of pages of detailed daily time entries. Counsel have provided a helpful task code key which, when viewed in concert with the time records summaries, assists in reviewing the type and amount of work performed. Document 916-11.[10] As noted, the Special Master has not reviewed every line item of billing; such a review is not necessary. In the words of Objector Schulman, Plaintiffs seek a "rough" cross check, not "auditing perfection." Dkt. 943 at 4-5.[11] This is the standard the Special Master has applied. Regardless, enough of the voluminous records has been studied to lead to verifiable conclusions. They are:

---

[10] These and other document citations are based on the designation within the Pacer file for this litigation.
[11] "We are not asking the Court to put on green eye-shades and scrutinize time entries line by line…" Doc 924 at 18.

Case No.: 15-MD-02617-LHK
REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE: AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

(1) There are charges for 194 depositions, for which 13,800 hours were billed.[12] Cervantez Dec. ¶¶34,52. This equates to 71 hours per deposition, or about 10 days preparing for and taking each one, using the 7-hour guideline proscribed by Rule 30 (d)(1), Federal Rules of Civil Procedure. This is excessive on its face.

(2) The issue of discovery charges is exacerbated by using higher priced lawyers to perform tasks such as document review. This is the consequence of multiple personnel doing a variety of tasks. The problem is highlighted by some examples:

- The Barrack firm spent 950 hours reviewing documents without any contract lawyer time; thus, associates at hourly rates between $375 and $470, and partner rates up to $500 resulted in $380,000. Dkt. 916-11

- Bonnett, 1000 hours, with 700 hours at $425 for an associate, Dkt. 916-10

- Branstetter, 1600 hours, approximately 800 hours at associate rate of $410, Dkt. 916-10

- Goldman, 500 hours for associate at rates at $475 and up, Dkt. 916-11

- Kaplan, 360 hours for associate at $500, Dkt. 916-11

- Keller, 3000 hours for associate at $400, Dkt. 916-10

---

[12] The Special Master has used rounded figures for clarity.

Case No.: 15-MD-02617-LHK
REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE: AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES

16

- Morgan, 360 hours for associate at $500, Dkt. 916-10

- Pomerantz, 1100 hours most of which for associate at $500, Dkt. 916-10

- Stull, 800 hours, $500, Dkt. 916-10 and 11

(3) The motion for class certification and reply consumed approximately 3,300 hours ("Task Code 10"). Based on an estimate of 10 hours per day of non-stop work, this totaled the equivalent of 330 days.

(4) Settlement preparation ("Task Code 11") consumed approximately 2,500 hours. Again, this computes to over 8 months of work at 10 hours per day.

(5) The eleven firms whose billings are in seven figures average a rate of $496/hour. Dkt. 916-10

(6) Post-settlement billings: Although the case settled in June 2017 (Dkt. 869) the lodestar includes work performed through September 30, 2017. Declaration of Eve Cervantez ¶45.

There are a number of instances where more than one billing individual was participating, although Ms. Cervantez explains why multiple attorneys were present at depositions and hearings, for example. Cervantez Declaration, December 1, 2017 at ¶44.

Overall, and after considering counsel's arguments, the number of law firms strikes the Special Master as excessive. This is the most negative aspect of the fee application. There are 53 billing firms. This virtual army of billers was contrary to the letter and spirit of the Court's appointment orders regarding lead counsel. Even from counsel's perspective, how could lead

Case No.: 15-MD-02617-LHK
REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE: AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

17

counsel possibly conduct effective oversight of this very large team of lawyers? The Special Master is not accusing Plaintiffs' counsel of deliberate overbilling. However, every time a new law firm was added to the group, those lawyers had to spend time learning the history, issues, and facts being litigated. Thus, the inevitable result of 53 firm billing participants presents at least a strong probability of duplication and unreasonable hours. See, Wright & Miller, *10 Federal Practice & Procedure Civ.* §2675.2 (3d.ed.).[13]

The four firms appointed as lead counsel are alone claiming a lodestar of $24,288,471. Cervantez Decl. ¶50. The other 49 firms are asserting a lodestar of $13,603,878. It is noteworthy that the Robins Geller firm, highly experienced class counsel, opposed the expansion from four to eight "lead" firms because such a structure would be unwieldy.[14] And it is disturbing that the lead firms disregarded the Court's permission to use a larger number of counsel but only to perform "discrete tasks" as needed consistent with efficiency. Dkt. 286 at 1. Pursuant to the Contract Attorneys analysis, *supra,* that category of billing alone could be reduced by several million dollars, and the Special Master suggests doing that, *below.* The Special Master also notes that the Court, in the Order of February 2, 2018, expressed serious concerns about these very issues.

