Theodore H. Frank (SBN 196332)
COMPETITIVE ENTERPRISE INSTITUTE
  CENTER FOR CLASS ACTION FAIRNESS
1310 L Street NW 7th Floor
Washington, DC 20005
Voice: 202-331-2263
Email: ted.frank@cei.org

*Attorneys for Objector Adam E. Schulman*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| *In Re Anthem, Inc. Data Breach Litigation* | Case No. 15-md-02617-LHK |
| | **RESPONSE TO SPECIAL MASTER'S REPORT AND RECOMMENDATION** |
| ADAM E. SCHULMAN,<br><br>    Objector. | Date: June 14, 2018<br>Time: 1:30 p.m.<br>Courtroom: 8, 4th floor<br>Judge: The Honorable Lucy H. Koh |

Objector Schulman files objections to the Special Master's Report and Recommendation ("Report," Dkt. 1008) as this Court's Order (Dkt. 1009) and Rule 53(f)(2) permit.

As an initial matter, the special master's report did not accomplish what the Court assigned the special master to do. The Court's order appointing a special master detailed specific concerns for duplication and inefficiencies based on the 331 billers and 53 law firms. *See* Order Granting Motion to Appoint Special Master, Dkt. 972 at 4-5. But the special master conducted a disappointingly superficial review, adding nothing to what Schulman had already identified in his Objection, and then concluding solely with a "rough" estimate. *Compare* Report at 16-17 *with* Objection at 17-18. The special master's rough review failed to determine the propriety of the hours billed and is insufficient to uncover the extent of the duplication and inefficiencies that this Court sought.

The special master reasoned that it only applied a "rough" cross-check because that was all that was needed. Report at 15. The problem is that the special master's final recommendation on fees is based on a lodestar approach. Report at 28. When awarding fees based on lodestar, the lodestar must be accurately calculated; a "rough" cross-check is not sufficient. *See Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992). The special master purported to calculate a lodestar figure, using the percentage of fund as a "crosscheck" (Report at 3 n.3), but without determining appropriate hours. Further, the special master disregarded authority that the market-rate for contract attorneys' billing is at cost and instead arbitrarily set their billing rate to $156/hour, ceding a $2.3 million windfall to class counsel for their markup. *Id.* at 12. The special master calculated his final recommendation based on plaintiffs' total request, only adjusting the rates of contract attorneys, then deducting expenses and a 10% "haircut," yielding a net attorneys' fee award of $28.6 million. *Id.* at 28. The special master made no attempt to remove excessive, unnecessary, or duplicative hours, and so his Report cannot form the basis of a lodestar attorneys' fee award.

While Objector Schulman objects to the arbitrary recommendation to reward class counsel for their overstaffing, churn, and unreasonable fee request, he supports the special master's findings labelling as questionable numerous billing issues flagged in Schulman's Objection to Plaintiffs' Attorneys' Fee Request ("Obj.," Dkt. 924). For example, the special master correctly found that

billing over 71 hours per deposition, was "excessive on its face" (Report at 16), yet failed to adjust for this and other excess billing. Given the special master's scant findings concerning appropriate lodestar hours and rates, the Court should reject the special master's recommendation to award a roughly-estimated lodestar and instead follow Ninth Circuit law that encourages attorneys' fees based on the percentage of the fund with a lodestar cross-check.

Given the size of the settlement fund, an appropriate fee award of the net settlement fund would typically be 10-20%, in line with other megafund cases and appropriately deter counsel from excess staffing and churn going forward. Thus, the fee award should be at most about 15% of the settlement fund net expenses, or $13.8 million. *See* Obj. at 14.

**I.     The Report Vastly Overestimates Lodestar with Inadequate Scrutiny**

The special master provides superficial scrutiny to class counsel's billing, yielding an award figure that endorses churn and falls well below the scrutiny that the Ninth Circuit requires.

