ALTSHULER BERZON LLP
EVE CERVANTEZ (SBN 164709)
ecervantez@altshulerberzon.com
DANIELLE E. LEONARD (SBN 218201)
dleonard@altshulerberzon.com
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

COHEN MILSTEIN SELLERS & TOLL PLLC
ANDREW N. FRIEDMAN (admitted pro hac vice)
afriedman@cohenmilstein.com
GEOFFREY GRABER (SBN 211547)
ggraber@cohenmilstein.com
ERIC KAFKA (admitted pro hac vice)
ekafka@cohenmilstein.com
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile:  (202) 408-4699

*Lead Plaintiffs' Counsel*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| *In Re Anthem, Inc. Data Breach Litigation* | Case No. 15-MD-02617-LHK<br><br>**CLASS COUNSEL'S RESPONSE TO CLASS MEMBER GEORGE MARDIKIAN'S LETTER TO THE COURT**<br><br>Date: N/A<br>Time: N/A<br>Judge: Hon. Lucy H. Koh<br>Crtrm: 8, 4th Floor |

## I.    INTRODUCTION

On September 22, 2020, the Court posted correspondence from class member and attorney George Mardikian concerning his out-of-pocket compensation claim, ECF No. 1099, and sent Class Counsel an email requiring this response. Mardikian disputes the Settlement Administrator's decision to award him $4,000 instead of the $8,775 he seeks even though he has failed to provide evidence that would support his entitlement to the full amount. Based on the limited information Mardikian provided, the Settlement Administrator, KCC, acted reasonably in awarding him $4,000 in out-of-pocket expenses and $150 for time spent responding to the data breach. Though Mardikian has to provide reasonable documentation to support his claim, and he was provided an opportunity to supplement his claim, he failed to do so.

Beyond disputing the amount of his recovery, Mardikian makes unsupported allegations about the Anthem settlement administration process. Although Mardikian is correct that KCC sent him the wrong letter in response to his claim denial, this was an isolated and inadvertent error. Mardikian lacks any evidence to suggest that this one mistake indicates a systemic problem and Class Counsel is not aware of any such pattern. To the contrary, safeguards that Class Counsel and KCC built into the process ensured that the error affecting Mardikian's submission was identified and quickly remedied. Nonetheless, Class Counsel and KCC are conducting another quality assurance review of the claims process to ensure that this was, indeed, the isolated incident it appears to be.

## II.   BACKGROUND

George Mardikian is a member of the settlement class that this Court approved. *See* Berger Decl. ¶ 3. In 2015, Mr. Mardikian was the victim of an identity theft incident in which criminals used his personal information to open an account with a card issuer. *See* ECF No. 1099 at 2; Berger Decl. ¶ 4. Mr. Mardikian does not claim that he suffered any out-of-pocket losses as a result of the identity theft incident. Berger Decl. ¶ 5. Instead, Mr. Mardikian seeks reimbursement for legal fees related to an arbitration he filed against the card issuer. Mardikian Letter, ECF No. 1099 at 2. Mr. Mardikian and the card issuer reached a settlement in which the issuer paid $4,775 to Mardikian's attorney, which Mardikian put towards his $8,775 in legal

1    expenses. *Id.* Mardikian later wrote his counsel a check for the $4,000 balance remaining.
2    Berger Decl. ¶ 6.

3          In July 2019, Mr. Mardikian submitted his out-of-pocket expenses claim to the KCC, the
4    Settlement Administrator. *Id.* ¶ 7. He requested compensation for 17 hours of time that he spent
5    responding to the identity theft incident and the $8,775 in attorneys' fees. *Id.* He documented his
6    claim by attaching an invoice from a law firm showing an unpaid balance. *Id.*

7          KCC evaluated Mardikian's claim and approved his claim for time spent responding to the
8    data breach, but denied his claim for attorneys' fees as insufficiently documented. Berger Decl. ¶
9    8. The KCC employee who adjudicated Mardikian's claim inadvertently misclassified it. *Id.* As
10   a result, KCC sent Mardikian a check for the approved portion of his claim, but did not send him
11   a Notice of Deficiency letter, as per standard procedure. *Id*.