### D. Expenses

Counsel Cervantez has submitted a detailed Declaration, with multiple exhibits substantiating the request for expenses incurred. ¶61 Cervantez Declaration of December 1,

---

[13] To their credit Lead Counsel unilaterally reduced the total number of hours billed by 4,459. Dkt. 960-4.

[14] It does not appear the Robins Geller firm was part of the class counsel group.

Case No.: 15-MD-02617-LHK
REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE: AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

2017. This calculation has been updated and increased. The Special Master has not conducted a detailed review of these items, nor of the request for service awards for the named Plaintiffs as articulated in the Cervantez Declaration of December 1, 2017. The expense items do not appear inappropriate for a case of this size.

However, there is an issue whether the $2,005,068.59 in claimed expenses should impact the fees calculation.[15] When the claimed administration and litigation costs are deducted from the gross $115 million settlement amount, the actual monetary benefit to the class is, at most, approximately $89,994,931. That is the "net" figure to consider both for lodestar and percentage calculations.

In *Redman v. RadioShack*, 768 F.3d 622 (7th Cir. 2014) the Seventh Circuit observed:

"But the roughly $2.2 million in administrative costs should not have been included in calculating the division of the spoils between class counsel and class members. Those costs are part of the settlement but not part of the value received from the settlement by the members of the class. The costs therefore shed no light on the fairness of the division of the settlement pie between class counsel and class members." Id. at 630.

The Ninth Circuit has addressed the costs issue in *Staton v. Boeing*, 327 F.3d 938 (9th. Cir. 2003) at 974-975:

"The parties to the proposed settlement agreed to the inclusion of costs in the amount attributed to fees and the objectors, understandably, have not protested that inclusion. As all of

---

[15] There are also awards to class representatives of $5,000 and $7,500 each, and also a reserve of $132,000, which includes $72,000 for a call-in center and $60,000 for expert monitoring services.

Case No.: 15-MD-02617-LHK
REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE: AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

19

1    those affected are content with that method of calculation and no class member's interests are

2    adversely affected, the district court had no cause to disapprove the attribution, nor do we.

3         "The district court also did not abuse its discretion by including the cost of providing notice

4    to the class of the proposed consent decree as part of its putative fund valuation, although the cost

5    of providing *two* notices rather than one should not have been included. We have said that 'the

6    choice of whether to base an attorneys' fee award on either net or gross recovery should not make

7    a difference so long as the end result is reasonable. Our case law teaches that the reasonableness

8    of attorneys' fees is not measured by the choice of the denominator.'" *Powers v. Eichen,* 229 F.3d

9    1249, 1258 (9th Cir.2000). The post-settlement cost of providing notice to the class can reasonably

10   be considered a benefit to the class. Also, where, as here, it is the defendant who pays for the

11   notice, we may assume that the inherent incentives to minimize the cost involved are sufficient.

12   Additionally, the court's supervision of the form of notice and the method of communication

13   assures that the costs expended are contained. We conclude that where the defendant pays the

14   justifiable cost of notice to the class—but not, as here, an excessive cost—it is reasonable (although

15   certainly not required) to include that cost in a putative common fund benefiting the plaintiffs for

16   all purposes, including the calculation of attorneys' fees." See, also, *In re Online DVD-Rental*

17   *Antitrust Litigation,* 779 F3d. 934 (9th Cir. 2015):

18        "The district court did not abuse its discretion in calculating the fee award as a percentage

19   of the total settlement fund, including notice and administrative costs, and litigation expenses.