> **A.     The special master failed to comply with the Court's order because it made no attempt to accurately calculate the hours reasonably expended.**

This Court was concerned with the duplication and inefficiencies in class counsel's lodestar and thus appointed the special master to "determine 'the hours reasonably expended.'" Dkt. 972 at 4 (quoting *Young v. Polo Retail, LLC*, No. 02-CV-04546-VRW, 2007 WL 951821, at *6 (N.D. Cal. Mar. 28, 2007)). In its Order, the Court detailed the history of class counsel's appointment and the concern that 331 billers from 53 law firms were included in the lodestar, including four law firms that the Court specifically declined to appoint to the Steering Committee to avoid duplication. Dkt. 972 at 4-5. The order correctly sought to exclude "hours that were not reasonably expended," hours resulting from cases "overstaffed" and hours that were "excessive, redundant or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

As the order explained, this Court "requires detailed submissions that provide sufficient information from which the Court can determine whether there has been any duplication in attorney effort or whether the amounts expended were reasonable." *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 499 (D.N.J. 2012). In contrast to the 138-page detailed review in *Johnson &*

*Johnson*, 2013 WL 11228425 (D.N.J. June 13, 2013), *adopted by district court*, 2013 WL 6163858 (D.N.J. Nov. 25, 2013), the special master here provides ony a few examples of overbilling, Report at 16-17. While the Report notes that several categories of hourly billing are bloated, including 71 hours billed per deposition, which is "excessive on its face" (Report at 16), the hours provided by class counsel are assumed without further analysis. Contrary to the Court's instruction, not one hour is deducted as excessive, unnecessary, or duplicative. The special master does not provide a calculation of reasonable hours, but simply takes class counsel's fee request as a baseline and provides minimal adjustments to these figures. Indeed, there would be no reason for the Court to have ordered disclosure of the billing records to the special master if he had no obligation to scrutinize them.

### B. A "rough" review of billing cannot support the special master's recommendation of a lodestar fee award.

The Court ordered the special master "to prepare a report calculating the lodestar for the representation of the Class in this action" by determining "the hours reasonably expended, deducting the time and expenses that are excessive, unnecessary, or duplicative." Order Appointing Special Master, Dkt. 985 at 2. Instead, the special master employed only a "rough" review of lodestar. Report at 15. Given that the special master purports to recommend a fee award on the basis of lodestar, however, the Court would need to provide much more than "rough" scrutiny. When awarding fees under a lodestar approach, the district court must "articulate not only the reasons for its findings regarding the propriety of the hours claimed or for any adjustments it makes either to the prevailing party's claimed hours or to the lodestar." *Gates*, 987 F.2d at 1398; *see also Report of the Third Circuit Task Force, Selection of Class Counsel,* 208 F.R.D. 340, 423 (2002) (distinguishing between the lodestar cross-check and "a full-blown lodestar inquiry").

The special master misleadingly quotes Objector Schulman as "not asking the Court to put on green eye-shades and scrutinize time entries line-by-line." Report 15 n.11 (quoting Obj. 18). But Schulman said this precisely because he moved to the appointment of special master to scrutinize the billing, a task which the special master seems to have outsourced to plaintiffs. But "the district court must not . . . delegate that duty to the parties." *In re High Sulfur Content*, 517 F.3d 220, 228 (5th

Case No. 15-md-02617   3
RULE 53 OBJECTIONS TO SPECIAL MASTER REPORT

Cir. 2008) (cleaned up). Nor may the Court delegate this duty to a special master who simply relies on class counsel's hours. "Giving counsel the benefit of the doubt even in light of apparently improperly claimed hours . . . runs counter to the rule . . . that the burden to submit detailed records justifying hours reasonably expended falls upon the claiming attorneys." *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1126 (9th Cir. 2002). Such a purported lodestar calculation cannot satisfy this Court's "independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 941 (9th Cir. 2011).

After simply assuming plaintiffs' entire fee request as a baseline, the special master provides some rough adjustments to the request, but these adjustments cannot justify an award on the basis of nonexistent lodestar calculation. *First*, the special master's adjustment to the contract attorney billing rates is insufficient. *See infra* Section I.C. *Second*, the special master deducts an additional 10%, citing *Moreno v. City of Sacramento* for the proposition that "the district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation." 534 F.3d 1106, 1112 (9th Cir. 2008). In *Moreno*, the district court had sought to reduce by 25% but the Ninth Circuit found that such a reduction was too large unless the court "articulates its reasoning with more specificity." *Id.* at 1112. While *Moreno* sets a ceiling on reduction without specificity, *Moreno* should not endorse the special master's approach of providing only a "rough" review.