12         In August 2020, KCC sent Mardikian a Notice of Denied Claim letter, which erroneously
13   stated that he was not a class member. Mardikian Letter at 2. Like all class member
14   correspondence, the notice included a telephone number for the class member to reach Class
15   Counsel. *Id.*

16         Mardikian contacted Class Counsel in mid-August 2020, seeking verification that he was
17   actually a class member and later disputing KCC's decision to deny his claim. Berger Decl. ¶ 9.
18   Mr. Mardikian's claim eventually was routed to an attorney who reviewed Mr. Mardikian's claim
19   submission, including his claim form and supporting documentation. *Id*. Counsel explained that
20   there had been an error processing Mr. Mardikian's claim, which resulted in him being sent a
21   Notice of Denied Claim form instead of a Notice of Deficient Claim form. To rectify the
22   situation, the KCC and Class Counsel agreed that Mr. Mardikian would be provided an
23   opportunity to cure the deficiencies. Counsel spent approximately 45 minutes advising Mr.
24   Mardikian how he could best support his claim. Ultimately, Mardikian provided Class Counsel
25   with a declaration, a copy of the $4,000 check he sent his attorney, and a document he described
26   as privileged and confidential. Berger Decl. ¶ 10. Class Counsel promptly sent the declaration
27   and check copy to KCC to supplement Mardikian's out-of-pocket expenses claim. *Id.* ¶ 11.
28

In late August, KCC told Class Counsel that it had approved a $4,000 payment to Mardikian and explained its reasoning. *Id.* ¶ 12. Class Counsel repeatedly tried to contact Mardikian, to discuss KCC's determination and left him several voicemails. Mardikian did not return any of Class Counsel's calls. *Id.*

## III.   ARGUMENT

### A.   KCC Properly Adjudicated Mardikian's Claim

KCC acted within its discretion both in denying Mr. Mardikian's initial claim for legal fees and—after reviewing his supplemental documentation—awarding $4,000 of the $8,778 he seeks. "The Settlement Administrator … shall have the sole discretion and authority to determine whether and to what extent an Out-of-Pocket Costs Claim Form reflects valid Out-of-Pocket Costs actually incurred that are fairly traceable to the Data Breach." Settlement Agreement, ECF No. 869-8, § 6.2. The Settlement Administrator also has "the sole discretion and authority" to determine whether a class member has cured any deficiencies such that its claim "reflects valid Out-of-Pocket Costs actually incurred that are fairly traceable to the Data Breach." *Id.* KCC's out-of-pocket expenses determinations are guided by the Settlement Agreement, which allows KCC to reimburse "out-of-pocket costs or expenditures that a Settlement Class Member actually incurred that are fairly traceable to the Data Breach." Settlement Agreement, ECF No. 869-8, §§ 1.23, 6.1. Class members must provide "documentation of Out-of-Pocket Costs as to which documentation should naturally exist and have been retained or is obtainable." *Id.* § 6.1.

KCC correctly adjudicated Mardikian's initial claim submission, which sought compensation for his lost time and his attorneys' fees. KCC approved Mr. Mardikian's lost time claim in full and sent him a check for $150. Mardikian Letter, ECF No. 1099 at 2. At the same time, KCC denied Mardikian's initial request for $8,775 in legal fees for two reasons. Berger Decl. ¶ 8. First, the documentation Mr. Mardikian initially submitted lacked sufficient detail to tie his legal fees to the Anthem data breach. *Id.* The invoice Mardikian submitted indicates that a law firm initiated, litigated, and settled an arbitration action for Mardikian against an unnamed defendant on an unspecified subject matter. *Id.* Without more detail, KCC could not conclude

that these legal services related to the Anthem breach and it had an obligation to deny his claim. *Id.*

Second, the undated invoice—which Mr. Mardikian refers to as a "receipt"—does not show that he actually paid any of the legal fees. *Id.* It merely states that payment was due upon receipt and that the entire balance remained outstanding. *Id.* Without evidence that Mardikian actually incurred these costs, KCC could not determine that he was eligible for reimbursement and properly denied his claim on this basis as well. *Id.*

When Mardikian supplemented his claim in August 2020, KCC acted reasonably and well within its discretion in deciding to award him $4,000, rather than the $8,775 he requested. Based on Class Counsel's representation from conversations with Mardikian that the arbitration was at least arguably related to the data breach, KCC determined that Mardikian could be reimbursed for the out-of-pocket costs or expenditures that he actually incurred. *See* Settlement Agreement, ECF No. 869-8, §§ 1.23, 6.1 (reimbursement of out-of-pocket costs limited to what was actually incurred). Mardikian provided documentation showing that he actually incurred $4,000 in legal expenses, which is what KCC awarded. .