20   We have repeatedly held "that the reasonableness of attorneys' fees is not measured by the choice

21   of the denominator." *Powers v. Eichen,* 229 F3d 1249, 1258 (9th Cir.2000)(rejecting an

22   objector's argument that a fee award in a securities settlement should be based on "net recovery,"

Case No.: 15-MD-02617-LHK
REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE: AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES

20

1  which does not include "expert fees, litigation costs, and other expenses"); *see also Staton,* 327

2  F.3d at 974–75 ("The district court also did not abuse its discretion by including the cost of

3  providing notice to the class ... as part of its putative fund valuation.... We have said that 'the

4  choice of whether to base an attorneys' fee award on either net or gross recovery should not make

5  a difference so long as the end result is reasonable.' " (quoting *Powers,* 229 F.3d at 1258)). Here,

6  the district court concluded that class counsels' fee request, which applied the 25% benchmark

7  percentage to the entire common fund, was reasonable. Indeed, the court explicitly explained

8  how administrative costs in particular make it possible to distribute a settlement award "in a

9  meaningful and significant way." Similarly, notice costs allow class members to learn about a

10 settlement and litigation expenses make the entire action possible. Thus, the court acted within

11 its discretion under this court's precedent in *Powers* and *Staton."*

14  As noted at the outset, the Special Master has not felt bound by a strict application of the

15 "25% benchmark" so the inclusion or exclusion of litigation expenses does not drive these

16 recommendations.

19        E.  Significance of the litigation, amount of work, and percentage of dollars

20              obtained.

21  In determining whether attorney fees requested as part of a class action settlement are

22 reasonable, it is well established that a district court should consider: (1) the time and labor

23 expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the

24 litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement;

Case No.: 15-MD-02617-LHK
REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE: AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES

21

and (6) public policy considerations. *Davis v. J.P. Morgan Chase & Co.*, 2011 WL 4793835 (W.D. N.Y. 2011).

There is no dispute that counsel's compensation was entirely contingent and there was a substantial and necessary time commitment. A review of other cases yields a wide range of lodestar multipliers (positive and negative) with class counsel receiving awards from 6-10% in a megafund case, *Domestic Air Transport,* 148 F.R.D. 297 ( N.D. Georgia, 1993), *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, F.3d 96 (2d Cir. 2005) (6.5% from 18% awarded) to *In re Vitamins Antitrust Litigation,* 2001 396WL 34312839 (D.C.) (34.06% awarded). This Court has awarded far lower percentage recoveries in megafund cases:

*Gutierrez v. Wells Fargo., N.A.,* 2015 WL 2438274 (N.D. Cal. 2015), *In re Charles Schwab Corp. Securities Litigation,* 2011 WL 1481424 (N.D. Cal. 2011). In those two cases the percentages were 9% and 9.25%

In *Gutierrez v. Wells Fargo Bank, N.A.*, 2015 WL 2438274 (N.D. Cal. 2015) Judge Alsup discussed the other fees issue – multipliers:

"Now, we turn to what type of multiplier, if any, to award. "A 'multiplier' is a number, such as 1.5 or 2, by which the base lodestar figure is multiplied in order to increase (or decrease) the award of attorneys' fees on the basis of such factors as the risk involved and the length of the proceedings." *Staton v. Boeing Co.,* 327 F.3d 938, 968 (9th Cir.2003). "Multipliers can range from 2 to 4 or even higher." *Wershba v. Apple Computer, Inc.,* 91 Cal.App. 4th 224, 255 (Cal.Ct.App.2001). Other factors include the complexity of the case, risk of non-payment, contingency nature of the case, results obtained, percentage of recovery obtained, quality of representation, skill and labor required, benefits to the class, novelty of the issues presented, and

Case No.: 15-MD-02617-LHK
REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE: AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES

22

1    level of success. *In re Bluetooth,* 654 F.3d at 942; *Vizcaino,* 290 F.3d at 1051. It would be

2    unusual not to apply a risk multiplier when (1) the attorneys reasonably take a case with the

3    expectation that they will receive a risk enhancement if they prevail, (2) their hourly rates do not

4    reflect that risk, and (3) there is evidence that the case was indeed risky. *Fischel,* 307 F.3d at

5    1008."

6

7       There can be no doubt that the settlement reached in this case was of general public

8    benefit, and the District Court has so held. The settlement provides significant rewards to the

9    class, such as daily monitoring of credit files, internet surveillance, identity monitoring, and

10   theft insurance. These factors weigh heavily in the calculation of the appropriate fee award. *See,*

11

12   Cervantez December 1, 2017 Declaration ¶8.

13      However, the Special Master sees no reason to apply a multiplier to *increase* the award

14   in this case, considering the number of billers and overstated rates discussed above. Rather, if

15

16   anything, a negative multiplier is appropriate for those reasons. Further, this Court has used the

17   percentage method as a "cross-check" to the lodestar approach. See, *In re: High-Tech Employee*

18   *Antitrust Litigation,* 2015 WL 5158730 (N.D. Cal. 2015) and See, *In re Bluetooth,* 654 F.3d at

19   944.