Indeed, by failing to remove questionable hours and reduce excessive rates, the special master's supposed 10% "haircut" actually ensures a substantial windfall. For example, as discussed in the next subsection, the special master endorses reimbursing contract attorney expenses at 417% of the market rate, so a 10% reduction from this baseline still results in over $2 million windfall just for the contract attorneys. The windfall is likewise egregious for all of the categories of overbilling that the special master acknowledges but refuses to adjust—using excessive staffing with 53 firms and excessive billing for deposition preparation, motion for preliminary approval, settlement, document review, and so forth. *See* Section I.C, *infra*. Schulman identified $8.8 million of excessive billing in his

Objection, and the Court should remove such questionable billing *before* resorting to any discretionary 10% reduction. The special master errs by treating the 10% as some sort of limit, or as a crutch to avoid actually scrutinizing lodestar billing.

And the haircut should still occur. Failing to penalize class counsel for their outrageous staffing and billing simply permits them to play "Heads I win, tails don't count"; class counsel has no incentive not to seek an excessive fee award or exaggerate its lodestar if the only consequence is that the fee request is reduced to what should have been requested in the first place. If "the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place. To discourage such greed a severer reaction is needful." *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980); *see also Keener v. Dep't of Army*, 136 F.R.D. 140, 150 (M.D. Tenn. 1991). An "outside-chance opportunity for a megabucks prize must cost to play." *Commonwealth Electric Co. v. Woods Hole*, 754 F.2d 46, 49 (1st Cir. 1985).

**C.  Contract attorney markup not justified under any market-based approach, nor can such markup be squared with ethical rules.**

The special master deviates from other courts in concluding that contract attorneys may be marked up by millions of dollars, though the market rate for contract attorneys in this decade is cost. *See* Obj. at 19-20. Class counsel inflated the lodestar by seeking an average of $360/hour for contract-attorney and staff-attorney document review paid only $25 to $59/hour in this case. Report at 11. **Class counsel billed contract attorneys at 960% of their cost**. *Id.* The special counsel proposes to remedy this by instead crediting contract attorneys for $3 million or "only" 417% of their cost, paying class counsel for their time as if they were salaried paralegals or law clerks allegedly worth $156/hour in San Francisco.[1] Report at 14.

---

[1] Separately, the special master's report is silent regarding the law clerks—summer associates—billed at between $270 and $345/hour by class counsel for a total of over $134,000.

Case No. 15-md-02617                                                                                                  5
RULE 53 OBJECTIONS TO SPECIAL MASTER REPORT

In fact, "there is absolutely no excuse for paying these temporary, low-overhead employees $40 or $50 an hour and then marking up their pay ten times for billing purposes." *In re Beacon Assocs. Litig.*, No. 09 Civ. 777, 2013 WL 2450960, at *18 (S.D.N.Y. May 9, 2013). Nor does the special master come up with any reason the Court should award class counsel over four times their cost for billing purposes. The special master does not dispute Schulman's argument that contract attorneys are billed at or near cost. Class counsel in other cases understand this reality. *See Dial Corp. v. News Corp.*, 317 F.R.D. 426, 430 n.2 & 438 (S.D.N.Y. 2016) (commending class counsel for treating contract attorney work as an expense, charging the 25,000 hours at $39/hour with no mark-up applied); *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 980 (N.D. Cal. 2014) (awarding contract attorney time as "costs" at billing rate of $47 to $59 per hour). The Report provides no reason for rejecting *Dial*. The special master also failed to determine whether it was ethical for class counsel to charge substantially more than cost for contract attorneys, and the answer seems doubtful. *See* Obj. at 19-20.

Such markups run contrary to the overriding objective of lodestar compensation: to approximate market billing rates. Even if the Court has discretion to award some reasonable markup for supervision and overhead, a 317% markup could not possibly constitute the market rate that *paying clients* would pay. The best measure of the market rate is to review what paying clients are willing to pay. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 589 (S.D.N.Y. 2008) ("Perhaps the best indicator of the 'market rate' in the New York area for plaintiffs' counsel in securities class actions is to examine the rates charged by New York firms that defend class actions on a regular basis."). The special master made no effort to review what *paying clients*—including Anthem—pay for contract attorneys.