In his letter, Mardikian argues that he actually incurred $8,773 in legal fees and that KCC improperly offset or reduced his claim by the amount of his arbitration settlement. Mardikian Letter, ECF No. 1099 at 2-3. KCC did not offset or reduce this award. Mardikian was required to provide reasonably available documentation of his expenses and he failed to provide that information. *See* Settlement Agreement, ECF No. 869-8 § 6.1. Here, the only expenses Mardikian alleged or documented were his legal fees. He offers no evidence that he suffered any other unreimbursed out-of-pocket damages that he was trying to recoup in filing his arbitration. On the record presented, KCC concluded that the $4,775 arbitration settlement constituted partial payment of Mardikian's legal fees. Because KCC can only issue payment for "unreimbursed" out-of-pocket expenses, Mardikian was only eligible for $4,000. *See* Settlement Agreement, ECF No. 869-8, § 6.3. Class Counsel submit that KCC acted reasonably and within its discretion.

Should the Court disagree, however, Class Counsel do not object to the Court ordering KCC to remit another $4,775.[1]

### B. The Settlement Administration Process is Sound, Despite the Isolated Error Mardikian Identifies

Mardikian is correct when he asserts that KCC erred in processing his claim, though procedural safeguards that KCC and Class Counsel established ensured that the mistake was identified and remedied. When KCC denied Mardikian's initial out-of-pocket expenses claim, it should have sent him a Notice of Deficiency letter, informing him of the problem and giving him an opportunity to cure the deficiency. KCC did not sent the deficiency letter; instead, it sent Mardikian a form letter incorrectly stating that he was not a class member and denying his claim on that basis. According to KCC, the individual who reviewed and adjudicated Mardikian's claim inadvertently misclassified it—checking the wrong box, so to speak. KCC believes that this was an isolated human error. Class Counsel are not aware of any pattern of misconduct or widespread processing errors. KCC has processed well over 1 million claims in connection with this settlement and Class Counsel have identified a very small number of errors (all of which have been addressed). Moreover, every letter issued to class members concerning their claims includes a telephone number to contact Class Counsel. Indeed, Mardikian was able to quickly contact Class Counsel because he saw this phone number. Accordingly, if any other such errors had been made, presumably the class member would have contacted Class Counsel and the problem would have been identified and corrected. Nonetheless, Class Counsel and KCC have undertaken another quality assurance review of the claims process to identify and rectify any similar errors. Should this review identify a broader pattern of claims handling errors, Class Counsel will promptly inform the Court.

---

[1] Mardikian also argues that permitting an "offset or reduction" of his claim would benefit Anthem Blue Cross. The Settlement, however, is non-reversionary and no residual funds will return to Anthem.

- 5 -

CLASS COUNSEL'S RESPONSE TO GEORGE MARDIKIAN'S LETTER TO THE COURT
CASE NO. 15-MD-02617-LHK

Dated: September 29, 2020

          **COHEN MILSTEIN SELLERS & TOLL PLLC**
          ANDREW N. FRIEDMAN
          GEOFFREY GRABER
          ERIC KAFKA

          **ALTSHULER BERZON LLP**
          EVE H. CERVANTEZ
          DANIELLE E. LEONARD

          *Lead Plaintiffs' Counsel*

          By: /s/ David M. Berger

          **GIBBS LAW GROUP LLP**
          ERIC GIBBS
          DAVID M. BERGER
          505 14th Street, Suite 1110
          Oakland, California 94612
          Telephone: (510) 350-9700
          Facsimile: (510) 350-9701

          **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
          MICHAEL W. SOBOL
          JASON LICHTMAN
          275 Battery Street, 29th Floor
          San Francisco, CA 94111-3339

          *Plaintiffs' Steering Committee*