20

21      If this method is employed, the Ninth Circuit has supported a "benchmark" of 25% for

22   counsel fees. Simply multiplying 25% times the gross $115 Million settlement yields an award

23   of $28,750,000 versus counsel's lodestar application for $37,950,000. However, as noted, there

24   are listed $23 million in notice and administration costs, plus about $2 million in claimed

25   expenses, which if deducted reduces the $115 million fund available to the class to about $90

26   million. In round figures, this means counsel's fees based on their analysis would equal 42% of

27

28

the real "net" recovery, far in excess of the "benchmark" of 25%. A 25% recovery applied to $90 million equals $22.5 million, which indicates the claimed $37,950,000 fees based on a lodestar analysis is excessive.

### III. Recommendations

On the positive side of counsels' application, the Special Master recognizes this lawsuit has brought significant benefit to the class now and in the future. See, Cervantez Declaration of December 1, 2017 at 3-5. The substantial efforts of class counsel to achieve the settlement here is acknowledged, but that does not end the analysis.[16]

Once past the 25% "benchmark," cases do not provide a single hard and fast rule or equation.

In *Moreno v. City of Sacramento,* 534 F.3d 1106 (9th Cir. 2008) the Court of Appeal addressed and reversed the District Court's 40% reduction in the claimed fees. This was a civil rights case seeking injunctive relief, where there was "monetary light at the end of the litigation tunnel: …" Fn. 1 at 1111. The appellate court determined the lower court decision to reduce the fees "insufficient" and its explanations" opaque," using "impermissible" methodologies. Id. at 1112-1116. In that case, the District Court cut counsel's hours by 25 percent, which was on top of counsel's unilateral reduction of fees by 9 percent. The Ninth Circuit offered the following alternative: "The district court has a greater familiarity with the case than we do, but even the

---

[16] It has been said that when lawyers request fees from a class settlement fund, they are not like adversaries in litigation; they are like artists requesting a grant from the National Endowment for the Arts. Grant-making organizations establish nonadversarial methods for screening applications; …*In the Matter of Continental Illinois Securities Litigation,* 962 F.2d 566, 573 (7th Cir. 1992).

Case No.: 15-MD-02617-LHK
REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE: AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

24

district court cannot tell by a cursory examination which hours are unnecessarily duplicative. Nevertheless, the district court can impose a small reduction, no greater than 10 percent—a "haircut"—based on its exercise of discretion and without a more specific explanation." Id. at 1112.[17]

In *In re High-Tech Employee Antitrust Litigation,* 2015 WL 5158730 (N.D. Ca. 2015) the Court declined to use the percentage method, and instead did a detailed analysis of the rates and hours claimed by class counsel. That case had been pending for four years and had a prior history of $5 million awarded to class counsel in a $20 million settlement with some of the other parties in the case. Significantly, the settlement with the remaining parties in the case was for $415 million. Plaintiffs' counsel sought a multiplier in excess of prior Ninth Circuit cases. In the Court's review of billing rates from six firms, it was found that the rates were "reasonable in light of prevailing market rates in this district (Northern California)" and the 36,215 hours was a "reasonable amount of time for class counsel to have spent on this litigation." Id. Ultimately, the Court applied a multiplier (from the lodestar supplied) to boost counsel's fees to $40 million (in addition to $5 million previously obtained). Significantly, the Court's award was a reduction in counsel's request by more than one-half, from $81 million sought.[18] And, considering the total $435 million settlement fund, counsel was awarded only10.5% of the settlement fund.

In that case this Court noted:

---

[17] The 10% "haircut," though not characterized as such, was applied by the Court in *Vargas v. Berkeley Unified School District* 2017 WL5991857 (N.D. Cal.2017)

[18] Other counsel had its fee request reduced by more than 80%.

Case No.: 15-MD-02617-LHK
REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE: AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES

25

1

2

3

4

5

"... the Ninth Circuit has made clear that in "megafund" cases, such as this one, courts may "employ the lodestar method instead" if rote application of the 25% benchmark "would yield windfall profits for class counsel in light of the hours spent on the case." *In re Bluetooth,* 654 F.3d at 942.