The special master's Report completely sidesteps ethical and market considerations, and should not be adopted. The special master simply asserts he "is not recommending the Court go as far as *Dial* regarding contract attorneys but suggests, solely as part of this analysis, theoretically revising their rates billed here to that of a paralegal, namely $156 per hour." Report at 12. The special master sets a $156/hour paralegal rate, relying on Laffey matrix rates it elsewhere denigrates.

Report at 7-8. The market rate for contract attorneys is what paying clients pay for contract attorneys, not what paying clients pay for a *different* type of timekeeper (who may be performing more difficult tasks).[2] *See, e.g., Lola v. Skadden, Arps, Slate, Meagher & Flom*, 620 Fed. Appx. 37, 40 (2d Cir. 2015) (holding that such $25/hour work was so devoid of legal judgment it may not constitute the practice of law). The special master's recommendation regarding contract attorneys should be rejected because it does not reflect the legal market rate for contract attorneys.

### D. At minimum, special master should have deducted the waste identified by objector Schulman.

The special master notes several of the issues that Objector Schulman identified months ago and estimated to represent at least $8.8 million in wasteful lodestar, but makes no effort to remove the wasteful hours. For example, the special master recounts excessive document review costs involving inappropriately-senior attorneys, but does nothing to adjust these expenses. *Compare* Report at 16-17 *with* Obj. at 21-22 (recommending $2 million reduction from such overbilling). And the special master repeats the Court's criticism that the number of firms employed was "excessive," but makes no attempt to adjust for this overbilling. *Compare* Report at 17 *with* Obj. at 24 (suggesting a 50% or $6.8 million reduction for billing from non-appointed firms).[3]

Additionally, the special master agrees with Schulman that several other characteristics of the bill suggest waste, but the special master declined to quantify them. For example, the special master simply notes that billing an *average* of 71 hours per deposition "is excessive on its face." Report at 16; Obj. at 17 (same issue identified by Schulman). Likewise, the special master does not deduct time for

---

[2] Schulman believes the contract attorney issue will be comprehensively addressed by the special master's report in *Arkansas Teacher Retirement System v. State Street Bank and Trust Co.*, No. 11-cv-10230 MLW (D. Mass.). Indeed, three of the very same contract attorneys billed in this case were billed by counsel in *State Street*. This report and its executive summary were filed under seal on May 14, 2018. Schulman reserves his right to supplement his objection once the report in *State Street* is redacted and becomes publicly available.

[3] The special master's conclusory treatment of billing from 53 different law firms also fails to probe the allocation between parties, which must be presented to the Court for approval. *See In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220 (5th Cir. 2008); Obj. 16.

the 3,300 hours billed for the motion for class certification, nor the 2,500 hours spent on settlement preparation. *Compare* Report at 17 *with* Obj. at 24.

If anything, Schulman's suggestion to remove $8.8 million underestimated overbilling given that it did not discount for depositions, class certification, or settlement preparation. All of these elements of plaintiffs' billing appear quite wasteful, as the special master agreed. Report at 17-18. Thus, the special master's failure to discount for *any* excesses cannot withstand scrutiny, and the lodestar calculation ought to start by calculating contract attorneys at market-rate (*i.e.,* cost) and then deducting millions for the excess firms and document review performed by overqualified high-billing attorneys. The special master should have then further scrutinized waste in depositions, class certification, and settlement before applying the 10% "haircut" as a penalty for overbilling in the first place.

To justify a lodestar award, the Court would need to rigorously analyze the billing for waste, especially in depositions, settlement, and motion for preliminary approval—categories that the special master recognized to be problematic, but did not address. Given that the special master did not adequately reckon the fee request on a lodestar basis, this court should instead award based on the percentage of fund. The special masters' recommendation to award over 33% of the net settlement fund in attorneys' fees cannot stand.

## II. The Report's Percentage-of-Fund "Cross-Check" is Misguided.

The Report ultimately recommends a 23(h) award to class counsel amounting to "26.6% of the total $115 million gross settlement and 34% of the $90 million net settlement" with an alternative recommendation of 25% of the gross $115 million fund. Report 26-27. As discussed above, this Court did not appoint the special master to engage in a percentage-based analysis nor to substitute a "rough" lodestar cross-check that accompanies the percentage method. But to the extent that the Court wishes to consider the Report's percentage analysis, Schulman objects to the following flaws in that analysis.

First, the Report makes no apparent attempt to tailor the "benchmark" approach to the realities of megafund litigation on behalf of 100+ million-member classes. As Schulman has already

detailed at length, "percentage awards in megafund cases are "substantially less than the 25% benchmark applicable to typical class settlements in this Circuit." Obj. 6 (quoting *Alexander v. FedEx Ground Package Sys.*, No. 05-cv-00038, 2016 WL 3351017, at *2-3 (N.D. Cal. June 15, 2016)); *see also* Obj. 4-8 (surveying literature and case law). The Report finds the settlement to be "truly a megafund case by any measure" (Report 4), and cites other courts that survey megafund fee awards between 6 and 18% (*id.* at 22), but it doesn't even mention a megafund benchmark reduction as a possibility. Report 26-28.

Second, although the Report discusses the difference between net and gross fund calculations, the ultimate recommendation does nothing to account for the troublesome fact that nearly a quarter of the settlement fund is consumed by administrative expenses. Report 19-21, 26-28. "[C]ourts cannot rationally apply any particular percentage…without reference to all the circumstances of the case." *In re Washington Pub. Power Supply Sys. Litig.*, 19 F.3d 1291, 1298 (9th Cir. 1994). Rather than rewarding class counsel with a $7.59 million commission on the $23 million costs paid to the settlement administrator, class counsel's fees should be calculated *after* the $23 million is deducted from the settlement fund. Obj. 10-14.

Third, not only does the Report not recommend a downward departure from the benchmark, it endorses an *upward departure*: 26.6% of the gross fund or 34% of the net fund. Report 27. But the lodestar isn't supposed to be a floor that justifies above-benchmark awards. Schulman Obj. 10 (citing cases); *see also Zapeda v. Paypal, Inc.*, 2017 WL 1113293, at *20-*23 (N.D. Cal. Mar. 24, 2017) (refusing to deviate upward to 28% even though such award would only constitute 90% of lodestar); *Roe v. Frito-Lay, Inc.*, 2017 WL 1315626, at *6-*7 (N.D. Cal. Apr. 7, 2017) (declining to award more than 25% even though lodestar was almost double the 25% award). A large lodestar "is not a compelling reason to depart from the Ninth Circuit's benchmark, particularly absent evidence of exceptional risk or difficulty." *Kmiec v. Powerwave Tech.*, No. 8:12-cv-00222-CJC-JPR, 2016 WL 5938709, *6 (C.D. Cal. Jul. 11, 2016). In fact, the purpose of employing the lodestar in the megafund context is to avoid the "windfall profits for class counsel" that a 25% award may occasion. *Bluetooth*,

654 F.3d at 942; *accord WPSSS*, 19 F.3d at 1297-98. But rather than eliminate or even reduce that windfall, the Report compounds it.

Although the report finds categorical overbilling, it fails to give any weight to those shortcomings when recommending an above-benchmark award. *Contra* Obj. 25. Courts in this Circuit deviate downward from the 25% benchmark where counsel's representation has been flawed in one way or another. *See, e.g., Il Fornaio (America) Corp. v. Lazzari Fuel Co., LLC*, 2015 WL 2406966, at *4 (N.D. Cal. May 20, 2015) (noting submission of two earlier bad settlements as a reason to depart downward to 20%); *Thompson v. Costco Wholesale Corp.*, 2017 WL 3840342, at *9-*10 (S.D. Cal. Sept 1, 2017) (awarding 15%, down from the requested 25%, to account for the earlier attempts to sell out the FLSA claims); *In re Celera Corp. Secs. Litig.*, 2015 WL 7351449, at *9 (N.D. Cal. Nov. 20, 2015) (noting counsel's deficient presentation of information as a reason to depart downward to 20%).

Of the three alternatives he considers, the master recommends a lodestar-based award rather than a percentage one. Report 28. But this recommendation ignores that the reason that the Ninth Circuit has adopted a percentage benchmark approach is to "directly align the interests of the class and its counsel." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). "That contingency fee litigation doesn't always result in a recovery as large as plaintiff's counsel originally estimated is not a 'special consideration'—it's the nature of the beast." *Keirsey v. eBay, Inc.,* No. 12-CV-01200-JST, 2014 WL 644738, at *3 (N.D. Cal. Feb. 18, 2014) (refusing to deviate from 25% to the requested 31% even though it would provide only a .23 multiplier on class counsel's lodestar); *Hawthorne v. Umpqua Bank*, 2015 WL 1927342 (N.D. Cal. Apr. 28, 2015) (refusing to deviate upward to 33% even where the fee request was less than lodestar, and class recovery was 38% of potential recovery). For this reason among others, fees based on the percentage of fund are preferred, and a district court must supply reasons for deviating from the 25% benchmark of this circuit. *See Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000).

Not only does the report fail to elucidate reasons for an upward deviation from the benchmark, *as Powers* requires, but every relevant factor that the report discusses points in precisely

the opposite direction (i.e. a downward departure from the benchmark). The Court should overrule the Report's mediations on the proper percentage approach.

### III. An Appropriate Fee Award is 15% of Net Common Fund

Because the Court cannot rely on the special master's less than thorough scrutiny of lodestar billing, the Court should instead calculate attorneys' fees on a percentage basis, with lodestar crosscheck.

In this case, a 15% fee would be appropriate. Empirical research shows that in class actions "fee percentages tended to drift lower at a fairly slow pace until a settlement size of $100 million was reached, at which point the fee percentages plunged well below 20 percent." Brian Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical L. Stud. 811 (2010). Percentage awards in megafund cases are "substantially less than the 25% benchmark applicable to typical class settlements in this Circuit." *Alexander v. FedEx Ground Package Sys.*, No. 05-cv-00038, 2016 WL 3351017, at *2-3 (N.D. Cal. June 15, 2016) (awarding 16.4% of common fund). In class actions in which the settlement equaled $100 to $250 million, the median fee award was 16.9% and the mean was 17.9%. *Id.* at 839. Other surveys support this analysis. *E.g.*, Logan, Stuart, et al., *Attorney Fee Awards in Common Fund Class Actions*, 24 Class Action Reports (March-April 2003) (empirical survey showed average recovery of 15.1% where recovery exceeded $100 million); Eisenberg & Miller, 7 J. Empirical Legal Stud. at 265 tbl.7 (mean percentage fee in 69 class action settlements ranging from $70 million to $175 million was 19.4% and median award was 19.9% with standard deviation of 8.4%). A reasonable award for class counsel in this case is between 10-20%. The gross settlement fund here is $115 million, but an extraordinary $23 million of that fund will go to notice and administration costs. *See* Settlement, Dkt. 869-8 at 9; Declaration of Eve H. Cervantez ("Cervantez Decl."), Dkt. 916-8 ¶ 13. When notice and administration costs are excluded, a healthy 15% award of the $92 million class recovery would be $13.8 million. And even if notice and administration costs were included, a $13.8 million fee award would equal 12% of the $115 million gross fund, a percentage still in the upper half of the range for megafunds of that size. *See* Federal Judicial Center, Manual for Complex Litigation—Fourth, 188-89 (2004) (noting survey where "class

actions with recoveries exceeding $100 million found fee percentages ranging from 4.1% to 17.92%").

A fee award of this size is reasonable in light of a rough lodestar crosscheck, which approximates adjustments excessive, redundant or otherwise unnecessary billing.

- First, contract attorneys should be paid at cost, which removes $6.37 million from the claimed lodestar.

- Second, the work performed by 49 non-appointed law firms may be roughly halved (excluding contract attorney time, which has already been reduced to cost). This blanket reduction is rough justice; it not only penalizes for excessive staffing by the plaintiffs' steering committee and generally duplication of work, it also deducts billing for excessive categories of work discussed below and questionable billing rates such as a second-year associate billing at $500/hour. *See* Dkt. 987-1 at 27.

- Third, associate and partner document review ought to be reduced by an additional $700,000. *See* Obj. 22.[4]

- Fourth, deposition time should be reduced from approximately 71.5 hours per deposition (Obj. 17-18) to a more reasonable 35 hours per deposition. *Compare Schoolcraft v. City of New York*, 2016 WL 4626568, at *9 (S.D.N.Y. Sept. 1, 2016), *modified on other grounds* 248 F. Supp. 3d 506 (2017) ("42 billed hours per witness" is "wasteful"). This estimate is generous given that most depositions were for defending plaintiffs and would have required minimal preparation per client. Therefore, deposition time should be reduced by 51% to bring the average hours in line. Excluding contract attorney time and time from the 49 firms already halved, deposition lodestar totals about $4.4 million, and this figure should be reduced.

---

[4] This figure is lower than the $2 million proposed in Schulman's Objection because the more detailed billing reveals that most of the excessive associate and partner billing rates for document review occurred at the 49 non-appointed firms—about $5.5 million worth of associate and partner billing for document review—which are already being halved in this rough calculation. Non-contract attorney time devoted to document review at the four appointed firms totals $1,401,736, so this time should also be halved.

Case No. 15-md-02617   12
RULE 53 OBJECTIONS TO SPECIAL MASTER REPORT

- Similarly, the hours for "class certification" and "settlement preparation," which the special master found inflated at 3,300 and 2,500 hours respectively (Report 17) should be reduced by 40% each, where not already discounted. (In the chart below, we discount only for the four lead law firms to avoid double-reductions for the earlier discount of extraneous law firm time.) This reduces the lodestar by about $1.45 million. *Compare Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2014 WL 4273358, at *8 (N.D. Cal. Aug. 29, 2014) ("800 hours in settlement negotiations and mediation stands out as particularly excessive"; reducing to 400).

- Additionally, summer associate time should be billed at a more reasonable $150/hour instead of $270-345/hour, which results in a reduction of $63,300 of summer associate bills from the four appointed firms.

- Finally, a 10% billing judgment haircut should be applied so as to deter class counsel from inflating billing in other cases. A table of these rough lodestar adjustments is shown below.

| $38,015,714.00 | Claimed lodestar |
| ($6,269,615.64) | Elimination of contract attorney markup |
| ($4,604,213.00) | Halving fees billed by extraneous law firms |
| ($700,000.00) | Reducing excess document discovery costs |
| ($2,144,823.01) | Reducing deposition time to 35 hours avg. |
| ($703,811.20) | Reduce class certification by 40% |
| ($745,164.40) | Reduce settlement preparation by 40% |
| ($63,300.00) | Billing summer associates at $150/hour |
| ($2,278,478.68) | 10% "haircut" from the subtotal |
| $20,506,308.08 | **Total rough lodestar** |

While not as comprehensive as Schulman had hoped the special master would perform, this rough lodestar cross-check shows the reasonableness of a 15% fee award of $13.8 million. The lodestar multiplier is less than one—over two thirds, approximately 0.673—but a fractional multiplier does not itself justify skewing the allocation of the fund in counsel's favor. *E.g., In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 943 (reversing lopsided settlement even though

lodestar "substantially exceed[ed]" fee award); *In HP Inkjet Printer Litig*, 716 F.3d 1173, 1177 (9th Cir. 2013) (same; with lodestar multiplier of .32).

Here, there are many justifications for a fractional multiplier, first and foremost to deter counsel form flouting the court's well-reasoned case management order and to penalize attorneys from attempting above-market and self-serving markup of contract attorney time.

## CONCLUSION

The Court should decline to follow the special master's report and set a Rule 23(h) award to class counsel no higher than $13,800,000 in fees and expenses (15% of net recovery), which would increase relief to class members by over $26 million, and correct the upside-down distribution.

Dated: May 15, 2018                     Respectfully submitted,

*/s/ Theodore H. Frank*
Theodore H. Frank (SBN 196332)
COMPETITIVE ENTERPRISE INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1310 L Street NW, 7th Floor
Washington, DC 20005
Email: ted.frank@cei.org
Voice: 202-331-2263

*Attorneys for Objector Adam Schulman*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing motion using the CM/ECF filing system thus effectuating service of such filing on all ECF registered attorneys in this case.

DATED this 15th day of May, 2018.

                                                */s/ Theodore H. Frank*
                                                Theodore H. Frank