6

7

8

9

10

11

12

The risks undertaken by class counsel and their sizable investment in an unknown result, typical of class actions, were magnified in the instant megafund case. And, as noted, the settlement here was extremely positive, including the commitment by Anthem to undertake extensive curative actions. However, the number of counsel, the overlapping staffing and the excessive rates charged for contract lawyers – in contravention of the Court's admonitions -- weigh heavily in this report's recommendations.

13

14

15

Taking all these factors into account, and good cause appearing, the Special Master makes the following alternative recommendations:

16

*(1) The 25% "Benchmark"*

17

18

19

20

21

22

23

24

25

26

As articulated in the Ninth Circuit's ruling in *In re Bluetooth Headset Products Liability Litigation,* 654 F.3d 935, 942 (9th Cir. 2011), there is authority to simply apply 25% to the settlement figure as the amount to be awarded to counsel. If the total figure here is $115 million, that amount of fees is $28,750,000. Class counsel would then need to deduct approximately $2 million for expenses (paid or outstanding), leaving counsel with a net recovery of $26,750,000. Using the "benchmark" approach, either the "gross" or "net" recovery is well below the approximate amount sought by counsel of $39,950,000.[19].

27

28

[19] This figure includes approximately $2 million in costs.
Case No.: 15-MD-02617-LHK
REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE: AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES

26

*(2) The revised, average billing rate*

By taking the averages of all firms' billings, as shown above in Section II.B., an overall average rate, meaning all personnel regardless of rank, equals $455. Applying that rate to the billable hours, a total of $35,896,087 is achieved. Again, that is before deduction of about $2 million for expenses, leaving counsel with a net recovery of $33,896,087. This is also well below the amount sought by counsel.

*(3) Reducing the claimed lodestar by a "haircut" of 10% and a reduction for contract attorneys*

This approach, as noted above, is articulated in the Ninth Circuit's *Moreno* opinion. In this case, a two-step process is required. First, the overbilling for contract attorneys needs to be deducted from the gross fees sought, as follows: Total claimed fees = $37,950,000, minus the $3,963,671 in arguable overcharges (see Section II.B. above) yields $33,986,328 in fees. Then, a "haircut" of 10% further due to the factors described above, reduces the lodestar to $30,587,696. That figure is 26.6% of the total $115 million gross settlement and 34% of the $90 million net settlement fund (if expenses and administrative costs are excluded). The Special Master assumes litigation expenses (including experts) have been paid by this date, so they are reimbursable to counsel but should be deducted in computing the lawyers' fee recovery. To summarize, when the approximately $2.0 million in expenses are deducted from counsel's recovery, the net received by class counsel is $28,587,696 or 24.9% of the settlement's $115 million gross figure. This compares with Counsel's request for 33% of the $115 million settlement fund.

The above three alternative analyses yield fees compensation to class counsel as follows:

Case No.: 15-MD-02617-LHK
REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE: AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES

*"Benchmark 25%" = $26,750,000*

*"$455/Hr. Billing rate" = $33,896,087*

*"10% Haircut off counsel's lodestar" = $28,587,696*

This third, "haircut" analysis is the one the Special Master recommends. This approach equals $9,362,304 or 24.7% reduction off of counsel's claimed lodestar. It is considerate of counsel's efforts which is appropriate in light of the results achieved for the present and the future. It allows a significant monetary reward for the class. It also recognizes the overcharging outlined above. If the lodestar is adjusted downwards from what class counsel is seeking, the difference should revert to the class members.

Therefore, the Special Master recommends:

(1) In summary, $28,587,696 to class counsel, $2,005,069 for litigation expenses, $23,000,000 for notice and administrative fees;

(2) The Special Master further recommends that the costs for a reserve of $132,000 ($60,000 for expert monitoring services and $72,000 for a call-in center), and service awards of $5,000 and $7,500 per awardee be borne by class counsel, and not the Class; and

(3) The Special Master's charges should also be borne by counsel, and not the class.

Dated: April 24, 2018                    Respectfully submitted,

Hon. James P. Kleinberg (Ret.)
Special Master

Case No.: 15-MD-02617-LHK
REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE: AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES